**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) | Misc. No. 08-442 (TFH) |
| ) | |
| GUANTÁNAMO BAY ) | Civ. Action No. 05-CV-1487 (RMC) |
| DETAINEE LITIGATION ) | |

**RESPONSE OF PETITIONER JAWAD JABBAR SADKHAN AL-SAHLANI,
ISN NO. 433, TO ISSUES RAISED AT JULY 8, 2008 HEARING**

At the hearing conducted on July 8, 2008, Your Honor offered counsel the opportunity to file something today. On behalf of Mr. Al-Sahlani, ISN No. 433, we adopt the positions articulated by counsel from the Center for Constitutional Rights and desire to make two additional points – one with regard to sequencing of hearings, and the second relating to access issues.

First, on the issue of sequencing, we respectfully request that the Court not impose any uniform sequencing for habeas corpus hearings. When a hearing should go forward, we respectfully submit, should be up to the individual judges and should involve an analysis by those judges of the factual and legal issues presented in each case. At one point in the proceeding yesterday, it was suggested that one form of sequencing may be to conduct evidentiary hearings in the order in which the habeas corpus cases were filed. That may indeed be what an individual judge will decide to do. But, when a habeas petition was actually filed implicates serious -- and individualized -- issues of access to attorneys, access to the courts, medical and psychological situations, and a host of other important factors. Imposing a standard sequencing may prove to be unwarranted and arbitrary. Some cases will require discovery, and

others will not. Some cases may involve substantial briefing and motion practice on unique legal issues, some will not.

Mr. Al-Sahlani has been in custody for more than six and a half years. He proclaims his innocence and desires a hearing in the very near future. Three days after the Supreme Court issued its *Boumediene* opinion, Mr. Al-Sahlani's counsel filed an Emergency Motion seeking some discovery and a habeas corpus hearing within 45 days. That motion remains pending. (A copy of the Emergency Motion is attached as Exhibit A.) Respectfully, we ask that Your Honor not impose any sequencing order, but rather let Judge Collyer make that determination.

<u>Second</u>, the Court indicated the likelihood that Your Honor – perhaps with assistance from Magistrate Judge Kay – will be available to work on "access" problems. Your Honor suggested that issues relating to access be brought to the Court's attention. We would like to raise three issues:

**1.      <u>Correspondence To and From Prisoners.</u>** There continues to be significant problems sending letters to our clients and receiving responses. By way of example, one of Mr. Al-Sahlani's attorneys, Jeffrey D. Colman, sent Mr. Al-Sahlani a letter dated May 23, 2008. The Head of the Privilege Team has confirmed that Mr. Colman's letter was received by the Privilege Team on May 28, was reviewed by the Privilege Team that same day, and was sent to Guantánamo on May 28. The Head of the Privilege Team indicates that Guantánamo acknowledged receiving the letter one month later – on June 27. The letter was provided to Mr. Al-Sahlani on the evening of June 30 – with counsel meeting with him on July 1. This type of delay poses extreme problems for the attorney-client relationship. We ask that either Your Honor or Judge Kay be available to address this issue.

**2.     Attorney Notes and Declarations Signed by Clients.**  Pursuant to the Protective Order, all of our notes – and declarations our clients sign when we meet with them – are placed in sealed envelopes at Guantánamo.  They are supposed to then be promptly sent to the Privilege Team.  (See 11/08/2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, Exhibit A at ¶ VI(B), "Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.")  Again, we have confirmed with the Head of the Privilege Team that there are instances where attorney notes are not received in the greater Washington, D.C. area by the Privilege Team until two or sometimes three weeks after the attorneys leave their notes with the authorities at Guantánamo.  This is simply unacceptable.  Again, we ask that either Your Honor or Judge Kay be available to address these issues.

**3.     Medical Information Relating to Our Clients.**  We understand our client has a significant medical problem.  In March of this year, Mr. Al-Sahlani signed a statement authorizing the release of his medical records to his legal counsel.  The authorities at Guantánamo refused our request for his medical records, and the Department of Defense informed us that we could only obtain the medical records through a Freedom of Information Act request.  We now are proceeding with a Freedom of Information Act request.  There simply is no justifiable reason why the authorities at Guantánamo should not be required to provide legal counsel with medical records relating to their clients, especially when the clients consent.  We ask that either Your Honor or Judge Kay address this issue.

