UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
    IN RE:                                    :   Misc. No. 08-442 (TFH)
                                              :
    GUANTANAMO BAY                            :   Civil Action No. 05-0359 (GK)
    DETAINEE LITIGATION                       :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### SUBMISSION IN RESPONSE TO THE HONORABLE THOMAS F. HOGAN'S JULY 8, 2008 STATUS CONFERENCE

Mr. Alhami and Mr. Rahman have been authorized for release and therefore should be treated as part of a group of similarly situated detainees. However, the phrase "authorized for release" has at least two meanings. One meaning is that they are authorized for release and the government is simply looking for a host country that will take them. Unfortunately, that is not the meaning that is applicable to Mr. Alhami and Mr. Rahman. The other meaning of the phrase is to give them to a surrogate jailor; in this case, the country of Tunisia.

In both of our clients cases, the government's use of the term "authorized release" has meant nothing more than a transfer from detention in Guantánamo to detention in a political prison in Tunisia. Although the United Stated government announced that our clients were authorized for release, they failed to disclose that prior to the authorization for release Tunisia enacted its own version of the American Patriot Act. Moreover, the Tunisian government, using the very same "evidence" that Your Honor just Ordered the government to produce (on a date yet to be set) tried both of them in absentia in Tunisia. Thereafter, both of our clients were convicted to serve either 20 and 40 years in an abysmal, human-rights violating prisons in Tunisia. Both our clients gravely fear returning to Tunisia.

At this time Seton Hall Law School's Center for Policy and Research has evaluated fifty-two (52) Department of Defense news releases announcing transfers and releases of Guantánamo Bay detainees. Of the 408 detainees listed in the news releases, only one-hundred-eleven (111) detainees were described as "released," "transferred for release," or the equivalent.  Four were described as "transferred for prosecution," and thirty-seven (37) were listed as "transferred for continued detention. The remaining two-hundred-fifty-six (256) were described as "transferred to the government," or simply "transferred."  "Transferred", when applied to other Tunisian detainees since "released" has included "transfer" and "release" to torture and indefinite imprisonment in the Tunisian prison/torture system. This data suggests a pattern that those released are merely put back into some form of detention.  Our clients fear being part of this pattern.

When this threat of transferring our clients to Tunisia was brought to the attention of Judge Kessler last summer, she entered a preliminary injunction preventing the return of Mr. Rahman.[1] Two other (2) Tunisian detainees were released by the United States back to Tunisia and upon their return in June 2007 were physically tortured and sentenced to prison terms after sham trials.  In at least one of these trials, no evidence whatsoever was offered.[2] Tunisia has been found by the U.S. Department of State to be a habitual violator of human rights[3], yet in the case of the two detainees just referred to, the United States reportedly received and relied upon assurances that the detainees would not be tortured on their return. The Untied States proposed transfer of our clients to Tunisia amounts to transferring them from one Guantánamo to another Guantánamo.

---

[1] Mr. Rahman was our only client at that time that the Government authorized for release.

[2] Bouazza Ben Bouazza, *Ex-Gitmo Detainee Convicted in Tunisia*, ASSOCIATED PRESS    (Oct. 24, 2007).

[3] U.S. DEP'T OF STATE, TUNISIA: COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES – 2007 (Mar. 11, 2008)[hereinafter 2007 TUNISIA REPORT], *available at* http://www.state.gov/g/drl/rls/hrrpt/2007/100607.htm.

Judge Kessler has protected our clients fully and at the present time she has a preliminary injunction restricting the government's movement of Rahman. There is also a motion for preservation of evidence before Judge Kessler and our office has just filed a summary judgment motion seeking the release of our clients, which is pending.

It would be a huge disservice to transfer a case where an existing and actively pending preliminary injunction is before another presiding judge. It is unfair to include these detainees within a larger group of people, who may only need assistance in finding a new and safe home. Even if our clients are released to some other country, we have to deal with the fact that they may be extradited to Tunisia.

We do not want to belabor the point, but it is significant that the United States government never told us that our clients were in fact convicted in absentia of an *ex post facto* violation of the Tunisian Patriot Act. Throughout the entire time, the United States acted as if they were simply releasing them. It is certainly strange to understand how two people could be found to have violated an act passed in 2003 when they had been in Guantánamo since 2002.

I would also like to take this opportunity to offer several other points. One is the suggestion that a "first in" and "first out" philosophy will aid in expeditious hearings. First, do you measure this by when a detainee filed a *habeas* petition or do you measure that by when a detainee first arrived in Guantánamo? Perhaps, you measure that from when they were first detained. Both of our clients were detained before Guantánamo opened. We only learned of their names in March of 2005. One has been there since the middle of 2002 and the other had arrived there later than 2002.

It would be incredibly useful if the United States government would actually provide the names, ISN numbers, and the dates of arrival for each detainee in Guantánamo. The Untied

States indisputably has that data. It would also be useful to decide the date when each person was originally detained. People who were detained from November of 2001 ought to be treated differently then people who were arrested in late 2002 and brought to Guantánamo at that time even if they arrived at the same time.

While counsel advocated strongly for the CSRT returns, which were ultimately provided as part of *habeas* litigation for some people including our clients, the government has never asserted whether that was all the information provided to those at the CSRT hearing. Moreover, the names of those at the hearing were redacted. This secrecy is pointless and interferes with the preparation of our current hearing.

Lastly, there is something called the Annual Review Board (ARB), which took place every year beginning in 2005. Each of those years the United States government updates the information so that whatever new information the government received in 2005, 2006 and 2007 they included accordingly for both our clients. Your honor, we ask that the government immediately hand over all the information provided to the review panels and to the CSRT tribunal and have these reports **unredacted**. There is no reason not to provide the unredacted detainee reports. Any delay in producing them, unredacted, simply delays our clients' due process for no purpose.

                                          Respectfully submitted,

                                          _____/s/_____
                                          JOSHUA W. DENBEAUX (JD7849)
                                          Denbeaux & Denbeaux
                                          366 Kinderkamack Road
                                          Westwood, NJ  07675
                                          (201) 664-8855
                                          Attorneys for Petitioners