D IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: ) | | |
| GUANTANAMO BAY ) | | |
| DETAINEE LITIGATION ) | Misc. No. 08-442 (TFH) | |
| ) | | |
| ) | Civil Action No. | 05-CV-748 (RMC) |
| ) | | 05-CV-764 (CKK) |
| ) | | 05-CV-1347 (GK) |
| ) | | 05-CV-1504 (RMC) |
| ) | | 05-CV-2215 (RMC) |
| ) | | 05-CV-2349 (RMC) |
| ) | | 05-CV-2386 (RBW) |
| ) | | 06-CV-1766 (HHK) |
| ) | | 08-CV-____ (___) |
| ) | | 08-CV-____ (___) |

**STATEMENT REGARDING HEARING OF JULY 8, 2008**

We appreciate the Court's concern regarding prisoners who have been approved to leave Guantánamo Bay via Guantánamo's Administrative Review Board process, but who remain incarcerated. We write to clarify what we believe to be the situation regarding those men.

We note at the outset that the majority of prisoners who have been released from Guantánamo Bay were not similarly approved to leave Guantanamo before their transfer. According to our records, in 2007 approximately seventy percent of those who left Guantánamo were not so designated. In most cases, political agreements between the receiving country and the United States played a much larger role in the decision to release prisoners than any decision regarding the individual men.

The Government stated at the status conference that there are 54 prisoners in Guantánamo Bay who are now approved to leave Guantanamo. The Government has failed

1

to provide counsel or the Court with a full list of the men. It would be of great assistance to counsel and the Court should they do so – and continue to update the list as more prisoners are so designated. Nonetheless, we understand the following.

17 of the 54 are Uighurs who cannot be safely sent home to China.

Of the remaining 37 men, several of whom are our clients, counsel believe there are three categories of prisoners.

1. Prisoners who can safely go home, but for whom the United States has failed to reach an agreement with the home country to allow their repatriation. For instance, approximately 11 Yemenis have been approved to leave, yet some have sat in Guantánamo for years after that determination, awaiting incredibly slow-moving negotiations between respondents and Yemen.

2. Prisoners who cannot safely be returned to their home country, for fear of abuse and torture, due to personal circumstances combined with their countries' horrendous human rights records. These prisoners are from – among others – Tunisia, Algeria, Libya, Uzbekistan and possibly Russia.

   Two prisoners were returned to Tunisia last year and were promptly beaten, threatened with rape of them and their families, and subjected to sham trials, witnessed by one of the undersigned counsel. Two prisoners were returned to Algeria on July 1, 2008, but have not been heard from since. Their families have no news and the Algerian government has refused to release any information as to the men's whereabouts.

   Petitioners' counsel have worked on a number of fronts to try to secure asylum states for the prisoners still in Guantánamo. We have visited and spoken to officials from various European and Arab states. None of these efforts have yet borne fruit.

>Respondents have refused to discuss with counsel their efforts to secure safe places for the men, though counsel stand ready to meet and confer with respondents at their earliest convenience.

3. Prisoners who are from nations with terrible human rights records, such as Algeria, but who are willing to return home, despite the risk.

Counsel notes that several of the prisoners approved to leave Guantanamo, including at least three Tunisian prisoners, one Algerian, one Yemeni, one Palestinian and one Somalilander, are petitioners in cases before Judge Leon.

A large number of these men are housed today in the harshest prison in Guantánamo, Camp 6. The regimen there is one of almost complete isolation, with men confined to solitary, windowless, all-steel cells the size of a bathroom. Lights (fluorescent – there is no natural light) are on 24 hours a day. This is essentially the same isolation regimen that was imposed on downed U.S. airmen by the North Koreans in 1952-53, and has often been described to counsel as akin to "living in your own grave." Camp 6 is even harsher than super-maximum security facilities in the United States, as prisoners in Camp 6 have less access to the outside world via phone calls to family and mail, and fewer opportunities for mental stimulation or the social activity necessary to sanity. Of course no one in Guantánamo has been convicted of a crime; only a handful have even been charged.

Nothing in this statement should be construed as indicating the prisoners approved to leave do not want to pursue the merits of their habeas claims; i.e. whether the government had the power to imprison them in the first place. The power of the enemy combatant label should not be underestimated: only eight prisoners have been resettled in an asylum state – all to Albania – and all had been found *not* to be enemy combatants.

//

//

July 9, 2008                                        Respectfully submitted,

_____

Zachary Katznelson                     Shayana Kadidal (D.C. Bar No. 454248)
Clive Stafford Smith                   Gitanjali S. Gutierrez
Cori Crider                            Pardiss Kebriaei
Reprieve                               Emi MacLean
PO Box 52742                           Center for Constitutional Rights
London EC4P 4WS                        666 Broadway, 7th Floor
United Kingdom                         New York, New York 10012
Tel: 011 44 207 353 4640               Tel: (212) 614-6438
Fax: 011 44 207 353 4641               Fax: (212) 614-6499

Jerry Cohen                            Ellen Lubell, Esq.
Burns & Levinson, LLP                  Doris Tennant, Esq.
125 Summer Street                      Tennant Lubell, LLC
Boston, MA 02110                       288 Walnut St., Suite 500
Tel: (617) 345-3000                    Newton, MA 02460
                                       Tel: (617) 969-9610
Stewart Eisenberg                      Fax: (617) 969-9611
Weinberg & Garber, PC
71 King Street
Northampton, MA 01060
Tel: (413) 582-6886
Fax: (413) 582-6881

Brent N. Rushforth                     Joseph E. O'Neil
Heller Ehrman, LLP                     Lavin O'Neil
1717 Rhode Island Avenue, NW           190 North Independence
Washington, DC 20036                   Mall West, Suite 500
Tel: (202) 912-2500                    Philadelphia, PA 19106
Fax: (202) 912-2020                    Tel: (215) 627-0303
                                       Fax: (215) 627-2551

Darold W. Killmer
Mari Newman
Sara J. Rich
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Tel: (303) 571-1000
Fax: (303) 571-1001

CERTIFICATE OF SERVICE

    I hereby certify that on the 9th day of July, 2008, a true copy of the foregoing document was served upon each attorney of record by electronic filing, via ECF, of this document with the United States District Court for the District of Columbia.

                                        ___/s__Gitanjali Gutierrez_____