Filed via ECF with permission of the CSO

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY**<br>**DETAINEE LITIGATION** | Misc. No 08-442 (TFH) |
| AMEZIANE v. BUSH<br>ZALITA v. BUSH<br>TAHER v. BUSH | 05-CV-392 (ESH)<br>05-CV-1220 (RMU)<br>06-CV-1684 (GK) |

## STATEMENT REGARDING HEARING OF JULY 8, 2008

Pursuant to the Court's direction, counsel for Petitioners in the above-captioned actions hereby submit this statement regarding issues discussed at the hearing held on July 8, 2008.

1.  For the Court's benefit we summarize below the core of the proposal we made at yesterday's hearing. The Court should order that Respondents produce the classified CSRT and ARB records[1] for all Petitioners by July 18, 2008. The parties should then be required to file separate status reports, due one week after the production of the CSRT/ARB records (July 25, 2008).

---

[1] The Defense Department's rules require it to have reconsidered annually, on the basis of "all relevant and reasonably available information," whether an enemy combatant "represents a continuing threat to the U.S. or its allies in the ongoing armed conflict against al Qaeda and its affiliates and supporters (e.g., Taliban), and whether there are other factors that could form the basis for continued detention (e.g., the enemy combatant's intelligence value and any law enforcement interest in the detainee." Memorandum for Secretaries of the Military Departments, Sec. 1, at 1, and Sec. 1.c, at 2 (July 14, 2006), *available at* http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf. Indeed, new claims were frequently raised in ARBs. Production of these records will enable habeas counsel to begin their investigation of the accuracy of these additional claims now. The government does not deny that it has all of these records readily at hand.

Respondents' status reports should indicate whether they intend to amend the existing returns. If Respondents intend to amend their returns, they should file a motion for leave to amend, attaching the proposed amendments and giving an explanation for why amendment is appropriate. The Court should impose a short deadline for the filing of any such motions for leave. Respondents' status reports should also indicate whether the record in any DTA action filed by the same Petitioner has been assembled (in whole or in part).

Petitioners' status reports may request orders requiring thirty days notice of transfer. If a Petitioner requests such an order, this Court should grant it as a matter of course.

2. The Court suggested during yesterday's hearing that, as a general principle, cases ought to be heard in order of their docket numbers, the implication being that prisoners who filed their petitions later may have sat on their rights. As a factual matter, that is simply not the case. Petitioners who filed the earliest cases on the docket were those who were lucky enough to have family members on the outside who had reason to believe their loved ones had been spirited away to Guantánamo and were able to get in contact with attorneys at the Center for Constitutional Rights or others and indicate their desire to file habeas petitions.[2] Other prisoners have faced cultural, linguistic, and logistical barriers to contacting attorneys. The government has never allowed attorneys to visit the base to explain to unrepresented prisoners that they have the right to file a habeas petition.[3]

---

[2] In the early stages of the Guantánamo litigation, the only prisoners represented were British and Australian, as they were the only ones whose families understood the system sufficiently, and had the ability to contact U.S. lawyers to take these cases without charge. Because of Respondents' unwillingness to allow lawyers to communicate with detainees to see if they are interested in having a lawyer challenge their detention, lawyers have been forced to travel at their own expense to countries around the world to offer free assistance to the prisoners' families and secure authorizations for ongoing legal representation. This presented a number of extraordinary challenges, and at least one lawyer was detained by the security police of a foreign country because of this work.

[3] Even after the Supreme Court's 2004 *Rasul* decision, the government initially refused to permit lawyers to advise detainees that they *could* contest their confinement. The government also refused for a time to allow lawyers

Moreover, the docket number is not a reliable indicator of the length of a prisoner's detention by the Untied States. Many individuals were held in other facilities for varying lengths of time before being transferred to Guantánamo.

We believe this argues against hearing cases on a mechanical first-in, first-out basis. As we have indicated before to the Court, we believe cases are likely to naturally sort themselves into order. Some petitioners will be in a position to proceed expeditiously to hearing or summary judgment motions. Other cases may require more time to reach resolution (for example, cases involving a need for discovery). The submission of status reports by petitioners should provide the Court with a clearer picture of how these varied cases will proceed towards resolution.

3.      The government indicated at the hearing that there are some 54 prisoners at the base cleared for release. The Court should demand that the government produce a list of the prisoners who are cleared for release and notify those prisoners' counsel of the fact that their clients have been so cleared. Prisoners cleared for transfer should also be listed and noticed to counsel. The list should be updated, and counsel notified, whenever additional prisoners are cleared for release or transfer.

---

to visit based on prisoner-next-friend authorizations, and has frequently challenged these "next friend" authorizations as either presumptively invalid for the representation of Guantánamo detainees, or impermissible as regards particular detainees.

