IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY DETAINEE LITIGATION | Civil Action Nos. 05-CV-1347(GK), 05-CV-2386 (RBW), 08-CV-0987 (JDB) |

### RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS' MOTIONS FOR PRELIMINARY INJUNCTION REQUIRING ADVANCE NOTICE OF TRANSFER OR RELEASE FROM GUANTANAMO BAY

Respondents hereby oppose the motions of petitioners in these cases for a preliminary injunction requiring respondents to provide the Court and petitioners' counsel with advance notice before any transfer or release of the petitioner-detainees from Guantanamo Bay, Cuba ("Guantanamo").[1]  For the reasons that follow, the motions should be denied.[2]  Not only is jurisdiction to provide the requested relief lacking, the recent unanimous decision of the Supreme Court in *Munaf v. Geren*, ___ U.S. ___ 128 S. Ct. 2207 (June 12, 2008), demonstrates that this Court cannot grant the requested injunction in these *habeas corpus* actions without impermissibly intruding on the powers constitutionally entrusted to the Executive Branch and involving itself in foreign policy determinations not appropriate for the judiciary.

---

[1] *See Dokhan v. Bush*, No. 08-CV-0987 (JDB) (dkt. no. 2, dated Jun. 17, 2008); *Mohammon v. Bush* (Petitioners Ghaffar & Noori), No. 05-CV-2386 (RBW) (dkt. no. 451, filed Jun. 23, 2008); *Mohammed v. Bush*, No. 05-CV-1347 (GK) (dkt. no. 31, filed Jun. 30, 2008); *Mohammon v. Bush* (Petitioner Naji), No. 05-CV-2386 (RBW) (dkt. no. 473, filed Jul. 3, 2008).

[2] Because these motions involve the same legal issues, respondents are providing this consolidated response.  The advance notice of transfer issue raised in these motions, and likely to be raised in numerous other forthcoming motions, should be resolved in a coordinated fashion for the Guantanamo Bay detainee cases.

## BACKGROUND

These *habeas corpus* petitions were on behalf of individuals[3] currently detained as enemy combatants at Guantanamo.[4]  Petitioners suppose that, at some point in the future, respondents might transfer petitioners to their home countries or another country where they might be mistreated.  Thus, although the very purpose of this proceeding is necessarily to achieve the detainees' release from detention at Guantanamo, petitioners have moved for an order that would require advance notice of any transfer, which might then be used to delay or prevent entirely such a release from United States' custody.

Aside from the speculative nature of petitioner's belief as to what might happen to them in connection with a transfer, the factual premises of their motions are incorrect.  As described in the declarations attached hereto as Exhibits 1 & 2, attested to by Ambassador Clint Williamson and Deputy Assistant Secretary of Defense for Detainee Affairs Sandra Hodgkinson, where appropriate, the United States transfers Guantanamo detainees to the control of other countries, typically a detainee's country of citizenship.  For any transfer, a key concern of the United States is whether the foreign government will treat the detainee humanely and in a manner consistent with its international obligations.  Williamson Decl. ¶¶ 2-4; Hodgkinson Decl. ¶¶ 3-7.  It is the

---

[3] Respondents reserve the right challenge the standing of next-friend petitioners in these cases to serve as next friends, as appropriate.  *See Whitmore v. Arkansas*, 495 U.S. 149 (1990).  For example, with respect to purported next friend Sami Al Hajj in *Dokhan v. Bush*, No. 08-CV-0987 (JDB), although "[t]he burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court," neither the petition in the case nor its exhibit demonstrates the necessary "significant relationship," between Sami Al Hajj and the detainee for whom he purports to act as "next friend."  *Id.* at 164; *Dokhan* Petition (dkt. no. 1).

[4] Petitioners in these cases (ISNs 281, 311, 317, 584, and 744) were previously determined by Combatant Status Review Tribunals ("CSRTs") to be enemy combatants.  *See* Second Decl. of Karen L. Hecker ¶¶ 2–3 (attached as Exhibit 3).

policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured.  *Id*. ¶ 6; Williamson Decl. ¶ 4.  If a transfer is deemed appropriate, a process is undertaken, typically involving the Department of State, in which appropriate assurances regarding the detainee's treatment are sought from the country to whom the transfer of the detainee is proposed.  Hodgkinson Decl. ¶ 6; Williamson Decl. ¶¶ 5-6.  Once the Department of Defense initially approves a transfer and requests the assistance of the Department of State, the Department of State initiates transfer discussions with the foreign government concerned.  *Id.*  Such discussions include an effort to seek assurances that the United States Government considers necessary and appropriate with regard to the country in question.  In every transfer case in which continued detention or other security measures by the transferee government are foreseen, such assurances include assurances of humane treatment and treatment in accordance with the international obligations of the foreign government accepting transfer.[5]  *Id.*  Among other things, the Department of State considers whether the nation in question is a party to relevant treaties such as the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), and ensures

---

[5] In appropriate cases of transfers of Guantanamo detainees, the dialogue between the United States and a receiving government will include efforts to ascertain or establish what measures the receiving government intends to take, pursuant to its own domestic laws and independent determinations, that will ensure that the detainee will not pose a continuing threat to the United States and its allies.  Hodgkinson Decl. ¶ 5.  In all cases where a transfer is consummated, however, the detainee is transferred entirely to the custody and control of the other government; once transferred, the individual is no longer in the custody or control of the United States.  *Id*.  Any future detention of that individual is by the foreign government pursuant to its own laws and not on behalf of the United States.  *Id.*

that assurances are tailored accordingly if the nation concerned is not a party or other

circumstances warrant.  *Id.*[6]

The determination whether it is more likely than not an individual would be tortured by a

receiving foreign government, including, where applicable, evaluation of foreign government

assurances, involves senior level officials and takes into account a number of considerations,

including whether the nation concerned is a party to certain treaties; the expressed commitments

of officials of the foreign government accepting transfer; the particular circumstances of the

transfer, the country and the individual concerned; and any concerns regarding torture that may

arise.  Williamson Decl. ¶¶ 6-8; Hodgkinson Decl. ¶¶ 6-7.  Recommendations by the Department

of State are developed through a process involving the Bureau of Democracy, Human Rights, and

Labor (which drafts the Department of State's annual Country Reports on Human Rights

Practices) and the relevant Department of State regional bureau, country desk, or U.S. Embassy.

Williamson Decl. ¶ 7.  When evaluating the adequacy of assurances, Department of State

officials consider the identity, position, or other information concerning the official relaying the

assurances; political or legal developments in the foreign country concerned that provide context

for the assurances; and the foreign government's incentives and capacity to fulfill its assurances

---

[6] The particulars of whatever discussions there might be between the Executive Branch and foreign countries in any specific case of a proposed transfer of a Guantanamo detainee are closely held within appropriate Executive Branch channels.  The United States' ability to seek and obtain assurances from a foreign government depends on its ability to treat its dealings with the foreign government with discretion.  Williamson Decl. ¶ 9.  Obviously, diplomatic sensitivities surround the Department of State's communications with foreign governments concerning allegations relating to torture.  Williamson Decl. ¶¶ 9-11; *see* Hodgkinson Decl. ¶ 8. The United States Government typically does not unilaterally make public any specific assurances or other precautionary measures obtained, because such disclosure would have a chilling effect on and cause damage to this country's ability to conduct foreign relations. Williamson Decl. ¶¶ 9-11.

to the United States.  Williamson Decl. ¶ 8.  In an appropriate case, the Department of State may

consider various monitoring mechanisms for verifying that assurances are being honored.  *Id.*  If

a case were to arise in which the assurances obtained from the receiving government were not

sufficient when balanced against treatment concerns, the United States would not transfer a

detainee to the control of that government unless the concerns were satisfactorily resolved.

Hodgkinson Decl. ¶ 7; Williamson Decl. ¶ 8.  Indeed, circumstances have arisen in the past

where the Defense Department decided not to transfer detainees to their country of origin

because of mistreatment concerns.  Hodgkinson Decl. ¶ 7; Williamson Decl. ¶ 8.

In sum, the Executive Branch employs an elaborate inter-agency process for evaluating

the propriety of transfers of Guantanamo detainees and implementing the United States' policy

not to repatriate or transfer a detainee to a country where the United States believes it is more

likely than not that the individual will be tortured.  That process involves senior level officials

and includes consideration of the detainee's particular circumstances, an informed and

well-rounded analysis of the current situation on the ground in the prospective transferee country,

the input of various Department of State offices with relevant knowledge, personal interactions

and negotiations with senior officials of the prospective transferee government, and consideration

of assurances provided by the prospective transferee country, as well as their sufficiency and any

mechanisms for verifying them.

## ARGUMENT

**I.    NOTWITHSTANDING *BOUMEDIENE*, SECTION 7 OF THE MCA DEPRIVES THIS COURT OF JURISDICTION TO CONSIDER ANY CHALLENGE OTHER THAN TO THE CORE HABEAS INQUIRY OVER THE LAWFULNESS OF DETENTION.**

Petitioners are not entitled to their requested relief because the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7(a), 120 Stat . 2600 (codified at 28 U.S.C. § 2241(e)), legitimately withdraws court jurisdiction to provide relief concerning any transfer of a detainee from Guantanamo notwithstanding the Supreme Court's decision in *Boumediene v. Bush*, 128 S. Ct. 2229 (June 12, 2008).  Thus, the Court should deny petitioners' motion without even considering the traditional balancing test for obtaining preliminary injunctive relief.

Through § 7 of the MCA, Congress expressly withdrew from this Court's jurisdiction two independent and enumerated types of actions that individuals detained by the United States as enemy combatants could bring.  Specifically, Congress carved out of this Court's jurisdiction claims concerning statutory habeas corpus generally:

> No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

28 U.S.C. § 2241(e)(1).  Congress separately withdrew federal court jurisdiction concerning any other aspects of the detention outside of the core habeas function, such that:

> [N]o court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to *any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien* who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant . . . .

28 U.S.C. § 2241(e)(2) (emphasis added).  Under the recent decision in *Boumediene*, it is clear that the Supreme Court did not invalidate the MCA except to the extent that it precluded courts from exercising core habeas functions, *i.e.*, challenging the legality of the detention itself. Petitioners' claims here indisputably fall outside the *Boumediene* holding because they do not concern the core habeas function.  They do not challenge the legality of petitioners' detention, but rather raise an ancillary issue related to the potential transfer of petitioners out of United States' custody.  Jurisdiction, therefore, is lacking, and petitioners' motions must be denied.

### A.    *Boumediene* Did Not Invalidate The MCA Except To The Extent That It Precluded Courts From Exercising Core Habeas Functions.

In *Boumediene*, the Supreme Court held that Guantanamo Bay detainees have a constitutional right to seek *habeas corpus* protected by the Suspension Clause, and that, as applied to detainees who are being held on the basis of an enemy combatant determination by a Combatant Status Review Tribunal ("CSRT") and whose habeas challenge goes to the legality of their detention, section 7 operates as an unconstitutional suspension of the writ.  This holding is limited in two important respects.

First, *Boumediene* holds that the first part of § 7 of the MCA, 28 U.S.C. § 2241(e)(1), is unconstitutional in some circumstances, but only insofar as it denies habeas review to detainees who have available to them only the CSRT process and their who raise a core habeas challenge, *i.e.*, to challenge the legality of their *detention*.  *See Boumediene*, 128 S. Ct. at 2269 ("The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power *to detain*.") (emphasis added).  Put another way, to the extent a petitioner seeks habeas relief concerning collateral or ancillary issues not directly

connected to the legality of detention, *Boumediene*'s holding does not invalidate the jurisdiction limiting provision of § 2241(e)(1). The result in *Boumediene* thus can be read not as a facial invalidation of § 2241(e)(1), but an invalidation of § 2241(e)(1) only as applied to the particular factual situation presented, as it was never established that "no set of circumstances exists under which [§ 7] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Indeed, it is indisputable that the challenge presented by the *Boumediene* petitioners was not the right to raise a habeas challenge to some ancillary issue, such as the petitioners here seek to do, but rather to challenge to the legality to the fact of their detention at all. *See Ayotte v. Planned Parenthood*, 546 U.S. 320, 328-29 (2006) ("[T]he 'normal rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact.'").

Indeed, with regard to how much of § 2241(e)(1) remains operative following *Boumediene*, a reviewing court has an obligation to preserve as much of a statute as is legally permissible. Thus, "a court should refrain from invalidating more of the statute than is necessary," and "whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of [the] court to so declare, and to maintain the act in so far as it is valid." *Wyoming v. Oklahoma*, 502 U.S. 437, 460 (1992) (quoting *Regan v. Time*, 468 U.S. 641, 652 (1984) (plurality opinion). Thus, because Acts of Congress are valid to the extent they operate constitutionally, the Court's holding must be applied with an eye to "limit[ing] the solution to the problem." *Ayotte*, 546 U.S. at 328-39. At bottom, because the problem alleged in *Boumediene* as to § 2241(e)(1) concerned only a core habeas challenge to the legality of detention made by a petitioner with access only to the CSRT process, and not to an

- 8 -

ancillary issue not dealing with the legality of detention and related to a possible future transfer

out of United States' custody, § 2241(e)(1) remains operative here and removes jurisdiction with

regard to the instant challenge.

Second, *Boumediene*'s holding does not invalidate the second part of § 7.  Indeed, the

Court expressly noted that it was not deciding whether Guantanamo detainees have a

constitutional right to bring non-core habeas claims, such as conditions of confinement claims –

one type of claim barred by § 2241(e)(2).  *See Boumediene*, 128 S. Ct. at 2274 ("[W]e need not

discuss the reach of the writ with respect to claims of unlawful conditions of treatment or

confinement.").  But even after *Boumediene*, Congress' withdrawal of federal court jurisdiction

over "any other action . . . relating to any aspect of the detention, transfer, treatment, trial, or

conditions of confinement" remains operative to deprive this Court of jurisdiction over

petitioners' claims here, which are ancillary to the core habeas issue.

The Supreme Court's rationale for invalidating § 2241(e)(1), as applied, has no

application to § 2241(e)(2).  The *Boumediene* majority discusses the detainees' constitutional

right to bring only core *habeas* actions – challenging the lawfulness of detention – as opposed to

the broader class of "any other action . . . relating to any aspect of the detention."  *See, e.g.*,

*Boumediene*, 128 S. Ct. at 2262 ("Petitioners, therefore, are entitled to the privilege of habeas

corpus *to challenge the legality of their detention*.") (emphasis added).  Unlike § 2241(e)(1),

however, § 2241(e)(2) does not impair the Guantanamo detainees' ability to pursue a writ of

*habeas corpus*.  Rather, it expressly limits *other* types of actions that Guantanamo detainees

might bring.  Indeed, the Court explicitly distinguished between habeas actions governed by

§ 2241(e)(1), and *other*, *non-habeas* actions governed by § 2241(e)(2), by recognizing that "[t]he

- 9 -

structure of the two paragraphs [i.e. (e)(1) and (e)(2)] implies that habeas actions are a type of action 'relating to an aspect of the detention, transfer, treatment, trial, or conditions of confinement;'" that is, habeas actions are merely one type of action within the broader set of actions "relating to an aspect of . . . detention." *See id.* at 2243. Because § 2241(e)(2) addresses "other action[s]" and not any constitutional habeas right the detainees may hold, the Suspension Clause provides no basis for invalidating it.

Additional evidence that *Boumediene* did not reach § 2241(e)(2) comes from the Court's discussion of what is constitutionally required in habeas proceedings. That discussion does not suggest that Guantanamo detainees have a right to challenge "other action[s]" related to "aspects" of their detention. Instead, the Court's discussion is phrased in terms limiting a detainee's habeas action narrowly to a challenge of his status or custody. *See*, *e.g.*, *Boumediene*, 128 S. Ct. at 2266 ("We do consider it uncontroversial, however, that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law."); *id.* at 2269 ("The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain."); *id.* at 2273 (detainee must have opportunity to present "reasonably available evidence demonstrating there is no basis for his continued detention"). None of the language suggests that a petitioner's *constitutional* habeas rights include a right to challenge any other aspect related to their detention beyond its legality. Thus, the Court's holding that the Suspension Clause requires invalidation of § 7 of the MCA as

- 10 -

applied to aliens detained at Guantanamo should be read to apply only to the first part of § 7, *i.e.,* § 2241(e)(1), and only as discussed above.[7]

A contrary conclusion would require this Court to conclude that while the Supreme Court *expressly* held that § 2241(e)(1) is unconstitutional as applied to Guantanamo detainees who have only had the benefit of CSRT procedures, it determined *sub silentio* the constitutionality of 28 U.S.C. § 2241(e)(2).  But if the Court had intended to pass on § 2241(e)(2)'s constitutionality, the only rationale that might have supported that conclusion would have been if the Court had determined that conditions of confinement claims are encompassed in the detainees' constitutional right to habeas, so that elimination of jurisdiction over those claims jeopardized their constitutional habeas right.  But, as noted above, the Court expressly stated that it was *not* deciding that issue.[8]  *See Boumediene*, 128 S. Ct. at 2274.

---

[7]  Although the Court's opinion refers generally to § 7, without identifying a particular subsection of 28 U.S.C. § 2241(e), *see, e.g., Boumediene*, 128 S. Ct. at 2274 ("MCA § 7 thus effects an unconstitutional suspension of the writ."); *id.* at 2274 ("The only law we identify as unconstitutional is MCA §7, 28 U.S.C.A. § 2241(e) (Supp. 2007)"), that is an insufficient basis for construing the Court's opinion to invalidate *all* of § 7.  This is particularly so because the Court's rationale for invalidating § 2241(e)(1) has no application to § 2241(e)(2).  In fact, at one point in its opinion, the Court seems to acknowledge that its reference generally to § 7 is simply short-hand for referring to § 2241(e)(1).  *See id.* at 2265 (stating that § 7 is the source of the relevant "jurisdiction-stripping language," but citing specifically to subsection § 2241(e)(1)).

[8]  Moreover, the fact that the constitutionality of § 2241(e)(2) was never challenged in *Boumediene* further supports the argument that the Court's holding does not invalidate that provision.  *See Belbacha* v. *Bush*, 520 F.3d 452, 455 (D.C. Cir. 2008) ("In [the court of appeals' decision in] *Boumediene* we held that § 7(a)(1) [28 U.S.C. § 2241(e)(1)] of the MCA does not violate the Suspension Clause of the Constitution").  It would be odd to interpret the Court's decision in *Boumediene* as not only having reached the constitutionality of § 2241(e)(2), *sua sponte* and for the first time on appeal, but also to have determined that the provision is unconstitutional without any explanation as to why.

While the continuing vitality of § 2242(e)(2) is therefore clear, if any doubt remained as noted above, the Court must consider its duty to preserve as much of a statute as is constitutional. *See Tilton* v. *Richardson*, 403 U.S. 672, 684 (1971) ("'The unconstitutionality of a part of an act does not necessarily defeat . . . the validity of its remaining provisions. Unless it is evident that the Legislature would not have enacted those provisions which are within its power . . . the invalid part may be dropped if what is left is fully operative as a law.'")). Indeed, because § 2241(e)(2) is severable, there is no obstacle to continuing to apply that provision, despite the *Boumediene* Court's holding that § 2241(e)(1) cannot validly withdraw the privilege of the writ of *habeas corpus* as applied to detainees at Guantanamo who have only the benefit of CSRT procedures. *See Ayotte*, 546 U.S. at 330 ("After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?").[9] Section 2241(e)(2) is thus severable and should remain in force. *Alaska Airlines, Inc.* v. *Brock*, 480 U.S. 678, 685 (1987) ("[T]he unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have

---

[9] The text and history of § 7 of the MCA demonstrate that Congress surely intended § 2241(e)(2) to survive, even if the elimination of habeas jurisdiction in § 2241(e)(1) could not. In enacting the MCA, Congress sought to eliminate jurisdiction over ancillary issues, precisely to prevent the Executive Branch from having to divert significant resources during the duration of an armed conflict to respond to those claims. *See, e.g.*, 152 Cong Rec. S10403 (daily ed. Sept. 28, 2006) (Sen. Cornyn) ("[O]nce . . . section 7 is effective, Congress will finally accomplish what it sought to do through the [Detainee Treatment Act ("DTA")] last year. It will finally get the lawyers out of Guantanamo Bay. It will substitute the blizzard of litigation instigated by *Rasul v. Bush* with a narrow DC Circuit-only review of the [CSRT] hearings."); 152 *id.* at S10367 (Sen. Graham) (citing one petitioner's motion for preliminary injunction regarding conditions of confinement as an examples of a claim that should be barred); *see also* 151 *id.* at 12656–57 (daily ed. Nov. 10, 2005) (Sen. Graham) (noting that DTA was intended to limit detainees' right to "challenge their status"); 151 *id.* at S12659-60 (Sen. Kyl) (stating that DTA would grant detainees "substantial rights to contest their status but not the right to clog up Federal courts" with medical malpractice claims and complaints about food).

enacted"); *News America Pub., Inc.* v. *F.C.C.*, 844 F.2d 800, 802 (D.C. Cir. 1988) (presumption is in favor of severability).

Accordingly, pursuant to § 7 of the MCA, this Court has no jurisdiction to hear or consider the petitioners' challenges to aspects of their detention short of the lawfulness of their detention, including claims related to potential transfer of petitioner.

### B.     The Right to Seek a Writ of *Habeas Corpus* Recognized in *Boumediene* Does Not Encompass a Right to Ancillary Relief Concerning Transfer.

Section 2241(e)(1) still validly removes jurisdiction of issues ancillary to and beyond the core habeas function of challenging legality of detention and § 2241(e)(2) remains fully operative. Consequently, there is no federal court jurisdiction over "any other action" concerning "any aspect" of petitioners' detention, transfer, treatment or confinement, including petitioners' claim for advance notice of any transfer, except insofar as such claims may be constitutionally protected under *Boumediene*'s interpretation of the Suspension Clause. Therefore, under § 2241(e)(1) as applied to petitioners' claim for relief and under § 2241(e)(2), petitioners cannot state cognizable habeas claims unless their constitutional right to *habeas corpus* encompasses those claims.

The elimination of jurisdiction over petitioners' claims regarding notice of transfer, however, could not constitute a Suspension Clause violation because they do not go to the core of habeas – legality of detention – addressed by the Supreme Court in *Boumediene*. A habeas action has historically been understood as a vehicle for challenging one thing only – the fact of detention or its duration. Nothing else. That is, the Great Writ concerns only relief that, if granted, will result in the petitioner's *release* from confinement, not with other ancillary issues.

Petitioners' claims here, seeking advance notice of transfer out of United States' custody, do not seek release from confinement and are not part of core habeas. Indeed, as explained in detail *infra* § II.A., the Supreme Court determined unanimously in the *Munaf* case, decided the same day as *Boumediene*, that the type of relief sought by the petitioner in that case – shelter from release from United States' custody to the custody of another sovereign the petitioner found objectionable – was not appropriately awardable in habeas. *See Munaf*, 128 S. Ct. at 2226-28. Likewise here, petitioners' requests for relief aimed at challenging any future transfer of petitioners out of United States' custody are neither appropriate nor core habeas relief. Jurisdiction is therefore lacking to consider petitioners' requests.

\* \* \*

Accordingly, it is beyond the power of this Court to grant petitioners' requested injunction, and the Court need not even consider the traditional balancing test in denying petitioners' motions. As explained below, however, that balancing test simply reinforces the conclusion that petitioners' motion must be denied.

## II.    PETITIONER IS NOT ENTITLED TO THE REQUESTED INJUNCTION UNDER THE TRADITIONAL BALANCING TEST FOR SUCH RELIEF.

As the Supreme Court very recently reaffirmed, "a preliminary injunction is an 'extraordinary and drastic remedy,'" that "is never awarded as of right." *Munaf*, 128 S. Ct. at 2219 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2948 at 129 (2d ed. 1995), and citing *Yakus v. United States*, 321 U. S. 414, 440 (1944)). Such an injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d

251, 258 (D.C. Cir. 2004).  To prevail in a request for a preliminary injunction, a movant "must

'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer

irreparable injury if the injunction is not granted, 3) that an injunction would not substantially

injure other interested parties, and 4) that the public interest would be furthered by the

injunction.'"  *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

Especially in light of the Supreme Court's recent unanimous statements in *Munaf*, petitioners

here cannot make these necessary showings, even if the Court otherwise had jurisdiction to issue

such relief (which it does not).

## A.    Petitioners Fail to Show Likelihood of Success with Respect to an Injunction Concerning Transfer.

A primary hurdle petitioners must overcome to obtain relief in this case related to any

transfer is that they must demonstrate that they are likely to succeed in preventing a transfer from

Guantanamo.  As recently explained by a unanimous Supreme Court, the likelihood of success

showing is essential.  Merely because a matter presents "serious, substantial, [or] difficult"

questions that give rise to "fair ground for litigation" is insufficient to support preliminary

injunctive relief.  *See Munaf*, 128 S. Ct. at 2219.

Here, at bottom, each petitioner seeks to second-guess, in connection with his potential

future transfer, the Executive Branch determination that he is not likely to be tortured in the

country to which he would be transferred.  That is the sole purpose in seeking advance notice of

any such transfer.  Yet, the Supreme Court unanimously rejected such a role for the judiciary in

*Munaf*, concluding that "it is for the political branches, not the judiciary to assess practices in

foreign countries and to determine national policy in light of those assessments." *Id.* at 2225.

Thus, even in the face of allegations presenting "serious concern" of potential torture, such

"concern is to be addressed by the political branches, not the judiciary." *Id*.  Where, as here, the

United States Government has a policy of not transferring an individual to another country when

the United States believes that it is more likely than not that the individual will be tortured, there

is simply no role for judicial supervision of such transfers and, thus, no authority to require

notice of such transfers.

Further, whatever the merits of petitioners' substantive claims that they are wrongfully

detained, it is not the likelihood of success on *those* claims that matters for purposes of the

instant motion for preliminary injunction.  Rather, as two Judges of this Court (who previously

reached opposite outcomes on the bottom line of whether to require advance notice of transfer)

have agreed, the likelihood of success analysis must focus on the legal basis for petitioner to

obtain an order preventing *termination* of detention by the United States in the manner described

in the declarations submitted herewith.  *See Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 194 (D.D.C.

2005) (Bates, J.) ("[T]he presence of a sound basis to challenge the legality of one's *detention*

does not at all imply that there exists a sound basis to challenge the legality of one's *transfer*.

Put differently, the 'merits,' if you will, to be assessed for purposes of the present claim for

preliminary injunctive relief, is petitioners' challenge to their *transfer* from Guantanamo, not to

their *detention* at Guantanamo) (emphasis in original); *Abdah v. Bush*, No. 04-CV-1254 (HHK),

2005 WL 711814, at *4 (D.D.C. Mar. 29, 2005) ("*if* there are no circumstances under which

Petitioners could obtain a court order preventing a contemplated *transfer*, a preliminary

injunction should not be granted") (second emphasis added).  As explained below, petitioners

cannot demonstrate a likelihood of success with respect to relief related to any transfer. No legal basis exists for such relief whether under the MCA or under the Court's *habeas* jurisdiction in the wake of *Boumediene* (including as explained *supra* § I), or otherwise.

> **1.    The Right to Seek a Writ of *Habeas Corpus* Recognized in *Boumediene* Does Not Encompass a Right to Relief Related to Transfer.**

Even if the Supreme Court had invalidated § 7 of the MCA in its entirety and all of its applications (which it did not), the petitioners would not be entitled to their requested relief related to transfer. Relief setting conditions on a detainee's transfer out of United States' custody cannot be properly awarded in the context of these habeas cases; such relief would violate the Constitution's separation of powers.

