IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION<br><br>_____<br><br>ABDUL HAMID AL-GHIZZAWI<br>    Detainee,<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba;<br><br>*Petitioner,*<br><br>*v.*<br><br>GEORGE W. BUSH, *et al.,*<br><br>*Respondents.* | Misc. No. 08-442 (TFH)<br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No. 05-2378 (JBB) |

**OBSERVATIONS RELATED TO STATUS CONFERENCE OF JULY 8, 2008**

Now comes the Petitioner, Abdul Hamid Al-Ghizzawi, by his counsel. Counsel attempted to participate in the status conference but her telephone connection was inexplicably disconnected and she was unable to reconnect to the call. Petitioner Al-Ghizzawi's counsel has received notes of the proceedings from other habeas counsel and presents these observations regarding her client, to the Court:

1. Petitioner Al-Ghizzawi, an extremely ill prisoner[1], has been held for more than 6 ½ years at Guantanamo despite the fact that he was initially found **not** to be an enemy combatant in

---

[1] J. Bates recently denied Al-Ghizzawi's renewed request for his medical records and treatment holding that any medical problems suffered by Al-Ghizzawi are his own fault. The court preferred to believe the military doctor who stated that Al-Ghizzawi is not cooperating in his medical care rather than believe Al-Ghizzawi, his counsel, and/or an expert on liver disease who has been working with counsel, each of whom expressed their concern over health issues

his first CSRT, as explained in more detail below. A "do-over" CSRT was promptly ordered by the Pentagon and, as explained in a contemporaneous government email, an inculplery search was ordered to find reasons to continue to hold Al-Ghizzawi (and several other men also found to be non-enemies). As the email explained:

> This does not justify making a change in and or (sic) itself
> but is a filter by which to look .....By properly
> classifying them as EC, then there is an opportunity
> to (1) further exploit them here in [G] TMO and (2)
> when they are transferred to a third country, it will
> be controlled transfer in status..

2. Al-Ghizzawi's case also brings forth the extraordinary additional fact that a member of his first CSRT panel, the panel that found A1-Ghizzawi to *not* be an enemy combatant included panel member Lt. Col. Stephan Abraham. Lt. Col. Abraham provided an affidavit to the Supreme Court in June 2007 in that Petitioner's successful Motion to Reconsider the denial of Certiorari in *Boumediene v. Bush,*---- S.Ct.---, 2007 WL 1854132, 75 USLW 3705, 75 USLW 3707 (U.S. Jun 29, 2007) (NO. 06-1195). In his affidavit Lt. Col. Abraham described not only the failed CSRT process and the pressure put on the CSRT panels to find the prisoners "enemy combatants" but he also described in detail the only panel that he sat on (panel 23) and the paucity of evidence against that detainee, Al-Ghizzawi, petitioner herein. Lt. Col. Abraham mistakenly thought that Al-Ghizzawi had been released after the panel's unanimous finding and was unaware until July 2007 that Al-Ghizzzawi had been subjected to a do-over CSRT (based on the same evidence Lt. Col. Abraham's panel rejected) and remained at Guantanamo.

3. Al-Ghizzawi, an innocent civilian who has never been an enemy of the United States, was one of the prisoners who desperately wanted legal assistance because he believed that once

---

and the neglect on the part of military doctors to properly treat Al-Ghizzawi. Al-Ghizzawi is not attempting to have this Court second guess J. Bates' decision, which is on appeal, but brings up

an American court of justice saw the circumstances under which he was kidnapped and turned over to the American forces solely for bounty, he would be promptly returned to his wife and now seven year old daughter.

4. Counsel for Al-Ghizzawi volunteered to represent him in the fall of 2005 and has met with Al-Ghizzawi more than a dozen times. In the beginning Al-Ghizzawi was actively engaged in the legal process and had been a great help to his counsel. However, in December 2006 Al-Ghizzawi was moved to the solitary confinement of Camp 6. As a result of being placed in camp 6 Al-Ghizzawi's physical and mental deterioration has been acute.

5. Due to the physical and mental deterioration of Al-Ghizzawi it has become difficult for Al-Ghizzawi to continue to help his attorney in a meaningful way because the harsh conditions make it difficult for him to concentrate on his legal efforts, or much else. However, it is imperative that counsel and Al-Ghizzawi work together to properly challenge his detention so that the courts can properly adjudicate his claims.

6. In addition, the U.S. Supreme Court affirmed this nation's continuing obligations under the Geneva Conventions in *Hamdan v. Rumsfeld* _ U.S. _, 126 S. Ct. 2749 (2006). Those same Conventions *require* the humane treatment of prisoners. Al-Ghizzawi has sat in the boredom and tedium of unconscionable solitary confinement for more than eighteen months. He is in a windowless cell and his access to fresh air and natural lighting is limited to those times when he is placed in a cage set out on gravel in the blistering heat of Cuba for approximately 2 hours during a 24 hour period (sometimes this *recreational time* is provided in the middle of the night). Al-Ghizzawi has not spoken to his wife or heard the voice of his young daughter for more than six and a half years. He can no longer read or write because of the deterioration of his eye

---

his severe medical problems to put the issues raised by Al-Ghizzawi into context.

sight. He has no one to talk to unless he crawls on the floor and shouts to another prisoner through a slot on the floor where the food is pushed in. With no one to talk to but himself he now spends his days talking to himself and washing and rewashing his clothes in his toilet bowl. There is nothing even remotely humane about this treatment.

7. If Al-Ghizzawi is to provide meaningful assistance to his counsel and, quite literally, to survive (mentally and physically) to have his petition heard by this Court, he must be moved out of Camp 6 with all dispatch. In the alternative, the Department of Defense must reform Camp 6 so as to comply with the Geneva Conventions, which do not provide for harsh maximum security prison conditions for those held as prisoners of war, let alone completely innocent civilians.

8. Counsel has received the factual return for Al-Ghizzawi. There are no docket 'clean-up' or identity issue presented in this case. Counsel will be visiting with her client during the week of July 14th and anticipates filing a Motion for expedited hearing on Al-Ghizzawi's habeas petition upon her return.

Dated this 9th day of July, 2008.

Respectfully submitted,

 /s/ H. Candace Gorman 
Atttorney for Petitioner

H. Candace Gorman (IL Bar #6184278)
Law Office of H. Candace Gorman
220 S. Halsted – Suite 200
Chicago, IL 60661
Tel: (312) 427-2313
Fax: (312) 427-9552