PREVIOUSLY CLEARED BY CSO FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) ) ) GUANTANAMO BAY ) DETAINEE LITIGATION ) ) | Misc. No. 08-442 (TFH)<br><br>Civil Action No. CV 02-0828 (CKK) |

REPLY IN SUPPORT OF EMERGENCY
MOTION FOR INJUNCTION

Petitioners Fayiz Mohammed Ahmed Al Kandari ("Al Kandari") and Fouad Mahmoud Al Rabiah ("Al Rabiah") (collectively, "Petitioners"), by counsel, submit this reply to Respondents' Opposition to Petitioners' Motion for an Emergency Injunction ("Opposition").

Rather than addressing the merits of Petitioners' Emergency Motion for Injunction ("Motion"), the Opposition rests entirely on the government's jurisdictional claims relating to Sections 3 and 7 of the Military Commissions Act of 2006 ("MCA"). Petitioners do not concede the constitutionality of MCA §3 or §7 (and they note that the Supreme Court has already expressly held in this case that MCA §7 is unconstitutional),[1] but the Court need not reach these questions to resolve Petitioners' Motion. The government's jurisdictional arguments are irrelevant. Having conceded that "the Court would have the inherent authority to take whatever corrective measures may be appropriate in this habeas case, should the court find … that Petitioners' habeas case has been prejudiced" (Opposition at 3), the government could have saved itself the trouble of writing the remainder of its twenty-four page Opposition. The basis for Petitioners' Motion is precisely that the Chief Prosecutor's violation of his ethical obligations

---

[1] *See Boumediene v. Bush*, 128 S. Ct. 2229, 2274 (2008) ("The only law we identify as unconstitutional is MCA § 7").

1

under Rule 4.2 of the Rules of Professional Conduct prejudices Petitioners' habeas cases in this Court, and is therefore an appropriate basis for relief.

1.  As Petitioners set forth in their Motion, the Chief Prosecutor of Military Commissions has asserted that he and his staff have the right to communicate directly with Petitioners concerning the allegations underlying their potential military commission charges, the same allegations underlying the government's assertion in the habeas cases before this Court that Petitioners are enemy combatants subject to detention. As noted in Petitioners' Motion, the purpose of the no-contact rule, Rule 4.2 of the Rules of Professional Conduct, is to "protect a represented party against harmful admissions and waivers of privilege that may result from interference with the client-lawyer relationship." American Bar Association, Standing Committee on Ethics and Professional Responsibility, Formal Op. 95-396 (1995). The Chief Prosecutor's communications with Petitioners, directly or through agents of the Criminal Investigation Task Force ("CITF"), prejudices their habeas corpus cases by undermining their relationship with their attorneys. *See Lee v. United States*, 235 F.2d 219, 221 n. 5 (D.C. Cir. 1956) ("[T]he relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously").

In a footnote, the government suggests in its Opposition that Petitioners did not file their Motion in a timely manner.[2] The suggestion is without merit. When Petitioners first filed their Emergency Petition for Writ of Mandamus in the Court of Military Commission Review, their habeas cases in this Court were stayed pending the government's interlocutory appeal, which was before the Supreme Court in *Boumediene v. Bush*. Moreover, Petitioners' counsel were at that time aware only that the Chief Prosecutor had asserted the right to communicate directly

---

[2]  *See* Opposition at 3 n. 2. In another footnote, the government takes the directly contrary view that Petitioners' Motion is unripe. *See id.* at 8 n. 5. It is apparently the government's view that nothing is ripe until it is moot.

2

with Petitioners, not that CITF agents would actually do so. It was not until David Cynamon's trip to Guantanamo on June 9-11, 2008, that Petitioners' counsel first became aware that the Chief Prosecutor had actually breached his ethical obligations (Declaration of David Cynamon at ¶ 2), and it was not until June 19, 2008, that Mr. Cynamon's notes from that visit were declassified. Petitioners filed their Motion only twelve days later, a portion of which time was required for counsel to confer with Petitioners' next friends in Kuwait. Under the circumstances, Petitioners' Motion was timely.

