IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | Misc. No. 08-0442 (TFH) |
| GUANTANAMO BAY DETAINEE LITIGATION | ) ) ) ) ) ) | Civil No. 05-CV-1506 (RMC) |

**STATUS REPORT FOR PETITIONER
SUFYIAN BARHOUMI a/k/a SHAFIIQ *et al.***

Pursuant to the Court's July 11, 2008 Order, Petitioner Sufyian Barhoumi a/k/a Shafiiq ("Barhoumi"), by undersigned counsel, respectfully submits the following status report.

1. **Barhoumi's Habeas Petition Should Be Reinstated And Proceed In Accordance With *Boumediene*.**

Barhoumi filed his Petition for Writ of Habeas Corpus ("Habeas Petition") on July 28, 2005, Case No. 05-CV-1506 (RMC).  On April 19, 2007, Respondents moved to dismiss the Habeas Petition in reliance on *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).  On May 15, 2007, the District Court granted Respondents' Motion to Dismiss.

Barhoumi filed a Notice of Appeal of the District Court's dismissal order on June 13, 2007.  On September 13, 2007, Barhoumi filed a Motion for Reconsideration of the dismissal order in light of the U.S. Supreme Court's grant of *certiorari* in *Boumediene.*  In an order dated October 5, 2007, the District Court denied Barhoumi's Motion for Reconsideration, but noted that it would be inclined to grant it if the D.C. Circuit remanded the case.  On October 19, 2007, Barhoumi filed a motion with the D.C. Circuit requesting that the appellate court remand the case to the District Court to reconsider its prior dismissal of the Habeas Petition.  On December

27, 2007, the D.C. Circuit granted that motion and ordered that the case be remanded to allow the District Court to consider the pending motion for reconsideration. *See* Notice Regarding Issuance of Mandate (March 7, 2008) (Doc. 61). No further action has been taken by the District Court; however, Respondents do not oppose reinstatement of Barhoumi's Habeas Petition.[1]

### 2. Barhoumi Has A Duplicative Habeas Petition Pending In The District Court, Which Counsel Will Dismiss.

Barhoumi also has a Petition for Writ of Habeas Corpus pending before Judge Walton in *Mohammon v. Bush*, Case No. 1:05-CV-02386-RBW. Barhoumi is listed on that petition as Sofiane Mohammed Berhoumi (ISN 694) and Shafiiq LNU. Barhoumi's counsel was unaware of these duplicative petitions until recently and will seek dismissal of Barhoumi's petition from the *Mohammon* action.

### 3. Barhoumi and Respondents Agree That The Protective Order Should Be Entered.

Respondents do not oppose Barhoumi's request that the November 8, 2004 Protective Order (and supplemental orders) be entered in this case. Both parties reserve the right to seek modifications to the protective order and supplemental orders as appropriate.

---

[1] On June 25, 2008, prior to this case being transferred to this Court, Barhoumi filed a motion requesting various relief, including reinstatement of his Habeas Petition. (Doc. 64). On July 9, 2008, Respondents filed their Response, which agreed with the majority of the relief sought by Barhoumi. For the Court's convenience, Respondents' position with respect to the relief sought is described herein as appropriate. Given the transfer of this case to this Court for coordination, Barhoumi does not intend to submit a reply to the motion, as the relief sought by Barhoumi that remains in dispute will likely be addressed by this Court's Orders governing these cases.

**4.    Barhoumi Has Been Charged And Faces Military Commission Proceedings.**

On May 28, 2008, over six years after he was first apprehended, Respondents charged Barhoumi under the Military Commissions Act of 2006 ("MCA") with one count of Conspiracy, 10 U.S.C. §950v(b)(28) and one count of Providing Material Support for Terrorism, 10 U.S.C. § 950v(b)(25). Barhoumi has been appointed military defense counsel to defend him in the MCA proceeding. So far as the undersigned are aware, no trial date has been set.

**5.    No Factual Return Has Been Submitted, But Barhoumi's CSRT Record Was Recently Made Available To Barhoumi's Counsel.**

No factual return has been filed. In June 2008, counsel for Respondents provided Barhoumi's counsel with a copy of the index to his CSRT Record, a copy of the unclassified CSRT Record, and notification that the classified portion of the CSRT Record has been delivered to counsel's lock box at the Secure Facility in Washington, D.C.

