**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Ghanim-Abdulrahman al-Harbi, et al.,**<br><br>              *Petitioners,*<br><br>      v.<br><br>**George W. Bush, et al.,**<br><br>              *Respondents.* | **Civil Action No: 05-CV-2479 (HHK)**<br>**Civil Action Misc. No. 08-442 (TFH)** |

**PETITIONERS' STATUS REPORT**

Pursuant to the Court's Order dated July 11, 2008, Petitioners, by their counsel Reed Smith, submit status reports for each of the three Petitioners in this habeas action.

### I.    The Petitioners

**A.    Ravil Mingazov, ISN 702**

Ravil Mingazov, the last remaining Russian in Guantanamo, is a former Russian ballet dancer who faces torture and worse if he is transferred to Russia, which has a history of intolerance for Muslims and, in particular, has subjected the seven other released Guantanamo detainees to harsh imprisonment, torture, and in one case death. Given the fate of the other seven Russians who were released, counsel for Mr. Mingazov does not anticipate that the Government will seek to transfer him to Russia; however, if the Government were to give notice to counsel and the Court, pursuant to the 30-Day Notice Order in this case, that it intended to transfer Mr. Mingazov to Russia, counsel would seek to enjoin such transfer.

Mr. Mingazov was born in Kamchatskaya, Russia, in December 1967. His family later moved to the city of Naberezhyne Chelny, Tatarstan, Russia, where his mother still resides. He has a wife and now an eight year old son.

As a young man, Mr. Mingazov became interested in ballet and enrolled in the Choreography Department of the Naberezhyne Chelny Art School. After graduating in 1981, Mr. Mingazov was a ballet dancer with various troupes including the Mari El Troupe. In 1987, he joined the Russian Army where he served first as a ballet dancer and then later with a border control unit. After the Soviet Union dissolved, Mr. Mingazov returned to Naberezhyne Chelny and worked in the food supply department at a nearby military installation.

During this time, Mr. Mingazov became interested in Islam. Unfortunately, Russia and the Russian military do not tolerate Muslim customs, and there is a considerable amount of hostility and prejudice against Muslims. Conflicts arose between the Muslims and the non-Muslims at the installation and Mr. Mingazov became the target of authorities when he intervened in disputes on behalf of other Muslims. From that point forward, Mr. Mingazov experienced conflicts with the army command on the base, including interrogation by Russian intelligence services, having his house was ransacked and searched, and his family subject to harassment. He ultimately left Russia with the hope of finding a place to live that would accommodate his Muslim beliefs and provide him a safe and tolerant place to relocate his family.

Leaving his family with the intent of finding a new home for them all, Mr. Mingazov first traveled to Tajikistan and from there he traveled with Uzbek refugees to Afghanistan. Once in Afghanistan, he lived in a refugee camp that was guarded by Uzbeks. Mr. Mingazov was residing in the refugee camp when the Americans invaded Afghanistan following September 11, 2001. Conditions in the camp became chaotic. Having no money, passport or other identifying papers, Mr. Mingazov joined with a group of other refugees who made their way to Pakistan.

In Pakistan, Mr. Mingazov stayed in a house with other Muslim refugees. One night, Pakistani police burst into the house and arrested Mr. Mingazov and all of the other people in the

house at that time. Mr. Mingazov was taken to a prison in Islamabad where he was detained and repeatedly interrogated for approximately one month. Mr. Mingazov was subsequently transferred to the American detention facility at Bagram, Afghanistan where he endured harsh conditions and suffered physical abuse. Ultimately, he was transferred to Guantánamo where he remains today.

Mr. Mingazov never committed a belligerent act or supported hostilities against the U.S. or its allies. He has never been a member or a supporter of Al Qaida or the Taliban. Mr. Mingazov was not captured on a battlefield. He has never engaged in armed conflict against the U.S. He was arrested at a refugee house in Pakistan- far away from any armed conflict. No charges have been brought against Mr. Mingazov. He poses no threat to the U.S. After years of unjust imprisonment, Mr. Mingazov still simply desires the one thing that led him to leave Russia in the first place: to find a new home State that will be tolerant of his religion and where he can safely live with his family and raise his son.

Counsel for Mr. Mingazov are engaged in efforts to identify countries to which prisoners such as Mr. Mingazov, who have reasonable fears of torture and persecution if returned to their home country, may be transferred. Counsel believes that a determination by the Court in Mr. Mingazov's *habeas* proceeding (or voluntarily by the government outside the *habeas* proceeding) that he is not an "enemy combatant" would significantly aid the efforts to locate a suitable third country home for Mr. Mingazov and his family. Counsel also anticipates that once Mr. Mingazov is no longer deemed to be an enemy combatant, the Government will be able to exercise its considerable diplomatic influence to assist in finding a suitable third-country home for him and his family.

DCLIB-542406.1-999933-79566

### B.        Zainulabidin Merozhev, ISN 1095

Zainulabidin Merozhev is a Tajik whose arrest and detention are the result of mistaken identity.  Mr. Merozhev was arrested by American forces in Mazar e Sharif on July 3, 2003.  An unidentified source allegedly identified him to the Americans as "Jumma Jan" - supposedly a well-known Taliban military commander.  Since that time Mr. Merozhev has been held by the U.S. government – and designated as an "enemy combatant" - despite his repeated protestations that he is not Jumma Jan.

Mr. Merozhev was born in 1978 in a small village in Tajikistan.  In 1992, at age 13, with the country ravaged by civil war, he fled with his family to Afghanistan.  Tens of thousands of other Tajik refugees fled to Afghanistan and neighboring countries around the same time.  Mr. Merozhev lived with his family in a refugee camp near Kunduz in Northern Afghanistan.

