*CLEARED FOR PUBLIC FILING BY THE CSO*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY**<br>**DETAINEE LITIGATION** | **Misc. No. 08-442 (TFH)**<br><br>**Civil Action No. 05-1490 (PLF)** |

**STATUS REPORT OF PETITIONER ABDUL HADI OMER MAHMOUD FARAJ**
**PURSUANT TO JUDGE HOGAN'S JULY 11, 2008 SCHEDULING ORDER**

Petitioner, ABDUL HADI OMER MAHMOUD FARAJ ("Petitioner"), currently detained in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"), hereby submits this Status Report pursuant to the Scheduling Order entered by Judge Thomas F. Hogan on July 11, 2008.

**I.  Background.**

**A.  Personal History and Circumstances of Detention.**

Petitioner is a citizen of Syria, where he was born in 1981. Before the age of 19, he had never traveled more than a few miles from home. In the fall of 2000, Petitioner traveled to Iran in an attempt to find a better job and make more money. Petitioner worked in a butcher shop in Tehran for about two months, but didn't like Iran, in part because there were hardly any Arabs. Petitioner subsequently traveled to Kabul, Afghanistan, where he looked for work in a butcher shop but ultimately simply worked in a small convenience store for several months. Petitioner stayed in Kabul for approximately eleven months.

While in Kabul, Petitioner resided in a house with several other Syrian immigrants. Petitioner engaged in some limited Islamic religious studies, but never received any military or terrorist training. While an observant Muslim, Petitioner has never considered himself to be an extremist, and he has consistently affirmed that he has never been a member of or otherwise affiliated with the Taliban or Al-Qaeda.

When the war in Afghanistan broke out in October 2001, Petitioner feared for his life, since he was told that Northern Alliance soldiers were killing all of the Arabs they encountered. Petitioner thus struck out for the Pakistan border with some of the other Syrians he was staying with in Kabul. Petitioner was arrested, unarmed, in January 2002 by Pakistani troops while attempting to cross the border. Petitioner was subsequently turned over to U.S. troops, held in Kandahar for several months, and then transferred to Guantánamo in May, 2002. Although it is uncontested that Petitioner never committed or planned a hostile act against the United States or any of its coalition allies, never possessed a weapon of any sort, and had no connection whatsoever with the tragic events of September 11, 2001, Petitioner has been imprisoned at Guantánamo ever since, for more than six years.

    **B.**    **Petitioner's Combatant Status Review Tribunal.**

On October 29, 2004, Petitioner appeared before a Combatant Status Review Tribunal ("CSRT") at Guantánamo. Petitioner, unrepresented by counsel at the time, elected to participate in the CSRT. Petitioner gave sworn testimony before the CSRT explaining the circumstances of his travel and arrest, stating that he had never undergone terrorist or military training and denying that he had ever been affiliated with Al-Qaeda or the Taliban. No other witnesses were called. Despite Petitioner's testimony, the CSRT, on the basis of classified information that was not disclosed to

Petitioner, determined that Petitioner was an "enemy combatant." This determination was confirmed by CSRT Director Rear Admiral J.M. McGarrah on January 16, 2005.

    **C.**    **Administrative Review Board Determinations.**

Since being classified by the CSRT as an "enemy combatant," Petitioner's detainee status has been reviewed by an Administrative Review Board ("ARB") on three occasions, in October 2005, June 2006, and June 2007. Petitioner participated in interviews in connection with the 2005 and 2006 ARBs, and, as he did in his CSRT proceeding, Petitioner denied any affiliation with Al-Qaeda or the Taliban and explained that he had never received military or terrorist training. Nonetheless, relying primarily upon the same information that was presented to the CSRT, and without identifying any of the sources of the alleged evidence against him, the ARB on each occasion determined that Petitioner was not eligible for release or transfer. The 2008 ARB process is currently underway, and, as far as counsel are aware, no decision has yet been made concerning Petitioner's continued detention.

**II.**    <u>**History of Petitioner's *Habeas Corpus* Case**</u>**.**

    **A. Filing of the *Habeas Corpus* Petition.** Petitioner filed *pro se* an initial complaint against Respondents seeking release from custody on July 28, 2005. Present counsel entered an appearance on August 23, 2005, and filed on Petitioner's behalf a First Amended Petition for *Habeas Corpus* on August 25, 2005.

    **B. Stay of *Habeas* Proceedings.** Respondents moved the Court to stay the case on August 10, 2005, and filed an amended motion to stay the case on September 6, 2005. The Court granted the amended motion in part and stayed the case on September 26, 2005. The stay has remained in effect since that date.

**C. Entry of Amended Protective Order.** Pursuant to the Court's order of September 26, 2005, the Amended Protective Order has been entered and is in effect in this action.

**D. Filing of Factual Return.** Respondents filed a factual return, including an unclassified, redacted version of Petitioner's CSRT proceedings, on December 23, 2005. Petitioner's counsel was also provided access to a classified version of the return.

**E. Entry of 30-Day Advance Notice Order.** Petitioner moved for an order requiring Respondents to provide 30-days advance notice prior to transferring Petitioner out of Guantánamo on July 11, 2006. The Court granted the motion and entered an order requiring such 30-days advance notice on July 19, 2006. Respondents appealed from the Court's July 19, 2006 Order (Court of Appeals Docket No. 06-5320). This appeal was consolidated by the Court of Appeals in the consolidated appeal captioned *Al-Ginco v. Bush*, Docket No. 06-5191, on March 6, 2007. That appeal was subsequently dismissed on June 7, 2007.

