*CLEARED FOR PUBLIC FILING BY THE CSO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY<br>DETAINEE LITIGATION** | **Misc. No. 08-442 (TFH)**<br><br>**Civil Action No. 05-247 (HHK)** |

**PETITIONER'S STATUS REPORT PURSUANT TO
JUDGE HOGAN'S JULY 11, 2008 SCHEDULING ORDER**

Petitioner, MAHMOOD SALIM AL MOHAMMED ("Petitioner"), who is currently detained in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"), hereby submits this Status Report pursuant to the Scheduling Order entered by Judge Thomas F. Hogan on July 11, 2008.

**I.      Background.**

Petitioner is a citizen of Syria.  He is 34-years-old.   He has a wife and a nine year-old daughter that he has neither seen nor spoken to since his arrest in 2001.  The sparse and redacted unclassified factual return filed by Respondents alleges, based on classified evidence, that in the fall of 2001, Petitioner traveled from his then-residence in Kuwait to Afghanistan, that he entered Afghanistan on October 24, 2001, and that he was arrested at a clinic in Kabul, Afghanistan where he was being treated for an illness.  Petitioner was reportedly detained by an Afghani militia and turned over to the United States military.  Petitioner was subsequently transferred to Guantánamo, where he has now been incarcerated for over six years.

Although Respondent alleges that Petitioner had the "intent" to attend "training" at a "training camp" and that he "stayed at a Taliban center," petitioner is not accused of committing or attempting to commit any hostile act against the United States or its allies.

## II.     History Of Petitioner's *Habeas Corpus* Case.

**A. Filing of the *Habeas Corpus* Petition.** Petitioner, through his next friend and fellow petitioner Abdullah Salim Al-Mohammed and with assistance of present counsel, filed a Petition for *Habeas Corpus* challenging his indefinite detention in Guantánamo without charge on February 2, 2005.

**B. Stay of *Habeas* Proceedings.** Respondents moved the Court to stay the case on March 11, 2005. The Court granted the motion and stayed the case on April 30, 2005, but ordered Respondents to produce a factual return. On March 13, 2006, the Court again entered an order staying the case in light of the passage of the Detainee Treatment Act of 2005. The stay has remained in effect since that date.

**C. Filing of Factual Return.** Respondents filed a factual return, including an unclassified, redacted version of Petitioner's CSRT proceedings, on June 14, 2005. Petitioner's counsel was also provided access to a classified version of the return.

**D. Entry of 30-Day Advance Notice Order.** Petitioner moved for an order requiring Respondents to provide 30-days advance notice prior to transferring Petitioner out of Guantánamo on March 16, 2005. The Court granted the motion and entered an order requiring such 30-days advance notice on March 30, 2005. Respondents appealed from the Court's March 30, 2005 Order (Court of Appeals Docket No. 05-5232). This appeal was consolidated by the Court of Appeals in the consolidated appeal captioned *Abdah v. Bush*, Docket No. 05-5224, which remains pending.

      **E. Absence of Military Commission Charges.** Petitioner has not been charged with a crime under the Military Commissions Act of 2006, and there has been no indication that he ever will be so charged.

### III. Other Proceedings

      **A. Petitioner's Combatant Status Review Tribunal.**

On October 23, 2004, a Combatant Status Review Tribunal ("CSRT") at Guantánamo concluded that Petitioner was properly designated an "enemy combatant." This determination was confirmed by CSRT Director Rear Admiral J.M. McGarrah on December 9, 2004. Petitioner affirmatively refused to participate in the CSRT proceedings. The unclassified summary of the CSRT evidence alleged that Petitioner, a citizen of Syria, traveled from Kuwait to Afghanistan with the intent to attend a training camp, but the camp had closed by the time Petitioner entered Afghanistan on October 24, 2001. The unclassified summary further alleges that Petitioner stayed at a Taliban center in Ferah and was captured at a clinic in Kabul where he was being treated for an illness. The sources of this alleged evidence as well as additional evidence allegedly supporting Petitioner's enemy combatant designation remains classified.

      **B. Administrative Review Board Determinations.**

Since being classified by the CSRT as an "enemy combatant," Petitioner's detainee status has been reviewed by an Administrative Review Board ("ARB") on three occasions, in 2005, 2006, and June 2007. The ARB on each occasion determined that Petitioner was not eligible for release. The 2008 ARB process is currently underway, and no decision has yet been made concerning Petitioner's continued detention.

    //

    //

**IV.     Pending Motions.**

The only pending motion in the present case is Petitioner's Motion to Lift Stay and Schedule an Immediate Status Conference, filed with the Court Security Officer on June 17, 2008.  Respondents filed a response to that motion on June 23, 2008, indicating that they did not oppose lifting the stay but did oppose the request for an immediate status conference.  Petitioner filed a reply in support of his motion on July 7, 2008.  The motion is now ripe for decision.  It is possible that a motion for consolidation with the cases of other, similarly situated Guantánamo prisoners may be filed in the relatively near future.

**V.      Likelihood Of Harm To Petitioner If Returned To Syria.**

Given the rampant human rights violations of the Syrian Government directed toward suspected Islamic militants, there is a substantial possibility that Petitioner could face torture or even be killed if returned to his home country.  As documented in the most recent, March 2008 U.S. Department of State Report on Human Rights Practices in Syria, Syria's human rights record is "poor" and the Syrian government "continue[s] to commit serious abuses."  These include the use of torture in detention, which at times resulted in death; prolonged detention without trial; poor prison conditions; arbitrary arrest and detention; fundamentally unfair trials in security courts; and infringement on privacy rights.  Moreover, Amnesty International has reported that Syrians have often been arbitrarily arrested based on suspected personal or family links with the Muslim Brotherhood, and several men so arrested have died in custody.

There is a substantial risk that Petitioner will be a victim of these human rights abuses if returned to Syria.  Simply by virtue of his incarceration at Guantánamo, Petitioner may be regarded as an Islamic fundamentalist by the Syrian Government.

//

**VI.     Conclusion.**

As noted above, Respondent has not alleged that Petitioner committed or attempted to commit any hostile act against the United States or its allies. His classification as an "enemy combatant" based upon his alleged "intent to attend training," even if true, is thus wrong as a matter of law, and his continued detention exceeds Respondents' legal authority. Moreover, the unclassified summary of the alleged evidence against Petitioner in his CSRT indicates that the allegations against him are largely based on classified evidence that Petitioner has never had an opportunity to rebut. Petitioner believes that this information, whose reliability is subject to doubt, is insufficient to justify his continued incarceration. Petitioner seeks to have the earliest opportunity possible to meaningfully test the credibility of the facts upon which Respondents rely to continue to imprison him, without charge, at Guantánamo.

Respectfully submitted,

By s/ Samuel C. Kauffman
   Robert C. Weaver, Jr. OSB#80135
   Samuel C. Kauffman, OSB#94352
   John C. Rothermich, OSB#07168
   GARVEY SCHUBERT BARER
   Eleventh Floor
   121 SW Morrison Street
   Portland, OR 97204
   Tel.: (503) 228-3939
   Fax: (503) 226-0259

Attorneys for Petitioner

Dated:    July 18, 2008