## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------

IN RE:                                                    Misc. No. 08-442 (TFH)
GUANTANAMO BAY
DETAINEE LITIGATION                                       Declaration Pursuant to
                                                         28 U.S.C. §1746

-------------------------------------------------------
-------------------------------------------------------

RAHIM ALI-NASHIR, *et. al.*

                            Petitioners,                 08 cv 1085 (TFH)

            v.
ROBERT M. GATES,
                            Respondent.

-------------------------------------------------------

### DECLARATION OF MATERIAL FACTS

SCOTT L. FENSTERMAKER, ESQ., an attorney at law practicing before this Court

pursuant to Local Civil Rule 83.2(g), being duly sworn, declares and says, pursuant to 28 U.S.C.

§1746:

1.  I am retained counsel for Petitioner Rahim ali-Nashir, a detainee currently being

held by Respondent at Guantánamo Bay, Cuba.[1]

2.  I file this declaration, pursuant to 28 U.S.C. §1746, in support of Petitioner's

response to Respondent's application for a protective order.

3.  Petitioner retained the undersigned as his legal representative in two letters, dated

August 22, 2007 and October 1, 2007.[2]  Copies of Petitioner's August 22, 2007 and October 1,

2007 letters are available for the Court's *in camera* inspection, should they assist this Court's

determination of Respondent's application for a protective order.

-------------------------------------

[1] Petitioner herein has a duplicate petition for a writ of *habeas corpus*, 08 cv 1207 (TFH).
Counsel for Mr. ali-Nashir in that matter is the Federal Defender for the District of Nevada. The
Federal Defender for the District of Nevada does not join in this declaration or response.
[2] I received Petitioner's August 22, 2007 and October 1, 2007 letters on January 30, 2008 and in
November, 2007 respectively.

4. In June of 2007, the United States Department of Justice (the "Justice Department") provided the United States District Court for the Southern District of New York (the "Southern District") with the mailing address to detainees held at Guantánamo Bay, Cuba. *See* Page 4 of Exhibit A hereto. In the Justice Department's letter, it assured the Southern District that Petitioner herein (as well as other detainees at Guantánamo Bay) had "access to mail and are able to contact friends, relatives or attorneys." *See* Page 3 of Exhibit A. Similarly, during oral argument before the court in the Southern District, the Justice Department assured the Southern District that detainees at Guantánamo Bay could contact counsel through the mails. *See* Exhibit B, Page 25 of oral argument transcript, lines 2 through 5.

5. Nowhere did the Justice Department inform the Southern District or the undersigned that mail sent by attorneys to this address or mail sent from detainees to attorneys would not be treated as privileged or that any correspondence utilizing this address required the waiver of the available privilege. I sent mail marked "privileged and confidential/attorney-client privilege" to this address for approximately one year, starting on June 27, 2007, without incident.

6. By letter dated August 10, 2007, I was detailed to the Pool of Qualified Civilian Defense Counsel (the "Pool") by Colonel Dwight H. Sullivan, who was then the Chief Defense Counsel for the Office of Military Commissions. Civilian attorneys wishing to represent detainees before the military commissions must be a member of the Pool to do so. I had previously been a member of a predecessor Pool, which was disbanded upon the enactment of the Military Commissions Act of 2006, since the spring of 2005.

7. I have received correspondence from a number of former CIA prisoners currently being held at Guantánamo Bay, including Petitioner, Ahmed Khalfan Ghailani, Ammar al-Baluchi (aka, Ali Abdul Aziz Ali), Mohd Narir bin Lep, Abu al-Farraj al-Lybea (aka Abu Faraj al-Libi), Abu Zubaydah, Mohd Farik bin Amin, and Mustafa bin-Ahmed Hawsawi. Most of

2

these detainees contacted me to inquire about my services or to otherwise seek assistance in obtaining legal counsel unaffiliated with the government. Petitioner and Mr. Ghailani, on the other hand, clearly asked me to represent their legal interests. I wrote back to a number of these same detainees. In so doing, I have established a dialogue of sorts with Petitioner, Messrs. Ghailani, al-Baluchi and al-Libi.[3]

8. By letters dated February 2, 2008 and July 1, 2008, I notified various officials in the United States government that I represented Petitioner "in all matters relating to his detention in your custody." The officials I notified included Colonel Steven David, the current Chief Defense Counsel for the Office of Military Commissions, Brigadier General Thomas W. Hartmann, the legal advisor to the Office of Military Commissions, and Susan J. Crawford, the convening authority to the military commissions. A copy of my February 2, 2008 and July 1, 2008 letters are attached hereto as Exhibit C.

9. During the late fall or early winter of 2007-2008, I contacted military personnel at Southcom, the Department of Defense's unified command with responsibility over Guantánamo Bay.[4] Shortly after contacting Southcom, I received a telephone call from Robert M. Loeb, an attorney at the Justice Department who apparently is involved in representing Respondent in some of the Guantánamo Bay-related litigation. In a telephone conversation occurring on January 11, 2008, two days after the Federal Defender filed her DTA petition on Petitioner's behalf, Mr. Loeb informed me that I would not be permitted to travel to Guantánamo Bay to meet with my clients and the other detainees unless I filed a DTA petition and had obtained the

---

[3] As described in greater detail below, my dialogue with these detainees may have ended as a result of Respondent's announcement that he and his subordinates will no longer deliver my attorney-client communications to Guantánamo Bay detainees.

[4] My call to Southcom was precipitated by an intermediary who contacted a faculty member at the United States Military Academy at West Point. The West Point faculty member suggested to the intermediary that I contact the Judge Advocate General's office at Southcom. I am unaware of the identity of the West Point faculty member who provided this information.

appropriate security clearance.  Mr. Loeb also informed me that I would have to present sufficient indicia of my authority to represent the detainees.  I asked Mr. Loeb what indicia would be sufficient and he declined to elaborate.  Mr. Loeb did not mention the Federal Defender's DTA petition during this conversation.

10.   During the same period of time that I was contacting Southcom, I also contacted the Office of the Chief Defense Counsel for the Office of Military Commissions to determine if that office might be able to assist in my visiting the detainees who had contacted me, each of whom the government had announced its intention to charge with war crimes before the military commissions.  Upon contacting the Office of the Chief Defense Counsel, I spoke with Michael Berrigan, who is the Deputy Chief Defense Counsel and, as such, is Colonel David's immediate subordinate.

