Pre-approved by CSO for ECF filing

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | Misc. No. 08-442 (TFH) |
| ) | |
| GUANTÁNAMO BAY ) | Civil Action No. 05-2384 (RWR) |
| DETAINEE LITIGATION ) | |
| ) | |

### PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR PARTIAL AND TEMPORARY RELIEF FROM THE COURT'S JULY 11, 2008 SCHEDULING ORDER

Petitioners Saad Al Qahtani and Mohammed Zahrani ("Petitioners") hereby oppose Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order ("Motion").

Petitioners in this case have been waiting in prison cells at Guantánamo Bay Naval Station since 2002. Petitioner Al Qahtani was one of the first prisoners that Respondents transferred to Guantánamo, arriving there on January 16, 2002. Petitioners filed their petition for writ of habeas corpus on December 13, 2005. On June 2, 2006, Respondents filed a factual return in Petitioner Al Qahtani's case; Respondents chose to submit the final record of proceedings before the Combatant Status Review Tribunal ("CSRT"). Petitioner Al Qahtani filed his traverse on July 18, 2008. Respondents have never filed a factual return for Petitioner Zahrani, but they produced to counsel the unclassified portion of the final CSRT proceedings on August 6, 2008. Despite the fact that Petitioners' counsel possess "secret" security clearances, Respondents have not given counsel access to the bulk of the CSRT record for Petitioner Zahrani, which is classified.

Since Petitioners' case was filed in 2005, it has been mired in the jurisdictional dispute that was finally resolved by the United States Supreme Court in *Boumediene v. Bush*, 128 S. Ct.

1

2229 (2008). Yet now, almost three months after the Supreme Court's decision and despite the Supreme Court's admonition that "the costs of delay can no longer be borne by those who are held in custody" (*id.* at 2275), Respondents have defied this Court's Scheduling Order and have instead moved for at least another month of delay in virtually all of the coordinated habeas cases.

This Court should deny Respondents' Motion for relief (a) from a schedule Respondents themselves requested, and (b) for which Respondents have utterly failed to show good cause. The Court should further rule that, unless Respondents file by the end of October the Zahrani return and a motion for leave to amend the Al Qahtani return, Respondents will waive their opportunity to do so. In that event, Petitioners' cases should proceed expeditiously on the 2005 petition and the CSRT records that Respondents have chosen to rely upon as "justification" for holding Petitioners for almost seven years.

## I. This Court Ordered Respondents To Produce 50 Factual Returns Per Month, With No Exceptions Absent Good Cause.

On July 2, 2008, the judges of this Court, including Judge Roberts, ordered most of the habeas petitions filed by Guantánamo detainees to be transferred to Judge Thomas F. Hogan for purposes of coordination and management "so that these cases can be addressed as expeditiously as possible per the Supreme Court's decision in *Boumediene v. Bush*." (Dkt. 1.) This Court held a status conference on July 8, 2008, at which the parties expressed their views on how these cases should be managed and scheduled. Counsel for Petitioners expressed concern that Respondents might use the Court's efforts to coordinate these cases as a further opportunity for delay.

At the status conference on July 8, 2008, and in letters and pleadings filed before and after the conference, Respondents requested that they be allowed until the end of August 2008 to file factual returns and motions for leave to amend returns in the first 50 cases, and that they be

2

allowed to continue filing returns and motions for leave to amend returns at a rate of 50 per month after that. (Dkt. 39.) Petitioners opposed the request, but Respondents assured this Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id*.) and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases." (*Id*. at Ex. A.)

At the July 8, 2008 hearing, Judge Hogan explicitly directed Respondents to alert other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly.

(July 8, 2008 Hearing Transcript, at 82.) Judge Hogan also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions. And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court. It makes no sense to set a schedule to make continuances.

(*Id.* at 60.)

Over Petitioners' objections, the Court gave Respondents precisely the Scheduling Order they asked for, allowing them until August 29, 2008 to prepare returns and motions to file amended returns in the first 50 pending cases, and allowing Respondents to file returns and motions to amend at a rate of 50 cases per month thereafter. (Dkt. 53, Scheduling Order.) Under the Scheduling Order, Respondents must file Petitioner Zahrani's return and a motion for leave to amend Petitioner Al Qahtani's return by the end of October 2008.

