# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) | Misc. No. 08-0442 (TFH) |
| GUANTANAMO BAY ) | |
| DETAINEE LITIGATION ) | Civil Action No. 04-1254 (HHK) |
|  ) |  |

### DECLARATION OF DR. DAVID M. NATHAN IN SUPPORT OF REPLY TO OPPOSITION TO EMERGENCY MOTION TO COMPEL ACCESS TO MEDICAL RECORDS OF PETITIONER ADNAN FARHAN ABDUL LATIF AND FOR OTHER MISCELLANEOUS RELIEF

I, David M. Nathan, M.D., declare:

1. I am a Professor of Medicine at Harvard Medical School and Director of the Diabetes Center at the Massachusetts General Hospital. I am Board Certified in Internal Medicine and in Endocrinology, Diabetes, and Metabolism. I received my medical degree from Mt Sinai School of Medicine in 1975. For the past thirty years I have conducted human research in the areas of diabetes, metabolism, and associated disorders and have published more than 300 articles, chapters and books on these topics. My clinical experience is in internal medicine and endocrinology, metabolism, and diabetes. I have been a staff physician at the Massachusetts General Hospital, providing inpatient and outpatient care, since 1981. I reside at 80 Temple Street, West Newton MA 02465. My work address is Massachusetts General Hospital, Diabetes Center, 55 Staniford Street, Boston, MA 02114.

2. I was asked by Professor Marc Falkoff, attorney for Adnan Farhan Abdul Latif, to review the medical history and reports provided by Drs. Bruce C. Meneley (Exhibit 1) and Col. Bruce Vargo (Exhibit 2) regarding Mr. Latif and to provide an opinion as to whether the medical care he is receiving meets a standard of acceptable medical care as provided in the United States. I have personal knowledge of the following matters and could competently testify thereto.

3. In his report, Dr. Meneley concludes that Mr. Latif suffers from a "personality disorder" and not from a severe mental illness, such as major depression. Moreover, he specifically concludes that the suicide attempt on June 18, 2008 was merely a "gesture" (without noting whether there was a history of prior "gestures") and that Mr. Latif's year-long (February 2007 to February 2008) refusal to eat was a hunger strike and not a manifestation of a major depression. After describing the suicide gesture, Dr. Meneley concedes that "some of his behavior conceivably could have resulted in self harm," presumably referring to the one-year hunger strike, need for nasogastric feeding tube feedings, the recent renewal of his refusal to eat – accompanied by a reported weight loss of more than 25 pounds – and the suicide attempt. No other causes of his recent weight loss were apparently investigated.

4. The records supplied by Dr. Meneley do not provide sufficient information to determine whether Mr. Latif's recent weight loss could reasonably have been a consequence only of decreased food intake over an undisclosed period of time or, alternatively, whether some other medical illness, such as active tuberculosis, gastric ulcer, gastroenteritis, or depression induced anorexia might be playing a role.

5. Finally, the physicians who are charged with Mr. Latif's care conclude that his positive test for tuberculosis is only a manifestation of exposure and that he does not have active tuberculosis, since he has not manifested "night sweats, cough or hemoptysis." While this may be true, they have not evaluated the patient for either pulmonary or extra-pulmonary tuberculosis, with no chest x-ray for two years. Since starvation and malnutrition are well-recognized factors that can "activate" tuberculosis, the failure to properly evaluate whether this prisoner has active tuberculosis, and the potential effect that active tuberculosis might have on his appetite, gastrointestinal function and weight, represents inadequate clinical care.

6. Although I am not a psychiatrist, the conclusion that the detainee does not suffer from major depression in the face of imprisonment for many years, self-imposed starvation, and suicide "gestures" (which in the setting of stringent imprisonment and absence of opportunity must be difficult if not impossible to interpret) is neither reasonable nor justifiable. Similarly, the failure to evaluate thoroughly the presence of other potential causes of Mr. Latif's symptoms, such as active pulmonary or extra-pulmonary tuberculosis, activated through starvation, or of the detainee's folliculitis and skin rash – possibly a manifestation of vitamin C deficiency (scurvy) – is inexcusable.

7. The physicians charged with providing care for Mr. Latif outline the procedures that they follow in great detail and claim that the care provided "rivals that provided in any community in the United States." These protestations aside, in my opinion the physicians providing care for this Guantanamo prisoner have lost sight of the context (imprisonment without process or hope for release) in which they are participating and the consequences of such treatment on the human psyche. Following procedures should and does not insulate them from the obligation to provide humane care and relieve suffering. Symptoms must be interpreted in the context of the setting, and it is difficult to fathom or accept Dr. Meneley's final conclusion that Mr. Latif is "currently in good health with no significant medical problems." The description provided by Dr. Meneley directly contradicts this conclusion.

8. It is impossible, however, to state definitively whether Mr. Latif is receiving adequate medical care without, at least, access to his medical records.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 2, 2008 in Boston, Massachusetts.

_____
David M. Nathan, M.D.

3