Pre-approved by CSO for ECF filing

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **IN RE:** | ) | **Misc. No. 08-442 (TFH)** |
|  | ) |  |
| **GUANTÁNAMO BAY** | ) | **Civil Action No. 04-1194 (HHK)** |
| **DETAINEE LITIGATION** | ) |  |
|  | ) |  |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION
FOR PARTIAL AND TEMPORARY RELIEF FROM
THE COURT'S JULY 11, 2008 SCHEDULING ORDER**

Petitioners Musa'ab Omar Al Madhwani, Jalal Salim Bin Amer, and Suhail Abdoh Anam ("Petitioners") hereby oppose Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order ("Motion").[1]

Petitioners have been waiting in a prison cell at Guantánamo Bay Naval Station since 2002. Their petition for writ of habeas corpus was filed more than four years ago, on July 15, 2004. On October 6, 2004, Respondents filed their factual returns for each petitioner; Respondents chose to submit the final record of proceedings before the Combatant Status Review Tribunal ("CSRT"). Petitioner Musa'ab Omar Al Madhwani filed his traverse on July 28, 2008. His case is ready to proceed to an evidentiary hearing.

Since Petitioners' case was filed in 2004, it has been mired in the jurisdictional dispute that was finally resolved by the United States Supreme Court in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Yet now, almost three months after the Supreme Court's decision and despite the Supreme Court's admonition that "the costs of delay can no longer be borne by those who are held in custody" (*id*. at 2275), Respondents have defied this Court's Scheduling Order and have instead moved for at least another month of delay in virtually all of the coordinated habeas cases.

---

[1] In this Response, Petitioners adopt various arguments from Petitioners' Opposition to Motion for Partial and Temporary Relief From the Court's July 11, 2008 Scheduling Order filed in *Al Odah v. U.S.*, Case No. 02-0828

1

Under the Scheduling Order, Respondents were required to move for leave to amend

Petitioner's factual return by August 29, 2008.[2]  This Court should deny Respondents' Motion

for relief (a) from a schedule Respondents themselves requested, and (b) for which Respondents

have utterly failed to show good cause.  The Court should further rule that Respondents have

waived their opportunity to seek leave to amend their factual return, and Petitioners' case should

proceed expeditiously on the CSRT records that Respondents chose to rely upon as

"justification" for holding Petitioners for the past six years.

I.      **This Court Ordered Respondents To Produce 50 Factual Returns
        Per Month, With No Exceptions Absent Good Cause.**

On June 18, 2008, the government assured the Court of Appeals for the District of

Columbia Circuit that its "defense and intelligence resources must now be focused exclusively

on preparing factual returns for the district court habeas proceedings . . . ."  (Motion to Hold in

Abeyance or in the Alternative Dismiss Without Prejudice, at 5, *Al Madhwani v. Gates*, No. 07-

1116 (June 18, 2008), attached as Exhibit A.)  As a result, the government argued, Petitioner

Musa'ab Omar Al Madhwani's pending action under the Detainee Treatment Act of 2005

("DTA") should be held in abeyance or dismissed.  (*Id.*)  Petitioner Al Madhwani responded that

he did not object to the DTA case being held in abeyance, provided that the government

complies with its outstanding obligations under the Court of Appeals' order of September 7,

2007, requiring the government to produce information relating to Petitioner's CSRT.

(Petitioner's Response, at 1, *Al Madhwani v. Gates*, No. 07-1116 (June 30, 2008), attached as

Exhibit B.)  The government refuses to produce the information ordered by the Court of Appeals

on the ground that doing so would interfere with the government's ability to "proceed

_____

(D.D.C. Sept. 3, 2008) and attribute those arguments to counsel for the *Al Odah* petitioners.
[2] Respondents moved to amend the factual return of Petitioner Jalal Salim Bin Amer on September 5, 2008, one full
week after the deadline set forth in the Scheduling Order.  *See* Dkt. 340.  Petitioner will address Respondents' late

expeditiously" in Petitioner's habeas case.  (Reply in Support of Motion, at 5-6, *Al Madhwani v. Gates*, No. 07-1116 (July 11, 2008), attached as Exhibit C.)

On July 2, 2008, the judges of this Court, including Judge Kennedy, ordered most of the habeas petitions filed by Guantánamo detainees to be transferred to Judge Thomas F. Hogan for purposes of coordination and management "so that these cases can be addressed as expeditiously as possible per the Supreme Court's decision in *Boumediene v. Bush*."  (Dkt. 1.)  At a status conference on July 8, 2008, the parties expressed their views on how these cases should be managed and scheduled.  Counsel for Petitioners expressed concern that Respondents might use the Court's efforts to coordinate these cases as a further opportunity for delay.

At the July 8 status conference, and in letters and pleadings filed before and after the conference, Respondents requested that they be allowed until the end of August 2008 to file factual returns and motions for leave to amend returns in the first 50 cases, and that they be allowed to continue filing returns and motions for leave to amend returns at a rate of 50 per month after that.  (Dkt. 39.)  Petitioners opposed the request, but Respondents assured this Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id*.) and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases."  (*Id*. at Ex. A.)

