# EXHIBIT C

[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MUSA'AB OMAR AL MADHWANI, )
)
Petitioner, )
) No. 07-1116
v. )
)
ROBERT M. GATES, )
)
Respondent. )
_____)

**REPLY IN SUPPORT OF MOTION TO HOLD IN ABEYANCE OR
IN THE ALTERNATIVE DISMISS WITHOUT PREJUDICE**

As the Government explained in its motion, this proceeding should be stayed or held in abeyance pending the conclusion of petitioner's habeas proceeding in the district court. In his response to the Government's motion, petitioner Musa'ab Omar Al Madhwani "does not oppose" the Government's request "for an order holding this case in abeyance" while he pursues his habeas corpus action in the district court. Petitioner's Response at 1. Petitioner argues, however, that the abeyance order should be conditioned upon the Government's production of the "Government Information" in his DTA case. See id. at 3. As we now show, there is no sound basis for petitioner's request for production.

1. There is no legal ground upon which petitioner can demand production of the Government Information. Both petitioner's request for the Government Information, and this Court's order of September 7, 2007, were based upon this Court's decision in *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007). On June 23, 2008, however, the Supreme Court vacated this Court's decision in *Bismullah*. *Gates v. Bismullah*, ___ S. Ct. ___, 2008 WL 436938 (U.S. June 23, 2008) ("The judgment is vacated and the case is remanded to the United States Court of Appeals for the District of Columbia Circuit for further consideration in light of *Boumediene v. Bush*, 553 U. S. ___ (2008)."). Thus, the *Bismullah* decision is of no further effect at this time, and the order in this case that relies on it is no longer operative.

Given the vacatur of *Bismullah*, there is no legal basis for petitioner to now demand the broader Government Information in this case. Thus, this Court should reject Petitioner's suggestion that his DTA case should be held in abeyance only after the production of the Government Information.

2. The Supreme Court vacatur of this Court's ruling in *Bismullah* further supports holding the DTA cases in abeyance. In *Bismullah*, this Court addressed of critical threshold issues, such as the scope of the record on review and the standard of review. *See* 501 F.3d at 180-81, 183. Because the Court's decision in *Bismullah* has been vacated and remanded by the Supreme Court for further consideration in

light of *Boumediene*, those key threshold issues remain unresolved. The fact that the scope of the record on review and the standard of review under the DTA now remain unresolved, further counsels in favor of holding the DTA cases in abeyance, while the parties and the courts address the habeas petitions filed by the detainees.

As we explained in our abeyance motion, requiring the DTA cases to proceed, even based on the more limited record, would waste scarce judicial and governmental resources required for the habeas litigation. To manage their dockets and conserve judicial resources, courts routinely stay or hold in abeyance cases, particularly where a stay pending resolution of a related action might eliminate the need to litigate the case or, at a minimum, reduce the issues to be litigated. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (a court "has broad discretion to stay proceedings as an incident to its power to control its own docket"); *Landis v. North Am. Co.*, 299 U.S. 248, 256 (1936) (when a case presents "great issues" and "novel problems of far-reaching importance to the parties and the public," and a decision in a related case "will settle many and simplify them all," a stay is unquestionably proper, so long as it is "kept within the bounds of moderation").

Here, there is good cause for holding the DTA cases in abeyance. As we explained in our motion, the Supreme Court held in *Boumediene* that the review provided under the DTA in this Court is inadequate and the habeas proceedings for

