# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— x
                                                  :
IN RE:                                            :

GUANTÁNAMO BAY                   :   Misc. No. 08-442 (TFH)
DETAINEE LITIGATION             :

———————————————————— x
                                                  :
MOHAMMED SULAYMON BARRE,   :

          Petitioner,     :

     v.                      :   Civil Action No. 08-CV-1153 (HHK)

GEORGE W. BUSH, *et al.*,         :

          Respondents.  :
———————————————————— x

## DECLARATION OF EMILOU MACLEAN

I, EMILOU MacLEAN, pursuant to 28 U.S.C. § 1746, hereby declare and state:

1. I am a Staff Attorney at the Center for Constitutional Rights ("CCR") and am fully familiar with all the facts stated herein. I make this declaration in support of Petitioner Mohammed Sulaymon Barre's Opposition to Motion for Partial Relief and Cross-Motion for an Exception to Sequencing Based on Exceptional Circumstances.

2. I represent Mohammed Sulaymon Barre, a refugee protected under the mandate of the United Nations ("UN") who has nevertheless been imprisoned without charge or trial for approximately 82 months.

1

3. I also coordinate CCR's efforts to seek humanitarian protection in third countries for the dozens of men who remain imprisoned at Guantánamo because they cannot be safely or legally repatriated to their home countries for fear of torture or persecution. As part of this work, I have testified before the House Committee on Foreign Affairs and the European Parliament's Joint Subcommittee on Human Rights and Committee on Civil Liberties.

4. Mr. Barre has not yet had any telephonic or other communication with his family members in the more than six years that he has been in the custody of the U.S. government. It is my understanding that he was unable to communicate directly by letter with his family in Somaliland until after he secured representation. His family likewise had no knowledge that there was any way to communicate with lawyers or others in the United States who might be able to help Mr. Barre challenge his detention.

5. It was largely coincidence that CCR lawyers were able to make initial contact with Mr. Barre's family – and this initial contact only occurred *after* CCR's representation of him began. CCR had only limited information regarding the location of Mr. Barre's family who live in the quasi-independent state of Somaliland, one of the more inaccessible countries of the world to foreigners. Mr. Barre's family likewise has limited ability to contact anyone in the United States, or to know who might be able to assist him.

6. In a recent phone call with Mr. Barre's father, I was told by Mr. Barre's father that he knew nothing about his son's status or location until he was approached by CCR lawyers. He presumed the worst.

7. As part of my representation of Mr. Barre, I have engaged in high-level communications with Somaliland government officials. They have expressed their strong interest in securing Mr. Barre's repatriation to Somaliland and their belief that he could be safely

repatriated there. Mr. Barre's family similarly has expressed their willingness and ability to receive Mr. Barre upon his release from Guantánamo.

8. Further, as part of my representation of Mr. Barre, I have been engaged in ongoing communications with officials at the United Nations High Commissioner for Refugees ("UNHCR"), in Washington, D.C. and in their Headquarters in Geneva, Switzerland, who are engaged in efforts to seek a safe outcome for Mr. Barre. UNHCR has provided documentation confirming Mr. Barre's status as a refugee protected by the UN mandate prior to his transfer to Guantánamo and has accepted their continuing obligation to ensure his protection.

9. Counsel for Mr. Barre are coordinating with counsel for Mr. Mohammed Hussein Abdullah, his father-in-law, to facilitate their safe transfer from Guantánamo to Somaliland.

10. An analysis of the history of transfers from Guantánamo demonstrates that an individual's nationality may be the most important factor in determining whether an individual is released from Guantánamo or remains imprisoned in 2008. Due to political and diplomatic pressure, virtually all of the Europeans were released from Guantánamo in the first three years of the prison's use to house alleged terror suspects. Almost none of these men were subjected to prosecution upon their return. The overwhelming majority of the Saudis – formerly one of the largest populations at Guantánamo – have also already been repatriated in response to diplomatic efforts.

11. The majority of the prisoners who remain at Guantánamo in September 2008 are either from the impoverished Arab country of Yemen, are effectively stateless, or are from countries to which they are unable to safely return due to fear of torture or persecution.

12. Mr. Barre and his father-in-law are in a unique situation. They hail from the quasi-independent state of Somaliland that declared its independence from Somalia in 1991.

3

They cannot safely return to Somalia for fear of persecution based on their ethnic and tribal affiliation, and their designation as "enemy combatants" at Guantánamo Bay. The country which they seek to return to – Somaliland – has only informal, unofficial diplomatic relations with the United States through the U.S. Embassy in Djibouti. This unique situation – an inability to return to Somalia and the distinctive U.S.-Somaliland relationship – impedes diplomatic efforts to secure their release.

       I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       September 8, 2008

                                     /s/ Emilou MacLean_____
                                     EMILOU MacLEAN
                                     Staff Attorney
                                     Center for Constitutional Rights