|                            |   |                                              |
|---------------------------|---|----------------------------------------------|
| **UNITED STATES**         | } | **D-022**                                    |
| **OF**                    | } | Ruling on Defense Motion for Dismissal Due to |
| **AMERICA**               | } | Lack of Jurisdiction Under the MCA in Regard to |
|                           | } | Juvenile Crimes of a Child Soldier           |
|                           |   |                                              |
|                           |   | **30 April 2008**                            |
| v                         | } |                                              |
|                           | } |                                              |
| **OMAR AHMED KHADR**      | } |                                              |
| a/k/a "Akhbar Farhad"     | } |                                              |
| a/k/a "Akhbar Farnad"     | } |                                              |
| a/k/a "Ahmed Muhammed Khahi" | } |                                          |

1. The commission has considered the defense motion, the government response, and the defense reply. Both sides presented oral argument on the matter.

2. The commission received three *amicus* briefs which, exercising the discretion granted to the military judge by the Rules of Court, meet the requirements of RC 7 for the purposes of this motion.

   ● Amicus Curiae Brief filed by McKenzie Livingston, Esq. on Behalf of Sen. Robert Badinter, *et. al.*

   ● Amicus Brief filed by Sarah H. Paoletti on behalf of Canadian parliamentatarians and law professors, international law scholars with specific expertise in the area of international humanitarian law, international criminal law and international human rights law, and foreign legal associations.

   ● Amicus Brief filed by Marsha Levick on behalf of Juvenile Law Center

These briefs will be attached to the record of trial as part of the appellate exhibit which contains this ruling. Having reviewed these briefs, the commission:

   a. Decided to consider them; and,

   b. Decided, despite the government's request in footnote 1 of its response, that no supplemental response from the government was necessary. *See* RC 7.7b.

3. The commission received a special request for relief from the defense (8 February 2008) for the commission to admit into evidence and consider statements allegedly made by Senator Lindsay Graham of South Carolina and reported in a story in the Wall Street

1

AE 95 (Khadr)
Page 1 of 188

Journal dated 7 February 2008.  The government opposed the request (13 February 2008) and offered a press release (13 February 2008).   The defense replied and affirmed their initial request (13 February 2008).

      a. The defense request is granted in part as follows:  While the commission shall not admit as evidence any of the matters presented by either party in connection with this special request, the special request for relief (to include the Wall Street Journal article which was included in the email containing the special request), the government response, the press release, and the defense reply will be attached to the record of trial as part of the appellate exhibit which contains this ruling.

      b. The commission has considered the matters referenced in paragraph 3a in making its decision.

## Statutory Jurisdiction Over Child Soldiers

4.  The defense motion states that Congress did not give the commission "jurisdiction over juvenile crimes by child soldiers."  (Paragraph 5a(1), Defense Motion)  That statement is not legally correct.  Congress said nothing about jurisdiction over child soldiers.  The jurisdictional portion of the Military Commissions Act of 2006 (MCA) reads:

> **''§ 948d. Jurisdiction of military commissions**
> ''(a) JURISDICTION.—A military commission under this chapter shall have jurisdiction to try any offense made punishable by this chapter or the law of war when committed by an alien unlawful enemy combatant before, on, or after September 11, 2001.

There is no statutory age limitation within § 948d(a).

5.  Further, the definition of "unlawful enemy combatant" contained in § 948a(1) reads:

> **''§ 948a. Definitions**
> ''In this chapter:
> ''(1) UNLAWFUL ENEMY COMBATANT.—(A) The term 'unlawful enemy combatant' means—
> ''(i) a person who has engaged in hostilities or who has purposefully and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces);
> or
> ''(ii) a person who, before, on, or after the date of the enactment of the Military Commissions Act of 2006, has been determined to be an unlawful enemy combatant by a Combatant Status Review Tribunal or another competent tribunal established under the authority of the President or the Secretary of Defense.

2
AE 95 (Khadr)
Page 2 of 188

There is no statutory age limitation within § 948a(1).

6. Further, in 1 USC § 8a(1), Congress has set forth the following rule of construction for the word "person":

> § 8. "Person", "human being", "child", and "individual" as including born-alive infant,
>
> (a) In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the words "person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development.

7. Reading the statutory provisions together, it is clear that Congress did not, either by implication or otherwise, limit the jurisdiction of a military commission so that persons of a certain age could not be tried thereby.

### Effect of the Juvenile Delinquency Act

8. The defense contends (Paragraph 5d, defense motion) that the provisions of the Juvenile Delinquency Act (JDA), 18 USC §§ 5031 *et seq*, prohibit the trial of Mr. Khadr by a military commission. The defense notes, correctly, that Congress did not expressly abrogate the JDA in the MCA (Paragraph 5d(6), defense motion).

