
Cleared for filing on public record

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY ) | |
| DETAINEE LITIGATION ) | Civil Action No. 1:05-0569 (JR) |
| ) | |

**PETITIONER'S MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL AND TEMPORARY RELIEF FROM THE COURT'S JULY 11, 2008, SCHEDULING ORDER**

On August 29, 2008, the government filed "Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order." For the reasons set out below and in light of the extraordinary posture of his case, petitioner Mohamedou Ould Slahi respectfully asks the Court to preclude the government from filing a motion to amend the factual return in his case.

1. Under the Court's July 11, 2008, Scheduling Order (Misc. No. 08-442, dkt. 53; Civil No. 05–0569, dkt. 96), the government was required to file any original factual returns and submit any motions to amend its earlier factual returns in at least the first fifty cases[1] no later than August 29, 2008.

---

[1] The fifty cases were supposed to be the fifty oldest cases as judged by their date of filing in this Court, except that the cases of detainees who are not currently in U.S. custody have been put at the end of the queue no matter when they were filed. It is clear that the government's motion to amend the factual return in Mr. Slahi's case was due on that date, because, of the ten cases in which the Court's order was honored, two were filed after Mr. Slahi's.

2. By order of the Court and over the opposition of the government, the original factual return in Mr. Slahi's case was filed on October 6, 2005 (No. 05-0569, dkt. 35). On information and belief, no new information exists to form the basis of an amendment to that return.

3. Mr. Slahi has been in the custody of, or in custody at the direction of, the United States since November 20, 2001, when he was seized in his home country of Mauritania in West Africa. The United States then rendered him without any legal process to Jordan for eight months, then flew him to Bagram (Afghanistan), and then from Bagram to Guantanamo Bay.[2] He was the subject of the second "Special Interrogation Plan," which authorized what has been euphemistically called "enhanced interrogation techniques" to be applied against him.[3] These techniques were so far below the standards of detention and interrogation in civilized nations that the prosecutor who was assigned to try him before a Military Commission found that the government's actions were in violation of U.S. and international law, and he refused to have anything to do with prosecuting Mr. Slahi. The prosecutor took that decision in May 2004.[4]

4. Thus, it is clear that the government has been on notice that its treatment of Slahi admitted of no resolution but his release for more than four years. Nevertheless, the government has continued to incarcerate him, to interrogate him, to deny him meaningful access to habeas review in this Court and to Detainee Treatment Act review in the Court of Appeals, and to delay

---

[2] Department of Justice Office of Inspector General, *A Review of the FBI's Involvement in and Observations of Detainee Interrogations in Guantanamo Bay, Afghanistan, and Iraq*, at 122, 196 at n.150 (May 2008).

[3] *Ibid*. at 296-299.

[4] Jess Bravin, *The Conscience of the Colonel*, Wall Street Journal, at A1 (March 31, 2007).

2

any day of public reckoning for its bungling of the case and its atrocious and unlawful treatment of him.

5. As other petitioners[5] have pointed out, (1) the Supreme Court made it clear nearly three months ago in *Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008), that "the costs of delay can no longer be borne by those who are held in custody," (2) the timetable from which the government now seeks relief was one which it had itself proposed, (3) this Court's initial proposal to coordinate and manage the habeas cases post-*Boumediene* was met with skepticism by petitioners and their counsel, who argued that the government would use this Court to further its own agenda of delay and continued detention, (4) the government is simultaneously moving for abeyance and dismissal of the Detainee Treatment Act cases on the grounds that its resources must be used to litigate the habeas proceedings in this Court, (5) this Court's Scheduling Order made it clear that variances from the planned schedule would be permitted only on an individualized, case-by-case basis, (6) the government's motion was filed at the last possible moment on August 29, 2008, without any effort to confer with petitioners, and (6) if the government is to be believed, it had already mobilized a large team of specialists to work on these cases shortly after *Boumediene* was decided. To these points, we add the observation that the government's motion for relief from this Court's Scheduling Order must have taken considerable time to assemble -- time which might have been better spent deciding which cases it should <u>not</u> move to amend, for there will surely be some cases in this category.[6]

---

[5] See Petitioners' Memorandum filed on September 3, 2008, in Civil Action 02-0828 (CKK).

[6] On August 30, we asked counsel for the government to state whether the government intends to move to amend the factual return made in Mr. Slahi's case and we have not, as of this writing, received an answer. See Exhibit 1.

