*PREVIOUSLY CLEARED BY CSO FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br><br><br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-442 (TFH)<br><br>Civil Action No. 05-1509 (RMU)<br>Civil Action No. 05-1602 (RMU)<br>Civil Action No. 05-1704 (RMU)<br>Civil Action No. 05-2370 (RMU)<br>Civil Action No. 05-2398 (RMU)<br>Civil Action No. 08-1310 (RMU) |

**UIGHUR PETITIONERS' NOTICE OF SUPPLEMENTAL AUTHORITY,
WITNESS DISCLOSURE, AND REPORT ON CLIENT AUTHORIZATION**

Petitioners Abdul Nasser, Abdul Sabour, Abdul Semet, Hammad Memet, Huzaifa Parhat, Jalal Jalaldin, Khalid Ali, and Sabir Osman in *Kiyemba v. Bush (*No. 05-1509 (RMU)), Edham Mamet in *Mamet v. Bush* (No. 05-1602 (RMU)), Bahtiyar Mahnut and Arkin Mahmud in *Kabir v. Bush*, (No. 05-1704 (RMU)), Abdul Razakah and Ahmad Tourson in *Razakah v. Bush*, (No. 05-2370 (RMU)), Abdul Ghaffar and Adel Noori in *Ghaffar v. Bush*, (No. 08-1310 (RMU)) and Ali Mohammad and Thabid in *Thabid v. Bush*, (No. 05-2398 (RMU)) are 17 Uighurs imprisoned at the Guantanamo Bay Naval Station.

This Court has scheduled a motion and status hearing for October 7, 2008 in these consolidated cases, to consider the pending motion for order for immediate release, and issues raised by the parties during a status hearing held on August 21, 2008. On September 10, 2008, Petitioners filed a motion for order governing proceedings at the October 7th hearing. Petitioners make this supplemental filing: i) to bring to the Court's attention recent rulings in the Circuit Court of Appeals that have issued since the briefing on the motion for release was closed on August 18th ; ii) to submit a proffer regarding witness testimony designed to assist the Court in assessing the strength of community support for the men, should the Court order parole; and iii)

a consolidated statement to assure the Court that the Petitioners on whose behalf relief is requested desire legal representation.

I.  **Motion for release or parole into the United States**

   A.  *Recent Circuit Court rulings require release or parole for Parhat.*

On or about July 23, 2008, Petitioner Parhat filed in this Court a motion for immediate release into the United States and for judgment on his *habeas* petition, in accordance with the June 20, 2008 decision issued in *Parhat v. Gates,* 532 F.3d 834 (D.C. Cir. 2008). In that case, the Court of Appeals found that Parhat was not an enemy combatant, and directed Respondents to release or to transfer him, or expeditiously to hold a new Combatant Status Review Tribunal ("CSRT"). Respondents subsequently advised the Court of Appeals that it would serve no useful purpose to further litigate Parhat's enemy combatant status and that he would be treated as a non-enemy combatant while they searched for a third country that would take him. *See* Government's Response to Parhat's Motion for Immediate Release into the United States at 2; Joint Status Report Dated August 18, 2008 at 14.

Although Respondents waived any appeal on the merits of the Appellate Court's *Parhat* decision, they did file a petition for re-hearing on August 4, 2008, requesting that the Court modify its opinion to clarify that it did not purport to resolve the scope of a district court's authority to order Parhat's release into the United States. On September 2, 2008 the Appellate Court denied the petition without comment. That action indicates that the Court of Appeals considers resolved the question of whether it may order release pursuant to the Detainee Treatment Act: it can, and it did. Moreover, that order for release was entered with the express proviso that the order did not impair Parhat's ability to seek the quicker remedy of release or transfer – *even into the United States* – immediately, through a writ of *habeas corpus* in the District Court. *Parhat, supra,* at 854.

Parhat's motion is the subject of the October 7th hearing.

### B. The Court of Appeals has applied the Parhat decision to four other Uighurs in the consolidated Kiyemba cases.

On September 12, 2008, in response to motions for judgment previously filed by four other Uighur prisoners,[1] and with the concurrence of Respondents,[2] the Court of Appeals ordered that they also be released, transferred or subject to a new CSRT. A copy of the Judgment is attached as Exhibit A. Respondents have not appealed that decision and have advised this Court that they would not engage in further litigation over the enemy combatant status of these four men, and would treat them as non-enemy combatants.[3]

At the August 21st hearing, in response to a query by this Court, counsel requested that the four petitioners be joined in the Parhat motion in these *habeas* actions, and Respondents agreed. Transcript of 8/21/08 hearing ("Tr.") at 9, lines 17-25, p. 10, lines 1-5; p. 21, lines 4-10. As for the remaining twelve petitioners, the government has until September 30th to advise the Court whether they, too, will be treated as non-enemy combatants, and that the government will cease litigating their enemy-combatant status. Should the government agree that they will be treated as non-enemy combatants, counsel for these men expect promptly to file for permission to join the Parhat motion for immediate release into the United States.

