**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN RE:** | ) | **Misc. No.  08-442 (TFH)** |
| | ) | |
| **GUANTÁNAMO BAY DETAINEE** | ) | **Civil Action No.  05-748 (RMC)** |
| **LITIGATION** | ) | |
| | ) | |

**NOTICE OF AUTHORIZATION BY MOHSEN ABDRUB ABOASSY & SAMEER NAJY
HASAN MUKBEL AND MOTION FOR ADDITIONAL TIME TO PRODUCE
AUTHORIZATION FOR MOHAMMED SAEED BIN SALMAN**

Pursuant to the Court's July 29, 2008 Order (Misc. No. 08-442, Document 358), counsel

for Petitioners Mohsen Abdrub Aboassy (ISN 91), Mohammed Saeed bin Salman (ISN 251) and

Sameer Najy Hasan Mukbel (ISN 43) respectfully submit the attached declaration stating that

counsel have been authorized to pursue this action and/or explaining why counsel have been

unable to secure a signed authorization as of this date.

Counsel also hereby notify the court that Petitioner bin Salman—who indicated at the

introductory attorney visit that he wished to reflect on his decision before accepting legal

assistance—has yet to be visited a second time.  The Protective Order operative in this case

contemplates a second visit to any Petitioner in these cases to obtain an authorization.  *See*

Protective Order and Procedures for Counsel Access to Detainees at the United States Naval

Base at Guantánamo Bay, Cuba ("Protective Order") at II.C.10.b.  Petitioner's counsel will be at

Guantánamo Bay from September 29 – October 10, 2008, and will attempt to acquire

authorization from Mr. bin Salman at that stage.  While Counsel believes a motion for additional

time is not strictly necessary under the terms of the Protective Order, counsel hereby requests an

additional thirty days to produce the authorization for bin Salman. This should more than cover

counsel's upcoming visit to Guantánamo and the processing of any authorization obtained then.

We conferred with counsel for the government via e-mail.  The government does not oppose our request for thirty additional days to obtain evidence of authorization.

Dated: September 29, 2008     Respectfully submitted,


            ___/s/ Cori A. Crider_____
            Joseph E. O'Neil, Esquire
            Lavin, O'Neil, Ricci, Cedrone & DiSipio
            190 North Independence Mall West
            Suite 500
            Philadelphia, Pennsylvania 19106
            (215) 351-7901


            Zachary Katznelson*
            Cori Crider
            Reprieve
            PO Box 52742
            London EC4P 4WS
            England
            +44 (0)207 353 4640

            CENTER FOR CONSTITUTIONAL
            RIGHTS
            666 Broadway, 7th Floor
            New York, NY 10012
            Tel: (212) 614-6485

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | ) Misc. No. 08-442 (TFH) |
| | ) |
| **GUANTÁNAMO BAY DETAINEE** | ) Civil Action No. 05-748 (RMC) |
| **LITIGATION** | ) |
| | ) |

## <u>DECLARATION OF CORI A. CRIDER</u>

I, Cori A. Crider, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am licensed to practice law in New York. I am a Staff Attorney at Reprieve, a London-based nonprofit which gives free legal assistance to over thirty-five prisoners in Guantánamo. To date, I have visited nineteen prisoners at the base who are, variously, nationals of Afghanistan, Algeria, Chad, Egypt, Ethiopia, Morocco, Palestine (this prisoner is effectively stateless), Pakistan, Somalia, Sudan, Tunisia, and Yemen.

2.      The three Petitioners in this case are Mohsen Abdrub Aboassy (ISN 91), Mohammed Saeed bin Salman (ISN 251) and Sameer Najy Hasan Mukbel (ISN 43), of Yemen. They have been imprisoned for almost seven years, without charge, trial, or hope of release, at the United States Naval Station at Guantánamo Bay, Cuba. Mr. bin Salman was approved to leave Guantanamo on or before February 22, 2007, but nonetheless remains, with Mssrs. Mukbel and Aboassy, at Guantánamo.

3.      Counsel for Petitioners filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief on behalf of Petitioners in April 2005 pursuant to specific Next Friend Authorizations signed by the petitioners' family members. A copy of these are attached as Exhibit A.

4.    I met the three Petitioners in this case for the first time at Guantánamo in June of 2007.  I was accompanied by Reprieve's Director, Clive Stafford Smith.

