IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

GUANTANAMO BAY DETAINEE
LITIGATION

Misc. No. 08-MC-442 (TFH)

Civil Action No. 05-CV-1509 (RMU)
Civil Action No. 05-CV-1602 (RMU)
Civil Action No. 05-CV-1704 (RMU)
Civil Action No. 05-CV-2370 (RMU)
Civil Action No. 05-CV-2398 (RMU)
Civil Action No. 08-CV-1310 (RMU)

**RESPONDENTS' RESPONSE TO UIGHUR PETITIONERS' NOTICE
OF SUPPLEMENTAL AUTHORITY, WITNESS DISCLOSURE, AND
REPORT ON CLIENT AUTHORIZATION, AND OPPOSITION TO
MOTION BY SABOUR, *et al.*, FOR IMMEDIATE RELEASE OR PAROLE**

Respondents have determined that all seventeen petitioners in this proceeding will be

treated as if they are no longer enemy combatants. Although, as explained in previously filed

memoranda, petitioners have no right to parole or release into the United States, twelve of the

petitioners now seek to join earlier-filed motions made on behalf of the other petitioners for just

such relief.[1] Petitioners have also provided the Court what they characterize as supplemental

authority supporting such relief. Although Respondents do not oppose the twelve petitioners

joining the earlier-filed motions, Respondents strongly oppose the motions for entry into the

United States as to all petitioners for the reasons previously stated. Additionally, Respondents

respectfully dispute Petitioners' supplemental authority offered in support of their motion for

judgment and for immediate release into the United States. Further, to the extent Petitioners'

stated intention to call witnesses at the upcoming hearing in these matters was not rendered moot

---

[1] Motion of Abdul Sabour, etc., for Immediate Release or Parole into the Continental
United States Pending Final Judgment on Their *Habeas* Petitions, filed October 1, 2008.

Dockets.Justia.com

by this Court's orders of September 29, 2008, Respondents object to the presentation of

testimony at the hearing on October 7, 2008.[2]

**A.      No Court of Appeals rulings require release or parole of any petitioner into the
United States.**

In *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008), the government was directed "to

release or to transfer the petitioner [Parhat], or to expeditiously hold a new CSRT . . . ." *Id.* at

854.  In qualification, if not clarification, of that direction, the Court stated that it "need not

resolve" whether it had authority to order Parhat's release under the Detainee Treatment Act of

2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680 (2005), but it noted that the district court

would have power in a *habeas corpus* proceeding to order release.  *Id.* at 850, 851.  The court

was silent with respect to whether it or the district court had the power to order that Parhat be

released into the United States.

By way of petition for rehearing, Respondents asked the Court of Appeals to clarify that

it did not purport to resolve the scope of the district court's authority to order Parhat's release

into the United States.  By order entered September 2, 2008, the Court of Appeals denied the

petition without comment.

Petitioners now argue that the Court of Appeals' mute denial of the petition for rehearing

constituted an affirmative ruling in their favor.  But however much petitioners desire to insert

those words into the mouth of the Court, its opinion stands unaffected:  The Court of Appeals did

not purport, attempt, or assay to rule one way or the other on whether the district court had

power to release Parhat into the United States.  *See, e.g.*, *U.S. on behalf of Dep't of Labor v. Ins.*

---

[2] Respondents do not contest petitioners' evidence of authorization for representation in
these proceedings.

*Co. of America*, 131 F.3d 1037, 1041 (D.C. Cir. 1997) (mandate binding only as to "issues that were decided either explicitly or by necessary implication"). Indeed, the Court of Appeals did not resolve definitively whether it had authority under the DTA to order release into the United States (or any release, for that matter), *see Parhat*, 532 F.3d at 850, and had no occasion to consider whether the district court could order such a release in habeas proceedings. It remains, therefore, for this court to determine in the first instance (and without specific guidance from the Court of Appeals thusfar) whether it possesses such power. As Respondents have argued, it does not. *See Qassim v. Bush*, 407 F. Supp. 2d 198 (D.D.C. 2005), *appeal dismissed as moot*, 466 F.3d 1073 (D.C.Cir. 2006).[3]

Petitioners' ominous declaration that "Respondents' willful violation must be part of the Court's consideration in deciding the motion for parole" [Uighur Petitioners' Notice of Supplemental Authority, etc., at 4] is, thus, not well taken. Respondents are engaged in the

