**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: <br><br> **GUANTANAMO BAY DETAINEE LITIGATION** | **Misc. No. 08-442 (TFH)** <br><br> **Civil Action No. 05-CV-0520 (RMU)** |

**PETITIONER ABDUL RAHMAN SHALABI'S OPPOSITION TO
RESPONDENTS' REQUEST FOR EXCEPTION FROM SEQUENCING**

Petitioner Abdul Rahman Shalabi submits this Opposition to Respondents' Request for Exception from Sequencing ("Request") dated September 30, 2008. For the reasons set forth below, Mr. Shalabi respectfully requests that Respondents' renewed efforts to deviate from this Court's July 11, 2008 Scheduling Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. July 11, 2008) (Docket No. 53) ("Scheduling Order"), and September 19, 2008 Memorandum Opinion, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. Sept. 19, 2008) (Docket No. 464) ("September 19 Opinion") (granting the government partial and temporary relief from the Scheduling Order), without justification or permission be denied.

**INTRODUCTION**

Having unlawfully imprisoned Mr. Shalabi without charge for nearly seven years, Respondents seek once again to frustrate Mr. Shalabi's efforts to meaningfully challenge his detention, offering little more than a claim of convenience to justify their delay. The Supreme Court's directive in *Boumediene*, however, was plain: Mr. Shalabi is entitled to a "prompt habeas corpus hearing" and is not required to bear "the costs of the delay." *Boumediene* v. *Bush*, 128 S.Ct. 2229, 2275 (2008).

Accordingly, Respondents' continued failure to meet its obligations—obligations that were designed by this Court to carry out the Supreme Court's ruling and prevent unfair delay—should not be tolerated.

The Scheduling Order specifically outlines the sequence in which Respondents are to file factual returns and provides that deviations from that sequence will be permitted only where the government files a *motion* for an exception that establishes "cause" for the deviation. Scheduling Order at 4. Respondents did not file any such motion for an exception, and the "request" Respondents did file did not even purport to establish the individualized "cause" required under the Scheduling Order. Rather than following these clearly-outlined, court-ordered procedures, Respondents unilaterally decided—at the eleventh hour and without seeking the Court's permission—that it would delay the filing of Mr. Shalabi's factual return based on their determination that it was too complicated or time-consuming to file in its proper sequence.

This is the second time Respondents have engaged in self help to secure a delayed filing of Mr. Shalabi's factual return, demonstrating a complete disregard for this Court's orders and the rights of Mr. Shalabi. *See* Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. August 29, 2008) (Docket No. 317) ("August 29 Motion"). Mr. Shalabi filed his petition for a writ of habeas corpus almost four years ago and received a factual return two months thereafter—a filing Respondents represented constituted the entirety of the evidence supporting the Administration's designation of Mr. Shalabi as an enemy combatant. After four years of delay, Respondents' claim that Mr. Shalabi's factual return is "more complicated or time-

2

consuming than returns of others" is simply not sufficient or credible. Likewise, Respondents' failure to state when they intend to file a factual return for Mr. Shalabi is unacceptable, particularly in light of the Supreme Court's holding in *Boumediene* and this Court's Scheduling Order.

Mr. Shalabi therefore hereby requests that Respondents be held in contempt for failing to comply with this Court's Order to timely put forth evidence in support of Mr. Shalabi's indefinite detention and that the Court order that unless Respondents file a complete factual return for Mr. Shalabi within ten days, that Mr. Shalabi be released to the Kingdom of Saudi Arabia.

**STATEMENT OF FACTS**

Mr. Shalabi has been imprisoned at Guantanamo since January 11, 2002, each day "subject to habeas jurisdiction but without any actual habeas scrutiny." *Boumediene*, 128 S.Ct. at 2279 (Souter, J., concurring). Because the prisoners at Guantanamo have been imprisoned for almost seven years, the Supreme Court in *Boumediene* rejected the government's request to require detainees to exhaust their administrative remedies under the Detainee Treatment Act before proceeding in a habeas action, holding that detainees "were entitled to a *prompt* habeas corpus hearing" without jumping through further procedural hoops. *Id.* at 2275 (emphasis added).

