IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | |
| GUANTANAMO BAY DETAINEE LITIGATION | ) ) ) | Misc. No. 08-MC-442 (TFH) |
|  | ) ) ) | Civil Action Nos. 06-1690, 08-1085, 08-1207, 08-1360 |

**SUPPLEMENTAL REPLY TO PETITIONERS' REDACTED OPPOSITIONS TO RESPONDENTS' MOTION TO RECONSIDER APPLICATION OF STANDARD HABEAS PROTECTIVE ORDER TO THESE CASES AND REQUEST FOR ENTRY OF PROPOSED PROTECTIVE ORDER PERTAINING TO TOP SECRET / SENSITIVE COMPARTMENTED INFORMATION**

**PRELIMINARY STATEMENT**

Respondents respectfully submit this supplemental reply to petitioners Husayn's and Al Nashiri's redacted oppositions to respondents' request for entry of respondents' proposed protective order pertaining to Top Secret/Sensitive Compartmented Information ("TS/SCI"). Because petitioners Husayn and Al Nashiri raise or incorporate many of the same arguments already addressed in respondents' reply to petitioner Majid Khan's redacted opposition to the same motion, respondents refer the Court to the responsive arguments contained in that reply. Further, respondents address below Husayn's two additional arguments challenging respondents' proposal of a case-by-case determination regime for the sharing of TS/SCI information by habeas counsel, and Al Nashiri's additional assertion that the TS/SCI information sought to be protected by respondents is already available in the public domain. As discussed below, the additional arguments in Husayn's and Al Nashiri's oppositions do not rebut respondents' showing that entry of a protective order specifically tailored to address the management and

handling of TS/SCI information is necessary to protect against the unauthorized disclosure of exceptionally sensitive national security information in habeas cases involving high value detainees such as petitioners.

**ARGUMENT**

**I.     A PRESUMED "NEED TO KNOW" STANDARD IS INAPPROPRIATE IN CASES INVOLVING TS/SCI INFORMATION**

In respondents' opening brief (08-MC-442, dkt #264) and their reply to petitioner Khan's redacted opposition (08-MC-442, dkt #532), respondents demonstrated that the standard *habeas* protective order applicable in many other Guantanamo cases is at odds with the extremely limited and tightly controlled access permitted for TS/SCI information because it allows habeas counsel to share classified information based on a presumed "need to know" standard.  Petitioner Husayn argues that a protective order incorporating a presumed "need to know" is necessary for him to vindicate his constitutional habeas rights and present exculpatory information because other high value detainees otherwise would not be able to corroborate his account of CIA interrogation and torture.  *See* Husyan Redacted Opp. at 18.  Petitioner further argues that if his counsel cannot freely share TS/SCI information with other habeas counsel, he necessarily would not be able to rebut either incriminating statements about him by other Guantanamo detainees or incriminating information about him in the government's factual returns for other Guantanamo detainees.  *See id.* at 20-23.  Like Khan, Husayn discounts the Government's need to protect TS/SCI information as merely an illegitimate attempt to deprive him of his constitutional habeas rights.

Petitioner Husayn's speculative assertions, however, do not justify dispensing with the procedures necessary to protect against the unauthorized disclosure of highly classified national

security information. As is the case with petitioner Khan, respondents have not filed a factual return in petitioner Husayn's habeas case. Until the parties and the Court have a concrete factual record explaining the basis for petitioner's detention, it is speculative whether petitioner may have any need for access to TS/SCI information within the possession of other high value detainees. Indeed, this Court has yet to determine the appropriate procedural framework and standards applicable with respect to discovery, if any, in Guantanamo habeas cases.

Moreover, as already discussed in respondents' reply to petitioner Khan's opposition (at p. 8), the TS/SCI protective order proposes a case-by-case determination, not a blanket prohibition, of whether sharing of any specific TS/SCI information between counsel in various cases is appropriate.[1] When the need for sharing TS/SCI information arises, petitioner can request the Government's authorization to share information on a case-by-case basis, and if the Government denies such request, petitioner can raise the issue with the Court. Likewise, other petitioners seeking information from high value detainees can seek Government authorization on a case-by-case basis and resort to the Court, if appropriate. While the process may be inefficient or cumbersome, it is necessary to appropriately control the number of people who have access to highly classified information, which, in turn, is the most effective way to minimize the risk of unauthorized disclosure of the information. *See* Executive Order 12958, as amended, § 5.4(d)(5)(B) (requiring agencies that are holders of classified information to "ensure that the number of persons granted access to classified information is limited to the minimum consistent with operational and security requirements"). In sum, petitioner Husayn's opposition does not

---

[1] The proposed TS/SCI protective order also does not prohibit counsel for high value detainees from sharing or exchanging unclassified or protected information.

rebut respondents' showing that their proposed TS/SCI protective order properly accommodates petitioner's concerns without unnecessarily expanding the circle of individuals with access to highly classified information – information that the Executive Branch has a constitutional responsibility to safeguard.

