UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Rahim ali-Nashir, et. al. <br><br> Petitioners, <br><br> v. <br><br><br> Robert M. Gates, et. al. <br><br><br> Respondents. | PETITIONER'S RESPONSE TO THE OCTOBER 3, 2008 ORDER TO SHOW CAUSE AND MOTION FOR MISCELLANEOUS RELIEF <br><br> Docket Number 08-cv-1085 <br> Docket Number 08-cv-1207 <br> Misc. No. 08-0442 |

## PRELIMINARY STATEMENT

SCOTT L. FENSTERMAKER, ESQ. (hereinafter, "Movant") respectfully submits this response to the Court's October 3, 2008 Order to Show Cause (the "Order to Show Cause") directing that Movant "show cause why the petition in 08-cv-1085 should not be dismissed" and the Court's October 7, 2008 Order (the "October 7, 2008 Order") directing the filing of three letters from Petitioner to Movant for the Court's *in camera* review. This response also serves as Movant's motion for an Order of this Court (1) directing that a hearing be held at which Petitioner can testify regarding his choice of counsel, and (2) directing that Respondent permit Movant to (a) travel to Guantánamo Bay to communicate with Petitioner by in-person meeting, and (b) utilize the legal mail system established at Guantánamo Bay and elsewhere to facilitate communication between Movant and his client, Petitioner.

## BACKGROUND

In August 2005, Movant brought suit in the United States District Court for the Southern District of New York (the "SDNY") individually and as "next friend" to eight unnamed detainees at Guantánamo Bay, who the President stated were facing imminent war crimes

charges before the military commissions.[1] *See* October 16, 2008 Declaration of Scott L. Fenstermaker, Esq. (the "Fenstermaker Declaration"), ¶ 3. In September of 2006, shortly after President Bush announced that he had ordered Petitioner and 13 other detainees transferred from covert overseas Central Intelligence Agency ("CIA")-run prisons to the custody of Respondent at Guantánamo Bay to face trial by military commissions, Movant amended the SDNY petition to include similar causes of action on behalf of Petitioner and those 13 other former CIA prisoners. *See id.* Among the causes of action brought on behalf of the eight unnamed and 14 named detainees were that they were being denied their right to counsel because of their isolation and other related government conduct. Specifically, because of their isolation, Petitioner and the other detainees were unable to secure attorneys who were members of the Pool of Qualified Civilian Defense Counsel (the "Pool") to represent their interests as the government continued to build its case against them before the military commissions.[2] The litigation further alleged that the speedy trial rights of the detainees were being violated as well.

In June of 2007, the SDNY matter was dismissed by the District Court. *See id*, ¶ 4. The litigation is currently pending in the United States Court of Appeals for the Second Circuit (the "Second Circuit"), where appellees have a November 7, 2008 due date to respond to appellants' motion to supplement the record. *See id.*

---

[1] Despite repeated requests, Respondents in the SDNY litigation refused to provide the names of the eight unnamed petitioners in that action. These eight individuals had been the subject of a Department of Defense press release.

[2] In order to represent a detainee before the military commissions, a civilian attorney must be a member of the Pool. The government has refused to disclose the names of the attorneys who are members of the Pool.

Shortly after the suit's dismissal by the SDNY, Movant wrote to Petitioner and 11 of the other named detained petitioners.[3] *See id*, ¶ 5. Of the 12 named detained petitioners to whom Movant wrote, eight responded in writing. *See id*. Petitioner was among these eight.[4] *See id*, ¶¶ 5 and 6.

Petitioner wrote three letters to Movant. He retained Movant as his legal representative by letter dated August 22, 2007, which Movant received on January 30, 2008, and sought legal advice in his October 1, 2007 letter, which Movant received in November of 2007. *See id*, ¶ 6, Exhibits A and B. Petitioner reiterated his desire to retain Movant as his attorney in his May 27, 2008 letter, which Movant received on October 1, 2008.[5] *See id*, Exhibit C.

On or about June 24, 2008, pursuant to the authority conveyed in Petitioner's August 22, 2007 and October 1, 2007 letters to Movant, Movant filed a petition for a writ of *habeas corpus* in this Court.[6] *See* 08-cv-1085. Shortly thereafter, the Federal Defender for the District of Nevada (the "Federal Defender"), by her attorney, Paul G. Turner, Esq., filed a petition of similar effect on Petitioner's behalf. *See* 08-cv-1207.

---

[3] Of the suit's 14 named detained petitioners, two had counsel as of the date of the District Court's dismissal order. Movant did not write to the two represented named detained petitioners.

