UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Rahim ali-Nashir, et. al.

    Petitioners,

v.

Robert M. Gates, et. al.

    Respondents.

DECLARATION OF SCOTT L. FENSTERMAKER, ESQ.
PURSUANT TO 28 U.S.C. §1746

Civil Docket Number 08-cv-1085
Civil Docket Number 08-cv-1207
Misc. No. 0442-08

    SCOTT L. FENSTERMAKER, ESQ. (hereinafter, the "Declarant"), an attorney practicing before the bar of this Court pursuant to Local Rule 83.2(g), hereby declares, under the penalties of perjury, pursuant to 28 U.S.C. §1746, the following:

    1) Declarant is an attorney at law, practicing before this Court pursuant to Local Rule 83.2(g). Declarant is admitted in the courts of New York State, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Second and District of Columbia Circuits, and the United States Supreme Court.

    2) By Order of this Court, dated October 3, 2008 (the "October 3, 2008 Order"), Declarant was directed to show cause why Petitioner's *habeas corpus* petition, 08-cv-1085, should not be dismissed. By separate Order, dated October 7, 2008 (the "October 7, 2008 Order"), this Court further directed Declarant to submit, for the Court's *in camera* review, the three letters Declarant has, at this point, received from Petitioner.[1] Declarant files this declaration in support of his response to the October 3, 2008 and October 7, 2008 Orders and in

---

[1] These three letters have been submitted for the Court's *in camera* review to both the Clerk of the Court and to the chambers of the Honorable Thomas F. Hogan, USDJ. These letters, along with certifications of Arabic to English translation by Marwan al-Rahman, an interpreter certified to interpret from Arabic into English and from English into Arabic by the United States court system, are referenced as Exhibits A, B, and C hereto.

1

Dockets.Justia.com

support of Petitioner's related motions for a hearing and a protective order. In support of Declarant's response to the October 3, 2008 and October 7, 2008 Orders and Petitioner's related motions for a hearing and a protective order, declarant states as follows:

3) On or about August 24, 2005, Declarant filed a petition (the "Petition") for a writ of mandamus and related relief in the United States District Court for the Southern District of New York ("SDNY"). The Petition was filed individually, and on behalf of Declarant and eight unnamed detainees held at Guantánamo Bay, Cuba, as their "next friend."[2] *See Fenstermaker, et. al. v. Bush, et. al.*, 05 CV 7468 (RMB) (SDNY). Shortly after President Bush's September 6, 2006 announcement that he had ordered 14 prisoners held in the covert off-shore Central Intelligence Agency ("CIA") prisons transferred to the custody of the Department of Defense at Guantánamo Bay to face war crimes charges before the military commissions, the Petition was amended on or about September 26, 2006 to include causes of action on behalf of those 14 detainees, including Petitioner herein (the "Amended Petition").

4) On or about June 12, 2007, the Honorable Richard M. Berman, USDJ, issued a Decision and Order dismissing the Amended Petition. An appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit"), under docket number 07-2980-cv, was noticed shortly thereafter. The Second Circuit appeal is pending, with the parties actively engaged in motion practice to supplement the record on appeal to include evidence of the government's actions subsequent to the dismissal of the Amended Petition.

5) In a letter dated June 25, 2007, Declarant notified Petitioner and eleven other Guantánamo Bay detainees of his efforts as their "next friend," of the dismissal of the Amended

---

[2] Respondents in the matter in the SDNY repeatedly refused to divulge the names of the eight unnamed detainees, who had previously been the subject of a Department of Defense press release.

Petition, and the matter's status on appeal.[3] A copy of Declarant's June 25, 2007 letter is available for the Court's *in camera* review. In response to Declarant's June 25, 2007 letter, eight of the letter's 12 recipients responded in writing to Declarant, including Petitioner herein.

6) In response to Declarant's June 25, 2007 letter, Declarant received three letters from Petitioner delivered to him on three separate occasions. In November, 2007, Declarant received a letter from Petitioner, dated October 1, 2007 and postmarked October 29, 2007.[4] On January 30, 2008, Declarant received Petitioner's August 22, 2007 letter, which was postmarked January 28, 2008.[5] On October 1, 2008, Declarant received Petitioner's May 27, 2008 letter.[6] The al-Rahman May 19th, October 13th, and October 4th Declarations were filed under separate cover as Exhibits A, B, and C respectively for the Court's *in camera* review.

