IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GUANTANAMO BAY ) | Misc. No. 08-442 (TFH) |
| DETAINEE LITIGATION ) | |
| ) | Civil Action No. 05-CV-2104(RBW) |
| ) | |

**PETITIONER SHAMRANY'S OPPOSITION TO RESPONDENTS'
MOTION FOR LEAVE TO FILE AMENDED FACTUAL RETURN**

Petitioner Othman Ali Mohammad Al Shamrany (ISN 171) ("Petitioner"), by and through his undersigned counsel, respectfully submits this opposition to Respondents' Motion for Leave to File an Amended Factual Return ("Motion"). For all the reasons that follow, Respondents' Motion should be denied.

### BACKGROUND

**A.   Original Factual Return**

Petitioner has challenged his unlawful detention at Guantánamo Bay Naval Station through a Petition for Writ of *Habeas Corpus* filed October 26, 2005. Respondents filed their original factual return on August 6, 2008, following the lifting of the District Court stay that was in place pending the outcome of *Boumediene*. The original factual return that Respondents filed consisted of the record of Petitioner's Combatant Status Review Tribunal ("CSRT") hearing, which took place on or around October 28, 2004.

The record of Petitioner's CSRT hearing principally consists of: (1) a December 16, 2004 memorandum by the Director of the CSRT, concurring in the purported conclusion that Petitioner was properly designated an "enemy combatant" and declaring that this determination

1

"is now considered final"; (2) an Unclassified Summary of Basis for Tribunal Decision, which describes Petitioner's CSRT hearing and identifies and summarizes all of the so-called evidence supporting the CSRT's enemy combatant determination; (3) various purported documentary evidence dating back to early 2002; and (4) various related memoranda. While none of these materials establishes grounds for detaining Petitioner for almost seven years, these materials state unequivocally that they comprise the factual basis for the "final" determination that Petitioner is an enemy combatant. And Respondents acknowledge in their Motion that Petitioner's detention is based on this final enemy combatant determination: "[t]he United Sates Department of Defense is detaining this petitioner, like others, as an enemy combatant." Motion at 1.

B. **Proposed Amendment.**

Nearly four years after making their "final" determination that Petitioner is an enemy combatant subject to indefinite detention, on September 26, 2008, Respondents moved to amend their factual return for Petitioner. The Motion is a carbon copy of the generic motions filed in other Guantánamo *habeas* cases before this Court. Apart from referencing an Exhibit A (which identifies Petitioner as subject to the Motion -- along with other petitioners), it does not mention Petitioner at all. It does not discuss the contents or scope of the original factual return supporting the "final" enemy combatant determination against Petitioner. It does not discuss the contents of the proposed amendment or explain why particular items in it were not available in 2004 or are necessary, today, to justify an enemy combatant determination made four years ago. And it offers no discussion of why, under the particular circumstances of Petitioner's case, Respondent should be permitted, after holding Petitioner in harsh conditions for four years since his CSRT hearing, to amend the "final" record allegedly supporting the detention. Instead, Respondents

summarily argue the amendment should be permitted because "evidence not part of the original CSRT record is now available to the Court, " and "the legal landscape has changed significantly." Motion at 1.

## ARGUMENT

### A. Respondents Make No Showing Of Cause.

In its original post-*Boumediene* scheduling order, this Court explicitly stated that it would permit amendment of factual returns only where Respondents demonstrate good cause. *See* Scheduling Order Para. 4 (July 11, 2008)("The Court will allow amendment only where the government establishes good cause for the amending."). Respondents have failed to meet that burden.

As an initial matter, Respondents have approached their "good cause" burden not on a petition-by-petition basis but, instead, through what is in effect an omnibus motion to amend filed in all cases. Thus, Respondents have taken the position that, in literally every case in which it previously filed a factual return, it has good cause to amend. *See* Motion at 5 (requesting that the Court allow "the Government to amend its returns in *all* cases….") (emphasis added). Under Respondents' approach, no inquiry into the content or specific circumstances of the original factual return in Petitioner's case is required, nor have Respondents troubled to explain why information provided in their proposed amendment was not presented to the CSRT, or why that information is now necessary to justify Petitioner's nearly seven-year detention.

Respondents' one-size-fits-all argument for good cause is premised on the bald assertion that in every case, the "public interest" warrants the "most up-to-date explanation" of the bases for Petitioner's detention, notwithstanding Respondents' statement in Petitioner's original factual

3

return that his enemy combatant determination was "final" in the fall of 2004. Motion at 6. This sort of short-cut approach to establishing good cause under the Court's July 11 Order should be rejected. Having failed to offer any argument as to why there is good cause specifically to amend Petitioner's factual return, Respondents' Motion should be denied.

