# IN THE UNITED STATES DISTRICT
# COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASIM BEN THABIT AL-KHALAQI,** <br> Guantánamo Bay Naval Station, <br> Guantánamo Bay, Cuba <br>     Petitioner <br><br> v. <br><br> **GEORGE W. BUSH** <br>     President of the United States <br>     The White House <br>     1600 Pennsylvania Avenue, N.W. <br>     Washington, D.C. 20500; <br><br> **ROBERT M. GATES** <br>     Secretary, United States <br>     Department of Defense <br>     1000 Defense Pentagon <br>     Washington, D.C. 20301; <br><br> **ARMY COL. BRICE GYURISKO** <br>     Army Col. Commander, Joint Detention <br>     Operations Group, JTF-GTMO; and <br><br> **ARMY BRIG. GEN. JAY HOOD** <br>     Commander, Joint Task Force - GTMO <br><br>     Respondents | Misc. No. 08-0442-TFH <br><br> CIVIL ACTION <br><br> No. 05-cv-0999-RBW <br><br> JUDGE THOMAS F. HOGAN <br><br><br> **OPPOSITION** <br> **TO GOVERNMENT'S** <br> **MOTION TO DISMISS** <br> **IMPROPER RESPONDENTS** |

### PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION
### TO DISMISS IMPROPER RESPONDENTS

Petitioner Asim Ben Thabit Al-Khalaqi, through undersigned counsel, submits the following opposition to the government's motion to dismiss "improper respondents" from this case. The Government believes that all Respondents except for the Secretary of Defense should be dismissed but for the reasons set forth below, the Motion should be denied.

# ARGUMENT

## A. Introduction

Generally, the proper respondent in habeas is the person who has immediate physical custody over the petitioner. *See* 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434-435 (2004). This case presents some unusual circumstances, including the risk of a potential transfer of petitioner outside the reach of the Department of Defense, and uncertainty regarding application of the immediate custodian rule, which requires retaining all named Respondents.

The Government, in its Motion to Dismiss Improper Respondents ("GM") claims that (1) the President is an improper respondent because "courts lack jurisdiction to compel the President to perform official acts," and (2) naming "any respondent outside the chain of command under the Secretary of Defense is improper, because that individual lacks legal control over the petitioner's custody. GM at 3. As support for its first position, the Government cites cases which do not deserve the broad reading it attributes to them, and it ignores cases where courts have ordered sitting Presidents to perform official tasks. *See, e.g., National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974) (ordering President to effect a pay raise to federal employees). Additionally, the Government has transferred detainees between government agencies and it takes the position that it has the unfettered discretion to transfer detainees from Defense Department control. *See e.g.,* Government's Brief Regarding Procedural Framework Issues at pp. 43-46 (*Al Bihani v. Bush*, Case No. 05cv1312-RJL, Docket Entry No. 58). This Court has indicated that nothing in its order to give 30 days notice of transfer prevents Respondents from transferring detainees. *See Order dated July 10, 2008,* Misc. No. 08-0442, at note 1. And the government has even appealed that order, implicitly asserting its right to transfer detainees without even notifying the Court. *Docket No. 70.* In light of this risk, only by naming the President as a Respondent

2

can Petitioner ensure that, regardless of any transfer, someone with ultimate authority over all United States' agencies and the State Department, remains in the case to provide relief.

The Government also claims that Secretary Gates is the only proper respondent but cites no authority that says so. It contends that the immediate custodian rule, *supra* at p.2, is inapplicable, relying upon dicta in a footnote in *Padilla*, where the Supreme Court "implicitly" recognized an exception to the immediate custodian rule for extraterritorial military detentions. *See* GM at 6 (citing *Padilla*, 542 U.S. at 436 n.9). However, the Government fails to note that the Supreme Court in *Rasul v. Bush*, 542 U.S. 466 (2004), explicitly concluded that Guantanamo Bay Naval Base was <u>within</u> the territorial jurisdiction of the United States federal district courts, *id*. at 480-81 (equating Guantanamo Bay with the "territorial jurisdiction" of the U.S., and rejecting a claim that its location is "extraterritorial"). Thus, it is questionable whether *Padilla*'s implicit extraterritorial exception, noted in dicta, actually applies. Accordingly, out of an abundance of caution, Petitioner has named and opposes dismissal of the immediate custodian Respondents in addition to the supervisory officials who can provide him relief.

