IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: <br> **GUANTANAMO BAY** <br> **DETAINEE LITIGATION** | Misc. No. 08-442 (TFH) |
| DJAMEL AMEZIANE, | |
| Petitioner | Civil No. 05-CV-0392 (ESH) |
| v. | |
| GEORGE W. BUSH, et al, | |
| Respondents. | |

**RESPONDENTS' REPLY IN SUPPORT OF MOTION
FOR LEAVE TO AMEND FACTUAL RETURN**

On October 9, 2008, through counsel, petitioner Djamel Ameziane ("Petitioner") in the above-captioned case filed with the Court Security Officer a memorandum (under seal) opposing the Respondents' Motion for Leave to File Amended Factual Return (hereinafter, "Opposition"). The Opposition objects to the government's motion on three bases: that the government has failed to show cause why amendment is appropriate when evidence submitted with the Respondent's motion was available to the government in 2004; that the proposed return submitted with Respondent's Motion is unsigned; and that the proposed return does not satisfy the government's "obligation" to provide exculpatory information. The Government submits this reply in response to these contentions in Petitioner's Opposition**,** which are without merit.

# ARGUMENT

## The Government Has Shown
## Good Cause to Amend the Return

As explained in Respondents' motion to amend their factual return in this case, in defending Petitioner's detention as an enemy combatant, the Government is entitled to present to the Court its most appropriate case for detention. The Court is not reviewing past decisions of prior determinations of administrative tribunals, but rather a prospective challenge to Petitioner's detention as an enemy combatant today. The Government, therefore, should not be restricted to the specific materials included in the return previously filed, which was compiled nearly four years ago.

Prior returns submitted in this and other Guantanamo Bay detainee cases were comprised of the records of the Combatant Status Review Tribunal ("CSRT") proceedings convened for petitioners that were produced in a legal context different from the one in which this matter now proceeds. Evidence not part of the original CSRT record is now available to the Court as it considers the proper disposition of the habeas petitions. Moreover, the legal landscape has changed significantly during the four years since the original CSRT records were compiled. Updated factual returns are therefore appropriate. Just as the Government is submitting evidence beyond the 2004 CSRT records to justify its determination to detain enemy combatants in those cases in which *no* factual return has yet been filed, it should be permitted to submit such a return here as doing so will represent its most appropriate case for the non-punitive detention of Petitioner as an enemy combatant today. There is no justification, where this habeas action seeks prospective relief from detention as of 2008, for restricting the Government's case to evidence considered by CSRTs in 2004. As a general matter, such a restriction in the Guantanamo cases would preclude the Court from considering any wartime intelligence developed by the United States during the past four years.

Equally, if not more significantly, in light of legal developments since 2004, a time-bound restriction would risk the erroneous release of actual enemy combatants – and, thus, the return of those combatants to the battlefield to wage further war against American soldiers and civilians.

In response, Petitioner complains that Respondents' motion should be denied because '[t]he government *chose* to file the CSRT record as its factual return" (Opposition at 3; emphasis in original), and thus, according to Petitioner, the Court should grant leave to amend only with regard to material that was not available to the government at the time its original return was filed. Opposition at 4. This argument ignores the fact that the proposed amended return is a response to the decision in *Boumediene v. Bush*, which the Supreme Court decided on June 12, 2008. That decision made clear for the first time that these cases will not be limited to a review of the CSRT record. It would have made no sense for Respondents to move to amend the factual return before the Supreme Court's ruling in *Boumediene*. Since the *Boumediene* ruling, the Government has been expeditiously moving to file amended returns consistent with the mandate of that decision. In addition, merits-related proceedings in these cases have not begun, and petitioners will have the opportunity to present evidence and otherwise respond to the evidence presented in the amended return such that no prejudice warranting denial of the motion to amend exists. Respondents, therefore, should be permitted to amend their factual returns pertaining to petitioners.

For all of these reasons, Petitioner's Opposition should not be granted on this basis.

### The Proposed Amended Return Is Properly Signed and Certified

Consistent with the Supreme Court's decisions in *Boumediene*, 128 S.Ct. 2229 (2008), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (plurality), the government filed its Amended Factual Return in this case setting forth the factual basis for the lawful, ongoing detention of Petitioner. That

3

filing consists of a cover notice, signed by Respondents' counsel, and the Return. The Return itself consists of the Declaration of Rear Admiral David M. Thomas, Jr. ("Thomas Declaration"), which attaches the Narrative for Petitioner ("Narrative") and supporting materials. The Thomas Declaration states that the Narrative and supporting materials establish the status of Petitioner – and substantiates his detention – as an enemy combatant.

