IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Misc. No. 08-MC-442 (TFH)<br><br>Civil Action Nos. 05-1509 (RMU) |

**RESPONDENTS OPPOSITION TO EMERGENCY MOTION
FOR ORDER RELATED TO COUNSEL VISIT OF OCTOBER 27, 2008**

    Respondents hereby oppose petitioners' emergency motion for relief related to a counsel visit which has been scheduled by respondents at petitioners' counsel's request on an expedited basis on October 27, 2008. Petitioners' motion inappropriately seeks to have this Court second guess the considered judgment of the professional guard staff at Guantanamo Bay regarding the security arrangements for a counsel visit with multiple detainees at the same time. As explained below, this Court is without jurisdiction to consider petitioners' request to micro-manage the conditions of their confinement. Indeed, Judge Urbina issued an opinion in this very case in August 2008 holding that this Court lacks jurisdiction to consider such challenges under the Military Commissions Act of 2006. Moreover, even if the Court had jurisdiction, petitioners have failed to meet the standard for obtaining the extraordinary and drastic remedy of a preliminary injunction. The attached declaration of Jeffrey K. Hayhurst explains that Guantanamo Bay will employ minimally intrusive and appropriate security measures in order to accommodate petitioners' counsel's request to meet with multiple petitioners at the same time. Further, petitioners have not met the heavy burden they face in seeking emergency relief. They will not suffer any irreparable harm by such an arrangement because they will be able to meet

together with their counsel and freely exchange documents. Guantanamo Bay has a legitimate interest in maintaining the safety of all participants during detainee-counsel visits and the reasonable conditions imposed on petitioners will not interfere with their ability to meet and confer with counsel. For these reasons, the Court should deny the petitioners' motion.

## BACKGROUND

On October 20, 2008, petitioners' counsel requested an emergency visit to Guantanamo Bay on Monday, October 27, 2008. *See* Exhibit A (Oct. 20, 2008 E-mail from Sabin Willett). Although the protective order entered in this case requires counsel to submit such visit requests 20 days in advance of the requested visit date, respondents agreed to make arrangements for petitioners' counsel visit on an expedited basis. *See* Exhibit B (Oct. 21, 2008 E-mail from Alva Foster).

Petitioners' counsel also requested that respondents make a number of exceptions to the typical logistical and security arrangements for habeas counsel visits. First, petitioners' counsel requested to meet with a group of petitioners at the same time "without chain link barriers or anyone chained." *See* Exhibit A. Second, petitioners' counsel requested permission to bring petitioners "copies of all the court filings and of all recent newspaper articles and editorials that refer to Judge Urbina's decision or their case." *Id.* Third, petitioners' counsel requested to work through lunch during their meetings. *Id.* Respondents agreed, in the main, to petitioners' requests, subject to reasonable and appropriate security measures. *See* Exhibit C (Oct. 21, 2008 E-mail from Andrew Warden). Respondents agreed that petitioners' counsel could bring copies of non-privileged media articles to the petitioners provided such materials are reviewed for contraband prior to delivery to the petitioners. *Id.* Respondents also agreed to allow petitioners'

counsel to conduct meetings during lunch. *Id.* Additionally, respondents agreed that petitioners' counsel could meet with all 17 Uighur petitioners at the same time in Camp Iguana provided that counsel stay on the opposite side of a chain link fence from the petitioners. *Id.* For force protection and security reasons, respondents explained that petitioners' counsel would not be permitted to meet with the petitioners inside the detainee portion of Camp Iguana because guards do not patrol in that area and, consequently, would not be able to respond promptly in the event of an emergency or incident. *Id.*

Petitioners' counsel objected to respondents' proposed accommodations for the group meeting and next requested permission to meet with a smaller group of six petitioners "together, not through fences, with the other guys not being confined." *See* Exhibit D (Oct. 21, 2008 E-mail from Sabin Willett). Respondents granted this request and agreed to move six petitioners to a room in Camp 4 for a group meeting with counsel. *See* Exhibit E (Oct. 22 E-mail from Andrew Warden). As with any detainee-counsel meeting, respondents explained that such a meeting would require reasonable and appropriate security measures. Specifically, petitioners would be restrained by a single leg shackle (a standard safety precaution employed in all detainee-counsel meetings) and guards would open the doors to the room every few minutes during their rounds for mandatory safety checks. *Id.* Petitioners once again objected to these security measures and filed the current motion requesting that this Court substitute its judgment for the judgment of the guard staff at Guantanamo regarding appropriate safety measures to be employed during a detainee-counsel visit.

# ARGUMENT

1. **This Court Lacks Jurisdiction To Consider Petitioners' Challenges To Their Conditions of Confinement**.

