IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | |
| GUANTANAMO BAY DETAINEE LITIGATION | ) ) ) ) ) | Misc. No. 08-MC-442 (TFH)<br><br>Civil Action No. 08-CV-1360 (RWR) |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR
RECONSIDERATION OF DENIAL OF EMERGENCY MOTION
FOR IMMEDIATE DISCLOSURE OF PETITIONER'S MEDICAL RECORDS
AND FOR RELATED RELIEF**

This Court properly denied petitioner's Emergency Motion for Immediate Disclosure of Petitioner's Medical Records and for Related Relief ("Emergency Motion"). The Emergency Motion sought an order from the Court directing the respondents to provide unredacted copies of all of petitioner's medical records, and of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes since his arrival at Guantanamo Bay. The Emergency Motion also requested that petitioner's counsel be permitted to interview petitioner's treating physician at Guantanamo. On September 22, 2008, this Court held that the requested relief relates directly to petitioner's medical treatment, which is an aspect of petitioner's detention that Section 7 of the Military Commissions Act ("MCA"), 28 U.S.C. § 2241(e)(2), specifically withdraws from the Court's purview. Despite petitioner's protestation to the contrary, the Court also noted that it was "at a loss to see how the relief Petitioner seeks through his motion does not 'relate' directly to Petitioner's 'detention, . . . treatment, . . . or conditions of confinement,'" as provided in Section 7. Order of 9/22/08 at 3 (1:08-cv-1360, dkt. # 32) (quoting (28 U.S.C. § 2241(e)(2)).

As discussed below, petitioner's motion for reconsideration presents nothing new. Beyond petitioner's simple disagreement with the Court's characterization of his requested relief – *i.e.*, whether the relief relates to his conditions of confinement or the fact of his detention – the motion only provides an account of counsel's observation of petitioner's condition during a recent counsel visit. However, regardless of petitioner's current medical condition – a condition for which petitioner is provided appropriate, high quality care by the Guantanamo medical staff – the fact remains that petitioner is still seeking to have the Court take action to oversee petitioner's medical treatment at Guantanamo, which this Court is without jurisdiction to do under the MCA. There is no basis for reconsidering this Court's prior ruling, and petitioner's motion for reconsideration should be denied.

## ARGUMENT

**PETITIONER'S MOTION FOR RECONSIDERATION FAILS TO PRESENT THE TYPE OF EXTRAORDINARY CIRCUMSTANCES WARRANTING THIS COURT'S RECONSIDERATION OF ITS PRIOR RULING ON PETITIONER'S EMERGENCY MOTION**

The Supreme Court has admonished that "as a rule courts should be loathe to [revisit prior decisions of their own] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks and citation omitted). Thus, this Court has consistently held that a reconsideration motion is appropriate only where "justice requires" it, such as "when the court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh v. George*

*Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations and internal quotation marks omitted); *see also Cobell v. Norton*, 355 F. Supp.2d 531, 539 (D.D.C. 2005); *APCC Servs. v. AT&T,* 281 F. Supp. 2d 41, 44 (D.D.C. 2003); *Campbell v. United States Dep't of Justice,* 231 F. Supp. 2d 1, 7 (D.D.C. 2002); *M.K. v. Tenet,* 196 F. Supp. 2d 8, 12 (D.D.C. 2001); *Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C. 2000).

"[T]he district court's discretion to reconsider a non-final ruling is . . . subject to the caveat that where litigants have once battled for the court's decision, they should not be required, nor without good reason permitted, to battle for it again." *Singh*, 383 F. Supp. 2d at 101 (internal quotation marks and citation omitted). Accordingly, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might *reasonably be expected to alter the conclusion reached by the court.*" *Cobell,* 355 F. Supp. 2d at 539 (D.D.C. 2005) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)) (emphasis in original); *see also Keystone Tobacco Co., Inc.,* 217 F.R.D. at 237 (denying reconsideration motion because the movant failed to demonstrate "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order") (internal citation and quotation omitted).

Here, petitioner's motion presents none of the "extraordinary circumstances" that would warrant reconsideration of the Court's prior ruling. *Christianson*, 486 U.S. at 817. Petitioner simply disagrees with the Court's finding that his requested relief relates to his condition of confinement. That is no basis for reconsideration, and in any event, petitioner's arguments are wrong on the merits. According to petitioner, he is not seeking "the slightest change in the nature, quality, or circumstances of his confinement" in that the relief he requests will not affect

when he recreates and with whom; when his meals and medications are delivered; when the lights in his cell are turned on and off; what he wears; where he is housed; and how frequently guards peer into his cell. Pet.' Reconsideration Mot. at 1. While that may be true, petitioner cannot dispute the fact that he is asking the Court to intrude into Guantanamo medical staff's treatment of petitioner, which is undeniably an aspect of petitioner's conditions of confinement. *See Chandler v. District of Columbia Dept. of Corrections,* 145 F.3d 1355, 1360 (D.C. Cir. 1998) (a prisoner's conditions of confinement include his medical care and treatment) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). This is evident because not only does petitioner want permission for his counsel to interview his treating physician at Guantanamo regarding his medical condition and to obtain copies of his medical records, but also, as his reconsideration motion indicates, he wants to know the reasons for his current treatment regimen, such as why he is given a certain type of medication.[1] *See* Pet. Reconsideration Mot. at 5. The most plausible purpose for such relief is so that petitioner eventually may second-guess that medical care. *See Al-Ghizzawi v. Bush*, No. 05-2378, 2008 WL 948337, 7 (D.D.C. Apr. 8, 2008) (denying Guantanamo detainee's request for his medical records because the request "boils down to nothing more than another attempt to second-guess the medical treatment provided by the government"); *Al Odah v. United States,* 406 F. Supp. 2d 37, 44 (D.D.C. 2005) (denying Guantanamo detainee's request for medical records because "logically the provision of medical records and/or medical reports will not result in any further protection of the life of a detainee

