IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

GUANTANAMO BAY
DETAINEE LITIGATION

Misc. No. 08-442 (TFH)

Civil Action No. 05-00247 (HHK)

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' "MOTION TO DISMISS IMPROPER RESPONDENTS"

Petitioner, Mahmood Salim Al-Mohammed, through counsel, submits this Memorandum of Law in Opposition to Respondents' "Motion to Dismiss Improper Respondents" in his petition for a writ of habeas corpus ("the Petition"). All Respondents named in the Petition – the President, the Secretary of Defense, and the Petitioner's immediate custodians – are proper respondents. Nevertheless, Petitioner would not oppose dismissing, <u>without</u> prejudice[1], all Respondents other than the Secretary of Defense as to the habeas claims, provided that safeguards described below are put in place to prevent substantive prejudice to the habeas rights of Petitioner due to the requested dismissal. In the absence of those safeguards, Respondents' Motion should be denied in its entirety.

---

[1] Dismissal must be without prejudice because it will not be on substantive grounds. *See Jarrell v. United States Postal Service*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)("dismissal with prejudice should be granted only when the trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency")(internal quotations and citations omitted). Moreover, given the Government's prior positions on jurisdictional and procedural issues in these cases, dismissal without prejudice is necessary to safeguard Petitioner's rights if the Government takes the position in the future that, despite the Respondents' stipulations, the Secretary of Defense is not the proper respondent and/or does not have the authority to implement some or all of the relief this Court might order.

## I. If Respondents Agree To Certain Stipulations To Prevent Prejudice To Petitioner, Petitioner Will Consent To Dismissal Without Prejudice

On October 10, 2008, Respondents sent an email request to Petitioner's counsel asking if they would consent to dismiss all respondents in this case other than the Secretary of Defense in his official capacity. (*See* e-mail from Scott Marconda, U.S. Department of Justice (Oct. 10, 2008), a true and correct copy of which is attached as Exhibit A hereto.) In response, Petitioner's counsel sent an email stating that Petitioner would consent to dismissal, provided that Respondents stipulate to the following assertions, so as to ensure that Petitioner could obtain the relief sought in the Petition if they agreed to the proposed dismissal ("the Stipulation"):

1) the Secretary of Defense is a proper respondent;

2) the Secretary of Defense is subject to the jurisdiction of the Court;

3) the Secretary of Defense has the power and authority to implement any court orders granting the relief requested in Petitioner's complaints including, but not limited to, Petitioner's release and production of documents or any other evidence in the possession or control of the government;

4) the government, not limited to the Department of Defense, has an obligation to preserve documents or any other evidence relevant to this litigation; and

5) the government will not transfer Petitioner to the custody of another branch of the U.S. government and should it do so, the government agrees to reinstate the President as the Respondent in this litigation.

(*See* e-mail from Samuel Kauffman, Garvey Schubert Barer, to Scott Marconda, dated Oct. 14, 2008, a true and correct copy of which is attached as Exhibit B hereto.

Respondents did not reply to Petitioner's counsel's email response. Indeed, their failure to respond amounts to a derogation of their duty to confer meaningfully and in good faith before filing, *see* L. Civ. R. 7(m), and reason alone for this Court to strike Respondents' Motion to Dis-

miss. Rather than respond and "narrow the areas of disagreement," as required by the local rule, Respondents filed their motion to dismiss.[2]

In their motion, Respondents appear to effectively stipulate to some, but not all, of Petitioner's proposals. Respondents acknowledge that "the Secretary of Defense is a proper respondent and is within this Court's jurisdiction." (Resp.'s Mot. at 5.) They also concede that the Secretary of Defense "can fully effectuate any relief that might be ordered by the Court" and that "[a]ny order of relief in these cases may be properly addressed to the Secretary of Defense." (*Id.* at 3, 5.) Accordingly, Petitioner deduces that the remaining disagreement centers on Stipulations 3 (in part), 4 and 5: that the government has an obligation to preserve evidence; that the government will not transfer Petitioner from Department of Defense custody or, if it does so, will reinstate the President as respondent; and that the relief the Secretary of Defense "can fully effectuate" includes the power and authority to release Petitioner and to produce evidence in the government's control. If Respondents agree to these stipulations, Petitioner will consent to dismissal without prejudice of all Respondents other than the Secretary of Defense on the habeas claims of the Petition. If Respondents do not agree to these stipulations, then their motion should be denied in its entirety because it seeks to dismiss respondents who are necessary to effectuate all the relief this Court might grant.

