# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MUIEEN ADEEN JAMAL ADEEN ABD AL F. ABD AL SATTAR, ) ) ) ) Detainee, ) ) ) Petitioner, ) v. ) ) GEORGE W. BUSH, et al., ) ) Respondents. ) ) | Misc. No. 08-0442<br>Civil Action No. 08-1236 |

## PETITIONER MUIEEN ADEEN JAMAL ADEEN ABD AL F. ABD AL SATTAR'S REPLY TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

Petitioner Muieen Adeen Jamal Adeen Abd Al F. Abd Al Sattar, by and through counsel, submits the following reply in opposition to the Government's Motion to Dismiss Improper Respondents filed on October 14, 2008. The Government's motion to dismiss, filed in the 139 civil actions pending under Misc. No. 08-CV-0442, contends that, from the broad spectrum of respondents named collectively in those matters, only the Secretary of Defense is a properly named respondent. Petitioner has named respondents President George W. Bush, Robert M. Gates, Rear Adm. David M. Thomas Jr., (Commander Joint Task Force-GTMO), and Col. Bruce Vargo, (Commander Joint Detention Operations Group, Joint Task Force-GTMO) in his habeas petition filed on July 17, 2008, under 08-CV-1230. Petitioner intends to name these same respondents in his anticipated amended petition. With the Government's concession that the Secretary of Defense is a properly named respondent, the threshold issue in this matter is whether President Bush, Vargo,

and Thomas have custody over the Petitioner in order to be properly named respondents under 28 U.S.C. § 2242.

Within the "core" of habeas cases, a petitioner's immediate custodian is usually the warden of the prison where the petitioner is confined, which in this case is Thomas and Vargo. *Rumsfeld v. Padilla*, 542 U.S. 426, 124 S.Ct. 2711 (2004). In support of naming only the Secretary of Defense as a proper respondent, the Government relies on an exception to this "immediate custodian" rule involving extraterritorial cases. The applicability of this exception, however, remains unclear given the holdings in *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), and *Rasul v. Bush*, 542 U.S. 466 (2004), which put at issue whether Guantánamo Bay is extraterritorial. As this matter does not present a clear answer as to whether the traditional rule of the immediate custodian or the exception to that rule applies, prudence demands that Vargo, Thomas, and Secretary Gates be named as respondents.

As to the President, counsel has set forth legitimate grounds regarding the risk of the Petitioner being repeatedly transferred, at the unfettered discretion of the President, between executive agencies outside the reach of the Department of Defense which require that the President and his successor remain as a named respondent. For reasons set forth below, the Court should deny the Motion and retain all Respondents.

**ARGUMENT**

I.  **Commanding Officers Vargo and Thomas of the Detention Facility in Guantánamo Bay Are Proper Respondents**.

The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). This rule forms the basis for the "immediate custodian" rule, as they "contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Padilla*, 542 U.S. at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). In accordance with this rule, Petitioner named the two military officials (Vargo and Thomas) who clearly fall within the purview of this precedent. The Government concedes this point, acknowledging that, "[i]ndeed, only those within the chain of command between the petitioners' immediate custodian at Guantanamo Bay, Cuba and the Secretary of Defense have either custody or legal control over the petitioners." ECF #723, Government's Motion to Dismiss Improper Respondents at p. 4.[1]

Despite its concession, the Government argues any person within the chain of command of the Secretary of Defense, *i.e.*, Vargo and Thomas, is an improperly named respondent. In attempting to make this point, the Government cites *al-Marri v. Rumsfeld*, which held, contrary to the Government's position, that "for an inmate of a brig, jail, or prison the 'custodian' is the person in charge of that institution," which "[i]n the federal system, . . . means the warden (or Commander)

---

[1] Unless otherwise noted, ECF references herein relate to Miscellaneous Case No. 08-442.

