**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) | Misc. No. 08-442 |
| ) | |
| GUANTANAMO BAY ) | Civ. Action Nos. |
| DETAINEE LITIGATION ) | |
| ) | 05-CV-2386 (RBW) |
| ) | 05-CV-0634 (RWR) |
| ) | |

**PETITIONERS' MEMORANDUM OF LAW IN OPPOSITION TO**
**RESPONDENTS' "MOTION TO DISMISS IMPROPER RESPONDENTS"**

Petitioners, through their attorneys, submit this Memorandum of Law in Opposition to Respondents' "Motion to Dismiss Improper Respondents." Petitioners believe that all named Respondents herein—the President, the Secretary of Defense, and the Petitioners' immediate custodians—are proper respondents. (*See* Points II and III *infra*.) Nevertheless, Petitioners would not oppose dismissing, *without* prejudice, all Respondents other than the Secretary of Defense, provided that safeguards are put in place to prevent substantive prejudice to Petitioners' rights. (*See* Point I *infra*.) In the absence of those safeguards, the Court should deny Respondents' Motion in its entirety.

**I.  If Respondents Agree To Certain Stipulations To Prevent Prejudice**
    **To Petitioners, Petitioners Will Consent To Dismissal Without Prejudice[1]**

---

[1]   Dismissal must be without prejudice because it will not be on substantive grounds. *See Jarrell* v. *United States Postal Service*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) ("[D]ismissal with prejudice should be granted only when the trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (internal quotations and citations omitted)). Moreover, given the Government's prior positions on jurisdictional and procedural issues in these cases, dismissal without prejudice is necessary to safeguard Petitioners' rights if the

Petitioners' counsel will to consent to dismissal, provided that Respondents stipulate to the following (the "Stipulations"), to ensure that Petitioners could obtain the relief sought in the Petition if they agreed to the proposed dismissal:

1) the Secretary of Defense is a proper respondent;

2) the Secretary of Defense is subject to the jurisdiction of the Court;

3) the Secretary of Defense has the power and authority to implement any court orders granting the relief requested in Petitioners' complaints including, but not limited to, Petitioners' release and production of documents or any other evidence in the possession or control of the government;

4) the government, not limited to the Department of Defense, has an obligation to preserve documents or any other evidence relevant to this litigation; [and]

5) the government will not transfer petitioner to the custody of another branch of the U.S. government and should it do so, the government agrees to reinstate the President as the Respondent in this litigation.[2]

Respondents' counsel did not "discuss the anticipated motion with opposing counsel, either in person or by telephone," as required by Local Civil Rule 7(m), and this Court's Minute Order of October 2, 2008, which directed counsel to that Rule. Rather than contact Petitioners' counsel and "narrow the areas of disagreement," as required by the Rule 7(m), Respondents simply filed their motion to dismiss. Respondents' failure to follow the local rules is reason enough for this Court to strike Respondents' Motion to Dismiss.

---

Government takes the position in the future that, despite the Respondents' stipulations, the Secretary of Defense is not the proper respondent or lacks the authority to implement the relief this Court might order.

[2] Upon information and belief, counsel for other Guantanamo Bay petitioners proposed such stipulations to Respondents by email and received no reply.

However, in their motion, Respondents effectively appear to agree to some, but not all, of the Stipulations. Respondents acknowledge that "the Secretary of Defense is a proper respondent and is within this Court's jurisdiction." (Resp'ts' Mot. at 5.) They also concede that the Secretary of Defense "can fully effectuate any relief that might be ordered by the Court" and that "[a]ny order of relief in these cases may be properly addressed to the Secretary of Defense." (*Id.* at 3, 5.) Accordingly, Petitioners deduce that the remaining disagreement centers on Stipulations 3 (in part), 4, and 5: that the government has an obligation to preserve evidence; that the government will not transfer Petitioners from Department of Defense custody or, if it does so, will reinstate the President as respondent; and that the relief the Secretary of Defense "can fully effectuate" includes the power and authority to release Petitioners and to produce evidence in the government's control. If Respondents agree to these stipulations, Petitioners will consent to dismissal without prejudice of all Respondents other than the Secretary of Defense on the habeas claims of the Petitions. If Respondents do not agree to these stipulations, then their motion should be denied in its entirety because of Respondents' failure to follow the local rules and order of the court and because the Motion seeks to dismiss respondents who are necessary to effectuate all the relief this Court might grant.

