UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: ) ) GUANTANAMO BAY ) DETAINEE LITIGATION ) ) ) | Misc. No. 08-442 (TFH) Civil Action Nos. 08-1085, 08-1207 | |

RESPONDENTS' RESPONSE TO "PETITIONER'S RESPONSE TO THE OCTOBER 3, 2008 ORDER TO SHOW CAUSE AND MOTION FOR MISCELLANEOUS RELIEF"

PRELIMINARY STATEMENT

Two habeas petitions have been filed on behalf of an individual detained as an enemy combatant at Guantanamo Bay. The Court has ordered attorney Scott L. Fenstermaker to show cause as to why his petition should not be dismissed as unauthorized. Mr. Fenstermaker has filed a response in which he sets forth the purported basis for his assertion that he is authorized to proceed on behalf of the detainee in this action. Mr. Fenstermaker also requests an evidentiary hearing at which the detainee could testify regarding his choice of counsel. While respondents take no position on the question of whether Mr. Fenstermaker is authorized to represent the detainee in this action, respondents oppose the request for an evidentiary hearing on the grounds that it is unnecessary to resolve the issue before the Court. Furthermore, the request is inappropriate in light of the harm to national security likely to result from the disclosure of classified information possessed by the detainee.

Respondents also oppose Mr. Fenstermaker's request that the Court issue an order granting him immediate access to Guantanamo Bay and use of the legal mail system in these cases.

-1-

## BACKGROUND

The petitioner in this case, Abd Al-Rahim Hussain Mohammed Al-Nashiri ("Al-Nashiri"), also known as Abdul Rahim Hussein Muhammed Ali Nashir,[1] is detained as an enemy combatant at Guantanamo Bay, and is identified by Internment Serial Number 10015. Petitioner is one of fourteen individuals who in September 2006 were transferred to Guantanamo Bay to the custody of the Department of Defense ("DoD") from the custody of the Central Intelligence Agency ("CIA"). *See* U.S. Department of Defense, Combatant Status Review Tribunals / Administrative Review Boards, http://www.defenselink.mil/news/Combatant_Tribunals.html (last visited Oct. 27, 2008). The CIA had previously held petitioner as part of a special, limited program operated by that agency to capture, detain (in secret, off-shore facilities), and interrogate key terrorist leaders and operatives in order to help prevent terrorist attacks. *See* President George W. Bush, Speech: President Discusses Creation of Military Commissions to Try Suspected Terrorists (Sept. 6, 2006) (attached as Exhibit 2) (acknowledging CIA program);[2] *see also* Declaration of Marilyn A. Dorn (Oct. 26, 2006) ¶¶ 7, 10, 16 ("Dorn Decl.") (attached as Exhibit 1) (discussing CIA program).[3] The importance of the program to national security interests cannot be overstated. Information obtained through the program has provided the United States with one of the most

---

[1] Petitioner's name is given as Ali Nashir in No. 08-cv-1085, but as Al-Nashiri in No. 08-cv-1207 and in D.C. Cir. No. 08-1007, petitioner's case pending in the Court of Appeals under the Detainee Treatment Act ("DTA").

[2] The text of the President's speech is available at http://www.whitehouse.gov/news/releases/2006/09/20060906-3.html (last visited Oct. 27, 2008).

[3] The Dorn Declaration was originally filed in *Khan v. Bush*, No. 06-cv-1690 (RBW) (D.D.C.).

useful tools in combating terrorist threats to the national security. *Id.* ¶ 11. It has shed light on probable targets and likely methods for attacks on the United States, has led to the disruption of terrorist plots against the United States and its allies, and has gathered information that has played a role in the capture and questioning of senior Al Qaeda operatives. *Id*. Many aspects of the terrorist detainee program remain classified as TOP SECRET/Sensitive Compartmented Information ("TS/SCI"). *Id*. ¶¶ 8, 10. For example, information such as where detainees have been held, the details of their confinement, interrogation methods, and other operational details constitute or involve TS/SCI information. *Id*. ¶ 8.

