IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

---

MOHAMMED ABDUL RAHMAN AL-SHIMRANI, *et al*
Detainee, Guantanamo Bay Naval Station
Guantanamo Bay, Cuba,
    Petitioner,

ALI ABDUL RAHMAN AL-SHIMRANI
as Next Friend of
Mr. Mohammed Abdul Rahman Al-Shimrani

v.                  Case No. 1:05cv02249-RMC

Hon. GEORGE W. BUSH
1600 Pennsylvania Avenue NW,
Washington, D.C. 20500,

Hon. ROBERT M. GATES
Secretary of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000,

ARMY BRIG. GEN. JAY HOOD
Commander, Joint Task Force-GTMO
JTF-GTMO
APO AE 09360; and

ARMY COL. MIKE BUMGARNER
Commander, Joint Detention
 Operations Group – JTF-GTMO
JTF-GTMO
APO AE 09360
    Respondents.

---

IN RE:
  GUANTANAMO BAY         Misc. No. 08-442-TFH
  DETAINEE LITIGATION

---

OPPOSITION TO "RESPONDENTS' MOTION TO
DISMISS IMPROPER RESPONDENTS"

1

# PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

Petitioner, through his attorneys, opposes Respondents' Motion to Dismiss Improper Respondents. In general, habeas cases must name the petitioner's immediate custodian, usually the warden of the prison where the petitioner is confined. In keeping with the court's ruling in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), petitioner has named the military officials who were determined to be responsible for his detention. Additionally, Petitioner has named the Secretary of Defense Robert M. Gates, whom the government concedes is a proper respondent, and President George W. Bush. As will be shown, the government's arguments as to why all respondents other than the Secretary of Defense should be dismissed are untenable.

## I. The President Is A Proper Respondent

The Supreme Court has noted that the President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). In *Jones*, the Court discussed multiple instances where sitting Presidents were compelled to comply with court orders. *Id*. at 705. For example, President Nixon produced tapes in response to a subpoena. *Id*. (citing *United States v. Nixon*, 418 U.S. 683, 715 (1974)). President Ford complied with an order to give a deposition in a criminal trial. *Id*. (citing *United States v. Fromme*, 405 F.Supp. 578 (E.D. Cal 1975)). President Clinton gave videotaped testimony in criminal proceedings. *Id*. (citing *United States v. McDougal*, 934 F.Supp. 296 (E.D. Ark. 1996. The Supreme Court explained in *Jones* that such orders have a long history:

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena duces tecum could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C. Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was

> obligated to comply with a subpoena commanding him to produce
> certain tape recordings of his conversations with his aides.

520 U.S. at 703–04 (footnote omitted). The Court noted that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Jones*, 520 U.S. at 704; *see also id.* at 705 ("In sum, [i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States.'") (brackets in original) (citations and internal quotations omitted)

There have also been numerous cases in which a sitting President has been a defendant or respondent, which courts have dealt with without indicating that the President was not a proper defendant or respondent. *Rasul v. Bush*, 542 U.S. 466 (2004), and *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), are two such cases involving Guantánamo detainees. *See also Clinton v. City of New York*, 524 U.S. 417 (1998); *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008); *Chem-Nuclear Sys., Inc. v. Bush*, 292 F.3d 254 (D.D. Cir. 2002).

Respondents do not mention any of the above authorities, and instead rely upon a case dating back to 1867 for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." (Resp.'s Motion at 3 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866))). However, the Court of Appeals for the District of Columbia Circuit has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested by Respondents. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the appeals court observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The *National Treasury* court held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not

3

formally issue the writ.) In *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive." *Id*. at 712 n.53.

Nor does *Franklin v. Massachusetts*, 505 U.S. 788 (1992) support Respondents' position. In that case, the Court merely raised a question as to the judiciary's authority to issue an injunction against the President, without deciding the issue. *See id.* at 802–03 (O'Connor, J. for the plurality). Respondents rely on dicta in Justice Scalia's concurrence, in which no other Justice joined, as to the reviewability of Presidential acts. This is certainly not controlling authority.

