IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br>GUANTANAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-mc-0442 (TFH) |
| FAWZI KHALID ABDULLAH FAHAD<br>AL ODAH, et al.,<br>    Petitioner,<br>v.<br>GEORGE W. BUSH,<br>    President of the United States,<br>    et al.,<br>    Respondents. | Civil Action No. 02-cv-0828 (CKK) |
| SAIFULLAH PARACHA,<br>    Petitioner,<br>v.<br>GEORGE W. BUSH,<br>    President of the United States,<br>    et al.,<br>    Respondents. | Civil Action No. 04-cv-2022 (PLF) |
| HANI SALEH RASHID<br>ABDULLAH, et al.,<br>    Petitioners,<br>v.<br>GEORGE W. BUSH,<br>    President of the United States,<br>    et al.,<br>    Respondents. | Civil Action No. 05-cv-0023 (RWR) |
| ASIM BEN THABIT AL-KHALAQI,<br>    Petitioner,<br>v. | Civil Action No. 05-cv-0999 (RBW) |

| | |
|---|---|
| GEORGE W. BUSH, ) | |
|     President of the United States, ) | |
|     et al., ) | |
|         Respondents. ) | |
| _____) | |
| AMER MOHAMMON ) | |
| (MAHER EL FALESTENY), et al., ) | |
|     Petitioners, ) | |
|     v. ) | Civil Action No. 05-cv-2386 (RBW) |
| ) | |
| GEORGE W. BUSH, ) | |
|     President of the United States, ) | |
|     et al., ) | |
|         Respondents. ) | |
| _____) | |
| ALI AL JAYFI, et al. ) | |
|     Petitioners, ) | |
|     v. ) | Civil Action No. 05-cv-2104 (RBW) |
| ) | |
| GEORGE W. BUSH, ) | |
|     President of the United States, ) | |
|     et al., ) | |
|         Respondents. ) | |
| _____) | |
| ALKHEMISI, et al. ) | |
|     Petitioners, ) | |
|     v. ) | Civil Action No. 05-cv-1983 (RMU) |
| ) | |
| GEORGE W. BUSH, ) | |
|     President of the United States, ) | |
|     et al., ) | |
|         Respondents. ) | |
| _____) | |
| MOHAMMAD MUETY SHAABAN, et al. ) | |
|     Petitioners, ) | |
|     v. ) | Civil Action No. 05-cv-0892 (CKK) |
| ) | |
| GEORGE W. BUSH, ) | |
|     President of the United States, ) | |
|     et al., ) | |
|         Respondents. ) | |
| _____) | |
| BASARDH, ) | |
|     Petitioner, ) | |
|     v. ) | Civil Action No. 05-cv-0889 (UNA) |

|                                               |                                    |
|-----------------------------------------------|------------------------------------|
| GEORGE W. BUSH,<br>    President of the United States, et al.,<br>        Respondents. |                                    |
| AL MOHAMMED, et al.<br>        Petitioners,<br>v. | Civil Action No. 05-cv-0247 (HHK) |
| GEORGE W. BUSH,<br>    President of the United States, et al.,<br>        Respondents. |                                    |
| FARAJ,<br>        Petitioner,<br>v. | Civil Action No. 05-cv-1490 (PLF) |
| GEORGE W. BUSH,<br>    President of the United States, et al.,<br>        Respondents. |                                    |
| ABDULAH ALHAMIRI,<br>        Petitioner,<br>v. | Civil Action No. 08-cv-1231 (CKK) |
| GEORGE W. BUSH,<br>    President of the United States, et al.,<br>        Respondents. |                                    |
| KAHLID SAAD MOHAMMED,<br>        Petitioner,<br>v. | Civil Action No. 08-cv-1230 (RMC) |
| GEORGE W. BUSH,<br>    President of the United States, et al.,<br>        Respondents. |                                    |
| MONSOOR MUHAMMED ALI QATTAA,<br>        Petitioner,<br>v. | Civil Action No. 08-cv-1233 (ESH) |

|  |  |  |
|---|---|---|
| GEORGE W. BUSH, | ) | |
| President of the United States, et al., | ) | |
| Respondents. | ) | |
| MUIEEN ADEEN JAMAL ADEEN ABD AL F. ABD AL SATTAR, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 08-cv-1236 (JDB) |
| GEORGE W. BUSH, | ) | |
| President of the United States, et al., | ) | |
| Respondents. | ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS IMPROPER RESPONDENTS**

