Cleared for Public Filing by the CSO

FILED WITH
COURT SECURITY OFFICER
9/11/08
DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE:
GUANTANAMO BAY
DETAINEE LITIGATION

Misc. No. 08-442 (TFH)

---

KHAN v. BUSH

Civil No. 06-CV-1690 (RBW)

---

## MOTION FOR LEAVE TO PROCEED *EX PARTE*

**INTRODUCTION**

The brief accompanying this motion provides a detailed roadmap of Petitioner's litigation strategy. As a matter of general principle, courts routinely grant *ex parte* review in proceedings that threaten to reveal litigants' case theories to their opponents. Accordingly, Petitioner respectfully requests leave to file the attached brief under seal to prevent the Government from discovering its litigation strategy and thereby gaining an inappropriate advantage.[1]

### I. THE UNDERLYING BRIEF REVEALS CRITICAL ASPECTS OF PETITIONER'S LITIGATION STRATEGY

The attached brief opposing the Government's proposed protective order describes Petitioner's litigation strategy in great detail. As such, the brief would be of immense value to the Government in frustrating Petitioner's attempt to demonstrate that he is not an enemy combatant and therefore has not been lawfully held in Government custody for the past five years. The brief identifies the individuals in Government custody that counsel for Petitioner

---

[1] Undersigned counsel requested the consent of Respondents to this Motion for Leave to Proceed *Ex Parte* by email sent on the morning of September 10, 2008. As of the time of filing Respondents' counsel had not responded to our request.

hopes to interview. It details the information he expects them to provide and, of even greater use to the Government, explains why this information is vital to Petitioner's habeas petition. The unique circumstances of those individuals, indefinitely confined by the Government at Guantanamo Bay and almost entirely at its mercy, further heighten the danger to Petitioner's case posed by the Government's knowledge of the contents of the brief. Granting the Government access to the brief will provide the Government with an unfair advantage in the ensuing litigation and seriously prejudice Petitioner.

## II. PETITIONER SHOULD NOT BE FORCED BY CIRCUMSTANCE TO REVEAL HIS LITIGATION STRATEGY TO THE GOVERNMENT

Proceedings that threaten to prematurely reveal litigation strategies and thus prejudice litigants are generally conducted *ex parte* to guarantee effective adversarial litigation. Both federal and state courts as well as Congress and numerous state legislatures have recognized in a number of contexts the importance of shielding theories of prosecution and defense from premature disclosure to adversarial parties. Because the protection guaranteed by *ex parte* review is vital to ensure fairness when privileged litigation theories are at stake, it should be granted in the proceeding at hand, wherein Petitioner would otherwise have to reveal his litigation strategy in order to effectively oppose the Government's proposed protective order.

Courts have expressed the principle that *ex parte* proceedings provide an appropriate means of protecting the litigation strategies of both prosecutors and defendants by allowing discovery requests to be made or justified *ex parte*. As one court, allowing a request for a subpoena duces tecum to proceed *ex parte*, explained,

> There are strong policy reasons in favor of an *ex parte* procedure... a party would have to detail its trial strategy or witness list in order to convince a court [to issue the subpoena]. If a full adversary hearing was required... a party would be forced to reveal this information to the opposing side, a result that would occur even if a court declined to issue the subpoena.

2

*United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (granting the prosecutor a subpoena duces tecum, returnable pre-trial, after an *ex parte* hearing). Many other courts have agreed. *See, e.g., United States v. Beckford*, 964 F. Supp. 1010, 1014-31 (E.D. Va. 1997) (discussing subpoena duces tecum at length and concluding that "forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the Government places an unconstitutional limitation on the defendant's right to compulsory process"); *United States v. Florak*, 838 F. Supp. 77 (W.D.N.Y. 1993) (granting the defendant a subpoena duces tecum, after an *ex parte* hearing, for documents to be produced at a suppression hearing); *United States v. Edwards*, 142 F.R.D. 177 (M.D. Fla. 1992) (granting the defendant a subpoena duces tecum, returnable at trial, after an *ex parte* hearing).

