

FILED WITH THE
COURT SECURITY OFFICER
CSO:
DATE:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY ) | |
| DETAINEE LITIGATION ) | Civil Action No. 1:05-0569 (JR) |

**OPPOSITION TO GOVERNMENT'S
MOTION TO DISMISS "IMPROPER" RESPONDENTS**

In a motion filed on October 14, 2008 (Misc. No. 08-442, dkt. 723; Civil No. 05-569, dkt. 126), the government asks the Court to dismiss with prejudice all named respondents except the Secretary of Defense. For the reasons explained below, petitioner Mohamedou Ould Slahi hereby asks the Court to deny the government's motion without prejudice to its renewal at the conclusion of the hearing on his case.

The named respondents in Mr. Slahi's case are George W. Bush, Donald Rumsfeld, Army Brigadier General Jay Hood, and Army Colonel Brice Gyurisko, all of whom were named in their official capacities. While Mr. Slahi's case is principally a petition for habeas corpus, there are a number of other claims for relief in his petition, including requests for declaratory relief relating to the denial of his rights under the Convention Against Torture, the Geneva Conventions, customary international humanitarian law, the Alien Tort Statute, and the Administrative Procedure Act (Civil No. 05-569, dkt. 1). Mr. Slahi expects the evidence produced in court to support declaratory judgments against all of the four named parties or their

successors as substituted pursuant to Fed. R. Civ. P. 25(d).[1] Dismissing these respondents at this point before discovery has been undertaken and before any hearing has been held would be inconsistent with the rationale for declaratory judgments and would foreclose relief to which Mr. Slahi is entitled.

The correct respondent in most habeas corpus actions is the person with immediate custody of the petitioner. See 28 U.S.C. 2842 and the Rules Governing Section 2254 Cases in the United States District Courts. This is almost invariably the warden of a state or federal correctional institution.

> The default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official. See, *e.g., Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996); *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992); *Blango v. Thornburgh*, 942 F.2d 1487, 1491-1492 (10th Cir. 1991) (*per curiam*); *Brennan v. Cunningham*, 813 F.2d 1, 12 (1st Cir. 1987); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986) (*per curiam*); *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2nd Cir. 1976); *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945); *Jones v. Biddle*, 131 F.2d 853, 854 (8th Cir. 1942). No exceptions to this rule, either recognized or proposed, see *post*, at 454, 159 L. Ed. 2d, at 540 (Kennedy, J., concurring), apply here.

*Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The difficulty here is that in the *ad hoc* scheme of incarceration which the government rushed to put into place at Guantanamo Bay it has never been clear exactly who stands in the position closest to that of a warden. As evidence is produced at Mr. Slahi's habeas hearing, it will become clearer whether Army Brigadier General Jay Hood and Army Colonel Brice Gyurisko in fact performed this function.

---

[1] Fed. R. Civ. P. 25(d) provides: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of an order does not affect the substitution."

Where a habeas petitioner is detained outside the territorial jurisdiction of any district court, the petition may name as respondents the "supervisory officials" who control custody. *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 44 (D.D.C. 2004); *see also Rumsfeld v. Padilla*, 542 U.S. at 438 n.9 (citing *United States* ex rel. *Toth v. Quarles*, 350 U.S. 11 (1955), and *Burns v. Wilson*, 346 U.S. 137 (1953)). The government asserts that this exception applies in this case, and concedes that the Secretary of Defense is therefore a proper respondent with full power to provide habeas relief. It does not follow, however, that all other supervisory officials should be dismissed. Nothing in the caselaw requires habeas petitioners held at Guantanamo Bay to name the fewest possible government officials as respondents. Indeed, this Court has stated that where the exception to the "immediate custodian" rule applies, "the petitioner may name as respondents *any of his custodians*," *Abu Ali*, 350 F. Supp. 2d at 44 (emphasis added), including both the immediate custodians and the Secretary of Defense.[2]

If the government is correct that this extraterritorial detention exception to the usual rule applies to Mr. Slahi's case, then nothing should prohibit his naming the President as a respondent under that same exception. The government itself notes that the President "may have authorized custody of the prisoners."[3] Gov't Motion at 4. More tellingly, the government claims that its

---

[2] *See Gherebi v. Bush*, 338 F. Supp. 2d 91, 95 (D.D.C. 2004) (holding that, under the *Padilla* exception, Guantanamo detainees may name the Secretary of Defense as a habeas respondent).

