IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE:<br>GUANTANAMO BAY<br>DETAINEE LITIGATION | ) ) ) ) ) ) | Misc. No. 08-442 (TFH) |
| KHALED A.F. AL ODAH, *et. al.*,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH,<br>President of the United States, *et al.*,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 02-0828 (CKK) |

**RESPONDENTS' MOTION TO DISMISS HABEAS PETITIONS WITHOUT
PREJUDICE OR, ALTERNATIVELY, TO HOLD PETITIONS IN ABEYANCE
PENDING COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

On October 21, 2008, petitioners Fouad Mahmoud Al Rabiah, a/k/a Fouad Mahmoud Hasan Al Rabia, (ISN 551) and Fayiz Mohammed Ahmen Al Kandari (ISN 552), two of the four petitioners in the above captioned case, were formally charged with having violated the laws of war under the Military Commissions Act of 2006, 10 U.S.C. §§948a-950w (the MCA). These petitioners now face the prospect of trial by a military commission; a trial convened pursuant to an Act of Congress in which petitioners will be guaranteed an impartial judge and jury, 10 U.S.C. § 949f, the presumption of innocence until proven guilty beyond a reasonable doubt, 10 U.S.C. § 949*l*, the assistance of defense counsel, 10 U.S.C. § 949c, the right to be present, 10 U.S.C. 949d(b), the right to discovery (including the right to exculpatory evidence), 10 U.S.C. § 949j, the right to take depositions, id., the right to call witnesses, id., and a full panoply of other

substantive and procedural rights that are carefully described in the MCA. Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, see 10 U.S.C. § 948a(1), a determination made in the context of the commission's robust, adversarial proceedings. If petitioners are ultimately convicted, they may seek review in the Court of Appeals for the District of Columbia Circuit, as a matter of right, of the legal and factual bases for the initial unlawful enemy combatancy determination, and for the conviction itself. See Khadr v. United States, 529 F.3d 1112, 1118 (D. C. Cir. 2008). Because petitioners have been charged and are facing the prospect of trial before a military commission, the Court should dismiss their respective habeas petitions without prejudice or hold them in abeyance pending the completion of military commission proceedings. To do so would prevent interference with the autonomous military commission system created by Congress, and would promote the appropriate and efficient use of judicial and party resources at a time when hundreds of Guantanamo habeas petitions must be adjudicated as promptly and efficiently as possible.[1]

Given that petitioners have been criminally charged, there is nothing unusual about requiring them to first exhaust their respective criminal proceedings before seeking habeas relief. That is the norm in American jurisprudence. See 28 U.S.C. § 2254; Younger v. Harris, 401 U.S. 37 (1971); Schlesinger v. Councilman, 420 U.S. 738 (1975). Moreover, there is some overlap between the issues presented in petitioners' habeas petitions and their military commission cases – issues that will be fully vetted in their respective criminal proceedings and, upon any

---

[1] The cases of petitioners Fawzi Khalid Abdullah Fahad Al Odah and Khalid Abdullah Mishal Al Mutairi are unaffected by this motion.

conviction, on appeal as of right to the United States Court of Appeals for the District of Columbia Circuit. As such, just as a habeas court may not properly interfere with ongoing military commission proceedings, see Hamdan v. Gates, 565 F. Supp. 2d 130 (D.D.C. 2008), the Court also should properly abstain from consideration of petitioners' habeas cases pending resolution of their criminal charges before the military commission. Indeed, given the volume of Guantanamo habeas cases pending in the district court, judicial and party resources would be far better spent addressing the cases of petitioners who have not been criminally charged, and whose cases will not be heard in the adversarial system of trials and judicial review specifically authorized by Congress in the Military Commissions Act. Respondents, therefore, respectfully request that petitioners' habeas cases be dismissed without prejudice or held in abeyance pending resolution of the military commission proceedings.[2]

## BACKGROUND

On September 11, 2001, Usama Bin Laden and his terrorist network, al Qaeda, operating out of Taliban-controlled Afghanistan, attacked the United States. Nearly three thousand Americans were killed in what was the worst attack on American soil by a foreign aggressor in our nation's history. On September 18, 2001, Congress adopted the Authorization for the Use of Military Force (the AUMF), which authorized the President to use "all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001" and those who harbored the attackers. Authorized for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224

---

[2]Respondents conferred with petitioners' counsel via telephone November 25, 2008, pursuant to Local Rule 7(m). Petitioners' counsel opposes the motion.

