IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: GUANTÁNAMO BAY ) <br> DETAINEE LITIGATION ) <br> ) <br> and ) <br> ) <br> MOHAMMON, *et al.* ) <br> ) <br> *Petitioners*, ) <br> ) <br> *v.* ) <br> ) <br> GEORGE W. BUSH, *et al.*, ) <br> ) <br> *Respondents.* ) <br> ) | Misc. No. 8-442 (TFH) <br><br><br><br><br><br><br><br> Civil Action No. 05-2386 |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION
FOR CLARIFICATION AND RECONSIDERATION OF
THIS COURT'S NOVEMBER 12, 2008 CASE MANAGEMENT ORDER**

Petitioner Sharkawi Abda Ali Al-Haag (ISN 1457) ("Petitioner") hereby files this opposition to Respondents' Motion for Clarification and Reconsideration of Judge Hogan's November 6, 2008 Case Management Order ("CMO") and this Court's November 12, 2008 Supplemental Case Management Order. Petitioner has been imprisoned at Guantánamo Bay for over four years. He deserves his day in court.

In 2002, Petitioner Al-Haag was arrested, detained, and rendered to Jordan. While in Jordan, Petitioner was subjected to prolonged torture. In August, 2004 he was transferred to Guantánamo Bay. Throughout his detention, he has been denied basic human rights. Now, on the eve of his seventh year of detention, when he finally has the opportunity to challenge the basis of his detention, Petitioner is forced to respond to a Motion for Reconsideration and face the possibility that his day in court will be delayed indefinitely while those who have imprisoned

8121313.1                                   1

him without legal justification are permitted to ask the Court to adopt their rejected arguments or while they seek an interlocutory appeal. Respondents' justification for seeking this extraordinary relief at this stage of the proceedings boils down to one thing: burden. Petitioner has borne the burden of detention without legal justification for more than six years; he should not be required to bear the burden of any further delay. Instead, it should be Respondents who are forced to bear whatever burden they must to ensure that there is no further delay to the resolution of Petitioner's *habeas* case.

Respondents have been on notice since 2004 that Petitioner had the right to seek release through *habeas*. *See Rasul v. Bush*, 542 U.S. 466 (2004). Rather than complying with the United States Supreme Court's directive that they provide Petitioner with adequate due process, Respondents created a system of "kangaroo courts" that were designed not just to rubber stamp the executive's decision to detain Petitioner, but also to allow Respondents, but not Petitioner, to prepare their cases for trial. These Combatant Status Review Tribunals ("CSRT"s) were rejected by the United States Supreme Court in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Yet, Respondents seek reconsideration of the CMO to the extent it requires them to produce anything more than what they collected in connection with the CSRT process. In his June 15, 2007 declaration, Lt. Col. Stephen Abraham described this CSRT process: "[T]he person preparing materials for use by the CSRT board members did not know whether they had examined all available information or even why they possessed some pieces of information but not others." (*See* Abraham Decl. ¶ 16, attached as Ex. A.) The relief requested by Respondents should be denied as contrary to *Boumediene*.

After the *Boumediene* ruling and over the objection of Petitioner, Respondents requested consolidation of all of the pending *habeas* cases for coordination purposes. This Court agreed to

consolidation to expedite resolution of these *habeas* cases by allowing one judge to make recommendations as to the appropriate manner in which to resolve the procedural issues arising from these cases. Judge Hogan accepted jurisdiction over approximately 100 *habeas* cases and directed the over 200 individual petitioners to submit one brief addressing several procedural issues, including discovery, exculpatory evidence, and the use of hearsay evidence. Petitioners and Respondents completed briefing on an expedited schedule and on November 6, 2008, Judge Hogan issued the CMO. This Court adopted Judge Hogan's CMO, with some modifications, on November 12, 2008. In seeking reconsideration of the CMO, Respondents offer the Court nothing new; they just complain that they did not prevail the first time.

Respondents' Motion should be decided by this Court, the merits judge in this case. Each day Respondents urge reconsideration of their earlier arguments through coordination, management, policies and process, is another day Petitioner remains unlawfully detained. The Supreme Court could not have been more clear when stating:

> While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing.

