IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— x
:
IN RE:                                                            :
:
GUANTÁNAMO BAY                                  : Misc. No. 08-442 (TFH)
DETAINEE LITIGATION                             :
:
———————————————————— x
:
DJAMEL AMEZIANE,                                :
:
    Petitioner,                      :
:
     v.                                   : Civil Action No. 05-392 (ESH)
:
GEORGE W. BUSH, *et al.*,                      :
:
    Respondents.                     :
:
———————————————————— x

**OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION,
AND CROSS-MOTION TO STRIKE HAYDEN DECLARATION AND TO TRANSFER
THIS CASE BACK TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS**

    Petitioner Djamel Ameziane, by and through his undersigned counsel, respectfully submits this opposition to the government's omnibus motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1004) ("Gvt. Motion"). Ameziane also moves to strike the declaration of CIA Director Michael V. Hayden, submitted *in camera* and *ex parte*, *see id* (misc. dkt. no. 1005), and to transfer this case back to Judge Huvelle ("Merits Judge") for all further proceedings.[1]

---

[1] The government objects to the motion to strike. As to the motion to transfer, the government's position is that Judge Hogan should address the issues related to the CMO and the motion for reconsideration in all of the coordinated detainee cases, including this case.

**PRELIMINARY STATEMENT**

Djamel Ameziane, a citizen of Algeria, was one of the first prisoners transferred to Guantánamo Bay in February 2002. He has been held there without charge or trial longer than most remaining prisoners. He also has one of the oldest remaining cases, filed in February 2005. Ameziane's detention has been and continues to be indefinite and unlawful by any standard.

On June 12, 2008, the Supreme Court held that detainees at Guantánamo Bay have a constitutionally-protected right to petition for habeas relief. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). The Court further held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275. The detainee cases are now governed by the Habeas Corpus Statute, 28 U.S.C. § 2241 *et seq.*, which sets forth specific guidelines for prompt resolution of these cases.

Yet the government plainly seeks by its motion for reconsideration to prolong Ameziane's indefinite detention. The government's motion is simply the latest tactic in a long-standing strategy to deprive Ameziane and other Guantánamo detainees of any meaningful opportunity to challenge the legality of their detention through habeas. Although Judge Hogan and the Merits Judge each ordered the parties in this case and other detainee cases to proceed on an individualized basis – and, indeed, invited the government to propose modifications to Judge Hogan's November 6, 2008 case management order in the context of this particular case – the government made no objection to that mode of proceeding. Rather, now that the courts have ruled, the government seeks to continue litigation essentially on a class-wide basis that is contrary to the courts' orders and serves only to delay consideration of the merits of this case.

The government's motion should be denied for three reasons: (1) because the government failed to meet and confer with Ameziane's counsel as required by Local Civil Rule 7(m); (2) because the motion fails to establish any basis for reconsideration; and (3) because the motion does not address the particular facts and circumstances of this case, which would not warrant the relief sought by the government – *i.e.*, a further indefinite stay – if reconsideration were granted.[2]

Ameziane's cross-motion to strike the classified declaration of CIA Director Michael V. Hayden ("Hayden Declaration" or "Hayden Decl.") should also be granted, and this case should be transferred back to the Merits Judge for all further proceedings, for the reasons below.

## BACKGROUND

On July 2, 2008, this case was transferred to Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session (D.D.C. July 1, 2008). Ameziane objected to the transfer on the ground that it would delay consideration of the merits of his habeas case. In the nearly five months since then, Ameziane's fears have borne true.[3]

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH)

---

[2] Ameziane also objects to the government's alternate request to certify these issues for appeal and for a stay pending appeal. There is no legitimate basis for an interlocutory appeal of a case management order pursuant to 28 U.S.C. § 1292(b). Nor do the issues raised in the government's motion present substantial ground for difference of opinion. The government's suggestion that further appellate litigation in the detainee cases would materially advance the litigation also strains credulity in light of its consistent, dilatory tactics.

[3] By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of 6 Bosnian-Algerian petitioners released).

(D.D.C.) (misc. dkt. no. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges posed." *Id.* (misc. dkt. no. 466, at 6) (internal quotation marks omitted).[4]

Ameziane's amended factual return was consequently delayed until September 25, 2008. And when the government finally did produce the return, it attempted unilaterally to designate all non-classified information in the return as "protected," thus preventing Ameziane himself from reviewing the information. Indeed, to date, Ameziane himself has not been able to review a single document contained in his return or prepare a response to the return.

In the meantime, Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (misc. dkt. nos. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") to govern the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at p.2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

---

[4] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 917).

