# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | |
| GUANTANAMO BAY DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |
| SHARAF AL SANANI | Civil Action No. 05-CV-2386 (RBW) |
| and | |
| ALI SHER HAMIDULLAH, | |
| Petitioners, | |
| v. | |
| GEORGE W. BUSH, *et al.*, | |
| Respondents. | |
| SHAKHRUKH HAMIDUVA, | Civil Action No. 08-CV-1221 (CKK) |
| Petitioner, | |
| v. | |
| GEORGE W. BUSH, *et al.*, | |
| Respondents. | |

### PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL AMENDED ORDERS

Petitioners Sharaf Al Sanani ("Al Sanani"), Alishir Hamidullah ("Hamidullah"), and

Shakhrukh Hamiduva ("Hamiduva") (collectively, "Petitioners") hereby oppose the

Government's Motion for Clarification and Reconsideration of this Court's November 6, 2008

Case Management Order and Supplemental Amended Orders or, In the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292 (b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal (the "Motion").

## PRELIMINARY STATEMENT

On July 18, 2008, after being detained for six-plus years at Guantanamo Bay, Cuba, counsel for Petitioner Hamidullah was notified that Hamidullah had been "[a]pproved for release/transfer." *See* Respondents' Status Report and Response to Court's July 11, 2008 Order, Civ. A. No. 05-2386 (Doc. No. 516, Ex. 1, Part 6). On August 1, 2008, counsel for Petitioner Hamiduva was notified that Hamiduva, too, had been approved for "release or transfer" and that he "has not been charged with crimes triable by military commission under the Military Commissions Act of 2006." *See* Status Report, Civ. A. No. 08-1221 (Doc. No. 6). Thus, for at least the last four months of their nearly seven years at Guantanamo Bay, both Hamidullah and Hamiduva have been held knowing that the Government does not intend to defend their detentions. At this time, Al Sanani has not been cleared for release or transfer.[1]

On September 19, 2008, Judge Hogan issued an Order permitting Respondents to avoid the Court's previously-imposed filing deadlines for factual returns for petitioners "approved for transfer or release from the United States Naval Base at Guantanamo Bay, Cuba." *See, e.g.,* September 19, 2008 Order, Civ. A. No. 08-1221 (Doc. No. 16). In so doing, Judge Hogan effectively relieved Respondents' of their duty to engage in the habeas corpus litigation for both Hamidullah and Hamiduva. To combat the ill effects of this ruling, the undersigned counsel, along with others similarly situated, filed a motion for status conference with Judge Hogan, requesting an opportunity to be heard as to why the "cleared for release/transfer" designation was

---

[1] That is not to say, however, that Al Sanani has not actually been cleared for release. Counsel for Petitioners is aware of at least two instances where the government mistakenly identified a petitioner as not having been approved for release or transfer, when in fact, he had been.

2

not meaningful relief and why the filing of factual returns for these individuals was still necessary. *See, e.g.,* Motion, Civ. A. No. 08-1221 (Doc. No. 20). Although that motion has been fully briefed for at least two months, it remains pending before Judge Hogan, and counsel for Hamidullah and Hamiduva does not expect Respondents to file factual returns in either of their cases.

The deadlines imposed by Judge Hogan's Case Management Order ("CMO") are in large part triggered by Respondents filing of the factual return. Thus, for all intents and purposes, Respondents' Motion only directly applies to Al Sanani, whom is still waiting the filing of his factual return (classified or unclassified). In the interest of completeness, however, and to ensure that Hamidullah and Hamiduva's positions have been stated on the record should the Government actually file factual returns or be ordered to do so by the Merits Judges, each of the foregoing Petitioners join in this opposition.

**ARGUMENT**

**I. RESPONDENTS' MOTION SHOULD BE DENIED AS IT FAILS TO MEET THE STANDARD FOR MOTIONS FOR RECONSIDERATION.**

Respondents have not met the standard governing motions for reconsideration. "A motion for reconsideration . . . will not be lightly granted." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. DOD*, 199 F.3d 507, 511 (D.C. Cir. 2000).

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell*, which requires "determining,

3

US2000 11144090.1

not meaningful relief and why the filing of factual returns for these individuals was still necessary. *See, e.g.,* Motion, Civ. A. No. 08-1221 (Doc. No. 20). Although that motion has been fully briefed for at least two months, it remains pending before Judge Hogan, and counsel for Hamidullah and Hamiduva does not expect Respondents to file factual returns in either of their cases.

