IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GUANTANAMO BAY | ) | Misc. No. 08-442-(TFH) |
| DETAINEE LITIGATION | ) | |
| | ) | |
| AL HAMANDY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 05-CV-2385 (RMU) |
| | ) | |
| v. | ) | |
| | ) | |
| BUSH, *et al*., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| HAMOUD ABDULLAH HAMOUD | ) | |
| HASSAN AL WADY, | ) | |
| | ) | Civil Action No. 08-CV-1237 (RMC) |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

I.

<u>INTRODUCTION</u>

Petitions in these cases were filed on December 13, 2005 and July 17, 2008. The

government filed a classified return on October 31, 2008.  The government has not yet filed any

unclassified return.[1]

---

[1]  The first petition was filed under the name of Houmad Warzly on December 13, 2005
in conjunction with a number of other petitions filed in the case of *Al Hamandy, et al. v. Bush, et
al.*, No. 05-cv-2385 (UNA).  The second petition was filed as an individual case under the name
of Hamoud Abdullah Hamoud Hassan Al Wady on July 17, 2008 in the case of *Hamoud
Abdullah Hamoud Hassan Al Wady v. Bush, et al.*, No. 08-1237 (RMC).  Counsel herein were

Dockets.Justia.com

On November 6, 2008, the judge assigned to handle coordinated, general issues in the Guantanamo detainee cases, United States District Judge Thomas F. Hogan, filed a Case Management Order (hereinafter "CMO") delineating various procedures to be followed in the cases, subject to modification by the "merits judges" in individual cases. On November 18, 2008, the government filed a "Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders Or, in the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b), and to Stay Certain Obligations Pending Resolution of the Motion in Any Appeal."

Petitioner hereby adopts and joins in all other briefing filed on the issues raised in the government's motion, including both the original briefing on procedural issues filed before Judge Hogan, *see In re: Guantánamo Bay Detainee Litigation*, Misc. No. 08-442 (TFH), Docket Nos. 206, 231, and supplemental briefing filed by other counsel on those issues and the lack of any basis for reconsideration or certification for interlocutory appeal. This response is filed to add to and reiterate some of those arguments, suggest at least one expansion of the discovery provisions in the CMO, and point out some special circumstances of this particular case. The government's motion should be denied as to the discovery questions it raises and deferred as to the procedural issues, because the government's arguments regarding discovery are not well taken, and its procedural arguments, while also not well taken, can be more carefully considered when applied

---

initially appointed in just the second of these cases but recently made a motion for appointment and substitution in the first case based on the representations of the government and the Center for Constitutional Rights that both petitioners were the same individual. As indicated in a status report filed in No. 05-cv-2385-UNA on November 12, 2008, counsel are scheduled to meet with Mr. Al Wady the week of December 1, and possibly the week of December 15 as well, and counsel wish to have one or both those meetings with Mr. Al Wady before either petition is dismissed on grounds of duplication. The classified return filed by the government was filed under the Al Wady name but the 05-cv-2385 case number.

to specific evidence that is highlighted through discovery and more complete briefing.

As to scheduling – *in this particular case*, because counsel were only recently appointed, only recently received security clearances, and have specific trips scheduled on December 2 and December 14 to meet with petitioner and two other clients for the first time – there should be two modifications of the schedule set forth in the CMO. First, while the Court is to some extent presented with a fait d'accompli as a result of the government filing its motion just before the deadline for filing of the unclassified return, the Court should direct the government to file its unclassified return in this case no later than December 1, 2008, rather than the December 12, 2008 date the government appears to be requesting. Second, in light of the fact that counsel were only recently appointed and are only now being able to meet with petitioner, scheduling for filing of a traverse and other briefing should be modified to (a) vacate the definitive dates for filing those pleadings and (b) substitute a status conference in mid-January at which specific dates for filing of a traverse and other briefing shall be set.

