## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— x
   :
IN RE:    :
   :
GUANTÁNAMO BAY    :     Misc. No. 08-442 (TFH)
DETAINEE LITIGATION    :
   :
———————————————————— x
   :
MOHAMMED SULAYMON BARRE,    :
   :
    Petitioner,    :
   :
    v.    :     Civil Action No. 08-1153 (HHK)
   :
GEORGE W. BUSH, *et al.*,    :
   :
    Respondents.    :
   :
———————————————————— x

### OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION, AND CROSS-MOTION TO STRIKE HAYDEN DECLARATION AND TO TRANSFER THIS CASE BACK TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS

Petitioner Mohammed Sulaymon Barre, by and through his undersigned counsel,

respectfully submits this opposition to the government's omnibus motion for reconsideration.

*See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no.

1004) ("Gvt. Motion").  Barre also moves to strike the declaration of CIA Director Michael V.

Hayden, submitted *in camera* and *ex parte*, *see id* (misc. dkt. no. 1005), and to transfer this case

back to Judge Kennedy ("Merits Judge") for all further proceedings.[1]

---

[1] The government objects to the motion to strike.  As to the motion to transfer, the government's position is that Judge Hogan should address the issues related to the CMO and the motion for reconsideration in all of the coordinated detainee cases, including this case.

<u>**PRELIMINARY STATEMENT**</u>

Mohammed Sulaymon Barre is unique among Guantánamo Bay prisoners in three important respects. First, he is the only remaining Guantánamo Bay prisoner from the Republic of Somaliland, a quasi-independent country that declared its independence from Somalia in 1991. Second, having fled to Pakistan from Somalia in the early 1990s in order to avoid persecution, Barre is an internationally recognized refugee under the protection of the United Nations High Commissioner for Refugees ("UNHCR"). UNHCR has provided Barre's counsel with documentation confirming his refugee status, and continues to provide other documentation in support of Barre's habeas case. He is the only remaining United Nations mandate refugee who remains at Guantánamo Bay. Third, Barre was captured from his home in Pakistan on or about November 1, 2001, and has been in U.S. custody longer than almost any other Guantánamo prisoner. His detention has been and continues to be indefinite and unlawful by any standard.

On June 12, 2008, the Supreme Court held that detainees at Guantánamo Bay have a constitutionally-protected right to petition for habeas relief. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). The Court further held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275. The detainee cases are now governed by the Habeas Corpus Statute, 28 U.S.C. § 2241 *et seq.*, which sets forth specific guidelines for prompt resolution of these cases.

Yet the government plainly seeks by its motion for reconsideration to prolong Barre's indefinite detention. The government's motion is simply the latest tactic in a long-standing strategy to deprive Barre and other Guantánamo detainees of any meaningful opportunity to

challenge the legality of their detention through habeas. Although Judge Hogan indicated that the detainee cases should now proceed on an individualized basis – and, indeed, invited the judges of this court to modify the November 6, 2008 case management order in the context of the particular cases assigned to them for final resolution – the government made no objection to that mode of proceeding. Rather, now that Judge Hogan has ruled on preliminary matters relating to coordination and management of these cases, the government seeks to continue litigation essentially on a class-wide basis that is contrary to Judge Hogan's order and serves only to delay consideration of the merits of this case.

The government's motion should be denied for three reasons: (1) because the government failed to meet and confer with Barre's counsel as required by Local Civil Rule 7(m); (2) because the motion fails to establish any basis for reconsideration; and (3) because the motion does not address the particular facts and circumstances of this case, which would not warrant the relief sought by the government – *i.e.*, a further indefinite stay – if reconsideration were granted.[2]

---

[2] Barre also objects to the government's alternate request to certify these issues for appeal and for a stay pending appeal. There is no legitimate basis for an interlocutory appeal of a case management order pursuant to 28 U.S.C. § 1292(b). Nor do the issues raised in the government's motion present substantial ground for difference of opinion. The government's suggestion that further appellate litigation in the detainee cases would materially advance the litigation also strains credulity in light of its consistent, dilatory tactics.

Barre's cross-motion to strike the classified declaration of CIA Director Michael V. Hayden ("Hayden Declaration" or "Hayden Decl.") should also be granted, and this case should be transferred back to the Merits Judge for all further proceedings, for the reasons below.

**BACKGROUND**

On July 10, 2008, this case was transferred to Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session (D.D.C. July 1, 2008). In the nearly five months since then, Barre's case has not proceeded on its merits.[3]

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges posed." *Id.* (misc. dkt. no. 466, at 6) (internal quotation marks omitted).[4]

Barre's factual return was consequently delayed, and still has not been produced to his undersigned counsel in any form. In addition, on September 11, 2008, Barre filed a motion for

---

[3] By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of 6 Bosnian-Algerian petitioners released).

[4] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 917).

an exception to the sequencing for production of factual returns, which has not been decided. *See id.* (misc. dkt. no. 406).

In the meantime, Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (misc. dkt. nos. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") to govern the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at p.2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. The government's motion made no mention of this case specifically. *See* Gvt. Motion.

Finally, on November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026).

