IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) | |
| ) | |
| GUANTANAMO BAY ) | Misc. No. 08-442-(TFH) |
| DETAINEE LITIGATION ) | |
| ) | |
| AHMED YASLAM SAID KUMAN, ) | |
| ) | Civil Action No. 08-CV-1235 (JDB) |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

I.

INTRODUCTION

The petition for habeas corpus was filed in this case on July 17, 2008. The government has not yet filed a return, and given the schedule for filing of returns set in these cases by the judge assigned to handle coordinated, general issues, United States District Judge Thomas F. Hogan, should be filing a return in January, February, or March of next year.

On November 6, 2008, Judge Hogan filed a Case Management Order (hereinafter "CMO") delineating various procedures to be followed in the cases, subject to modification by the "merits judges" in individual cases. On November 18, 2008, the government filed a "Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders Or, in the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b), and to Stay Certain Obligations Pending Resolution of the Motion in Any Appeal."

Petitioner hereby adopts and joins in all other briefing filed on the issues raised in the government's motion, including both the original briefing on procedural issues filed before Judge Hogan, *In re: Guantánamo Bay Detainee Litigation*, Misc. No. 08-442 (TFH), Docket Nos. 206, 231, and supplemental briefing filed by other counsel on those issues and the lack of any basis for reconsideration or certification for interlocutory appeal. This response is filed to present some additional general arguments, suggest at least one expansion of the discovery provisions in the CMO, and point out some special circumstances of this particular case. The government's motion should be denied as to the discovery questions it raises and deferred as to the procedural issues, because the government's arguments regarding discovery are simply not well taken, and its procedural arguments, while also not well taken, can be more carefully considered when applied to specific evidence that is highlighted through discovery and more complete briefing.

As to scheduling – *in this particular case*, because counsel were only recently appointed, only recently received security clearances, and have specific trips scheduled on December 2 and December 14 to meet with petitioner and two other clients for the first time – there should be a modification of the schedule set forth in the CMO, but not in the blanket form suggested by the government. The government's request for a blanket extension of the deadline for filing an unclassified return should be denied without prejudice to being renewed if it can show good cause at the time it files the classified return. And in light of the fact that counsel were only recently appointed and are only now being able to meet with petitioner, scheduling for filing of a traverse and other briefing should be modified to (a) vacate the definitive dates for filing those pleadings and (b) substitute a status conference approximately 14 days after filing of the return, with specific dates for filing of a traverse and other briefing to be set at that status conference.

Finally, the issues raised in this response are more properly addressed by the merits judge,

because petitioner's position regarding scheduling is case-specific and, as to discovery, petitioners are requesting an expansion of the CMO. Such consideration by the merits judge is also more consistent with the suggestion in the CMO that further modifications of the CMO should be by the merits judge.

II.

ARGUMENT

A. THE GOVERNMENT HAS SATISFIED NEITHER THE STANDARDS FOR RECONSIDERATION BY THIS COURT NOR THE STANDARDS FOR CERTIFICATION FOR INTERLOCUTORY APPEAL.

Initially, the government has not met the standard for reconsideration in the district court, which is set by Rule 54(b) of the Federal Rules of Civil Procedure, *see Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for

3

reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the government's motion is particularly new. There are no new legal issues presented – all were previously addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan misunderstood or overlooked in the CMO. Rather, what the government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO.

Similarly, the government has not met the standard for certification for interlocutory appeal. In making this suggestion, the government ignores the most significant consideration. Petitioner has been incarcerated for *years – without even having had a judicial hearing*. To delay proceedings yet again is simply more prejudice to petitioner.

Certainly there should not be such additional delay without identification by the government of much more specific prejudice involving specific discovery and/or classified information in a specific case. Indeed, this is another reason why, at this stage, issues in these cases should be decided by the merits judges in individual cases.

