# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
―――――――――――――――――――――――――――― x
                              :
IN RE:                        :
                              :
GUANTÁNAMO BAY                :   Misc. No. 08-442 (TFH)
DETAINEE LITIGATION           :
                              :
―――――――――――――――――――――――――――― x
                              :
AHAMED ABDUL AZIZ,            :
                              :
              Petitioner,     :
                              :
        v.                    :   Civil Action No. 05-492 (JR)
                              :
GEORGE W. BUSH, et al.,       :
                              :
              Respondents.    :
                              :
―――――――――――――――――――――――――――― x
                              :
ABDUL GHULAM RABBANI,         :
                              :
              Petitioner,     :
                              :   Civil Action No. 05-1607 (RMU)
        v.                    :
                              :
GEORGE W. BUSH, et al.,       :
                              :
              Respondents.    :
                              :
―――――――――――――――――――――――――――― x
```

## OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION

Petitioners Ahamed Abdul Aziz and Abdul Ghulam Rabbani ("Petitioners"), by and through their undersigned counsel, respectfully submit this opposition to the government's omnibus motion for reconsideration, *see In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (Misc. Dkt. 1004) ("Gvt. Motion"), and the

Court's November 20, 2008 Minute Order directing the detainees to respond to the motion by November 26, 2008.

## PRELIMINARY STATEMENT

Ahamed Abdul Aziz ("Aziz"), a citizen of Mauritania, was transferred to Guantánamo Bay in August 2002. Abdul Ghulam Rabbani ("Rabbani"), a citizen of Pakistan, was transferred to Guantánamo Bay in September 2002. They have been held there without charge or trial. Petitioners' detention has been and continues to be indefinite and unlawful by any standard.

On June 12, 2008, the Supreme Court held that detainees at Guantánamo Bay have a constitutionally-protected right to petition for habeas relief. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). The Court further held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275. The detainee cases are now governed by the Habeas Corpus Statute, 28 U.S.C. § 2241 *et seq.*, which sets forth specific guidelines for prompt resolution of these cases.

Yet the government plainly seeks by its motion for reconsideration to prolong Petitioners' indefinite detention. By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of

6 Bosnian-Algerian petitioners released).

The government's motion should be denied for three reasons: (1) because the motion fails to establish any basis for reconsideration or interlocutory appeal; (2) because the government failed to meet and confer with Petitioners' counsel as required by Local Civil Rule 7(m); and (3) because the motion does not address the particular facts and circumstances of this case, which would not warrant the relief sought by the government – *i.e.*, a further indefinite stay – if reconsideration were granted.

## **BACKGROUND**

The cases of *Aziz v. Bush*, No. 05-492 (Dkt. 76) and *Rabbani v. Bush*, No. 05-1607 (Dkt. 57), were transferred on July 11, 2008 and July 3, 2008, respectively, to the Honorable Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session.

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (Misc. Dkt. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges

posed." *Id.* (Misc. Dkt. 466, at 6) (internal quotation marks omitted).[1]

Mr. Aziz's factual return was consequently delayed until September 25, 2008 and Mr. Rabbani's amended factual return was filed October 21, 2008. When the government finally did produce the returns, however, it designated all of the information in the return as "secret," and the government has not produced an unclassified return, thus preventing Petitioners themselves from reviewing the information or counsel from being able to conduct an independent investigation. Indeed, to date, Petitioners themselves have not been able to review a single document contained in their returns or prepare a response to the returns.

Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (Misc. Dkt. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues now raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") governing the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at 2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework

---

[1] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (Misc. Dkt. 917).

- 4 -

based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

On November 10, 2008, the Merits Judge in the *Rabbani* case, the Honorable Judge Urbina, ordered the parties to appear for a status conference on November 24, 2008. Judge Urbina further ordered that the CMO be amended and set deadlines for the traverse, petitioner's opposition and/or cross-motion for judgment on the record, the government's reply and/or opposition to the petitioner's cross-motion, and the petitioner's reply. *Rabbani v. Bush*, No. 05-cv-1607 (RMU) (D.D.C.) (Dkt. 104).

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. The government's motion made no mention of this case specifically. *See* Gvt. Motion.

