IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | Misc. No. 08-442 (TFH) |
| ) | |
| GUANTANAMO BAY ) | Civil Action No. 05-CV-1983 (RMU) |
| DETAINEE LITIGATION ) | Civil Action No. 05-CV-02104 (RBW) |
| ) | |

**MEMORANDUM OF PETITIONERS HUSSEIN, SHAMRANY, AND BAKUSH IN OPPOSITION TO GOVERNMENT'S MOTION FOR RELIEF FROM NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND RELATED ORDERS BY MERITS JUDGES**

Petitioners Ahmed Hussein (ISN 690) and Othman Shamrany (ISN 171) in 05-CV-02104 (RBW) and Ishmael al Bakush (708) in 05-CV-1983 (RMU), through their undersigned counsel, respectfully submit this memorandum of law in opposition to the Government's November 18, 2008 Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, In The Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal ("Reconsideration Motion"). For the reasons that follow, the Court should deny the Reconsideration Motion and transfer these cases to their assigned Merits Judges for all further proceedings.

## INTRODUCTION

Petitioners Hussein, Shamrany, and Bakush have been detained in Guantánamo Bay, Cuba since 2002. For much of this time, each petitioner has been held in near isolation, subjected to cruel treatment, forced to participate in serial interrogations under threat of punishment for non-compliance, deprived of adequate medical care, and left with little hope of

Dockets.Justia.com

ever being released. More than six years after these men arrived in Guantánamo, the Supreme Court held that detainees at the base have a constitutionally-protected right to seek habeas relief, and, further, are "entitled to a prompt habeas corpus hearing." *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Yet, more than five months after that decision, no detainee subject to these coordinated proceedings has received a habeas hearing. Indeed, Petitioners Hussein, Shamrany, and Bakush only recently received the Government's factual returns in their cases, and, even prior to the recent stay of the Government's obligations under the November 6 CMO, any possible habeas hearing was many weeks, if not months, away.

Petitioners, of course, objected to coordinated treatment of these cases post-*Boumediene*, because they feared the Government would exploit the coordination process to further delay their day in court, and, at the first available opportunity, seek an interlocutory appeal to delay the proceedings further still. Indeed, in their July 25, 2008 Joint Memorandum of Law Addressing Procedural Framework Issues ("Joint Procedural Memo") (Dkt. 66), all petitioners in these coordinated Guantánamo habeas cases "reiterate[d] their previously-expressed concern regarding the extent to which the government will use collective rulings by this Court to generate delay through interlocutory appeals." Joint Procedural Memo at 4, n.1. The Government's Reconsideration Motion validates this concern. Despite this Court's best efforts to streamline these cases through coordination of threshold scheduling and procedural framework issues, the Government is now exploiting this coordinated treatment by unilaterally ignoring the Court's deadlines, seeking reconsideration of the Court's decision on procedural issues that were fully briefed several months ago, and — continuing their multi-year strategy of delaying justice through serial appeals — requesting an interlocutory appeal of the Court's procedural framework decision.

At this stage, the most just and efficient approach to these cases would be to deny the Government's Reconsideration Motion and transfer these cases to the individual Merits Judges for further proceedings. Indeed, the post-*Boumediene* experience in the district court confirms that handling each case individually is the best way to secure the prompt habeas corpus hearings that the Supreme Court required in *Boumediene*. Judge Leon has already held a merits hearing for the six *Boumediene* petitioners, which resulted in an order to release five of them. This shows that a case-specific approach to scheduling and other procedural issues works best because each case is different: some petitioners have had the benefit of factual returns for years and need less time to prepare for a merits hearing, while others have received them only recently; and the extent of the Government's burden to produce classified evidence and other discovery will vary depending on the facts of each case. If the Court transferred these cases back to the respective Merits Judges, each could address these scheduling and other procedural issues in the manner that best fits the facts and circumstances of each individual case. And, in any event, the follow-on procedural orders issued by individual Merits Judges demonstrate that each judge will approach certain key procedural and substantive issues differently by modifying this Court's coordinated procedural decisions as is appropriate.

