IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GUANTANAMO BAY | ) | Misc. No. 08-442 (TFH) |
| DETAINEE LITIGATION | ) | |
| _____ | ) | |
| HANI SALEH RASHID ABDULLAH, | ) | |
| *et al.,* | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| *v.* | ) | Civil No. 05-0023 (RWR) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| *Respondents*. | ) | |
| _____ | ) | |

## PETITIONER'S REQUEST TO MODIFY
## CASE MANAGEMENT ORDER

Pursuant to the Court's Order of November 19, 2008, Petitioner Abdullah requests that the case management order ("CMO") be modified as follows:

1. Deadline for Filing a Traverse. Section I.G of the CMO requires Abdullah to file his traverse 14 days after the government has filed its notice relating to exculpatory evidence. The government filed a notice at around 10 p.m.

on November 20, 2008 – but "produced" the exculpatory evidence[1] using an unjustifiably narrow interpretation of "exculpatory." This was rank self-help, once again. Evidence that statements made by Abdullah and other witnesses were coerced is "exculpatory" under any reasonable interpretation of that term, and indeed several of the Court's colleagues have already made this explicit. The government's definition does not include this category, among others, and its certification is therefore defective. Abdullah requests that his time to file a traverse be extended until 14 days after the government has fully complied with section I.D.1 of the CMO.[2]

    2. Exculpatory Evidence. The CMO is not ambiguous on the definition of exculpatory evidence, and yet the government has adopted an interpretation that lacks support in law or logic, and certainly contradicts the text of the CMO. It is therefore necessary to spell out to the government that evidence that bears on the reliability of statements in the return – whether it pertains to coercion of witnesses, interviews conducted in violation of the canons of ethics after petitioner was represented by counsel, information gathered in violation of

---

[1] No evidence whatsoever was produced, even that which is the subject of outstanding motions directed to such production.

[2] Counsel understands from counsel for another detainee – who communicated with Judge Hogan's chambers – that Judge Hogan considers the obligation to file a traverse to be suspended pending the government's motion to reconsider. The Court can clarify its view on this subject at the upcoming status conference.

the Treaty of Friendship and Commerce between Yemen and the United States,[3] or to rewards given informants – is covered within this term.

Abdullah addressed admissibility of statements obtained through coercion in his November 21 opposition to the government's motion to reconsider the CMO. He has since become aware of Judge Huvelle's excellent analysis of the issue in *United States v. Karake*, 443 F.Supp.2d 8, 48-54 (D.D.C. 2006). It is Abdullah's position that each statement from him submitted with the return was the product of coercion. In Abdullah's view, this issue can be addressed by motion after the close of discovery, and after the government has identified exactly which statements it will rely upon.

3. Legal Justification. Section I.B of the CMO requires "a succinct statement explaining its legal justification for detaining the petitioner." The government filed a single pleading in 113 cases describing its theory of how "enemy combatant" is defined. It did not address Abdullah specifically and thus did not comply with the CMO. The CMO is unambiguous in requiring a link between the facts upon which the government is relying and the legal justification, but, apparently the government needs to have the order supplemented to curtail evasion. The government should be directed to explain its legal basis for holding

---

[3] 60 Stat. 1782, T.I.A.S. 1535, 12 Bevans 1223.

*Abdullah,* including, for example, (a) if the government claims that Abdullah was a combatant in the war between the United States and the state of Afghanistan, an explanation why it does not consider hostilities to have ended many years ago, *see United States v. Prosperi*, 573 F.Supp.2d 436, 455 (D. Mass. 2008); and (b) its basis (if any) for concluding that Abdullah, a citizen of Yemen, is likely to "return" to that war or any other. Neither the Court nor Abdullah has an interest in litigating issues of fact or law that do not pertain to his case. In sum, the legal justification should be tailored to the circumstances of this case.

    4. Classified Information. The government repeatedly abuses its designation of evidence as classified, notwithstanding its solemn invocation of "national security" at every turn. The CMO should be revised to remind the government that the purpose of classification is to protect information release of which actually threatens national security rather than the exquisite sensibilities of some CIA functionary.

    In addition, the CMO is unambiguous with respect to the requirements for filing documents *ex parte*.[4] The government's notice of December 18, 2008

---

[4] The CMO does not describe the standard to be applied for such filings. In Abdullah's view, *ex parte* evidence has no place in this proceeding. Little about Abdullah should be classified at all, and nothing about this man – in contrast, perhaps, to certain other men held at the Guantanamo prison -- is so secret that his lawyers should not be able to see it. Certainly the burden on the government should be steep. *See Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence he had not the liberty to cross examine.").

regarding the Hayden declaration – docket entry 147 in this case – did not meet this requirement. The Court should modify the CMO to direct the clerk to exclude non-compliant documents, including the Hayden declaration unless and until Petitioner's security-cleared counsel can see it. In this regard it is noteworthy that Judge Leon in *Boumediene* recently refused to see or hear secret evidence which the government refused to show to petitioners' counsel.

      5. Hearsay and the Presumption in Favor of Government Evidence. Sections II.B and II.C of the CMO are designed to address burdens on the military that arise from battlefield conditions. Abdullah was arrested in a large Pakistani city, by Pakistani authorities, in a planned raid.[5] None of the special provisions hypothesized in *Hamdi v. Rumsfeld* apply to this case: from an evidentiary perspective, this case is no different from one involving the arrest in Spain of a drug smuggler. Section II.B may be deleted entirely. The filing procedure set forth in section II.C should be folded into the normal process for identifying exhibits as part of the final pretrial conference.

      6. Meet and Confer Obligations. Judge Hogan has more than once admonished the parties to comply with local rule 7(m). So far, this has had no

---

[5] The planning was described by Ron Suskind in *One Percent Solution*.

substantive effect on the government. Perhaps a CMO modification would advance this cause.

|  | Respectfully submitted, |
|---|---|
|  |    /s/ Charles H. Carpenter |
| Shayana Kadidal (DC # 454248) | Charles H. Carpenter (DC #432004) |
| CENTER FOR CONSTITUTIONAL RIGHTS | William J. Bethune (DC # 66696) |
|  | PEPPER HAMILTON LLP |
| 666 Broadway, 7th Floor | 600 Fourteenth Street, N.W. |
| New York, New York 10012 | Suite 500, Hamilton Square |
| Tel: (212) 614-6439 | Washington, DC 20005-2004 |
| Fax: (212) 614-6499 | Tel: (202) 220-1507 |
|  | Fax: (202) 220-1665 |
| Of Counsel for Petitioner |  |
|  | Stephen M. Truitt (DC # 13235 ) |
|  | 600 Fourteenth Street, N.W. |
|  | Suite 500, Hamilton Square |
|  | Washington, DC 20005-2004 |
|  | Tel: (202) 220-1452 |
|  | Fax: 202 220 1665 |
| Dated: November 26, 2008 | *Counsel for Petitioners* |