# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | **Misc. No. 08-442 (TFH)** |
| **GUANTÁNAMO BAY** ) | |
| **DETAINEE LITIGATION** ) | **Civil Action No. 1:06-cv-01668 (HHK)** |
| ) | |
| ) | |

### OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER

Petitioners Mohammed Abdullah Mohammed Ba Odah and Tariq Ali Abdullah Ba Odah, through their attorneys, hereby oppose the government's Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, In the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292 (b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal (the "Motion").

Petitioners request that this Court deny the government's Motion and proceed with the order as laid out by this Court. The issues raised by the government have been extensively briefed and considered by this Court. More importantly, the Court's November 6, 2008 Case Management Order ("CMO") fairly, correctly and reasonably determined the issues relevant to the habeas corpus hearings. Petitioners' case should now be returned to Judge Kennedy so that the Supreme Court-ordered "prompt habeas corpus hearing" can be held. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008).

Yet the government plainly seeks by its motion for reconsideration to prolong Petitioners' indefinite detention. The government's motion is simply the latest tactic in a long-standing strategy to deprive Petitioners and other Guantánamo detainees of any meaningful opportunity to

WA418085.1

Dockets.Justia.com

challenge the legality of their detention through habeas. Although the Court ordered the parties in this case and other detainee cases to proceed on an individualized basis, the government made no objection to that mode of proceeding. Rather, now that the Courts has ruled, the government seeks to continue litigation essentially on a class-wide basis that is contrary to the Court's orders and serves only to delay consideration of the merits of this case.

The government's motion should be denied for five reasons: (1) because the motion fails to establish any basis for reconsideration; (2) because the CMO provides Petitioners with constitutionally-necessary discovery; (3) because any modifications should be made on a case-by-case basis by the merits judge; (4) because the motion fails to establish any basis for interlocutory appeal; and (5) because the government failed to meet and confer with Petitioners' counsel as required by Local Civil Rule 7(m).

## BACKGROUND

On July 2, 2008, this case was transferred to Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session (D.D.C. July 1, 2008). Petitioners objected to the transfer on the ground that it would delay consideration of the merits of their habeas case. In the nearly five months since then, Petitioners' concerns have borne true.[1]

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH)

---

[1] By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of 6 Bosnian-Algerian petitioners released).

(D.D.C.) (misc. dkt. no. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges posed." *Id.* (misc. dkt. no. 466, at 6) (internal quotation marks omitted).[2]

Petitioner Mohammed Abdullah Mohammed Ba Odah's factual return was consequently delayed until October 24, 2008. And the government has yet to file an unclassified return, thus preventing Petitioner himself from reviewing the information. No factual return has been provided for Petitioner Tariq Ali Abdullah Ba Odah and the government has failed to provide an explanation for this delay.

In the meantime, Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (misc. dkt. nos. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") to govern the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at p.2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

---

[2] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 917).

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs.

On November 20, 2008, the date on which the government was obligated under the November 6 CMO to provide both an unclassified return for Mr. Mohammed Abdullah Mohammed Ba Odah and a notice regarding its production of exculpatory information, the government filed a Notice Pertaining To Production Of Exculpatory Information. On its face, however, this filing did not meet the requirements of the Court's CMO.

On November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026).

## ARGUMENT

**I. THE GOVERNMENT'S BLANKET MOTION FAILS TO PROVIDE ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE**

The government has have not met the standard governing motions for reconsideration. "A motion for reconsideration . . . will not be lightly granted." *Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 45 (D.D.C. 2005). Reconsideration is only appropriate when "the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. DOD*, 199 F.3d 507, 511 (D.C. Cir. 2000).

