IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMAD MUSTAFA SOHAIL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 1:005CV00993 |
| ) | Misc. No. 08-442 (TFH) |
| GEORGE W. BUSH, et.al, ) | |
| ) | |
| Respondents. ) | |

### PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION OF CASE MANAGEMENT ORDER

### Introduction

This memorandum is submitted on behalf of Petitioner Mohammad Mustafa Sohail in opposition to the government's Motion for Clarification and Reconsideration of the Case Management Order (CMO) of November 6, 2008.

First, Petitioner Sohail urges that Respondents' attempt to have the matters raised in its Motion for Reconsideration decided collectively, for all of the Guantanamo detainees, must be rejected. Mr. Sohail's case is already farther along than some and it raises unique issues related to discovery and exculpatory evidence. "Merits Judge" Urbina should set the course for and make the crucial decisions regarding the remainder of this case. The Omnibus Motion should be rejected and Respondents should be directed to raise their concerns with Judge Urbina. Second, Respondents have completely failed to satisfy the "meet and

confer" requirements set forth in Local Rule 7(m). Petitioner Sohail urges that this and any future attempts to modify the CMO in this matter, or to alter any future scheduling order issued by Judge Urbina, should be simply and flatly rejected absent compliance with the meet and confer requirement. Third, Petitioner Sohail urges that the government's statement regarding exculpatory information is inadequate to satisfy the requirement contained in I D.1 of the CMO that exculpatory evidence be disclosed, and urges that if any Order is made across the board, it require compliance with that requirement. Finally, Mr. Sohail flatly rejects Respondents' constant claim that the burdens imposed upon it by fair and prompt litigation of these cases are excessive.

I. **Procedural Background**

Petitioner Sohail filed his pro se petition May 18th, 2005 and has been represented by counsel since October of 2005. On October 28, 2005 an original classified return was filed, a redacted and unclassified version was provided and counsel has met with Petitioner on several occasions beginning in 2006. Both of Petitioners counsel are Assistant Federal Defenders who have security clearances.[1] Since 2006, a DTA petition was filed and two submissions were made to the

---

[1] Undersigned counsel have only a single detainee client, Mustafa Sohail. Counsel's other detainee client was returned to Afghanistan in 2006.

Annual Review Board on behalf of Mr. Sohail. Most of the pertinent factual and legal disputes on the merits have been identified for over three years.

After substantial delay and violation of the original scheduling order issued by Judge Hogan for filing of amended returns, a classified amended return was filed on October 14, 2008. On October 27, 2008, counsel filed a lengthy traverse from the secure facility; its filing was formally noticed on the docket on October 29.[2] On November 6, 2008, this Court issued the CMO now at issue. On the same day, counsel was at Guantanamo Bay visiting Mr. Sohail, but counsel could not discuss either the Amended Return or the Traverse with him due to their classified nature. On November 12, 2008 the traverse was withdrawn at the request of Judge Urbina since its early filing interfered with orderly administration of the CMO's deadlines. The Traverse will be refiled when an appropriate schedule is issued or reinstated by Judge Urbina.

On October 24, 2008, a detailed and specific discovery request was sent by letter through the secure facility to Respondent. There has been no response to that request. Petitioner will shortly file a follow-up discovery request which not

---

[2] The traverse was and remains classified. In it Petitioner Sohail sought leave to amend it pending receipt of a declassified version of the return which counsel could discuss with Mr. Sohail and pending future discovery and disclosure of exculpatory information.

only reiterates the earlier-sought matters but which requests the specific discovery provided for in the CMO.

On November 20, 2008 Respondents filed a Statement Regarding Exculpatory Information, though Petitioner Sohail respectfully urges that this Statement did not satisfy the Exculpatory Information requirement contained in the CMO. Other than what is contained in Amended Classified Return, Mr. Sohail has received no discovery, no exculpatory information and no filings specific in any way to his case.

On November 10, 2008, Judge Urbina set a status conference in Mr. Sohail's case for Monday, November 24th, at 2:30 p.m. On November 18, 2008, the government filed its omnibus Motion for Reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. This motion made no specific mention of Mr. Sohail's case. See Gvt. Motion. On November 21, 2008, this Court entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. See In re Guantánamo Bay Detainee Litig., Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026). In the wake of Respondent's attempts to

reopen the CMO, Judge Urbina cancelled the scheduled status conference and agreed that the dates and requirements of the CMO be stayed pending resolution of the instant litigation. A status report is now due regarding Petitioner Sohail on December 8, 2008.

