## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

_____
                                )
                                )    Misc. No. 08-0442 (TFH)
IN RE:                          )
GUANTANAMO BAY                  )    Civil Action No. 05-1592 (RCL)
DETAINEE LITIGATION             )
                                )    Civil Action No. 05-1645 (JDB)
_____)

### PETITIONERS' OPPOSITION TO GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION FOR APPEAL

The government's motion should be denied. Petitioners oppose the Government's attempt to avoid the Case Management Order ("CMO") as written as it relates to exculpatory evidence, discovery, and disclosure of classified information to petitioners' counsel and provision of "adequate substitutes" for petitioners. Petitioners similarly oppose the Government's request for reconsideration of procedural issues, which were previously and comprehensively briefed by the parties months ago, and urge the Court to leave any modification of such issues to the Merits Judges on a case-by-case basis.

Any modifications in the schedule should be made on a case-by-case basis by the Merits Judges, as contemplated by the CMO. Petitioners intend to ask the Merits Judges in these cases to modify the schedule established for filing traverses so that a traverse will be due a reasonable time after the receipt both of notice under paragraph I.D.1 concerning exculpatory evidence and a properly unclassified return.

Finally, Petitioners oppose the Government's alternative request for certification of the CMO for an interlocutory appeal and for a stay pending appeal.

### A. The Government's request for revision of the CMO to suit its preferred and previously argued view of its obligation to disclose exculpatory evidence should be denied.

The Government contends, and asks the Court to clarify, that paragraph I.D.1 of the CMO requires only disclosure of "reasonably available exculpatory information that is discovered in preparing the factual returns." (Gov't Motion at 7-8.) The Government's purported interpretation is at odds with the CMO, which by its terms instructs the Government to "disclose to the petitioner all reasonably available evidence in its possession that tends materially to undermine the information presented to support the government's justification for detaining the petitioner." CMO ¶ 1.D.1. There are, moreover, compelling reasons why the Government should be required to produce all exculpatory information, not just the information that happens to be in front of the lawyers preparing the returns.

Access to exculpatory evidence is necessary to ensure that the habeas remedy results in "meaningful review" of petitioners' detention. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2269 (2008).[1] The habeas remedy cannot be effective unless petitioners have access to all exculpatory evidence reasonably available to the Government, whether or not the particular Government attorney preparing the factual return is aware of it. *See id.* Petitioners in these extraordinary habeas cases have already labored under severe procedural disadvantages, including among others: detention without any meaningful judicial review for nearly seven years; inability to confront the witnesses against them, and no current prospect that they ever will be allowed to do so; having no counsel present during interrogations; being screened from classified information that is being used to justify their detention; and proceeding in a foreign judicial system conducted in

---

[1] This issue has already been fully briefed by the parties, and Petitioners incorporate herein their previous briefing on this issue. *See* Petitioners' Joint Memorandum of Law Addressing Procedural Framework Issues, Dkt. No. 206 in 08-mc-0442 ("Petitioners' Procedural Brief"), at 22-24; Petitioners' Joint Reply Memorandum of Law Addressing Procedural Framework Issues, Dkt. No. 231 in 08-mc-0442 ("Petitioners' Procedural Reply"), at 16-19.

a language that few, if any, of them understand.[2]  Any possibility of a fair and effective habeas proceeding would be lost if the Government is not required at a minimum to take all reasonable efforts to find exculpatory information.

The Government admits that "multiple agencies" might be in possession of exculpatory information and that it has not attempted to collect that information (Gov't Motion at 9 n.6), assertedly because it would be an "extraordinary burden" to do so (*id.* at 9). Any administrative burden, however, is far outweighed by the enormous hardship and injustice suffered by the petitioner who ends up being detained simply because the Government refused to search for reasonably available information confirming that his detention lacks basis. Further, the Government's approach apparently means that it will produce no information pursuant to CMO paragraph I.D.1 that is not already in the return, because it has filed a blanket notice so stating.[3] The Government is thus not seeking to clarify paragraph I.D.1, but to obliterate it.

To the extent the Government is concerned about the time it will take to conduct this search, the Merits Judges are in a position to grant appropriate extensions of time.

