# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GUANTANAMO BAY ) | Misc. No. 08-442 (TFH) |
| DETAINEE LITIGATION ) | |
| ) | |
| SUHAIL ABDU ANAM, *et al.*, ) | Civil Action No. 04-CV-1194 (HHK) |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL AMENDED ORDER

Petitioners Jalal Salim Bin Amer (ISN 564), Suhail Abdu Anam (ISN 569), and Musaab Omar Al Madhwani (ISN 839) ("Petitioners") hereby oppose the Government's Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, In the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292 (b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal (the "Motion").

Petitioners request that this Court deny the Government's Motion and proceed with the order as laid out by Judge Hogan. The issues raised by the Government have been extensively briefed and considered by this Court. More importantly, the Court's November 6, 2008 Case Management Order ("CMO") fairly, correctly and reasonably determined the issues relevant to

the habeas corpus hearings. Petitioners' cases should now be returned to Judge Kennedy so that the Supreme Court-ordered "prompt habeas corpus hearing" can be held. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008).

**ARGUMENT**

The CMO was fair, correct and reasonable and should now be enforced. The CMO was fair in striking a balance between the Guantánamo prisoners' right to receive prompt habeas corpus review and the Government's need to proceed with caution in light of the dangers that the detentions in these cases were (originally) intended to prevent. *See Boumediene*, 128 S. Ct. at 2275-76; *Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (plurality). The CMO was correct in requiring sufficient and timely disclosure of exculpatory evidence, in providing for limited additional discovery to "enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government," and in protecting classified information and national security interests. (*See* CMO I. D-F.) Finally, the CMO was reasonable in delegating to the individual judges responsible for final resolution of these cases on the merits ("Merits Judges") the authority to alter the CMO's procedural and substantive framework based on the facts and circumstances of individual cases. (*See id.* at 2 n.1 and II. B-C.)

The Government's Motion seeks, yet again, to re-litigate these preliminary procedural issues from the ground up, months after *Boumediene* and years after the Government has been on notice of the need to justify legally the ongoing detention of these men. This Court should deny the Government's latest effort to derail these proceedings from reaching the individual Merits Judges and individual habeas hearings because the CMO is fair, correct and reasonable, and because the Government's Motion (1) fails to meet the standards for reconsideration of the Court's ruling or for interlocutory appeal, (2) proposes alterations in the terms of the CMO

2

relating to exculpatory evidence, discovery, presumptions and hearsay that are unfairly and needlessly skewed in the government's favor, and (3) proposes scheduling revisions that are unworkable in several basic ways.

Moreover, because the Government is already well past the deadline (September 30, 2008) for filing Petitioner Anam's (ISN 569) amended factual return and has not yet offered a new deadline, the Court should set a new deadline for Petitioner Anam's amended factual return and subsequent filings, and should require the Government henceforth to provide advance notice of further failures to meet the scheduled deadlines.[1]

**I. The Government's Motion Fails To Meet The Standard Necessary For Reconsideration Of The Issues By This Court Or For Certification Of The Issues For Appeal**

Although the Government briefly touches on the standard for a motion for reconsideration (Motion, at 10 n.7), nowhere in its Motion does the Government attempt to show that it has met that standard. Under Federal Rule of Civil Procedure 54(b), a court has discretion to grant a motion for reconsideration of a non-final order where the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred]." *Williams v. Savage*, 569 F. Supp.2d 99, 108 (D.D.C. 2008) (internal citation omitted). Significantly, this Court has held that litigants should not be allowed to use motions for reconsideration to rehash arguments that have already been made. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 109.

---

[1] The Government filed a Request for Exception from Sequencing as to the filing of Petitioner Anam's Amended Factual Return on September 30, 2008 (Misc. No. 08-442 (TFH), Doc. 603) which Petitioner Anam opposed on October 13, 2008 (Misc. No. 08-442 (TFH), Doc. 704).

"Battling" for a more favorable decision is precisely what the Government does in its Motion. The Government's Motion does not address how this Court has misunderstood the parties, misapprehended the nature of this case, or committed a legal error. Nor does the Government assert new arguments that it has not already made before this Court in other motions. Instead, the Government asks the Court to reconsider arguments that "[the Government] has previously explained" to this Court. (Motion, at 8.) In an attempt to bolster its argument, the Government argues that the CMO is "ambiguous" and, not surprisingly, that the CMO "create[s] obligations that realistically cannot be met." (*Id.*, at 1.) The Government's Motion fails entirely in demonstrating that justice requires reconsideration of the issues presented to this Court. Because the Government has failed to meet the standard for reconsideration of the issues, this Court should deny the Government's Motion and proceed in accordance with Judge Hogan's CMO. Judge Kennedy should be allowed to consider any necessary fine-tuning of scheduling issues in light of the individual facts and circumstances of these cases.

