IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: GUANTANAMO BAY DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |
| UMAR HAMZAYEVICH ABDULAYEV a/k/a ABDULLAH BO OMER HAMZA YOYEJ, ISN 257, | Civil Action No. 05-2386 (RBW) |
| WALID IBRAHIM MUSTAFA ABU HIJAZI, a/k/a MOHAMMED AL PALESTINI, ISN 049, | |
| MAASOUM ABDAH MOUHAMMAD, a/k/a Bilal LNU, ISN 330, and | |
| ABU RAWDA, a/k/a AHMED ADNAN AHJAM, ISN 326 | |
| *Petitioners*, | |
| v. | |
| GEORGE W. BUSH, *et al.*, | |
| *Respondents*. | |

**OPPOSITION TO GOVERNMENT'S MOTION FOR CLARIFICATION AND RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION FOR APPEAL**

I. **INTRODUCTION**

The following Petitioners hereby file their opposition to the Government's Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, in the Alternative, Motion for Certification for Appeal

US_ACTIVE-100842424

dockets.Justia.com

Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal (Doc. 1004, Nov. 18, 2008) (the "Motion to Reconsider"):

1. Umar Hamzayavich Abdulayev a/k/a Abdullah Bo Omer Hamza Yoyej (ISN 257);

2. Walid Ibrahim Mustafa Abu Hijazi a/k/a Mohammed Al Palestini (ISN 049);

3. Maasoum Abdah Mouhammad a/k/a Bilal LNU (ISN 330); and

4. Abu Rawda, a/k/a Ahmed Adnan Ahjam, ISN 326.

## II. ARGUMENT

The CMO strikes a reasonable balance between the Petitioners' rights to receive prompt habeas corpus review and the government's need to proceed with caution in light of the dangers that the detentions in these cases were allegedly intended to prevent. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275-76 (2008); *Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (plurality). The CMO was correct in requiring sufficient and timely disclosure of exculpatory evidence, in providing for limited additional discovery to "enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government," and in protecting classified information and national security interests. (*See* CMO Section I.D-F.) Finally, the CMO was reasonable in delegating to the individual judges responsible for final resolution of these cases on the merits ("Merits Judges") the authority to alter the CMO's procedural and substantive framework based on the facts and circumstances of individual cases. (*See id.* at 2 n.1 and II.B-C.)

But the government's Motion seeks—again—to re-litigate these preliminary procedural issues from the ground up, months after *Boumediene* and years after the government has been on notice of the need to justify legally the ongoing detention of the Petitioners. This Court should

deny the government's latest effort to derail these proceedings from reaching the individual Merits Judges and individual habeas hearings because it (1) fails to meet the standards for reconsideration of the Court's ruling or for interlocutory appeal, (2) proposes alterations in the terms of the CMO relating to exculpatory evidence, discovery, presumptions and hearsay that are unfairly and needlessly skewed in the government's favor, (3) proposes scheduling revisions that are unworkable in several basic ways, and (4) because the government blatantly disregarded the meet-and-confer requirement. Further, the government's request for certification of an interlocutory appeal of the CMO pursuant to 28 U.S.C. § 1292(b) should denied outright because the government has come nowhere close to meeting the well-settled standards for such certification.

### A. The Government's Motion to Reconsider Fails To Meet the Standard for Reconsideration Of The Issues By This Court.

Although the government identifies, in a footnote, the standard for reconsideration (*see* Motion to Reconsider, at 10 n.7), the government makes no attempt to demonstrate that it has met that standard. Nor can it.

Rule 54(b) of the Federal Rules of Civil Procedure provides this Court with the discretion to grant a motion for reconsideration of a non-final order where the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred]." *Williams v. Savage*, 569 F. Supp.2d 99, 108 (D.D.C. 2008) (internal citation omitted); FED. R. CIV. P. 54(b). Significantly, this Court has held that litigants should not be allowed to use motions for reconsideration to rehash arguments that have already been made. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 109.

