## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:

**GUANTANAMO BAY DETAINEE LITIGATION**

**Misc. No. 08-442 (TFH)**

**Civil Action No. 05-CV-0520 (RMU)**

### PETITIONER ABDUL RAHMAN SHALABI'S OPPOSITION TO RESPONDENTS' MOTION FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL AMENDED ORDERS OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY CERTAIN OBLIGATIONS PENDING RESOLUTION OF THE MOTION AND ANY APPEAL

Petitioner Abdul Rahman Shalabi submits this Opposition to Respondents' Motion for Clarification and Reconsideration dated November 18, 2008. For the reasons set forth below, Mr. Shalabi respectfully requests that Respondents' renewed efforts to deviate from this Court's orders[1] without justification or permission be denied. Petitioner further requests this case be returned to Judge Urbina, the judge originally assigned to this case, for the purpose of setting an appropriate timeline for the case to proceed and for final resolution of the case on the merits.

---

[1]    July 11, 2008 Scheduling Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. July 11, 2008) (TFH) (Docket No. 53) ("Scheduling Order"); September 19, 2008 Memorandum Opinion, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. Sept. 19, 2008) (Docket No. 464) ("September 19 Opinion") (granting Respondents partial and temporary relief from the Scheduling Order); November 6, 2008 Case Management Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. Nov. 6, 2008) (Docket No. 285) ("CMO").

## PRELIMINARY STATEMENT

Mr. Shalabi has been imprisoned at Guantanamo since January 11, 2002, each day "subject to habeas jurisdiction but without any actual habeas scrutiny." *Boumediene* v. *Bush*, 128 S.Ct. 2229, 2279 (2008) (Souter, J., concurring). Having unlawfully imprisoned Mr. Shalabi without charge for nearly seven years, Respondents seek once again to frustrate his efforts to meaningfully challenge his detention by proposing various measures which, if adopted, would significantly dilute the protections and safeguards afforded him by the Case Management Order ("CMO") and cause further delay.

In *Boumediene*, the Supreme Court made two things clear. First, the Court held that "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Id.* at 2269. Second, the Court said—in no uncertain terms—that Petitioners "were entitled to a *prompt* habeas corpus hearing" without jumping through further procedural hoops and warning that "the costs of delay can no longer be borne by those who are held in custody." *Id.* at 2275 (emphasis added).

Respondents' motion ignores both of these mandates. The CMO provides the minimum substantive protection necessary to conduct a fair and appropriate habeas hearing. Respondents' repeated attempts to analogize the procedures authorized by the CMO to the procedures of criminal law or post-conviction habeas proceedings are unavailing. The Supreme Court has said that it is precisely when "a person is detained by executive order, rather than, say, after being tried and convicted in a court, [that] the need for collateral review is most pressing." *Id.* at 2268-69. Respondents' motion also

introduces further delay into the proceedings, again staying proceedings which have already been stayed for close to four years.

Finally, Respondents' motion violates the CMO itself which requires motions for modifications to be brought before individual judges. (CMO, at 2 n.2.) The motion should also be denied for Respondents' failure to engage in any meaningful meet and confer, pursuant to Local Civil Rule 7(m), before filing this motion.[2]

This Court should reaffirm the substantive provisions of the CMO, and return the above-captioned case to Judge Urbina, so that he can consider the particular facts and circumstances of this case and set appropriate deadlines for the case to proceed. Lastly, Mr. Shalabi should be excused from filing a traverse until Respondents have provided an unclassified return and all exculpatory evidence.

## STATEMENT OF FACTS

Shortly following the Supreme Court's ruling in *Boumediene*, this case was transferred from Judge Urbina's docket and consolidated with over one hundred other habeas petitions for the limited purpose of developing a coordinated procedure to facilitate the swift resolution of these cases.[3] *See* Order, *Al Oshan* v. *Bush*, Civil No. 05-520 (D.D.C. July 3, 2008) (RMU) (Docket No. 121) (transferring case to Judge Hogan

---

[2] Respondents sent an email to Petitioner's counsel on November 14, 2008 announcing their intention to file a motion for clarification and reconsideration of the CMO, but provided no details regarding the substance of the motion they intended to file. Counsel promptly requested a call to better understand Respondent's position and request for relief, but counsel's email was not returned.

