FILED ELECTRONICALLY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | |
| GUANTANAMO BAY DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |
| | |
| IBRAHIM OSMAN IBRAHIM IDRIS, | |
| Petitioner, | |
| v. | Civil Action No. 05-1555 (JR) |
| GEORGE W. BUSH, et al., | |
| Respondent. | |

## PETITIONERS' MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION AND CROSS-MOTION TO (1) STRIKE DECLARATION AND (2) TRANSFER THIS CASE TO THE <u>MERITS JUDGE FOR ALL PURPOSES</u>

Petitioner Ibrahim Osman Ibrahim Idris, by counsel, hereby submits this memorandum of law in opposition to Respondent's omnibus motion for reconsideration, see *In re Guantanamo Bay Detainee Litig.,* Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1004) ("Gov't Motion"). Petitioners also move to (1) strike the declaration of CIA Director Michael V. Hayden, submitted *in camera* and *ex parte*, see *id* (misc. dkt. no.

1005), and (2) transfer this case back to Judge Robertson ("Merits Judge") for all purposes.[1]

## **PRELIMINARY STATEMENT**

Ibrahim Osman Ibrahim Idris, a citizen of Sudan, was one of the first prisoners transferred to the United States Naval Base at Guantánamo Bay, Cuba ("Guantánamo") in early 2002. He has been held there without charge or trial longer than most remaining prisoners. He also has one of the oldest remaining cases, filed in early 2005. Petitioner Idris's detention has been and continues to be indefinite and unlawful by any standard.

On June 12, 2008, the Supreme Court held that detainees at Guantánamo Bay have a constitutionally-protected right to petition for habeas relief. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). The Court further held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275.

Yet the government plainly seeks by its motion for reconsideration to prolong Petitioner Idris's indefinite detention. The government's motion is simply the latest tactic in a long-standing strategy to deprive Petitioner Idris and other Guantánamo

---

[1] Petitioner Idris also objects to the government's alternate request to certify these issues for appeal and for a stay pending appeal. There is no legitimate basis for an interlocutory appeal of a case management order pursuant to 28 U.S.C. § 1292(b). The government's suggestion that further appellate litigation in the detainee cases would materially advance the litigation also strains credulity in light of its consistent dilatory tactics.

detainees of any meaningful opportunity to challenge the legality of their detention through habeas. Although Judge Hogan ordered the parties in this case and other detainee cases to proceed on an individualized basis, the government made no objection to that mode of proceeding. Rather, now that the court has ruled, the government seeks to continue litigation essentially on a class-wide basis that is contrary to the courts' orders and serves only to delay consideration of the merits of this case.

The Court should deny the government's motion for three reasons. First, the government failed to meet and confer with Petitioner Idris's counsel as required by Local Civil Rule 7(m). Second, the motion fails to establish any basis for reconsideration. Third, the motion does not address the particular facts and circumstances of this case, which would not warrant the relief sought by the government – i.e., a further indefinite stay – if reconsideration were granted.[2]

Furthermore, for these reasons and the reasons that follow, the Court should grant Petitioner Idris's cross-motion to (1) strike the classified declaration of CIA Director Michael V. Hayden ("Hayden Declaration" or "Hayden Decl.") and (2) transfer the case back to the Merits Judge for all further proceedings.

## BACKGROUND

On July 2, 2008, this case was transferred to Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session (D.D.C. July 1, 2008).

Petitioner Idris objected to the transfer on the ground that it would delay consideration of the merits of his habeas case. In the nearly five months since then, Petitioner Idris's fears have borne true.[3]

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges posed." *Id.* (misc. dkt. no. 466, at 6) (internal quotation marks omitted).[4]

Petitioner Idris's amended factual return was consequently delayed until October 22, 2008. And when the government finally did produce the return, it attempted unilaterally to designate all non-classified information in the return as "protected," thus preventing Petitioner Idris himself from reviewing the information. Indeed, to date,

---

[3] By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of 6 Bosnian-Algerian petitioners released).

[4] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 917).

