IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

```
_____ x
                                       :
IN RE:                                 :
                                       :
GUANTÁNAMO BAY                         :   Misc. No. 08-442 (TFH)
DETAINEE LITIGATION                    :
                                       :
_____ x
                                       :
ZALITA,                                :
                                       :
                    Petitioner,        :
                                       :
            v.                         :   Civil Action No. 05-1220 (RMU)
                                       :
BUSH, et al.,                          :
                                       :
                    Respondents.       :
                                       :
_____ x
```

**OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION,
AND CROSS-MOTION TO STRIKE HAYDEN DECLARATION AND TO TRANSFER
THIS CASE BACK TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS**

Petitioner Abu Abdul Rauf Zalita, by and through his undersigned counsel, respectfully submits this opposition to the government's omnibus motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1004) ("Gvt. Motion"). Petitioner also moves to strike the declaration of CIA Director Michael V. Hayden, submitted *in camera* and *ex parte*, *see id* (misc. dkt. no. 1005), and to transfer this case back to Judge Urbina (the "Merits Judge") for all further proceedings.[1]

---

[1]   The government objects to the motion to strike. As to the motion to transfer, the government's position is that Judge Hogan should address the issues related to the CMO and the motion for reconsideration in all of the coordinated detainee cases, including this case.

# PRELIMINARY STATEMENT

Petitioner Abu Abdul Rauf Zalita (also known as Abdul Ra.ouf Ammar Mohammad Abu Al Qassim), a citizen of Libya, was transferred to Guantánamo Bay in August 2002. His habeas petition was filed in June 2005. The United States government has cleared him for transfer from Guantanamo, and has twice attempted to repatriate him to Libya, the country from which he fled to Afghanistan more than a decade ago to avoid religious persecution. Petitioner has a credible fear that he will be subject to imprisonment, torture and possible summary execution if he is forcibly returned to Libya, and he has resisted all attempts to repatriate him to that country. He remains detained in Camp 6, an isolation facility, more than six years after his detention and nearly two years after the government's first notice of intent to transfer him out of Guantanamo. His detention has been and continues to be indefinite and unlawful by any standard.

Despite the fact that he has been cleared for transfer out of Guantanamo, resolution of Petitioner's habeas claims is vitally important in order to expedite his release. Petitioner has an asylum application currently pending in Switzerland. The application was rejected at the administrative level in large part due to concerns that Petitioner might pose a security risk. (The process of appealing that ruling is underway.) Those concerns clearly have a relationship to our government's allegations against him, and are liable to be dispelled should those allegations be disproved. Prompt adjudication of Petitioner's habeas claims in his favor will greatly assist the process of proving that he does not pose a risk to any country that offers to resettle him. Because the government will not be able to lawfully repatriate Petitioner to Libya in light of his fears of

abuse upon return,[2] the validity or lack thereof of the government's enemy combatant designation in this case is relevant to the question of whether he will be able to convince a third country to provide him safe harbor, and thereby facilitate his release from Guantanamo.

On June 12, 2008, the Supreme Court held that detainees at Guantánamo Bay have a constitutionally-protected right to petition for habeas relief. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). The Court further held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275. The detainee cases are now governed by the Habeas Corpus Statute, 28 U.S.C. § 2241 *et seq.*, which sets forth specific guidelines for prompt resolution of these cases.

Yet the government plainly seeks by its motion for reconsideration to prolong Petitioner's indefinite detention. The government's motion is simply the latest tactic in a long-standing strategy to deprive Petitioner and other Guantánamo detainees of any meaningful opportunity to challenge the legality of their detention through habeas. Although Judge Hogan and the Merits Judge each ordered the parties in this case and other detainee cases to proceed on an individualized basis – and, indeed, invited the government to propose modifications to Judge Hogan's November 6, 2008 case management order in the context of this particular case – the government made no objection to that mode of proceeding. Rather, now that the courts have

---

[2]  Notwithstanding these fears, which Petitioner has consistently expressed over the years of his detention, the government continues to take steps to attempt to transfer him to Libya. In a recent unclassified letter, dated October 14, 2008, Petitioner stated that "I would like to inform you that in these days they want to transfer me to Libya. I hope you can take an urgent action to stop them from doing so as you promised me." Cleared notes from the last visit of counsel to Petitioner indicate that he was processed for departure from Guantanamo, was told that he had no choice but to go to Libya, and was asked to sign papers agreeing to be sent there (which he refused to do). (Note that Petitioner currently is subject to Judge Hogan's 30-day's notice order, Dkt. 52 in Misc. No. 08-442 (Jul. 10, 2008), having requested such notice from the government.)

