# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br>GUANTANAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-442 (TFH)<br><br>Civil Action Nos.<br><br>02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0998, 05-cv-0999, 05-cv-1048, 05-cv-1189, 05-cv-1124, 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457, 05-cv-1458, 05-cv-1487, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1505, 05-cv-1506, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1971, 05-cv-1983, 05-cv-2010, 05-cv-2088, 05-cv-2104, 05-cv-2185, 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2384, 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2444, 05-cv-2479, 06-cv-0618, 06-cv-1668, 06-cv-1684, 06-cv-1690, 06-cv-1758, 06-cv-1761, 06-cv-1765, 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, 08-cv-0987, 08-cv-1101, 08-cv-1104, 08-cv-1153, 08-cv-1185, 08-cv-1207, 08-cv-1221, 08-cv-1223, 08-cv-1224, 08-cv-1228, 08-cv-1230, 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, 08-cv-1360, 08-cv-1440, 08-cv-1733, 08-cv-1789, 08-cv-1805 |

**RESPONDENTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION
FOR CLARIFICATION AND RECONSIDERATION OF THIS COURT'S
NOVEMBER 6, 2008 CASE MANAGEMENT ORDER AND SUPPLEMENTAL
AMENDED ORDERS OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION
FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND TO STAY CERTAIN
OBLIGATIONS PENDING RESOLUTION OF THE MOTION AND ANY APPEAL**

Respondents hereby submit, pursuant to the Court's minute order of November 28, 2008,

this consolidated reply memorandum in support of their Motion for Clarification and

Reconsideration of this Court's November 6, 2008 Case Management Order and Supplemental

Amended Orders or, in the Alternative, Motion for Certification for Appeal Pursuant to

28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the Motion and any Appeal. (Dkt. 1004 in 08-mc-442) ("Motion for Reconsideration").[1]

### A. Reconsideration is proper in light of the harm to national security and the unprecedented burdens that the CMO would impose, many of which had not previously been addressed.

A number of petitioners argue that reconsideration under Federal Rule of Civil Procedure 54(b) is not warranted because there has been no change in facts or law. However, many of the provisions adopted in the Case Management Order (Dkt. 940 in 08-mc-442) ("CMO") – including the schedule in which the CMO imposes numerous unprecedented burdens on the government's military and intelligence apparatus during a time of war – had not been fully briefed by the parties. The Motion for Reconsideration provided the government with its first opportunity to address the specific concerns raised therein to the Court. Obviously, the government had no occasion to seek clarification of various provisions until the CMO was issued. Similarly, the CMO establishes a set of deadlines for the filing of unclassified returns, provision of exculpatory evidence, answering of discovery requests, filing of motions on presumption and hearsay, and merits briefing, all while the government continues to file factual returns. The Court requested briefing before issuing the CMO on whether certain of these underlying procedural issues were "amenable to common resolution" and how they should be resolved, but did not request briefing on the scheduling issues, Scheduling Order ¶ 3 (Dkt. 53 in 08-mc-442), and the timeline created by the CMO presents new issues not previously addressed. Moreover, petitioners did not request any automatic discovery, but instead only sought

---

[1] Several petitioners have filed cross-motions as part of their oppositions seeking various forms of relief in addition to denial of the Motion for Reconsideration, such as transfer of specific cases to the appropriate merits judge for all purposes. This memorandum also serves as respondents' opposition to these motions.

"discovery through leave of court based on the needs in a particular case." Pet'rs' Framework Br. (Dkt. 206 in 08-mc-0442) at 2. Indeed, neither the habeas statute nor rules contemplate any discovery in habeas cases except by leave of the court. Thus, the Government plainly had no occasion to address the burdens presented by ¶ I.E.1 of the CMO. Similarly, petitioners did not seek the kind of broad provision of substitutes for classified evidence to the detainees themselves, but recognized that courts could protect national security interests by "for example, providing information only to counsel with security clearances or by adapting procedures under the Classified Information Procedures Act." Pet'rs' Framework Br. 29. Again, the Government had no occasion to address the impacts of requirements such as those imposed by ¶ I.F of the CMO. Thus, the requirements for reconsideration are plainly met. *See* Fed. R. Civ. P. 54(b); *APCC Servs., Inc. v. AT & T Corp.*, 281 F. Supp. 2d 41, 44 (D.D.C. 2003) (allowing for reconsideration "as justice requires"); *In re Vitamins Antitrust Litig.*, 2000 WL 34230081, *1 (D.D.C. 2000) (Hogan, J.) (allowing for reconsideration upon previously unavailable evidence or "where the initial decision was clearly erroneous and would work a manifest injustice" (internal quotations omitted)).

