IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ) | |
| **IN RE:** ) | Misc. No. 08-0442 (TFH) |
| **GUANTANAMO BAY** ) | |
| **DETAINEE LITIGATION** ) | Civil Action No. 05-CV-1429 (RMU) |
| ) | |
| _____) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION FOR DISCOVERY**

On November 18, 2008, counsel for Muhammed Salih Hatim ("Petitioner" or

"Detainee") in the above-captioned Guantanamo Bay habeas corpus case filed a motion for

additional discovery ("Petitioners' Motion"), purportedly pursuant to ¶ I.E.2 of the Case

Management Order ("CMO").  Petitioner seeks an Order that would require the Respondents'

(hereinafter, the Government) to respond to three  requests for production and two

interrogatories.  For reasons described below,  many of the CMO's obligations, including all

obligations under ¶ I.E.,  have subsequently been stayed pending resolution of the Government's

motion for clarification or reconsideration.  As a result, the Government need not respond, and

the Court need not consider, the Petitioner's discovery requests until the CMO is settled and the

framework for proceeding in these cases is established.  But even if the Court were to consider

the Petitioner's requests, they would fail under the plain terms of the CMO.  Although couched

as a request under CMO ¶ I.E.2,  the Petitioner seeks, in essence, to extend the automatic

discovery of CMO ¶ I.E.1 and, indeed, in some instances the Petitioner seeks disclosure

exceeding even the automatic discovery that the CMO requires under ¶ I.E.1.

## **Background**

On November 6, 2008, the Court entered a Case Management Order, Dkt. No. 940 (08-MC-0442), to provide a general framework for litigation of the habeas cases before the Court, including a framework for how discovery should proceed. The CMO provided for automatic discovery of documents or objects referenced in the factual return. CMO ¶ I.E.1(1). In addition, it requires the disclosure of certain material related only to the petitioner:" all statements, in whatever form, made or adopted by the petitioner that relate to the information contained in the factual return, CMO ¶ I.E.1(2), and "information about the circumstances in which such statements of the petitioner were made or adopted." CMO ¶ I.E.1(3).

Apart from these requirements for automatic disclosure the Court set forth standards that a petitioner must meet before any additional discovery may be authorized. Under paragraph I.E.2., the CMO requires that discovery requests:

> (1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention; and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting of unduly burdening the government.

CMO ¶ I.E.2(citations omitted)

Petitioner filed his discovery motion, purportedly under ¶ I.E.2., on November 18, 2008.

Also on November 18, 2008, the Government moved for clarification and reconsideration of the CMO, and, in the alternative, certification and a stay of certain obligations under the CMO pending the resolution of the issues raised in its motion. *See* The Government's Motion For Clarification and Reconsideration of This Court's November 6, 2008 Case Management Order and Supplemental Amended Orders or, in the Alternative, Motion For Certification For Appeal

Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain Obligations Pending Resolution of the

Motion and Any Appeal, Dkt. No. 1004 (08-MC-442) ("Motion for Clarification"). The Motion

for Clarification challenged the automatic discovery provisions applied to these wartime habeas

cases as, among other things, broader even than the disclosure requirements afforded to domestic

criminal defendants. Moreover, the Motion detailed the impracticality of compliance with the

CMO, as explained through sworn declarations from Gordon England, the Deputy Secretary of

Defense ("England Decl."), Robert Mueller, III, the Director, Federal Bureau of Investigation

("Mueller Decl.") and Michael V. Hayden, the Director of Central Intelligence (whose

declaration was submitted *in camera* and *ex parte*). Among other topics, the Declarations

addressed the vast amount of resources already committed to the Guantanamo Bay habeas cases,

and how additional resource requirements were likely to impact on the primary missions of the

Department of Defense ("DOD") and the FBI.

