**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) ) ) GUANTANAMO BAY ) DETAINEE LITIGATION ) ) | **Misc. No. 08-442 (TFH)** |
| ) FAWZI KHALID ABDULLAH ) FAHAD AL ODAH, *et al.*, ) ) Petitioners, ) ) v. ) ) UNITED STATES, *et al.*, ) ) Respondents. ) ) | **Civil Action No. CV 02-0828 (CKK)** |

**MEMORANDUM IN OPPOSITION TO RESPONDENTS'
MOTION TO DISMISS HABEAS PETITIONS WITHOUT PREJUDICE
OR, ALTERNATIVELY, TO HOLD PETITIONS IN ABEYANCE PENDING
COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

Petitioners Fouad Mahmoud Al Rabiah ("Al Rabiah") and Fayiz Mohammed Ahmed Al Kandari ("Al Kandari") oppose the government's Motion to Dismiss Habeas Petitions Without Prejudice or, Alternatively, to Hold Petitions in Abeyance ("Motion"). This Court should reject the government's latest effort to further obstruct Petitioners' seventy-eight month old habeas cases.

The government's motion is based on a false factual premise and a frivolous legal position. No charges are pending against Al Rabiah or Al Kandari before any military commission, and the convening authority has yet to make any decision as to whether any charges will be brought before a military commission. More fundamentally, however, the government has consistently asserted that it has the right to continue to detain any Guantanamo detainee

regardless of the outcome of a military commission proceeding against that detainee. *See, e.g., Hamdan v. Rumsfeld*, 548 U.S. 557, 787 (Kennedy, J., concurring) ("[R]egardless of the outcome of the criminal proceedings at issue, the government claims authority to continue to detain [the petitioner] based on his status as an enemy combatant"). The military commissions would therefore be incapable of providing the relief sought in these habeas corpus cases challenging Petitioners' detention as alleged enemy combatants. Moreover, even if the convening authority were to approve military commission charges against Al Rabiah and Kandari, the government has failed to offer any support for its contention that these habeas proceedings will interfere with any such military commission that may someday in the future be convened. Accordingly, this Court should deny the government's motion.

The government's legal argument is equally mendacious. The statutory provisions and case law cited by the government, which concern habeas proceedings following conviction in state court criminal proceedings, have absolutely nothing to do with these habeas petitions filed by prisoners of the executive branch who have been given no judicial hearing or due process whatsoever.

1. On October 21, 2008, Captain J. Robertson, a junior officer in the Office of Military Commissions, signed a charge sheet accusing Al Rabiah of committing offenses under the Military Commissions Act. *See* Motion at Ex. A. Major B. Gleisner, also of the Office of Military Commissions, signed a charge sheet alleging similar charges against Al Kandari, also on October 21, 2008. *See* Motion at Ex. B.[1] The charge sheets were both forwarded to the convening authority, Susan Crawford, the official in the Department of Defense responsible for

---

[1] Despite an instruction on the charge sheets to provide the full name of the accuser, neither officer signed his or her full name.

deciding whether they should actually be referred to a military commission.[2] The convening authority has not yet made a decision.[3] *So far, no charges against Al Rabiah or Al Kandari have been referred to a military commission, no military commission has been convened, and a military commission may never be convened.* Contrary to the government's statement, Petitioners are therefore not "awaiting criminal trial before a military commission." (*See* Motion at 7). A military commission to try Al Rabiah and Al Kandari will not even exist unless and until the convening authority decides to convene one. *See* Rule for Military Commission 504 ("A military commission is created by a convening order of the convening authority").[4]

The government touts the procedural protections allegedly afforded in military commissions, including "a four-step appellate review process" (which the government would no doubt argue must be fully exhausted before Petitioners could bring their habeas petitions again). *See* Motion at 10. But even if such protections were adequate (which they are not), and even if they allowed for the release of detainees who are acquitted or who serve their sentences (which the government claims they do not), they are in no way currently available to Al Rabiah or Al Kandari. There is no military commission to administer those procedures, there may never be one, and there is no judgment to submit to appellate review.

---

[2] There is no precise analogy to the convening authority in civilian criminal procedure. Her responsibilities include deciding whether charges should be referred to a military commission, convening the military commission, including the selection of the panel members, approving any pretrial agreements, and approving the findings and the sentence of the military commission. *See* Rules for Military Commissions 401, 407, 503, 504, 601, 705, 1107. She fills certain roles of the prosecutor, the grand jury, and the judge in a civilian criminal case, but she does not try the case and does not conduct any adversary proceedings.

[3] On December 3, 2008, Major Gleisner signed an amended charge sheet as to Al Kandari. Petitioners' counsel has not been provided with any indication that the amended charge sheet has been forwarded to the convening authority for consideration.

