## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) | |
| GUANTANAMO BAY ) | Misc. No. 08-0442 (TFH) |
| DETAINEE LITIGATION ) | |

|  |  |
|---|---|
| AL-OSHAN *et al.,* ) | |
| ) | |
| Petitioners/Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 05-0520 (RMU) |
| ) | |
| BUSH *et al.,* ) | |
| ) | |
| Respondents/Defendants. ) | |

|  |  |
|---|---|
| TUMANI *et al.,* ) | |
| ) | |
| Petitioners/Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 05-0526 (RMU) |
| ) | |
| BUSH *et al.,* ) | |
| ) | |
| Respondents/Defendants. ) | |

|  |  |
|---|---|
| SOHAIL *et al.,* ) | |
| ) | |
| Petitioner/Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 05-0993 (RMU) |
| ) | |
| BUSH *et al.,* ) | |
| ) | |
| Respondents/Defendants. ) | |

ZALITA *et al.*,                          )
                                          )
        Petitioners/Plaintiffs,           )
                                          )
        v.                                )        Civil Action No.: 05-1220 (RMU)
                                          )
BUSH *et al.*,                            )
                                          )
        Respondents/Defendants.           )
                                          )

HATIM *et al.*,                           )
                                          )
        Petitioners/Plaintiffs,           )
                                          )
        v.                                )        Civil Action No.: 05-1429 (RMU)
                                          )
BUSH *et al.*,                            )
                                          )
        Respondents/Defendants.           )
                                          )

RABBANI *et al.*,                         )
                                          )
        Petitioners/Plaintiffs,           )
                                          )
        v.                                )        Civil Action No.:05-1607 (RMU)
                                          )
BUSH *et al.*,                            )
                                          )
        Respondents/Defendants.           )
                                          )

ALKHEMISI *et al.*,                       )
                                          )
        Petitioners/Plaintiffs,           )
                                          )
        v.                                )        Civil Action No.: 05-1983 (RMU)
                                          )
BUSH *et al.*,                            )
                                          )

Respondents/Defendants.        )
_____)


_____
AL HALMANDY *et al.,*            )
                                 )
         Petitioners/Plaintiffs, )
                                 )
         v.                      )        Civil Action No.: 05-2385 (RMU)
                                 )
BUSH et al.,                     )
                                 )
         Respondents/Defendants. )
_____)


## JOINT STATUS REPORT

Undersigned counsel for the Petitioners and Respondents in these cases

respectfully submit this joint status report pursuant to the Court's November 21, 2008 Order.


I.       **PETITIONERS' REPORTS ON STATUS OF PROCEEDINGS**

         A.       **Civil Action No. 05-0520**

                  1.       Petitioner Abdul Rahman Shalabi (ISN # 042)

                  On October 28, 2008, Respondents filed an amended return relating to Mr.

Shalabi.  On November 18, 2008, Respondents filed what purported to be a statement of legal

justification to detain individuals designated enemy combatants.  Two days later, Respondents

filed a notice stating that any exculpatory evidence that had been uncovered in preparing the

amended factual return had been turned over with the amended return.  Because Respondents'

conclusory statement of legal justification provides no explanation of why the Government is

entitled to detain Mr. Shalabi and the Government's process in collecting and sharing

exculpatory evidence did not comply with the CMO, Mr. Shalabi maintains that neither of these

documents satisfy Respondents' obligations under the CMO.

Mr. Shalabi filed a memorandum in opposition to Respondents' Motion for Clarification and Reconsideration or, in the Alternative, Motion for Certification for Appeal on November 26, 2008. Mr. Shalabi objected to Respondents' failure to provide an adequate statement of legal justification and all of the exculpatory evidence required by the CMO, as well as to Respondents' position on the discovery that Petitioners are entitled to. He also urged Judge Hogan to uphold the CMO and promptly return the case to this Court for further proceedings.

Mr. Shalabi has also submitted a written request for discovery pursuant to Part I.E.1 of the CMO on November 21, 2008. Mr. Shalabi has participated in a continuous hunger strike since the fall of 2005 and his health is fragile.

### B.     Civil Action No. 05-0526

  1.     <u>Petitioners Abd Al Nisr Khan Tumani (ISN 307) and Muhammed Khan Tumani (ISN 312)</u>

Petitioners are a father and son from Syria. The Government filed motions to amend the factual returns in their case along with proposed amended returns on August 29, 2008, for Petitioner Muhammed Khan Tumani, and on September 11, 2008, for Petitioner Abd Al Nisr Khan Tumani. Judge Hogan granted those motions on November 7, 2008, over Petitioners' objections. The amended returns were filed entirely under seal and unclassified versions have not been provided to Petitioners or their counsel to date.

