IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GUANTANAMO BAY ) | |
| DETAINEE LITIGATION ) | No. 08-mc-0442 (TFH) |
| ) | |
| ACHRAF SALIM ABDESSALAM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 06-cv-1761(ESH) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |

## JOINT STATUS REPORT

Pursuant to this Court's order of December 1, 2008, the parties respectfully submit this Joint Status Report, which sets forth the parties' respective positions related to "compliance with [the Case Management Order entered on November 6, 2008, by Judge Hogan in *In re Guantanamo Bay Detainee Litigation*, 08-mc-0442 (TFH) (the "CMO")], identifies any anticipated problems with proceeding pursuant to [the CMO], and any proposed modifications to [the CMO]."

### I.      Petitioner Achraf Salim Abdessalam's Position

#### General Statement

Mr. Abdessalam has been confined, virtually incommunicado, in a small cell at Guantanamo Bay, Cuba for nearly seven years. In addition to other mistreatment by the government, he has been repeatedly interrogated, denied access to the outside world, and his family and livelihood have been taken from him. At no time in this period has Mr. Abdessalam been afforded a fair opportunity to know the reasons why he is being held and the government has not presented to him the evidence upon which this imprisonment is allegedly based. Even though the United States Supreme Court held nearly 6 months ago that he was entitled to receive a "prompt" hearing as to his imprisonment, the government and its counsel have repeatedly interposed dilatory and meritless objections to frustrate Mr. Abdessalam's opportunity to receive that hearing.

Accordingly, Mr. Abdessalam respectfully requests that the Court enter a scheduling order in this case which will allow this matter to proceed towards the hearing to which Mr. Abdessalam is entitled and prevent the government from further delaying Mr. Abdessalam's right to a fair hearing. While in its position stated at Part II of this Report below the government refers to the motion to reconsider the CMO that it filed with Judge Hogan on November 18, 2008, and that Judge Hogan has stayed the CMO due to the government's motion, Mr. Abdessalam respectfully

1

requests that the Court allow Mr. Abdessalam's case to proceed independently from the coordinated case before Judge Hogan and the cases of other Guantanamo Bay prisoners. While Mr. Abdessalam does not generally object to the decision of the Court to use the CMO Judge Hogan entered on November 6, 2008, as a procedural framework for this matter, Mr. Abdessalam objects to any argument by the government that this matter should continue to be coordinated with, dependent upon, or subject to proceedings related to other Guantanamo Bay prisoners. Rather, this case presents unique facts and circumstances, and Mr. Abdessalam requests that the Court set a schedule in this case that allows this case to proceed toward a *habeas corpus* hearing in which the government must establish the legality of the continued imprisonment of Mr. Abdessalam.

As stated below, Mr. Abdessalam also requests that this Court make certain limited modifications to the CMO in light of the facts and circumstances of this case.

The government should be required to explain, now, without further jousting, and by presenting credible supporting evidence, why Mr. Abdessalam has been held for seven years, in virtual isolation, away from his family, without the common comforts of life, when so far as Mr. Abdessalam and his counsel know, there is no reason why Mr. Abdessalam should be confined in Guantanamo Bay or anywhere else

### Factual Return

The government filed the factual return for Mr. Abdessalam on November 26, 2008. No previous factual return had been filed in this case.

### Legal Justification

Because the factual return for Mr. Abdessalam was filed after the CMO was entered on November 6, 2008, under Part I.B of the CMO, the government was to include in the factual return its statement of the alleged legal justification for Mr. Abdessalam's imprisonment. That statement was not included in the factual return.

On December 4, 2008, the government filed a notice in this case stating that the statement of the alleged legal justification was not included in the factual return due to "inadvertent oversight." (Dkt. no. 77 at 1.) In its December 4, 2008, notice, the government provided its statement of the alleged legal justification for holding Mr. Abdessalam.

Mr. Abdessalam requests that the court set a date giving him an opportunity to respond to the government's statement.

### Unclassified Factual Return

Under Part I.C of the CMO, the government is to provide an unclassified return within 14 days of the date the factual return is filed. That date would have been December 10, 2008, but on November 21, 2008, Judge Hogan stayed the due dates in the CMO pending the outcome of the government's motion for clarification and reconsideration of the CMO. Accordingly, no

2

unclassified return has been filed, and it is the understanding of Mr. Abdessalam's counsel that it is the position of the government that it will not provide an unclassified return until the stay is lifted.

Mr. Abdessalam requests that the Court order the government to produce an unclassified factual return on or before January 5, 2009.

### Exculpatory Evidence

Under Part I.D.1 of the CMO, the government is required to disclose all "reasonably available" exculpatory evidence in its possession within 14 days of the date the factual return is filed. That date would have been December 10, 2008, but the government did not provide a notice concerning exculpatory evidence by that date because of its position related to Judge Hogan's November 21 stay order. Accordingly, no notice with respect to the disclosure of exculpatory evidence has been provided.

