IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | Misc. No. 08-442 (TFH) |
| GUANTÁNAMO BAY ) | |
| DETAINEE LITIGATION ) | |
| ) | |
| ) | |
| Achraf Salim Abdessalam, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 06-CV-1761 (ESH) |
| v. ) | |
| ) | |
| George W. Bush, et al., ) | |
| ) | |
| Respondents. ) | |

**EMERGENCY MOTION FOR AN ORDER ENJOINING TRANSFER OF
PETITIONER TO LIBYA, AND AUTHORITIES IN SUPPORT**

**Emergency Motion**

Pursuant to Federal Rule of Civil Procedure 65, Thomas P. Sullivan and Douglas A. Sondgeroth present this emergency motion on behalf of their client, Petitioner Achraf Salim Abdessalam, for the entry of an order to enjoin the United States Government from transferring Mr. Abdessalam from United States custody to Libya. In support of this motion, Messrs. Sullivan and Sondgeroth state:

1. We are the lawyers for the Petitioner, Mr. Abdessalam. He has authorized us in writing to represent him in this case. (Dkt. Entry #59.) Mr. Abdessalam is a prisoner at the prison located at Guantanamo Bay, Cuba. Because of the constraints of communication and travel, we did not have the opportunity to obtain a declaration from Mr. Abdessalam in support of this motion before its filing. However, all statements of fact relating to Mr. Abdessalam contained in this motion are based upon what he has told us, and are not classified information.

1

2. Mr. Abdessalam is originally from Libya, but he has not lived in Libya since approximately 1994. He left Libya because he feared that he would be tortured or imprisoned for his religious and political beliefs by Libya's government, which was then and continues to be controlled by Col. Muammar Qaddafi.

3. After leaving Libya, Mr. Abdessalam lived in multiple Middle Eastern countries, and he eventually settled in Pakistan in the late 1990s. There he married and he and his wife started a family. In approximately 2000, Mr. Abdessalam and his family resettled in Afghanistan, where he became a school teacher.

4. In the fall of 2001, military operations were begun in Afghanistan by military forces from the United States. Fearing for their safety, Mr. Abdessalam and his family decided to leave Afghanistan and move to Pakistan. Mr. Abdessalam sent his family ahead, with the understanding that he would join them in Pakistan.

5. After Mr. Abdessalam crossed the border from Afghanistan to Pakistan, he was apprehended by Pakistani authorities. Late in 2001, he was transferred into the custody of United States military forces, and was taken in custody to the prison located at Guantanamo Bay, where he has been imprisoned since early 2002.

6. The United States purports to continue to hold Mr. Abdessalam on the grounds that he is an enemy combatant who was "part of, or supporting, forces engaged in hostilities against the United States or its coalition partners and allies." (*See* Dkt. Entry #77 at 2.) The principal reason, so far as we have been able to determine, that the United States authorities allege that Mr. Abdessalam is an enemy combatant is that he has been identified as a former member of an organization called the Libyan Islamic Fighting Group ("LIFG") (*See* Exhibit A

at 2),[1] an organization that seeks the overthrow of Col. Qaddafi and which the Government alleges has ties to al Qaeda. (*See* Exhibit B at 5.)

7. Mr. Abdessalam denies that he is or was an enemy combatant, or a member of the LIFG, or of al-Qaeda, or that he poses any danger to the United States. He believes that if and when the United States authorities are required to present evidence in accordance with the rules and procedures applicable in this proceeding, this Court will conclude and rule that his continued imprisonment is not justified and unlawful, and that he should be promptly released from Guantanamo Bay.

8. Mr. Abdessalam fears that when he is released from Guantanamo, the United States authorities may attempt to send him to Libya. He fears that if he is sent to Libya, he will be at risk of torture, imprisonment, physical abuse, and death because of his religious and political beliefs. He is concerned that the allegations that have been made about him by representatives of the United States that he was and is an "enemy combatant," and that he had ties to the LIFG and al Qaeda, place him in great jeopardy, even without credible proof of those allegations.

9. It is now well-known that in Libya, persons whom the government representatives believe are opposed to Col. Qaddafi are vulnerable to imprisonment, torture, and abuse. A recently-released report from the State Department of the United States, dated March 11, 2008, states that "security personnel routinely tortured prisoners during interrogation or as punishment," including "chaining prisoners to a wall for hours; clubbing; applying electric shock; applying corkscrews to the back; pouring lemon juice in open wounds; breaking fingers and allowing the joints to heal without medical care; suffocating with plastic bags; depriving

---

[1] However, even the Government's own documents reflect evidence that Mr. Abdessalam was not a member of the LIFG. (*See* Ex. A. at 2.)

3

detainees of sleep, food, and water; hanging by the wrists; suspending from a pole inserted between the knees and elbows; burning with cigarettes; threatening with dog attacks; and beatings on the soles of the feet." U.S. Dep't of State, Country Reports on Human Rights Practices - 2007, Section 1.c (Mar. 11, 2008) (available at http://www.state.gov/g/drl/rls/hrrpt/2007/100601.htm and attached as Exhibit C.) It is this kind of treatment that Mr. Abdessalam fears if he is sent to Libya.

