IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE:<br>GUANTANAMO BAY<br>DETAINEE LITIGATION | ) ) ) ) ) | Misc. No. 08-442 (TFH) |
| KHALED A.F. AL ODAH, *et. al.*,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH,<br>President of the United States, *et al.*,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 02-0828 (CKK) |

**RESPONDENTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS HABEAS PETITIONS WITHOUT PREJUDICE OR, ALTERNATIVELY, TO HOLD PETITIONS IN ABEYANCE PENDING COMPLETION OF
MILITARY COMMISSION PROCEEDINGS**

Respondents hereby submit this reply brief in support of their Motion to Dismiss Habeas Petitions Without Prejudice or, Alternatively, to Hold Petitions in Abeyance Pending Completion of Military Commission Proceedings. Petitioners Fouad Mahmoud Al Rabiah (ISN 551) and Fayiz Mohammed Ahmed Al Kandari (ISN 552) are Guantanamo Bay detainees currently seeking habeas relief who also have been charged with violations of the laws of war under the Military Commission Act of 2006, 10 U.S.C. §§ 948a-950w (the MCA). Because this subset of detainees faces the prospect of trial by military commission, the Court should focus on the adjudication of the habeas petitions for the remaining detainees, who have not been charged.

Abstention is appropriate in petitioners' cases because of the dictates of comity owed to the Congressionally mandated military commission system and because petitioners cannot now satisfy the prerequisites for equitable relief given the charges pending against them in that system. Accordingly, this Court should either dismiss these petitions without prejudice or hold them in abeyance so that the cases of those detainees who are not currently charged under the MCA may take precedence.

## ARGUMENT

### I. Petitioners Have Failed To Adequately Distinguish The Governing Abstention Precedents

Petitioners attempt to distinguish their cases from the governing abstention precedents by asserting distinctions based on the type of relief being sought (an injunction vs. a writ of habeas corpus), the underlying tribunal (state courts or courts martial vs. the military commissions), and the available remedies (release after trial and acquittal vs. potential continued detention after acquittal based on status as enemy combatant). In so doing, petitioners erroneously limit the scope of the Supreme Court's holdings in Younger v. Harris, 401 U.S. 31 (1971), and Schlesinger v. Councilman, 420 U.S. 738 (1975), and ignore Judge Bates' recent decision in Khadr, et. al. v. Bush, et. al., 2008 WL 4966523 (D.D.C. Nov. 24, 2008), granting a similar motion to hold a habeas petition in abeyance pending completion of military commission proceedings.

It is well-settled that a writ of habeas corpus, like the injunctions sought in Younger and Councilman, constitutes equitable relief. Schlup v. Delo, 513 U.S. 298, 319 (1995). For this reason alone, petitioners' attempted distinction based on the form of relief they seek is unavailing. But more fundamentally, petitioners' putative distinction fails to properly interpret

2

the Supreme Court's opinion in Councilman, which focused not on the precise form of equitable relief sought, but rather on its equitable nature. Councilman, 420 U.S. at 754 ("There remains the question of equitable jurisdiction, a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers."). Consequently, the doctrine of abstention applies with full force to petitioners' habeas petitions.

Petitioners' remaining attempts to distinguish the governing abstention precedent wholly ignore the motivating principle underlying both the Younger and Councilman decisions – "the notion of 'comity.'" Younger, 401 U.S. at 44. Comity requires federal courts to give "due respect to the autonomous military judicial system created by Congress." New v. Cohen, 129 F.3d 639, 643 (D.D.C. 1997). As Judge Bates held in his recent decision in Khdar, the military commission "system established by the MCA is worthy of [comity-based] respect because it provides that [a] petitioner 'is to face a military commission . . . designed . . . by a Congress that . . . acted according to guidelines laid down by the Supreme Court.'" Khdar, 2008 WL 4966523 at *4. Consideration of such a system "designed to try alien unlawful enemy combatants," Judge Bates noted, "is equally, if not more relevant" to application of the abstention doctrine than consideration of the military justice system designed to try members of the U.S. military at issue in Councilman. Id. at *4 n.6. Comity, therefore, invalidates petitioners' attempts to distinguish the governing abstention precedent, and requires that this Court defer to the scheme Congress has chosen prior to entertaining a collateral attack on detention, such as a petition for a writ of habeas corpus.

