IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **GUANTANAMO BAY** ) | |
| **DETAINEE LITIGATION** ) | Misc. No. 08-442 (TFH) |
| ) | |
| **MOHAMMAD AL-ADAHI**, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-280 (GK) |
| ) | |
| **GEORGE W. BUSH,** ) | |
| President of the United States, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| ) | |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO STAY
PROCEEDINGS FOR PETITIONERS APPROVED FOR TRANSFER OR RELEASE**

Petitioners Suleiman Awadh Bin Aqil Al-Nahdi (ISN 511) and Fahmi Salem Al-Assani (ISN 554) ("Petitioners") hereby offer this opposition to Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release. Petitioners have been imprisoned at Guantánamo Bay for over seven years. They have been cleared for release since February, 2008 and their home country, Yemen, has stated in unequivocal terms that they will accept them back. This Court has the jurisdictional authority to issue an order that will allow Petitioners to return to their families. Nevertheless, Respondents argue that Petitioners' cases should receive the lowest priority because they have already "been afforded meaningful relief." (Resp'ts' Mot. at 4.) and that a stay will "serve the broader purposes of judicial economy and fairness." (Resp'ts' Mot. at 4-5.) Simply put, the notion that Petitioners have received meaningful relief and that further delaying their cases will serve the purpose of fairness, as they enter another year

8143520.3                                               1

of unjustified detention, is an insult to the principles of justice.  Respondents' motion must be denied.

## BACKGROUND

Respondents rely on their familiar strategy of delay, delay, delay.  Each day Respondents continue motion practice is another day Petitioners remain unlawfully detained.  The Supreme Court could not have been more clear when stating:

> While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing.

*Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008).  Nevertheless, despite having been cleared for release for nearly a year, Petitioners continue to bear the unimaginable cost of Respondents' delay.

Respondents' position that a stay of these case will achieve fairness is laughable. Consider that Petitioners have been imprisoned for over seven years without ever having been charged with any crime.  Meanwhile, on November 24, 2008, the Government announced that it had decided to transfer Salim Ahmed Hamdan from custody at Guantánamo Bay to his home in Yemen.  Mr. Hamdan is a convicted war criminal.  He was returned home to Yemen while Mssrs. Al-Assani and Al-Nahdi, men never charged with any crime and cleared for release since February 2008, remain imprisoned because the Government purportedly cannot negotiate the terms of their release to Yemen.  It is hard to imagine why the Government has been unable to secure the transfer of these two men when it has been able to secure the transfer of a convicted war criminal.

Despite the recent release of Mr. Hamdan to Yemen, the Government has apparently not concluded making "appropriate diplomatic arrangements" (Resp'ts' Opp. at 4) for the release of

Mssrs. Al-Assani and Al-Nahdi.  "The purpose of these discussions . . . is to seek assurances that the Government considers necessary and appropriate with regard to the transferee country in question and to ensure that the transfer or release is consistent with United States policy, including its policy not to repatriate or transfer detainees to countries where it is more likely than not that the detainee will be tortured."  (Resp'ts' Mot. at 2.)  While there is no evidence that any of the fourteen Guantánamo detainees who have been released to Yemen, to date, have been treated inhumanely, there is evidence that they have been tortured while in Respondents' hands.  Simply put, Petitioners want to go home to Yemen and Yemen wants them back.  This Court has the authority to say, "enough is enough."

## ARGUMENT

I. **THE COURT SHOULD EXERCISE ITS DISCRETION AND DENY RESPONDENTS' MOTION.**

   A. **As Petitioners' Case Are Ripe for Adjudication, a Stay Would Do Nothing But Delay Justice.**

This Court has the discretion to stay proceedings or not in light of particular circumstances of a case.  *United States v. Stover*, 576 F. Supp. 2d 134, *28 (D.D.C. 2008) (citation omitted).  As both amended factual returns and traverses have been filed in these cases, they are ripe for adjudication.  Accordingly, the circumstances of these cases is such that the Court should deny Respondents' motion for a stay.  Petitioners should not remain in limbo during the adjudication of other habeas proceedings that have no relation to nor impact on the particular facts and circumstances underlying their habeas petitions.  *Harris v. Nelson*, 394 U.S. 286, 292, 89 S. Ct. 1082, 1086 (U.S. 1969) ("A habeas corpus proceeding "must not be allowed to founder in a 'procedural morass.'").  Respondents can send these men home to Yemen as is

