

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED ABD AL AL QADIR Plaintiff-petitioner, v. GEORGE W. BUSH, *et al.*, Defendants-respondents. | Misc. No. 08-442 (TFH) No. CV 08-1185 (HHK) |

### PETITIONER'S RESPONSE TO ORDER OF 9/5/08 TO SHOW CAUSE WHY PETITION SHOULD NOT BE DIMISSED AS MOOT

# I. STATEMENT OF FACTS

1. **The Complaint and Petition**

On June 25, 2008, Mohammed Abd Al Al Qadir (ISN#284), a Guantanamo detainee, filed a Petition for Habeas Corpus and Complaint for Declaratory and Injunctive Relief[1] See: Document 1 (Complaint"). Mr. Al Qadir is an Algerian national.

The Complaint, filed in the wake of *Boumediene v Bush, 553 U.S. ___ (2008)* alleges that Mr. Al Qadir was unlawfully taken into custody detained by the United States, that he was detained unlawfully for over 6 and one half years, that he was held under unlawful conditions of confinement, and that his treatment throughout his detention violated U.S. and international law. It asserts that he "has never been an enemy alien, or a lawful or unlawful combatant of any kind under any definition . . . ;" that he has never been a member of any group hostile to the United States; (A.C. ¶15); and that he never caused or attempted to cause any harm to American personnel or property A.C. ¶15. He alleges that he was held in violation of the Executive Order 66 Fed. Reg. 57,833, §2 (Nov. 13, 2001) and that he should not have been subjected to the Executive Order that pertains to enemy combatants A.C. ¶19-21.

The Complaint additionally states that Mr. Al Qadir was illegally incarcerated in Guantanamo for over six years, during which he has been denied fundamental common law rights of due process and incarcerated and mistreated in violation of the United States. Constitution, laws, and treaties of the United States and international law. A.C. ¶10, 11, 18, 24, 25-34, and 37.

---

[1] See: Docket Entry No. 1, Petition for Writ of Habeas Corpus and Minute Order granting 20 petitioner's motion for leave to file first amended petition for habeas corpus. Docket entry nos. 20-21, entered: 09/01/2005.

The Complaint further alleges that he was subjected to conditions at Guantanamo that violated his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *Id.* The unlawful conditions included physical and psychological abuse. *Id.* .

The First, Second, Third and Fourth claims allege violations of common law and constitutional due process and violations of international law, including illegal incarceration by the defendants-respondents, and unlawful conditions of confinement. All four counts request declaratory and injunctive and all other appropriate relief. Three of the first four counts also request habeas relief.

The Fifth, Sixth, Seventh, Eighth, Ninth and Sixteenth Claims for Relief are brought under the Alien Tort Statute, 28 U.S.C. §1350, and request relief to be determined at trial as well as habeas, declaratory and injunctive relief. The Fifth claim alleges, torture; the Sixth, war crimes; the Seventh, cruel, inhuman or degrading treatment; the Eighth, arbitrary arrest and prolonged arbitrary detention; the Ninth, enforced disappearance. The Tenth claim also alleged unlawful detention based upon a separate legal theory and likewise seeks four remedies - - habeas, declaratory, injunctive and other appropriate relief which includes monetary and punitive damages.

The Administrative Procedure Act claims are set forth in the Eleventh, Twelfth and Thirteenth causes of action. These counts allege arbitrary and capricious detention, arbitrary and capricious denial of due process and torture, all in violation of governing administrative regulations and the Administrative Procedure Act. 5 U.S.C. §500, et. seq. Declaratory and injunctive relief is requested as well as habeas relief and all other relief which, again, includes monetary and punitive relief as the Court deems appropriate.

2. **Relevant Procedural History and Related History**

On August 26, 2008, the government notified undersigned counsel that Mr. Al Qadir had been transferred from U.S. custody to the custody of Algeria, also stating that the information regarding such transfer was no longer considered "Protected Information" per the Protective Order operative in the instant case. On September 1, 2008, the government filed notice that the United States had relinquished control of petitioner and transferred him to the custody of Algeria. On September 5, 2008, the court issued a Minute Order to the Petitioner to show cause why his petition should not be dismissed as moot. This brief is written in response to said Order.

