# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE:** ) | |
| ) | |
| **GUANTANAMO BAY** ) | |
| **DETAINEE LITIGATION** ) | Misc. No. 08-442 (TFH) |
| ) | |
| **AMER MOHAMMON,** *et al.,* ) | |
| (Jabbarov Oybek Jamolivich) ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-2386 (RBW) |
| ) | |
| **GEORGE W. BUSH,** *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |

## PETITIONER JAMOLIVICH'S OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS FOR PETITIONERS APPROVED FOR TRANSFER OR RELEASE

Petitioner Jabbarov Oybek Jamolivich (ISN 452) hereby offers this Opposition to

Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release.

Petitioner has been in U.S. custody for seven (7) years. He has been imprisoned at Guantanamo

Bay since June 2002. He has been "approved to leave Guantánamo" since February 2007.

**Exhibit A**. While Respondents' take great pains to point out that Petitioner is "approved for

transfer or release," time has shown that this approval is utterly meaningless. Mr. Jamolivich has

waited nearly two years for the Respondent's to make the "necessary and appropriate diplomatic

arrangements" for his release from Guantánamo. Now Respondents want to attach the lowest

priority to Petitioner's habeas case because he has already "been afforded meaningful relief,"

(Resp'ts' Mot. at 4.) and that a stay will "serve the broader purposes of judicial economy and

fairness." (Resp'ts' Mot. at 4-5.).

Dockets.Justia.com

Respondents are mistaken as to the relief sought in Petitioner's habeas case. The relief

sought is not another year languishing in a maximum security prison while senior officials from

the State Department continue with their feckless "diplomatic dialogue." (Resp'ts' Mot. at 2).[1]

Rather, the "meaningful relief" sought by Petitioner is <u>release</u>. As between being held hostage to

further futility on behalf of those empowered by the Respondents to make "the necessary and

appropriate diplomatic arrangements" for transfer or release, on the one hand, and the possibility

of relief afforded by his habeas petition on the other, Petitioner Jamolivich chooses habeas,

rather than the empty promise of the Respondents' Motion to Stay.

This Court has the jurisdictional authority to issue an Order that will allow Petitioner to

be released from his seven years of unlawful imprisonment. Respondents' motion must be

denied.

## BACKGROUND

Petitioner should no longer be a victim to the Respondents' campaign of delay. The

Supreme Court could not have been clearer when stating:

> While some delay in fashioning new procedures is unavoidable, the costs of delay can no
> longer be borne by those who are held in custody. The detainees in these cases are
> entitled to a prompt habeas corpus hearing.

*Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008). Nevertheless, despite having been cleared

for release for nearly two years ago, Petitioner continues to bear the unimaginable cost of

Respondents' delay.

---

[1] See Williamson Dec. at ¶5 ("In cases where approved detainees cannot be transferred to their countries nationality because of humane treatment concerns, the Department of State communicates with foreign governments to explore third-country resettlement possibilities. More than 60 countries have been approached to date with respect to various detainees who fall within this category, and the only country where the U.S. Government has had success in resettling detainees with no prior legal ties to that country is Albania.")

Respondents' Motion is premised upon the fallacy that being "approved for transfer or release" is equivalent to the relief afforded by habeas. Nothing could be further from the truth. Petitioner has been "approved to leave Guantánamo" since February 22, 2007. Yet he remains locked behind the metal bars and concrete walls of a maximum security prison, without charge. At the same time, three (3) Algerians, who prevailed in their habeas cases after a full and rigorous review by a Court, were recently ordered released by Judge Leon. Soon after, the men were returned to their adopted homes in Bosnia and reunited with their families. At no time prior to the conclusion of their habeas cases were these three men ever "approved for transfer or release" or "cleared for release." Yet they are now home while Petitioner enters his eighth year of imprisonment without charge.

Petitioner's case may more closely resemble the situation of the seventeen (17) remaining Uighur detainees, who prevailed in their habeas cases but remain imprisoned at Guantánamo because they cannot be returned to their homeland (China) for fear of persecution and no third country has agreed to accept them for resettlement. [2] Respondents have successfully thwarted the Uighurs' Court ordered release into the United States. Still, in briefing before the Court of Appeals, and at the recent oral argument in *Kiyemba v. Bush*, the Solicitor General made much of the fact that the Uighur detainees were now being held in a less restrictive environment within the Guantánamo prison complex. According to published reports, the men are allowed to circulate freely, play soccer, eat meals together, and to do their own laundry. Yet, Petitioner Jamolivich, despite being "approved to leave Guantánamo" almost two years ago, has seen no

---

[2] Repatriation is clearly not an option for Petitioner, even though the Respondents refuse to acknowledge this, since Petitioner hails from a country with one of the worst human rights records on the planet. *See, e.g.,* U.S. Department of State *2006 Country Reports on Human Rights Practices in Uzbekistan*, available at http://www.state.gov/g/drl/rls/hrrpt/2006/78848.htm.

improvement in his conditions of confinement and enjoys none of the "perks" afforded the Uighurs. Instead, he continues to be imprisoned in one of the harshest environments within the Guantánamo prison complex.

