IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— x
                                              :
IN RE:                                        :
                                              :
GUANTÁNAMO BAY                                 :    Misc. No. 08-442 (TFH)
DETAINEE LITIGATION                            :
                                              :
———————————————————————— x
                                              :
ZALITA,                                       :
                                              :
                        Petitioner,           :
                                              :
                v.                            :    Civil Action No. 05-1220 (RMU)
                                              :
BUSH, *et al.*,                               :
                                              :
                        Respondents.          :
                                              :
———————————————————————— x

**OPPOSITION TO GOVERNMENT'S MOTION TO STAY**

        Petitioner Abu Abdul Rauf Zalita is a Libyan national, detained at Guantanamo for over

six years, who is cleared for transfer but cannot be sent home safely for fear that he will face

torture or other abuse upon his return. Having already compiled and filed an amended factual

return in this case, the government now argues that efficiency mandates that it be stayed. *See*

Motion for Stay, Dkt. 1335 in 08-mc-442, Dkt. 156 in 05-cv-1220 (filed Dec. 17, 2008). While

conceding that "the ultimate detention of … petitioner[] is no longer at issue," the government

argues—astonishingly—that Petitioner "ha[s] already been afforded meaningful relief" because

of its concession that he is administratively cleared for transfer. *Id*. at 1, 4. Meanwhile, two years

have passed since the government first began its efforts to transfer him out of Guantanamo. The

reality of Petitioner's case is that the "meaningful relief" he seeks—to be safely released from Guantanamo—cannot happen without first finding a country where he can be resettled safely. That eventuality, in turn, is far more likely to happen after Petitioner has obtained a formal determination from this Court that he is wrongly detained, or a formal concession of the same by the government. The government's attempt to avoid judicial review by informally conceding and then staying Petitioner's case should be rejected.

**ARGUMENT**

Petitioner Abu Abdul Rauf Zalita (also known as Abdul Ra'ouf Ammar Mohammad Abu Al Qassim), a citizen of Libya, was transferred to Guantánamo Bay in August 2002. The United States government has cleared him for transfer from Guantanamo, and has twice attempted to repatriate him to Libya, the country from which he fled to Afghanistan more than a decade ago to avoid religious persecution. Petitioner has a credible fear that he will be subject to imprisonment, torture and possible summary execution if he is forcibly returned to Libya, and he has resisted all attempts to repatriate him to that country. He remains detained in Camp 6, an isolation facility, more than six years after his detention and nearly two years after the government's first notice of intent to transfer him out of Guantanamo. His detention has been and continues to be indefinite and unlawful by any standard.

Despite the fact that he has been cleared for transfer out of Guantanamo, resolution of Petitioner's habeas claims is vitally important in order to expedite his release. Petitioner has an asylum application currently pending in Switzerland. The application was rejected at the administrative level in large part due to concerns that Petitioner might pose a security risk.[1] (The

---

[1] The government claims that the stay requested here "will not unduly prejudice petitioners, as the Government is already seeking their release." Mot. at 5. However, it is

process of appealing that ruling to the Swiss courts is underway.) Those concerns clearly have a relationship to our government's allegations against him, and are liable to be dispelled should those allegations be disproved. Prompt adjudication of Petitioner's habeas claims in his favor will greatly assist the process of proving that he does not pose a risk to any country that offers to resettle him. Because the government will not be able to lawfully repatriate Petitioner to Libya in light of the risk that he will face abuse upon return,[2] this Court's ability to effectuate his release is contingent on finding a third country that will accept him (or finding cause to order his release into the United States). The validity or lack thereof of the government's enemy combatant designation in this case is relevant to the question of whether the government or Petitioner will be able to convince a third country to provide him safe harbor, and thereby facilitate his release from Guantanamo.

The government argues that a judicial determination on the merits is unnecessary here "because the ultimate detention of these petitioners is no longer at issue." Mot. at 1. If that is so, the government should be willing to *formally* concede that Petitioner was never an "enemy

---

impossible to square that contention with the experience of Petitioner in seeking to facilitate his own release through the asylum process in Switzerland. Undersigned counsel have communicated with foreign government officials about the resettlement of Petitioner and other similarly-situated detainees, and the notion that judicial determinations in favor of the detainees will greatly facilitate the process is an often-mentioned refrain in those discussions.

[2] Notwithstanding Petitioner's fears, which he has consistently expressed over the years of his detention, the government continues to take steps to attempt to transfer him to Libya. In a recent unclassified letter, dated October 14, 2008, Petitioner stated that "I would like to inform you that in these days they want to transfer me to Libya. I hope you can take an urgent action to stop them from doing so as you promised me." Cleared notes from the last visit of counsel to Petitioner indicate that he was processed for departure from Guantanamo, was told that he had no choice but to go to Libya, and was asked to sign papers agreeing to be sent there (which he refused to do). Moreover, the government's motion for stay indicates that the cases that are the subject of its motion "may become moot in the month ahead," indicating that active efforts to accomplish the immediate repatriation of at least some of the relevant petitioners are underway. Mot. at 5. (Note that Petitioner currently is subject to Judge Hogan's 30-day notice order, Dkt. 52 in Misc. No. 08-442 (Jul. 10, 2008), having requested such notice from the government.)

combatant" or otherwise subject to detention.[3] At that point the liability phase of the case would be concluded, and the burden on this Court would be limited to supervising the remedial process of attempting to find a safe resettlement country for Petitioner.[4] (In this respect the case would stand in much the same posture as the Uighur detainee cases recently before this Court.) More importantly, such a concession would surely make it far more likely that an acceptable resettlement option could be found within a reasonable time frame for Petitioner.