Dated:  July 9, 2008                               Respectfully submitted,


  /s/ Jeffrey D. Colman
JENNER & BLOCK LLP
Jeffrey D. Colman
Sapna G. Lalmalani
Sarah E. Crane
330 N. Wabash Avenue
Chicago, Illinois 60611
T:  (312) 222-9350
F:  (312) 527-0484

LAW OFFICES OF
WILLIAM A. WERTHEIMER, JR.
William A. Wertheimer, Jr.
30515 Timberbrook Lane
Bingham Farms, Michigan 48025
T:  (248) 644-9200
F:  (248) 593-5128

Of Counsel:
CENTER FOR CONSTITUTIONAL RIGHTS
Shayana Kadidal
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6438
Fax:  (212) 614-6499

(Attorneys for Petitioner)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2008, I caused the foregoing RESPONSE OF PETITIONER JAWAD JABBAR SADKHAN AL-SAHLANI, ISN NO. 433, TO ISSUES RAISED AT JULY 8, 2008 HEARING to be filed and served electronically to the following counsel of record in the above-captioned matter via the CM/ECF system.

Judry Laeb Subar
U.S. Department of Justice
20 Massachusetts Avenue, NW
Suite 7342
Washington, DC 20044-0833
T: (202) 514-3969

Andrew I. Warden
U.S. Department of Justice
Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
T: (202) 616-5084

Terry Marcus Henry
U.S. Department of Justice
Civil Division
20 Massachusetts Avenue, NW
Suite 7144
Washington, DC 20044
T: (202) 514-4107

Nicholas Andrew Oldham
U.S. Department of Justice
Civil Division
20 Massachusetts Avenue, NW
Washington, D.C. 20530
T: (202) 514-3367


                                                  /s/ Jeffrey D. Colman
                                                  Jeffrey D. Colman

# EXHIBIT A



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAWAD JABBAR SADKHAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | Case No. 05-CV-1487 (RMC) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |

## EMERGENCY MOTION TO VACATE THE STAY, SET DATES FOR A SCHEDULING CONFERENCE AND EVIDENTIARY HEARING, AND FOR OTHER RELIEF

For the reasons set forth in Petitioner's Statement of Points and Authorities in Support of Petitioner's Emergency Motion to Lift the Stay, Set Dates for a Scheduling Conference and Evidentiary Hearing, and for Other Relief, Petitioner requests that the Court lift the stay entered on January 8, 2008, schedule a status conference within the next several days, and schedule an evidentiary hearing on the merits within 45 days.

Pursuant to Local Rule 7(m), counsel attempted (by telephone and electronic mail) to obtain assent of the Respondents to the relief sought herein. Counsel was unable to reach Andrew Warden (a lawyer at the Department of Justice), and thus assent has not been obtained.

**WHEREFORE**, Petitioner respectfully requests that the Court lift the stay, schedule a status conference within the next several days, and schedule an evidentiary hearing on the merits within 45 days.

Date:  June 16, 2008



Respectfully submitted,

*[signature: Jeffrey Colman]*

One of the Attorneys for the Petitioners

Jeffrey D. Colman
Sapna G. Lalmalani
Sarah E. Crane
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Tel: (312) 923-2940
Fax: (312) 840-7340
Email: jcolman@jenner.com

David W. DeBruin (DDC Bar No. 337626)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W., Suite 1200
Washington, D.C.  20005-3823
Tel: (202) 639-6000
Fax: (202) 639-6066

William A. Wertheimer, Jr.
LAW OFFICES OF WILLIAM A. WERTHEIMER, JR.
30515 Timberbrook Lane
Bingham Farms, Michigan 48025
T: (248) 644-9200
Email: wert@tir.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAWAD JABBAR SADKHAN, | ) |
| *Petitioner,* | ) ) ) |
| v. | ) Case No. 05-CV-1487 (RMC) |
| GEORGE W. BUSH, et al., | ) ) ) |
| *Respondents.* | ) ) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EMERGENCY MOTION TO VACATE THE STAY, SET DATES FOR A SCHEDULING CONFERENCE AND EVIDENTIARY HEARING, AND FOR OTHER RELIEF**

"[T]he costs of delay can no longer be borne by those who are held in custody. The [Guantánamo] detainees ... are entitled to a *prompt* habeas corpus hearing." *Boumediene v. Bush*, 533 U.S. ___, slip op. at 66 (June 12, 2008) (emphasis added). For Jawad Jabbar Sadkhan Al-Sahlani ("Petitioner" or "Jawad"), "six years have elapsed without the judicial oversight that habeas corpus or an adequate substitute demands." *Id.* Based on *Boumediene*, we respectfully request that this Court now vacate the existing stay, schedule a status conference in the very near future, and set a date within the next 45 days for an evidentiary hearing.