In an opinion in response to one of these government challenges to a "next friend" authorization, Judge Kessler criticized these government attempts to limit representation, describing the petitioner in this way: "He is unfamiliar with the United States Court System.  He does not speak English.  He likely does not know what the term *habeas corpus* means.  He has no criminal charges against him. He has every reason to distrust his captors and keepers…He has every reason to challenge his confinement…He does not have access to a law library.  He cannot communicate with an attorney, not does he even know at present that he has an attorney.  He has no expectation of release, ever.  In light of these facts, there can be little doubt in the Court's mind that Mr. Al Razak is not able to challenge the legality of his detention." *Razak v. Bush*, 05-1601, Dkt. 41 (Dec. 1, 2006).

4.     As was suggested during the previous meetings with Your Honor and Chief Judge Lamberth, the Court should require that appropriate government agencies and departments certify the accuracy of any factual statements that appear in court filings, including at the outset the returns and any amendments to the returns. Justice Department attorneys must rely on Defense Department, CIA, and State Department personnel to provide factual information that, in the past, has been inaccurate. A high level attorney with the appropriate agency or department should be required to sign off on factual filings or submit a declaration averring that he or she has reviewed the filing, discussed the information with appropriate personnel, and that the information contained therein is accurate.

5.     Below we briefly relate the status of several of our individual cases which are poised to proceed quickly before their assigned judges.

Petitioners Djamel Ameziane in *Ameziane v. Bush*, No. 05-CV-392 (ESH), Mohammed Ahmed Taher in *Taher v. Bush*, No. 06-CV-1684 (GK), and Mohammed Sulaymon Barre in the recently-filed *Barre v. Bush*, 08-CV-1153 (HHK),[4] are among those whose cases counsel are prepared to litigate on the merits without further delay. In *Ameziane v. Bush*, the government produced a factual return on July 11, 2005, on the basis of which counsel intends to move for summary judgment. The government should be allowed to amend only if it can show good cause to do so, and it should be required to make its showing as quickly as possible. The government's filing of a motion to amend the return should in no way delay other proceedings, including Petitioner's motion for summary judgment.

---

[4]  *Barre v. Bush* was filed subsequent to the Supreme Court's decision in *Boumediene v. Bush* recognizing the constitutional right of prisoners at Guantánamo to challenge the legality of their detention in federal court through a writ of habeas corpus. At the time of filing, his petition had not been subject to a coordination order.

Counsel are similarly prepared to file for summary judgment in *Barre v. Bush* and *Taher v. Bush* on the basis of classified and unclassified CSRT records produced by the government in Petitioners' corresponding DTA cases on April 28, 2008, and May 15, 2008, respectively. (We do not have factual returns for either. Taher moved for production of a factual return in December 2006. That motion is fully briefed and pending.) Counsel have sought the government's agreement to allow Petitioners to use in their habeas cases the CSRT records produced by the government in their DTA proceedings, but the government has not stated its position on this request to date.

Petitioner Abu Abdul Rauf Zalita, 05-cv-1220, is a Libyan citizen who fled his country to escape persecution over fifteen years ago and whom the government has attempted to transfer from Guantánamo to the custody of the Libyan government since December 2006. Petitioner has been cleared for released from Guantanamo and now requires judicial supervision of transfer negotiations with the government.  Petitioner is more likely than not to face persecution, torture or extrajudicial execution at the hands of the Qadhafi dictatorship, yet the government refuses to negotiate with Petitioner concerning reunification with his wife and child in Afghanistan or transfer to a different third country for safe resettlement.  In 2007, Petitioner appealed the district court's denial of his motion to enjoin his transfer to Libyan authorities and to compel the government to negotiate with Petitioner for his release to a safe third country. Petitioner filed a petition for certiorari from the Court of Appeals' affirmance of the denial.  On June 23, 2008, the Supreme Court granted Zalita's petition for certiorari, vacated the judgment and remanded the case to the Court of Appeals for further consideration in light of in light of *Boumediene v. Bush*, 553 U. S. ___ (2008).  Per the November 15, 2007 order by the Court of Appeals, the parties will file motion to govern further proceedings by no later than July 12, 2008.

5

Fully briefed and pending before Judge Urbina is Zalita's Motion for a Hearing for Inquiry Concerning Destruction of Evidence Related to CIA Detainee Interrogations [dkt no. 82]. The motion concerns evidence of the destruction of exculpatory information by the government, and Zalita seeks a prompt hearing date on this motion.

We thank the Court for providing the opportunity to make this submission.

Dated: July 9, 2008                                Respectfully submitted,

                                        /s/ Shayana Kadidal
Shayana Kadidal (D.C. Bar No. 454248)
Gitanjali S. Gutierrez
Pardiss Kebriaei
Emi MacLean
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6499