An injunction such as petitioners seek, conditioning any transfer of a detainee out of Guantanamo on advance notice of such transfer so that petitioners can attempt to delay or prevent the transfer, would undermine the President's constitutional authority as Commander-in-Chief to capture individuals in armed conflict, detain them as enemy combatants, and, upon determining that they are no longer enemy combatants or that it is otherwise appropriate, to release them. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion) ("The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'") (quoting *Ex parte Quirin*, 317 U.S. 1, 28 (1942)); Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) (recognizing that President has "authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States," and authorizing him "to use all

necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided" the September 11 attacks).

In addition, separation of powers considerations are implicated in the requested relief in light of the United States' policy not to repatriate or transfer a detainee to a country when the United States believes that it is more likely than not that the individual will be tortured. *See supra* at 2-5; *see also Munaf*, 128 S. Ct. at 2226 (noting the Solicitor General's statement "that it is the policy of the United States *not* to transfer an individual in circumstances where torture is likely to result"). In implementing this policy the United States routinely engages in sensitive negotiations with other nations when deciding whether to transfer an enemy combatant detainee. Williamson Decl. ¶¶ 9-12. In this context, the requested advance notice requirement itself, as well as the prospect of judicial review implicit in that requirement, causes a separation-of-powers harm by undermining the ability of the Executive Branch to speak with one voice in its dealings with foreign nations. *See id.* ¶ 12; *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 381 (2000) (expressing disapproval of acts that "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments"). The requested injunction would not only potentially hamper the Executive in timely execution of the foreign policy decision to make a transfer, but it unquestionably envisions the possibility that such a decision could not be implemented without judicial acquiescence or approval.

Although petitioners purport to merely seek notice of an impending transfer, it is undisputed that the sole reason they seek such notice is to enable them, after the Executive has decided to transfer the detainee, to seek an order blocking that transfer. The only reason they give for wanting to block such a transfer is their belief that it may be "to a place where [the

detainee] is likely to be tortured." *Dokhan*, No. 08-0987 (JDB), Motion at 13; *accord Mohammed*, No. 05-1347 (GK), Motion at 2-4; *Mohammon* (Naji), No. 05-2386 (RBW), Motion at 3-4; *Mohammon* (Ghaffar & Noori), No. 05-2386 (RBW) Motion at 10.   But, as noted above, it is uncontested that the United States has a policy *not* to repatriate or transfer a detainee to a country when the United States believes that it is more likely than not that the individual will be tortured.  Thus, for this Court to grant ultimate relief from transfer, it must necessarily conclude that the Executive may potentially err in its determination regarding the likelihood of torture by a receiving government.  A unanimous Supreme Court recently held in *Munaf*, however, that it is inappropriate to use injunctive relief in the habeas context as a means to second-guess such an Executive determination.

      *Munaf* (decided the same day as *Boumediene*) involved a habeas petition in this Court brought by a United States citizen to prevent his transfer from the custody of United States forces part of the Multinational Force-Iraq ("MNF-I") to Iraqi custody.  After concluding that habeas jurisdiction existed in the case, the Court nonetheless determined that there was no authority constraining petitioner's release from MNF-I custody.  The Court emphasized that "[h]abeas is at its core a remedy for unlawful detention. . . . The typical remedy is, of course, release." *Munaf*, 128 S. Ct. at 2221 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.") (cited in *Munaf*, 128 S. Ct. at 2221).  Accordingly, the Court determined that the type of relief sought by the petitioner in that case – shelter from release from United States' custody to the custody of another sovereign the petitioner found objectionable – was not appropriate.  *See Munaf*, 128 S. Ct. at 2228 ("Habeas corpus does not

- 19 -

require the United States to shelter such fugitives from the criminal justice system of the

sovereign with authority to prosecute them."). Further, in response to the complaint of the

petitioner in that case that his transfer might result in mistreatment at the hands of the Iraqi

government, the Court, after noting the United States' policy not transfer an individual to another

country when the United States believes that it is more likely than not that the individual will be

tortured, concluded:

> The Judiciary is not suited to second-guess such determinations –
> determinations that would require federal courts to pass judgment
> on foreign justice systems and undermine the Government's ability
> to speak with one voice in this area. *See* The Federalist No. 42, p.
> 279 (J. Cooke ed. 1961) (J. Madison) ("If we are to be one nation
> in any respect, it clearly ought to be in respect to other nations").
> In contrast, the political branches are well situated to consider
> sensitive foreign policy issues, such as whether there is a serious
> prospect of torture at the hands of an ally, and what to do about it if
> there is.

*Munaf*, 128 S. Ct. at 2226; *accord id.* at 2225 ("Even with respect to claims that detainees would

be denied constitutional rights if transferred, we have recognized that it is for the political

branches, not the judiciary, to assess practices in foreign countries and to determine national

policy in light of those assessments.").[10]   Accordingly, the Court concluded that the injunction in

---

[10] Not only is this type of judicial inquiry inappropriate under our constitutionally
separated powers, but, as a practical matter, such an inquiry, to the extent it involved disclosure
of diplomatic dialogue with a receiving country, could chill important sources of information and
interfere with the ability of the United States to interact effectively with foreign governments.
Williamson Decl. ¶¶ 9-12; Hodgkinson Decl. ¶ 8. In particular, the foreign government in
question, as well as other governments, would likely be reluctant to communicate frankly with
the United States in the future concerning torture and mistreatment concerns. Williamson Decl.
¶¶ 9-11. This chilling effect would jeopardize the ability of the Executive to deal effectively with
other nations in this area. *Id.* ¶¶ 9-12; Hodgkinson Decl. ¶ 8.

that case, which interfered with the ability of the forces detaining petitioner to release him to

another sovereign, was improper.[11]

Petitioners essentially assert that they are likely to prevail on the merits with respect to

the requested relief because this Court has jurisdiction. *See Dokhan*, No. 08-0987 (JDB), Motion

at 12; *accord Mohammed*, No. 05-1347 (GK), Motion at 5-6; *Mohammon* (Naji), No. 05-2386

_____

[11] The Supreme Court's conclusion in *Munaf* is fully consistent with the District of
Columbia Circuit's longstanding prohibition against judicial interference with the Executive's
foreign policy decisions. *See, e.g., Joo v. Japan*, 413 F.3d 45, 52-53 (D.C. Cir. 2005)
(adjudication that "'would undo'" Executive's judgment in foreign policy "would be imprudent
to a degree beyond our power"); *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005)
("pass[ing] judgment on the policy-based decision of the executive" in foreign policy "is not the
stuff of adjudication"); *People's Mojahedin Org. v. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir.
1999) ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the
Executive Branch.") (citing *Chicago & S. Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S.
103 (1948)); *see also Holmes v. Laird*, 459 F.2d 1211, 1215 (D.C. Cir. 1972) ("In situations such
as this, '[t]he controlling considerations are the interacting interests of the United States and of
foreign countries, and in assessing them [the courts] must move with the circumspection
appropriate when [a court] is adjudicating issues inevitably entangled in the conduct of our
international relations.'") (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 383
(1959)).

Similarly, the Supreme Court's conclusion in *Munaf* is consistent with the Rule of Non-
Inquiry developed in the extradition context, under which courts have eschewed inquiry into
"'the fairness of a requesting nation's justice system'" and "'the procedures or treatment which
await a surrendered fugitive in the requesting country.'" *United States v. Kin-Hong*, 110 F.3d
103, 110 (1st Cir. 1997) (quoting *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683
(9th Cir. 1983)); *accord Ahmad v. Wigen*, 910 F.2d 1063, 1067 (2d Cir. 1990) ("The interests of
international comity are ill-served by requiring a foreign nation . . . to satisfy a United States
district judge concerning the fairness of its laws and the manner in which they are enforced. . . . It
is the function of the Secretary of State to determine whether extradition should be denied on
humanitarian grounds."); *Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir. 1980)
(refusing to bar extradition based on allegations that appellant "may be tortured or killed if
surrendered to Mexico," because "the degree of risk to [Escobedo's] life from extradition is an
issue that properly falls within the exclusive purview of the executive branch") (internal
quotation marks omitted). *See also Al-Anazi*, 370 F. Supp. 2d at 194 (holding that this "well-
established line of cases in the extradition context" "counsel[s] even further against judicial
interference").

(RBW), Motion at 5; *Mohammon* (Ghaffar & Noori), No. 05-2386 (RBW) Motion at 10.  This is almost precisely the contention rejected in *Munaf*, however.  Indeed, jurisdiction is distinct from the merits, and, therefore, that this Court may have habeas jurisdiction says nothing whatsoever about petitioners' likelihood of success on the merits of their claim.  The key point here is that the existence of habeas jurisdiction, by itself, is clearly not an appropriate legal rationale for an order forbidding, except on conditions, the transfer or repatriation of an individual detained at Guantanamo, because relinquishment from United States custody (which occurs in every such transfer or repatriation) represents the full extent of relief that petitioners could obtain from a habeas petition.  *See Munaf*, 128 S. Ct. at 2221; *see also Al-Anazi*, 370 F. Supp. 2d at 198 ("Every habeas petition, including this one, is ultimately about obtaining release from detention . . . and where, as here, the United States will relinquish custody of the detainee to the home government there is nothing more the Court could provide to petitioners.") (citation omitted).[12] Indeed, it has been noted that, "[w]ere the Court to preserve its jurisdiction over the habeas petitions, and ultimately determine that the United States may no longer detain the petitioners,

---

[12] One of the previous decisions on a similar motion in another Guantanamo detainee case criticized this proposition as "overly simplistic," because "[p]etitioner ultimately seeks total freedom from all custody, not just United States custody."  *Al-Marri v. Bush*, No. 04-CV-2035 (GK), 2005 WL 774843, at *3 n.8 (D.D.C. Apr. 4, 2005).  Whatever petitioners may ultimately seek, however, a court of the United States clearly does not have jurisdiction to award a foreign national the relief of "freedom from all custody" worldwide, in the sense of immunity from detention in his home or a third country pursuant to its own domestic laws and independent determinations.  Indeed, the Supreme Court rejected a similar argument in *Munaf*.  128 S. Ct. at 2223 ("[H]abeas is not a means of compelling the United States to harbor fugitives from the criminal justice system of a sovereign . . . .").  The courts of the United States would have no authority to interfere with any decision a foreign sovereign nation may make to detain, investigate, or prosecute its own nationals being returned to it.  *Munaf*, 128 S. Ct. at 2211, 2220 (barring interference with foreign sovereign's exclusive jurisdiction to "'punish offenses against its laws committed within its borders") (quoting *Wilson v. Girard*, 354 U.S. 524, 529 (1957)).

the parties and the Court would find themselves in precisely the same position in which they find themselves now – with the respondents taking steps to transfer those individuals out of United States control, and the petitioners compelled to come forward with some legal or evidentiary basis to prevent transfer to an 'undesirable' country." *Al-Anazi*, 370 F. Supp. 2d at 196.

Accordingly, this Court cannot grant the requested injunction without transgressing constitutional separation of powers, including by laying the groundwork to engage in an inquiry that the Supreme Court has clearly held belongs to the political branches and not the judiciary. For this reason, it is beyond the power of this Court to grant the requested injunction, and petitioners have no likelihood of success on their claim for such relief.

> ## 2. The Other Legal Bases Offered by Petitioners to Support Injunctive Relief Does No Support Such Relief.

Petitioners' primary source of legal authority for their alleged ability to challenge the location to which they may be transferred is the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"),[13] which prohibits the return of an individual to country that may torture them. The CAT is implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998 ("FARR Act"), Pub. L. No. 105-277,

---

[13] Some petitioners also briefly mention Common Article 3 of the Geneva Conventions and the International Covenant on Civil and Political Rights ("ICCPR") as purported legal bases for an order requiring advance notice of a transfer. *See Mohammed*, No. 05-1347 (GK), Motion at 5-6; *Mohammon* (Naji), No. 05-2386 (RBW), Motion at 5-6. Those treaties, however, do not give rise to privately enforceable rights and cannot serve as a legal basis for petitioners' requested relief. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (ICCPR does not "itself create obligations enforceable in the federal courts"); MCA § 5(a) (codified at 28 U.S.C. § 2241 (note)) (no person may invoke the Geneva Conventions as "a source of rights" in any civil court proceeding to which "the United States, or a current or former officer, employee, member of the Armed Forces, or other agent of the United States is a party"). *See also Medellin v. Texas*, ___ U.S. ___, 128 S. Ct. 1346, 1357 & n.3 (2008) (noting presumption that treaties do not provide private parties with judicially enforceable rights).

§ 2242, 112 Stat. 2681 (codified at 8 U.S.C. § 1231 note), and one detainee, Mr. Dokhan, has

invoked that statute.  *See Dokhan v. Bush*, No. 08-0987 (JDB), Motion at 7-10; *id.* at 12

(asserting as the sole legal basis for challenging transfer "FARRA and the basic international

legal norms embodied in the Convention Against Torture").  This basis for relief must be rejected

for two reasons.  First, no FARR Act claim can be considered at this stage because the petitions

do not invoke that statute. *See Munaf*, 128 S. Ct. at 2226.[14]  Second, even if the petitions had

raised claims under the FARR Act, that statute does not provide jurisdiction to adjudicate such

claims.  The FARR Act expressly provides that "nothing in this section shall be construed as

providing any court jurisdiction to consider or review claims raised under the Convention

[Against Torture] or this section, or any other determination made with respect to the application

of the policy set forth in subsection (a) [prohibiting the return of persons when there are

substantial grounds for believing they will be tortured], except as part of the review of a final

order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C.

§ 1252)."  *See* FARR Act § 2242(d). This case does not involve a final order of removal under

§ 242 of the Immigration and Nationality Act, however, and neither the FARR Act nor the

regulations thereunder (8 C.F.R. §§ 1208.16-1208.18) create jurisdiction to review any CAT

claims in the circumstances presented here.  *See Mironescu v. Costner*, 480 F.3d 664, 672 (4th

Cir. 2007), *cert. dismissed*, 128 S. Ct. 976 (2008); *Al-Anazi*, 370 F. Supp. 2d at 194; *see also*

---

[14]  The petitions invoke the Due Process Clause, but the Supreme Court has made clear
that this Clause does not provide a free-ranging protection from allegedly unlawful transfer
whenever the government seizes someone, even when, as is not the case here, the person seized
is a citizen of the United States.  *See Munaf*, 128 S. Ct. at 2222.

*Munaf*, 128 S. Ct. at 2226 n.6 (dictum); 8 U.S.C. § 1252(a)(4) (CAT claims are not cognizable in a habeas petition).

* * *

Thus, there is no basis in law for an injunction requiring that petitioners' counsel and this Court be given advance notice of any upcoming transfer or release. Neither the Court's habeas corpus jurisdiction nor any other legal authority supports the notion of ordering custody that the United States wishes to relinquish to nevertheless be artificially and indeterminately prolonged purely to preserve a live case for the Court. And, apart from the absence of affirmative legal authority, separation of powers considerations and foreign relations sensitivities preclude a judicial inquiry in which this Court would substitute its judgment regarding the appropriateness of transfer in general (and the likelihood of torture in particular) for that of the appropriate Executive Branch officials.

**B.      Petitioners' Request for Relief Must Be Denied Because Petitioners Fail to Show Irreparable Injury.**

Petitioners' request for relief must also fail because petitioners cannot demonstrate the irreparable injury necessary to obtain such relief. Petitioners here allege two types of harm to the detainee: (1) the possibility of torture by authorities in the country to which they may be transferred and (2) the "circumvent[ion of the detainee's] . . . right to adjudicate the legality of his detention and his status as an 'enemy combatant.'" *Dokhan*, No. 08-0987 (JDB), Motion at 11; *accord Mohammed*, No. 05-1347 (GK), Motion at 5-6; *Mohammon* (Naji), No. 05-2386 (RBW), Motion at 5; *Mohammon* (Ghaffar & Noori), No. 05-2386 (RBW) Motion at 10. Neither alleged potential harm justifies granting the requested injunction.

- 25 -

### 1.    Irreparable Harm Cannot Be Shown in Light of Undisputed Government Policies and Practices.

In order to satisfy the irreparable harm prong of the preliminary injunction test, a petitioner must demonstrate irreparable injury that is "'certain and great; it must be actual and not theoretical.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  "Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time; the party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citations and internal quotation marks omitted; emphasis in original).  This "high standard," *id.*, is plainly not met by petitioners' speculation that they may suffer harm in various countries they believe they may be transferred to by the United States.  As the Supreme Court has recently made clear, generalized allegations of the potential for mistreatment, in the face of United States' policy not to transfer an individual where the Government believes it is more likely than not the individual would be tortured, are wholly insufficient.  *See Munaf*, 128 S. Ct. at 2226 ("Petitioners here allege only *the possibility* of mistreatment in a prison facility [of the transferee government].") (emphasis added).  Indeed, the Court noted approvingly in *Munaf* that the United States, despite having concerns regarding "some sectors of the Iraqi government," had concluded that the specific department of the Iraqi government to which transfer would be made and the specific facilities in which petitioner would be held by that department were not likely to result in the petitioner being tortured.  *Id*.

- 26 -

The Supreme Court's discussion in *Munaf* is relevant not only to show that petitioners' general claims with respect to torture are insufficient, but also to show that such claims cannot overcome the Executive Branch's representations regarding the steps its takes to ensure against torture by any transferee governments.  Here, as in *Munaf*, the record clearly demonstrates that it is United States' policy not to repatriate or transfer a detainee to a country when the United States believes that it is more likely than not that the individual will be tortured.  *See supra* at 2-5; *see Munaf*, 128 S. Ct. at 2226 (noting the Solicitor General's statement "that it is the policy of the United States *not* to transfer and individual in circumstances where torture is likely to result").  This policy is implemented by expert Executive agencies through a process that contains several levels of precautions and safeguards.  To conclude that an injunction is nevertheless necessary would require the Court to assume, without evidence, that the United States' policy and practice regarding transfers is meaningless and that the detainee may likely be tortured in the foreign country to which he is ultimately sent; any such conclusion would necessarily require a finding that the United States may potentially err in its determination regarding the likelihood of torture by a receiving government.  But, as noted above, it is inappropriate for the judiciary to "second-guess such determinations."  *Id.*; *accord id.* at 2225 ("Even with respect to claims that detainees would be denied constitutional rights if transferred, we have recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments.").  In the face of the undisputed governmental policy regarding transfers, petitioners' general claims of potential mistreatment in connection with a future transfer do not meet the "high standard" of irreparable harm necessary to obtain an injunction.

### 2.    The Fact that a Transfer Would Moot the Petitions Does Not Constitute Irreparable Harm.

Petitioners also argue that a preliminary injunction requiring advance notice is necessary in order to "'protect'" the Court's jurisdiction, reasoning that a transfer would "circumvent [the detainee's] right to adjudicate the legality of his detention." *See Dokhan*, No. 08-0987 (JDB), Motion at 11; *accord Mohammed*, No. 05-1347 (GK), Motion at 5-6; *Mohammon* (Naji), No. 05-2386 (RBW), Motion at 5; *Mohammon* (Ghaffar & Noori), No. 05-2386 (RBW) Motion at 10. Again, this argument is foreclosed by the Supreme Court's recent opinion in *Munaf*. The Court held that the district court had jurisdiction over Munaf's habeas corpus petition, *Munaf*, 128 S. Ct. at 2218, and it was clear that a transfer effectively would have mooted that petition. Nonetheless, the Court concluded that the district court erred in entering an injunction. *Id.* at 2220.[15] Given *Munaf*, the mere preservation of jurisdiction over a habeas petition cannot provide a basis for enjoining the release of a person from United States custody and transfer to another country and, thus, for requiring notice of such release.

Indeed, such a preservation of jurisdiction argument in face of release from United States custody would make no sense, because "habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf*, 128 S. Ct. at 2221 (citations omitted); *accord id.* at 2223 (referring to release as "the quintessential habeas

---

[15]    At any rate, any argument that petitioners are motivated by a desire to preserve the Court's jurisdiction for its own sake is completely undermined by other statements by petitioners that they, for example, do not oppose transfer generally, but only "to a place where [the detainee] is likely to be tortured." *Dokhan*, No. 08-0987 (JDB), Motion at 13; *see also Mohammon* (Ghaffar & Noori), No. 05-2386 (RBW) Motion at 10 ("While Petitioners, of course, do not wish to hinder any effort to free them from an indefinite imprisonment, they are concerned that they will be removed to a country where they may be tortured or persecuted.").

remedy").  Where "the last thing petitioners want is simple release" to another country, *id.* at 2221, (and thus they seek notice so as to be able to challenge any release), their challenge is not cognizable in habeas.  Any right to challenge the legality of one's detention through a habeas proceeding cannot reasonably extend so far as to require that detention be continued, after the Executive determines that the military rationales for enemy combatant detention no longer warrant such custody, for no reason other than to be able to test the legitimacy of detention the Executive no longer is interested in maintaining.  As one Judge of this Court stated, "Every habeas petition, including this one, is ultimately about obtaining release from detention, and where, as here, the United States will relinquish custody of the detainee to the home government there is nothing more the Court could provide to petitioners."  *Al-Anazi*, 370 F. Supp. 2d at 198 (citation omitted).

That release from United States custody will give petitioners all the relief they can seek through habeas is not altered by the fact that, upon being released from the custody of the United States, former detainees may be taken into custody and detained in the receiving country based on that country's independent interests and determinations.  As respondents' declarations make clear, when the Department of Defense transfers Guantanamo detainees to the control of other governments, the detainees are no longer subject to the custody or control of the United States, and any subsequent confinement in the receiving country is based on the receiving government's independent decision, based on its domestic laws, that the individual should be detained. Hodgkinson Decl. ¶ 5.  Indeed, even if the United States transfers a detainee to his home government with the understanding that, from the United States' perspective, he can be released, the home government may well subsequently take any law enforcement or investigatory action

against the former detainee that it may deem appropriate under its laws.  This is as it should be,

given the "exclusive and absolute" jurisdiction of a nation within its own territory.  *Schooner*

*Exchange v. McFaddon*, 7 U.S. (Cranch) 116, 136 (1812).  Habeas is not a means through which

detainees may "requir[e] the United States to shelter them from [a] sovereign government

seeking to have them answer for alleged crimes committed within that sovereign's borders."

*Munaf*, 128 S. Ct. at 2221; *see id.* at 2228.  For this reason, "'[h]abeas corpus has been held not

to be a valid means of inquiry into the treatment the relator is anticipated to receive in the

requesting state.'"  *Id.* at 2225 (quoting M. Bassiouni, INTERNATIONAL EXTRADITION: UNITED

STATES LAW AND PRACTICE 921 (2007)); *see supra* § II.A.  The Court, therefore, should reject

petitioners' suggestion that the possibility of future detention another country based on that

country's independent interests and determinations constitutes potential irreparable injury

warranting an injunction in this *habeas corpus* action.

> **C.**    **The Requested Injunction Would Substantially Injure Other Interested Parties by Trampling on the Separation of Powers and Harming the Foreign Policy Interests of the United States.**

An injunction requiring advance notice of a transfer from Guantanamo foreshadows

judicial review of and intervention in decisions regarding the release and transfer of detainees.

As explained *supra*, such judicial intervention not only curbs the political branches' discretionary

authority in determining when to release individuals who have been detained as enemy

combatants, but also impairs the Government's ability to speak with one voice on behalf of the

Nation in discussing release or transfers with foreign nations.  As *Munaf* held, "[t]he Judiciary is

not suited to second-guess such determinations – determinations that would require federal courts

to pass judgment on foreign judicial systems and undermine the Government's ability to speak

with one voice in this area."  128 S. Ct. at 2226; *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000) (expressing disapproval of acts that "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments").  Even if such judicial review did not ultimately result in an injunction against release or transfer, inquiry into the United States' dialogue with foreign nations and into the terms of a release or transfer, and any assurances that may have been obtained, would cause serious harm.  *See* Williamson Decl. ¶¶ 9-11.  Further, such an advance notice requirement would make the results of diplomatic dialogue between the Executive Branch and a foreign government regarding transfers inherently contingent upon the effective acquiescence of the Judiciary.  Such a requirement at best would delay, and at worst could prevent, the transfer of aliens held by the Executive in connection with ongoing armed conflict.  These harms weigh heavily against entry of a preliminary injunction.

> **D.    An Injunction Would Disserve the Public Interest**.

The public interest favors allowing the Executive Branch, which is constitutionally vested with the authority both to conduct military functions, such as detention of enemy combatants during hostilities, and to engage in foreign relations, to act without undue intrusion within its constitutional sphere of responsibility.  As a general matter, the public interest requires that courts be "'reluctant to intrude upon the authority of the Executive in military and national security affairs.'"  *Munaf*, 128 S. Ct. at 2218 (quoting *Department of Navy v. Egan*, 484 U.S. 518, 530 (1988)).  As one Judge of this Court has held:

> [T]here is a strong public interest against the judiciary needlessly intruding upon the foreign policy and war powers of the Executive on a deficient factual record. Where the conduct of the Executive conforms to law, there is simply no benefit – and quite a bit of detriment – to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these

detainees.  *See People's Mojahedin Org.*, 182 F.3d at 23 ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch.").

*Al-Anazi*, 370 F. Supp. 2d at 199.  *See also Munaf*, 128 S. Ct. at 2225 ("Even with respect to claims that detainees would be denied constitutional rights if transferred, we have recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments.").  Here, as well, the public interest disfavors an injunction interfering with the transfer of detainees by making such transfers subject to conditions.

## **CONCLUSION**

For the foregoing reasons, respondents respectfully request that petitioners' motion for preliminary injunction be denied.

Dated: July 9, 2008                    Respectfully submitted,

                                       GREGORY G. KATSAS
                                       Assistant Attorney General

                                       JOHN C. O'QUINN
                                       Deputy Assistant Attorney General


                                       [*signature block continued on next page*]

- 32 -

_/s/ Terry M. Henry_
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107

Attorneys for Respondents

# EXHIBIT  1

<u>DECLARATION OF SANDRA L. HODGKINSON</u>

I, Sandra L. Hodgkinson, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1.       I am the Deputy Assistant Secretary of Defense for Detainee Affairs in the Department of Defense ("DoD").  My office is organized under the office of the Under Secretary of Defense for Policy.  The Office of Detainee Affairs, which I supervise, is responsible for providing policy advice to the Under Secretary of Defense on matters regarding detainees in DoD control.  I have served in this position since July 9, 2007. The statements in paragraphs 5 through 8 of this Declaration provide a general overview of the process of transferring detainees in DoD control at the United States Naval Base at Guantanamo Bay, Cuba ("GTMO"), to the control of a foreign government.  These statements are not intended to be an exhaustive description of all of the steps that might be undertaken in particular cases, but rather they reflect United States policy and practices with respect to transfers of detainees from GTMO.   I make this declaration based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2.   One of DoD's current missions is to use all necessary and appropriate force to defeat the al Qaeda terrorist network and its supporters.  In the course of that campaign – which remains ongoing – the United States and its allies have captured thousands of individuals overseas, virtually all of whom are foreign nationals.  Through a screening and evaluation process, DoD determines whether the individuals should be detained during the conflict as enemy combatants. As of July 2, 2008, approximately 265 foreign nationals are being held by DoD at GTMO.

3. It is lawful and appropriate for DoD to detain enemy combatants as long as hostilities are ongoing. Nonetheless, DoD has no interest in detaining enemy combatants longer than necessary. Accordingly, DoD conducts regular reviews of GTMO detainees who have been determined to be enemy combatants but have not been referred to military commission or previously cleared for transfer or release to determine whether continued detention is warranted based on factors such as whether the detainee continues to pose a threat to the United States and its allies. Where continued detention is deemed no longer necessary, a detainee may be transferred to the control of another government for release. Furthermore, the United States also transfers GTMO detainees, under appropriate circumstances, to the control of other governments when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Once transferred, detainees may be subject to detention, investigation, and/or prosecution if appropriate under the receiving country's laws. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country, including a country that may have a law enforcement, prosecution, or other interest in the detainee.