     2.     The government's principal arguments against the Motion are that this Court lacks jurisdiction under MCA §3, 10 U.S.C. § 950j(b), which provides that no court has jurisdiction "relating to the prosecution, trial, or judgment of a military commission," and MCA §7, 28 U.S.C. § 2241(e), which provides that no court has jurisdiction over habeas corpus cases or "any other action … relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of an alien held as an enemy combatant. MCA §7, of course, has already been determined to be unconstitutional. *Boumediene v. Bush*, 128 S. Ct. at 2274. At any rate, Petitioners' Motion is not an "action … relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement," nor does it relate "to the prosecution, trial, or judgment of a military commission." There is no pending military commission in this case, and Petitioners' Motion relates solely to unethical communications in violation of Rule 4.2 by government attorneys and their agents relating to *this habeas corpus case* – communications that would be equally unethical if Petitioners were not in detention.

     As the government concedes, this Court has inherent authority to take measures to protect Petitioners against prejudice in this habeas case. (Opposition at 3). The Court also has inherent authority to enforce ethical obligations of attorneys, such as the Chief Prosecutor, who are

subject to the control of the parties in this case. *See Cohen v. Hurley*, 366 U.S. 117, 123-24 (1961); *Kessenich v. Commodity Futures Trading Co.*, 684 F.2d 88, 94 n. 6 (D.C. Cir. 1982). And this Court has authority under the All Writs Act to issue all writs necessary or appropriate in aid of its habeas corpus jurisdiction, including a writ of injunction. *See* 28 U.S.C. § 1651. The statutes cited by the government are simply inapplicable to Petitioners' Motion.

3.  Accordingly, the government's contention that Petitioners' Motion is beyond the scope of their Amended Complaint and their petitions for writs of habeas corpus is also meritless.[3] This Court undeniably has jurisdiction over Petitioners' habeas corpus petitions, and Petitioners' right to be free from unwarranted interference with their attorney-client relationship with habeas counsel goes directly to this Court's core habeas function to allow the Petitioners the opportunity to challenge the basis for their detention. As this Court previously found:

> Petitioners in the instant case have clearly presented a nonfrivolous claim. They have been detained virtually incommunicado for nearly three years without being charged with any crime. To say that Petitioners' ability to investigate the circumstances surrounding their capture and detention is "seriously impaired" is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect Petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system. Finally, this Court's ability to give Petitioners' claims the "careful consideration and plenary processing" which is their due would be stymied were Petitioners to proceed unrepresented by counsel.
>
> The Supreme Court has found that Petitioners have the right to bring their claims before this Court, and this Court finds that Petitioners cannot be expected to exercise this right without the assistance of counsel.

---

[3] Petitioners have brought claims relating to the conditions of their confinement, and they intend to pursue those claims. Petitioners dispute the government's contention that this Court lacks jurisdiction over claims relating to conditions of confinement, and will respond to the government's contentions when the question is properly before the Court. But the Court need not address at this time whether Petitioners are entitled to litigate the merits of such claims. Protection of the attorney-client relationship and enforcement of ethical standards is not a claim relating to conditions of confinement, but one that goes directly to Petitioners' ability to pursue habeas relief in this Court.

*Al Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004).  Just as this Court had jurisdiction to allow Petitioners to be represented by counsel, it has jurisdiction to take steps to protect that attorney-client relationship from unethical interference by government attorneys.

    4.    The government further asserts that the proper place for Petitioners to bring the claims in their Motion would be before military commissions and the Court of Military Commission Review.  (Opposition at 7-8).[4]  It makes the bizarre argument that this Court should apply the abstention doctrine to abstain from entertaining Petitioners' Motion until available military remedies have been exhausted.  (Opposition at 8 n. 5).  There is no military commission case now pending, and the Court of Military Commission Review has already determined that it lacks jurisdiction over the claim in Petitioners' Motion.  The government's abstention argument lacks any basis other than the novel *Catch-22*.  If and when Petitioners are charged before a military commission and can raise their claims in that forum, the damage from the government's violations of Rule 4.2 will already have prejudiced Petitioners' habeas cases in this Court.

    5.    The government requests, in a footnote, that this Court grant it the opportunity to file a supplemental brief if the Court finds that it has jurisdiction over Petitioners' Motion. (Opposition at 2 n. 1).[5]  This request is inconsistent with this Court's Minute Order of July 2,

---

[4] The government argues extensively that military commissions are an adequate substitute for habeas corpus. (Opposition 9-11).  This argument is apparently related to the constitutionality of 10 U.S.C. § 950j(b) which, as shown above, is irrelevant to this Motion.  The government's argument is also patently absurd, as it has frequently and consistently asserted that it has the right to continue to detain a military commission defendant regardless of the outcome of his military commission trial.  *See, e.g., Hamdan v. Rumsfeld*, 548 U.S. 557, 787 (Kennedy, J., concurring) ("[R]egardless of the outcome of the criminal proceedings at issue, the Government claims authority to continue to detain [the petitioner] based on his status as an enemy combatant").