**6.    Barhoumi Faces Serious Medical Problems That Need To Be Addressed By The Department Of Defense.**

During an April 2008 visit to Guantanamo, Barhoumi's counsel was made aware of serious health problems that Barhoumi faces. Counsel notified the Department of Justice by letter dated June 3, 2008 that Barhoumi must receive appropriate medical care regarding these ailments. *See* Exhibit A. Other than confirmation of receipt of the letter, no response has been received from the Departments of Justice or Defense. If Respondents continue to ignore these health problems, Barhoumi's counsel may seek the Court's intervention to address these issues. We also note that some of these problems may well have resulted from torture and may have contributed to whatever statements Barhoumi may have made to the extent those statements may be used against him.

### 7. Barhoumi and Respondents Agree That This Petition Can Be Converted To A Direct Petition By Dismissal Of The Next Friend.

Barhoumi has granted his counsel authority to represent him. Respondents do not oppose Barhoumi's request that his Habeas Petition be converted to a direct petition and that his Next Friend, Jamaal Kiyemba, be dismissed from the case.

### 8. Barhoumi and Respondents Have Agreed His DTA Petition Should Be Held In Abeyance.

On October 3, 2007, Barhoumi filed a Petition for Release and Other Relief Under Detainee Treatment Act of 2005 ("DTA Petition"). In light of the Supreme Court's decision in *Boumediene*, Respondents filed a motion to hold the DTA Petition in abeyance, or in the alternative, to dismiss the DTA Petition, pending the conclusion of his habeas petition. Barhoumi has filed a response stating that he does not oppose the abeyance of the DTA Petition, but does oppose dismissal of the DTA Petition.

Dated: July 15, 2008

Respectfully submitted,

*s/ Danielle R. Voorhees*
Anne J. Castle
Scott S. Barker
William Murane
Danielle R. Voorhees
Jonathan S. Bender
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8000

**ATTORNEYS FOR PETITIONER**

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Ave., N.W., Room 7144
    Washington, DC  20530

                                      *s/ Danielle R. Voorhees*
                                      Holland & Hart LLP

3894250_2.DOC



**HOLLAND&HART**

William E. Murane

Phone (303) 295-8000
Fax (303) 295-8261
wmurane@hollandhart.com
64338.0004

June 3, 2008

**VIA OVERNIGHT DELIVERY**

Terry Henry, Esq.
Andrew Warden, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530

Re: **Sufyian Barhoumi (ISN 694)**
*Barhoumi v. Bush*, No. 05-cv-1506 (D.D.C.) (RMC) (AK)
*Barhoumi v. Gates*, No. 07-1402 (D.C. Cir.)

Dear Messrs. Henry and Warden:

We write to inform you of serious medical problems plaguing our client, Sufyian Barhoumi, and to request that the United States immediately provide Mr. Barhoumi with adequate medical attention. The information in this letter has been deemed unclassified by the Privilege Team that reviewed our notes reflecting our April 2008 meeting with Mr. Barhoumi. Additionally, Mr. Barhoumi has provided us with an updated authorization of representation, a copy of which (along with a translation and certification), is attached to this letter.

In April 2008 we had our first visit with Mr. Barhoumi. During our visit, we learned that he suffers from numerous physical ailments that are making it unnecessarily difficult for him to carry out daily activities and at least one of which is interfering with his ability to abide by the requirements and practices of his religion. Even more disturbing than learning of the ailments themselves was the realization that at least one of his injuries was caused by mistreatment while he has been imprisoned. Further, these medical problems have previously been brought to the attention of medical personnel at Guantanamo; yet Mr. Barhoumi still continues to suffer.

Specifically, Mr. Barhoumi has the following medical issues that need to be addressed immediately:

- o <u>Injured left hand</u>. Mr. Barhoumi is missing all but one finger of his left hand, which makes it incredibly difficult for him to perform daily activities. Additionally, as a Muslim, Mr. Barhoumi is prohibited from using his right hand

Holland & Hart LLP
[303] 295-8000    [303] 295-8261   www.hollandhart.com
555 17th Street Suite 3200 Denver, CO 80202   Mailing address  P.O. Box 8749 Denver, CO 80201-8749
Denver  Aspen  Boulder  Colorado Springs  Denver Tech Center  Billings  Boise  Cheyenne  Jackson Hole  Las Vegas  Reno  Salt Lake City  Santa Fe  Washington, D.C.

**EXHIBIT A**



Terry Henry and
Andrew Warden
June 3, 2008
Page 2

for personal hygiene, but his injury leaves him little choice. We understand that the medical staff at Guantanamo are aware of this problem and that a doctor previously ordered a prosthetic for Mr. Barhoumi. However, he was never given the prosthetic, ostensibly because it contained metal parts.