At the age of 17, Mr. Merozhev traveled to Karachi, Pakistan for school where he studied the Koran and other subjects.  While in Pakistan, Mr. Merozhev contracted tuberculosis.  He returned to Afghanistan where he hoped to rejoin his family and obtain treatment for his medical condition.  When he arrived back in Kunduz, he learned that his family had been resettled in Tajikistan.  Mr. Merozhev's health was too fragile to attempt a return to Tajikistan.  Having no money or other source of support, he found shelter and employment in Kunduz and Mazar e Sharif.  In July 2003, Mr. Merozhev was wrongly identified as Jumma Jan by an American military unit.

After his arrest, Mr. Merozhev was kept in an American holding facility for about 24 hours.  He was then taken by plane to Kabul and transported to the Bagram prison.  He was detained in Bagram under harsh conditions for approximately five months and was then flown to

Guantanamo Bay, Cuba where he remains today. The misidentification of Mr. Merozhev as Jumma Juan is the central element upon which the Government justifies its apprehension and continuing detention of him.

Mr. Merozhev was never engaged in armed conflict against the U.S., but was rather misidentified as someone he is not. Mr. Merozhev is neither a member nor a supporter of Al Qaida or the Taliban and has never advocated violence against the U.S. or its coalition partners.

Mr. Merozhev's family remains in Tajikistan today. Upon release, he would return to Tajikistan to be reunited with his family or live in Afghanistan - his adopted home and country of refuge.

**C.    Ghanim Abdulrahman al-Harbi, ISN 516**

Ghanim Abdulrahman al-Harbi is from Saudi Arabia. He was detained in United States custody from 2002 until he was finally released to the government of Saudi Arabia in July of 2007 after nearly six years of unlawful detention in Guantánamo Bay, Cuba. Although he was ultimately released, Mr. al-Harbi's designation as an "enemy combatant" has never been changed. Consequently, he continues to suffer harm that this *habeas corpus* may address.

Mr. al-Harbi is not a member or supporter of Al Qaeda or the Taliban. There is no evidence that Mr. al-Harbi participated in or supported any hostile actions against the United States or its allies. Mr. al-Harbi was not captured on the battlefield. Rather, he was "sold" to U.S. forces for a bounty despite the fact that he never engaged in any hostilities towards the United States.

## II.    Procedural Posture

**A.    The Petition**

This petition for a writ of *habeas corpus* was filed on December 28, 2005 on behalf of Petitioners Ghanim-Abdulrahman al-Harbi, Ravil Mingazov, and Zainulabidin Merozhev. A

duplicate *habeas corpus* petition has been filed on behalf Mr. Mingazov although it was filed under a different variation of his name. See Gamil v. Bush, No. 05-CV-2010 (JR). On January 11, 2007, that case was consolidated with the instant case and the court ordered that all papers related to that action be filed in the lead case of 05-CV-2479 (HHK). Petitions do not oppose the dismissal of No. 05-CV-2010 (JR) at this time.

### B. The Protective Order

On July 5, 2006, the Amended Protective Order and Procedures for Counsel Access issued November 8, 2006, 344 F. Supp. 2d 174 (D.D.C. 2004) was entered in this case.

### C. The 30-Day Notice Order

On August 18, 2006, the Court ordered that Respondents shall provide counsel for Petitioners and the Court with 30-days advance notice of any intended removal of Petitioners from Guantanamo Bay, Cuba. That order remains in place.

### D. Motion to Lift Stay

The Court entered a stay in this case on March 20. 2008. Following the decision in Boumediene, Petitioners moved to lift the stay and for a scheduling conference. Petitioners' motion to lift the stay should be granted. In light of the Court's scheduling order of July 11, 2008, the request for a scheduling conference is moot.

### E. Factual Returns

Petitioners filed a motion seeking factual returns. That motion was denied by the Court due to a presumed lack of jurisdiction. Petitioners appealed the denial of their request for factual returns. Following the Boumediene decision, both the Petitioners and the Government have filed Motions to govern with the D.C. Circuit in which they agree that the Order denying factual returns should be vacated and the issue remanded to this Court.

DCLIB-542406.1-999933-79566

**F.     Discovery**

Although the Government produced a so-called "counsel version" of classified information in Mr. Mingazov and Mr. Merozhev's Detainee Treatment Act ("DTA") cases, key information and documents have been withheld. Counsel for Petitioners anticipates requesting further disclosures from the Government and more formal discovery if necessary. Once the requested documents and information are received, we expect that Mr. Mingazov's and Mr. Merozhev's cases can be set for a hearing.

**G.     No Military Commissions Charges**

The Petitioners in this case have not been charged with crimes pursuant to the Military Commissions Act ("Act").

Respectfully submitted,

Dated: July 18, 2008

/s/ Douglas K. Spaulding
Douglas K. Spaulding
Gary S. Thompson
Allison M. Lefrak
Rick W. Roberts

REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, DC 20005
Phone: (202) 414-9220

Bernard J. Casey, D.C. Bar No. 112219
Casey ADR Services
3018 NE 32nd Place
Portland, OR 97212
Phone: (415) 515-0855

- and –

CENTER FOR CONSTITUTIONAL RIGHTS
Gitanjali S. Gutierrez (NY1234)
666 Broadway, 7th Floor

- 8 -

New York, New York 10012
Tel: (212) 614-6439
*Counsel for Petitioners*

DCLIB-542406.1-999933-79566

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served by Electronic Case Filing this 18th day of July 2008.

        /s/ Douglas K. Spaulding
        Douglas K. Spaulding

DCLIB-542406.1-999933-79566