**F. Absence of Military Commission Charges.** Petitioner has not been charged with a crime under the Military Commissions Act of 2006, and there has been no indication that he ever will be so charged.

### III.   Pending Motions.

The only pending motion in the present case is Petitioner's Motion to Lift Stay and Schedule an Immediate Status Conference, filed June 16, 2008. Respondents filed a response to that motion on June 23, 2008, indicating that they did not oppose lifting the stay but did oppose the request for an immediate status conference. Petitioner filed a reply in support of his motion on July 2, 2008. The motion is now ripe for decision. It is possible that a motion for consolidation with the cases of other, similarly situated Guantánamo prisoners may be filed in the relatively near future.

**IV.**     **Petitioner's Fear of Return To Syria.**

In conversations with counsel over numerous visits, Petitioner has repeatedly expressed the fear that he would be subject to torture or possibly even killed if he were returned to his home country of Syria. Petitioner's fears are well-grounded. As documented in the most recent, March 2008 U.S. Department of State Report on Human Rights Practices in Syria, Syria's human rights record is "poor" and that the Syrian government "continue[s] to commit serious abuses." These include the use of torture in detention, which at times resulted in death; prolonged detention without trial; poor prison conditions; arbitrary arrest and detention; fundamentally unfair trials in security courts; and infringement on privacy rights. Moreover, Amnesty International has reported that Syrians have often been arbitrarily arrested based on suspected personal or family links with the Muslim Brotherhood, and several men so arrested have died in custody.

There is a substantial risk that Petitioner will be a victim of these human rights abuses if returned to Syria. Simply by virtue of his incarceration at Guantánamo, Petitioner may be regarded as an Islamic fundamentalist by the Syrian Government. Moreover, Petitioner comes from a city, Hama, which has been subject to brutal repression because of the alleged association of some of its citizens with the Muslim Brotherhood.

Counsel for Petitioner have raised these concerns in submissions to the ARB. In addition, counsel explained Petitioner's concerns in a November 27, 2007 letter to Hon. Clint Williamson, the U.S. State Department Ambassador-at-Large for War Crimes Issues. Because Petitioner would be at substantial risk if he were returned home, counsel urged that, while they firmly believe that Petitioner has been wrongly held and must be released, the "the United States must be careful not just to send him back to country such as Syria where he may be arrested, tortured and even killed."

## V. Health Concerns.

In his first visit with counsel in the fall of 2005, Petitioner expressed concerns that he is not receiving adequate medical care while imprisoned at Guantánamo. Such concerns have been expressed on each successive visit. Since arriving at Guantánamo, Petitioner has been suffering from high blood pressure, high heart rate, chest pain, severe testicular pain and back pain. He has also been suffering from periodic respiratory and intestinal problems and recently experienced a series of fainting spells. Despite his requests for treatment for these ailments, Petitioner has complained that he has received little in the way of effective treatment.

Counsel for Petitioner have raised these health concerns directly with prison authorities, for example, by letter dated June 15, 2006, but have received no response. More recently, on May 28, 2008, counsel, on the basis of a Release authorizing them to seek Petitioner's medical records, submitted a request under the Freedom of Information Act to the Department of Defense for access to such records. On June 18, 2008, the Defense Department responded, stating that it was "unable to make a release determination within the twenty-day statutory time period . . . [and] due to the complexity of the request this Office is unable to estimate when the processing of this request will be completed." It is conceivable, especially if Petitioner's health condition should worsen, that medical treatment and access to medical records may become issues in this litigation.

## VI. Conclusion.

As noted above, it is uncontested that Petitioner has never actively engaged in military or terrorist activities directed at the United States. His classification as an "enemy combatant" is thus wrong as a matter of law, and his continued detention exceeds Respondents' legal authority.

Moreover, the unclassified summaries of the alleged evidence against Petitioner in his CSRT and ARB proceedings indicate that the allegations against him are largely based on the statements

and reports of unidentified individuals and organizations and classified information that Petitioner has never had an opportunity to rebut. Petitioner believes that this information, the reliability of which is subject to doubt, is insufficient to justify his continued incarceration. Petitioner seeks to have the earliest opportunity possible to meaningfully test the credibility of the facts upon which Respondents rely to continue to imprison him, without charge, at Guantánamo.

          Respectfully submitted,

By /s/ Robert C. Weaver, Jr.
   Robert C. Weaver, Jr. OSB#80135
   Samuel C. Kauffman, OSB#94352
   John C. Rothermich, OSB#07168
   GARVEY SCHUBERT BARER
   Eleventh Floor
   121 SW Morrison Street
   Portland, OR 97204
   Tel.: (503) 228-3939
   Fax: (503) 226-0259

By /s/ Eldon V.C. Greenberg
   Eldon V.C. Greenberg
   D.C. Bar #159558
   GARVEY SCHUBERT BARER
   Fifth Floor
   1000 Potomac Street, N.W.
   Washington, DC
   Tel.: (202) 965-7880
   Fax: (202) 965-1729

Attorneys for Petitioner

Dated:    July 18, 2008