11.   Mr. Berrigan informed me that his office could not assist me in obtaining permission to travel to Guantánamo Bay to speak to the detainees.  During this conversation, I asked Mr. Berrigan for a list of all of the civilian counsel who were members of the Pool.  Mr. Berrigan informed me that he could not provide me this information because of "Privacy Act considerations."   I then asked Mr. Berrigan if he could tell me how many attorneys were members of the Pool.  Mr. Berrigan informed me that he could not.  When I asked Mr. Berrigan why he could not disclose the number of attorneys in the Pool, he informed me that such information "would give [me] an unfair advantage in representing the detainees."  I asked Mr. Berrigan how knowing the number of attorneys in the Pool would give me an unfair advantage in representing the detainees.  In response, Mr. Berrigan hung up the phone.  I immediately called Mr. Berrigan back but he did not answer.  I left a message on his voicemail. Mr. Berrigan has never returned my telephone call.

12. In a conversation occurring in late December 2007 or early January 2008, I learned from an attorney representing several detainees held at Guantánamo Bay that the Federal Defender was apparently representing Petitioner.   In January 2008, I telephoned the Federal Defender, through her attorney, Paul G. Turner, Esq., to apprise her of the litigation that I had filed on Petitioner's behalf in the Southern District, its dismissal and the pending appeal before the Second Circuit. *See* Fenstermaker, *et. al.* v. Bush, *et. al.*, 07 CV 2980.  During this telephone conversation, Mr. Turner disclosed no information regarding the status of the underlying matter and claimed that he represented Petitioner.[5]  At the time I first contacted Mr. Turner, with the exception of Petitioner's October 1, 2007 letter, I had received no other correspondence from Petitioner. Because Petitioner's October 1, 2007 letter, when read alone, did not clearly designate me as his legal representative, I requested instruction from Mr. Turner as to how he would like me to proceed with respect to the matter before the Southern District, which was being appealed to the Second Circuit.  Mr. Turner asked that I discontinue Petitioner's involvement in the matter pending before the Second Circuit.

13. On or about January 9, 2008, the Federal Defender for the District of Nevada (the "Federal Defender") filed an action, pursuant to the Detainee Treatment Act of 2005 (the "DTA"), in the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit") on Petitioner's behalf.

14. On January 30, 2008, before successfully completing my efforts to remove Petitioner as a party in the Second Circuit matter, I received Petitioner's August 22, 2007 letter to me.  Petitioner's August 22, 2008 letter was postmarked January 28, 2008 by the United States

---

[5] I did not learn until later that Mr. Turner's claim, at this stage, that he represented Petitioner was, at best, misleading, and arguably false.

Postal Service for delivery to me.    In his letter, which included substantial redactions,[6] Petitioner clearly asked that I serve as his legal representative.  After having Petitioner's August 22, 2007 letter translated into English, I immediately contacted Mr. Turner who, in a very heated conversation, ordered me to cease all contact with Petitioner and instructed that I undertake no action of any kind on Petitioner's behalf.  During this conversation, Mr. Turner declined to explain how his purported apparent court appointment superseded Petitioner's written instructions, which clearly predated Mr. Turner's court appointment.[7]

15. On February 1, 2008, I e-mailed Mr. Turner regarding our conversation.  In this e-mail, I solicited Mr. Turner to join me as Petitioner's co-counsel.  A copy of Petitioner's two letters, dated August 22, 2007 and October 1, 2007, were attached to the e-mail in pdf form.

16. On or about April 6, 2008, I sent a letter to Mr. Turner and again attached copies of Petitioner's August 22, 2007 and October 1, 2007 letters to me.  My April 6, 2008 letter to Mr. Turner represented the second time I provided Mr. Turner with copies of Petitioner's August 22, 2007 and October 1, 2007 letters to me.  Mr. Turner again refused to acknowledge Petitioner's request that I serve as his legal representative.

17. On or about April 7, 2008, I sent two letters to Petitioner.  Each of these two letters, and their English equivalents, are available for the Court's *in camera* review.  In these letters, among other things, I informed Petitioner of Mr. Turner's activities as Petitioner's

---

[6] Because of the identity of Petitioner, and the nature of the redactions in his August 22, 2007 letter, it is almost certain that the Central Intelligence Agency was heavily involved in both the editing of Petitioner's letter, and the timing of the release of this letter, occurring as it did approximately two weeks after the Federal Defender filed her DTA petition on Petitioner's behalf.

[7] Again, at this time, I was unaware that the Federal Defender was not court-appointed.  The Federal Defender was, at that stage, seeking court appointment as Petitioner's counsel. Petitioner was merely the Federal Defender's "prospective" client.  I have reason to believe that the Federal Defender never alerted the DC Circuit that Petitioner had apparently sought other counsel, only to be frustrated by Respondent's dilatory and arguably obstructionist mail delivery practices.

lawyer. I further explained Petitioner's right to counsel of his choice and sought his direction with respect to his desires for Mr. Turner's involvement in Petitioner's defense. I do not know whether Petitioner has ever received these two letters. I have not received a response from him to these two letters. I sent copies of these letters to Mr. Turner.

18. On or about April 21, 2008, I wrote Mr. Turner and informed him of my having filed a notice of appearance in the DTA petition matter pending before the DC Circuit.[8] I provided Mr. Turner with copies of my cover letter to that court and the notice of appearance.

19. Shortly after I filed my notice of appearance in the DC Circuit matter, I again sought to enlist Mr. Turner and the Federal Defender to join me as counsel on behalf of Petitioner. They refused. I thereafter filed a motion to substitute myself as counsel of record for Petitioner.

20. In response to that motion, Mr. Turner disclosed for the first time that he and his colleagues visited Petitioner at Guantánamo Bay in May of 2008.

21. Ahmed Khalfan Ghailani is another detainee held at Guantánamo Bay that Respondent claims was detained in the highly classified CIA program of off-shore detentions. I currently represent Mr. Ghailani.[9] Copies of Mr. Ghailani's six letters to me are available for the Court's *in camera* review.

22. In early April of 2008, Colonel David asked that I provide him, in his capacity as Chief Defense Counsel ("CDC") for the Office of Military Commissions, some substantiation of my claims that I represent Petitioner and Messrs. Ghailani and Hawsawi, another detainee. By letter dated April 5, 2008, I provided Colonel David with that information.

---

[8] I had not immediately filed my notice of appearance in Petitioner's DTA action because I was awaiting admission to practice before that court.

[9] As described further below, my notice of appearance in Mr. Ghailani's petition for a writ of *habeas corpus* has been stricken by the Honorable Richard J. Leon of this Court. *See* 08 CV 1190 (RJL). Judge Leon also ordered that I not file any further papers on behalf of Mr. Ghailani in this Court.