As Judge Hogan stated at the July 8 hearing, the Scheduling Order allows Respondents to request exceptions to the sequencing only:

> if the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing . . . . As with amendments, the Court will only allow exceptions where the government establishes cause.

(*Id.* at ¶ 4.) The plain intent of the Scheduling Order is to allow exceptions only on a case-by-case basis, based on good cause, and solely in order to avoid delays in the processing of other cases. The Scheduling Order does not anticipate that a delay would be requested, much less granted, for the filing of virtually *all* amended returns without a particularized showing of good cause. As Judge Hogan stated at the July 8 hearing: "delays . . . would reflect badly and would cause the Court to become perhaps not only concerned, but suspicious of the necessity for further delay, which could -- to the detriment of the government in how we proceed with these cases and take them to trial." (Transcript at 91.)

## II. Respondents' Motion Fails To Establish Good Cause, Aims To Perpetuate Delay, And Should Be Denied By This Court.

At midnight on the Court's deadline for the filing of 50 returns and motions for leave to amend returns, Respondents requested an extension of the very schedule they requested. Instead of filing 50 returns in these coordinated cases, Respondents filed 10 in the coordinated cases and 12 in the handful of cases pending before Judges Leon and Sullivan. (Motion at Ex. A.) Respondents requested this extension after the deadline had passed, without any effort to meet and confer with Petitioners' counsel, and without any showing of good cause. In their Motion, Respondents announce that they have been "unable to complete" the filing of the first 50 factual returns, request an additional 30 days to file these returns, and express "hope" to produce 50 factual returns per month thereafter. (*Id.* at 1, 12-13.) Nowhere in Respondents' Motion is there

any indication – much less assurance – that Respondents will comply with their "hoped for" schedule. Instead, Respondents promise only to "strive" to do so. (*Id.* at 12.) Respondents' equivocal language strongly suggests that they are laying the groundwork now for more missed deadlines and requests for extensions of time in the future.

The reasons offered by Respondents do not come close to showing good cause for granting their Motion. First, Respondents contend that they "could take only limited steps to prepare for the defense of claims by the Guantanamo detainees" until the Supreme Court issued the *Boumediene* decision. (*Id.* at ¶ 4.) Nonsense. Petitioners filed their habeas petitions in 2005, after the Supreme Court had already ruled that this Court had jurisdiction under the habeas statute to hear the habeas claims of Guantánamo prisoners. *Rasul v. Bush*, 542 U.S. 466, 484 (2004). Respondents doggedly opposed this Court's jurisdiction in the federal courts and in Congress, but that did not prevent Respondents from preparing their defense of Petitioners' habeas claims. The fact that those claims now rest on constitutional grounds does not alter the fundamental issue in this case: Respondents must justify their detention of Petitioners. That was the issue in 2005, and it remains the issue today.

Second, Respondents claim that DoD needs more time to gather the information that would justify Petitioners' detention. (Motion at 4.) But more than four years ago, Deputy Secretary of Defense Paul Wolfowitz claimed that every Guantánamo prisoner had already "been determined to be an enemy combatant through *multiple levels of review* by officers of the Department of Defense." (Order Establishing Combatant Status Review Tribunal, July 7, 2004, at 1, emphasis added, attached as Exhibit A.) Apparently Respondents believe that their earlier "multiple levels of review" relied on inadequate justifications for detaining Petitioners that must now be supplemented. According to DoD, its 30-lawyer team has reviewed less than 1,900

documents within the past 30 days – an average of less than three documents per lawyer per business day. (Motion, Ex. B at ¶¶ 5, 7.) Respondents also request additional time so that DoJ may draft a "narrative that summarizes the case for detaining the petitioner as an enemy combatant." (*Id.*, Ex. C at ¶ 9.) That is exactly what Respondents claimed to have included in the CSRT record. (Ex. A at g(3) and h.) Respondents' desire to bolster their purported justifications, or to "develop the Government's best possible case" (Motion, Ex. C at ¶ 8), cannot override the Supreme Court's clear mandate: Petitioners "are entitled to a prompt habeas corpus hearing." *Boumediene*, 128 S. Ct. at 2275.