At the July 8, 2008 hearing, Judge Hogan explicitly directed Respondents to alert other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other
> case that's pending before them in their division, and address these cases first.
> Put them on notice that I expect the corresponding agencies to do the same; that
> they're now in a court process, the Supreme Court has spoken, has asked strongly
> that these be handled promptly.

---

filing of the Motion for Leave to File Amended Factual Returns in Petitioner's Response Brief.

3

(July 8, 2008 Hearing Transcript, at 82.)  Judge Hogan also warned that delays would be granted

only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions.  And whatever I decide, I would
> anticipate the parties will follow and that motion[s] for extension will be rarely
> granted.  And that any type of extension would have to be approved by the court.
> It makes no sense to set a schedule to make continuances.

(*Id.* at 60.)

Over Petitioners' objections, the Court gave Respondents precisely the Scheduling Order

they asked for, allowing them until August 29, 2008 to prepare returns and motions to file

amended returns in the first 50 pending cases, including Petitioners' case, and allowing

Respondents to file returns and motions to amend at a rate of 50 cases per month thereafter.

(Dkt. 53, Scheduling Order.)  As Judge Hogan stated at the July 8 hearing, the Scheduling Order

allows Respondents to request exceptions to the sequencing only:

> if the government believes that an individual factual return is significantly more
> complicated than others or a particular detainee's circumstances present unique
> issues that require more time to complete the return such that processing the
> return would delay the overall processing . . . .  As with amendments, the Court
> will only allow exceptions where the government establishes cause.

(*Id.* at ¶ 4.)  The plain intent of the Scheduling Order is to allow exceptions only on a case-by-

case basis, based on good cause, and solely in order to avoid delays in the processing of other

cases.  The Scheduling Order does not anticipate that a delay would be requested, much less

granted, for the filing of virtually *all* amended returns without a particularized showing of good

cause.  As Judge Hogan stated at the July 8 hearing:  "delays . . . would reflect badly and would

cause the Court to become perhaps not only concerned, but suspicious of the necessity for further

delay, which could -- to the detriment of the government in how we proceed with these cases and

take them to trial." (Transcript at 91.)

**II.     Respondents' Motion Fails To Establish Good Cause, Aims To Perpetuate Delay, And Should Be Denied By This Court.**

At midnight on the Court's deadline for the filing of 50 returns and motions for leave to amend returns, Respondents requested an extension of the very schedule they requested. Instead of filing 50 returns in these coordinated cases, Respondents filed 10 in the coordinated cases and 12 in the handful of cases pending before Judges Leon and Sullivan. (Motion at Ex. A.) Respondents did not move for leave to amend Petitioners' factual returns,[3] even though some of the returns and amended returns Respondents did file were in cases filed long after Petitioner filed his habeas case. (*Id.*)

Respondents requested this extension after the deadline had passed, without any effort to meet and confer with Petitioner's counsel, and without any showing of good cause. In their Motion, Respondents announce that they have been "unable to complete" the filing of the first 50 factual returns, request an additional 30 days to file these returns, and express "hope" to produce 50 factual returns per month thereafter. (*Id.* at 1, 12-13.) Nowhere in Respondents' Motion is there any indication – much less assurance – that Respondents will comply with their "hoped for" schedule. Instead, Respondents promise only to "strive" to do so. (*Id*. at 12.) Respondents' equivocal language strongly suggests that they are laying the groundwork now for more missed deadlines and requests for extensions of time in the future.

The reasons offered by Respondents do not come close to showing good cause for granting their Motion. First, Respondents contend that they "could take only limited steps to prepare for the defense of claims by the Guantanamo detainees" until the Supreme Court issued the *Boumediene* decision. (*Id.* at ¶ 4.) Nonsense. Petitioners filed their habeas petition in 2004, after the Supreme Court had already ruled that this Court had jurisdiction under the habeas

---

[3] As noted above, one week after the original deadline Respondents filed a Motion for Leave to Amend Factual

statute to hear the habeas claims of Guantánamo prisoners. *Rasul v. Bush*, 542 U.S. 466, 484 (2004). Respondents doggedly opposed this Court's jurisdiction in the federal courts and in Congress, but that did not prevent Respondents from preparing their defense of Petitioners' habeas claim. The fact that this claim now rests on constitutional grounds does not alter the fundamental issue in this case: Respondents must justify their detention of Petitioners. That was the issue in 2004, and it remains the issue today.