3

the petitioners should move forward now. *Gates v. Bismullah*, ___ S. Ct. ___, 2008 WL 436938, Slip Op. at 66. We further explained that while the habeas actions move forward, it makes sense to hold the DTA actions in abeyance. Congress intended the process of adjudicating claims by detainees to be a streamlined one. *See, e.g.*, 152 Cong. Rec. S10403 (daily ed. Sept. 28, 2006) (Sen. Cornyn) ("once * * * section 7 is effective, Congress will finally accomplish what it sought to do through the [DTA] last year. . . . It will substitute the blizzard of litigation instigated by *Rasul v. Bush* with a narrow DC Circuit-only review of the Combatant Status Review Tribunal--CSRT--hearings"); 152 Cong. Rec. H7938 (Rep. Hunter) (daily ed. Sept. 29, 2006) ("The practical effect of this amendment will be to eliminate the hundreds of detainee lawsuits that are pending in courts throughout the country and to consolidate all detainee treatment cases in the D.C. Circuit"). Simultaneous litigation in both the 190 DTA cases in this Court and the more than 200 habeas cases in the district courts would be as far from congressional intent as possible, and it would waste scarce judicial and governmental resources.

3. The waste of limited resources would be far greater if this Court were to require the production of the Government Information. In its supplemental opinion on rehearing, the *Bismullah* panel acknowledged that, because the Government did not possess the historical record of what material was "reasonably available" to the

Recorder at the time of the tribunals, the Government would have to "'search[] for all relevant information without regard to whether it is reasonably available,'" because it "'can conceive of no other comprehensive method to ensure that [it] identif[ies] information that the Recorder could have examined.'" *Bismullah*, 503 F.3d at 141. Recognizing that burden, the panel noted that Government could "abandon its present course of trying to reconstruct the Government Information by surveying all relevant information in its possession without regard to whether that information is reasonably available, and instead convene a new CSRT." *Id.* Obviously, such search efforts and/or remands for new CSRTs would severely tax the same limited intelligence and military resources that are being devoted to preparing factual returns for the habeas litigation. As a practical matter, it is not feasible for both course of actions to go forward at the same time.

Further, in order for the habeas proceedings to move forward at the pace anticipated by the Supreme Court, the significant military and intelligence resources that have been devoted to preparing records and reviewing classified filings to facilitate DTA review in this Court must now be focused exclusively on preparing factual returns for the district court habeas proceedings and clearing filings for those more than 200 cases. Petitioner mistakenly contends that because the government has not produced the Government Information to petitioner, it has failed to "devote

significant resources to facilitating this Court's review of *this* case." Response at 3 (emphasis added). Petitioner's DTA case, however, is only one of the 190 DTA cases and over 200 habeas cases for which the government is responsible. As we have explained, concentrating military and intelligence resources on the habeas cases at this juncture is necessary to allow all of the habeas cases – including petitioner's – to proceed expeditiously.

The Department of Justice is dedicating substantial resources to ensure that the habeas actions proceed swiftly, including assigning approximately 50 attorneys to litigate those cases. In addition, other relevant federal agencies will be devoting the substantial resources necessary to process the factual returns in the habeas cases at a sufficient rate so that it is anticipated that all factual returns for petitioners detained at Guantanamo will be filed within a four-to-five month period. *See* Letter from Gregory G. Katsas to Chief Judge Lamberth & Judge Hogan (dated June 30, 2008). Likewise, the district court has expressed its commitment to expeditiously resolving the habeas cases. *See* U.S. District Court for the District of Columbia, Press Release: DC Chief Judge Meets with Judges to Discuss District Court Procedures for Guantanamo Cases (July 2, 2008).

Given the swiftness of the habeas proceedings, therefore, those cases are likely to outpace this Court's resolution of pending DTA actions. As noted above, as a

result of the vacatur of *Bismullah*, threshold issues, such as the scope of the record on review in DTA actions, have not yet been determined. Even if those cases were to proceed, the remedy for a flaw in the Department of Defense's enemy combatant determination includes granting the Department of Defense an opportunity to conduct a new CSRT, as this Court recognized in *Parhat* v. *Gates*, No. 06-1397, ___ F.3d ___ (June 20, 2008), Slip Op. at 31-33. An action under the DTA, therefore, is likely to be a slower route to potential release than a habeas proceeding. *See id.* at 32 (DTA is not "best[] path to release"). Accordingly, requiring the courts and the Government to devote significant resources to DTA actions while the habeas actions move forward apace would make little sense.