9. In pertinent part, 18 USC § 5032 provides:

> A juvenile alleged to have committed an act of juvenile delinquency, other than a violation of law committed within the special maritime and territorial jurisdiction of the United States for which the maximum authorized term of imprisonment does not exceed six months, **shall not be proceeded against in any court of the United States** unless the Attorney General, after investigation, certifies to **the appropriate district court** of the United States that.... (emphasis added)

While the term "court of the United States" is not defined in Chapter 403 of Title 18, it is defined in other provisions of the Code. None of those definitions include a military commission, a military tribunal, or a court-martial. An example of such a definition is found in 28 USC § 451:

> The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

3
AE 95 (Khadr)
Page 3 of 188

10.  The issue as to whether a military court-martial, commission, or tribunal is a court of the United States or is subject to rules applicable to Article III courts has been addressed in other writings and proceedings.

     a.  Commenting on the distinction between statutes affecting jurisdiction of federal district courts and courts-martial, Winthrop stated: "None of the statutes governing the jurisdiction or procedure of the 'courts of the United States' have any application to [a court-martial]" (Winthrop, Military Law and Precedents (2d Ed. 1920), p. 49).  Quoted in *U.S. v. Thieman,* 1963 WL 4919, 33 C.M.R. 560.561 (A.B.R., 1963).

     b. This distinction would appear to hold true for military commissions as well, considering that the procedures for military commissions are based on the procedures for trial by general courts-martial (10 U.S.C. § 948b(c)).  In *U.S. v. Thieman,* the Army Board of Review noted that both a military and civilian tribunal had previously considered the question as whether the JDA, enacted solely under the Article III powers of Congress affecting the federal judiciary as opposed to the Article I powers granting Congress authority to make rules and regulations for the armed forces, created any limitation on the jurisdiction of a court-martial.  The Board of Review further noted that in both instances the appellant was denied relief.

11.  The commission finds that a military commission established pursuant to the MCA is not a "court of the United States" as that term in used in 18 USC § 5032.  Two of the many indicia that a military commission is not a court of the United States are:

     a. Congress enacted the MCA with a background of previous dealings with commissions and courts.  If Congress had intended to make a military commission a "court of the United States," Congress would have done so.  Instead, Congress used a term that has been in use for hundreds of years within the United States - a military commission.

     b. Congress determined that the judges for these commissions would be military judges (18 USC § 948j).  Military judges are not "entitled to hold office during good behavior."

Having found that a military commission established pursuant to the MCA is not a "court of the United States," the commission need not go further to discuss the obvious anomalies which could be created if the JDA were to apply to this case, such as requiring some state to take jurisdiction and responsibility for a alien captured on the battlefield in a foreign country.

12. The commission finds that the provisions of the JDA are not applicable to a military commission established under the MCA.

## Recruitment and Use of Child Soldiers

13. The commission accepts the position of the defense that the "use and abuse of a juvenile by al Qaeda is a violation of the law of nations…." (Paragraph 5a(2) and footnote 2, defense motion). The commission further accepts the general statements contained within all of the *amicus* briefs which point to many ways in which various nation states and the international community are attempting to limit the recruitment and use of child soldiers. Having accepted these matters, the commission does not find them to be germane to the issue before it.

## Age as a Bar to Trial for Violations of the Law of Nations

14. Both the defense and the prosecution cite the commission to various treaties and protocols and legal writings in an attempt to show that Mr. Khadr's age, at the time of the offenses alleged, does or does not prohibit his trial by military commission on criminal charges. The defense relies, in great part, on the Optional Protocol to the Convention on the Rights of the Child on the involvement of children in armed conflict. Specifically, the defense points to Article 7, paragraph 1 of the Optional Protocol:

> 1. States parties shall cooperate in the implementation of the present Protocol, including in the prevention of any activity contrary thereto and in the rehabilitation and social reintegration of persons who are victims of acts contrary thereto, including through technical cooperation and financial assistance. Such assistance and cooperation will be undertaken in consultation with the States Parties concerned and the relevant international organizations.

15. The government, among other matters cited, believes that the issue is settled by what it calls a relevant comment by the Committee on the Rights of the Child (page 14, government response):

> 32. Rule 4 of the Beijing Rules recommends that the beginning of MACR (**Minimum Age of Criminal Responsibility - language added**) shall not be fixed at too low an age level, bearing in mind the facts of emotional, mental and intellectual maturity. In line with this rule the Committee has recommended States parties not to set a MACR at a too low level and to increase the existing low MACR to an internationally acceptable level. From these recommendations, it can be concluded that a minimum age of criminal responsibility below the age of 12 years is considered by the Committee not to be internationally acceptable. States parties are encouraged to increase their lower MACR to the age of 12 years as the absolute minimum age and to continue to increase it to a higher age level.