3

6. Based on the foregoing facts and arguments, this Court is fully justified in rejecting the government's motion for relief from its scheduling order in each of the forty cases where motions to amend were due and not filed by August 29. We urge the Court to enter an order in each of these cases ruling that the government has waived its opportunity to file motions for leave to file amended factual returns. In Mr. Slahi's case, however, the facts are even more compelling, because the government has already collected all the information it might need for any amended return as a result of the litigation in his two Freedom of Information Act (FOIA) cases.[7]

7. To defend *Slahi v. Department of Defense*, Civil No. 06-0597 (JR), and *Slahi v. Federal Bureau of Investigation*, Civil No. 07-2239 (JR), the Department of Defense (DoD) and the Federal Bureau of Investigation (FBI) collected all of their files pertaining to Mr. Slahi and subjected them to exhaustive national security review. By certifying it conducted adequate searches for responsive documents and that it searched within those documents for segregable non-exempt portions for release under the FOIA, and finally by claiming Exemption (b)(1)[8] as to most of its records on Mr. Slahi, the government has already segregated, examined and carefully analyzed the very records it needed in order to comply with this Court's Scheduling Order in this habeas case.

In *Slahi v. Department of Defense,* documents from every DoD component have already been assembled, and two motions for summary judgment covering all DoD components have

---

[7] On August 7, 2008, Judge Robertson *sua sponte* consolidated all of Mr. Slahi's FOIA cases and stayed them, in recognition of the fact that Mr. Slahi had pursued the FOIA cases to obtain "the kind of information that would be contained in a factual return in habeas corpus." (Case No. 06-0597, dkt. 38.)

[8] Under the FOIA, records are shielded from disclosure under Exemption (b)(1) if they reveal national security information which has been properly classified according to the Executive Order governing the classification of documents.

4

been filed. (Moreover, those DoD files included many documents which had originated elsewhere in government, such as the Department of State and the Central Intelligence Agency.) In its most recent motion for partial summary judgment (No. 06-0597, dkt. 35), filed July 31, 2008, six weeks after the *Boumediene* decision, the government told the Court that "all . . . DoD components that were initially tasked to process plaintiff's FOIA request conducted searches that were reasonably calculated to locate all documents relating to plaintiff." (Dkt. 35 at 11, 13.) The government's motion for partial summary judgment, which was itself 507 pages long, assured the Court that, consistent with the duty to segregate and disclose releasable material in FOIA cases, every line of every document in the possession of DoD had been considered.[9]

With respect to the FOIA case against the FBI, documents had been collected by the government and were in the same legally-required review in preparation for a motion for summary judgment. This motion was due first on July 31, 2008, and then continued to October 3, 2008.[10]

To be sure, habeas corpus proceedings and the Freedom of Information Act address different legal issues, provide different remedies, and proceed along different pathways. However, it is plain that the factual return in this habeas corpus case and the production of

---

[9] *See, for example,* the declaration of Russell G. Leavitt, Associate Deputy General Counsel of DoD: "[M]y colleagues and I conducted a line-by-line examination of each document [within our possession]." (Dkt. 35-4 at 6); the declaration of Marine Lt. Col. Jefferson L. Kaster: "All documents located as responsive were processed to achieve maximum disclosure consistent with provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material." (Dkt. 35-2 at 3); and the declaration of David M. Hardy, speaking of FBI documents within DoD files: "All referred documents were reviewed, word-by-word, line-by-line and document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA." (Dkt. 35-8 at 7)

[10] See Declaration of Sylvia Royce, attached here as Exhibit 2.

records in Mr. Slahi's FOIA cases depend on the same set of documents. It is simply beyond debate that the government had already segregated those documents and carefully considered their contents in the months leading up to the *Boumediene* decision and in the weeks following it. In this case, the government cannot justify its failure to produce any amended return by the date this Court ordered.

For this reason, and for the reasons which apply to all the other petitioners whose returns might have been the subject of requests for leave to amend on August 29, 2008, Mr. Slahi requests that this Court enforce its Scheduling Order. The government had an opportunity to amend its factual return in his case, on a schedule of its own making, and it had at its fingertips most or all of the material it needed to do so. Instead, it sought once again to delay adjudication of his case, to delay public disclosure of its appalling treatment of him, and most importantly, to delay any hearing on his release.

WHEREFORE, Mr. Slahi respectfully requests that this Court enforce its July 11, 2008, Scheduling Order, and rule that the government has waived its opportunity to file a motion for leave to file an amended factual return in his case.

Dated: September 5, 2008                    Respectfully submitted,

/s/ Sylvia Royce
Law Office of Sylvia Royce
Sylvia Royce, *pro bono*
DC Bar Number 924035
5505 Connecticut Avenue NW #340
Washington, DC 20015
Tel: (202) 362-3445
Fax: (202) 686-4271
sylvia_royce@hotmail.com

FREEDMAN BOYD HOLLANDER
GOLDBERG & IVES P.A.
Nancy Hollander, *pro bono*
Theresa M. Duncan, *pro bono*
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 842-9960
(505) 842-0761 (facsimile)
nh@fbdlaw.com
tmd@fbdlaw.com

Counsel for Petitioner