---

[1] The four are Abdusemet, Jalal Jalaldin, Khalid Ali, and Sabir Osman, all of whom are petitioners in the *Kiemba* case now pending before this Court as part of these consolidated cases.

[2] *See* Government's August 18th Motion to enter Judgment from *Parhat v. Gates* in these Actions, With Modifications and to Remove Cases from Oral Argument Calendar dated August 18, 2008 filed in the Court of Appeals ("Government's Motion to Enter Judgment"). A copy of the Motion is attached as Exhibit B.

[3] During the August 21st status conference, this Court determined that even though the five Petitioners would not be subjected to a formal CSRT review and re-classification as non-enemy combatants, Respondents would forevermore be estopped from claiming that the men are still enemy combatants. Tr. at 45, lines 13-25. Respondents did not object.

### C. *Respondents are in violation of the plain language of the Appellate Court's unstayed order.*

The Court of Appeals has issued its mandate and the *Parhat* judgment is final. Despite the Court of Appeals' unequivocal order, the government has yet to comply and Parhat remains a prisoner at Guantanamo. Parhat's pending motion specifically argues that the law of the Circuit is that a non-combatant in Parhat's position is entitled to release or transfer, *Parhat v. Gates, supra at* 836, and that this Court, in its discretion, has the authority to parole him into the United States. Indeed, Respondents themselves argued to the Court of Appeals that *"the question of whether a court can order release into the United States has been raised in and is more appropriately addressed by the district court as part of Parhat's habeas case."* See Government's Motion to Enter Judgment, Exhibit B (emphasis added).

Respondents argue that they have been unable to find a country that will take these innocent men; however, they have presented no compelling evidence why they cannot be paroled into the United States pending final resettlement. Their only argument is that the immigration laws and Homeland Security prohibit their entry. This Court understands the distinction: Parhat is not seeking to immigrate to this country, nor is he seeking parole under the statutory authority given to the Secretary of Homeland Security. He is seeking immediate release pursuant to the Court's *habeas* authority, by which a court can order parole pending a determination in his case. Tr. at 19, lines 15-25.

Accordingly, Respondents are in violation of the plain language of the unstayed final Appellate Court order directed to them. More importantly, the Court of Appeals has declined Respondents' petition to re-write its plain words and has invited this Court to provide a remedy. Respondents' willful violation must be part of the Court's consideration in deciding the motion for parole.

### II. *Refugee services are available and robust.*

At the October 7th parole hearing, at which – as requested in Petitioners' Motion for Procedures – Parhat and others, hopefully, will be present, it is anticipated that the Court will consider and implement the terms of their temporary release. To assist the Court, Petitioners

hereby disclose a list of witnesses who will be available to testify regarding the practical aspects of refugee settlement:

1) <u>Rebiya Kadeer</u>

    Mrs. Kadeer is the President of the World Uighur Congress and the Uighur-American Association (UAA). Mrs. Kadeer is China's most well-known Uighur dissident. She was at one time one of the richest and powerful women in the People's Republic. But when she began to speak out about the Uighur conditions, she was put in prison for five years. After human rights organizations around the world demanded her release from prison, and following the personal intercession of Secretary of State Condoleeza Rice, she and her husband were given asylum in the United States. In 2006, while still in prison, she was awarded the Norwegian Rafto Prize, which is often seen as a precursor to the Nobel Peace Prize.

    Mrs. Kadeer is expected to testify that the Uighur community in D.C. and around the world stands ready to provide assistance to the Uighur refugees in Guantanamo, and will assist with acculturation of the men as well as helping the American host organizations better understand the Uighur culture. The Uighur community will assist with English lessons and other skills necessary to adjustment in the community, and will work with other organizations to find appropriate employment for the men.

    She is also expected to testify about the assistance the world Uighur community is providing to five Uighurs who were released from Guantanamo to Albania in 2006 after a finding that they were not enemy combatants.

2) <u>Tara Mulder</u>:

    Ms.Mulder is the Director for Church and Community Outreach for Lutheran Immigration and Refugee Services (LIRS), located in Baltimore, MD. Ms. Mulder is expected to testify that her organization currently is in the process of organizing churches, mosques, synagogues, and other entities in the D.C. area for the purpose of providing appropriate scattered-site housing for as many as 14 of the Uighur men, and related social services. LIRS has deep experience working with refugee settlement, including those released into the United States on indefinite parole, such as the Mariel Boat Lift refugees. LIRS's role is to ensure that a standard set of services is provided so that each refugee will become a self-sufficient member of the community.

3) <u>Kent Spriggs</u>:

    Mr. Spriggs is an attorney in Tallahassee, Florida, and has represented several Yemeni detainees who have been released to their country. Mr. Spriggs is expected to testify about his work with a steering committee that has put together a plan for the housing, employment, and support for up to three of the Uighur refugees. The plan of support is attached as Exhibit C.