5.    Initial client meetings at Guantánamo Bay are generally fraught with suspicion, and these were no exception.  The hesitation of Mssrs. Mukbel, Aboassy, and bin Salman is entirely understandable under the circumstances.  By the time an attorney was finally able to reach them, each of these Yemeni petitioners had spent over five years held in a strange prison thousands of miles from home.  Their American jailors did not share, understand, or respect their language, their religion, or their culture.  They were unable to communicate with their families; they received no news of their home countries or the wider world outside; and they had no means of confirming that my co-counsel and I were genuinely there to help them.  Upon information and belief, in all their years of imprisonment, the Petitioners had never *met* an American who was not 1) an interrogator, 2) a guard, or 3) a member of prison support staff until I saw them in June 2007.

6.    Numerous clients have recounted to me that interrogators and camp officials at Guantánamo have actively tried to discourage prisoners' acceptance of counsel, and to erode hard-won trust between prisoners and their lawyers.  Relevant tactics include, but are not limited to: telling prisoners that all the attorneys are "Jewish or gay," in an effort to play on perceived prejudices against those groups; impersonating attorneys during interrogation sessions; holding prisoners in isolation, sometimes for days, before a scheduled attorney visit; using the same word—'reservation'—for an interrogation session and an attorney visit so that the prisoner has no way of knowing which he is being taken to; seizing prisoners' privileged legal materials from their cells and refusing to return them; and so forth.

7.      In other words, the Guantánamo lawyer has a steep uphill climb to win her client over.  The introductory meeting with a client tends to be spent exclusively on gaining trust.  The lawyer does most of the talking—explaining how she can help, why she has come to help, and apologizing for the injustice that has kept the client in jail for four (or five, or six) years without access to an attorney.  In these delicate first hours, prudence is vital.  I ask questions of any stripe tentatively in an initial meeting, and it is with great reluctance (or upon an extraordinary and spontaneous demonstration of trust) that I would request that a client sign *anything*.

8.      Despite these obstacles, Petitioner Mukbel did agree to sign an authorization for representation at the end of our initial meeting, a copy of which is attached as Exhibit B.

9.      Petitioners Aboassy and Bin Salman did not sign authorizations during those meetings.  We did not ask Mr. bin Salman to sign anything as we had not reached the appropriate level of confidence to request that he sign.  He was affable throughout the meeting, but also clearly afraid to speak freely, and indicated that he wished to reflect on his decision to work with an attorney before accepting assistance.  We have since taken steps to encourage his participation and to convince him of our sincerity, including convening a conference in Yemen to pressure the Yemeni government to negotiate for his freedom and that of the rest of the approximately 100 Yemenis left in Guantánamo.  We have not yet made a subsequent visit to Petitioner bin Salman to attempt to obtain an authorization (and per the Protective Order, counsel have a right to a second visit to do so).  I will be at Guantánamo Bay from Sept. 29 – Oct. 10, 2008, and will attempt to secure authorization from Mr. bin Salman during that period.

10.     Although Mr. Aboassy did not sign, he orally authorized us to represent him at that meeting and continued to meet with Mr. Stafford Smith thereafter, clearly on the understanding that he was his attorney.  Mr. Stafford Smith and I had accepted Mr. Aboassy's

oral authorization as sufficient—primarily because we had always understood that the terms of the Protective Order did not require that Petitioners personally sign an authorization for representation.

11.     On August 1, 2006, the Court entered the Protective Order first entered in the *In re Guantanamo Detainee Cases*.  That Order did not require petitioners to sign an authorization for counsel to pursue the action.  Rather, it provided that "Counsel shall provide evidence of his or her authority to represent the detainee. . . ."  (Protective Order § III.C.2.)  It has been my understanding during my representation of Petitioners that evidence of my authority to represent a detainee may take the form of a next friend authorization or sworn statement.  *See Adem v. Bush*, Case No. 05-CV-723 (RWR) (AK), Document 42, at 14-15 ("Here, a sworn statement provides evidence that [petitioner] was actively seeking a lawyer to represent him.").  To my knowledge, the Government has abided by this order since that time in cases involving other men imprisoned at Guantánamo Bay.

12.     The Government has never questioned or expressed any doubt concerning my authority to represent Petitioners until it filed its Status Report in Misc. No. 08-442 in July 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Arlington, VA

Dated: September 27, 2008

_/s/ Cori A. Crider_____ _____
Cori A. Crider

## <u>CERTIFICATE OF SERVICE</u>

The undersigned states that on September 29, 2008, I served the foregoing **NOTICE OF AUTHORIZATION BY MOHSEN ABDRUB ABOASSY & SAMEER NAJY HASAN MUKBEL AND MOTION FOR ADDITIONAL TIME TO PRODUCE AUTHORIZATION FOR MOHAMMED SAEED BIN SALMAN** on counsel for Respondents by filing the document on ECF, per the Protective Order operating in this case.


/s/ Cori A. Crider          **_____**
Cori A. Crider