---

[3] The Government, of course, agrees that the 17 petitioners would be free to go if there were anywhere for them *to go* at this point (that is, consistent with U.S. policy against returning an individual when it is more likely than not he will be tortured). Put differently, the Government is not prohibiting them from leaving U.S. custody any more than it prohibited Mezei from leaving Ellis Island in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 216 (1953). Like Mezei, petitioners remain in U.S. custody only because they have no right to enter the United States and, to date, "others [a]re unwilling to take [them] in. *Id*. at 209. The United States Government has been engaged in diligent efforts to resettle petitioners, *see* Aug. 19, 2008, Classified Williamson Declaration, and, as addressed in the classified declaration of Ambassador Williamson, which is being filed today as an exhibit to this response with the Court Security Officer (with a copy being provided to the CSO for delivery to the secure facility for cleared petitioners' counsel), those efforts are ongoing. *See* Oct. 3, 2008, Classified Williamson Declaration. Until such time as they are placed in another country willing to take them, all of the petitioners have been offered special housing in which they have a communal living arrangement with access to all areas of that camp, including a recreation yard, their own bunk house with air conditioning, an activity room, a television equipped with a VCR and DVD, and access to recreational items such as soccer, volleyball, and table tennis. They have expanded access to special food items, shower facilities and library materials.

contest to resolve the fundamental issue left by the Court of Appeals, *viz.*, what is the scope and

nature of this court's power, if any, to effectuate the specific remedy sought by Petitioners?  In

the meantime, the parties are pursuing their respective interests, and no violation of a court order

has occurred.

**B.      There are no witnesses appropriate or necessary to the resolution of the legal issues
         before this court on Petitioners' motion for judgment and release into the United
         States.**

The parties have briefed the critical issue before this court:  Does the district court have

the authority to release or parole petitioners into the United States?  That is quintessentially a

legal question, and there are no material facts in genuine dispute relevant to its resolution.

Accordingly, there is no occasion for the court to receive testimony at hearing on the pending

motion on October 7, 2008.  Indeed, this Court has already concluded that there are no factual

issues to be addressed at that hearing.  *See* Minute Orders, September 29, 2008, denying

Petitioners' Motion for Order for Procedures to Govern October 7, 2008 Hearing, filed in each of

the pending cases.

Nevertheless, Petitioners propose to offer a number of witnesses "to testify regarding the

practical aspects of refugee settlement."  Uighur Petitioners' Notice of Supplemental Authority,

etc., at 4-5.  And even after the Court's September 29 Orders, Petitioners still purport to be

planning to address "practical" issues going beyond issues of law.  Petitioners' Supplemental

Memorandum in Response to Government's Notice and Status, at 4.  It may be said that

Petitioners are jumping the gun, in that they are assuming that they have already prevailed on the

very issue to be decided:  "At the October 7th parole hearing, . . . it is anticipated that the Court

will consider and implement the terms of their temporary release." Uighur Petitioners' Notice of Supplemental Authority, etc., at 4.

Respondents have stated and need not repeat their argument that this Court lacks power to order release of Petitioners into the United States.[4] This Court is now presented with deciding this legal question. However, none of the testimony proffered by Petitioners would be helpful as to that issue. Consideration of the proffered testimony would be premature now, when the Court has not yet decided whether an order requiring release or parole into the United States on any terms would be appropriate.

And there is, of course, this practical consideration. Whichever way this Court decides the issue presented, the non-prevailing party will likely seek the most expeditious review available to it. There will be no occasion for an immediate evidentiary hearing on the secondary issues Petitioners seek to raise until after such review. Petitioners have made their proffer. In sum, the testimony proposed by Petitioners is neither necessary, nor desirable, nor helpful for purposes of the legal issues to be addressed at the October 7, 2008 hearing.

Dated: October 3, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/ Sean O'Donnell
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)

---

[4] Respondent's Combined Opposition to Parhat's Motion for Immediate Release into the United States and to Parhat's Motion for Judgment on His Habeas Petition, at 6-20.

TERRY M. HENRY
ANDREW I. WARDEN
SEAN W. O'DONNELL
DAVID H. WHITE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-3755 / Fax: (202) 616-8470

Attorneys for Respondents