Shortly after the ruling in *Boumediene* and the consolidation of pending habeas cases before this Court, the government explained that it "share[d] the court's desire to resolve these cases expeditiously" and noted that the Department of Justice was "dedicating substantial resources to facilitate the expeditious handling of these cases." Letter to the Honorable Royce C. Lamberth and Thomas F. Hogan, dated June 30, 2008,

3

at 1. As evidence of its purported commitment to advance the habeas litigation, the government proposed filing factual returns for each petitioner on a rolling basis at a rate of fifty per month, starting at the end of August. *Id.* at 2. According to its proposed schedule, the government estimated that all factual returns would be filed within a four to five-month period. *Id.*

Taking the government at its word, this Court accepted the timeline as reasonable and ordered the government to produce factual returns at a rate of fifty per month beginning August 29, 2008, starting with the earliest filed petitions. Scheduling Order at 3-4. The Scheduling Order also explicitly set forth a procedure governing exceptions to the sequencing of factual returns:

> [I]f the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing, the government shall move for an exception to the sequencing described above. As with amendments, the Court will only allow exceptions where the government establishes cause.

*Id.* at 4.

On August 29, 2008, instead of filing fifty factual returns as directed, Respondents filed a motion for relief from the very schedule that they themselves sought, requesting to push back by thirty days the filing of factual returns. *See* August 29 Motion. Over the objection of Mr. Shalabi and other petitioners, this request was "reluctantly" granted with the warning that the Court would "not tolerate further delay." September 19 Opinion at 5-6.

Less than two weeks after the Court granted Respondents' request to delay by thirty days the filing of Mr. Shalabi's factual return, Respondents filed the instant

Request, seeking an unspecified additional extension of time to file factual returns for Mr. Shalabi and six other petitioners. Respondents offered only the following in support of the Request to file these returns out of sequence:

> [D]eviation from sequencing reflects primarily issues related to the clearance of proposed evidence for use in the factual returns . . . [which] have made the completion of factual returns with respect to these [seven] petitioners more complicated or time consuming than returns of others, such that it was not appropriate to delay the processing of returns for other petitioners . . . . Disclosure of additional detail regarding the issues that have resulted in the deviation from normal sequencing would risk improper disclosure of classified information . . . .

Request at 2.

**ARGUMENT**

A. **The Court Should Not Allow Respondents to Continue This Pattern of Improper Self-Help.**

This is not the first time Respondents have acted in unilateral fashion to assume the Court's authority. Indeed, since the entry of the Scheduling Order, Respondents have engaged in a pattern of seeking forgiveness rather than permission. As noted above, on August 29, 2008, instead of timely moving for an extension, Respondents chose to defy the original Scheduling Order that required them to produce the first fifty factual returns, including Mr. Shalabi's, by that date. Respondents filed—at the very last minute and without prior notice to Petitioners—a motion to extend by thirty days their time for filing the first set of factual returns. *See* August 29 Motion.

Not even two weeks after this Court "reluctantly" granted Respondents' August 29 Motion, Respondents have once again engaged in precisely the same self help, alerting Mr. Shalabi's counsel and the Court *on the day Mr. Shalabi's factual return was due* that it would not be filing said return in the ordinary (court-ordered) sequence, electing instead to file factual returns they had unilaterally deemed less complicated or

5

time-consuming to prepare. *See* Email from Terry M. Henry, U.S. Department of Justice, to Julia Mason et al., dated September 30, 2008, attached as Exhibit A to the Declaration of Sarah K. Jackel ("Jackel Declaration").

As the affected petitioners noted in opposition to Respondent's August 29 Motion, such last minute filings that are designed to secure in substantial measure the very relief they seek amount to impermissible self help that should not be tolerated. *See, e.g.*, *Ramos* v. *Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) ("Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local.").

Any private litigants seeking to offer ex-post justifications for the failure to comply with a court order, just as Respondents have done here, would fear a finding of contempt. Respondents should be held to the same standard as any litigant acting unilaterally to usurp the Court's power to direct scheduling. Their utter disregard for this Court's authority—not to mention Mr. Shalabi's right to see and challenge the purported evidence supporting his detention—should not be countenanced.

**B.  Respondents Have Failed to Comply with the Procedure Governing Deviations from the Scheduling Order.**

Not only was Respondents' Request improperly filed at the eleventh hour, but the form of the Request altogether fails to comply with the procedure governing deviations from the sequence of filing of factual returns, set forth by the Court in the Scheduling Order and September 19 Opinion.

In the Scheduling Order, this Court set forth a procedure to govern the process of providing factual returns in these cases, a procedure proposed by the government itself. As noted above, Respondents were ordered to provide factual returns

6

at a rate of fifty per month, beginning with the earliest filed petitions, and were explicitly instructed that exceptions to this sequencing would be granted only upon motion establishing good cause:

> [I]f the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing, *the government shall move for an exception* to the sequencing described above. As with amendments, the Court will only allow exceptions where the government establishes cause.

Scheduling Order at 4 (emphasis added).