II. **PUBLIC SOURCES DISCUSSING THE CIA TERRORIST DETENTION PROGRAM ARE NOT RELEVANT TO THE ISSUE OF WHETHER ENTRY OF RESPONDENTS' PROPOSED TS/SCI PROTECTIVE ORDER IS APPROPRIATE**

Petitioner Al Nashiri raises an entirely different argument. According to Al Nashiri, much of the information sought to be protected by respondents' proposed TS/SCI protective order allegedly is already in the public domain, and thus, entry of the protective order is unnecessary. In support, petitioner cites an impressive array of publicly available materials, ranging from statements of the President and the CIA Director to media accounts of all types that relate to the CIA terrorist detention program.

Al Nishiri's argument, however, misses the mark for several reasons. First, that there have been limited official disclosures of the CIA terrorist detention program does not affect the classification of other related information. *See Public Citizen v. Department of State*, 11 F.3d 198, 201 (D.C. Cir. 1993). The official disclosures were made pursuant to specific determinations by high level government officials that the need to protect the specific classified information is outweighed by the public interest in disclosure. *See* Declaration of Wendy M. Hilton (Mar. 28, 2006) (Ex. 3 to Respondents' Mot. to Reconsider), at 14 n.5. Indeed, section 3.1(b) of Executive Order 12958, as amended, specifically authorizes certain executive officials to declassify highly sensitive national security information in that circumstance. But many operational details of the CIA terrorist detention program remain classified, and the D.C. Circuit

has "unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("The mere fact that the CIA voluntarily transmitted an official document [regarding the location of a particular CIA station location in a foreign country] to a congressional committee does not mean that the Agency can thereby automatically be forced to release any number of other documents."); *accord Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007); *see also Knopf v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975) (disclosures that were results of high level executive decisions in the public interest do not suggest that other related information should be disclosed). Indeed, the standard for determining whether certain information has been "officially acknowledged" is a stringent one, including that the information at issue "must be as specific as" that previously released by authorized executive officials. *Fizgibbon*, 911 F.2d at 765.

Second, to the extent that there has been any "leak" of the details of the CIA terrorist detention program as petitioner appears to allege, that similarly does not suggest that the information no longer requires protection. Section 1.1(b) of the Executive Order 12958, as amended, provides that "[c]lassified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information." "As long as [the leaked information] remains classified . . . there should be no further judicial inquiry." *Knopf*, 509 F.2d at 1371. To be sure, as the Fourth Circuit has noted, "[o]ne may imagine situations in which information has been so widely circulated and is so generally believed to be true that confirmation by one in a position to know would add nothing to its weight." *Id.* at 1370-71. However, "appraisals of such situations by the judiciary would present a host of problems and

obstacles." *Id.* Thus, rather than the judiciary, the role of making such appraisals properly belongs to the agency that is the holder of the classified information. *Id.*

Third, the fact that many alleged operational details of the CIA terrorist detention program, such as the supposed locations of CIA detention facilities abroad and the techniques that the CIA is allegedly authorized to use during the interrogation of terrorist detainees, have been widely discussed in the public domain, does not render details of the program unclassified. *See* Hilton Decl. ¶ 22, n.4. As the Fourth Circuit has noted, "[i]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Knopf* , 509 F.2d at 1370. Thus, the D.C. Circuit has held that,

> [E]ven if a fact – such as the existence of [] a liaison [with a foreign entity] – is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security. Unofficial leaks and public surmise can often be ignored by foreign governments that might perceive themselves to be harmed by disclosure of their cooperation with the CIA, but official acknowledgment may force a government to retaliate.

*Asfhar v. Department of State*, 701 F.2d 1125, 1130-31 (D.C. Cir. 1983); *see also Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) ("In the word of international diplomacy, where face-saving may often be as important as substance, official confirmation . . . could have an adverse effect on our relations [with other countries].") (brackets in original).

Here, the Hilton declaration explained that "[i]n terms of the potential impact upon the intelligence activities and foreign relations of the United States, there is a critical distinction between unsubstantiated information circulating in the press and official government release or acknowledgment of such information." Hilton Decl. at 12 n.4; *see also Fitzgibbon*, 911 F.2d at

965 ("in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures"). "The U.S. Government must be able to maintain the distinction between media reports – which may or may not be accurate – by individuals not authorized to speak on behalf of the United States, and official disclosure." Hilton Decl. at 12 n.4.

Again, the fact remains that many operational details of the CIA program remain classified at the TS/SCI level, and the CIA has determined that unauthorized disclosures regarding the specifics of the detention and interrogation, including techniques the CIA uses to elicit information, are likely to degrade the program's effectiveness and therefore result in exceptionally grave damage to the national security. Hilton Decl. ¶ 18. Accordingly, Al Nashiri's opposition raises no issue as to whether properly classified TS/SCI information relating to the CIA terrorist detention program should be safeguarded during the litigation of high value detainees' habeas cases, and does not undercut the need for respondents' proposed TS/SCI protective order in this case.

## CONCLUSION

For the foregoing reasons, this Court should enter respondents' proposed TS/SCI protective order in this case.

Dated: October 15, 2008          Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/ *Jean Lin*
JOSEPH H. HUNT

VINCENT M. GARVEY
JUDRY L. SUBAR
TERRY M. HENRY
ANDREW I. WARDEN
JEAN LIN
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 514-3716
Fax:  (202) 616-8470

Attorneys for Respondent