[4] Petitioner wrote letters to Movant dated August 22, 2007, October 1, 2007, and May 27, 2008. *See id*, ¶ 6. Movant received Petitioner's letters on January 30, 2008, in November of 2007, and on October 1, 2008 respectively. Delays of this sort are the norm for letters sent to, and received from, detainees at Guantánamo Bay when the letters are not sent through the established legal mail system but were instead transmitted through the non-legal mail system in place at Guantánamo Bay.

[5] Petitioner's August 22, 2007, October 1, 2007, and May 27, 2008 letters to Respondent are all included as Exhibits A to the May 19, 2008, October 13, 2008, and October 4, 2008 declarations of Marwan al-Rahman respectively. Mr. al-Rahman's May 19th, October 13, 2008, and October 4, 2008 declarations were filed with the Clerk of the Court and the chambers of the Honorable Thomas F. Hogan, USDJ, pursuant to the October 7, 2008 Order, as Exhibits A, B and C to the Fenstermaker Declaration.

[6] Movant did not receive Petitioner's May 27, 2008 letter until October 1, 2008.

3

On July 1, 2008, the Department of Justice announced that Movant could no longer send privileged mail to detainees at Guantánamo Bay. *See* Fenstermaker Declaration, ¶ 22, Exhibit E. It made no mention of any prohibition against Movant's sending non-privileged mail. Since that time, 41 pieces of mail, both privileged and non-privileged, that Movant sent to Petitioner and another Guantánamo Bay-based client, Ahmed Khalfan Ghailani, have been rejected by the Department of Defense and returned to Movant without delivery to Petitioner or Mr. Ghailani. *See* Fenstermaker Declaration, ¶¶ 27 through 30, 32 through 34. Five of those 41 pieces of returned mail, including inquiries to Petitioner regarding the Federal Defender's participation as co-counsel, were letters sent to Petitioner. *See id*, ¶¶ 28, 30, and 34. Among the rejected correspondence sent to Mr. Ghailani were publicly filed court documents and a written Order of the Honorable Richard J. Leon of this Court. *See id*, ¶ 34.

## STATEMENT OF MATERIAL FACTS

<u>Federal Defender's Interference with the Attorney-Client Relationship between Petitioner and Movant</u>

In January of 2008, shortly after learning of the Federal Defender's claim to represent Petitioner,[7] Movant telephoned Mr. Turner and informed him of Petitioner's involvement in the litigation pending in the Second Circuit. *See* Fenstermaker Declaration, ¶ 7. At that time, Movant had received Petitioner's October 1, 2007 letter (in November of 2007), but had not yet received Petitioner's August 22, 2007 letter, which he later received on January 30, 2008.[8] Mr.

---

[7] According to the protective order entered in Petitioner's Detainee Treatment Act ("DTA") action in the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit"), the Federal Defender was merely Petitioner's "prospective counsel." As discussed below, the Federal Defender, by Mr. Turner, repeatedly misled Movant and assorted third parties regarding the Federal Defender's status.

[8] The government has never explained the five month and one week delay in releasing Petitioner's August 27, 2008 letter for delivery to Movant. This letter was released shortly after

4

Turner asked Movant to seek Petitioner's removal as a party to the Second Circuit litigation, to which Movant agreed. *See id.*, ¶ 8. On January 30, 2008, while preparing the motion to remove Petitioner from the Second Circuit litigation, Movant received Petitioner's August 22, 2007 letter, in which Petitioner clearly asked Movant to serve as his legal representative.[9] *See id*, ¶ 9, Exhibit A.

Movant immediately notified the Federal Defender of the substance of Petitioner's August 22, 2007 letter and his retention as Petitioner's legal representative. *See id.* The Federal Defender's response was hostile. As described in greater detail in the Fenstermaker Declaration, *see* ¶ 7 and footnote 8 therein, the Federal Defender and Mr. Turner were operating under a protective order issued by the DC Circuit (the "*Khan* Protective Order"). As of January 2008, under the provisions of the *Khan* Protective Order, the Federal Defender and her colleagues were merely "prospective counsel" to Petitioner, as the Federal Defender had not satisfied the *Khan* Protective Order's requirements to serve as Petitioner's attorney of record.[10] Ignoring Petitioner's August 22, 2007 retention letter to Movant, and the relevant provisions of the *Khan* Protective Order (*see* footnote 10 herein), Mr. Turner demanded that Movant cease all efforts on Petitioner's behalf and that Movant not communicate with Petitioner again. *See id*, ¶ 9. Mr. Turner never explained how the Federal Defender's status as merely Petitioner's "prospective

---

the Federal Defender filed her DTA petition on Petitioner's behalf in the DC Circuit. *See id*, footnote 10.

[9] Petitioner's August 22, 2007 letter was written in response to Movant's June 25, 2007 letter which discussed, in detail, Movant's efforts to serve as Petitioner's "next friend" in the SDNY litigation. *See id*, ¶ 5.