7) In a conversation occurring in late December 2007 or early January 2008, Declarant learned from an attorney representing several detainees held at Guantánamo Bay that the Federal Defender for the District of Nevada (the "Federal Defender") was claiming to

---

[3] Declarant learned that two of the 14 named detained petitioners in the Amended Petition had counsel. Hence, Declarant wrote only 12 of the 14 named detained petitioners.

[4] Petitioner's October 1, 2007 letter and the English translation thereof are attached to the October 13, 2008 Declaration of Marwan al-Rahman (the "al-Rahman October 13th Declaration") as Exhibits A and B, respectively, thereto.

[5] Petitioner's August 22, 2007 letter and the English translation thereof are attached to the May 19, 2008 Declaration of Marwan al-Rahman (the "al-Rahman May 19th Declaration") as Exhibits A and B, respectively thereto. The al-Rahman May 19th Declaration bears the caption of Petitioner's Detainee Treatment Act ("DTA") petition in the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit"), as it was originally filed in support of Petitioner's motion to substitute counsel in that Court. Petitioner's motion to substitute counsel is still pending in the DC Circuit.

[6] The May 27, 2008 letter and the English translation thereof are attached to the October 4, 2008 Declaration of Marwan al-Rahman (the "al-Rahman October 4th Declaration") as Exhibits A and B, respectively thereto.

3

represent Petitioner.[7] In January 2008, after receiving Petitioner's October 1, 2007 letter (in November of 2007), but prior to receiving Petitioner's August 22, 2007 letter (on January 30, 2008), Declarant telephoned the Federal Defender, through her attorney, Paul G. Turner, Esq., to apprise her of the Amended Petition that Declarant had filed on Petitioner's behalf, its dismissal, and the pending appeal before the Second Circuit. During this telephone conversation, Mr. Turner disclosed no information regarding the status of Petitioner's DTA matter in the DC Circuit, other than providing the misleading claim that he represented Petitioner.[8] At the time Declarant first contacted Mr. Turner, with the exception of Petitioner's October 1, 2007 letter, Declarant had received no other correspondence from Petitioner. Because Petitioner's October 1, 2007 letter, when read alone, did not clearly designate Declarant as his legal representative, Declarant requested instruction from Mr. Turner as to how he would like Declarant to proceed with respect to the matter pending before the Second Circuit.

8) Mr. Turner responded to Declarant by letter, dated January 4, 2008, in which he "direct[ed] that [Petitioner] be withdrawn as a party from the [Second Circuit] litigation, including any reinstatement of it, and not included as a party in any other Guantanamo (sic)

---

[7] Indeed, at this stage the Federal Defender was merely self-appointed and had not secured Petitioner as a client. Court records also show that the Federal Defender was not appointed by the Court to represent Petitioner.

[8] The Federal Defender was, at that time, operating under the DC Circuit's so-called "*Khan* protective order," (*see Kahn v. Gates*, 07-1324) which was filed in Petitioner's DC Circuit DTA matter on February 1, 2008. The *Khan* protective order required that the Federal Defender "obtain[] written evidence of authority to represent [Petitioner] through [Petitioner's] *next friend*," and permitted the Federal Defender "up to two visits with [Petitioner] to obtain his authorization to seek review of the CSRT's determination of his status." *See Khan* protective order, Page 8, paragraphs 5(E)(ii) and 5(F), filed with Petitioner's DTA matter, 08-1007 in the DC Circuit (emphasis in the original).

4

related litigation that [Declarant] may pursue."[9] A copy of all correspondence referenced in this Declaration, but not included as an exhibit herein, is available for the Court's review. Mr. Turner elected not to explain either the existence of the *Khan* protective order, or its provisions circumscribing the Federal Defender's limited authority. At that time, the Federal Defender had not met Petitioner or communicated with him.