B.     **The Relevant Legal Landscape Has Not Changed.**

Respondents specifically argue — to justify amendment in every Guantanamo *habeas* case — that the relevant legal landscape has changed. But this simply is not so.[1] While *Boumediene* answered the question whether the men held in Guantanamo have a constitutional right to pursue a *habeas corpus* action, it "does not address the content of the law that governs petitioners' detentions." *Boumediene v. Bush*, 128 S. Ct. 2229, 2277 (2008). Indeed, the substantive scope of common law and constitutional *habeas* — that it affords a petitioner a full and fair opportunity to challenge the legal and factual basis of his detention — has been long settled, and certainly was well known to Respondents as of the time *Rasul v. Bush*, 542 U.S. 466

---

[1] And Respondents' position here flies in the face of the argument they made before Judge Urbina where they asserted that *the legal landscape is in fact the same today* as it was before *Boumediene*:

> Now, at the time Qassim was decided, the Supreme Court had decided Rasul. It predated the decision by Congress to enact the MCA, and so the situation then was exactly the same as the situation today in terms of Supreme Court precedent. That is, the writ ran to Guantanamo Bay and Judge Robertson was faced with exactly the question that the Court is faced with. The MCA was then adopted. Boumediene simply restored the status quo ante in terms of finding that the jurisdiction strip was invalid as applied to Petitioners at Guantanamo Bay seeking to challenge their status as enemy combatants. So, there's nothing about the intervening Supreme Court decision in Boumediene that makes any difference whatsoever in terms of affecting or upsetting Judge Robertson's analysis in Qassim.

Transcript of Status Hearing, *Kiyemba v. Bush*, No. 05-1509 (D.D.C. Oct. 7, 2008), at 20.

(2004), was decided. That, of course, was *before* the CSRT process began and six months before the record of Petitioner's CSRT hearing was closed in December, 2004. By the time *Rasul* was decided — if not long before then — Respondents were on notice that the CSRT process and the validity of Petitioner's enemy combatant determination likely would be challenged through *habeas corpus,* so that all relevant evidence justifying Petitioner's detention must be gathered and presented to his CSRT panel in October, 2004.

It was against this substantive "legal landscape" that Petitioner's enemy combatant determination was decreed "final" and his original factual return was prepared. Nothing material about that legal landscape has changed that would justify this proposed amendment.

**C.    Respondents Should Not Be Permitted To Retroactively Justify An Enemy Combatant Determination Declared "Final" In 2004.**

Respondents should not be permitted to amend Petitioner's factual return to justify, in retrospect, a detention that they could not justify when Petitioner was first detained or when Respondents completed Petitioner's original factual return.

Petitioner has been held by the United States in Guantánamo since early 2002. As noted above, Respondents stated unequivocally in December 2004 that a "final" determination had been made that Petitioner is an enemy combatant. While any purported justification for detaining Petitioner must have existed since the time of his capture, there can be no question that Respondents were required to present the full factual basis for his detention to support his final enemy combatant determination in December 2004. This is consistent with the long-standing *habeas* principal that the executive must justify an individual's detention from the outset, not in hindsight. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (purpose of *habeas* "is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the

detention of a person."). Against this backdrop, Respondents' assertions that (i) Petitioner's original factual return is an inadequate record on which to defend his detention now that *habeas* hearings actually are going forward and (ii) that they therefore should have the unfettered right to supplement the record underlying his detention are contrary to the law of *habeas* and an affront to basic notions of fair play.

Indeed, permitting this amendment at this stage would condone Respondents' ongoing strategy of delaying Petitioner's access to justice and depriving him of the "effective and speedy" instrument of *habeas*. At least as of the time Petitioner filed his petition on October 27, 2005, he was entitled to a speedy assessment of Respondents' factual and legal basis for detaining him for the prior three years. Although not provided to counsel until three years later, Respondents' factual basis for detaining Petitioner as of October 2005 was the information contained in the CSRT record that comprised Petitioner's factual return. Rather than resting on that record, Respondents now seek to profit from delaying Petitioner's access to justice for the three years since that date, by presenting so-called "current information" that purportedly justifies Petitioner's detention today. It would be an enormous miscarriage of justice to permit Respondents to continue to "update" their record for Petitioner with "current information" in defense of a detention for which Petitioner was entitled to seek prompt review years ago.

**D.     Respondents' Failure To Provide An Unclassified Amended Return Warrants Denial Of The Motion.**

Respondents have designated the entirety of their proposed amendment as classified or protected information, which prevents counsel from discussing the contents of the filing with Petitioner. There is simply no way Petitioner and counsel can prepare a meaningful rebuttal to Respondents' allegations if Petitioner cannot access — at least in redacted form — the source of

6

the allegations against him. This has the effect of denying him the most fundamental aspect of due process — the right to notice of the claims against him and an opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 313 (1950); *Boumediene*, 128 S. Ct. at 2269. While discussing a redacted return with a client is an imperfect resolution, it at least would provide counsel some ability to explain to Petitioner the basis for his detention. Because Respondents have filed only a classified version of the proposed amendment, their Motion should be denied. In the event the Court grants the Motion, Respondents should be ordered to produce a reasonably-redacted version of the amended factual return within five days of the Court's order on the motion.

## CONCLUSION

For all of theses reasons, Respondents' Motion For Leave to File Amended Returns should be denied.

Dated: October 20, 2008                                  Respectfully submitted,

                                                                          /s/
                                                         Wesley R. Powell
                                                         wpowell@hunton.com
                                                         HUNTON & WILLIAMS LLP
                                                         200 Park Avenue
                                                         New York, NY 10166
                                                         (212) 309-1000
                                                         (212) 309-1100 (facsimile)

                                                         Karma B. Brown (Bar No. 479744)
                                                         kbbrown@hunton.com
                                                         HUNTON & WILLIAMS LLP
                                                         1900 K Street, N.W.
                                                         Washington, DC 20006
                                                         (202) 955-1500
                                                         (202) 778-2201 (facsimile)

                                                         *Attorneys for Petitioner*

99997.027530 EMF_US 26337966v1