In order to find that the immediate custodian rule does not apply, this Court must recognize the implicit exception, *see Padilla*, 542 U.S. at 436 n.9, and square the conclusion that Guantanamo is "extraterritorial" with *Rasul*'s holding. *See* 542 U.S. at 480-481. If the Court is prepared to make these findings, then the "extraterritorial exception" should permit the President to be named as a Respondent since he is the ultimate supervisory official.

Mr. Al Bihani recognizes the tension between urging application of the "extraterritorial exception" which allows both the President and the Secretary of Defense as proper respondents and seeking to retain the immediate custodians as Respondents, however,

this is a result of the conflicting authorities. Only by naming all Respondents can he ensure that regardless of how the conflicting authorities are resolved, he obtains relief.[1]

**B.     The President Is a Proper Respondent.**

First and foremost, the Supreme Court has noted that the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997).[2] In *Jones*, the Court discussed multiple instances where sitting Presidents were compelled to comply with court orders. *Id*. at 705. For example, President Nixon produced tapes in response to a subpoena. *Id*. (citing *United States v. Nixon*, 418 U.S. 683, 715 (1974)). President Ford complied with an order to give a deposition in a criminal trial. *Id*. (citing *United States v. Fromme,* 405 F.Supp. 578 (E.D.Cal.1975)). President Clinton gave videotaped testimony in criminal proceedings. *Id*. (citing *United States v. McDougal,* 934 F.Supp. 296 (E.D.Ark.1996); *United States v. Branscum,* No. LRP-CR-96-49 (E.D. Ark., June 7, 1996)). As the Supreme Court explained in *Jones:*

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena duces tecum could be directed to the President. *United States v. Burr,* 25 F. Cas. 30 (No. 14, 692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703-04 (footnote omitted). The Court noted that: "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient

---

[1] For what it is worth, at least one other court has recognized, even in the domestic context, cases conflict when it comes to application of the immediate custodian rule. *See Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005) (noting conflict between cases allowing suit against Director of State Prison system to minimize substitution of respondents due to prisoner transfers with cases allowing only immediate present custodian as respondent).

[2] The *Jones* case and the authorities it relies upon are of more recent vintage than the cases cited in the Government's Motion.

4

frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Id.* at 704; *see also id*. at 705 ("In sum, "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States.") (brackets in original) (citation omitted).

The Government never mentions these authorities, instead it relies upon a case dating back to 1867 for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." GM at 2 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498-499 (1867)). However, the Court of Appeals for the District of Columbia Circuit has twice interpreted *Mississippi v. Johnson* much more narrowly than Government counsel. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the appeals court observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The court in *National Treasury* held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ). And in *Nixon v. Sirica,* 487 F.2d 700 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive." *Id*. at 712 n.53.

The Government's second case, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), merely questioned the judiciary's authority to issue an injunction against the President, without deciding the question. *See id*. at 802-03.

In this case, it is paramount that the President remain named as a Respondent because his dismissal could permit the government to evade this Court's authority simply by transferring the detainee from the custody of the Department of Defense (DOD) to the Central Intelligence Agency (CIA), or to the Department of Justice (DOJ), or to other agencies unknown to Petitioner. A number of detainees were previously transferred from CIA custody to DOD and are currently detained at Guantanamo. At least one terrorism

suspect was transferred from the DOJ to DOD when the government found it convenient to do so. *See Al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) (*en banc*) (noting government's dismissal of indictment during criminal proceedings against defendant and order signed by the President transferring defendant to military custody). And another was transferred from DOD to DOJ, also at the government's convenience, and to the great consternation of a panel of the Fourth Circuit. *See Padilla v. Haft*, 432 F.3d 582 (4th Cir. 2005) (denying government's motion to transfer military detainee to civilian authorities for trial, after Court had previously given government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006). Accordingly, inter-agency transfer in these cases is a real fear.[3]

This is not to say that Petitioner has named the President as his future custodian; the President is very much the current custodian and therefore is properly named as a respondent. The Government claims that the Executive's authority to detain Petitioner in this case arises from two sources: the President's Article II powers, and the President's authority to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001). Prior to filing this motion to dismiss, the Government has not discussed the Secretary of Defense as being the exclusive source of custodial power over Petitioner.