Citing Rule 11 of the Federal Rules of Civil Procedure and the statutory habeas provision at 28 U.S.C. § 2243, Opposition at 5, and disregarding the plain import of the cover notice and the Thomas Declaration, Petitioner asks the Court either to compel that the Narrative itself be signed by a government attorney or to strike the Narrative and its accompanying exhibits, Opposition at 8. Petitioner's Motion must be denied, however, because the Thomas Declaration satisfies the requirements of both *Boumediene* and *Hamdi*. Moreover, even assuming that either Rule 11 or § 2243 has any applicability in this wartime habeas proceeding, Respondents' Amended Return satisfies those standards.[1] Finally, again assuming the applicability of Rule 11 or § 2243, those legal provisions do not provide for the relief Petitioner seeks.

As an initial matter, Petitioner misconstrues the nature of the Narrative. Respondents

---

[1] In *Boumediene*, the Supreme Court held that detainees are entitled to "fundamental" habeas rights. 128 S. Ct. at 2277 (noting that the "opinion does not address the content of the law that governs petitioners' detention"); *id.* at 2278 ("[L]egislation eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all.") (Souter, J., concurring). It is far from clear that the habeas statute applies here. See *Hamdi*, 542 U.S. at 525 (noting implicitly that § 2243 is not binding); *Boumediene*, 128 S. Ct. at 2291 (same) (Roberts, C.J., dissenting). Moreover, the Federal Rules of Civil Procedure do not necessarily apply to statutory habeas petitions, let alone constitutional habeas claims. See Fed. R. Civ. P. 81(a)(4); Section 2255 Habeas Rule 12; *Rumsfeld v. Padilla*, 542 U.S. 426, 452 (2004) (Kennedy, J., concurring). Therefore, Petitioners' reliance upon § 2243 and Rule 11, without citation or explanation of their applicability here, is presumptuous.

provided the Narrative for the convenience of Petitioner and the Court. In other words, the Narrative is a guide for Petitioner and the Court to use in navigating the supporting materials, and it is a nonessential, though helpful, part of the Return. Simply stated, Petitioner is mistaken in this effort to treat the Narrative in isolation from the rest of the Return.

With respect to the Return, it has been appropriately signed: Rear Admiral Thomas has declared that "[t]he attached narrative and supporting materials ... contain information used by the Department of Defense to establish the status of the [Petitioner] as an enemy combatant and to substantiate [his] detention as an enemy combatant at Guantanamo Bay, Cuba." Thomas Decl. ¶ 3. This signature is all that is required under applicable precedent. Petitioners are entitled to "receive notice of the factual basis for [their] classification" as enemy combatants, *Hamdi*, 542 U.S. at 533 (citizen-detainees); *see also Boumediene*, 128 S. Ct. at 2269. The Thomas Declaration and the attached supporting materials, with helpful explanation from the Narrative, do just that.

Ultimately, the Opposition does not seek procedural redress; rather, Petitioner seeks to impugn the information upon which Respondents rely. Opposition at 6-8 (arguing that the lack of a signature demonstrates the insufficiency of the Narrative). The appropriate remedy for concerns regarding the credibility and weight of the information relied upon by Respondents, however, is this habeas proceeding itself, not a signature or striking the filing. *See Boumediene*, 128 S. Ct. at 2270. This proceeding provides detainees like Petitioner with an opportunity "to rebut the factual basis for the Government's assertion that [they are] enemy combatant[s]." *Id.* at 2269. The placement of a signature is simply not material to the resolution of the petition for a writ of habeas corpus at issue here.

To the extent that the habeas statute applies, the Return certifies the true cause of Petitioner's

detention. The Thomas Declaration states that the Narrative and supporting materials contain information upon which the Department of Defense is relying in this case to justify Petitioner's continuing detention as an enemy combatant. Thomas Decl. ¶ 3.

Nevertheless, Petitioner complains that the Narrative, which is an attachment to the Thomas Declaration, is unsigned. Opposition at 5. Petitioner argues that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name ...." *Id.* (citing Rule 11). Otherwise, they contend, Respondents have not "certif[ied] the true cause of the detention." *Id.* (citing 28 U.S.C. § 2243).

Petitioners improperly conflate Rule 11 and § 2243. The "certify" language in § 2243 is an anachronistic, procedural mechanism. See *Gladden v. Gidley*, 337 F.2d 575, 578 (9th Cir. 1964) (stating that "the provision of section 2243 that the return should certify 'the true cause of the detention' survives from an earlier form of the statute which did not provide for the show cause procedure [return]"). The very purpose of that provision is to compel the parties to produce the facts upon which they rely, not to require (like Rule 11) the parties to make a representation to the court. *Id.* (noting that the purpose of the show cause procedure [return] is for the opposing parties to "exhibit" the facts on which they rely) (quoting *Walker v. Johnston*, 312 U.S. 275, 284 (1941)).[2] This is precisely what Respondents have done in the Amended Return, through the Thomas Declaration and supporting materials. Any argument that a separate component of the Return, i.e., the Narrative, be signed is *reductio ad absurdum*.