As a threshold matter, the Court lacks jurisdiction to grant petitioners' request to modify the conditions of their confinement. Through the Military Commissions Act of 2006, Congress has withdrawn federal court jurisdiction concerning aspects of the detention outside of the core habeas function, such that:

> [N]o court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to *any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien* who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant . . . .
> 28 U.S.C. § 2241(e)(2) (emphasis added).

28 U.S.C. § 2241(e)(2) (emphasis added). Under the recent decision in *Boumediene v. Bush*, ___ U.S. ___, 128 S.Ct. 2229 (June 12, 2008), it is clear that the Supreme Court did not invalidate the MCA except to the extent that it precluded courts from exercising core habeas functions, *i.e.*, challenging the legality of the detention itself. Indeed, Judge Urbina reached this same conclusion in his August 7, 2008 Memorandum Opinion in this very case, concluding that § 2241(e)(2) remains good law. *See* dkt no. 151 ("And therefore, this court interprets *Boumediene* to invalidate only 28 U.S.C. § 2241(e)(1)."); *see also Husayn v. Bush*, 08-CV-1360) (dkt no. 32) (Hogan, J.) ("[T]his Court, therefore, holds that § 7(a)(2) remains valid and strips it of jurisdiction to hear a detainee's claims that "relat[e] to any aspect of the detention, transfer, treatment, trial, or conditions of confinement," 28 U.S.C. § 2241(e)(2)."). Petitioners' claims here indisputably fall within the jurisdictional provision of § 2241(e)(2) because they are seeking to have this Court modify and alter the security conditions imposed during a counsel visit. Such

relief "relat[es]" directly to petitioners' "detention, . . . treatment, . . . or conditions of confinement," 28 U.S.C. § 2241(e)(2). Consequently, this Court lacks jurisdiction to hear or consider the motion. Although petitioners are no longer being housed as enemy combatants they were detained by the United States after having been determined to be properly detained as enemy combatants. Therefore, the MCA's jurisdictional limitation applies, as Judge Urbina has already held.

2. **Even If This Court Had Jurisdiction To Entertain Petitioners' Motion, It Should Be Denied Because Petitioners Fail To Meet The Burden Of Showing A Need For The Extraordinary And Drastic Injunctive Relief They Seek.**

Even if the Court had jurisdiction, petitioners' motion also fails under the preliminary injunction analysis. Although not styled as such, petitioners' motion is properly analyzed under the traditional preliminary injunction analysis because the relief sought – an order prohibiting Guantanamo Bay from imposing reasonable security measures – is in the nature of injunctive relief. As the Supreme Court very recently reaffirmed, "a preliminary injunction is an 'extraordinary and drastic remedy,'" that "is never awarded as of right." *Munaf v. Green*, __ U.S. __, 128 S. Ct. 2207, 2219 (June 12, 2008) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE & PROCEDURE § 2948 at 129 (2d ed. 1995), and citing *Yakus v. United States*, 321 U. S. 414, 440 (1944)). Such an injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail in a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest

would be furthered by the injunction.'" *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

### A. Petitioners have failed to demonstrate a substantial likelihood of success.

It is well settled that courts accord substantial deference to the judgment of prison administrators and generally refrain from interfering in the day-to-day operations of prison facilities, including the interaction between prisoners and counsel. *See e.g. Bell v. Wolfish*, 441 U.S. 520 548 (1979) (explaining that the operation of even domestic "correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial," and cautioning lower courts to avoid becoming "enmeshed in the minutiae of prison operations."); *Inmates of Occoquan v. Barry*, 844 F.2d 828, 841 (D.C. Cir. 1988) (noting that "courts are not to be in the business of running prisons" and that "questions of prison administration are to be left to the discretion of prison administrators."). Although the Supreme Court recognized that "access is essential to lawyers and legal assistants representing prisoner clients[,]" it concluded that such interaction between prisoners and counsel "have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). "Acknowledging the expertise of [prison] officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management[,]" the Supreme Court confirmed its practice of "afford[ing] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.*

The security arrangements proposed by the Guantanamo staff for petitioners' meeting

with counsel fall squarely within the purview of the Executive and consequently are entitled to considerable deference. As the *Thornburgh* Court acknowledged, courts are "ill equipped" to determine the level of security measures required to maintain order at a prison facility and to ensure the safety of all present, including counsel and their prisoner clients. The Guantanamo staff have relaxed the security measures employed at Guantanamo and have accommodated petitioners' counsel's requests for an expedited visit to meet with multiple detainees at the same time with minimal interference from prison officials, while still maintaining the safety of all persons present at the facility. *See generally* Declaration of Jeffrey K. Hayhurst (attached as Exhibit F). Petitioners have not come forward with any authority that requires this Court to refrain from deferring to the expertise of the Executive and thus have failed to demonstrate a substantial likelihood of success. Consequently, this Court should not second guess the considered judgment of the professional guard staff at Guantanamo Bay regarding the security arrangements for a counsel visit with multiple detainees at the same time.