---

[1] Indeed, petitioner's counsel similarly specified in the initial motion that the relief they requested was merely to "allow[] them to ascertain petitioner's well being by examining his records, speaking with his physicians, and discussing his condition with an independent professional." Pet. Emergency Mot. at 8-9.

without intermediate scrutiny of the records by medical professionals and challenges to the Court based on that scrutiny").

In other words, this Court was correct in finding that granting the emergency injunctive relief "would involve this Court in Petitioner's medical treatment at Guantanamo Bay and the decisions of officials at Guantanamo Bay relating to that treatment." Order of 9/22/08 at 3. Under the MCA, this Court has no jurisdiction to so entangle itself in this conditions of confinement claim, never mind that the public has a strong interest in assuring that the military operations at Guantanamo are not interrupted, overly burdened, and second-guessed by the unnecessary demands of individual detainees regarding the particulars of his medical treatment – a consideration that also tipped in favor of denying petitioner's Emergency Motion.[2]

Petitioner, however, now insists that his requested relief is only about vindicating his constitutional habeas rights because his medical records since his arrival at Guantanamo are the best evidence of his mental state on or around the time of the FBI's interrogation of him, which, according to petitioner, was tainted by the CIA's prior alleged unlawful interrogation of him. *See* Pet. Reconsideration Mot. at 5-6. This post-hoc rationalization or elaboration is unavailing because it is nothing more than a request for discovery related to petitioner's view of the merits of this case. As such, the request should be denied because, at the very best, it is premature. Not only has this Court yet to determine the appropriate procedural framework and standards applicable to discovery, if any, in Guantanamo habeas cases, but respondents have not even filed

---

[2] As respondents have fully demonstrated in their prior opposition to petitioner's Emergency Motion, the Guantanamo medical staff has provided, and will continue to provide, excellent, comprehensive medical care to ensure the health and well-being of detainees there, including petitioner.

a factual return in petitioner's habeas case. Until the parties and the Court have a concrete factual record explaining the basis for petitioner's detention, it is speculative whether petitioner's medical records would be relevant and necessary for petitioner to rebut the Government's basis for his detention.

Petitioner also argues that the relief he requests is necessary to allow counsel to assess whether petitioner is competent to assist in his defense. There is no substantial allegation that heretofore petitioner has not been able to assist counsel. Counsel have represented petitioner in a petition filed under the Detainee Treatment Act in the Court of Appeals since December 2007 and in this habeas case since July 2008. Counsel's account in the current filing that "something was wrong with Petitioner" based on one counsel visit plainly is insufficient show that petitioner is unable to assist in his defense. Pet. Reconsideration Mot. at 3. According to counsel's account, petitioner was under the influence of a certain anti-psychotic medication; he was not as animated or engaged as he was in prior visits, appeared to have a low energy level, complained about having difficulty writing, praying, or concentrating, and apologized to counsel about his condition. Counsel also asserted that they terminated the visit because they could not be certain whether petitioner's answers were reliable. These assertions, however, do not sufficiently rise to the level of suggesting that petitioner may be mentally incompetent such that he is unable to assist counsel in this habeas litigation. Indeed, if this type of assertion is sufficient to warrant granting the relief requested by petitioner, then any Guantanamo detainee exhibiting such symptoms during a counsel visit would be able to request Court intervention in his medical care at Guantanamo. Such a situation would be at odds with the absence of jurisdiction in the Court to involve itself in detainees' conditions of confinement under the MCA. Requiring them to

produce detainees' medical records and responding to counsel's questions about the treatment they have provided to detainees would also place enormous burdens on the Guantanamo medical personnel, who are committed to providing quality and appropriate medical care to detainees.

In any event, the Supreme Court has rejected the idea that mental competence is an indispensable prerequisite for habeas. *See Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990) (observing that mental incompetence of prisoner is common reason for a habeas petition to be brought through a next friend). Thus, courts have held that the prohibition on the prosecution of an incompetent defendant in criminal proceedings, and the accompanying right to a determination of mental competence, do not extend to habeas proceedings. *See O.K. v. Bush*, 344 F. Supp. 2d 44, 56 (D.D.C. 2004) (citing cases). If there is sufficient showing that petitioner cannot meaningfully assist in his defense once the Government has submitted a factual return, then counsel's representation may be better served through a next friend acting on petitioner's behalf, consistent with the Supreme Court's standards for next friend standing in *Whitmore*.

## CONCLUSION

For the reasons stated above, respondents respectfully request that the petitioner's motion for reconsideration be denied.

Dated: October 23, 2008                    Respectfully submitted,

                                           GREGORY G. KATSAS
                                           Assistant Attorney General

                                           JOHN C. O'QUINN
                                           Deputy Assistant Attorney General

                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           Director

VINCENT M. GARVEY (D.C. Bar No. 127191)
Deputy Director

　/s/ Jean Lin
TERRY M. HENRY
ANDREW I. WARDEN
JEAN LIN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 514-3755
Fax:  (202) 616-8470

Attorneys for Respondents