---

[2] In the appendix to that motion, Respondents asserted, without authority, that Petitioner's proposed stipulations were "conditions which spoke to the legal authority of the Secretary of Defense . . . to carry out the relief requested . . . and to act on behalf of the government," authority which is "dictated by the operation of law." (Resp.'s Mot., App. A, at 2, n.\*\*.) Instead of clarifying to Petitioner or to the Court why such stipulations were objectionable, Respondents simply stated they "consider[ed] such responses as effective refusal to consent" to the motion. (*Id.*)

## II. The President Is A Proper Respondent

The Supreme Court has noted that the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). In *Jones*, the Court discussed multiple instances where sitting Presidents were compelled to comply with court orders. *Id.* at 705. For example, President Nixon produced tapes in response to a subpoena. *Id.* (citing *United States v. Nixon*, 418 U.S. 683, 715 (1974)). President Ford complied with an order to give a deposition in a criminal trial. *Id.* (citing *United States v. Fromme*, 405 F. Supp. 578 (E.D. Cal 1975)). President Clinton gave videotaped testimony in criminal proceedings. *Id.* (citing *United States v. McDougal*, 934 F. Supp. 296 (E.D. Ark. 1996)). The Supreme Court explained in *Jones* that such orders have a long history:

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena duces tecum could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C. Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703–04 (footnote omitted). The Court noted that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Jones*, 520 U.S. at 704; *see also id.* at 705 ("In sum, [i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States.'" (brackets in original) (citation omitted)).

There have also been numerous cases in which a sitting President has been a defendant or respondent, which courts have dealt with without indicating that the President was not a proper defendant or respondent. *Rasul v. Bush*, 542 U.S. 466 (2004), and *Boumediene v. Bush*, ___ U.S. ___, 128 S. Ct. 2229 (2008), are two such cases involving Guantánamo detainees. *See also Clin-*

*ton v. City of New York*, 524 U.S. 417 (1998); *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008); *Chem-Nuclear Sys. v. Bush*, 292 F.3d 254 (D.C. Cir. 2002).

Respondents do not mention any of the above authorities, and instead rely upon a case dating back to 1867 for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." (Resp.'s Motion at 3 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498–99 (1867))). However, the Court of Appeals for the District of Columbia Circuit has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested by Respondents. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the appeals court observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The *National Treasury* court held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ.) In *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive." *Id.* at 712 n.53.

Nor does *Franklin v. Massachusetts*, 505 U.S. 788 (1992) support Respondents' position. In that case, the Court merely questioned the judiciary's authority to issue an injunction against the President, without deciding the issue. *See id.* at 802–03 (O'Connor, J., for the plurality). Respondents rely on dicta in Justice Scalia's concurrence, in which no other Justice joined, as to the reviewability of Presidential acts. This is certainly not controlling authority.

In fact, no authority Respondents cite bars Petitioner from naming the President as a proper respondent. The Supreme Court, in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), left open the issue of whether individuals higher up on the chain of command are proper respondents when

5

the Petitioner is an alien, as is the case with the present Petitioner. *See id.* at 436 n. 8 (citing *Ahrens v. Clark*, 335 U.S. 188 (1948)).

*Al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), on which Respondents also rely, was decided by the Seventh Circuit before the Supreme Court's decisions in *Boumediene* and *Rasul*, and it is questionable whether *Al-Marri* continues to be viable in light of those decisions. In *al-Marri*, the Seventh Circuit ruled that only the immediate custodians were proper respondents in that case, "rather than the Director of the Bureau of Prisons, the Secretary of the Navy, the Chairman of the Joint Chiefs of Staff, the Attorney General, *the Secretary of Defense, or the President.*" 360 F.3d at 708–09 (emphasis added). If the Secretary of Defense is a proper respondent here, as Respondents contend, then the President should be a proper respondent as well.

The President is also a proper respondent here because Petitioner is being held pursuant to the exercise of the President's executive power. Respondents have repeatedly claimed that the authority to detain those deemed enemy combatants at Guantánamo Bay arises from the President's Article II powers, and the President's authority to use all necessary and appropriate force under the Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). *See Padilla*, 542 U.S. at 431 (2004); *Hamdi v. Rumsfeld*, 542 U.S. 507, 517–18 (2004) (plurality opinion). If the Executive purports to hold Petitioners pursuant to inherent Article II power, the President is an appropriate party.

Moreover, if the President is dismissed, then the government may try to evade this Court's authority simply by transferring the detainees from the custody of the Department of Defense (DoD) to that of the Central Intelligence Agency (CIA), the Department of Justice (DoJ),

6

or other agencies unknown to Petitioner, as it has done in the past.³ The Government takes the position that it has unfettered discretion to transfer detainees from Defense Department control. *See, e.g.,* Government's Brief Regarding Procedural Framework Issues at 43–46 (*Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Aug. 12, 2008) (Dkt. No. 58). This Court has indicated that nothing in its order to give thirty days notice of transfer prevents Respondents from transferring detainees. (*See* Order dated July 10, 2008, Misc. No 08-0442, at n. 1.) The government has even appealed that order, implicitly asserting that it has a right to transfer detainees without even notifying the Court. (*See* Resp'ts' Notice of Appeal, filed July 25, 2008.) In light of these risks, only by including the President as a Respondent can Petitioner ensure that, regardless of any transfer, someone with ultimate authority over all United States agencies and the State Department remains on the habeas claims to provide relief.