rather than ... the Secretary of Defense." *al-Marri*, 360 F.3d 707, 708–709 (7th Cir. 2004). The holding in *al-Marri,* which is consistent with the heartland of habeas cases to date, certainly provides a clear justification for naming as respondents the most immediate persons having custody over the Petitioner. Whether this matter will ultimately result in an expansion or modification of traditional habeas case law is irrelevant to whether Petitioner has a legitimate basis to name Thomas and Vargo, his most immediate custodians as respondents. The Government also cites to *Padilla*, where the United States Supreme Court reversed the Second Circuit's determination that, "Secretary Rumsfeld is the proper respondent because he exercises the 'legal reality of control' over Padilla." *Padilla*, 542 U.S. at 439. The Court in *Padilla* concluded Secretary Rumsfeld, although he exercised the "legal reality of control," was not a proper Respondent. *Id.* at 439. Accordingly, under *Padilla* and *al-Marri*, Petitioner must, at a minimum, name their immediate physical custodians or risk dismissal of his habeas petition.

The Government also cites to footnote 9 in *Padilla*, which states only that there is an "exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Padilla*, 542 U.S. at 436 n.9 (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)). The application of this exception has been put into serious question as previous cases to date have found Guantánamo Bay is not outside the territorial jurisdiction of this Court. *See Boumediene*, 128 S.Ct. at 2261 ("In every practical sense Guantanamo is not abroad; it is within the constant jurisdiction of the United States."); *Rasul*, 542 U.S. at 480.[2] Further, given Justice Kennedy's controlling

---

[2] Where the exception outlined in *Padilla* does apply, it is unclear who should be named as respondents in lieu of the immediate custodian. Prior cases suggest that where a petitioner and his immediate custodian are outside the jurisdiction of any district court, "the petitioner may
(continued...)

4

concurrence in *Padilla*, there may be an additional exception to the "immediate custodian" rule where a petitioner seeks to file a petition against someone other than the immediate custodian and the Government waives objection to such a filing. *Padilla*, 542 U.S. at 451–52. Such a situation does not exist here.[3]

The Government's final argument, that the "other respondents named within the chain of command are superfluous and should be dismissed," is made without the support of any controlling authority. ECF #723, Government's Motion to Dismiss Improper Respondents at p. 5. Instead, the Government is reduced to making a strained analogy to the Detainee Treatment Act ("DTA"). *See id.* (citing Pub. L. 109-163, Div. A, Title XIV, §1405(e)(4), 119 Stat. 3136 (Jan. 6, 2006)). As the Supreme Court found in *Boumediene*, the review of Combatant Status Review Tribunal ("CSRT") determinations under the DTA is a very different procedure from habeas corpus, and it would therefore make little sense to follow "Congress's judgment in the DTA context," (ECF #723, Government's Motion to Dismiss Improper Respondents at p.5), especially when other federal statutes—sections 2242 and 2243, Title 28, of the United States Code—already provide that the proper respondents are those having custody over the person detained.

---

[2](...continued)
name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 44 (D.D.C. 2004). If the *Padilla* exception were to apply here, Petitioner could indeed name any of his custodians. Therefore, Petitioner has named the President and the Secretary of Defense as respondents given the ambiguity of the law.

[3] Petitioner's objection to the dismissal of these respondents rests heavily on the ambiguity of the law and on the Government's purpose in filing its motion. Petitioner opposes the Government's motion in that dismissal of the named respondents implicates other claims for relief other than traditional claims under habeas relief, including claims for declaratory relief. Whether those claims are cognizable, and whether any or all of the existing respondents are necessary for relief under those claims, are issues the Government fails to address in any manner.

## II. The President is a Proper Respondent.

Even if the immediate custodian rule applies in this case,[4] the unique situation of Petitioner and other Guantánamo detainees suggests the President should remain a named respondent. Petitioner maintains he is innocent of the enemy combatant designation. The relief sought in his habeas petition and anticipated amended habeas petition, is equitable in nature. 28 U.S.C. § 2243 (the Court should "dispose of the matter as law and justice require"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas "is, at its core, an equitable remedy"). This Court should retain all respondents, including the President, to assure, as the Petitioner's claims of innocence are realized in court, that the full range of equitable remedies remain available.