## II. The President Is A Proper Respondent

The Supreme Court has noted that the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). In *Jones*, the Court discussed multiple instances where sitting Presidents were compelled to comply with court orders. *Id*. at 705. For example, President Nixon produced tapes in response to a subpoena, *id*. (citing *United States v. Nixon*, 418 U.S. 683, 715 (1974)), President Ford complied with an order

to give a deposition in a criminal trial, *id*. (citing *United States v. Fromme*, 405 F. Supp. 578 (E.D. Cal. 1975)), and President Clinton gave videotaped testimony in criminal proceedings. *Id*. (citing *United States v. McDougal*, 934 F. Supp. 296 (E.D. Ark. 1996)). The Supreme Court explained in *Jones* that such orders have a long history:

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena duces tecum could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C. Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

*Id.* at 703–04 (footnote omitted). The Court noted that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Jones*, 520 U.S. at 704; *see also id.* at 705 ("In sum, it is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." (citations and internal quotation marks omitted)).

There also have been numerous cases in which a sitting President has been a defendant or respondent, which courts have dealt with without indicating that the President was not a proper defendant or respondent. *Rasul v. Bush*, 542 U.S. 466 (2004), and *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), are two such cases involving Guantánamo detainees. *See also Clinton v. City of New York*, 524 U.S. 417 (1998); *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008); *Chem-Nuclear Sys., Inc. v. Bush*, 292 F.3d 254 (D.C. Cir. 2002).

Respondents do not mention any of these authorities, and instead rely upon a case dating back to 1867 for the proposition that courts have "no jurisdiction . . . to enjoin the President in

the performance of his official duties." (Resp'ts' Mot. at 3 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866))). However, the Court of Appeals for the District of Columbia Circuit has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested by Respondents. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974), the appeals court observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. *Id.* at 614. The *National Treasury* court held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees, although the Court did not formally issue the writ. In *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive." *Id.* at 712 n.53.

Nor does *Franklin v. Massachusetts*, 505 U.S. 788 (1992), support Respondents' position. In that case, the Court merely raised a question as to the judiciary's authority to issue an injunction against the President, without deciding the issue. *See id.* at 802–03 (O'Connor, J., for the plurality). Respondents rely on dicta in Justice Scalia's concurrence, in which no other Justice joined, as to the reviewability of Presidential acts. This is certainly not controlling authority.[3]

---

3   *Al- Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), on which Respondents also rely, was decided by the Seventh Circuit before the Supreme Court's decisions in *Boumediene* and *Rasul,* and it is questionable whether *al-Marri* continues to be viable in light of those decisions. In *al-Marri*, the Seventh Circuit ruled that only the immediate custodians were proper respondents in that case, "rather than the Director of the Bureau of Prisons, the Secretary of the Navy, the Chairman of the Joint Chiefs of Staff, the Attorney General, *the Secretary of Defense, or the President*." 360 F.3d at 708–09 (emphasis added). If *al-Marri* were good authority on this point, it would prove too much for

The President is also a proper respondent here because Petitioners are being held pursuant to an exercise of the President's executive power. Respondents have repeatedly claimed that the authority to detain those deemed enemy combatants at Guantánamo Bay arises from the President's Article II powers and the President's authority to use all necessary and appropriate force under the Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). *See Padilla*, 542 U.S. at 431 (2004) ("[T]he President issued an order to Secretary of Defense Donald H. Rumsfeld designating Padilla an 'enemy combatant' and directing the Secretary to detain him in military custody. In support of this action, the President invoked his authority as 'Commander in Chief of the U. S. armed forces' and the Authorization for Use of Military Force Joint Resolution." (citations omitted)); *Hamdi v. Rumsfeld*, 542 U.S. 507, 517–18 (2004) (plurality opinion) (agreeing with the government's argument that an enemy combatant "is being detained 'pursuant to an Act of Congress'—the AUMF."). Given that the Executive purports to hold Petitioners pursuant to the President's own inherent power, the President is an appropriate party.[4]

Moreover, if the President is dismissed, then the government may try to evade this Court's authority simply by transferring the detainees from the custody of the Department of Defense (DoD) to that of the Central Intelligence Agency (CIA), the Department of Justice

---

    Respondent's purposes, undercutting their contention that the Secretary of Defense alone is the proper respondent.

[4]     Respondents cite to footnote 9 of the Supreme Court's decision in *Rumsfeld v. Padilla,* 542 U.S. 426 (2004), for their assertion that, "while the President may have authorized custody of the petitioners, it is the Secretary of Defense who is the legal custodian." Resp.'s Mot. at 4. Footnote 9, discussed *infra* at 9, simply does not support that proposition.

(DoJ), or other agencies unknown to Petitioners, as it has done in the past.[5] The Government takes the position that it has unfettered discretion to transfer detainees from Defense Department control. *See, e.g.,* Government's Brief Regarding Procedural Framework Issues at 43–46, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.C. Cir. Aug. 12, 2008) (Dkt. No. 58). This Court has indicated that nothing in its order to give thirty days' notice of transfer prevents Respondents from transferring detainees. (*See* Order dated July 10, 2008, Misc. No. 08-0442, at n.1.) The government has even appealed that order, implicitly asserting that it has a right to transfer detainees without even notifying the Court. (*See* Resp'ts' Notice of Appeal, filed July 25, 2008.) In light of these risks, only by including the President as a Respondent can Petitioners ensure that, regardless of any transfer, someone with ultimate authority over all United States agencies and the State Department remains available to provide relief.