Under Executive Order 12958, as amended,[4] the anticipated severity of the damage to national security resulting from disclosure determines which of three classification levels is applied to information. If an unauthorized disclosure of information reasonably could be expected to cause damage to national security, that information may be classified as CONFIDENTIAL; serious damage may be classified as SECRET; and exceptionally grave damage may be classified as TOP SECRET. *Id.* § 1.2. Section 4.3 of Executive Order 12958 further provides that specified officials may create special access programs upon a finding that the vulnerability of, or threat to, specific information is exceptional, and the normal criteria for determining eligibility for access applicable to information classified at the same level are not deemed sufficient to protect the information from unauthorized disclosure. These special access programs relating to intelligence are called Sensitive Compartmented Information, or SCI, programs. *See* Dorn Decl. ¶ 9. As noted above, many aspects of the terrorist detainee program are classified at the TS/SCI level.

---

[4] *See* Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003).

Presently before the Court are two habeas petitions filed by attorneys claiming to represent Al-Nashiri. The first petition was filed by attorney Scott L. Fenstermaker on June 24, 2008, acting as next friend to Al-Nashiri pursuant to an alleged August 22, 2007 letter from the detainee. (No. 08-cv-1085, dkt. no. 1.) The second petition was filed a short time later by the Federal Public Defender for the District of Nevada, through attorney Paul Turner and other assistant federal public defenders.[5] (No. 08-cv-1207, dkt. nos. 1, 36.) Upon determining that the habeas petition filed by the Federal Public Defender was directly authorized by the detainee, and that Mr. Fenstermaker's petition was not, the Court issued an order on October 3, 2008, directing Mr. Fenstermaker to show cause as to why the petition filed in No. 08-cv-1085 should not be dismissed. (No. 08-cv-1085, dkt. no. 41; No. 08-cv-1207, dkt. no. 38.)

In his October 17, 2008 response to the order to show cause ("Fenstermaker Resp."), Mr. Fenstermaker claims that his authority to proceed with this action is evidenced by three letters that he received from petitioner, dated August 22, 2007, October 1, 2007, and May 27, 2008. Fenstermaker Resp. at 13. Mr. Fenstermaker submitted these letters for the Court's *in camera* review, as directed by the Court in its October 7, 2008 order granting his motion for an extension of time to respond to the order to show cause (No. 08-cv-1085, dkt. no. 45; No. 08-cv-1207, dkt. no. 40). In the event that these letters fail to convince the Court that petitioner wishes to be represented by Mr. Fenstermaker, he requests that the Court conduct an evidentiary hearing at

---

[5] Attorney Turner also represents Al-Nashiri in a pending action in the Court of Appeals seeking review of petitioner's designation as an enemy combatant under the DTA. No. 08-1007 (D.C. Cir.).

which petitioner could testify regarding his choice of counsel.[6] Fenstermaker Resp. at 18. Finally, Mr. Fenstermaker requests an order granting him immediate access to Guantanamo Bay to meet with petitioner and permission to access the legal mail system used by qualifying counsel in other Guantanamo habeas cases. *Id.* at 18-20.

In both habeas actions brought on behalf of Al-Nashiri, the Court first entered the standard habeas protective order governing counsel access to Guantanamo Bay detainees (No. 08-cv-1085, dkt. no. 17; No. 08-cv-1207, dkt. no. 9), but then, on respondents' motion, vacated the order pending its consideration of respondents' proposed protective order pertaining to TS/SCI information (No. 08-cv-1085, dkt. no. 24; No. 08-cv-1207, dkt. no. 20). As explained in respondents' motion (No. 08-cv-442, dkt. no. 264), such a protective order that deals with access to and management of TS/SCI information is necessary in the particularly sensitive context of cases on behalf of Guantanamo Bay detainees, like Al-Nashiri, who are former CIA detainees with knowledge of information classified as TS/SCI. A similar order has been entered in petitioner's pending action seeking Court of Appeals review of his designation as an enemy combatant under the DTA. No. 08-1007 (D.C. Cir. Feb. 12, 2008). Attorney Turner has received a TS/SCI security clearance in the context of that proceeding.