In fact, no authority Respondents cite bars Petitioner from naming the President as a proper respondent. The Supreme Court, in *Rumsfeld v. Padilla,* 542 U.S. 426 (2004), left open the issue of whether individuals higher up on the chain of command are proper respondents when the Petitioner is an alien, as is the case with the present Petitioner, Mr. Al-Shimrani, a Sauid national. *See id.* at 436 n. 8 (citing *Ahrens v. Clark*, 335 U.S. 188 (1948)).

*Al- Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), on which Respondents also rely*,* was decided by the Seventh Circuit before the Supreme Court's decisions in *Boumediene* and *Rasul,* and it is questionable whether a*l- Marri* continues to be viable in light of those decisions. In *al-Marri*, the Seventh Circuit ruled that only the immediate custodians were proper respondents in that case, "rather than the Director of the Bureau of Prisons, the Secretary of the Navy, the Chairman of the Joint Chiefs of Staff, the Attorney General, *the Secretary of Defense, or the President*." 360 F.3d at 708–09 (emphasis added). If the Secretary of Defense is a proper respondent here, as Respondents contend, then the President should be a proper respondent as well.

The President is also a proper respondent here because Respondents assert that Mr. Al-Shimrani is being held pursuant to the exercise of the President's executive power. Respondents have repeatedly claimed that the authority to detain those deemed enemy combatants at Guantánamo Bay arises from the President's Article II powers, and the President's authority to use all necessary and appropriate force under the Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). See Padilla, 542 U.S. at 431 (2004) ("[T]he President issued an order to Secretary of Defense Donald H. Rumsfeld designating Padilla an 'enemy combatant' and directing the Secretary to detain him in military custody. In support of this action, the President invoked his authority as 'Commander in Chief of the U. S. armed forces' and the Authorization for Use of Military Force Joint Resolution.")(citations omitted)(agreeing with the government's argument that an enemy combatant "is being detained 'pursuant to an Act of Congress'—the AUMF."). Given that the Executive purports to hold Petitioner pursuant to inherent Article II power, the President is an appropriate party.

Moreover, if the President is dismissed, then the government may try to evade this Court's authority simply by transferring Petitioner from the custody of the Department of Defense (DoD) to that of the Central Intelligence Agency (CIA), the Department of Justice (DoJ), or other agencies unknown to Petitioner, as it has done in the past.[1] Respondents take the position that they have unfettered discretion to transfer men imprisoned at Guantanamo from

---

[1] Indeed, it is well-documented that the government has already done so with Petitioners similar to Mr. Al-Shimrani. Al-Marri was transferred from criminal confinement under indictment by the Department of Justice to military confinement under the Department of Defense. *Al-Marri v. Pucciarelli,* 534 F.3d 213, 2008 WL 2736787, at 3-4 (4th Cir., July 15, 2008). Padilla, after several years in military confinement, was transferred the other way, from Department of Defense confinement to confinement under the Department of Justice. *Padilla v. Hanft,* 432 F.2d 582 (4th Cir. 2005), *reversed* 546 U.S. 1084 (2006).

5

Defense Department control. *See, e.g.,* Government's Brief Regarding Procedural Framework Issues at 43–46 (*Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D. Cir. Aug. 12, 2008) (Dkt. No. 58)**.** This Court has indicated that nothing in its order to give thirty days notice of transfer prevents Respondents from transferring detainees. (*See* Order dated July 10, 2008, Misc. No 08-0442, at n. 1.) Respondents have even appealed that order, implicitly asserting that it has a right to transfer prisoners at Guantanamo without even notifying the Court. (*See* Resp'ts' Notice of Appeal, filed July 25, 2008.) In light of these risks, only by including the President as a Respondent can Petitioner ensure that, regardless of any transfer, someone with ultimate authority over all United States agencies remains on the habeas petition to provide relief.