Respondents filed identical motions in each of the above-captioned matters, which moved this Court to dismiss all improper respondents from these actions, including, *inter alia*, the President of the United States and, with the exception of the Secretary of Defense, all Department of Defense ("DOD") respondents. A separate opposition was filed in each of the above-captioned cases; these oppositions raised similar, if not identical, objections. In the interests of judicial efficiency, Respondents are filing this consolidated reply in all of the above-captioned cases.

The proper respondent to a habeas petition traditionally is the person who has immediate custody over the petitioner (although the Supreme Court has found an exception that applies here, under which the Secretary of Defense is the proper respondent). Clearly, the President does not have immediate custody over these petitioners. Moreover, this Court lacks authority to order

4

the President to grant the petitioners' request for habeas relief. Consequently, the President should be dismissed as a party to these actions.

In these particular cases, the Secretary of Defense, in his official capacity, exercises legal control over these petitioners. Because the Supreme Court's exception to the traditional rule of immediate custody for extraterritorial detentions applies here, the Secretary of Defense is the proper respondent. Finally, as any additional DOD respondents are redundant and superfluous to these proceedings, they should be dismissed.

**ARGUMENT**

**I. THE PRESIDENT IS AN IMPROPER RESPONDENT BECAUSE HE LACKS IMMEDIATE CUSTODY OVER THESE PETITIONERS**

Rule 28 U.S.C. § 2242 directs an applicant for a writ of habeas corpus to detail "the name of the person who has custody over him . . . ."[1] In traditional habeas litigation, the proper respondent is the person with immediate custody over the petitioner, for example "the warden of the facility where the prisoner is being held," and "not . . . some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see also id.* (custodian is the person "with the ability to produce the prisoner's body before the habeas court."); *al-Marri v. Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004) ("[F]or an inmate of a brig, jail, or prison the 'custodian' is the person in charge of that institution."). That rule traditionally applies in the context of military

---

[1] Technically, the habeas statute does not apply. Because the Military Commissions Act eliminates statutory habeas for these petitioners in its entirety, and is unconstitutional only to the extent that the Suspension Clause mandates habeas review in this context of its own force, the only appropriate procedures are those required by the Constitution itself. *Boumediene v. Bush*, 128 S.Ct. 2229, 2278 (2008) (Souter, J., concurring) ("Subsequent legislation eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all."). Nevertheless, Respondents cite cases arising under the habeas statute as they provide persuasive authority on the issue presented.

5

detentions.[2] *See Padilla*, 542 U.S. at 447 (the rule that applies "including in the context of military detentions: Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody . . . he should name his warden as respondent."). Obviously, that person is not the President of the United States.[3]

Almost all petitioners contend that dismissing the President would allow the Government to evade this Court's authority simply by transferring his custody to another agency, *e.g.*, the Central Intelligence Agency (CIA). This argument actually conflates the immediate custodian rule with the corollary 28 U.S.C. § 2241(a) jurisdictional rule, which limits a court's granting of habeas relief to "within [its] respective jurisdiction[]." Although Guantanamo Bay is not physically within this Court's geographic jurisdiction, under *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), the Court has jurisdiction over these habeas cases brought by persons detained at Guantanamo Bay, including Petitioners' cases. *See id.* at 2274 ("that there is no jurisdictional bar to the District Court's entertaining petitioners' [habeas] claims"). Petitioners' argument, therefore, amounts to the following: in the event that a petitioner is transferred to another U.S. Government agency, this Court might lose jurisdiction in the same way a court could lose 28

---

[2] As Respondents discuss in Section III below, in these cases, because an exception from the traditional rule applies, such that the Secretary of Defense is properly named, the naming of other DOD officials is superfluous and they should be dismissed.