In the Classified Information Procedures Act (CIPA) context, courts have routinely permitted defendants to make *ex parte* submissions in order to establish the relevance, materiality, and/or admissibility of classified information without prematurely divulging the theory of the defense to the government. *See, e.g., United States v. Clegg*, 740 F.2d 16, 17 (9th Cir. 1984) (district court "allowed defendant to submit in camera ex parte and affidavit setting out in detail why the ... information [requested in discovery] was material to the preparation of the defense"); *United States v. Libby*, 429 F. Supp. 2d 18, 26 (D.D.C. 2006) (allowing defendant to submit *ex parte* a document outlining theory of defense, to enable court independently to examine redactions in a document submitted by the government to determine if redacted material would be relevant to defense); *United States v. Poindexter*, 727 F. Supp. 1470, 1479 n.16 (D.D.C. 1989) (allowing submission explaining relevance of discovery to be made *ex parte* so that defendant would not have to "reveal to the prosecution the theories of his defense"); *United States v. North*, 698 F. Supp. 316, 321 (D.D.C. 1988) (allowing *ex parte* hearing to enable

3

defendant's counsel to explain to court why certain government documents should be discoverable, in light of theory of defense, "without disclosure [of defense strategy] to Independent Counsel").

Congress too has recognized the importance of "prevent[ing] the possibility that an open hearing may cause a defendant to reveal his defense," in the context of 18 USC § 3006A(e)(1). H.R. Rep. No. 88-864 (1963), *reprinted in* 1964 U.S.C.C.A.N. 2990, 2990. Under § 3006A(e)(1), indigent defendants apply *ex parte* for court funding of "investigative, expert, or other services." 18 USC § 3006A(e)(1). According to Congress, "the manifest purpose of requiring that the [§ 3006A(e)(1)] inquiry be *ex parte* is to insure that the defendant will not have to make a premature disclosure of his case." H.R. Rep. No. 88-864 (1963). Many state legislatures have likewise written similar *ex parte* proceedings into statute. *See, e.g.*, Cal. Penal Code § 987.9 (2008); Kan. Stat. Ann. § 22-4508 (2007); Minn. Stat. § 611.21 (2008); Nev. Rev. Stat. Ann. § 7.135 (2007); N.Y. County Law § 722-c (2008); S.C. Stat. § 16-3-26(C) (2007); and Tenn. Code Ann. § 40-14-207(b) (2008).

Federal courts interpreting and applying 18 USC § 3006A(e)(1) have reiterated the importance of the use of closed hearings to protect litigation strategies. *See e.g., United States v. Abreu*, 202 F.3d 386, 390 (1st Cir. 2000) (finding no ambiguity in the need for *ex parte* hearing, despite relaxed evidentiary rules at sentencing); *Marshall v. United States*, 423 F.2d 1315 (10th Cir. 1970) (overturning a conviction on the grounds that the defendant's § 3006A(e)(1) hearing was adversarial rather than *ex parte* and that the government used information gathered at that hearing to impeach the defendant and locate a new witness).

Numerous state courts, without resort to statute, have similarly acknowledged the seriousness of premature exposure of litigation strategies by mandating *ex parte* review. *See,*

4

*e.g., Ex Parte Moody*, 684 So.2d 114, 120 (Ala. 1996) (Disclosure of the defense's trial strategy would impair the defendant's counsel.); *State v. Ballard*, 333 N.C. 515, 522, 428 S.E.2d 178, 183 (1993) ("A hearing out of the presence of the prosecutor protects the defendant's ... defense strategy and enables him to put forward his best evidence in support of a motion that, if granted, might give him a reasonable chance of success, but if denied could devastate his defense."); *Brooks v. State*, 385 S.E.2d 81, 82 (Ga. 1989), *cert denied*, 494 U.S. 1018 (1990) (affirming the trial court's decision to grant the defendant an *ex parte* hearing to protect his theory of the case). The Texas Court of Criminal Appeals well expressed the issues posed by open, adversarial pre-trial hearings that threaten to lay bare a litigant's strategy:

> The problem with requiring the showing [of need for expert services] to be shared with the State at the pretrial stage is that it compels a defendant to disclose to the State his defensive theories or "work product." . . . In essence, if an indigent defendant is not entitled to an *ex parte* hearing on his *Ake* motion [assessing the need for expert services], he is forced to choose between either forgoing the appointment of an expert or disclosing to the State in some detail his defensive theories or theories about weaknesses in the State's case. . . . We decline to hold that in order for an indigent defendant to avail himself of one of the "basic tools of an adequate defense," he may be compelled to disclose defensive theories to the prosecution.