[3] The Government's claim that the President is not "the legal custodian" and thus is an improper respondent, relying on *al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), *see* Gov't Motion at 4, is baseless. In *al-Marri*, the Seventh Circuit stated that only persons "exercising" custody, rather than those "authorizing" custody, are proper habeas respondents, and for this reason excluded the President and the Secretary of Defense as proper respondents. 360 F.3d at 708-09. Not only does this position contradict prior and subsequent Supreme Court precedent, *see Padilla v. Rumsfeld*, 542 U.S. 426, 438 n.9 (2004); *Burns v. Wilson*, 346 U.S. 137 (1953), as well as the Government's own theory, *see* Gov't Motion at 4-5, but even under the Seventh

authority to detain Mr. Slahi and the other Guantanamo prisoners derives from the President's Article II powers and the power delegated to the President to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001).

Those claims to Presidential power over the Guantanamo prisoners resolve the issue of whether the President is an appropriate respondent in these habeas actions. Contrary to the government's claims, naming the President as a respondent in habeas actions is nothing new. *See, e.g., Boumediene v. Bush*, 128 S. Ct. 2229 (2008); *Rasul v. Bush*, 542 U.S. 466 (2004); *Belbacha v. Bush*, 520 F.3d 452 (2008); *Qassim v. Bush*, 466 F.3d 1073 (D.C. Cir. 2006); *Adem v. Bush*, 425 F. Supp. 2d 7 (D.D.C. 2006). The Supreme Court and lower courts have not criticized or even remarked on the naming of the President as a respondent in these cases.

In seeking to dismiss the President as a respondent, the government relies chiefly on an 1867 case for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." Gov't Motion at 3 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498–99 (1867)). Far from supporting the government's argument, that case -- in which the State of Mississippi attempted to enjoin the entire post-war Reconstruction program -- merely restates the familiar doctrine that courts do not adjudicate political questions. *See, e.g., National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974) (holding that *Mississippi v. Johnson* did not bar a court from issuing a writ of mandamus to the President to effect a pay raise owed to certain federal employees).[4] Modern authorities make clear that the

---

Circuit's logic, the President, as a supervisory official of Petitioners' custodians, clearly "exercises" custody over them. In any event, *al-Marri* is not binding on this Court.

[4] The other case cited by the Government for this proposition, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), merely questioned the judiciary's authority to issue an injunction against the President, without deciding the issue. *See id.* at 802–03.

President "is subject to judicial process in appropriate circumstances." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). As the Supreme Court explained in *Jones*,

> Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena *duces tecum* could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703-04 (footnote omitted); *see also United States v. Nixon*, 418 U.S. 683 (1974). The Supreme Court also observed that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Jones*, 520 U.S. at 704.

Finally, retaining the President as a respondent allows the Court to preserve jurisdiction over these proceedings should the government decide to transfer Mr. Slahi from the custody of the Secretary of Defense to another executive department, as it has done in other cases. At least one terrorism suspect was transferred from Department of Justice custody to Department of Defense custody when the Government found it convenient to do so. *See Al-Marri v. Pucciarelli*, 534 F.3d 213, 217 (4th Cir. 2008) (en banc) (noting government's dismissal of an indictment during criminal proceeding against defendant and order signed by President transferring defendant to military custody). And at least one terrorism suspect was transferred from the Department of Defense to the Department of Justice, also at the government's convenience, and to the consternation of a Court of Appeals. *See Padilla v. Hanft*, 432 F.3d 582 (4th Cir. 2005) (denying government's motion to transfer military detainee to civilian authorities for trial, after the Court had previously given government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006).

Mr. Slahi himself was transferred at the direction of the U.S. from Mauritania to Jordan for months of incarceration there, and then from Jordan to Department of Defense custody. The government continues to take the position that it has unfettered discretion to transfer detainees from the control of the Department of Defense to other countries. Given the expressed desire of senior U.S. officials (and President-elect Obama) to close the Guantanamo detention facilities,[5] such a transfer between agencies and custodians is not unlikely.

For these reasons, the Court should deny the government's motion to dismiss any of the respondents at this time.

Dated: November 10, 2008

Respectfully submitted,

*/s/ Sylvia Royce*

Law Office of Sylvia Royce
Sylvia Royce, *pro bono*
DC Bar Number 924035
5505 Connecticut Avenue NW #340
Washington, DC 20015
Tel: (202) 362-3445
Fax: (202) 686-4271
sylvia_royce@hotmail.com

FREEDMAN BOYD HOLLANDER
GOLDBERG & IVES P.A.
Nancy Hollander, *pro bono*
Theresa M. Duncan, *pro bono*
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 842-9960
(505) 842-0761 (facsimile)
nh@fbdlaw.com
TMD@fbdlaw.com
Counsel for Petitioner

---

[5] *See* Myers, Steven Lee, "Bush Decides to Keep Guantánamo Open," N.Y. TIMES 10/20/08, *available at* http://www.nytimes.com/2008/10/21/washington/21gitmo.html.