(2001). Within weeks, American forces were deployed in Afghanistan.

In 2006, Congress enacted the MCA, establishing a detailed regime governing the establishment and conduct of military commissions. See 10 U.S.C. §§ 948a-950p. The MCA provides for the trial by military commission of "unlawful enemy combatants," 10 U.S.C. § 948c, defined in part as any person who "has engaged in hostilities or who has purposefully and materially supported hostilities against the United States . . . who is not a lawful enemy combatant." 10 U.S.C. § 948(1). A military commission is made up of at least five members who are military officers, 10 U.S.C. §§ 948i, 948m, and is presided over by a military judge, 10 U.S.C. § 948j, the same judges who preside over courts-martial.

As defendants under the MCA, petitioners are guaranteed a full panoply of substantive and procedural due process rights, including the right to have military defense counsel appointed, 10 U.S.C. § 948k, the right to retain private civilian counsel, 10 U.S.C. § 949c, the right to an impartial jury, 10 U.S.C. § 949f, the presumption of innocence until proven guilty beyond reasonable doubt, 10 U.S.C. § 949*l*, the right to be present, 10 U.S.C. § 949d(b), the right to discovery (including a right to exculpatory evidence), 10 U.S.C. § 949j, the right to take depositions, id., and the right to call witnesses, id. Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, see 10 U.S.C. § 948d, a determination made in the context of the commission's robust, adversarial proceedings.

If convicted, petitioners may invoke a four-step appellate review process. First, any adverse judgment will be reviewed automatically by the military commission's convening authority, who may lower but not increase the judgment or sentence. 10 U.S.C. § 950b. Then,

appeal may be taken as of right to the Court of Military Commission Review, a panel of three military judges. 10 U.S.C. § 950f. Following that, petitioners may again appeal as of right to the United States Court of Appeals for the District of Columbia Circuit. 10 U.S.C. § 950g(a)-(c). Lastly, petitioners may seek discretionary review by the United States Supreme Court via a petition for a writ of certiorari. 10 U.S.C. § 950g(d). Notably, appeal to the Court of Appeals for the District of Columbia includes review of the legal sufficiency of the evidence supporting the conviction and "whether the final decision was consistent with the standards and procedures specified in this chapter" and with "the Constitution and the laws of the United States." 10 U.S.C. § 950g(a)-(c).

Charges were sworn against petitioners October 21, 2008,[3] and are currently under review by the Convening Authority prior to referral to a military commission. The Convening Authority is the entity that determines whether to refer criminal charges to a military commission for trial. Under the MCA and the Manual for Military Commission, criminal charges are initiated by the swearing of charges against the defendant. See Manual for Military Commissions Rule 307. The charges are then referred to the Convening Authority for disposition. Military Commissions Rule 401. The Convening Authority may dispose of the charges by dismissing any or all of them or referring some or all of the charges to a military commission for trial. Id. "The jurisdiction of a military commission over an individual",

---

[3] A copy of petitioner Al Rabiah's Charge Sheet is attached as Exhibit A. A copy of petitioner Al Kandari's Charge Sheet is attached as Exhibit B. As indicated on each of the Charge Sheets, charges have been sworn against petitioners pursuant to Rule 307 of the Rules for Military Commissions found in the Manual for Military Commission. See http://www.defenselink.mil/news/commissions manual.html. Under Rule 202(c) of that Manual, "[t]he jurisdiction of a military commission over an individual attaches upon the swearing of charges."

however, "attaches upon the swearing of charges." Id. Rule 202(c).

Each petitioner was charged with two offenses: Providing Material Support for Terrorism in violation of 10 U.S.C. § 950v(b)(25) and Conspiracy in violation of 10 U.S.C. § 950v(b)(28). Exhibit A at 3-4; Exhibit B at 3. In particular, petitioner Al Rabiah is charged with traveling between Kuwait and Afghanistan for the purpose of meeting with Usama bin Laden, providing currency/funds to Usama bin Laden, and soliciting currency/funds from individuals in Kuwait for the purpose of giving money to al Qaeda. Exhibit A at 3. Additionally, petitioner Al Rabiah is charged with managing an al Qaeda supply depot at Tora Bora, Afghanistan, at which he distributed supplies to al Qaeda fighters. Id. at 4. Petitioner Al Kandari is charged with vising the al Farouq training camp and providing instruction to the al Qaeda members and trainees present at the camp, serving as an advisor to Usama bin Laden, and producing recruitment audio and video tapes that encouraged others to join al Qaeda and participate in jihad. Exhibit B at 3.