*Boumediene v. Bush*, 128 S. Ct. at 2275. As such, Respondents' Motion should be denied.

## ARGUMENT

I.  **RESPONDENTS' MOTION SHOULD BE DENIED AS IT FAILS TO MEET THE STANDARD FOR MOTIONS FOR RECONSIDERATION.**

Respondents have not met the standard governing motions for reconsideration. "A motion for reconsideration . . . will not be lightly granted." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. DOD*, 199 F.3d 507, 511 (D.C. Cir. 2000).

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell*, which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. *See Singh v. S. Asian Soc. of George Wash. Univ.*, 572 F. Supp. 2d 11, 12 (D.D.C. 2008).

Respondents make no attempt to actually argue that the Court should reconsider its prior decision under the *Cobell* standard. Instead, they argue that their Motion should be granted because the Court has discretion to reconsider its prior rulings. While Respondents are correct that the Court does have discretion, an exercise of such discretion in this case is not what justice requires. Respondents do not argue that the Court has misunderstood a party, made a decision outside the adversarial issues presented to it, or made an error of apprehension. Further, Respondents do not argue that there has been any change in the law or facts governing the case. Instead, Respondents simply reargue the issues previously considered by the Court by lifting their arguments from their Brief Regarding Procedural Framework Issues. (*Compare* Resp't Mot. *with* Resp't Br. Proc. Issues.) Specifically, Respondents argue that the discovery provisions in the Court's CMO are too broad and should be more limited than those applicable to criminal defendants and that compliance with the CMO will be unduly burdensome.

Both of these arguments were fully briefed in the parties' briefs addressing procedural framework issues. (Resp't Br. Proc. Issues at 1–3, 9–10, 17–28; Pet'rs.' Joint Mem. Proc. Issues at 18–24; Pet'rs.' Joint Reply Mem. at 22.) Respondents' positions were considered and rejected by Judge Hogan when he crafted the CMO and this Court when it modified the CMO. The court's discretion on a motion for reconsideration is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations omitted), *judgment vacated on other grounds*, 508 F.3d 1097 (D.C. Cir. 2007). Having already battled over the terms of the CMO, the Court should reject Respondents' attempt to relitigate these issues and deny their Motion for Reconsideration.

  **A. The CMO provides Petitioner with constitutionally necessary discovery and should not be narrowed.**

Respondents incorrectly assert that the CMO provides Petitioner with more discovery than required by the Constitution. Respondents' argument is based on a contention, previously rejected by this Court, that Petitioner is entitled to less discovery than afforded to criminal defendants. (Resp't Mot. at 13.) This assertion ignores the notable differences between Petitioner's *habeas* proceedings and typical criminal prosecutions. The most significant difference is that Petitioner has not been charged with any crime. Additionally, unlike those charged with crimes, Petitioner was not provided with a right to counsel upon incarceration, nor was he offered any protections against self incrimination. Furthermore, Petitioner was interrogated by authorities who used techniques undeniably harsher than those employed by typical law enforcement personnel. To limit Petitioner to the discovery provided to criminal defendants would ignore the undisputed fact that Petitioner has not been granted the rights typically afforded to criminal defendants. The Court should reject Respondents' attempt to pick

and choose the rules of criminal procedure. A contrary ruling would allow Respondents to apply the rules of criminal procedure only when it inures to their benefit.

Furthermore, there are significant reasons to provide Petitioner with discovery that is broader in scope than that available under the rules of criminal procedure. In criminal cases, defendants are able to assert their rights under the Confrontation Clause and Due Process Clause as well as their right to compulsory process. In post-conviction *habeas* proceedings, criminal defendants have already received a trial subject to the above constitutional restrictions. By contrast, in the present proceedings, Petitioner has had no opportunity to contest the allegations leveled against him. Accordingly, it is entirely appropriate to provide Petitioner with discovery that will permit just resolution of his status.

Respondents misapply Supreme Court precedent in arguing that discovery should be limited. Respondents incorrectly assert that *Hamdi v. Rumsfeld* and *Boumediene v. Bush* stand for the proposition that Petitioner is entitled to only minimal discovery. (Resp't Mot. at 8–9; *see also Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). *Hamdi* is not on point here, as it was decided at an early stage of the proceeding when the scope of discovery was not at issue. *Boumediene*, by contrast, recognized the unique posture of cases involving detainees and noted that collateral review and full and fair development of the factual record are necessary in these cases. 128 S. Ct. at 2269, 2273.