A day later, the Merits Judge entered an order directing the parties in this case and two other detainee cases to file a joint status report and appear for a status conference on November 24, 2008. The Merits Judge further ordered that "the parties shall abide by the preliminary Case Management Order [entered by Judge Hogan] pending further Order of the Court." *Ameziane v. Bush*, No. 05-cv-392 (ESH) (D.D.C.) (dkt. no. 105).

On November 17, 2008, the parties in the three cases before the Merits Judge filed a joint status report. The petitioners identified common areas of agreement concerning compliance with the CMO, anticipated problems proceeding pursuant to the CMO, and proposed modifications to the CMO. The petitioners also argued that the government's forthcoming motion for reconsideration was inconsistent with the individualized consideration of cases by all judges of this court subsequent to Judge Hogan's initial actions pursuant to the Resolution of the Executive Session, and with the Merits Judge's order of November 7, 2008, instructing the parties to address any issues concerning the CMO in the specific cases pending before the Merits Judge. The petitioners objected to the government's continuing attempt to treat the Guantánamo detainee habeas cases as one block, and urged the Merits Judge to reject the government's approach and require individualized pleadings. *See id.* (dkt. no. 110).

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. The government's motion made no mention of this case specifically. *See* Gvt. Motion.

On November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay*

5

*Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026). Later that day, Ameziane and the two other petitioners scheduled to appear for a status conference before the Merits Judge on November 24, 2008 filed a motion to strike the government's motion for reconsideration. *See id.* (misc. dkt. no. 1031). The government filed its opposition on November 25, 2008. *See id.* (misc. dkt. no. 1041).

Finally, on November 24, 2008, the Merits Judge held a status conference in this case. Among other things, the Merits Judge ordered the government to produce an unclassified factual return by December 12, 2008; ordered the government to indicate by December 15, 2008 exactly which portions of the factual return it intends to rely on in its case-in-chief; scheduled a further status conference for December 18, 2008; and set a trial date of March 2, 2009. The Merits Judge declined to address at the status conference the government's purported legal justification for Ameziane's detention, or Parts II and III of the CMO which the Merits Judge indicated would be resolved by Judge Hogan.

**I.    THE GOVERNMENT'S BLANKET MOTION FAILS TO PROVIDE
       ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE**

   **A.    The Motion Should Be Denied for Failure to Meet and Confer**

The government's motion should be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Simply stated, the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On the morning of Friday, November 14, 2008, during the parties' attempt to meet and confer by telephone as to the joint status report due on November 17, 2008, counsel for the government informed undersigned counsel that the government intended to seek reconsideration of Judge Hogan's CMO, and, consequently, would not comply with the deadlines for filing in the

CMO. The government refused to say why or on what basis it would seek reconsideration, and refused to engage in meaningful discussions concerning proposed modifications to the CMO.

Later that day, other counsel for the government sent an email to an undisclosed list of counsel for the detainees, including undersigned counsel, stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." Ex. 1 (attached hereto). The government offered no further explanation. Nor did the government specify the cases in which it intended to file the motion for reconsideration, even after counsel for the detainees requested that information.

Then, on the evening of Monday, November 17, 2008, the government submitted its portion of the parties' joint status report to undersigned counsel for filing with the Merits Judge. That submission indicated that the government would seek reconsideration of Judge Hogan's CMO in all cases in which that order was entered, but it provided little additional detail and largely failed to address the facts and circumstances of this case. Nor did counsel for the government make any attempt to narrow the areas of disagreement concerning the forthcoming motion for reconsideration. As the government concedes in its motion for reconsideration, "[m]any [counsel for the detainees] requested details regarding the motion that the Respondents were not in a position to discuss at the time." Gvt. Motion at 3 n.2.

Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone. Rule 7(m) serves

important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[5]

### B. The Motion Should Be Denied for Failure to State Any Basis for Reconsideration

The government cites Federal Rule of Civil Procedure 54(b) in support of its request for reconsideration of Judge Hogan's CMO. *See* Gvt. Motion at 10 n.7. But that rule provides no basis for reconsideration here.

Rule 54(b) governs motions for reconsideration that do not constitute final judgments. *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office*

---

[5] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

*of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the government's motion is particularly new. There are no new legal issues presented – all were previously addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan or the Merits Judge misunderstood or overlooked in their respective case management orders. Rather, what the government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO: (1) the breadth of the required search for exculpatory evidence; (2) the provision for automatic discovery of detainee statements relating to the amended factual returns; (3) the requirement that the government provide counsel and the detainees themselves with classified information or "adequate substitutes" for classified information; and (4) the procedures governing the use of hearsay, presumptions in favor of the government's evidence, and the standard for an evidentiary

hearing. *See* Gvt. Motion at 2-3.[6]

In its opposition to Ameziane's motion to strike, the government concedes that the issues raised in its motion for reconsideration are the same as the issues addressed in the parties' procedural framework briefs before Judge Hogan: "The issues to be resolved by the Motion for Reconsideration are precisely the types of issues contemplated in the [July 1, 2008] transfer order. Only nine days after the transfer of cases to Judge Hogan, he ordered the parties to brief precisely these issues. The Motion for Reconsideration addresses nothing not addressed in the CMO." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1041, at 2). And that is precisely why the standard for reconsideration is not satisfied.