The deadlines imposed by Judge Hogan's Case Management Order ("CMO") are in large part triggered by Respondents filing of the factual return. Thus, for all intents and purposes, Respondents' Motion only directly applies to Al Sanani, whom is still waiting the filing of his factual return (classified or unclassified). In the interest of completeness, however, and to ensure that Hamidullah and Hamiduva's positions have been stated on the record should the Government actually file factual returns or be ordered to do so by the Merits Judges, each of the foregoing Petitioners join in this opposition.

**ARGUMENT**

**I. RESPONDENTS' MOTION SHOULD BE DENIED AS IT FAILS TO MEET THE STANDARD FOR MOTIONS FOR RECONSIDERATION.**

Respondents have not met the standard governing motions for reconsideration. "A motion for reconsideration . . . will not be lightly granted." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. DOD*, 199 F.3d 507, 511 (D.C. Cir. 2000).

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell*, which requires "determining,

3

US2000 11144090.1

within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. *See Singh v. S. Asian Soc. of George Wash. Univ.*, 572 F. Supp. 2d 11, 12 (D.D.C. 2008).

Respondents make no attempt to actually argue that the Court should reconsider its prior decision under the *Cobell* standard. Instead, they argue that their Motion should be granted because the Court has discretion to reconsider its prior rulings. While Respondents are correct that the Court does have discretion, an exercise of such discretion in this case is not what justice requires. Respondents do not argue that the Court has misunderstood a party, made a decision outside the adversarial issues presented to it, or made an error of apprehension. Further, Respondents do not argue that there has been any change in the law or facts governing the case. Instead, Respondents simply reargue the issues previously considered by the Court and restate verbatim their arguments from their Brief Regarding Procedural Framework Issues. Specifically, Respondents argue that the discovery provisions in the Court's CMO are too broad and should be more limited than those applicable to criminal defendants and that compliance with the CMO will be unduly burdensome.

Both of these arguments were fully briefed in the parties' briefs addressing procedural framework issues. Respondents' positions were considered and rejected by Judge Hogan when he crafted the CMO and by Judge Walton when he modified the CMO. The court's discretion on a motion for reconsideration is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle

4

for it again." *Singh*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations omitted), *judgment vacated on other grounds*, 508 F.3d 1097 (D.C. Cir. 2007). Having already battled over the terms of the CMO, the Court should reject Respondents' attempt to relitigate these issues and deny their Motion for Reconsideration.

## II. EVEN IF RECONSIDERATION WERE GRANTED, THE REQUESTED RELIEF SHOULD BE DENIED

The only arguably "new" relief requested by Respondents includes relief from the deadlines for compliance with the CMO, which Respondents contend would be unduly burdensome and threaten national security. Respondents specifically ask the courts to set a schedule for production of unclassified returns. *See* Motion at 31. Respondents also seek a new schedule for "generalized briefing" regarding a presumption in favor of Respondents evidence and the admissibility of hearsay evidence – matters already briefed at length before Judge Hogan. *Id.* In addition, Respondents seek a staggered schedule for other proceedings in these cases, which, if accepted, might delay merits hearings in the detainee cases until the end of 2009 or perhaps early 2010.[2] Even if reconsideration were granted, which it should not be, these requests should be denied.

Respondents had the opportunity to propose modifications to the CMO in the context of this case. Instead, they have attempted to seek a blanket stay of the deadlines set forth in the CMO. In doing so, Respondents have failed to address whether the proposed modifications are necessary or relevant in the context of these particular cases. For instance, Respondents argue at

---

[2] The government also proposes for this first time in this case to require each detainee to file a "preliminary traverse" shortly after production of the unclassified return but before any discovery proceeds. Motion at 31-32. Petitioners object to such a procedure, which is plainly intended to afford the government a preview of trial strategies and counter-evidence, and to limit the government's discovery obligations. Such a procedure has already been rejected by Judge Sullivan and Judge Leon in other cases, and should be rejected here. *See*, *e.g.*, Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (Judge Sullivan: "I think that would be inappropriate. I don't think that would be beneficial for the petitioner in this case."); *Sliti v. Bush*, No. 05-429 (RJL) (D.D.C. Oct. 24, 2008 Status Conference); *Ghazy v. Bush*, No. 05-2223 (RJL) (D.D.C. Oct. 23, 2008 Status Conference).