Finally, the issues raised in this response are more properly addressed by the merits judges, because petitioner's position regarding scheduling is case-specific and, as to discovery, petitioners are requesting an expansion of the CMO. Such consideration by the merits judge is also more consistent with the suggestion in the CMO that further modifications of the CMO should be by the merits judge.

\*    \*    \*    \*

## II.

## <u>ARGUMENT</u>

A.     THE GOVERNMENT HAS SATISFIED NEITHER THE STANDARDS FOR
RECONSIDERATION BY THIS COURT NOR THE STANDARDS FOR CERTIFICATION
FOR INTERLOCUTORY APPEAL.

Initially, the government has not met the standard for reconsideration in the district court,

which is set by Rule 54(b) of the Federal Rules of Civil Procedure, *see Singh v. George*

*Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  A court may reconsider an order

pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the

adversarial issue presented to the Court by the parties, has made an error not of reasoning but of

apprehension, or where a controlling or significant change in the law or facts [has occurred] since

the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272

(D.D.C. 2004)).  In general, a court will only consider a motion for reconsideration when the

moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new

evidence not previously available; or (3) a clear error of law in the first order." *Keystone*

*Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003).  Motions for

reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office of Max. S.*

*Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F.

Supp. 2d at 101.

The standard for reconsideration is not met here.  Indeed, nothing about the government's

motion is particularly new.  There are no new legal issues presented – all were previously

addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan misunderstood or overlooked in the CMO. Rather, what the government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO.

Similarly, the government has not met the standard for certification for interlocutory appeal. In making this suggestion, the government ignores the most significant consideration. Petitioner has been incarcerated for *years – without even having had a judicial hearing*. To delay proceedings yet again is simply more prejudice to petitioner.

Certainly there should not be such additional delay without identification by the government of much more specific prejudice involving specific discovery and/or classified information in a specific case. Indeed, this is another reason why, at this stage, issues in these cases should be decided by the merits judges in individual cases.

The government cannot even come close to satisfying the requirement that the order "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b), *quoted in* Government's Motion, at 32. It seems highly doubtful that the government is simply going to release all of the detainees if it loses an appeal of these discovery and other procedural issues. And the detainees will certainly not withdraw their petitions.. There is thus not a snowball's chance in Hades of this appeal resulting in – or even leading closer to – termination of the litigation.

As for the government's claim that an interlocutory appeal is appropriate because the CMO will "materially affect the course of the litigation," Government's Motion, at 33 (quoting *Judicial Watch, Inc. V. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)),

that is certainly not clear at this point. Perhaps that might be true in some specific case, involving some particular item of discovery or classified information, but that only highlights why it is now time to deal with these cases individually in a case-specific and issue-specific fashion. Whether an interlocutory appeal is appropriate in some particular case regarding some particular discovery, classified information, or other procedural issue is also doubtful, but that is something that should be decided when the particular issue is presented. What the government is seeking now is really no more than an advisory opinion on general questions of discovery and other procedural issues.

B.      THE COURT SHOULD NOT NARROW THE CMO PROVISIONS REGARDING DISCOVERY, AND, INDEED, SHOULD EXPAND THEM IN LINE WITH THE RECENT MODIFICATION OF THE CMO BY JUDGE KESSLER.

To begin, a basic premise of the government's argument – that there should be lesser discovery rights in these proceedings than in a criminal case and/or a habeas corpus proceeding challenging a prior criminal convictions – is, at the very least debatable. Discovery is actually *less* necessary in those cases, because there are – or were – alternative protections. In a new criminal case, the defendant will have the right to confront witnesses, the right to compulsory process, and all of the other protections provided in new criminal cases by the Bill of Rights. In the more typical modern habeas corpus proceeding in which a defendant is challenging a criminal conviction, the petitioner will have already had a criminal trial and so already had a full opportunity for discovery under the applicable rules of criminal procedure and already have been provided the full access to exculpatory material required by *Brady v. Maryland*, 373 U.S. 83

(1963).  He will also have had the full opportunity to confront and cross-examine all the

witnesses against him and all the other rights that accompany a criminal trial.