# I. THE GOVERNMENT'S BLANKET MOTION FAILS TO PROVIDE ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE

## A. The Motion Should Be Denied for Failure to Meet and Confer

The government's motion should be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Simply stated, the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On Friday, November 14, 2008, counsel for the government sent an email to an undisclosed list of counsel for the detainees, including undersigned counsel, stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." Ex. 1 (attached hereto). The government offered no further explanation. Nor did the government specify the cases in which it intended to file the motion for reconsideration, even after counsel for the detainees requested that information.

Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone. Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[5]

---

[5] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

## B. The Motion Should Be Denied for Failure to State Any Basis for Reconsideration

The government cites Federal Rule of Civil Procedure 54(b) in support of its request for reconsideration of Judge Hogan's CMO. *See* Gvt. Motion at 10 n.7. But that rule provides no basis for reconsideration here.

Rule 54(b) governs motions for reconsideration that do not constitute final judgments. *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the government's motion is particularly new. There are no new legal issues presented – all were previously addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan misunderstood or overlooked in the CMO. Rather, what the government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved

by Judge Hogan in the CMO: (1) the breadth of the required search for exculpatory evidence; (2) the provision for automatic discovery of detainee statements relating to the amended factual returns; (3) the requirement that the government provide counsel and the detainees themselves with classified information or "adequate substitutes" for classified information; and (4) the procedures governing the use of hearsay, presumptions in favor of the government's evidence, and the standard for an evidentiary hearing. *See* Gvt. Motion at 2-3.[6]

In its opposition to a motion to strike filed by another detainee, the government concedes that the issues raised in its motion for reconsideration are the same as the issues addressed in the parties' procedural framework briefs before Judge Hogan: "The issues to be resolved by the Motion for Reconsideration are precisely the types of issues contemplated in the [July 1, 2008] transfer order. Only nine days after the transfer of cases to Judge Hogan, he ordered the parties to brief precisely these issues. The Motion for Reconsideration addresses nothing not addressed in the CMO." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1041, at 2). And that is precisely why the standard for reconsideration is not satisfied.

---

[6] To the extent the government seeks "clarification" of these and other issues, that request is likewise nothing more than an attempt to relitigate those issues on a class-wide basis. For instance, the government may argue in certain cases it has complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no broader than the search previously conducted by the government. Such an interpretation would conflict not only with the plain language of the CMO but also with the express orders of Judge Sullivan, Judge Kessler and Judge Walton (who has since stayed the order) requiring a broader search for exculpatory evidence. *See* Gvt. Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession). In any case, the government has further acknowledged its failure to provide all exculpatory evidence in its possession. *See* Gvt. Motion at 17 n.14 (admitting failure to produce all detainee denials of government's claims).

**C.      Even if Reconsideration Were Granted, the Requested
Relief Should Be Denied in the Context of This Particular Case**

The only arguably "new" relief requested by the government includes relief from the

deadlines for compliance with the CMO, which the government contends would be unduly

burdensome and threaten national security.  The government specifically asks the Court to set a

schedule for production of unclassified returns, which would require production of unclassified

returns by December 12, 2008, or on a rolling basis thereafter.  *See* Gvt. Motion at 31.  The

government also seeks a new schedule for "generalized briefing" regarding a presumption in

favor of the government's evidence and the admissibility of hearsay evidence – matters already

briefed at length before Judge Hogan.  *Id.*  In addition, the government seeks a staggered

schedule for other proceedings in these cases, which, if accepted, might delay merits hearings in

the detainee cases until the end of 2009 or perhaps early 2010.[7]  Even if reconsideration were

granted, which it should not be, these requests should be denied.

The government had the opportunity to propose modifications to the CMO in the context

of this case.  Instead, they have attempted to seek a blanket stay of the deadlines set forth in the

CMO.  In doing so, the government has failed to address whether its proposed modifications are

necessary or relevant in the context of this particular case.  For instance, the government argues

at length that the CMO's provisions concerning the production of exculpatory evidence and other

---

[7] The government also proposes for this first time in this case to require each detainee to file a
"preliminary traverse" shortly after production of the unclassified return but before any
discovery proceeds.  Gvt. Motion at 31-32.  Barre objects to such a procedure, which is plainly
intended to afford the government a preview of his trial strategies and counter-evidence, and to
limit the government's discovery obligations.  Such a procedure has already been rejected by
Judge Sullivan and Judge Leon in other cases, and should be rejected here.  *See*, *e.g.*, Tr. of
Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (Judge Sullivan:
"I think that would be inappropriate.  I don't think that would be beneficial for the petitioner in
this case."); *Sliti v. Bush*, No. 05-429 (RJL) (D.D.C. Oct. 24, 2008 Status Conference); *Ghazy v.
Bush*, No. 05-2223 (RJL) (D.D.C. Oct. 23, 2008 Status Conference).

discovery are improper because they do not require a showing of relevance or materiality. *See*, *e.g.*, Gvt. Motion at 6, 14, 22-23. But the government fails to acknowledge that Barre has not yet made any specific requests for exculpatory evidence and other discovery, and that such requests might satisfy the government's proposed requirements of relevance or materiality when they are made. The government also questions whether it should be required to produce classified information to counsel for detainees who lack security clearances at the same classification level as the information at issue. But the government fails to consider that no fewer than three of Barre's attorneys currently hold security clearances at the "Top Secret//SCI" level or that they have a "need to know" classified information that is exculpatory or otherwise material to Barre's case.