The government cannot even come close to satisfying the requirement that the order "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b), *quoted in* Government's Motion, at 32. It seems highly doubtful that the government is simply going to release all of the detainees if it loses an appeal of these discovery and other procedural issues. And the detainees will certainly not withdraw their petitions.. There is thus not a snowball's

chance in Hades of this appeal resulting in – or even leading closer to – termination of the litigation.

As for the government's claim that an interlocutory appeal is appropriate because the CMO will "materially affect the course of the litigation," Government's Motion, at 33 (quoting *Judicial Watch, Inc. V. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)), that is certainly not clear at this point. Perhaps that might be true in some specific case, involving some particular item of discovery or classified information, but that only highlights why it is now time to deal with these cases individually in a case-specific and issue-specific fashion. Whether an interlocutory appeal is appropriate in some particular case regarding some particular discovery, classified information, or other procedural issue is also doubtful, but that is something that should be decided when the particular issue is presented. What the government is seeking now is really no more than an advisory opinion on general questions of discovery and other procedural issues.

B.  THE COURT SHOULD NOT NARROW THE CMO PROVISIONS REGARDING DISCOVERY, AND, INDEED, SHOULD EXPAND THEM IN LINE WITH THE RECENT MODIFICATION OF THE CMO BY JUDGE KESSLER.

To begin, a basic premise of the government's argument – that there should be lesser discovery rights in these proceedings than in a criminal case and/or a habeas corpus proceeding challenging a prior criminal convictions – is, at the very least debatable. Discovery is actually *less* necessary in those cases, because there are – or were – alternative protections. In a new criminal case, the defendant will have the right to confront witnesses, the right to compulsory

process, and all of the other protections provided in new criminal cases by the Bill of Rights. In the more typical modern habeas corpus proceeding in which a defendant is challenging a criminal conviction, the petitioner will have already had a criminal trial and so already had a full opportunity for discovery under the applicable rules of criminal procedure and already have been provided the full access to exculpatory material required by *Brady v. Maryland*, 373 U.S. 83 (1963). He will also have had the full opportunity to confront and cross-examine all the witnesses against him and all the other rights that accompany a criminal trial.

The habeas corpus proceedings here, in contrast, are the one and only opportunity petitioners have to contest the allegations against them. It arguably follows from this that discovery should be *more* permissive than in the sort of habeas corpus proceeding that is more common in modern practice. Although the Supreme Court acknowledged in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008) that "habeas corpus proceedings need not resemble a criminal trial, the Court also stressed that "the writ must be effective," including at a minimum, "a meaningful review of both the cause for detention and the Executive's power to detain." *Id.* at 2269. And the *Boumediene* Court stressed that habeas proceedings for executive detainees must be substantially broader than proceedings for those who have already been convicted:

> [W]here relief is sought from a sentence that resulted from the judgment of a court of record . . . considerable deference is owed to the court that ordered confinement . . . because it can be assumed that, in the usual course, a court of record provides defendants with a fair, adversary proceeding. . . .The present cases fall outside these categories, however; for here the detention is by executive order.
> Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. A criminal conviction in the usual course occurs after a judicial hearing before a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence. These dynamics are not inherent in executive detention orders or executive review procedures. In this context the need for habeas corpus is more

urgent.

Boumediene, 128 S. Ct. at 2269 (2008).[1]

This language could be read to suggest that *broader* discovery rights are appropriate where the underlying protections of a criminal trial were never present. But, in any event, the government's argument that the discovery provided for in the CMO is broader than in a criminal trial is not correct.

### 1. Rule 16 Requirements.

To begin, the government is wrong in its claim that the discovery provided for in the