On November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (Misc. Dkt. 1026).

Judge Urbina subsequently adjourned the November 24 2008 status conference, and directed parties to file a joint status report by December 8, 2008 (Nov. 21, 2008, Dkt. 112).

## I. THE GOVERNMENT'S MOTION FAILS TO PROVIDE ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE

### A. The Motion Should Be Denied for Failure to Sufficiently State Any Basis for Reconsideration

Although the Government briefly touches on the standard for a motion for reconsideration (Gvt. Motion at 10 n.7), nowhere in its Motion does the Government attempt to show that it has met that standard. Under Federal Rule of Civil Procedure 54(b), a court has discretion to grant a motion for reconsideration of a non-final order where the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred]." *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008) (internal citation omitted). Significantly, this Court has held that litigants should not be allowed to use motions for reconsideration to rehash arguments that have already been made. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 109.

"Battling" for a more favorable decision is precisely what the Government does in its Motion. The Government's Motion does not address how this Court has misunderstood the parties, misapprehended the nature of this case, or committed a legal error. Nor does the Government assert new arguments that it has not already made before this Court in other motions. Instead, the Government asks the Court to reconsider arguments that "[the Government] has previously explained" to this Court. (Gvt. Motion at 8.) In an attempt to bolster its argument, the Government argues that the CMO is

"ambiguous" and, not surprisingly, that the CMO "create[s] obligations that realistically cannot be met." (*Id.* at 1.) The Government's Motion fails entirely in demonstrating that justice requires reconsideration of the issues presented to this Court. Because the Government has failed to meet the standard for reconsideration of the issues, this Court should deny the Government's Motion and the cases should proceed in accordance with Judge Hogan's CMO.

The Government's Motion also fails to meet the standard necessary for certification of the issues for appeal. Interlocutory appeals brought under 28 U.S.C. § 1292 (b) are "rarely allowed," and the present case is no exception. The Government has failed to show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996) (internal citation omitted); *see also In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2000 WL 34230081, at *4 (D.D.C. 2000) (Hogan, J.). Interlocutory appeal is proper only when a court determines that an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292 (b); *see Johnson v. Wash. Metro. Area Transit Auth.*, 773 F. Supp. 459, 459 (D.D.C. 1991) (granting certification for appeal where the district court was faced with "two possibly inconsistent holdings" of an appellate court). "The threshold for establishing the 'substantial ground for difference of opinion' … is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).

Furthermore, where, as here, the party moving for certification disagrees with a court's discovery order, "[m]ere disagreement, even if vehement, with a court's ruling … does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal." *First Am. Corp.* at 1116. The D.C. Circuit has stated that "discovery orders are not usually appealable until the litigation has finally ended." *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995). Additionally, in *White v. Nix*, the Eighth Circuit stated that due to their discretionary nature, discovery orders "generally never will involve a controlling question of law" and thus are inappropriate for interlocutory appeal. *See* 43 F.3d 374, 377 (8th Cir. 1994).

Like *First American Corp.*, the Government's "mere disagreement, even if vehement," is insufficient to warrant certification of the issues for appeal in this case. The weakness of the Government's argument is illustrated by its one-paragraph attempt to argue that a "substantial ground for difference of opinion" exists with regard to the issues determined in Judge Hogan's CMO. Citing absolutely no authority, the Government concludes that various judges in this Court have adopted "markedly different procedures" and that "aspects of the Court's CMO conflict with the 'prudent and incremental' process mandated by … *Hamdi*." (Gvt. Motion at 35.) However, as the Government concedes, there is a "lack of any historical parallel in these cases" (*id.*), and there are few, if any, conflicting decisions on these issues in any other courts. As a result, the Government has failed to show that there is a "substantial ground for difference of opinion" and certification is not justified in this instance.

Furthermore, certification of the issues raised by the Government will do nothing to advance the termination of this litigation and will merely cause additional delay for Petitioners. The Supreme Court stated clearly in *Boumediene* that "the costs of delay can no longer be borne by those who are held in custody." 128 S. Ct. 2229, 2275. Not only has the Government failed to meet the standard for certification, but for this Court to grant the Government's Motion would be utterly contrary to the Supreme Court's mandate in *Boumediene*.