Whether decided by Judge Hogan or the Merits Judges assigned to these cases (Judge Walton for Petitioners Hussein and Shamrany, and Judge Urbina for Petitioner Bakush), however, the Reconsideration Motion should be denied for four reasons: (1) the Government failed to meet and confer with undersigned counsel for Petitioners Hussein, Shamrany, and Bakush in accordance with Local Rule 7(m); (2) the Government has failed to establish that the standard for reconsideration of a prior order has been met; (3) even if reconsideration were granted, the Government has failed to demonstrate that any aspect of this Court's November 6

CMO was in error, and, in any event, any consideration of the Government's request for relief should be undertaken by the Merits Judges in the context of Petitioners Hussein's, Shamrany's, and Bakush's specific cases; and (4) the Government has failed to establish grounds for an interlocutory appeal.

## ARGUMENT

### I. The Government's Reconsideration Motion Should Be Denied for Failure to Meet and Confer Under Local Rule 7(m)

While the Government baldly asserts it complied with Local Rule 7(m), its description of its so-called meet and confer efforts reveals a failure to meaningfully consult with counsel for Petitioners prior to filing this motion. *See* Reconsideration Motion at 3 n.2 Accordingly, the Reconsideration Motion should be denied for failure to meet and confer.

Local Rule 7(m) provides in relevant part that:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, *either in person or by telephone*, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

D.D.C. Civ. R. 7(m) (emphasis added). Rule 7(m) further requires a moving party to state in its motion papers that the required discussion took place whether the motion is opposed. *Id.* Failure to comply with the duty to confer requirement is grounds for denying the motion. *See e.g., In re Verizon Internet Servs., Inc.*, 217 F.R.D. 239, 240 (D.D.C. 2003) (denying motion for failure to meet and confer). Moreover, "[t]he obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006).

The Government did not call undersigned counsel, seek an in person meeting to discuss the potential Reconsideration Motion, or otherwise seek a direct discussion of the relief sought. Rather, on November 14, 2008, the Government sent out a mass email to all Guantánamo habeas counsel informing of its plans "to file a motion for clarification and reconsideration of the Court's November 6, 2008 case management order (and supplemental amended orders, where applicable), or in the alternative, a motion for certification for appeal and to stay certain obligations pending appeal." *See* Email from Timothy Johnson to Wesley R. Powell et al. (Nov. 14, 2008) (attached as Ex. A.). The Government further noted that, "[t]he basis for this motion is that the November 6, 2008 procedural order is legally inappropriate and unworkable. Please advise if you oppose the motion by noon, ET, on Monday, November 17, 2008." *Id.* Shortly after receiving the email, undersigned counsel responded that it could not evaluate the Government's position without more information on the nature of the relief sought. *See* Email from Wesley R. Powell to Timothy Johnson (Nov. 14, 2008) (attached as Ex. B.). The Government never responded to this email.

This Court has specifically held that that an email stating a motion would be filed if not responded to within twenty-four hours was not a good faith effort to confer under Local Rule 7(m). *See United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008). This is because mere notification designed to elicit a statement of opposition to a motion does not serve a key purpose of Rule 7(m) — "to narrow the areas of disagreement." *Abbott GMBH & Co. KG v. Yeda Research & Dev. Co.*, 576 F. Supp. 2d 44, 48 (D.D.C. 2008). Similarly, here, the Government's omnibus email offered no opportunity to narrow any areas of disagreement, because it did not

disclose any details of the relief sought, and Petitioners' email seeking more information was simply ignored.

Indeed, the Government's failure to meet and confer shows the perils of handling these preliminary procedural matters in an omnibus fashion. All three of these Petitioners received amended factual returns only in the last thirty days. In order to thoroughly prepare for a hearing on the merits, counsel will need an unclassified version of each return as soon as possible and will need to visit Petitioners with this material in hand. Accordingly, Petitioners would be willing to negotiate with the Government an appropriate schedule that accommodates these needs while keeping each Petitioner's case on a fast track. By ignoring Petitioners' request to further meet and confer on the Reconsideration Motion, the Government avoided an opportunity to set a workable schedule that fits the circumstances of each of these Petitioners.

For these reasons, the Court should deny the Reconsideration Motion and order the Government to complete the meet and confer process required under Local Rule 7(m), under the supervision of Petitioners' assigned Merits Judges.

## II. The Government Has Failed to Satisfy the Standards for Reconsideration

The Government has not met the standard governing motions for reconsideration. Federal Rule of Civil Procedure 54(b) governs reconsideration of orders — such as the November 6 CMO — that do not constitute final judgments in a case. *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the *Cobell* "as justice requires" standard, which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* This standard is triggered when a court "patently"

misunderstood the parties, made a decision beyond the adversarial issues presented, erred in failing to consider controlling decisions or data, or when a controlling or significant change in the law has occurred. *See Singh v. S. Asian Soc. of George Wash. Univ.*, 572 F. Supp. 2d 11, 12 (D.D.C. 2008). Under this standard, "reconsideration . . . will not lightly be granted." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005).