Rule 54(b) governs motions for reconsideration that do not constitute final judgments. *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not

4

of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, the government makes no attempt to argue that the Court should reconsider its prior decision under the *Cobell* standard. Instead, they argue that their Motion should be granted because the Court has discretion to reconsider its prior rulings. While the government is correct that the Court does have discretion, an exercise of such discretion in this case is not what justice requires. The government does not argue that the Court has misunderstood a party, made a decision outside the adversarial issues presented to it, or made an error of apprehension. Further, the government does not argue that there has been any change in the law or facts governing the case. Instead, the government simply reargues the issues previously considered by the Court simply by lifting their arguments from their Brief Regarding Procedural Framework Issues. (*Compare* Mot. *with* Resp't Br. Proc. Issues.) Specifically, the government argues that the discovery provisions in the Court's CMO are too broad and should be more limited than those applicable to criminal defendants and that compliance with the CMO will be unduly burdensome.

Both of these arguments were fully briefed in the parties' briefs addressing procedural framework issues. (Resp't Br. Proc. Issues at 1–3, 9–10, 17–28; Pet'rs.' Joint Mem. Proc. Issues at 18–24; Pet'rs.' Joint Reply Mem. at 22.) The government's positions were considered and rejected by this Court when it crafted the CMO. The court's discretion on a motion for reconsideration is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations omitted), *judgment vacated on other grounds*, 508 F.3d 1097 (D.C. Cir. 2007). Having already battled over the terms of the CMO, the Court should reject the government's attempt to relitigate these issues and deny their Motion for Reconsideration.[3]

## II. NEITHER RECONSIDERATION NOR CLARIFICATION IS WARRANTED

### A. **The CMO Provides Petitioners With Constitutionally Necessary Discovery and Should Not Be Narrowed.**

The government incorrectly asserts that the CMO provides Petitioners with more discovery than required by the Constitution. The government's argument is based on a contention, previously rejected by this Court, that Petitioners are entitled to less discovery than afforded to criminal defendants. (Mot. at 13.) This assertion ignores the notable differences between Petitioners' *habeas* proceedings and typical criminal prosecutions. The most significant difference is that Petitioners have not been charged with any crime. Additionally, unlike those

---

[3] In an opposition to a motion to strike filed in another detainee case, the government concedes that the issues raised in its motion for reconsideration are the same as the issues addressed in the parties' procedural framework briefs before Judge Hogan: "The issues to be resolved by the Motion for Reconsideration are precisely the types of issues contemplated in the [July 1, 2008] transfer order. Only nine days after the transfer of cases to Judge Hogan, he ordered the parties to brief precisely these issues. The Motion for Reconsideration addresses nothing not addressed in the CMO." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1041, at 2). And that is precisely why the standard for reconsideration is not satisfied.

charged with crimes, Petitioners were not provided with a right to counsel upon incarceration, nor were they offered any protections against self incrimination. Furthermore, Petitioners were interrogated by authorities who used techniques undeniably harsher than those employed by typical law enforcement personnel. To limit Petitioners to the discovery provided to criminal defendants would ignore the undisputed fact that Petitioners have not been granted the rights typically afforded to criminal defendants. The Court should reject the government's attempt to pick and choose the rules of criminal procedure. A contrary ruling would allow the government to apply the rules of criminal procedure only when it inures to its benefit.

Furthermore, there are significant reasons to provide Petitioners with discovery that is broader in scope than that available under the rules of criminal procedure. In criminal cases, defendants are able to assert their rights under the Confrontation Clause and Due Process Clause as well as their right to compulsory process. In post-conviction *habeas* proceedings, criminal defendants have already received a trial subject to the above constitutional restrictions. By contrast, in the present proceedings, Petitioners have had no opportunity to contest the allegations leveled against them. Accordingly, it is entirely appropriate to provide Petitioners with discovery that will permit just resolution of their status.

The government misapplies Supreme Court precedent in arguing that discovery should be limited. The government incorrectly assert that *Hamdi v. Rumsfeld* and *Boumediene v. Bush* stand for the proposition that Petitioners are entitled to only minimal discovery. (Resp't Mot. at 8-9; *see also Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). *Hamdi* is not on point here, as it was decided at an early stage of the proceeding when the scope of discovery was not at issue. *Boumediene*, by contrast, recognized the unique posture

of cases involving detainees and noted that collateral review and full and fair development of the factual record are necessary in these cases. 128 S. Ct. at 2269, 2273.