## II. Modification of the CMO Should Be Made By Judge Urbina

Petitioner Sohail urges that the remaining steps forward in his case are proper for resolution by Judge Urbina. Because his case is farther along than many in certain respects, some of the debates addressed in Respondents' Motion are inapplicable to his case. However, other unique issues, including Mr. Sohail's specific discovery requests and the role that statements derived from coercion will play in resolution of his case, must be decided on an individualized basis. Several examples of issues requiring such specific attention are readily identifiable.

For instance, Mr. Sohail notes that, as he has already filed a traverse which could be described as the preliminary traverse contemplated in the government's Motion, he would likely not oppose filing such a document again. However, counsel for other detainees oppose this requirement as an unnecessary step: the resolution of the propriety of an intermediate traverse should be made on a case-by-case basis.

Another issue proper for individualized assessment is the provision of an unclassified amended return. Counsel for Petitioner must be promptly provided with an unclassified version of the return so that counsel can travel to Guantanamo Bay and discuss it with Mr. Sohail. Of course the Court is aware that travel to the base is difficult to schedule quickly and extremely expensive (a particular concern for Federal Defenders such as undersigned counsel). In addition, with scores of habeas counsel competing for limited spots on flights to the base and in the visiting rooms of the prison, advance planning for a trip is essential. Therefore, counsel must be told with as much precision as possible when the unclassified return will be available so that she can schedule travel.

Additional issues are sure to arise which, similarly, cannot be effectively handled en masse through modifications to a CMO. For instance, Mr. Sohail has already made a particularized and limited discovery request of respondents, by letter. No response has been provided.[3] Petitioner intends to make a second request and to attempt to discuss the request with opposing counsel. If litigation is

---

[3] Petitioner Sohail urges that the government's attempt to limit discovery is inconsistent with the core concept of due process of law, existing habeas corpus jurisprudence, and the nature of these proceedings. See e.g., Harris v. Nelson, 394 U.S. 286, 291 (1969); Rules Governing Section 2254 Cases, § 6(a); and Rule 16 of the Federal Rules of Criminal Procedure.

needed despite Petitioner's attempt to resolve issues directly with opposing counsel, such litigation must occur before Judge Urbina.

For these reasons, Mr. Sohail urges the Court to deny the government's Motion to modify the CMO and refer future litigation in this arena to Judge Urbina.

### III. <u>Failure to Meet and Confer</u>

Petitioner Sohail further urges that Respondents' Motion should be rejected for the government's utter failure to meet and confer, as required by Local Rule 7(m). Although Respondents sent a single mass email to certain counsel for detainees advising that it intended to seek modification of the CMO, it failed to even specify the nature of the changes it planned to seek. It gave no opportunity for any discussion by Petitioner's counsel. Indeed, if asked, undersigned counsel would likely have acquiesced to specific and tailored requests for additional time to comply with the CMO. However, because the obligation was not met, counsel was never given that opportunity.

Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. See <u>Ellipso, Inc. v. Mann</u>, 460 F. Supp. 2d 99,

102 (D.D.C. 2006).[4]  Because the government has once again flagrantly disregarded the requirements of the rule, their Motion should be summarily dismissed.  If, as is apparent, Respondents are unhappy with the CMO, they should be required to meet and confer with counsel for Petitioner Sohail and find common ground, where possible, regarding a reasonable but prompt schedule for this case.  No relief should be granted until that requirement is met.

## IV. Respondents' Exculpatory Evidence Statement

On November 20, 2008, the government filed a notice pertaining to its purported compliance with Part I.D.1 of the CMO.  See In re Guantánamo Bay Detainee Litig., Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1022) ("Exculpatory Evidence Statement").  The notice stated that the government had complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no broader than the search previously conducted by the government – an interpretation that conflicts with the plain language of the CMO, as well as with

---

[4] See Penobscot Indian Nation v. HUD, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plain-tiffs' motion to lift stay and awarding fees and costs to defendants); see also United States v. Sci. Applications Int'l Corp., 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