---

[2] These procedural disadvantages, none of which would be present in a typical criminal proceeding, demonstrate why the Government's objection that the obligation to produce exculpatory evidence "approach[es] the process that accompanies a criminal trial" (Gov't Motion at 8 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 528 (2004))) is not well taken.

[3] On November 20, the Government filed "Notice Pertaining to Production of Exculpatory Information," purportedly pursuant to paragraph I.D.1 of the CMO. Under the CMO, the filing of a notice under paragraph I.D.1 triggers the filing of traverses within 14 days. The "notice" filed by the Government, however, is defective. The Government admits in its motion to reconsider that it has not made any effort to canvass relevant agencies for reasonably available exculpatory evidence, and the notice itself states that it has provided only some of the petitioners' own exculpatory statements. In addition, the Court's Order of November 21, 2008, while not specifically noting the CMO paragraph concerning the filing of traverses, stayed the date for filing exculpatory evidence notices and stayed other dates pending resolution of the Government's motion to reconsider. A call to Chambers by one of the other habeas counsel also indicated that the November 21 order stays the filing of traverses. Accordingly, petitioners believe that the time set by the CMO for filing traverses has not yet begun to run.

### B. The Government's requests for revision of the CMO's provisions regarding discovery, disclosure of classified information, and procedural issues should be denied.

#### 1. Discovery

The Government's request to clarify and reconsider the CMO's discovery provisions should be denied for the reasons given in the earlier briefing on this issue. *See* Petitioners' Procedural Brief at 18-22; Petitioners' Procedural Reply at 14-16. The "automatic" discovery provided for in paragraph 1.E.1 of the CMO, far from being "unprecedented" (Gov't Motion at 11) or "fundamentally at odds with *Hamdi*'s admonition" (*id.* at 20) regarding prudent incrementalism, is a modest baseline requiring the Government only to turn over the very documents or objects on which it relies (as indicated by their appearance in a petitioner's factual return) for indefinitely detaining a petitioner, as well as a petitioner's statements related to the Government's case against him and the circumstances in which those statements were made. When compared to the full panoply of due process rights, confrontation rights, hearsay prohibitions, trial rights, and post-trial rights enjoyed by criminal defendants, the mere provision of the essential facts, documents, and statements underlying the Government's allegations in the returns is a small inconvenience to the Government when weighed against the substantial deprivation of petitioners' liberty. *Cf. Hamdi*, 542 U.S. at 528-33 (plurality opinion) (employing *Mathews* balancing to establish minimum procedural safeguards for detainees).

The Government's objection that the discovery provisions are "breathtaking in scope" (Gov't Motion at 15) and lack a "requirement of even logical relevance" (*id.* at 16) are similarly without merit. The CMO requires no more and no less than disclosure of the documents and petitioners' statements that relate to the information the Government itself chose to include in its factual returns. The Government has thus made all such documents and statements relevant by its own acts – if the Government submitted a scattershot or kitchen-sink re-

turn, then it has only itself to blame for expanding the scope of relevant inquiry. Moreover, discovery of the circumstances under which petitioners' statements were made is of singular importance in these cases. Many detainees have been subject to "enhanced interrogation techniques." Such techniques necessarily call into question the reliability of any statements they generated, and it is thus essential to know the circumstances under which the Government obtained any petitioner's statement (or any accuser's statement, for that matter).

### 2. Classified Information

The Court should also deny reconsideration of the provisions in the order requiring that classified information be supplied to petitioners' security-cleared counsel and adequate substitutes for that information to petitioners themselves. Contrary to the Government's oft-repeated suggestion (*e.g.*, Gov't Motion at 2, 6, 21), the CMO does *not* require that petitioners themselves be provided with "classified information." Rather, the CMO limits such disclosure to counsel who have already been granted security clearances, and requires only that the Government provide an "adequate substitute" for such information to be disclosed to petitioners. The Government's objection to the provision of classified information to cleared habeas counsel is meritless. First, "the Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Second, the Protective Order that governs these cases establishes that counsel "are presumed to have a 'need to know' information both in their own cases and in related cases pending before this Court." Protective Order ¶ I.D.28. Third, if there are any instances where the Government may have legitimate national security reasons for withholding classified information from an attorney otherwise cleared to receive it, the CMO itself provides a procedure by which it may seek to do so.