The Government's Motion also fails to meet the standard necessary for certification of the issues for appeal. Interlocutory appeals brought under 28 U.S.C. § 1292 (b) are "rarely allowed," and the present case is no exception. The Government has failed to show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996) (internal citation omitted); *see also In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 17412, *19 (D.D.C. 2000) (Hogan, J.). Interlocutory appeal is proper only when a court determines that an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292 (b); *see*

*Johnson v. Wash. Metro. Area Transit Auth.*, 773 F. Supp. 459, 459 (D.D.C. 1991) (granting certification for appeal where the district court was faced with "two possibly inconsistent holdings" of an appellate court). "The threshold for establishing the 'substantial ground for difference of opinion' … is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).

Furthermore, where, as here, the party moving for certification disagrees with a court's discovery order, "[m]ere disagreement, even if vehement, with a court's ruling … does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal." *First Am. Corp.* at 1116. The D.C. Circuit has stated that "discovery orders are not usually appealable until the litigation has finally ended." *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995). Additionally, in *White v. Nix*, the Eighth Circuit stated that due to their discretionary nature, discovery orders "generally never will involve a controlling question of law" and thus are inappropriate for interlocutory appeal. *See* 43 F.3d 374, 377 (8th Cir. 1994). The Eighth Circuit further noted: "resolution of a discovery dispute does little to advance the ultimate termination of litigation and results only in delay." *Id.* at 378-79.

Like *First American Corp.*, the Government's "mere disagreement, even if vehement," is insufficient to warrant certification of the issues for appeal in this case. The weakness of the Government's argument is illustrated by its one-paragraph attempt to argue that a "substantial ground for difference of opinion" exists with regard to the issues determined in Judge Hogan's CMO. Citing absolutely no authority, the Government concludes that various judges in this Court have adopted "markedly different procedures" and that "aspects of the Court's CMO conflict with the 'prudent and incremental' process mandated by … *Hamdi*." (Motion, at 35.)

However, as the Government concedes, there is a "lack of any historical parallel in these cases" (*id*.), and there are few, if any, conflicting decisions on these issues in any other courts. As a result, the Government has failed to show that there is a "substantial ground for difference of opinion" and certification is not justified in this instance.

Furthermore, certification of the issues raised by the Government will do nothing to advance the termination of this litigation and will merely cause additional delay for the Petitioners. As this Court knows, the Petitioners have been held at Guantánamo Bay for almost seven years. The Supreme Court stated clearly in *Boumediene* that "the costs of delay can no longer be borne by those who are held in custody." 128 S. Ct. 2229, 2275. Not only has the Government failed to meet the standard for certification, but for this Court to grant the Government's Motion would be utterly contrary to the Supreme Court's mandate in *Boumediene*. This Court should therefore deny the Government's Motion and proceed under the orders of Judge Hogan.

## II. The Government's Proposed Alterations of The CMO's Provisions On Exculpatory Evidence and Discovery Are Unfairly Skewed In The Government's Favor, and Are Matters Better Left To The Merits Judges As Ordered By The CMO

The CMO sets forth in general terms the parties' rights and obligations in relation to the disclosure of exculpatory evidence and additional discovery and also establishes guidelines to be followed by the Merits Judges for according presumptions in favor of the government's evidence and admitting hearsay evidence. Most importantly, the CMO expressly delegates to the Merits Judges the authority to alter the CMO framework and to address any other procedural or substantive issues based on the particular facts and circumstances of individual cases.

Notwithstanding the CMO's express procedural framework -- and also in violation of several Merits Judges' orders limiting modifications of the CMO to those made in individual

cases[2] -- the Government now asks this Court to reconsider and rewrite many of the CMO's basic provisions:

   a. The CMO requires the government to disclose all "reasonably available" exculpatory evidence in the Government's possession. (CMO I. D(1).) The Government seeks to narrow this requirement to an arbitrarily limited subset, namely "exculpatory material discovered *by the Government's attorneys preparing the factual returns*." (*See* Motion, attachment: [Second Proposed] Order, Dkt. 147-6, at 1.) (Henceforth "SPO.")