This is precisely what the government is attempting to do in its Motion to Reconsider. The motion does not address how this Court has misunderstood the parties, misapprehended the nature of this case, or committed a legal error. Nor does the government assert new arguments that it has not already made before this Court in other motions. Instead, the government asks the Court to reconsider arguments that "[the government] has previously explained" to this Court. (Motion to Reconsider, at 8.) In an attempt to bolster its argument, the government argues that the CMO is "ambiguous" and, not surprisingly, that the CMO "create[s] obligations that realistically cannot be met." (*Id.*, at 1.) But the government's Motion fails to demonstrate that justice requires reconsideration of the issues presented to this Court. Because the government has failed to meet the standard for reconsideration of the issues, this Court should deny the government's Motion and proceed in accordance with Judge Hogan's CMO and Judge Walton's subsequent Order (05-cv-2386, Docket No. 145). Judge Walton should be allowed to further fine-tune scheduling issues with the input of counsel in light of the individual facts and circumstances of each of these cases.

**B. The Government's Proposed Alterations of the CMO With Respect to Exculpatory Evidence and Discovery Are Unfairly Skewed in the Government's Favor, and Are Matters Better Left to the Merits Judges as Ordered By The CMO.**

The CMO generally sets forth in the parties' rights and obligations with respect to the disclosure of exculpatory evidence and additional discovery, and also establishes guidelines to be followed by the Merits Judges for according presumptions in favor of the government's evidence and admitting hearsay evidence. Most importantly, the CMO expressly delegates to the Merits Judges the authority to alter the CMO framework and to address any other procedural or substantive issues based on the particular facts and circumstances of individual cases.

Notwithstanding the CMO's express procedural framework—and also in violation of several Merits Judges' orders limiting modifications of the CMO to those made in individual cases–the government now asks this Court to reconsider and rewrite many of the CMO's basic provisions. For instance:

- The CMO requires the government to disclose all "reasonably available" exculpatory evidence in the government's possession. (CMO I.D.1.) The government seeks to narrow this requirement to an arbitrarily limited subset, namely "exculpatory material discovered *by the government's attorneys preparing the factual returns*." (*See* Motion, attachment: [Second Proposed] Order, Docket No. 147-6, at 1.) (Henceforth "SPO.");

- The CMO requires the *government* to provide, upon request, discovery of all relevant documents, objects, statements and circumstantial information relied upon in the factual return (CMO I.E.1), as well as limited additional discovery where the petitioner is able to show good cause (CMO I.E.2). The *government* seeks to eliminate its discovery obligations under Section I.E.1 altogether. In addition, after almost seven years of free discovery through interrogations of Petitioner without the presence of counsel, the government now proposes that Petitioner must show good cause for his discovery requests but that the government remains free to propound whatever discovery it likes without any such showing. (SPO, at 2.);

- The CMO sets forth guidelines for according presumptions in favor of the government's evidence and for admitting hearsay evidence, but properly assigns these determinations to the Merits Judges considering the particular the facts and circumstances of individual cases. (CMO II.A-C.) The government seeks

"categorical rulings" on these matters, supported by additional generic briefing and motions. (SPO, at 2.);

- Following discovery and merits briefing, the CMO entitles each petitioner to an evidentiary hearing if the Merits Judge determines that substantial issues of material fact preclude final judgment based on the record. (CMO III.B.1.) The *government* arbitrarily seeks to limit the Merits Judge's power to make this determination through a categorical rule that a petitioner's "mere denial" of the *government*'s factual allegations -- including, presumably, hearsay accounts of statements by Petitioner and other prisoners -- is not sufficient to trigger an evidentiary hearing. (SPO, at 2.) To the extent a petitioner is permitted to know the *government*'s factual allegations, there is no reason why the petitioner's denials should not create an issue of fact justifying an evidentiary hearing.

In each of these instances, the *government*'s objections to the CMO are not well taken, and the requested alterations of the CMO are neither justified nor necessary. On the contrary, the government uses exaggerated concerns to justify imposing arbitrary restrictions on the prisoners' basic ability to challenge the *government*'s case. None of these alleged concerns or proposed solutions justifies reconsideration of the CMO.