[3] Judge Sullivan and Judge Leon elected not to consolidate the cases on their docket. Notably, one case before Judge Leon has already been resolved on the merits and others will likely follow in the next several weeks.

for consolidation with action captioned *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C.) (TFH)).

Following a hearing with counsel for Petitioners and for Respondents, Judge Hogan issued a scheduling order with briefing dates on a number of key issues, including "issues relating to the procedural framework in which these cases will be resolved and whether such issues are amenable to common resolution." Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. July 11, 2008) (TFH). The framework issues identified were: the scope of discovery, the standard for obtaining an evidentiary hearing, the standard governing hearsay evidence, and the relevant standards of proof and burdens of production and persuasion. After briefing from both sides, the Court issued a CMO on November 6, 2008, which outlined the procedural framework for the cases to proceed and specifically set forth the parameters for the production of: 1) factual returns; 2) a legal justification for detention; 3) unclassified factual returns; 4) exculpatory information; 5) discovery; 6) classified information; and 7) a traverse. The CMO also set forth a thoughtful approach to address other procedural concerns, such as the appropriate burden of proof, the treatment of the Government's evidence, the use of hearsay, and the standard for granting an evidentiary hearing. Lastly, the CMO set forth a schedule for the parties to file their briefs for judgment on the record.[4] Although it dealt with common issues, the CMO recognized that "particular facts and circumstances" in individual cases might require varied approaches and authorized the judges to whom the cases were originally assigned to alter the framework as necessary. (CMO at 2 n.2.)

---

[4]   Judge Urbina amended this provision of the scheduling order and provided a staggered schedule for the filing of briefs in support of judgment on the merits. Order, *Al Oshan* v. *Bush*, Civil No. 05-520 (D.D.C. Nov. 14, 2008) (RMU) (Docket No. 162).

Respondents complied with two of the Court's deadlines in perfunctory fashion. On November 18, 2008, they filed a statement purporting to explain the Government's legal justification for detaining Mr. Shalabi. Respondents' Statement for Legal Justification of Detention, *Al Oshan* v. *Bush*, Civil No. 05-520 (D.D.C. Nov. 18, 2008) (RMU) (Docket 165). This statement peremptorily asserted that the President's power to wage war necessarily includes the power to detain enemy combatants who were part of, or supporting, forces hostile to the United States or its coalition allies. This statement of legal justification, filed in each case before this Court, made no individualized explanation of how Mr. Shalabi (or any other Petitioner) met this definition. Indeed, the purported statement of legal justification did not even mention Mr. Shalabi by name. In a similarly conclusory and omnibus fashion, the Government filed a general notice that exculpatory evidence (as Respondents had defined it) had been provided in the consolidated cases in which amended returns had been filed.

On the eve of a deadline to file unclassified factual returns for over a hundred Petitioners, Respondents unilaterally decided—at the eleventh hour and without seeking the Court's permission—that it would delay the filing of the unclassified factual returns and instead file this motion for reconsideration and clarification. The use of self-help motions has now become a practice of Respondents, used in order to secure delays in filing. *See*, *e.g.*, Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. August 29, 2008) (Docket No. 317) ("August 29 Motion"). Such a practice demonstrates a complete disregard for this Court's orders and the rights of Mr.

Shalabi. Simply by filing this motion, Respondents achieved the delay and extension of time they were seeking.

**ARGUMENT**

Respondents' motion for clarification and reconsideration of virtually every provision in the CMO relies on generalized, *ipse dixit* statements about the burden of locating and producing material for Petitioners and ignores the rights of Petitioners to receive prompt and meaningful habeas review. As demonstrated below, Respondents' renewed attempts to narrow the substantive and procedural standards and obligations necessary for effective habeas review are neither justified nor appropriate.