Petitioner Idris himself has not been able to review a single document contained in his return or prepare a response to the return.[5]

In the meantime, Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (misc. dkt. nos. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") to govern the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at p.2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge

---

[5] This implicates an issue which is overlooked in the CMO as it currently stands. It stands to reason and is necessary in order to adequately represent our clients, that after an unclassified factual return is filed, we will need time to consult with our clients before be able to file a traverse. The amount of time given to each detainee's counsel would need to take into account how quickly counsel could secure a visit to Guantanamo through the necessary official channels. Given the fact specific nature of this inquiry, the merits judges are in the best position to make a case by case determination of how much time is necessary between the filing of an unclassified return and the filing of a traverse.

Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. The government's motion made no mention of this case specifically. *See* Gov't Motion.

On November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026).

## ARGUMENT

I. **THE GOVERNMENT'S BLANKET MOTION FAILS TO PROVIDE ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE**

   A. **The Court Should Deny the Motion Because The Government Failed to Meet and Confer with Petitioner Idris's Counsel**

The government's motion should be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[6]

---

[6] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d

The government made no good faith effort to determine whether counsel for Petitioners objected to the requested relief or to narrow the areas of disagreement in this particular case.[7]

As has been the case throughout this litigation, instead of seeking to resolve this issue quickly and amicably, the government has instead used a purported disagreement as an excuse to prolong the unlawful incarceration of detainees. The government continues to argue that it does not have time to meet its obligations under the law and comport with the rules of this court, yet concedes that it has failed to respond to requests to work these issues out extra-judicially in its motion for reconsideration, "[m]any [counsel for the detainees] requested details regarding the motion that the Respondents were not in a position to discuss at the time." Gov't Motion at 3 n.2. In fact, it is unclear at this time whether the government has any issues moving forward with the CMO as applied to Petitioner Idris.

---

40, 47 (D.D.C. 2008) (denying motion to strike because party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

[7] There has been no direct or specific communication between the government and counsel for Petitioner Idris regarding his case. On November 15, 2008, counsel for the government sent an email to an undisclosed list of counsel for the detainees, but not including undersigned counsel, stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." *Ameziane v. Bush,* No. 05-cv-392 (ESH) (D.D.C.) (Nov. 26, 2008) (Opposition to Gov. Mot. for Reconsideration, Ex. 1). The government offered no further explanation. Nor did the government specify the cases in which it intended to file the motion for reconsideration, even after counsel for the detainees requested that information.

Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone.

B.   The Motion Should Be Denied for Failure to State Any Basis for Reconsideration

The government cites Federal Rule of Civil Procedure 54(b) in support of its request for reconsideration of Judge Hogan's CMO.  *See* Gov't Motion at 10 n.7.  But that rule provides no basis for reconsideration here.

Rule 54(b) governs motions for reconsideration that do not constitute final judgments.  *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).  A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."  *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).  In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order."  *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003).  Motions for reconsideration should not be used to "relitigate old matters."  *Niedermeier v. Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the government's motion is particularly new. There are no new legal issues presented – all were previously addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan overlooked in his case management order. Rather, the government plainly seeks to relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO: (1) the breadth of the required search for exculpatory evidence; (2) the provision for automatic discovery of detainee statements relating to the amended factual returns; (3) the requirement that the government provide counsel and the detainees themselves with classified information or "adequate substitutes" for classified information; and (4) the procedures governing the use of hearsay, presumptions in favor of the government's evidence, and the standard for an evidentiary hearing. *See* Gov't Motion at 2-3.[8]

---

[8] To the extent that the government seeks "clarification" of these and other issues, that request is likewise nothing more than an attempt to relitigate those issues on class-wide basis. For instance, on November 20, 2008, the government filed a notice pertaining to its purported compliance with Part I.D.1 of the CMO. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1022) ("Exculpatory Evidence Statement"). The notice stated that the government had complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no broader than the search previously conducted by the government – an interpretation that conflicts not only with the plain language of the CMO but also with the express orders of Judge Sullivan, Judge Kessler and Judge Walton (who has since stayed the order) requiring a broader search for exculpatory evidence. *See* Gov't Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession). In any case, the government has further acknowledged its failure to provide all exculpatory evidence in its possession. *See* Gov't Motion at 17 n.14

The government has conceded that the issues raised in its motion for reconsideration are the same as the issues addressed in the parties' procedural framework briefs before Judge Hogan: "The issues to be resolved by the Motion for Reconsideration are precisely the types of issues contemplated in the [July 1, 2008] transfer order. Only nine days after the transfer of cases to Judge Hogan, he ordered the parties to brief precisely these issues. The Motion for Reconsideration addresses nothing not addressed in the CMO." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1041, at 2). And that is precisely why the standard for reconsideration is not satisfied.