3

ruled, the government seeks to continue litigation essentially on a class-wide basis that is contrary to the courts' orders and serves only to delay consideration of the merits of this case.

The government's motion should be denied for three reasons: (1) because the government failed to meet and confer with Petitioner's counsel as required by Local Civil Rule 7(m); (2) because the motion fails to establish any basis for reconsideration; and (3) because the motion does not address the particular facts and circumstances of this case, which would not warrant the relief sought by the government – *i.e.*, a further indefinite stay – if reconsideration were granted.[3]

Petitioner's cross-motion to strike the classified declaration of CIA Director Michael V. Hayden ("Hayden Declaration" or "Hayden Decl.") should also be granted, and this case should be transferred back to the Merits Judge for all further proceedings, for the reasons below.

## BACKGROUND

On July 2, 2008, this case was transferred to Judge Hogan for coordination and management pursuant to the Resolution of the Executive Session (D.D.C. July 1, 2008). Petitioner's counsel objected to the transfer on the ground that it would delay consideration of the merits of his habeas case. In the nearly five months since then, these fears have borne true.[4]

On July 11, 2008, Judge Hogan entered a scheduling order requiring the government to produce factual returns in each detainee case on a rolling basis. The government failed to

---

[3] Petitioner also objects to the government's alternate request to certify these issues for appeal and for a stay pending appeal. There is no legitimate basis for an interlocutory appeal of a case management order pursuant to 28 U.S.C. § 1292(b). Nor do the issues raised in the government's motion present substantial ground for difference of opinion. The government's suggestion that further appellate litigation in the detainee cases would materially advance the litigation also strains credulity in light of its consistent, dilatory tactics.

[4] By contrast, all but one of the twenty-three detainees whose cases have been decided on their merits have been ordered released from Guantánamo Bay. *See* Mem. Op., *Kiyemba v. Bush*, No. 05-cv-1509 (RMU) (D.D.C. Oct. 8, 2008) (ordering 17 Uighur petitioners released into the United States); Mem. Order, *Boumediene v. Bush*, No. 04-cv-1166 (RJL) (D.D.C. Nov. 20, 2008) (ordering 5 of 6 Bosnian-Algerian petitioners released).

comply with that schedule – which they had proposed – and moved to amend the schedule for production of returns. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 317). Judge Hogan granted the motion on September 19, 2008, over the detainees' objections, but cautioned that "[g]oing forward . . . the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it simply did not appreciate the full extent of the challenges posed." *Id.* (misc. dkt. no. 466, at 6) (internal quotation marks omitted).[5]

An original factual return was filed in Petitioner's case on September 14, 2005, but because Petitioner appeared on the lists of cleared detainees filed by the government with the Joint Status Report of July 18, 2008 (*see* Dkt. 170, Joint Status Report, Exhibit 6 ("Petitioners Who Are Approved For Transfer To The Control Of Another Government") at p.1), the government was not obliged by the Court to produce his factual return in sequence. See Order, Dkt. 464 (exempting government, in cases involving cleared detainees, from requirement to file returns "pending further order of the Court"). Notwithstanding this order, the government filed an amended factual return for Petitioner on October 30, 2008. In doing so, it attempted unilaterally to designate all non-classified information in the return as "protected," thus preventing Petitioner himself from reviewing the information. Indeed, to date, Petitioner himself has not been able to review a single document originating with the amended return or prepare a response to the return.[6]

In the meantime, Judge Hogan's July 11, 2008 scheduling order also required the parties to submit briefs addressing the procedural framework to govern these cases. *See*, *e.g.*, *id.* (misc.