Reconsideration is also justified by the Court's changed awareness of circumstances, even if the circumstances themselves remain the same. *Judicial Watch*, 466 F. Supp. 2d at 124 (granting intervenor's motion for reconsideration based in part on the defendant's failure to provide complete notice of relevant circumstances to the Court). When the government briefed the Court on July 25, 2008 concerning procedural framework issues, it had no occasion to address the practical difficulty it would face if required to provide broad discovery and litigate these cases on the type of schedule imposed by the CMO. Thus, the Court was not fully apprised of these issues when it issued the CMO, and reconsideration is warranted so that the Court can

properly evaluate the evidence of these difficulties, as presented in the Motion for Reconsideration.

> B. **Clarification and reconsideration is warranted based on the potential harm to national security.**

As argued extensively in the government's Brief Regarding Procedural Framework Issues (Dkt. 205 in 08-mc-0442) ("Framework Brief") and Motion for Reconsideration, petitioners have no constitutional entitlement to disclosure of exculpatory information, much less discovery, and certainly not automatic discovery. Petitioners cite no authority to the contrary. Indeed, as petitioners conceded in their own framework brief, to the extent they have any entitlement to discovery, it is governed by the habeas statute and rules, which only provide for discovery with leave of the court. *See* Pet'rs' Framework Br. 18. Moreover, petitioners gloss over the difficulties in balancing the government's duty to protect classified intelligence (and the assets used to acquire that intelligence) from improper disclosure that would endanger national security interests and its duty to present, consistent with the currently governing legal landscape, the most appropriate case to ensure that those held as enemy combatants do not return to fight the United States or its allies.

Petitioners make no real effort to dispute that these broad disclosure requirements will place enormous burdens on the government.[2] Rather, they say that any such burden is of the government's own making. Even a cursory reading of the declaration of Deputy Secretary of Defense England (attached to the Motion for Reconsideration) demonstrates that the government

---

[2] Some petitioners assert that the government's ability to produce discovery and exculpatory evidence in a few other cases demonstrates the government's ability to comply with the much broader disclosure obligations imposed by the CMO. *See* Pet'rs' Opp'n (Dkt. 1092 in 08-mc-442) at 5. The difference between the burden imposed by discovery already undertaken in a handful of cases and that ordered by the CMO (to be produced within a mere 14 days for 101 petitioners) is self-evident.

did not, as some petitioners recklessly assert, "elect[] not to conduct a thorough review of the information available to them," Pet'rs' Opp'n. to Mot. for Recons. (Dkt. 1092 in 08-mc-442) at 6. The government focused its preparation of factual returns (and the search for exculpatory information) on those sources of information most likely to provide comprehensive information on the detainees – namely the records of the Combatant Status Review Tribunal (CSRT) and Administrative Review Board (ARB) proceedings and information collected by the Joint Intelligence Group. England Decl. ¶ 5. These are the product of hundreds of thousands of man-hours of work. *Id*. ¶ 6. The government has diligently prepared factual returns at a breakneck pace and provided – and will continue to provide – petitioners with substantial exculpatory information. The exculpatory material provided with the factual returns is a product of all the material that attorneys reviewed during the creation of those returns – the "most complete, readily available source of exculpatory information on the detainee[s]" – and is not limited to that available at the time CSRT records were generated, which themselves included exculpatory information. *See id*. ¶¶ 6-8, 12; *id*., Ex. A, McGarrah Decl. of May 31, 2007 ¶¶ 4, 6, 10.a. Therefore, the government seeks clarification that information requiring "a number of months and an enormous commitment of DoD resources [to retrieve] and [that] would likely result in only a marginal increase in distinct materials," England Decl. ¶ 13, is not "reasonably available."

Similarly, petitioners cannot credibly contest that the treatment of classified information set forth in ¶ I.F of the CMO – which requires Respondents to provide Petitioners *themselves* with "an adequate substitute" of every piece of classified information produced under ¶ I.D and ¶ I.E., regardless of whether that information is material or relevant to the disputed issues in the habeas litigation – raises substantial national security concerns. Indeed, ¶ I.F. sweeps more broadly than anything even contemplated by petitioners themselves in briefing these framework issues. *See* Petr. Framework Br. 29 (suggesting protection of national security interests by