On November 21, 2008, the Court stayed many of the Government's discovery

obligations under the CMO. *See* Order of November 21, 2008, Dkt. No. 1026 (08-MC-442)

("Stay"). Specifically, the Stay provides that the due dates imposed by paragraphs I.C, I.D, I.E,

I.F, II.B, II.C, and III.A of the CMO be stayed pending resolution of the issues raised in the

Motion for Clarification.

## ARGUMENT

**The Stay Suspended Government's Discovery Obligations Under the CMO, and the
Government Is Not Required to Respond to Petitioner's Discovery Request
<u>Until the Framework for Proceeding is Resolved</u>**

In its Motion For Clarification, the Government explained the legal challenges posed by

the CMO and addressed the burdens resulting from automatic discovery under CMO ¶ I.E.1 and

discovery for good cause under CMO ¶ I.E.2, as well as addressing the impact those burdens

would have on government agencies. *See* Motion for Clarification, Dkt. No. 1004 at 15-19 (08-

MC-442); England Decl. ¶ 9, 21; Mueller Decl. ¶ 16.[1]  The Court's initial response to the Motion

For Clarification has been the Stay Order.  That Order provides that the "due dates imposed by

paragraphs I.C, I.D, I.E, I.F, II.B, II.C, and III.A [of the CMO] be stayed pending resolution of

the Motion [for Clarification]."  Stay, Dkt. No. 1026 (08-MC-442).  By staying the due dates

under the entirety of paragraph I.E., the Court effectively stayed all of the Government's

discovery obligations, including obligations to oppose or respond to Petitioner's request here.

Given this stay, the Court certainly need not and should not address the Petitioner's discovery

requests at this time.

Indeed, there are sound prudential reasons for this Court to decline to consider the

Petitioner's broad ranging discovery requests at this time.  The CMO, and the challenge to that

Order in the Motion for Clarification, are addressed to a general and comprehensive procedural

framework for litigating these wartime habeas cases.  The obligations and deadlines set forth in

the CMO are interrelated—especially so in the context presented here where, as detailed below,

the Petitioner seeks effectively to extend the CMO's automatic disclosure obligations in the

guise of a ¶ I.E.2. request.  Resolution of the issues raised in the Motion for Clarification might

well result in changes to the overall procedural framework that include significant modifications

to the regime for discovery outlined in ¶ I.E. 1 and 2.  Accordingly, until the issues raised in the

Motion for Clarification are resolved, it would be inefficient for the Court to consider the

---

[1] As stated in the Motion for Clarification, the Government does not concede that any
discovery is appropriate in these wartime habeas cases.  However, if any discovery is to be
allowed in this context, it should be pursuant to the restrictions set forth in ¶ I.E.2 of the CMO.

Petitioner's request at this time. Moreover, given the nature of any disclosures that might be ordered in this case—by necessity involving the release of classified information—a prudent and incremental approach counsels against considering the Petitioner's request until the litigation framework is settled. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 513-514 (2004).

**Petitioner's Requests Fail to Specify the Discovery
<u>Sought and Are Not Narrowly Tailored</u>**

Even if this Court were to consider Petitioner's requests under CMO ¶ I.E.2, it should deny the Petitioner's motion because the requests do not meet the standard for obtaining discovery under that paragraph. Far from being narrowly tailored or specifying the discovery sought, many of the Petitioner's requests simply seek to import the automatic disclosures required by the CMO, for information related to the Petitioner, to another context entirely. That is, Petitioner here asks the Court to turn the automatic discovery involving the Petitioner's statements into a requirement that the Government provide all information relating to *third-party* statements. Consider, for example, the language of paragraph I.E.1 of the CMO when compared to the Petitioner's requests, ostensibly pursuant to paragraph I.E.2:

> CMO ¶ I.E.1(2)
> [T]he government shall disclose to the petitioner . . . all statements, in whatever form, made or adopted by the petitioner that relate to the information contained in the factual return . . .
>
> Petitioner's Request for Discovery 1
> All statements, in whatever form . . . made or adopted by another individual that relate to any of the information contained in the Factual Return . . .
>
> CMO ¶ I.E.1(3)
> [T]he government shall disclose to the petitioner . . . information about the circumstances in which such statements of the petitioner were made or adopted . . .