[4] The government points to a provision of the Manual for Military Commissions, promulgated by the Department of Defense, stating that "[t]he jurisdiction of a military commission over an individual attaches upon the swearing of the charges." Rules for Military Commissions, Rule 202(c). The provision is nonsense, because the military commission is a special tribunal that does not even exist until it is convened by the convening authority. A nonexistent court can have no jurisdiction. *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 706-07 (D.C. Cir. 2008) ("It would be absurd to assume that Congress intended to … [grant] jurisdiction to a nonexistent court").

Al Rabiah and Al Kandari, along with the other petitioners in this case, have had their habeas corpus petitions pending for longer than any other detainees still in Guantanamo. They have won twice in the United States Supreme Court. See *Rasul v. Bush*, 542 U.S. 466 (2004); *Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) (declaring their constitutional right to a "prompt" habeas corpus hearing). This Court has issued a Case Management Order governing further proceedings. In the face of it all, the government now takes the extreme and ridiculous position that this Court should dismiss or stay the detainees' habeas corpus cases based solely on the accusations that in these cases were made by two relatively junior officers in the Office of Military Commissions but that could have been brought by anybody subject to the Uniform Code of Military Justice - and that have yet to be reviewed by an official with the authority to decide whether they should be referred to a military commission. To dismiss or stay their habeas petitions based on speculation about what might happen next would be inappropriate and inconsistent with *Boumediene*. The government's desperate ploy for further delay and obstruction should be rejected.

2. Even if the charges against Al Rabiah and Al Kandari are someday referred to a military commission, those charges would still not be a basis to dismiss or stay their habeas cases challenging their detention as alleged enemy combatants. The Petitioners' habeas petitions have nothing to do with the military commission charges.

The government bizarrely relies upon 28 U.S.C. § 2254(b)(1)(A) for the proposition that Petitioners must "exhaust" their remedies in the military commissions process before they may seek habeas review. 28 U.S.C. § 2254(b)(1)(A) has absolutely no connection with military commissions. It provides, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." This statutory

provision clearly has no application to a habeas petitioner detained without any opportunity for judicial review, much less a state court judgment, and who has not been afforded the right to a speedy and public trial.

The cases cited by the government in its Motion are all inapplicable for similar reasons, as they all involve challenges to criminal proceedings in which the defendant had a right to due process through a speedy and public trial, and in which an acquittal would result in the defendant's release. That is to say, the petitioners in all of those cases were confined *because* they were charged or convicted of crimes, and the criminal or appellate courts offered prompt and effective remedies for the petitioners to raise their claims and gain their freedom. There was therefore no need in those cases for pre-exhaustion habeas corpus, because the petitioners had another avenue to be released. The military commissions do not offer such an avenue, and therefore need not be "exhausted" before a person held as an alleged enemy combatant can pursue habeas relief.

In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), for example, the petitioner challenged his confinement based on a state court conviction, but failed to raise his challenge before the state supreme court. The Supreme Court held that the prisoner must exhaust all of his remedies in state court before seeking relief, but the basis for the ruling was that the state had available remedies to address the petitioner's claims. *See O'Sullivan*, 526 U.S. at 843. Similarly, *Gusik v. Schilder*, 340 U.S. 128 (1950), involves a petitioner's failure to exhaust appellate remedies prior to filing a habeas petition challenging a court-martial conviction. Al Rabiah and Al Kandari, on the other hand, have not had any trial or judgment, and have nowhere to go except this Court in order to challenge their detention.

*Schlesinger v. Councilman*, 420 U.S. 738 (1975), did not involve a habeas corpus petition at all, but rather a request for an injunction to stop an ongoing court-martial proceeding. Unlike

5

Al Rabiah and Al Kandari, the plaintiff in *Councilman* was directly challenging the court-martial proceeding that was the sole basis for his detention. Al Rabiah and Al Kandari, on the other hand, are not in pretrial confinement reviewable by a military court, but instead are held in executive detention as "enemy combatants." Moreover, the Supreme Court in *Councilman* specifically recognized that abstention is not required in a case where a challenge is made to the jurisdiction of the military court based on the "status of the persons as to whom the military asserted its power." *Councilman*, 420 U.S. at 759 (citing *Toth v. Quarles*, 350 U.S. 11 (1955); *Reid v. Covert*, 354 U.S. 1 (1957); *McElroy v. Guagliardo*, 361 U.S. 281 (1960)). A military commission has no jurisdiction over a person who is not an unlawful enemy combatant (*see* 10 U.S.C. § 948c), and this Court indisputably has jurisdiction to consider Petitioners' challenges to their alleged status as enemy combatants. *See Boumediene*, 128 S. Ct. at 2275.