On November 18, 2008, the Government filed a generic statement of legal justification for Petitioners' detention purporting to comply with Part I.B. of Judge Hogan's Case Management Order ("CMO"). On November 20, 2008, the Government filed a similarly non-case specific notice of purported compliance with Part I.D.1 of the CMO, on the basis of its understanding that the CMO was intended to require a search for exculpatory evidence that is no

broader than the search previously conducted by the Government. Petitioners maintain that neither of these filings satisfy the Government's obligations under the CMO.

On November 26, 2008, Petitioners opposed the Government's omnibus motion for reconsideration of the CMO, urging that any modifications to the order be addressed in the context of the specific facts and circumstances of their case, and moved to transfer the case back to this Court for all further proceedings.

On December 5, 2008, Petitioners submitted a written request for discovery pursuant to Part I.E.1 of the CMO. Petitioners intend to make specific requests for exculpatory evidence and other discovery pursuant to the CMO, including information about a certain Guantánamo detainee who figures prominently in the Government's case against Petitioners and provided information on over 60 other detainees, and whose testimony the Government itself has found unreliable. Petitioners will also request their medical records, among other discovery; a teenager when he was arrested, Petitioner Muhammed Khan Tumani's isolation and treatment in detention have taken a severe toll on his physical and emotional state, and the elder Khan Tumani is in ill health.

In addition to the scheduling adjustments requested in Part II of this report, Petitioners request permission for a joint meeting(s) with their counsel at Guantánamo. Given the interconnected nature of the Government's allegations against them, Petitioners need the opportunity to meet together in order to understand the implications of pursuing their case jointly. In addition, Petitioner Abd Al Nisr Khan Tumani, because of his weak state and his low level of education, relies on his son to communicate with counsel about his case. A joint meeting is thus further necessary for Petitioner Abd Al Nisr Khan Tumani to be able to prepare and meaningfully participate in his defense.

Petitioners cannot safely return to their home country of Syria and have expressed a fear of return to the authorities at Guantánamo and their counsel. An order for 30 days' notice to the Court and Petitioners' counsel prior to any removal of Petitioners from Guantánamo was entered by this Court on April 6, 2005. Petitioners are currently searching for safe resettlement options in third countries, including in Europe.

**C.    Civil Action No. 05-0993**

1.      <u>Petitioner Mohammad Mustafa Sohail, ISN # 1008, Civ. No. 05-0993</u>

On October 14, 2008, the Government filed a classified Amended Factual Return. No unclassified version of that return has yet been filed or provided to Petitioner. On October 27, 2008, Petitioner filed a classified Traverse at the Secure Facility through the Court Security Officer. A Notice of the Filing of that Traverse was placed on the docket on October 29, 2008. In that Traverse, Petitioner sought leave to amend or replace the Traverse in the future, based upon receipt of discovery, exculpatory information and an unclassified version of the Amended Return so that counsel could discuss the allegations with Petitioner. On November 12, 2008, at the request of the Court, that Traverse was withdrawn so that the dates of the Case Management Order prepared by Judge Hogan could be applied effectively.

On November 18, 2008, the Government filed its Motion for Reconsideration of the Case Management Order. On November 26, 2008, Petitioner filed a Memorandum in Opposition to that motion, in which he urged that any modifications made to the CMO should be handled by this Court on a case-by-case basis.

On October 27, 2008, Petitioner sent a detailed and narrowly tailored discovery request to Respondents through the Secure Facility. On December 4, 2008, Petitioner sent an additional discovery request to Respondents formally seeking the discovery described in Part

I.E.1 of the CMO, and renewing the earlier case-specific discovery request. To date, no discovery has been provided and Respondents have not replied to the request.

### D. Civil Action No. 05-1220

1. Petitioner Abu Abdul Rauf Zalita (ISN #709)

    a) Factual Background: Fears of Repatriation and Resettlement Efforts

Petitioner Abu Abdul Rauf Zalita (also known as Abdul Ra'ouf Ammar Mohammad Abu Al Qassim), a citizen of Libya, was transferred to Guantánamo Bay in August 2002. His habeas petition was filed in June 2005. The Government has cleared him for transfer from Guantánamo, and has twice attempted to repatriate him to Libya, the country from which he fled to Afghanistan more than a decade ago in order to avoid religious persecution. Petitioner has a credible fear that he will be subject to imprisonment, torture and possible summary execution if he is forcibly returned to Libya, and he has resisted all attempts to repatriate him to that country. He remains detained in Camp 6, an isolation facility, more than six years after his detention and nearly two years after the Government's first notice of intent to transfer him out of Guantánamo.