Mr. Abdessalam requests that the court order the government to disclose all reasonably available exculpatory evidence in its possession and provide a notice to the Court stating it has done so on or before January 5, 2009.

Moreover, Mr. Abdessalam anticipates a dispute with the government concerning the required scope of the search for exculpatory evidence. Mr. Abdessalam requests that the Court order the government to conduct a search for exculpatory evidence that is as broad and searching as the search conducted by the government for inculpatory evidence, and to produce exculpatory evidence that is within the possession, custody or control of the government or could by the exercise of due diligence become known to the government. Mr. Abdessalam views the obligation imposed on the government in the CMO as the equivalent of the obligation imposed by the Court of Appeals in *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007).

Mr. Abdessalam also requests that the Court require representatives of the general counsel's office of each government agency, particularly the Central Intelligence Agency, to provide separate, specific certifications concerning the disclosure of exculpatory information under Part I.D.1 of the CMO.

### Discovery

Mr. Abdessalam requests that the Court amend Part I.E.1 of the CMO to further require the government to produce, within 14 days of any request by Mr. Abdessalam, all statements and reports of government witnesses or prospective witnesses in the government's possession which relate to the subject matter of the factual return.

Mr. Abdessalam also objects to Parts I.E.2(3) and (4) of the CMO, which require him to demonstrate why the requested information is necessary. The threshold standard for discovery should be a showing that the requested information is "relevant to the claim or defense of any party." *See* Fed. R. Civ. P. 26(b); *Boumediene v. Bush*, 128 S. Ct. 2229, 2267 (2008) ("[T]he common law habeas court's role was most extensive in cases of pretrial and noncriminal

3

detention, where there had been little or no previous judicial review of the cause for detention."). Mr. Abdessalam further objects to Parts I.E.2(3) and (4) of the CMO to the extent those provisions would require him to disclose privileged and confidential litigation strategies.

### Classified Information

Mr. Abdessalam contends that under no circumstances should the government be permitted to withhold relevant classified information from his security-cleared counsel under Part I.F of the CMO. Nor under any circumstances should the government be permitted to rely on classified information withheld in whole or in part from Mr. Abdessalam and his counsel – which, if permitted, would deny Mr. Abdessalam notice and a meaningful opportunity to challenge the factual and legal bases for his imprisonment. *See*, *e.g.*, *Boumediene*, 128 S. Ct. at 2273 (an "adversarial character" is "necessary" to habeas proceedings); *Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.").

Mr. Abdessalam also requests that the Court confirm in an order that counsel may discuss with Mr. Abdessalam any statements in the factual return that are attributed to Mr. Abdessalam, even if the government has designated those statements as classified.

### Traverse

Under Part I.G, Mr. Abdessalam's traverse would be due 14 days after the date on which the government "files [the] notice relating to exculpatory evidence under Section I.D.1" of the CMO. Because the government has not yet provided that notice, no deadline for Mr. Abdessalam's traverse currently exists. Mr. Abdessalam requests that the Court amend Part I.G of the CMO to establish a deadline for the traverse that allows time for counsel to schedule a trip to Guantanamo Bay and consult with their client after the end of discovery.

Mr. Abdessalam requests that the deadline for the traverse be set for at least 30 days after the government provides the notice relating to exculpatory evidence under Part I.D.1 of the CMO. Mr. Abdessalam also requests that the Court order as stated in Part I.G of the CMO that Mr. Abdessalam may amend or supplement a filed traverse for good cause.

### Burden and Standard of Proof

Mr. Abdessalam objects to the "preponderance" standard of proof under Part II.A of the CMO. Mr. Abdessalam contends that "clear and convincing evidence" is the proper standard of proof for the reasons set forth in the procedural framework briefing before Judge Hogan. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (dkt. nos. 206, 231). Accordingly, Mr. Abdessalam requests that this Court modify the CMO in this case to apply the "clear and convincing evidence" standard.

### Presumption in Favor of the Government's Evidence

Mr. Abdessalam objects to any presumption in favor of the government's evidence under Part II.B of the CMO for the reasons set forth in the procedural framework briefing before Judge Hogan. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (dkt. nos. 206, 231). Accordingly, Mr. Abdessalam requests that this Court modify the CMO in this case reject any presumption in favor of the government's evidence.

### Hearsay

Under Part II.C of the CMO, motions with respect to the use of hearsay are due no later than 7 days before the briefing for the Judgment on the Record discussed in Part III.A.1 of the CMO. As of this report, the date for the briefing for Judgment on the Record is not yet set. Mr. Abdessalam requests that the Court amend Part II.C of the CMO and establish deadlines for hearsay motions based on the schedule the Court sets for briefing for Judgment on the Record.