10. Pursuant to an order entered in this case by Judge Thomas Hogan on July 11, 2008, the Government must file notice with this Court 30 days prior to the transfer or removal of Mr. Abdessalam from Guantanamo Bay. (Dkt. Entry #32.) At this time, we have not received notice from the Government that Mr. Abdessalam is to be transferred, released, or otherwise removed from Guantanamo Bay. However, as stated in Mr. Abdessalam's portion of the Joint Status Report filed in this case on December 11, 2008 (Dkt. Entry #79 at 5-6), we have repeatedly attempted to obtain from the Government representatives information as to whether the Government plans to transfer Mr. Abdessalam in the near future, and if so, when, and the destination to which the Government authorities intend to send him; specifically, whether he will be sent to Libya. We have asked for assurances that Mr. Abdessalam will not be sent to Libya. The representatives of the Government have not responded to our inquiries and requests.

11. Accordingly, to ensure that Mr. Abdessalam will not be sent to Libya and face a serious risk that he will be unjustly imprisoned, tortured, or killed, we seek an injunction on his behalf barring the United States Government from sending Mr. Abdessalam to Libya. A proposed order is attached to this motion.

**Authorities**

In deciding whether to issue a preliminary injunction, courts consider four factors: (1) whether the moving party has a substantial likelihood of success on the merits; (2) whether the moving party faces irreparable harm absent the preliminary injunction; (3) whether the injunction would substantially injure the opposing party; and (4) whether the injunction furthers the public interest. *E.g.*, *Belbacha v. Bush*, 520 F.3d 452, 459 (D.C. Cir. 2008). Under these factors, this court should grant a preliminary injunction in this case.

At least two courts in this District have entered orders enjoining the transfer of Guantanamo prisoners to countries due to the prisoners' concerns of torture or imprisonment. *See, e.g.*, *Bacha v. Bush*, 05-cv-2349 (RMC), Order (June 13, 2008) (Attached as Exhibit D) ("Respondents are enjoined from transferring Petitioner Ahmed Belbacha from Guantanamo Bay to Algeria"); *Al-Hami, v. Bush*, No. 05-359 (GK), Order at 8 (Oct. 2, 2007) ("Al-Hami Order" and attached as Exhibit E.)[2] In an order granting a preliminary injunction to prevent the transfer of another Guantanamo prisoner to Tunisia because he feared imprisonment and torture, Judge Kessler stated that federal courts have the "power, pursuant to the All Writs Act, 28 U.S.C. § 1651, to 'issue all writs necessary or appropriate in aid of [its] jurisdiction . . . .'" Al-Hami Order at 6. Also, as the United States Supreme Court stated in *United States v. United Mine Workers*, 330 U.S. 258, 290 (1947): "… the District Court unquestionably ha[s] the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."

---

[2] Although the government has appealed these orders, the appeals are being held in abeyance pending the D.C. Circuit's disposition of *Kiyemba v. Bush*, No. 05-5487 (D.C. Cir.) and these orders remain in effect. *See Bacha v. Bush*, 08-5313 (D.C. Cir.) (Sept. 3, 2008 Dkt. Entry); *Al-Hami v. Bush*, 07-5400 (D.C. Cir.) (Oct. 28, 2008 Dkt. Entry).

Further, in granting the preliminary injunction in *Al-Hami*, Judge Kessler found when considering the question of irreparable harm if no injunction were granted that "the Government suffers absolutely no harm from entry of the Preliminary Injunction [preventing a transfer], whereas the failure to grant [petitioner] the interim relief he seeks . . . . would be irremediable." *See* Al-Hami Order at 7-8. On information and belief, the same would be true here if no injunctive relief is granted and Mr. Abdessalam is sent to Libya against his will.

Pursuant to Local Rule 7(m), on December 16, 2008, Mr. Abdessalam's counsel contacted Robert Dalton, the Government's lawyer, to give notice that we intended to file this motion. Mr. Dalton stated that the Government is opposed to the motion.

Accordingly, on Mr. Abdessalam's behalf, we move:

(a) That the Court enjoin the United States Government from transferring Mr. Abdessalam to Libya upon his release from United States custody;

(b) In the alternative, that the Court enter an order to stay any transfer of Mr. Abdessalam to Libya until this Court holds an evidentiary hearing regarding the circumstances of Mr. Abdessalam's case and the bases for Mr. Abdessalam's fear of transfer to Libya.

Dated: December 17, 2008

Respectfully submitted,

　/s/ Thomas P. Sullivan
One of the Attorneys for Petitioner
Achraf Salim Abdessalam

Thomas P. Sullivan
Douglas A. Sondgeroth
JENNER & BLOCK LLP
330 North Wabash Ave.
Chicago, IL 60611
Tel: (312) 840-7605
Fax: (312) 840-7705

# CERTIFICATE OF SERVICE

  I hereby certify that on December 17, 2008, I caused the foregoing Emergency Motion For An Order Enjoining Transfer of Petitioner to Libya, And Authorities In Support to be delivered to the below-listed counsel of record in the above-captioned matters through the CM/ECF system:

    Andrew I. Warden
    Terry Marcus Henry
    Robert Dalton
    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Avenue NW
    Washington, D.C. 20530

            /s/ Thomas P. Sullivan