Petitioners suggest that because they are challenging their status as enemy combatants, the jurisdiction exception to the abstention doctrine excuses them from Councilman's exhaustion requirement because military commissions do not have jurisdiction over persons who are not enemy combatants.[1]  See Pet'rs' Opp'n at 6.  Contrary to petitioners' contentions, the jurisdictional exception to Councilman abstention is inapplicable to their cases.  While Councilman does recognize that a federal court may entertain a habeas petition that raises a "substantial" jurisdictional argument, 420 U.S. at 759, petitioners' argument does not rise to this level.  As Councilman makes plain, this exception applies only when the issue is whether Congress has the constitutional power to authorize the tribunal to try the petitioner at all.  Id.  In the cases cited by the Supreme Court in Councilman to explain this exception, the issue was

---

[1] Relying on Nat'l Mining Ass'n v. Kempthorne, 512 F.3d 702, 706-07 (D.C. Cir. 2008), petitioners also challenge the military commission's exercise of jurisdiction upon the swearing of charges on grounds that a military commission does not exist until it is convened by the Convening Authority.  See Pet'rs' Opp'n at 3 n.4.  Petitioners' reliance on Kempthorne is meritless.  Contrary to petitioners' representation, the Kempthorne Court ruled that a typographical error in a statutory provision granting jurisdiction to the "United States District Court for the District of Columbia Circuit," a non-existent court, did *not* preclude the Court from giving effect to Congress's intent to grant jurisdiction to the United States District Court for the District of Columbia.  Kempthorne, 512 F.3d at 706-07.  To hold otherwise and prevent judicial review, the Court reasoned, would "be absurd."  Id.  Similarly, Congress's intent to confer jurisdiction to military commissions to prosecute enemy combatants accused of violations of the laws of wars is manifested in the MCA.  See 10 U.S.C. §§ 948b-d.  The swearing of charges is the first step in convening a military commission.  See, Rules for Military Commissions, Rule 202(c).  It triggers an accused's right to defense counsel, see 10 U.S.C. § 948(k)(3) ("Military defense counsel for a military commission [convened] under [the MCA] shall be detailed as soon as practicable after the swearing of charges against the accused."), and affords defense counsel a "reasonable opportunity to obtain witnesses and other evidence" to assist in preparing an accused's defense.  See 10 U.S.C. § 949j.  To hold that the prosecutorial system Congress designed to try enemy combatants charged with violations of the laws of war does not have jurisdiction over an accused and that a court has no responsibility to abstain or defer to that system until the triers of fact have been assembled for trial, see Rules for Military Commissions, Rule 103(10), (18) (military commissions comprised of a military judge and active duty commissioned officers ), would impermissibly disregard Congressional intent.

4

whether Congress had the constitutional power under Article I to authorize the military to try civilians by courts martial. Id. Moreover, the issue in those cases was not whether the petitioners were civilians – that was essentially conceded as a factual matter – but whether Congress had the power to try civilians via military courts martial. Here, this latter question has already been settled: the Supreme Court held that Congress has the authority under the Constitution to authorize the trials by military commission of enemy combatants accused of law-of-war violations. See Ex parte Quirin, 317 U.S. 1, 28-31 (1942). Thus, petitioners are foreclosed from pursuing that question on habeas here.

But to the extent that petitioners' jurisdictional argument is that they are not enemy combatants, that factual question is appropriately directed in the first instance to the military commission itself and then on direct appeal to the Court of Military Commission Review, the Court of Appeals for the District of Columbia Circuit, and the Supreme Court. Indeed, contrary to petitioners' assertion, the Supreme Court has routinely acknowledged that tribunals of limited jurisdiction are the proper arbiters of their jurisdiction in the first instance. United States v. Ruiz, 536 U.S. 622, 628 (2002); cf. First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 943 (1995) (arbitrator entitled to determine scope of subject matter jurisdiction); FED. R. CIV. P. 12 (allowing district courts to adjudicate their own jurisdiction). And as for appellate review, the Court of Appeals for the District of Columbia Circuit has recently confirmed that it will be able to review these types of jurisdictional decisions, and that the proper time for that review is post-judgment:

> This Court will have opportunity to review this procedural decision [that the military commission has jurisdiction over the detainee accused of violating the laws of war] post-judgment if necessary and can then determine whether the

5

    commission properly determined its jurisdiction and acted in conformity with the law.

Khadr v. United States, 529 F.3d 1112, 1118-19 (D.C. Cir. 2008). Thus, a collateral judgment by this Court deciding the jurisdiction of the military commission prior to the issue being raised before the military commission would be improper under Younger and Councilman.