shown by their action with Mr. Hamdan; all they need is pressure to do so.  This Court can exert that pressure by ordering Petitioners' transportation to Yemen.

Habeas, unlike many other forms of action, is at its core a flexible, adaptable remedy well-suited to address the particular circumstances of any individual case.  *Boumediene*, 128 S. Ct. at 2267 ("Habeas is not 'a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.'") (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)).  Respondents' contention that, "petitioners have already been afforded meaningful relief in the sense that DoD has moved to the next step of identifying foreign governments to take custody of these petitioners and seeking to secure and facilitate their transfer" (Resp'ts' Mot. at 4) is in direct contradiction to the Supreme Court's holding in *Boumediene*.  Indeed, "identifying" the foreign government to take the men has been known for seven years.  They are Yemenis and want to go home to their families in Yemen.  The Supreme Court was clear in holding that " when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, *an order directing the prisoner's release*."  *Id.* at 2271 (emphasis added).  Accordingly, Petitioners will only have been provided meaningful relief when the government has been ordered to take the final step—releasing Petitioners to Yemen.  As that relief has yet to be ordered, these men have had no *meaningful* relief and to stay their cases would compound the miscarriage of justice here.

> **B.**     **The Only Thing the Court Must Do in Petitioners' Cases Is Order Relief; Therefore, a Stay Would Be Improper.**

As Respondents' point out in their motion, given that Petitioners have been cleared for release, litigating the merits of these cases is unnecessary.  Respondents have thus conceded that no hearing is necessary; the men can go home.  This Court need only provide Petitioners with

meaningful relief—an order for release. Petitioners are challenging the lawfulness of their detention and are requesting the Court to issue an Order for their immediate release. At the status conference held in this case on Friday, October 24, 2008, undersigned counsel asked the Court to use its "muscle" and issue an order that Petitioners be released. Given Respondents' track record of doing anything and everything to delay these cases, their plea to stay these cases pending their efforts to find a country to accept Petitioners is disingenuous, especially in light of the fact that the Government of Yemen has stated in unequivocal terms that it wants its men back. (See Ex. A, Letter from the Embassy of Yemen (Oct. 14, 2008); Ex. B, Powell Affidavit ¶ 3; Ex. C, Yemen Observer New Article.) The Supreme Court did not find it controversial when it held, "the habeas court must have the power to order the conditional release of an individual unlawfully detained …" *Boumediene*, 128 S. Ct. at 2266-67 (citations omitted).

Respondents' claim that, "[p]ractically speaking, it is possible that this process will be completed for these petitioners and that they will be transferred or released prior to the adjudication of their habeas claims, thereby rendering the cases moot" is also disingenuous. "The Executive is entitled to a reasonable period of time to determine a detainee's status before a court entertains that detainee's habeas corpus petition." *Boumediene*, 128 S. Ct. at 2276. Petitioners were notified on February 7, 2008 that they had been approved to leave Guantanamo. Respondents' reasonable period of time to determine Petitioners' status has long since passed. In addition, contrary to any separations-of-powers concerns Respondents claim, "few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person." *Id.* at 2277. Petitioners have been in custody for nearly seven years with no definitive judicial determination as to the legality of their detention. The Court has a duty to give an effective remedy.