To date the Defendants-Respondents have never answered the Petition-Complaint, nor have they filed a factual return, having instead filed a motion seeking relief from the Order that they do so on or before August 29, 2008. To the best of habeas counsel's knowledge, no related case or case where a detainee who has filed a habeas petition has been transferred to the authorities in another country has been disposed of on such grounds.[2] As of this date no discovery has been conducted, nor has the Court has taken substantive action on the numerous outstanding motions filed in this or related cases.[3]

---

[2] Respondents did, however file an Appeal with the Court of Appeals seeking to override this Court's Order regarding the 30-day notice. *Al Qadir, et al v. Bush, et al*, No. 05-5226 (D.C. Cir.). That appeal still is pending. Respondents have filed no suggestion of mootness in that case nor filed any other pleadings relative to the transfer. See F.R.App.P.23.

[3] Among other matters, the litigation regarding infringement of the attorney-client privilege is ongoing, and the request for appointment under the CJA has not been acted upon. See fn. 14 infra.

Undersigned counsel has no knowledge of the terms and conditions of the framework agreement under which Mr. Al Qadir's physical custody was transferred to the Algeria, despite having asked for same telephonically and in a letter to the Departments of Justice and Defense. The government has declined to provide any information regarding the existence or content of any such agreement and counsel is without the means to ascertain what terms and conditions may have been imposed by either government regarding Mr. Al Qadir's further detention and/or terms of release in Algeria. The government has not disclosed to counsel whether his continued detention is predicated on a written agreement (or otherwise) or whether the Algerian government has obligations to return him to American military or law enforcement personnel at any time or under what circumstances. We do not yet know whether as part of his transfer the United States required that he continue to be detained, or for what period of time or under what conditions he might be released or the facts and circumstances under upon his continued or future detention would or might be predicated. Nor for that matter do we even know whether Mr. Al Qadir has at all times since his transfer remained imprisoned in Algeria.[4]

## SUMMARY OF THE ARGUMENT

A transfer of a person who is incarcerated does not *per se* eviscerate the habeas jurisdiction of the Court, and the government in this case has proffered no evidence that would allow the court to determine that it has met its heavy burden to prove that the Court's habeas jurisdiction has been defeated. This Court should not prematurely

---

[4] We are aware of the Reuters report of this date, but have no knowledge whether Mr. Al Qadir is one of the nine, nor should he be one of the nine, what the conditions of the release might be.

preclude the Plaintiff-Petitioner from showing that notwithstanding the transfer, he, as a matter of fact and law, still is entitled to an adjudication of his habeas petition due to the collateral consequences of his adjudications and incarceration and/or that he effectively remains in the constructive custody of the United States government.

In addition and independent of the habeas claims, the transfer does not in any manner preclude judicial consideration of Plaintiff's monetary claims, the Alien Torts Claims, the Administrative Procedure Act Counts, the declaratory and injunctive claims and the other causes of action that have been pleaded. We first look at the Court's continuing habeas jurisdiction and then the ongoing extant controversies raised and remedies requested in the Complaint.

## ARGUMENT

### I. ON THE HABEAS COUNTS THE GOVERNMENT HAS NOT MET, OR EVEN ASSERTED THAT IT COULD MEET ITS BURDEN TO PROVE MOOTNESS

**1. Standard of Proof**

It is settled law that the government bears a "heavy burden of demonstrating mootness in a habeas petition." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Doe v. Harris*, 696 F. 2d 109, 112 (D.C. Cir. 1982). The government has neither met that burden in this case at this time nor even asserted that it could.