Petitioner is "approved for transfer or release," but the three Algerian detainees, who were never so labeled, received the benefit of a habeas hearing and are now free. The 17 Uighurs continue to await their judicially ordered habeas relief, but have at least seen an improvement in their conditions of confinement. In this light, as applied to Petitioner Jamolivich, how can the government possibly argue that being "approved for transfer or release" equals the relief afforded by habeas?

Respondents further complicate its task of finding a third country to accept the Petitioner for resettlement by clinging to the fiction that Petitioner is an "enemy combatant." Never mind that Respondents have never charged Petitioner with any crime, nor will they, but this erroneous designation not only continues to serve as the basis for his imprisonment, it completely undermines any efforts by the State Department to attempt to find a third country to accept Petitioner for resettlement.[3] One can hardly blame foreign governments for declining to accept detainees from Guantánamo for resettlement when the Respondents refuse to concede that Petitioner is not an "enemy combatant."

If the Respondents are truly concerned about the allocation of resources, and are as little interested in the legal merits of their position as the Motion to Stay appears to suggest, then the Respondents can concede the case as to liability, and move to the remedy phase. This would

---

[3] *See* Paul O'Brien, *Martin signals Guantánamo detainees will be accepted*, Irish Examiner, December 29, 2008 (quoting Irish Foreign Affairs Minister Micheál Martin as stating "We clearly wouldn't be interested in taking anyone who has any hint of a terrorist background at all. That would be out of the question.") available at http://www.examiner.ie/irishexaminer/pages/story.aspx-qqqg=ireland-qqqm=ireland-qqqa=ireland-qqqid=80842-qqqx=1.asp.

result, if the Solicitor General is to be believed, in an immediate and dramatic improvement in Petitioner's quality of life while diplomatic efforts proceed. If Respondents are unwilling to concede that Petitioner is no longer an enemy combatant, then Petitioner must be given the opportunity to clear his name by proving the invalidity of the Respondents' enemy combatant designation through a robust habeas proceeding.

Respondents cite a six-month-old declaration of Ambassador Clint Williamson as evidence that they are working hard to transfer Petitioner to a third country. While it would be interesting to see what efforts Ambassador Williamson has made since executing his Declaration in July 2008, we already know the result. Despite having approached more than 60 foreign nations, his efforts have been an exercise in futility. *See* Williamson Dec. ¶ 5. No country, save Albania, has agreed to resettle a detainee from Guantánamo who could not be safely repatriated, and not one single detainee has been resettled in a third country since Ambassador Williamson executed his declaration. What exactly do the Respondents expect to accomplish while Petitioner's case is stayed that they have not yet been able to do in the last twenty-two (22) months since the Petitioner was first "approved to leave Guantánamo?" Especially when Respondents insist on maintaining this absurdity that Petitioner remains an "enemy combatant," and, ostensibly, part of "the worst of the worst." Petitioner has had his fill of Respondents' "diplomatic dialogue." Petitioner wants a hearing on the merits in a Court of law. This Court has the authority to say, "enough is enough."

## ARGUMENT

I.     **THE COURT SHOULD EXERCISE ITS DISCRETION AND DENY RESPONDENTS' MOTION.**

      A.     **As Petitioner's Case Is Ripe for Adjudication, a Stay Would Do Nothing But Delay Justice.**

This Court has the discretion to stay proceedings or not in light of particular circumstances of a case. *United States v. Stover*, 576 F. Supp. 2d 134, *28 (D.D.C. 2008) (citation omitted). Accordingly, the circumstances of this case are such that the Court should deny Respondents' motion for a stay. Petitioner should not remain in limbo during the adjudication of other habeas proceedings that have no relation to nor impact on the particular facts and circumstances underlying his habeas petition. *Harris v. Nelson*, 394 U.S. 286, 292, 89 S. Ct. 1082, 1086 (U.S. 1969) ("A habeas corpus proceeding "must not be allowed to founder in a 'procedural morass.'").

Habeas, unlike many other forms of action, is at its core a flexible, adaptable remedy well-suited to address the particular circumstances of any individual case. *Boumediene*, 128 S. Ct. at 2267 ("Habeas is not 'a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.'") (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). Respondents' contention that, "petitioners have already been afforded meaningful relief in the sense that DoD has moved to the next step of identifying foreign governments to take custody of these petitioners and seeking to secure and facilitate their transfer" (Resp'ts' Mot. at 4) is in direct contradiction to the Supreme Court's holding in *Boumediene*. The Supreme Court was clear in holding that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, *an order directing the prisoner's release*." *Id.* at 2271 (emphasis added). Accordingly, Petitioner will only receive meaningful relief when the government has been ordered to take the final step— releasing Mr. Jamolivich. As that relief has yet to be ordered, Petitioner has had no *meaningful* relief and to stay his case would compound the miscarriage of justice here.