Ultimately the government's motion for a stay amounts to yet another attempt to avoid judicial review on the merits in this case. For all practical purposes, the government has informally conceded the illegality of Petitioner's detention. But by attempting to confine this concession to the administrative "clearance" process—a process by which detainees are determined to no longer "*continue* to pose a threat *to the United States* or its allies"[5] sufficient to justify their further detention—the government is seeking to evade both independent judicial review of the merits and judicial supervision of the remedy (the process of finding a safe country for resettlement). By doing so, the government conveniently avoids the possibility of embarrassment on the merits—of being found to have detained an innocent man unlawfully for more than six years—but also avoids any judicial oversight of the resettlement process. That

---

[3]    The passage of time in this case since the government's initial clearance of Petitioner for transfer (the government's first effort to transfer him occurred in December 2006) shows how meaningless this nominal "clearance" is to resettlement efforts. In the absence of some formal mechanism for clearing Petitioner's good name, we can expect that any efforts to resettle him safely will be exceedingly difficult if not impossible.

[4]    Indeed, the government describes the case in such bifurcated terms, with all its present efforts concentrated on the remedial phase: "DoD has moved to the next step of identifying foreign governments to take custody of these petitioners." Mot. at 4.

[5]    *Revised Implementation of Administrative Review Processes for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba*, Enclosure 3: *Administrative Review Board Process*, at ¶ 1.a (Jul. 14, 2006) (emphasis added).

resettlement process would undoubtedly be made easier by an impartial judicial determination that Petitioner is entitled to be released—not because he meets some undisclosed executive criteria for "clearance for transfer," but because his detention was never justified to begin with. Moreover, the process of resettlement would most likely be expedited by judicial oversight.

Resolution of the pending motion regarding destruction of evidence in this case is also critical to clearing Petitioner's name, and thus is critical to the ultimate question of his release. *See* Notice of Filing (Dkt. 81 in 05-cv-1220) (filed Jan. 7, 2008); Motion for Inquiry Regarding Destruction of Evidence Related to CIA Detainee Interrogations (unclassified redacted version, Dkt. 82 in 05-cv-1220) (filed Jan. 15, 2008). (That motion requests that "this Court should conduct a hearing to determine whether Respondents destroyed evidence from Abu Zubaydah or other detainees in CIA custody related to Respondents' justification for detaining Petitioner and designating him an 'enemy combatant.'" *Id*. at 11.)

\* \* \*

Two final points bear mentioning. First, efficiency is no longer a substantial concern in this case. The government argues that granting a stay will allow it to "focus exclusively on cases in which [it has] not determined to relinquish custody," thereby diminishing the burden on its litigation resources. Mot. at 4. However, the government elected to file an amended factual return in this case, updating its allegations and evidence. For all practical purposes, its decision to invest the resources in that effort means that the government's resource allocation concerns should no longer be an issue in this case. Under the current Case Management Order (as modified by Judge Hogan's Dec. 16 Order, Dkt. 1004 in 08-mc-442, Dkt. 154 in 05-cv-1220), the government's obligation to produce exculpatory information is limited to "reasonably available evidence," defined as "evidence contained in any information reviewed by attorneys

preparing factual returns for all detainees." Order at 2. That production should not be burdensome. Beyond the disclosure of exculpatory information and any further discovery required to counter the allegations in the amended factual return, the government's burdens in litigating this case should largely be confined to legal briefing.

Secondly, the Motion for Stay should be decided by the Merits Judge in this case. As the foregoing argument makes clear, the circumstances arguing against granting a stay in this case are highly case-specific, and therefore more appropriate for resolution by Judge Urbina, who will ultimately be responsible for determining the merits of the case.

**CONCLUSION**

For the reasons set forth above, the government's Motion for Stay should be denied.

Date:   New York, New York
        December 30, 2008

                                      Respectfully submitted,


                                      _____/s/sdk_____
                                      Shayana Kadidal (D.C. Bar No. 454248)
                                      Gitanjali S. Gutierrez (pursuant to LCvR 83.2(g))
                                      J. Wells Dixon (pursuant to LCvR 83.2(g))
                                      Pardiss Kebriaei (pursuant to LCvR 83.2(g))
                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                      666 Broadway, 7th Floor
                                      New York, New York 10012
                                      Tel: (212) 614-6438
                                      Fax: (212) 614-6499
                                      kadidal@ccrjustice.org

                                      George Daly
                                      139 Altondale Avenue
                                      Charlotte , NC 28207
                                      Tel: (704) 333-5196
                                      gdaly1@bellsouth.net

                                      Jeffrey J. Davis

400 North Church Street #222
Charlotte, North Carolina 28202
Tel: (704) 661-5244

*Counsel for Petitioner*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— x
                                            :
IN RE:                                      :
                                            :
GUANTÁNAMO BAY                              :     Misc. No. 08-442 (TFH)
DETAINEE LITIGATION                         :
                                            :
———————————————————— x
                                            :
ZALITA,                                     :
                                            :
                        Petitioner,         :
                                            :
            v.                              :     Civil Action No. 05-1220 (RMU)
                                            :
BUSH, *et al.*,                             :
                                            :
                        Respondents.        :
                                            :
———————————————————— x


**[PROPOSED] ORDER**

Having considered the submissions of the parties, Respondents' Motion for Stay (Dkt.

1335 in 08-mc-442, Dkt. 156 in 05-cv-1220) is DENIED.

SO ORDERED, this ___ day of _____ 2008, at Washington, D.C.


_____
Hon. Ricardo M. Urbina
United States District Judge