In support of these requests, Petitioner states the following:

1. Acting *pro se*, on July 28, 2005 -- almost three years ago -- Petitioner filed a Petition for Writ of Habeas Corpus. Acting through pro bono counsel, Petitioner filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition") on October 17, 2005. The Respondents filed their Answer to the Amended Petition, which contained the unclassified Factual Return, on January 3, 2006. The classified Factual Return was submitted to counsel at the Secure Facility established for habeas counsel.

2. On January 8, 2008, this Court entered an Order staying this litigation pending the Supreme Court's ruling in *Boumediene*. The Supreme Court issued its decision on June 12, 2008 and held that Guantánamo prisoners have a constitutional right to seek habeas corpus, and that the District Court should hold prompt hearings. Slip Op. at 66.

3. Petitioner is in his seventh year of imprisonment at Guantánamo Bay, Cuba. He has not been charged with any crime and the Government has not alleged that he engaged in any hostilities against the United States or its allies.

4. Petitioner is a 41 year old man. He is a Shiite Muslim from Iraq. He has a wife and four children who have lived in Basra with Petitioner's father and extended family without Petitioner's support for over six years.

5. The Government has alleged - in unclassified documents - that Petitioner was a Taliban leader and a Taliban interrogator in Northern Afghanistan. It is well known that the Taliban are fundamentalist Sunnis who speak Farsi. Jawad is a Shiite, not a Sunni. Jawad speaks Arabic, not Farsi. As a Shiite Muslim who speaks Arabic, Jawad was not a member, let alone a leader, of the Taliban. In fact, Jawad was turned into American authorities after he could not pay a bribe requested by a group of Afghanis. *See* Exhibit A, at 2, 3.

6. Jawad has consistently denied each and every one of the Government's allegations.

    a) In his hearing before a Combatant Status Review Tribunal ("CSRT"), Jawad denied the allegations against him and requested specific documents and witnesses to support his testimony. The Respondents denied each and every one of his requests, stating that both the documents and witnesses were not "reasonably available."

    b) Jawad has also denied the allegations against him in multiple signed declarations submitted to the Government. One of these declarations, dated April 4, 2007, is attached as Exhibit A.

    c) The unclassified record shows that Respondents gave Jawad a polygraph examination in which he denied the allegations against him. Jawad was told he passed the polygraph test. *See* Exhibit A, at 3.

7. Petitioner should be released and it is now clear that this Court has the authority to release him. *See Boumediene*, 533 U.S. ___, slip op. at 50, 58, 59.

8. Based on the Supreme Court's decision in *Boumediene*, the following is now established law:

    d) Under the Constitution, Petitioner is "entitled to the privilege of habeas corpus to challenge the legality of [his] detention." *Id.* at 42. The Suspension Clause "guarantees an affirmative right to judicial inquiry into the causes of detention" (*id.* at 13) and "affirm[s] the duty and authority of the Judiciary to call the jailer to account." *Id.* at 15.

    e) Habeas corpus grants this Court the "authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Id.* at 54; *see also id.* at 57. Further, "the court that conducts the habeas proceeding must have the means to correct errors that occurred during the CSRT proceedings," which includes assessing the sufficiency of the Government's evidence, admitting exculpatory evidence, and permitting Petitioner to supplement the record on review. *Id.* at 57.

 f) Habeas corpus "entitle[s Petitioner] to a meaningful opportunity to demonstrate that he is being held to 'the erroneous application of interpretation' of relevant law." *Id.* at 50.

 g) As part of this "meaningful opportunity," it is "constitutionally required" that Petitioner has "an opportunity ... to present relevant exculpatory evidence that was not made part of the record in the earlier proceedings." *Id.* at 51, 57, 60.

 h) Petitioner also "must" have the opportunity to present "reasonably available evidence demonstrating there is no basis for his continued detention." *Id.* at 61. This includes newly discovered evidence that was unknown or not previously available to the prisoner and was not presented to the CSRT. *See id.* at 51-52, 60-61.

9. Accordingly, we respectfully request that this Court lift the stay and schedule a status conference -- either by telephone or in-person -- at some time convenient to the Court before June 25, 2008. We also request this Court set an evidentiary hearing within the next 45 days at which Respondents must present their justification for the continued detention of Petitioner.

10. We request that the status conference be held before June 25, 2008 so two of Petitioner's counsel, Jeffrey D. Colman and Sapna G. Lalmalani, can discuss and prepare for the hearing with Petitioner during their long-approved visit to Guantánamo on June 30-July 2, 2008.