4. Since 2002, approximately 500 detainees have departed Guantanamo for other countries including Albania, Algeria, Afghanistan, Australia, Bangladesh, Bahrain, Belgium, Denmark, Egypt, France, Germany, Iran, Iraq, Jordan, Kuwait, Libya, Maldives, Mauritania, Morocco, Pakistan, Russia, Saudi Arabia, Spain, Sweden, Sudan, Tajikistan, Tunisia, Turkey, Uganda, the United Kingdom, and Yemen.

5. When the DoD transfers GTMO detainees to the control of other governments, the DoD does so after dialogue with the receiving government. Such dialogue may be initiated by the receiving government or may be initiated by the United States. Unless a transfer is to be a transfer for release, a purpose of the dialogue is to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent

determinations that will ensure that the detainee will not pose a continuing threat to the United States and its allies. In all cases of transfer, the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States; the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States. When detainees are transferred to the custody or control of their home governments, it is frequently the case that the home government takes the detainee into its custody, at least for an initial period. In some cases, the home government has subsequently released the detainee, sometimes after a period of questioning or investigation, while in other cases, the detainees have remained in confinement or subject to other restrictions in their home countries for various reasons based on the determinations and laws of the home government. Of the GTMO detainees who have been transferred by the DoD to the control of their home countries, most have subsequently been released from detention.

6. Once a DoD transfer of a GTMO detainee is proposed, the views of interested United States Government agencies are considered. For such a transfer, it is the policy of the United States, consistent with the approach taken by the United States in implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, not to repatriate or transfer individuals to other countries where it believes it is more likely than not that they will be tortured. Therefore, if a transfer is deemed appropriate, a process is undertaken, involving the Department of State, in which appropriate assurances regarding the detainee's treatment are sought from the country to whom the transfer of the detainee is proposed. The Declaration of Clint Williamson dated July 7, 2008, accurately and completely describes that process to the best of my knowledge and belief.

7. The ultimate decision to transfer a detainee to the control of another government is made with the involvement of senior United States Government officials. The Secretary of Defense or his designee ultimately approves transfers. Decisions on transfers are made on a case-by-case basis, taking into account the particular circumstances of the transfer, the country, and the detainee concerned, as well as any assurances received from the receiving government. If a case were to arise in which the assurances obtained from the receiving government were not sufficient when balanced against treatment concerns, the United States would not transfer a detainee to the control of that government unless the concerns were satisfactorily resolved. Circumstances have arisen in the past where the Department of Defense elected not to transfer detainees to their country of origin because of torture concerns.

8. The Executive Branch is best situated to make decisions regarding transfers of detainees, as noted in the Declaration of Clint Williamson. Requiring the United States to disclose information unilaterally about proposed transfers and negotiations outside of appropriate executive branch agencies could adversely affect the relationship of the United States with other countries and impede our country's ability to obtain vital cooperation from concerned governments with respect to military, law enforcement, and intelligence efforts, including with respect to our joint efforts in the war on terrorism. Judicial review, including the possible overturning of decisions to transfer and delays in transfers occasioned by review and possible appeals, could lead to similar harm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2008.

Sandra L. Hodgkinson

**EXHIBIT  2**

## DECLARATION OF CLINT WILLIAMSON

I, Clint Williamson, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1. I am the Ambassador-at-Large for War Crimes Issues and have supervised the operation of the Department of State Office of War Crimes Issues (S/WCI) since July 10, 2006. In that capacity I advise the Secretary of State directly and formulate U.S. policy responses to serious violations of international humanitarian law committed in areas of conflict throughout the world. As the President's envoy, I travel worldwide and engage foreign government leaders and international organizations to build bilateral and international support for U.S. policies related to accountability for atrocities committed in armed conflicts and other violations of international humanitarian law. Following September 11, 2001, S/WCI was assigned the additional role of maintaining a diplomatic dialogue with foreign governments whose nationals have been captured in connection with the armed conflict with the Taliban and al Qaeda and who are detained at the U.S. Naval Base at Guantanamo Bay, Cuba. The following statements provide a general overview of the Department of State role in carrying out United States policy with respect to the transfer to foreign governments of detainees held by the Department of Defense at Guantanamo Bay and the process that is followed to ensure that any international obligations and United States policies are properly implemented. These statements are not intended to be an exhaustive description of all of the steps that might be undertaken in any particular case, but do reflect United States policy and practices with respect to transfers from Guantanamo. I make these statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The United States has no interest in detaining enemy combatants longer than necessary. While acting in accordance with the President's stated objective of moving toward

2

the day when we can eventually close the detention facility at Guantanamo Bay, the U.S.

Government's paramount goal is to ensure, to the maximum extent reasonably possible, that

transferring a detainee out of U.S. Government control prior to the cessation of hostilities will

not increase the risk of further attacks on the United States or its allies. The Secretary of

Defense, or his designee, is generally responsible for approving the transfer of detainees from

Department of Defense control at Guantanamo Bay to other governments either for release or for

possible detention, investigation, prosecution or other control measures, as appropriate. On an

ongoing basis, the Department of Defense reviews the continued detention of each individual it

holds at Guantanamo Bay Naval Base, Cuba. Since 2002, approximately 500 detainees have

departed Guantanamo for other countries including Albania, Afghanistan, Algeria, Australia,

Bangladesh, Bahrain, Belgium, Denmark, Egypt, France, Germany, Iran, Iraq, Jordan, Kuwait,

Libya, Maldives, Mauritania, Morocco, Pakistan, Russia, Saudi Arabia, Spain, Sweden, Sudan,

Tajikistan, Tunisia, Uganda, the United Kingdom, and Yemen.

3. The Department of Defense consults with appropriate United States Government

agencies, including the Department of State, before determining whether to transfer particular

individuals. Detainees have been transferred for release when it was determined that they do not

meet the criteria of enemy combatants or no longer pose a continuing threat to the U.S. security

interests. Detainees have been transferred to the control of their governments of nationality for

possible detention, investigation, prosecution or control, as appropriate, when those governments

were willing to accept responsibility for ensuring, consistent with their laws, that the detainees

will not continue to pose a threat to the United States and its allies. A detainee may be

considered for transfer to a country other than his country of nationality, such as in

3

circumstances where that country requests transfer of the detainee for purposes of criminal

prosecution or in situations where humane treatment concerns prevent the transfer of the detainee

to his country of nationality.

4. Of particular concern to the Department of State in making recommendations on

transfers is the question of whether the foreign government concerned will treat the detainee

humanely, in a manner consistent with its international obligations, and will not persecute the

individual on the basis of his race, religion, nationality, membership in a social group, or

political opinion. The Department is particularly mindful of the longstanding policy of the

United States not to transfer a person to a country if it determines that it is more likely than not

that the person will be tortured or, in appropriate cases, that the person has a well-founded fear

of persecution and would not be disqualified from persecution protection on criminal- or

security-related grounds. This policy is consistent with the approach taken by the United States

in implementing the Convention Against Torture and other Cruel, Inhuman or Degrading

Treatment or Punishment and the Protocol Relating to the Status of Refugees. The Department

of State works closely with the Department of Defense and relevant agencies to advise on the

likelihood of persecution or torture in a given country and the adequacy and credibility of

assurances obtained from a particular foreign government prior to any transfer.

5. The Department of State generally has responsibility to communicate on transfer-

related matters as between the United States and foreign governments. The Department of State

receives requests from foreign governments for the transfer of detainees and forwards such

requests to the Department of Defense for coordination with appropriate Departments and

agencies of the United States Government. The Department of State also communicates

4

requests from the United States to foreign governments to accept the transfer of their nationals. In cases where approved detainees cannot be transferred to their countries of nationality because of humane treatment concerns, the Department of State communicates with foreign governments to explore third-country resettlement possibilities. More than 60 countries have been approached to date with respect to various detainees who fall within this category, and the only country where the U.S. Government has had success in resettling detainees with no prior legal ties to that country is Albania.

6. Once the Department of Defense has approved a transfer from Guantanamo Bay and requests the assistance of the Department of State, my office would facilitate transfer discussions with the foreign government concerned or, where repatriation is not an available option because of humane treatment concerns or for other reasons, with third countries where resettlement might be appropriate. The primary purpose of these discussions is to learn what measures the receiving government is likely to take to ensure that the detainee will not pose a continuing threat to the United States or its allies and to obtain appropriate transfer assurances. My office seeks assurances that the United States Government considers necessary and appropriate for the country in question. Among the assurances sought in every transfer case in which continued detention or other security measures by the government concerned are foreseen is the assurance of humane treatment and treatment in accordance with the international obligations of the foreign government accepting transfer. The Department of State considers whether the State in question is party to the relevant treaties, such as the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, and ensures that assurances are tailored accordingly if the State concerned is not a party or other circumstances warrant.

5

7.  Decisions with respect to Guantanamo detainees are made on a case-by-case basis,

taking into account the particular circumstances of the transfer, the country, the individual

concerned, and any concerns regarding torture or persecution that may arise.

Recommendations by the Department of State are decided at senior levels through a process

involving Department officials most familiar with international legal standards and obligations

and the conditions in the countries concerned. Within the Department of State, my office,

together with the Office of the Legal Adviser, the Bureau of Democracy, Human Rights, and

Labor, and the relevant regional bureau, normally evaluate foreign government assurances in

light of the circumstances of the individual concerned, and, if deemed appropriate, brief the

Secretary or other Department Principals before finalizing the position of the Department of

State.  The views of the Bureau of Democracy, Human Rights, and Labor, which drafts the U.S.

Government's annual Human Rights Reports,[1] and of the relevant regional bureau, country desk,

or U.S. Embassy are important in evaluating foreign government assurances and any individual

fear of persecution or torture claims, because they are knowledgeable about matters such as

human rights, prison conditions, and prisoners' access to counsel, in general and as they may

apply to a particular case in the foreign country concerned, as well as particular information

about the entity or individual that is offering the assurance in any particular case and relevant

background about any allegations of mistreatment that may have surfaced in connection with

past transfers to the country in question.

---

[1] The Human Rights Reports are the official State Department reports to Congress on human rights conditions in individual countries for a given year as mandated by law (sections 116(d) and 502(b) of the Foreign Assistance Act of 1961, as amended, and section 505(c) of the Trade Act of 1974, as amended).

6

8.  The essential question in evaluating foreign government assurances relating to humane treatment is whether, taking into account these assurances and the totality of other relevant factors relating to the individual and the government in question, the competent Department of State officials believe it is more likely than not that the individual will be tortured in the country to which he is being transferred.  In determining whether it is "more likely than not" that an individual would be tortured, the United States takes into account the treatment the individual is likely to receive upon transfer, including, *inter alia,* the expressed commitments of officials from the foreign government accepting transfer.   When evaluating the adequacy of any assurances, Department officials consider the identity, position, or other information concerning the official relaying the assurances, and political or legal developments in the foreign country concerned that would provide context for the assurances provided.  Department officials may also consider U.S. diplomatic relations with the country concerned when evaluating assurances. For instance, Department officials may make a judgment regarding foreign government's incentives and capacities to fulfill its assurances to the United States, including the importance to the government concerned of maintaining good relations and cooperation with the United States. In an appropriate case, the Department of State may also consider seeking the foreign government's assurance of access by governmental or non-governmental entities in the country concerned to monitor the condition of an individual returned to that country, or of U.S. Government access to the individual for such purposes.  In instances in which the United States transfers an individual subject to assurances, it would pursue any credible report and take appropriate action if it had reason to believe that those assurances would not be, or had not been, honored.  In an instance in which specific concerns about the treatment an individual may

7

receive cannot be resolved satisfactorily, we have in the past and would in the future recommend

against transfer, consistent with the United States policy.

9.  The Department of State's ability to seek and obtain assurances from a foreign

government depends in part on the Department's ability to treat its dealings with the foreign

government with discretion.  Consistent with the diplomatic sensitivities that surround the

Department's communications with foreign governments concerning allegations relating to

torture, the Department of State does not unilaterally make public the specific assurances or

other precautionary measures obtained in order to avoid the chilling effects of making such

discussions public and the possible damage to our ability to conduct foreign relations.  Seeking

assurances may be seen as raising questions about the requesting State's institutions or

commitment to the rule of law, even in cases where the assurances are sought to highlight the

issue for the country concerned and satisfy the Department that the country is aware of the

concerns raised and is in a position to undertake a commitment of humane treatment of a

particular individual.  There also may be circumstances where it may be important to protect

sources of information (such as sources within a foreign government) about a government's

willingness or capability to abide by assurances concerning humane treatment or relevant

international obligations.

10.  If the Department were required to disclose outside appropriate Executive branch

channels its communications with a foreign government relating to particular mistreatment or

torture concerns, that government, as well as other governments, would likely be reluctant in the

future to communicate frankly with the United States concerning such issues.  I know from

experience that the delicate diplomatic exchange that is often required in these contexts cannot

8

occur effectively except in a confidential setting. Later review in a public forum of the Department's dealings with a particular foreign government regarding transfer matters would seriously undermine our ability to investigate allegations of mistreatment or torture that come to our attention and to reach acceptable accommodations with other governments to address those important concerns.

11. The Department's recommendation concerning transfer relies heavily on the facts and analyses provided by various offices within the Department, including its Embassies. Confidentiality is often essential to ensure that the advice and analysis provided by these offices are useful and informative for the decision-maker. If those offices are expected to provide candid and useful assessments, they normally need to know that their reports will not later be publicly disclosed or brought to the attention of officials and others in the foreign States with which they deal on a regular basis. Such disclosure could chill important sources of information and could interfere with the ability of our foreign relations personnel to interact effectively with foreign State officials.

12. The Executive Branch, and in particular the Department of State, has the tools to obtain and evaluate assurances of humane treatment, to make recommendations about whether transfers can be made consistent with U.S. government policy on humane treatment, and where appropriate to follow up with receiving governments on compliance with those assurances. The Department of State has used these tools in the past to facilitate transfers in a responsible manner that comports with the policies described herein. The judicial review of the diplomatic dialogue between the U.S. Government and other governments concerning the terms of transfer, or of the ultimate decision to effect a transfer to a given country, risks undermining the ability of the U.S

9

Government to speak with one voice on Guantanamo transfer issues.  This is critical as we continue to seek a reduction in the number of detainees in the Guantanamo detention facility and move toward the day when the facility can be closed altogether.

I declare under the penalty of perjury that the foregoing is true and correct.


Executed on July 7, 2008.

Clint Williamson

# EXHIBIT  3

<u>Second Declaration of Karen L. Hecker</u>

Karen L. Hecker hereby declares, pursuant to 28 U.S.C. §1746, as follows:

1.  I am an Associate Deputy General Counsel in the Office of General Counsel of the United States Department of Defense (DoD).  In that capacity, I am responsible for, among other things, overseeing litigation involving individuals detained by the DoD at Guantanamo Bay.  The statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties.

2.  By regulation, all individuals detained at Guantanamo Bay by DoD must receive the opportunity to contest their enemy combatant status at a Combatant Status Review Tribunal ("CSRT").  *See* http://www.defenselink.mil/news/Aug2006/d20060809CSRTProcedures.pdf .  Between August 2004 and March 2005, DoD conducted CSRTs for the 558 individuals detained by DoD at Guantanamo.  On April 19, 2006, DOD published a list of all Guantanamo detainees who had gone through the complete CSRT process.  *See* Exhibit 1 and http://www.dod.mil/pubs/foi/detainees/ .

3.  The CSRT process for a detainee results in a determination that the detainee is classified as either an "enemy combatant" or "no longer an enemy combatant."  Of the 558 individuals who went through the complete CSRT process, 38 were determined to no longer meet the definition of enemy combatant.  None of the individuals determined to no longer meet the definition of enemy combatant remain detained at Guantanamo.

4.  On May 15, 2006, DoD also published a list of all 759 individuals who had ever been detained by the DoD at Guantanamo since the facility opened in January 2002.  *See* Exhibit 2 and http://www.dod.mil/pubs/foi/detainees/ .  The 201 detainees who are on this list but not on the CSRT list departed Guantanamo before a CSRT was conducted for them.

5. By the completion of the CSRT process in March 2005, all individuals then detained by DoD at Guantanamo had received a CSRT.  Since that time, fifteen new detainees have been transferred to DoD control at Guantanamo, beginning in September 2006.  DoD is in the process of preparing for these individuals' CSRTs, or their CSRTs are currently underway.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 17, 2007.


_Karen L. Hecker_

Karen L. Hecker

# EXHIBIT 1

List of detainees who went through complete CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

|  | Short ISN | Name | Citizenship |
|---|---|---|---|
| 1 | 002 | HICKS, DAVID MICHAEL | Australia |
| 2 | 003 | RUHANI, GHOLAM | Afghanistan |
| 3 | 004 | WASIQ, ABDUL HAQ | Afghanistan |
| 4 | 005 | AL MATRAFI, ABDALLAH AIZA | Saudi Arabia |
| 5 | 006 | NOORI, MULLAH NORULLAH | Afghanistan |
| 6 | 007 | FAZL, MULLAH MOHAMMAD | Afghanistan |
| 7 | 008 | RASOUL, ABDULLAH GULAM | Afghanistan |
| 8 | 010 | SATTAR, ABDUL | Pakistan |
| 9 | 013 | MOHAMED, FAHED NASSER | Saudi Arabia |
| 10 | 015 | UL SHAH, ZIA | Pakistan |
| 11 | 017 | KHAN, MUHAMMED IJAZ | Pakistan |
| 12 | 022 | HAMIDUVA, SHAKHRUKH | Uzbekistan |
| 13 | 024 | ABASSI, FEROZ ALI | U.K. |
| 14 | 025 | AL JOUDI, MAJEED ABDULLAH | Saudi Arabia |
| 15 | 026 | GHAZI, FAHED ABDULLAH AHMAD | Yemen |
| 16 | 027 | UTHMAN, UTHMAN ABDUL RAHIM MOHAMMED | Yemen |
| 17 | 028 | AL ALAWI, MUAZ HAMZA AHMAD | Yemen |
| 18 | 029 | AL ANSI, MUHAMMAD AHMAD ABDALLAH | Yemen |
| 19 | 030 | AL HIKIMI, AHMED UMAR ABDULLAH | Yemen |
| 20 | 031 | ABD AL MUJAHID, MAHMOUD ABD AL AZIZ | Yemen |
| 21 | 032 | AHMED, FARUQ ALI | Yemen |
| 22 | 033 | AL EDAH, MOHAMMED AHMAD SAID | Yemen |
| 23 | 034 | AL YAFI, AL KHADR ABDALLAH MUHAMMED | Yemen |
| 24 | 035 | QADER IDRIS, IDRIS AHMED ABDU | Yemen |
| 25 | 036 | IDRIS, IBRAHIM OTHMAN IBRAHIM | Yemen |
| 26 | 037 | ABD AL WAHAB, ABD AL MALIK | Yemen |
| 27 | 038 | AL YAZIDI, RIDAH BIN SALEH | Tunisia |
| 28 | 039 | AL BAHLUL, ALI HAMZA AHMED SULEIMAN | Yemen |
| 29 | 040 | AL MUDHAFFARI, ABDEL QADIR HUSSEIN | Yemen |
| 30 | 041 | AHMAD, MAJID MAHMUD ABDU | Yemen |
| 31 | 042 | SHALABI, ABDUL RAHMAN | Saudi Arabia |
| 32 | 043 | MOQBEL, SAMIR NAJI AL HASAN | Yemen |
| 33 | 044 | ABU GHANIM, MOHAMMED RAJAB SADIQ | Yemen |
| 34 | 045 | AL RAHIZI, ALI AHMAD MUHAMMAD | Yemen |
| 35 | 046 | ABDALLAH, SAYF BIN | Tunisia |
| 36 | 048 | ALHAMIRI, ABDULAH | UAE |
| 37 | 049 | AL AASMI, ASSEM MATRUQ MOHAMMAD | Saudi Arabia |
| 38 | 050 | AL HUSAYN, ZAID MUHAMAMD SA'AD | Jordan |
| 39 | 051 | BARAYAN, MAJID AL | Saudi Arabia |
| 40 | 052 | AL MURBATI, ISSA ALI ABDULLAH | Bahrain |
| 41 | 053 | AL MAHAYAWI, SAUD DAKHIL ALLAH MUSLIH | Saudi Arabia |
| 42 | 054 | AL QOSI, IBRAHIM AHMED MAHMOUD | Sudan |
| 43 | 055 | AL ZAYLA, MUHAMMED YAHIA MOSIN | Saudi Arabia |
| 44 | 057 | AL HARBI, SALIM SULIMAN | Saudi Arabia |
| 45 | 058 | AL WAHAB, MUSA ABED | Saudi Arabia |
| 46 | 059 | AL UWAYDHA, SULTAN AHMED DIRDEER MUSA | Saudi Arabia |
| 47 | 060 | AL WADI, ADIL KAMIL ABDULLAH | Bahrain |
| 48 | 061 | KARNAZ, MURAT | Turkey |
| 49 | 062 | AL JUHANI, MUHAMAD NAJI SUBHI | Saudi Arabia |
| 50 | 063 | AL QAHTANI, MUHAMMAD MANI AHMED AL SHAL LAN | Saudi Arabia |
| 51 | 064 | SEBAII, ABDEL HADI MOHAMMED BADAN AL SEBAII | Saudi Arabia |
| 52 | 065 | AMIN, OMAR RAJAB | Kuwait |

1

(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 53 | 066 | AL SULAMI, YAHYA SAMIL AL SUWAYMIL | Saudi Arabia |
| 54 | 067 | AL TAMINI, ABD AL RAZZAQ ABDALLAH IBRAHIM | Saudi Arabia |
| 55 | 068 | AL BAWARDI, KHALID SAUD ABD AL RAHMAN | Saudi Arabia |
| 56 | 069 | ISMAIL, SADEQ MUHAMMAD SA ID | Yemen |
| 57 | 070 | HOUARI, ABDUL RAHAM | Algeria |
| 58 | 072 | IKASSRIN, LAACIN | Morocco |
| 59 | 073 | NUR, YUSIF KHALIL ABDALLAH | Saudi Arabia |
| 60 | 074 | AL RASHID, MESH ARSAD | Saudi Arabia |
| 61 | 075 | LAHASSIHI, NAJEB | Morocco |
| 62 | 076 | ((SHARIPOV)), RUKNIDDIN FAYZIDDINOVICH | Tajikistan |
| 63 | 077 | FAZROLLAH, MEHRABANB | Tajikistan |
| 64 | 078 | AL HANASHI, MOHAMMAD AHMED ABDULLAH SALEH | Yemen |
| 65 | 079 | AL HARAZI, FAHED | Saudi Arabia |
| 66 | 081 | ALI, WALID MOHAMMAD HAJ MOHAMMAD | Sudan |
| 67 | 084 | BATAYEV, ILKHAM TURDBYAVICH | Uzbekistan |
| 68 | 088 | AWAD, WAQAS MOHAMMED ALI | Yemen |
| 69 | 089 | TSIRADZHO, POOLAD T | Azerbaijan |
| 70 | 090 | (VAKHIDOV) SOBIT (ABDUMUKIT) VALIKHONOVICH | Tajikistan |
| 71 | 091 | AL SALEH, ABDUL | Yemen |
| 72 | 093 | AL ZAHRANI, YASSER TALAL | Saudi Arabia |
| 73 | 094 | AL SEHLI, IBRAHIM DAIF ALLAH NEMAN | Saudi Arabia |
| 74 | 095 | AHMED, ABDUL RAHMAN UTHMAN | Saudi Arabia |
| 75 | 096 | AL UTAYBI, MUHAMMAD SURUR DAKHILALLAH | Saudi Arabia |
| 76 | 102 | MOHAMMED, NAG | China |
| 77 | 103 | MAHMUD, ARKIN | China |
| 78 | 105 | ALI, ADNAN MOHAMMED | Saudi Arabia |
| 79 | 108 | ALIZA, ABDUL RAUF | Afghanistan |
| 80 | 109 | AL RABIESH, YUSEF ABDULLAH SALEH | Saudi Arabia |
| 81 | 111 | TAYEEA, ALI ABDUL MOTALIB AWAYD HASSAN AL | Iraq |
| 82 | 112 | AL KHALDI, ABDUL AZIZ SAAD | Saudi Arabia |
| 83 | 114 | AL SHIHRI, YUSSEF MOHAMMED MUBARAK | Saudi Arabia |
| 84 | 115 | SALEH NASER, ABDUL RAHMAN MOHAMED | Yemen |
| 85 | 117 | AL WARAFI, MUKTAR YAHYA NAJEE | Yemen |
| 86 | 118 | KAHM, ABDUL RAHMAN ABDULLAH MOHAMED JUMA | Afghanistan |
| 87 | 120 | RASOOL, HABIB | Afghanistan |
| 88 | 121 | MOHAMMED, SALMAN SAAD AL KHADI | Saudi Arabia |
| 89 | 122 | AL ATABI, BIJAD THIF ALLAH | Saudi Arabia |
| 90 | 123 | HASSAN, MUHAMMAD HUSSEIN ALI | Morocco |
| 91 | 126 | SAID, SALAM ABDULLAH | Saudi Arabia |
| 92 | 128 | AL BIHANI, GHALEB NASSAR | Yemen |
| 93 | 129 | AL-MARWA'I, TOUFIG SABER MUHAMMAD | Yemen |
| 94 | 130 | SULTAN, FAHA | Saudi Arabia |
| 95 | 131 | BEN KEND, SALEM AHMED | Yemen |
| 96 | 132 | AL SHIHRI, ABD AL SALAM GHAYTAN MURAYYIF AL ZAYDA | Saudi Arabia |
| 97 | 142 | FAZALDAD | Pakistan |
| 98 | 148 | BIN HAMIDA, ADIL MABROUK | Tunisia |
| 99 | 149 | HAMDAN, SALIM AHMED SALIM | Yemen |
| 100 | 150 | BOUJAADIA, SAID | Morocco |
| 101 | 151 | HASHEM, MUBARAK HUSSAIN BIN ABUL | Bangladesh |
| 102 | 152 | AL KHALAQI, ASIM THAHIT ABDULLAH | Yemen |
| 103 | 153 | SULEIMAN, FAYIZ AHMAD YAHIA | Yemen |
| 104 | 154 | AL AWFI, MAZIN SALIH MUSAID | Saudi Arabia |
| 105 | 155 | AL HUBAYSHI, KHALID SULAYMANJAYDH | Saudi Arabia |