[5] Although the government claims that its Opposition does not address the merits of Petitioners' Motion, it briefly argues in a footnote that some courts have held that Rule 4.2 does not prohibit prosecutors from communicating with represented criminal defendants prior to indictment.  (Opposition at 3 n. 2).  Each of the cases cited by the government for this proposition involves either communications with a suspect not in custody (*see, e.g., United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996)), or the use of an undercover informant who was not acting as the alter-ego of the prosecutor (*see, e.g., United States v. Ford*, 176 F.3d 376, 382 (6th Cir. 1999)).  At any rate, as set forth in Petitioners' Motion, the cases cited by the government represent the minority view, and do not reflect the law of the D.C. Circuit, which prohibits communications by an investigator acting as the prosecutor's

2008, ordering the government to respond to the Motion. The government's request also is inconsistent with the emergency nature of the Motion. The Chief Prosecutor of Military Commissions has asserted the right to communicate directly with the Petitioners without their counsel's consent concerning matters relating to the underlying allegations at issue in the habeas corpus cases before this Court. Such communications in violation of Rule 4.2 of the Rules of Professional Conduct have already taken place and could occur again at any time. As the Motion shows, Petitioners and their attorney-client relationships are likely to suffer irreparable harm if government attorneys continue to violate their ethical obligations. (Motion at 11-15). The government should not be allowed unilaterally to modify this Court's orders, and to prolong briefing schedules at will, by picking and choosing what it responds to and when. But if the Court is inclined to grant the government's request for supplemental briefing, Petitioners request at least that this Court enter a temporary order prohibiting government attorneys and their agents from communicating with the Petitioners while this Motion is pending before this Court.

## Conclusion

For the foregoing reasons the Petitioners respectfully request this Court to grant their Motion.

---

alter-ego, even in a non-custodial setting. *See United States v. Lemonakis*, 485 F.2d 941, 955-56 (D.C. Cir. 1973).

July 10, 2008                               Respectfully submitted,

                                                        /s/
                              David J. Cynamon (D.C. Bar #182477)
                              Matthew J. MacLean (D.C. Bar #479257)
                              PILLSBURY WINTHROP
                              SHAW PITTMAN LLP
                              2300 N Street, N.W.
                              Washington, D.C. 20037
                              Telephone: (202) 663-8000
                              Facsimile:  (202) 663-8007

                              Attorneys for Plaintiffs-Petitioners

**Certificate of Service**

I certify that on July 10, 2008, I caused the foregoing to be served by hand delivery on the Court Security Office for clearance and filing.  It is my understanding that the Court Security Office will effect service on the Respondents.  Once I have been notified that the document has been cleared for public filing, I will arrange on the following attorneys via electronic filing:

Brian David Boyle
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 4633
Washington, DC 20530-0001
(202) 3305-1434
202-514-0238 (fax)
brian.d.boyle@usdoj.gov

Terry Marcus Henry
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. Box 883
20 Massachusetts Avenue, NW
Suite 7144
Washington, DC 20044
(202) 514-4107
(202) 616-8470 (fax)
terry.henry@usdoj.gov

Robert J. Katerberg
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 616-8298
(202) 616-8460 (fax)
robert.katerberg@usdoj.gov

Robert D. Okun
UNITED STATES ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Room 10-435
Washington, DC 20530

8

(202) 514-7282
(202) 514-8784 (fax)
robert.okun@usdoj.gov

Judry Laeb Subar
U.S. DEPARTMENT OF JUSTICE
P.O. Box 833
Suite 7342
Washington, DC 20044-0833
(202) 514-3969
judry.subar@usdoj.gov

Andrew I. Warden
U.S. DEPARTMENT OF JUSTICE,
CIVIL DIVISION, FEDERAL PROGRAMS
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 616-5084
(202) 616-8460 (fax)
andrew.warden@usdoj.gov

                                           /s/
                                    Matthew J. MacLean