Please ensure that Mr. Barhoumi is fitted for and provided with an appropriate prosthetic as soon as possible. Given the fact that there is no evidence that Mr. Barhoumi poses any threat to himself or the United States merely by being provided with a needed prosthetic limb, concerns about metal within the device seem absurd. Nonetheless, if the United States refuses to allow him to use a prosthetic that contains metal, then one made from plastic or some other "suitable" material should be provided immediately.

Somewhat related to the foregoing, at one point Mr. Barhoumi was confined in Camp 4, where his fellow detainees could help him with some of the day-to-day functions that we take as routine, such as clipping his finger nails and washing his right hand. We do not know why he was moved from Camp 4 to Camp 5; but reassigning him to Camp 4 would help alleviate some of the problems caused by the injury to his left hand.

- Bone growth on left ankle. Mr. Barhoumi's left ankle contains a larger-than-ping-pong-ball-sized bone growth that is quite painful. This injury was caused during Mr. Barhoumi's interrogations approximately 4-5 years ago. At the time, Mr. Barhoumi's ankle was encircled by an unpadded heavy metal shackle that had a rough edge in side and was attached to a metal chain. The resulting injury caused the bone growth.

  At one point during his captivity, Mr. Barhoumi was provided with a special shoe that helped alleviate some of the discomfort from the bone growth. That shoe has since been taken away from him and medical staff at Guantanamo have refused to allow Mr. Barhoumi to have another special shoe.

  Mr. Barhoumi should immediately be provided with another shoe to help with the discomfort of the bone growth. Then, as soon as possible, the bone growth should be removed. There is no need for Mr. Barhoumi to continue to suffer from this interrogation-induced injury.

- Infection in right thumb. Approximately two years ago, Mr. Barhoumi developed an infection in his right thumb. A doctor at Guantanamo provided him with a thumb brace, but the infection has not resolved. Because he is unable to use his left hand, it is essential that he receive proper treatment for the infection; along with appropriate follow-up treatment.



Terry Henry and
Andrew Warden
June 3, 2008
Page 3

- o  <u>Ulcer</u>.  Mr. Barhoumi suffers from an ulcer that is severe enough to have caused blood in his stool.  He was previously prescribed medication for two weeks.  However, he was denied a diet that would help clear up the ulcer.  Mr. Barhoumi's request to see a civilian doctor about the ulcer was also denied.  Mr. Barhoumi needs access to adequate medical personnel and the medication and diet necessary for his ulcer to be properly treated.

The United States must take the steps necessary to provide Mr. Barhoumi with adequate medical care so that he is not forced to continue to live in conditions made more miserable than necessary.  Regardless of the merits or not of his detention, he deserves humane treatment.  Please contact us at your earliest convenience to discuss what action will be taken to alleviate Mr. Barhoumi's continued suffering.  We trust that it will not be necessary to bring this matter to the attention of the court.

Very truly yours,

*[signature]*

William Murane

WM/drv

3879099_2.DOC

٢٧ أبريل ٢٠٠٨

أنا برصوي سفيان أصرخ بهذا الكلام من مكتب هولاند وهارث الكلام عن قسم وليم يورين و تربلت ما كنت أن يشتكوني نسائل وقضايا متعلقة بصحتي وعلاقة مع الحكومة الجزائرية ومعلومات عائلتي

أعلم الحاكم الأمريكي

UNCLASSIFIED

23 April 2008

I, Sufyian Barhoumi, hereby permit the lawyers of the law firm of Holland and Hart, including William Murane and Triplett Mackintosh, to represent me in issues and matters related to my health, in dealing with the Algerian government, and in legal proceedings at United States courts.

      [signature]

## DECLARATION OF FUAD YAHYA

I, Fuad M. Yahya, declare as follows:

1. I am fluent in both the English and Arabic languages, and am fully qualified to translate written documents from Arabic to English.

2. I have translated a handwritten note by Sufyian Barhoumi, dated April 23, 2008, allowing the law firm of Holland and Hart to represent him, from Arabic to English, based on an electronic copy furnished to me by Holland and Hart.

3. The translation is true and accurate English translation of the Arabic text, with the following observations about the original Arabic note::

   a. The name of Mr. Sufyian Barhoumi is written "Barhoumi Sufyian," following the Algerian custom of writing the family name before the first name.

   b. The name of Mr. William Murane is misspelled.

   c. The note is written with poor syntax and no punctuations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of May, 2008.

By: _____
Fuad M. Yahya