23. I received communication from Lt. Col. Michael Acuff, who Colonel David apparently assigned to serve as Mr. Ghailani's Appointed Military Counsel on April 24, 2008. Lt. Col. Acuff informed me that he was Mr. Ghailani's assigned counsel.

24. Shortly thereafter, I met with Lt. Col. Acuff and with Colonel David for several hours on May 13th at their offices in Washington, DC and during a lunch meeting with Lt. Col. Acuff. During my meetings with Colonel David and Lt. Col. Acuff on May 13th, I learned that Lt. Col. Acuff had also been assigned to serve as Associate Detailed Military Defense Counsel for Khalid Sheikh Mohammed, another detainee facing military commissions' charges as a result of his alleged role as the "mastermind" of the September 11th attacks. The United States government claims that Mr. Mohammed was the "Chief of External Operations" for al-Qaeda subsequent to September 11, 2001. This information alerted me to Appointed Military Counsel's potential conflict of interest. A more in-depth investigation of the underlying facts led me to conclude that Appointed Military Counsel's representation of Mr. Ghailani was indeed conflicted.

25. After Appointed Military Counsel and the CDC refused to resolve this conflict satisfactorily, I notified Ms. Crawford and General Hartmann of my concerns regarding Appointed Military Counsel's apparent conflict of interest. In response, General Hartmann informed me by letter that it was his and Colonel David's position that I no longer represented Mr. Ghailani.[10] *See* Fenstermaker Declaration, Exhibit D. General Hartmann did not explain the basis for his claim that I no longer represented Mr. Ghailani.

26. In May of 2008, I received a letter from Abu Faraj al-Libi, another one of the former CIA prisoners currently held at Guantánamo Bay. Mr. al-Libi's letter was dated April 7,

---

[10] By letter dated July 21, 2008, General Hartmann's deputy, Michael C. Chapman sent me a similar letter informing me that the CDC did not recognize me as attorney to Petitioner herein. *See* Fenstermaker Declaration, Exhibit D.

2008. Mr. al-Libi sought my assistance in obtaining counsel independent of the United States government. I responded to Mr. al-Libi by letter dated May 30, 2008. I do not know whether Mr. al-Libi received my May 30th letter.

27. On June 5, 2008, five defendants facing military commissions' charges as a result of their alleged involvement in the September 11th terrorist attacks were arraigned at Guantánamo Bay before a military commission judge. One of these five defendants, Ammar al-Baluchi (aka, Ali Abdul Aziz Ali), complained to the military commissions' judge that he had been trying to communicate with me, apparently for the purpose of securing my services as his attorney.                                                                                                  *See http://us.ft.com/ftgateway/superpage.ft?news_id=fto060920081244373936&page=2.*   Mr. al-Baluchi also accused the government of obstructing his communications with me. I have received four letters from Mr. al-Baluchi. Based on the letters I received from Mr. al-Baluchi, I have reason to believe that Mr. al-Baluchi has written me at least six, and perhaps more, letters. I requested a copy of the transcript of the June 5, 2008 arraignment proceedings and was denied a copy by the Deputy Clerk of Court for the Office of Military Commissions.

28. On July 1, 2008, I received an e-mail from Andrew I. Warden, an attorney with the Justice Department. Mr. Warden's July 1st e-mail is attached as Exhibit E. In Mr. Warden's e-mail, he explains that "[b]ecause you are not authorized to send or receive mail pursuant to any *appropriately entered protective orders*, the mail you recently sent to [Mr. Ghailani and Petitioner] would ordinarily be processed in accordance with the procedures established for non-privileged mail unless you request that the mail be returned to you. Because that mail is marked privileged, it has not been reviewed or otherwise processed at this point." (Emphasis added).

29. The mail to which Mr. Warden refers was sent to the address provided to me by the Justice Department. *See* ¶ 4. This address was provided to me pursuant to the government's

effort to assure the court in the Southern District that I had the ability to write detainees at Guantánamo Bay and provide legal information and advice to them and that they had the ability to write to attorneys to secure independent legal representation. *See* Exhibits A and B.

30. After receiving Mr. Warden's July 1, 2008 e-mail, I responded by sending the e-mail attached hereto as Exhibit F. In that e-mail, I stated, among other things, "[y]ou are free to process my mail to my clients in whatever fashion you like, *so long as they get it*. I will reserve my arguments regarding the privileged nature of the correspondence for the appropriate forum." (Emphasis added).

31. On July 25, 2008, David H. Remes, Esq. filed a motion in Mr. Ghailani's *habeas* matter, 08 CV 1190 (RJL), seeking to have my notice of appearance stricken and that I be barred from filing any documents on Mr. Ghailani's behalf. In support of his motion, Mr. Remes filed affidavits from Colonel David and Lt. Col. Acuff, along with an e-mail that Colonel David sent to me. Noticeably absent was any filing or direct statement by Mr. Ghailani.

32. On July 31, 2008, I received a package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included 16 envelopes containing correspondence addressed to my two clients who are being held at Guantánamo Bay, Petitioner and Mr. Ghailani. Along with the 16 envelopes was a memorandum from Major Greg Musselman, JAGC, USA. A copy of Major Musselman's memorandum is attached as Exhibit G. In his memorandum, Major Musselman explained that the Office of the General Counsel of the Department of Defense advised the Office of the Staff Judge Advocate at Guantánamo Bay to return the 16 envelopes to me. The office of the General Counsel for the Department of Defense has never contacted me regarding my mail to Guantánamo Bay detainees.