Third, Respondents claim that the CIA needs 30 days to review and approve each factual return before it can be submitted to the Court, Petitioners' counsel, or the public.[1] (Motion at 3, Ex. D at ¶¶ 8-9.) Although Petitioners have not seen (and therefore object to) the classified portions of the declaration submitted by CIA Director Michael V. Hayden, Director Hayden's unclassified declaration shows that Respondents have no excuse for missing this Court's deadline. Director Hayden reports that DoJ and DoD (with, according to Respondents, between 50 and 80 full-time attorneys) produced their first factual return for CIA review on August 12, 2008 – more than a month after the Scheduling Order. (*Id.* at ¶ 19.) This belies Respondents' claims that they are working diligently to expedite the factual returns.

---

[1] Filing a classified factual return under seal does not risk public disclosure of classified information. Petitioners' counsel already have "secret" level security clearance from the government and are authorized to access and review "secret" level classified documents. Indeed, DoJ informed Petitioners' counsel that they received a more extensive background check so that counsel's clearance level could be upgraded quickly to "top secret" if necessary. It is unclear to Petitioners' counsel why they or the Court should be prohibited from reviewing the newly drafted factual returns until the documents are cleared by the CIA, and Respondents have cited no DoJ or DoD authority, policy, or procedure requiring that such a process be followed.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve. Respondents decided to rely "extensively" on information that they designated as classified, they delayed in compiling and reviewing the information among themselves, and they decided to include DoJ narratives. (Motion at 3, 6.) The Court should not permit such self-engineered hurdles to justify Respondents' delay. Respondents' last-minute filing is based not on good cause, but on tactical considerations or, at best, a failure of leadership in the departments involved. (*See id.*, Ex. B at ¶ 7, Ex. C. at ¶ 13, Ex. D at ¶ 19.)

Petitioners have been detained since 2002, and their habeas cases have been pending since 2005. Respondents have sought to delay Petitioners' cases at every opportunity. The purpose of having a single judge to coordinate the habeas cases for management purposes cannot be realized if Respondents are permitted to disregard the management orders with impunity. In order to preserve the intent of the coordination of habeas cases to address the cases as expeditiously as possible, this Court should enforce its Scheduling Order strictly, particularly where – as here – there is no good cause shown for an exception. It is long past time to test Respondents' basis for holding Petitioners in a fair hearing before an independent judge.

## Conclusion

Respondents' last-minute filing makes clear that Respondents are still attempting to impose the "costs of delay" upon those held in prison. This Court should enforce the Supreme Court's ruling that "the detainees in these cases are entitled to a prompt habeas corpus hearing," *Boumediene*, 128 S. Ct. at 2275, deny Respondents' Motion, and rule that Respondents will waive their opportunity to file factual returns or motions for leave to amend returns if they do not comply with the Court's Order of July 11, 2008.


Dated: September 5, 2008                     Respectfully submitted,


  /s/ David W. DeBruin
One of the Attorneys for the Petitioners
Saad Al Qahtani

| | |
|---|---|
| David W. DeBruin (DDC Bar No. 337626) | Patricia A. Bronte |
| JENNER & BLOCK LLP | Sapna G. Lalmalani |
| 601 Thirteenth Street, N.W., Suite 1200 | JENNER & BLOCK LLP |
| Washington, DC 20005-3823 | 330 North Wabash Ave. |
| Tel: (202) 639-6000 | Chicago, IL 60611 |
| Fax: (202) 639-6066 | Tel: (312) 923-8357 |
| | Fax: (312) 840-7757 |

# CERTIFICATE OF SERVICE

      I hereby certify that on September 5, 2008, I filed and served the foregoing Petitioners' Opposition to Respondents' Motion for Partial and Temporary Relief From the Court's July 11, 2008 Scheduling Order to be delivered to the counsel listed below in the above-captioned matter through the CM/ECF system:

      Andrew I. Warden
      United States Department of Justice
      Civil Division, Federal Programs Branch
      20 Massachusetts Avenue NW
      Washington, D.C. 20530

      Terry Marcus Henry
      United States Department of Justice
      Civil Division, Federal Programs Branch
      20 Massachusetts Avenue NW
      Washington, D.C. 20530


                        /s/ David W. DeBruin