Second, Respondents claim that DoD needs more time to gather the information that would justify Petitioners' detention. (Motion at 4.) But more than four years ago, Deputy Secretary of Defense Paul Wolfowitz claimed that every Guantánamo prisoner had already "been determined to be an enemy combatant through *multiple levels of review* by officers of the Department of Defense." (Order Establishing Combatant Status Review Tribunal, July 7, 2004, at 1, emphasis added, attached as Exhibit D.) Apparently Respondents believe that their earlier "multiple levels of review" relied on inadequate justifications for detaining Petitioners that must now be supplemented. According to DoD, its 30-lawyer team has reviewed less than 1,900 documents within the past 30 days – an average of less than three documents per lawyer per business day. (Motion, Ex. B at ¶¶ 5, 7.) Respondents also request additional time so that DoJ may draft a "narrative that summarizes the case for detaining the petitioner as an enemy combatant." (*Id.,* Ex. C at ¶ 9.) That is exactly what Respondents claimed to have included in the CSRT records. (Ex. D at g(3) and h.) Respondents' desire to bolster their purported justifications, or to "develop the Government's best possible case" (Motion, Ex. C at ¶ 8), cannot override the Supreme Court's clear mandate: Petitioners are "entitled to a prompt habeas corpus hearing." *Boumediene*, 128 S. Ct. at 2275.

---

Returns for Jalal Salim Bin Amer (Dkt. 340).

Third, Respondents claim that the CIA needs 30 days to review and approve each factual return before it can be submitted to the Court, Petitioners' counsel, or the public.[4] (Motion at 3, Ex. D at ¶¶ 8-9.) Although Petitioners' counsel have not seen (and therefore object to) the classified portions of the declaration submitted by CIA Director Michael V. Hayden, Director Hayden's unclassified declaration shows that Respondents have no excuse for missing this Court's deadline. Director Hayden reports that DoJ and DoD (with, according to Respondents, between 50 and 80 full-time attorneys) produced their first factual return for CIA review on August 12, 2008 – more than a month after the Scheduling Order. (*Id.* at ¶ 19.) This belies Respondents' claims that they are working diligently to expedite the factual returns.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve. Respondents decided to rely "extensively" on information that they designated as classified, they delayed in compiling and reviewing the information among themselves, and they decided to include DoJ narratives. (Motion at 3, 6.) The Court should not permit such self-engineered hurdles to justify Respondents' delay. Respondents' last-minute filing is based not on good cause, but on tactical considerations or, at best, a failure of leadership in the departments involved. (*See id.*, Ex. B at ¶ 7, Ex. C. at ¶ 13, Ex. D at ¶ 19.)

Petitioners have been detained since 2002, and their habeas case has been pending since 2004. Respondents have sought to delay Petitioners' case at every opportunity. The purpose of

---

[4] Filing a classified factual return under seal does not risk public disclosure of classified information. Petitioners' counsel already have "secret" level security clearance from the government and are authorized to access and review "secret" level classified documents. Indeed, DoJ informed Petitioners' counsel that they received a more extensive background check so that counsel's clearance level could be upgraded quickly to "top secret" if necessary. It is unclear to Petitioners' counsel why they or the Court should be prohibited from reviewing the newly drafted factual returns until the documents are cleared by the CIA, and Respondents have cited

having a single judge coordinate the habeas cases for management purposes cannot be realized if

Respondents are permitted to disregard the management orders with impunity.  In order to

preserve the intent of the coordination of habeas cases to address the cases as expeditiously as

possible, this Court should enforce its Scheduling Order strictly, particularly where – as here –

there is no good cause shown for an exception.  It is long past time to test Respondents' basis for

holding Petitioners in a fair hearing before an independent judge.

## Conclusion

Respondents' last-minute filing makes clear that Respondents are still attempting to

impose the "costs of delay" upon those held in prison.  This Court should enforce the Supreme

Court's ruling that "the detainees in these cases are entitled to a prompt habeas corpus hearing,"

*Boumediene*, 128 S. Ct. at 2275, deny Respondents' Motion, and rule that Respondents have

waived their opportunity to move for leave to amend Petitioners' factual return.


Dated:  September 8, 2008

---

no DoJ or DoD authority, policy, or procedure requiring that such a process be followed.

Respectfully submitted,

　/s/　David W. DeBruin

One of the Attorneys for Petitioners

David W. DeBruin (DDC Bar No. 337626)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W., Suite 1200
Washington, DC  20005-3823
Tel: (202) 639-6000
Fax: (202) 639-6066

Darold W. Killmer
Mari Newman
Sara Rich
KILLMER, LANE & NEWMAN LLP
1543 Champa Street, Suite 400
Denver, CO 80202
Tel: (303) 571-1000
Fax: (303) 571-1001

Patricia A. Bronte
Sapna G. Lalmalani
JENNER & BLOCK LLP
330 North Wabash Ave.
Chicago, IL  60611
Tel: (312) 923-8357
Fax: (312) 840-7757

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2008, I caused the foregoing Petitioners' Opposition

to Respondents' Motion for Partial and Temporary Relief From the Court's July 11, 2008

Scheduling Order to be delivered to the counsel listed below in the above-captioned matter

through the CM/ECF system:

        Andrew I. Warden
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue NW
        Washington, D.C. 20530

        Terry Marcus Henry
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue NW
        Washington, D.C. 20530

                /s/  David W. DeBruin