**4.** Finally, nothing in this Court's recent decision in *Parhat* addresses whether this case, or other DTA cases, should be held in abeyance. The fact that this Court held in *Parhat* that respondent must convene expeditiously a new CSRT hearing or transfer or release Parhat, *id.* at 3, 33, in no way obviates the need to proceed expeditiously with Parhat's habeas action. This Court, in fact, encouraged Parhat to pursue his habeas action, recognizing that habeas proceedings would be "more protective" of Parhat's rights and would likely be a more speedy "path to release." *Id.* at 32. And, at the time the Court decided *Parhat*, it did not even have the benefit

of the district court's or Department of Justice's statements indicating their commitments to ensure that the habeas cases will proceed expeditiously.

Moreover, petitioner would be unable to find support in this Court's dismissal of respondent's motion to hold in abeyance Parhat's DTA action. The Court simply dismissed respondent's motion as moot, *after* issuing its ruling on the merits. That mootness order does not in any way address whether other DTA cases should be held in abeyance given the simultaneous district court litigation. Indeed, even in *Parhat*, this Court recognized the primacy of the habeas proceedings. *Parhat*, Slip Op. at 32.

Notably, *Parhat* had been fully briefed and argued for over two months when *Boumediene* was decided. The remaining step of finalizing and issuing its opinion on the merits eight days after *Boumediene* was not an endorsement of petitioner's proposal to forge ahead with some 190 DTA cases while the same fundamental issue (of whether a petitioner is lawfully detained as an enemy combatant) is being litigated at the same time before the district courts in the habeas cases. At the time *Parhat* was briefed and argued, only one court was processing such claims (*i.e.*, this Court under the DTA). Now, that the Supreme Court has held the DTA process in this Court to be inadequate, it is clear that the detainee cases can and will promptly move forward in the district court. Insisting upon this simultaneous, duplicative litigation makes no

sense in this context and would only serve to waste limited resources that must be dedicated to the habeas litigation.

In sum, the Supreme Court's decision in *Boumediene* in no way limits the Court's power to issue case-management orders such as an order holding the case in abeyance. *Boumediene* simply holds that the detainees are not *required* to exhaust their DTA remedies before pursuing a habeas action. Slip Op. at 66. Once petitioner's habeas petition is resolved by the district court, if necessary, this Court could reopen petitioner's DTA action and proceed with any remaining issues. As explained above, moreover, it is not only appropriate but also necessary to hold the DTA cases in abeyance to avoid overburdening the judicial system and impairing the courts' ability to move forward with the detainees' habeas cases and appeals.

# CONCLUSION

For the foregoing reasons and those given in our motion, the Court should hold this case in abeyance pending the conclusion of litigation relating to the petition for habeas corpus filed by petitioner. In the alternative, the Court should dismiss the present case without prejudice.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JONATHAN F. COHN
Deputy Assistant Attorney General

DOUGLAS N. LETTER
(202) 514-3602

*/s/ Barbara L. Herwig*
BARBARA L. HERWIG
(202) 514-5425

*/s/ Anne Murphy*
ANNE MURPHY
(202) 514-3688
Attorneys, Appellate Staff
Civil Division, Room 7644
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

# CERTIFICATE OF SERVICE

I certify that on July 11, 2008, I filed the foregoing **Reply in Support of Motion to Hold in Abeyance or in the Alternative Dismiss Without Prejudice** with the Court and served it upon the following counsel by causing a copy to be sent by first class mail, with a courtesy copy by email, to:

Patricia A. Bronte
Maya D. Nath
Sapna G. Lalmalani
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL 60611

Darold W. Killmer
Mari Newman
Sara Rich
KILLMER, LANE & NEWMAN LLP
1543 Champa Street, Suite 400
Denver, CO 80202

Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

_____
Anne Murphy
Attorney for the Respondent