16. The commission has reviewed the entire Optional Protocol. Nothing in the Protocol prohibits the trial of Mr. Khadr by this commission. The commission has also reviewed the entire General Comment No. 10: Children's Rights in Juvenile Justice. While it does set a certain MACR, it does not address the issue of MACR for "child soldiers." Both the Optional Protocol and General Comment No. 10 focus on ways in which children may,

should, could, or would be treated before, during, and after criminal prosecutions. Neither of them directly addresses the issue before this commission.

17. The commission finds that certain segments of the international community believe in and articulate various methods and standards which could be used when a person under the age of 16 (or 18 - the segments are not as one on the exact age limit to be used) is charged with a criminal offense - either in violation of the law of nations or in violation of the law of a nation. While these may be interesting as a matter of policy, they are not governing on this commission. To quote from the *amicus* brief filed by Sarah H. Paoletti on behalf of various persons and groups:

> Although international treaty law does not consistently and unequivocally preclude the exercise of criminal jurisdiction over child soldiers by military tribunals, customary international law clearly recognizes that absent exceptional circumstances and rehabilitative intent, such prosecutions should not occur. (Paoletti at page 11.)

The MCA and the Manual for Military Commissions (MMC) give the Convening Authority the power to decide which cases should be referred to trial by military commission. The commission presumes, without deciding, that the Convening Authority considers the circumstances of each case and each accused before referring a case to trial. Whether or not being tried for alleged crimes is rehabilitative is not a question before this commission.

18. Having considered the motion, response, and reply, and the *amicus* briefs, the commission finds that neither customary international law nor international treaties binding upon the United States prohibit the trial of a person for alleged violations of the law of nations committed when he was 15 years of age.

### Last in Time Rule and Customary International Law or Treaty Law

19. Assuming, *arguendo*, that the commission is incorrect in its analysis of the effect of international law on the trial of a person who was 15 at the time when the acts charged allegedly occurred, the commission returns to its analysis of the statutory jurisdiction in the MCA. Congress, by passing the MCA, made the provisions of the MCA superior, under the Last in Time Rule, to prior statutes, treaties, and customary international law. Simply put, while a federal statute and a treaty are both the supreme law of the land (Article VI, Clause 2), a federal statute, passed after the ratification of a treaty, prevails over contrary provisions in a treaty. See, *e.g.,* The Chinese Exclusion Case (Chae Chan Ping v. United States), 130 U.S. 581 (1889).

### Matters Not Addressed

20. The commission has not and will not address that portion of the defense motion and reply which attempts to analogize the position of Mr. Khadr with the position of various accused tried under the Uniform Code of Military Justice (Paragraph 5a(3) and 5b,

defense motion; paragraph 2e, defense reply.). A brief comparison of the jurisdictional prerequisites for the UCMJ found in 18 USC § 802 and § 803 with the jurisdictional prerequisites for a military commission found in § 948d of the MCA reveals that there is no fruitful analogy to be drawn.

21. The commission has not and will not address that portion of the defense (or *amicus* briefs) arguments concerning the unsuitability of the death penalty for acts committed at the age of 15. Mr. Khadr does not face the possibility of a death penalty at this commission. Nor will the commission address the issue of a five-year old child being tried by military commission.

22. The commission has not and will not address that portion of the defense (or *amicus* briefs) arguments concerning what is to the defense an obvious and apparent breach of the United States' duties and obligations concerning rehabilitation and reintegration of Mr. Khadr. Such arguments and issues should be addressed to a forum other than a military commission.

## Conclusion and Ruling

23. The commission has considered the defense (and *amicus* briefs) arguments in light of the scheme for trial established by the MCA and the MMC.

    a. The arguments and positions presented concerning the need to protect a child and a child's incapacity to understand her/his actions relate to issues which may be presented to the finders of fact at this commission. RMC 916, generally, and RMC 916c, e, h, j, and k, specifically, authorize the presentation of matters which would negate intent and capacity, among other issues raised by the defense.

    b. The commission makes no finding and renders no conclusion concerning the existence or non-existence of any possible defense.

    c. In connection with any need to present special items concerning a child to lessen (mitigate) any possible sentence, the commission notes the broad scope of RMC 1001 in general and specifically RMC 1001c.

    d. The commission further notes the broad scope of RMC 1107 and the items which can be presented to and considered by the Convening Authority prior to action being taken on the findings and sentence.

24. The Defense Motion For Dismissal Due to Lack of Jurisdiction Under the MCA in Regard to Juvenile Crimes of a Child Soldier is denied.

Peter E. Brownback III
COL, JA, USA
Military Judge