4) <u>Sara Beinert</u>:

Ms. Beinert is the large donor coordinator for the Center for Constitutional Rights (CCR) in New York City. CCR is a non-profit legal and educational organization. CCR filed the first *habeas corpus* petition, *Rasul v. Bush*, just one month after the first detainees were brought to Guantanamo. That case resulted in a landmark ruling that detainees have access to U.S. courts to challenge their detention and treatment in U.S. custody. CCR coordinates the pending Guantanamo detainee cases, and is co-counsel in the consolidated Uighur cases now before this Court.

Ms. Beinert is expected to testify that a substantial donor located by CCR has committed to providing significant funds through an appropriate 501(c)(3) account, for support of the re-settled Uighur refugees. Counsel will advise the Court and counsel for Respondents of the details of this commitment, but would prefer to do so in chambers to protect the donor's privacy, with any necessary supporting evidence to be filed thereafter, under seal.

**III.    Client Authorizations**

All but two of the Uighur clients have directly authorized counsel to represent them in these *habeas* cases.[4] Not all have signed written authorizations because, among other things, there is no rule or court order requiring authorization to be in writing. Client access in all of these cases has been governed by the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004 in *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004) and certain subsequent related orders in that case (the "Protective Order"). The Protective Order does not require a petitioner to sign an authorization form stating that he has authorized counsel to pursue the action. Rather, the Protective Order provides that "Counsel shall provide evidence of his or her authority to represent the detainee. . . ." Protective Order §III.C.2.

It has been counsels' understanding during their representation of Petitioners that evidence of their authority to represent the individual detainees may take the form of a sworn

---

[4] Petitioner Edham Mamet authorized his brother, Ibrahim Mamet to proceed on his behalf in the summer of 2005. The government has not challenged this next friend petition. Counsel is in the process of arranging a telephone conference with Mr. Mamet and another petitioner, Abdul Sabour, who has not yet directly authorized counsel to proceed. Counsel for these two petitioners intend to file a report to the Court by the September 29th deadline.

statement. *See Adem v. Bush*, Case No. 05-CV 723 (RWR)(AK), Dct. 42 at 14-15 ("Here, a sworn statement provides evidence that [petitioner] was actively seeking a lawyer to represent him.") A copy of the *Adem* order is attached hereto as Exhibit D. On information and belief, Respondents have abided by this order since that time in cases involving other men imprisoned at Guantanamo Bay.

Affidavits of direct authorization signed by counsel are attached hereto as Exhibit E. This evidence is sufficient to establish that Petitioners wish to have counsel represent them in connection with their imprisonment at Guantanamo Bay, including but not limited to prosecuting the petitions for a writ of *habeas corpus* that were filed on their behalf in these actions.

Counsel advised Respondents' counsel of its intent to file this notice of supplemental authority, witness disclosure, and report on client authorization by email dated September 23, 2008.

Dated: September 25, 2008

COUNSEL FOR PETITIONERS:

J. Wells Dixon(Pursuant to LCvR 83.2(g))
Wdixon@ccr-ny.org
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6423
Facsimile: (212) 614-6499
*Of Counsel for all Petitioners*

Eric A. Tirschwell (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
Darren LaVerne (Pursuant to LCvR 83.2(g))
Seema Saifee (Pursuant to LCvR 83.2(g))
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

Nadia Asancheyev (Pursuant to LCvR 83.2(g))
600 New Jersey Avenue, NW
Suite 533A
Washington, DC 20001
Telephone: 202-662-4072
Facsimile: 202-662-9411
*Counsel to Petitioners Adel Noori, Abdul Razakah, Ahmad Tourson, and Abdul Ghaffar*

George M. Clarke III
D.C. Bar No. 480073
Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington, DC 20005
Telephone: (202) 626-1573
Facsimile: (703) 598-5121
*Counsel to Petitioners Ali Mohammad and Thabid*

  /s/ Elizabeth P. Gilson
Elizabeth P. Gilson(Pursuant to LCvR 3.2(g))
egilson@snet.net
383 Orange Street
New Haven, CT 06511
Telephone: (203) 777-4050
Facsimile: (203) 787-3259
*Counsel to Petitioners Bahtiyar Mahnut and Arkin Mahmud*

Susan Baker Manning
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC 20036-3406
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Sabin Willett (Pursuant to LCvR 83.2(g))
Neil McGaraghan (Pursuant to LCvR 83.2(g))
Rheba Rutkowski (Pursuant to LCvR 83.2(g))
Jason S. Pinney (Pursuant to LCvR 83.2(g))
BINGHAM McCUTCHEN LLP
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736
*Counsel to Petitioners Hammad Memet, Khalid Ali, and Edham Mamet*