Contrary to the Court's clear directive, Respondents did not "move for an exception," nor did they "request an exception," as the title of the Request suggests. Rather, on the day Mr. Shalabi's return was due, Respondents informed the Court and counsel for Mr. Shalabi that they were delaying certain returns, based not on permission from the Court, but on their unilateral and conclusory determination that his return is "more complicated or time-consuming than returns of others, such that it was not appropriate to delay the processing of returns for other petitioners." Request at 3.

This determination, however, is not Respondents' to make. The Scheduling Order only permits Respondents to "move for an exception"; it does not authorize Respondents to sit as judge in their own case and decide that they are entitled to an exception to the Scheduling Order. The authority to determine whether or not it is "appropriate to delay the processing of other petitioners' returns" lies only with the Court. Scheduling Order at 4 ("As with amendments, *the Court* will only allow exceptions where the government establishes cause.") (emphasis added). Thus it is the Court that should decide whether Respondents have met their burden of establishing that

7

Mr. Shalabi—one of the very first detainees to arrive at Guantanamo in January, 2002 who has had a habeas petition pending in this Court for nearly four years—should be made to wait even longer for the information purportedly justifying his detention.

Respondents' failure to move the Court evidences a lack of respect for this Court's powers and authority. Casual disregard of the Court's authority is troubling in any case, but it is especially worrisome here, where the very premise of habeas review is to prevent Respondents from unilaterally adjudging facts allegedly justifying Petitioners' detention.

Furthermore, Respondents have been put on notice that this Court's orders are not aspirational. September 19 Opinion at 5 (admonishing "the government that . . . the Court is not merely setting a 'goal' for which the government is to 'strive.'"). By failing to timely move this Court for an exception to the Scheduling Order, and unilaterally withholding returns, Respondents have violated this Court's Scheduling Order, and their "request" for an exception should be denied.

### C. Respondents Have Not Established the Individualized Cause Required to Deviate from the Scheduling Order.

The substance of Respondents' Request is also entirely inadequate, as they fail to make any affirmative showing to support an exception to the Scheduling Order. The Scheduling Order plainly states that exceptions to the court-ordered sequence of factual returns will be authorized only where Respondents "establish[] cause" that "an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues." Scheduling Order at 4. This standard was reiterated in the September 19 Opinion, in which the Court emphasized that "[e]xcept for *good cause shown* . . . the Court will not tolerate any further delay."

8

September 19 Opinion at 6 (emphasis added). By declining to cite a single fact in support of delaying Mr. Shalabi's factual return, Respondents have utterly failed to "establish[] cause."

The burden of establishing cause is an affirmative one. *See, e.g.*, *Schlagenhauf* v. *Holder*, 379 U.S. 104, 118-19 (1964); *Freeman* v. *Seligson*, 405 F.2d 1326, 1336 (D.C. Cir. 1968). It is well-established that a party seeking to establish good cause must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970)).

Respondents' Request altogether fails to make such a showing, and amounts to nothing more than the conclusion they are required to establish. In attempting to justify ex-post their failure to timely file these returns, Respondents offer only the generalized statement that an exception to the Scheduling Order is warranted because Mr. Shalabi's return and the returns of six other petitioners are "more complicated or time-consuming than returns of others." Request at 3. Respondents offer no specific reasons or provide a single individualized fact to support that assertion. Respondents' impermissible reliance on a conclusory statement simply fails to constitute a particularized showing of cause under these circumstances, *i.e.*, how "an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues." Scheduling Order at 4.

Respondents' contention that Mr. Shalabi's case is "too complicated or time-consuming" to file in the ordinary course also stretches credulity,[1] given that Respondents already filed a factual return in Mr. Shalabi's case over three years ago. At that time, Respondents did not claim that Mr. Shalabi's case was "significantly more complicated" than those of other petitioners or that Mr. Shalabi's circumstances presented unique issues. Rather, Respondents filed a factual return for Mr. Shalabi less than two months after being ordered to do so—a filing they represented constituted the entirety of the evidence supporting the Administration's designation of Mr. Shalabi as an enemy combatant. Declaration of Teresa A. McPalmer, *Al Oshan* v. *Bush*, Civil No. 05-520 (D.D.C. May 23, 2005) (Docket No. 23). To the extent Respondents now seek to amend that filing in an attempt to shore up their case with purported new evidence— evidence which by their own account did not even form the basis of the government's decision to detain Mr. Shalabi—the delay attendant to that decision should be borne by Respondents, and not by Mr. Shalabi.