[10] The *Khan* Protective Order required that the Federal Defender "obtain[] written evidence of authority to represent [Petitioner] through [Petitioner's] *next friend*," and permitted the Federal Defender "up to two visits with [Petitioner] to obtain his authorization to seek review of the CSRT's determination of his status." *See Khan* protective order, Page 8, paragraphs 5(E)(ii) and 5(F), filed with Petitioner's DTA matter, 08-1007 in the DC Circuit (emphasis in the original). *Khan v. Gates*, 07-1327. *See Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007), *rev'd on other grounds*, for a general discussion of the *Khan* Protective Order.

5

counsel" superseded Movant's status as Petitioner's retained legal representative, as directed in Petitioner's own August 22, 2007 letter to Movant, particularly where neither the Federal Defender nor Mr. Turner had ever met or communicated with Petitioner. *See id.* Indeed, the provisions of the *Khan* Protective Order imply that the Federal Defender was obligated to secure Movant's permission, as Petitioner's "next friend," to proceed with the DTA action. *See Khan* Protective Order, Paragraph 5.E.ii.; *see also* Exhibit A to the Fenstermaker Declaration.

Nevertheless, over the next three months, Movant repeatedly sought to enlist the Federal Defender as co-counsel on Petitioner's defense team, notwithstanding the fact that the Federal Defender had no established relationship with Petitioner. *See* Fenstermaker Declaration, ¶¶ 10 through 15, 18. On February 1, 2008, Movant e-mailed Mr. Turner and invited Mr. Turner to join him as Petitioner's co-counsel.[11] *See id*, ¶ 10. A copy of Petitioner's two letters to Movant, dated August 22, 2007 and October 1, 2007, were attached to Movant's February 1, 2008 e-mail in pdf form. *See id.*

On or about February 2, 2008, Movant also sent letters notifying a number of government officials that Movant represented Petitioner.[12] *See id*, ¶ 11. Shortly thereafter, on or about February 12, 2008, Movant received a courtesy copy of a February 8, 2008 letter, written by Mr. Turner to the addressees of Movant's February 2, 2008 notification letter. *See id.* In his February 8th letter, Mr. Turner informed the addressees of Movant's letter that "[w]e are unaware of anyone outside our office who has authority to speak and act for [Petitioner]. Accordingly, we request that no one communicate with our client without prior notice to us and an opportunity to be present." Mr. Turner failed to disclose to the recipients of Movant's February 2, 2008 letter

---

[11] The *Khan* Protective Order was filed in the DC Circuit in Petitioner's DTA action that same day.

[12] Among these officials were key administrators in the Office of the Secretary of Defense, the Office of Military Commissions and the Department of Justice.

that, according to *Khan* Protective Order, Petitioner was merely the Federal Defender's prospective client and had not authorized her to "speak and act" on his behalf.[13] *See id.* Mr. Turner also failed to disclose to the recipients of Movant's letter that Movant had received the August 22, 2007 letter from Petitioner clearly appointing Movant as Petitioner's legal representative. Nor did he disclose that the Federal Defender had never met with or apparently even communicated with Petitioner at that point, while Movant had received multiple letters from Petitioner. Because of the Federal Defender's misleading February 8, 2008 letter to the addressees of Movant's February 2, 2008 letter, Movant was forced to send additional letters correcting the Federal Defender's assertions.

On or about April 6, 2008, Movant sent a letter to Mr. Turner and again attached copies of Petitioner's August 22, 2007 and October 1, 2007 letters to Movant. *See id*, ¶ 12. Movant's April 6, 2008 letter to Mr. Turner represents the second time he provided Mr. Turner with copies of Petitioner's August 22, 2007 and October 1, 2007 letters to him. *See id.* As of April 6, 2008, Mr. Turner had still not yet met with Petitioner and had apparently not yet communicated with him. *See id.*

On or about April 7, 2008, Movant sent two letters to Petitioner to provide Petitioner with a status report on Movant's efforts on his behalf. *See id*, ¶ 13. Each of these two letters, and their English equivalents, are available for the Court's *in camera* review. In these letters to Petitioner, among other things, Movant introduced Mr. Turner and described the Federal Defender's activities with respect to the DTA action she filed on Petitioner's behalf. *See id.* Movant further explained about Petitioner's right to counsel of his choice and sought his

---

[13] Again, the *Khan* Protective Order was filed in Petitioner's DTA action February 1, 2008, the same day that Movant e-mailed Petitioner's August 22, 2007 and October 1, 2007 letters to Mr. Turner. The Federal Defender has apparently never informed the DC Circuit of Movant's receipt of Petitioner's August 22, 2007 letter, or the substance contained therein.