9) On January 30, 2008, as Declarant prepared the motion seeking Petitioner's removal as a party in the Second Circuit litigation, Declarant received Petitioner's August 22, 2007 letter to him. This letter was apparently written prior to the October 1, 2007 letter Declarant received from Petitioner in November of 2007.[10] In his August 22, 2007 letter, which contained substantial redactions, Petitioner asked that Declarant serve as his legal representative.[11] *See* Exhibit B to the al-Raham May 19th Declaration, Exhibit A hereto. Indeed, Petitioner's August 22, 2007 letter to Declarant named Declarant as Petitioner's "next friend." *See* footnote 8, *supra*. As a result of the *Khan* protective order, the Federal Defender was therefore under an obligation to look to Declarant for direction in Petitioner's DTA matter. After having Petitioner's August 22, 2007 letter translated into English, Declarant immediately contacted Mr. Turner who, in a very heated conversation, ordered Declarant to cease all contact with Petitioner and instructed Declarant to undertake no action of any kind on Petitioner's behalf. During this conversation, Mr. Turner declined to explain how his self-appointment as Petitioner's prospective counsel and his resulting limited status under the *Khan* protective order

---

[9] As described in footnote 8 above, the Federal Defender was merely Petitioner's "prospective counsel" as of January 2008. This fact was unknown to Declarant, who took, at face value, Mr. Turner's claims to be Petitioner's representative. Mr. Turner's claims were false.

[10] The government has never explained the five month and one week delay in delivering Petitioner's August 22, 2007 letter, which arrived in Movant's office approximately three weeks after the Federal Defender initiated her DTA petition on Petitioner's behalf.

[11] Declarant's June 25, 2007 letter to Petitioner explained Declarant's efforts on Petitioner's behalf as his "next friend."

5

as Petitioner's "prospective counsel" superseded Petitioner's written instructions directing that Declarant serve as Petitioner's legal representative, which clearly predated the Federal Defender's self-appointment as Petitioner's prospective counsel (by at least four months).

10) On February 1, 2008, Declarant e-mailed Mr. Turner and solicited Mr. Turner to join him as Petitioner's co-counsel.[12] A copy of Petitioner's two letters to Declarant, dated August 22, 2007 and October 1, 2007, were attached to Declarant's February 1, 2008 e-mail in pdf form.[13]

11) On or about February 2, 2008, Declarant sent a letter notifying a number of government officials that Declarant represented Petitioner.[14] Declarant sent a courtesy copy of his February 2, 2008 letter to Mr. Turner. On or about February 12, 2008, Declarant received a courtesy copy of a February 8, 2008 letter, written by Mr. Turner to the addressees of Declarant's February 2, 2008 notification letter. In his February 8th letter, Mr. Turner informed the addressees that "[w]e are unaware of anyone outside our office who has authority to speak and act for [Petitioner]. Accordingly, we request that no one communicate with our client without prior notice to us and an opportunity to be present." Mr. Turner failed to explain to the recipients of Declarant's February 2, 2008 letter that, as per the *Khan* protective order, the Federal Defender was merely Petitioner's "prospective counsel" and that she had not received Petitioner's authorization to "speak and act" on his behalf. Nor did Mr. Turner mention that the Federal Defender was merely self-appointed and had not met with or apparently even communicated with Petitioner at that point.

---

[12] The *Khan* protective order was filed in the DC Circuit in Petitioner's DTA action that same day.
[13] Petitioner's third letter to Declarant, dated May 27, 2008, had not yet been written.
[14] Among these officials were key administrators in the Office of the Secretary of Defense, the Office of Military Commissions and the Department of Justice.

12) On or about April 6, 2008, Declarant sent a letter to Mr. Turner and again attached copies of Petitioner's August 22, 2007 and October 1, 2007 letters to Declarant. Declarant's April 6, 2008 letter to Mr. Turner represents the second time he provided Mr. Turner with copies of Petitioner's August 22, 2007 and October 1, 2007 letters to him. As of April 6, 2008, Mr. Turner still had not met Petitioner and had not communicated with him.

13) On or about April 7, 2008, Declarant sent two letters to Petitioner. Each of these two letters, and their English equivalents, are available for the Court's *in camera* review. In these letters, among other things, Declarant informed Petitioner of Mr. Turner's activities on Petitioner's behalf. Declarant further explained Petitioner's right to counsel of his choice and sought his direction for Mr. Turner's participation as co-counsel in Petitioner's defense team. Declarant does not know whether Petitioner has ever received these two letters.[15] In the interest of full disclosure, Declarant sent copies of these letters to Mr. Turner.