---

[3] Even if a higher authority were to determine that this Court lacked power to enforce an order directed to the President, a point which Petitioner, based upon the cases he cites, hotly disputes, the order itself remains significant. In *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), Chief Justice Taney, sitting as Circuit Justice in the District of Maryland, issued a writ of habeas corpus to consider the petition of a Baltimore County farmer held by the military at Ft. McHenry, in Baltimore City. The officer in charge of the military prison refused to honor the writ on the ground that President Lincoln had given him the authority to suspend habeas corpus. Chief Justice Taney held that the president had no authority to suspend habeas. He directed the clerk "to transmit a copy [of the opinion], under seal, to the president of the United States. It will then remain for that high officer, in fulfilment of his constitutional obligation to 'take care that the laws be faithfully executed,' to determine what measures he will take to cause the civil process of the United States to be respected and enforced." *Id*. at 153.

Finally, Petitioner has consistently taken the position and reaffirms it here that this Court has authority to issue orders compelling the Executive to take actions, *see* 28 U.S.C. §1651 (authorizing federal courts to issue all writs necessary or appropriate in aid of its jurisdiction).

C.  **Because There Is A Conflict Regarding Application Of The "Extraterritorial Exception" Set Forth In Dicta in *Padilla*, The Remaining Respondents As The "Immediate Custodians" Should Also Be Named Until The Supreme Court Resolves The Issue.**

The government argues that only the Secretary of Defense has "legal control" over petitioners, s*ee* GM at 6, and because the Secretary of Defense is the proper respondent, the other respondents under his command "are superfluous and should be dismissed." *Id*. The government also notes that the Detainee Treatment Act ("DTA") provides that in its actions, the Secretary of Defense is the proper respondent, and states that "Congress's judgment in the DTA context should be followed here as well." *Id*.

First, Mr. Al-Khalaqi maintains that all the named respondents, in their official capacity, can afford him the relief he seeks -- release from continued detention. As noted above, it is unclear whether or not the general rule which governs habeas petitions, requiring suit against the "immediate custodian" will be applied to Guantanamo Bay detainees. According to the Supreme Court in *Padilla*, 542 U.S. 426, the immediate custodian -- which would be the individual running the Guantanamo Bay facility -- is the only proper respondent. *See id*. at 436 ( noting that under the "immediate custodian rule . . . Commander Marr--the equivalent of the warden at the military brig--is the proper respondent, not Secretary Rumsfeld"). In *Padilla*, the Court reasoned:

> The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; see also § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas

7

> petition. This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court.

*Id*. at 434-35. *Padilla* actually rejected the Petitioner's "legal reality of control" argument (which appears strikingly similar to the Government's argument here that only Mr. Gates has "legal control"), concluding that Secretary Rumsfeld, although he exercised the "legal reality of control" was <u>not</u> a proper Respondent. *Id*. at 439. Thus, if this general rule applies, under *Padilla*, Mr. Al-Khalaqi must, at a minimum, name his immediate physical custodians so that his petition is not defective. *See id*.[4]

According to the government, *Padilla* recognized an exception to the immediate custodian rule "in cases of extraterritorial detentions to include supervisory officials up to, and including, the Secretary of Defense." GM at 6 (citing *Padilla*, 542 U.S. at 436 n.9). In this particular passage of *Padilla*, the Court noted in dicta:

> We have long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court. *Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 498, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (discussing the exception); *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955) (court-martial convict detained in Korea named Secretary of the Air Force as respondent); *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) (court-martial convicts detained in Guam named Secretary of Defense as respondent).