---

[2] As one district court explained, "the return is made ... by a public officer who has no interest in the ultimate custody, and is not presumed to have any knowledge of the facts which determine it, and the only duty enjoined on him by the statute is 'to certify the true cause of the detention'." *Ex parte Reaves*, 121 F. 848, 861 (M.D. Ala. 1903), *rev'd on other grounds sub nom.*, *United States v. Reaves*, 126 F. 127 (5th Cir. 1903).

6

Furthermore, Petitioners' reliance on Rule 11 is misplaced because the Narrative is attached to the Thomas Declaration, and thus it is not a separate "paper" under Rule 11. See Fed. R. Civ. P. 11(a). The Return has also been submitted by a cover notice signed by Respondents' counsel. Accordingly, to the extent that Rule 11 is applicable here (*see supra* note 2), counsel for Respondents have complied. Counsel signed the filing submitted to the Court. In so doing, counsel represented to the Court that the filing on behalf of its client is appropriate. In fact, by producing the information itself and not merely offering allegations, Respondents have accomplished the underlying goal of Rule 11 that Petitioner cites. *See* Fed. R. Civ. P. 11(b) ("certifies that ... (3) the factual contentions have evidentiary support"); *cf.* Opposition at 5. Simply put, Petitioner has no valid claim under Rule 11.

Petitioner offers no justification for the relief he seeks. Petitioner argues that Respondents have failed to "certify[] the true cause of the detention" in accordance with 28 U.S.C. § 2243, yet they seek a remedy under Rule 11 of the Federal Rules of Civil Procedure. Opposition at 5. This reasoning (assuming that the statutory habeas provision applies, and assuming that Rule 11 applies, then Petitioner might qualify for relief under the latter for the violation of the former) is a logical fallacy.

Even assuming that Rule 11 and § 2243 apply here, Petitioner makes no argument that "certifying the true cause of the detention" is equivalent to the signature requirement under Rule 11, which "certifies [to the court] that to the best of the person's knowledge, information, and belief" the filing is appropriate. In fact, as Respondents have shown, these two provisions serve very different purposes, as described above. Accordingly, because of the disconnect between the two

provisions, Petitioner cannot receive relief under Rule 11 for any perceived infraction of 28 U.S.C. § 2243.

## Respondents Have Met Their Burden To Provide Exculpatory Evidence, Without Denying Exculpatory Evidence to Petitioner

Petitioner asserts that he is entitled to exculpatory and impeaching material that is known and available to the government, citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Opposition at 9. Petitioner asserts that "the government has not only failed to provided exculpatory information relevant to `new' sources and evidence in the amended return, but it has also excluded known and available exculpatory material that was included in its prior return." Opposition at 9. In seeking a remedy, Petitioner states that the government "should be required to provide all known and available exculpatory and impeachment evidence relating to Petitioner," and "should not be permitted to cherry pick evidence from its prior return to add to its amended return, excluding exculpatory information while including inculpatory information." *Id.* at 10-11. For reasons set forth in the the Government's Brief Regarding Procedural Framework Issues ("Procedural Framework Brief") filed in response to the Court's order of July 11, 2008, these contentions are without merit.

Among the issues addressed at length in the Procedural Framework Brief was discovery, including exculpatory evidence, in the context of civil habeas proceedings. Procedural Framework Brief at 16-29. There, the government noted that there is no significant history of discovery in habeas proceedings and that discovery is certainly *not* constitutionally required, but rather that the point of habeas is to provide the court with evidence to justify the detention (and to provide petitioners the opportunity to submit their evidence that detention is unlawful), *Boumediene*, 128 S. Ct. at 2270; the purpose is not to provide alien enemy detainees an opportunity to obtain