**B.      Petitioners will not be irreparably harmed if the injunction is denied.**

Petitioners have not alleged, let alone demonstrated, that they will be irreparably harmed if the Court were to deny their motion. Particular restrictions or conditions imposed by prison officials "do[] not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional." *Wolfish*, 441 U.S. at 542-43 n.25. Nor are prison officials "obligated to adopt the least restrictive means to meet their legitimate objectives." *Block v. Rutherford*, 468 U.S. 576, 591 n. 11 (1984). Here, the Guantanamo staff have significantly relaxed the rules governing petitioners' counsel's access to detainees and accommodated petitioners' counsel's request for an expedited visit. *See* Exhibit B. As outlined

in the declaration of Jeffrey K. Hayhurst, the Deputy Commander of the Joint Detention Group (JDG) for the Joint Task Force - Guantanamo Bay, the Guantanamo staff have granted counsel's request to meet with multiple detainee clients at the same time and have made accommodations to expeditiously review the non-privileged material petitioners' counsel would like to share with their clients, as well as agreed to petitioners' counsel's request to work through lunch. *See* Exhibits C, F ¶¶ 5, 6.

The Guantanamo staff have further relaxed their security measures by providing petitioners' counsel with a choice of meeting with petitioners in one large group with only a security chain link fence between the petitioners and counsel or to meet with their clients in a group of six in a small, closed room in Camp 4, with minimal security arrangements. *See* Exhibits C, E. As Deputy Commander Hayhurst explains in his declaration, each petitioner would be restrained in a single shackle and a guard would periodically open the room door to conduct a visual security check. Exhibit F, ¶ 7. Should petitioners' counsel chose to meet with the entire group in Camp Iguana, petitioners would be gathered at outdoor picnic tables opposite a chain link fence, thereby allowing counsel to speak with all petitioners at the same time and exchange documents. *Id.* at. ¶ 5. Petitioners would not be restrained during that sort of large group meeting at Camp Iguana. *Id.* Should petitioners's counsel choose to meet with their clients in groups of six, there would be no fence separating the two groups and documents could be passed freely. *Id.* at ¶ 7. Neither option restricts the flow of communication between counsel and petitioners nor otherwise interferes with the attorney-client relationship.

Petitioners' argue that Respondent's relaxed security measures preclude them from conducting an appropriate meeting because they would not be able to shake hands with counsel

if they want to meet with all the Uighurs petitioners at once. The inability to engage in physical contact, however, does not unduly impinge upon petitioners' ability to communicate with counsel. *See Jeffries v. Reed*, 631 F. Supp. 1212, 1218 (E.D. Wash. 1986). Given the petitioners' failure to demonstrate how Respondents' decision not to go quite as far as petitioners' would like in making special accommodations to their counsel's last minute request for a group meeting interferes with their attorney-client relationship, petitioners have not met their burden of showing irreparable harm, and the Court should deny their motion.

  **C.** **The relief petitioners request would impose substantial and undue burdens on the Government and injure its interests**

Courts are understandably reluctant to intervene in the management of detention facilities and to second-guess the security judgments made by trained personnel. *See Thornburgh*, 490 U.S. at 408; *Wolfish*, 441 U.S. at 562. Deference to the considered judgment of Guantanamo staff is particularly appropriate under the unique circumstances here, where non-enemy combatants are held in the same facility with enemy combatants detained by the miliary in a time war. A judicial decree allowing petitioners' counsel to have unfettered access to their clients creates a potential risk to the maintenance of order and security at the Guantanamo Bay facility by undermining the Guantanamo Bay security personnel who possess expertise in ensuring the safety of all present at the facility. *See* Exhibit F ¶¶ 4,5. The absence of minimal security measures also increases the likelihood of injury to either a detainee or to miliary personnel. *Id.* This Court should thus deny petitioners' motion.

  **D.** **The public interest would not be served by a preliminary injunction.**

Finally, the public has a strong interest in assuring that the miliary and security operations provided at Guantanamo are not interrupted, overly burdened, and second-guessed by

the unnecessary demands of these petitioners pertaining to the particulars of their confinement conditions. As demonstrated above, the Guantanamo staff has taken and will continue to take appropriate measures to preserve safety and security of detainees, their counsel and military personnel. Accordingly, to avoid the unnecessary burdens imposed by petitioners' motion, the public interest would be best served if the Court denied petitioners' motion.

## CONCLUSION

For the reasons stated above, respondents respectively request that the petitioners' emergency motion for order related to counsel visit of October 27, 2008 be denied in all respects.

Dated: October 23, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/ *Andrew I. Warden*
JOSEPH H. HUNT
VINCENT M. GARVEY
JUDRY L. SUBAR
TERRY M. HENRY
ANDREW I. WARDEN (IN Bar No. 23840-49)
KRISTINA WOLFE
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20530
Tel: (202) 616-5084
Fax: (202) 616-8470

Attorneys for Respondents