### III. Petitioner's Custodians Are Proper Respondents

Respondents take the position that Petitioner's immediate custodians at Guantánamo Bay (the Commanders of Joint Task Force—GTMO and the Commander of the Joint Detention Operations Group of the Joint Task Force—GTMO) are not proper respondents on the habeas claims. This is contrary to the holding of the Supreme Court in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the federal habeas statute "contemplate[s] a proceeding against some person

---

³ A number of detainees were previously transferred from CIA custody to DoD and are currently detained at Guantánamo. At least one GTMO detainee suspect was transferred from the DoJ to DoD. See *al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) (en banc) (noting the Government's dismissal of an indictment during criminal proceedings against defendant and an order signed by the President transferring the defendant to military custody). And at least one other detainee, Jose Padilla, after several years in military confinement, was transferred the other way, from DoD confinement to confinement under the DoJ. See *Hanft v. Padilla*, 546 U.S. 1084 (2006).

7

who has the *immediate custody* of the party detained, with the power to produce the body of such party . . . that he may be liberated." *Id.* at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added by *Padilla*)). Under *Padilla*, Petitioner must, at minimum, name their immediate physical custodians or risk dismissal of their habeas claims.

Respondents argue that, under footnote 9 in *Padilla,* where "a petitioner is held abroad in a military context," the proper respondent is a "supervisory official of that custodian." (Resp.'s Mot. at 4.) This misconstrues footnote 9, which states that, "[w]e have long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Padilla*, 542 U.S. at 436 n.9 (citing, *inter alia, Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)).[4] In *Braden* the Court held that, where "American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus, we have held, if only implicitly, that the petitioner's absence from the district court does not present a jurisdictional obstacle to the consideration of the claim."

Thus, it is clear that the purpose of the exception in footnote 9 of *Padilla* is to remove obstacles to a habeas petition in those circumstances in which the immediate custodians cannot be named as respondents because they are outside of the jurisdiction of U.S. courts. There is nothing in that footnote, or elsewhere in *Padilla*, that forecloses the immediate custodians from being respondents.

---

[4] The Supreme Court also cited for this proposition two cases in which the Secretary of Defense or Secretary of the Air Force were held to be proper respondents for the habeas petitions of convicts detained in foreign countries. *See United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955); *Burns v. Wilson*, 346 U.S. 137 (1953).

8

Moreover, the circumstances set forth in footnote 9 of *Padilla* do not apply here because Petitioner is detained within this Court's territorial jurisdiction at Guantánamo Bay, which the Supreme Court described as "in every practical sense . . . not abroad; it is within the constant jurisdiction of the United States." *Boumediene v. Bush*, 128 S. Ct. 2229, 2261 (2008); *accord Rasul v. Bush*, 542 U.S. 466, 480 (2004) (concluding that the Naval Base at Guantánamo Bay was not an "extraterritorial" location, and therefore subject matter jurisdiction over aliens detained there could be exercised). For these reasons, the exception to the immediate custodian rule does not bar the naming of Petitioner's immediate custodians as respondents.

## IV. Respondents Have Not Objected To Being Named As Respondents For Years, And Are Estopped From Doing So Now

Petitioner's case was filed in February 2005. In the years since, none of the Respondents have objected to being named as respondents on any claims until now.[5] Respondents have failed to address why they did not make a motion previously if there was any reason to believe that any of them were named improperly.

## V. Conclusion

Petitioner does not wish to complicate matters by having unnecessary respondents on the habeas claims, which is why they proposed the above stipulations to Respondents, which Respondents ignored. Respondents' Motion can only be granted, however, if it is certain that the Secretary of Defense is the proper respondent on Petitioner's habeas claims, and can effectuate

---

[5] Some of the Respondents herein—the immediate custodians of the Petitioner in Zadran—filed motions in August 2007 to be dismissed as respondents in the Zadran Petitioner's Detainee Treatment Act cases, *Abdul Haq Wasiq v. Bush*, No 07-1183 (D.C. Cir.); *Mohammad Nabi Omari v. Bush*, No. 07-1182 (D.C. Cir.); *Mohammad Zahir*, No. 07-1169 (D.C. Cir.); and *Mohammad Rahim*, No. 07-1181 (D.C. Cir.), based on the language of the DTA. That motion is pending.

all the relief the Court may order on those claims, including release of Petitioner. Therefore, Petitioner respectfully requests that Respondents' Motion be denied in its entirety unless and until Respondents agree to each and every one of the stipulations set forth on page 2 above, in which case Respondents' motion to dismiss all Respondents on the habeas claims other than the Secretary of Defense should be granted <u>without</u> prejudice. A proposed order is being submitted herewith.

                                                Respectfully submitted,

                                                GARVEY SCHUBERT BARER

By   s/ Samuel C. Kauffman
      Robert C. Weaver, Jr. OSB #80135
      Samuel C. Kauffman, OSB #94352
      John C. Rothermich, OSB #071685
      GARVEY SCHUBERT BARER
      Eleventh Floor
      121 SW Morrison St.
      Portland, OR 97204
      Tel: (503) 228-3939
      Fax: (503) 226-0259
      rweaver@gsblaw.com
      skauffman@gsblaw.com
      jrothermich@gsblaw.com
      <u>Attorneys for Petitioner</u>

Dated: October 28, 2008