On a more practical level, if the President is dismissed, then the Government can evade this Court's authority by simply transferring a detainee from the custody of the Department of Defense ("DOD") to the Central Intelligence Agency (CIA), to the Department of Justice ("DOJ"), or to any other executive agency distinct from the Secretary of Defense. Certainly, counsel would expect the government to concede that historically, a significant percentage of Guantánamo detainees currently before the Court were previously transferred from CIA custody to DOD custody. Even from what little information is available to the petitioner about these practices, it is clear at least two detainees have been transferred between the DOJ to the DOD when the Government found it convenient to do so. *See al-Marri v. Pucciarelli*, _F.3d_, 2008 WL 2736787 at **3-4 (4th Cir. July 15, 2008); *Padilla* v. *Hanft*, 432 F.3d 582 (4th Cir. 2005) (denying Government's motion to transfer

---

[4] Even if the habeas cases of Guantánamo detainees are governed by an exception to the immediate custodian rule, nothing would prohibit Petitioner from properly naming the President as a respondent in this case. *See supra*, note 2.

military detainee to civilian authorities for trial, after Court had previously given Government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006).

Additionally, the Government takes the position that it has the unfettered discretion to transfer detainees from DOD control. *See*, Government's Brief Regarding Procedural Framework Issues at 43-46 (*Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Aug. 12, 2008) (Dkt. No. 58)). Accordingly, inter-agency transfer in these cases is a real concern. This is not to say that Petitioner has named the President as his *future* custodian; the President is very much the current custodian and therefore is properly named as a respondent. Indeed, the Government claims the Executive's authority to detain Petitioner in this case arises from two sources: the President's Article II powers, and the President's authority to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001). In justifying its attempt to dismiss the President, the Government relies chiefly on an 1867 case for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." ECF #723, Government's Motion to Dismiss Improper Respondents at p. at 2 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498–99 (1867)). The Court of Appeals for the District of Columbia Circuit, however, has interpreted *Johnson* much more narrowly than the reading suggested in the Government's motion. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the Court of Appeals observed that *Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The Court in *National Treasury* held *Johnson* did not bar a court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ).

The second case cited by the Government, *Franklin v. Massachusetts*, 505 U.S. 788, 802-803 (1992), merely questioned the judiciary's authority to issue an injunction against the President,

7

without deciding the question. More recent authority makes clear the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). As the Supreme Court explained:

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena *duces tecum* could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

*Jones*, 520 U.S. at 703–704 (footnote omitted); *see also United States v. Nixon*, 418 U.S. 683 (1974). The Supreme Court also observed "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Jones*, 520 U.S. at 704.

It may well be this Court has no power to enforce certain orders directed to the President. But any such order, in an of itself, has significance. In *Ex parte Merryman*, 17 F. Cas. 144, 147 (C.C. Md. 1861), Chief Justice Taney, sitting as Circuit Justice in the District of Maryland, issued a writ of habeas corpus to consider the petition of a Baltimore County farmer held by the military at Ft. McHenry, in Baltimore City. The officer in charge of the military prison refused to honor the writ on the ground that President Lincoln had given him the authority to suspend habeas corpus. *Ex parte Merryman*, 17 F.Cas. at 147. Chief Justice Taney held the President had no authority to suspend habeas and directed the clerk "to transmit a copy [of the opinion], under seal, to the president of the United States." *Id.* at 149, 153. "It [would] then remain for that high officer, in fulfillment of his constitutional obligation to 'take care that the laws be faithfully executed,' to determine what measures he will take to cause the civil process of the United States to be respected and enforced." *Id.* Petitioner in this case can ask no more, but should not be required to ask for less.

## CONCLUSION

For the reasons stated, Petitioner respectfully submits the Court should deny the government's motion to dismiss respondents.

October 29, 2008

Respectfully submitted,

*/s/ Vicki Werneke*

VICKI WERNEKE (LCvR 83.2(e))
Assistant Federal Public Defender
Office of the Federal Public Defender,
    Northern District of Ohio
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
Phone: (216) 522-4856; Fax: (216) 522-4321
Email: vicki_werneke@fd.org

*/s/ Amy B. Cleary*
AMY B. CLEARY (LCvR 83.2(e))
Attorney at Law
Office of the Federal Public Defender,
    Northern District of Ohio
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
Phone: (216) 522-4856; Fax: (216) 522-4321
Email: amy_cleary@fd.org

Counsel for Petitioner Muieen Adeen Jamal
    Adeen Abd Al F. Abd Al Sattar