## III. <u>Petitioners' Custodians Are Proper Respondents</u>

Respondents take the position that Petitioners' immediate custodians at Guantánamo Bay (the Commanders of Joint Task Force—GTMO and the Commander of the Joint Detention Operations Group of the Joint Task Force—GTMO) are not proper respondents on the habeas claims. This is contrary to the holding of the Supreme Court in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the federal habeas statute "contemplate[s] a proceeding against some person

---

[5] A number of detainees were previously transferred from CIA custody to DoD and are currently detained at Guantánamo. At least one Guantánamo detainee suspect was transferred from the DoJ to DoD. *See al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) (en banc) (noting the Government's dismissal of an indictment during criminal proceedings against defendant and an order signed by the President transferring the defendant to military custody). And at least one other detainee, Jose Padilla, after several years in military confinement, was transferred the other way, from DoD confinement to confinement under the DoJ. *Hanft v. Padilla,* 546 U.S. 1084, 1084 (2006).

who has the *immediate custody* of the party detained, with the power to produce the body of such party . . . that he may be liberated." *Id.* at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added by *Padilla*)). Under *Padilla*, Petitioners must, at minimum, name their immediate physical custodians or risk dismissal of their habeas claims.

Respondents argue that, under footnote 9 in *Padilla,* where "a petitioner is held abroad in a military context," the proper respondent is a "supervisory official of that custodian." (Resp'ts' Mot. at 4.) This misconstrues footnote 9, which states that "[w]e have long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Padilla*, 542 U.S. at 436 n.9 (citing, *inter alia*, *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)). [6]

It is clear that the purpose of the exception in footnote 9 of *Padilla* is to remove obstacles to a habeas petition in those circumstances in which the immediate custodians cannot be named as respondents because they are outside of the jurisdiction of U.S. courts. There is nothing in that footnote, or elsewhere in *Padilla*, that forecloses Petitioners from naming immediate custodians as respondents.

IV.  **The Petition Cannot Be Dismissed Because It Properly Names Respondents With Respect to Multiple Claims for Multiple Forms of Relief**

The Petitions and Complaints in these matters set out multiple counts, premised on violation of common-law and constitutional rights, treaties, customary international law, and statutory law. Aside from habeas relief, these counts seeks other remedies, including declaratory

---

[6]  The Supreme Court also cited for this proposition two cases in which the Secretary of Defense or Secretary of the Air Force were named as respondents for the habeas petitions of convicts detained in foreign countries. *See United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955); *Burns v. Wilson*, 346 U.S. 137 (1953).

and injunctive relief not limited to release.  Yet Respondents' Motion addresses only habeas relief, overlooking the necessity and propriety of naming Respondents to answer for other claims and grant other forms of relief.  Short of agreement to the Stipulations, there is simply no way to dismiss Respondents from claims for habeas relief without affecting the remainder of the Petitions and Complaints.  As Respondents, in their motion, do not seek dismissal of the remainder of the Petitions and Complaints, this provides further grounds for retaining all Respondents, and for the Court to deny their motion.

## V.     Conclusion

Respondents' Motion should be granted only if it is certain that the Secretary of Defense is the proper respondent and can effectuate all the relief the Court may order, including release of Petitioners.  Therefore, Petitioners respectfully request that Respondents' Motion be denied in its entirety unless Respondents agree to each of the Stipulations, in which case Respondents' motion to dismiss all Respondents other than the Secretary of Defense should be granted without prejudice.   A proposed order is submitted herewith.

Respectfully submitted,

Dated: October 30, 2008

/s/Jill M. Williamson
Jill M. Williamson, DC Bar No. 478469
Jonathan M. Fee, DC Bar No. 479579
Michael E. Ward, DC Bar No. 434624
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

*Counsel for Petitioners*

C. Rufus Pennington, III
MARGOL & PENNINGTON, PA
320 North First Street, Suite 600
Jacksonville Beach, FL 32250
(904) 355-7508

*Counsel for Petitioner Al Daini*

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2008, I caused the foregoing Petitioners' Memorandum of law in Opposition to Respondents' "Motion to Dismiss Improper Respondents" to be filed with the Court and served on the following counsel for Respondents through the CM/ECF system :

    Judry Laeb Subar
    Judry.Subar@usdoj.gov
    United States Department of Justice
    Civil Division – Federal Programs Branch
    20 Massachusetts Avenue, N.W.
    Washington, D.C. 20530

    Terry M. Henry
    Terry.Henry@usdoj.gov
    United States Department of Justice
    Civil Division
    20 Massachusetts Avenue, N.W.
    Washington, D.C. 20530

                            */s/ Jill M. Williamson*
                            Jill M. Williamson