---

[6] Mr. Fenstermaker not only requests an evidentiary hearing on the question of whether he is authorized to represent Al-Nashiri in this habeas action, but also requests that the Court consider whether he represents the detainee "before the military commissions." Fenstermaker Resp. at 18. Respondents note that the issue of Mr. Fenstermaker's authority to proceed as Al-Nashiri's counsel during military proceedings is outside the scope of the Court's order to show cause. In addition, the Court is without jurisdiction to consider the issue. *See* 10 U.S.C. § 950j(b) (providing that courts generally lack jurisdiction "to hear or consider any claim or cause of action whatsoever . . . relating to the prosecution, trial, or judgment of a military commission . . . including challenges to the lawfulness of procedures of military commissions under this chapter").

## ARGUMENT

### I. Evidentiary Proceedings Would Be Inappropriate in the Present Circumstances and Are Not Necessary to Evaluate Mr. Fenstermaker's Claim That He Represents Petitioner.

Respondents take no position on the question of whether Mr. Fenstermaker may proceed as counsel for petitioner in this action. However, should the Court conclude that Mr. Fenstermaker's submissions fall short of establishing his authority to proceed on behalf of Al-Nashiri, the Court should end its inquiry and dismiss Mr. Fenstermaker's petition as unauthorized. An evidentiary hearing for the purpose of eliciting testimony from petitioner regarding his choice of counsel is unnecessary and inappropriate under the circumstances.

First, because of petitioner's involvement in the CIA program, it is likely that he possesses, and will be able to disclose, information that is classified at the TS/SCI level, such as detention locations and other operational details, or information that would warrant equivalent treatment or other special handling while petitioner remains in United States' custody. *See* Dorn Decl. ¶¶ 8, 10, 16. As explained in the Dorn Declaration, improper disclosure of operational details about the program, such as the locations of CIA detention facilities, would put United States' allies at risk of terrorist retaliation and betray relationships that are built on trust and are vital to efforts against terrorism. *See id.* ¶ 12; *see also* Declaration of Wendy M. Hilton (Mar. 28, 2006) ¶¶ 12-20 (attached as Exhibit 3) ("Hilton Decl.").[7] Improper disclosure of other operational details, such as interrogation methods, could also enable terrorist organizations and operatives to adapt their training to counter such methods, thereby obstructing the CIA's ability

---

[7] The Hilton Declaration was originally filed in *Khan v. Gates*, No. 07-1324 (D.C. Cir.), in opposition to a motion to unseal TS/SCI filings in that Court.

to obtain vital intelligence that could disrupt future planned terrorist attacks. *See* Dorn Decl. ¶ 13; Hilton Decl. ¶¶ 19-21. Because the appropriate and adequate protection of this information is imperative, any evidentiary proceeding involving petitioner must be conducted with myriad protections necessary to account for the potential of TS/SCI disclosure. At a minimum, the Court must ensure that such a proceeding does not take place in the presence of third parties, such as Fenstermaker, who have not obtained an appropriate TS/SCI security clearance.

In any event, evidentiary proceedings are unnecessary to resolve the conflicting claims being advanced by the attorneys seeking to represent petitioner. The Court should resolve the representation question based on the voluminous and probative materials the competing attorneys have already submitted. As the Court acknowledged in its order to show cause, the federal public defenders submitted their habeas petition with evidence that Al-Nashiri directly authorized the filing. In their October 28, 2008 response, the federal public defenders provided additional documentation, including another signed authorization from Al-Nashiri. As Mr. Fenstermaker makes clear in his response to the order to show cause, his claim of authority to represent Al-Nashiri is entirely based on three letters that he received from the detainee. Fenstermaker Resp. at 13. These letters, which appear to represent the extent of petitioner's interactions with Mr. Fenstermaker, *see generally* Declaration of Scott L. Fenstermaker (Oct. 16, 2008) ("Fenstermaker Decl."), have been submitted for the Court's *in camera* review. If the Court concludes that the various submissions of counsel do not sufficiently show that Mr. Fenstermaker has an existing representation relationship allowing him to pursue habeas relief on behalf of petitioner to the exclusion of Mr. Turner and the other federal public defenders, it would not be appropriate for the Court to order evidentiary proceedings to permit Mr.

Fenstermaker an opportunity to establish such a relationship or to interfere with other attorneys' efforts to represent petitioner.