## II. <u>Petitioners' Custodians Are Proper Respondents</u>

Respondents take the position that Petitioner's immediate custodians at Guantánamo Bay (the Commanders of Joint Task Force—GTMO and the Commander of the Joint Detention Operations Group of the Joint Task Force—GTMO) are not proper respondents on the habeas claim. This is contrary to the holding of the Supreme Court in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the federal habeas statute "contemplate[s] a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party . . . that he may be liberated." *Id.* at 435 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added by *Padilla*)). Under *Padilla*, Petitioner must, at minimum, name his immediate physical custodians or risk dismissal of his habeas claim.

Respondents argue that, under footnote 9 in *Padilla,* where "a petitioner is held abroad in a military context," the proper respondent is a "supervisory official of that custodian." (Resp.'s Mot. at 4.) This misconstrues footnote 9, which states that, "[w]e have long implicitly recognized an exception to the immediate custodian rule in the military context where an

6

American citizen is detained outside the territorial jurisdiction of any district court." *Padilla*, 542 U.S. at 436 n.9 (citing, *inter alia*, *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)). [2] In *Braden* the Court held that, "where American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus, we have held, if only implicitly, that the petitioners' absence from the district court does not present a jurisdictional obstacle to the consideration of the claim." Braden, 410 U.S. at 498.

Thus, it is clear that the purpose of the exception in footnote 9 of *Padilla* is to remove obstacles to a habeas petition in those circumstances in which the immediate custodians cannot be named as respondents because they are outside of the jurisdiction of U.S. courts. There is nothing in that footnote, or elsewhere in *Padilla*, that forecloses the immediate custodians from being respondents.

Moreover, the circumstances set forth in footnote 9 of *Padilla* do not apply here because Petitioner is detained within this Court's territorial jurisdiction at Guantánamo Bay, which the Supreme Court described as "in every practical sense . . . not abroad; it is within the constant jurisdiction of the United States." *Boumediene v. Bush*, 128 S. Ct. 2229, 2261 (2008); *accord Rasul v. Bush*, 542 U.S. 466, 480 (2004) (concluding that the Naval Base at Guantánamo Bay was not an "extraterritorial" location, and therefore subject matter jurisdiction over aliens detained there could be exercised). For these reasons, the exception to the immediate custodian rule does not bar the naming of Petitioner's immediate custodians as respondents.

III. **The Secretary of Defense is a Proper Respondent**

---

[2] The Supreme Court also cited for this proposition two cases in which the Secretary of Defense or Secretary of the Air Force were held to be proper respondents for the habeas petitions of convicts detained in foreign countries. See *United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955); *Burns v. Wilson*, 346 U.S. 137 (1953).

7

The Government admits in its motion that the Secretary of Defense, Robert M. Gates, is a proper respondent.[3]

## IV. Conclusion

For the reasons discussed above the Government's motion should be denied and all respondents originally named in this suit should be retained.

Dated: New York, New York
      October 30, 2008.

    Respectfully submitted,
    Counsel for Petitioner
    _____/s/_____
    Martha Rayner (Pursuant to LCvR 83.20(g))
    (NY-MR-1423)
    Lincoln Square Legal Services
    Fordham University School of Law
    33 West 60th Street, 3d Floor
    New York, New York 10023
    Telephone: (212) 636-6934
    Fax: (212) 636-6923

---

[3] Respondent's Motion to Dismiss Improper Respondents at 1, In Re Guantanamo Bay Detainee Litigation, Misc. No. 08-0442 (D. D. C. Nov. 14, 2008)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE : | : | |
|    GUANTANAMO BAY | : | Misc. No. 08-442 (TFH) |
|    DETAINEE LITIGATION | : | |
| _____ | : | |
| | : | |
| **MOHAMMED ABDUL RAHMAN AL-SHIMRANI, et al,** | : | |
|    Petitioners/Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 1:05cv02249-RMC |
| | : | |
| **GEORGE W. BUSH, et al.,** | : | |
|    Respondents/Defendants. | : | |
| _____ | : | |

## ORDER

Upon consideration of the Respondents' Motion to Dismiss Improper Respondents and Petitioners' Memorandum of Law in Opposition thereto, it is hereby:

ORDERED that Respondents' Motion is DENIED in its entirety.


Dated: _____      _____
                                                                     Thomas F. Hogan
                                                                     United States District Judge