[3] Petitioner Paracha (No. 04-cv-2022) asserts he should be allowed to add the Attorney General as a respondent. Paracha Opp., 08-mc-442 Dkt#790, pp. 8-9. Petitioner's citation to *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986), is inapposite as Petitioner's whereabouts and immediate custodian are neither unknown nor relevant to a determination of a proper respondent in this combatancy status context. Moreover, as stated in Respondents' Motion, the Attorney General lacks legal control over Petitioner and is unnecessary to these actions. Resp. Mot., 08-mc-442 Dkt#723, pp. 4-5. Petitioner Paracha, as well as several other petitioners, also have argued that Respondents' motion cannot be granted in light of the petitioners' non-habeas claims pending before the Court. *See e.g. Id.;* Bakush, Shamrany & Hussain Opp., 08-mc-422 Dkt#824, p. 5; Sattar Opp., 08-mc-442 Dkt# 848, p. 5, n.3. Such argument fails, because, notwithstanding *Boumediene*, the Military Commissions Act legitimately withdraws from this Court's jurisdiction any non-habeas claims concerning a Guantanamo detainee's detention, transfer, treatment, trial, or conditions of confinement. Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7(b), 120 Stat. 2600 (codified at 28 U.S.C. § 2241(e)(2)). *See In re Guantanamo Bay Detainee Litigation*, ___ F. Supp. 2d ___, No. 08-mc-0442, 2008 WL 4294305 (Sept. 22, 2008) (Hogan, J.) (§ 2241(e)(2) survives *Boumediene*).

U.S.C. § 2241(a) jurisdiction over a traditional habeas petitioner whose physical custody is transferred to a different judicial district. *See al-Marri*, 360 F.3d at 710 ("Appellate courts regularly dismiss actions under § 2241 filed outside the judicial district that contains the place of the prisoner's detention."). However, that argument fails because under *Boumediene* the Court could still exercise jurisdiction over the custodian of persons held by the U.S. Government at Guantanamo Bay. *See also Rasul v. Bush*, 542 U.S. 466, 478-79 (2004) ("'the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody,' a district court acts 'within [its] respective jurisdiction' within the meaning of § 2241 as long as 'the custodian can be reached by service of process.'") (internal citation omitted). By contrast, under Petitioners' reasoning, whether a person was held at Guantanamo Bay or domestically, the President would be a necessary respondent to maintain jurisdiction in the event of a highly speculative transfer to another U.S. agency or facility.

Indeed, some petitioners assert that they have not merely named the President as their "future custodian,"[4] but their arguments reveal that is exactly what they are trying to do – asking the Court to keep the President as a respondent to preserve prospective, and not current, jurisdiction. *See e.g.* Alhamiri Opp., 08-mc-442 Dkt# 847, p. 6 ("On a more practical level, if the President is dismissed, then the Government can evade this Court's authority by simply transferring a detainee from the custody of the" DOD to a separate, distinct executive agency.). Such petitioners are encouraging the Court to keep the President as a respondent so that the Court can maintain *its* jurisdiction in the event a petitioner is transferred to another U.S.

---

[4] *See e.g.,* Al-Khalaqi Opp., 08-mc-00442 Dkt#773, p. 6; Shaaban Opp., 05-cv-892 Dkt#82,,p. 6; Basardh Opp., 05-cv-889 Dkt#75, p. 6; Alhamiri Opp., 08-mc-442 Dkt#847, p. 7; Mohammad Opp., 08-mc-442 Dkt# 850, pp. 6-7; Qattaa Opp., 08-mc-442 Dkt#851, pp. 6-7; Al Sattar Opp. at 7; *see also Abdullah* & *Mohammon* Petr's' Opp., 08-cm-442 Dkt#794, p. 2 (noting that the President is a proper party because he has claimed the power to detain and transfer detainees).