*Williams v. State*, 958 S.W.2d 186, 193-94 (Tex. Crim. App. 1997).

In a related context, the California Supreme Court endorsed the use of sealed supporting affidavits to protect litigation strategies when defendants seek disclosure of the personnel records of police officers. *Garcia v. Superior Court*, 42 Cal. 4th 63 (Ca. 2007). Because the application process for such disclosure potentially required the defendant to reveal his theory of the case, *Garcia* recognized the "inherent discretion [of courts] to allow [such] documents to be filed under seal." *Id.* at 71-72. Though the sealed filings resulted in a somewhat less informed adversarial debate, the court held that the accused's interest in protecting his trial strategy was of greater consequence. *Id.* at 77.



The fair trial rationale driving *Garcia*, CIPA and subpoena duces tecum jurisprudence, and § 3006A(1)(e) hearings and their judicially and legislatively-created state analogues is also manifested in Federal Rule of Criminal Procedure 17(b), which allows indigent defendants to apply for subpoenas *ex parte* to "shield the[ir] theory of... defense from the prosecutor's scrutiny." *United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir. 1973). Rule 17(b) was amended in 1966 to reconcile a disparity in which defendants with financial means were able to pay to have blank subpoenas issued while those without were forced to petition the court, in the process "reveal[ing] many of the theories of their defense to the prosecution." *Id.* at 505. Prior to the 1966 amendment, Judge J. Skelly Wright castigated the rule for "present[ing] an indigent with Hobson's choice: either make no defense or disclose his case to the Government before his trial." *Smith v. United States*, 312 F.2d 867, 871 (D.C. Cir. 1962) (concurring in part and dissenting in part).

**CONCLUSION**

In opposing the Government's proposed protective order, Petitioner is presented with the same Hobson's choice faced by Judge Wright's indigent defendant. The Government's proposed order threatens to compromise his ability to litigate effectively; but to fight that order, he must reveal to his opponent the details of his strategy, similarly compromising his ability to litigate effectively. The weight of precedent and practice, described above, indicates that sealed filings and *ex parte* proceedings are a just and oft-used means of mitigating the same sort of Hobson's choice faced by Petitioner. Because the Government has already presented its argument for the proposed protective order, it will not be seriously prejudiced by *ex parte* review of Petitioner's responding brief. Accordingly, in the interest of fair and effective proceedings and to avoid the

disclosure of his litigation strategy, Petitioner respectfully requests that the Court review the underlying brief *ex parte*.

Dated: September 11, 2008

                                                           Respectfully submitted,

                                                           _____/s/_____
                                                      J. Wells Dixon (pursuant to LCvR 83.2(g))
                                                      Gitanjali S. Gutierrez (pursuant to LCvR 83.2(g))
                                                      Shayana Kadidal (D.C. Bar No. 454248)
                                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                                      666 Broadway, 7th Floor
                                                      New York, NY 10012
                                                      Tel: (212) 614-6423
                                                      Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2008, I caused the foregoing Motion for Leave to Proceed *Ex Parte* to be filed with the Court and served on counsel for Respondents listed below by causing an original and five copies to be deposited with the Court Security Office.

> Terry M. Henry
> Senior Trial Counsel
> Civil Division, Federal Programs Branch
> U.S. DEPARTMENT OF JUSTICE
> 20 Massachusetts Ave. NW
> Washington, DC 20530
> Tel: (202) 514-4107


_____/s/_____
J. Wells Dixon