## ARGUMENT

**I.   Because Criminal Charges Are Pending In The Military Commission Context, The Court Should Abstain From Consideration Of Petitioners' Habeas Cases At This Time.**

Habeas "is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). Thus, the Supreme Court has "recognized that 'prudential concerns,' such as comity and the orderly administration of criminal justice, may 'require a federal court to forgo the exercise of its habeas corpus power.'" Munaf v. Geren, 128 S. Ct. 2207, 2220 (2008) (citations omitted). Indeed, the "orderly administration of criminal justice" usually requires federal courts to decline to consider a habeas petition prior to criminal trial, and instead require a petitioner to exhaust his remedies in the criminal process before seeking habeas relief. The same result is proper in this

context, where petitioner has been criminally charged and is awaiting trial in a military commission.

There is, of course, nothing unusual or anomalous about exhaustion requirements in the context of habeas review. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) (the "exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)"); see also Gusik v. Schilder, 340 U.S. 128, 131-32 (1950) ("The policy underlying that rule [that a habeas court will not interfere when a state court provides a remedy] is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts."). Boumediene itself confirmed the well-established requirement that "defendants in courts-martial [must] exhaust their military appeals before proceedings with a federal habeas corpus action." 128 S. Ct. 2229, 2274 (2008). Here, because petitioners are awaiting criminal trial before a military commission, it is entirely appropriate for the Court to require exhaustion of remedies in that criminal setting, which includes a right to appeal to the Court of Appeals for the District of Columbia Circuit, before entertaining a habeas petition. See Boumediene, 128 S. Ct. at 2268 (noting the requirement that state prisoners "exhaust adequate alternative remedies before filing for the writ in federal court" because defendants were provided "with a fair, adversary proceeding").

In Ex parte Royall, for example, the Supreme Court established – through the exercise of its own equitable discretion – the principle that federal habeas courts should generally require exhaustion of the criminal process. 117 U.S. 241, 250-51 (1886). There, the prisoner, who was awaiting trial on charges that he had violated a Virginia statute, alleged that the statute was unconstitutional; however, the Supreme Court held that, based on principles of comity, dismissal

7

was appropriate.  Id. at 252 (recognizing "the forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of the other, is a principle of comity, with perhaps no higher sanction that the utility which comes from concord").  Since its holding in Ex parte Royall, the Supreme Court's jurisprudence has mandated deference to criminal tribunals, pursuant to the doctrine of comity, where as here, the petitioner has an adequate remedy at law and will not suffer irreparable harm from having to proceed with the criminal trial.  Younger, 401 U.S. at 43-45 (recognizing the "longstanding public policy against federal court interference with state court proceedings" in part because "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); see also Councilman, 420 U.S. at 756-58 (holding that "federal courts will normally not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted" given the deference owed to congressional judgment and the "practical considerations common to all exhaustion requirements").

These same principles of comity extend to the military commission proceedings involving petitioners.  Particularly given that the military commissions are duly authorized by Congress and that Congress has specifically prohibited collateral challenges to the miliary commission process, see 10 U.S.C. §§ 950g, 950j, these same considerations of comity apply with even greater force, and require dismissal without prejudice, or holding petitioners' cases in abeyance until the completion of military commission proceedings.  See Councilman, 420 U.S. at 738; New v. Cohen, 129 F.3d 639, 643 (D.C. Cir. 1997) (federal court must give "due respect

8

to the autonomous military judicial system created by Congress"); Hamdan, 565 F. Supp. 2d at 137 ("Where both Congress and the President have expressly decided when Article III review is to occur, the courts should be wary of disturbing the judgment."); Khadr, et. al. v. Bush, et. al., 2008 WL 4966523 at *4 (D.D.C. Nov. 24, 2008) (Bates, J.) (Guantanamo military commission system due comity "because it provides that petitioner 'is to face a military commission . . . designed . . . by a Congress that . . . acted according to guidelines laid down by the Supreme Court.'") (quoting Hamdan, 565 F. Supp. 2d at 136).