Respondents also misconstrue the Supreme Court's opinion in *Harris v. Nelson* and the *habeas* corpus procedural rules that followed it. 394 U.S. 286 (1969); Habeas R. 6. Respondents incorrectly state that the *habeas* corpus rules limited the scope of *Harris* and demonstrated Congressional intent to prevent significant discovery in *habeas* cases. (Resp't Mot. at 12–13.) In reality, both sources provide district courts with significant discretion to

manage *habeas* proceedings.  Moreover, these authorities and arguments were fully briefed and considered by Judge Hogan and this Court.  The Courts reached an appropriate resolution in drafting the CMO, and Respondents provide no additional authority to justify reconsideration.

> **B.      Respondents overstate the burden they face under the CMO and fail to acknowledge that the difficulties they will face are self-inflicted.**

Respondents have offered no specific evidence to support their contention that compliance with the CMO in *this case* would result in any legitimate threat to national security and Respondents' compliance with requirements to produce discovery and exculpatory evidence in other cases shows that Respondents are capable of producing the limited information related to Petitioner that is required under the CMO.  At a minimum, Respondents' Motion should be rejected, the CMO should be enforced, and if, and only if, Respondents can demonstrate that despite their efforts to comply with the CMO in this specific case, they need relief due to the unique information at issue in this case should the Court consider modifying the terms of the CMO.

Moreover, the Court should not delay or modify discovery for Petitioner because the burden facing Respondents is entirely self-inflicted.  Respondents devote significant space in their Motion for Reconsideration to a discussion of the burdens they will face if the Court's CMO stands.  (*E.g.*, Resp't Mot. at 16–19, 25.)  While Respondents detailed the many responsibilities they will shoulder, they do not acknowledge that they are to blame for these difficulties.  For example, Respondents requested consolidation of these *habeas* proceedings.  Yet, they now complain that complying with uniform timelines will be too burdensome.

When faced with judicial decisions that ordered Respondents to afford constitutional rights to Petitioner, they failed to act.  Instead, they sought appellate review of the decisions and in the interim, took no steps to prepare for the contingency that they might lose on appeal.  Such

a reckless litigation strategy should not be rewarded.  And while Respondents' appeals were pending, they took no action to resolve the status of Petitioner.  Respondents could have charged Petitioner with a crime, requested a finder of fact to evaluate the charges, and imprisoned him if found guilty.  Instead, Respondents engaged in an extensive effort to hold Petitioner in legal limbo indefinitely by setting up the detention center at Guantánamo Bay and asserting that detainees held there were not entitled to any constitutional rights.  Respondents have spent years attempting to avoid justifying the continued detention of Petitioner.  They should not be permitted relief because their constitutional procrastination has finally caught up with them.

## II. INDIVIDUALIZED RESOLUTION OF PETITIONER'S CASE WILL PROPERLY ADDRESS RESPONDENTS' REMAINING CONCERNS ABOUT THE CMO.

As discussed above, Respondents' Motion for Reconsideration repeats arguments already rejected by the Court.  Further, it is apparent that Respondents cannot satisfy this Court's standard for granting the requested relief.  Apparently recognizing the weakness of their arguments, Respondents seek clarification of the CMO should the Court choose to reject their Motion for Reconsideration.  Respondents identify purported ambiguities in the CMO and then offer an interpretation of those "ambiguities" that, if adopted by the Court, would achieve the same goal sought by Respondents in their request for reconsideration:  delay.  The CMO is not ambiguous and Respondents' attempted clarification of the provisions of the CMO is neither necessary nor appropriate.  To the extent that there is any legitimate basis for clarifying the CMO, such clarification should be resolved on a case by case basis.

### A. The CMO's exculpatory evidence and automatic discovery provisions are not ambiguous and do not merit reconsideration, but any clarification the Court deems necessary should occur on a case by case basis.