### C. Even if Reconsideration Were Granted, the Requested Relief Should Be Denied in the Context of This Particular Case

The only arguably "new" relief requested by the government includes relief from the deadlines for compliance with the CMO, which the government contends would be unduly

---

[6] To the extent the government seeks "clarification" of these and other issues, that request is likewise nothing more than an attempt to relitigate those issues on class-wide basis. For instance, on November 20, 2008, the government filed a notice pertaining to its purported compliance with Part I.D.1 of the CMO. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1022) ("Exculpatory Evidence Statement"). The notice stated that the government had complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no broader than the search previously conducted by the government – an interpretation that conflicts not only with the plain language of the CMO but also with the express orders of Judge Sullivan, Judge Kessler and Judge Walton (who has since stayed the order) requiring a broader search for exculpatory evidence. *See* Gvt. Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession). In any case, the government has further acknowledged its failure to provide all exculpatory evidence in its possession. *See* Gvt. Motion at 17 n.14 (admitting failure to produce all detainee denials of government's claims); Exculpatory Evidence Statement at 3 n.1 (admitting failure to produce all detainee denials of government's claims; all agency reports containing exculpatory evidence; and all exculpatory evidence identified after filing of returns). Accordingly, it is Ameziane's position that the government has failed to comply with Part I.D.1 of the CMO, and that this failure does not trigger the time period under Part I.G for him to file a traverse.

burdensome and threaten national security. The government specifically asks the courts to set a schedule for production of unclassified returns, which would require production of an unclassified return in this case by December 12, 2008. *See* Gvt. Motion at 31. The government also seeks a new schedule for "generalized briefing" regarding a presumption in favor of the government's evidence and the admissibility of hearsay evidence – matters already briefed at length before Judge Hogan. *Id.* In addition, the government seeks a staggered schedule for other proceedings in these cases, which, if accepted, might delay merits hearings in the detainee cases until the end of 2009 or perhaps early 2010.[7] Even if reconsideration were granted, which it should not be, these requests should be denied.[8]

The government had the opportunity to propose modifications to the CMO in the context of this case. Instead, they have attempted to seek a blanket stay of the deadlines set forth in the CMO. In doing so, the government has failed to address whether its proposed modifications are necessary or relevant in the context of this particular case. For instance, the government argues at length that the CMO's provisions concerning the production of exculpatory evidence and other discovery are improper because they do not require a showing of relevance or materiality. *See*, *e.g.*, Gvt. Motion at 6, 14, 22-23. But the government does not address whether all or a portion

---

[7] The government also proposes for this first time in this case to require each detainee to file a "preliminary traverse" shortly after production of the unclassified return but before any discovery proceeds. Gvt. Motion at 31-32. Ameziane objects to such a procedure, which is plainly intended to afford the government a preview of his trial strategies and counter-evidence, and to limit the government's discovery obligations. Such a procedure has already been rejected by Judge Sullivan and Judge Leon in other cases, and should be rejected here. *See*, *e.g.*, Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (Judge Sullivan: "I think that would be inappropriate. I don't think that would be beneficial for the petitioner in this case."); *Sliti v. Bush*, No. 05-429 (RJL) (D.D.C. Oct. 24, 2008 Status Conference); *Ghazy v. Bush*, No. 05-2223 (RJL) (D.D.C. Oct. 23, 2008 Status Conference).

[8] Ameziane does not object to the December 12, 2008 deadline for production of an unclassified return in his case, as ordered by the Merits Judge on November 24, 2008.

of Ameziane's specific requests for exculpatory evidence and other discovery already satisfy its proposed requirements of relevance or materiality. The government also questions whether it should be required to produce classified information to counsel for detainees who lack security clearances at the same classification level as the information at issue. But the government fails to consider that no fewer than three of Ameziane's attorneys currently hold security clearances at the "Top Secret//SCI" level or that they have a "need to know" classified information that is exculpatory or otherwise material to Ameziane's case.