length that the CMO's provisions concerning the production of exculpatory evidence and other discovery are improper because they do not require a showing of relevance or materiality. *See*, *e.g.*, Motion at 6, 14, 22-23. But Respondents do not address whether all or a portion of Al Sanani's specific requests for exculpatory evidence and other discovery already satisfy its proposed requirements of relevance or materiality. Respondents also questions whether it should be required to produce classified information to counsel for detainees who lack security clearances at the same classification level as the information at issue. But Respondents fail to consider that one of Petitioners' counsel currently holds a security clearance at the "Top Secret-SCI" level or that counsel has a "need to know" classified information that is exculpatory or otherwise material to Petitioners' cases.

To the extent Respondents seek modifications to the CMO on the ground of undue burden, the Court should require Respondents to propose those modifications in context of the specific facts and circumstances of Petitioners' cases to determine whether such modifications are necessary or appropriate. By moving away from open-ended, generalized concerns that may not be relevant to this case, that approach will likely result in these cases proceeding more quickly and efficiently to proceedings on its merits.

In the meantime, Respondents should be required to proceed in compliance with the deadlines set forth in the CMO, as modified by Judge Walton, to ensure that this case proceeds expeditiously. Because this is a habeas case, Respondents bear a higher burden to justify delay than they would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas

6

proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Petitioners have been in prison for nearly seven years without charge or trial and these case should not be stayed any longer.

## III. THE MOTION SHOULD BE DENIED FOR FAILURE TO MEET AND CONFER

Respondents' Motion should also be denied because counsel for the government failed to meet and confer with counsel as required by Local Civil Rule 7(m). Simply stated, Respondents made no good faith attempt to determine whether counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On Friday, November 14, 2008, counsel for Respondents sent an email to an undisclosed list of counsel for the detainees stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." Respondents offered no further explanation. Nor did counsel for Respondents make any attempt to narrow the areas of disagreement concerning the forthcoming motion for reconsideration. As Respondents concedes in the Motion, "[m]any [counsel for the detainees] requested details regarding the motion that the Respondents were not in a position to discuss at the time." Motion

at 3 n.2.  Accordingly, because counsel for Respondents failed to comply with Local Civil Rule 7(m), the Motion should be denied on this basis alone.  Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly.  *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[3]

### IV. RESPONDENTS HAVE NOT MET THE STANDARD FOR INTERLOCUTORY REVIEW

By the express terms of Section 1292(b), Respondents' Motion for interlocutory appeal should be rejected.  The statute states that:

> When a district judge, in making in civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*, he shall so state in writing in such order.  The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b) (emphasis added).  Not only does Respondents' Motion not "seek[] [to] materially advance the ultimate termination of the litigation," their aim is the exact opposite—to delay and protract the litigation's ultimate resolution.  As such, the Court should deny Respondents' Motion for certification for appeal.

Section 1292(b) "allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals."  *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  Merely satisfying § 1292(b)'s requirements, however, "will not insure interlocutory appeal" because §1292(b) "was designed to be a rarely used exception to the final judgment rule."  *Nat'l Asbestos Workers Med. Fund v. Philip Morris,*

---

[3] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plain-tiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

*Inc.*, 71 F. Supp. 2d 139, 161 (E.D.N.Y. 1999). Although §1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 865. The legislative history and statutory design of §1292(b) make clear that the statute vests district court judges with discretion as to whether to certify cases for interlocutory appeal even when the requirements of the statute are met. *Id.* at 163-64.