The habeas corpus proceedings here, in contrast, are the one and only opportunity

petitioners have to contest the allegations against them.  It arguably follows from this that

discovery should be *more* permissive than in the sort of habeas corpus proceeding that is more

common in modern practice. Although the Supreme Court acknowledged in *Boumediene v. Bush*,

128 S. Ct. 2229 (2008) that "habeas corpus proceedings need not resemble a criminal trial, the

Court also stressed that "the writ must be effective," including at a minimum, "a meaningful

review of both the cause for detention and the Executive's power to detain."  *Id.* at 2269.  And

the *Boumediene* Court stressed that habeas proceedings for executive detainees must be

substantially broader than proceedings for those who have already been convicted:

> [W]here relief is sought from a sentence that resulted from the judgment of
> a court of record . . . considerable deference is owed to the court that
> ordered confinement . . . because it can be assumed that, in the usual
> course, a court of record provides defendants with a fair, adversary
> proceeding. . . .The present cases fall outside these categories, however;
> for here the detention is by executive order.
>
> Where a person is detained by executive order, rather than, say,
> after being tried and convicted in a court, the need for collateral review is
> most pressing. A criminal conviction in the usual course occurs after a
> judicial hearing before a tribunal disinterested in the outcome and
> committed to procedures designed to ensure its own independence.  These
> dynamics are not inherent in executive detention orders or executive
> review procedures.  In this context the need for habeas corpus is more
> urgent.

Boumediene, 128 S. Ct. at 2269 (2008).[2]

---

[2]  Contrary to the government's suggestion, the Supreme Court's decision in *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004), does not support its narrow view.  First, *Hamdi* is a plurality opinion that enjoys no precedential force.  *See Hamdi*, 542 U.S. at 509-39 (O'Connor, J., announcing judgment of court, Rehnquist, C.J., Kennedy and Breyer, J.J., joining).  Second, language from the decision purporting to restrict habeas review was pure dicta because the *Hamdi* Court did not address the scope of habeas proceedings when the writ is

This language could be read to suggest that *broader* discovery rights are appropriate where the underlying protections of a criminal trial were never present. But, in any event, the government's argument that the discovery provided for in the CMO is broader than in a criminal trial is not correct.

1.    Rule 16 Requirements.

To begin, the government is wrong in its claim that the discovery provided for in the CMO is broader than that provided for in Rule 16 of the Federal Rules of Criminal Procedure. First, the provision for discovery of documents – which requires disclosure of all documents referenced in the factual return, *see* CMO, § I.E.1(1) – is not broader than in a criminal case. To the contrary, this provision of this CMO is comparable to the provision in Rule 16(a)(1)(E)(ii), which is of course just one of the three categories of documents required to be produced by that

---

unlawfully suspended. 542 U.S. at 525. As the *Boumediene* decision makes clear, any continued reliance on *Hamdi* is misplaced:

> Setting aside the fact that the relevant language in *Hamdi* did not garner a majority of the Court, it does not control the matter at hand. None of the parties in *Hamdi* argued there had been a suspension of the writ. The § 2241 habeas corpus process remained in place. Accordingly, the plurality concentrated on whether the Executive had the authority to detain and, if so, what rights the detainee had under the Due Process Clause. True, there are places in the *Hamdi* plurality opinion where it is difficult to tell where its extrapolation of § 2241 ends and its analysis of the petitioner's Due Process rights begins. But the Court had no occasion to define the necessary scope of habeas review, for Suspension Clause purposes, in the context of enemy combatant detentions.

*Boumediene,* 128 U.S. at 2269-70. Quite tellingly, the only discussion from the *Hamdi* plurality endorsed by the *Boumediene* majority was its expansive approach to habeas jurisdiction:

> The closest the [*Hamdi*] plurality came to doing so was in discussing whether, . . . § 2241 should be construed to forbid the District Court from inquiring beyond the affidavit Hamdi's custodian provided in answer to the detainee's habeas petition. The plurality answered this question with an emphatic "no."