To the extent the government seeks modifications to the CMO, the Court should require the government to propose those modifications in context of the specific facts and circumstances of this case to determine whether such modifications are necessary or appropriate. By moving away from open-ended, generalized concerns that may not be relevant to this case, that approach will likely result in this case proceeding more quickly and efficiently to proceedings on its merits, including perhaps resolution by motion for summary judgment.

In the meantime, the government should be required to proceed in compliance with the deadlines set forth in the CMO to ensure that this case proceeds expeditiously. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less

deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Barre has been in U.S. custody for more than seven years without charge or trial, and this case should not be stayed any longer.

## II.  THE COURT SHOULD STRIKE THE HAYDEN DECLARATION

On November 19, 2008, two of Barre's attorneys who hold security clearances at the "Top Secret//SCI" level requested permission to review the Hayden Declaration, submitted *in camera* and *ex parte*, at the Secure Facility SCIF. The government denied that request without explanation. Accordingly, the Court should strike the Hayden Declaration.

While the government unquestionably has a substantial interest in preventing the unauthorized disclosure of classified information, it should not be permitted to rely on secret evidence to delay Barre's habeas hearing any more than it should be permitted to offer secret evidence in support of Barre's detention at a habeas hearing. The Supreme Court was clear in *Boumediene v. Bush* that an "adversarial character" is necessary to habeas proceedings. *See* 128 S. Ct. 2229, 2273 (2008). The submission and consideration of a secret declaration deprive Barre – and the courts – of the benefits of the adversarial process in habeas. *Cf. Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) ("We think it clear that this court cannot discharge its

responsibility . . . unless a petitioner's counsel has access to as much as is practicable of the classified information regarding his client. Counsel simply cannot argue, nor can the court determine, whether a preponderance of the evidence supports the [government's] status determination without seeing all the evidence."). There is also no legitimate basis to deny Barre's counsel access to the Hayden Declaration because, as indicated above, they hold security clearances at the "Top Secret//SCI" level, which indicates they can be trusted with information up to that level. *See Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004) (Kollar-Kotelly, J.) ("[T]he Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance.").

To the extent the government seeks to delay this case based even in part on the Hayden Declaration, that declaration effectively denies Barre habeas relief. The government's proposed delay is substantive, not procedural. In other words, delay means more indefinite detention, and that *itself* is the harm that Barre filed a habeas petition in order to remedy three and a half years ago. So grievous is that harm, and so fundamental the right to be protected from it, that the right to impair habeas corpus is limited by the Suspension Clause of the Constitution. Even an adjudicated criminal alien who has never made an entry into the United States, and has no right in law to be here, must be released into the United States when faced with the prospect of indefinite detention. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005). Indeed, the need for a prompt hearing is never greater than where, as here, a petitioner has been afforded no prior judicial review. *See Boumediene*, 128 S. Ct. at 2267 ("[C]ommon-law habeas was, above all, an adaptable remedy. . . . It appears that the common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous judicial

review of the cause for detention."); *id.* at 2269 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. . . . The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. . . . [T]he writ must be effective."); *Rasul v. Bush*, 542 U.S. 466, 473-75 (2004); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (recognizing if delay in deciding habeas petitions were routinely permissible, absent good reason, "the function of the Great Writ would be eviscerated"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate for any delay.").

Moreover, the government should not be permitted to rely on an *ex parte* classified document without establishing good cause to believe that disclosure of the secret information to security-cleared counsel for the detainees would actually threaten national security. The mere invocation of "national security" is insufficient to prolong the already indefinite detentions of Barre or the other detainees. Nor would absolute judicial deference on such matters of national security be consistent with the separation of powers. *See Coldiron v. DOJ*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("No matter how much a court defers to an agency, its review is not vacuous. An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.'") (citations and internal quotation marks omitted); *Boumediene*, 128 S. Ct. at 2277 ("Security subsists, too, in fidelity to freedom's first principles. . . . Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate

or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person.").

## III. THIS CASE SHOULD BE TRANSFERRED TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS

This case was initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this court may alter that framework based on the particular facts and circumstances of their individual cases. Proceeding on an individual case-by-case basis is the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the Habeas Corpus Statute. Accordingly, Barre requests that this case be transferred back to the Merits Judge for all further proceedings. If there are issues that need to be addressed after the government files a factual return, the Merits Judge is best suited to address those issues in the context of this case and ensure that this case is resolved expeditiously.

Date:   New York, New York
        November 26, 2008

                                        Respectfully submitted,

                                        Counsel for Petitioner:


                                        /s/ J. Wells Dixon
                                        J. Wells Dixon (Pursuant to LCvR 83.2(g))
                                        CENTER FOR CONSTITUTIONAL RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, New York 10012
                                        Tel: (212) 614-6423
                                        Fax: (212) 614-6499
                                        wdixon@ccrjustice.org