---

[1] Contrary to the government's suggestion, the Supreme Court's decision in *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004), does not support its narrow view. First, *Hamdi* is a plurality opinion that enjoys no precedential force. *See Hamdi*, 542 U.S. at 509-39 (O'Connor, J., announcing judgment of court, Rehnquist, C.J., Kennedy and Breyer, J.J., joining). Second, language from the decision purporting to restrict habeas review was pure dicta because the *Hamdi* Court did not address the scope of habeas proceedings when the writ is unlawfully suspended. 542 U.S. at 525. As the *Boumediene* decision makes clear, any continued reliance on *Hamdi* is misplaced:
> Setting aside the fact that the relevant language in *Hamdi* did not garner a majority of the Court, it does not control the matter at hand. None of the parties in *Hamdi* argued there had been a suspension of the writ. The § 2241 habeas corpus process remained in place. Accordingly, the plurality concentrated on whether the Executive had the authority to detain and, if so, what rights the detainee had under the Due Process Clause. True, there are places in the *Hamdi* plurality opinion where it is difficult to tell where its extrapolation of § 2241 ends and its analysis of the petitioner's Due Process rights begins. But the Court had no occasion to define the necessary scope of habeas review, for Suspension Clause purposes, in the context of enemy combatant detentions.

*Boumediene,* 128 U.S. at 2269-70. Quite tellingly, the only discussion from the *Hamdi* plurality endorsed by the *Boumediene* majority was its expansive approach to habeas jurisdiction:
> The closest the [*Hamdi*] plurality came to doing so was in discussing whether, . . . § 2241 should be construed to forbid the District Court from inquiring beyond the affidavit Hamdi's custodian provided in answer to the detainee's habeas petition. The plurality answered this question with an emphatic "no."

*Boumediene*, 128 S. Ct. at 2270 (internal citations omitted).

7

CMO is broader than that provided for in Rule 16 of the Federal Rules of Criminal Procedure. First, the provision for discovery of documents – which requires disclosure of all documents referenced in the factual return, *see* CMO, § I.E.1(1) – is not broader than in a criminal case. To the contrary, this provision of this CMO is comparable to the provision in Rule 16(a)(1)(E)(ii), which is of course just one of the three categories of documents required to be produced by that subparagraph of the rule. Rule 16(a)(1)(E)(ii) requires the disclosure of all documents which "the government intends to *use*" (emphasis added) in its case in chief, and the courts which have considered the question have held that the word "use" includes not just those documents marked and offered in evidence, but also all documents "which will be relied on or referred to in any way by any witness called by the government during its case in chief." *United States v. Countryside Farms, Inc.*, 428 F. Supp. 1150, 1154 (D. Utah 1977). *Accord United States v. Jordan*, 316 F.3d 1215, 1250 n.75 (11th Cir. 2003); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989); *United States v. Shoher*, 555 F. Supp. 346, 352 (S.D.N.Y. 1983); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978). While the comparison cannot be exact because the initial presentation of evidence in a habeas proceeding is in a written return, a reference to documents in a written return is analogous to the documents being "relied on or referred to in any way" by a witness called at trial.

Second, the government is wrong in its suggestion that the scope of discovery for detainee statements provided for in the CMO is broader than in a criminal trial. What seems to be the government's main complaint – that there is no requirement of "relevance" as there is in Rule 16(a)(1)(B) – is not a fair characterization of the CMO. The CMO does require that the statements to be disclosed "relate to the information contained in the factual return," CMO, § I.E.1(2), and this seems comparable, if not identical, to "relevance." And while the CMO does

not use the word "substance" which is used in Rule 16(a)(1)(A) with respect to oral statements not already reduced to writing or summarized in a report, that also is subsumed within the requirement that the statement "relate to the information contained in the factual return." A statement not already reduced to writing will necessarily have to be summarized in some fashion, and the best reading of the word "substance" as used in Rule 16(a)(1)(A) is that it means a summary of all relevant "substatements" made within the overall "statement."[2]

It should be noted that the requirement of "relevance" in Rule 16(a)(1)(A) and (B) is not a particularly restrictive limitation, moreover. As explained in one opinion which Professor Wright characterizes in his treatise as "very sensible":

> There is a problem in implementing Rule 16(a)(1)(A) that results from the fact that the Government must determine what evidence in its possession may be relevant before it is fully advised as to the nature of the intended defense. The Government can easily assess what is relevant to its case, but it may not be possible for the government to discern with any certainty what is relevant from the defendant's standpoint. The defendant, on the other hand, has a right to the recorded statements under Rule 16 if they are relevant, but cannot advise the government of their relevance to his case since he may not know of their existence. Under these circumstances, Rule 16(a)(1)(A) can fully serve its intended purpose only if the Government takes a broad view of what is relevant for purposes of this provision. We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert. Ordinarily, a statement made by the defendant during the course of the investigation of the crime charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant. Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made.