### B.  <u>The Motion Should Be Denied for Failure to Meet and Confer</u>

The government's motion should also be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Simply stated, the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On November 14, 2008, counsel for the government sent an email to an undisclosed list of counsel for the detainees, including undersigned counsel, stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." The government offered no explanation regarding the substance of its motion. As the government concedes in its motion for reconsideration, many counsel for the detainees, including Petitioners' Counsel, "requested details regarding the motion that the Respondents were not in a position to discuss at the time." Gvt. Motion at 3 n.2. Petitioners' counsel requested additional information regarding the government motion and offered to meet and confer in order to narrow areas of disagreement. Nov. 17, 2008 E-mail from Agnieszka

Fryszman, Petitioners' Counsel, to Timothy Johnson, Trial Attorney, US Department of Justice. The government never responded, thereby eliminating any possibility that the issues might be narrowed or otherwise addressed by the parties themselves rather than this Court. Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone. Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[2]

### C. Even if this Court Were To Reconsider Portions of its Case Management Order, It Should Nevertheless Deny the Government's Requested Relief

The CMO sets forth, in general terms, the parties' rights and obligations in relation to the disclosure of exculpatory evidence and additional discovery and also establishes guidelines to be followed by the Merits Judges for according presumptions in favor of the government's evidence and admitting hearsay evidence. Most importantly, the CMO expressly delegates to the Merits Judges the authority to alter the CMO framework and to address any other procedural or substantive issues based on the particular facts and circumstances of individual cases.

Notwithstanding the CMO's express procedural framework -- and also in violation of several Merits Judges' orders limiting modifications of the CMO to those

---

[2] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike because party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

made in individual cases[3] -- the Government now asks this Court to reconsider and

rewrite many of the CMO's basic provisions:

a. The CMO requires the government to disclose all "reasonably available" exculpatory evidence in the Government's possession. (CMO I. D(1).) The Government seeks to narrow this requirement to an arbitrarily limited subset, namely "exculpatory material discovered *by the Government's attorneys preparing the factual returns.*" (*See* Gvt. Motion, attachment: [Second Proposed] Order, Dkt. 147-6, at 1.) (Henceforth "SPO.")

b. The CMO requires the Government to provide, upon request, discovery of all relevant documents, objects, statements and circumstantial information relied upon in the factual return (CMO I. E(1)), as well as limited additional discovery where the petitioner is able to show good cause (CMO I. E(2)). The Government seeks to eliminate its discovery obligations under Section I. E(1) altogether. In addition, after almost seven years of free discovery through interrogations of Petitioner without the presence of counsel, the Government now proposes that Petitioner must show good cause for his discovery requests but that the Government is free to propound whatever discovery it likes without any such showing. (SPO at 2.)

c. The CMO sets forth guidelines for according presumptions in favor of the Government's evidence and for admitting hearsay evidence, but properly assigns these determinations to the Merits Judges considering the particular the facts and circumstances of individual cases. (CMO II. A-C.) The Government seeks "categorical rulings" on these matters, supported by additional generic briefing and motions. (SPO at 2.)

d. Following discovery and merits briefing, the CMO entitles each petitioner to an evidentiary hearing if the Merits Judge determines that substantial issues of material fact preclude final judgment based on the record. (CMO III. B(1).) The Government arbitrarily seeks to limit the Merits Judge's power to make this determination through a categorical rule that a petitioner's "mere denial" of the Government's factual allegations -- including, presumably, hearsay accounts of statements by Petitioner and other prisoners -- is not sufficient to trigger an evidentiary hearing. (SPO at 2.) To the extent a petitioner is

---

[3] For example, by Order dated November 19, 2008, Judge Roberts instructed the parties to abide by the CMO pending further orders of his court, and also ordered that "any proposals to modify the preliminary Case Management Order" be filed with his court by November 26, 2008. Unpublished Order of Roberts, J., Nov. 19, 2008, at 2. *See also* Unpublished Order of Walton, J., Nov. 12, 2008 (No. 04-1164, Dkt. 145) (limiting modifications to those contained in the order); Unpublished order of Kessler, J., Nov. 13, 2008 (No. 05-280, Dkt. 201) (same); Unpublished order of Kollar-Kotelly, J., Nov. 14, 2008 (No. 04-2046, Dkt. 101) (same).