Essentially ignoring the governing *Cobell* standard, the Government instead argues the reconsideration should be granted in the Court's discretion. But the Government has made no showing warranting such an exercise of the Court's discretion. The Government does not argue that the Court has misunderstood the issues, made a decision outside the adversarial issues presented to it, or misunderstood the parties. Nor has the Government suggested a change in the law or facts supports this motion. In fact, the Government simply rehashes the positions it argued in its July 25, 2008 Brief Regarding Procedural Framework Issues (Dkt. 66). For example, the Government argues the discovery provisions of the November 6 CMO are too broad and should be more limited than those applicable to criminal defendants and that compliance with the CMO will be unduly burdensome. But these very arguments were fully addressed in the parties' briefs addressing procedural framework issues. *See* Gov't Brief on Proc. Issues at 1-3, 9-10, 17-28; Pet'rs.' Joint Mem. Proc. Issues at 18-24; Pet'rs.' Joint Reply Mem. at 22. The Government's positions were considered and rejected by Judge Hogan, when he issued the CMO, by Judge Urbina, when he modified the CMO in Mr. Bakush's case, and by Judge Walton, when he modified it in Mr. Hussein's and Mr. Shamrany's cases. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again" through a reconsideration motion. *Singh*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations omitted), *judgment vacated on other grounds*, 508

F.3d 1097 (D.C. Cir. 2007). The Court should reject the Government's effort to do battle again over these identical procedural issues.[1]

III. **The Government Has Failed To Establish Any Aspect of the CMO Was In Error, and Any Proposed Modifications To the November 6 CMO Should Be Considered By Merits Judges**

    A. **The CMO's Discovery Provisions are Constitutionally Necessary and Should Not be Narrowed.**

The Government incorrectly asserts that the CMO provides Petitioners with more discovery than is required by the Constitution. The Government' argument is based on a contention, previously rejected by this Court, that Petitioners are entitled to less discovery than afforded to criminal defendants. Reconsideration Mot. at 13. This assertion ignores the notable differences between Petitioners' habeas proceedings and typical criminal prosecutions: Petitioners have not been charged with any crime; were not extended the right to counsel upon incarceration; were denied any freedom from self-incrimination; and were interrogated by authorities using techniques undeniably harsher than those employed by typical law enforcement personnel. To limit Petitioners to the discovery provided to criminal defendants would ignore

---

[1] Likewise, the Court should reject the Government's alternative request for "clarification." The November 6 CMO, and the follow-on orders of Judges Walton and Urbina, are abundantly clear, and, in any event, this is simply an alternative way of asking for reconsideration. The request for "clarification" is also proving to be a vehicle for the Government to engage in self-help. On November 20, 2008, the government filed a notice pertaining to its purported compliance with Part I.D.1 of the CMO. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1022) ("Exculpatory Evidence Statement"). The notice stated that the Government had complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no broader than the search previously conducted by the Government — an interpretation that conflicts not only with the plain language of the CMO but also with Judge Walton's follow-on Order requiring a broader search for exculpatory evidence. *See* Reconsideration Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession). In any case, notwithstanding any claim that the CMO is unclear, the Government already has acknowledged its failure to provide all exculpatory evidence in its possession. *See* Reconsideration Motion at 17 n.14 (admitting failure to produce all detainee denials of government's claims); Exculpatory Evidence Statement at 3 n.1 (admitting failure to produce all detainee denials of government's claims; all agency reports containing exculpatory evidence; and all exculpatory evidence identified after filing of returns). Accordingly, it is Petitioners' position that the Government has failed to comply with Part I.D.1 of the CMO, so Petitioners' time to file a traverse (set forth in Part I.G of the CMO) has not been triggered.

the undisputed fact that Petitioners have not been granted the rights typically afforded to criminal defendants.

Moreover, there is good reason to provide Petitioners broader discovery than that available under the rules of criminal procedure. In criminal cases, defendants are able to assert their rights under the Confrontation Clause and Due Process Clause as well as their right to compulsory process. And, in post-conviction habeas proceedings, criminal defendants have already received a trial governed by the Constitution. By contrast, Petitioners here have never been criminally charged and therefore have had no opportunity to contest the allegations against them. Accordingly, it is essential to provide Petitioners with discovery that will permit just resolution of their detention status.