The government also misconstrues the Supreme Court's opinion in *Harris v. Nelson* and the *habeas* corpus procedural rules that followed it. 394 U.S. 286 (1969); Habeas R. 6. The government incorrectly states that the *habeas* corpus rules limited the scope of *Harris* and demonstrated Congressional intent to prevent significant discovery in *habeas* cases. (Mot. at 12–13.) In reality, both sources provide district courts with significant discretion to manage *habeas* proceedings. Moreover, these authorities and arguments were fully briefed and considered by this Court. The Court reached an appropriate resolution in drafting the CMO, and the government provides no additional authority to justify reconsideration.

### B. The Government Fails To Acknowledge That The Difficulties It May Face Are Self-Inflicted.

The Court should not delay or modify discovery for Petitioners because the burden facing the government is entirely self-inflicted. The government devotes significant space in their Motion for Reconsideration to a discussion of the burdens it will face if the Court's CMO stands. (*E.g.*, Mot. at 16–19, 25.) While the government detailed the many responsibilities it will shoulder, it does not acknowledge that it is to blame for these difficulties. For example, the government requested consolidation of these *habeas* proceedings. Yet, they now complain that complying with uniform timelines will be too burdensome. Apparently, in preparing the factual returns or amended factual returns for Petitioners and other detainees, the government elected not to conduct a thorough review of the information available to them. Had they done so, much of the burden of which they now complain would have been eliminated.

When faced with judicial decisions that ordered the government to afford constitutional rights to Petitioners, they failed to act. Instead, it sought appellate review of the decisions and in

the interim, took no steps to prepare for the contingency that it might lose on appeal. Such a reckless litigation strategy should not be rewarded. And while the government's appeals were pending, it took no action to resolve the status of Petitioners. The government could have charged Petitioners with a crime, requested a finder of fact to evaluate the charges, and imprisoned those found guilty. Instead, the government engaged in an extensive effort to hold Petitioners in legal limbo indefinitely by setting up the detention center at Guantánamo Bay and asserting that detainees held there were not entitled to any constitutional rights. The government has spent years attempting to avoid justifying the continued detention of Petitioners. It should not be permitted relief because its constitutional procrastination has finally caught up with it.

      C.      **<u>Case By Case Resolution of Petitioners' Habeas Claims Will Properly Address The Government's Remaining Concerns About the CMO.</u>**

As discussed above, the government's Motion for Reconsideration repeats arguments already rejected by the Court. Further, it is apparent that the government cannot satisfy this Court's standard for granting the requested relief. Apparently recognizing the weakness of its arguments, the government seeks clarification of the CMO should the Court choose to reject its Motion for Reconsideration. The government identifies purported ambiguities in the CMO and then offers an interpretation of those "ambiguities" that, if adopted by the Court, would achieve the same goal sought by the government in its request for reconsideration: delay. The CMO is not ambiguous and the government's attempted clarification of the provisions of the CMO is neither necessary nor appropriate. To the extent that there is any legitimate basis for clarifying the CMO, such clarification should be resolved on a case by case basis.

1. **The CMO's exculpatory evidence and automatic discovery provisions are not ambiguous and do not merit reconsideration, but any clarification the Court deems necessary should occur on a case by case basis.**

The government first asserts that the Court should clarify its order on exculpatory evidence to cover only the documents the government is currently willing to produce, but their attempt to cast the Court's order as unclear is disingenuous. (Mot. at 8–9.) The CMO explicitly requires the government to disclose all reasonably available exculpatory evidence that is in their possession or can be obtained through reasonable diligence. (CMO at I.D.) The CMO clearly does not limit the government's obligation to provide exculpatory evidence to that discovered while preparing factual returns and such a modification of the CMO would convert these *habeas* proceedings to a cursory review of the CSRT record, which is precisely the type of "due process" the Supreme Court rejected as insufficient in *Boumediene*.