8

specific Orders made by individual merits judges including Judges Sullivan and Walton.  See Gvt. Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, Habishi v. Bush, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession).  In any case, the government has further acknowledged its failure to provide all exculpatory evidence in its possession.  See Gvt. Motion at 17 n.14 (admitting failure to produce all detainee denials of government's claims); Exculpatory Evidence Statement at 3 n.1 (admitting failure to produce all detainee denials of government's claims; all agency reports containing exculpatory evidence; and all exculpatory evidence identified after filing of returns).  Accordingly, it is Mr. Sohail's position that the government has plainly and intentionally failed to comply with Part I.D.1 of the CMO, and its filing has yet to trigger the time period under Part I.G for him to file a traverse.

As mentioned above, the issues regarding the provision of exculpatory evidence and discovery in Mr. Sohail's case are likely very different from and far more particularized than the issues which will be raised in many cases.  Mr. Sohail urges that Judge Urbina should Order the government to comply with this part of the CMO, or, in the alternative, should amend it in a way tailored to this case.

## V. The Burdens Placed on the Government Are Not Impossible To Meet

Throughout its Motion, the government once again explains at great length why it cannot possibly meet the simple and clear obligations placed on it by the CMO, or even the burden to confer individually with opposing counsel in an effort to modify those burdens. Mr. Sohail respectfully suggests that such cries must stop.

Undersigned counsel are Assistant Federal Defenders with many years of experience. We practice daily in the federal criminal courts where we see the Justice Department in each district juggle hundreds and hundreds of often complex prosecutions, with concomitant due process requirements that are far more burdensome that those applicable to Guantanamo detainees. This system takes in stride such obligations as the requirement to provide extensive discovery, <u>Brady v. Maryland</u> and extensive pretrial litigation. This system is also flexible enough to handle such additional burdens as thousand of resentencings under the amended crack cocaine sentencing guidelines and prisoner litigation from state and federal prisons. Mr. Sohail respectfully argues that the Court should reject the government's repeated claim that the burdens imposed by the CMO in many fewer than 200 active habeas cases is too much for it to handle. With roughly 200 cases, many not active, and at least 20 Justice Dpartment lawyers handling them (or

many more) that is a mere 10 cases per lawyer: some prosecutors and defenders could only dream of such a light caseload.  The government chose to lock Mr. Sohail and hundreds of others up for many years; the government must now choose to allocate the needed resources to defend their continued incarceration or must send them home.[5]

Mr. Sohail acknowledges that certain cases might present more difficulty for immediate resolution than others.  For instance, in some cases counsel have no security clearance and have yet to meet their clients.  In other cases no return has been filed.  Mr. Sohail's case is in a very different posture from such embryonic litigation.  His case does not present any of the same burdens, and indeed those critical "pre-trial" issues which remain may be effectively narrowed by the parties absent litigation.

The government's efforts to use the scope of the litigation to justify limitless delay must be rejected.  Because the government created the scope of the problem by detaining Mr. Sohail and many others with little cause and no due process, it must now rise to its obligations and litigate his case.

---

[5] It is noteworthy that the government has had many years to prepare for this litigation. While the government acts as though it has only been on notice in very recent months that it has to provide the sought-after materials, it has been on notice for many years that Mr. Sohail and others are challenging their detention.  Throughout these years the government could have allocated the needed resources.  They did not.  While they may have hoped for a different result from the Supreme Court in June, that hope does not justify inaction.

## **Conclusion**

Mr. Sohail respectfully urges the Court to deny Respondents' Motion in full, and refer the matter to the merits judges for further consideration. Mr. Sohail also prays that the Court reiterate the importance of the meet and confer requirement, as it undoubtedly saves judicial resources. Mr. Sohail looks forward to speedy resolution of his case on the schedule set by the CMO, as modified by Judge Urbina and prays that the Court not agree to continued delay of that result.

Dated: November 26, 2008

Respectfully submitted,
Counsel for Petitioner:

*s/ Scott F. Tilsen*
_____
SCOTT F. TILSEN, OSB #11005X
Assistant Federal Public Defender

*s/ Katherine M. Menendez*
_____
KATHERINE M. MENENDEZ
Assistant Federal Public Defender
OSB # 278014 (MN)

Federal Public Defender for the
District of Minnesota
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
612-664-5858 Telephone
612-664-5850 Facsilimile