With respect to the Government's objection to providing petitioners with adequate substitutes for any classified information on which it intends to rely, it is simply impossible for a petitioner to obtain the notice of the factual basis on which his detention is based, or to have a fair opportunity to rebut that factual basis, without having an understanding of what that factual basis is. It is also impossible for counsel meaningfully to consult with petitioners or to assist them in preparing their case without being able to discuss the Government's factual assertions. *Cf. Boumediene*, 128 S. Ct. at 2273 (an "adversarial character" is "necessary" for habeas proceedings); *Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.").

### 3. Procedural Issues

The Government's requests to revisit the procedural issues of evidentiary presumption, hearsay, and evidentiary hearings should be denied. The Government offers no new arguments that were not made, or could not have been made, in the earlier round of briefing on these subjects. Petitioners refer to the earlier briefing on these subjects that was presented to the Court when it was considering the terms of the CMO. *See* Petitioners' Procedural Brief at 5-9 (evidentiary hearings), 14-18 (presumption), 24-33 (hearsay); Petitioners' Procedural Reply at 10-12 (evidentiary hearings and presumption), 19-21 (hearsay).

The Court did not "fail[ ] to consider" (Gov't Motion at 26) the Government's view on commonality regarding these questions, but rather reached a considered conclusion that the "presumptive baseline" (*id.* at 27) for such questions should be *against* a presumption in favor of the Government or of the Government's reliance on hearsay.

The CMO appropriately leaves the determination of these fact-based and case-specific issues with the individual Merits Judges before whom the evidence is to be presented. Any at-

tempt by any party to alter the burdens and presumptions set forth in the CMO is best addressed to those Judges in the context of the cases before them.

### C. The Merits Judges should resolve scheduling issues.

The CMO allows the Merits Judges to make adjustments to the CMO's deadlines on a case-by-case basis. There is no basis for taking this authority from the Merits Judges. Petitioners intend, for instance, to request the Merits Judges in their cases to schedule the filing of traverses on a date reasonably after the receipt of all exculpatory information as well as the receipt of properly unclassified returns. This information is necessary for the preparation of traverses because, among other reasons, it allows for discussion between counsel and the petitioner about the Government's case. The timing and factual development of individual cases are likely to vary, however, and the Merits Judge can make scheduling modifications as appropriate. *See* CMO at 2 n.1.

### D. The CMO should not be stayed or certified for interlocutory appeal.

Petitioners oppose the Government's alternative motion to certify the CMO for interlocutory appeal under 28 U.S.C. § 1292(b) and to stay the proceedings pending appeal. The statute requires a finding that the appeal "may materially advance the ultimate termination of the litigation," but granting the Government's request would have the opposite effect. An interlocutory appeal and stay would subject petitioners to yet another protracted delay, measured in months if not a year or more, contrary to the Supreme Court's directive that these cases proceed to a prompt resolution on the merits. *Boumediene*, 128 S. Ct. at 2275 ("[T]he costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing.").

## CONCLUSION

For the reasons stated, the Government's motion should be denied.

Respectfully submitted,

/s/
David H. Remes
D.C. Bar. No. 370372
APPEAL FOR JUSTICE
1106 Noyes Drive
Silver Spring, MD 20910
(202) 669-6508 (phone)
HREF="mailto:remesdh@gmail.com" MAC-ROBUTTON HtmlResAnchor remesdh@gmail.-com

November 26, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
|  | ) | Misc. No. 08-0442 (TFH) |
| IN RE: | ) | |
| GUANTANAMO BAY | ) | Civil Action No. 05-1592 (RCL) |
| DETAINEE LITIGATION | ) | |
|  | ) | Civil Action No. 05-1645 (JDB) |
| _____) | | |

**[PROPOSED] ORDER**

Upon consideration of the Government's Motion For Clarification And Reconsideration Of This Court's November 6, 2008 Case Management Order And Supplemental Amended Orders Or, In The Alternative, Motion For Certification For Appeal Pursuant To 28 U.S.C. § 1292(b) And To Stay Certain Obligations Pending Resolution Of The Motion And Any Appeal, it is

**ORDERED** that the Motion is **DENIED**.

**SO ORDERED.**

_____
United States District Judge

Date:_____