   b. The CMO requires the Government to provide, upon request, discovery of all relevant documents, objects, statements and circumstantial information relied upon in the factual return (CMO I. E(1)), as well as limited additional discovery where the petitioner is able to show good cause (CMO I. E(2)). The Government seeks to eliminate its discovery obligations under Section I. E(1) altogether. In addition, after almost seven years of free discovery through interrogations of Petitioner without the presence of counsel, the Government now proposes that Petitioner must show good cause for his discovery requests but that the Government is free to propound whatever discovery it likes without any such showing. (SPO, at 2.)

   c. The CMO sets forth guidelines for according presumptions in favor of the Government's evidence and for admitting hearsay evidence, but properly assigns these determinations to the Merits Judges considering the particular the facts and circumstances of individual cases. (CMO II. A-C.) The Government seeks "categorical rulings" on these matters, supported by additional generic briefing and motions. (SPO, at 2.)

   d. Following discovery and merits briefing, the CMO entitles each petitioner to an evidentiary hearing if the Merits Judge determines that substantial issues of material fact preclude final judgment based on the record. (CMO III. B(1).) The Government arbitrarily seeks to limit the Merits Judge's power to make this determination through a categorical rule that a petitioner's "mere denial" of the Government's factual allegations -- including, presumably, hearsay accounts of statements by Petitioner and other prisoners -- is not sufficient to trigger an evidentiary hearing. (SPO, at 2.) To the extent a petitioner is permitted to know the Government's factual allegations, there is no reason why the petitioner's denials should not create an issue of fact justifying an evidentiary hearing.

---

[2] *See*, *e.g.*, Unpublished Order of Walton, J., 11/12/08 (04-1164, Dkt. 145) (limiting modifications to those contained in the order); Unpublished order of Kessler, J., 11/13/08 (05-280, Dkt. 201) (same); Unpublished order of Kollar-Kotelly, J., 11/14/08 (04-2046, Dkt. 101) (same).

In each of these instances, the Government's objections to the CMO are not well taken, and the requested alterations of the CMO are neither justified nor necessary. On the contrary, the Government uses exaggerated concerns to justify imposing arbitrary restrictions on the prisoners' basic ability to challenge the Government's case. None of these alleged concerns or proposed solutions justifies reconsideration of the CMO.

### A. The Government's Exculpatory Evidence Proposals Are Arbitrary And Unnecessary

The Government's concerns about the mandatory disclosure of exculpatory evidence are typical of its exaggerated approach. As an initial matter, the Government is simply incorrect in claiming that it is unusual for an obligation to produce exculpatory information to exist in habeas proceedings. (Motion, at 8: "[T]here is no general *Brady* obligation in civil habeas proceedings".) As *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) noted, it is well-settled that the State has an "ongoing duty" to disclose exculpatory materials in post-conviction habeas proceedings. Here, the CMO requires disclosure of all exculpatory evidence "reasonably available" to the Government -- a standard that already expressly accommodates the Government's concerns on a case-by-case basis -- but the Government claims that a duty to produce reasonably available information is "unreasonable" and "extraordinary burdensome [*sic*] to wartime intelligence operations." (Motion, at 9.) Nowhere does the CMO suggest that "reasonably available" implies an exhaustive search of the entire government; in this regard, the Government's interpretation of the CMO simply strains credulity.

The Government compounds its error by attempting to limit its disclosure obligation to exculpatory material "discovered" by the unspecified attorneys working at the tail end of the investigation process, who are tasked with "preparing" amended factual returns. Such artificial (and oddly personalized) limits have no logical or practical relation to the Government's

8

disclosure obligations, except possibly to provide an alibi of personal ignorance or oversight for any subsequent failure to disclose relevant exculpatory evidence. Because the CMO already imposes reasonable obligations and limits on the disclosure of exculpatory evidence in the Government's possession, and because the Government's objections to these limits are illogical and its remedy overly restrictive, this Court should enforce the CMO's exculpatory evidence provisions as written.

### B. Eliminating The Automatic Discovery Provisions Is Unwarranted

The Government's objections to the CMO's automatic discovery provisions are equally ill-founded. The CMO's automatic discovery is narrowly tailored to the evidence that the Government relies on to justify each petitioner's detention: the documents or objects relied upon in the factual return, the petitioner's statements relevant to the information in the factual return, and information necessary to evaluate the reliability of such statements. (*See* CMO I. E(1).) As the CMO notes, this much discovery is "essential to render a habeas proceeding effective." (CMO, at 3 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 n.7 (1969).) Ignoring this emphasis on ensuring an *effective* habeas proceeding, the Government instead speculates about "breathtaking" hypothetical scenarios purportedly not precluded by the CMO "on its face": required disclosure of every document referenced in every document (etc.) referenced in the factual return; culling every statement by every petitioner ever recorded in any government file; or exposing the Government's most closely held intelligence gathering secrets to the extent these pertain to the "circumstances" in which a petitioner made statements relied on in the factual return. (*See* Motion, at 14-19.) Yet, instead of suggesting reasonable limits to assuage these fears, the Government proposes to eliminate automatic discovery altogether and to require each petitioner

9

to move individually and particularly for discovery of even the most basic documentary and factual basis of the Government's case.