### 1. The Government's Exculpatory Evidence Proposals Are Arbitrary and Unnecessary

The government's concerns about the mandatory disclosure of exculpatory evidence are exaggerated. Initially, the government's claim that it is unusual for an obligation to produce exculpatory information to exist in habeas proceedings is wrong. (Motion, at 8: "[T]here is no general *Brady* obligation in civil habeas proceedings".) As the U.S. Court of Appeals for the Seventh Circuit discussed in *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007), it is well-

settled that the state has an "ongoing duty" to disclose exculpatory materials in post-conviction habeas proceedings. Here, the CMO requires disclosure of all exculpatory evidence "reasonably available" to the *government*—a standard that already expressly accommodates the *government*'s concerns on a case-by-case basis—but the *government* claims that a duty to produce reasonably available information is "unreasonable" and "extraordinary burdensome [*sic*] to wartime intelligence operations." (Motion, at 9.) Nowhere does the CMO suggest that "reasonably available" implies an exhaustive search of the entire government; in this regard, the government's interpretation of the CMO simply strains credulity.

The government compounds this error by attempting to limit its disclosure obligation to exculpatory material "discovered" by the unspecified attorneys working at the tail end of the investigation process, who are tasked with "preparing" amended factual returns. Such artificial (and oddly personalized) limits have no logical or practical relation to the government's disclosure obligations, except possibly to provide an alibi of personal ignorance or oversight for any subsequent failure to disclose relevant exculpatory evidence.[1] Because the CMO already

---

[1] The government's interpretation of the mandatory disclosure rule it propounds is demonstrated by its November 20, 2008 "Notice Pertaining to the Production of Exculpatory Information" (08-MC-442, Docket No. 1022). The Notice confirms that the government views its duty to disclose exculpatory evidence as ending with whatever evidence those lawyers preparing factual returns happen to see *in connection with preparing the factual return*:

> The Government understand the term "reasonably available" in CMO ¶ I.D.1 to mean evidence provided "consistent with the practice used for the recently filed factual returns and amended returns". . . . That is, "[a]though not constitutionally required, when filing its factual returns, the Government will provide any evidence that tends materially to undermine information presented in the return to support the petitioner's classification as an enemy combatant, which is encountered in the developing the returns by the attorneys preparing them. . . ."
>
> With this understanding, the Government *has complied with CMO ¶ I.D1* by attaching exculpatory information to the factual returns or amended factual returns as filed in the above-captioned cases.

(Emphasis added.) Put another way, the government appears to believe that it has already complied with its exculpatory evidence disclosure obligations—by filing a factual return. The Petitioners do not understand this tautology as triggering the time for Petitioners who have received factual returns to file their traverses. In denying this government's Motion to Reconsider, this Court should likewise reject the government's position that its mandatory disclosure obligations in CMO ¶ I.D.1 are somehow satisfied by the Notice.

imposes reasonable obligations and limits on the disclosure of exculpatory evidence in the government's possession, and because the government's objections to these limits are illogical and its remedy overly restrictive, this Court should enforce the CMO's exculpatory evidence provisions as written.

### 2. Eliminating the Automatic Discovery Provisions is Unwarranted.

The government's objections to the CMO's automatic discovery provisions are equally unwarranted. The automatic discovery provision of the CMO is narrowly tailored to the evidence that the government relies on to justify each petitioner's detention: the documents or objects relied upon in the factual return, the petitioner's statements relevant to the information in the factual return, and information necessary to evaluate the reliability of such statements. (*See* CMO I.E.1.) As the CMO states, this much discovery is "essential to render a habeas proceeding effective." (CMO, at 3 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 n.7 (1969).) Ignoring this emphasis on ensuring an *effective* habeas proceeding, the government instead speculates about "breathtaking" hypothetical scenarios purportedly not precluded by the CMO "on its face": required disclosure of every document referenced in every document (etc.) referenced in the factual return; culling every statement by every petitioner ever recorded in any government file; or exposing the government's most closely held intelligence gathering secrets to the extent these pertain to the "circumstances" in which a petitioner made statements relied on in the factual return. (*See* Motion, at 14-19.) Instead of suggesting reasonable limits to assuage these fears, the government simply proposes to eliminate automatic discovery altogether and to require each petitioner to move individually and particularly for discovery of even the most basic documentary and factual basis of the government's case.