**I.      RESPONDENTS' MOTION FAILS TO SATISFY THE STANDARD FOR RECONSIDERATION AND SHOULD BE DENIED**

As an initial matter, Respondents have failed to show that they are entitled to reconsideration under Federal Rule of Civil Procedure 54(b). In deciding a motion to reconsider, a court shall consider "whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Williams* v. *Johanns*, 555 F. Supp. 2d 162, 163 (D.D.C. 2008) (citing *Singh* v. *George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co.* v. *U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for reconsideration should not be used to "relitigate old matters." *Niedermeier*

v. *Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the Government's motion is particularly new. There are no new legal issues presented—all were previously addressed at length in the parties' procedural framework briefs—and the Government does not identify any factual or legal issues that Judge Hogan misunderstood or overlooked in the CMO. Nor do Respondents cite to anything that suggests that justice requires the Court to reconsider arguments it has already decided. Rather, what the Government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO: (1) the breadth of the required search for exculpatory evidence; (2) the provision for automatic discovery of detainee statements relating to the amended factual returns; (3) the requirement that the Government provide counsel and the detainees themselves with classified information or "adequate substitutes" for classified information; and (4) the procedures governing the use of hearsay, presumptions in favor of the Government's evidence, and the standard for an evidentiary hearing. (*See* Resp't Br. at 2-3.)

Having already battled over the terms of the CMO, the Court should reject Respondents' attempt to relitigate these issues and should deny Respondents' motion. *Singh*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (a motion for reconsideration is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (citations omitted)), *judgment vacated on other grounds*, 508 F.3d 1097 (D.C. Cir.

2007).  For the reasons set forth below, the obligations imposed by the CMO are constitutionally necessary to provide Mr. Shalabi with a meaningful opportunity to challenge his detention and should remain in place.

## II.     RESPONDENTS' CHALLENGES TO THE SUBSTANTIVE PROVISIONS OF THE CMO ARE WITHOUT MERIT

### A.     The Government Must Conduct Searches for Exculpatory Evidence.

Respondents' request to limit its disclosure of exculpatory evidence is unnecessary and would undermine Petitioner's ability to mount a defense and this Court's ability to ensure effective habeas review.  The CMO requires the Government to disclose "all reasonably available evidence in its possession that tends materially to undermine the information presented to support the Government's justification for detaining the Petitioner."  (CMO I.D.1.)  Respondents "interpret" this provision as an obligation to produce *only* that evidence the Government lawyers happen to come across in drafting the factual returns in the first instance.  Of course, this contorted interpretation of the CMO conflicts with the plain language of the CMO and lacks legal justification or principle.

Respondents' argument that there is no *Brady* obligation either in civil habeas proceedings or in wartime proceedings and no such obligation should apply here, (Resp't Br. at 8-9), clearly ignores a chief reason the Supreme Court found the DTA to be an insufficient substitute for habeas relief:  it failed to do what is "constitutionally required" which is to "offer an opportunity for the detainee to present relevant exculpatory evidence that was not made part of the record in the earlier proceedings." *Boumediene*, 128 S.Ct. at 2272.  And who else but the Government is in the possession of such exculpatory material?  Surely not any of the detainees who are housed in cell blocks

on an island thousands of miles from their native homeland, far from the place of their capture and stripped of all personal possessions. Such a suggestion flies in the face of common sense and reason.

The Supreme Court has ruled that the scope of habeas review "in part depends upon the rigor of any earlier proceedings." *Id.* at 2268. Here, Mr. Shalabi's habeas action was not filed after "a judicial hearing before a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence," but rather after secret executive review. *Id.* at 2269. The Supreme Court recognized that under these circumstances, Guantanamo Petitioners may require more process, not less. *Id.* at 2268-69.

Respondents' "wartime" argument is also unconvincing. The Supreme Court expressly stated that it has not ruled on the scope of habeas review of enemy combatant decisions, noting that at best, it rejected the Government's argument in *Hamdi* v. *Rumsfeld*, 542 U.S. 507 (2004), that a federal court could not inquire beyond an affidavit from a detainee's custodian. *Id.* at 2269-70.

Plaintiffs' allegations about burden are also without merit. In July 2008, four months ago, Judge Hogan put the Department of Justice and other federal agencies on notice that they must treat these cases as a top priority. (July 8, 2008 Hearing Tr. at 90.) Just as Respondents have the ability to pool intelligence from all quarters to attempt make its case against Mr. Shalabi, so can they marshal those same resources to search appropriately for exculpatory evidence in the Government's possession, custody or control. Several judges on the United States District Court for the District of Columbia have already required Respondents to produce "exculpatory evidence obtain[able]