C. Even if Reconsideration Were Granted, the Requested Relief Should Be Denied in the Context of This Particular Case

The only arguably "new" relief requested by the government includes relief from the deadlines for compliance with the CMO, which the government contends would be unduly burdensome and threaten national security. The government specifically asks the courts to set a schedule for production of unclassified returns. *See* Gov't Motion at 31. The government also seeks a new schedule for "generalized briefing" on a presumption in favor of the government's evidence and the admissibility of hearsay evidence – matters

---

(admitting failure to produce all detainee denials of government's claims); Exculpatory Evidence Statement at 3 n.1 (admitting failure to produce all detainee denials of government's claims; all agency reports containing exculpatory evidence; and all exculpatory evidence identified after filing of returns). Accordingly, it is Petitioner Idris's position that the government has failed to comply with Part I.D.1 of the CMO, and therefore the government's filing does not trigger the time period under Part I.G for Petitioner to file a traverse.

already briefed at length before Judge Hogan. *Id.* In addition, the government seeks a staggered schedule for other proceedings in these cases, which, if accepted, might delay merits hearings in the detainee cases until the end of 2009 or perhaps early 2010.[9] Even if reconsideration were granted, which it should not be, these requests should be denied.

The government can propose modifications to the CMO in the context of this specific case. Instead, the government has sought a blanket stay of the deadlines set forth in the CMO. In doing so, the government has failed to address whether its proposed modifications are necessary or relevant in the context of Petitioner Idris's case. For instance, the government argues at length that the CMO's provisions concerning the production of exculpatory evidence and other discovery are improper because they do not require a showing of relevance or materiality. *See*, *e.g.*, Gov't Motion at 6, 14, 22-23. But the government does not address whether exculpatory evidence and other discovery is relevant or material to Idris.. The government also questions whether it should be required to produce classified information to counsel for detainees who lack security clearances at the same classification level as the information at issue. But the

---

[9] The government also proposes for this first time in this case to require each detainee to file a "preliminary traverse" shortly after production of the unclassified return but before any discovery proceeds. Gov't Motion at 31-32. Idris objects to such a procedure, which is plainly intended to afford the government a preview of his trial strategies and counter-evidence, and to limit the government's discovery obligations. Such a procedure has already been rejected by Judge Sullivan and Judge Leon in other cases, and should be rejected here. *See*, *e.g.*, Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (Judge Sullivan: "I think that would be inappropriate. I don't think that would be beneficial for the petitioner in this case."); *Sliti v. Bush*, No. 05-429 (RJL) (D.D.C. Oct. 24, 2008 Status Conference); *Ghazy v. Bush*, No. 05-2223 (RJL) (D.D.C. Oct. 23, 2008 Status Conference).

government fails to consider that no fewer than four of Petitioner Idris's attorneys currently hold security clearances at the "Secret" level, one holds "Top Secret" clearance, and they have a "need to know" classified information that is exculpatory or otherwise material to Petitioner Idris's case.

To the extent the government seeks modifications to the CMO based on undue burden, the Court should require the government to propose those modifications in context of the specific facts and circumstances of this case to determine whether such modifications are necessary or appropriate. By moving away from open-ended, generalized concerns that may not be relevant to this case, that approach will likely result in this case proceeding more quickly and efficiently to proceedings on its merits, including perhaps resolution by motion for summary judgment or a trial in 2009.

In the meantime, the government should be required to proceed in compliance with the deadlines set forth in the CMO to ensure that this case proceeds expeditiously. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene*, 128 S. Ct. at 2275 ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud.*

*Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Petitioner Idris has been in prison for over six years without charge or trial and this case should not be stayed any longer.

II. **THE COURT SHOULD STRIKE THE HAYDEN DECLARATION**

On November 19, 2008, two attorneys representing from the Center for Constitutional Rights, which is co-counsel in this case, who hold security clearances at the "Top Secret//SCI" level requested permission to review the Hayden Declaration, submitted *in camera* and *ex parte*, at the Secure Facility SCIF. *See, Ameziane v. Bush,* No. 05-cv-392 (ESH) (D.D.C.) (Nov. 26, 2008) (Opposition to Gov. Mot. for Reconsideration). The government denied that request without explanation. Accordingly, the Court should strike the Hayden Declaration.