---

[5] Yet the government soon failed to comply once again, and sought further relief from their proposed schedule on October 31, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 917).

[6] Late this afternoon, Respondents filed a Notice of Filing of Unclassified Factual Return for Petitioner Zalita (Dkt. 147 in 05-cv-1220) (Nov. 26, 2008).

dkt. nos. 206, 231) (detainee briefs). Those briefs addressed nearly all of the issues raised in the government's omnibus motion for reconsideration, including issues concerning production of exculpatory evidence and other discovery, the admissibility of hearsay evidence, and whether the government's evidence should be afforded any presumptions.

On November 6, 2008, Judge Hogan issued a Case Management Order ("CMO") to govern the coordinated detainee cases. The CMO resolved many of the issues addressed in the parties' procedural framework briefs, and indicated (at p.2 n.1) that the judges to whom the cases are assigned for final resolution "may alter the framework based on the particular facts and circumstances of their individual cases," and "will address procedural and substantive issues not covered in this [CMO]."

Four days later, the Merits Judge entered an order making minor adjustments to the briefing schedules relating to motions for judgment on the record in the CMO, and directing the parties in this case and seven other cases to appear for status conferences on November 24th and 25th, 2008. *See* Order, Dkt. 140, Civil Action No. 05-cv-1220 (Nov. 10, 2008).

On November 18, 2008, the government filed its omnibus motion for reconsideration, seeking a blanket stay of all detainee cases coordinated before Judge Hogan regardless of the facts and circumstances of the individual cases, and seeking the opportunity to relitigate issues that were addressed before Judge Hogan in the parties' procedural framework briefs. The government's motion made no mention of this case specifically. *See* Gvt. Motion.

On November 21, 2008, Judge Hogan entered an order staying the deadlines in the CMO pending resolution of the government's motion for reconsideration. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1026). Later that day, the Merits Judge issued an order cancelling the status conferences scheduled for November 24th and

6

25th, and directing the parties to file a joint status report by December 8, 2008 *See* Order, Dkt. 146, Civil Action No. 05-cv-1220 (Nov. 21, 2008). In the joint status report, Judge Urbina ordered that "[t]he government shall detail its efforts to comply with the Case Management Order of November 6, 2008; specifically, the government shall describe its efforts to file unclassified factual returns and to disclose all reasonably available exculpatory evidence to the petitioners." Judge Urbina further ordered "that, as stated by Judge Hogan, 'the Court expects the parties to be prepared to proceed immediately to fulfill the obligations required by paragraphs I.C, I.D, I.E, I.F, II.B, II.C [of the Case Management Order]. In other words, the parties should not view a stay of the due dates as license to halt all efforts to prepare the materials necessary to comply with the Case Management Order.' Order, Nov. 21, 2008 (Hogan, J.)."

## I. THE GOVERNMENT'S BLANKET MOTION FAILS TO PROVIDE ANY BASIS FOR RECONSIDERATION IN THE CONTEXT OF THIS CASE

### A. The Motion Should Be Denied for Failure to Meet and Confer

The government's motion should be denied because counsel for the government failed to meet and confer with undersigned counsel as required by Local Civil Rule 7(m). Simply stated, the government made no good faith attempt to determine whether undersigned counsel objected to the requested relief or to narrow the areas of disagreement in this particular case.

On Friday, November 14, 2008, counsel for the government sent an email to an undisclosed list of counsel for habeas petitioners, including undersigned counsel, stating that the government intended to move for reconsideration of Judge Hogan's CMO on the ground that it was "legally inappropriate and unworkable." The government offered no further explanation. Nor did the government specify the cases in which it intended to file the motion for reconsideration, even after the undersigned counsel requested that information. Counsel for the government made no attempt to narrow the areas of disagreement in this specific case concerning

7

the forthcoming motion for reconsideration. As the government concedes in its motion for reconsideration, "[m]any [counsel for the petitioners] requested details regarding the motion that the Respondents were not in a position to discuss at the time." Gvt. Motion at 3 n.2.