"providing information only to counsel with security clearances or by adapting procedures under the Classified Information Procedures Act ("CIPA")"). Petitioners have unprecedented access to classified information by virtue of cleared counsel who may review it on their behalf, and have no entitlement (constitutional or otherwise) to an unclassified substitute for that information even if it were possible to provide one. *See* Mot. for Recons. at 21-24. Indeed, the CMO provides greater access to classified information (or "an adequate substitute") than the access provided to criminal defendants under CIPA, which requires the district court to make a *specific* finding that the classified information is material to the case before the government is even required to consider creating a substitute. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Further, the burden on preparing substitutes will be tremendous and would necessarily delay resolution of these cases on the merits for many months. *See* England Decl. ¶ 19; Hayden Decl.; Mueller Decl.[3]

Nothing in petitioners' oppositions refutes the fact that the diversion of available intelligence and military resources from their prosecution of two wars (not to mention their efforts to produce factual returns in a timely fashion and carry out other litigation tasks) and the risk of improper disclosure of classified information – a risk magnified by the broad scope and impossibly rapid rate of disclosure required by the CMO – both endanger national security.

---

[3] To be sure, when the government seeks to rely affirmatively upon sensitive classified information *ex parte*, the government will necessarily share that information with the Court. In some cases, it might be appropriate to develop a substitute to share with cleared counsel. Such issues, however, are appropriately addressed as they arise, consistent with *Bismullah v. Gates*, 501 F.3d 178, 187 (D.C. Cir. 2007).

### C. The issues presented in the Motion for Reconsideration are common to all these cases.

Several petitioners urge the Court, even if it were to grant reconsideration, to deny the requested relief based on the context of individual cases. *See*, *e.g.*, *Chekkouri* Opp'n, (Dkt. 140 in 05-cv-329) at 9-10 (requesting the Court to require the government to demonstrate undue burden in the context of the "specific facts and circumstances of" the individual case). Such a request fails to take into account the fact that the undue burden arises from factors common across the scores of detainees whose petitions are covered by the CMO. As discussed at length in the Motion to Reconsider and the declarations attached thereto, the CMO as issued would impose enormous burdens "on the intelligence agencies and military personnel who are directly involved in intelligence and military operations in at least two ongoing armed conflicts." Mot. for Recons. at 1. These burdens arise from the long lead time needed to conduct searches and manually cull non-responsive documents across multiple agencies, *id*. at 9, 16-17, the necessity of reviewing and obtaining clearance for use of documents from multiple agencies, *id*. at 10, the difficulty faced by agencies fighting a war in determining whether they possess responsive materials, *id*. at 15, and the need to protect intelligence sources and methods, *id*. at 18-19. These factors – and the harm to national security from the broad and unnecessary disclosure of the large amounts of classified information – are common across all these cases, and should be addressed in a common manner.

These harms are fully explained in the Motion for Reconsideration and the declarations attached thereto, especially the Hayden Declaration, submitted *in camera* and *ex parte*. Several petitioners have urged the Court to strike the Hayden Declaration, asserting that their counsels' security clearance entitles them to the information contained therein. The declaration explains to the Court why the information therein cannot be released outside the government, even to those

with Top Secret/Sensitive Compartmented Information clearance. This Court has recognized the necessity of *in camera*, *ex parte* submissions in these proceedings. *See* Protective Order of Sept. 11, 2008 (Dkt. 409 in 08-mc-442) at ¶ 48.b ("[N]othing herein prohibits the government from submitting classified information to the Court *in camera* or *ex parte* in these proceedings or entitles petitioners or petitioners' counsel access to such submissions or information."). Indeed, this Court has relied on such *ex parte*, *in camera* declarations when assessing the burdens imposed on the government by these proceedings.[4] *See*, *e.g.*, Mem. Op. of Sept. 19, 2008 at 4. The Court should do so here as well.

Moreover, resolving all discovery issues under the framework set forth in ¶ I.E.2 of the CMO better accommodates those factors that are individually applicable to specific cases. For example, there is no materiality or relevance requirement for several of the automatic discovery obligations imposed by the CMO on the government. CMO ¶¶ I.E.1, I.F. Thus, the global rule imposed by the CMO contemplates automatic disclosure of information that will have no bearing on many individual cases but be tremendously burdensome on the government. Although the

---

[4] This Court's reliance on *ex parte*, *in camera* submissions is consistent with the D.C. Circuit's decision in *Bismullah*. The *Bismullah* decision explicitly allowed the *ex parte*, *in camera* consideration of particularly sensitive classified information during appellate review under the Detainee Treatment Act even when directly relevant to the questions to be decided by the court. *See id*. at 187 (explaining that petitioner's counsel would have "access to *as much as is practical* of the classified information regarding his client" but that "highly sensitive information" need not be "disclose[d] . . . to counsel") (emphasis added). "The court does not require . . . disclos[ure of] such information to counsel because, consistent with our rule of deference, '[i]t is within the role of the executive to acquire and exercise the expertise of protecting national security. It is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role.'" *Id*. at 187-88 (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 932 (D.C.Cir.2003)). That portion of the *Bismullah* decision was not appealed by any party in that case and is not the subject of the pending *Bismullah* rehearing petition.