5

Petitioner's Request for Discovery 2

> All documents containing information as to the circumstances in
> which such statements were made or adopted.

And in parallel fashion, by Interrogatory 1, Petitioner demands that the Government:

> Identify and describe: (a) all statements, made or adopted by
> another individual that relate to any of the information contained in
> the Factual Return . . . ; and (b) all documents containing
> information as to the circumstances in which such statements were
> made or adopted.

*See* Petitioner's Request For Discovery, Interrogatory 1.[2]  Apart from these blanket requests repeating the language of paragraph I.E.1, the Petitioner offers no rationale for seeking such broad-ranging discovery.  His request would not be viable under any reading of the CMO as it stands.  If the Court had intended Petitioner to receive this type of third-party statement discovery, it would simply have extended the provisions of CMO ¶ I.E.1 to reference third-party statements.  The Court did not do that.  Rather, the CMO expressly limits such discovery, absent a showing of good cause, to disclosures related to the *petitioner's* statements.  For reasons discussed in the Motion for Clarification, even this requirement is overbroad, but there certainly is no basis in the CMO for extending the automatic discovery of the requested information to third-party statements, absent the particularized showings required by CMO ¶ I.E.2.

---

[2] The balance of Petitioner's requests—Request 3 and Interrogatory 2—find no precedent elsewhere in the CMO.  They seek information about "all documents containing information relating to" or "all" "fees, bounties, or other monetary or non-monetary remuneration or consideration given to third parties for the apprehension, transfer in the Government's custody, or investigation of the  Petitioner, including but not limited to payments, gifts, loans, promises of leniency, preferential treatment, release, reduction in charges, or improvements in conditions of detention given to third parties."  Such requests are, in some respect, an attempt to obtain discovery in these wartime habeas cases that is akin to that required by *Giglio v. United States*, 405 U.S. 150 (1972), in the criminal context.

In paragraph I.E.2, the CMO places the burden on the petitioner to meet four distinct requirements, encompassing precise standards, before discovery may be authorized "for good cause." *See* CMO ¶ I.E.2. The first two requirements under CMO ¶ I.E.2. are that petitioners (a) specify the discovery sought and (b) offer a request that is narrowly tailored and not open-ended. Here, Petitioner's third-party-statement requests are expansive, open-ended "form" document requests and "form" interrogatories. On their face, the Petitioner's form requests do not meet the first two CMO standards.

Petitioner here has issued open-ended requests. Instead of focusing the inquiry and limiting their requests as contemplated by ¶ I.E.2, the Petitioner has used qualifying language ("any," "all") that actually broadens the scope of their requests. More problematically, they tied this broad language to broad categories of information. See Request 1, Interrogatory 1 (seeking information for "all" statements" "related to *any* information in the Factual Return") (emphasis added). . Similarly, in his inducement request, Petitioner fails to specify with any particularity what statements he seeks.

Apart from this failure to narrowly tailor their requests, the requested discovery would pose extreme burdens on the Government. Given that the Petitioner has issued open-ended requests, it is difficult to even estimate the resources required to find potentially responsive documents and attempt to comply with these requests. *See* England Decl. at ¶ 11-14; Mueller Decl. at ¶ 5-12. Even if the affected agencies were able to produce all potentially responsive documents, other personnel would still need to review those documents to determine which, if any, are responsive. *See* England Decl. ¶15; Mueller Decl. ¶ 14-15. As explained in detail by Deputy Secretary of Defense England, thousands of hours would be required to find documents

potentially responsive to broad requests, with even more resources devoted to culling through the documents. England Decl. ¶ 14. Similarly, FBI Director Robert Mueller has explained in detail the challenges associated with his agency's conduct of electronic searches of potentially responsive documents, and the manpower requirements, on top of that, needed to review the documents. Mueller Decl. ¶ 6, 14-15.