A habeas petitioner has no obligation to exhaust a remedy that is not adequate to vindicate the asserted right. *See, e.g., Wilwording v. Swenson*, 404 U.S. 249, 250 (1971). There is no obligation for Petitioners to exhaust their supposed remedies before a military commission when those remedies will not enable them to challenge their detentions. Indeed, the Supreme Court in *Boumediene* has already excused Petitioners from exhausting alternative remedies before pursuing their habeas petitions. *See Boumediene*, 128 S. Ct. at 2275 ("To require these detainees to complete DTA review before proceeding with their habeas corpus actions would be to require additional months, if not years, of delay. … While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody").

3. Finally, the government's motion does not address how the ongoing habeas proceedings would interfere with any military commission proceedings that may (or may not) take place in the future. Petitioners have not asked this Court to review any rulings of a military commission,

and there is no military commission. The government's purported basis for detaining the Petitioners makes no mention of military commission charges or of any allegedly criminal conduct. *See* Statement of Legal Justification for Detention, Docket #402 (Nov. 18, 2008). It alleges only that Petitioners are "enemy combatants" within the government's own proposed definition of that term. *See id.* Petitioners' challenge to the government's basis for detaining them can proceed independently of any military commission.

The government claims that "this Court should not impinge on the military commission process by addressing the legality of preventative detention." Motion at 13. Yet the government admits that the military commission has nothing to do with preventative detention. So the government's argument boils down to an assertion that, by commencing a military commission, a government official can prevent all review of Petitioners' preventative detention, despite the Supreme Court's ruling in *Boumediene* directly to the contrary. *See Boumediene*, 128 S. Ct. at 2275.

The government cites to this Court's decisions in *Hamdan v. Gates*, 565 F. Supp. 2d 130 (D.D.C. 2008) and *Khadr v. United States*, 2008 WL 4966523 (D.D.C. June 20, 2008), but neither of those cases involved habeas petitions challenging executive detention. In *Hamdan*, the petitioner sought an injunction halting the military commission proceedings, and in *Khadr*, the petitioner sought review of a preliminary ruling by a military commission. This Court held that the petitioners in those cases could raise their challenges to military commission rulings in the military commission appellate process. Those cases are a far cry from Petitioners' habeas cases, as Al Rabiah and Al Kandari are seeking judicial review of their detention as alleged enemy combatants, and not of any military commission ruling.

To be sure, Petitioners' alleged status as "enemy combatants" would be a necessary predicate to any jurisdiction that a future military commission might seek to exercise. But it

does not follow that the habeas proceedings must therefore come to a halt anytime the government institutes military commission proceedings. Indeed, such a rule would create a perverse incentive for the government to pursue last-minute military commission charges for the purpose of delaying habeas proceedings.

The government advances the absurd position that allowing the habeas cases to proceed would be a waste of resources. To the contrary, halting the habeas cases would be a pointless waste of resources. The Petitioners' cases have been pending for years and have been twice to the Supreme Court. The government has already filed amended factual returns, and this Court has issued its Case Management Order. Literally thousands of hours have been devoted to these habeas cases, and their resolution is finally in sight. The potential military commissions, on the other hand, have not even begun. If the habeas proceedings halt, much of what has been done will be lost, and Petitioners will be forced to remain in prison without any judicial review of their detention. It would be a waste of resources to stop these habeas cases for an indefinite time while the government decides whether to proceed with military commission charges. If the government does not have the resources to pursue both at the same time, then it can wait until Petitioners' habeas cases have been concluded before it decides whether to pursue the military commission charges.

Indeed, even if military commissions had already been instituted, it would make no sense to put these habeas cases on hold. The government's position is that Al Rabiah and Al Kandari will continue to be held as "enemy combatants" regardless of the disposition of any military commission charges against them. Conversely, if the government cannot even meets its burden in these habeas proceedings of proving by a preponderance of the evidence that the Petitioners are enemy combatants, it will necessarily follow that the government could not prove beyond a reasonable doubt that Petitioners are guilty of charges a necessary element of which is that they

are enemy combatants. Thus, considerations of efficiency and allocation of resources weigh heavily in favor of proceeding promptly with Petitioners' habeas cases.

## Conclusion

Petitioners have waited too long for justice. This Court should not abstain in favor of a non-existent military commission that could not grant the Petitioners the relief they seek here. There is no factual or legal basis for the government's motion, and it should be denied.

December 8, 2008

Respectfully submitted,

/s/
DAVID J. CYNAMON (Bar #182477)
david.cynamon@pillsburylaw.com
MATTHEW J. MACLEAN (Bar #479257)
matthew.maclean@pillsburylaw.com
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
*Attorneys for Plaintiffs-Petitioners*

## Certificate of Service

I certify that on December 8, 2008, I caused the foregoing to be served on all opposing counsel through the electronic case filing system.

/s/
Matthew J. MacLean