Petitioner currently is subject to Judge Hogan's 30-day's notice order, Dkt. 52 in Misc. No. 08-442 (Jul. 10, 2008), having requested such notice from the Government. Petitioner has an asylum application currently pending in Switzerland. The application was rejected at the administrative level in large part due to concerns that Petitioner might pose a security risk. (The process of appealing that ruling is underway.) Those concerns clearly have a relationship to our Government's allegations against him, and are liable to be dispelled should those allegations be disproved. Prompt adjudication of Petitioner's habeas claims in his favor will greatly assist the process of proving that he does not pose a risk to any country that offers to resettle him. Because

the Government will not be able to lawfully repatriate Petitioner to Libya in light of his fears of abuse upon return,[1] the validity or lack thereof of the Government's enemy combatant designation in this case is relevant to the question of whether he will be able to convince a third country to provide him safe harbor, and thereby facilitate his release from Guantánamo. Petitioner is open to settlement discussions regarding third countries where he might be resettled after transfer from Guantánamo.

b)  Status of Proceedings

An original factual return was filed in Petitioner's case on September 14, 2005, but because Petitioner appeared on the lists of cleared detainees filed by the Government with the Joint Status Report of July 18, 2008 (*see* Dkt. 170, Joint Status Report, Exhibit 6 ("Petitioners Who Are Approved For Transfer To The Control Of Another Government") at 1), the Government was not obliged by the Court to produce his factual return in sequence.  *See* Order, Dkt. 464 in 08-mc-442 (exempting Government, in cases involving cleared detainees, from requirement to file returns "pending further order of the Court").  Notwithstanding this order, the Government filed an amended factual return for Petitioner on October 30, 2008, and an unclassified version of that amended return on November 26, 2008.

Petitioner filed a Motion for Inquiry Regarding Destruction of Evidence Related to CIA Detainee Interrogations (notice of filing, Dkt. 81; unclassified redacted version, Dkt. 82

---

[1]  Notwithstanding these fears, which Petitioner has consistently expressed over the years of his detention, the Government continues to take steps to attempt to transfer him to Libya.  In a recent unclassified letter, dated October 14, 2008, Petitioner stated that "I would like to inform you that in these days they want to transfer me to Libya.  I hope you can take an urgent action to stop them from doing so as you promised me."  Cleared notes from the last visit of counsel to Petitioner indicate that he was processed for departure from Guantánamo, was told that he had no choice but to go to Libya, and was asked to sign papers agreeing to be sent there (which he refused to do).

(filed Jan. 15, 2008)).  That motion requests that "this Court should conduct a hearing to determine whether Respondents destroyed evidence from Abu Zubaydah or other detainees in CIA custody related to Respondents' justification for detaining Petitioner and designating him an 'enemy combatant.'"  Dkt. 82 at 11.  Resolution of that motion, which is currently fully briefed and pending, is critical to the identification of exculpatory information and the determination of the weight that should be accorded to the Government's evidence.

Petitioner's initial motion for preliminary injunctive relief against his transfer to Libya (Dkt. 44 (Notice of Filing)) was filed on April 12, 2007, and denied by this Court on April 24, 2007.  On April 25, 2007, the Court of Appeals affirmed the denial on the grounds that the Court lacked jurisdiction.  On June 23, 2008, the Supreme Court granted Petitioner's petition for a writ of certiorari, reversed the judgment of the Court of Appeals, and remanded the case for further proceedings in light of *Boumediene v. Bush*, 553 U.S. ___ (June 12, 2008).  On August 19, 2008, the Court of Appeals vacated this Court's order denying preliminary injunctive relief and remanded the matter to this court. Order, Dkt 110.  The initial motion thus remains pending before this Court.

### E. Civil Action No. 05-1429

#### 1. Petitioner Saeed Mohammed Saleh Hatim (ISN #255)

Petitioner Hatim has been in captivity at Guantánamo since June 2002.  The Government filed an amended return containing allegations against Petitioner Hatim on September 29, 2008.  Following entry of the CMO on November 6, 2008, Hatim submitted a written request for discovery pursuant to Part I.E.1 of the CMO on November 10, 2008.  Hatim filed a motion for specific additional discovery pursuant to Part I.E.2 of the CMO on November 18, 2008; the Government filed an opposition on December 4, 2008, objecting to all such discovery.  On November 26, 2008, Hatim filed with Judge Hogan an opposition to the

Government's Motion for Clarification and Reconsideration or, in the Alternative, Motion for Certification for Appeal.

       2.      <u>Petitioner Mohammed Nasser Yahia Abdullah Khussrof (ISN # 509)</u>

Counsel for Petitioner Mohammed Nasser Yahia Abdullah Khussrof (ISN # 509) filed a Consent Motion for a stay of all proceedings in his individual habeas matter on November 13, 2008. This Court granted the Consent Motion and ordered that a status update be provided on February 13, 2009.