Mr. Abdessalam does not object to the introduction of hearsay evidence applying the procedures set forth under Part II.C of the CMO, except hearsay evidence should not be admitted under any circumstance if it is: (1) multi-layered; (2) based on torture or other unlawful coercion, including without limitation cruel, inhuman or degrading treatment; (3) redacted or incomplete; or (4) offered solely on a claim of undue burden. The Court should specifically require the government to describe in detail the circumstances under which any hearsay it seeks to introduce was obtained to ensure it is not the product of torture or other unlawful coercion.

Mr. Abdessalam further requests that the Court order the government to move to admit existing hearsay evidence in the factual return pursuant to Part II.C of the CMO.

### Judgment on the Record

Under Part III.A of the CMO, the parties' initial briefs for Judgment on the Record are due 14 days after the traverse is filed. Because the deadline for the traverse is not yet set, the deadline for briefing for Judgement on the Record has not yet been set. Mr. Abdessalam requests that the Court amend Part III.A of the CMO to establish a schedule for briefing under which the parties' initial briefs would be due 20 days after the traverse is filed.

### Evidentiary Hearing

If an evidentiary hearing is required under Part III.B of the CMO, Mr. Abdessalam requests that he be permitted to appear in court, in person, for all non-classified proceedings.

### Other Matters

As stated in the status report filed with the Court on July 18, 2008, Mr. Abdessalam fears that he will be sent to Libya when he is released from Guantanamo Bay. (Dkt. no. 34 at ¶ 11.) Mr. Abdessalam has not lived in Libya since 1994, and he believes that if he is sent there he will be jailed or tortured for his religious beliefs. A 30-day notice order is in place in this case that

requires the government to provide the Court and counsel 30 days notice before any transfer of Mr. Abdessalam. (*See* Dkt. no. 32.)

Because he fears imprisonment and torture in Libya due to his religious beliefs, Mr. Abdessalam requests that he not be sent to Libya when he is released. Mr. Abdessalam requests an order from this Court that would prevent his transfer to Libya.

Further, on November 19, November 25, and December 5, 2008, counsel for Mr. Abdessalam has requested information about his status based on information that counsel has received which indicates that the government has been preparing to transfer prisoners at Guantanamo like Mr. Abdessalam to North African countries including Libya. Counsel for Mr. Abdessalam has repeatedly requested the government to provide answers to the following inquiries:

1) Whether the government has cleared Mr. Abdessalam for release;

2) Whether the government has informed Mr. Abdessalam that he is to be released from Guantanamo and when that communication occurred;

3) When the most recent administrative review board ("ARB") review or other review of Mr. Abdessalam's status was conducted and that the government provide to Mr. Abdessalam's counsel complete and unredacted documents related to that ARB or other review.

4) Confirm that because of Mr. Abdessalam's fear of being sent to Libya and his stated desire that he not be sent there, the government will not send Mr. Abdessalam from Guantanamo Bay to Libya when he is released.

5) If a release date for Mr. Abdessalam has been set, state what that proposed release date is.

So far, the government has provided no response to these inquiries. Counsel for Mr. Abdessalam requests that the Court order that counsel for the government respond to these inquires as to the status of Mr. Abdessalam.

## II.     Government's Position

Per its order of December 1, 2008, this Court directed the parties to file a joint status report not later than December 11, 2008 summarizing compliance with Judge Hogan's Case Management Order in *In re Guantanamo Bay Detainee Litigation, Misc. No. 08-442* (filed Nov. 6, 2008) (the "Case Management Order"). The Court is advised that, on November 18, 2008, Respondents filed in a motion for clarification and reconsideration regarding various aspects of the Case Management Order. In its motion, Respondents identified numerous anticipated problems with proceeding with the Case Management Order, and offered various modifications. Thereafter, by order entered on November 21, 2008, Judge Hogan stayed the due dates imposed by certain paragraphs of the Case Management Order pending resolution of Respondents' motion and, by order entered December 2, 2008, set the matter for hearing on December 10, 2008. At the close

of that hearing, Judge Hogan advised that he would issue his rulings in that matter during the week of December 15, 2008.

Dated:  December 11, 2008 Respectfully submitted,

  /s/ Thomas P. Sullivan
One of the Attorneys for Petitioner
Achraf Salim Abdessalam

Thomas P. Sullivan
Douglas A. Sondgeroth
JENNER & BLOCK LLP
330 North Wabash Ave.
Chicago, IL  60611
Tel: (312) 840-7605
Fax: (312) 840-7705


  /s/ Robert Dalton
One of the Attorneys for Respondents

Joseph H. Hunt (D.C. Bar No. 431134)
Vincent M. Garvey (D.C. Bar No. 127191)
Terry M. Henry
Andrew I. Warden
Robert C. Dalton (D.C. Bar No. 346985)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-9928