    Furthermore, petitioners' reliance on Boumediene v. Bush, 128 S. Ct. 2229 (2008), to attempt to evade Councilman's exhaustion requirement is unavailing. To be sure, Boumediene held that exhaustion of remedies in the military system was not appropriate for detainees challenging the fact of their confinement who had no process available to them other than the review provided by the Detainee Treatment Act, which the Court found to be inadequate. But at the same time, the Boumediene Court reaffirmed the well-established requirement that "defendants in courts-martial [must] exhaust their military appeals before proceeding with a federal habeas corpus action." 128 S. Ct. at 2274; cf. id. at 2268 (in cases involving state-court criminal proceedings, "the prisoner should exhaust adequate alternative remedies before filing for the writ in federal court") (citing Ex Parte Royall, 117 U.S. 241,251-52 (1886)). Further, the Supreme Court approvingly cited cases involving military commission trials where the procedures provided were far less protective than the procedures here. See Boumediene, 128 S. Ct. at 2259-60, 2270-71 (citing Quirin, 317 U.S. at 1; In re Yamashita, 327 U.S. 1 (1946); and Johnson v. Eisentrager, 339 U.S. 763 (1950)). In sum, as the Supreme Court reiterated unanimously in Munaf v. Green, 128 S. Ct. 2207 (2008), on the same day it decided Boumediene, "the orderly administration of criminal justice may 'require a federal court to forgo the exercise of its habeas corpus power.'" Id. at 2220 (quoting Francis v. Henderson, 425 U.S.

536, 539 (1976)). An established reason for foregoing use of that power is Councilman's exhaustion/abstention requirement, which squarely applies in the circumstances of this case.

Accordingly, this Court should follow the general rule "that federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted[,]" Councilman, 420 U.S. at 758, and abstain from adjudicating petitioners' habeas petitions pending completion of the military commission process.

## II. The Military Commission Process Provides An Adequate Alternative Forum That Warrants Abstention

Petitioners also seek to evade application of Younger and Councilman by arguing that the military commission system does not provide them with an adequate alternative remedy and would further delay adjudication of their challenges to their detention. See Pet'rs' Opp'n at 2, 4-5. Neither of these arguments provide a basis for declining to abstain.

First, petitioners allege that because there is doubt as to whether an acquittal by a military commission will result in their release there is no certainty that the military commission could provide the remedy of release available to petitioners in habeas proceedings. See Pet'rs' Opp'n at 1-2. This argument relies on two faulty premises. It first assumes that the petitioners will be acquitted. At this stage, prior to completion of the military commission process, such an assumption is premature. If, contrary to petitioners' assumption, they are convicted, issues as to the release of petitioners would not, at a minimum, be ripe, as petitioners would in all likelihood be sentenced to imprisonment for a term of years. Petitioners' argument also assumes that the Government will not release them as enemy combatants if they are acquitted by a military commission. That, too, cannot be known until and if petitioners are acquitted. But it is only if they are acquitted, and the government refuses to release them, that it would arguably be proper

7

for this Court to then entertain petitioners' habeas petitions, as the military commission will have completed its work and abstention will no longer be an issue.

Second, petitioners assert that to dismiss or stay their habeas petitions would inappropriately delay adjudication of their detention challenges given that the charges sworn against them on October 21, 2008, are currently before the Convening Authority awaiting possible referral to a military commission.[2] The lack of a deadline for the Convening Authority to complete its review and refer charges to a military commission, however, does not militate against abstention. For one thing, as discussed infra § III, moving forward in habeas during the pendency of sworn charges presents the potential for interference with the pending military commission proceedings. Balanced against this is that once the Convening Authority approves the charges and refers them to a military commission, the petitioners will receive speedy trial rights. Pre-trial proceedings must begin within 30 days after the detainee is served with the referred charges, and the commission must be assembled within 120 days. R. Mil. Comm'ns 707. One of the central issues before the military commission will be whether the petitioners are unlawful enemy combatants. See Resp'ts' Mot to Dismiss at 14. Thus, the brief period of time the charges sworn against petitioners are pending before the Convening Authority is not sufficient to excuse petitioners from Councilman's exhaustion requirements given the potential

---

[2]On December 3, 2008, the Department of Defense amended the charges sworn against petitioner Al Kandari (ISN 552). See Ex. A. The amended Charge Sheet sets forth two additional charges for petitioner Al Kandari; an additional charge of providing material support for terrorism in violation of 10 U.S.C. § 950v(b)(25) and an additional charge of conspiring with Usama bin Laden and other persons to attack civilians and civilian objects, and to engage in terrorism in violation of 10 U.S.C. § 950v(b)(28). In support of these additional charges, the Department of Defense avers that petitioner Al Kandari traveled to Tora Bora, Afghanistan, and fought with Al Qaeda forces there. The amended Charge Sheet was forwarded to the Convening Authority on December 8, 2008.

8

interference with the military commission process and the fact that petitioners' status will be adjudicated promptly in the military commission proceedings.