Remedy is the defining attribute of the judicial branch. It is central to the "judicial power of the United States" vested in the federal courts by Article III of the Constitution. *Muskrat v. United States*, 219 U.S. 346, 356 (1911) ("judicial power . . . is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision"). Judicial decrees grant meaningful relief designed to right the wrong in a given case or controversy. *Murray v, Carrier*, 477 U.S. 478, 505 (1986) (correcting a "fundamentally unjust incarceration" is a judicial "imperative"); *Kendall v. United States*, 12 U.S. (Pet.) 524, 624 (1838) (It is "a monstrous absurdity in a well organized government that there should be no remedy, although a clear and undeniable right should be shown to exist."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (Our government "has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."); *see also* 3 W. Blackstone, COMMENTARIES 23 (1783) ("[W]here there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded.").

Remedy is particularly necessary in cases that present overreaching by one of the coordinate branches of government. *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 66 (1992) (judicial remedies "historically thought necessary to provide an important safeguard against abuses of legislative and executive power, as well as to ensure an independent judiciary"); *Nat'l Treasury Employees Union v. Nixo*n, 492 F.2d 587, 604-05 (D.C. Cir. 1974) ("[T]he judicial branch of the Federal government has the constitutional duty of requiring the executive branch to remain within the limits stated by the legislative branch."); *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 695 (D.C. Cir. 1971) (same).

Nowhere is the imperative for a judicial remedy more urgent than in *habeas*, which presents executive over-reaching at its starkest. "There is no higher duty of a court under our constitutional system than the careful processing and adjudication of petitions for writs of *habeas corpus*." *Harris v. Nelson*, 394 U.S. 286, 292-(1969); *see Swain v. Pressley*, 430 U.S. 372, 380 n.13 (1977); *Wingo v. Wedding*, 418 U.S. 461, 468 (1974) ("[T]he great constitutional privilege of *habeas corpus* historically provided a prompt and efficacious remedy for whatever society deems to be intolerable restraints. . . . [I]f the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."); *Carafas v. LaYallee*, 391 U.S. 234, 238 (1968) (declaring that the right to *habeas corpus* is "shaped to guarantee the most fundamental of all rights"); *Bowen v. Johnston*, 306 U.S. 19, 26 (1939) ("It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."). This is especially so in a case of "actual innocence." *Schlup v. Delo*, 513 U.S. 298 (1995). The Court exists as a bulwark against indefinite executive imprisonment. Absent remedy, there is no bulwark.

Given the overwhelming authority regarding *habeas* relief, Respondents' notion that Petitioners have been afforded "meaningful relief" in this case is utterly astounding. Absent release, there is no *habeas* remedy. Release is the only "meaningful" check on the Executive's unlawful imprisonment. Judicial power to order release is an essential attribute of *habeas*; the absence of a specific release remedy in the DTA was one reason it was an inadequate substitute for *habeas corpus*. 128 S. Ct. at 2271 ("[W]hen the judicial power to issue *habeas corpus* properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief,

including, if necessary, an order directing the prisoner's release."); *id*. at 2266 ("the *habeas* court must have the power to order the conditional release of an individual unlawfully detained").

As *Boumediene* teaches: "Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person." *Id.* at 2277. The Court noted that limitations on *habeas* raised "troubling separation-of-powers concerns," *id.* at 2258, and emphasized that "[b]ecause the Constitution's separation-of-powers structure, like the substantive guarantees of the Fifth and Fourteenth Amendments, protects persons as well as citizens, foreign nationals who have the privilege of litigating in our courts can seek to enforce separation-of-powers principles," *id*. at 2246 (citations omitted); *see id*. at 2259 (To hold the political branches have the power to switch the Constitution on or off at will . . . would permit a striking anomaly in our tripartite system of government, leading to a regime in which Congress and the President, not this Court, say "what the law is.") (quoting *Marbury*, 5 U.S. (1 Cranch) at 177). "The test for determining the scope of th[ese] provision[s] must not be subject to manipulation by those whose power [they are] designed to restrain." *Boumediene*, 128 S. Ct. at 2259.