**2. Departure From The United States Does Not Defeat Habeas Jurisdiction**

It is well settled that a non-citizen's departure from the United States does not deprive a *habeas* court of jurisdiction because the "in-custody requirement must be satisfied only at the time the petition was filed." *Hiroshi Motomura, Immigration Law*

*and Federal Court Jurisdiction Through the Lens of Habeas Corpus*, 91 CORNELL L. REV. 459, 484 (2006) (collecting cases); *Zalawadia v. Ashcroft*, 371 F. 3d 292, 297 (5th Cir. 2004) ("The Supreme Court has made it clear that the 'in custody' determination is made at the time the *habeas* petition is filed . . . . (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968) (noting that 28 U.S.C. §2243 "contemplate[s] the possibility of relief other than immediate release from physical custody" and holding that "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application"); *Zegarra-Gomez v. I.N.S.*, 314 F. 3d 1124, 1127 (9th Cir. 2003) (petitioner's deportation does not moot *habeas* claim where petition was filed prior to release from custody); *Chong v. Dist. Dir., I.N.S.*, 264 F. 3d 378, 382-86 (3d Cir. 2001) (subsequent deportation did not defeat jurisdiction where petitioner was in custody on the date her petition was filed); *Smith v. Ashcroft*, 295 F. 3d 425, 428 (4th Cir. 2002) (petitioner need only have been in custody at time *habeas* petition filed to avoid jurisdiction challenge); *Leitao v. Reno*, 311 F. 3d 453, 455-56 (1st Cir. 2002) (same). Thus, even if jurisdiction in this case were predicated solely on the *habeas* statute (which it is not), the transfer of Mr. Al Qadir to Algeria does not eliminate habeas jurisdiction to review the issues presented and to provide appropriate relief. The governing legal principle is that even if a person is released from custody, a habeas corpus petition remains justiciable, that is, not moot, throughout the entire period required to adjudicate the petition at trial, on appeal, and on *certiorari* – as long as, at the time the federal petition was filed, the petitioner was subject to incarceration. R. Hertz & J. Leibman,

*Federal Habeas Corpus Practice and Procedure*, §8.2b – 2d (Matthew Bender, 5th Ed.) p. 407.

3. **The Petitioner May Still Be In Constructive Custody Of Respondents**

In addition, as a separate and continuing basis for habeas jurisdiction, as pointed out in the Statement of Facts, we do not know whether Mr. Al Qadir remains constructively in the custody of the defendants-respondents. He may well be. Certainly the government has not carried its burden to prove to the contrary. Incarceration and other restraints imposed as part of his transfer to Algeria would constitute custody and an independent basis for both initial and continued habeas jurisdiction. The case law is replete with cases that stand for the proposition that virtually any restraint on the petitioner's liberty is sufficient to defeat mootness and to maintain a live case or controversy.[5] The government has not met its burden, and the petitioner should not be

---

[5] See, e.g. *Jackson v. Coalter*, 337 F. 3d 74, 79 (1st Cir. 2003) (petitioner "remains under supervised probation...[and] [t]hus, he is still sufficiently 'in custody' to pursue federal habeas corpus relief"); *Krantz v. Briggs*, 983 F.2d 961, 962 n.1 (9th Cir. 1993); *Olson v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992); *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1252 (2005) (Kennedy, J. dissenting) ("Challenges to parole proceedings are cognizable in habeas .... In recognition of this elementary principle, this Court and the Courts of Appeals have adjudicated the merits of many parole challenges in federal habeas corpus proceedings." (and citations); *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (As long as Petitioner had the requisite status when the petition was filed, subsequent changes in that status will not moot the petition."; reaffirming rule of *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *Matus-Leva v United States*, 287 F.3d 758, 761 (9th Cir. 2002) *cert. denied.* 537 U.S. 1022 (petitioner, who had completed term of incarceration, "is still subject to supervised release, and thus he is 'in custody'" for habeas corpus purposes); *Barry v Bergin County Probation* Dep't, 128 F.3d 152, 159-62, (3d Cir. 1997) *cert.denied*, 522 U.S. 1136 (1998) (court-ordered community service constituted 'custody' even though the only consequence of violation of the court-ordered community service would be a fine.) For a more exhaustive list of cases that show examples of incarceration and post-incarceration statuses that constitute a sufficient 'restraint' to defeat mootness, see *Federal Habeas Corpus Practice and Procedure, supra*, at 409-415, & n.40-60.

precluded from engaging in the discovery necessary to show that he is being subjected to continuing restraint.