Contrary to Respondents' Motion, circumstances have not mooted Petitioner's habeas case so as to warrant a stay. Petitioner has been in U.S. custody for seven (7) years. He is held at Camp 6, a maximum security prison, in isolation twenty-two (22) hours a day. He gets two hours of recreation that can come at any time, day or night, in what can best be described as a dog run. He has not been charged in the Military Commissions process, nor will he in all likelihood. He has been separated from his wife and two sons for seven years. He has never laid eyes on his youngest son, who was born just after Petitioner was handed over to U.S. soldiers by elements of the Northern Alliance, undoubtedly in exchange for a cash bounty. The circumstances of his case are not ripe for a stay, so as to allow for more feckless diplomatic dialogue. Petitioner's case is ripe for adjudication.

**B.      The Only Thing the Court Must Do in Petitioners' Cases Is Order Relief; Therefore, a Stay Would Be Improper.**

As Respondents' point out in their motion, given that Petitioner has been cleared for release, litigating the merits of these cases is unnecessary. Respondents have thus conceded that no hearing is necessary and the Court should treat this as an admission that Petitioner is not an "enemy combatant." This Court need only provide Petitioner with meaningful relief – an order for release. Petitioner is challenging the lawfulness of his detention and is requesting the Court to issue an Order for his immediate release. Given Respondents' track record of doing anything and everything to delay these cases, their plea to stay Petitioner's case pending their efforts to find a country to accept Petitioners is disingenuous, especially given their near total failure in this regard. *See* Williamson Dec. ¶ 5. The Supreme Court did not find it controversial when it held, "the habeas court must have the power to order the conditional release of an individual unlawfully detained …" *Boumediene*, 128 S. Ct. at 2266-67 (citations omitted).

7

Respondents' claim that, "[p]ractically speaking, it is possible that this process will be completed for these petitioners and that they will be transferred or released prior to the adjudication of their habeas claims, thereby rendering the cases moot" is also disingenuous. "The Executive is entitled to a reasonable period of time to determine a detainee's status before a court entertains that detainee's habeas corpus petition." *Boumediene*, 128 S. Ct. at 2276. Petitioner was notified on February 22, 2007 that he had been approved to leave Guantanamo. Respondents' reasonable period of time to determine Petitioner's status has long since passed. In addition, contrary to any separations-of-powers concerns Respondents claim, "few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person." *Id.* at 2277. Petitioner has been in custody for more than seven years with no definitive judicial determination as to the legality of his detention. The Court has a duty to give an effective remedy.

Remedy is the defining attribute of the judicial branch. It is central to the "judicial power of the United States" vested in the federal courts by Article III of the Constitution. *Muskrat v. United States*, 219 U.S. 346, 356 (1911) ("judicial power. . .is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision"). Judicial decrees grant meaningful relief designed to right the wrong in a given case or controversy. *Murray v, Carrier*, 477 U.S. 478, 505 (1986) (correcting a "fundamentally unjust incarceration" is a judicial "imperative"); *Kendall v. United States*, 12 U.S. (Pet.) 524, 624 (1838) (It is "a monstrous absurdity in a well organized government that there should be no remedy, although a clear and undeniable right should be shown to exist."); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (Our government "has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this

high appellation, if the laws furnish no remedy for the violation of a vested legal right."); *see also* 3 W. Blackstone, COMMENTARIES 23 (1783) ("[W]here there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded.").

Remedy is particularly necessary in cases that present overreaching by one of the coordinate branches of government. *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 66 (1992) (judicial remedies "historically thought necessary to provide an important safeguard against abuses of legislative and executive power, as well as to ensure an independent judiciary"); *Nat'l Treasury Employees Union v. Nixo*n, 492 F.2d 587, 604-05 (D.C. Cir. 1974) ("[T]he judicial branch of the Federal government has the constitutional duty of requiring the executive branch to remain within the limits stated by the legislative branch."); *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 695 (D.C. Cir. 1971) (same).