11. Petitioner has three attorneys with secret clearance, William A. Wertheimer, Jeffrey D. Colman, and Sapna G. Lalmalani. We want to advise the Court that Mr. Wertheimer will be traveling (backpacking) and unavailable for calls from June 17, 2008 through June 23, 2008. Mr. Colman also will be traveling from June 18, 2008 through June 23, 2008, but will be

available for conference calls on the morning of June 19 and June 20. All three attorneys are available in person or on the telephone on the afternoon of June 24 and all day on June 25, 26 or 27.

12.     Petitioner's counsel will be traveling to Guantánamo on June 30 to meet with Petitioner on July 1-2, 2008, and have prepared for this trip for the past three months. We hope this Court will set the date for the habeas corpus hearing now so that during counsel's visit, counsel can inform Petitioner of the status of his *habeas* hearing as well as obtain any declarations or testimony needed for the hearing.

13.     Counsel request that this Court schedule an evidentiary hearing within the next 45 days. We appreciate that a number of significant issues need to be considered and addressed by the parties and the Court. At a minimum, counsel request that at the scheduled evidentiary hearing, this Court order (a) that Respondents produce evidence justifying Petitioner's continued imprisonment; (b) that Petitioner's lawyers be permitted to cross examine Respondents' witnesses, examine any documentary evidence offered or used by Respondent during the hearing, and contest the admissibility and reliability of Respondents' evidence; and (c) that Petitioner be entitled to introduce evidence on his own behalf.

14.     Petitioners further request that the Court order that Respondents serve on Petitioner's lawyers at least two weeks prior to the scheduled hearing: (a) the names of witnesses Respondents intend to call to testify, together with a summary of their anticipated testimony; (b) copies of documentary evidence Respondents anticipate offering into evidence or using during the hearing; (c) exculpatory evidence in Respondent's possession relating to Petitioner; (d) copies of and reports or memoranda concerning Petitioner; and (e) any other information in Respondents' possession relating to Petitioner. If the documents contain

classified material, we ask that Respondents be required to deposit the documents in the Secure Facility created for the prisoners' lawyers at least two weeks before the scheduled hearing.

15.   In addition to the foregoing requests, counsel have two specific requests for what counsel believe is important exculpatory evidence that was not presented to Petitioner's CSRT Tribunal. We request that this Court order Respondents to produce: (a) any and all statements in Respondents' possession by any witness whom the Government asserts inculpates this Petitioner, and (b) any information relating to any polygraph examinations administered to Petitioner while he was in the custody of Respondents. These requests are supported by the ruling in *Boumediene* that Petitioner be provided the opportunity to present relevant exculpatory evidence that was not made part of the record in the earlier proceedings. *See id.* at 51, 57, 60.   To the extent that any classified information is involved, we are certainly willing to review those statements at the Secure Facility established for habeas counsel in Washington, D.C.

WHEREFORE, Petitioner respectfully requests that this Court lift the stay, immediately schedule a status conference between the parties, and set a date for an evidentiary hearing on the merits within 45 days.

Date:   June 16, 2008

Respectfully submitted,

*/s/ Jeffrey Colman*
One of the Attorneys for the Petitioners

Jeffrey D. Colman
Sapna G. Lalmalani
Sarah E. Crane
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Tel: (312) 923-2940
Fax: (312) 840-7340
Email: jcolman@jenner.com

David W. DeBruin (DDC Bar No. 337626)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005-3823
Tel: (202) 639-6000
Fax: (202) 639-6066

William A. Wertheimer, Jr.
LAW OFFICES OF WILLIAM A. WERTHEIMER, JR.
30515 Timberbrook Lane
Bingham Farms, Michigan 48025
T: (248) 644-9200
Email: wert@tir.com

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAWAD JABBAR SADKHAN AL-SAHLANI, )
)
         Petitioner, )
)
v. )
) Case No.
ROBERT M. GATES, SECRETARY OF DEFENSE )
OF THE UNITED STATES OF AMERICA, )
)
         Respondent. )
)

**AFFIDAVIT**

My name is Jawad (Al-Sahlani) Sadkhan, ISN #433. The following is true and correct.

1. I have been imprisoned at Guantanamo for more than five (5) years.

2. I am an innocent man. I have never been an enemy combatant and I have never been a member or leader of the Taliban.

3. I participated in a CSRT in late 2004. At the CSRT I provided a statement that I had never been a leader of the Taliban and that I was not a member of the Taliban. That was true.