2

List of detainees who went through completed CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 106 | 156 | ABD AL RAHMAN ABD, ALLAL AB ALJALLIL | Yemen |
| 107 | 157 | AL MALKI, SAED KHATEM | Saudi Arabia |
| 108 | 158 | AL HARBI, MAJID ABDALLAH HUSAYN MUHAMMAD AL SAM | Saudi Arabia |
| 109 | 159 | AL NOAIMI, ABDULLAH | Bahrain |
| 110 | 160 | BEN MOUJAN, MUHAMMAD | Morocco |
| 111 | 162 | AL TAYS, ALI HUSAYN ABDULLAH | Yemen |
| 112 | 163 | AL QADASI, KHALID ABD JAL JABBAR MUHAMMAD JUTHM/ | Yemen |
| 113 | 165 | AL BUSAYSS, ADIL SAID AL HAJ OBEID | Yemen |
| 114 | 167 | AL RAIMI, ALI YAHYA MAHDI | Yemen |
| 115 | 168 | SHAHEEN, MUHAMMED IBN ARFAN | Tunisia |
| 116 | 170 | MASUD, SHARAF AHMAD MUHAMMAD | Yemen |
| 117 | 171 | ALAHDAL, ABU BAKR IBN ALI MUHHAMMAD | Yemen |
| 118 | 172 | MOHAMMED, ALI MUHAMMED NASIR | Saudi Arabia |
| 119 | 173 | KHALID, RIDOUANE | France |
| 120 | 174 | SLITI, HISHAM BIN ALI BIN AMOR | West Bank |
| 121 | 175 | SAID, HASSAN MUJAMMA RABAI | Algeria |
| 122 | 176 | AL QURAYSHI, MAJID AYDHA MUHAMMAD | Saudi Arabia |
| 123 | 177 | AL JUTAYLI, FAHD SALIH SULAYMAN | Saudi Arabia |
| 124 | 178 | BAADA, TAREQ ALI ABDULLAH AHMED | Yemen |
| 125 | 179 | AL JUAID, ABDUL RAHMAN OWAID MOHAMMAD | Saudi Arabia |
| 126 | 181 | AL SHIMRI, MAJI AFAS RADHI | Saudi Arabia |
| 127 | 182 | AL JABRI, BANDAR AHMAD MUBARAK | Saudi Arabia |
| 128 | 183 | AL JAYFI, ISSAM HAMID AL BIN ALI | Yemen |
| 129 | 184 | AL OMAIRAH, OTHMAN AHMED OTHMAN | Yemen |
| 130 | 185 | TURKI MASH AWI ZAYID AL ASIRI | Saudi Arabia |
| 131 | 186 | BALKHAIR, RASHED AWAD KHALAF | Saudi Arabia |
| 132 | 187 | MAKRAM, MURTADHA AL SAID | Saudi Arabia |
| 133 | 188 | AL FAYFI, JABIR JUBRAN | Saudi Arabia |
| 134 | 189 | GHEREBY, SALEM ABDUL SALEM | Libya |
| 135 | 190 | AL MISHAD, SHARIF FATI ALI | Egypt |
| 136 | 191 | JAID AL KHATHAMI, SALEH ALI | Saudi Arabia |
| 137 | 192 | ARBAYSH, IBRAHIMJ SULAYMAN MUHAMMAD | Saudi Arabia |
| 138 | 193 | MOQBILL, MUHSIN MUHAMMAD MUSHEEN | Yemen |
| 139 | 194 | MUHAMMAD ABD ALLAH MANSUR AL FUTURI | Libya |
| 140 | 195 | AL SHUMRANI, MOHAMMAD AL RAHMAN | Saudi Arabia |
| 141 | 196 | MUSA BIN ALI BIN SAID AL AMRI | Saudi Arabia |
| 142 | 197 | SHOKURI, YUNIS ABDURRAHMAN | Morocco |
| 143 | 198 | AL ASADI, MOHAMMED AHMED ALI | Yemen |
| 144 | 199 | AL AMRI, ABDUL RAHMAN MA ATH THAFIR | Saudi Arabia |
| 145 | 200 | QAHTANI, SAID MUHAMMAD HUSYAN | Saudi Arabia |
| 146 | 201 | TOURSON, AHMAD | China |
| 147 | 202 | BIN ATEF, MAHMMOUD OMAR MOHAMMED | Yemen |
| 148 | 204 | AL ZAHRANI, SAID IBRAHIM RAMZI | Saudi Arabia |
| 149 | 205 | AMTIRI, NASSER NAJIRI | Kuwait |
| 150 | 206 | ABDEL AZIZ, ABDULLAH MUHAMMED | Saudi Arabia |
| 151 | 207 | ALHABIRI, MISHAL AWAD SAYAF | Saudi Arabia |
| 152 | 208 | SALEHOVE, MAROOF SALEEMOVICH | Tajikistan |
| 153 | 213 | AL HAMEYDANI, KHALID BIN ABDULLAH MISHAL THAMER | Kuwait |
| 154 | 214 | AL KURASH, MUHAMMAD ABD AL RAHMAN | Saudi Arabia |
| 155 | 215 | AL SHARIF, FAHD UMR ABD AL MAJID | Saudi Arabia |
| 156 | 216 | AL KABI, JAMIL ALI | Saudi Arabia |
| 157 | 217 | AL SHAMMERI, ABD AL AZIZ SAYER UWAIN | Kuwait |
| 158 | 218 | AL FOUZAN, FAHD MUHAMMED ABDULLAH | Saudi Arabia |

**(All detainees who went through Round 1 of ARB process are also found on this list)**

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 159 | 219 | RAZAK, ABDUL | China |
| 160 | 220 | AL AJMI, ABDALLAH SALEH ALI | Kuwait |
| 161 | 221 | SALIH, ALI MOHSEN | Yemen |
| 162 | 222 | AL KUNDUZI, UMAR ABDULLAH | Afghanistan |
| 163 | 223 | SULAYMAN, ABDUL RAHMAN ABDUL ABU GHIYTH | Yemen |
| 164 | 224 | MUHAMMAD, ABD AL RAHMAN ABDULLAH ALI | Yemen |
| 165 | 225 | AL SHULAN, HANI ABDUL MUSLIH | Yemen |
| 166 | 226 | AL NURR, ANWAR | Saudi Arabia |
| 167 | 227 | AL BALUSHI, SALAH ABDUL RASUL ALI ABDUL RAHMAN | Bahrain |
| 168 | 228 | KAMEL, ABDULLAH KAMEL ABUDALLAH | Kuwait |
| 169 | 229 | AL DAIHANI, MOHAMMED FENAITEL MOHAMED | Kuwait |
| 170 | 230 | HUMUD DAKHIL HUMUD SA'ID AL-((JAD'AN | Saudi Arabia |
| 171 | 231 | AL SHARAKH, ABDULHADI ABDALLAH IBRAHIM | Saudi Arabia |
| 172 | 232 | AL AWDA, FOUZI KHALID ABDULLAH | Kuwait |
| 173 | 233 | SALIH, ABDUL AL RAZZAQ MUHAMMAD | Yemen |
| 174 | 234 | AL ZAHARNI, KHALID MOHAMMED | Saudi Arabia |
| 175 | 235 | JARABH, SAEED AHMED MOHAMMED ABDULLAH SAREM | Yemen |
| 176 | 236 | MUSTAFA, KHALED BEN | France |
| 177 | 237 | SOULEIMANI LAALAMI, MOHAMMED | Morocco |
| 178 | 238 | HADJARAB, NABIL | Algeria |
| 179 | 239 | AMI, SHAKIR ABDURAHIM MOHAMED | Saudi Arabia |
| 180 | 240 | AL SHABLI, ABDULLAH YAHIA YOUSF | Saudi Arabia |
| 181 | 242 | QASIM, KHALED | Yemen |
| 182 | 243 | AL UTAYBI, ABDULLAH ALI | Saudi Arabia |
| 183 | 244 | NASIR, ABDUL LATIF | Morocco |
| 184 | 245 | AL SILM HAJI HAJJAJ AWWAD AL HAJJAJI | Saudi Arabia |
| 185 | 246 | AL KHALIFA, SHEIKH SALMAN EBRAHIM MOHAMED ALI | Bahrain |
| 186 | 248 | AL OSHAN, SALEH ABDALL | Saudi Arabia |
| 187 | 249 | AL HAMIRI, MOHAMMED ABDULLAH | Yemen |
| 188 | 250 | ANVAR, HASSAN | China |
| 189 | 251 | BIN SALEM, MUHHAMMAD SAID | Yemen |
| 190 | 252 | BASARDAH, YASIM MUHAMMED | Yemen |
| 191 | 253 | AL ANSARI, FARIS MUSLIM | Afghanistan |
| 192 | 254 | KHENAINA, MUHAMMAD ALI HUSSEIN | Yemen |
| 193 | 255 | HATIM, SAID MUHAMMED SALIH | Yemen |
| 194 | 256 | AL RADAI, RIYAD ATIQ ALI ABDU AL HAJ | Yemen |
| 195 | 257 | ABDULAYEV, OMAR HAMZAYAVICH | Tajikistan |
| 196 | 258 | IBRAHIM, NAYIF ABDALLAH IBRAHIM | Saudi Arabia |
| 197 | 259 | HINTIF, FADIL HUSAYN SALIH | Yemen |
| 198 | 260 | ADIL, AHMED | China |
| 199 | 261 | AL DOSARI, JUMA MOHAMMED ABDUL LATIF | Bahrain |
| 200 | 262 | AL WAFTI, ABDULLAH ABD AL MU'IN | Saudi Arabia |
| 201 | 263 | SULTAN, ASHRAF SALIM ABD AL SALAM | Libya |
| 202 | 264 | AL BADDAH, ABDUL AZIZ ABDUL RAHMAN ABDUL AZIZ | Saudi Arabia |
| 203 | 265 | AL HARBI, TARIQE SHALLAH HASSAN | Saudi Arabia |
| 204 | 266 | ABDALLAH MUHAMMAD SALIH AL GHANIMI | Saudi Arabia |
| 205 | 268 | AL HATAYBI, ABDUL RAHMAN NASHI BADI | Saudi Arabia |
| 206 | 269 | MUHAMMAD HAMID AL QARANI | Chad |
| 207 | 270 | ZEMMORI, MOSA ZI | Belgium |
| 208 | 271 | AL NASIR, IBRAHIM MUHAMMED IBRAHIM | Saudi Arabia |
| 209 | 272 | AL BAHUTH, ZIYAD SALIH MUHAMMAD | Saudi Arabia |
| 210 | 273 | AL NASIR, ABD AL AZIZ MUHAMMAD IBRAHIM | Saudi Arabia |
| 211 | 274 | AL SAMIRI, BADER AL BAKRI | Saudi Arabia |

List of detainees who went through complete CSRT process
**(All detainees who went through Round 1 of ARB process are also found on this list)**

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 212 | 275 | ABBAS, YUSEF | China |
| 213 | 276 | BASIT, AKHDAR QASEM | China |
| 214 | 277 | MAHNUT, BAHTIYAR | China |
| 215 | 278 | MAMUT, ABDUL HELIL | China |
| 216 | 279 | AYUB, HAJI MOHAMMED | China |
| 217 | 280 | KHALIK, SAIDULLAH | China |
| 218 | 281 | ABDUL RAHMAN, ABDUL GHAPPAR | China |
| 219 | 282 | ABDULGHUPUR, HAJIAKBAR | China |
| 220 | 283 | QASIM, ABU BAKR | China |
| 221 | 284 | AL QADIR, MOHAMMED ABD AL | Algeria |
| 222 | 285 | ABDULQADIRAKHUN, ABDULLAH | China |
| 223 | 286 | JAHDARI, ZIAD SAID FARG | Saudi Arabia |
| 224 | 287 | ALLAITHY, SAMI ABDUL AZIZ SALIM | Egypt |
| 225 | 288 | SAYAB, MUTIJ SADIZ AHMAD | Algeria |
| 226 | 289 | ABDUREHIM, DAWUT | China |
| 227 | 290 | BEL BACHA, AHMED BIN SALEH | Algeria |
| 228 | 292 | FEGHOUL, ABDULLI | Algeria |
| 229 | 293 | ABDULHEHIM, ADEL | China |
| 230 | 295 | ABDULAHAT, EMAM | China |
| 231 | 296 | SEN, MESUT | Belgium |
| 232 | 298 | UYAR, SALIH | Turkey |
| 233 | 299 | RAZA, ABID | Pakistan |
| 234 | 301 | HAFEZ, KHALIL RAHMAN | Pakistan |
| 235 | 306 | ZAEEF, ABDUL SALAM | Afghanistan |
| 236 | 307 | KHANTUMANI, ABD AL NASIR MUHAMMAD ABD AL QADIR | Syria |
| 237 | 308 | AL NUSAYRI, ADIL UQLA HASSAN | Saudi Arabia |
| 238 | 309 | ABD AL SATTAR, MUIEEN A DEEN JAMAL A DEEN ABD AL R | U.A.E. |
| 239 | 310 | AMEZIANE, DJAMEL SAIID ALI | Algeria |
| 240 | 311 | FARHI, SAIID | Algeria |
| 241 | 312 | KHANTUMANI, MUHAMMAD ABD AL NASIR MUHAMMAD | Syria |
| 242 | 317 | DOKHAN, MOAMMAR BADAWI | Syria |
| 243 | 318 | AL TAIBI, RAMI BIN SAID | Saudi Arabia |
| 244 | 319 | SEBAI, MOHAMMED JAYED | Saudi Arabia |
| 245 | 320 | PARHAT, HOZAIFA | China |
| 246 | 321 | SAID KUMAN, AHMED YASLAM | Yemen |
| 247 | 322 | AL BARAKAT, KHALID HASSAN HUSAYN | Saudi Arabia |
| 248 | 324 | AL SABRI, MASHUR ABDALLAH MUQBIL AHMED | Yemen |
| 249 | 326 | AJAM, AHMED ADNAN MUHAMMAD | Syria |
| 250 | 327 | SHAABAN, ALI HUSEIN MUHAMMAD | Syria |
| 251 | 328 | MOHAMED, AHMED | China |
| 252 | 329 | FARAJ, ABD AL HADIO OMAR MAHMOUD | Syria |
| 253 | 330 | MOUHAMMAD, MAASOUM ABDAH | Syria |
| 254 | 331 | AL SHURFA, OHMED AHMED MAHAMOUD | Saudi Arabia |
| 255 | 332 | AL TAYABI, ABDULLAH | Saudi Arabia |
| 256 | 333 | AL HARBI, MOHAMED ATIQ AWAYD | Saudi Arabia |
| 257 | 334 | AL MARRI, JARALLA SALEH MOHAMMED KAHLA | Qatar |
| 258 | 335 | MOHAMMED, KAHLID SAAD | Saudi Arabia |
| 259 | 336 | AL FRIH, MAJED HAMAD | Saudi Arabia |
| 260 | 337 | AL BIDNA, SA AD IBRAHAM SA AD | Saudi Arabia |
| 261 | 338 | WASIM | Saudi Arabia |
| 262 | 339 | AL MORGHI, KHALID ABDALLAH ABDEL RAHMAN | Saudi Arabia |
| 263 | 340 | AL DUBAIKEY, BESSAM MUHAMMED SALEH | Saudi Arabia |
| 264 | 341 | AL FARHA, SAID ALI | Saudi Arabia |

**(All detainees who went through Round 1 of ARB process are also found on this list)**

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 265 | 342 | AL QURBI, MOHAMMED MUBAREK SALAH | Saudi Arabia |
| 266 | 343 | AL RUSHAYDAN, ABDALLAH IBRAHIM | Saudi Arabia |
| 267 | 344 | QA ID, RASHID ABD AL MUSLIH QA ID AL | Saudi Arabia |
| 268 | 345 | AL HAJJ, SAMI MOHY EL DIN MUHAMMED | Sudan |
| 269 | 346 | SHAYBAN, SAID BEZAN ASHEK | Saudi Arabia |
| 270 | 357 | RAHMAN, ABDUL 4 | Afghanistan |
| 271 | 368 | HAWSAWI, AMRAN BAQUR MOHAMMED | Saudi Arabia |
| 272 | 369 | ALGAZZAR, ADEL FATTOUGH ALI | Egypt |
| 273 | 370 | AL HIZANI, ABD | Saudi Arabia |
| 274 | 372 | SA ID ALI JABIR AL KHATHIM AL SHIHRI | Saudi Arabia |
| 275 | 433 | SADKHAN, JAWAD JABBER | Iraq |
| 276 | 434 | AL SHAMYRI, MUSTAFA ABDUL QAWI ABDUL AZIZ | Yemen |
| 277 | 435 | ABDUL SAID, HASSAN | Iraq |
| 278 | 436 | AL USAYMI, NAYIF FAHD MUTLIQ | Saudi Arabia |
| 279 | 437 | AL NASIR, FAIZAL SAHA | Saudi Arabia |
| 280 | 438 | AL KHALIF, HANI SAIID MOHAMMAD | Saudi Arabia |
| 281 | 439 | AL GHATANI, KHALID MALU SHIA | Saudi Arabia |
| 282 | 440 | BWAZIR, MOHAMMED ALI ABDULLAH | Yemen |
| 283 | 441 | AL ZAHRI, ABD AL RAHMAN | Yemen |
| 284 | 452 | JAMALUDINOVICH, ABU BAKIR | Uzbekistan |
| 285 | 455 | HAMIDULLAH, ALI SHER | Uzbekistan |
| 286 | 457 | GUL, MOHAMMAD | Afghanistan |
| 287 | 458 | SARAJUDDIN, ABIB | Afghanistan |
| 288 | 459 | ZAMAN, GUL | Afghanistan |
| 289 | 460 | ZAMAN, KHAN | Afghanistan |
| 290 | 461 | QYATI, ABDUL RAHMAN UMIR AL | Yemen |
| 291 | 489 | JANKO, ABD AL RAHIM ABDUL RASSAK | Syria |
| 292 | 491 | TURKISTANI, SADIK AHMAD | Saudi Arabia |
| 293 | 493 | BUKHARY, ABDUL HAKIM | Saudi Arabia |
| 294 | 494 | NOORALLAH, HAJI | Afghanistan |
| 295 | 495 | RAFIQ, MOHAMMED | Pakistan |
| 296 | 496 | RAHMAN, FIZAULLA | Afghanistan |
| 297 | 497 | SUBII, NASIR MAZIYAD ABDALLAH AL QURAYSHI AL | Saudi Arabia |
| 298 | 498 | HAIDEL, MOHAMMED AHMED SAID | Yemen |
| 299 | 501 | AL OTAIBI, NAWAF FAHAD | Saudi Arabia |
| 300 | 502 | OURGY, ABDUL BIN MOHAMMED BIN ABESS | Tunisia |
| 301 | 503 | AL ZUBA, SALEH MOHAMED | Yemen |
| 302 | 505 | AL MURI, KHALID RASHD ALI | Saudi Arabia |
| 303 | 506 | AL DHUBY, KHALID MOHAMMED SALIH | Yemen |
| 304 | 507 | AL ANAZI, SULTAN SARI SAYEL | Saudi Arabia |
| 305 | 508 | RABEII, SALMAN YAHYA HASSAN MOHAMMED | Yemen |
| 306 | 509 | KHUSRUF, MOHAMMED NASIR YAHYA | Yemen |
| 307 | 510 | NASSERI, RIYAD BIL MOHAMMMED TAHIR | Tunisia |
| 308 | 511 | AL NAHDI, SULAIMAN AWATH SULAIMAN BIN AGEEL | Yemen |
| 309 | 513 | KHOWLAN, ABDUL RAHMAN MOHAMMED HUSSEIN | Saudi Arabia |
| 310 | 514 | THANI, ABDALLAH FARIS AL UNAZI | Saudi Arabia |
| 311 | 516 | AL HARBI, GHANIM ABDUL RAHMAN | Saudi Arabia |
| 312 | 519 | AL QUWARI, MAHRAR RAFAT | West Bank |
| 313 | 521 | KERIMBAKIEV, ABDULRAHIM | Kazakhstan |
| 314 | 522 | ISMAIL, YASIN QASEM MUHAMMAD | Yemen |
| 315 | 526 | ABAHANOV, YAKUB | Kazakhstan |
| 316 | 527 | DAOUD, MOHAMMAN | Afghanistan |
| 317 | 528 | MAGRUPOV, ABDULLAH TOHTASINOVICH | Kazakhstan |

List of detainees who went through complete CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 318 | 530 | GUL, DAWD | Afghanistan |
| 319 | 532 | SHARIF, MOHAMMED | Afghanistan |
| 320 | 533 | ZUMIRI, HASSAN | Algeria |
| 321 | 535 | AL SAWAH, TARIQ MAHMOUD AHMED | Bosnia |
| 322 | 536 | AL HARBI, MOHAMMED ABDULLAH | Saudi Arabia |
| 323 | 537 | AL ALI, MAHMUD SALEM HORAN MOHAMMED MUTLAK | Syria |
| 324 | 546 | MUHIBULLAH, | Afghanistan |
| 325 | 549 | AL DAYI, OMAR SAID SALIM | Yemen |
| 326 | 550 | ZAID, WALID SAID BIN SAID | Yemen |
| 327 | 551 | AL RABIA, FOUAD MAHOUD HASAN | Kuwait |
| 328 | 552 | AL KANDARI, FAIZ MOHAMMED AHMED | Kuwait |
| 329 | 553 | AL BEDANI, ABDUL KHALED AHMED SAHLEH | Saudi Arabia |
| 330 | 554 | AL SANI, FAHMI SALEM SAID | Yemen |
| 331 | 555 | MUHAMMED, ABDUL MAJID | Iran |
| 332 | 556 | KHAN, ABDULLAH MOHAMMAD | Uzbekistan |
| 333 | 557 | BIN QUMU, ABU SUFIAN IBRAHIM AHMED HAMUDA | Libya |
| 334 | 558 | BEGG, MOAZZAN | U.K. |
| 335 | 560 | MOHAMMED, HAJI WALI | Afghanistan |
| 336 | 561 | MUSLIMDOST, ABDUL RAHIM | Afghanistan |
| 337 | 562 | PEERZAI, QARI HASAN ULLA | Afghanistan |
| 338 | 564 | AWAD, JALAL SALAM AWAD | Yemen |
| 339 | 565 | AL MOUSA, ABDUL HAKIM ABDUL RAHMAN ABDUAZIZ | Saudi Arabia |
| 340 | 566 | QATTAA, MANSOOR MUHAMMED ALI | Saudi Arabia |
| 341 | 567 | BARRE, MOHAMMED SULAYMON | Somalia |
| 342 | 568 | AL ZAMEL, ADEL ZAMEL ABD AL MAHSEN | Kuwait |
| 343 | 569 | AL SHARABI, ZUHAIL ABDO ANAM SAID | Yemen |
| 344 | 570 | AL QURASHI, SABRI MOHAMMED EBRAHIM | Yemen |
| 345 | 571 | AL AZMI, SA AD MADHI SA AD HOWASH | Kuwait |
| 346 | 572 | AL ZABE, SLAH MUHAMED SALIH | Saudi Arabia |
| 347 | 574 | AL WADY, HAMOUD ABDULLAH HAMOUD HASSAN | Yemen |
| 348 | 575 | AZANI, SAAD MASIR MUKBL AL | Yemen |
| 349 | 576 | HAMDOUN, ZAHAR OMAR HAMIS BIN | Yemen |
| 350 | 577 | MAR'I, JAMAL MUHAMMED 'ALAWI | Yemen |
| 351 | 578 | AL SUADI, ABDUL AZIZ ABDULLAH ALI | Yemen |
| 352 | 579 | KHAIRKHWA, KHIRULLAH SAID WALI | Afghanistan |
| 353 | 581 | RAHMAN, SHED ABDUR | Pakistan |
| 354 | 584 | NOORI, ADEL | China |
| 355 | 586 | KHAMSAN, KARAM KHAMIS SAYD | Yemen |
| 356 | 588 | AL TABI, MANA SHAMAN ALLABARDI | Saudi Arabia |
| 357 | 589 | ABDUL WAHAB AL ASMR, KHALID MAHOMOUD | Jordan |
| 358 | 590 | RASHIDI, AHMED | Morocco |
| 359 | 591 | ESMHATULLA, QARI | Afghanistan |
| 360 | 627 | BATARFI, AYMAN SAEED ABDULLAH | Yemen |
| 361 | 631 | WAZIR, PADSHA | Afghanistan |
| 362 | 647 | AL SHAMAREE, ZABAN THAAHER ZABAN | Saudi Arabia |
| 363 | 649 | PATEL, MUSTAQ ALI | France |
| 364 | 650 | AL QAHTANI, JABIR HASAN MUHAMED | Saudi Arabia |
| 365 | 651 | KABIR, USAMA HASSAN AHMED ABU | Jordan |
| 366 | 652 | AL QAHTANI, ABDULLAH HAMID | Saudi Arabia |
| 367 | 653 | AL KARIM, ARKAN MOHAMMAD GHAFIL | Iraq |
| 368 | 654 | AL GHAZZAWI, ABDEL HAMID IBN ABDUSSALEM IBN MIFTA | Libya |
| 369 | 655 | DAD, KHUDAI | Afghanistan |
| 370 | 659 | ABDENOUR, SAMEUR | Algeria |

**List of detainees who went through complete CSRT process**
**(All detainees who went through Round 1 of ARB process are also found on this list)**

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 371 | 660 | LAGHA, LUFTI BIN SWEI | Tunisia |
| 372 | 661 | HABIB, MAMDOUH IBRAHIM AHMED | Australia |
| 373 | 662 | SULEYMAN, AHMED HASSAN JAMIL | Jordan |
| 374 | 664 | UWAYDAH, RASHID AWAD RASHID AL | Saudi Arabia |
| 375 | 669 | AHMED ZAID SALIM ZUHAIR | Saudi Arabia |
| 376 | 670 | HEKMAT, ABDULLAH | Afghanistan |
| 377 | 672 | ASAM, ZAKIRJAN | Uzbekistan |
| 378 | 675 | KASIMBEKOV, KAMALLUDIN | Uzbekistan |
| 379 | 676 | KURD, MOHAMED ANWAR | Iran |
| 380 | 678 | MAHDI, FAWAZ NAMAN HAMOUD ABDULLAH | Yemen |
| 381 | 679 | TAHAR, MOHMMAD AHMAD ALI | Yemen |
| 382 | 680 | HASSAN, EMAD ABDALLA | Yemen |
| 383 | 681 | HASSEN, MOHAMMED MOHAMMED | Yemen |
| 384 | 682 | GHASSAN ABDALLAH GHAZI AL SHIRBI | Saudi Arabia |
| 385 | 683 | AHMED, FAYAD YAHYA | Yemen |
| 386 | 684 | TAHAMUTTAN, MOHAMMED ABDULLAH | West Bank |
| 387 | 685 | ABDELRAHMAN, ABDELRAZAK ALI | Libya |
| 388 | 686 | HAKIM, ABDEL GHALIB AHMAD | Yemen |
| 389 | 687 | AL NOOFAYAEE, ABDALAZIZ KAREEM SALIM | Saudi Arabia |
| 390 | 688 | AHMED, FAHMI ABDULLAH | Yemen |
| 391 | 689 | SALAM, MOHAMMED AHMED | Yemen |
| 392 | 690 | QADER, Ahmed Abdul | Yemen |
| 393 | 691 | SALEM AL ZARNUKI, MOHAMMED ALI | Yemen |
| 394 | 692 | ALEH, ALI BIN ALI | Yemen |
| 395 | 693 | AHMED, ALI ABDULLAH | Yemen |
| 396 | 694 | BARHOUMI, SUFYIAN | Algeria |
| 397 | 695 | ABU BAKR, OMAR KHALIFA MOHAMMED | Libya |
| 398 | 696 | AL QAHTANI, JABRAN SAID WAZAR | Saudi Arabia |
| 399 | 701 | KIYEMBA, JAMAL ABDULLAH | Uganda |
| 400 | 702 | MINGAZOV, RAVIL | Russia |
| 401 | 703 | LABED, AHMED BIN KADR | Algeria |
| 402 | 704 | ABDALLAH, MUHAMED HUSSEIN | Somalia |
| 403 | 705 | HAMLILY, MUSTAFA AHMED | Algeria |
| 404 | 706 | MOHAMMAD, MOHAMMAD LAMEEN SIDI | Mauritania |
| 405 | 707 | MUHAMMAED, NOOR UTHMAN | Sudan |
| 406 | 708 | ALI BAKUSH, ISMAEL ALI FARAJ | Libya |
| 407 | 709 | ABU AL QUSIN, ABDUL RAUF OMAR MOHAMMED | Libya |
| 408 | 710 | BANI AMIR, SALIM MAHMOUD ADEM MOHAMMED | Sudan |
| 409 | 712 | GADALLAH, HAMMAD ALI AMNO | Sudan |
| 410 | 713 | AL ZAHRANI, MUHAMMED MURDI ISSA | Saudi Arabia |
| 411 | 716 | SALEEM, ALLAH MUHAMMED | Egypt |
| 412 | 717 | BIN HADIDDI, ABDUL HADDI | Tunisia |
| 413 | 718 | BOUCETTA, FETHI | Algeria |
| 414 | 719 | AL HASSAN, MUSTAFA IBRAHIM MUSTAFA | Sudan |
| 415 | 720 | YAKOUB MOHAMMED | Sudan |
| 416 | 721 | OMAR, ABDULLAH BIN | Tunisia |
| 417 | 722 | DIYAB, JIHAD AHMED MUJSTAFA | Lebanon |
| 418 | 727 | DEGHAYES, OMAR AMER | Libya |
| 419 | 728 | NASSIR, JAMIL AHMED SAID | Yemen |
| 420 | 730 | FAUZEE, IBRAHIM | Maldives |
| 421 | 743 | MADNI, HAFEZ QARI MOHAMED SAAD IQBAL | Pakistan |
| 422 | 744 | NAJI, AZIZ ABDUL | Algeria |
| 423 | 753 | ZAHIR, ABDUL | Afghanistan |