33. The envelopes in question constituted essential attorney-client correspondence to Petitioner and Mr. Ghailani, my two clients detained at Guantánamo Bay. This correspondence

was addressed and postmarked as follows, which included legal documents I filed on behalf of Petitioner and Mr. Ghailani:

    a.  Mr. Ghailani, June 24, 2008

    b.  Mr. Ghailani, June 24, 2008

    c.  Mr. Ghailani, June 28, 2008

    d.  Mr. Ghailani, June 28, 2008

    e.  Mr. Ghailani, June 30, 2008

    f.  Mr. Ghailani, June 30, 2008

    g.  Mr. Ghailani, July 7, 2008

    h.  Mr. Ghailani, June 28, 2008

    i.  Mr. Ghailani, June 24, 2008

    j.  Petitioner, June 17, 2008

    k.  Mr. Ghailani, June 21, 2008

    l.  Mr. Ghailani, June 21, 2008

    m.  Mr. Ghailani, May 28, 2008

    n.  Petitioner, June 17, 2008[11]

34. On August 26, 2008, I received another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included 7 envelopes containing correspondence addressed to Mr. Ghailani. The envelopes in question constituted essential attorney-client correspondence to Mr. Ghailani. This correspondence was postmarked as follows:

    a.  August 6, 2008

    b.  August 6, 2008

---

[11] Letters were sent to the detainees the same day because I send all correspondence to all detainees to three separate addresses.

    c.  July 25, 2008

    d.  June 30, 2008

    e.  August 2, 2008

    f.  July 7, 2008

    g.  July 7, 2008

35. On August 26, 2008, I received yet another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included 7 envelopes containing correspondence addressed to my two clients who are being held at Guantánamo Bay, Petitioner and Mr. Ghailani. The envelopes in question constituted essential attorney-client correspondence to Petitioner and Mr. Ghailani. This correspondence was addressed and postmarked as follows:

    a.  Mr. Ghailani, July 22, 2008

    b.  Mr. Ghailani, July 22, 2008

    c.  Petitioner, July 22, 2008

    d.  Petitioner, July 22, 2008

    e.  Mr. Ghailani, July 25, 2008

    f.  Mr. Ghailani, July 25, 2008

    g.  Mr. Ghailani, August 2, 2008

36. I have been using the address to which the above mail was sent for the past 14 months in communicating with Guantánamo Bay detainees. During this 14-month period, I have written numerous letters addressed to many detainees using this address. Each of these letters was marked "privileged and confidential/attorney-client privilege." I have received numerous letters and postcards from many detainees in response to these letters. Mr. Warden's July 1st e-mail was the first indication that I received that my correspondence was not being treated as

12

privileged (other than the fact that some of the letters and postcards I received from detainees contained redactions, which I understand is permissible even with legal mail sent pursuant to applicable protective orders) or that I would otherwise have to waive the privilege in order to communicate with Guantánamo Bay detainees, including my clients, Petitioner and Mr. Ghailani.

37. On August 19, 2008, the Honorable Richard J. Leon granted Mr. Remes' motion, ordered that my notice of appearance be stricken, and that I be barred from filing any documents on Mr. Ghailani's behalf in this court.

38. On August 26, 2008, I received a letter, dated May 26, 2008, from Ammar al-Baluchi. In his letter, Mr. al-Baluchi asked that I file a DTA petition on his behalf. In addition, Mr. al-Baluchi informed me that he asked his military attorney, Lt. Commander Brian Mizer, to contact me on his behalf. Lt. Commander Mizer has never contacted me. In his letter Mr. al-Baluchi lamented that "Mr. Fenstermaker, unfortunately there is no legal representation or legal assistance for brothers detained here."

39. I have never been permitted to travel to Guantánamo Bay to meet with Petitioner, Mr. Ghailani, or any of the six other detainees who have asked to meet with me.

40. I applied for a top secret security clearance in March of 2008. I am a Distinguished Graduate and Graduate with Honors of the United States Air Force Academy. I am a graduate of the United States Air Force's prisoner of war training. I am an honorably discharged veteran of the United States Air Force. I have never been convicted or accused of a crime. I have never been arrested. To my knowledge, I have never been suspected of criminal activity. I currently have a secret security clearance.

41. Subsequent to my notifying the government of my attorney-client relationship with Petitioner in February of 2008, no one from the Department of Defense or any other agency

13

took any steps to provide me with information regarding the security clearance application process or any information regarding visiting detainees at Guantánamo Bay, until I applied for my security clearance in March of 2008.

42.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


_____
Scott L. Fenstermaker, Esq.

Dated:          New York, New York
                August 29, 2008

14

# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

May 31, 2007

BY HAND DELIVERY
The Honorable Richard M. Berman
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    <u>Fenstermaker, et al. v. Bush, et al.</u>, 05 Civ. 7468 (RMB)

Dear Judge Berman:

      This Office represents respondents in the above-captioned action. This letter is submitted pursuant to the Court's requests, made during the May 18, 2007 oral argument on the Government's motion to dismiss this action, for certain additional factual information concerning court actions filed by detainees held at Guantanamo Bay, Cuba. A copy of the transcript of the oral argument is enclosed herewith.

      In his Amended Petition, petitioner Scott Fenstermaker purports to sue on behalf of two groups of detainees: i) eight John Doe petitioners, whom he does not know or represent, but identifies only as non-United States citizens currently being detained at Guantanamo Bay as enemy combatants, and who were subject to the President's November 13, 2001 Order, <u>see</u> Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57833 (Nov. 13, 2001) ("Military Order"), and thus to trial before the military commissions that existed prior to the enactment of the Military Commission Act of 2006, Pub. L. No. 109-366 ("MCA"), and ii) fourteen "Named petitioners," whom Fenstermaker also does not know or represent, but identifies by name as fourteen individuals allegedly transferred to Guantanamo Bay from Government "intelligence gathering" facilities. (Am. Pet. ¶¶ 6-75, 77).

**A.     The Eight John Doe Petitioners**

      As an initial matter, Fenstermaker's claim that he represents eight John Doe petitioners, who are detainees subject to the Military Order and thus trial before a military commission, has been overtaken by subsequent developments and no longer makes sense. Pursuant to the MCA and other authority, President Bush recently issued an Executive Order establishing military commissions. <u>See</u> Trial of Alien Unlawful Enemy Combatants by Military Commission, Exec. Order No. 13,425, 72 Fed. Reg. 7737 (Feb. 14, 2007) ("February, 14, 2007

Exhibit A

Order"). In relevant part, the February 14, 2007 Order provides that it "supersedes any provision of the [Military Order] that relates to trial by military commission," including the provision whereby detainees can be designated as subject to the Military Order and thus trial by military commission. Thus, detainees are no longer designated as subject to the Military Order, and such designation is no longer part of the military commission process.