Furthermore, to the extent that Respondents base their Request for additional time to file on the argument that reviewing material in support of Mr. Shalabi's detention is "too complicated" or "time-consuming," the Court has already addressed this issue. Respondents' earlier arguments to this Court as to why they should be exempt

---

[1] Respondents' claim that they lack sufficient resources to timely file Mr. Shalabi's factual return is also completely undermined by their filing of defensive motions. *See e.g.*, Email from Scott M. Marconda, U.S. Department of Justice, to Julia Mason et al., dated October 10, 2008 (indicating Respondents' intent to file a motion to dismiss "improper respondents"), attached as Exhibit B to Jackel Decl. In other words, Respondents appear to have an abundance of time to advance their defenses, but continually struggle to find time to meet the Court's deadlines for providing Mr. Shalabi with the facts purportedly underlying his detention—information needed for Mr. Shalabi to advance his case.

from the August 29, 2008 filing deadline relied heavily on this same argument. *See*, *e.g.*, August 29 Motion at 3 ("Processing this sheer volume of cases, with these uncertainties, on a compressed time-frame is inherently challenging, but, as explained below, the task has proven even more difficult than originally envisioned because of the pervasiveness of classified information throughout the relevant records . . . ."). In that same briefing, however, Respondents indicated that that delay was related specifically to the process of *beginning* the production of the factual returns, and that such delay would be temporary. *Id.* at 1 ("[D]espite diligent and ongoing efforts, Respondents have been unable to complete the filing of 50 factual returns in No. 08-442 in light of significant, national security related complexities encountered in the start-up of the interagency process . . . ."); *id.* at 11 ("The Court also should be aware that the Government is taking steps to streamline and improve the process related to vetting of factual returns for use in court going forward."); *id.* at 12 ("The difficulties to date have been part of a learning process . . . . Lessons learned are being incorporated into the factual return development process . . . .").

This Court, while granting Respondents' August 29, 2008 request for an extension, specifically noted that it would not countenance further delays based on the same rationale. September 19 Opinion at 6 ("Going forward under the revised schedule resulting from the Court's granting of its motion, consequently, the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it 'simply did not appreciate the full extent of the challenges posed.'") (internal citations omitted).

### D. Respondents' Claim that Providing an Explanation for the Deviation Would Reveal Classified Information Is Unavailing.

In an apparent effort to justify their failure to provide any individualized factual evidence in support of the Request, Respondents improperly argue that they were precluded from doing so due to fears of "improper disclosure of classified information subject to the clearance issues referenced above." Request at 2.

As Respondents are well aware, both the Court and counsel to Mr. Shalabi possess appropriate levels of security clearance to view classified information concerning his detention, and it is well-established that filings containing classified information may be filed with the Court under seal. Respondents' cognizance of these facts is evidenced by their August 29 Motion, in support of which, Respondents filed a classified declaration on behalf of Michael V. Hayden, Director of the Central Intelligence Agency.

In failing to file classified (or unclassified) declarations establishing the individualized cause required for a deviation from sequencing, Respondents have deprived the Court of the ability to review the merits of their Request.

### E. The Need for a Prompt Habeas Hearing is Particularly Acute Given Mr. Shalabi's Longtime Participation in a Hunger Strike.

The continuous efforts to delay Mr. Shalabi's case are particularly troubling in light of the precariousness of Mr. Shalabi's health. Mr. Shalabi has been on a hunger strike for over three years. During the time that Mr. Shalabi has participated in this non-violent protest, personnel at Guantanamo have persistently engaged in efforts to end his hunger-strike through physical and psychological coercion, efforts that have led to a substantial deterioration of Mr. Shalabi's health.

Due to his participation in a hunger strike, Mr. Shalabi is force-fed twice daily by Guantanamo personnel, a process which involves being immobilized in a six-

point restraint chair (despite the fact that he does not resist the feedings) for several hours each day. Mr. Shalabi has suffered brutal physical treatment and has been denied almost every personal comfort item possible. As a result of this harsh treatment, Mr. Shalabi's health has been compromised significantly.

The state of Mr. Shalabi's condition highlights the importance of prompt habeas proceedings as well the need for an individualized showing of cause to support any effort to further delay a petitioner's right to challenge his confinement.

**CONCLUSION**

For the reasons set forth above, Mr. Shalabi respectfully requests that the Court deny Respondents' Request. Mr. Shalabi further requests that Respondents be held in contempt for their failure to comply with the Scheduling Order and that the Court order that unless Respondents file a complete factual return for Mr. Shalabi within ten days that Mr. Shalabi be released to the Kingdom of Saudi Arabia.

Dated: New York, New York
      October 14, 2008

Respectfully submitted,

   /s/   Martin Flumenbaum
Martin Flumenbaum (Bar No. 393210)
Julia Tarver Mason
mflumenbaum@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3029
Fax: (212) 373-0029

*Counsel for Petitioner*