7

direction with respect to the Federal Defender's participation as co-counsel. *See id.* Movant does not know whether Petitioner has ever received these two letters.[14] *See id.* In the interest of full disclosure, Movant sent copies of these letters to Mr. Turner. *See id.*

By letter dated April 8, 2008, Mr. Turner informed Movant that he was aware of some of the efforts Movant had taken on Petitioner's behalf. *See id*, ¶ 14. In his April 8th letter, Mr. Turner demanded that Movant "cease any further action purportedly taken on [Petitioner's] behalf." *See id.* At the time of his April 8, 2008 letter to Movant, Mr. Turner still had not met with Petitioner and apparently had not communicated with him. *See id.*

By letter dated April 13, 2008, Movant wrote Mr. Turner, wherein he reviewed his efforts on Petitioner's behalf and described the timeline of the correspondence Movant received from Petitioner at that point in time. *See* Fenstermaker Declaration, ¶ 15, Exhibit D. In this letter, Movant expressed his dismay at Mr. Turner's efforts to thwart Movant's actions taken on Petitioner's behalf and again invited, and indeed encouraged, Mr. Turner to serve as his co-counsel in his representation of Petitioner. *See id.* Movant further explained that he neither would nor could ignore Petitioner's pleas for help, notwithstanding Mr. Turner's requests that he do so. *See id.* As with Movant's February 1, 2008 e-mail and his April 6, 2008 letter, Mr. Turner never responded to Movant's April 13, 2008 letter. *See id.*

By letter dated April 13, 2008, Movant notified Norman Reimer and Anthony Romero, the Executive Directors of the National Association of Criminal Defense Lawyers and the American Civil Liberties Union, respectively, that Movant represented Petitioner. *See id*, ¶ 16. Several days later, on or about April 16, 2008, Movant received a courtesy copy of an April

---

[14] As described in greater detail below, Respondent and his subordinates are currently rejecting and returning all of Movant's mail sent to Petitioner and Ahmed Khalfan Ghailani, two of Movant's four clients detained at Guantánamo Bay.

14, 2008 letter from Mr. Turner to Messrs. Romero and Reimer, the recipients of Movant's April 13th letter. *See id.* Mr. Turner again asserted that Movant had no authority to represent Petitioner. Mr. Turner again failed to mention Petitioner's August 22, 2007 letter appointing Movant, the Federal Defender's status as merely Petitioner's "prospective counsel," and the fact that the Federal Defender still had not met with Petitioner and apparently had not communicated with him. *See id.*

Throughout the Federal Defender's efforts to maintain Petitioner as a "prospective client" and to interfere with Movant's attorney-client relationship with Petitioner, neither she nor Mr. Turner ever disclosed or discussed the relevant provisions of the *Khan* Protective Order, but instead sought to assure various parties that she, and Mr. Turner, represented Petitioner. *See id*, ¶¶ 11, 14, and 16. These assurances were false and left various third parties with an erroneous understanding of the Federal Defender's relationship to Petitioner, which, at that stage, was entirely non-existent.[15]

On or about April 21, 2008, after receiving his admission to practice before the DC Circuit, Movant filed a notice of appearance in Petitioner's DTA matter in the DC Circuit. *See id*, ¶ 17. That same day, Movant sent Mr. Turner a letter informing him of his having filed the notice of appearance and provided him with a copy of the notice and Movant's cover letter to the court. *See id.* Shortly thereafter, on May 5, 2008, Movant telephoned Mr. Turner to discuss Movant's April 21, 2008 letter. *See id*, ¶ 18. During this telephone conversation, Movant again invited Mr. Turner one last time to join him as counsel for Petitioner, an offer which Mr. Turner refused. Movant also requested that Mr. Turner send Movant a copy of Petitioner's file. Mr.

---

[15] Nor can the Federal Defender claim to be appointed by the court to represent Petitioner. Court records show that the Federal Defender was never appointed by the DC Circuit (or any other court) to represent Petitioner. Indeed, the Federal Defender's claim to represent Petitioner is purely by self-appointment.

Turner again refused, claiming he could not do so without Petitioner's written authorization. Mr. Turner refused to disclose if he had communicated with Petitioner and stated that he was under no obligation to discuss with Movant efforts he had undertaken on Petitioner's behalf. *See id.* At no time did Mr. Turner inform Movant of his plan to visit Petitioner at Guantánamo Bay about two weeks later, notwithstanding Mr. Turner's awareness that, at that stage, Movant served as Petitioner's legal representative. Upon realizing that the Federal Defender would never set aside her own territorial interest in Petitioner's case and abide by Petitioner's right to choose counsel, as exercised in his August 22, 2007 and October 1, 2007 letters to Movant, Movant filed a motion to substitute counsel in Petitioner's DTA action in the DC Circuit. *See id.* That motion is pending before the DC Circuit.