14) By letter dated April 8, 2008, Mr. Turner informed Declarant that he was aware of some of the efforts Declarant had taken on Petitioner's behalf. In his April 8th letter, Mr. Turner demanded that Declarant "cease any further action purportedly taken on [Petitioner's] behalf." At the time of his April 8, 2008 letter to Declarant, Mr. Turner still had not met Petitioner and had not communicated with him. Thus, the Federal Defender remained "prospective counsel."

15) By letter dated April 13, 2008, Declarant wrote Mr. Turner, wherein he reviewed his efforts on Petitioner's behalf and described the timeline of the correspondence Declarant received from Petitioner at that point in time. Declarant's April 13, 2008 letter to Mr. Turner is attached as Exhibit D. In his April 13, 2008 letter, Declarant expressed his dismay at Mr.

---

[15] As described in greater detail below, Respondent and his subordinates are currently rejecting and returning all of Declarant's mail sent to Petitioner and Ahmed Khalfan Ghailani, two of Declarant's four clients detained at Guantánamo Bay.

7

Turner's efforts to thwart Declarant's actions taken on Petitioner's behalf and invited, and indeed encouraged, Mr. Turner to serve as his co-counsel in his representation of Petitioner. Declarant further explained that he neither would nor could ignore Petitioner's pleas for help, notwithstanding Mr. Turner's requests that he do so. As with Declarant's February 1, 2008 e-mail and his April 6, 2008 letter, both of which were addressed and sent to Mr. Turner, Mr. Turner never responded to Declarant's April 13, 2008 letter.

16) By letter dated April 13, 2008, Declarant notified Norman Reimer and Anthony Romero, the Executive Directors of the National Association of Criminal Defense Lawyers and the American Civil Liberties Union, respectively, that Declarant represented Petitioner. Several days later, on or about April 16, 2008, Declarant received a courtesy copy of an April 14, 2008 letter from Mr. Turner to Messrs. Romero and Reimer again asserting that Declarant had no authority to represent Petitioner. In his April 14, 2008 letter, Mr. Turner again never mentioned Petitioner's August 22, 2007 letter to Declarant, the Federal Defender's status as merely Petitioner's self-appointed "prospective counsel," or that she had not met with or communicated with Petitioner.

17) On or about April 21, 2008, after receiving his admission to practice before the DC Circuit, Declarant filed a notice of appearance in Petitioner's DTA action. That same day, Declarant wrote Mr. Turner and informed him of Declarant's action and provided Mr. Turner with copies of his cover letter to the DC Circuit and the notice of appearance.

18) On May 5, 2008, Declarant telephoned Mr. Turner to discuss Declarant's April 21, 2008 letter. During this telephone conversation, Declarant again invited Mr. Turner to join him as counsel for Petitioner, an offer which Mr. Turner refused. Declarant also requested that Mr. Turner send Declarant a copy of Petitioner's file. Mr. Turner refused to do so without

Petitioner's written authorization. Mr. Turner also refused to disclose if he had communicated with Petitioner. He further informed Declarant that he was under no obligation to discuss efforts he had undertaken on Petitioner's behalf. At no time did Mr. Turner inform Declarant of his plan to shortly visit Petitioner at Guantánamo Bay, notwithstanding Mr. Turner's awareness, at that stage, that Declarant served as Petitioner's legal representative. On or about May 27, 2008, Declarant filed a motion to substitute counsel in Petitioner's DTA action before the DC Circuit to remove the Federal Defender as the attorney of record in his DTA matter. In the course of motion practice, the Federal Defender disclosed, for the first time, that she had visited with Petitioner that month at Guantánamo Bay.

19) On May 27, 2008, a week after the Federal Defender visited and met with Petitioner for the first time, Petitioner wrote Declarant a letter directing Movant to act as his attorney. Petitioner also stated that he had rejected Mr. Turner and the Federal Defender as his legal representative and provided an explanation for that rejection.