542 U.S. at 436 n.9. Contrary to the Government's suggestion that this footnote limited the available Respondents to only the Secretary of Defense, *Padilla* does not note who the proper

---

[4] In his concurrence in *Padilla*, Justice Kennedy notes that "because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government." 542 U.S. at 452; *see also Smith v. Idaho*, 392 F.3d 350 (9th Cir. 2004) (defects in filing habeas petitions where the proper custodian are not named are personal jurisdiction not subject matter jurisdictional defects); Mr. Al Bihani just wants to ensure that he obtains relief -- who is named in his petition is simply a means to that end. If, in fact, the Government's motion is granted, but a higher court somehow determines that the "immediate custodian" rule does apply, the Government will have waived any right to raise that personal jurisdiction defect. *See Padilla*, 542 U.S. at 452 (Kennedy, J., concurring).

8

respondent should be in this exceptional case, it simply cites cases where a variety of different people were named as respondents, including the Attorney General, the Secretary of the Air Force and the Secretary of Defense. *See id*. at 436 n.9. If the exception is indeed applicable, some superior official can be named. Nothing suggests that the President could not be named if this exception to the immediate custodian rule really were to apply. *See id*.

Mr. Al-Khalaqi asserts that he must name his immediate custodians, however, because application of the *Padilla* exception, set forth in dicta in a footnote, is questionable. In *Rasul v. Bush*, 542 U.S. 466 (2004), the Court rejected the Government's argument that a "presumption against extraterritorial[] application of law" applied to defeat habeas jurisdiction, noting that such a presumption "certainly has no application to the operation of the habeas statute with respect to persons detained within 'the territorial jurisdiction' of the United States . . . . By the express terms of its agreements with Cuba, the United States exercises 'complete jurisdiction and control' over the Guantanamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses. 1903 Lease Agreement, Art. III; 1934 Treaty, Art. III." *Id*. at 480. Thus, the Supreme Court in *Rasul* concluded that the Naval Base at Guantanamo Bay was not an "extraterritorial" location, and subject matter jurisdiction over aliens detained there could be exercised. *See id*. at 480. It is interesting to note that, in *Rasul*, the first named Respondent was the President. There was no suggestion that he was not a proper respondent. *See generally id*.

Justice Kennedy in his concurrence in *Padilla* recognized that courts may find an "exceptional case" which would permit individuals other than the immediate custodians to be named. *See* 542 U.S. at 454 ("Only in an exceptional case may a court deviate from those basic rules to hear a habeas petition filed against some person other than the immediate custodian of the prisoner, or in some court other than the one in whose territory the custodian may be found"). This may be that "exceptional case" or perhaps the *Padilla* footnoted

9

exception applies, but until Mr. Al Bihani can be certain of that, he must retain his immediate custodians as respondents.

Finally, the Government fails to explain why Congress's intent to limit Respondents in DTA actions to the defense secretary is at all persuasive. DTA actions were explicitly deemed an inadequate substitute for habeas proceedings. Nowhere does the Government explain why the DTA, which limits available forums, limits available forms of relief, limits consideration of available evidence, and which was deemed an inferior remedy by the Supreme Court, *see Boumediene v. Bush*, 128 S. Ct. 2229, 2008 WL 2369628 at *43 (June 12, 2008) (the DTA "provides certain procedures for review of the detainees' status . . .[that] are not an adequate and effective substitute for habeas corpus."), should provide any guidance whatsoever here. Habeas was intended to, and does, provide broader relief. *See id*.

## **CONCLUSION**

At a minimum, in light of the Government's stated desire and ability to transfer petitioners at will from the custody of any named Respondent, and the unsettled nature of the law regarding who must be named as the proper Respondent(s) in this case, Petitioner believes the President, the Secretary of Defense, and his immediate custodians must be named. Petitioner does not accede to dismissal of any Respondent and wishes to preserve all his rights to seek his release from every available official. For those reasons, the petitioner respectfully requests that the Court deny the Government's Motion to Dismiss Improper Respondents.

Dated: October 21, 2008						Respectfully submitted,


/s/ Steven F. Hubachek
/s/ Ellis M. Johnston, III
/s/ Shereen J. Charlick
Steven F. Hubachek (Cal Bar No. 147703)
Ellis M. Johnston, III (Cal. Bar No. 223664)
Shereen J. Charlick (Cal. Bar No. 147533)
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Counsel for Petitioner