8

additional materials from the Government in a time of war that go beyond that showing. Procedural Framework Brief at 16. Similarly, within that context of discovery, the government noted that in domestic criminal proceedings, the Government's constitutional discovery obligation is defined by the *Brady v. Maryland*, 373 U.S. 83 (1963), line of precedents, Procedural Framework Brief at 20-21, and thus, beyond the required production of material exculpatory evidence under *Brady*, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford* v. *Bursey*, 429 U.S. 545, 559 (1977).[3] Taking these considerations together with the pertinent habeas decisions, the government submitted that requiring discovery in the civil habeas context would therefore not only be inconsistent with *Hamdi* – which rejected the criminal discovery model as overly burdensome – but would also be contrary to the *Boumediene* Court's reasoning that criminal-type processes are inappropriate. 128 S. Ct. at 2269; Framework Brief at 21. Under this analysis, Petitioner's reliance on *Brady* in the context of habeas proceedings is misplaced. Because the *Brady* obligation stems from the Fifth Amendment's due process obligations in domestic *criminal* cases, which has no application either to habeas cases or to this Petitioner, the Government's provision of material exculpatory evidence in these cases is not a constitutionally-required element of these proceedings. And there is a further distinction regarding exculpatory evidence that must be made here, as noted in the government's Procedural Framework Brief: "exculpatory" in the *habeas* context

---

[3] Even in the criminal context, it is well established that the Due Process Clause requires no open-ended discovery beyond the prosecution's *Brady* obligations. *Ibid.*; *see Gray* v. *Netherland*, 518 U.S. 152, 167-68 (1996); *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [Government's] files"); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy (however such a policy might work out in practice)"); Fed. R. Crim. P. 16, 1975 Advisory Cmte. Notes ("the defendant has no constitutional right to discover any of the prosecution's evidence (unless it is exculpatory within the meaning of *Brady*)").

does not refer to information that exculpates a detainee from criminal liability, inasmuch as the issue of criminal liability is not material to the authority of the Department of Defense to detain the petitioners in this or similar cases. *Id.* at 4, fn. 1. Rather, in the habeas context, "exculpatory" refers to evidence that tends materially to undermine the information presented in the return to support the petitioner's classification as an enemy combatant. *Id.*

At the same time, even with these distinctions made clear, the government has no interest in erroneously holding a person who does not pose a threat to the United States. Thus, in order to implement *Hamdi*'s direction that the Government submit "credible" evidence to the Court in the habeas cases now before it, the government represented in its Procedural Framework Brief that – although not constitutionally required to do so – in filing its factual returns, the Government would provide any evidence that tends materially to undermine information presented in the return to support the petitioner's classification as an enemy combatant that is encountered in developing the returns by the attorneys preparing them (including the Department of Justice attorneys assigned to the case and those Department of Defense attorneys working on the case with them). Procedural Framework Brief at 19-20. The Government's proposed disclosure is narrower than a prosecutor's *Brady* obligations, but nonetheless satisfies any plausible discovery obligation that would be appropriate in these proceedings. *Id.* at 21.

Respondents have satisfied that representation in the proposed Amended Return. Not only have Respondents expressly included, in the proposed Amended Return, Petitioner's repeated proclamations of innocence and his various denials of activity as an enemy combatant, but Respondents have also expressly identified and disclosed an apparent misidentification of Petitioner that had at one time been deemed as supporting Petitioner's enemy-combatant status. Nor, as

10

Petitioner contends (Opposition at 10-11), have Respondents excluded any exculpatory evidence from these proceedings. Petitioner states that "the government excluded from the amended return no fewer than six documents that were included in the original return and contained exculpatory statements by Petitioner." Opposition at 10. In preparing and submitting its Amended Return, Respondents did not seek to replicate the original return; rather, Respondents sought to set forth the materials on which they would rely to establish Petitioner's status as an enemy combatant. But the proposed Amended Return does not expunge the previously-filed return from the record. Rather, as described in the Respondent's motion for leave to amend, Respondents have merely filed an *amended* return. In any event, the omission of any previously-submitted documents does not deny them from Petitioner. Rather, they remain available to Petitioner for submission at an appropriate point in these proceedings "to rebut the factual basis for the Government's assertion that [Petitioner is an] enemy combatant." *Boumediene* at 2269. Accordingly, Petitioner has not and will not suffer any prejudice with respect to those purportedly exculpatory materials.

Petitioner's remaining arguments are inappropriately raised at this stage of the proceedings. Petitioner goes so far as to speculate that certain information submitted in the Amended Return was obtained inappropriately. Opposition at 10. Respondents do not concede, and vigorously dispute, Petitioner's assertions and legal conclusions. Whether or not certain materials are actually "exculpatory," or the weight they are to be given, are questions that should await actual merits-related proceedings. Moreover, objections such as those raised by Petitioner are not relevant to the Government's amendment of its return and do not warrant wholesale rejection of the Government's leave to amend the return.

11

## Conclusion

For the foregoing reasons, and those stated in the government's Motion for Leave to File Amended Factual Return, Respondents' motion should be granted.

Dated: October 23, 2008

Respectfully submitted,

GREGORY KATSAS
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel


*/s/ Robert C. Dalton*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
ROBERT C. DALTON (D.C. Bar No. 346985)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-9928

Attorneys for Respondents