Moreover, Mr. Fenstermaker has had ample opportunity to marshal evidence to support his authority to proceed in this action, and there is simply no merit to his claim that he has recently been barred from contacting petitioner by mail. Indeed, this claim is undercut by Mr. Fenstermaker's own submissions, which indicate that his correspondence was returned because of his insistence that the mail be treated as privileged attorney-client communication, even though he has not met the requirements and prerequisites for privileged access to petitioner. *See* Fenstermaker Resp., at Ex. E-G; *see also* Fenstermaker Decl. ¶¶ 22-25, 27-28. In any event, it is unclear how non-delivery of these items has impeded Mr. Fenstermaker's ability to acquire evidence of his purported authority to represent petitioner. Since Mr. Fenstermaker has failed to specify in his declaration the nature of the correspondence that was returned to sender, it is unclear whether those items were sent for the purpose of securing documentation from petitioner which would have shed light on counsel's authority to proceed in this action.

    **II.**    **The Court Should Deny the Request for an Order Compelling Respondents to Afford Mr. Fenstermaker Access to Petitioner and Use of the Legal Mail System**

If Mr. Fenstermaker is not authorized to proceed in this action, then there is simply no basis for permitting him to communicate with petitioner in a privileged manner or to seek relief on his behalf. An attorney who has no relationship with a detainee is not entitled to contact the detainee for the purpose of offering legal assistance to the detainee, to interfere with the efforts of other attorneys who represent or seek to represent the detainee, or for other reasons not rooted in any existing representation relationship. *Cf. Ukrainian-American Bar Ass'n v. Baker*, 893

F.2d 1374, 1380-82 (D.C. Cir. 1990) (rejecting bar association's assertion of a right to contact detained aliens for the purpose of offering legal services).

In the event the Court finds that a representation relationship exists, then, as with any other attorney representing Guantanamo detainees, Mr. Fenstermaker should not be permitted privileged access to petitioner outside the context and requirements of an appropriate protective order. No such order has yet been entered in this case. Thus, in these circumstances, the Court should enter respondents' proposed protective order, which sets forth special procedures to deal with the management and handling of TS/SCI information. The procedures require, *inter alia*, an appropriate (TS/SCI) security clearance and include requirements for proper handling and transmission of TS/SCI information. *See* Proposed TS/SCI Protective Order, *In re Guantanamo Bay Detainee Litigation*, No. 08-mc-442 (D.D.C. Aug. 18, 2008).[8] The procedures also require counsel to execute and submit a memorandum of understanding as a condition precedent to gaining privileged access to a Guantanamo detainee. *Id.* at Ex. A ¶ 1.

To the extent Mr. Fenstermaker is asking the Court to allow him to circumvent the procedures outlined in the proposed protective order in order to gain streamlined access to his alleged client, the request should be denied. Under no circumstances should the Court compel respondents to afford such access in a manner ungoverned by a protective order regime that suitably protects the highly sensitive information implicated in this case. The request for access is especially inappropriate given Mr. Fenstermaker's admission that he has not obtained a

---

[8] Typically, an attorney must apply for an appropriate security clearance through the Department of Justice, Litigation Security Division. *See* Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, ¶ II.C, *In re Guantanamo Bay Detainee Litigation*, No. 08-mc-442 (D.D.C. Sept. 11, 2008).

security clearance. *See* Fenstermaker Decl. ¶ 36 (stating that an application for a security clearance is pending in the DoD under some unspecified process not a part of this litigation); *see also Dep't of the Navy v. Egan*, 484 U.S. 518, 526-30 (1988) (noting that security clearance decisions are discretionary in nature and fall into a sphere of national security and foreign policy issues in which "courts traditionally have been reluctant to intrude upon the authority of the Executive").

## CONCLUSION

For the reasons stated above, respondents oppose the request for an evidentiary hearing and other relief contained in the response filed by Scott L. Fenstermaker.


Dated: October 31, 2008                    Respectfully submitted,

                                           GREGORY G. KATSAS
                                           Assistant Attorney General

                                           JOHN C. O'QUINN
                                           Deputy Assistant Attorney General

                                            */s/ Jonathan S. Needle*
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           ANDREW I. WARDEN
                                           JONATHAN S. NEEDLE
                                           Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Avenue N.W.
                                           Washington, DC  20530
                                           Tel:  (202) 305-0037
                                           Fax:  (202) 616-8470
                                           Attorneys for Respondents