Government agency, and not because it is necessary to the resolution of these cases. Clearly, adding respondents to a habeas petition to protect *a court's jurisdiction* is inapposite to habeas law and would eviscerate the immediate custodian rule, even in a domestic setting. And, as explained above, under *Boumediene* the Court has jurisdiction over these habeas cases brought by persons detained at Guantanamo Bay regardless of whether the President is a respondent. The Court should not credit Petitioners' argument.

Some petitioners attempt to salvage their objections by contending that petitioners' custody at Guantanamo Bay was authorized by the President. There is a distinct difference, however, between the President having authority to authorize custody and actually executing physical custody over a detainee. *See e.g.*, *al-Marri*, 360 F.3d at 708 ("True, the President authorized al-Marri's custody by designating him as an enemy combatant, but there is a difference between authorizing and exercising custody."). As the Supreme Court examined in *Padilla*, to hold that the person who authorizes physical custody is a proper respondent is directly at odds with the immediate custodian rule. *Padilla*, 542 U.S. at 435-39 ("If the [] immediate custodian rule applies in this case, Commander Marr – the equivalent of the warden at the military brig – is the proper respondent, not Secretary Rumsfeld."). The Supreme Court went on to reject Padilla's argument that the immediate custodian rule was "flexible" and had been relaxed in cases involving "prisoners detained for other than federal criminal violations." *Id.* at 437 (internal quotation marks omitted). Arguing that neither the habeas statute nor case law supported such a determination, the Court concluded:

> We have never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction. Nor can we do so here just because Padilla's physical confinement stems from a military order by the President.

*Id.* at 439. Indeed, to hold that the proper respondents for habeas relief are those who authorize custody would open a Pandora's box; conceivably any person responsible for authorizing custody could be named as a respondent. *See e.g.*, *al-Marri*, 360 F.3d at 711 (Detailing that under such a conclusion "the prosecutor, the trial judge, or the governor would be named as respondents in post-conviction proceedings under § 2241 and § 2254; yet no one believes that to be a sound understanding of these statutes."). Consequently, the proper respondent to a habeas petition traditionally is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242. Again, that person is not the President. *See Id.* at 708 ("the President could not be called al-Marri's custodian even if he were otherwise an appropriate litigant.").

## II. THE COURT LACKS JURISDICTION TO ORDER THE PRESIDENT TO GRANT HABEAS RELIEF; THEREFORE, THE PRESIDENT SHOULD BE DISMISSED AS A RESPONDENT

Separately, but just as fundamentally, federal courts lack jurisdiction over the President in regard to the performance of his official duties that are executive, political, or discretionary. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality) ("the District Court's grant of injunctive relief against the President himself is extraordinary[;] . . . in general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'") (citing *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867)). Respondents are not arguing that a President is *absolutely* immune from the judicial process; as explained in Respondents' motion, the Supreme Court has left open whether the President may be ordered to perform a purely "ministerial" duty.[5] *Franklin*, 505 U.S. at 802. But, in general, the President may not be ordered to perform executive acts "at the behest of the Judiciary." *Id.* at 827 (Scalia J. concurring in part

---

[5] A ministerial duty is typically defined as a duty "to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Johnson*, 71 U.S. (4 Wall.) 475, 498 (1867) (cited in *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality).

and concurring in the judgment). Instead, suits contesting actions of the Executive Branch, including the President, "should be brought against the President's subordinates." *al-Marri*, 360 F.3d at 708; *see also Franklin*, 505 U.S. at 802 ("injunctive relief against executive officials like the Secretary of Commerce is within the courts' power"); *id.* at 828 (Scalia J. concurring in part and concurring in the judgment) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive . . . .").[6]