It is well-established that the "trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'" Hamdi v. Rumsfeld, 542 U.S. 507, 518 (2004) (plurality). The Supreme Court has long recognized not only the authority to hold combatants for the duration of ongoing hostilities, but the established "practice of trying, before military tribunals without a jury, offenses committed by enemy belligerents against the law of war." Ex Parte Quirin, 317 U.S. 1, 41 (1942). An "important incident to the conduct of war is the adoption of measures by the military command not only to repel and defeat the enemy, but to seize and subject to disciplinary measures those enemies who in their attempt to thwart or impede our military effort have violated the law of war." Id. at 28-29. As the Supreme Court explained, "[u]nlawful combatants are . . . subject to capture and detention, but in addition they are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful." Id. at 31. See also id. at 29 (asking whether it is "within the constitutional power of the national government to place petitioners upon trial before a military commission" and concluding that it is).

Through the MCA, Congress has invoked this well-settled power to try detainees accused

of violating the laws of war before military commissions. In doing so, Congress has provided the accused detainees, such as petitioners, with substantial due process rights, including the right to be represented by counsel, to cross-examine witnesses, and to call witnesses to testify on their behalf. Additionally, Congress has also prescribed a thorough, four-step appellate review process for any final judgment adverse to an accused detainee, a process that includes appeal as of right to an Article III court, the Court of Appeals for the District of Columbia Circuit, 10 U.S.C. § 950g(a)-(c), and discretionary review by the United States Supreme Court via a petition for a writ of certiorari, id. § 950g(d). Comity, therefore, requires that this Court defer to the scheme Congress has chosen, which affords petitioners substantial due process and appeal rights, prior to entertaining a collateral attack such as a petition for a writ of habeas corpus. See Khadr, 2008 WL 4966523 at *4 n. 6 (comity based considerations under Councilman "equally, if not more relevant, when Congress designs a military justice system to try alien unlawful enemy combatants.").

Deference to Congress's scheme, pursuant to the principle of comity, provides petitioners with an adequate remedy at law and will not impose irreparable harm. In particular, the military commission process is an adequate remedy at law for three independent reasons. The first is the panoply of due process protections that have already been enumerated. See supra pp. 4-5; 9. Second, the level of appellate review is even more independent than that provided to the citizen-soldier defendant in Councilman. Whereas appellate review of courts-martial typically ends with the independent civilian Article I judges of the Court of Appeals for the Armed Forces, here, by contrast, petitioners will be entitled to review by a panel of Article III judges, the most "independent review" forum possible. Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2271 (2004). See

10

also Boumediene, 128 S. Ct. at 2268 (noting that it is appropriate to require a federal prisoner to exhaust before filing for the writ because the prisoner's conviction will already have been reviewed in a federal forum on direct appeal); Khadr, 2008 WL 4966523 at *4 (abstention required where "congressionally-authorized military court system that includes independent review by civilian judges [] is present"). And third, this Court may not presume that another government tribunal will not fully apply "the fundamental law of the land." Ex parte Royall, 117 U.S. at 252; see also Lawrence v. McCarthy, 344 F.3d 467, 473 (5th Cir. 2003) (abstention appropriate to permit military tribunal to determine its jurisdiction because "[w]e trust that the military courts are . . . up to the task" and "an individual's status is a question of fact which the military courts are more intimately familiar than the civil courts"). As Judge Robertson stated in Hamdan v. Gates:

> The eyes of the world are on Guantanamo Bay. Justice must be done there, and must be seen to be done there, fairly and impartially. But Article III judges do not have a monopoly on justice, or on constitutional learning. A real judge is presiding over the pretrial proceedings in Hamdan's case and will preside over the trial. . . . If the Military Commission judge gets it wrong, his error may be corrected by the [Court of Military Commission Review]. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets in wrong, the Supreme Court may grant a writ of certiorari.

565 F. Supp. 2d at 137. Thus, this Court, in deciding whether to abstain, must presume that the judges of the military commissions, and the judges on the subsequent military and Article III appellate panels, will adhere to their duty and fully apply the Constitution and federal laws to the matters before them. Accordingly, abstention is warranted here not only because of the comity due to Congress's decision to create the military commissions, but also because petitioners now possess an adequate remedy at law that makes resort to the equitable remedy of habeas corpus unnecessary.