Respondents first assert that the Court should clarify its order on exculpatory evidence to cover only the documents Respondents are currently willing to produce, but their attempt to cast the Court's order as unclear is disingenuous. (Resp't Mot. at 8–9.) The CMO explicitly requires Respondents to disclose all reasonably available exculpatory evidence that is in their possession or can be obtained through reasonable diligence. (CMO at I.D.) The CMO clearly does not limit Respondents' obligation to provide exculpatory evidence to that discovered while preparing factual returns and such a modification of the CMO would convert these *habeas* proceedings to a cursory review of the CSRT record, which is precisely the type of "due process" the Supreme Court rejected as insufficient in *Boumediene*.

Respondents also purport to request clarification of the Court's ruling on the automatic discovery due Petitioner. (Resp't Mot. at 11.) Here, Respondents' basis for clarification is questionable. Respondents seek to have the CMO apply only to certain documents referenced in the factual return despite the absence of any limiting language in the CMO. (*Id.*; CMO at I.E.1.) Alternatively, Respondents request the Court require Petitioner to show good cause before he can receive specific discovery. (Resp't Mot. at 12.) Respondents do not proffer any new argument or evidence to support these requests for clarification.

Respondents also take issue with the CMO's requirement that they disclose documents or objects in their possession that are referenced in the factual return, statements by the detainee, and circumstances in which the detainee's statements were made. (CMO at I.E.1.) Respondents contend that these provisions exceed Respondents' obligations under the Federal Rules of Criminal Procedure and common criminal practice. (Resp't Mot. at 13–14, 17–18.) As discussed in Part I.A, *supra*, there are significant differences between Petitioner's *habeas*

petitions and criminal prosecutions and the Court has already considered briefing on the subject and concluded that the limited discovery provided in the CMO is appropriate.

To the extent that any ambiguity exists in the Court's order, the Court should resolve such issues case by case. Doing so will permit the Court to evaluate what evidence Respondents have provided to Petitioner and to what extent they have complied with the CMO. The parties will be able to frame their arguments regarding the scope of discovery in reference to specific pieces of evidence. Such resolution will permit the Court to ascertain the true extent of Respondents' argument regarding the burden they face.

> **B.    The Court should resolve Respondents' concerns over the provision of classified information on a case by case basis.**

The Court in the CMO ordered that Respondents provide Petitioner with access to an adequate substitute for classified information, provide Petitioner's counsel with the classified information, and permit the Court to examine classified information *in camera* in the event that Respondents objected to its disclosure. (CMO at I.F.) Respondents' principle argument—that providing such information is unnecessarily burdensome—has been presented to the Court and rejected. That argument deserves no further consideration from the Court.

Respondents further contend that this provision exceeds the classified information disclosure rights provided to criminal defendants under the Classified Information Procedure Act (CIPA) and that such disclosure provisions are constitutionally grounded. (Resp't Mot. at 22–23.) Respondents' reliance on CIPA is misplaced because these proceedings are not criminal proceedings. *See supra* Part I.A.

Even if limitations resembling CIPA were applicable in these cases, the Court should resolve issues regarding the classified information provisions of the CMO on a case by case basis. Respondents have made no showing regarding the classified information relied on in the

present cases. Despite the dire warnings about the pitfalls of disclosing such information or adequate substitutes, it is not clear the nature of the classified information the Government possesses regarding Petitioner. Allowing the matter to proceed under the CMO will permit the parties to determine what classified information is at issue and whether its provision would be problematic. Respondents should be required to collect and identify the relevant information, and then seek relief if such relief is appropriate.

      **C.**     **Questions regarding the presumption afforded Respondents' evidence, hearsay, and evidentiary hearings are best decided case by case.**

Respondents devote little time to discussion of these issues in their Motion for Reconsideration but appear to summarily contend that resolution of questions regarding the admissibility of hearsay should not be decided on a case by case basis and that evidentiary hearings should not be provided under *Hamdi*. (Resp't Mot. at 29–30.) Respondents have previously argued to this effect and the Court has properly rejected their argument; there is no basis to reconsider those rulings at the present. (Resp't Br. Proc. Issues at 30–33, 36–40.) Considerations of all three of these issues are inherently fact-specific, and it is far more efficient for the Court to decide such questions as they arise rather than to create blanket rules that do not fit the details of each discrete case.