To the extent the government seeks modifications to the CMO, the Court should require the government to propose those modifications in context of the specific facts and circumstances of this case to determine whether such modifications are necessary or appropriate. That approach is consistent with the rulings by the Merits Judge on November 24, 2008, requiring the government to produce unclassified returns and identify exactly which documents and information it intends to rely on in its case-in-chief, thereby potentially limiting any issues concerning exculpatory evidence, other discovery or the use of classified information. In addition, by moving away from open-ended, generalized concerns that may not be relevant to this case, that approach will likely result in this case proceeding more quickly and efficiently to proceedings on its merits, including perhaps resolution by motion for summary judgment or a trial on March 2, 2009.

In the meantime, the government should be required to proceed in compliance with the deadlines set forth in the CMO, as modified by the Merits Judge, to ensure that this case proceeds expeditiously. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay

can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Ameziane has been in prison for nearly seven years without charge or trial and this case should not be stayed any longer.

## II. THE COURT SHOULD STRIKE THE HAYDEN DECLARATION

On November 19, 2008, two of Ameziane's attorneys who hold security clearances at the "Top Secret//SCI" level requested permission to review the Hayden Declaration, submitted *in camera* and *ex parte*, at the Secure Facility SCIF. The government denied that request without explanation. Accordingly, the Court should strike the Hayden Declaration.

While the government unquestionably has a substantial interest in preventing the unauthorized disclosure of classified information, it should not be permitted to rely on secret evidence to delay Ameziane's habeas hearing any more than it should be permitted to offer secret evidence in support of Ameziane's detention at a habeas hearing. The Supreme Court was clear in *Boumediene v. Bush* that an "adversarial character" is necessary to habeas proceedings.

13

*See* 128 S. Ct. 2229, 2273 (2008). The submission and consideration of a secret declaration deprive Ameziane – and the courts – of the benefits of the adversarial process in habeas. *Cf. Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) ("We think it clear that this court cannot discharge its responsibility . . . unless a petitioner's counsel has access to as much as is practicable of the classified information regarding his client. Counsel simply cannot argue, nor can the court determine, whether a preponderance of the evidence supports the [government's] status determination without seeing all the evidence."). There is also no legitimate basis to deny Ameziane's counsel access to the Hayden Declaration because, as indicated above, they hold security clearances at the "Top Secret//SCI" level, which indicates they can be trusted with information up to that level. *See Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004) (Kollar-Kotelly, J.) ("[T]he Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance.").

To the extent the government seeks to delay this case based even in part on the Hayden Declaration, that declaration effectively denies Ameziane habeas relief. The government's proposed delay is substantive, not procedural. In other words, delay means more indefinite detention, and that *itself* is the harm that Ameziane filed a habeas petition in order to remedy three and a half years ago. So grievous is that harm, and so fundamental the right to be protected from it, that the right to impair habeas corpus is limited by the Suspension Clause of the Constitution. Even an adjudicated criminal alien who has never made an entry into the United States, and has no right in law to be here, must be released into the United States when faced with the prospect of indefinite detention. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005). Indeed, the need for a prompt hearing is never greater than where, as here, a petitioner has been

14

afforded no prior judicial review. *See Boumediene*, 128 S. Ct. at 2267 ("[C]ommon-law habeas was, above all, an adaptable remedy. . . . It appears that the common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention."); *id.* at 2269 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. . . . The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. . . . [T]he writ must be effective."); *Rasul v. Bush*, 542 U.S. 466, 473-75 (2004); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (recognizing if delay in deciding habeas petitions were routinely permissible, absent good reason, "the function of the Great Writ would be eviscerated"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate for any delay.").

Moreover, the government should not be permitted to rely on an *ex parte* classified document without establishing good cause to believe that disclosure of the secret information to security-cleared counsel for the detainees would actually threaten national security. The mere invocation of "national security" is insufficient to prolong the already indefinite detentions of Ameziane or the other detainees. Nor would absolute judicial deference on such matters of national security be consistent with the separation of powers. *See Coldiron v. DOJ*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("No matter how much a court defers to an agency, its review is not vacuous. An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.'") (citations and internal quotation marks omitted); *Boumediene*, 128

15

S. Ct. at 2277 ("Security subsists, too, in fidelity to freedom's first principles. . . . Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person.").

### III. THIS CASE SHOULD BE TRANSFERRED TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS

This case was initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this court may alter that framework based on the particular facts and circumstances of their individual cases. That is exactly what the Merits Judge in this case has already begun to do. Proceeding on an individual case-by-case basis is the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the Habeas Corpus Statute. Accordingly, Ameziane requests that this case be transferred back to the Merits Judge for all further proceedings. If there are issues that need to be addressed after the government narrows its case on December 18, 2008, the Merits Judge is best suited to address those issues in the context of this case and ensure that this case is resolved by March 2009.

Date: New York, New York
November 26, 2008

Respectfully submitted,

Counsel for Petitioner:


/s/ J. Wells Dixon
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Pardiss Kebriaei (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423