Notably, in all but one of the cases cited by Respondents in their Motion, the court either denied certification under §1292(b) or held that certification under §1292(b) was not proper.[4] In the only case in which a certificate of immediate review was issued, *In re Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000), the court concluded that its ruling that jurisdictional discovery in that case should proceed under the Federal Rules rather than the Hague Convention was an important issue that many other courts also would face. *Id.* at *1-2. In direct contrast, Respondents in this case explicitly state in their Motion for Clarification and Reconsideration that these *habeas* cases lack any precise historical parallel. (Mot. at 35.) The court in *National Asbestos* specifically held that cases involving unique factual

---

[4] Three of the cases cited by Respondents were decided under the collateral order doctrine, which differs from discretionary appeals under § 1292(b). *See Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997); *United States v. Rostenkowski*, 59 F.3d 1291, 1296 (D.C. Cir. 1995), *opinion supplemented on denial of rehearing*, 68 F.3d 489 (D.C. Cir. 1995); *United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003), *subsequent determination*, 347 F. 3d 951 (D.C. Cir. 2003). Under the collateral order doctrine, a district court order qualifies for immediate appeal as a "final order" under §1291 if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) [would be] effectively unreviewable on appeal from a final judgment." *Rostenkowski*, 59 F.3d at 1296 (quotation marks omitted). The CMO at issue does not qualify for immediate appeal under the collateral order doctrine because even if it satisfies the second or third prongs of this test, it does not conclusively determine any disputed questions. The CMO instead sets out the framework under which the district court will proceed to resolve the questions before it, a framework that leaves a great deal of discretion in the district court to make evidentiary rulings.

and legal disputes are not appropriate for interlocutory appeal. 71 F. Supp. 2d at 163. Although the court in *Vitamins Antitrust* certified the interlocutory appeal, it also stated that "interlocutory appeals under 28 U.S.C. §1292(b) are rarely allowed, and the party seeking interlocutory review has the burden of persuading the court that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Vitamin Antitrust*, 2000 WL 33142129, at *1 (quoting *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996)).

The court in *National Asbestos*, 71 F. Supp. 2d at 163, in emphasizing that §1292(b) is discretionary as opposed to mandatory, stated several factors for district judges to weigh in determining whether an interlocutory appeal is an efficient use of judicial resources:

> (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

*Id.* Applying these factors to the facts of this case, an interlocutory appeal would not be an efficient use of judicial resources.

Respondents rely on *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d. Cir. 1978) for their argument that a controlling question of law "include[s] a procedural determination that may importantly affect the conduct of an action." The *Duplan* court goes on to state in the same footnote, however, that the "critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation" *Id*. An appeal of the CMO at issue here would slow down rather than accelerate the disposition of this already protracted litigation. The facts in these *habeas* cases have not been fully developed and an

10

immediate interlocutory appeal would "unduly interfere with discovery . . .." *Nat'l Asbestos*, 71 F. Supp. 2d at 167.

The U.S. District Court for the District of Columbia and several Circuit Courts have held that "discovery orders 'generally never will involve a controlling question of law.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 23 (D.D.C. 2002) (quoting *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994); *see also In re City of Memphis*, 293 F.3d 345, 351 ("A ruling on the admissibility of evidence is reviewed for abuse of discretion. An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under §1292(b).") (citation omitted). The court in *Judicial Watch* emphasized that when the real difference of opinion lies between one of the parties and the court, rather than between precedential authority, there is not substantial ground for difference of opinion, as required by §1292(b). 233 F. Supp. at 24-25. As Respondents' issues with the CMO stem from the burdens that the Order places on Respondents rather than precedent, these issues do not justify an interlocutory appeal.

## CONCLUSION

The cost of delay borne by these Petitioners has been unimaginable. The issues Respondents raise in their Motion have been litigated. Accordingly, Respondents' Motion should be denied in its entirety and Respondents should be ordered to comply with the deadlines set out in Judge Hogan's November 6, 2008 Case Management Order, as modified by Judge Walton's November 12, 2008 Order.

Respectfully submitted this 26th day of November, 2008,

                /s/ John R. Gibson
A. STEPHENS CLAY, IV
JAMES F. BOGAN III
C. ALLEN GARRETT, JR.
JOHN R. GIBSON
DANIEL G. SCHULOF
KILPATRICK STOCKTON LLP
1100 Peachtree St.
Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404)815-6500
Facsimile: (404) 815-6555

.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2008, I caused the foregoing "PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL AMENDED ORDERS" to be filed and served electronically to the counsel of record in the above-captioned matter via the CM/ECF system.

    /s/ John R. Gibson
JOHN R. GIBSON
KILPATRICK STOCKTON LLP
1100 Peachtree St. NE
Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404)815-6500
Facsimile: (404) 815-6555

*Counsel for Petitioner*