*Boumediene*, 128 S. Ct. at 2270 (internal citations omitted).

subparagraph of the rule.  Rule 16(a)(1)(E)(ii) requires the disclosure of all documents which "the government intends to *use*" (emphasis added) in its case in chief, and the courts which have considered the question have held that the word "use" includes not just those documents marked and offered in evidence, but also all documents "which will be relied on or referred to in any way by any witness called by the government during its case in chief."  *United States v. Countryside Farms, Inc.*, 428 F. Supp. 1150, 1154 (D. Utah 1977).  *Accord United States v. Jordan*, 316 F.3d 1215, 1250 n.75 (11th Cir. 2003); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989);  *United States v. Shoher*, 555 F. Supp. 346, 352 (S.D.N.Y. 1983); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978).  While the comparison cannot be exact because the initial presentation of evidence in a habeas proceeding is in a written return, a reference to documents in a written return is analogous to the documents being "relied on or referred to in any way" by a witness called at trial.

Second, the government is wrong in its suggestion that the scope of discovery for detainee statements provided for in the CMO is broader than in a criminal trial.  What seems to be the government's main complaint – that there is no requirement of "relevance" as there is in Rule 16(a)(1)(B) –  is not a fair characterization of the CMO.  The CMO does require that the statements to be disclosed "relate to the information contained in the factual return," CMO, § I.E.1(2),  and this seems comparable, if not identical, to "relevance."  And while the CMO does not use the word "substance" which is used in Rule 16(a)(1)(A) with respect to oral statements not already reduced to writing or summarized in a report, that also is subsumed within the requirement that the statement "relate to the information contained in the factual return."  A statement not already reduced to writing will necessarily have to be summarized in some fashion, and the best reading of the word "substance" as used in Rule 16(a)(1)(A) is  that it means a

summary of all relevant "substatements" made within the overall "statement."[3]

It should be noted that the requirement of "relevance" in Rule 16(a)(1)(A) and (B) is not a particularly restrictive limitation, moreover. As explained in one opinion which Professor Wright characterizes in his treatise as "very sensible":

> There is a problem in implementing Rule 16(a)(1)(A) that results from the fact that the Government must determine what evidence in its possession may be relevant before it is fully advised as to the nature of the intended defense. The Government can easily assess what is relevant to its case, but it may not be possible for the government to discern with any certainty what is relevant from the defendant's standpoint. The defendant, on the other hand, has a right to the recorded statements under Rule 16 if they are relevant, but cannot advise the government of their relevance to his case since he may not know of their existence. Under these circumstances, Rule 16(a)(1)(A) can fully serve its intended purpose only if the Government takes a broad view of what is relevant for purposes of this provision. We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert. Ordinarily, a statement made by the defendant during the course of the investigation of the crime charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant. Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made.

*United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982), *quoted in* Charles Alan Wright, *Federal Practice and Procedure: Criminal* § 253, at 85 (3d ed. 2000). As put by the D.C. Circuit: "The requirement that statements made by the defendant be relevant has not generally been held to create a very high threshold. Generally speaking, the production of a defendant's statement has become 'practically a matter of right even without a showing of materiality.'" *United States v. Yunis*, 867 F.2d 617, 621-22 (D.C. Cir. 1989) (quoting *United States v.*

---

[3] The government's additional argument – made in a footnote – that disclosure of even relevant statements is inappropriate because they may be classified information borders on the frivolous. The classified information at issue when the information in question is a detainee's statement is by definition already known to the detainee.

*Haldeman*, 559 F.2d 31, 74 n.80 (D.C. Cir. 1976) (en banc)).

Third, the requirement that the government disclose "information about the circumstances in which such statements of the petitioner were made or adopted," CMO, § I.E.1(3), while not analogous to a specific provision in Rule 16, is appropriate in the unique circumstances of these cases. The petitioners here have in some instances been detained for over seven years. They have been detained in a foreign land and a foreign culture. They have been subjected to what many call torture, and what even the executive branch characterizes as "enhanced interrogation techniques." To expect counsel and petitioner to rely on petitioner's memory alone in these circumstances, *cf. Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1028-29 (7th Cir. 2006) (no *Brady* obligation to tell defendant she was coerced into confessing), *cited in* Government Motion, at 18, would be unreasonable, unwise, and unfair.