*United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982), *quoted in* Charles Alan Wright,

---

[2] The government's additional argument – made in a footnote – that disclosure of even relevant statements is inappropriate because they may be classified information borders on the frivolous. The classified information at issue when the information in question is a detainee's statement is by definition already known to the detainee.

9

*Federal Practice and Procedure: Criminal* § 253, at 85 (3d ed. 2000). As put by the D.C. Circuit: "The requirement that statements made by the defendant be relevant has not generally been held to create a very high threshold. Generally speaking, the production of a defendant's statement has become 'practically a matter of right even without a showing of materiality.'" *United States v. Yunis*, 867 F.2d 617, 621-22 (D.C. Cir. 1989) (quoting *United States v. Haldeman*, 559 F.2d 31, 74 n.80 (D.C. Cir. 1976) (en banc)).

Third, the requirement that the government disclose "information about the circumstances in which such statements of the petitioner were made or adopted," CMO, § I.E.1(3), while not analogous to a specific provision in Rule 16, is appropriate in the unique circumstances of these cases. The petitioners here have in some instances been detained for over seven years. They have been detained in a foreign land and a foreign culture. They have been subjected to what many call torture, and what even the executive branch characterizes as "enhanced interrogation techniques." To expect counsel and petitioner to rely on petitioner's memory alone in these circumstances, *cf. Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1028-29 (7th Cir. 2006) (no *Brady* obligation to tell defendant she was coerced into confessing), *cited in* Government Motion, at 18, would be unreasonable, unwise, and unfair.

    2.    <u>Analogy to Brady Requirements.</u>

A similar concern for fairness is what leads to the next issue – the applicability of, not the *Brady* case itself, but the fundamental concepts and principles underlying *Brady*. The government has agreed to assume some obligation to provide exculpatory evidence, but points out that this CMO sweeps more broadly than the obligation it has agreed to assume. This – and

petitioner's request *infra,* to slightly broaden this obligation – pose the question of whether the court can and should order disclosure of reasonably available exculpatory evidence.

Looked at narrowly, *Brady* was just a criminal case, but, looked at more broadly, it was – and is – an application of more general and fundamental due process principles in a context very similar to that in the present case – the deprivation of physical liberty. Indeed, it is more than just due process; it is what the Supreme Court described as "the rudimentary demands of justice." *Brady v. Maryland*, 373 U.S. 83, 86 (1963) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). And certainly the "rudimentary demands of justice" must apply in these detainee cases. *Cf. Boumediene v. Bush*, 128 S. Ct. 2229, 2266 (2008) ("We do consider it uncontroversial, however, that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." (Internal quotation omitted.)). *See also id.* at 2267 (noting that "habeas corpus in this country routinely allowed prisoners to introduce exculpatory evidence that was either unknown or previously unavailable to the prisoner"). Contrary to the government's suggestion in its motion, *Brady* has been applied in other habeas corpus proceedings, precisely because the fundamental principles underlying it extend beyond just the ordinary criminal context. As explained by one court of appeals:

> In our view, *Brady* impose[s] on the state an ongoing duty to disclose exculpatory information . . . . We cannot accept the implicit premise of the state's position here, which is that *Brady* leaves state officials free to conceal evidence from reviewing courts or post-conviction courts with impunity, even if that concealment results in the wrongful conviction of an innocent person. It is worth recalling, in this connection, that the *Brady* rule was derived from the Due Process Clause of the Fourteenth Amendment. "Society wins," the Court wrote, "not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."

*Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) (quoting Brady, 373 U.S. at 87). *See also Boumediene*, 128 S. Ct. at 2270 (holding that court that conducts habeas proceeding "must have the authority to admit and consider relevant exculpatory evidence that was not introduced during the earlier proceeding")

A more complete passage from *Brady* than that quoted in *Steidl* also suggests the broader principles of justice which underlie *Brady*.

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the Court of Appeals.

*Brady*, 373 U.S. at 87-88. While the Court had a criminal case before it in *Brady* and was speaking of criminal trials, the passage quoted from the walls of the Department of Justice is not so limited. And while the passage speaks of justice done this country's citizens, it is doubtful that it envisions *injustice* for non-citizens, at least in the form of wrongful physical detention. Our system of justice suffers when injustice is done to anyone, and our society wins when its proceedings are fair as to all, be they citizens or not.

Indeed, given this broader interest in fairness and justice, the Court, rather than narrowing the discovery rights provided for in the CMO, should broaden them, at least as much as Judge Kessler has done in her modification of the CMO, which is attached as Exhibit A. Judge Kessler expanded the government's obligation to disclose exculpatory evidence to include not just evidence in the government's possession, but also evidence the government could obtain

12

"through reasonable diligence." *See* Exhibit A, at 3. This is appropriate because it more closely tracks the requirements of *Brady* and therefore more completely advances the principles underlying it, especially given the international character of these cases and the resulting greater difficulty of "defense"[3] access to information and evidence.

3. Right to "Adequate Substitute" for Classified Material Not Disclosed to Petitioner.

The government's complaints about the requirement that it provide petitioner with an "adequate substitute" for any classified information that cannot be provided to petitioner are also not well-founded. This requirement – like the other provisions of the CMO discussed in the preceding sections – is nothing revolutionary. Rather, it is very similar to how classified information is handled in other, analogous contexts.

Specifically, this requirement is very similar to procedures for discovery and disclosure in hearings under the Classified Information Procedures Act, 18 U.S.C. Appendix 3 (hereinafter "CIPA"). CIPA anticipates the problem of how to handle classified information in criminal trials and provides for a procedure comparable to the CMO's "adequate substitute" provision. With respect to discovery, CIPA provides for a procedure whereby the government either deletes certain classified information if it is not relevant, or substitutes a summary of the information or a government statement admitting relevant facts. 18 U.S.C. App. 3 § 4. With respect to the use

---

[3] In this case, the detainee is of course not a "defendant," but a "petitioner." He is a "defendant" in the sense of being a person who is incarcerated, however, and so in that sense his side is the "defense." The only reason he is not also a "defendant" is because the government is refusing to give him a trial.

13

of information in a hearing, CIPA similarly provides for substitution of either a summary or a government statement admitting relevant facts. 18 U.S.C. App. 3 § 6(c)(1).

The CMO's provision for providing an "adequate substitute" for classified information is comparable to the summary or statement admitting relevant facts provided for in these CIPA provisions. It also is therefore nothing revolutionary or extreme. Rather, it is a similar effort to balance the social interest of national security against both the individual interest in not being wrongfully incarcerated and the related social interest in not wrongfully incarcerating a potentially innocent person.

The government seems to implicitly acknowledge that the "adequate substitute" requirement is comparable to what CIPA requires but argues that CIPA requires a threshold showing of "materiality" which the CMO does not require. This ignores the fact that the CMO requirement of an "adequate substitute" applies only to the discovery which must be provided under § I.D and § I.E of the CMO. Those sections require disclosure of only "all reasonably available evidence in [the government's] possession that tends *materially* to undermine the information presented to support the government's justification for detaining the petitioner," CMO, § I.D (emphasis added), and documents referenced in the factual return, statements made by the petitioner, and information about the circumstances in which such statements of the petitioner were made, CMO, § I.E. These categories of discovery are on their face material, and so the CMO is comparable to CIPA in this way as well.