permitted to know the Government's factual allegations, there is no reason why the petitioner's denials should not create an issue of fact justifying an evidentiary hearing.

In each of these instances, the Government's objections to the CMO are not well taken, and the requested alterations of the CMO are neither justified nor necessary. On the contrary, the Government uses exaggerated concerns to justify imposing arbitrary restrictions on the prisoners' basic ability to challenge the Government's case. None of these alleged concerns or proposed solutions justifies reconsideration of the CMO.

1. **The Government's Exculpatory Evidence Proposals Are Arbitrary And Unnecessary**

The Government's concerns about the mandatory disclosure of exculpatory evidence are typical of its exaggerated approach. As an initial matter, the Government is simply incorrect in claiming that it is unusual for an obligation to produce exculpatory information to exist in habeas proceedings. (Gvt. Motion at 8: "[T]here is no general *Brady* obligation in civil habeas proceedings.") As *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) noted, it is well-settled that the State has an "ongoing duty" to disclose exculpatory materials in post-conviction habeas proceedings. Here, the CMO requires disclosure of all exculpatory evidence "reasonably available" to the Government -- a standard that already expressly accommodates the Government's concerns on a case-by-case basis -- but the Government claims that a duty to produce reasonably available information is "unreasonable" and "extraordinary burdensome [*sic*] to wartime intelligence operations." (Gvt. Motion at 9.)

The Government's effort to limit its disclosure obligation to exculpatory material "discovered" by the unspecified attorneys working at the tail end of the investigation

process, who are tasked with "preparing" amended factual returns has no logical relation to the Government's disclosure obligations.

### 2. Eliminating The Automatic Discovery Provisions Is Unwarranted.

The Government's objections to the CMO's automatic discovery provisions are equally ill-founded. The CMO's automatic discovery is narrowly tailored to the evidence that the Government relies on to justify each petitioner's detention: the documents or objects relied upon in the factual return, the petitioner's statements relevant to the information in the factual return, and information necessary to evaluate the reliability of such statements. (*See* CMO I. E(1).) As the CMO notes, this much discovery is "essential to render a habeas proceeding effective." (CMO at 3 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 n.7 (1969).) Yet, the Government proposes to require each petitioner to move individually and particularly for discovery of even the most basic documentary and factual basis of the Government's case.

Especially when viewed in light of the Government's concurrent requests to limit its duty to disclose exculpatory evidence, for a categorical presumption in favor of its own evidence, for the admissibility of hearsay and for denying petitioners an evidentiary hearing based on a "mere denial," the Government's proposals would render these habeas proceedings as *ineffective* as possible, by burdening and restricting the petitioner's ability to develop the factual basis to contest the Government's case. The CMO already imposes limits on the discovery available at each stage of these habeas proceedings and authorizes the Merits Judges to rule on additional discovery in individual cases. Therefore, no reconsideration is needed here.

### 3. The Government's Proposals Regarding Presumptions, Hearsay, and Evidentiary Hearings Are Poorly Considered.

The CMO also correctly authorizes the individual Merits Judges to make any necessary determinations with regard to presumptions in favor of the Government's evidence and the admissibility of hearsay on a case-by-case basis. The Government's demand that the parties seek, and this Court provide, "categorical rulings" to create a "presumptive baseline" for these issues collapses under its own logic. (*See* Gvt. Motion at 26-28.) The Government concedes that any presumptions would be rebuttable and that "objections or exceptions in individual cases" would still be possible; hence, the Government's proposal would simply impose an additional and unnecessary layer of litigation.

Similarly self-defeating is the Government's proposed categorical rule that a petitioner's "mere denial" of the Government's factual allegations should not be sufficient to entitle the petitioner to an evidentiary hearing. (*See* SPO at 2.) Lacking any support for this proposal, the Government simply declares that the familiar summary judgment standard adopted by the CMO -- substantial issues of material fact -- is "clearly inappropriate." (*See* Gvt. Motion at 28.) The CMO fairly and reasonably assigns to the Merits Judges the determination of whether each individual petitioner is entitled to an evidentiary hearing based on the record in each case. The Government's mere disagreement on this issue is not enough to trigger reconsideration of the CMO.