The Government misapplies Supreme Court precedent in arguing that discovery should be limited. *Hamdi v. Rumsfeld* and *Boumediene v. Bush* do not, in fact, hold that Petitioners are entitled to only minimal discovery. *See* Reconsideration Motion at 8-9; *see also Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). *Hamdi* is inapposite, as it was decided at an early stage of the proceeding when the scope of discovery was not at issue. *Boumediene*, by contrast, recognized the unique posture of cases involving detainees and noted that collateral review and full and fair development of the factual record are necessary in these cases. 128 S. Ct. at 2269, 2273.

The Government also misconstrues *Harris v. Nelson* and the habeas procedural rules that followed it. 394 U.S. 286 (1969); Habeas R. 6. The Government incorrectly states that the habeas corpus rules limited the scope of *Harris* and demonstrated Congressional intent to prevent significant discovery in habeas cases. *See* Reconsideration Motion at 12-13. In reality,

both sources provide district courts with significant discretion to manage habeas proceedings. Moreover, these authorities and arguments were fully briefed in July and considered by Judge Hogan in issuing the CMO.

### B. The Government's Burden in Complying with the CMO is Self-inflicted.

The Court should not delay or modify discovery for Petitioners because the burden facing the Government is self-inflicted. It was, after all, the Government that requested consolidation of these habeas proceedings. Yet, it now complains that complying with uniform timelines will be too burdensome. The Government chose to file amended factual returns to support the continued detention of Petitioners, but evidently elected not to conduct a thorough review of the information available to them, for example, to identify exculpatory material. Had they done so, much of the burden of which they now complain would have already been completed.

Moreover, when faced with judicial decisions that ordered the Government to afford constitutional rights to Petitioners, the Government sought appellate review, and, despite the significant risk those appeals would not succeed, took no steps to prepare to advance these cases in the event of a loss on appeal. This approach, of course, was part and parcel of the Government's ongoing campaign of delay, and it should not be rewarded. And, the Government could have used the interim period to seek a diplomatic resolution to these Petitioners' cases, by negotiating Mr. Hussein's and Mr. Shamrany's release to Yemen, and by securing a safe third-country residence for Mr. Bakush (who is from Libya and fears death if returned there.) The Government also could have charged Petitioners with a crime, requested a finder of fact to evaluate the charges, and imprisoned them if found guilty. Instead, the Government chose to keep Petitioners in legal limbo indefinitely in Guantánamo. The Government should not be granted relief from any burdens that result from its inaction and campaign of delay.

## C. The CMO's Exculpatory Evidence and Automatic Discovery Provisions are Clear, and Any Modifications Should be Considered Case-By-Case

The Government knows full well that the CMO is not "unclear" or "ambiguous." The CMO explicitly requires the Government to disclose all reasonably available exculpatory evidence that is in its possession or can be obtained through reasonable diligence. CMO at I.D. The CMO clearly does not limit the Government's obligation to provide exculpatory evidence to evidence discovered while preparing factual returns, and such a modification of the CMO would convert these habeas proceedings to a cursory review of the CSRT record, which is precisely the type of "due process" the Supreme Court rejected as insufficient in *Boumediene*.

The Government also purports to request clarification of the Court's ruling on automatic discovery. Reconsideration Mot. at 11. The Government seeks to have the CMO apply only to certain documents referenced in the factual return despite the absence of any limiting language in the CMO. *Id.*; CMO at I.E.1. Alternatively, the Government requests the Court require Petitioners to show good cause before they can receive specific discovery. Reconsideration Mot. at 12. The Government does not present any new arguments or evidence to support these requests for clarification; it simply rehashes arguments made in its prior briefing, which has already been considered by the Court.

The Government also takes issue with the CMO's requirement to disclose documents or objects in the Government's possession that are referenced in the factual return, statements by the detainee, and circumstances in which the detainee's statements were made. CMO at I.E.1. The Government contends that these provisions exceed the Government's obligations under the Federal Rules of Criminal Procedure and common criminal practice. Reconsideration Mot. at 13-14, 17-18. As discussed in Part III.A, *supra*, there are significant differences between

Petitioners' habeas petitions and criminal prosecutions, and the Court has already considered briefing on the subject and concluded that the limited discovery provided in the CMO is appropriate.