The government also purports to request clarification of the Court's ruling on the automatic discovery due Petitioners. (Mot. at 11.) Here, the government's basis for clarification is also questionable. The government seeks to have the CMO apply only to certain documents referenced in the factual return despite the absence of any limiting language in the CMO. (*Id.*; CMO at I.E.1.) Alternatively, the government requests the Court require Petitioners to show good cause before they can receive specific discovery. (Mot. at 12.) The government does not proffer any new argument or evidence to support these requests for clarification.

The government also take issue with the CMO's requirement that it disclose documents or objects in their possession that are referenced in the factual return, statements by the detainee, and circumstances in which the detainee's statements were made. (CMO at I.E.1.) the government contends that these provisions exceed its obligations under the Federal Rules of Criminal Procedure and common criminal practice. (Mot. at 13-14, 17-18.) As discussed in

*supra*, there are significant differences between Petitioners' *habeas* petitions and criminal prosecutions and the Court has already considered briefing on the subject and concluded that the limited discovery provided in the CMO is appropriate.

To the extent that any ambiguity exists in the Court's order, the Court should resolve such issues case by case. Doing so will permit the Court to evaluate what evidence the government has provided to Petitioners and to what extent it has complied with the CMO. The parties will be able to frame their arguments regarding the scope of discovery in reference to specific pieces of evidence. Such resolution will permit the Court to ascertain the true extent of the government's argument regarding the burden it faces.

### 2. The Court should resolve the government's concerns over the provision of classified information on a case by case basis.

The Court in the CMO ordered that the government provide Petitioners with access to an adequate substitute for classified information, provide Petitioners' counsel with the classified information, and permit the Court to examine classified information *in camera* in the event that the government objected to its disclosure. (CMO at I.F.) The government's principal argument—that providing such information is unnecessarily burdensome—has been presented to the Court and rejected. That argument deserves no further consideration from the Court.

The Court should also deny reconsideration of the provisions in the order requiring that classified information be supplied to Petitioners' security-cleared counsel and adequate substitutes for that information to Petitioners themselves. Contrary to the government's oft-repeated suggestion (*e.g.*, Motion at 2, 6, 21), the CMO does *not* require that Petitioners themselves be provided with "classified information." Rather, the CMO limits such disclosure to counsel who have already been granted security clearances, and requires only that the government provide an "adequate substitute" for such information to be disclosed to Petitioners.

The government's objection to the provision of classified information to cleared habeas counsel is meritless. First, "the Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Second, the Protective Order that governs these cases establishes that counsel "are presumed to have a 'need to know' information both in their own cases and in related cases pending before this Court." Protective Order ¶ I.D.28. Third, if there are any instances where the government may have legitimate national security reasons for withholding classified information from an attorney otherwise cleared to receive it, the CMO itself provides a procedure by which it may seek to do so.

With respect to the government's objection to providing petitioners with adequate substitutes for any classified information on which it intends to rely, it is simply impossible for a Petitioner to obtain the notice of the factual basis on which his detention is based, or to have a fair opportunity to rebut that factual basis, without having an understanding of what that factual basis is. It is also impossible for counsel meaningfully to consult with petitioners or to assist them in preparing their case without being able to discuss the Government's factual assertions. *Cf. Boumediene*, 128 S. Ct. at 2273 (an "adversarial character" is "necessary" for habeas proceedings); *Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.").

> **3. Questions regarding the presumption afforded the government's evidence, hearsay, and evidentiary hearings are best decided case by case.**

The government devotes little time to discussion of these issues in their Motion for Reconsideration but appear to summarily contend that resolution of questions regarding the

admissibility of hearsay should not be decided on a case by case basis and that evidentiary hearings should not be provided under *Hamdi*. (Mot. at 29-30.) The government has previously argued to this effect and the Court has properly rejected their argument; there is no basis to reconsider those rulings at the present. (Resp't Br. Proc. Issues at 30–33, 36–40.) Considerations of all three of these issues are inherently fact-specific, and it is far more efficient for the Court to decide such questions as they arise rather than to create blanket rules that do not fit the details of each discrete case.