Especially when viewed in light of the Government's concurrent requests to limit its duty to disclose exculpatory evidence, for a categorical presumption in favor of its own evidence, for the admissibility of hearsay and for denying petitioners an evidentiary hearing based on a "mere denial," the Government's objections to the CMO's discovery provisions appear designed to render these habeas proceedings as *ineffective* as possible, by restricting from all sides the petitioner's ability to develop the factual basis to contest the Government's case. The CMO already imposes reasonable limits on the discovery available at each stage of these habeas proceedings and correctly authorizes the Merits Judges to rule on additional discovery in individual cases. Therefore, no reconsideration is needed here.

### C. The Government's Proposals Regarding Presumptions, Hearsay, and Evidentiary Hearings Are Poorly Considered

The CMO also correctly authorizes the individual Merits Judges to make any necessary determinations with regard to presumptions in favor of the Government's evidence and the admissibility of hearsay on a case-by-case basis. The Government's demand that the parties seek, and this Court provide, "categorical rulings" to create a "presumptive baseline" for these issues collapses under its own logic. (*See* Motion, at 26-28.) The Government concedes that any presumptions would be rebuttable and that "objections or exceptions in individual cases" would still be possible; hence, the Government's proposal would simply impose an additional and unnecessary layer of litigation. The CMO correctly eliminates this procedural epicycle and should be enforced as written.

Similarly self-defeating is the Government's proposed categorical rule that a petitioner's "mere denial" of the Government's factual allegations should not be sufficient to entitle the

petitioner to an evidentiary hearing. (*See* SPO, at 2.) Lacking any support for this proposal, the Government simply declares that the familiar summary judgment standard adopted by the CMO -- substantial issues of material fact -- is "clearly inappropriate" and will probably trigger evidentiary hearings "in *every* case." (*See* Motion, at 28.) Given the Government's longstanding insistence that it must be allowed to rely on hearsay evidence, including hearsay allegations that cannot be disclosed to the petitioners, the Government's proposal essentially asks that the petitioners be required to challenge their detention blindfolded, with both hands and one leg tied behind their backs. The CMO fairly and reasonably assigns to the Merits Judges the determination of whether each individual petitioner is entitled to an evidentiary hearing based on the record in each case. The Government's mere disagreement on this issue is not enough to trigger reconsideration of the CMO.

### III. Although Petitioners Are Willing To Modify The Schedule Laid Out In The November 6, 2008 CMO, The Schedule Proposed By The Government In Its Motion Is Unworkable

In addition to the Government's unjustified arguments for reconsideration of the CMO's discovery provisions, the Government also seeks to rewrite the filing and briefing schedules set forth in the CMO. While counsel for Petitioners have been and remain willing to meet and confer about possible alterations to the schedule set forth in the CMO where there is good cause and agreement, the Government's specific proposals are unworkable in several specific ways:

- The Government proposes a deadline of December 12, 2008 (SPO at 2, ¶ A) to produce unclassified factual returns in cases in which classified returns were filed on or before November 12, 2008, with traverses due four weeks after that. This schedule would create a bottleneck during the year-end holiday period, when access to both to the secure facility and to Guantánamo itself will be more limited than usual due to holiday closings of both the base and the secure facility. The whole point of providing unclassified returns is to enable petitioners' counsel to discuss with their clients the allegations against them. The Government's proposed deadline thus imposes a needless logistical burden on counsel for those petitioners whose unclassified returns are due on December 12. Instead,

11

- unclassified returns should be due four weeks after the classified return has been filed.

- The Government also proposes that the petitioners submit a "preliminary traverse" within four weeks after receiving the unclassified return, but *before* submitting requests for discovery or receiving any discovery from the Government. (SPO at 2, ¶¶ B&C.) This proposal is unworkable for the simple reason that any discovery sought by petitioners will be needed in order to prepare the traverse in the first place. To file a "preliminary" traverse without the benefit of discovery is not only inefficient, but leads to unnecessary filings with this Court; moreover, in Petitioner Al Madhwani's case (and others like his) where the Government seeks to amend its original return, an original traverse has already been filed -- so the Government already has received a "preliminary" traverse. The CMO correctly permits discovery *before* the filing of the traverse.