When viewed in light of the government's concurrent requests to limit its duty to disclose exculpatory evidence, for a categorical presumption in favor of its own evidence, for the admissibility of hearsay and for denying petitioners an evidentiary hearing based on a "mere denial," the government's objections to the CMO's discovery provisions appear designed to render these habeas proceedings as ineffective as possible, by restricting from all sides the petitioner's ability to develop the factual basis to contest the government's case. The CMO already imposes reasonable limits on the discovery available at each stage of these habeas proceedings and correctly authorizes the Merits Judges to rule on additional discovery in individual cases. Therefore, no reconsideration is needed here.

### 3. The Government's Proposals Regarding Presumptions, Hearsay, and Evidentiary Hearings Are Poorly Considered.

The CMO also correctly authorizes the individual Merits Judges to make any necessary determinations with regard to presumptions in favor of the government's evidence and the admissibility of hearsay on a case-by-case basis. The government's demand that the parties seek, and this Court provide, "categorical rulings" to create a "presumptive baseline" for these issues collapses under its own logic. (*See* Motion, at 26-28.) The government concedes that any presumptions would be rebuttable and that "objections or exceptions in individual cases" would still be possible. This proposal would simply impose an additional and unnecessary layer of litigation; the CMO correctly eliminates this procedural epicycle and should be enforced as written.

Similarly self-defeating is the government's proposed categorical rule that a petitioner's "mere denial" of the government's factual allegations should not be sufficient to entitle the petitioner to an evidentiary hearing. (*See* SPO, at 2.) Lacking any support for this proposal, the government baldly declares that the familiar summary judgment standard adopted by the CMO—

substantial issues of material fact—is "clearly inappropriate" and will probably trigger evidentiary hearings "in *every* case." (*See* Motion, at 28.) Given the government's longstanding insistence that it must be allowed to rely on hearsay evidence, including hearsay allegations that cannot be disclosed to the petitioners, the government's proposal essentially asks that the petitioners be required to challenge their detention blindly. The CMO fairly and reasonably assigns to the Merits Judges the determination of whether each individual petitioner is entitled to an evidentiary hearing based on the record in each case. The government's mere disagreement on this issue is not enough to trigger reconsideration of the CMO.

### C. The Schedule Proposed By The Government Is Unworkable.

In addition to the government's unjustified arguments for reconsideration of the CMO's discovery provisions, the government also seeks to rewrite the filing and briefing schedules set forth in the CMO. While counsel for Petitioners have been and remain willing to meet and confer about possible alterations to the schedule set forth in the CMO where there is good cause and agreement, the government's specific proposals are unworkable. Specifically:

- The government proposes a deadline of December 12, 2008 (SPO at 2, ¶ A) to produce unclassified factual returns in cases in which classified returns were filed on or before November 12, 2008, with traverses due four weeks after that. This schedule would create a bottleneck during the year-end holiday period, when access to both to the secure facility and to Guantánamo itself will be more limited than usual. The point of providing unclassified returns is to enable petitioners' counsel to discuss with their clients the allegations against them. The government's proposed deadline thus imposes a needless logistical burden on counsel for those petitioners whose unclassified returns are due on December 12.

- Instead, unclassified returns should be due four weeks after the classified return has been filed. In this case, Petitioner has already filed a traverse to the original factual return. On October 31, 2008, the date the amended return was due, the government filed a generic request for an unspecified amount of additional time to file the amended return.