through reasonable diligence." *See* Minute Order, *Zuhair* v. *Bush*, (D.D.C. Oct. 8, 2008) (EGS) (directing Government to produce all exculpatory evidence that is "reasonably available" that bears on Petitioner's detention); Order, *Omar, et al.* v. *Bush, et al.*, (D.D.C. Nov. 12, 2008) (RBW) (ordering Government to disclose all reasonably available evidence in its possession or that it can obtain through reasonable diligence, and requiring Government to identify existence of evidence within its actual knowledge but not in its possession); Case Management Order, *Al-Adahi, et al.* v. *Bush, et al.*, (D.D.C. Nov. 13, 2008) (GK) (imposing same disclosure requirements as *Omar*, but noting that such evidence also relates to any evidence of abusive treatment, torture, mental incapacity or physical incapacity which could affect the credibility and/or reliability of evidence being offered).

Respondents acknowledge that the Government is capable of conducting open-ended searches across multiple agencies to determine who is in possession of what information, although they contend that it would take more time than the CMO has allotted to cull the materials and review for classification. (Resp't Br. at 8-10.) But Respondents offer no reason why searches by/of multiple agencies could not be focused to avoid duplicative searches and unnecessary burdens on the agencies. Also, to the extent that the Department of Justice has already performed agency-wide searches in preparing the returns; it is not clear whether new searches could be run in such a way that excludes the data retrieved before, thus narrowing the amount of data to review.

The Government's over-generalized approach even ignores what its own witnesses say. For example, FBI Director Robert Mueller suggests that a search of its "Investigative Data Warehouse" ("IDW") systems is feasible, efficient and would not

have a negative impact on its operational matters. (Decl. of Robert Mueller III, dated Nov. 14, 2008, ¶¶ 10-12.) Director Mueller notes that the FBI has a second database that includes materials such as tax records and grand jury material but notes that IDW searches would likely reveal the information habeas Petitioners are seeking. (*Id.* ¶ 10.) But rather than use this information to work with counsel and the court to determine a constructive approach to appropriate discovery, the Government simply asserts that any open-ended search would be overly time-consuming and impact the FBI's operations. (Resp't Br. at 9-10.)

**B.      Mr. Shalabi is Entitled to "Automatic" Discovery.**

Respondents' objections to the CMO's automatic discovery provisions are equally unavailing. The CMO's automatic discovery requirement is narrowly tailored to the evidence that the Government relies on to justify each Petitioner's detention, namely: the documents or objects relied upon in the factual return, the Petitioner's statements relevant to the information in the factual return, and information necessary to evaluate the reliability of such statements. (*See* CMO I. E(1).) As the CMO notes, such discovery is "essential to render a habeas proceeding effective." (CMO, at 3) (*quoting Harris* v. *Nelson*, 394 U.S. 286, 300 n.7 (1969)).

1.      The Automatic Discovery Obligation Applies to the
Entire Factual Return.

Respondents have requested that the Court "clarify" that the obligation to provide all documents and objects referenced in the factual return applies only to documents and objects referenced in the narrative, not to any documents or objects referenced in the numerous attached exhibits. (Resp't Br. at 11, 14-15.) Respondents'

contention that the production of all documents referenced in the factual return should only apply to those documents referenced in the narrative is devoid of reason or principle.

First, as a matter of logic, each document referenced in the narrative is already included in the factual return as an exhibit to the narrative. If the CMO does not apply to all documents or objects referred to in the exhibits, the provision is meaningless.

Respondents argue that the documents submitted with the narrative reference other documents or objects that are not part of the Government's affirmative case for detention and should not be provided without showing of good cause. (Resp't Br. at 14.) But this misstates the nature of the return. The narrative is simply a summary of the evidence contained in the exhibits. Petitioners cannot determine the reliability of the exhibits without the ability to examine the documents and objects referenced therein. Thus without the documents and objects referenced in the exhibits, Petitioners cannot adequately challenge the narrative.

Moreover, here, as well as with respect to the exculpatory evidence, the Government asks the court to simply accept its statement that production would be unduly burdensome. Putting aside the fact that this argument has been presented to and rejected by this Court, Petitioner respectfully submits, on information and belief, that many of the documents submitted with the narratives are reproduced in multiple returns, which greatly reduces Respondents' burden. For example, it is widely known that the Government has relied on certain detainee informants and presumably, those statements are relied upon in a large number of factual returns. Moreover, insofar as returns are based on the straightforward testimony of other detainees, there are few documents or objects that would even be subject to disclosure under this provision.