While the government unquestionably has a substantial interest in preventing the unauthorized disclosure of classified information, it should not be permitted to rely on secret evidence to delay Petitioner Idris's habeas hearing any more than it should be permitted to offer secret evidence in support of Petitioner Idris's detention at a habeas hearing. The Supreme Court was clear in *Boumediene* that an "adversarial character" is

13

necessary to habeas proceedings. *See* 128 S. Ct. at 2273. The submission and consideration of a secret declaration deprive Petitioner Idris – and the courts – of the benefits of the adversarial process in habeas. *Cf. Bismullah v. Gates*, 501 F.3d 178, 187 (D.C. Cir. 2007) ("We think it clear that this court cannot discharge its responsibility . . . unless a petitioner's counsel has access to as much as is practicable of the classified information regarding his client. Counsel simply cannot argue, nor can the court determine, whether a preponderance of the evidence supports the [government's] status determination without seeing all the evidence.").

To the extent the government seeks to delay this case based even in part on the Hayden Declaration, that declaration effectively denies Petitioner Idris habeas relief. The government's proposed delay is substantive, not procedural. In other words, delay means more indefinite detention, and that *itself* is the harm that Petitioner Idris filed a habeas petition in order to remedy three years ago. So grievous is that harm, and so fundamental the right to be protected from it, that the right to impair habeas corpus is limited by the Suspension Clause of the Constitution. Even an adjudicated criminal alien who has never made an entry into the United States, and has no right in law to be here, must be released into the United States when faced with the prospect of indefinite detention. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005). Indeed, the need for a prompt hearing is never greater than where, as here, a petitioner has been afforded no prior judicial review. *See Boumediene*, 128 S. Ct. at 2267 ("[C]ommon-law habeas was, above all, an adaptable remedy. . . . It appears that the common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous

judicial review of the cause for detention."); *id.* at 2269 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. . . . The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. . . . [T]he writ must be effective."); *Rasul v. Bush*, 542 U.S. 466, 473-75 (2004); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (recognizing if delay in deciding habeas petitions were routinely permissible, absent good reason, "the function of the Great Writ would be eviscerated"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate for any delay.").

Moreover, the government should not be permitted to rely on an *ex parte* classified document without establishing good cause to believe that disclosure of the secret information to security-cleared counsel for the detainees would actually threaten national security. The mere invocation of "national security" is insufficient to prolong the already indefinite detentions of Petitioner Idris or the other detainees. Nor would absolute judicial deference on such matters of national security be consistent with the separation of powers. *See Coldiron v. DOJ*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("No matter how much a court defers to an agency, its review is not vacuous. An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.'") (citations and internal quotation marks omitted); *Boumediene*, 128

15

S. Ct. at 2277 ("Security subsists, too, in fidelity to freedom's first principles. . . . Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person.").

III.  THIS CASE SHOULD BE TRANSFERRED TO THE
      MERITS JUDGE FOR ALL FURTHER PROCEEDINGS

This case was initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this court may alter that framework based on the particular facts and circumstances of their individual cases. Proceeding on an individual case-by-case basis is also the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the constitutional right to habeas corpus. Accordingly, Petitioner Idris requests that this case be transferred back to the Merits Judge for all further proceedings. If there are issues that need to be addressed after the government narrows its case the Merits Judge is best suited to address those issues and ensure that this case is resolved as soon as possible.

November 26, 2008                                Respectfully submitted,

                                                 **DEBEVOISE & PLIMPTON LLP**

                                                 By:  /s/ Jennifer R. Cowan
                                                 Jennifer R. Cowan
                                                 919 Third Avenue

New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

John B. Missing
555 13th Street, N.W., Suite 1100E
Washington, D.C. 20004-1169
Telephone: (202) 383-8000
Facsimile: (202) 383-8118

Shayana Kadidal (Bar No. 454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6438
Facsimile: (212) 614-6499

*Counsel for Petitioner Ibrahim Osman Ibrahim Idris*