Accordingly, because counsel for the government failed to comply with Local Civil Rule 7(m), the motion for reconsideration should be denied on this basis alone. Rule 7(m) serves important institutional purposes, and the courts should not treat a violation of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[7]

### B. The Motion Should Be Denied for Failure to State Any Basis for Reconsideration

The government cites Federal Rule of Civil Procedure 54(b) in support of its request for reconsideration of Judge Hogan's CMO. *See* Gvt. Motion at 10 n.7. But that rule provides no basis for reconsideration here.

Rule 54(b) governs motions for reconsideration that do not constitute final judgments. *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). A court may reconsider an order pursuant to Rule 54(b) when it "patently misunderstood a party, has made a decision outside the adversarial issue presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). In general, a court will only consider a motion for reconsideration when the moving party demonstrates: "(1) an intervening change in the law; (2)

---

[7] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order granting motion to strike papers filed in violation of Rule 7(m)); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 n.19 (D.D.C. 2002) (denying plaintiffs' motion to lift stay and awarding fees and costs to defendants); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike

8

the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Motions for reconsideration should not be used to "relitigate old matters." *Niedermeier v. Office of Max. S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001) (addressing Rule 59(e)); *see also Singh*, 383 F. Supp. 2d at 101.

The standard for reconsideration is not met here. Indeed, nothing about the government's motion is particularly new. There are no new legal issues presented – all were previously addressed at length in the parties' procedural framework briefs – and the government does not identify any factual or legal issues that Judge Hogan or the Merits Judge misunderstood or overlooked in their respective case management orders. Rather, what the government plainly seeks to do is relitigate on a class-wide basis four central issues that have already been addressed in the parties' procedural framework briefs and resolved by Judge Hogan in the CMO: (1) the breadth of the required search for exculpatory evidence; (2) the provision for automatic discovery of detainee statements relating to the amended factual returns; (3) the requirement that the government provide counsel and the detainees themselves with classified information or "adequate substitutes" for classified information; and (4) the procedures governing the use of hearsay, presumptions in favor of the government's evidence, and the standard for an evidentiary hearing. *See* Gvt. Motion at 2-3.[8]

---

be-cause party "failed to comply with Rule 7(m) and meet its heavy burden in filing its motion to strike").

[8] To the extent the government seeks "clarification" of these and other issues, that request is likewise nothing more than an attempt to relitigate those issues on class-wide basis. For instance, on November 20, 2008, the government filed a notice pertaining to its purported compliance with Part I.D.1 of the CMO. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1022) ("Exculpatory Evidence Statement"). The notice stated that the government had complied with the requirement to produce exculpatory evidence to the extent that the CMO was intended to require a search for exculpatory evidence that is no

The government has conceded that the issues raised in its motion for reconsideration are the same as the issues addressed in the parties' procedural framework briefs before Judge Hogan: "The issues to be resolved by the Motion for Reconsideration are precisely the types of issues contemplated in the [July 1, 2008] transfer order. Only nine days after the transfer of cases to Judge Hogan, he ordered the parties to brief precisely these issues. The Motion for Reconsideration addresses nothing not addressed in the CMO." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1041, at 2). And that is precisely why the standard for reconsideration is not satisfied.

### C. Even if Reconsideration Were Granted, the Requested Relief Should Be Denied in the Context of This Particular Case

The only arguably "new" relief requested by the government includes relief from the deadlines for compliance with the CMO, which the government contends would be unduly burdensome and threaten national security. The government specifically asks the courts to set a schedule for production of unclassified returns. *See* Gvt. Motion at 31.[9] The government also seeks a new schedule for "generalized briefing" regarding a presumption in favor of the

---

broader than the search previously conducted by the government – an interpretation that conflicts not only with the plain language of the CMO but also with the express orders of Judge Sullivan, Judge Kessler and Judge Walton (who has since stayed the order) requiring a broader search for exculpatory evidence. *See* Gvt. Motion at 5 (acknowledging these contrary orders); Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (discussing obligation of government attorneys to search for exculpatory evidence not in their immediate possession). In any case, the government has further acknowledged its failure to provide all exculpatory evidence in its possession. *See* Gvt. Motion at 17 n.14 (admitting failure to produce all detainee denials of government's claims); Exculpatory Evidence Statement at 3 n.1 (admitting failure to produce all detainee denials of government's claims; all agency reports containing exculpatory evidence; and all exculpatory evidence identified after filing of returns). Accordingly, it is Petitioner's position that the government has failed to comply with Part I.D.1 of the CMO, and that this failure does not trigger the time period under Part I.G for him to file a traverse.