government believes that no discovery is appropriate in these wartime habeas cases,[5] its alternative model – providing for automatic disclosure of exculpatory material discovered by the government's attorneys preparing the factual returns and for additional discovery for good cause as contemplated by ¶ I.E.2 of the CMO – is more tailored to the individual, case-specific determinations petitioners seek. Petitioners cannot credibly argue that such a discovery model would hinder their ability to receive meaningful habeas review. Judge Leon entered a case management order granting only two types of discovery: exculpatory material discovered by attorneys in preparing returns or preparing for hearings and discovery "obtained by leave of the Court for good cause shown." *Boumediene v. Bush*, Case Mgmt. Order of Aug. 27, 2008 (Dkt. 142 in 04-cv-1166) at ¶¶ I.D, I.E (attached as Exhibit A).[6] Judge Leon's model allowed the parties to focus their disputes on the key evidence in the case and allowed the government to focus its resources on tailored discovery requests which might have material effect on a specific petition and which can be reviewed by a court for materiality, rather than expending its limited intelligence resources – the same resources currently used to wage war – to locate and clear information for hundreds of petitioners, regardless of materiality.

Contrary to the assertions of many petitioners, the government is not seeking to adjudicate all these cases with a one-size-fits-all approach. Rather, the government is seeking

---

[5] The government does not waive its argument that discovery is appropriate in these cases. The constitutional habeas right does not require discovery. Indeed, even in modern statutory habeas cases, discovery is entirely discretionary. *See Harris v. Nelson*, 394 U.S. 286, 300 (1969); Habeas R. 6(a).

[6] Judge Leon has recently entered substantially similar case management orders in seven other detainee cases pending before him. Several petitioners suggest that Judge Leon's cases are proceeding more quickly than the consolidated cases. This no doubt partly arises from the limitations he imposed on discovery, which are akin to those reflected in ¶ I.E.2 of the CMO. However, only one of Judge Leon's cases (involving six petitioners) has proceeded to a determination on the merits.

reconsideration of the sweeping, one-size-fits-all approach to discovery reflected in the problematic provisions of the CMO– which if implemented, would require months of delay in the adjudication of these cases – while also seeking common adjudication of common issues.[7]

Indeed, several common legal issues remain appropriate for common resolution. The appropriateness of any presumption afforded the Government's evidence and the use of hearsay, as well as the standard by which evidentiary hearings will be permitted, are all common legal issues in which the government would make common arguments across the cases. Thus, as set forth in the Motion for Reconsideration, the court should reconsider these issues and order

---

[7] Petitioners' arguments regarding Local Rule 7(m) demonstrate their confusion regarding what issues can be addressed in a consolidated fashion. Far from being a reason to deny respondents' motion, respondents' difficulties carrying out Local Rule 7(m) illustrate the impracticality of proceeding under the CMO and of leaving significant common issues for initial decision by individual merits judges.
    Petitioners argue that respondents should have individually conferred, in person or by telephone, with the dozens of counsel involved in these dozens of cases. Such individualized negotiations would have defeated the purpose of consolidating filing – the efficient resolution of common issues. Conducting individual negotiations with all attorneys involved would have greatly delayed the filing of the Motion for Reconsideration. Conducting such negotiations in a timely fashion would have required an army of attorneys and could have adversely impacted respondents' ability to complete factual returns, carry out necessary litigation activities, and otherwise comply with the Court's orders in a timely fashion. By insisting on such negotiations, petitioners completely ignore the extent of the demands already placed on the respondents.
    Moreover, such individualized negotiations could have achieved little. Respondents could not substantially "narrow the areas of disagreement," D.D.C. Civ. R. 7(m), with dozens of counsel with different viewpoints. True, a few petitioners apparently were willing to concede to certain minor modifications to the CMO based on the particularities of their situations. *See, e.g.*, *Alsawam* Opp'n (Dkt. 1072 in 08-mc-442) at 2. These petitioners, however, misinterpret the nature of respondents' motion. Respondents are not seeking reconsideration or certification only in particular cases governed by the CMO, but of the CMO itself. Thus, so long as some petitioners object to an aspect of the respondents' motion, "disagreement" persists in that "area." Moreover, even if respondents feasibly could reach separate agreements which each individual petitioner, doing so would undermine the object of consolidated filing and of the CMO.
    Respondents were able, via email, to inform petitioners' counsel of the nature of the respondents' motion and gauge the extent of their opposition to it. Under the unique and extraordinary circumstances of this litigation, this email communication among counsel was an adequate, reasonable attempt to confer under Local Rule 7(m).