The impractical and unworkable nature or these tasks is driven by the fact that Petitioner opted for the open-ended approach to discovery and not the more specific approach required by the CMO. Additionally, as will be addressed further below, the lack of specificity in Petitioner's requests suggests that Petitioner did not focus his requests on information that would be material to the key issues before the court in these habeas proceedings.[3]

## The Requests are Not Likely to Produce Evidence Relating to the Lawfulness of Detention

The third requirement under CMO ¶ I.E.2. is for materiality, requiring that Petitioner explain why the request, if granted, is likely to produce evidence that demonstrates the Petitioner's detention is unlawful. CMO ¶ I.E.2.(3). Petitioner has failed to meet his burden of demonstrating materiality because they have made absolutely no showing that any of their requested discovery is likely to demonstrate the unlawfulness of their detention.

With respect to their requests seeking the disclosure of third-party statements, the circumstances of those statements and "inducements" related to those statements, the Petitioner

---

[3] To the extent that Petitioner's requests are drafted in the same overly broad, non-tailored style that might be commonplace for discovery under the Federal Rules of Civil Procedure, they have no place in these in these constitutional habeas cases. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.") Petitioner has failed to make specific discovery requests narrowly tailored to information in the factual returns filed by the Government and his requests fail to meet the plain terms of CMO ¶I.E.2.

seeks disclosure of material "related" to information in the factual return. The request does not specify which statements the Petitioner seeks, and the sole justification for seeking such information is that "statements made by third parties in Guantanamo cases have been shown in the past to be unreliable." Petitioner's Motion at 1. This is not a showing of materiality—it is simply speculation. Indeed, this is exactly the type of fishing for evidence that "might" be helpful that the CMO sought to avoid. Granting such a request, based on pure speculation that it might yield material information, would effectively nullify paragraph I.E.2 of the CMO.

Similarly, Petitioner has failed to show materiality with respect to their requests concerning the circumstances of his apprehension (Request 3 and Interrogatory 2). His sole rationale for such requests is that the Petitioner wishes to "evaluate fully the facts surrounding the Petitioner's apprehension." Petitioner's Motion at 1. The Petitioner offers no showing that his request will yield information demonstrating that his detention is unlawful. At best, the Petitioner demands broad ranging disclosure so that he can determine whether any of the discovery is material—which turns paragraph I.E.2 on its head. Moreover, the Petitioner makes no showing that information related to his capture is material for proving the lawfulness of his detention. Suffice to say that the circumstances of a detainee's capture do not necessarily relate to the determination that he is an enemy combatant as set forth in an individual factual return. Without any showing that such information is material to an individual detainee, the Petitioner has utterly failed to meet their paragraph I.E.2. burden.

The materiality requirement under ¶ I.E.2 is a critical limiting principle for discovery in these habeas proceedings. *See Hamdi*, 542 U.S. at 532, 535. Petitioner's approach to discovery here is broader even than the discovery that would be authorized in a criminal proceeding, and

thus necessarily inappropriate for these constitutional habeas cases. *Id*. Indeed, the CMO's

materiality requirement is particularly important in this context, in which Petitioner seeks

information that implicates important national security concerns. The Petitioner has not

demonstrated how any of his far-ranging requests would be likely to produce information

demonstrating the unlawfulness of his detention, and thus his motion should be denied.

**Petitioners' Requests Unfairly and Unduly Burden the Government**

The fourth and final requirement under CMO ¶I.E.2 places the burden on petitioners to

show that, on balance, their need for discovery outweighs the unfair disruption and undue burden

to the Government. Here, Petitioner assumes that there will be no burden to the government

because the CMO already requires broad-ranging discovery. Petitioner's Motion at 2 ("the

Government will necessarily have to review the information requested in responding to its

existing discovery and exculpatory evidence obligations.") The Government is, however

challenging the CMO precisely because of the impractical burdens involved in complying with

those requirements. Dkt. No. 1004 at 1, 9 (08-MC-442); England Decl. ¶ 9, 21; Mueller Decl. ¶

16.