    **F.**    **Civil Action No. 05-1607**

       1.      <u>Petitioner Abdul Ghulam Rabbani (ISN #1460)</u>

The Government filed an amended return containing allegations against Mr. Rabbani on October 21, 2008. No unclassified version of that return has yet been filed. Following entry of the CMO on November 6, 2008, Mr. Rabbani submitted a written request for discovery pursuant to Part I.E.1 of the CMO on November 12, 2008. To date, no discovery has been provided and the Government has not replied to the request. On November 20, 2008, the Government stated that it had met its obligation to produce exculpatory information with the filing of the amended returns. Government's Notice Pertaining to Production of Exculpatory Information, Misc. No. 08-442 (TFH), Dkt. 1022. Counsel have grounds to doubt the sufficiency of the Government's submission. On November 26, 2008, Mr. Rabbani filed an opposition to the Government's Motion for Clarification and Reconsideration or, in the Alternative, Motion for Certification for Appeal.

       2.      <u>Petitioner Ahmmed Ghulam Rabbani (ISN # 1461)</u>

The Government filed an amended return containing allegations against Mr. Rabbani on October 21, 2008. Counsel filed a Consent Motion for a stay of all proceedings in this individual habeas matter on November 19, 2008. This Court granted the Consent Motion

and ordered that a status update be provided on January 21, 2009. Minute Order of November 19, 2008.

**G.     Civil Action No. 05-1983**

1.     <u>Petitioner Ismael Al Bakush (ISN #708)</u>

Petitioner Bakush (who was originally identified as Ismael Alkhemisi in his October 6, 2005 Petition for Writ of Habeas Corpus) is a Libyan national who fled Libya in 1991 because of severe religious and political persecution, was arrested in Pakistan by local forces and transferred to U.S. custody in early 2002, and was subsequently transferred to Guantánamo Bay, where he has been held under harsh conditions without charges for over six years.  As discussed further below, Mr. Bakush is gravely concerned that the United States will repatriate him to his native Libya, where he believes he will be tortured and possibly killed upon his return, due to his long-standing opposition to the current Libyan government.  Mr. Bakush is therefore pursuing, through his counsel, both a prompt habeas corpus hearing and refugee status in other countries upon his release from Guantánamo.  The status of Mr. Bakush's habeas corpus action is set forth below.

a)     <u>Status of Proceedings</u>

The Government filed a notice of filing of the classified factual return for Petitioner Bakush on October 29, 2008.  While that classified return has been filed in the Secure Facility, the Government has not produced an unclassified version.  By e-mail dated November 17, 2008, counsel for Mr. Bakush requested the mandatory discovery outlined in Section I(E)(1) of Judge Hogan's November 6, 2008 Case Management Order ("November 6 CMO").  In particular, counsel requested that the Government specifically disclose whether any interviews of Mr. Bakush have been video- or audio- recorded.  Apart from its November 18, 2008 omnibus motion for reconsideration of the November 6 CMO, the Government has not responded to this

request for mandatory discovery.  On November 26, 2008, counsel for Mr. Bakush filed an opposition to the Government's omnibus motion for reconsideration of the November 6 CMO.

On November 20, 2008, the Government filed a notice concerning its production of exculpatory evidence, purportedly in response to Section I(D)(1) of the November 6 CMO. However, that notice addressed a category of exculpatory evidence far more narrow than that mandated by the November 6 CMO, and, accordingly, the Government's notice failed to comply with the CMO.  As a result, Petitioner Bakush's position is that this so-called notice of exculpatory evidence does not trigger the obligation to file a traverse in accordance with paragraph I(G) of the CMO.

Petitioner Bakush anticipates seeking additional discovery pursuant to the November 6, CMO.  Moreover, of utmost importance, counsel needs an unclassified version of the factual return as soon as possible, in order to schedule a meeting with Mr. Bakush to prepare his traverse and motion on the record.

b)      Security Clearances

On November 21, 2008 this Court ordered "that the government shall expedite the processing of outstanding security clearance applications submitted by Petitioners' counsel." Two members of Mr. Bakush's legal team have recently filed security clearance applications: Jack Stoerger (paralegal) and Andrew Jacobs (lawyer), both of Hunton & Williams LLP. Petitioner requests expedited handling of these applications, consistent with the Court's November 21 Order.

c)      30-Day Notice Order and Risk of Repatriation to Libya

As noted above, Mr. Bakush fears being returned to Libya -- where he has not lived in over 17 years -- because of the history of brutal treatment by the Muammar al-Qaddafi regime of religious observers and political dissenters.  *See* HUMAN RIGHTS WATCH, LIBYA,

WORDS TO DEEDS: THE URGENT NEED FOR HUMAN RIGHTS REFORM 1 (2006),
http://www.hrw.org/sites/default/files/reports/libya0106webwcover.pdf.  Since assuming control
in a 1969 military coup, it is well documented that the Qaddafi-led government has maintained
power through severe repression of any political dissent, using methods that include routine
torture, arbitrary arrest and detention, and excessive use of force.  *Id.* at 1-2.  As the United
States Department of State recognizes, Libya is a modern-day "authoritarian regime" and
"security personnel routinely tortured prisoners during interrogation or as punishment."  U.S.
Dep't of State, 2006 Country Reports on Human Rights Practices, Libya, (Mar. 6, 2007),
*available at* http://www.state.gov/g/drl/rls/ hrrpt/2006/78858.htm.