> III. **Failure to Hold These Habeas Petitions In Abeyance Pending Completion Of Military Commission Proceedings Creates Unnecessary Duplicative Proceedings, The Potential For Inconsistent Rulings, and The Risk Of Interference With Military Commission Proceedings**

Petitioners assert that respondents have failed to offer any support for their contention that the habeas proceedings conflict with proceedings before the military commission. See Pet'rs' Opp'n at 6. Petitioners' assertion completely ignores respondents' explanation that petitioners' habeas proceedings would potentially duplicate proceedings before the military commission. See Resp'ts' Mot. to Dismiss at 13-16. One primary reason courts "abstain [] from exercising equitable jurisdiction" is to "avoid[] duplicative proceedings." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003). See also Steffel v. Thompson, 415 U.S. 452, 462 (1974) (acknowledging strong interest in avoiding duplicative legal proceedings or disruption of the state criminal justice system). Just last year, the Supreme Court noted that "[i]f a plaintiff files a . . . claim related to rulings that will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1098 (2007).

Petitioners' status as enemy combatants is a central issue in both the habeas and military commission proceedings. An accused is entitled to have the military commission make its own, independent determination of whether a charged defendant is "an unlawful enemy combatant," before trial may proceed. 10 U.S.C. § 948a(1). Thus, petitioners' status as unlawful enemy combatants will be litigated before the military commission, and the military commission's

9

determinations will be reviewable upon culmination of the military commission proceedings. Consequently, failure to hold petitioners' habeas proceedings in abeyance pending completion of military commission proceedings creates the potential for inconsistent judgments regarding petitioners' status.

Failure to abstain also creates the potential for inconsistent rulings regarding discovery and other litigation issues, as well as the risk that discovery or other matters in the habeas proceedings could adversely affect prosecution of the related military proceedings; for example, by allowing petitioners to use discovery obtained in the habeas proceedings to advance their defenses in the military prosecutions. Indeed, the Supreme Court has recognized that "[a] prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the [civil plaintiff] to discover the details of a contemplated or pending criminal prosecution." United States v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency, 462 U.S. 555, 567 (1983). Accordingly, "[c]ourts are widely acknowledged to possess the authority to stay discovery in [] circumstances [where there are parallel civil and criminal proceedings] in order to prevent litigants from availing themselves of liberal civil discovery rules in order to circumvent the more restrictive guidelines governing criminal discovery." Capital Eng'g & Mfg. Co., Inc., et. al., v. Weinberger, 695 F. Supp. 36, 41 (D.D.C. 1988)) (citing Gordon v. Fed. Deposit Ins. Corp., 427 F.2d 578, 580 (D.C. Cir. 1970). See also United States v. All Funds on Deposit in Suntrust Account Number XXXXXXXXX8359, In the Name of Gold and Silver Reserve, Inc., et. al., 456 F. Supp. 2d 64, 65 (D.D.C. 2006) ("'civil discovery may not be used to subvert limitations on discovery in criminal cases, by either the government or by private parties.'" (quoting McSurely v. McClellan, 426 F.2d 664, 671-72 (D.C. Cir. 1970)).

If petitioners' habeas cases were to continue, respondents would be subject to the discovery afforded petitioners by the Amended Case Management Order (the "CMO"), Dkt. No. 1315 in 08-mc-442, as well as discovery requirements of the military commission proceedings. Parallel litigation of discovery issues in both tribunals could potentially result in inconsistent rulings on disclosure of classified information and would also potentially allow petitioners to circumvent the discovery limitations in their respective proceedings. Furthermore, having two parallel proceedings has the potential to place a tremendous burden on the Government's resources including, for example, the resources required to clear classified materials for use in both proceedings and any other related matters. Abstention is, therefore, necessary to prevent inconsistent rulings and the improper use of discovery.

In summary, none of petitioners' arguments warrant this Court declining to abstain pending completion of the military commission process adopted by Congress. As the Court of Appeals for the District of Columbia has held concerning military commission proceedings under the MCA: "[t]here is no substantial public interest at stake in [these cases] that distinguish[] [them] from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective." Khadr, 529 F.3d at 1118. Accordingly, this Court should either dismiss these petitions without prejudice or hold them in abeyance pending completion of the military commission process so that the cases of those detainees who are not currently charged under the MCA may take precedence.

## CONCLUSION

For the reasons stated herein and in respondents' motion, respondents respectfully request that the Court dismiss petitioners' habeas cases without prejudice or, in the alternative, hold them in abeyance pending resolution of petitioners' military commission proceedings.

Date: December 18, 2008

Respectively submitted,

GREGORY KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

    */s/ Kristina A. Wolfe*
JOSEPH H. HUNT (D. C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ANDREW I. WARDEN
KRISTINA A. WOLFE

Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 353-4519
Fax: (202) 616-8202

Attorneys for Respondents