Respondents' motion to stay the proceedings is nothing more than the Executive's latest attempt to manipulate the system. When the Executive has acted illegally—*i.e.*, beyond the scope of its constitutional powers, it is the constitutional duty of the judiciary to order the Executive to stop and the duty of the Executive to obey the judicial order. *See United States v. Nixon*, 418 U.S. 683, 703-05 (1974). Here, as in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the Government's request for a stay is an attempt to obtain the forbidden "blank check" that "serves only to *condense* power into a single branch of government." 542 U.S. at 536. This Court can

reject that claim, as *Hamdi* held it must, only by giving a remedy. *Id*. at 525 (asserting that the writ of *habeas corpus* "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law"). In *Boumediene*, the Court reaffirmed that *habeas corpus* is an "an indispensable mechanism for monitoring the separation of powers." 128 S. Ct. at 2259. But there are no protections at all without the remedy of release.

Respondents in the past have argued that it is for the United States Government, not the Court or private parties, to determine whether Yemen has satisfactorily assured that it will both take adequate steps to prevent a transferred detainee from posing a threat to our security and treat him humanely. (*See In re Guantánamo Bay Detainee Litig.*, Dkt. No. 835, Gov't Opp. Br. p. 24). The Court must not allow Respondents to further delay Petitioners' release while they work toward the "conclusion of appropriate diplomatic arrangements." (Resp'ts' Mot. at 4.) To do so would be to provide the Respondents with the forbidden "blank check."

Because the Yemeni government stands ready, willing, and able to take individual Petitioners Al-Nahdi and Al-Assani, there is simply no basis for further delaying Petitioners' cases. The fact that the government may currently be unable to negotiate an agreement with Yemen for the release of the nearly 100 Yemeni detainees who remain in Guantanamo is irrelevant to the analysis of whether Petitioners Al-Nahdi and Al-Assani, who have been cleared for release, can be transferred to Yemen. Yemeni nationality is not a valid basis for Petitioners' continued detention.

## CONCLUSION

The habeas petitions of Mssrs. Al-Nahdi and Al-Assani are ripe for immediate consideration and adjudication. Accordingly, Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release should be denied.

Respectfully submitted,

Counsel for Petitioners:

　　/s/ Richard G. Murphy, Jr.
Richard G. Murphy, Jr. (D.C. Bar No. 472769)
Brian C. Spahn (Pursuant to LCvR 83.2(g))
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2415
Telephone: (202) 383-0635
Facsimile: (202) 637-3593

Kristin B. Wilhelm (Pursuant to LCvR 83.2(g))
Sara Toering (Pursuant to LCvR 83.2(g))
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000
Facsimile: (404) 853-8806

John A. Chandler (Pursuant to LCvR 83.2(g))
King & Spalding LLP
1180 Peachtree St NE
Atlanta, Ga. 30309-3521
Telephone: 404-572-4646
Facsimile: 404 573 5142

December 19. 2008
Washington, DC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MOHAMMED AL-ADAHI**, *et al.* | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 05-280 (GK) |
| | ) | |
| **GEORGE W. BUSH**, *et al.*, | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

## [PROPOSED] ORDER

Upon consideration of Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release,

Respondents' Motion is **DENIED.**

Dated:

 

_____
The Honorable Gladys Kessler
United States District Judge

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2008 I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**David J. Stander**
david.stander@usdoj.gov

**Judry Laeb Subar**
judry.subar@usdoj.gov

**Paul Edward Ahern**
paul.ahern@usdoj.gov

**Scott Michael Marconda**
scott.marconda@usdoj.gov

**Terry Marcus Henry**
terry.henry@usdoj.gov

**Alexander Kenneth Haas**
alexander.haas@usdoj.gov

**Andrew I. Warden**
andrew.warden@usdoj.gov

**James C. Luh**
james.luh@usdoj.gov

**Kathryn Celia Mason**
Kathryn.Mason@usdoj.gov

**Rodney Patton**
rodney.patton@usdoj.gov


SUTHERLAND ASBILL & BRENNAN LLP
By:     /s/ Richard G. Murphy
Richard G. Murphy