4.   **Regardless Of Whether Or Not Petitioner Remains In The Custody Of The United States Government, The Habeas Counts Are Not Moot Due To The Collateral Consequences Of The Incarceration And The Adjudications Upon Which Petitioner's Incarceration Was Based**

The practical effect that Mr. Al Qadir continues to suffer, the collateral consequences arising from the Executive's illegal conduct, with respect to both the detention and the transfer, is plain and precludes a finding of mootness. *See Zalawadia v. Ashcroft*, 371 F. 3d 292, 298 (5th Cir. 2004) (alien's dismissed *habeas* petition presented a live case or controversy and was not moot even though he was removed while his appeal was pending, where his removal barred him from seeking reentry into the United States for five years); *Zegarra-Gomez v. I.N.S.*, 314 F. 3d 1124, 1127 (9th Cir. 2003); *Chong v. District Director of I.N.S.*, 264 F. 3d 378, 382-86 (3rd Cir. 2001); *Tapia Garcia v. I.N.S.*, 237 F. 3d 1216, 1218 (10th Cir. 2001); *Leitao v. Reno*, 311 F. 3d 453, 455-56 (1st Cir. 2002).

Release from incarceration does not defeat continued consideration of, and jurisdiction over, a habeas petition if the incarceration or the official administrative or judicial judgment that lead to that incarceration may have any collateral consequences. *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *Fiswick v. United States*, 329 U.S. 211, 222 (1946); see, *Spencer v. Kemna*, 523 U.S. 1, 8, 12 (1998) (collateral consequences allow for continued jurisdiction even when remote and unlikely to occur). *Sibron v. New York*, 392 U.S. 40, 50-58 (1968); *Minnesota v. Dickerson*, 508 U.S. 366, 371 n. 2 (1993) (retention of a non-public record of dismissed charges by Department of Public Safety constitutes a collateral consequence that continues a live controversy that makes the case justiciable). *DePompei v. Ohio Adult Parole Auth.*, 999 F. 2d 138, 140 (6th Cir. 1993). ("mere possibility that [collateral] consequences could exist is sufficient to preserve a live

controversy."). The adjudicatory proceedings, the CSRT and the ARB(s), have had the practical consequence of causing incarceration in Algeria, an incarceration that would not occur had he been adjudicated not an enemy combatant (NEC). Continued incarceration in another jurisdiction or another country self-evidently is a collateral consequence for which habeas jurisdiction continues. See *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 466 n. 46 (S.D. Fla. 1980), aff'd and judgment modified *sub nom. Haitian Refugee Ctr. v. Smith*, 676 F. 2d 1023, (5th Cir. 1982) (*risk* of persecution in Haiti, if members of Plaintiff class are deported, surely sufficient to avoid mootness).

In addition, Mr. Al Qadir's adjudications as an enemy combatant has the additional collateral consequence of precluding his entry into the United States under, for example, 8 U.S.C. §1182 (a)(3)(B), and to travel to other countries upon his release in Algeria, a collateral consequence that preserves habeas jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 8, 12 (1998) (collateral consequences of conviction sufficient to avoid mootness include risk of deportation, exclusion or denial of naturalization); *United States v. Romero-Vilca*, 850 F. 2d 177, 179 (3rd Cir. 1988) (potential for deportation caused by conviction constitutes an adequate collateral consequence to preserve justiciability of habeas claim); *Geren v. Arn*, 839 F. 2d 300, 302 (6th Cir. 1988), *cert. denied*, 489 U.S. 1034 (1989) ("mere possibility of adverse collateral consequences sufficient to preserve a live controversy").