Nowhere is the imperative for a judicial remedy more urgent than in *habeas*, which presents executive over-reaching at its starkest. "There is no higher duty of a court under our constitutional system than the careful processing and adjudication of petitions for writs of *habeas corpus*." *Harris v. Nelson*, 394 U.S. 286, 292-(1969); *see Swain v. Pressley*, 430 U.S. 372, 380 n.13 (1977); *Wingo v. Wedding*, 418 U.S. 461, 468 (1974) ("[T]he great constitutional privilege of *habeas corpus* historically provided a prompt and efficacious remedy for whatever society deems to be intolerable restraints. . . . [I]f the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."); *Carafas v. LaYallee*, 391 U.S. 234, 238 (1968) (declaring that the right to *habeas corpus* is "shaped to guarantee the most fundamental of all rights"); *Bowen v. Johnston*, 306 U.S. 19, 26 (1939) ("It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."). This is especially

so in a case of "actual innocence." *Schlup v. Delo*, 513 U.S. 298 (1995). The Court exists as a bulwark against indefinite executive imprisonment. Absent remedy, there is no bulwark.

Given the overwhelming authority regarding *habeas* relief, Respondents' notion that Petitioner has been afforded "meaningful relief" in this case is utterly astounding. Absent release, there is no *habeas* remedy. Release is the only "meaningful" check on the Executive's unlawful imprisonment. Judicial power to order release is an essential attribute of *habeas*; the absence of a specific release remedy in the DTA was one reason it was an inadequate substitute for *habeas corpus.* 128 S. Ct. at 2271 ("[W]hen the judicial power to issue *habeas corpus* properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release."); *id.* at 2266 ("the *habeas* court must have the power to order the conditional release of an individual unlawfully detained").

As *Boumediene* teaches: "Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person." *Id.* at 2277. The Court noted that limitations on *habeas* raised "troubling separation-of-powers concerns," *id.* at 2258, and emphasized that "[b]ecause the Constitution's separation-of-powers structure, like the substantive guarantees of the Fifth and Fourteenth Amendments, protects persons as well as citizens, foreign nationals who have the privilege of litigating in our courts can seek to enforce separation-of-powers principles," *id.* at 2246 (citations omitted); *see id.* at 2259 (To hold the political branches have the power to switch the Constitution on or off at will...would permit a striking anomaly in our tripartite system of government, leading to a regime in which Congress and the President, not this Court, say "what the law is.") (quoting *Marbury*, 5 U.S. (1 Cranch) at

177). "The test for determining the scope of th[ese] provision[s] must not be subject to manipulation by those whose power [they are] designed to restrain." *Boumediene*, 128 S. Ct. at 2259.

Respondents' motion to stay the proceedings is nothing more than the Executive's latest attempt to manipulate the system. When the Executive has acted illegally-*i.e.*, beyond the scope of its constitutional powers, it is the constitutional duty of the judiciary to order the Executive to stop and the duty of the Executive to obey the judicial order. *See United States v. Nixon*, 418 U.S. 683, 703-05 (1974). Here, as in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the government's request for a stay is an attempt to obtain the forbidden "blank check" that "serves only to *condense* power into a single branch of government." 542 U.S. at 536. This Court can reject that claim, as *Hamdi* held it must, only by giving a remedy. *Id*. at 525 (asserting that the writ of *habeas corpus* "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law"). In *Boumediene*, the Court reaffirmed that *habeas corpus* is an "an indispensable mechanism for monitoring the separation of powers." 128 S. Ct. at 2259. But there are no protections at all without the remedy of release.

The Court must not allow Respondents to further delay Petitioner's release while they work toward the "conclusion of appropriate diplomatic arrangements" (Resp'ts' Mot. at 4). To do so would be to provide the Respondents with the forbidden "blank check" and Petitioner should not be made to suffer any longer.

**CONCLUSION**

For the foregoing reasons, Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release should be denied.

Respectfully submitted,

Date:   Boston, Mass.                    By:      /s/ *Michael E. Mone, Jr.*
        December 29, 2008                         Michael E. Mone, Jr.
                                                 (MA BBO No. 634607)
                                                 ESDAILE, BARRETT & ESDAILE
                                                 75 Federal Street
                                                 Boston, MA  02110
                                                 (617) 482-0333
                                                 (617) 426-2978 (fax)

                                                 *Counsel for Petitioner Jamolivich*

## CERTIFICATE OF SERVICE

I, Michael E. Mone, Jr., certify that on December 29, 2008, I electronically filed: **Petitioner Jamolivich's Opposition to Respondents' Motion to Stay Proceedings for Petitioners Approved for Transfer or Release**, with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record registered with the Court.

DATED:  December 29, 2008

By:  /s/ Michael E. Mone, Jr.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**AMER MOHAMMON,** *et al.*          )
                                     )
*Petitioners*,                       )
                                     )
*v.*                                 )          **Civil Action No. 05-2386 (RBW)**
                                     )
**GEORGE W. BUSH,** *et al.*,        )
                                     )
*Respondents.*                       )
_____)


### [PROPOSED] ORDER

Upon consideration of Respondents' Motion to Stay All Proceedings for Petitioners

Approved for Transfer or Release,

Respondents' Motion is **DENIED.**


Dated:


                                              _____
                                              The Honorable Reggie B. Walton
                                              United States District Judge