4. At the CSRT, I requested witnesses testify on my behalf. One of the witnesses, ISN #435, was willing to testify on my behalf. Before the CSRT, ISN #435 told me he would truthfully tell the CSRT that I was never a member or leader of the Taliban. However, I was then later told by ISN #435 that he was told by an interrogator named Becky that he should not testify at my hearing. ISN #435 told me that Becky told him it was not in his interest to testify on my behalf, that it would hurt his chance of gaining freedom, and that he should refuse to testify.

5. I also requested four witnesses from Afghanistan. Each of the four men would have confirmed that I was never a member of the Taliban or a leader of the Taliban. One of the witnesses was the representative of the police in Mazar Sharif, a large city in northern Afghanistan. They could have confirmed that I was never an interrogator for the Taliban or involved with the Taliban. The United States authorities should have easy access to the police department. The other three witnesses are all from Khoshalabad, a town of 300 houses about 1-2 hour's by car from Mazar Sharif. Each of these three men would have been able to confirm that I was not a member or leader of the Taliban. I lived in that town for almost four months in late 2001. The men in Khoshalabad could truthfully testify that I was not a member of the Taliban and that I was turned in and couldn't afford to pay a bribe that was requested of me by Afghanis. These men offered sheeps to keep me free, but the demand was for thousands of dollars by an assistant to Dostum, a notorious warlord. The assistant's name was Akbar Khan. My best memory is that I communicated this information to the personal representative before my CSRT. I also told the representative that Akbar Khan told me the American authorities were willing to pay money for Arab people like me to be turned in, so I was told that if I didn't pay money to Khan, he would get money from the Americans. I was arrested within two weeks of this meeting with Khan. I told the personal representative about the circumstances of my arrest.

6. I also asked my personal representative to obtain from the U.S. authorities a U.N. document I received after applying for humanitarian asylum in 1998. This document is proof that I was a man without a country who was simply trying to protect my family. I had been shown this document by interrogators while I was at Guantanamo.

7. Before my CSRT, I was given a lie detector test while I was at Guantanamo. During that test, I denied that I was ever in a leadership position in the Taliban. I was told that the test showed that I was truthful. I don't recall if I spoke with the personal representative about the lie detector test.

8. Prior to the CSRT hearing, I spent a short period of time with the personal representative. He did not give me any sense that he was on my side or was trying to help me. He was in uniform when I met with him and he was in uniform of the military at my CSRT hearing. To the best of my knowledge he made no effort to contact my witnesses in Afghanistan. Also, I specifically asked that the personal representative and the CSRT contact the police department in Mazar Sharif. I believed then ... and believe now – that the police department would be able to confirm that I never [text unclear] Taliban or anyone else – and I believed the police department records would not in any way confirm that I was ever an interrogator in Mazar Sharif as was alleged against me.

9. The personal representative was dressed in military uniform. I thought he was part of the prosecution team against me. He did not act as my attorney and we did not have a close relationship or a confidential relationship. He did not try to help me obtain witnesses or present a meaningful defense.

10. I was not an enemy of the United States or its allies. I never fought against the United States, the Northern Alliance, or anyone else associated with the United States. My friends in Khoshalabad were all allies of the Northern Alliance and not allied with the Taliban. It would have been very easy for these facts to be confirmed by the U.S. government officials.

11. I was turned in to American authorities because I refused to pay money and because I am an Arab who was living in Afghanistan. I was not arrested on a battlefield and I was never

involved in any conflict with the United States or its allies. I never provided any support to anyone opposed [text unclear].

12. I am almost 40 years old. I have four children and a wife who I have not seen in more than 5 years. My father is almost 78 years old and he is going blind. He lives with my mother and my wife and children. I love my family very much and desire to see them very soon. I have a cousin in the Iraqi Parliament who, like other members of my family, is working for peace. My family and I opposed Saddam Hussein and his regime.

13. I believe I have been the victim of a terrible injustice and I ask that my case be reviewed fairly by an impartial judge – or judges.

14. This statement was prepared in my presence on April 4, 2007 at Camp Iguana at Guantanamo Bay, Cuba. One of my lawyers, Jeff Colman, wrote this out as we spoke. Each paragraph was translated into Arabic by Felice Bezri. I approve this statement and I request that it be typed and submitted to the Court (and ARB if warranted.)

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Date: April 4, 2007

_____
ISN 433

Witness: _____
    Jeffrey D. Colman 4/4/7

Jeffrey D. Colman
Matthew R. Devine
JENNER & BLOCK LLP

4

330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484