List of detainees who went through complete CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 424 | 757 | AZIZ, AHMED OULD ABDEL | Mauritania |
| 425 | 758 | AL NAELY, ABBAS HABID RUMI | Iraq |
| 426 | 760 | SLAHI, MOHAMEDOU OULD | Mauritania |
| 427 | 761 | ZEIDAN, IBRAHIM MAHDY ACHMED | Libya |
| 428 | 762 | OBAIDULLAH | Afghanistan |
| 429 | 766 | KHADR, OMAR AHMED | Canada |
| 430 | 768 | AL DARBI, AHMED MUHAMMED HAZA | Saudi Arabia |
| 431 | 782 | GUL, AWAL | Afghanistan |
| 432 | 783 | ULLAH, SHAMS | Afghanistan |
| 433 | 798 | WAKIL, HAJI SAHIB ROHULLAH | Afghanistan |
| 434 | 801 | MELMA, SABAR LAL | Afghanistan |
| 435 | 812 | SHAH, QALANDAR | Afghanistan |
| 436 | 817 | BELMAR, RICHARD DEAN | U.K. |
| 437 | 826 | SALAAM, ABDUL | Afghanistan |
| 438 | 831 | KADIR, KHANDAN | Afghanistan |
| 439 | 832 | OMARI, MOHAMMAD NABI | Afghanistan |
| 440 | 834 | SHAHEEN NAQEEBYLLAH, SHAHWALI, ZAIR MOHAMMED | Afghanistan |
| 441 | 835 | MOHAMMED, RASOOL SHAHWALI ZAIR MOHAMMED | Afghanistan |
| 442 | 836 | SALEH, AYOUB MURSHID ALI | Yemen |
| 443 | 837 | AL MARWALAH, BASHIR NASIR ALI | Yemen |
| 444 | 838 | BALZUHAIR, SHAWKI AWAD | Yemen |
| 445 | 839 | AL MUDWANI, MUSAB OMAR ALI | Yemen |
| 446 | 840 | AL MAYTHALI, HA IL AZIZ AHMED | Yemen |
| 447 | 841 | NASHIR, SA ID SALIH SA ID | Yemen |
| 448 | 845 | MOHAMMED, AKHTAR | Afghanistan |
| 449 | 848 | ULLAH, AMIN | Afghanistan |
| 450 | 849 | NASIM, MOHAMMED 2 | Afghanistan |
| 451 | 850 | HASHIM, MOHAMMED | Afghanistan |
| 452 | 874 | NASIR, ABDUL | Afghanistan |
| 453 | 886 | NASRULLAH | Afghanistan |
| 454 | 888 | ISMAT ULLAH | Afghanistan |
| 455 | 890 | SANGARYAR, RAHMATULLAH | Afghanistan |
| 456 | 892 | AL HAMI, RAFIQ BIN BASHIR BIN JALUD | Tunisia |
| 457 | 893 | AL BIHANI, TOLFIQ NASSAR AHMED | Saudi Arabia |
| 458 | 894 | RAHMAN, MOHAMMED ABDUL | Tunisia |
| 459 | 899 | KHAN, SHAWALI | Afghanistan |
| 460 | 900 | JAWAD, MOHAMED | Afghanistan |
| 461 | 902 | MOHAMMED, TAJ | Afghanistan |
| 462 | 905 | ELBANNA, ABDUL LATIF | Jordan |
| 463 | 906 | AL RAWI, BISHER AMIN KHALIL | Iraq |
| 464 | 907 | RAHMAN, HABIB | Afghanistan |
| 465 | 909 | KHAN, MOHABET | Afghanistan |
| 466 | 914 | KHAN, SHARDAR | Afghanistan |
| 467 | 919 | ULLAH, FAIZ | Afghanistan |
| 468 | 923 | RAZZAQ, ABDUL | Afghanistan |
| 469 | 928 | GUL, KHI ALI | Afghanistan |
| 470 | 929 | QUDUS, ABDUL | Afghanistan |
| 471 | 933 | KHAN, SWAR | Afghanistan |
| 472 | 934 | GHANI, ABDUL | Afghanistan |
| 473 | 939 | AMEUR, MAMMAR | Algeria |
| 474 | 940 | ADEL HUSSEIN, HASSAN | Sudan |
| 475 | 941 | DIN, JUMA | Afghanistan |
| 476 | 942 | RAZZAK, ABDUL | Afghanistan |

List of detainees who went through complete CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 477 | 943 | GHANI, ABDUL 2 | Afghanistan |
| 478 | 944 | SHARIFULLAH | Afghanistan |
| 479 | 945 | JAN, SAID AMIR | Afghanistan |
| 480 | 948 | KHAN, ANWAR | Afghanistan |
| 481 | 949 | ZAHOR, ABDUL | Afghanistan |
| 482 | 950 | KHAN, ABDULLAH | Afghanistan |
| 483 | 951 | NASIR, ALLAH | Afghanistan |
| 484 | 952 | SHAHZADA, HAJI | Afghanistan |
| 485 | 953 | HAMMDIDULLAH | Afghanistan |
| 486 | 954 | GHAFOUR, ABDUL | Afghanistan |
| 487 | 955 | QUASAM, MOHAMMED | Afghanistan |
| 488 | 956 | AHMAD, ABDUL | Afghanistan |
| 489 | 958 | NASIM, MOHAMMED 3 | Afghanistan |
| 490 | 961 | WAHAB, ABDUL | Afghanistan |
| 491 | 963 | BAGI, ABDUL | Afghanistan |
| 492 | 964 | RAHMATULLAH | Afghanistan |
| 493 | 965 | HAFIZULLAH, | Afghanistan |
| 494 | 966 | BARIDAD | Afghanistan |
| 495 | 967 | NASERULLAH | Afghanistan |
| 496 | 968 | BISMULLAH, HAJI | Afghanistan |
| 497 | 971 | YAR, KUSHKY | Afghanistan |
| 498 | 972 | MOHAMMED, ALIF | Afghanistan |
| 499 | 974 | BULLAR, MOHI | Afghanistan |
| 500 | 975 | KARIM, BOSTAN | Afghanistan |
| 501 | 976 | WAZIR, ABDULLAH | Afghanistan |
| 502 | 977 | NASRAT YAR, HIZTULLAH | Afghanistan |
| 503 | 986 | KANDAHARI, KAKO | Afghanistan |
| 504 | 987 | GHALIB, HAJI | Afghanistan |
| 505 | 1001 | KHAIL, HAFIZULLAH SHABAZ | Afghanistan |
| 506 | 1002 | MATIN, ABDUL | Afghanistan |
| 507 | 1003 | AHMED, SHABIR | Afghanistan |
| 508 | 1004 | YACOUB, MOHAMMED | Afghanistan |
| 509 | 1007 | SADIQI, ABDUL HALIM | Pakistan |
| 510 | 1008 | SOHAIL, MOHAMMED MUSTAFA | Afghanistan |
| 511 | 1009 | KHAN, HAJI NASRAT | Afghanistan |
| 512 | 1010 | SHAH, NAHIR | Afghanistan |
| 513 | 1012 | TUKHI, AMINULLAH BARYALAI | Afghanistan |
| 514 | 1013 | AHMED, FEDA | Afghanistan |
| 515 | 1015 | MOHAMMED, HUSSEIN SALEM | Yemen |
| 516 | 1016 | HUWARI, SOUFIAN ABAR | Algeria |
| 517 | 1017 | AL RAMMAH, OMAR MOHAMMED ALI | Yemen |
| 518 | 1019 | NASIBULLAH | Afghanistan |
| 519 | 1021 | COMMANDER CHAMAN | Afghanistan |
| 520 | 1030 | HAFIZ, ABDUL | Afghanistan |
| 521 | 1032 | GHAFAAR, ABDUL | Afghanistan |
| 522 | 1035 | JAN, SADA | Afghanistan |
| 523 | 1036 | MOHAMMAD, AKHTIAR | Afghanistan |
| 524 | 1037 | NAZARGUL CHAMAN | Afghanistan |
| 525 | 1041 | NOOR, HABIB | Afghanistan |
| 526 | 1043 | RAZAK, ABDUL | Afghanistan |
| 527 | 1045 | KAMIN, MOHAMMED | Afghanistan |
| 528 | 1050 | AZIMULLAH | Afghanistan |
| 529 | 1051 | SHARBAT | Afghanistan |

Case 1:08-mc-00442-TFH   Document 40-4   Filed 07/09/2008   Page 15 of 34
List of detainees who went through complete CSRT process
(All detainees who went through Round 1 of ARB process are also found on this list)

| | Short ISN | Name | Citizenship |
|---|---|---|---|
| 530 | 1052 | RAHMAN, MAHBUB | Afghanistan |
| 531 | 1056 | MOHAMMED, SAID | Afghanistan |
| 532 | 1074 | AMAN, MOHAMMED | Afghanistan |
| 533 | 1075 | KAKAI | Afghanistan |
| 534 | 1094 | PARACHA, SAIFULLAH | Pakistan |
| 535 | 1095 | JAN, JUMMA | Tajikistan |
| 536 | 1100 | MUJAHID, ABDULLAH | Afghanistan |
| 537 | 1103 | ZAHIR, MOHOMMAD | Afghanistan |
| 538 | 1104 | RAHIM, MOHAMED | Afghanistan |
| 539 | 1117 | JALIL, MULLAH | Afghanistan |
| 540 | 1119 | HAJI HAMIDULLAH | Afghanistan |
| 541 | 1154 | SAID MOHAMMED ALI SHAH | Afghanistan |
| 542 | 1157 | HUKUMRA KHAN | Afghanistan |
| 543 | 1165 | YAKUBI, MOHAMMED MUSSA | Afghanistan |
| 544 | 1452 | BIN HAMLILI, ADIL HADI AL-JAZA'IRI | Algeria |
| 545 | 1453 | AL-KAZIMI, SANAD ALI YISLAM | Yemen |
| 546 | 1456 | BIN ATTASH, HASSAN MOHAMMED SALIH | Saudi Arabia |
| 547 | 1457 | SHARQAWI, AL HAJJ ABDU ALI | Yemen |
| 548 | 1458 | MOHAMMAD, BINYAM AHMED | Ethiopia |
| 549 | 1460 | RABBANI, ABDUL AL-RAHIM GHULAM | Pakistan |
| 550 | 1461 | RABBANI, MOHAMMED AHMAD GHULAM | Pakistan |
| 551 | 1463 | AL HILAL, ABDUL AL-SALAM | Yemen |
| 552 | 10001 | BELKACEM, BENSAYAH | Algeria |
| 553 | 10002 | LAHMAR, SABIR MAHFOUZ | Algeria |
| 554 | 10003 | NECHLE, MOHAMMED | Algeria |
| 555 | 10004 | AIT IDR, MUSTAFA | Algeria |
| 556 | 10005 | BOUMEDIENE, LAKHDAR | Algeria |
| 557 | 10006 | AL HAJJ, BOUDELLA | Algeria |
| 558 | 10007 | MUBANGA, MARTIN | U.K. |

# EXHIBIT 2

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| | Name | ISN | Citizenship | Place of Birth | Date of Birth ** |
|---|---|---|---|---|---|
| 1 | ((SHARIPOV)), RUKNIDDIN FAYZIDDINOVICH | 76 | Tajikistan | Lenenabad, Tajikistan | 3/15/1973 |
| 2 | ((VAKHIDOV)) SOBIT (ABDUMUKIT) VALIKHONOVICH | 90 | Tajikistan | Itsfaratz, Tajikistan | 11/13/1969 |
| 3 | ABAHANOV, YAKUB | 526 | Kazakhstan | Semeya, Kazakhstan | UNKNOWN |
| 4 | ABAS, MOHAMMAD | 542 | Pakistan | Village 426, PK | UNKNOWN |
| 5 | ABASIN, SAID | 671 | Afghanistan | Khan o Khel, AF | 1/1/1982 |
| 6 | ABASSI, FEROZ ALI | 24 | United Kingdom | Entebbe, Uganda | 10/29/1979 |
| 7 | ABBAS, YUSEF | 275 | China | Aksu, CH | 1/1/1980 |
| 8 | ABD AL MUJAHID, MAHMOUD ABD AL AZIZ | 31 | Yemen | Ta'iz, YM | 8/1/1977 |
| 9 | ABD AL RAHMAN ABD, ALLAL AB ALJALLIL | 156 | Yemen | Aluday, YM | 12/27/1975 |
| 10 | ABD AL SATTAR, MUIEEN A DEEN JAMAL A DEEN ABD AL FUSAL | 309 | United Arab Emirates | Dubai, UAE | 6/5/1975 |
| 11 | ABD AL WAHAB, ABD AL MALIK | 37 | Yemen | Ibb, YM | 1/1/1979 |
| 12 | 'ABD AL-RAZAQ 'ABDALLAH HAMID IBRAHIM AL-SHARIKH | 67 | Saudi Arabia | Shaqara, SA | 1/18/1984 |
| 13 | ABDALLAH, MUHAMED HUSSEIN | 704 | Somalia | Boor'o, SO | 1/1/1983 |
| 14 | ABDALLAH, SAYF BIN | 46 | Tunisia | Menzil, Tunisia | 6/24/1973 |
| 15 | ABDEL AZIZ, ABDULLAH MUHAMMED | 206 | Saudi Arabia | Al Medina Menawa, SA | 9/8/1967 |
| 16 | ABDELRAHMAN, ABDELRAZAK ALI | 685 | Libya | Al Jilat, LY | 7/17/1970 |
| 17 | ABDENOUR, SAMEUR | 659 | Algeria | Algiers, Algeria | 3/28/1973 |
| 18 | ABDERRAHMANE, SLIMANE HADJ | 323 | Denmark | Roskilde, Denmark | 8/5/1973 |
| 19 | ABDUL HAMID, HASSAN KHALIL MOHAMOUD | 711 | Jordan | Amman, JO | 11/12/1961 |
| 20 | ABDUL RAHMAN, ABDUL GHAPPAR | 281 | China | Kucha, CH | 3/15/1973 |
| 21 | ABDUL SAID, HASSAN | 435 | Iraq | Basra, Iraq | 4/7/1976 |
| 22 | ABDUL WAHAB AL ASMR, KHALID MAHOMOUD | 589 | Jordan | Irbid, JO | 12/16/1963 |
| 23 | ABDULAHAT, EMAM | 295 | China | Konashahar, CH | 6/1/1977 |
| 24 | ABDULAYEV, OMAR HAMZAYAVICH | 257 | Tajikistan | Dushanbe, Tajikistan | 10/11/1978 |
| 25 | ABDULGHUPUR, HAJIAKBAR | 282 | China | Ghulja, CH | 1/1/1974 |
| 26 | ABDULHEHIM, ADEL | 293 | China | Ghulja, CH | 10/10/1974 |
| 27 | ABDULQADIRAKHUN, ABDULLAH | 285 | China | Xinjian, CH | 6/18/1979 |
| 28 | ABDUREHIM, DAWUT | 289 | China | Ghulja, CH | 11/1/1974 |
| 29 | ABU AL QUSIN, ABDUL RAUF OMAR MOHAMMED | 709 | Libya | Tripoli, LY | 1/1/1965 |
| 30 | ABU BAKR, OMAR KHALIFA MOHAMMED | 695 | Libya | Al Bayda, LY | 1/1/1972 |
| 31 | ABU GHANIM, MOHAMMED RAJAB SADIQ | 44 | Yemen | Sanaa, YM | 1/1/1975 |
| 32 | ABU RAHMAN, ABDUL RABBANI ABD AL RAHIM | 1460 | Pakistan | UNKNOWN | 1/1/1969 |
| 33 | ABULWANCE, YAMATOLAH | 116 | Afghanistan | Kandahar, AF | 1/1/1977 |
| 34 | ACHAB KANOUNI, IMAD | 164 | France | Casablanco, MO | 3/6/1977 |
| 35 | ACHEZKAI, HAJI MOHAMMED KHAN | 104 | Afghanistan | Kabul, AF | 1/1/1977 |
| 36 | ADAM GUL, ATAULLAH | 525 | Afghanistan | Khushawa, AF | 1/1/1982 |
| 37 | ADAM, MOHAMMED SADIQ | 454 | Uzbekistan | Konduz, AF | 1/1/1973 |
| 38 | ADIL, AHMED | 260 | China | Kashkar, CH | 1/1/1973 |
| 39 | AHJAM, AHMED ADNAN | 326 | Syria | Halab, SY | 5/1/1977 |
| 40 | AHMAD, ABDUL | 956 | Afghanistan | Roy E Sang, AF | 1/1/1954 |
| 41 | AHMAD, ABDULLAH TABARAK | 56 | Morocco | Casablanca, MO | 12/12/1955 |
| 42 | AHMAD, AHMAD ABD AL RAHMAN | 267 | Spain | Cueta, SP | 9/22/1974 |
| 43 | AHMAD, BASHIR | 1005 | Pakistan | Chah Kote Wala, PK | 1/1/1976 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 44 | AHMAD, MAJID MAHMUD ABDU | 41 | Yemen | Burayqah, YM | 6/15/1980 |
|----|---------------------------|-----|--------|---------------|------------|
| 45 | AHMAD, NOOR | 580 | Afghanistan | Moqur, AF | 1/1/1973 |
| 46 | AHMAD, OSAM ABDUL RAHAN | 1018 | Jordan | Al-Zarqa, JO | 1/1/1976 |
| 47 | AHMAD, SULTAN | 842 | Pakistan | Sargodha, PK | 11/1/1984 |
| 48 | AHMED ZAID SALIM ZUHAIR | 669 | Saudi Arabia | Jeddah, SA | 1/1/1973 |
| 49 | AHMED, ABDUL RAHMAN | 441 | Yemen | Sana'a, YM | 1/1/1979 |
| 50 | AHMED, ABDUL RAHMAN UTHMAN | 95 | Saudi Arabia | Riyadh, SA | 12/31/1973 |
| 51 | AHMED, ALI | 303 | Pakistan | Baluchistan, PK | 1/1/1982 |
| 52 | AHMED, ALI ABDULLAH | 693 | Yemen | Ib, YM | 1/1/1977 |
| 53 | AHMED, FAHMI ABDULLAH | 688 | Yemen | Debab, YM | 1/1/1977 |
| 54 | AHMED, FARUQ ALI | 32 | Yemen | Ta'iz, YM | 12/1/1983 |
| 55 | AHMED, FAYAD YAHYA | 683 | Yemen | Aden, YM | 1/1/1977 |
| 56 | AHMED, FEDA | 1013 | Afghanistan | Kandahar, AF | 2/5/1977 |
| 57 | AHMED, RHUHEL | 110 | United Kingdom | Birmingham, UK | 3/11/1981 |
| 58 | AHMED, SAGHIR | 843 | Pakistan | Sargodha, PK | 1/1/1975 |
| 59 | AHMED, SAR FARAZ | 113 | Pakistan | Lahore, PK | 1/27/1966 |
| 60 | AHMED, SHABIR | 1003 | Afghanistan | Badakhshan, AF | 1/1/1971 |
| 61 | AIT IDR, MUSTAFA | 10004 | Algeria | Sidimhamed, Algeria | 7/9/1970 |
| 62 | AKBAR, MOHAMMED | 1011 | Pakistan | Helmand, AF | 1/1/1973 |
| 63 | AKHBAR, MOHAMMAD | 635 | Afghanistan | Ghowr Band, AF | 1/1/1956 |
| 64 | AKHMYAROV, RUSTAM | 573 | Russia | Chelyabinsk, RS | 10/24/1979 |
| 65 | AKHTAR MOHAMMED, ROSTUM | 632 | Afghanistan | Musa Qala, AF | 1/1/1980 |
| 66 | AL AASMI, ASSEM MATRUQ MOHAMMAD | 49 | Palestine / Saudi Arabia | Khan Younis, Israel | 2/18/1980 |
| 67 | AL AJMI, ABDALLAH SALEH ALI | 220 | Kuwait | Almadi, KU | 8/2/1978 |
| 68 | AL ALAWI, MUAZ HAMZA AHMAD | 28 | Yemen | Bajor, YM | 1/1/1977 |
| 69 | AL ALI, MAHMUD SALEM HORAN MOHAMMED MUTLAK | 537 | Syria | Doha, Syria | 5/5/1974 |
| 70 | AL AMIR MAHMOUD, AMIR YAKOUB MOHAMMED | 720 | Sudan | Omdurman, SU | 5/9/1971 |
| 71 | AL AMRANI, AYMAN MOHAMMAD SILMAN | 169 | Jordan | Muthalthal Ardha, JO | 1/1/1978 |
| 72 | AL AMRI, ABD AL RAHMAN MOAZA ZAFER | 196 | Saudi Arabia | Arar, SA | 7/26/1978 |
| 73 | AL AMRI, ABDUL RAHMAN MA ATH THAFIR | 199 | Saudi Arabia | Ta'if, SA | 4/17/1973 |
| 74 | AL ANAZI, SULTAN SARI SAYEL | 507 | Saudi Arabia | Sakaka, SA | 1/1/1974 |
| 75 | AL ANSARI, FARIS MUSLIM | 253 | Afghanistan | Mukala, YM | 1/1/1984 |
| 76 | AL ANSI, MUHAMMAD AHMAD ABDALLAH | 29 | Yemen | Sanaa, YM | 1/1/1975 |
| 77 | AL ASADI, MOHAMMED AHMED ALI | 198 | Yemen | Sana'a, YM | 7/1/1979 |
| 78 | AL ATABI, BIJAD THIF ALLAH | 122 | Saudi Arabia | Saajer, SA | 8/23/1971 |
| 79 | AL AWDA, FOUZI KHALID ABDULLAH | 232 | Kuwait | Kuwait City, KU | 5/6/1977 |
| 80 | AL AWFI, MAZIN SALIH MUSAID | 154 | Saudi Arabia | Medina, SA | 8/4/1979 |
| 81 | AL AZMI, SA AD MADI SA AD | 571 | Kuwait | Doha, KU | 5/29/1979 |
| 82 | AL BADDAH, ABDUL AZIZ ABDUL RAHMAN ABDUL AZIZ | 264 | Saudi Arabia | Quia, SA | 4/12/1982 |
| 83 | AL BAKUSH, ISMAEL ALI FARAG | 708 | Libya | Al-Khumas, LY | 7/1/1968 |
| 84 | AL BALUSHI, SALAH ABDUL RASUL ALI ABDUL | 245 | Saudi Arabia | Jeddah, SA | 1/1/1980 |
| 85 | AL BALUSHI, SALAH ABDUL RASUL ALI ABDUL RAHMAN | 227 | Bahrain | Muharraq, BA | 12/2/1981 |
| 86 | AL BARAKAT, KHALID HASSAN HUSAYN | 322 | Saudi Arabia | Mecca, SA | 1/1/1975 |
| 87 | AL BAWARDI, KHALID SAUD ABD AL RAHMAN | 68 | Saudi Arabia | Riyadh, SA | 1/1/1977 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 88 | AL BEDANI, ABDUL KHALED AHMED SAHLEH | 553 | Saudi Arabia | Taif, SA | 1/1/1983 |
| 89 | AL BIDNA, SA AD IBRAHAM SA AD | 337 | Saudi Arabia | Riyadh, SA | 5/11/1978 |
| 90 | AL BIHANI, GHALEB NASSAR | 128 | Yemen | Tabokh, SA | 1/1/1980 |
| 91 | AL BIHANI, TOLFIQ NASSAR AHMED | 893 | Saudi Arabia | Tabuk, SA | 6/1/1972 |
| 92 | AL BUSAYSS, ADIL SAID AL HAJ OBEID | 165 | Yemen | Aden, YM | 3/12/1973 |
| 93 | AL DARBI, AHMED MUHAMMED HAZA | 768 | Saudi Arabia | Ta'if, SA | 1/9/1975 |
| 94 | AL DEHANI, MOHAMMAD FINAYTAL | 229 | Kuwait | Kuwait City, KU | 11/4/1965 |
| 95 | AL DHUBY, KHALID MOHAMMED SALIH | 506 | Yemen | Taif, SA | 1/1/1981 |
| 96 | AL DOSARI, JUMA MOHAMMED ABDUL LATIF | 261 | Bahrain | Khabar, SA | 8/13/1973 |
| 97 | AL DUBAIKEY, BESSAM MUHAMMED SALEH | 340 | Saudi Arabia | Qasim, SA | 1/1/1978 |
| 98 | AL EDAH, MOHAMMED AHMAD SAID | 33 | Yemen | Hay al-Turbawi Ta'iz, YM | 1/1/1962 |
| 99 | AL FARHA, SAID ALI | 341 | Saudi Arabia | Bahir, SA | 11/5/1979 |
| 100 | AL FAYFI, JABIR JUBRAN | 188 | Saudi Arabia | Ta'if, SA | 1/1/1975 |
| 101 | AL FOUZAN, FAHD MUHAMMED ABDULLAH | 218 | Saudi Arabia | Riyadh, SA | 12/1/1983 |
| 102 | AL FRIH, MAJED HAMAD | 336 | Saudi Arabia | Mecca, SA | 1/1/1980 |
| 103 | AL GHATANI, KHALID MALU SHIA | 439 | Saudi Arabia | Al Arib, SA | 1/1/1983 |
| 104 | AL GHAZZAWI, ABDEL HAMID IBN ABDUSSALEM IBN MIFTAH | 654 | Libya | Tripoli, LY | 11/8/1962 |
| 105 | AL HAJJ, BOUDELLA | 10006 | Algeria | Laghouat, Algeria | 4/18/1965 |
| 106 | AL HAJJ, SAMI MOHY EL DIN MUHAMMED | 345 | Sudan | Khartoum, SU | 2/15/1969 |
| 107 | AL HAMI, RAFIQ BIN BASHIR BIN JALUD | 892 | Tunisia | Omaron, Tunisia | 3/14/1969 |
| 108 | AL HAMIRI, MOHAMMED ABDULLAH | 249 | Yemen | Hudaydah, YM | 1/1/1982 |
| 109 | AL HANASHI, MOHAMMAD AHMED ABDULLAH SALEH | 78 | Yemen | Al Habrub, YM | 2/1/1978 |
| 110 | AL HARAZI, FAHED | 79 | Saudi Arabia | Mecca, SA | 11/18/1978 |
| 111 | AL HARBI, GHANIM ABDUL RAHMAN | 516 | Saudi Arabia | Khobar, SA | 3/13/1974 |
| 112 | AL HARBI, MAJID ABDALLAH HUSAYN MUHAMMAD AL SAMLULI | 158 | Saudi Arabia | Jedda, SA | 6/28/1980 |
| 113 | AL HARBI, MOHAMED ATIQ AWAYD | 333 | Saudi Arabia | Riyadh, SA | 7/13/1973 |
| 114 | AL HARBI, MOHAMMED ABDULLAH | 536 | Saudi Arabia | Riyadh, SA | 1/1/1979 |
| 115 | AL HARBI, SALIM SULIMAN | 57 | Saudi Arabia | Mecca, SA | 11/22/1968 |
| 116 | AL HARBI, TARIQE SHALLAH HASSAN | 265 | Saudi Arabia | Medina, SA | 1/1/1983 |
| 117 | AL HARITH, JAMAL MALIK | 490 | United Kingdom | Manchester, UK | 11/20/1966 |
| 118 | AL HASSAN, MUSTAFA IBRAHIM MUSTAFA | 719 | Sudan | Al-Manakil, SU | 1/1/1957 |
| 119 | AL HATAYBI, ABDUL RAHMAN NASHI BADI | 268 | Saudi Arabia | Dehman, SA | 1/1/9180 |
| 120 | AL HENALI, MENHAL | 726 | Syria | Darna, SY | 1/1/1963 |
| 121 | AL HIKIMI, AHMED UMAR ABDULLAH | 30 | Yemen | Ta'iz, YM | 1/1/1972 |
| 122 | AL HILAL, ABDUL AL SALAM | 1463 | Yemen | UNKNOWN | 1/30/1968 |
| 123 | AL HIZANI, ABD | 370 | Saudi Arabia | Riyahd, SA | 1/1/1976 |
| 124 | AL HUBAYSHI, KHALID SULAYMANJAYDH | 155 | Saudi Arabia | Jeddah, SA | 1/1/1975 |
| 125 | AL HUSAYN, ZAID MUHAMAMD SA'AD | 50 | Jordan | Amman, JO | 1/1/1974 |
| 126 | AL JABRI, BANDAR AHMAD MUBARAK | 182 | Saudi Arabia | Mecca, SA | 4/16/1979 |
| 127 | AL JAYFI, ISSAM HAMID AL BIN ALI | 183 | Yemen | Sada, YM | 9/1/1979 |
| 128 | AL JOUDI, MAJEED ABDULLAH | 25 | Saudi Arabia | Mecca, SA | 1/1/1967 |
| 129 | AL JUAID, ABDUL RAHMAN OWAID MOHAMMAD | 179 | Saudi Arabia | Ta'if, SA | 11/7/1980 |
| 130 | AL JUHANI, MUHAMAD NAJI SUBHI | 62 | Saudi Arabia | Jeddah, SA | 10/5/1967 |
| 131 | AL JUTAYLI, FAHD SALIH SULAYMAN | 177 | Saudi Arabia | Burayada, SA | 5/1/1983 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 132 | AL KABI, JAMIL ALI | 216 | Saudi Arabia | Mecca, SA | 1/1/1973 |
|-----|-------------------|-----|--------------|-----------|----------|
| 133 | AL KANDARI, FAIZ MOHAMMED AHMED | 552 | Kuwait | Kuwait City, KU | 6/3/1975 |
| 134 | AL KARIM, ARKAN MOHAMMAD GHAFIL | 653 | Iraq | Dekar, Iraq | 3/16/1976 |
| 135 | AL KAZIMI, SANAD YISLAM | 1453 | Yemen | UNKNOWN | 2/17/1970 |
| 136 | AL KHALAQI, ASIM THAHIT ABDULLAH | 152 | Yemen | Riyadh, SA | 1/1/1968 |
| 137 | AL KHALDI, ABDUL AZIZ SAAD | 112 | Saudi Arabia | Riyadh, SA | 9/1/1979 |
| 138 | AL KHALIF, HANI SAIID MOHAMMAD | 438 | Saudi Arabia | Riyadh, SA | 1/1/1972 |
| 139 | AL KHALIFA, SHEIKH SALMAN EBRAHIM MOHAMED ALI | 246 | Bahrain | Rifah, BA | 7/24/1979 |
| 140 | AL KUNDUZI, UMAR ABDULLAH | 222 | Afghanistan | Konduz, AF | 1/1/1979 |
| 141 | AL KURASH, MUHAMMAD ABD AL RAHMAN | 214 | Saudi Arabia | Ta'if, SA | 1/1/1977 |
| 142 | AL MADOONEE, MUSAB OMAR ALI | 839 | Yemen | Al-Hudida, YM | 1/1/1980 |
| 143 | AL MAHAYAWI, SAUD DAKHIL ALLAH MUSLIH | 53 | Saudi Arabia | Jedda, SA | 8/21/1976 |
| 144 | AL MALKI, SAED KHATEM | 157 | Saudi Arabia | Mecca, SA | 1/1/1969 |
| 145 | AL MARRI, JARALLA SALEH MOHAMMED KAHLA | 334 | Qatar | Doha, QA | 8/12/1973 |
| 146 | AL MARWALAH, BASHIR NASIR ALI | 837 | Yemen | Al-Haymah, YM | 12/1/1979 |
| 147 | AL MATRAFI, ABDALLAH AIZA | 5 | Saudi Arabia | Mecca, SA | 7/12/1964 |
| 148 | AL MAYTHALI, HA IL AZIZ AHMED | 840 | Yemen | Zemar, YM | 1/1/1977 |
| 149 | AL MISHAD, SHARIF FATI ALI | 190 | Egypt | Shabin El Kom, EG | 12/14/1976 |
| 150 | AL MORGHI, KHALID ABDALLAH ABDEL RAHMAN | 339 | Saudi Arabia | Mecca, SA | 4/29/1970 |
| 151 | AL MOUSA, ABDUL HAKIM ABDUL RAHMAN ABDUAZIZ | 565 | Saudi Arabia | Riyadh, SA | 5/31/1976 |
| 152 | AL MUDHAFFARI, ABDEL QADIR HUSSEIN | 40 | Yemen | Al Bayda, YM | 1/1/1976 |
| 153 | AL MURBATI, ISSA ALI ABDULLAH | 52 | Bahrain | Manama, BA | 1/1/1965 |
| 154 | AL MURI, KHALID RASHD ALI | 505 | Saudi Arabia | Khafji, SA | 9/9/1975 |
| 155 | AL MUTAYRI, KHALID ABDULLAH MISHAL THAMER | 213 | Kuwait | Kuwait City, KU | 6/18/1975 |
| 156 | AL NAELY, ABBAS HABID RUMI | 758 | Iraq | Al Amin, Iraq | 11/14/1968 |
| 157 | AL NAHDI, SULAIMAN AWATH SULAIMAN BIN AGEEL | 511 | Yemen | Al Mukalla, YM | 12/1/1974 |
| 158 | AL NASIR, ABD AL AZIZ MUHAMMAD IBRAHIM | 273 | Saudi Arabia | Mecca, SA | 4/18/1980 |
| 159 | AL NASIR, FAIZAL SAHA | 437 | Saudi Arabia | Riyadh, SA | 1/1/1980 |
| 160 | AL NASIR, IBRAHIM MUHAMMED IBRAHIM | 271 | Saudi Arabia | Mecca, SA | 1/1/1982 |
| 161 | AL NOAIMI, ABDULLAH | 159 | Bahrain | Manama, BA | 3/9/1982 |
| 162 | AL NOOFAYAEE, ABDALAZIZ KAREEM SALIM | 687 | Saudi Arabia | Al Shafa, SA | 1/1/1976 |
| 163 | AL NURR, ANWAR | 226 | Saudi Arabia | Toraif, SA | 1/2/1977 |
| 164 | AL NUSAYRI, ADIL UQLA HASSAN | 308 | Saudi Arabia | Sakakah, SA | 1/1/1974 |
| 165 | AL OMAIRAH, OTHMAN AHMED OTHMAN | 184 | Yemen | Shabwa, YM | 1/1/1973 |
| 166 | AL OSHAN, SALEH ABDALL | 248 | Saudi Arabia | Riyadh, SA | 7/1/1979 |
| 167 | AL OTAIBI, NAWAF FAHAD | 501 | Saudi Arabia | Riyadh, SA | 11/7/1972 |
| 168 | AL QADASI, KHALID ABD JAL JABBAR MUHAMMAD JUTHMAN | 163 | Yemen | Ta'iz, YM | 1/1/1968 |
| 169 | AL QADIR, MOHAMMED ABD AL | 284 | Algeria | Taot, Algeria | 5/12/1976 |
| 170 | AL QAHTANI, ABDULLAH HAMID | 652 | Saudi Arabia | Mecca, SA | 1/1/1979 |
| 171 | AL QAHTANI, JABIR HASAN MAHAMMED | 650 | Saudi Arabia | Mecca, SA | 2/10/1978 |
| 172 | AL QAHTANI, JABRAN SAID WAZAR | 696 | Saudi Arabia | Tabuk, SA | 1/1/1977 |
| 173 | AL QAHTANI, MUHAMMAD MANI AHMED AL SHAL LAN | 63 | Saudi Arabia | Kharj, SA | 1/1/1979 |
| 174 | AL QARANI, MUHAMMED HAMID | 269 | Chad | Medina, SA | 1/1/1986 |
| 175 | AL QOSI, IBRAHIM AHMED MAHMOUD | 54 | Sudan | Khartoum, SU | 7/3/1960 |