In any event, whomever Fenstermaker purports to sue on behalf of, there can be no dispute that such John Doe petitioners have been afforded the opportunity or been able to litigate their own cause and protect their own interests. With respect to the military commission regime that existed prior to the passage of the MCA, ten detainees who were subject to the Military Order were eventually charged before military commissions that existed prior to the enactment of the MCA, and those ten had actions filed on their behalf in the United States District Court for the District of Columbia with the assistance of close relatives and/or counsel.[1] See, e.g., Al Qahtani v. Bush, et al., No. 05-2387 (D.D.C. filed December 14, 2005, by petitioner's wife and counsel) (dismissed May 10, 2007 pursuant to the MCA on jurisdictional grounds); Al Bahlul v. Bush, et al., No. 05-2104 (D.D.C. filed December 14, 2005, by petitioner's cousin and counsel); Al Sharbi v. Bush, et al., No. 05-2348 (D.D.C. filed December 7, 2005 by petitioner's counsel); Abdul Zahir v. Bush, et al., Nos. 05-1236 and 05-1623 (D.D.C., filed August 17, 2005 and June 24, 2005 by petitioner's counsel); Barhoumi v. Bush, et al., No. 05-1506 (D.D.C. filed August 2, 2005 by petitioner's "friend" and counsel) (sub nom Shafiq v. Bush) (dismissed May 10, 2007 pursuant to the MCA on jurisdictional grounds); Mohammed v. Bush, et al., No. 05-0756 (D.D.C. filed April 20, 2005 by petitioner's counsel) (sub nom Al Habashi v. Bush); Al Qosi v. Bush, et al., No. 05-1937 (D.D.C. filed November 15, 2004 by petitioner's counsel); Khadr v. Bush, et al., No. 04-1136 (D.D.C. filed July 14, 2004 by petitioner's grandmother and counsel), decided sub nom., Boumediene v. Bush, et al., ___ F.3d ___, 2007 WL 506581 (D.C. Cir. Feb. 20, 2007) (ruling that, pursuant to the MCA, the case must be dismissed on jurisdictional grounds); Hamdan v. Rumsfeld, et al., No. 04-1519 (D.D.C. filed April 6, 2004 by petitioner's counsel), dismissed, ___ F. Supp. 2d ___, 2006 WL 3625015 (D.D.C. Dec. 13, 2006) (dismissing case pursuant to the MCA on jurisdictional grounds); Hicks v. Bush, et al., No. 02-0299 (D.D.C. filed March 12, 2002 by petitioner's father and counsel), decided sub nom., Boumediene v. Bush, et al., ___ F.3d ___, 2007 WL 506581 (D.C. Cir. Feb. 20, 2007) (ruling that, pursuant to the MCA, the case must be dismissed on jurisdictional grounds).

Moreover, at least four of the so called John Doe petitioners (i.e., detainees subject to the Military Order but who had not yet been charged before a military commission as of August 24, 2005, the date Fenstermaker filed his Petition in this Court), had already filed their cases in federal court with the assistance of counsel when Fenstermaker filed his Petition on August 24, 2005, even though these four petitioners had not yet been charged before a military commission. In these cases, the John Doe petitioners -- all of whom were subsequently charged

---

[1] The petitions in these cases are available, via PACER, on the website for the United States District Court for the District of Columbia, at www.dcd.uscourts.gov.

2

Exhibit A

before a military commission under the pre-MCA regime -- assert some of the same or similar claims that Fenstermaker purports to bring on behalf of these petitioners in his Petition. These cases are as follows (attached hereto as <u>Exhibit A</u> are selected pages from the petitions in these four cases):

- <u>Abdul Zahir v. Bush, et al.</u>, Nos. 05-1236 and 05-1623 (D.D.C., filed August 17, 2005 and June 24, 2005 by petitioner's counsel). In these cases, Mr. Zahir asserts, among other things, that his due process rights and right to counsel were violated. Mr. Zahir was charged before a military commission on January 20, 2006.

- <u>Mohammed v. Bush, et al.</u>, Nos. 05-0756 (D.D.C. filed April 20, 2005 by petitioner's counsel) (<u>sub nom Al Habashi v. Bush</u>). In this case, Mr. Mohammed asserts, among other things, that his due process rights were violated. Mr. Mohammed was charged before a military commission on November 4, 2005.

- <u>Barhoumi v. Bush, et al.</u>, Nos. 05-1506 (D.D.C. filed August 2, 2005 by petitioner's "friend" and counsel) (<u>sub nom Shafiq v. Bush</u>) (dismissed May 10, 2007 pursuant to the MCA on jurisdictional grounds). In this case, Mr. Barhoumi asserted, among other things, that his due process rights and right to counsel were violated. Mr. Barhoumi was charged before a military commission on November 4, 2005.

- <u>Khadr v. Bush, et al.</u>, No. 04-1136 (D.D.C. filed July 14, 2004 by petitioner's grandmother and counsel), <u>decided sub nom.</u>, <u>Boumediene v. Bush, et al.</u>, __ F.3d __, 2007 WL 506581 (D.C. Cir. Feb. 20, 2007) (ruling that, pursuant to the MCA, the case must be dismissed on jurisdictional grounds). In this case, Mr. Khadr asserted, among other things, that his due process rights were violated. Mr. Khadr was charged before a military commission on November 4, 2005.

**B.    The Fourteen Named Petitioners**

As stated at argument, the fourteen Named petitioners have access to mail and are able to contact friends, relatives or attorneys. Further, as of today's date, two of these fourteen have filed actions in the United States District Court for the District of Columbia, as follows:

- A habeas corpus petition was filed on behalf of Majid Khan, who is named in the Amended Petition, through his "Next Friend," Rabia Khan, who is his wife, and by attorneys from the Center for Constitutional Rights. <u>See</u> <u>Khan v. Bush, et al.</u>, No. 06-cv-1690-RBW (D.D.C. filed Sept. 29, 2006). Among other claims, the petition asserts claims that Mr. Khan's alleged due process rights and right to counsel were violated, the same or similar claims Fenstermaker purports to assert in this case on behalf of Mr. Khan. Attached hereto as <u>Exhibit B</u> are copies of the Court's docket sheet and selected pages of Mr. Khan's petition reflecting these facts.

3

Exhibit A

- A habeas corpus petition was filed on behalf of Ramzi Bin Al-Shibh, who also is named in the Amended Petition, with his brother, Zakaria bin al-Shibh, acting as his "next friend." See Al-Sibh v. Bush, et al., 06-cv-1725-EGS (D.D.C. filed October 5, 2006). The district court subsequently appointed a federal public defender to represent Mr. Al-Sibh. Attached hereto as Exhibit D are copies of the Court's docket sheet, Mr. Al Sibh's petition, and the district court's order appointing him counsel.

## C.  Enemy Combatant Status Determinations and Detainee Treatment Act Petitions

As of today's date, all detainees currently at Guantanamo Bay other than the Named petitioners have had the opportunity to contest their designation as enemy combatants at a Combatant Status Review Tribunal ("CSRT"), and have received final CSRT decisions that they are properly designated as "enemy combatants." As to the Named petitioners, they have all had CSRT hearings, and will likely receive their final enemy combatant status determinations within thirty days.