In the course of motion practice related to Movant's motion to substitute counsel in the DC Circuit, Movant learned for the first time of the Federal Defender's May 2008 visit to Petitioner at Guantánamo Bay, where Petitioner met with the Federal Defender for the first time. A week later, on May 27, 2008, Petitioner wrote to Movant and discussed the Federal Defender's visit. As stated earlier, in this letter, Petitioner directed Movant in clear language to proceed as his attorney. Petitioner also disclosed that he was rejecting the Federal Defender as part of his defense team and explained the basis for that rejection. On October 5, 2008, Movant notified Mr. Turner by e-mail of his rejection by Petitioner. On October 6, 2008, Movant sent a similar notice by first class mail to Mr. Turner. Mr. Turner has not responded to either notice. *See id,* ¶ 35.

<u>Government Interference with Movant's Representation of Detainees</u>

On June 5, 2008, Ammar al-Baluchi, one of the five Guantánamo Bay detainees facing military commissions' charges for his alleged involvement in the September 11, 2001

terrorist attacks, informed the military commissions' judge during his arraignment that he had been writing Movant in an apparent attempt to secure Movant's assistance in his defense. *See id*, ¶ 20. Mr. al-Baluchi informed the judge that the government had been interfering with his efforts to communicate with Movant.[16] *See id.* After registering this complaint, Mr. al-Baluchi and the other four September 11th defendants rejected assigned military counsel and elected to proceed *pro se* in the defense of their capital case. *See id.*

On June 23, 2008, Movant wrote to the administrator for the military commissions and her legal advisor. *See id*, ¶ 21. Movant requested an audience with these officials to discuss the conflict of interest under which Mr. Ghailani's military counsel was operating,[17] and cited Mr. al-Baluchi's June 5, 2008 request for Movant's assistance and the September 11th defendants' election to proceed *pro se* as support for his request for a conference. *See id.*, ¶ 21. The administrator refused to meet with Movant, claiming that he did not recognize Movant as Mr. Ghailani's attorney.[18]

By e-mail dated July 1, 2008, an attorney with the Department of Justice, Andrew I. Warden, informed Movant that he was no longer permitted to send privileged mail to Guantánamo Bay.[19] *See id*, ¶ 22, Exhibit E. In response, Movant wrote, "You are free to process my mail to my clients in whatever fashion you like, *so long as they get it*. I will reserve my

---

[16] As of June 5, 2008, Movant had received three of the five letters Mr. al-Baluchi had sent to Movant. Movant has never received the two additional letters.

[17] Military counsel for Mr. Ghailani, Lt. Col. Michael Acuff, also represents Khalid Sheikh Mohammed, the alleged mastermind of the September 11, 2001 terrorist attacks and allegedly al Qaeda's "Chief of External Operations" during the same period of time that Mr. Ghailani was alleged to have been facilitating al Qaeda's external operations in his alleged capacity as an expert in forging passports and other travel documents for al Qaeda operatives.

[18] Mr. Ghailani had sent letters to Movant directing Movant to act as his attorney. Copies of Mr. Ghailani's letters to Movant are available for this Court's *in camera* review.

[19] Prior to July 1, 2008, Movant had been sending privileged mail to Guantánamo Bay for over a year, without incident. None of these previous mailings, which were similarly marked privileged, were previously rejected.

11

arguments regarding the privileged nature of the correspondence for the appropriate forum." *See id*, ¶ 25, Exhibit F (emphasis added).

Subsequent to the Justice Department's July 1, 2008 apparent change in the treatment of Movant's mail to his detainee clients, Respondent and his subordinates have rejected 41 pieces of mail sent by Movant to two of his four Guantánamo Bay-based clients, Petitioner and Ahmed Khalfan Ghailani. *See id*, ¶¶ 27, 28, 29, 30, 32, and 34. Included in the first packet of rejected client mail was a memorandum from Major Greg Musselman of the Staff Judge Advocate's Office at Guantánamo Bay. Major Musselman explained that the Office of the General Counsel at the Pentagon had issued the orders to reject Movant's mail to the detainees. *See id*, ¶ 27, Exhibit G.

Included in these 41 pieces of undelivered mail were non-privileged mail, client copies of numerous court filings made by Movant on behalf of his clients, client copies of filings made by parties in opposition to Movant's efforts, and a client copy of an Order issued by United States District Court Judge Richard J. Leon of this Court. *See id*, ¶¶ 32, 33 and 34. Respondents have never explained why non-privileged mail was returned or why client copies of publicly available court filings, including a Federal District Court Judge's Order directly involving the addressee's *habeas* matter, were similarly rejected.