20) On June 5, 2008, Ammar al-Baluchi, one of the five Guantánamo Bay detainees facing charges before the military commissions as a result of their alleged involvement in the terrorist attacks on September 11, 2001, was arraigned before a military commissions' judge at Guantánamo Bay. During the June 5th arraignment proceeding, Mr. al-Baluchi complained to the judge that he had been trying to write to Declarant in an apparent effort to secure Declarant's services as his attorney. After making this complaint, Mr. al-Baluchi and the other four September 11th defendants elected to proceed *pro se* in their defense of their capital case rather than accept their assigned military counsel.[16]

---

[16] Declarant has requested a copy of the transcript of the June 5, 2008 military commissions' proceeding. The Deputy Clerk of Court for the Military Commissions responded by providing a written refusal.

9

21) On June 23, 2008, Declarant wrote two senior administrators of the military commissions in an effort to secure a personal meeting to discuss the conflict of interest that exists between Ahmed Khalfan Ghailani and the other detainee represented by Mr. Ghailani's military defense counsel.[17] In this letter, Declarant cited Mr. al-Baluchi's June 5th request and the September 11th defendants' collective decision to proceed *pro se* as support for his request for a meeting with the military commissions' administrators. The administrators refused Declarant's request, claiming that Declarant did not represent Mr. Ghailani. Mr. Ghailani's letters to Declarant are available for the Court's *in camera* review.

22) On July 1, 2008, Declarant received an e-mail from Andrew I. Warden, an attorney with the Department of Justice. Mr. Warden's July 1st e-mail is attached as Exhibit E. In Mr. Warden's e-mail, he explained that "[b]ecause you are not authorized to send or receive mail pursuant to any appropriately entered protective orders, the mail you recently sent to [Mr. Ghailani and Petitioner] would ordinarily be processed in accordance with the procedures established for non-privileged mail unless you request that the mail be returned to you. Because that mail is marked privileged, it has not been reviewed or otherwise processed at this point." Mr. Warden never mentioned any prohibition against Declarant sending non-privileged mail to detainees at Guantánamo Bay.

23) The mail to which Mr. Warden referred was sent to an address provided to Declarant by an Assistant United States Attorney with the Office of the United States Attorney during the course of the SDNY litigation discussed in paragraphs three and four above. This

---

[17] Military counsel for Mr. Ghailani, Lt. Col. Michael Acuff, also represents Khalid Sheikh Mohammed, the alleged mastermind of the September 11, 2001 terrorist attacks and allegedly al Qaeda's "Chief of External Operations" during the same period of time that Mr. Ghailani was alleged to have been facilitating al Qaeda's external operations in his alleged capacity as an expert in forging passports and other travel documents for al Qaeda operatives.

address was provided to Declarant and the District Court Judge in the SDNY to further the government's effort to assure the SDNY that Declarant had the ability to write detainees at Guantánamo Bay and provide legal information and advice to them.

24) Prior to receiving Mr. Warden's July 1st e-mail, Declarant had been using the address to which the above mail was sent for over 12 months in communicating with Guantánamo Bay detainees, including Petitioner herein. During this 12-plus-month period, Declarant had written numerous letters addressed to many detainees using this address. Each of these letters was marked privileged. Declarant also received numerous letters and postcards from many detainees in response to these letters. Mr. Warden's July 1st e-mail was the first indication that Declarant's correspondence was not being treated as privileged (other than the fact that some of the letters and postcards Declarant received from detainees contained redactions, which Declarant understands is permissible even with legal mail sent pursuant to applicable protective orders, including the *Khan* protective order, through the legal mail system in place at Guantánamo Bay).

25) After receiving Mr. Warden's July 1, 2008 e-mail, Declarant responded by sending the e-mail attached hereto as Exhibit F. In that e-mail, Declarant stated, among other things, "[y]ou are free to process my mail to my clients in whatever fashion you like, *so long as they get it*. I will reserve my arguments regarding the privileged nature of the correspondence for the appropriate forum." (Emphasis added).

26) Upon information and belief, the source of which is the substance of a July 14, 2008 letter from Mr. al-Baluchi to Declarant which Declarant received on October 9, 2008, on July 9, 2008 Mr. al-Baluchi informed the military commissions' judge presiding over the September 11th matter that he wanted Declarant to serve as a member of his legal advisory staff.

11

Mr. al-Baluchi informed the judge that he was still proceeding *pro se*, but that he wanted to consult with Declarant to assist in his defense pursuant to Rule 506(d) of the Regulations for Trial by Military Commission.[18] The judge and the military commissions' staff apparently took no steps to satisfy Mr. al-Baluchi's request.