Clearly, the designation of these petitioners as enemy combatants is not a decision lacking in discretion. At a minimum, the President has been granted broad discretionary authority by Congress in the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001), including the authorization to use "all necessary and appropriate force" against "nations, organizations, or persons" associated with the September 11, 2001, terrorist attacks. Such a delegation of authority, where the President has been authorized to use significant independent authority to defend the nation, is certainly not ministerial. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) ("in time of war," congressional legislation "must often accord to the President *a degree of discretion and freedom* . . . which would not be admissible were domestic affairs alone involved") (emphasis added). Nor does the President's authority to detain Petitioners under his Article II powers fall into the category of ministerial. *See Padilla v. Rumsfeld*, 352 F.3d 695, 712 (2nd Cir. 2003) ("We agree that great

---

[6] Petitioner Paracha (04-cv-2022) cites to *Abu Ali v. Ashcroft*, 350 F.Supp. 2d 28, 44 (D.C. 2004) as explicitly stating the President can be named as a respondent in a *habeas corpus* proceeding. Paracha Opp. at 6. Several other Petitioners cite to *Ali* for the proposition that any custodian of Petitioners' can properly be named. *See e.g.* Shaaban Opp. at 4; Alhamiri Opp. at 5. *Ali*, however, did not concern the issue of the President or another individual as a proper habeas respondent. The case included a request for issuance of a writ of mandamus to the President under the Hostage Act (22 U.S.C. § 1732) to require him to demand the release of an American citizen detained in foreign custody. 350 F.Supp. 2d at 65-67. The Court rejected the request for such a writ. *Id.*

deference is afforded the President's exercise of his authority as Commander-in-Chief. . . . We also agree that whether a state of armed conflict exists against an enemy to which the laws of war apply is a political question for the President, not the courts.") reversed on other grounds, 542 U.S. 426 (2004).

As the Supreme Court recognized in *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality), by enacting the AUMF, Congress expressly authorized the President as Commander-in-Chief to capture and detain enemy combatants for the duration of the conflict with the Taliban and al-Qaida. In practice, the designation of an enemy combatant is a determination based upon factual findings by the President as to the appropriate exercise of war powers against nations, entities and individuals. *See, e.g., Padilla*, 542 U.S. at 431 ("The President also made several factual findings explaining his decision to designate Padilla an enemy combatant."). Once those findings are made, the President has discretion regarding the detention of an enemy combatant. *Id.* ("[T]he President concluded that it is consistent with U.S. law and the laws of war for the Secretary of Defense to detain Mr. Padilla as an enemy combatant.") (internal citation and quotation marks omitted). To grant these petitioners habeas relief, the Court would have to order declaratory or injunctive relief against the President that would impact actions far from ministerial.

In their Oppositions, several petitioners cite primarily to three cases for the proposition that a court's inability to enjoin the duties of the President for non-ministerial actions, as settled in *Mississippi v. Johnson*, has been narrowed or abridged. These cases, however, do nothing of the sort. In *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), the focus was on whether the President is absolutely immune from the compulsory process of a court, in that case a grand jury

subpoena *duces tecum* to produce certain evidence. Contrary to Petitioners' argument, the *Sirica* Court did not limit the reach of *Johnson*. The Court found that the President lacked judicial immunity where, "the President [took] personal custody of the [subpoenaed evidence] and [was] thus himself a party to the present action," *id.* at 709, as opposed to the finding in *Johnson* that the "bill of injunction [at issue] was an attempt to coerce a discretionary, as opposed to ministerial, act of the Executive," *id.* at 712, n.53. In reaching its holding, the Court acknowledged that previous decisions which found "that the Executive Branch enjoys an unreviewable discretion in many areas of 'political' or 'executive' administration" were "true," but those decisions were distinguishable as they were "irrelevant to the issue of presidential immunity from judicial process" as presented in *Sirica*. *Id.* at 712.