11

Nor will abstention result in any irreparable harm to petitioners. Before a court may refuse to abstain, the Supreme Court has instructed that any harm from abstention must be not just irreparable, but also both "great and immediate." Fenner v. Boykin, 271 U.S. 240, 243 (1926). The Supreme Court has repeatedly made clear that the mere fact that a defendant has to face a criminal trial is insufficient to establish irreparable harm in the "special legal sense of that term," even while acknowledging the inevitable challenges incident to any criminal prosecution, such as cost, anxiety, and inconvenience. Younger, 401 U.S. at 46. Accordingly, petitioners' objections to their detention provide no basis for this Court to proceed with these habeas cases. Any "harm" arising from having to litigate those issues initially in front of the military commission are essentially the same as those the Supreme Court considered and rejected in Younger. See United States v. Hollywood Motor Car. Co., 458 U.S. 263, 268 n.2 (1982) ("[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship") (quoting Cobbledick v. United States, 309 U.S. 323, 325 (1940)). As the Court of Appeals for the District of Columbia Circuit explained with respect to a challenge to the commission's jurisdiction by another Guantanamo detainee, "[t]here is no substantial public interest at stake in this case that distinguishes it from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective." Khadr, 529 F.3d at 1118.

Accordingly, at least as a matter of comity, petitioners must exhaust the criminal process before the military commission and may take an appeal to the United States Court of Appeals for the District of Columbia Circuit upon any conviction to raise claims relating to the commission proceedings. In the meantime, the Court should properly abstain from reviewing petitioners'

habeas challenges pending resolution of their respective criminal proceedings.

II.     **The Military Commission Proceedings, With Appeal As Of Right To The United States Court of Appeals for the District of Columbia Circuit, Provide An Adequate Alternative Forum For Review Of Many Of The Issues Presented By Petitioner.**

Some of the issues petitioners will ultimately seek to have this Court address in the habeas context may also be litigated in the military commission context. Rather than have two proceedings running in parallel, Councilman and the cases discussed supra teach that the habeas court should exercise its discretion to allow the criminal proceedings to run their course first. 420 U.S. 738. Indeed, the same principle applies with respect to collateral challenges to state court proceedings – even when those challenges would not necessarily interfere with the criminal trial itself. See Younger, 401 U.S. at 43-44. Accordingly, in order to give "due respect to the autonomous military judicial system created by Congress," this Court should not impinge on the military commission process by addressing the legality of preventative detention. New, 129 F.3d at 643. Dismissal without prejudice is, therefore, appropriate. Lawrence, 344 F.3d at 474 ("dismiss[ing] without prejudice" to "allow [] military [proceedings], both judicial and administrative, to run their course"). In the alternative, this Court should hold this matter in abeyance until military commission proceedings have concluded.

As noted above, an accused is entitled to have the commission make its own, independent determinations of whether a charged defendant is an "unlawful enemy combatant," before trial may proceed. 10 U.S.C. § 948a(1). Thus, one of the central issues before the military commission will be whether the petitioners are unlawful enemy combatants. See, e.g., Hamdan, 565 F. Supp. 2d at 136-37. Further, the determination is one that the United States Court of Appeals for the District of Columbia Circuit itself has made clear is reviewable at the

13

culmination of the criminal proceedings, upon conviction. Khadr, 529 F.3d at 1117 (military commission's assertion of personal jurisdiction over a defendant "is reviewable on appeal from final judgment"). The military commission process provides a fully-adequate means for petitioners to challenge their status as unlawful enemy combatants. See id.; see also Lawrence, 344 F.3d at 473 (abstention appropriate in case where military tribunal must "make an initial [factual] determination regarding the scope of their jurisdiction" because "[w]e trust that the military courts * * * up to the task" and "an individual's status is a question of fact which the military courts are more intimately familiar with than the civil courts"). That determination of status, however, will necessarily include a determination whether petitioners are "enemy combatants" who may be legally detained – the core issue in these petitions.