      **D.**     **Respondents' concern that the CMO is unduly burdensome rings hollow in light of the *habeas* proceedings that have already taken place.**

Over Petitioner's opposition, this case was transferred to Judge Hogan in June "for coordination and management." Petitioner opposed consolidation given his fear that it would result in delay and inefficiency. Respondents' Motion for Reconsideration of the CMO exemplifies the delay and inefficiencies that were feared. In June, Judges Leon and Sullivan chose not to transfer their *habeas* cases to Judge Hogan. Order, *Boumediene v. Bush*, No. 04-

1166, Dkt. 111, (D.D.C. July 2, 2008); Order, *Batarfi v. Bush*, No. 05-0409, Dkt. 80 (D.D.C. July 7, 2008). Additionally, the *habeas* cases of the Uighurs were transferred to Judge Urbina for resolution. Order, *In re Guantánamo Bay Detainee Litigation*, Nos. 05-1509, 05-1602, 05-1704, 05-2370, 05-2398, Dkt. 44 (D.D.C. Jul. 10, 2008). In those cases, the Court has imposed tight deadlines and required the production of exculpatory information and discovery, with which the Government was able to comply. *See*, *e.g.*, Minute Order, *Zuhair v. Bush*, No. 08-0864 (D.D.C. October 8, 2008). The cases before Judges Leon and Urbina have now reached final judgment and the cases before Judge Sullivan are at the merits briefing stage. Order, *Boumediene v. Bush*, No. 04-1166, Dkt. 279, (D.D.C. Nov. 25, 2008); Order, *In re Guantánamo Bay Detainee Litigation*, Nos. 05-1509, 05-1602, 05-1704, 05-2370, 05-2398, 08-1310, Dkt. 677 (D.D.C. Oct. 8, 2008). Requiring Respondents to comply with the CMO is the only way to ensure a expeditious resolution of Petitioner's case.

### III. RESPONDENTS' MOTION SHOULD BE DENIED AS IT DID NOT COMPLY WITH LOCAL RULE 7(m).

In addition to denying Respondents' Motion because it fails on the merits, the Court also should reject Respondents' Motion because they failed to fulfill the requirements of Local Rule 7(m). While Respondents' Motion improperly states that they complied with Local Rule 7(m), their own recitation of their efforts to confer shows that, at most, they attempted to comply with the form, rather than the substance of the rule. (*See* Resp't. Mot. at 3 n.2 (stating "Pursuant to Local Rule 7(m) . . .").) Local Rule 7(m) provides, in pertinent part that:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, *either in person or by telephone*, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

D.D.C. Civ. R. 7(m) (emphasis added).

Rule 7(m) requires a party to include in its motion, a statement that the required discussion occurred and a statement as to whether the motion is opposed. *Id.* Failure to comply with the duty to confer requirement is grounds for dismissing Respondents' Motion. *See e.g.*, *In re Verizon Internet Servs., Inc.*, 217 F.R.D. 239, 240 (D.D.C. 2003) (denying individual's motion to stay association's motion to enforce a subpoena because individual did not comply with duty to confer). Because Rule 7(m) seeks to promote actual resolution of nondispositive issues, its focus is on substance, not form, and thus "[t]he obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) (finding that failure to comply with conference requirement was sufficient basis to deny motion to compel).

On November 14, 2008, counsel for Respondents sent out a blast email to all *habeas* counsel representing men detained at Guantánamo Bay stating their intention "to file a motion for clarification and reconsideration of the Court's November 6, 2008 case management order (and supplemental amended orders, where applicable), or in the alternative, a motion for certification for appeal and to stay certain obligations pending appeal." (*See* 11/14/08 Email from Timothy Johnson to Brian Spahn, attached as Ex. B.) Respondents stated that, "[t]he basis for this motion is that the November 6, 2008 procedural order is legally inappropriate and unworkable. Please advise if you oppose the motion by noon, ET, on Monday, November 17, 2008." (*Id.*) An hour-and-a-half after receiving Respondents' email, undersigned counsel responded that, "[i]n order to properly take a position with regard to your motion, we need further clarification. Please let us know the basis for your position that the case management order is legally inappropriate." (*See* 11/14/08 Email from Brian Spahn to Timothy Johnson,

attached as Ex. B.) Counsel for Respondents never responded to this email and, instead, filed their Motion on November 18, 2008.