    2.    <u>Analogy to Brady Requirements.</u>


A similar concern for fairness is what leads to the next issue – the applicability of, not the *Brady* case itself, but the fundamental concepts and principles underlying *Brady*. The government has agreed to assume some obligation to provide exculpatory evidence, but points out that this CMO sweeps more broadly than the obligation it has agreed to assume. This – and petitioner's request *infra,* to slightly broaden this obligation – pose the question of whether the court can and should order disclosure of reasonably available exculpatory evidence.

Looked at narrowly, *Brady* was just a criminal case, but, looked at more broadly, it was – and is – an application of more general and fundamental due process principles in a context very similar to that in the present case – the deprivation of physical liberty. Indeed, it is more than

just due process; it is what the Supreme Court described as "the rudimentary demands of justice."

*Brady v. Maryland*, 373 U.S. 83, 86 (1963) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112

(1935)). And certainly the "rudimentary demands of justice" must apply in these detainee cases.

*Cf. Boumediene v. Bush*, 128 S. Ct. 2229, 2266 (2008) ("We do consider it uncontroversial,

however, that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to

demonstrate that he is being held pursuant to the erroneous application or interpretation of

relevant law." (Internal quotation omitted.)). *See also id.* at 2267 (noting that "habeas corpus in

this country routinely allowed prisoners to introduce exculpatory evidence that was either

unknown or previously unavailable to the prisoner"). Contrary to the government's suggestion in

its motion, *Brady* has been applied in other habeas corpus proceedings, precisely because the

fundamental principles underlying it extend beyond just the ordinary criminal context. As

explained by one court of appeals:

> In our view, *Brady* impose[s] on the state an ongoing duty to
> disclose exculpatory information . . . . We cannot accept the implicit
> premise of the state's position here, which is that *Brady* leaves state
> officials free to conceal evidence from reviewing courts or post-conviction
> courts with impunity, even if that concealment results in the wrongful
> conviction of an innocent person. It is worth recalling, in this connection,
> that the *Brady* rule was derived from the Due Process Clause of the
> Fourteenth Amendment. "Society wins," the Court wrote, "not only when
> the guilty are convicted but when criminal trials are fair; our system of the
> administration of justice suffers when any accused is treated unfairly."

*Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) (quoting Brady, 373 U.S. at 87). *See also*

*Boumediene*, 128 S. Ct. at 2270 (holding that court that conducts habeas proceeding "must have

the authority to admit and consider relevant exculpatory evidence that was not introduced during

the earlier proceeding")

A more complete passage from *Brady* than that quoted in *Steidl* also suggests the broader

principles of justice which underlie *Brady*.

> Society wins not only when the guilty are convicted, but when criminal
> trials are fair; our system of the administration of justice suffers when any
> accused is treated unfairly.  An inscription on the walls of the Department
> of Justice states the proposition candidly for the federal domain:  "The
> United States wins its point whenever justice is done its citizens in the
> courts."  A prosecution that withholds evidence on demand of an accused
> which, if made available, would tend to exculpate him or reduce the
> penalty helps shape a trial that bears heavily on the defendant.  That casts
> the prosecutor in the role of an architect of a proceeding that does not
> comport with standards of justice, even though, as in the present case, his
> action is not "the result of guile," to use the words of the Court of Appeals.

*Brady*, 373 U.S. at 87-88.  While the Court had a criminal case before it in *Brady* and was

speaking of criminal trials, the passage quoted from the walls of the Department of Justice is not

so limited.  And while the passage speaks of justice done this country's citizens, it is doubtful

that it envisions *injustice* for non-citizens, at least in the form of wrongful physical detention.

Our system of justice suffers when injustice is done to anyone, and our society wins when its

proceedings are fair as to all, be they citizens or not.