\* \* \* \*

C. THE DEFINITIVE DATES FOR FILING OF A TRAVERSE AND FURTHER BRIEFING ON THE MERITS SHOULD BE VACATED AND THE COURT SHOULD INSTEAD ORDER THAT A STATUS CONFERENCE BE SCHEDULED 14 DAYS AFTER FILING OF THE RETURN FOR FURTHER CONSIDERATION OF APPROPRIATE DATES FOR FILING OF A TRAVERSE AND OTHER BRIEFING.

The posture of this petitioner and counsel in this case differs from that of most Guantanamo Bay detainees. First, the petition on which counsel were initially appointed was just filed in July of this year. Second, counsel were just appointed in August and just received their security clearances in October. Third, because of the need to obtain security clearances, and the fact that visits to clients at Guantanamo Bay must be scheduled at least four to six weeks in advance, counsel have not even met with petitioner yet; rather, their first meetings with him are scheduled – at least presently – during the weeks of December 1 and December 15.

Because no return has yet been filed in this case, the government's request for reconsideration of the scheduling aspects of the CMO does not impact this petitioner and this case at this time. The government does, however, suggest a blanket order changing the deadline for filing of an unclassified return to four weeks after the classified return, with a "preliminary traverse" to be filed four weeks after that.

Petitioner opposes modification of the CMO in this case through such a blanket order. The CMO envisions the cases being handled by the individual merits judges henceforth, and this issues exemplifies why such individualized consideration is appropriate. What this Court – meaning the merits judge – should do in this case is the following.

First, as to the government's request that it have four weeks instead of 14 days to file the

15

unclassified return, the Court should deny that request without prejudice. Since it will be at least one or two months before the government files a return in this case, it can now plan ahead and hopefully meet the 14-day deadline set by the CMO. If it turns out that, despite planning ahead, the government cannot meet the 14-day deadline when the classified return is filed, it can ask for an extension at that time based on some case-specific reason it can identify at that time.

Second, because of the circumstances of this particular case, the Court should – in this particular case – vacate the deadlines for filing the traverse and further briefs that are set by the CMO generally. Given that counsel were just recently appointed and are meeting with their client for the first time in December, it is not realistic to prepare and file a traverse within 14 days – or the four weeks suggested by the government in its motion – of receiving the unclassified return and the required discovery. It is also too early to estimate what a realistic deadline may be, because that will depend in large part on what petitioner tells counsel when counsel meet with him and what investigation that meeting suggests. What the Court should therefore do is order that a status conference be set approximately 14 days after filing of the government's return, with dates for filing of a traverse and further briefing to be set at that time.[4]

\* \* \* \*

---

[4] Counsel for petitioner are not entirely sure what the government means by a "preliminary traverse," *see* Government Motion, at 31, but even that is not necessarily feasible. It is also questionable whether a mere "preliminary traverse" would be helpful. And it could be prejudicial to petitioner if it requires counsel to take a position without the complete information that later discovery and/or investigation will provide.

D.  CONSIDERATION OF PROCEDURAL ISSUES RELATED TO THE EVIDENTIARY HEARING, SUCH AS WHEN AN EVIDENTIARY HEARING IS APPROPRIATE, THE PROPRIETY AND SCOPE OF PRESUMPTIONS, AND THE ADMISSIBILITY OF HEARSAY SHOULD BE DECIDED AT A LATER TIME BY THE MERITS JUDGE.

Consideration of the government's arguments regarding various procedural issues related to the evidentiary hearing, such as when an evidentiary hearing is appropriate, the propriety and scope of presumptions, and the admissibility of hearsay, should be deferred at least until after filing of the unclassified return and the traverse and further briefing on the merits.  These issues are best resolved as the factual and legal issues become distilled in more detail, in other instances are best resolved in the context of specific cases, and in some instances are best resolved in the context of specific evidence in specific cases.[5]

This is most clearly the case with respect to the question of consideration of hearsay evidence.  Evidentiary questions in general, and hearsay issues in particular, are highly context-dependent, and require consideration by the judge before whom the case is tried, when the evidence is offered.  Accordingly, any question as to what evidence, including hearsay evidence, should be admissible, what evidence should be excluded, and how to weigh admissible evidence should be left to the sound discretion of the judge holding the evidentiary hearing at the time of – or at least close in time to – the hearing.  It is noteworthy that the Federal Rules of Evidence