## II. ANY MODIFICATIONS TO THE CASE MANAGEMENT ORDER'S SEQUENCING AND TIMING OF FILINGS SHOULD BE ADDRESSED BY THE MERITS JUDGE UPON A SHOWING OF GOOD CAUSE

In addition to the Government's unjustified arguments for reconsideration of the CMO's discovery provisions, the Government also seeks to rewrite the filing and briefing schedules set forth in the CMO. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

While counsel for Petitioner has been and remains willing to meet and confer about possible alterations to the schedule set forth in the CMO where there is good cause and agreement, the Government's specific proposals are unworkable in several specific ways:

- The Government proposes a deadline of December 12, 2008 (SPO at 2 ¶ A) to produce unclassified factual returns in cases in which classified returns were filed on or before November 12, 2008, with traverses due four weeks after that. This schedule would create a bottleneck during the

year-end holiday period, when access to both to the secure facility and to Guantánamo itself will be more limited than usual due to holiday closings of both the base and the secure facility. The whole point of providing unclassified returns is to enable petitioners' counsel to discuss with their clients the allegations against them. The Government's proposed deadline thus imposes a needless logistical burden on counsel for those petitioners whose unclassified returns are due on December 12. Instead, unclassified returns should be due four weeks after the classified return has been filed.

- The Government also proposes that the petitioners submit a "preliminary traverse" within four weeks after receiving the unclassified return, but *before* submitting requests for discovery or receiving any discovery from the Government. (SPO at 2 ¶¶ B&C.) This proposal is unworkable for the simple reason that any discovery sought by petitioners will be needed in order to prepare the traverse in the first place. To file a "preliminary" traverse without the benefit of discovery is not only inefficient, but leads to unnecessary filings with this Court. The CMO correctly permits discovery *before* the filing of the traverse.

- The Government's proposed schedule also provides that discovery proposals may be submitted by "the parties." (SPO at 2 ¶ C.) This language improperly implies an equal entitlement for the Government, not just the petitioners, to propose additional discovery after the filing of the factual return. The Government has had up to seven years of unlimited, one-sided "discovery" in these cases. The CMO correctly reflects that any additional discovery is permitted for the petitioner only.

- The Government proposes (SPO at 2 ¶ E) that once factual returns are filed, the Government will proceed with discovery in only "25 cases per month (coordinated among the various Judges of the Court)." This proposal improperly and impractically seeks to restrict the authority of the Merits Judges to schedule and conduct the proceedings of the individual cases, while imposing an artificial and arbitrary cap on the overall rate of progress in these cases. The CMO fairly and reasonably leaves such matters to the individual Merits Judges.

The government had the opportunity to propose modifications to the CMO in the context of these cases. Instead, they have attempted to seek a blanket stay of the deadlines set forth in the CMO. The government should be required to proceed in compliance with the deadlines set forth in the CMO, as modified by the Merits Judge, to ensure that these cases proceed expeditiously.

## III. CONCLUSION

For the above reasons, the Government's motion should be denied. These cases were initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this court may alter that framework based on the particular facts and circumstances of their individual cases. That is exactly what the Merits Judges in these cases had already begun to do. Proceeding on an individual case-by-case basis is also the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the Habeas Corpus Statute.

Date: Washington, DC

November 26, 2008      RESPECTFULLY SUBMITTED,

___/s/ Avi S. Garbow_____
Avi S. Garbow D.C. Bar No. 445399
Agnieszka M. Fryszman  D.C. Bar No. 459208
Matthew K. Handley
Jason M. Leviton
Matthew Kaplan
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
1100 New York, Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone:     (202) 408-4600
Facsimile:      (202) 408-4699

John Holland
Anna Cayton-Holland
**LAW OFFICES OF JOHN HOLLAND**
1437 High Street
Denver, CO 80218
Telephone:     (303) 860-1331
Facsimile:      (303) 832-6506

*Attorneys for Petitioners*