To the extent any ambiguity exists in the Court's order, the Court should resolve such issues case by case. Doing so will permit the Court to evaluate what evidence the Government has provided to Petitioners, and Petitioners will be able to frame their arguments on the scope of discovery in reference to specific pieces of evidence. This will provide the context necessary to evaluate the Government's burden claims.

### D. The Court Should Address The Provision of Classified Information Case-by-Case

The CMO orders the Government to provide Petitioners with access to an adequate substitute for classified information, provide Petitioners' counsel with the classified information, and permit the Court to examine classified information *in camera* in the event that the Government objected to its disclosure. CMO at I.F. The Government's principle argument — that providing such information is unnecessarily burdensome — has already been presented to the Court and rejected. That argument deserves no further consideration.

The Government further contends that this provision exceeds the classified information disclosure rights provided to criminal defendants under the Classified Information Procedure Act (CIPA) and that such disclosure provisions are constitutionally grounded. Reconsideration Mot. at 22-23. The Government's reliance on CIPA is misplaced because these proceedings are not criminal proceedings. *See supra* Part III.A.

Even if limitations resembling CIPA were applicable in these cases, the Court should resolve issues regarding the classified information provisions of the CMO on a case-by-case basis. The Government has made no showing regarding the classified information relied on in the present cases. Despite the dire warnings about the pitfalls of disclosing such information or adequate substitutes, the nature of the classified information the Government possesses regarding Petitioners is unclear. Allowing the matter to proceed under the CMO will permit the parties to determine what classified information is at issue and whether its provision would be problematic in the particular case at issue. The Government should be required to collect and identify the relevant information, and then seek relief if such relief is appropriate.

### E. Questions of the Presumption Afforded the Government's Evidence, Hearsay, and Evidentiary Hearings Are Best Decided Case-by-Case.

The Government devotes little attention to these issues but summarily asserts that resolution of admissibility of hearsay and any presumptions in favor of the Government should not be decided case-by-case basis and that, under *Hamdi*, evidentiary hearings should not be provided. Reconsideration Mot. at 29-30. The Court has already considered these arguments, and there is no basis to reconsider those rulings. Gov't Br. Proc. Issues at 30-33, 36-40. Considerations of these issues are inherently fact-specific, and it is far more efficient for the Court to decide them as they arise rather than to create blanket rules that may not fit the details of each discrete case.

### F. The Government's Burden Arguments Are Undermined By The Habeas Proceedings That Already Have Occurred

Over Petitioners' opposition, this case was transferred to Judge Hogan in June "for coordination and management." Petitioners' opposed consolidation expressed their fear that consolidation would result in delay and inefficiency. And, indeed, the Government's

13

Reconsideration Motion confirms those concerns about delay and inefficiency. In June, Judges Leon and Sullivan chose not to transfer their habeas cases to Judge Hogan, and the Uighurs' habeas cases were transferred to Judge Urbina for separate resolution. In those cases, the Court has imposed tight deadlines and required the production of exculpatory information and discovery, with which the Government was able to comply. The cases before Judges Leon and Urbina have now reached final judgment and the cases before Judge Sullivan are at the merits briefing stage. The Government has met these deadlines, presumably, by assigning individual lawyers to handle these specific cases and ensure compliance with the applicable schedules. This proves that, if the Government were required to litigate these cases individually rather than in an omnibus fashion, it could comply with the Merits Judges' schedules through a similar approach. For this reason as well, the Court should transfer Petitioner Bakush's case to Judge Urbina, and Petitioners Hussein's and Shamrany's cases to Judge Walton, for all further proceedings.

### G. The Government Has Failed To Establish Grounds for An Interlocutory Appeal

By the express terms of 28 U.S.C Section 1292(b), the Government's alternative request for interlocutory appeal should be rejected:

> When a district judge, in making in civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*, he shall so state in writing in such order. The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b) (emphasis added). The Reconsideration Motion does not "seek[] [to] materially advance the ultimate termination of the litigation." Its aim is the exact opposite — to

protract this litigation's ultimate resolution. Accordingly, the Court should deny the Government's request for certification for appeal.

Section 1292(b) "allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Merely satisfying section 1292(b)'s requirements, however, "will not insure interlocutory appeal" because §1292(b) "was designed to be a rarely used exception to the final judgment rule." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 161 (E.D.N.Y. 1999). Although section 1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 865. The legislative history and statutory design of section 1292(b) make clear that the statute vests district court judges with discretion whether to certify cases for interlocutory appeal even when the requirements of the statute are met. *Id.* at 163-64.