> **4. The government's concern that the CMO is unduly burdensome rings hollow in light of the *habeas* proceedings that have already taken place.**

Over Petitioners' opposition, this case was transferred to Judge Hogan in June "for coordination and management." Petitioners' opposed consolidation given their fear that it would result in delay and inefficiency. The government's Motion for Reconsideration of the CMO exemplifies the delay and inefficiencies that were feared. In June, Judges Leon and Sullivan chose not to transfer their *habeas* cases to Judge Hogan. Additionally, the *habeas* cases of the Uighurs were transferred to Judge Urbina for resolution. In those cases, the Court has imposed tight deadlines and required the production of exculpatory information and discovery, with which the Government was able to comply. The case before Judge Urbina and one before Judge Leon have now reached final judgment and the cases before Judge Sullivan are at the merits briefing stage.

The government should be required to proceed in compliance with the deadlines set forth in the CMO, as modified by the Merits Judge as necessary, to ensure that this case proceeds expeditiously. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can

13
WA418085.1

no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Petitioners have been in prison for nearly seven years without charge or trial and this case should not be stayed any longer.

## II. THE GOVERNMENT HAS NOT MET THE STANDARD FOR INTERLOCUTORY REVIEW.

By the express terms of Section 1292(b), the government's Motion for interlocutory appeal should be rejected. The statute states that:

> When a district judge, in making in civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*, he shall so state in writing in such order. The Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b) (emphasis added). Not only does the government's Motion not "seek[] [to] materially advance the ultimate termination of the litigation," their aim is the exact opposite—to

14
WA418085.1

delay and protract the litigation's ultimate resolution. As such, the Court should deny the government's Motion for certification for appeal.

Section 1292(b) "allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Merely satisfying § 1292(b)'s requirements, however, "will not insure interlocutory appeal" because §1292(b) "was designed to be a rarely used exception to the final judgment rule." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 161 (E.D.N.Y. 1999). Although §1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 865. The legislative history and statutory design of §1292(b) make clear that the statute vests district court judges with discretion as to whether to certify cases for interlocutory appeal even when the requirements of the statute are met. *Id.* at 163-64.

Notably, in all but one of the cases cited by the government in its November 18, 2008 Motion for Clarification and Reconsideration, the court either denied certification under §1292(b) or held that certification under §1292(b) was not proper.[4] In the only case in which a

---

[4] Three of the cases cited by the government were decided under the collateral order doctrine, which differs from discretionary appeals under § 1292(b). *See Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997); *United States v. Rostenkowski*, 59 F.3d 1291, 1296 (D.C. Cir. 1995), *opinion supplemented on denial of rehearing*, 68 F.3d 489 (D.C. Cir. 1995); *United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003), *subsequent determination*, 347 F. 3d 951 (D.C. Cir. 2003). Under the collateral order doctrine, a district court order qualifies for immediate appeal as a "final order" under §1291 if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) [would be] effectively unreviewable on appeal from a final judgment." *Rostenkowski*, 59 F.3d at 1296 (quotation marks omitted). The CMO at issue does not qualify for immediate appeal under the collateral order doctrine because even if it satisfies the second or third prongs of this test, it does not conclusively determine any disputed questions. The CMO instead sets out the framework under which the district court will proceed to resolve the questions before it, a framework that leaves a great deal of discretion in the district court to make evidentiary rulings.

15

certificate of immediate review was issued, *In re Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000), the court concluded that its ruling that jurisdictional discovery in that case should proceed under the Federal Rules rather than the Hague Convention was an important issue that many other courts also would face. *Id.* at *1-2. In direct contrast, the government in this case explicitly states in its motion that these *habeas* cases lack any precise historical parallel. (Mot. at 35.) The court in *National Asbestos* specifically held that cases involving unique factual and legal disputes are not appropriate for interlocutory appeal. 71 F. Supp. 2d at 163. Although the court in *Vitamins Antitrust* certified the interlocutory appeal, it also stated that "interlocutory appeals under 28 U.S.C. §1292(b) are rarely allowed, and the party seeking interlocutory review has the burden of persuading the court that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Vitamin Antitrust*, 2000 WL 33142129, at *1 (quoting *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996)).