- The Government's proposed schedule also provides that discovery proposals may be submitted by "the parties." (SPO at 2, ¶ C.) This language improperly implies an equal entitlement for the Government, not just the petitioners, to propose additional discovery after the filing of the factual return. The Government has had up to seven years of unlimited, one-sided "discovery" in these cases. The CMO correctly reflects that any additional discovery is permitted for the petitioners only.

- The Government proposes (SPO at 2, ¶ E) that once factual returns are filed, the Government will proceed with discovery in only "25 cases per month (coordinated among the various Judges of the Court)." This proposal improperly and impractically seeks to restrict the authority of the Merits Judges to schedule and conduct the proceedings of the individual cases, while imposing an artificial and arbitrary cap on the overall rate of progress in these cases. The CMO fairly and reasonably leaves such matters to the individual Merits Judges.

## IV. The Government Is Already In Violation Of This Court's Scheduling Order For The Filing Of Petitioner Anam's Amended Factual Return

Petitioners respectfully point out that while the Government seeks yet again to rewrite the Court's CMO, in Petitioner Anam's case, the Government is already in violation of this Court's July, 11, 2008 Scheduling Order and its amendment in the September 19, 2008 Order. This Court ordered the Government to file Petitioners Anam, Bin Amer and Al Madhwani's amended factual returns by September 30, 2008. The government filed amended factual returns for Petitioners Bin Amer and Al Madhwani; however, instead of filing the factual return on or before

that date for Petitioner Anam, the Government sought relief in the form of an "[e]xception from [s]equencing," which Petitioner Anam opposed. In its request for relief, the Government did not even offer a new deadline for filing an amended return in Petitioner Anam's case.

Petitioners therefore respectfully request that this Court, in addition to enforcing the CMO as written, also set a new deadline for the Government to file Petitioner Anam's amended return. Furthermore, Petitioners request that this Court order that the parties provide at least one week's advance notice of any further failure to comply with the Court's scheduling or other orders, with appropriate sanctions for failure to provide such timely notice or to comply otherwise with the Court's orders.

## CONCLUSION

The CMO has fairly, correctly and reasonably established a framework and schedule to govern the habeas proceedings in this case. Although the Government clearly disagrees with the CMO and wishes it were written differently, the Government has failed to meet the high standard for reconsideration or for interlocutory appeal of non-final orders. More importantly, the Government's Motion for reconsideration of the CMO entirely disregards the main point of the CMO: these kinds of procedural and substantive concerns are best addressed by the Merits Judges on a case-by-case basis. For all these reasons, this Court should DENY the Government's Motion.

Respectfully submitted this 26th day of November, 2008.

KILLMER, LANE & NEWMAN, LLP,

*s/ Sara J. Rich*

_____
Darold W. Killmer
Mari Newman
Sara J. Rich
1543 Champa Street, Suite 400
Denver, CO 80202

(303) 571-1000
dkillmer@KLN-Law.com
mnewman@KLN-Law.com
srich@KLN-Law.com
*Counsel for Petitioners Suhail Abdu Anam, Jalal Salim Bin Amer, and Musa'ab Omar Al Madhwani*

Patricia A. Bronte
Sapna G. Lalmalani
JENNER & BLOCK LLP
330 North Wabash Ave.
Chicago, IL 60611
Tel: (312) 923-8357
Fax: (312) 840-7757
*Counsel for Petitioner Musa'ab Omar Al Madhwani*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2008, a true and correct copy of the above and foregoing **PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL AMENDED ORDER** was served with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following individuals:

| | |
|---|---|
| Terry Marcus Henry | terry.henry@usdoj.gov |
| James C. Luh | james.luh@usdoj.gov |
| Timothy Burke Walthall | timothy.walthall@usdoj.gov |
| Andrew I. Warden | andrew.warden@usdoj.gov |
| David J. Stander | david.stander@usdoj.gov |
| Phillip Truman | mike.truman@usdoj.gov |

KILLMER, LANE & NEWMAN, LLP,

*s/ Sara J. Rich*
_____
Darold W. Killmer
Mari Newman
Sara J. Rich
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dkillmer@KLN-Law.com
mnewman@KLN-Law.com
srich@KLN-Law.com