- The government also proposes that the petitioners submit a "preliminary traverse" within four weeks after receiving the unclassified return, but before submitting requests for discovery or receiving any discovery from the government. (SPO at 2, ¶¶ B&C.) This proposal is unworkable for the simple reason that any discovery sought by petitioners will be needed in order to prepare the traverse in the first place. To file a "preliminary" traverse without the benefit of discovery is not only inefficient, but leads to unnecessary filings with this Court. The CMO correctly permits discovery *before* the filing of the traverse.

- The government's proposed schedule also provides that discovery proposals may be submitted by "the parties." (SPO at 2, ¶ C.) This language implies an equal entitlement for the government, not just the petitioners, to propose additional discovery after the filing of the factual return, and such treatment is wholly unwarranted. The government has had up to seven years of unlimited, one-sided "discovery" in these cases. The CMO correctly reflects that any additional discovery is permitted for the petitioner only.

- The government proposes that once factual returns are filed, the government will proceed with discovery in only "25 cases per month (coordinated among the various Judges of the Court)." (SPO at 2, ¶ E.) This proposal improperly and

impractically seeks to restrict the authority of the Merits Judges to schedule and conduct the proceedings of the individual cases, while imposing an artificial and arbitrary cap on the overall rate of progress in these cases. The CMO fairly and reasonably leaves such matters to the individual Merits Judges.

### D. The Government Has Not Meet the Standard for Certification of an Interlocutory Appeal.

The government's Motion fails to meet the standard necessary for certification of the issues for interlocutory appeal under 28 U.S.C. § 1292(b). Interlocutory appeals of orders reviewable in the normal course of appeal after a final judgment are rare, and the present cases should be no exception. This Court may certify an interlocutory appeal under § 1292(b) only if: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation. 28 U.S.C. § 1292 (b); *Johnson v. Wash. Metro. Area Transit Auth.*, 773 F. Supp. 459, 459 (D.D.C. 1991). The government has met none of these criteria. And even if the government could be deemed to meet the criteria of § 1292(b), establishing the elements alone does not entitle the government to certification. The purpose of § 1292(b) is to help materially advance the ultimate termination of the litigation. But the aim of the government's motion is the exact opposite: further delay and protracted proceedings in multiple courts.

First, the CMO does not involve a "controlling question of law." A "controlling question of law" is one that generally would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002). Discovery and procedural orders rarely satisfy this high standard. This Court has expressly stated that "discovery orders generally never will involve a controlling question of law." *Id.* at

23 (internal quotations omitted). Although procedural orders may affect the course of litigation, "the critical requirement is that [the interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation." *In re Duplan*, 591 F.2d 139, 148 n.11 (2d Cir. 1978). An appeal of the CMO would slow down, not accelerate, the disposition of this protracted litigation. Facts in these cases have not been developed, and immediate interlocutory appeal would interfere with discovery. *See, e.g., Nat'l Asbestos Workers Med. Fund v. Phillip Morris, Inc.*, 71 F. Supp. 2d 139, 167 (E.D.N.Y. 1999).

Second, there is no substantial ground for difference of opinion. "The threshold for establishing the 'substantial ground for difference of opinion' . . . is a high one." *Judicial Watch*, 233 F. Supp. 2d at 19. Here, the only "difference of opinion" lies between the respondents and this Court, not between legal precedents. This is insufficient for certification under § 1292(b). *See id.* at 24-25; *see also First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996) ("Mere disagreement, even if vehement, with a court's ruling … does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal."); *cf. Johnson*, 773 F. Supp. at 459 (granting certification for appeal where the district court was faced with "two possibly inconsistent holdings" of an appellate court).

Finally, immediate appeal will not materially advance the litigation. As this Court is well-aware, the Petitioners have been held at Guantánamo Bay for years. The Supreme Court stated clearly in *Boumediene* that "the costs of delay can no longer be borne by those who are held in custody." 128 S. Ct. at 2275. Not only has the government failed to meet the standard for certification, but for this Court to grant the government's request to certify an interlocutory appeal would be utterly contrary to the Supreme Court's mandate in *Boumediene*. This Court

should therefore deny the government's motion and proceed under the CMO and Judge Walton's subsequent Order modifying it.