2.    <u>Discovery of the Materials in 1.E. Should Be Automatic.</u>

Respondents argue that discovery under this section should only be provided where requests are narrowly tailored, specific, and are likely to produce evidence that demonstrates unlawful detention. (Resp't Br. at 12-13.) Respondents contend that the discovery authorized by the CMO is more than what is available to criminal defendants or to Petitioners invoking statutory habeas outside the wartime context, as the discovery has not been limited to items that are material to the defense, that the Government intends to use in its case in chief, or that were seized from or belongs to the defendant. (*Id.* at 13.)

As explained above, Mr. Shalabi's need for discovery is greater than it would be in the criminal context or in a civil habeas proceeding in no small part because he never received discovery through trial or had an opportunity to develop a record of the facts. The Government is also the only custodian with access to the witnesses, documents and objects relevant to his case. Mr. Shalabi's entire case resides in the hands of the Government and without such access, he would not be afforded the opportunity to meaningfully challenge his indefinite detention, as the Supreme Court instructed in *Boumediene*.

Respondents go on to argue that the Government should only be obligated to produce material evidence, so that it may streamline its case in chief to avoid intractable and practical difficulties or avoid serious issues involving classified information. (Resp't Br. at 19.) But the contention that the automatic discovery provisions unfairly prejudice the Government (and its ability to "limit" and "streamline" a case) misses the point. It is Mr. Shalabi who suffers prejudice because of the Government's attempt to "limit" these cases to its best evidence or that evidence which it

unilaterally deems probative.  The Government's ability to tailor its case in a criminal prosecution makes more sense when the burden is to prove a specific charge beyond a reasonable doubt, rather than to prove by a preponderance of the evidence that it is lawful to hold a detainee.  In addition, it is beyond cavil that in a criminal prosecution, a defendant is entitled to any and all exculpatory evidence in the hands of the prosecution—precisely what Respondents resist providing here.

3.    <u>Respondents Must Be Required To Produce Petitioner's Statements.</u>

Respondents' desire to keep from Mr. Shalabi the evidence concerning his very own purported statements should not be countenanced.  It would be highly unjust, and a complete abandonment of the adversarial system of justice if Mr. Shalabi were forced to accept his accuser's word on what is or is not relevant to his case or defense. For this reason, Federal Rule of Criminal Procedure 16(a)(1)(B) requires the Government to disclose upon request any written record containing the oral statement made before or after arrest.  Fed. R. Crim. P. 16(a)(1)(B) (2008).  These baseline norms—established in federal courts across this country—constitute the bare minimum of what Mr. Shalabi is entitled to, given his indefinite detention without charge.

4.    <u>Disclosure of Conditions Under Which Statements Were Made Is Warranted.</u>

Respondents' efforts to avoid disclosure of the circumstances under which statements were made likewise should be rejected.

Unquestionably, Petitioners need to know the conditions under which statements are made if the provision on hearsay is to be afforded any meaning at all.  It is common and accepted knowledge that many Petitioners at Guantanamo and in U.S. custody elsewhere suffered torture, extreme coercion, and so-called "enhanced

interrogation techniques." Statements obtained under such conditions are inherently less reliable. Jurisprudence dating back more than 100 years explains the point well:

> A confession, if freely and voluntarily made . . . is deserving of the highest credit . . . [but] the presumption upon which weight is given to such evidence, namely, that one who is innocent will not imperil his safety or prejudice his interests by an untrue statement, ceases when the confession appears to have been made either in consequence of inducements of a temporal nature, held out by one in authority, touching the charge preferred, or because of a threat or promise by or in the presence of such person, which, operating upon the fears or hopes of the accused, in reference to the charge, deprive him of that freedom of will or self-control essential to make his confession voluntary within the meaning of the law.

*Hopt* v. *People*, 110 U.S. 574, 584-85 (1884) (*abridged on other grounds by Illinois* v. *Allen*, 397 U.S. 337, 342-43 (1970)). *See also Blackburn* v. *Alabama*, 361 U.S. 199, 206 (1960) (noting that "coercion can be mental as well as physical" and "the efficiency of the rack and the thumbscrew can be matched, given the proper subject, by more sophisticated modes of 'persuasion.'").