[9] As this brief was being prepared for filing, Respondents filed a Notice of Filing of Unclassified Factual Return (Dkt. 147 in 05-cv-1220) (Nov. 26, 2008).

government's evidence and the admissibility of hearsay evidence – matters already briefed at length before Judge Hogan. *Id.* In addition, the government seeks a staggered schedule for other proceedings in these cases, which, if accepted, might delay merits hearings in the detainee cases until the end of 2009 or perhaps early 2010.[10] Even if reconsideration were granted, which it should not be, these requests should be denied.

The government had the opportunity to propose modifications to the CMO in the context of this case. Instead, they have attempted to seek a blanket stay of the deadlines set forth in the CMO. In doing so, the government has failed to address whether its proposed modifications are necessary or relevant in the context of this particular case. For instance, the government argues at length that the CMO's provisions concerning the production of exculpatory evidence and other discovery are improper because they do not require a showing of relevance or materiality. *See*, *e.g.*, Gvt. Motion at 6, 14, 22-23. But Petitioner has not yet made discovery requests in the wake of the recent amendment of his factual return. Before Petitioner has made specific requests for exculpatory evidence and other discovery, it is premature for the government to object on the basis of relevance or materiality. In any event, such objections to the application of the CMO are best handled by the Merits Judge on the facts of each case.

The government also questions whether it should be required to produce classified information to counsel for detainees who lack security clearances at the same classification level

---

[10] The government also proposes for this first time in this case to require each detainee to file a "preliminary traverse" shortly after production of the unclassified return but before any discovery proceeds. Gvt. Motion at 31-32. Petitioner objects to such a procedure, which is plainly intended to afford the government a preview of his trial strategies and counter-evidence, and to limit the government's discovery obligations. Such a procedure has already been rejected by Judge Sullivan and Judge Leon in other cases, and should be rejected here. *See*, *e.g.*, Tr. of Status Hearing at 17, *Habishi v. Bush*, No. 05-765 (EGS) (D.D.C. Oct. 30 2008) (Judge Sullivan: "I think that would be inappropriate. I don't think that would be beneficial for the petitioner in

11

as the information at issue. But the government fails to consider that no fewer than three of Petitioner's attorneys currently hold security clearances at the "Top Secret//SCI" level or that they have a "need to know" classified information that is exculpatory or otherwise material to Petitioner's case. Indeed, a Top Secret//SCI filing was made in this case. *See* Notice of Filing of (Dkt. 81 in 05-cv-1220) (filed Jan. 7, 2008); Motion for Inquiry Regarding Destruction of Evidence Related to CIA Detainee Interrogations (unclassified redacted version, Dkt. 82 in 05-cv-1220) (filed Jan. 15, 2008). That motion requests that "this Court should conduct a hearing to determine whether Respondents destroyed evidence from Abu Zubaydah or other detainees in CIA custody related to Respondents' justification for detaining Petitioner and designating him an 'enemy combatant.'" *Id*. at 11. If information originating from CIA detainees is redacted from the factual return provided to Petitioner's counsel, or if unredacted information in the return originates from CIA detainees but the source-identifying information is redacted, counsel will be unable to assist the Court in the process of resolving the Motion for Inquiry, and even greater difficulties will attend the resolution of the petition on the merits.

To the extent the government seeks modifications to the CMO, the Court should require the government to propose those modifications in context of the specific facts and circumstances of this case to determine whether such modifications are necessary or appropriate. By moving away from open-ended, generalized concerns that may not be relevant to this case, that approach will likely "provide the most expeditious and efficient handling of these cases … as required by the Supreme Court in *Boumediene v. Bush*." Resolution of the Executive Session (D.D.C. July 1, 2008).