common briefing. Moreover, the government cannot brief, nor can the court adjudicate, the merits of cases involving scores of detainees simultaneously. Even upon resolution of the CMO, the Court retains an important coordination function to ensure that these cases are sequenced – as was the filing of the factual returns – in a manner that ensures both efficient and expeditious resolution. Petitioners offer no argument to the contrary. Thus, as set forth in the Motion for Reconsideration, the Court should coordinate merits proceedings following the filing of traverses at a rate of 25 cases per month (coordinated among the various judges of the Court), in which individual discovery disputes may be addressed and briefing on the merits begun.

> D. **Should the Court deny the Motion for Reconsideration, certification for interlocutory appeal is appropriate.**

Several of the petitioners' oppositions to the Motion for Reconsideration attempt to dismiss any possibility of interlocutory appeal of discovery orders, citing for that proposition *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 23 (D.D.C. 2002). This analysis fails to account for the unique and extraordinary situation created by the CMO: the potential Court-ordered disclosure – to the Court or to petitioners' counsel – of thousands of classified documents on an impracticable schedule. Because the harm at issue here – inappropriate disclosure of classified materials[8] – is not redressable on appeal, interlocutory appeal is appropriate. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003); *cf. Judicial Watch v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d at 24 (finding that the fact that "defendants offered 'no argument that [they] are even entitled to the privileges'" was sufficient to support the conclusion "that there are no 'extraordinary circumstances' here

---

[8] Contrary to the claims of many petitioners, the CMO orders disclosure of classified information either to the Court or to petitioners' counsel and, on its face, provides no mechanism by which the government can avoid or contest such disclosure. *See* CMO ¶ I.F.

11

requiring resolution on interlocutory appeal" (quoting *In re Executive Office of the President*, 215 F.3d 20, 23-24 (D.C.Cir.2000))).

Petitioners, respondents, and the Court all find themselves on untrodden ground.[9] The extraordinary circumstances presented by scores of cases involving hundreds of detainees create a situation the public moment of which is unparalleled in the history of the Republic. Unsurprisingly, given the lack of clear mandates from higher courts, a substantial difference in opinion exists, even amongst the judges of this Court, concerning the proper framework for adjudicating these petitions. Resolving the issues quickly and definitively will ultimately advance a timely resolution of this litigation. Accordingly, in the event the Court does not grant the requested clarification and reconsideration of the CMO, the government respectfully requests that the Court certify this matter for highly expedited appellate review to avoid contradictory outcomes on the core framework issues that will have to be resolved on appeal after discovery and hearings in the many cases before the Court.

\* \* \*

The government is acutely aware of the need to adjudicate these cases expeditiously. However, it is also bound to protect classified intelligence information, and the methods and sources used to acquire it, from improper disclosure. Both goals are best accomplished by the

---

[9] At least one petitioner raises the unprecedented nature of these cases as a reason to deny certification. *Al Sanani* Opp'n (Dkt. 1081 in 08-mc-442) at 9-10 (citing *In re Vitamins Antitrust Litig.*, 2000 WL 33142129 at \*2 (D.D.C. Nov. 22, 2000) for the proposition that interlocutory appeal is appropriate on an "important issue that many other courts also would face.") Respondents certainly agree that the unprecedented nature of these cases is an appropriate factor for consideration, but submit that petitioners have missed the central point. Interlocutory appeal, should the court decline to modify the CMO as requested by the government, could resolve important issues facing most of the judges of this Court in dozens of cases involving scores of detainees. The fact that these cases are limited to a single district does not lessen the relevance of *Vitamins Antitrust* here.

Court granting the Motion for Reconsideration. The Court should rule on issues common to all cases and also at most provide, where appropriate to the resolution of material issues in individual cases, for measured and targeted discovery, on an achievable schedule, that makes use of the Government's available intelligence personnel and resources in a manner most appropriate in this wartime detention context. Should the Court disagree, it can minimize the possibility of duplicative proceedings by certifying these issues for interlocutory appeal.

Dated: December 3, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

  /s/ Robert J. Prince
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL AHERN
ROBERT J. PRINCE (D.C. Bar No. 975545)
DAVID WHITE
TIMOTHY JOHNSON
KRISTINA WOLFE
JULIE BERMAN
PATRICK DAVIS

Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 305-3654

Attorneys for Respondents