Responding to the type of requests Petitioner makes here would result in simultaneous

undue burdens and dangerous disruption to government agencies. As explained in detail in the

Motion for Clarification, having to provide automatic discovery relating to a detainee's own

statements–more limited discovery than the Petitioner seeks here–will result in extensive and

grave problems. Dkt. No. 1004 at 15-17 (08-MC-442); England Decl. ¶11-14; Mueller Decl.

5-15. Automatic discovery under CMO ¶I.E.1. would impose an unprecedented obligation and

would also impose unnecessary burdens that create a risk that of disclosure of secret information

relating to methods used in conducting interviews and acquiring information. Dkt. No. 1004 at 17-19; Mueller Decl. ¶ 16-17. Here, Petitioner seeks discovery that is far beyond, and more extensive than, the discovery that is already beyond what the Government will be able to practically provide. Dkt. No. 1004 at 15-19 (08-MC-442)

Contrary to Petitioner's blanket assertion to the contrary, their broad ranging requests (untethered from any showing of materiality) would pose a significant burden and disrupt the activities of national security agencies. The agencies from which they seek discovery include the FBI, whose mission it is to investigate criminal offenses against the United States, and the Department of Defense, which is principally charged with fighting this war. Dkt. No. 1004 at 15 (08-MC-442). As explained in the Motion for Clarification, there are extensive practical "difficulties and burdens for such organizations in determining whether they possess responsive material let alone [producing it] all while prosecuting multiple armed conflicts and preventing further attacks on the homeland...." Dkt. No. 1004 at 15 (08-MC-442); *See also* Mueller Decl. ¶ 15 ("It is expected that the review would be performed by agents and analysts assigned to the FBI's Counter-terrorism Division, taking them away from daily operational duties.")

On a more specific level, Petitioner has failed to carry their burden with respect to the third-party statements they seek. The Government has demonstrated that requests relating to all of a petitioner's own statements will unduly disrupt and burden national security agencies so the balance under CMO ¶I.E.2 (4) must be struck in favor of the Government and against Petitioner's even more burdensome request relating to third-party statements.

With respect to other specific requests, Petitioner also fails to meet his burden under ¶I.E.2 (4). They fail to show that the information they seek relating to bounties, capture, and

inducements even relates to the lawfulness of their detention. *See supra* at 8-9. On the other hand, the burdens associated with producing such non-material discovery may significantly impair intelligence and military operations. For these requests, the balance of interests under CMO ¶I.E.2(4) cuts decisively in favor of the Government and its agencies, and against any interest Petitioner have been able to demonstrate in obtaining the information.

Finally, Petitioner's request threatens to disrupt government functions with ramifications that extend beyond these habeas proceedings. That is, the third-party statements likely to be of greatest relevance to Petitioner's cases are statements by individuals acting as sources. As explained by FBI Director Mueller in his Declaration in support of the Motion for Clarification:

> Disseminating human source information could reasonably lead to the disclosure of [their] identities because the information provided by human sources is singular in nature. The disclosure of singular information could endanger the life of the source or his/her family or friends, or cause the source to suffer physical or economic harm or ostracism within the community. These consequences, and the inability of the FBI to protect the identities of its human sources, would make it exceptionally more difficult for the FBI and other U.S. intelligence agencies to recruit human sources in the future.

Mueller Decl. ¶ 20. For this additional reason, the balance under CMO ¶I.E.2(4) favors the Government's interests rather than the broad-ranging discovery Petitioner seeks.

## CONCLUSION

For the reasons set forth above, this Court need not consider Petitioner's request for discovery until the issues raised with respect to the CMO are resolved. Further, to the extent the Court considers Petitioner's motion, that motion should be denied because Petitioner has failed to meet the standards and requirements of ¶I.E.2 of the CMO.

Dated: December 4, 2008                    Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

/s/ *David J. Stander*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ANDREW WARDEN
PAUL AHERN
DAVID J. STANDER
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: 202.305.9342