      Indeed, among the reasons Mr. Bakush (an observant Muslim) fled Libya was that
members of his own family were arrested by the Libyan government for political dissent, and Mr.
Bakush believes that at least one member of his family was executed for his political and
religious conduct.  Further, Mr. Bakush has reported being threatened by members of the Libyan
delegation during their visits to Guantánamo on at least two separate occasions.  Simply put, Mr.
Bakush has spent most of his adulthood fleeing the possibility of arrest, persecution, torture, and
even death at the hands of the Qaddafi regime.  He faces a grave risk of torture and persecution if
forcibly returned to the custody of the Libyan dictatorship.

      On July 11, 2008, Judge Hogan issued an Order requiring that "the government
shall file notice with the Court 30 days prior to any transfer of a petitioner from Guantánamo
Bay, Cuba," with respect to any Petitioner who requests such notice from the Government.
Given his concern about repatriation to Libya, Mr. Bakush immediately filed a notice requesting
that the Government provide 30 days advance notice prior to transferring him from Guantánamo.
The Government has not filed a notice of transfer of Mr. Bakush to date.

However, the Government has attempted to transfer other Libyans against their will to Libya. For example, in *Zalita v. Bush* the Government twice attempted to repatriate the petitioner, who, like Mr. Bakush, is a native Libyan who fled his home country years ago due to religious persecution. *See* Petition for Writ of Certiorari at 2-3, *Zalita v. Bush*, 128 S.Ct. 2956 (U.S. 2008) (No. 07-416) (certiorari granted, judgment vacated, and the case remanded). Moreover, the Government has consistently taken the position that the courts lack authority to impose a 30-day notice requirement as ordered by Judge Hogan. *See, e.g.*, Appellants' Letter of Supplemental Authorities at 1-2, *Kiyemba v. Bush*, Nos. 05-5487, 05-5489 (D.C. Cir. argued Nov. 24, 2008) (appeal from two district orders prohibiting transfer unless thirty days' notice is given to the court and petitioners' counsel). Under these circumstances, it is imperative that the Government be required to steadfastly adhere to the 30-day notice requirement prior to transferring Mr. Bakush out of Guantánamo, to afford Mr. Bakush the opportunity to seek an injunction against transfer to Libya.

**H.      Civil Action No. 05-2385**

1.      Petitioner Houmad Warzly (correct name:  Hamoud Abdullah Hamoud Hassan Al Wady) (ISN #574)

The Government filed a return containing allegations against Petitioner Al Wady on October 31, 2008. Following entry of the CMO on November 6, 2008, Mr. Al Wady submitted a written request for discovery pursuant to Part I.E.1 of the CMO on November 15, 2008, which discovery the Government has not yet provided. On November 26, 2008, Mr. Al Wady filed a response to the Government's Motion for Clarification and Reconsideration or, in the Alternative, Motion for Certification for Appeal.

2.        <u>Petitioner Muhammed Saad Iqbal Madni (ISN #743)</u>

Petitioner Muhammed Saad Iqbal Madni was released from Guantánamo Bay and transferred to Pakistan. Although his habeas petition remains pending before this Court, counsel for Mr. Madni understands that the Court does not intend to consider his outstanding claims during the present status proceedings.

3.        <u>Petitioner Riad Nargeri (ISN #510)</u>

The Government filed an original factual return for Petitioner Nargeri on October 31, 2008. Petitioner, a Tunisian national, has along with all other Petitioners in *Al Halmandy* requested thirty days prior notice of transfer pursuant to the Court's order of July 10, 2008 (Dkt. 52-2, Civil Action No. 08-mc-442). Counsel are currently attempting to schedule a first visit with Petitioner Nargeri.

4.        <u>Petitioner Sabry Mohammed (ISN #570)</u>

The Government filed an original factual return for Petitioner Mohammed on October 29, 2008. Counsel are currently attempting to schedule a first visit with Petitioner Mohammed.

5.        <u>Petitioner Saleh (ISN #78)</u>

The Government filed an original factual return for Petitioner Saleh on October 30, 2008. Counsel are currently attempting to schedule a first visit with Petitioner Saleh.

6.        <u>Mohammed Jawad (ISN #900)</u>

Petitioner Saki Bacha, also known as Mohammed Jawad, is the subject of charges before a military commission and has not received a factual return from the Government. The charges against Jawad, accusing him of throwing a hand grenade into a vehicle carrying U.S. and allied personnel in Afghanistan, were sworn on October 9, 2007, and referred for trial on January 30,

2008. It has been widely reported in the news media that Jawad was sixteen years old at the time of the alleged attack.

Substitute habeas counsel for Petitioner Jawad are in the process of assuming Petitioner's representation and expect to make a formal appearance on his behalf shortly.