Yet another collateral consequence is the stigma of the adjudications in a United States tribunal as an enemy combatant, a violent person who needed to be incarcerated for many years. The decided case law demonstrates that justiciability remains in tact because of such a collateral consequence. In *Demjanjuk v. Petrovski*, 10 F. 3d 338, 355-

66 (6th Cir. 1993), for example, the Court relied on established habeas corpus law on mootness in ruling that *Demjanjuk's* acquittal and release in Israel did not moot his claim of unlawful extradition from the United States. The Court of Appeals found that there were collateral consequences in his having been subject to the stigma of being found by the District Court to be Ivan The Terrible.[6]

### 6. Conclusion As To Habeas Counts

Certainly on this record, the government has not met its burden under *County of Los Angeles v. Davis*. Even if the government could prove (which it has not) that it has relinquished both *de facto* and *de jure* control of Mr. Al Qadir, it could not meet its formidable burden to prove lack of any collateral consequences. Collateral consequences can be founded upon future litigation and/or other legal consequences or practical consequences. Here, there are both.

## II. THE NUMEROUS OTHER CLAIMS, CAUSES OF ACTION AND REQUESTS FOR RELIEF ARE NOT MOOTED BY THE TRANSFER

### 1. Introduction and Summary

It is well established that the mooting of one issue in a case does not moot the entire case, even if the plaintiff's primary injury is resolved. *See University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981) ("this, then, is simply another instance in which one issue in a case has become moot, but the entire case as a whole remains alive because other issues have not become moot."); *see also Fulton Corp. v. Faulkner*, 516 U.S. 325,

---

[6] Another collateral consequence is the reported infringement of Mr. Al Qadir's attorney-client privilege. On or about July 7, 2006, the government noticed habeas counsel and the Court that it had unilaterally seized what it estimated to be 1100 pounds of attorney-client materials from Guantanamo detainees, including Mr. Al Qadir, and sought an order approving procedures for reviewing the materials, admitting that some of it had already been reviewed. Litigation regarding that seizure is ongoing. See fn. 6 supra.

12

327 n. 1 (1996) (repeal of a state tax did not moot a refund action for years when the tax was in effect); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370-71 (1982) (case not moot because plaintiffs would be entitled to $400 damages if defendants were found liable); *Powell v. McCormack*, 395 U.S. 486, 495-500 (1969) (plaintiff's right to injunctive relief to test the validity of his ouster from the House of Representatives was mooted by his reelection, but his right to present the issue on his claim to recover his lost salary was not moot); *Ellis v. Railroad Clerks*, 466 U.S. 435, 442 (1984) (although claim for injunctive relief was moot because the bargaining representative was decertified, the damages claim kept the case alive even though "[t]he amount at issue is undeniably minute"); Erwin Chemerinsky, Federal Jurisdiction §2.5.2 at 130 (4th ed. 2003).

2. **Claims For Declaratory And Injunctive Relief**

The Petitioners' claims for declaratory and injunctive relief are live issues upon which the Court is fully authorized to award relief. See 28 U.S.C. §2106, §1651(a); *Gov't Procurement v. Fed. Prison Indus.*, 365 F. 3d 435, 461 (6th Cir. 2004) (relying on request that district court grant "any other such relief as is necessary" in finding case not moot on appeal); *Intrepid v. Pollock*, 907 F. 2d 1125, 1131 (Fed. Cir. 1990) ("Mootness of an action relates to the basis of the dispute between the parties, not merely the relief requested. Thus, although subsequent acts may moot a request for particular relief or a count, the constitutional requirement of a case or controversy may be satisfied by the availability of other relief.").

Mr. Al Qadir has raised important constitutional and international law questions about his detention and incarceration. These allegations at a minimum deserve a judicial determination as to whether his rights were violated. This consideration has added heft

because the government continues to insist that all its actions against Mr. Al Qadir were legal. See, *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42-43 (1944).