5/15/2006

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 176 | AL QURASHI, SABRI MOHAMMED EBRAHIM | 570 | Yemen | Hudaydah, YM | 1/1/1970 |
|-----|-----|-----|-----|-----|-----|
| 177 | AL QURAYSHI, MAJID AYDHA MUHAMMAD | 176 | Saudi Arabia | Mecca, SA | 5/29/1972 |
| 178 | AL QURBI, MOHAMMED MUBAREK SALAH | 342 | Saudi Arabia | Khamees Musheet, SA | 7/30/1978 |
| 179 | AL QUWARI, MAHRAR RAFAT | 519 | West Bank | Gaza, Palestine | 2/18/1965 |
| 180 | AL RABIA, FOUAD MAHOUD HASAN | 551 | Kuwait | Kuwait City, KU | 6/24/1959 |
| 181 | AL RABIESH, YUSEF ABDULLAH SALEH | 109 | Saudi Arabia | Al Khasim, SA | 1/1/1981 |
| 182 | AL RADAI, RIYAD ATIQ ALI ABDU AL HAJ | 256 | Yemen | Taez, YM | UNKNOWN |
| 183 | AL RAHIZI, ALI AHMAD MUHAMMAD | 45 | Yemen | Ta'iz, YM | 10/13/1979 |
| 184 | AL RAMMAH, OMAR MOHAMMED ALI | 1017 | Yemen | Al Beitha, YM | 1/1/1975 |
| 185 | AL RASHID, MESH ARSAD | 74 | Saudi Arabia | Sana'a, SA | 1/1/1980 |
| 186 | AL RAWI, BISHER AMIN KHALIL | 906 | Iraq | Baghdad, Iraq | 12/23/1969 |
| 187 | AL RIMI, ALI YAHYA MAHDI | 167 | Yemen | Sana'a, YM | 1/1/1983 |
| 188 | AL RIMI, MUHAMMAD ABDALLAH MANSUR | 194 | Libya | Al Rimi, YM | 12/1/1968 |
| 189 | AL RUSHAYDAN, ABDALLAH IBRAHIM | 343 | Saudi Arabia | Khobar, SA | 1/4/1967 |
| 190 | AL SABRI, MASHUR ABDALLAH MUQBIL AHMED | 324 | Yemen | Mecca, SA | 1/1/1978 |
| 191 | AL SALEH, ABDUL | 91 | Yemen | Muqela, YM | 1/1/1979 |
| 192 | AL SAMIRI, BADER AL BAKRI | 274 | Saudi Arabia | Mecca, SA | 1/1/1977 |
| 193 | AL SANI, FAHMI SALEM SAID | 554 | Yemen | Mikala, YM | 5/17/1977 |
| 194 | AL SAWAH, TARIQ MAHMOUD AHMED | 535 | Egypt | Alexandria, EG | 11/2/1957 |
| 195 | AL SEHLI, IBRAHIM DAIF ALLAH NEMAN | 94 | Saudi Arabia | Medina, SA | 10/26/1965 |
| 196 | AL SHAKOURI, RADWAN | 499 | Morocco | Asafi, MO | 2/12/1972 |
| 197 | AL SHAMAREE, ZABAN THAAHER ZABAN | 647 | Saudi Arabia | Arar, SA | 1/1/1979 |
| 198 | AL SHAMARI, ABD AL AZIZ SAYIR | 217 | Kuwait | Al Fahahil, KU | 9/23/1973 |
| 199 | AL SHAMYRI, MUSTAFA ABDUL QAWI ABDUL AZIZ | 434 | Yemen | Sana'a, YM | 7/7/1978 |
| 200 | AL SHARABI, ZUHAIL ABDO ANAM SAID | 569 | Yemen | Taiz, YM | 1/1/1977 |
| 201 | AL SHARAKH, ABDULHADI ABDALLAH IBRAHIM | 231 | Saudi Arabia | Riyadh, SA | 7/2/1982 |
| 202 | AL SHARBI, GHASSAN ABDULLAH | 682 | Saudi Arabia | Jeddah, SA | 12/28/1974 |
| 203 | AL SHARIF, FAHD UMR ABD AL MAJID | 215 | Saudi Arabia | Mecca, SA | 3/18/1976 |
| 204 | AL SHIHRI, YUSSEF MOHAMMED MUBARAK | 114 | Saudi Arabia | Riyadh, SA | 9/8/1985 |
| 205 | AL SHIMRI, MAJI AFAS RADHI | 181 | Saudi Arabia | Kharj, SA | 5/1/1974 |
| 206 | AL SHULAN, HANI ABDUL MUSLIH | 225 | Yemen | Ibb, YM | 1/1/1979 |
| 207 | AL SHUMRANI, MOHAMMAD AL RAHMAN | 195 | Saudi Arabia | Riyadh, SA | 2/1/1975 |
| 208 | AL SHURFA, OHMED AHMED MAHAMOUD | 331 | Saudi Arabia | Jeddah, SA | 12/26/1975 |
| 209 | AL SUADI, ABDUL AZIZ ABDULLAH ALI | 578 | Yemen | Milhan, YM | 6/16/1974 |
| 210 | AL SULAMI, YAHYA SAMIL AL SUWAYMIL | 66 | Saudi Arabia | Jeddah, SA | 2/3/1979 |
| 211 | AL TABI, MANA SHAMAN ALLABARDI | 588 | Saudi Arabia | Al-Qarara, SA | 1/1/1976 |
| 212 | AL TAIBI, RAMI BIN SAID | 318 | Saudi Arabia | Ta'if, SA | 12/24/1980 |
| 213 | AL TAMIMI, HAYDAR JABBAR HAFEZ | 648 | Iraq | Kute, Iraq | 8/24/1973 |
| 214 | AL TAYABI, ABDULLAH | 332 | Saudi Arabia | Halban, SA | 1/1/1980 |
| 215 | AL TAYS, ALI HUSAYN ABDULLAH | 162 | Yemen | Sada, YM | 6/1/1977 |
| 216 | AL USAYMI, NAYIF FAHD MUTLIQ | 436 | Saudi Arabia | Riyadh, SA | 1/1/1979 |
| 217 | AL UTAYBI, ABDULLAH ALI | 243 | Saudi Arabia | Mecca, SA | 1/1/1972 |
| 218 | AL UTAYBI, MUHAMMAD SURUR DAKHILALLAH | 96 | Saudi Arabia | Qaisuma, SA | 9/26/1983 |
| 219 | AL UWAYDHA, SULTAN AHMED DIRDEER MUSA | 59 | Saudi Arabia | Medina, SA | 12/4/1975 |

5/15/2006

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 220 | AL WADI, ADIL KAMIL ABDULLAH | 60 | Bahrain | Muharak, BA | 10/1/1964 |
|---|---|---|---|---|---|
| 221 | AL WADY, HAMOUD ABDULLAH HAMOUD HASSAN | 574 | Yemen | Sana'a, YM | 9/5/1965 |
| 222 | AL WAFTI, ABDULLAH ABD AL MU'IN | 262 | Saudi Arabia | Mecca, SA | 9/14/1966 |
| 223 | AL WAHAB, MUSA ABED | 58 | Saudi Arabia | Medina, SA | 7/20/1977 |
| 224 | AL WARAFI, MUKTAR YAHYA NAJEE | 117 | Yemen | Ta'iz, YM | 1/1/1974 |
| 225 | AL YAFI, AL KHADR ABDALLAH MUHAMMED | 34 | Yemen | Lawdar, YM | 1/1/1970 |
| 226 | AL YAZIDI, RIDAH BIN SALEH | 38 | Tunisia | Unfidel, Tunisia | 1/24/1965 |
| 227 | AL ZABE, SLAH MUHAMED SALIH | 572 | Saudi Arabia | Mecca, SA | 1/1/1972 |
| 228 | AL ZAHARNI, KHALID MOHAMMED | 234 | Saudi Arabia | Al Kharj, SA | 1/1/1972 |
| 229 | AL ZAHRANI, MUHAMMED MURDI ISSA | 713 | Saudi Arabia | Ta'if, SA | 1/1/1969 |
| 230 | AL ZAHRANI, SAID IBRAHIM RAMZI | 204 | Saudi Arabia | Ta'if, SA | 1/1/1981 |
| 231 | AL ZAHRANI, YASSER TALAL | 93 | Saudi Arabia | Yenbo, SA | 9/22/1984 |
| 232 | AL ZAYLA, MUHAMMED YAHIA MOSIN | 55 | Saudi Arabia | Medina, SA | 7/25/1977 |
| 233 | AL ZUBA, SALEH MOHAMED | 503 | Yemen | Sana'a, YM | 1/1/1955 |
| 234 | ALAHDAL, ABU BAKR IBN ALI MUHHAMMAD | 171 | Yemen | Al Hudaydah, YM | 1/1/1979 |
| 235 | AL-DEEN, JAMAL MUHAMMAD | 16 | Pakistan / Bangladesh | Feni, Bangladesh | 1/1/1967 |
| 236 | ALEH, ALI BIN ALI | 692 | Yemen | Adem, YM | 4/15/1983 |
| 237 | ALGAZZAR, ADEL FATTOUGH ALI | 369 | Egypt | Cairo, EG | 10/22/1965 |
| 238 | ALHABIRI, MISHAL AWAD SAYAF | 207 | Saudi Arabia | Minawara, SA | 1/1/1980 |
| 239 | ALHAMIRI, ABDULAH | 48 | United Arab Emirates | Alan, UAE | 10/25/1979 |
| 240 | ALI BIN ATTASH, HASSAN MOHAMMED | 1456 | Saudi Arabia | Jeddah, SA | 1/1/1985 |
| 241 | ALI, ADNAN MOHAMMED | 105 | Saudi Arabia | Ta'if, SA | 1/8/1978 |
| 242 | ALI, SAID SAIM | 140 | Pakistan | Karachi, PK | 1/1/1977 |
| 243 | ALI, WALID MOHAMMAD HAJ MOHAMMAD | 81 | Sudan | Donkhallah, SU | 6/6/1974 |
| 244 | ALIKHAN, MAHNGUR | 629 | Afghanistan | Gomal, PK | 1/1/1958 |
| 245 | ALIKHEL, SHA MOHAMMED | 19 | Pakistan | Swaat, PK | 1/1/1981 |
| 246 | ALIKOZI, AMANULLAH | 538 | Afghanistan | Deh Raud, AF | 1/1/1975 |
| 247 | ALIZA, ABDUL RAUF | 108 | Afghanistan | Azan Village, AF | 2/10/1981 |
| 248 | ALIZAI, NEMATULLAH SAHIB-KHAN | 628 | Afghanistan | Azan, AF | 1/1/1958 |
| 249 | ALLAH, NOOR | 539 | Afghanistan | Uruzgan, AF | 1/1/1971 |
| 250 | ALLAITHY, SAMI ABDUL AZIZ SALIM | 287 | Egypt | Shubrakass, EG | 10/28/1956 |
| 251 | AL-MARWA'I, Toufiq Saber Muhammad | 129 | Yemen | Al Dumaina, YM | 1/1/1976 |
| 252 | AL-SHABANI, FAHD ABDALLAH IBRAHIM | 80 | Saudi | Riyadh, SA | 11/6/1982 |
| 253 | AL-SHEDOKY, MISH'AL MUHAMMAD RASHID | 71 | Saudi | Riyadh, SA | 1/1/1982 |
| 254 | AL-WALEELI, FAEL RODA | 663 | Egypt | Mansura, EG | 1/28/1966 |
| 255 | AL-ZAMEL, 'ADEL ZAMEL 'ABD AL-MAHSEN | 568 | Kuwait | Kuwait City, KU | 8/23/1963 |
| 256 | AMAN | 1074 | Afghanistan | Malik Village Kardez, AF | 1/1/1957 |
| 257 | AMAR, ABU | 240 | Saudi Arabia | Jeddah, SA | 9/10/1977 |
| 258 | AMEUR, MAMMAR | 939 | Algeria | L'aghouat, Algeria | 12/1/1958 |
| 259 | AMEZIANE, DJAMEL SAIID ALI | 310 | Algeria | Al Jesera, Algeria | 4/14/1967 |
| 260 | AMI, SHAKIR ABDURAHIM MOHAMED | 239 | Saudi Arabia | Medina, SA | 12/12/1968 |
| 261 | AMIN, AMINULLA | 504 | Pakistan | Chaman, PK | UNKNOWN |
| 262 | AMIN, OMAR RAJAB | 65 | Kuwait | Kuwait City, KU | 6/14/1967 |
| 263 | AMTIRI, NASSER NAJIRI | 205 | Kuwait | Mahwa, KU | 3/17/1977 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 264 | ANDARR, ABDUL AL-HAMEED MOHAMMED | 668 | Afghanistan | Zormat, AF | 1/1/1967 |
|-----|----------------------------------|-----|-------------|-----------|----------|
| 265 | ANSAR, MOHAMMED | 304 | Pakistan | Jalan Makhdoom, PK | 1/1/1981 |
| 266 | ANVAR, HASSAN | 250 | China | Urumchi, CH | 8/26/1974 |
| 267 | ANWAR, MOHAMMED | 524 | Pakistan | Pakistan | 7/5/1980 |
| 268 | ARBAYSH, IBRAHIMJ SULAYMAN MUHAMMAD | 192 | Saudi Arabia | Al Brida, SA | 7/7/1979 |
| 269 | ASAM, ZAKIRJAN | 672 | Russian | Saratov, RS | 5/18/1974 |
| 270 | ASEKZAI, AZIZULLAH | 646 | Afghanistan | Karez, AF | 1/1/1980 |
| 271 | ASHRAF, MOHAMMED | 100 | Pakistan | Kalaswala, PK | 1/1/1980 |
| 272 | ASLAAM, NOOR | 822 | Afghanistan | Warna, PK | 1/1/1982 |
| 273 | AWAD, JALAL SALAM AWAD | 564 | Yemen | Al Muqala, YM | 1/1/1973 |
| 274 | AWAD, WAQAS MOHAMMED ALI | 88 | Yemen | Aden, YM | 1/1/1982 |
| 275 | AWZAR, MOHAMED IBRAHIM | 133 | Morocco | Koreebja, MO | 9/28/1979 |
| 276 | AYUB, HAJI MOHAMMED | 279 | China | Toqquztash, CH | 4/15/1984 |
| 277 | AYUB, HASEEB | 141 | Pakistan | Budho, PK | 1/8/1974 |
| 278 | AYUBI, SALAHODIN | 138 | Pakistan | Lahore, PK | 3/20/1974 |
| 279 | AZANI, SAAD MASIR MUKBL AL | 575 | Yemen | Al Reef, YM | 1/1/1979 |
| 280 | AZIMULLAH | 1050 | Afghanistan | North Waziristan, PK | 1/1/1982 |
| 281 | AZIZ, AHMED ABDEL | 757 | Mauritania | Atar, MR | 2/24/1970 |
| 282 | BAADA, TAREK ALI ABDULLAH AHMED | 178 | Yemen | Shebwa, YM | 1/1/1978 |
| 283 | BADR, BADRUZZAN | 559 | Afghanistan | Jalalabad, AF | 11/10/1970 |
| 284 | BAGI, ABDUL | 963 | Afghanistan | Kandahar, AF | 1/1/1972 |
| 285 | BALKHAIR, RASHED AWAD KHALAF | 186 | Saudi Arabia | Jurashi, SA | 1/1/1978 |
| 286 | BALZUHAIR, SHAWKI AWAD | 838 | Yemen | Hadramout, YM | 7/24/1981 |
| 287 | BAMARI, BAKHTIAR | 623 | Iran | Damon, IR | 1/1/1981 |
| 288 | BANI AMIR, SALIM MAHMOUD ADEM MOHAMMED | 710 | Sudan | Kasala, SU | 1/1/1958 |
| 289 | BAQI, ABDUL | 656 | Afghanistan | Tark Itmak, AF | 1/1/1942 |
| 290 | BARAK, FNU | 856 | Afghanistan | Surgay, AF | 1/1/1972 |
| 291 | BARAKZAI, JON MOHAMMAD | 107 | Afghanistan | Sarwan Qala, AF | 1/1/1967 |
| 292 | BARAYAN, MAJID AL | 51 | Saudi Arabia | Jedda, SA | 9/27/1972 |
| 293 | BARHOUMI, SUFYIAN | 694 | Algeria | Algiers, Algeria | 7/28/1973 |
| 294 | BARIDAD | 966 | Afghanistan | Helmand, AF | 1/1/1953 |
| 295 | BARRE, MOHAMMED SULAYMON | 567 | Somalia | Burco, SO | 12/27/1964 |
| 296 | BASARDAH, YASIM MUHAMMED | 252 | Yemen | Shabua, YM | 1/1/1976 |
| 297 | BASIT, AKHDAR QASEM | 276 | China | Ghulja, CH | 11/14/1973 |
| 298 | BATARFI, AYMAN SAEED ABDULLAH | 627 | Yemen | Cairo, EG | 8/14/1970 |
| 299 | BATAYEV, ILKHAM TURDBYAVICH | 84 | Uzbekistan | Abaye, Kazakhstan | 11/7/1973 |
| 300 | BEGG, MOAZZAM | 558 | United Kingdom | Birmingham, UK | 7/5/1968 |
| 301 | BEL BACHA, AHMED BIN SALEH | 290 | Algeria | Algiers, Algeria | 11/13/1969 |
| 302 | BELKACEM, BENSAYAH | 10001 | Algeria | Wargala, Algeria | 9/10/1962 |
| 303 | BELMAR, RICHARD DEAN | 817 | United Kingdom | London, UK | 10/31/1979 |
| 304 | BEN MOUJAN, MUHAMMAD | 160 | Morocco | Dar Bida, MO | 2/14/1981 |
| 305 | BENCHELLALI, MOURAD | 161 | France | Venissieu, FR | 7/7/1981 |
| 306 | BIN ATEF, MAHMMOUD OMAR MOHAMMED | 202 | Yemen | Mecca, SA | 1/1/1980 |
| 307 | BIN HADIDDI, ABDUL HADDI | 717 | Tunisia | Bir'Alash, Tunisia | 3/18/1969 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 308 | BIN HAMIDA, ADIL MABROUK | 148 | Tunisia | Tunis, Tunisia | 9/15/1970 |
|-----|--------------------------|-----|---------|----------------|-----------|
| 309 | BIN HAMLILI, ADIL HADI AL JAZAIRI | 1452 | Algeria | Oram, Algeria | 6/26/1975 |
| 310 | BIN QUMU, ABU SUFIAN IBRAHIM AHMED HAMUDA | 557 | Libya | Darna, LY | 6/26/1959 |
| 311 | BIN SALEM, MUHHAMMAD SAID | 251 | Yemen | Hadramaut, YM | 4/25/1975 |
| 312 | BINYAM, MOHAMMED AHMED | 1458 | Ethiopia | Addis Ababa, ET | 7/24/1978 |
| 313 | BISMAULLAH, FNU 2 | 960 | Afghanistan | Baghran, AF | UNKNOWN |
| 314 | BISMILLAH | 658 | Afghanistan | Oruzgan, AF | 1/1/1952 |
| 315 | BISMILLAH 2, FNU | 639 | Afghanistan | Pirwan Siagird, AF | 1/1/1968 |
| 316 | BISMULLAH, HAJI | 968 | Afghanistan | Musa Qala, AF | 1/1/1979 |
| 317 | BOUCETTA, FETHI | 718 | Algeria | Mostaganem, EG | 9/15/1963 |
| 318 | BOUJAADIA, SAID | 150 | Morocco | Casablanca, MO | 5/5/1968 |
| 319 | BOUMEDIENE, LAKHDAR | 10005 | Algeria | Ain Soltgane Saeda, Algeria | 4/27/1966 |
| 320 | BUKHARY, ABDUL HAKIM | 493 | Saudi Arabia | Mecca, SA | 1/1/1955 |
| 321 | BULLAR, MOHI | 974 | Afghanistan | Urezgon, AF | 1/1/1981 |
| 322 | BWAZIR, MOHAMMED ALI ABDULLAH | 440 | Yemen | Howra, YM | 1/1/1980 |
| 323 | CELIK GOGUS, YUKSEL | 291 | Turkey | Karasu Village, Sakara City, Turke | 10/10/1967 |
| 324 | CHAMAN, GUL | 1021 | Afghanistan | Osman, Hazro, Logar, AF | 1/1/1963 |
| 325 | DAD, KHUDAI | 655 | Afghanistan | Tarak, AF | 1/1/1957 |
| 326 | DAOUD, MOHAMMAN | 527 | Afghanistan | Emam Saheb, AF | 1/1/1979 |
| 327 | DEGHAYES, OMAR AMER | 727 | Libya | Tripoli, LY | 11/28/1969 |
| 328 | DERGOUL, TAREK | 534 | Morocco | Mile End, UK | 12/11/1977 |
| 329 | DIN, JUMA | 941 | Afghanistan | Alinghan, AF | 1/1/1973 |
| 330 | DIYAB, JIHAD AHMED MUJSTAFA | 722 | Lebanon | Jedeta, LE | 7/10/1971 |
| 331 | DOKHAN, MOAMMAR BADAWI | 317 | Syria | Damascus, SY | 7/27/1972 |
| 332 | EDMONDADA, ABDULLAH | 360 | Afghanistan | Kandahar, AF | 1/1/1960 |
| 333 | EHSANULLAH | 350 | Afghanistan | Farah, AF | 1/1/1973 |
| 334 | EHSSANULLAH | 523 | Afghanistan | Sarwan Qala, AF | 1/1/1977 |
| 335 | ELBANNA, ABDUL LATIF | 905 | Jordan | Jericho, Turkey | 5/28/1952 |
| 336 | ESMATULLA, FNU | 888 | Afghanistan | Dekundie, AF | 1/1/1977 |
| 337 | ESMHATULLA, QARI | 591 | Afghanistan | Ramsha, PK | 1/1/1984 |
| 338 | FAR HUDDINE, BAR | 896 | Afghanistan | Tora Oba, AF | 1/1/1977 |
| 339 | FARAJ, ABD AL HADIO OMAR MAHMOUD | 329 | Syria | Hama, SY | 1/1/1981 |
| 340 | FARHAD, DIN MOHAMMED | 699 | Afghanistan | Konduz, AF | 1/1/1976 |
| 341 | FARHI, SAIID | 311 | Algeria | Churchelle, Algeria | 3/29/1961 |
| 342 | FAROUQ, MOHAMMED NAYIM | 633 | Afghanistan | Zatoon Kahil, AF | 1/1/1960 |
| 343 | FAUZEE, IBRAHIM | 730 | Maldives | Thulhaadhoo, MV | 11/11/1978 |
| 344 | FAZALDAD, FNU | 142 | Pakistan | Atian, PK | 1/1/1982 |
| 345 | FAZL, MULLAH MOHAMMAD | 7 | Afghanistan | Charchno, AF | 1/1/1967 |
| 346 | FAZROLLAH, MEHRABANB | 77 | Tajikistan | Pyandj, Tajikistan | 10/18/1962 |
| 347 | FEGHOUL, ABDULLI | 292 | Algeria | Tiaret, Algeria | 10/22/1960 |
| 348 | FIYATULLAH, KAY | 247 | Pakistan | Narmasperlay, PK | 1/1/1983 |
| 349 | GADALLAH, HAMMAD ALI AMNO | 712 | Sudan | Duba, SU | 11/13/1969 |
| 350 | GHAFAAR, ABDUL | 1032 | Afghanistan | Kandahar, AF | 1/1/1958 |
| 351 | GHAFAR HOMAROVICH, SHIRINOV | 732 | Tajikistan | Dushanbe, Tajikistan | 1/9/1974 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 352 | GHAFOOR, SHAI JAHN | 363 | Afghanistan | Karabagh, AF | 1/1/1969 |
|-----|-------------------|-----|-------------|--------------|----------|
| 353 | GHAFOUR, ABDUL | 954 | Afghanistan | Pattia Province, AF | 1/1/1962 |
| 354 | GHALIB, HAJI | 987 | Afghanistan | Nangarhar, AF | 1/1/1963 |
| 355 | GHANI, ABDUL | 934 | Afghanistan | Afghanistan | 1/1/1972 |
| 356 | GHANI, ABDUL 2 | 943 | Afghanistan | Kandahar, AF | 1/1/1983 |
| 357 | GHANI, NABU ABDUL | 354 | Afghanistan | Shishawa, AF | 1/1/1952 |
| 358 | GHAZI, FAHED ABDULLAH AHMAD | 26 | Yemen | Bayt Ghazi, YM | 1/1/1982 |
| 359 | GHEREBY, SALEM ABDUL SALEM | 189 | Libya | Zletan, SA | 3/1/1961 |
| 360 | GHETAN, ABDUL SALAM | 132 | Saudi Arabia | Riyadh, SA | 12/14/1984 |
| 361 | GHEZALI, MEHDI MOHAMMAD | 166 | Sweden | Stockholm, SW | 7/5/1979 |
| 362 | GHOFOOR, ABDULLAH | 351 | Afghanistan | Keshai, AF | 1/1/1971 |
| 363 | GHUL, NATHI | 636 | Afghanistan | Afghanistan | 1/1/1980 |
| 364 | GHUL, WAZIR ZALIM | 677 | Afghanistan | Khowst, AF | 1/1/1977 |
| 365 | GHULADKHAN | 316 | Afghanistan | Jalalabad, AF | 1/1/1980 |
| 366 | GUL GHAMAN, NASSER | 1037 | Afghanistan | Manikhel, AF | 1/1/1980 |
| 367 | GUL, AWAL | 782 | Afghanistan | Sawati Ghundi | 7/1/1962 |
| 368 | GUL, DAWD | 530 | Afghanistan | Zedana, AF | 1/1/1980 |
| 369 | GUL, KHI ALI | 928 | Afghanistan | Khowst, AF | 1/1/1963 |
| 370 | GUL, MOHAMMAD | 457 | Afghanistan | Zamikhel, AF | 1/1/1962 |
| 371 | GUMAROV, RAVIL SHAFEYAVICH | 203 | Russia | Gushva, RS | 11/22/1962 |
| 372 | HABIB, MAMDOUH IBRAHIM AHMED | 661 | Australia | Alexandria, EG | 6/3/1955 |
| 373 | HADI, SALEM AHMED | 131 | Yemen | Hadramaut, YM | 1/15/1976 |
| 374 | HADJARAB, NABIL | 238 | Algeria | Aentaya, Algeria | 7/21/1979 |
| 375 | HAFEZ, KHALIL RAHMAN | 301 | Pakistan | Punjab, PK | 1/20/1984 |
| 376 | HAFIZ, ABDUL | 1030 | Afghanistan | Afghanistan | 1/1/1961 |
| 377 | HAFIZULLAH, FNU | 965 | Afghanistan | Afghanistan | 1/1/1974 |
| 378 | HAIDEL, MOHAMMED AHMED SAID | 498 | Yemen | Ta'iz, YM | 1/1/1978 |
| 379 | HAKIM, ABDEL GHALIB AHMAD | 686 | Yemen | Ta'iz, YM | 1/1/1979 |
| 380 | HAMDAN, SALIM AHMED SALIM | 149 | Yemen | Hadramout, YM | 1/1/1970 |
| 381 | HAMDOUN, ZAHAR OMAR HAMIS BIN | 576 | Yemen | Ash Shihr, YM | 11/13/1979 |
| 382 | HAMDULLAH, FNU | 456 | Afghanistan | Kushki Nakod, AF | 1/1/1974 |
| 383 | HAMIDULLAH | 1119 | Afghanistan | Kabul, AF | 1/1/1963 |
| 384 | HAMIDULLAH, ALI SHER | 455 | Uzbekistan | Tashkent, UZ | 11/19/1974 |
| 385 | HAMIDULLAH, FNU | 642 | Afghanistan | Konduz, AF | 1/1/1980 |
| 386 | HAMIDUVA, SHAKHRUKH | 22 | Uzbekistan | Kokan, UZ | 12/13/1983 |
| 387 | HAMLILY, MUSTAFA AHMED | 705 | Algeria | Bashare, Algeria | 2/20/1959 |
| 388 | HAMMDIDULLAH, FNU | 953 | Afghanistan | Sarpolad, AF | 1/1/1973 |
| 389 | HANAN, ABDUL | 531 | Afghanistan | Ghazni, AF | 1/1/1958 |
| 390 | HASAN, MIRWAIS | 998 | Afghanistan | Afghanistan | 1/1/1980 |
| 391 | HASHEM, MUBARAK HUSSAIN BIN ABUL | 151 | Bangladesh | Baria, BG | 1/1/1978 |
| 392 | HASHIM, MOHAMMED | 850 | Afghanistan | Qandahar, AF | 1/1/1976 |
| 393 | HASSAN, ADEL | 940 | Sudan | Port Sudan, SU | 1/1/1958 |
| 394 | HASSAN, EMAD ABDALLA | 680 | Yemen | Aden, YM | 6/26/1979 |
| 395 | HASSAN, MUHAMMAD HUSSEIN ALI | 123 | Morocco | Selwan, MO | 12/16/1966 |