In addition, pursuant to 28 U.S.C. § 2241, as amended by § 7(a) of the MCA and the Detainee Treatment Act, Pub. L. No. 109-48, §§ 1001-1006 (2005) ("DTA"), § 1005(e)(2), (3), detainees who have completed the CSRT process and been designated as enemy combatants may file actions in the United States Court of Appeals for the District of Columbia Circuit challenging the validity of their designations, and may include claims as to whether the standards and procedures used to make those designations are consistent with the Constitution and laws of the United States, to the extent they are applicable. Presently, at least one of the so called John Doe petitioners has filed such a DTA petition in the D.C. Circuit with the assistance of counsel. See Zahir v. Bush, et al., No. 07-1031 (D.C. Cir. filed Feb. 7, 2007).

Finally, as stated at oral argument, the address -- which is publicly available -- to write to a detainee held at Guantanamo Bay is:

> Detainee's Name
> 160 Camp X-Ray
> Washington, D.C. 20355

In addition, it should be noted that the Department of Defense has published a list of all

4

individuals detained at Guantanamo Bay from January 2002 through May 15, 2006.  See
http://www.dod.mil/pubs/foi/detainees/.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:   _____
ROSS E. MORRISON
Assistant United States Attorney
Tel. (212) 637-2691

(Via Federal Express)
cc:      Scott L. Fenstermaker, Esq.

5

Exhibit A     Exhibit B     Exhibit C

# Exhibit B

```
75g2fena
```

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     SCOTT FENSTERMAKER, ESQ.;
3    individually and as next
     friend for JOHN DOE 1; JOHN                .
4    DOE 2; JOHN DOE 3; JOHN DOE 4;
     JOHN DOE 5; JOHN DOE 6; JOHN
5    DOE 7; JOHN DOE 8;
     (collectively "Johns Doe"),
6
                    Petitioner,          New York, N.Y.
7
             v.                          05 Civ. 7468(RMB)
8
     GEORGE W. BUSH, President of
9    the United States and
     Commander in Chief of the
10   United States Armed Forces;
     DONALD RUMSFELD, United States
11   Secretary of Defense; JOHN D.
     ALTENBURG, JR., Appointing
12   Authority for the Military
     Commission,
13
                    Respondents.
14   ------------------------------x

15                                      May 18, 2007
                                        10:15 a.m.
16
     Before:
17
                    HON. RICHARD M. BERMAN,
18
                                        District Judge
19