On July 9, 2008, Mr. al-Baluchi informed the same military commissions' judge he addressed on June 5th that he wanted Movant to serve as an attorney advisor on his legal team pursuant to Rule 506(d) of the Rules for Trial by Military Commission.[20] *See id*, ¶ 26. Movant first learned of this request on Thursday, October 9, 2008 upon receipt of a July 14, 2008 letter

---

[20] Rule 506(d) states that "[s]ubject to the discretion of the military judge, 10 U.S.C. §949d(f), and such regulations as the Secretary of Defense may prescribe, the accused may have present and seated at the counsel table for purpose of consultation persons not qualified to serve as counsel under [Rules for Trial by Military Commissions Rule] 502."

12

from Mr. al-Baluchi. *See id.* Neither the military judge nor the military commissions' staff took action on Mr. al-Baluchi's request for counsel of his choice to join his legal advisory team. *See id.*

## ARGUMENT

### Petitioner Selected Movant As His Counsel of Choice and Explicitly Rejected the Federal Defender

Here, Petitioner successfully overcame the Federal Defender's self-interested effort to convert Petitioner from a prospective client to an established one by rejecting the Federal Defender's misleading and unethical campaign to interfere with the attorney-client relationship between Movant and Petitioner. Petitioner's August 22, 2007, October 1, 2007, and May 27, 2008 letters to Movant make clear his intent to retain Movant as his legal representative. *See* Fenstermaker Declaration, Exhibits A, B, and C; *see also Whitmore v. Arkansas*, 495 U.S. 149 (1990) (discussing the "next friend" doctrine); *see Khan* Protective Order, Paragraph 5.E.ii. (prospective counsel must obtain "written evidence of authority to represent Detainee or obtain[] evidence of authority to represent the Detainee through the Detainee's *next friend;*") (emphasis in original). In light of the language contained in Petitioner's August 22, 2007 letter to Petitioner, the *next friend* doctrine as applied in *Whitemore*, and paragraph 5.E.ii. of the *Khan* Protective Order, the Federal Defender was obligated to look to Movant for direction in Petitioner's matter. She has not done so and has, instead, sought to aggressively and unethically undermine Petitioner's relationship with Movant. With Petitioner's May 27, 2008 letter, which not only directed Movant to proceed as his attorney and explicitly rejected Mr. Turner and the Federal Defender as his legal representative, Petitioner's rejection of the Federal Defender could not be clearer, as Petitioner went so far as to provide an explanation for that rejection. *See id*, Exhibit C.

The fact that this rejection occurred shortly after Petitioner met the Federal Defender for the first time demonstrates that Petitioner never approved the Federal Defender as his counsel. While Petitioner may have disapproved of the Federal Defender as his attorney, he indicated his desire for a DTA action to proceed on his behalf and therefore executed documents to that effect.[21] Therefore, his personal authorization of the DTA action, as required by the *Khan* Protective Order, is not the equivalent of any authorization to the Federal Defender to represent him in that matter. Petitioner's May 27, 2008 letter to Movant is evidence of this decision.

In any event, should the Federal Defender, in her continued effort to secure and retain Petitioner's case as her own, produce documents executed by Petitioner dated after May 27, 2008 supporting her claim of authority to represent Petitioner, such documents ought to be scrutinized and viewed as the product of the government's undue burden on Petitioner's Sixth Amendment right to counsel of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles the defendant to a reversal of his conviction, irrespective of prejudice or lack thereof).

The government's active involvement in the interference of Petitioner's relationship with his chosen counsel violates Petitioner's Fifth and Sixth Amendment rights to due process of law and counsel of his choice. Specifically, by refusing to advance Movant's application for the security clearance necessary to travel to Guantánamo Bay to visit Petitioner and by refusing to permit delivery of Movant's privileged mail to Petitioner, the government has isolated Petitioner from his chosen attorney and has deprived Movant of his ability to communicate with his client in furtherance of that representation. *See People v. Moore*, 57 Cal. App. 3d 437, 442 (Cal. App. 4th Dist. 1976) (prosecution's interference with an attorney-client relationship); *see also*

---

[21] Indeed, in an April 7, 2008 letter Movant sent to Petitioner updating Petitioner on Movant's efforts on his behalf, Movant discussed plans to assume control over Petitioner's DTA action.

*Commonwealth v. Manning*, 373 Mass. 438, 443 (1977) (government agents' disparagement of the relationship between defendant and his counsel"); *United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980), citing *Moore* and *Manning*; *see also United States v. Amlani*, 111 F.3d 705, 711 (9th Cir. 1997) (prosecutor's repeated disparagement of defense counsel so egregious as to constitute grounds for a vacatur of conviction); *see also Cinelli v. Cutillo*, 896 F.2d 650, 655 (1st Cir. 1990) (defense counsel termination as result of denigration by the police); *United States v. Morrison*, 449 U.S. 361, 364 (1981) (DEA agents' disparagement of counsel). Such government action could not but leave Petitioner with the impression that his chosen attorney has abandoned his cause. Under this circumstance, Petitioner is forced into the position of selecting as his attorney one who the government permits him to communicate with, in this instance, the Federal Defender.