27) On July 31, 2008, Declarant received a package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included 16 envelopes and a memorandum from Major Greg Musselman, JAGC, USA. A copy of Major Musselman's memorandum is attached as Exhibit G. In his memorandum, Major Musselman explained that the Office of the General Counsel of the Department of Defense advised the Office of the Staff Judge Advocate at Guantánamo Bay to return the 16 envelopes to Declarant without delivery to their intended recipients.

28) The envelopes in question constitute essential attorney-client correspondence to Petitioner and Ahmed Khalfan Ghailani, two of Declarant's four clients detained at Guantánamo Bay. This correspondence was addressed and postmarked as follows:

    a. Ahmed Khalfan Ghailani, June 24, 2008

    b. Ahmed Khalfan Ghailani, June 24, 2008

    c. Ahmed Khalfan Ghailani, June 28, 2008

    d. Ahmed Khalfan Ghailani, June 28, 2008

    e. Ahmed Khalfan Ghailani, June 30, 2008

    f. Ahmed Khalfan Ghailani, June 30, 2008

    g. Ahmed Khalfan Ghailani, July 7, 2008

---

[18] Rule 506(d) states that "[s]ubject to the discretion of the military judge, 10 U.S.C. §949d(f), and such regulations as the Secretary of Defense may prescribe, the accused may have present and seated at the counsel table for purpose of consultation persons not qualified to serve as counsel under [Rules for Trial by Military Commissions Rule] 502."

  h. Ahmed Khalfan Ghailani, June 28, 2008

  i. Ahmed Khalfan Ghailani, June 24, 2008

  j. Petitioner, June 17, 2008

  k. Ahmed Khalfan Ghailani, June 21, 2008

  l. Ahmed Khalfan Ghailani, June 21, 2008

  m. Ahmed Khalfan Ghailani, May 28, 2008

  n. Petitioner, June 17, 2008[19]

29) On August 26, 2008, Declarant received another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included seven envelopes containing correspondence addressed to Mr. Ghailani which were undelivered to Mr. Ghailani. The envelopes in question constituted essential attorney-client correspondence to Mr. Ghailani. This correspondence was postmarked as follows:

  a. August 6, 2008

  b. August 6, 2008

  c. July 25, 2008

  d. June 30, 2008

  e. August 2, 2008

  f. July 7, 2008

  g. July 7, 2008

30) On August 26, 2008, Declarant received yet another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included seven envelopes containing correspondence addressed to two of Declarant's four clients who are being held at

---

[19] Multiple copies of the letters were sent to the detainees the same day because Declarant sent copies of the letters to three separate addresses for the detainees.

Guantánamo Bay, Petitioner and Mr. Ghailani. These envelopes were undelivered to their intended recipients. The envelopes in question constituted essential attorney-client correspondence to Petitioner and Mr. Ghailani. This correspondence was addressed and postmarked as follows:

      a. Mr. Ghailani, July 22, 2008

      b. Mr. Ghailani, July 22, 2008

      c. Petitioner, July 22, 2008

      d. Petitioner, July 22, 2008

      e. Mr. Ghailani, July 25, 2008

      f. Mr. Ghailani, July 25, 2008

      g. Mr. Ghailani, August 2, 2008

31) On September 3, 2008, Declarant received an e-mail from Lieutenant Commander Steven C. Reyes, the military attorney assigned to represent Petitioner before the military commissions. Lt. Cmdr. Reyes was assigned to represent Petitioner nearly a year after Petitioner retained Declarant in his August 22, 2007 letter, and at least a month after Petitioner drafted his May 27, 2008 letter to Declarant.[20] Declarant had informed Lt. Cmdr. Reyes' superiors in the Department of Defense of Petitioner's retention of Declarant in the February 2, 2008 letter discussed above. *See* ¶ 11, *supra*. Lt. Cmdr. Reyes informed Declarant that Petitioner "does not desire [Declarant's] assistance and does not grant [Declarant] authority to make an appearance or

---

[20] Military counsel are not assigned to represent a detainee before the military commissions until after charges are sworn against the detainee by the prosecutors assigned to the Office of Military Commissions. Charges were sworn against Petitioner on June 30, 2008. Hence, Lt. Cmdr. Reyes would not have been assigned to represent Petitioner until June 30, 2008 at the earliest. Hence, Lt. Cmdr. Reyes was assigned to represent a represented party. This unusual circumstance seems to be unique to the military commissions' system. Similar assignments have caused friction between military counsel assigned to represent Mr. Ghailani and Mustafa Bin-Ahmad Al-Hawsawi, another one of Declarant's Guantánamo Bay-based clients.