Likewise, the Court in *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974), also distinguished itself from *Johnson*. The Court found the issue in question, whether appellants were entitled to have the President put into effect a pay raise, was a purely *ministerial* act, which did not present a political or discretionary question. *Id.* at 602-03. The Court explained that *Johnson* specifically left open the question as to "whether a court can compel the President to perform a ministerial act," and then differentiated *Nixon* from other cases that found the judiciary has no jurisdiction to enjoin the President for duties that are executive, discretionary, or political in nature. *Id.* at 606-15. As the Court explained, "[b]ecause this suit presents neither a nonjusticiable political question nor a constitutional challenge to a statute giving the President discretionary duties, *Mississippi v. Johnson* does not require dismissal of this suit." *Id.* at 614.

The third case, *Clinton v. Jones*, 520 U.S. 681 (1997), does not even come close to raising the jurisdictional issues that are central to Petitioners' claims of habeas relief from the President. *Jones* focused on the jurisdictional limits of a civil cause of action against a sitting President for actions he committed prior to assuming office. As the Court explained:

> Whatever the outcome of this case, there is no possibility that the decision will curtail the scope of the official powers of the Executive Branch. The litigation of questions that relate entirely to the unofficial conduct of the individual who happens to be the President poses no perceptible risk of misallocation of either judicial power or executive power.

*Id.* at 701. Although in reaching its decision the Court did state that "the President is subject to judicial process in appropriate circumstances," *id.* at 703, it did not in any way curtail the jurisdictional limits on enjoining the President for official actions while in office.[7]

In sum, these cases do nothing to limit the general principle that a court lacks power to enjoin or order Presidential actions that are non-ministerial.[8] The Court, therefore, lacks jurisdiction and should conclude that the President is an improper respondent and dismiss him.

---

[7] Petitioner Al-Khalaqi (No. 05-cv-0999) argues that *Clinton* and other cited cases stand for the proposition that there are "multiple instances where sitting Presidents were compelled to comply with court orders." Al-Khalaqi Opp. at 4; *see also* Odah Opp., 08-mc-442 Dkt#392, p. 2 (citing *Clinton* as "holding that the President can be subject to court order in appropriate circumstances."). These cases, however, are discrete exceptions to the rule and are distinguishable from the present situation in both scope and ordered relief; typically the President was only required to provide evidence in regard to a criminal proceeding. *See e.g.*, *United States v. Fromme*, 405 F.Supp. 578 (E.D.Cal.1975) (President Ford ordered to give a deposition in a criminal trial); *United States v. McDougal*, 934 F.Supp. 296 (E.D.Ark.1996) (President Clinton ordered to give a deposition in a criminal trial). While the Supreme Court itself acknowledged such cases in *Franklin,* it recognized that they were exceptions that did not swallow the rule. *See Franklin*, 505 U.S. at 803-04. ("[W]e have held that the President may be subject to a subpoena to provide information relevant to an ongoing criminal prosecution, *United States v. Nixon*, 418 U.S. 683 [] (1974), but in general this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.") (internal citations and quotation marks omitted). Such cases are irrelevant here, as any relief granted by the Court would impede official actions and duties by the President that are executive, political, and discretionary in nature.

[8] Some petitioners also cite to *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), for the proposition that an order directed to the President has "significance," even if it is unenforceable. *See e.g.* Basardh Opp. at 8; Mohammed Opp. at 8. Such a characterization of *Merryman*, however, is overbroad. *Merryman* focused on Brigadier-General George Cadwalader's refusal to obey a habeas order on the grounds that President Lincoln had authorized him to suspend the writ at his discretion. *Id.* at 147-48. Chief Justice Taney, sitting as a circuit justice, explained that such power rested with Congress, not the President. *Id.* at 148-52. The question here, of course, is not whether Congress or the President may suspend the writ of habeas corpus, but who is a proper respondent in these cases.