In Hamdan, Judge Robertson explained that military commissions provide an adversarial process in which petitioners would be able to "call and cross-examine witnesses, to challenge the use of hearsay, and to introduce [their] own exculpatory evidence." Hamdan, 565 F. Supp. 2d at 135. With respect to the determination of unlawful enemy combatancy, the court noted that the petitioner had had a "jurisdictional hearing before the Commission" and also would have "a fully adversarial trial that will provide a further test of the premise of his detention. Id. As noted above, the court ultimately observed that a "real judge is presiding over the pretrial proceedings," in the military commission cases and that "[i]f the Military Commission judge gets it wrong, his error may be corrected by the CMCR. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of certiorari." Id.

Given this process, and the issues that would be vetted in the military commission proceedings that overlap with the core issue in these cases, it is appropriate for this Court to abstain pending resolution in that adequate, independent forum. In adopting the MCA, Congress created an autonomous military judicial system to try unlawful enemy combatants, with a right of appeal to an Article III court, review that is even more "removed from all military influence or persuasion" than was the case in Councilman. 420 U.S. at 738. If anything, Congress's decision to channel review to a *superior* federal court should militate even more strongly in favor of abstention. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 75 (D.C. Cir. 1984) ("where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals").

Moreover, one primary reason courts "abstain [] from exercising equitable jurisdiction" is to "avoid[] duplicative proceedings." Lawrence, 344 F.3d at 474. See also Steffel v. Thompson, 415 U.S. 452, 462 (1974) (in Younger abstention case, acknowledging strong interest in avoiding "duplicative legal proceedings or disruption of the state criminal justice system"). Because habeas proceedings would potentially duplicate military proceedings, they would impinge on the system Congress created for adjudicating the guilt of criminal suspects and, moreover, they would waste the scarce resources of the parties and the Court. As the court in Hamdan concluded, a "full-scale habeas hearing as to Hamdan's classification" is not appropriate given the availability of the military process that Congress set out. Hamdan, 565 F. Supp. 2d at 137. In such circumstances, "the courts should be wary of disturbing the[] judgment [of Congress and the President]" id., because "the military justice system must remain free from

undue interference." New, 129 F.3d at 643. Judge Bates recently reiterated this conclusion, ruling that abstention is "appropriate with respect to claims" that "have been, will be or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process" because "any rulings by th[e] Court on those claims would necessarily affect, and possibly interfere with, the military commission proceeding". Khadr, 2008 WL 4966523 at *4.

To the extent the petitions raise issues that are not also before the military commission, there is no reason for the Court to address them at this time. Because proceedings would be, at least in part, duplicative, habeas review during the pendency of criminal charges would also encroach upon the scarce resources of the courts and the parties at a time when resources should be focused on the roughly 200 cases involving detainees who are *not* charged for adversarial trial before a military commission. Respondents, counsel for the detainees, and the judges of this Court have all undertaken significant efforts to facilitate expedited review of hundreds of pending Guantanamo habeas cases, consistent with the Supreme Court's direction that "[t]he detainees in these cases are entitled to prompt habeas corpus hearing." Boumediene, 128 S. Ct. at 2275. Because the military commission process provides for robust adversarial proceedings to address criminal charges brought under the MCA (with review, if the defendant is convicted, by the United States Court of Appeals for the District of Columbia Circuit), the Court should focus its resources, and enable the parties to focus theirs, on the other habeas cases.

## CONCLUSION

For the foregoing reasons, this Court should dismiss petitioner Al Rabiah's and petitioner Al Kandari's habeas petitions without prejudice or, alternatively hold their petitions in abeyance until completion of the respective military commission proceedings against each petitioner and any appellate review thereof.

Date: November 26, 2008

                                                Respectively submitted,

                                                GREGORY KATSAS
                                                Assistant Attorney General

                                                JOHN C. O'QUINN
                                                Deputy Assistant Attorney General

                                                   /s/ Kristina A. Wolfe
                                                JOSEPH H. HUNT (D. C. Bar No. 431134)
                                                VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                TERRY M. HENRY
                                                ANDREW I. WARDEN
                                                KRISTINA A. WOLFE

                                                Attorneys
                                                United States Department of Justice
                                                Civil Division, Federal Programs Branch
                                                P.O. Box 883
                                                Washington, D.C. 20044
                                                Tel: (202) 353-4519
                                                Fax: (202) 616-8202

                                                Attorneys for Respondents