In *United States ex rel. K & R Ltd. Partnership v. Massachusetts Housing Financial Agency*, this Court held that that an email stating that a motion would be filed if not responded to within twenty-four hours was not a good faith effort to confer under Local Civil Rule 7(m). 456 F. Supp. 2d 46, 52 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008). The purpose of the Rule is not to simply determine that a motion will be opposed. *Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999). Instead, the purpose of the discussion, whether in person or by telephone, is to address one of the stated purposes of Rule 7(m)—"to narrow the areas of disagreement." *Abbott GMBH & Co. KG v. Yeda Research & Dev. Co.*, 576 F. Supp. 2d 44, 48 (D.D.C. 2008) (denying defendant's motion when defendant only communicated his intention to file a motion and provided opposing counsel no opportunity to narrow issues).

In this case, Respondents merely provided a perfunctory email indicating that a motion for reconsideration of the CMO was to be filed, without providing any inkling of information about the specific issues Respondents intended to raise in that motion. In the absence of specific information about the relief sought, despite a request for such information, Petitioner simply had no opportunity to attempt to narrow the areas of disagreement or compromise on certain issues in return for an agreement by Respondents to proceed expeditiously to final resolution of this case. Because Respondents did not put forth a good-faith effort to confer and narrow the areas of disagreement in clear violation of Rule 7(m), Respondents' Motion should be denied.

**IV.  RESPONDENTS HAVE NOT MET THE STANDARD FOR INTERLOCUTORY REVIEW.**

By the express terms of Section 1292(b), Respondents' Motion for interlocutory appeal should be rejected. The statute states that:

> When a district judge, in making in civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*, he shall so state in writing in such order.  The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b) (emphasis added).  Not only does Respondents' Motion not "seek[] [to] materially advance the ultimate termination of the litigation," their aim is the exact opposite—to delay and protract the litigation's ultimate resolution.  As such, the Court should deny Respondents' Motion for certification for appeal.

Section 1292(b) "allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  Merely satisfying § 1292(b)'s requirements, however, "will not insure interlocutory appeal" because § 1292(b) "was designed to be a rarely used exception to the final judgment rule." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 161 (E.D.N.Y. 1999).  Although § 1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 865.  The legislative history and statutory design of § 1292(b) make clear that the statute vests district court judges with discretion as to whether to certify cases for interlocutory appeal even when the requirements of the statute are met. *Id.* at 163–64.

Notably, in all but one of the cases cited by Respondents in their November 18, 2008 Motion for Clarification and Reconsideration, the court either denied certification under §

1292(b) or held that certification under § 1292(b) was not proper.[1]  In the only case in which a certificate of immediate review was issued, *In re Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 33142129, at *1-*2 (D.D.C. Nov. 22, 2000), the court concluded that its ruling that jurisdictional discovery in that case should proceed under the Federal Rules rather than the Hague Convention was an important issue that many other courts also would face.  In direct contrast, Respondents in this case explicitly state in their Motion for Clarification and Reconsideration that these *habeas* cases lack any precise historical parallel.  (Resp't Mot. at 35.)  The court in *National Asbestos* specifically held that cases involving unique factual and legal disputes are not appropriate for interlocutory appeal.  71 F. Supp. 2d at 163.  Although the court in *Vitamins Antitrust* certified the interlocutory appeal, it also stated that "interlocutory appeals under 28 U.S.C. §1292(b) are rarely allowed, and the party seeking interlocutory review has the burden of persuading the court that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *Vitamins Antitrust*, 2000 WL 33142129, at *1 (quoting *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996)).