Indeed,  given this broader interest in fairness and justice, the Court, rather than

narrowing the discovery rights provided for in the CMO, should broaden them, at least as much

as Judge Kessler has done in her modification of the CMO, which is attached as Exhibit A.

Judge Kessler expanded the government's obligation to disclose exculpatory evidence to include

not just evidence in the government's possession, but also evidence the government could obtain

"through reasonable diligence."  *See* Exhibit A, at 3.  This is appropriate because it more closely

tracks the requirements of *Brady* and therefore more completely advances the principles

underlying it, especially given the international character of these cases and the resulting greater

difficulty of "defense"[4] access to information and evidence.


3.     Right to "Adequate Substitute" for Classified Material Not Disclosed to

Petitioner.


        The government's complaints about the requirement that it provide petitioner with an

"adequate substitute" for any classified information that cannot be provided to petitioner are also

not well-founded.  This requirement – like the other provisions of the CMO discussed in the

preceding sections – is nothing revolutionary.  Rather, it is very similar to how classified

information is handled in other, analogous contexts.

        Specifically, this requirement is very similar to procedures for discovery and disclosure in

hearings under the Classified Information Procedures Act, 18 U.S.C. Appendix 3 (hereinafter

"CIPA").  CIPA anticipates the problem of how to handle classified information in criminal trials

and provides for a procedure comparable to the CMO's "adequate substitute" provision.  With

respect to discovery, CIPA provides for a procedure whereby the government either deletes

certain classified information if it is not relevant, or substitutes a summary of the information or

a government statement admitting relevant facts.  18 U.S.C. App. 3 § 4.  With respect to the use

of information in a hearing, CIPA similarly provides for substitution of either a summary or a

government statement admitting relevant facts. 18 U.S.C. App. 3 § 6(c)(1).

        The CMO's provision for providing an "adequate substitute" for classified information is

_____

        [4]  In this case, the detainee is of course not a "defendant," but a "petitioner."  He is a
"defendant" in the sense of being a person who is incarcerated, however, and so in that sense his
side is the "defense."  The only reason he is not also a "defendant" is because the government is
refusing to give him a trial.

comparable to the summary or statement admitting relevant facts provided for in these CIPA provisions. It also is therefore nothing revolutionary or extreme. Rather, it is a similar effort to balance the social interest of national security against both the individual interest in not being wrongfully incarcerated and the related social interest in not wrongfully incarcerating a potentially innocent person.

The government seems to implicitly acknowledge that the "adequate substitute" requirement is comparable to what CIPA requires but argues that CIPA requires a threshold showing of "materiality" which the CMO does not require. This ignores the fact that the CMO requirement of an "adequate substitute" applies only to the discovery which must be provided under § I.D and § I.E of the CMO. Those sections require disclosure of only "all reasonably available evidence in [the government's] possession that tends *materially* to undermine the information presented to support the government's justification for detaining the petitioner," CMO, § I.D (emphasis added), and documents referenced in the factual return, statements made by the petitioner, and information about the circumstances in which such statements of the petitioner were made, CMO, § I.E. These categories of discovery are on their face material, and so the CMO is comparable to CIPA in this way as well.

\*    \*    \*    \*

C.     GIVEN THAT THE GOVERNMENT HAS ALREADY ALLOWED THE DEADLINE

FOR FILING THE UNCLASSIFIED RETURN TO PASS, THAT DEADLINE IS DE FACTO

EXTENDED, BUT THE EXTENSION SHOULD BE LIMITED, AND, IN LIGHT OF THE

FACT THAT COUNSEL WAS JUST RECENTLY APPOINTED AND IS ONLY NOW BEING

ALLOWED TO MEET PETITIONER,  THE DEFINITIVE DATES FOR FILING OF A

TRAVERSE AND FURTHER BRIEFING ON THE MERITS SHOULD BE VACATED AND

THE COURT SHOULD SET A STATUS CONFERENCE IN MID-JANUARY FOR

FURTHER CONSIDERATION OF APPROPRIATE DATES FOR FILING OF A TRAVERSE

AND OTHER BRIEFING.