---

[5] Another issue which should be considered by the individual merits judges at a later time is the burden of proof which should be placed on the government.  Given the potentially indefinite deprivation of liberty at issue in these cases, that burden of proof should be the clear and convincing evidence standard, not the preponderance of evidence standard.  While this is not a case-specific or evidence-specific issue, it is an issue that will become more focused when there are actual cases with actual evidence before the court, so it should be reconsidered by the merits judge at a later point in the proceedings.

expressly apply in habeas corpus proceedings except to the extent that other statutes or rules provide to the contrary, Fed. R. Evid. 1101(e); *see, e.g., Greiner v. Wells*, 417 F.3d 305, 325-26 (2nd Cir. 2005), and that affidavits, while sometimes admissible, are "disfavored," *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

Similarly case-specific, and possibly evidence-specific consideration, is appropriate as to the question of presumptions. Indeed, this is implicitly recognized by the CMO, which states only that the merits judge "may" accord a rebuttable presumption of accuracy and authenticity to evidence "if the government establishes that the presumption is necessary to alleviate an undue burden." CMO, § II.B.[6] And this makes sense, for whether to accord evidence a presumption – of either authenticity or accuracy – should depend on the evidence in question and what investigation or further inquiry reveals about it. The Court should neither create a blanket rule nor rule on presumptions regarding particular pieces of evidence until there is that opportunity for investigation or further inquiry.

Finally, the government's argument about the standard for holding an evidentiary hearing should be deferred – or, if considered at all – outright rejected. The standard set forth in the CMO is whether the merits judge "determines that substantial issues of material fact preclude final judgment based on the record." CMO, § III.B.1. This is inherently a case-specific standard – and properly so. If the government is suggesting that factual disputes should be resolved without an evidentiary hearing, it is ignoring the fundamental reason for allowing these habeas proceedings in the first place. That is to assure that a judicial officer "make[s] a determination in light of the relevant law *and facts*." *Boumediene v. Bush*, 128 S. Ct. 2229, 2271 (2008)

---

[6] Not all judges are inclined to allow even this much. Judge Kessler has already modified the CMO, to limit the possibility of presumptions to presumptions about authenticity only. *See* Exhibit A, at 6-7.

18

(emphasis added).

III.

CONCLUSION

The Court – meaning the merits judge – should reject the government's attempts to narrow the discovery requirements set forth in Judge Hogan's CMO and should instead expand them as has Judge Kessler. As to the government's arguments regarding procedural provisions of the CMO, such as the standard for holding an evidentiary hearing, the use of presumptions, and the admissibility of hearsay, the Court should wait and rule after more complete discovery, investigation, and briefing focuses the issues. Finally, as to scheduling, the Court should not grant the government's request for a blanket extension of the for filing the unclassified return but should deny it without prejudice to the government renewing it, with a showing of case-specific good cause, at the time the classified return is filed. Further, in light of counsel's recent appointment, counsel's recently obtained security clearances, and the fact that counsel are only just now having the opportunity to meet with their client, the Court should vacate the deadlines for filing of the traverse and additional briefing and instead order that a status conference be set

\* \* \* \*

approximately 14 days after filing of the classified return, with specific dates for filing of the traverse and additional briefing to be set at that time.

                                                Respectfully submitted,

                                                SEAN K. KENNEDY
                                                Federal Public Defender

DATED: November 26, 2008              By        /S/
                                                          CRAIG HARBAUGH (D.C. Bar No. 974117)
                                                          CARLTON F. GUNN (CA Bar No. 112344)
                                                          Deputy Federal Public Defenders
                                                          Office of the Federal Public Defender
                                                          321 East 2nd Street
                                                          Los Angeles, CA 90012-4202
                                                          (213) 894-1700; Facsimile: (213) 894-0081
                                                          Attorneys for Petitioner