Notably, in all but one of the cases cited in the Reconsideration Motion, the court either denied certification under section 1292(b) or held that certification, under section 1292(b), was not proper.[2] In the only case in which a certificate of immediate review was issued, *In re*

---

[2] Three of the cases cited by Respondents were decided under the collateral order doctrine, which differs from discretionary appeals under § 1292(b). *See Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997); *United States v. Rostenkowski*, 59 F.3d 1291, 1296 (D.C. Cir. 1995), *opinion supplemented on denial of rehearing*, 68 F.3d 489 (D.C. Cir. 1995); *United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003), *subsequent determination*, 347 F. 3d 951 (D.C. Cir. 2003). Under the collateral order doctrine, a district court order qualifies for immediate appeal as a "final order" under §1291 if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) [would be] effectively unreviewable on appeal from a final judgment." *Rostenkowski*, 59 F.3d at 1296 (quotation marks omitted). The CMO at issue does not qualify for immediate appeal under the collateral order doctrine because even if it satisfies the second or third prongs of this test, it does not conclusively determine any disputed questions. The CMO instead sets out the framework under which the district court will proceed to resolve the questions before it, a framework that leaves a great deal of discretion in the district court to make evidentiary rulings.

*Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000), the Court concluded that its ruling that jurisdictional discovery in that case should proceed under the Federal Rules rather than the Hague Convention was an important issue that many other courts also would face and, thus, was appropriate for immediate review. *Id.* at *1-2. By contrast, the Government in this case concedes that these habeas cases do not raise issues commonly encountered in comparable cases. Reconsideration Mot. at 35. The court in *National Asbestos* specifically held that cases involving unique factual and legal disputes are not appropriate for interlocutory appeal. 71 F. Supp. 2d at 163. Although the court in *Vitamins Antitrust* certified the interlocutory appeal, it also stated that "interlocutory appeals under 28 U.S.C. §1292(b) are rarely allowed, and the party seeking interlocutory review has the burden of persuading the court that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Vitamins Antitrust*, 2000 WL 33142129, at *1 (quoting *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996)).

The court in *National Asbestos*, 71 F. Supp. 2d at 163, in emphasizing that §1292(b) is discretionary as opposed to mandatory, stated several factors for district judges to weigh in determining whether an interlocutory appeal is an efficient use of judicial resources:

> (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

*Id.* Applying these factors to the facts of these consolidated case, weighs against an interlocutory appeal. Appeal would simply not be an efficient use of judicial resources.

The Government relies on *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d. Cir. 1978) for the proposition that a controlling question of law "include[s] a procedural determination that may importantly affect the conduct of an action." The *Duplan* court goes on to state in the same footnote, however, that the "critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation" *Id.* An appeal of the CMO at issue here would slow down — rather than accelerate — the disposition of this already protracted litigation. The facts in these habeas cases have not been fully developed and an immediate interlocutory appeal would "unduly interfere with discovery . . .." *Nat'l Asbestos*, 71 F. Supp. 2d at 167.

This Court and several Circuit Courts have held that "discovery orders 'generally never will involve a controlling question of law.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 23 (D.D.C. 2002) (quoting *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994)); *see also In re City of Memphis*, 293 F.3d 345, 351 ("A ruling on the admissibility of evidence is reviewed for abuse of discretion. An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under §1292(b)."). The court in *Judicial Watch* emphasized that when the real difference of opinion lies between one of the parties and the court, rather than between precedential authority, there is not substantial ground for difference of opinion, as required by §1292(b). 233 F. Supp. at 24-25. As the Government's issues with the CMO stem from the burdens that the Order places on the Government rather than precedent, these issues cannot be sufficient to justify an interlocutory appeal.

## CONCLUSION

For all of these reasons, the Court should deny the Reconsideration Motion and refer these cases back to the individual Merits Judges for all further proceedings.

Dated: November 26, 2008

                                            Respectfully submitted,

                                            _____/s/_____
                                            Wesley R. Powell
                                            wpowell@hunton.com
                                            HUNTON & WILLIAMS LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            (212) 309-1000
                                            (212) 309-1100 (facsimile)

                                            Karma B. Brown (Bar No. 479744)
                                            kbbrown@hunton.com
                                            HUNTON & WILLIAMS LLP
                                            1900 K Street, N.W.
                                            Washington, DC 20006
                                            (202) 955-1500
                                            (202) 778-2201 (facsimile)

                                            *Attorneys for Petitioners*