The court in *National Asbestos*, 71 F. Supp. 2d at 163, in emphasizing that §1292(b) is discretionary as opposed to mandatory, stated several factors for district judges to weigh in determining whether an interlocutory appeal is an efficient use of judicial resources:

> (1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal.

*Id.* Applying these factors to the facts of this case, an interlocutory appeal would not be an efficient use of judicial resources.

The government relies on *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d. Cir. 1978) for their argument that a controlling question of law "include[s] a procedural determination that may importantly affect the conduct of an action." The *Duplan* court goes on to state in the same footnote, however, that the "critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation" *Id*. An appeal of the CMO at issue here would slow down rather than accelerate the disposition of this already protracted litigation. The facts in these *habeas* cases have not been fully developed and an immediate interlocutory appeal would "unduly interfere with discovery . . .." *Nat'l Asbestos*, 71 F. Supp. 2d at 167.

The U.S. District Court for the District of Columbia and several Circuit Courts have held that "discovery orders 'generally never will involve a controlling question of law.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 23 (D.D.C. 2002) (quoting *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994); *see also In re City of Memphis*, 293 F.3d 345, 351 ("A ruling on the admissibility of evidence is reviewed for abuse of discretion. An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under §1292(b).") (citation omitted). The court in *Judicial Watch* emphasized that when the real difference of opinion lies between one of the parties and the court, rather than between precedential authority, there is not substantial ground for difference of opinion, as required by §1292(b). 233 F. Supp. at 24-25. As the government's issues with the CMO stem from the burdens that the Order places on it rather than precedent, these issues do not justify an interlocutory appeal.

### III. THE MOTION SHOULD BE DENIED FOR FAILURE TO MEET AND CONFER

The government's motion should be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Simply stated,

the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On Friday, November 14, 2008, counsel for the government sent an email to undersigned counsel simply stating:

> [T]he government intends to file a motion for clarification and reconsideration of the Court's November 6, 2008 case management order (and supplemental amended orders, where applicable), or in the alternative, a motion for certification for appeal and to stay certain obligations pending appeal. The basis for this motion is that the November 6, 2008 procedural order is legally inappropriate and unworkable.

Despite requests, the government offered no further information about the basis for the motion and filed its motion the following day. As the government concedes in its motion for reconsideration, "[m]any [counsel for the detainees] requested details regarding the motion that the Respondents were not in a position to discuss at the time." Gvt. Motion at 3 n.2.

Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone. Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[5]

## **CONCLUSION**

This case was initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this

---

[5] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plain-tiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

court may alter that framework based on the particular facts and circumstances of their individual cases. Proceeding on an individual case-by-case basis is also the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the Habeas Corpus Statute. Accordingly, Petitioners request that this case be transferred back to the Merits Judge for all further proceedings. If there are issues that need to be addressed after the government narrows its case on December 18, 2008, the Merits Judge is best suited to address those issues and ensure that this case is resolved by March 2009.

For the above reasons, Petitioners respectfully request that the Court deny the Government's Motion Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, In the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292 (b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal.

Dated: November 26, 2008

                          Respectfully submitted,

                          By: _____/s/ _____

                          CLIFFORD CHANCE US LLP

                              Julia Symon (Bar No. 456828)
                              2001 K Street NW
                              Washington, DC 20006
                              Tel:      (202) 912-5000
                              Fax:     (202) 912-6000
                              e-mail: julia.symon@cliffordchance.com

                              James Hosking
                              31 West 52nd Street
                              New York, NY 10019
                              Tel:      (212) 878-8000
                              Fax:     (212) 878-8375
                              e-mail: james.hosking@cliffordchance.com

                              *Counsel for Petitioners*