### E. The Government's Motion to Reconsider Also Should Be Denied Because the Government Failed to Comply with the Meet-and-Confer Requirement of Local Civil Rule 7(m).

The Motion to Reconsider also should be denied because counsel for the government failed to meet and confer with counsel in the Guantanamo habeas cases as required by Local Civil Rule 7(m). Simply stated, the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case. Local Rule 7(m) provides, in relevant part, that:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement.

D.D.C. CIV. R. 7(m).

On Friday, November 14, 2008, counsel for the government sent an e-mail to counsel for the detainees, including counsel for the Petitioners, stating that the government intended to move for reconsideration of the CMO because it is "legally inappropriate and unworkable." The November 14 e-mail states:

> RE:    Meet & Confer wrt 08-0442 Motion for Clarification and Reconsideration
>
> Counsel:
>
> In each of your cases in which the parties have not agreed to a stay, the government intends to file a motion for clarification and reconsideration of the Court's November 6, 2008 case management order (and supplemental amended orders, where applicable), or in the alternative, a motion for certification for appeal and to stay certain obligations pending appeal. The basis for this motion is that the November 6, 2008 procedural order is legally inappropriate and unworkable. Please advise if you oppose the motion by noon, ET, on Monday, November 17, 2008. When you respond, please indicate the case number and petitioner to which your response applies. Thank you.

(Copy attached as an Exhibit.)  The government offered no further explanation.  Nor did the government specify the cases in which it intended to file the motion for reconsideration.

Accordingly, counsel for the government failed to comply with Local Civil Rule 7(m), and the motion for reconsideration should be denied on this basis alone.  Local Rule 7(m) serves important institutional purposes, and the Courts routinely strike papers filed in contravention of the rule.  *See, e.g., Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006); *Penobscot Indian Nation v. HUD*, Civ. No. 07-1282, 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike because party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

## III.  CONCLUSION

The issues raised by the government have been litigated.  That litigation resulted in the issuance of the CMO, which strikes a reasonable balance between the Petitioners' rights to receive prompt habeas corpus review and the government's stated need to proceed with caution.  For the above reasons, the Petitioners respectfully request that the Government's Motion for Clarification and Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, in the Alternative, Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal be denied.

Dated:  Chicago, Illinois
        November 26, 2008

Respectfully submitted,

/s/ J. Andrew Moss
Lowell E. Sachnoff  (Illinois Bar No. 02438062)
Matthew J. O'Hara  (Illinois Bar No. 6237795)
Adam R. Chiss  (Illinois Bar No. 6272056)
Brian C. Lewis (D.C. Bar No. 476851)
J. Andrew Moss (Illinois Bar No. 6270313)
REED SMITH LLP
10 S. Wacker Drive, 40th Floor
Chicago, Illinois  60606
(312) 207-1000
(312) 207-6400 (fax)
amoss@reedsmith.com

*Counsel for Petitioners Umar Hamzayevich Abdulayev a/k/a Abdullah Bo Omer Hamza Yoyej a/k/a (ISN 257), Walid Ibrahim Mustafa Abu Hijazi a/k/a Mohammed Al Palestini (ISN 049) and Maasoum Abdah Mouhammad a/k/a Bilal LNU (ISN 330).*

/s/ David S. Marshall
David S. Marshall (Washington Bar #11716)
1001 Fourth Avenue, 44th Floor
Seattle, WA  98154-1192
(206) 826-1400
(206) 389-1708 (fax)
dmarshall@davidsmarshall.com

*Counsel for Petitioner Abu Rawda a/k/a Ahmed Adnan Ahjam (ISN 326).*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2008, I filed the foregoing electronically though the CM/ECF system, which caused all opposing counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ J. Andrew Moss
J. Andrew Moss