It is also clear that where a Petitioner is subject to coercion, his recollection of the circumstances under which he made the statements is also unreliable. Respondents' claim that, after seven years, any Petitioner would remember any interrogation distinctly, much less the length of the interrogations, the timing of such interrogations, or the methods used, is not credible. And, in any event, Mr. Shalabi is entitled to Respondents' own description and admissions of such treatments—he should not be compelled to rely solely on his own, uncorroborated recollection months or years later when Respondents have written documentation of these practices in their possession.

### C. Petitioner is Entitled to a Substitute for the Classified Information.

The CMO appropriately obligates Respondents to provide Petitioners with an "adequate substitute" for any classified information it is required to turn over during discovery. (CMO I.F.) Respondents' principle argument—that providing such information is unnecessarily burdensome—has been presented to the Court and rejected. That argument deserves no further consideration from the Court.

Respondents further contention that this provision of the CMO exceeds the classified information disclosure rights provided to criminal defendants under the Classified Information Procedure Act (CIPA) and that such disclosure provisions are constitutionally grounded is also meritless. (Resp't Mot. at 21–23.)

First, Respondents' reliance on CIPA is misplaced because these proceedings are not criminal proceedings. *See supra* Part I.A. Moreover, the burden imposed by CIPA is entirely inappropriate in this context of executive detention. In contrast to Mr. Shalabi, a defendant in a domestic criminal proceeding knows the charges against him, the names of the people testifying against him and the basis for the charges. Without access to this same evidence—the majority of which Respondents have designated as classified—Mr. Shalabi cannot mount a meaningful defense of his case. Indeed, without such an adequate substitute, Mr. Shalabi can not even assist in his defense, given that he is unable, pursuant to the terms of the Protective Order, to know the basis of the charges against him.

### D. Respondents Offer No Adequate Reason Why This Court's Rulings Regarding Presumptions, Hearsay and Evidentiary Hearings Should Be Reconsidered.

Respondents' attempt to have the parties seek, and the Court provide, "categorical rulings" on issues of presumption and use of hearsay is not justified or

reasonable and should be rejected. (Resp't Br. at 26-27.) The CMO appropriately authorizes the individual Merits Judges to make any necessary determinations with regard to these issues on a case-by-case basis, and that ruling should not be disturbed.

Respondents have previously made these arguments, and the Court has properly rejected them. (Resp't Br. Proc. Issues, *In re: Guantanamo Bay Detainee Litig.*, Misc. No. 08-442 (D.D.C. July 25, 2008) (TFH) (Docket No. 205) at 30–33, 36–40.) Thus here is no basis to reconsider those rulings at the present. Nor are Respondents' arguments more persuasive in their new brief. In *Boumediene*, the Supreme Court recognized that it would be futile to "attempt to anticipate all of the evidentiary and access-to-counsel issues that will arise during the course of the detainees' habeas corpus proceedings," *Boumediene*, 128 S.Ct. at 2276, prudently leaving such matters to be decided on a case-by-case basis in the district court. This need for flexibility is also recognized in the CMO which provides for the parties to adapt these procedures to their individual circumstances. Considerations of all three of these issues are inherently fact-specific and are not amenable to the sort of a blanket ruling proposed by Respondents.

With respect to hearsay statements, the common issue of whether they are admissible at all has been resolved. And because the Government will rely on hearsay statements by different, specific individuals in each case, no further blanket ruling is appropriate. For the reasons stated above, the Government will likely rely on statements by certain detainees in multiple proceedings, but there is no evidence that isolating the witnesses and statements common across multiple returns is less burdensome than reviewing it in each particular case. Moreover, it would be premature to decide exactly

what statements are going to be admitted insofar as the Government is still narrowing down its "cases-in-chief."

With respect to hearings—yet another issue that has already been briefed and thoroughly considered—Respondents argue that the mere denial of the facts raised by Petitioner should not be enough to trigger an evidentiary hearing. A dispute of fact, however, is the *exact* standard the Court must to use to determine whether a hearing is warranted.[5] The Court is well-prepared to evaluate conflicting allegations of fact. The risk of continuing an erroneous deprivation of liberty is too great not to allow a hearing regarding the facts to proceed.