---

this case."); *Sliti v. Bush*, No. 05-429 (RJL) (D.D.C. Oct. 24, 2008 Status Conference); *Ghazy v. Bush*, No. 05-2223 (RJL) (D.D.C. Oct. 23, 2008 Status Conference).

In the meantime, the government should be required to proceed in compliance with the deadlines set forth in the CMO, as modified by the Merits Judge, to ensure that this case proceeds expeditiously. Because this is a habeas case, the government bears a higher burden to justify delay than it would in an ordinary civil action. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody."); *see also Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting standard of review of district court decision to stay habeas proceeding "is somewhat less deferential than the flexible abuse of discretion standard applicable in other contexts"). The statutory provisions for prompt returns, immediate hearings, and summary disposition of habeas cases expressly require that petitions be heard and decided promptly. *See* 28 U.S.C. §§ 2241, 2243; *see also Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 490 (1973) (noting interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement") (internal quotation marks omitted); *Yong*, 208 F.3d at 1120 ("[H]abeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy.") (citing cases).

Petitioner Zalita has been in prison for over six years without charge or trial and this case should not be stayed any longer.

## II. THE COURT SHOULD STRIKE THE HAYDEN DECLARATION

On November 19, 2008, two of Petitioner's attorneys who hold security clearances at the "Top Secret//SCI" level requested permission to review the Hayden Declaration, submitted *in camera* and *ex parte*, at the Secure Facility SCIF. The government denied that request without explanation. Accordingly, the Court should strike the Hayden Declaration.

While the government unquestionably has a substantial interest in preventing the unauthorized disclosure of classified information, it should not be permitted to rely on secret evidence to delay Petitioner's habeas hearing any more than it should be permitted to offer secret evidence in support of Petitioner's detention at a habeas hearing. The Supreme Court was clear in *Boumediene v. Bush* that an "adversarial character" is necessary to habeas proceedings. *See* 128 S. Ct. 2229, 2273 (2008). The submission and consideration of a secret declaration deprive Petitioner – and the courts – of the benefits of the adversarial process in habeas. *Cf. Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) ("We think it clear that this court cannot discharge its responsibility . . . unless a petitioner's counsel has access to as much as is practicable of the classified information regarding his client. Counsel simply cannot argue, nor can the court determine, whether a preponderance of the evidence supports the [government's] status determination without seeing all the evidence.").

To the extent the government seeks to delay this case based even in part on the Hayden Declaration, that declaration effectively denies Petitioner habeas relief. The government's proposed delay is substantive, not procedural. In other words, delay means more indefinite detention, and that *itself* is the harm that the instant habeas petition was filed in order to remedy three and a half years ago. So grievous is that harm, and so fundamental the right to be protected from it, that the right to impair habeas corpus is limited by the Suspension Clause of the Constitution. Even an adjudicated criminal alien who has never made an entry into the United States, and has no right in law to be here, must be released into the United States when faced with the prospect of indefinite detention. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005). Indeed, the need for a prompt hearing is never greater than where, as here, a petitioner has been afforded no prior judicial review. *See Boumediene*, 128 S. Ct. at 2267 ("[C]ommon-law habeas

was, above all, an adaptable remedy. . . . It appears that the common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention."); *id.* at 2269 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. . . . The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. . . . [T]he writ must be effective."); *Rasul v. Bush*, 542 U.S. 466, 473-75 (2004); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (recognizing if delay in deciding habeas petitions were routinely permissible, absent good reason, "the function of the Great Writ would be eviscerated"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate for any delay.").

Moreover, the government should not be permitted to rely on an *ex parte* classified document without establishing good cause to believe that disclosure of the secret information to security-cleared counsel for the detainees would actually threaten national security. The mere invocation of "national security" is insufficient to prolong the already indefinite detentions of Petitioner or the other detainees. Nor would absolute judicial deference on such matters of national security be consistent with the separation of powers. *See Coldiron v. DOJ*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) ("No matter how much a court defers to an agency, its review is not vacuous. An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.'") (citations and internal quotation marks omitted); *Boumediene*, 128 S. Ct. at 2277 ("Security subsists, too, in fidelity to freedom's first principles. . . . Within the

Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person.").