7.     Mohammed Kameen (ISN #1045)

Petitioner Mohammed Kameen is the subject of charges before a military commission and has not received a factual return from the Government. The charges against Kamin, accusing him of providing material support to hostilities against U.S. and allied armed forces in Afghanistan, were sworn on March 12, 2008, and referred for trial on April 4, 2008.

Undersigned counsel have been engaged in efforts to find substitute habeas counsel also capable of serving as civilian defense counsel for Petitioner Kameen.


II.     **PETITIONERS' REQUESTS**

The Petitioners have identified common concerns with the Case Management Order entered by Judge Hogan, *See* Dkt. 940 in 08-mc-0442 ("CMO"), in their Oppositions to the Government's Motion for Clarification and Reconsideration or, in the Alternative, Motion for Certification for Appeal. Petitioners have limited their requests in this Joint Status Report to certain scheduling issues presented by the CMO. Petitioners jointly request that the Court schedule a status conference for discussion of these scheduling issues. Petitioners also request that the Court schedule separate status conferences for each case and enter separate scheduling orders in each case.

Petitioners request that this Court order adjustments to the schedule outlined in the CMO. In order to prepare traverses, counsel for Petitioners should first (1) receive all exculpatory information and the evidence sought in discovery requests, (2) be provided with

properly unclassified returns, and (3) have an opportunity following the production of this information to consult with their clients in person, with a translator, to allow Petitioners to participate in their responses to the Government's cases against them. Petitioners therefore request that this Court schedule the deadline for filing traverses on a case-by-case basis for a date reasonably after the receipt of all exculpatory information and information sought through discovery requests by the Petitioner, the receipt of the unclassified return for that Petitioner, and counsel's completion of a visit with Petitioner to discuss the Government's allegations. Such individualized scheduling will be necessary because, among other reasons, counsel for Petitioners anticipate that there may be delays in gaining access to their clients at Guantánamo if there are many simultaneous requests for such visits.

Petitioners also request, in addition to the requirements of the CMO, that the Court adopt the following portions of the Order entered by Judge Kessler with regard to exculpatory information: "The Government shall disclose to each Petitioner all reasonably available evidence in its possession or that the Government can obtain through reasonable diligence that tends materially to undermine the information presented to support the Government's justification for detaining that Petitioner." "The term 'exculpatory evidence' includes any evidence of abusive treatment, torture, mental incapacity, or physical incapacity which could affect the credibility and/or reliability of evidence being offered." *See* Case Management Order, 1:05-cv-00280-GK, Docket No. 201, at 3 (Nov. 13, 2008).

Petitioners also request that the Court address the Privilege Review Team's recently announced refusal, at the apparent behest of litigation counsel for the Government, to allow a Petitioner's counsel to discuss with the Petitioner any statements the Petitioner purportedly made to a Government interrogator. Petitioners believe this refusal both violates the

purported neutrality of the Privilege Review Team and is inconsistent with paragraph 29 of the

Protective Order in this case. Petitioners submit that this matter and other matters of access and

scheduling would be best addressed at a status conference scheduled as soon as the Court's

convenience permits.


III.    **RESPONDENTS' STATUS REPORT**

On November 6, 2008, the Court issued its Case Management Order ("CMO") in

these coordinated habeas proceedings. Case Management Order, 08-MC-442, Docket No. 940.

The Government moved for clarification, reconsideration or certification to appeal that order.

*See* The Government's Motion For Clarification and Reconsideration of This Court's November

6, 2008 Case Management Order and Supplemental Amended Orders or, in the Alternative,

Motion For Certification For Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Certain

Obligations Pending Resolution of the Motion and Any Appeal, 08-MC-442, Docket. No. 1004

("Motion for Clarification" or "Motion"). Accordingly, on November 21, 2008, the Court stayed

most of the Government's obligations under the Case Management Order. Order, 08-MC-442,

Docket No. 1026. That day, this Court ordered the submission of the instant joint status report.

*See, e.g.*, Order, 05-CV-520, Docket No. 168 at 3 ("Nov. 21 Order"). The Court's Order

required the Government to "detail its efforts to comply with the Case Management Order of

November 6, 2008," and specifically to address "its efforts to file unclassified factual returns and

to disclose all reasonably available exculpatory evidence to the petitioners." *Id.*

A.    **Filing of Unclassified Factual Returns**

As detailed in the Motion for Clarification, the CMO's original deadline for filing

unclassified returns within 14 days of the CMO was not feasible given the Government's

existing requirements to, among other things, continue filing new factual returns at a rate of 50

per month.  *See* Motion for Clarification at 28-31. The production of unclassified returns

compromised the Government's ability to file new factual returns at that rate.  *Id.* at 29-30.