Like a habeas action, a declaratory judgment action is moot only if it is absolutely clear that interim events have completely and irrevocably eradicated the effects of "an allegedly improper ruling." *Wong v Department of State*, 789 F.2d 1380,1384 (9th Cir. 1986). Here, the Respondents adjudicated petitioner an enemy combatant, which he has repeatedly denied. That designation certainly will have a lasting adverse effect on this 21-year-old petitioner. Indeed, the stigma of that determination itself - - that he posed a threat to the United States as a violent person in violation of his heritage and his religious beliefs - - in and of itself, is a sufficient pragmatic collateral consequence significant to maintain a live action for declaratory relief. *Connell v. Shoemaker*, 555 F. 2d 483, 486-487 (5th Cir. 1977). *Demjanjuk v. Petrovski*, 10 F. 3d 338, 355-66 (6th Cir. 1993).

In a declaratory judgment case, as in a habeas count, the heavy burden of establishing mootness rests squarely on the party raising it. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003), citing *U.S. v. Grant Co., 345 U.S. 629, 633 (1953)*. Here, the government has not and cannot met its burden. Mr. Al Qadir seeks to have this Court declare his rights and the unlawfulness of the procedures resulting in his designation and in the designation itself. He is entitled to that declaration.[7]

---

[7] The considerations regarding injunctive relief are similar. The appropriate relief will be influenced significantly by the results of discovery, and perhaps trial, once the stay is dissolved or modified. The District Court retains broad equitable power to remedy constitutional violations; those orders should be tailored to fit the constitutional violation that is established. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); similarly see, *Miller v. French*, 530 U.S. 327, 338 (2000) (statute should not be construed to displace a court's traditional equitable authority absent the "clearest [statutory] command").

3.  **The Claims for Monetary Damages**

Numerous counts in the Complaint set forth damage claims. It is settled law that claims that involve damages, as many counts in this Complaint do, including but certainly not limited to Alien Tort claims statute, are automatically preserved against mootness. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 n. 1 (1989); *Deakins v. Monaghan*, 484 U.S. 193, 201 (1988). The potential for damages is sufficient to defeat mootness even if the claim for damages would have to be pursued in a separate court, i.e., the United States Claims Court, *British Caledonian Airways v. Bond*, 665 F. 2d 1153, 1158 n. 2, 214 U.S. App. D.C. 335 (1981), a condition not applicable to the claims in Mr. Al Qadir's Complaint.

4.  **The Alien Tort Statute Claims**

The Complaint contains five counts brought pursuant to the Alien Tort Statute, 28 U.S.C. § 1350. Those counts allege that Respondents engaged in acts that directed, ordered, confirmed, or ratified, and/or conspired to bring about the cruel, degrading and/or inhumane treatment of Mr. Al Qadir, and that such acts violated specific provisions and Protocols of the Geneva Conventions, including Common Article III; customary international law of war; certain other multilateral treaties and international instruments; as were international and domestic judicial decisions; and other authorities.

These claims are entitled to their day in court, particularly in light of the Supreme Court's confirmation of the applicability of the Conventions in *Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S.Ct. 2749 (2006).[8]

---

[8] In *Hamdan* the majority ruled that the commissions and procedures established by the United States Government to try Guantanamo detainees were illegal, and specifically