5/15/2006

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 396 | HASSEN, MOHAMMED MOHAMMED | 681 | Yemen | Ta'iz, YM | 4/20/1983 |
|---|---|---|---|---|---|
| 397 | HATIM, SAID MUHAMMED SALIH | 255 | Yemen | Ibb, YM | 1/1/1976 |
| 398 | HAWSAWI, AMRAN BAQUR MOHAMMED | 368 | Saudi Arabia | Ta'if, SA | 1/1/1975 |
| 399 | HEKMAT, ABDULLAH | 670 | Afghanistan | Akhcha, AF | 1/1/1972 |
| 400 | HEZBULLAH, FNU | 666 | Afghanistan | Miran Shah, PK | 1/1/1981 |
| 401 | HICKS, DAVID | 2 | Australia | Adelaide, AU | 10/8/1971 |
| 402 | HINTIF, FADIL HUSAYN SALIH | 259 | Yemen | Al Youf, YM | 1/1/1969 |
| 403 | HKIML, ADEL BIN AHMED BIN IBRAHIM | 168 | Tunisia | Bin Aroes, Tunisia | 3/27/1965 |
| 404 | HOMARO, MOYUBALLAH | 729 | Tajikistan | Alisurkhan, Tajikistan | 10/6/1980 |
| 405 | HOUARI, ABDUL RAHAM | 70 | Algeria | Algiers, Algeria | 1/18/1980 |
| 406 | HUDIN, SALAH | 21 | Pakistan / Afghanistan | Jalalabad, AF | 1/8/1982 |
| 407 | HUKUMRA | 1157 | Afghanistan | Chenna Village, AF | 1/1/1974 |
| 408 | HUMUD DAKHIL HUMUD SA'ID AL-((JAD'AN | 230 | Saudi Arabia | Jeddah, SA | 5/22/1973 |
| 409 | HUSSEIN, ABDUL QADIR YOUSEF | 715 | West Bank | Jenin, WE | 3/27/1953 |
| 410 | HUSSEINI, ABDALLAH | 703 | Algeria | Algiers, Algeria | 4/3/1958 |
| 411 | HUWARI, SOUFIAN ABAR | 1016 | Algeria | Ouran, Algeria | 4/29/1970 |
| 412 | IBRAHIM, NAYIF ABDALLAH IBRAHIM | 258 | Saudi Arabia | Riyadh, SA | 1/1/1982 |
| 413 | IDRIS, IBRAHIM OTHMAN IBRAHIM | 36 | Sudan / Yemen | Hathramuut, YM | 1/1/1961 |
| 414 | IJAZ, MOHAMMED | 302 | Pakistan | Blonoval, PK | UNKNOWN |
| 415 | IKASSRIN, LAACIN | 72 | Morocco | Targist, MO | 10/2/1972 |
| 416 | IL BHAWITH, ZAID BINSALLAH MOHAMMED | 272 | Saudi Arabia | Qasim, SA | 1/1/1982 |
| 417 | ILYAS, MOHAMMAD | 144 | Pakistan | Taman, PK | 1/8/1942 |
| 418 | INSANULLAH, FNU | 637 | Afghanistan | Afghanistan | 1/1/1980 |
| 419 | IQBAL, ASIF | 87 | United Kingdom | West Bromwich, UK | 4/24/1981 |
| 420 | IQBAL, FAIK | 210 | Pakistan | Karachi, PK | 10/27/1982 |
| 421 | IQBAL, ZAFAR | 14 | Pakistan | Sambal, PK | 3/1/1983 |
| 422 | IRFAN, MOHAMMED | 1006 | Pakistan | Punjab, PK | 1/1/1979 |
| 423 | IRFAN, MOHAMMED | 101 | Pakistan | Bahalwapur, PK | 12/12/1982 |
| 424 | IRGASHIVE, ABDUL KARIM | 641 | Tajikistan | Dushanbe, Tajikistan | 5/7/1965 |
| 425 | ISHAQ, MOHAMMED | 20 | Pakistan | Panjgoor, PK | 1/1/1983 |
| 426 | ISHMURAT, TIMUR RAVILICH | 674 | Russia | Azenakai, RS | 6/5/1975 |
| 427 | ISMAIL, ALI HAMZA AHMED SULAYMAN | 39 | Yemen | Hudaydah, YM | 1/1/1969 |
| 428 | ISMAIL, MOHAMMED | 930 | Afghanistan | Dourbeni Village, AF | 1/1/1984 |
| 429 | ISMAIL, SADEQ MUHAMMAD SA ID | 69 | Yemen | Jabal Haimain, YM | 1/1/1982 |
| 430 | ISMAIL, YASIN QASEM MUHAMMAD | 522 | Yemen | Ibb, YM | 1/1/1979 |
| 431 | JAHDARI, ZIAD SAID FARG | 286 | Saudi Arabia | Jeddah, SA | 1/1/1979 |
| 432 | JAID AL KHATHAMI, SALEH ALI | 191 | Saudi Arabia | Dharan, SA | 1/1/1981 |
| 433 | JALIL, HAJI | 1117 | Afghanistan | Bayanzai, Gereshk District,AF | 1/1/1970 |
| 434 | JAMALUDINOVICH, ABU BAKIR | 452 | Uzbekistan | Chartakh, UZ | 2/1/1974 |
| 435 | JAN, JUMMA | 1095 | Tajikistan | Kurgantapa, Tajikistan | 1/1/1978 |
| 436 | JAN, SAID AMIR | 945 | Afghanistan | Koozbia, AF | 1/1/1980 |
| 437 | JAN, SAIDA | 1035 | Afghanistan | Konar, AF | UNKNOWN |
| 438 | JANKO, ABD AL RAHIM ABDUL RASSAK | 489 | Syria | Al Qamashil, SY | 6/24/1978 |
| 439 | JARABH, SAEED AHMED MOHAMMED ABDULLAH SAREM | 235 | Yemen | Jeddah, SA | 1/1/1976 |

5/15/2006

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

10

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 440 | JAWAD, MOHAMED | 900 | Afghanistan | Miran Shah, PK | 1/1/1985 |
|-----|----------------|-----|-------------|----------------|----------|
| 441 | KABEL, MOHAMED | 645 | Afghanistan | Parvan Province, AF | 1/1/1963 |
| 442 | KABIR, USAMA HASSAN AHMED ABU | 651 | Jordan | Al Rusayfa, JO | 5/16/1970 |
| 443 | KADIR, KHANDAN | 831 | Afghanistan | Safra-andarikhail, AF | 1/1/1969 |
| 444 | KAFKAS, ABDULLAH D. | 82 | Russia | Prohladsk, RU | 1/23/1984 |
| 445 | KAHM, ABDUL RAHMAN ABDULLAH MOHAMED JUMA | 118 | Afghanistan | Fara, AF | 1/1/1969 |
| 446 | KAKAR, MOHAMMED RAZ-MOHAMMED | 364 | Afghanistan | Khod, AF | 1/1/1977 |
| 447 | KAMEL, ABDULLAH KAMEL ABUDALLAH | 228 | Kuwait | Hawalli, KU | 9/17/1973 |
| 448 | KAMIN, MOHAMMED | 1045 | Afghanistan | UNKNOWN | 1/1/1978 |
| 449 | KANDAHARI, KAKO | 986 | Afghanistan | Ghulayie, AF | 1/1/1970 |
| 450 | KARIM, ABDUL | 520 | Afghanistan | Sangin, AF | 1/1/1982 |
| 451 | KARIM, BOSTAN | 975 | Afghanistan | Khowst, AF | 1/1/1970 |
| 452 | KARNAZ, MURAT | 61 | Turkey | Bremen, Germany | 3/19/1982 |
| 453 | KASIMBEKOV, KAMALLUDIN | 675 | Uzbekistan | Tashkent, UZ | 11/9/1977 |
| 454 | KERIMBAKIEV, ABDULRAHIM | 521 | Kazakhstan | Semei, Kazakhstan | 1/4/1983 |
| 455 | KHADR, ABDUL | 990 | Canada | UNKNOWN | 1/1/1981 |
| 456 | KHADR, OMAR AHMED | 766 | Canada | Toronto, CA | 9/19/1986 |
| 457 | KHAIL, HAFIZULLAH SHABAZ | 1001 | Afghanistan | Paktia, AF | 1/1/1946 |
| 458 | KHAIRKHWA, KHIRULLAH SAID WALI | 579 | Afghanistan | Kandahar, AF | 1/1/1967 |
| 459 | KHALID, RIDOUANE | 173 | France | Villenoble, FR | 8/16/1967 |
| 460 | KHALIK, SAIDULLAH | 280 | China | Ghulja, CH | 7/27/1977 |
| 461 | KHAMSAN, KARAM KHAMIS SAYD | 586 | Yemen | Al Mahra, YM | 1/1/1969 |
| 462 | KHAN, ABDULLAH | 950 | Afghanistan | Ghawchak, AF | 1/1/1956 |
| 463 | KHAN, ABDULLAH MOHAMMAD | 556 | Uzbekistan | Faryab, AF | 1/1/1972 |
| 464 | KHAN, ALIF | 673 | Afghanistan | Khowst, AF | 1/1/1968 |
| 465 | KHAN, ANWAR | 948 | Afghanistan | Konar, AF | 1/1/1967 |
| 466 | KHAN, BACHA | 529 | Pakistan | Bajawor, PK | 1/1/1972 |
| 467 | KHAN, EJAZ AHMAD | 135 | Pakistan | Mardan, PK | 2/10/1975 |
| 468 | KHAN, EZAT | 314 | Afghanistan | Sei, AF | 1/1/1966 |
| 469 | KHAN, HAJI NASRAT | 1009 | Afghanistan | Kabul, AF | 1/1/1935 |
| 470 | KHAN, HAMOOD ULLAH | 145 | Pakistan | Hyberabad, PK | 3/15/1971 |
| 471 | KHAN, HAZRAT SANGIN | 366 | Afghanistan | Lowal, AF | 1/1/1977 |
| 472 | KHAN, ISA | 23 | Pakistan | Bannu, PK | 4/1/1975 |
| 473 | KHAN, JANAN TAUS | 124 | Afghanistan | Kandahar, AF | 9/15/1981 |
| 474 | KHAN, JUMA | 443 | Afghanistan | Kona Charbolak, AF | 1/1/1972 |
| 475 | KHAN, KAKAI | 1075 | Afghanistan | Gardez, AF | 1/1/1971 |
| 476 | KHAN, MOHABET | 909 | Afghanistan | Alipoor, PK | 1/1/1972 |
| 477 | KHAN, MOHAMMAD KASHEF | 146 | Pakistan | Karachi, PK | 1/12/1979 |
| 478 | KHAN, MOHAMMED | 910 | Afghanistan | Shah Toria, AF | 1/1/1982 |
| 479 | KHAN, MUHAMMED IJAZ | 17 | Pakistan | Kafilgarh, PK | 8/10/1976 |
| 480 | KHAN, OSMAN | 818 | Afghanistan | Bermel, AF | 1/1/1952 |
| 481 | KHAN, SHARDAR | 914 | Afghanistan | Gardez, AF | 1/1/1982 |
| 482 | KHAN, SHAWALI | 899 | Afghanistan | Kandahar, AF | 1/1/1963 |
| 483 | KHAN, SWAR | 933 | Afghanistan | Khowst, AF | 1/1/1970 |

5/15/2006

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 484 | KHAN, TARIQ | 97 | Pakistan | Village 426, PK | 1/1/1978 |
|-----|-------------|-----|----------|-----------------|----------|
| 485 | KHAN, TILA MOHAMMED | 830 | Pakistan | Wazierstan, PK | 1/1/1980 |
| 486 | KHANTUMANI, ABD AL NASIR MOHAMMED ABD AL QADIR | 307 | Syria | Halab, SY | 1/1/1960 |
| 487 | KHANTUMANI, MUHAMMAD ABD AL NASIR MUHAMMAD | 312 | Syria | Halab, SY | 1/7/1982 |
| 488 | KHIRULLAH AKAH | 518 | Afghanistan | Afghanistan | UNKNOWN |
| 489 | KHNENAH, MUHAMMED ALI HUSSEIN | 254 | Yemen | Ktaph, YM | UNKNOWN |
| 490 | KHOWLAN, ABDUL RAHMAN MOHAMMED HUSSEIN | 513 | Saudi Arabia | Taif, SA | 1/1/1972 |
| 491 | KHUSRUF, MOHAMMED NASIR YAHYA | 509 | Yemen | Taiz, YM | 2/1/1950 |
| 492 | KIYEMBA, JAMAL ABDULLAH | 701 | Uganda | Bunamwaya, UG | 4/22/1979 |
| 493 | KUCHI, HAJI NIAM | 931 | Afghanistan | Logar, AF | 1/1/1940 |
| 494 | KURD, MOHAMED ANWAR | 676 | Iran | Zahedan, IR | 3/4/1979 |
| 495 | LAGHA, LUFTI BIN SWEI | 660 | Tunisia | Tunis, Tunisia | 11/29/1968 |
| 496 | LAHASSIMI, NAJIB MOHAMMAD | 75 | Morocco | Sattat, MO | 9/28/1978 |
| 497 | LAHMAR, SABIR MAHFOUZ | 10002 | Algeria | Constantin, Algeria | 5/22/1969 |
| 498 | LAYAR, SABIT | 365 | Afghanistan | Sawali Khot, AF | 1/1/1981 |
| 499 | LNU, AMANULLAH | 970 | Afghanistan | UNKNOWN | 1/1/1963 |
| 500 | LNU, NASIBULLAH | 1019 | Afghanistan | Jalazai, AF | 1/1/1967 |
| 501 | LNU, SADEE EIDEOV | 665 | Tajikistan | Kamsamulabad Reyhan, Tajikista | 1/1/1953 |
| 502 | LNU, SHARIFULLAH | 944 | Afghanistan | Jalalabad, AF | 1/1/1980 |
| 503 | MADNI, HAFEZ QARI MOHAMED SAAD IQBAL | 743 | Pakistan | Pakistan | 10/17/1977 |
| 504 | MAGRUPOV, ABDULLAH TOHTASINOVICH | 528 | Kazakhstan | Semeya, Kazakhstan | 5/14/1983 |
| 505 | MAHDI, FAWAZ NAMAN HAMOUD ABDULLAH | 678 | Yemen | The Shaira, YM | 1/1/1980 |
| 506 | MAHJOUB, MUHAMMED AL GHAZALI BABAKER | 700 | Sudan | Um Durman, SU | 12/14/1973 |
| 507 | MAHMUD, ARKIN | 103 | China | Ghulja, CH | 7/1/1964 |
| 508 | MAHNUT, BAHTIYAR | 277 | China | Ghulja, CH | 1/18/1976 |
| 509 | MAKRAM, MURTADHA AL SAID | 187 | Saudi Arabia | Riyadh, SA | 3/28/1976 |
| 510 | MALANG, NASSIR | 355 | Afghanistan | Kandahar, AF | 1/1/1972 |
| 511 | MAMUT, ABDUL HELIL | 278 | China | Kashkar, CH | 1/1/1977 |
| 512 | MANZU, HAFICE LEQEAT | 139 | Pakistan | Kanaval District, PK | 1/12/1977 |
| 513 | MAR'I, JAMAL MUHAMMAD 'ALAWI | 577 | Yemen | Dhamar, YM | UNKNOWN |
| 514 | MART, MAHMUD NURI | 543 | Turkey | Agri, Turkey | 9/27/1971 |
| 515 | MASUD, SHARAF AHMAD MUHAMMAD | 170 | Yemen | Sana'a, SA | 1/1/1978 |
| 516 | MATIN, ABDUL | 1002 | Afghanistan | Jowzjan, AF | 1/1/1965 |
| 517 | MAZHARUDIN, FNU | 731 | Tajikistan | Pajpai, PK | 12/1/1979 |
| 518 | MEHMOOD, MAJID | 624 | Pakistan | Bahawal District, PK | 3/3/1979 |
| 519 | MELMA, SABAR LAL | 801 | Afghanistan | Darya-e-Pech, AF | 1/1/1962 |
| 520 | MINGAZOV, RAVIL | 702 | Russia | Bolsheretski, RS | 12/5/1967 |
| 521 | MIRMUHAMMAD, SHARGHULAB | 313 | Afghanistan | Brayiam, AF | 1/1/1972 |
| 522 | MIZOUZ, MOHAMMED | 294 | Morocco | Casablanca, MO | 12/31/1973 |
| 523 | MOHAMED, AHMED | 328 | China | Artush, CH | 5/1/1978 |
| 524 | MOHAMED, FAHED NASSER | 13 | Saudi Arabia | Abaha, SA | 2/25/1982 |
| 525 | MOHAMMAD, AKHTAR 2 | 969 | Afghanistan | UNKNOWN | UNKNOWN |
| 526 | MOHAMMAD, AKHTIAR | 1036 | Afghanistan | Kundarkheil, AF | 1/1/1953 |
| 527 | MOHAMMAD, MOHAMMAD LAMEEN SIDI | 706 | Mauritania | Zandeer, Niger | 9/10/1981 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 528 | MOHAMMAD, TARIK | 136 | Pakistan | Kohat, PK | 2/25/1972 |
| 529 | MOHAMMADULLAH | 347 | Afghanistan | Manu, AF | 1/1/1974 |
| 530 | MOHAMMED, AKHTAR | 845 | Afghanistan | Barogai, AF | 1/1/1970 |
| 531 | MOHAMMED, ALI 2 | 634 | Pakistan | Rahamibad, PK | 1/1/1952 |
| 532 | MOHAMMED, ALI MUHAMMED NASIR | 172 | Saudi Arabia | Jedda, SA | 12/1/1982 |
| 533 | MOHAMMED, ALIF | 972 | Afghanistan | Helmand, AF | 1/1/1946 |
| 534 | MOHAMMED, HAJI FAIZ | 657 | Afghanistan | Rasham Village, AF | UNKNOWN |
| 535 | MOHAMMED, HAJI WALI | 560 | Afghanistan | Baghlan, AF | 2/15/1966 |
| 536 | MOHAMMED, HUSSEIN SALEM | 1015 | Yemen | Aden, YM | 1/1/1977 |
| 537 | MOHAMMED, KAHLID SAAD | 335 | Saudi Arabia | Al Tabia, SA | 7/13/1973 |
| 538 | MOHAMMED, MIRZA | 644 | Afghanistan | Gorband, AF | 1/1/1964 |
| 539 | MOHAMMED, NAG | 102 | China | Khulga, CH | 5/4/1975 |
| 540 | MOHAMMED, RASOOL SHAHWALI ZAIR MOHAMMED | 835 | Afghanistan | Lowara, AF | 1/1/1978 |
| 541 | MOHAMMED, SAID | 1056 | Afghanistan | Afghanistan | 1/1/1977 |
| 542 | MOHAMMED, SALMAN SAAD AL KHADI | 121 | Saudi Arabia | Riyadh, SA | 1/14/1982 |
| 543 | MOHAMMED, SULTAN | 517 | Afghanistan | Qal eh, AF | 1/1/1976 |
| 544 | MOHAMMED, TAJ | 902 | Afghanistan | Afghanistan | 1/1/1981 |
| 545 | MOHAMMED, WALI | 547 | Afghanistan | Kandahar, AF | 1/1/1964 |
| 546 | MOHHAMED, HANIF | 305 | Pakistan | Adda Shenal, PK | 1/1/1982 |
| 547 | MOHHAMED, SOHAB MAHUD | 563 | Iraq | Piboss, Iraq | 8/17/1981 |
| 548 | MOQBEL, SAMIR NAJI AL HASAN | 43 | Yemen | Ta'iz, YM | 12/1/1977 |
| 549 | MOQBILL, MUHSIN MUHAMMAD MUSHEEN | 193 | Yemen | Ta'iz, YM | UNKNOWN |
| 550 | MOUHAMMAD, MAASOUM ABDAH | 330 | Syria | Al Qameshla, SY | 1/1/1972 |
| 551 | MOWLA, ABDUL | 442 | Pakistan | Malakan District, PK | 1/1/1969 |
| 552 | MUBANGA, MARTIN JOHN | 10007 | United Kingdom | Luasaka, ZA | 9/24/1972 |
| 553 | MUHAMMAD, ABD AL RAHMAN ABDULLAH ALI | 224 | Yemen | Sinai, YM | 1/1/1982 |
| 554 | MUHAMMAED, NOOR UTHMAN | 707 | Sudan | Kasala, SU | UNKNOWN |
| 555 | MUHAMMED, ABDUL MAJID | 555 | Iran | Zahedan, IR | 1/1/1979 |
| 556 | MUHAMMED, HAJI | 649 | France | Medina, SA | 1/1/1962 |
| 557 | MUHAMMED, PETA | 908 | Afghanistan | Gardez, AF | 1/1/1985 |
| 558 | MUHIBULLAH, FNU | 546 | Afghanistan | Shah Wali Koot, AF | 1/1/1982 |
| 559 | MUJAHID | 1100 | Afghanistan | Paktia, AF | 1/1/1971 |
| 560 | MUSLIMDOST, ABDUL RAHIM | 561 | Afghanistan | Nangarhar, AF | 1/1/1960 |
| 561 | MUST, YARASS ALI | 315 | Afghanistan | UNKNOWN | 1/1/1972 |
| 562 | MUSTAFA, KHALED BEN | 236 | France | Lyons, FR | 1/9/1972 |
| 563 | NABIED, YUSEF | 83 | Tajikistan | Isfara, Tajikistan | 8/5/1963 |
| 564 | NAFEESI, ABDUL SATAR | 11 | Pakistan | Miachinu, PK | 1/8/1971 |
| 565 | NAJI, AZIZ ABDUL | 744 | Algeria | Batna, Algeria | 5/4/1975 |
| 566 | NASEER, MUNIR BIN | 85 | Pakistan | Karachi, PK | 2/27/1978 |
| 567 | NASERULLAH, FNU | 967 | Afghanistan | Helmand, AF | 1/1/1980 |
| 568 | NASHIR, SA ID SALIH SA ID | 841 | Yemen | Habilain, YM | 1/1/1974 |
| 569 | NASIM, MOHAMMAD | 453 | Afghanistan | Shahidan, AF | 1/1/1973 |
| 570 | NASIM, MOHAMMED 2 | 849 | Afghanistan | Megan, AF | 1/1/1980 |
| 571 | NASIM, MOHAMMED 3 | 958 | Afghanistan | Pai Warzai, AF | 1/1/1962 |