20                      APPEARANCES

21   SCOTT L. FENSTERMAKER
          Attorney for Petitioner
22

23   MICHAEL J. GARCIA
          United States Attorney for the
24        Southern District of New York
     ROSS E. MORRISON
25        Assistant United States Attorney
```

25

75g2fena

1          THE COURT:  And they can't what?

2          MR. MORRISON:  They can't be disputed.  There is no

3     dispute as to these facts.  Number one, the detainees have the

4     opportunity to send and receive mail.  That's true of both the

5     unnamed and named petitioners.

6          THE COURT:  Is that an undisputed fact?

7          MR. FENSTERMAKER:  I have no knowledge as to whether

8     they can receive, and I have not taken a position because I do

9     not know.

10          THE COURT:  I see.  I think we should -- there is one

11     more question, and then we should definitely hear from

12     Mr. Fenstermaker.

13          So we have dealt with the act, we have dealt with the

14     third-party and next-friend standing, but there is a third

15     claim that he makes which is that he can sue in his own right.

16     So why don't you say a word or two about that?

17          MR. MORRISON:  Certainly, your Honor.  And just ending

18     on that last point about the next friend, I won't belabor it,

19     but many of these detainees, your Honor, have actually filed

20     actions, the same ones that he purports to sue on have filed

21     cases with counsel, and he --

22          THE COURT:  Have filed actions with counsel.  That is

23     going to be the subject of a letter.

24          MR. MORRISON:  Yes, your Honor.  It is also in our

25     brief, but I can make it --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Exhibit C

THE LAW OFFICES OF
**SCOTT L. FENSTERMAKER, P.C.**
500 FIFTH AVENUE, 40TH FLOOR
NEW YORK, NEW YORK 10110

OF COUNSEL

LINDA F. FENSTERMAKER, ESQ.

TELEPHONE (212) 302-0201
CELL (917) 817-9001
FACSIMILE (212) 302-0327
EMAIL scott@fenstermakerlaw.com
www.fenstermakerlaw.com

WESTCHESTER OFFICE
BY APPOINTMENT ONLY
80 MAIN STREET
WHITE PLAINS, NEW YORK 10606
TELEPHONE (914) 725-0955

February 2, 2008

<u>VIA CERTIFIED MAIL, RETURN RECEIPT</u>

Michael B. Mukasey, Esq.
Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

William J. Haynes, II, Esq.
General Counsel
Department of Defense
1600 Defense Pentagon, Room 3E833
Washington, DC 20301-1600

John Rizzo, Esq.
General Counsel
Central Intelligence Agency
Washington, DC 20505

Susan J. Crawford
c/o Colonel Steve David, Esq., USA
Franklin Court Building, Suite 2000E
1099 14th Street, N.W.
Washington, DC 20005

Brig. Gen. Thomas W. Hartmann, Esq., USAF
c/o Colonely Steve David, Esq., USA
Franklin Court Building, Suite 2000E
1099 14th Street, N.W.
Washington, DC 20005

Colonel Steve David, Esq., USA
Chief Defense Counsel
Franklin Court Building, Suite 2000E
1099 14th Street, N.W.
Washington, DC 20005

Lt. Col. William Britt
Office of the Chief Prosecutor
Office of Military Commissions
1610 Defense Pentagon
Washington, DC 20301-1610

Re:    'Abd Al-Rahim Hussain Muhammed Al-Nashiri, Detainee 10015

Dear Sirs/Madam:

Please be advised that I represent 'Abd Al-Rahim Hussain Muhammed Al-Nashiri, detainee number 10015, Guantánamo Bay, Cuba in all matters relating to his detention in your custody. As his legal representative, I request that all questioning of Mr. Al-Nashiri be discontinued. Please contact me if the convening authority for the military commissions refers charges against Mr. Al-Nashiri, or if you have questions regarding this matter.

Messrs. Mukasey, Haynes, Rizzo, Ms. Crawford, General Hartmann, Colonel David, and Lt. Col. Britt
February 2, 2008
Page 2 of 2

Please be advised that Ms. Crawford's and General Hartmann's copies of this letter are being sent care of Colonel David. The reason for this procedure is that Colonel David's subordinates provided me with incorrect address information for Ms. Crawford and General Hartmann with respect to my other letters and subsequently declined to respond to communication seeking correct address information.

Very truly yours,

**The Law Offices of Scott L. Fenstermaker, P.C.**

By: _Scott L. Fenstermaker_
Scott L. Fenstermaker, Esq.

cc:    Paul G. Turner, Esq.
       Mr. 'Abd Al-Rahim Hussain Muhammed Al-Nashiri (in Arabic)

THE LAW OFFICES OF
**SCOTT L. FENSTERMAKER, P.C.**
300 PARK AVENUE, 17TH FLOOR
**NEW YORK, NEW YORK 10022**
TELEPHONE (212) 302-0201
CELL (917) 817-9001
FACSIMILE (212) 302-0327
EMAIL scott@fenstermakerlaw.com
www.fenstermakerlaw.com

OF COUNSEL
_____
LINDA F. FENSTERMAKER, ESQ.

WESTCHESTER OFFICE
BY APPOINTMENT ONLY
50 MAIN STREET
WHITE PLAINS, NEW YORK 10606
TELEPHONE (914) 725-0955

July 1, 2008

<u>**VIA CERTIFIED MAIL, RETURN RECEIPT**</u>
<u>**ALSO VIA E-MAIL**</u>

Ms. Susan J. Crawford
Office of Military Commissions
1600 Defense Pentagon
Washington, DC 20301-1600

Brig. Gen. Thomas W. Hartmann, Esq., USAF
Office of Military Commissions
1600 Defense Pentagon
Washington, DC 20301-1600

Colonel Steve David, Esq., USA
Chief Defense Counsel
Franklin Court Building, Suite 2000E
1099 14th Street, N.W.
Washington, DC 20005

Colonel Lawrence Morris, Esq., USA
Office of the Chief Prosecutor
Office of Military Commissions
1610 Defense Pentagon
Washington, DC 20301-1610

Re:    Mr. Rahim al-Nashiri, Detainee Number 10015

Dear Sirs/Madam:

As I mentioned in my February 2, 2008 letter to each of you, among others, I represent Mr. Rahim al-Nashiri. It is my understanding that military commission charges have been preferred against Mr. al-Nashiri.

I ask that you provide me with the name and contact information for Mr. al-Nashiri's Associate Detailed Defense Counsel, as soon as that information becomes available. Please similarly provide my contact information to Mr. al-Nashiri's Associate Detailed Defense Counsel. Under no circumstances is Mr. al-Nashiri's associate detailed defense counsel to meet with or speak to Mr. al-Nashiri without my written permission.

I request on behalf of Mr. al-Nashiri to speak with both Ms. Crawford and General Hartmann regarding the referral of Mr. al-Nashiri's case. Please contact me regarding the referral of charges at General Hartmann's earliest convenience.

Ms. Crawford, General Hartmann, Colonel David, and Colonel Morris
July 1, 2008
Page 2 of 2

Very truly yours,

**The Law Offices of Scott L. Fenstermaker, P.C.**

By:  _Scott L. Fenstermaker_

Scott L. Fenstermaker, Esq.

cc:     Mr. Rahim al-Nashiri (in Arabic)

# Exhibit D



**OFFICE OF THE SECRETARY OF DEFENSE**
OFFICE OF MILITARY COMMISSIONS
1600 DEFENSE PENTAGON
WASHINGTON, DC 20301-1600

LEGAL ADVISOR

June 25, 2008

Scott L. Fenstermaker, Esq.
300 Park Avenue, 17th Floor
New York, New York 10022

Dear Mr. Fenstermaker:

I am writing in response to your letter of June 9, 2008, asking to meet with Mrs. Susan Crawford, the Convening Authority, to discuss the referral of charges against Mr. Ghailani. For the reason discussed below, we must deny your request.

In an earlier letter dated April 11, 2008, you indicated there was some question about whether you represented Mr. Ghailani. You asked for assistance from the military commission staff in reviewing certain letters.

As you know, the Military Commissions Act, 10 U.S.C. § 949c(b)(3), and Rule for Military Commissions (R.M.C.) 502(d), set the standards for who is eligible to serve as counsel for detainees. The Regulation for Trial by Military Commission, ¶ 9-1.a.11, provides that the Chief Defense Counsel shall administer the civilian defense counsel pool and make qualification determinations. Recently, this office inquired of the Chief Defense Counsel whether you were counsel for Mr. Ghailani. He advised that you were not representing Mr. Ghailani at this time.

Because you are not counsel for Mr. Ghailani, it would be inappropriate for Mrs. Crawford to discuss this case with you or to consider any matters your submit on his behalf. If you feel the Chief Defense Counsel is incorrect about your representation, you should pursue that issue with him.

THOMAS W. HARTMANN
Brigadier General, U.S. Air Force
Legal Advisor to the Convening Authority
for Military Commissions



Printed on     Recycled Paper



**OFFICE OF THE SECRETARY OF DEFENSE**
OFFICE OF MILITARY COMMISSIONS
1600 DEFENSE PENTAGON
WASHINGTON, DC 20301-1600

CONVENING AUTHORITY

July 21, 2008

Scott L. Fenstermaker, Esq.
300 Park Avenue, 17th Floor
New York, New York 10022

Dear Mr. Fenstermaker:

This responds to your July 1, 2008, letter in which you assert representation of Mr. Rahim al-Nashiri, request the identification of the "Associate Detailed Defense Counsel," and request to meet with Mrs. Susan Crawford, the Convening Authority, and Brig Gen Thomas W. Hartmann, the Legal Advisor to the Convening Authority. For the reason discussed below, your request is denied.

The Military Commissions Act, 10 U.S.C. § 949c(b)(3), and Rule for Military Commissions (R.M.C.) 502(d), set the standards for who is eligible to serve as counsel for detainees. The Regulation for Trial by Military Commission, ¶ 9-1.a.11, provides that the Chief Defense Counsel shall administer the civilian defense counsel pool and make qualification determinations. The Chief Defense Counsel advised this office that you do not represent Mr. al-Nashiri before a military commission. If you feel the Chief Defense Counsel is incorrect in this regard, you should pursue that issue with him.

Since you do not represent Mr. al-Nashiri before the commission, it would be inappropriate for Mrs. Crawford or Brig Gen Hartmann to comply with any of the demands expressed in your letter.

MICHAEL C. CHAPMAN
Deputy Legal Advisor to the Convening Authority
for Military Commissions



Printed on    Recycled Paper

# Exhibit E

**Scott Fenstermaker**

| | |
|---|---|
| **From:** | Warden, Andrew (CIV) [Andrew.Warden@usdoj.gov] |
| **Sent:** | Tuesday, July 01, 2008 11:43 AM |
| **To:** | scott@fenstermakerlaw.com |
| **Subject:** | Guantanamo Bay mail |

Mr. Fenstermaker:

I am one of the attorneys representing the government in the Guantanamo Bay habeas litigation. We have been informed by Joint Task Force Guantanamo that you recently sent letters to Abd al-Rahim al-Nashiri (ISN 10015) and Ahmed Ghailani (ISN 10012). As you may be aware, there are two systems by which detainees send and receive mail at Guantanamo. First, most mail sent to Guantanamo detainees is processed in a non-privileged fashion. That is, the mail is screened and reviewed by military authorities before delivery to the intended recipient. Second, a system for privileged legal mail between detainees and eligible counsel exists under the auspices of various protective orders entered by the U.S. District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit. That system is available only in cases in which the protective orders have been entered and is subject to requirements and restrictions set out in the orders.

Because you are not authorized to send or receive privileged mail pursuant to any appropriately entered protective orders, the mail you recently sent Messrs. Al-Nashiri and Ghailani would ordinarily be processed in accordance with the procedures established for non-privileged mail unless you request that the mail be returned to you. Because that mail is marked privileged, it has not been reviewed or otherwise processed at this point. Please let me know how you would like to proceed.

Best regards,

Andrew I. Warden
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: 202-616-5084
Fax: 202-616-8470

# Exhibit F

**Scott Fenstermaker**

| | |
|---|---|
| **From:** | Scott Fenstermaker [scott@fenstermakerlaw.com] |
| **Sent:** | Tuesday, July 01, 2008 2:41 PM |
| **To:** | 'Warden, Andrew (CIV)' |
| **Subject:** | RE: Guantanamo Bay mail |

Mr. Warden,

Thank you for your July 1st e-mail informing me of the dual-track mail system with respect to Guantanamo Bay detainees. As you are likely aware, I have been corresponding with a number of detainees at Guantanamo Bay since the summer of 2007. You are also likely aware that I am counsel of record for both Mr. Ghailani and Mr. al-Nashiri in pending court matters in the Southern District of New York, 98 CR 1023 (KTD) (Ghailani), United States District Court for the District of Columbia, 08 -1085 (al-Nashiri) and docket number unknown (Ghailani), and the United States Court of Appeals for the District of Columbia Circuit, 08-1007 (al-Nashiri) and 08-1209 (Ghailani). In addition, I am counsel of record for Mr. Ghailani in his military commissions matter and will be shortly counsel of record in Mr. al-Nashiri's military commissions' matter.

You are free to process my mail to my clients in whatever fashion you like, so long as they get it. I will reserve my arguments regarding the privileged nature of the correspondence for the appropriate forum. I have sent numerous letters and packages to Messrs al-Nashiri and Ghailani, and a number of the other so-called "high value" detainees in the past in the same fashion as the correspondence to which you refer. Until now, no one has ever objected to my correspondence or its privileged nature. The timing of your objection raises a number of issues, particularly in light of the recent actions of the Office of the Chief Defense Counsel to the military commissions.

Your refusal to process my correspondence to these detainees would raise numerous constitutional issues, including, among others, right to counsel, due process and speedy trial concerns. Furthermore, in light of the Office of the Chief Defense Counsel's interference with my relationship with Mr. Ghailani, I will consider any such interference as a cooperative effort between the Justice Department and the Department of Defense. Such effort would not only raise constitutional concerns, but ethical concerns as well.

In case the above was not clear, I am counsel of record for Mr. Ghailani in a pending criminal indictment in the United States District Court for the Southern District of New York. Should you refuse to forward my mail to him, I will immediately take steps to alert that court and ask for a conference in which I will request permission to file the appropriate motions objecting to your holding my client incommunicado.

Let me know if you have any questions.

Scott L. Fenstermaker, Esq.

**From:** Warden, Andrew (CIV) [mailto:Andrew.Warden@usdoj.gov]
**Sent:** Tuesday, July 01, 2008 11:43 AM
**To:** scott@fenstermakerlaw.com
**Subject:** Guantanamo Bay mail

Mr. Fenstermaker:

I am one of the attorneys representing the government in the Guantanamo Bay habeas litigation. We have been informed by Joint Task Force Guantanamo that you recently sent letters to Abd al-Rahim al-Nashiri (ISN 10015) and Ahmed Ghailani (ISN 10012). As you may be aware, there are two systems by which detainees send and receive mail at Guantanamo. First, most mail sent to Guantanamo detainees is processed in a non-privileged fashion. That is, the mail

1

is screened and reviewed by military authorities before delivery to the intended recipient.  Second, a system for privileged legal mail between detainees and eligible counsel exists under the auspices of various protective orders entered by the U.S. District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit. That system is available only in cases in which the protective orders have been entered and is subject to requirements and restrictions set out in the orders.

Because you are not authorized to send or receive privileged mail pursuant to any appropriately entered protective orders, the mail you recently sent Messrs. Al-Nashiri and Ghailani would ordinarily be processed in accordance with the procedures established for non-privileged mail unless you request that the mail be returned to you.  Because that mail is marked privileged, it has not been reviewed or otherwise processed at this point.  Please let me know how you would like to proceed.

Best regards,

Andrew I. Warden
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel: 202-616-5084
Fax: 202-616-8470

2

# Exhibit G

TO:
THE LAW OFFICES OF
SCOTT L. FENSTERMAKER PC
300 PARK AVENUE, 17<sup>TH</sup> FLOOR
NEW YORK, NEW YORK 10022

FROM:
OFFICE OF STAFF JUDGE ADVOCATE
JTF GTMO SJA
APO AE 09360

Enclosed are sixteen (16) envelopes which were submitted to our office via regular mail and opened upon receipt for serialization and delivery. These envelopes were opened according to our standard procedure because they were not marked with the required warning statement indicating that their contents were privileged. Once opened, several of the cover letters reflected the words "Privileged and Confidential, Attorney-Client Privilege". Following this discovery, these materials were immediately returned to their respective envelopes and held in our office for safekeeping. Guidance as to what to do with these materials was sought through the Office of General Counsel (OGC), which directed that they be returned to you. The envelopes are enclosed with this letter.

Sincerely,

GREG MUSSELMAN
MAJ, JA, USA
Assistant Staff Judge Advocate