Initially, the Department of Defense and the Justice Department's disparate treatment of Movant and the Federal Defendant is rather telling. First, the Department of Defense has never acted on Movant's March 2008 application for the necessary security clearance to permit his travel to see Petitioner at Guantánamo Bay. *See* Fenstermaker Declaration, ¶ 36. In sharp contrast, the government has given the Federal Defender relatively unlimited access to Petitioner at Guantánamo Bay, having permitted the Federal Defender a three-day visit in May 2008 and other visits thereafter to see him.

Second, the disparity in treatment is also observed with respect to both counsels' ability to write to Petitioner. Since the Justice Department's July 1, 2008 notification that Movant can no longer send legal mail to Petitioner (*see id*, Exhibit E), Movant has had all five of his letters sent to Petitioner since June of 2008 returned and undelivered from Guantánamo

Bay.[22] *See id*, ¶¶ 28, 30, and 34. As a result of the government's July 1, 2008 notice that Movant can no longer send privileged mail to Petitioner, Petitioner has not received any communication from Movant since May of 2008. Petitioner has therefore been held *incommunicado* from his chosen counsel. As a result of this policy change, Movant is left with no means to maintain his relationship with Petitioner and Petitioner is deprived of the effective representation of his chosen counsel since May of 2008.[23] Having received no communication from Movant since May of 2008, Petitioner could reasonably, although incorrectly, conclude from Movant's seeming neglect that Movant had abandoned his efforts on Petitioner's behalf.

In stark contrast, the Federal Defender has been given access to the expedited legal mail system at Guantánamo Bay and, as a result, is given a greater opportunity of according Petitioner comparatively more attention. The expedited legal mail system permits the delivery of correspondence between the Federal Defender and Petitioner within a matter of days, thereby facilitating greater communication between them. The use of the legal mail system therefore provides a significant advantage over the months-long wait for delivery of correspondence sent through the non-legal mail system Movant was forced to use, and which is now no longer even available.[24] The ease of communication between Petitioner and the Federal Defender, when

---

[22] Among these letters from Movant to Petitioner were specific and detailed requests for direction from Petitioner regarding legal strategy in pending cases.

[23] In addition, this policy, as stated in the Justice Department's July 1, 2008 notification, eliminates Movant's ability to secure Petitioner's assistance in responding to the Court's Order to Show Cause. In so doing, the Justice Department has deprived this Court of vital information necessary for the just and fair determination of the dispute between counsel and the ability to protect Petitioner's exercise of his right to counsel of his choice.

[24] Letters to and from detainees at Guantánamo Bay through the non-legal mail system Movant was forced to use typically take three to four months to arrive at their destination. Indeed, Petitioner's initial retention letter, dated August 22, 2007, arrived five months and one week after it was written (and three weeks after the Federal Defender filed a DTA action on Petitioner's behalf). *See id*, ¶ 9, footnote 10.

compared with the currently non-existent communication between Movant and Petitioner, must reflect favorably on the Federal Defender in Petitioner's eyes.

In short, by acting to isolate Petitioner from Movant, the government has interfered with the attorney-client relationship between Movant and Petitioner while concomitantly promoting the establishment of one between Petitioner and the Federal Defender. *See Amlani, Cinelli,* and *Morrison, supra.* After all, from Petitioner's standpoint, believing that perhaps his selected attorney is no longer available because he has received no communication from him for several months, Petitioner, who desires representation, is forced to choose another who is more conveniently available. Therefore, by their actions, the Departments of Defense and Justice have rendered the Federal Defender as Petitioner's most convenient and only available choice. Under these circumstances, were the Federal Defender able to produce documentation dated after May 27, 2008 that purports to confer authority to the Federal Defender to act on Petitioner's behalf, such documentation must be carefully scrutinized by the Court to ensure that Petitioner's selection of counsel has been made in a knowing and voluntary fashion. In particular, such evidence ought to be closely scrutinized to learn if it was secured after Petitioner was left with the impression that Movant had abandoned Petitioner's cause due to the government's campaign to discredit Movant as Petitioner's attorney. Under these circumstances, where conflicting facts exist, the failure to learn and give effect to Petitioner's selection of counsel of his choice would therefore violate Petitioner's Fifth and Sixth Amendment rights to due process of law and counsel of his choice, particularly where the voluntariness of any choice in favor of the Federal Defender is called into question by her misleading behavior and the government's improper involvement in isolating Petitioner from Movant.