14

file any pleadings on his behalf in any jurisdiction." By e-mail dated September 7, 2008, Declarant informed Lt. Cmdr. Reyes of the following:

> As you are likely aware, the United States military is currently rejecting all of [Declarant's] legal mail being sent to Guantanamo Bay, including several recent mailings to [Declarant's] client [Petitioner]. Among the rejected correspondence to [Petitioner] was a request for clarification of [Declarant's] role in his defense. As it seems that the government is unwilling to allow [Declarant] to communicate with [Declarant's] client, perhaps you can do so for [Declarant]. If [Petitioner] would like [Declarant] to cease [his] actions on [Petitioner's] behalf, [Petitioner] should feel free to let [Declarant] know. Please have him specifically mention [Declarant's] name, that he understands that [Declarant is] available to help him, and that [Declarant has] been doing so since receiving his August 22nd retention letter (over five months after [Petitioner] wrote it), and that [Petitioner] would like [Declarant] to discontinue [his] efforts in [Petitioner's] DTA petition, *habeas* petition, and the military commissions' matter.

Lt. Cmdr. Reyes never responded to Declarant's September 7, 2008 request for clarification from Petitioner.

32) On September 11, 2008, Declarant received two packages from the Office of the Staff Judge Advocate at Guantánamo Bay, both containing undelivered mail. These packages contained a total of five envelopes containing correspondence addressed to Mr. Ghailani. With one exception, the envelopes in question constituted essential attorney-client correspondence to Mr. Ghailani and included copies of publicly filed court documents. This correspondence was addressed and postmarked as follows:

        a. August 6, 2008

        b. August 2, 2008

        c. August 6, 2008

        d. August 6, 2008

        e. August 18, 2008

33) Of significance, one of the five envelopes returned in these two packages contained solely non-privileged material. According to the July 1, 2008 e-mail of Andrew I. Warden (*see* Exhibit E), only Declarant's privileged mail was to be returned. No explanation was provided as to why Declarant's non-privileged mail to Mr. Ghailani was returned.

34) On September 29, 2008, Declarant received four packages from the Office of the Staff Judge Advocate at Guantánamo Bay. These packages contained a total of six pieces of returned mail. Among the papers returned in these envelopes are court filings in Petitioner's and Mr. Ghailani's court actions, including a decision of Judge Richard J. Leon of this Court in Mr. Ghailani's *habeas* matter. The government has never explained why the written decision of a United States District Judge in the addressee's *habeas* action merited rejection and return. This correspondence was addressed and postmarked as follows:

       a. Ahmed Khalfan Ghailani, August 22, 2008

       b. Ahmed Khalfan Ghailani, September 8, 2008

       c. Petitioner, July 22, 2008

       d. Ahmed Khalfan Ghailani, August 22, 2008

       e. Ahmed Khalfan Ghailani, August 17, 2008

       f. Ahmed Khalfan Ghailani, August 17, 2008

35) As directed by Petitioner in his May 27, 2008 letter, Declarant notified the Federal Defender, through her attorney Paul G. Turner, Esq., of Petitioner's rejection of the Federal Defender as his legal representative. Declarant notified Mr. Turner by e-mail on Sunday, October 5, 2008 of the Federal Defender's rejection and Petitioner's direction to Declarant to "stop [Mr. Turner]." Declarant sent the same notification letter via first class mail to Mr. Turner on Monday, October 6, 2008. In Declarant's letter to Mr. Turner, he asked Mr.

Turner to contact him as directed in Petitioner's May 27, 2008 letter. Mr. Turner has not responded.

36) Declarant has never been permitted to travel to Guantánamo Bay to visit Petitioner and his other clients, Messrs. Ghailani, Al-Hawsawi and Al-Baluchi. The Department of Defense has not acted on Declarant's March 2008 application for the security clearance necessary to visit Petitioner.

37) Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
       October 16, 2008

By: _____
     Scott L. Fenstermaker, Esq.