## III. THE SECRETARY OF DEFENSE CAN EFFECTUATE ANY APPROPRIATE RELIEF; THEREFORE, ANY ADDITIONAL DEPARTMENT OF DEFENSE RESPONDENTS ARE SUPERFLUOUS AND SHOULD BE DISMISSED

Respondents have already conceded that the Secretary of Defense can fully effectuate any appropriate relief that might be ordered by the Court. Resp. Mot., 08-mc-442 Dkt#723, p. 3. The question left remaining is whether it is appropriate for the Secretary of Defense, as Petitioners' legal custodian, to remain the sole DOD respondent. If the Court answers that in the affirmative, the other DOD respondents should be dismissed.

In *Padilla*, the Supreme Court acknowledged a long standing, implicit exception to the immediate custodian rule. A petitioner in a military detention can name supervisory officials, up to and including the Secretary of Defense, as respondents in cases of extraterritorial detentions. *Padilla*, 542 U.S. at 436, n.9 (citing *United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955) (courts-martial convict detained in Korea named Secretary of the Air Force as respondent); *Burns v. Wilson*, 346 U.S. 137 (1953) (court-martial convicts detained in Guam named Secretary of Defense as respondent)). Such an exception applies in these cases where Petitioners' physical detention is outside of the United States.[9] As explained in Respondents' motion, the Secretary of Defense exercises legal control over petitioners and can effectuate any appropriate relief. Therefore, it is superfluous to name other DOD personnel as respondents.[10]

To the extent petitioners cite to *Rasul v. Bush* and *Boumediene v. Bush*, they miss the point. Both *Rasul* and *Boumediene* addressed whether the Court had jurisdiction over habeas

---

[9] In contrast, Padilla was detained in the Naval Brig in Charleston, South Carolina. *Rumsfeld v. Padilla*, 542 U.S. 426, 432 (2004) (Kennedy, J., concurring). Likewise, al-Marri was also detained at the same facility at the time of his habeas petition. *al-Marri v. Rumsfeld*, 360 F.3d at 708. The factual situations in both cases, which determined that the respondents should be named pursuant to the immediate custodian rule, are, therefore, distinguishable from the current actions.

[10] By analogy, Congress provided in the Detainee Treatment Act ("DTA") that only the Secretary of Defense should be named as the respondent in cases challenging enemy combatant status determinations. Pub.L. 109-163, Div. A, Title XIV, § 1405(e)(5), 119 Stat. 3476 (Jan. 6, 2006) ("The Secretary of Defense shall be the named respondent in any appeal to the United States Court of Appeals for the District of Columbia Circuit under this subsection.").

cases brought on behalf of detainees at Guantanamo Bay under or in light of the statutory schemes that existed at the time of each decision, an issue Respondents are not challenging in this motion. *Rasul* determined that "a district court acts within [its] respective jurisdiction within the meaning of § 2241 as long as the custodian can be reached by service of process.") *Rasul*, 542 U.S. at 478-79 (internal citation and quotation marks omitted); *see also id.* at 481 ("Aliens held at the base, no less than American citizens, are entitled to invoke the federal courts' authority under § 2241."). *Rasul* and *Boumediene*,[11] however, did not address the precise definition of a proper respondent for a detainee's habeas petition and, to that extent, they are irrelevant to this motion.[12]

## IV. RESPONDENTS HAVE NOT WAIVED THEIR OBJECTIONS TO IMPROPERLY NAMED RESPONDENTS AND ARE NOT ESTOPPED FROM FILING A MOTION TO DISMISS IMPROPER RESPONDENTS

Petitioner Paracha (No. 04-cv-2022) argues that Respondents have waived any objections to the naming of the respondents in his petition, because Respondents did not challenge service of process or this Court's jurisdiction over the named respondents via a Rule 12(b) motion. Paracha Opp., 08-mc-442 Dkt#790, p. 4. However, Petitioner's argument is misplaced. Respondents are not challenging in this motion service of process or personal jurisdiction with