---

[1]  Three of the cases cited by Respondents were decided under the collateral order doctrine, which differs from discretionary appeals under § 1292(b).  *See Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997); *United States v. Rostenkowski*, 59 F.3d 1291, 1296 (D.C. Cir. 1995), *opinion supplemented on denial of rehearing*, 68 F.3d 489 (D.C. Cir. 1995); *United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003), *subsequent determination*, 347 F. 3d 951 (D.C. Cir. 2003).  Under the collateral order doctrine, a district court order qualifies for immediate appeal as a "final order" under § 1291 if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) [would be] effectively unreviewable on appeal from a final judgment." *Rostenkowski*, 59 F.3d at 1296 (quotation marks omitted).  The CMO at issue does not qualify for immediate appeal under the collateral order doctrine because even if it satisfies the second or third prongs of this test, it does not conclusively determine any disputed questions.  The CMO instead sets out the framework under which the district court will proceed to resolve the questions before it, a framework that leaves a great deal of discretion in the district court to make evidentiary rulings.

The court in *National Asbestos*, 71 F. Supp. 2d at 163, in emphasizing that § 1292(b) is discretionary as opposed to mandatory, stated several factors for district judges to weigh in determining whether an interlocutory appeal is an efficient use of judicial resources:

> (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

*Id.* Applying these factors to the facts of this case, an interlocutory appeal would not be an efficient use of judicial resources.

Respondents rely on *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d. Cir. 1978) for their argument that a controlling question of law "include[s] a procedural determination that may importantly affect the conduct of an action." The *Duplan* court goes on to state in the same footnote, however, that the "critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation" *Id*. An appeal of the CMO at issue here would slow down rather than accelerate the disposition of this already protracted litigation. The facts in these *habeas* cases have not been fully developed and an immediate interlocutory appeal would "unduly interfere with discovery . . . ." *Nat'l Asbestos*, 71 F. Supp. 2d at 167.

The U.S. District Court for the District of Columbia and several Circuit Courts have held that "discovery orders 'generally never will involve a controlling question of law.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 23 (D.D.C. 2002) (quoting *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994); *see also In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) ("A ruling on the admissibility of evidence is reviewed for abuse of discretion.

An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under § 1292(b).") (citation omitted). The court in *Judicial Watch* emphasized that when the real difference of opinion lies between one of the parties and the court, rather than between precedential authority, there is not substantial ground for difference of opinion, as required by § 1292(b). 233 F. Supp. at 24–25. As Respondents' issues with the CMO stem from the burdens that the Order places on Respondents rather than precedent, these issues do not justify an interlocutory appeal.

## CONCLUSION

The cost of delay borne by Petitioner has been unimaginable. The issues Respondents raise in their Motion for Reconsideration have been litigated. This Court has the power to say enough is enough. Respondents' Motion should be denied in its entirety and Respondents should be ordered to comply with the deadlines set out in this Court's November 12, 2008 Case Management Order.

Respectfully submitted,

Counsel for Petitioner:

   /s/ Kristin B. Wilhelm
Richard G. Murphy, Jr. (D.C. Bar No. 472769)
Brian C. Spahn (Pursuant to LCvR 83.2(g))
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2415
Telephone: (202) 383-0635
Facsimile:  (202) 637-3593

Kristin B. Wilhelm (Pursuant to LCvR 83.2(g))
Sara Toering  (Pursuant to LCvR 83.2(g))
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia  30309-3996
Telephone: (404) 853-8000
Facsimile:  (404) 853-8806

John A. Chandler (Pursuant to LCvR 83.2(g))
King & Spalding LLP
1180 Peachtree St NE
Atlanta, Ga. 30309-3521
Telephone: 404-572-4646
Facsimile: 404 573 5142

November 26, 2008
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**David J. Stander**
david.stander@usdoj.gov

**Judry Laeb Subar**
judry.subar@usdoj.gov

**Paul Edward Ahern**
paul.ahern@usdoj.gov

**Scott Michael Marconda**
scott.marconda@usdoj.gov

**Terry Marcus Henry**
terry.henry@usdoj.gov

**Alexander Kenneth Haas**
alexander.haas@usdoj.gov

**Andrew I. Warden**
andrew.warden@usdoj.gov

**James C. Luh**
james.luh@usdoj.gov

**Kathryn Celia Mason**
Kathryn.Mason@usdoj.gov

**Rodney Patton**
rodney.patton@usdoj.gov


SUTHERLAND ASBILL & BRENNAN LLP
By:     Kristin B. Wilhelm
Kristin B. Wilhelm