     The posture of this petitioner and counsel in this case differs from that of most

Guantanamo Bay detainees.  First, while it appears there is an earlier duplicate petition, the

petition on which counsel were initially appointed was just filed in July of this year.  Second,

counsel was just appointed in August and just received their security clearances in October.

Third, because of the need to obtain security clearances, and the fact that visits to clients at

Guantanamo Bay must be scheduled at least four to six weeks in advance, counsel have not even

met with petitioner yet; rather, their first meetings with him are scheduled – at least presently –

during the weeks of December 1 and December 15.

     In light of this, counsel might well not have objected to a short extension of the

government's deadline in this case, had the government indicated, in a good faith effort to meet

and confer as required by the local rules, what relief it was seeking.  Counsel for petitioner did

respond to the government when it indicated that it was going to file a motion by asking for

further information about what relief the government would be seeking.  *See* Exhibit B.  But the

government ignored this inquiry and simply filed its motion, making its request for an extension essentially a fait d'accompli.

The Court should respond to this refusal to confer in good faith by limiting the relief given to the government – especially in the circumstances of this case. Counsel for petitioner notified the government just two days after it filed its motion – and they would have notified the government earlier had the government made a good faith effort to meet and confer – that they would be departing on December 2 to meet with Mr. Al Wady on December 3 and so would like the unclassified return in this case no later than December 1. *See* Exhibit C. Given this, and given the government's refusal to confer in good faith in advance, the government's request for an extension of the deadline for filing the unclassified return, at least in this case, should be limited to December 1. And the government should also be required to provide the basic minimal mandated discovery, which has also been requested by counsel for petitioner, *see* Exhibit D, by that date.[5]

Further, because of the circumstances of this particular case, the Court should – in this particular case – vacate the deadlines for filing the traverse and further briefs that are set by the CMO generally. Given that counsel were just recently appointed and are meeting with their client for the first time in December, it is not realistic to prepare and file a traverse within 14 days of receiving the unclassified return and the required discovery. It is also too early to estimate what a realistic deadline may be, because that will depend in large part on what petitioner tells counsel when counsel meet with him and what investigation those meetings suggest. What the

---

[5] Unfortunately, an order to this effect may not be realistic at this point, given that the Court will probably not rule on the motion prior to December 1. This further highlights the prejudice created by the government's failure to meet and confer. Assuming the Court does not rule prior to December 1, petitioner requests that the Court order the unclassified return and mandated discovery be provided as quickly as possible.

Court should therefore do is set a status conference in mid-January, by which time counsel will have more information and be able to more intelligently suggest workable dates for filing a traverse and further briefing.[6]

D.    CONSIDERATION OF PROCEDURAL ISSUES RELATED TO THE EVIDENTIARY HEARING, SUCH AS WHEN AN EVIDENTIARY HEARING IS APPROPRIATE, THE PROPRIETY AND SCOPE OF PRESUMPTIONS, AND THE ADMISSIBILITY OF HEARSAY SHOULD BE DECIDED AT A LATER TIME BY THE MERITS JUDGE.

Consideration of the government's arguments regarding various procedural issues related to the evidentiary hearing, such as when an evidentiary hearing is appropriate, the propriety and scope of presumptions, and the admissibility of hearsay, should be deferred at least until after filing of the unclassified return and the traverse and further briefing on the merits. These issues are best resolved as the factual and legal issues become distilled in more detail, in other instances are best resolved in the context of specific cases, and in some instances are best resolved in the context of specific evidence in specific cases.[7]

_____

[6] Counsel for petitioner are not entirely sure what the government means by a "preliminary traverse," *see* Government Motion, at 31, but even that is not necessarily feasible. It is also questionable whether a mere "preliminary traverse" would be helpful. And it could be prejudicial to petitioner if it requires counsel to take a position without the complete information that later discovery and/or investigation will provide.