### E. Interlocutory Appeal is Unwarranted as Time is of the Essence.

Respondents' motion also fails to meet the standard necessary for certification of the issues for appeal. Interlocutory appeals brought under 28 U.S.C. § 1292(b) are "rarely allowed," and the present case is no exception. The Government has failed to show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *First Am. Corp.* v. *Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996) (internal citation omitted); *see also In re Vitamins Antitrust Litig.*, 2000 WL 34230081, at *4 (D.D.C. 2000) (Hogan, J.). Interlocutory appeal is proper only when a court determines that an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

---

[5]    28 U.S.C. § 2243 provides, "Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained. . . . The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts. . . . The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

advance the ultimate termination of the litigation."  28 U.S.C. § 1292 (b); *see Johnson* v. *Wash. Metro. Area Transit Auth.*, 773 F. Supp. 459, 459 (D.D.C. 1991) (granting certification for appeal where the district court was faced with "two possibly inconsistent holdings" of an appellate court).  "The threshold for establishing the 'substantial ground for difference of opinion' . . . is a high one."  *Judicial Watch, Inc.* v. *Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).

Furthermore, where, as here, the party moving for certification disagrees with a court's discovery order, "[m]ere disagreement, even if vehement, with a court's ruling . . . does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal."  *First Am. Corp.* at 1116. The D.C. Circuit has stated that "discovery orders are not usually appealable until the litigation has finally ended."  *McKesson Corp.* v. *Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995).  As in *First American Corp.*, the Government's "mere disagreement, even if vehement," is insufficient to warrant certification of the issues for appeal in this case.

Furthermore, certification of the issues raised by the Government will do nothing to advance the termination of this litigation and will merely cause additional delay for Mr. Shalabi.  The continuous efforts to delay Mr. Shalabi's case are particularly troubling in light of the precariousness of his health.  Mr. Shalabi has been on a hunger strike for over three years.  Mr. Shalabi is force-fed twice daily by Guantanamo personnel, a process which involves being immobilized in a six-point restraint chair (despite the fact that he does not resist the feedings) for several hours each day.  During the time that Mr. Shalabi has participated in this non-violent protest,

personnel at Guantanamo have persistently engaged in efforts to end his hunger strike through physical and psychological coercion, efforts that have led to a substantial deterioration of Mr. Shalabi's health.

The state of Mr. Shalabi's condition highlights the importance of prompt habeas proceedings, as well as the need for the individual Merits Judge assigned to the case to set an appropriate timeline for resolution of the case based on Mr. Shalabi's particularized facts and circumstances. Certification of this matter to the United States Circuit Court for the District of Columbia would only serve to further delay Mr. Shalabi's right to challenge his confinement—in direct contravention of the Supreme Court's mandate in *Boumediene*. This Court should therefore deny Respondents' motion and allow this case to proceed before Judge Urbina.

**F.        Petitioner' Obligation to File a Traverse Has Not Been Triggered.**

Finally, in light of Respondents' unilateral decision to narrow the scope of the requirement to produce exculpatory information, the Notice filed regarding exculpatory evidence should not trigger Mr. Shalabi's obligation to file a traverse.

Respondents' disregard of the Court's order to produce an unclassified return makes it impossible for Petitioner to file a meaningful traverse. Counsel cannot proceed in preparing a traverse without an unclassified version and an adequate substitute for the classified version to discuss with our client. Further, counsel needs these materials in order to pursue an independent investigation into the facts surrounding Mr. Shalabi's case. Without the ability to utilize unclassified information and without an adequate substitute for classified information, counsel simply cannot perform their function as they are unable to discuss with anyone—including witnesses and investigators—the relevant facts concerning Mr. Shalabi's defense. Therefore,

Petitioner's obligation to file a traverse is not triggered until the Government fully complies with each provision of the CMO.

## CONCLUSION

For the reasons set forth above, Mr. Shalabi respectfully requests that the Court reaffirm the substantive provisions of the Case Management Order, return the above captioned case to Judge Urbina for the purpose of establishing an appropriate timeline for the case to proceed based on the particular facts and circumstances of this case, and excuse Mr. Shalabi from filing a traverse until Respondents have produced an unclassified factual return and the required exculpatory evidence.

Dated: New York, New York
      November 26, 2008

Respectfully submitted,

/s/ Martin Flumenbaum
Martin Flumenbaum (Bar No. 393210)
Julia Tarver Mason
mflumenbaum@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3029
Fax: (212) 373-0029

*Counsel for Petitioner*