### III. THIS CASE SHOULD BE TRANSFERRED TO THE MERITS JUDGE FOR ALL FURTHER PROCEEDINGS

This case was initially transferred to Judge Hogan for coordination and management, including extensive briefing on the procedural framework for adjudicating detainee habeas cases. The CMO established a framework to govern these cases, and indicated that the judges of this court may alter that framework based on the particular facts and circumstances of their individual cases. Proceeding on an individual case-by-case basis is the only practical way that the detainee cases will be resolved expeditiously as required by *Boumediene* and the Habeas Corpus Statute.

The government's request for certification of these issues for immediate interlocutory appeal should also be rejected. During our initial post-*Boumediene* discussions with Chief Judge Lamberth and Judge Hogan regarding the expected progress of these cases, undersigned counsel predicted that the government would use the first common ruling from a coordinating judge in these cases as an occasion to further delay the resolution of these individual petitions by pursuing interlocutory appeal. As predicted, exactly that has happened here. The Court should reject certification in light of the Supreme Court's imperative to expedite these cases.

Accordingly, Petitioner requests that this case be transferred back to the Merits Judge for all further proceedings. The Merits Judge is best suited to address those issues in the context of this case and ensure that this case is resolved "as expeditiously as possible as required by the Supreme Court in *Boumediene v. Bush*." Resolution of the Executive Session (D.D.C. July 1, 2008).

Date: New York, New York
November 26, 2008

Respectfully submitted,

Counsel for Petitioner:

_____/s/sdk_____

Shayana Kadidal (D.C. Bar No. 454248)
Gitanjali S. Gutierrez (pursuant to LCvR 83.2(g))
J. Wells Dixon (pursuant to LCvR 83.2(g))
Pardiss Kebriaei (pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6499
kadidal@ccrjustice.org

George Daly
139 Altondale Avenue
Charlotte , NC 28207
Tel: (704) 333-5196
Email: gdaly1@bellsouth.net

Jeffrey J. Davis
400 North Church Street #222
Charlotte, North Carolina 28202
Tel: (704) 661-5244

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____ x
                                    :
                                    :
IN RE:                              :
                                    :
GUANTÁNAMO BAY                      :   Misc. No. 08-442 (TFH)
DETAINEE LITIGATION                 :
                                    :
_____ x
                                    :
                                    :
ZALITA,                             :
                                    :
                                    :
              Petitioner,           :
                                    :
       v.                           :   Civil Action No. 05-1220 (RMU)
                                    :
GEORGE W. BUSH, et al.,             :
                                    :
              Respondents.          :
                                    :
_____ x
```

**[PROPOSED] ORDER**

Having considered the submissions of the parties in the above-captioned matter, the Court rules as follows:

For the reasons set forth in Petitioner's cross-motion to strike the declaration of CIA Director Michael V. Hayden, submitted *in camera* and *ex parte* (misc. dkt. no. 1005), the motion is hereby GRANTED, and it is FURTHER ORDERED that the declaration shall not be considered in connection with Respondents' Motion for Clarification and Reconsideration of This Court's Nov. 6, 2008 Case Management Order (Dkt. 1004) in the Guantánamo Bay habeas cases;

It is FURTHER ORDERED that Respondents' Motion for Clarification and Reconsideration of This Court's Nov. 6, 2008 Case Management Order (Dkt. 1004) is DENIED;

It is FURTHER ORDERED that Respondents' alternative Motion for Certification for Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the Motion and Any Appeal (Dkt. 1004) is DENIED; and

It is FURTHER ORDERED that this case be transferred back to Judge Urbina for all further proceedings.

SO ORDERED, this ___ day of _____ 2008, at Washington, D.C.

_____
Hon. Thomas F. Hogan
United States District Judge