Moreover, for reasons described in the Motion, the potential harm to national security caused by

overly expediting the production of unclassified returns is particularly grave, as it increases the

risk that classified information will inadvertently be released in the public domain.  *Id.*  The

Government therefore suggested that the requirement to produce unclassified factual returns be

deferred until all classified factual returns are filed in the consolidated habeas cases, or that the

deadline for submitting unclassified returns in the first 100 filed cases be extended to December

12, 2008—the absolute "minimum amount of time" required to complete such an overwhelming

and sensitive task.  *Id.* at 31.

        Although the Court has not yet ruled on these alternate suggested schedules for

filing unclassified returns, the Government has and continues actively to work with client

agencies to produce them.  Accordingly, the Government is endeavoring to file unclassified

factual returns in these cases by the suggested date of December 12, 2008.

        **B.      Production of Reasonably Available Exculpatory Information**

        The CMO provides that the Government "shall disclose to the petitioner all

reasonably available evidence in its possession that tends materially to undermine the

information presented to support the government's justification for detaining the petitioner,"

CMO ¶ I.D.1, and to so certify within 14 days of the CMO.

        Nothing in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008)—which, for the first time,

recognized a constitutional right for aliens detained as enemy combatants to challenge their

detention through habeas proceedings—requires Government disclosure of information to the

petitioners.  Nevertheless, the Government has assumed responsibility for disclosing

"exculpatory" information discovered during the creation of the factual returns: "Although not

constitutionally required, when filing its factual returns, the Government will provide any

evidence that tends materially to undermine information presented in the return to support the

petitioner's classification as an enemy combatant, which is encountered in developing the returns

by the attorneys preparing them (including Department of Justice attorneys assigned to the case

and those Department of Defense attorneys working on the case with them)."  Government's

Brief Regarding Procedural Framework Issues, 08-MC-442, Docket No. 205, at 19-20.  For

reasons described in the Motion for Clarification and its supporting declarations, the

Government's search for *inculpatory* information to include in the factual returns, while fulsome,

has not been exhaustive, because practical impediments prevent comprehensive, Government-

wide searches for such information.  These impediments likewise, for reasons also described in

the Motion for Clarification, make exhaustive, open ended searches for potentially *exculpatory*

evidence across multiple agencies that might be in possession of information concerning

detainees impractical, severely burdensome to agencies committed to protecting national security

and, in any event, unlikely to uncover non-cumulative exculpatory information beyond that

already encountered and disclosed in crafting the factual return.  These considerations

necessarily impact the scope of the information that is "reasonably available."

        The Government therefore understands that the term "reasonably available" in

this context means "consistent with the practice used for the recently filed factual returns and

amended returns" as described above.  Motion for Clarification at 8; *see also id.* ("The

Government respectfully requests that the Court clarify the CMO to this effect and, absent

clarification, will interpret the provision as being consistent with the Government's current

practice.").  Accordingly, the Government certified on November 20, 2008, that it has complied

with the obligation imposed by the CMO "to disclose all reasonably available exculpatory

evidence to the petitioners." Nov. 21 Order at 3; *see, e.g.*, Government's Notice Pertaining to Production of Exculpatory Information, 05-CV-993, Docket No. 93. Further, to the extent additional exculpatory information comes to light in the continued preparation of factual returns, the Government is disclosing such information.

C.    **Responses to Petitioners' Status Reports**

The Respondents wish to note the following regarding the cases identified below.[2]

1.    Petitioner Abu Abdul Rauf Zalita (ISN #709)  (Civil Action No. 05-1220)

The Respondents respectfully request that the Court deny Petitioner Zalita's request for a judicial inquiry into the contents of destroyed CIA interrogation tapes, because such an inquiry would be unnecessarily disruptive of the Department of Justice's criminal investigation into the matter. *See* Respondents' Opp. to Motion to Transfer and for Hearing, Dkt. 118, at 7-9. At a minimum, resolution of the motion would be premature outside the context of a determination of any permissible discovery in this case and a showing of the materiality of such an inquiry to the issues in this case. *See id.*

2.    Petitioner Ismael Al Bakush (ISN #708)  (Civil Action No. 05-1983)

After entry of the Court's November 21, 2008 Order calling for expedited processing of outstanding security clearance applications, Respondents' counsel asked Petitioners' counsel to provide the identities of individuals on their teams with pending security clearance applications and forwarded any response to that inquiry to the Court Security Office, noting the Court's desire that pending security clearance applications of counsel in these cases be expedited.

---

[2] By addressing these points, the Respondents do not concede the validity of other assertions made in the petitioners' submissions above.