The Alien Tort Claims Act confers jurisdiction in this Court to hear actions by an alien for a tort only committed in violation of the law of nations or a treaty of the United States." U.S.C. §1350. *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F. 3d 1467, 1501-1503 (9th Cir. 1994), cert. denied, 513 U.S. 1126; *Abebe-Jira v. Negewo*, 72 F. 3d 844 (11th Cir. 1996), cert. denied, 117 S.Ct. 96; *Filarnga v. Pena-Irali*, 630 F. 2d 876, 877 (2nd Cir. 1980). The Complaint here alleges numerous torts committed against this Saudi national by the defendants and their agents. The torts include assaults and batteries and false imprisonment. More specifically, they allege violations of the Geneva Conventions, the Law of War, and Treaties that proscribe certain procedures on detention and the treatment of juveniles. Mr. Al Qadir's complaint alleges torture and abuse, treatment that violates the norms of human behavior recognized by a consensus of the international community. *Hilao v. Estate of Marcos*, 25 F. 3d 1467, 1474-1479 (9th Cir. 1994) cert. denied, 513 U.S. 1126 (1996); *Abede-Jira v. Negewo*, 72 F. 3d 848 (11th Cir. 1996), cert. denied, 117 S.Ct. 96. The torture counts are clearly actionable. *Alvarez-Machain v. United States*, 107 F. 3d 696 (1997), cert. denied, 118 S.Ct. 60; *Hilao, supra*; *Abede-Jira, supra*; *Enahoro v. Abubakar*, 408 F. 3d

---

found the deficent procedures to be violative "at least" of applicable Common Article 3 of the Geneva Conventions. The Court ruled that Article 3 affords minimal protection to combatants, including the right to be tried by a "regularly constituted court." The court did not illuminate what other language, protections, and/or prohibitions of the Geneva Conventions otherwise apply to Mr. Hamdan, or for that matter, to any individual Guantanamo detainee. But for purposes of the mootness question presented here, the high court made it clear that it preserved as viable a claim for violation of the applicability of Geneva protections Article 5 of the Third Geneva Convention requires that if there be "any doubt" whether he is entitled to prisoner-of-war protections, he must be afforded those protections until his status is determined by a "competent tribunal." Mr. Al Qadir was denied this protection. Similarly, see claims for violation of his rights as a juvenile. A.C. ¶102-111.

877 (7th Cir. 2005); *Chavez v. Carranza*, 413 F. Supp. 2d 891 (W.D. Tenn. 2005).[9] Likewise the claims that there were violations of Mr. Al Qadir's rights under treaties to which the United States is a party remain actionable. *Jogi v. Piland*, 425 F. 3d 367, 385, 386 (7th Cir. 2005). *Bolchos v. Darrel*, 3 F. Cas. 810 (D.C.S.C. 1795). The transfer does nothing to moot these claims.

5.  **The Administrative Procedure Act Counts**

The Complaint asserts that the Defendants have violated the Administrative Procedures Act by flagrantly disregarding the applicable Army regulations that should have governed detention of Mr. Al Qadir and his treatment at Guantanamo. A.C. ¶¶19-24, 74-92, 99-101. These allegations demonstrate violations of the APA which are actionable, and for all the reasons and legal arguments stated above with regard to a continuing case and controversy on monetary claims, requests for declaratory and injunctive relief and the other causes of action, the APA counts are not mooted by the transfer. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 220 (2000) (even new governing procedures do not moot APA violations unless it is "absolutely clear" that litigant has no need of any judicial protection.

## CONCLUSION

---

[9] See, Bergen and Valentine, "The Dangerous World of Indefinite Detentions: Vietnam to Abu Ghraib," 37 Case Western Reserve Journal of International Law 449 (2006), where the authors propose that "where you find administrative detentions, you are likely to find torture," attributing as fundamental reasons "the elements of administrative detention itself: the absence of human rights safeguards and normal legal guarantees . . . id. at 449-450, . . . "The Guantanamo detainees," the authors note, . . . "were [not] given combant status review hearings until two years after their capture and several months following the Supreme Court rulings that required them. . . Torture has been documented at Guantanamo." Id. At 458-459.

The applicable law is settled. An event that occurs during the pendency of a case, i.e., a defendant's unilateral cessation of the conduct that precipitated a suit by the plaintiff, moots a case only "when that event makes it impossible for the court to grant *'any effectual relief whatever'*" to the plaintiff, because there is no longer a justiciable controversy under Article III, *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); (emphasis added) *Public Utilities Com'n of Calif. v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). Conversely, when as here, the plaintiff continues to suffer collateral consequences (and perhaps direct and immediate continued incarceration) as a result of the defendant's challenged conduct, a justiciable case or controversy remains, and the habeas case is not moot. In addition, here there are numerous other remedies sought and causes of action pleaded that are in no way affected by the transfer.