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 572 | NASIR, ABDUL | 874 | Afghanistan | Kabul, AF | 1/1/1981 |
|-----|--------------|-----|-------------|-----------|----------|
| 573 | NASIR, ABDUL LATIF | 244 | Morocco | Casablanca, MO | 3/4/1965 |
| 574 | NASIR, ALLAH | 951 | Afghanistan | Zalahka, AF | 1/1/1947 |
| 575 | NASRAT YAR, HIZTULLAH | 977 | Afghanistan | Surubee, AF | 1/1/1970 |
| 576 | NASRULLAH, FNU | 886 | Afghanistan | Oruzgan, AF | 1/1/1979 |
| 577 | NASSERI, RIYAD BIL MOHAMMMED TAHIR | 510 | Tunisia | Gafsa, Tunisia | 7/8/1966 |
| 578 | NASSIR, JAMIL AHMED SAID | 728 | Yemen | Ta'iz, YM | 1/1/1970 |
| 579 | NECHLE, MOHAMMED | 10003 | Algeria | Laghouat, Algeria | 4/2/1968 |
| 580 | NOMAN, MOHAMMED | 541 | Pakistan | Pakistan | 1/1/1977 |
| 581 | NOOR, HABIB | 1041 | Afghanistan | Mangal Village, AF | 1/1/1968 |
| 582 | NOORALLAH, HAJI | 494 | Afghanistan | Andkhoy, AF | 1/1/1971 |
| 583 | NOORANI, ABDUL RAHMAN | 582 | Afghanistan | Afghanistan | 1/1/1973 |
| 584 | NOORI, ADEL | 584 | China | Xing Xiang, CH | 11/12/1979 |
| 585 | NOORI, MULLAH NORULLAH | 6 | Afghanistan | Shajoie, AF | 1/1/1967 |
| 586 | NUR, YUSIF KHALIL ABDALLAH | 73 | Saudi Arabia | Mecca, SA | 3/16/1982 |
| 587 | OBAIDULLAH | 762 | Afghanistan | Khowst, AF | 1/1/1980 |
| 588 | ODIJEV, RUSLAN ANATOLIVICH | 211 | Russia | Prolandnom, RU | 12/5/1973 |
| 589 | OMAR, ABDULLAH BIN | 721 | Tunisia | Massoulta, Tunisia | 6/28/1956 |
| 590 | OMAR, MOHAMMED | 540 | Pakistan | Larkana, PK | 1/1/1986 |
| 591 | OMARI, MOHAMMAD NABI | 832 | Afghanistan | Khowst, AF | 1/1/1968 |
| 592 | OURGY, ABDUL BIN MOHAMMED BIN ABESS | 502 | Tunisia | Tunis, Tunisia | 7/25/1965 |
| 593 | PARACHA, SAIFULLAH | 1094 | Pakistan | Mongwal, PK | 8/17/1947 |
| 594 | PARHAT, HOZAIFA | 320 | China | Ghulja, CH | 2/11/1971 |
| 595 | PEERZAI, QARI HASAN ULLA | 562 | Afghanistan | Baghran, AF | 1/1/1977 |
| 596 | QA ID, RASHID ABD AL MUSLIH QA ID AL | 344 | Saudi Arabia | Sakahka, SA | 12/20/1959 |
| 597 | QADER IDRIS, IDRIS AHMED ABDU | 35 | Yemen | Rada, YM | 1/1/1979 |
| 598 | QADER, Ahmed Abdul | 690 | Yemen | Sana'a, YM | 1/1/1983 |
| 599 | QAHTANI, SAID MUHAMMAD HUSYAN | 200 | Saudi Arabia | Khamees Mushail, SA | 1/1/1978 |
| 600 | QASIM, ABU BAKR | 283 | China | Ghulja, CH | 5/13/1969 |
| 601 | QASIM, KHALED | 242 | Yemen | Themeir, YM | 1/21/1977 |
| 602 | QATTAA, MANSOOR MUHAMMED ALI | 566 | Saudi Arabia | Ta'if, SA | 1/1/1982 |
| 603 | QUASAM, MOHAMMED | 955 | Afghanistan | Bamian, AF | 1/1/1977 |
| 604 | QUDUS, ABDUL | 929 | Afghanistan | Nadali, AF | 1/1/1988 |
| 605 | QYATI, ABDUL RAHMAN UMIR AL | 461 | Yemen | Jeddah, SA | 1/1/1976 |
| 606 | RABBANI, MOHAMMED AHMAD GHULAM | 1461 | Pakistan | al Medinah, SA | 1/1/1970 |
| 607 | RABEII, SALMAN YAHYA HASSAN MOHAMMED | 508 | Yemen | Jedda, SA | 6/30/1979 |
| 608 | RAFIQ, MOHAMMED | 495 | Pakistan | Kabal, PK | 1/1/1980 |
| 609 | RAHEEM, AL RACHID HASAN AHMAD ABDUL | 714 | Sudan | Al-Ubayyid, SU | 7/29/1965 |
| 610 | RAHIM, ABDUL 6 | 897 | Afghanistan | Sharshar, AF | 1/1/1975 |
| 611 | RAHIM, MOHAMED | 1104 | Afghanistan | Ghazni, AF | UNKNOWN |
| 612 | RAHMAD, NISAR | 630 | Afghanistan | Afghanistan | 1/1/1980 |
| 613 | RAHMAN, ABDUL 12 | 549 | Yemen | Hadramaut, YM | 1/1/1976 |
| 614 | RAHMAN, ABDUL 4 | 357 | Afghanistan | Haji Baras, AF | 1/1/1976 |
| 615 | RAHMAN, FIZAULLA | 496 | Afghanistan | Sancharak, AF | 1/1/1978 |

5/15/2006

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 616 | RAHMAN, HABIB | 907 | Afghanistan | Mansaira, PK | 1/1/1982 |
|-----|---------------|-----|-------------|--------------|----------|
| 617 | RAHMAN, MAHBUB | 1052 | Afghanistan | Khowst, AF | 1/1/1985 |
| 618 | RAHMAN, MOHAMMED ABDUL 2 | 894 | Tunisia | Tunis, T S | 1/1/1965 |
| 619 | RAHMAN, MURTAZAH ABDUL | 361 | Afghanistan | Nadali, AF | 1/1/1976 |
| 620 | RAHMAN, SHED ABDUR | 581 | Afghanistan | Pishin, PK | 1/1/1965 |
| 621 | RAHMATULLAH, FNU | 964 | Afghanistan | Helmand, AF | 1/1/1981 |
| 622 | RASHIDI, AHMED | 590 | Morocco | Tanjier, MO | 3/16/1966 |
| 623 | RASOOL, HABIB | 120 | Afghanistan | Khowst, AF | 1/1/1955 |
| 624 | RASOUL, ABDULLAH GULAM | 8 | Afghanistan | Hilmand, AF | 1/1/1973 |
| 625 | RASUL, SHAFIQ | 86 | United Kingdom | Dudley, England | 1/1/1973 |
| 626 | RAZ, MOHAMMED | 106 | Afghanistan | UNKNOWN | 1/1/1969 |
| 627 | RAZA, ABID | 299 | Pakistan | Digary Sindh, PK | 2/10/1981 |
| 628 | RAZA, MOHAMMED ARSHAD | 147 | Pakistan | Bahawal Nagar, PK | 1/1/1980 |
| 629 | RAZAK, ABDUL | 1043 | Afghanistan | Kandahar, AF | 1/1/1958 |
| 630 | RAZAK, ABDUL | 219 | China | Atush, CH | UNKNOWN |
| 631 | RAZAQ, ABDUL | 356 | Afghanistan | Tashkent, UZ | 1/1/1971 |
| 632 | RAZIQ, ABDUL | 99 | Pakistan | Kot Marakand, PK | 4/22/1972 |
| 633 | RAZZAK, ABDUL | 942 | Afghanistan | Kandahar, AF | 1/1/1939 |
| 634 | RAZZAQ, ABDUL | 923 | Afghanistan | Kadahal, AF | 1/1/1964 |
| 635 | RUHANI, GHOLAM | 3 | Afghanistan | Ghazni, AF | 1/1/1975 |
| 636 | SA ID ALI JABIR AL KHATHIM AL SHIHRI | 372 | Saudi Arabia | Riyadh, SA | 9/12/1973 |
| 637 | SADIK, MAHMUD | 512 | Afghanistan | UNKNOWN | 1/1/1952 |
| 638 | SADIQ, MOHAMMED | 349 | Afghanistan | UNKNOWN | 1/1/1913 |
| 639 | SADIQI, ABDUL HALIM | 1007 | Pakistan | Pakistan | 1/1/1968 |
| 640 | SADKHAN, JAWAD JABBER | 433 | Iraq | Diwaniya, Iraq | 6/1/1967 |
| 641 | SAEED, HAFIZ IHSAN | 98 | Pakistan | Lahore, PK | 12/23/1978 |
| 642 | SAFOLLAH, GHASER ZABAN | 134 | Pakistan | Madanchak, PK | 1/1/1979 |
| 643 | SAID KUMAN, AHMED YASLAM | 321 | Yemen | Hathramout, YM | 1/15/1981 |
| 644 | SAID, HASSAN MUJAMMA RABAI | 175 | Algeria | Oum el Bouaghi, Algeria | 2/5/1976 |
| 645 | SAID, SALAM ABDULLAH | 126 | Saudi Arabia | Tabokh, SA | 2/13/1981 |
| 646 | SALAAM, ABDUL | 826 | Afghanistan | Birmal, AF | 1/1/1975 |
| 647 | SALAM, MOHAMMED AHMED | 689 | Yemen | Ta'iz, YM | 10/1/1980 |
| 648 | SALEEM, ALLAH MUHAMMED | 716 | Egypt | Al-Bajoor, EG | 1/13/1967 |
| 649 | SALEH GANMI, ABDULLAH MUHAMMAD | 266 | Saudi Arabia | Rabug, SA | 1/1/1974 |
| 650 | SALEH NASER, ABDUL RAHMAN MOHAMED | 115 | Yemen | Ma'rib, YM | 1/1/1980 |
| 651 | SALEH, AYOUB MURSHID ALI | 836 | Yemen | Usabee, YM | 4/29/1978 |
| 652 | SALEHOVE, MAROOF SALEEMOVICH | 208 | Tajikistan | Dushanbe, Tajikistan | 3/3/1978 |
| 653 | SALEM AL ZARNUKI, MOHAMMED ALI | 691 | Yemen | Husayneyah, YM | UNKNOWN |
| 654 | SALIH, ABDUL AL RAZZAQ MUHAMMAD | 233 | Yemen | Al Gidd Al Hajjah, YM | 1/1/1973 |
| 655 | SALIH, ALI MOHSEN | 221 | Yemen | Guban, YM | 10/26/1980 |
| 656 | SAMAD, ABDUL | 911 | Afghanistan | Zormat, AF | 1/1/1982 |
| 657 | SANGARYAR, RAHMATULLAH | 890 | Afghanistan | Oruzgan, AF | 1/1/1968 |
| 658 | SANGHIR, MOHAMMAD | 143 | Pakistan | Kohestan, AF | 1/1/1952 |
| 659 | SARAJUDDIN, ABIB | 458 | Afghanistan | Zamikhel, AF | 1/1/1942 |

5/15/2006

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 660 | SARGIDENE, MOHAMMED | 358 | Afghanistan | Archasan, AF | 1/1/1977 |
|-----|---------------------|-----|-------------|--------------|----------|
| 661 | SARWAR, KARI MOHAMMED | 667 | Afghanistan | Ashakay Village, AF | 1/1/1978 |
| 662 | SASSI, NIZAR | 325 | France | Lyons, FR | 8/1/1979 |
| 663 | SATTAR, ABDUL | 10 | Pakistan | Bumb, PK | 11/12/1981 |
| 664 | SAYAB, MUTIJ SADIZ AHMAD | 288 | Algeria | UNKNOWN | 7/1/1976 |
| 665 | SAYED, ABDUL HADI MUHAMED RASUL | 352 | Afghanistan | Helmand, AF | 1/1/1973 |
| 666 | SAYED, MOHAMMED | 18 | Pakistan | Abbotabad, PK | 1/1/1973 |
| 667 | SEBAI, MOHAMMED JAYED | 319 | Saudi Arabia | Riyadh, SA | 4/1/1983 |
| 668 | SEBAII, ABDEL HADI MOHAMMED BADAN AL SEBAII | 64 | Saudi Arabia | El Kharg, SA | 8/23/1971 |
| 669 | SEN, IBRAHIM SHAFIR | 297 | Turkey | Van, Turkey | 10/10/1980 |
| 670 | SEN, MESUT | 296 | Belgium | Brussels, BE | 2/20/1980 |
| 671 | SHAABAN, ALI HUSEIN | 327 | Syria | Utaiba, SY | 3/6/1982 |
| 672 | SHAH, ALI | 1154 | Afghanistan | Gardez, AF | 1/1/1959 |
| 673 | SHAH, NAHIR | 1010 | Afghanistan | Kaplsa, AF | 1/1/1973 |
| 674 | SHAH, QALANDAR | 812 | Afghanistan | Kandahar, AF | 1/1/1973 |
| 675 | SHAH, SAID MOHAMMED ALIM | 92 | Afghanistan | Helmand, AF | 1/1/1978 |
| 676 | SHAH, SOLAIMAN DUR MOHAMMED | 119 | Afghanistan | Panjwaee, AF | 1/1/1977 |
| 677 | SHAH, ZAKIM | 898 | Afghanistan | Tora Oba, AF | 1/1/1983 |
| 678 | SHAHEEN NAQEEBYLLAH, SHAHWALI, ZAIR MOHAMMED | 834 | Afghanistan | Khowst, AF | 6/1/1976 |
| 679 | SHAHIR, WALID MOHAMMED | 1014 | Yemen | Al Tawahi, YM | 1/1/1979 |
| 680 | SHAHZADA, HAJI | 952 | Afghanistan | Belanday, AF | 1/1/1959 |
| 681 | SHAKARAN, IBRAHIM BIN | 587 | Morocco | Casablanca, MO | 8/4/1979 |
| 682 | SHALABI, ABDUL RAHMAN | 42 | Saudi Arabia | Medina, SA | 12/4/1975 |
| 683 | SHARBAT | 1051 | Afghanistan | Khairo Village | 1/1/1973 |
| 684 | SHARIF, MOHAMMED | 532 | Afghanistan | Kalina, AF | 1/1/1976 |
| 685 | SHARIPOV, ALMASM RABILAVICH | 209 | Russia | Avzion, RU | 4/23/1971 |
| 686 | SHARQAWI, ABDU ALI AL HAJI | 1457 | Yemen | Taiz, SA | 5/26/1974 |
| 687 | SHAYBAN, SAID BEZAN ASHEK | 346 | Saudi Arabia | Ta'iz, SA | 1/1/1981 |
| 688 | SHILI, IBRAHIM RUSHDAN BRAYK AL- | 127 | Saudi | Medina, SA | 1/1/1981 |
| 689 | SHOKURI, YUNIS ABDURRAHMAN | 197 | Morocco | Asafi, MO | 4/5/1968 |
| 690 | SLAHI, MOHAMEDOU OULD | 760 | Mauritania | Rosso, MR | 12/21/1970 |
| 691 | SLITI, HISHAM BIN ALI BIN AMOR | 174 | Tunisia | Hamam Lif, Tunisia | 2/12/1966 |
| 692 | SOHAIL, MOHAMMED MUSTAFA | 1008 | Afghanistan | Jalalabad, AF | 1/1/1981 |
| 693 | SOULEIMANI LAALMAI, MOHAMAD | 237 | Morocco | Casablanca, MO | 1/19/1976 |
| 694 | SUBII, NASIR MAZIYAD ABDALLAH AL QURAYSHI AL | 497 | Saudi Arabia | Kasim, SA | 9/16/1970 |
| 695 | SULAYMAN, ABDUL RAHMAN ABDUL ABU GHITYH | 223 | Yemen | Ta'iz, YM | 1/1/1979 |
| 696 | SULEIMAN, FAYIZ AHMAD YAHIA | 153 | Yemen | Jeddah, SA | 1/1/1974 |
| 697 | SULEYMAN, AHMED HASSAN JAMIL | 662 | Jordan | Aman, JO | 6/4/1961 |
| 698 | SULTAN, ASHRAF SALIM ABD AL SALAM | 263 | Libya | Jedda, SA | 7/5/1971 |
| 699 | SULTAN, FAHA | 130 | Saudi Arabia | Jeddah, SA | 1/1/1972 |
| 700 | SULTAN, ZAHID | 300 | Pakistan | Abdabot, PK | 2/10/1981 |
| 701 | TAHAMUTTAN, MOHAMMED ABDULLAH | 684 | West Bank | Burka, WE | 12/1/1979 |
| 702 | TAHAR, MOHMMAD AHMAD ALI | 679 | Yemen | Ib, YM | 1/1/1980 |
| 703 | TAHIR, MOHAMMED | 643 | Afghanistan | Mirkhan Khail, AF | 1/1/1975 |

5/15/2006

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 704 | TARIQ, MOHAMMED | 137 | Pakistan | Alladand Dehry, PK | 3/10/1973 |
|-----|-----------------|-----|----------|---------------------|-----------|
| 705 | TAYEEA, ALI ABDUL MOTALIB AWAYD HASSAN AL | 111 | Iraq | Baghdad, Iraq | UNKNOWN |
| 706 | THANI, ABDALLAH FARIS AL UNAZI | 514 | Saudi Arabia | Saudi Arabia | 1/31/1980 |
| 707 | TORJAN, SHAIBJAN | 362 | Afghanistan | Kandahar, AF | 1/1/1977 |
| 708 | TOURSON, AHMAD | 201 | China | Xinjiang, CH | 1/26/1971 |
| 709 | TSIRADZHO, POOLAD T | 89 | Azerbaijan | Baku, AJ | 5/6/1975 |
| 710 | TUKHI, AMINULLAH BARYALAI | 1012 | Afghanistan | Heart, AF | 1/1/1972 |
| 711 | TURKASH, EMDASH ABDULLAH | 500 | Turkmenistan | Ghazni, AF | 1/1/1941 |
| 712 | TURKI MASH AWI ZAYID AL ASIRI | 185 | Saudi Arabia | Taboq, SA | 3/8/1975 |
| 713 | TURKISTANI, SADIK AHMAD | 491 | Saudi Arabia | Taif, SA | UNKNOWN |
| 714 | UL HAQ, ISRAR | 515 | Pakistan | Topi, PK | 1/1/1980 |
| 715 | UL SHAH, ZIA | 15 | Pakistan | Karachi, PK | 5/1/1976 |
| 716 | ULLAH, AMIN | 848 | Afghanistan | Chogha, AF | 1/1/1956 |
| 717 | ULLAH, ASAD | 47 | Pakistan | Swahbi, PK | 1/1/1981 |
| 718 | ULLAH, ASAD | 912 | Afghanistan | Paktia, AF | 1/1/1988 |
| 719 | ULLAH, FAIZ | 919 | Afghanistan | Bamian, AF | 1/1/1956 |
| 720 | ULLAH, NAQIB | 913 | Afghanistan | Zargary Camp, PK | 1/1/1988 |
| 721 | ULLAH, NOOR HABIB | 626 | Afghanistan | Jalalabad, AF | 1/1/1980 |
| 722 | ULLAH, SHAMS | 783 | Afghanistan | Gulnoom Khan, AF | 1/1/1986 |
| 723 | UMAR, IBRAHIM UMAR ALI AL- | 585 | Saudi | Al Qaseem, SA | 1/1/1983 |
| 724 | URAYMAN, SAJIN | 545 | Pakistan | Gujaranwala, PK | 1/1/1984 |
| 725 | USMAN, SHABIDZADA | 12 | Pakistan | Malal, PK | 3/5/1982 |
| 726 | UTHMAN, UTHMAN ABDUL RAHIM MOHAMMED | 27 | Yemen | Aden, YM | 1/1/1979 |
| 727 | UWAYDAH, RASHID AWAD RASHID AL | 664 | Saudi Arabia | Sakaka, SA | 1/1/1976 |
| 728 | UYAR, SALIH | 298 | Turkey | Kojaeli, Turkey | 4/14/1981 |
| 729 | VAHITOV, AIAT NASIMOVICH | 492 | Russia | Naberyozhnyj, RS | 3/27/1977 |
| 730 | WAHAB, ABDUL | 961 | Afghanistan | Afghanistan | 1/1/1968 |
| 731 | WAHEED, ABDUL | 353 | Afghanistan | Musa Qala, AF | 1/1/1972 |
| 732 | WAKIL, HAJI SAHIB ROHULLAH | 798 | Afghanistan | Jalalabad, AF | 1/1/1962 |
| 733 | WALI, BADSHAH | 638 | Afghanistan | Khowst, AF | 1/1/1977 |
| 734 | WALI, JIHAN | 444 | Pakistan | Diir, PK | 1/1/1967 |
| 735 | WALIJAN, NEYAZ | 640 | Afghanistan | Khowst, AF | 1/1/1962 |
| 736 | WASIM | 338 | Saudi Arabia | Al Jauf, SA | 11/18/1963 |
| 737 | WASIQ, ABDUL HAQ | 4 | Afghanistan | Ghazni, AF | 1/1/1971 |
| 738 | WAZIR, ABDULLAH | 976 | Afghanistan | Sheikh Amir, AF | 1/1/1979 |
| 739 | WAZIR, HAJI MOHAMMED | 996 | Afghanistan | Lashkargh City, AF | 1/1/1943 |
| 740 | WAZIR, PADSHA | 631 | Afghanistan | Kundai, AF | 1/1/1972 |
| 741 | YACOUB, MOHAMMED | 1004 | Afghanistan | Khwazak, AF | 1/1/1976 |
| 742 | YADEL, BRAHIM | 371 | France | Aubervilliers, FR | 3/17/1971 |
| 743 | YAKUBI | 1165 | Afghanistan | Gardiz, AF | 2/15/1966 |
| 744 | YAQUB, MOHAMMED YUSIF | 367 | Afghanistan | Nimbrooz, AF | UNKNOWN |
| 745 | YAR, KUSHKY | 971 | Afghanistan | Lejay Village, AF | 1/1/1963 |
| 746 | YASSER, HIMDY | 9 | Saudi Arabia / USA | Baton Rouge, Louisiana | 11/17/1979 |
| 747 | YOUSEF, MOHAMMED HAJI | 820 | Afghanistan | Bermal, AF | 1/1/1967 |

5/15/2006

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.

**List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006**

| 748 | ZAEEF, ABDUL SALAM | 306 | Afghanistan | Kandahar, AF | 1/1/1967 |
|-----|--------------------|-----|-------------|--------------|----------|
| 749 | ZAHIR, ABDUL | 753 | Afghanistan | Hasarak, AF | 1/1/1972 |
| 750 | ZAHIR, MOHOMMOD | 1103 | Afghanistan | Ghazni, AF | 1/1/1953 |
| 751 | ZAHOR, ABDUL | 949 | Afghanistan | Charikar, AF | 1/1/1964 |
| 752 | ZAHRANI, FAWAZ ABD AL-AZIZ AL- | 125 | Saudi | Medina, SA | 1/1/1978 |
| 753 | ZAID, WALID SAID BIN SAID | 550 | Yemen | Ta'iz, YM | 2/2/1978 |
| 754 | ZAMAN, GUL | 459 | Afghanistan | Khowst, AF | 1/1/1971 |
| 755 | ZAMAN, KHAN | 460 | Afghanistan | Zani Khel, AF | 1/1/1962 |
| 756 | ZEMMORI, MOSA ZI | 270 | Belgium | Wilryk, Belgium | 8/3/1978 |
| 757 | ZIDAN, IBRAHIM MACHD ACHMED | 761 | Libya | Sorman, LY | 11/5/1976 |
| 758 | ZUMARIKOURT, AZIZ KHAN ALI KHAN | 348 | Afghanistan | Mushkail, AF | 1/1/1962 |
| 759 | ZUMIRI, HASSAN | 533 | Algeria | Algiers, AL | 9/8/1967 |
| | | | | | |

5/15/2006

** Birth dates that state "1/1/XX" indicate unknown month and day of birth.                                                                18