### A Hearing Should Be Held to Secure Petitioner's Direct
### Involvement in the Resolution of Counsels' Dispute

Under the circumstances presented here, should the Court find Petitioner's three letters insufficient to establish Movant's authority to proceed with the instant action, the Court should hold a hearing at which Petitioner could testify, in a neutral setting, either in person or via teleconference from Guantánamo Bay, regarding his choice of counsel, both in furtherance of his *habeas* petition and with respect to his representation before the military commissions. Since Petitioner's May 27, 2008 letter, the government has imposed an undue burden on Petitioner's Fifth and Sixth Amendment rights to due process of law and to counsel of his choice. As detailed earlier, Movant has never been granted authorization to travel to Guantánamo Bay and no longer has the opportunity to correspond with Petitioner in writing. As a result, Petitioner has no means by which he could communicate through his chosen attorney to further support his claim in response to the Order to Show Cause. Under these circumstances, failure to learn of Petitioner's most current desires poses the risk of proceeding against Petitioner's wishes. Specifically, where there is conflicting information regarding Petitioner's choice, failure to permit Petitioner to testify and to identify at a hearing which attorney Petitioner has selected poses the risk of proceeding in contravention of Petitioner's desires, thus violating his Fifth and Sixth Amendment rights to due process of law and right to counsel of his choice. *See United States v. Gonzalez-Lopez, supra.* Only by hearing directly from Petitioner himself can this Court give full effect to Petitioner's fundamental rights.

### The Court Should Enter an Order Permitting Movant to Visit Petitioner
### in Person and to Access the Existing Legal Mail System

The Court should enter an Order directing Respondent to permit Movant to travel to Guantánamo Bay to meet with Petitioner by way of an in-person attorney-client conference to

learn of Petitioner's desire as to how to proceed in this matter. Similarly, this Order should provide for Movant's access to the legal mail system at Guantánamo Bay.

Movant is Petitioner's attorney of choice. Respondent and his subordinates in the Department of Defense have aggressively misused existing protective order requirements to frustrate Movant's ability to communicate with Petitioner, who, at this stage, has been his client for over a year now.[25] Not only have the Department of Justice and Respondent refused to permit Movant to use the legal mail system to communicate directly with Petitioner, but Respondent and his subordinates are currently rejecting and returning all of Movant's mail to Petitioner, including explicit requests to Petitioner for guidance and instruction on presenting Petitioner's legal defense, sent through the non-legal mail system. In addition, neither organization has yet to afford Movant access to his client for an in-person, face-to-face attorney-client conference at Guantánamo Bay. By selectively employing the provisions of various protective orders in place at Guantánamo Bay, Respondent and the Department of Justice are attempting to play an active role in limiting Petitioner's choices to government approved attorneys, such as the Federal Defender. Under the circumstances presented by this case, Respondent's and the Department of Justice's actions are improper and directly violate Petitioner's Fifth Amendment right to due process of law and his Sixth Amendment right to effective counsel of his choice. Such conduct should not be countenanced, particularly where, as here, the government is the opposing party in Petitioner's *habeas* petition.

This Court should therefore immediately enter Movant's proposed Order (1) permitting Movant immediate access to the legal mail system established at Guantánamo Bay, and (2) immediately affording Movant access to Petitioner by way of a personal attorney-client

---

[25] Petitioner's first letter retaining Movant as his legal representative was dated August 22, 2007.

19

conference at Guantánamo Bay. Failure to issue such an Order would merely serve to embolden Respondent and the Federal Defender in further violation of Petitioner's Fifth and Sixth Amendment rights to due process of law and to counsel of his choice.

## Conclusion

This Court should find that Movant has the authorization from Petitioner to proceed with the instant *habeas* petition. In the alternative, this Court should grant a hearing, at which Petitioner can testify regarding his choice of counsel, and enter an Order permitting Movant to meet with Petitioner at Guantánamo Bay to discuss Petitioner's right to choose counsel with him in person. Furthermore, this Court should enter an Order permitting Movant immediate access to the legal mail system established at Guantánamo Bay and immediately afford Movant access to Petitioner by way of personal visit at Guantánamo Bay. Finally, this Court should further enter an Order granting such other and further relief necessary to justly and fairly resolve this matter.

Dated: New York, New York
October 17, 2008

**The Law Offices of Scott L. Fenstermaker, P.C.**
300 Park Avenue, 17th Floor
New York, New York 10022
(212) 302-0201 (o)
(917) 817-9001 (c)
(212) 302-0327 (f)

By: *Scott L. Fenstermaker*
Scott L. Fenstermaker, Esq.

20