---

[11] Petitioner Basardh (No. 05-cv-0889), among others, argues that the extraterritorial exception is inapplicable in the instant case, because *Boumediene* "seems" to hold that Guantanamo Bay is not outside of the territorial jurisdiction of this Court. Basardh Opp. at 3-4. However, when analyzing whether the Constitution had effect in Guantanamo Bay so as to extend to Guantanamo detainees rights under the Suspension Clause, the Court considered what it characterized as the United States' "complete and total" control over the area. *Boumediene v. Bush*, 128 S.Ct. at 2262. That analysis is separate and distinct from whether Guantanamo is within the territorial jurisdiction of this Court within the meaning of 28 U.S.C. § 2241. Guantanamo Bay is plainly not within the territorial jurisdiction of the United States, much less this judicial district.

[12] Petitioner Al-Khalaqi (No. 05-cv-0999) also argues that it is unclear whether the immediate custodian rule applies, because he claims there is a conflict of law between the extraterritorial detention exception detailed in *Padilla* and the holding in *Rasul*. Al-Khalaqi Opp. at 7-10. But, as explained here, Petitioners misconstrue *Rasul*. No conflict exists because the designation of a supervisory official as a respondent under the *Padilla* extraterritorial detention exception is distinct from the *Rasul* holding that granted the Court jurisdiction over Guantanamo Bay detainees, just as the 28 U.S.C. § 2242-based immediate custodian rule is distinct from the 28 U.S.C. § 2241(a) jurisdictional rule. Thus, as Petitioners' physical detention is outside of the United States, it is appropriate for the Secretary of Defense to be designated the respondent here.

respect to these improper respondents. Rather, the basis of Respondents' motion is a challenge to the propriety of naming these respondents in Petitioners' habeas claim. This challenge is not waived pursuant to Fed. R.Civ. Proc. 12(h)(1), as Petitioner contends, even if that Rule applied here,[13] and can be brought at this time.

Additionally, some petitioners claim that Respondents are estopped from setting forth objections to improperly named respondents, because, in some cases, the filing of the motion occurred years after the petitioners' claims were filed. *See e.g.* Faraj Opp., 08-mc-442 Dkt#834, p. 9; Al-Mohammed Opp., 08-mc-442 Dkt#836, p. 9. Petitioners do not cite any authority in support of their claim of estoppel and do not set forth any facts to establish such claim. To the contrary, the facts demonstrate that it was reasonable and appropriate for Respondents to file their Motion to Dismiss Improper Respondents at this time due to the course of events in the Guantanamo Bay detainee litigation – more specifically, the jurisdictional limbo that only recently ended with the decision in *Boumediene v. Bush*. Additionally, the coordinated proceeding before this Court was initiated only a few months ago and is the proper forum to address the issue, which is common to almost all Guantanamo cases.

Thus, Respondents have not waived their objections to improperly named respondents and are not estopped from bringing their Motion to Dismiss Improper Respondents.

## CONCLUSION

For the reasons stated above, Respondents' Motion to Dismiss Improper Respondents should be granted.

---

[13] The Federal Rules of Civil Procedure do not necessarily apply to statutory habeas petitions, let alone constitutional habeas claims such as these cases. *See* Fed. R.Civ. P. 81(a)(4); Section 2255 Habeas Rule 12; *Padilla*, 542 U.S. at 452; *see also Boumediene,* 128 S.Ct. at 2277 (petitioners are entitled to "fundamental" habeas rights; *Boumediene* "does not address the content of the law that govern petitioners' detention"); *id*. at 2278 ("[L]egislation eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all.") (Souter, J., concurring).

Dated: October 31, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

 /s/ *Kathryn C. Mason*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
SCOTT M. MARCONDA
KATHRYN C. MASON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 616-9193
Fax:  (202) 616-8470
Attorneys for Respondents