[7] Another issue which should be considered by the individual merits judges at a later time is the burden of proof which should be placed on the government. Given the potentially indefinite deprivation of liberty at issue in these cases, that burden of proof should be the clear and convincing evidence standard, not the preponderance of evidence standard. While this is not a case-specific or evidence-specific issue, it is an issue that will become more focused when there are actual cases with actual evidence before the court, so it should be reconsidered by the merits judge at a later point in the proceedings.

This is most clearly the case with respect to the question of consideration of hearsay evidence. Evidentiary questions in general, and hearsay issues in particular, are highly context-dependent, and require consideration by the judge before whom the case is tried, when the evidence is offered. Accordingly, any question as to what evidence, including hearsay evidence, should be admissible, what evidence should be excluded, and how to weigh admissible evidence should be left to the sound discretion of the judge holding the evidentiary hearing at the time of – or at least close in time to – the hearing. It is noteworthy that the Federal Rules of Evidence expressly apply in habeas corpus proceedings except to the extent that other statutes or rules provide to the contrary, Fed. R. Evid. 1101(e); *see, e.g., Greiner v. Wells*, 417 F.3d 305, 325-26 (2nd Cir. 2005), and that affidavits, while sometimes admissible, are "disfavored," *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

Similarly case-specific, and possibly evidence-specific consideration, is appropriate as to the question of presumptions. Indeed, this is implicitly recognized by the CMO, which states only that the merits judge "may" accord a rebuttable presumption of accuracy and authenticity to evidence "if the government establishes that the presumption is necessary to alleviate an undue burden." CMO, § II.B.[8] And this makes sense, for whether to accord evidence a presumption – of either authenticity or accuracy – should depend on the evidence in question and what investigation or further inquiry reveals about it. The Court should neither create a blanket rule nor rule on presumptions regarding particular pieces of evidence until there is that opportunity for investigation or further inquiry.

Finally, the government's argument about the standard for holding an evidentiary hearing

---

[8] Not all judges are inclined to allow even this much. Judge Kessler has already modified the CMO, to limit the possibility of presumptions to presumptions about authenticity only. *See* Exhibit A, at 6-7.

should be deferred – or, if considered at all – outright rejected. The standard set forth in the CMO is whether the merits judge "determines that substantial issues of material fact preclude final judgment based on the record." CMO, § III.B.1. This is inherently a case-specific standard – and properly so. If the government is suggesting that factual disputes should be resolved without an evidentiary hearing, it is ignoring the fundamental reason for allowing these habeas proceedings in the first place. That is to assure that a judicial officer "make[s] a determination in light of the relevant law *and facts*." *Boumediene v. Bush*, 128 S. Ct. 2229, 2271 (2008) (emphasis added).

III.

CONCLUSION

The Court – meaning the merits judge – should reject the government's attempts to narrow the discovery requirements set forth in Judge Hogan's CMO and should instead expand them as has Judge Kessler. As to the government's arguments regarding procedural provisions of the CMO, such as the standard for holding an evidentiary hearing, the use of presumptions, and the admissibility of hearsay, the Court should wait and rule after more complete discovery, investigation, and briefing focuses the issues. Finally, as to scheduling, the Court should grant only a short extension of the government's deadline for filing the unclassified return and providing the minimum mandated discovery. Further, in light of counsel's recent appointment, counsel's recently obtained security clearances, and the fact that counsel are only just now having the opportunity to meet with their client, the Court should vacate the deadlines for filing of the

traverse and additional briefing and instead schedule a status conference in mid-January to set a

new schedule for these pleadings.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender


DATED: November 26 , 2008          By _____/S/_____
                                       CRAIG HARBAUGH (D.C. Bar No. 974117)
                                       CARLTON F. GUNN (CA Bar No. 112344)
                                       Deputy Federal Public Defenders
                                       Office of the Federal Public Defender
                                       321 East 2nd Street
                                       Los Angeles, CA 90012-4202
                                       (213) 894-1700; Facsimile: (213) 894-0081
                                       Attorneys for Petitioner