3.     Petitioner Houmad Warzly (correct name:  Hamoud Abdullah Hamoud Hassan Al Wady) (ISN #574)  (Civil Action No. 05-2385)

The Respondents note that Petitioner Al Wady has two habeas petitions pending before the court, in civil action numbers 05-2385 and 08-1237-RMC.  Respondents anticipate a motion to dismiss the later-filed petition in 08-1237-RMC by one or both of the parties after Petitioner's counsel meets with him in December.  *See* Response to Motion for Reconsideration, 05-CV-2385, Dkt. 103, at 1 n.1.


Respectfully submitted,


/s/ Martin Flumenbaum

Martin Flumenbaum
Julia Tarver Mason
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019-6031
212-373-3000
mflumenbaum@paulweiss.com
jmason@paulweiss.com

*Counsel for Petitioners*
*Civil Action No. 05-0520*

/s/ Pardiss Kebriaei

Pardiss Kebriaei
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6452
pkebriaei@ccr-ny.org
ggutierrez@ccr-ny.org

Gordon Samuel Woodward
Schnader Harrison Segal & Lewis LLP
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006-1825
(202) 419-4215
gwoodward@schnader.com

Eldon V. C. Greenberg
Garvey Schubert Barer
1000 Potomac Street, NW
Suite 500
Washington, DC 20007-3592
(202) 965-7880
egreenberg@gsblaw.com

*Counsel for Petitioners*
*Civil Action No. 05-0526*

/s/ Cori Crider
Cori Crider
REPRIEVE
P.O. Box 52742
22 Tudor Street
London, UK EC4Y 0AY
011-44-207-353
cori@reprieve.org.uk

Katherine M. Menendez
Scott F. Tilsen
OFFICE OF THE FEDERAL DEFENDER
300 South Fourth Street
Minneapolis, MN 55415
612-664-5858
kate_menendez@fd.org
scott_tilsen@fd.org

*Counsel for Petitioners*
*Civil Action No. 05-0993*

/s/ Gitanjali Gutierrez
Gitanjali Gutierrez
J. Wells Dixon
Shayana Devendra Kadidal
Pardiss Kebriaei
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6423
wdixon@ccrjustice.org

Jeffrey J. Davis
400 North Church Street #222
Charlotte, North Carolina 28202
Tel: (704) 661-5244

George Daly
139 Altondale Avenue
Charlotte, NC 28207
704-333-5196
gdaly1@bellsouth.net

*Counsel for Petitioners*
*Civil Action No. 05-1220*

/s/ S. William Livingston
S. William Livingston
Alan A. Pemberton
Anna E. Cross
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004-2401
202-662-6000
wlivingston@cov.com
apemberton@cov.com
across@cov.com

David H. Remes
APPEAL FOR JUSTICE
1106 Noyes Drive
Silver Spring, MD 20910
202-669-6508
remesdh@gmail.com

Marc D. Falkoff
NORTHERN ILLINOIS UNIVERSITY
COLLEGE OF LAW
DeKalb, IL 60614
347-564-5043
mdf19@columbia.edu

*Counsel for Petitioners*
*Civil Action No. 05-1429*

/s/ John Holland
John Holland
Anna Cayton-Holland
LAW OFFICES OF JOHN HOLLAND
2150 W. 29th Ave., Suite 500
Denver, CO 80211
303-860-1331

Agnieszka M. Fryszman
Avi S. Garbow
Matthew K. Handley
Matthew Kaplan
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York, Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005
202-408-4600

*Counsel for Petitioners*
*Civil Action No. 05-1607*

/s/ Wesley R. Powell
Wesley R. Powell
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY  10166
(212) 309-1000
wpowell@hunton.com

Karma B. Brown
kbbrown@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC  20006
202-955-1500

*Counsel for Petitioners*
*Civil Action No. 05-1983*

/s/ Carlton F. Gunn
Carlton F. Gunn
Craig Harbaugh
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
321 East 2nd Street
Los Angeles, CA 90012
213-894-1700

*Counsel for Petitioner Al Wady*
*Civil Action No. 05-2385*

/s/ Richard L. Cys
Richard L. Cys
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006-3402
202-973-4217
rickcys@dwt.com
lisazycherman@dwt.com

James P. Walsh
DAVIS WRIGHT TREMAINE LLP
Suite 800
505 Montgomery Street
San Francisco, CA 94111-6533
415-276-6500
budwalsh@dwt.com

*Counsel for Petitioner Madni*
*Civil Action No. 05-2385*

/s/ Shayana D. Kadidal
Shayana D. Kadidal (D.C. Bar No. 454248)
Gitanjali S. Gutierrez (pursuant to LCvR
83.2(g))
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6438
Fax: (212) 614-6499
Email: kadidal@ccrjustice.org

*Counsel for Petitioners Nargeri, Mohammed,*
*Saleh, Kameen and Bacha*
*Civil Action No. 05-2385*

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

 /s/ Paul E. Ahern
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No.
127191)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: 202.305.0633
Fax: 202.616.8470

*Attorneys for Respondents*

Date: December 8, 2008