The physical transfer of Mr. Al Qadir to the physical custody of another government does not undo the six and one half years of wrongful detention, and the conditions, he suffered. While Mr. Al Qadir's Complaint, among other relief, of course, sought his release from Guantanamo, nothing in the Guantanamo Detainee cases would indicate the *only* effectual relief for his claims was a transfer to the custody of Algeria. *See generally: In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005); *Boumediene v Bush, 553 U.S. ___ (2008)*. Nothing in those cases vitiates his other claims or applicable law on the continuing viability of his habeas, injunctive, declaratory, and monetary claims. In fact, *Boumediene* specifically assures Mr. Al Qadir and every Guantanamo detainee the meaningful opportunity to demonstrate he was held pursuant to an erroneous application or interpretation of relevant law, assure that a reviewing decision-making process has some ability to correct errors, the right to ask for an

assessment of the sufficiency of the government's evidence, and the right to have the reviewer consider relevant exculpating evidence.

The burden of demonstrating mootness, as we have stated, "is a heavy one," see *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F. 3d 449, 459 (D.C. Cir. 1998), and is particularly stringent where, as here, a mootness claim would necessarily and erroneously be predicated upon the defendants' voluntary cessation of only one part of their conduct. Mootness must be "absolutely clear." See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309-10 (1897). Here, mootness is absolutely precluded because the government has insisted that it may continue to engage in fundamentally the same conduct that led to the claims themselves.[10]

Mr. Al Qadir has serious, abiding and concrete interests in the habeas determination and in pursuing the other counts in his Complaint. "[So] long as the

---

[10] The collateral or future consequences exception to the mootness doctrine often applies in cases which the underlying claim, as here, has public importance or significant constitutional overtones. 15 James Wm. Moore, Moore's Federal Practice § 101.99[3] 101-194.6 (3d ed. 2006). "These types of cases generally survive claims of mootness because the plaintiff, typically [as he does here], will not only challenge specific or isolated actions by a defendant but also the ongoing policy that prompted the action." *Id.* & n. 19 (citing cases). In addition, we note that voluntary cessation is a major exception to the mootness doctrine "Only if there is no reasonable chance that the defendant could resume the offending behavior is a case deemed moot on the basis of voluntary cessation." Erwin Chemerinsky, Constitutional Law (Aspen Pub. 2001) p. 74. Here, the defendants have engaged in voluntary cessation with regard to only one of many aspects of the case, i.e., holding the plaintiff at Guantanamo. That voluntary cessation falls squarely within the exception to the mootness doctrine. The collateral consequence rule is, of course, a separate and distinct basis for continuing habeas and declaratory judgment jurisdiction.

19

parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 442 (1984). The government has not met its burden. This case is not moot.

Dated: September 16, 2008

Respectfully submitted,

By: _____
Jerry Cohen
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000

Stewart Eisenberg
WEINBERG & GARBER, PC

71 King Street

Northampton, MA 01060

Tel: (413) 582-6886
Fax: (413) 582-6881
buz.e@verizon.net

OF COUNSEL:
Zachary Katznelson
Cal. Bar. No. 209489
Legal Director
Reprieve

PO Box 52742

London EC4P 4WS
United Kingdom
Tel: 011-44(0) 207-353-4640
Fax: 011-44(0) 207-353
Zachary@Reprieve.org.uk

Shayana Kadial
DC Bar No. 454248
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012-2317
Tel: (212) 614-6438
Fax: (212) 614-6499

*Counsel for Mohammed Abd Al Al Qadir*

Certificate of Service

Petitioner has given notice of this filing by email to counsel for Respondents this 16th day of September 2008.

_____
Jerry Cohen