# THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY DETAINEE LITIGATION | Civil Action No. 05-2386 (RBW) |

## PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO STAY ALL PROCEEDINGS FOR PETITIONERS APPROVED FOR TRANSFER OR RELEASE

Petitioner Ali Sher Hamidullah (ISN 455) ("Petitioner") respectfully submits this opposition to Respondents' Motion to Stay All Proceedings for Petitioners Approved for Transfer or Release ("Respondents' Motion").[1] Petitioner has been imprisoned at Guantanamo Bay for over seven years and has been cleared for release since at least July 19, 2008.[2] However, because he is from Uzbekistan, a country governed by a dictatorship with a history of severe human rights violations, Petitioner is unable to safely return home. His release from Guantanamo is therefore contingent upon locating an alternative venue into which he may be safely released.

The existence of this contingency is the basis for Respondents' Motion. However, while Respondents speak in broad generalities about engaging in "a diplomatic dialogue" (Resp'ts' Mot. at 2) to effectuate Petitioner's release into a third-party nation, they do not provide any specific information as to how they will effect Petitioners' release. History has proven that when

---

[1] Counsel for Petitioner also represent Shakhrukh Hamiduva (ISN 22), Civ. A. No. 1:08cv1221 (CKK), who is also approved for release or transfer. Respondents have not filed a factual return in Mr. Hamiduva's case so his case is not subject to Respondent's Motion. It is abundantly clear, however, that individuals in Mr. Hamiduva's situation should be immediately granted the habeas relief that is ultimately sought in these cases – release.

[2] Petitioner's counsel was notified of Petitioner's status via Status Report. *See* Respondents' Status Report and Response to Court's July 11, 2008 Order, Civ. A. No. 1:08mc442.

the Government is permitted to conduct resettlement efforts on behalf of Petitioners *at its own pace*, that these efforts are rarely, if ever, successful. To allow Respondents to stay Petitioners' case while they conduct such efforts is thus to effectively deny Petitioner the single form of meaningful relief to which he is entitled – release from his unjust imprisonment at Guantanamo.

Respondents have admitted that Petitioner's "ultimate detention . . . is no longer at issue" (Resp'ts' Mot. at 1), and that they "no longer wish to detain" him (Res'ts' Mot. at 4). Nevertheless, by requesting a stay of Petitioner's case, Respondents seek to avoid occurrence of the very events which would expedite Petitioner's effective resettlement in a third-party nation: the determination by this Court that Petitioner is a Non-Enemy Combatant, the airing by this Court of exculpatory evidence in Petitioner's case, and the issuance by this Court of an Order requiring that the Government immediately take all steps necessary to effectuate Petitioner's release.

The stay requested by Respondents would do nothing to alleviate the draconian situation Petitioner has found himself in for the past seven years, nor would it "serve the broader purposes of judicial economy and fairness." (Resp'ts' Mot. at 4-5.) As Petitioners Al-Nahdi and Al-Assani so aptly stated in their opposition to the same motion, "the notion that Petitioners have received meaningful relief and that further delaying their cases will serve the purpose of fairness, as they enter another year of unjustified detention, is an insult to the principles of justice. Respondents' motion must be denied." (Pet'rs Opp'n to Resp'ts Mot. to Stay Proceedings for Pet'rs Approved for Release or Transfer at 1-2, Civ. A. No. 1:08mc442, Docket # 1359.)

**BACKGROUND**

Respondents request that the Court stay Petitioner's habeas case while it engages in

> an elaborate, inter-agency process that involves senior level
> officials and includes consideration of the detainee's particular

2

> circumstances, an informed and well-rounded analysis of the current situation on the ground in the prospective transferee country, the input of various Department of State offices with relevant knowledge, personal interactions and negotiations with senior officials of the prospective transferee government, and consideration of assurances provided by the prospective transferee country, as well as their sufficiency and any mechanisms for verifying them.

(Resp'ts' Mot. at 2-3.) While Respondents have admitted that they "no longer wish to detain" those detainees cleared for transfer or release (*Id.* at 4), only *after* the aforementioned process is completed have Respondents agreed to "relinquish custody of these detainees" (*Id.* at 3.).

Some foreign governments have already indicated their willingness to allow such liberated detainees to be resettled within their borders. *See, e.g.,* William Glaberson, *Move May Help Shut Guantanamo Camp*, N.Y. Times, Dec. 12, 2008 (available at http://www.nytimes.com/2008/12/12/world/europe/12portugal.html?_r=1&sq=guantanamo%20portugal&st=cse&scp=1&pagewanted=print). But their charity is not free from conditions. The Australian government, for instance, has recently stated that released detainees would only be permitted to resettle in Australia on a "case-by-case basis" and after an "***extremely rigorous*** assessment process[]." *Australia Says It May Accept Guantanamo Bay Detainees*, N.Y. Times, Dec. 27, 2008 (available at http://www.nytimes.com/2008/12/27/world/asia/27gitmo.html?scp=2&sq=guantanamo%20portugal&st=cse) (emphasis added). Such case-by-case assessments will presumably consider such factors as (a) a detainee's Enemy Combatant status; (b) the existence of exculpatory evidence relevant to the detainee; and (c) whether a court with proper jurisdiction has ordered the detainee's release. The only way to ensure that each of these requirements is resolved to the satisfaction of foreign government-assessors is through the continued litigation of each detainee's habeas case. Respondents' Motion therefore seeks to lift the very obligations that

3

would otherwise ensure that detainees whom the Government "no longer wishes to detain" pass the case-by-case assessments that impede the fulfillment of the Government's wishes.

Therefore, while Respondents purport that their Motion is motivated by a desire for fairness, this claim rings hollow in light of the Motion's likely effects. The real motivation behind Respondents' Motion is their desire to continue to delay the release of detainees who have been cleared for transfer or release. The Government's delay tactics are all too familiar and have been clearly denounced by the Supreme Court:

> While some delay in fashioning new procedures is unavoidable, ***the costs of delay can no longer be borne by those who are held in custody***. The detainees in these cases are entitled to a prompt habeas corpus hearing.

*Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) (emphasis added). Nevertheless, each day that Respondents continue their delay strategy is another day that Petitioner remains unlawfully detained at Guantanamo.

Considering that Petitioner has been held without charges since 2002, and has been approved for release or transfer since at least July 2008, Respondents' statement that Petitioner's "habeas case is less pressing than that of the remaining detainees not set for transfer or release" (Resp'ts' Mot. at 4) is a sad commentary on Respondents' priorities. The case of Salim Ahmed Hamdan further explicates Respondents' confused notion of fairness: To date, Mr. Hamdan is the only detainee to have been tried and convicted by the military commissions. Yet, even as a convicted war criminal, Mr. Hamdan was returned to Yemen to complete his sentence, at which time he will presumably be freed in Yemen. Nevertheless, individuals like Petitioner, who have never been charged with a crime and whom the government admits it "no longer wish[es] to detain" (Resp'ts Mot. at 4) remain shackled in a cell at Guantanamo. Contrary to Respondents' position, these cases deserve the ***most*** pressing attention, not the least.

4

**ARGUMENT AND CITATION TO AUTHORITIES**

**I. A Stay Will Only Deny Petitioner Justice**

This Court has the discretion to stay proceedings or not in light of the particular circumstances of a case. *United States v. Stover*, 576 F. Supp. 2d 134 (D.D.C. 2008) (citing *United States ex rel. Westrick v. Second Chance*, No. 04-280 (RWR), 2007 WL 1020808 (D.D.C. Mar. 31, 2007)). Respondents filed Petitioner's factual return on November 26, 2008. Pursuant to the Merits Judge's amended CMO, Petitioner's factual return – to the extent it is even necessary given Respondents' confession that they no longer wish to detain Petitioner – is due in several weeks, at which point Petitioner's case would be ripe for adjudication. Petitioner should not be forced to suffer at Guantanamo while the cases of detainees whom Respondents still seek to detain at Guantanamo are litigated. *See Harris v. Nelson*, 394 U.S. 286, 292 (1969) ("A habeas corpus proceeding must not be allowed to founder in a procedural morass.") (internal quotations omitted). Accordingly, Respondents' motion should be denied.

The relief accorded under habeas "is not a 'static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose.'" *Boumediene*, 128 S. Ct. at 2267 (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). Thus, Respondents' statement that "petitioners have already been afforded meaningful relief in the sense that DoD has moved to the next step of identifying foreign governments to take custody of these petitioners and seeking to secure and facilitate their transfer" (Re''ts' Mot. at 4) is in direct contradiction to the Supreme Court's holding in *Boumediene*. Moreover, it is surely of little relief to Petitioner to know that the Government "has moved to the next step" while he wastes yet another year at Guantanamo. Petitioner will only be afforded real, meaningful relief when he has been released. As the past

5

seven years have demonstrated, the likelihood of that happening without an order from the Court is miniscule.

## II. The Court's Sole Remaining Role is to Order Relief

As Respondents make clear several times in their motion, given that Petitioner has been cleared for release, litigating the merits of this case is unnecessary. *See, e.g.,* Resp'ts Mot. at 5 ("the Court should not force Respondents to litigate the merits of these cases when they are already seeking to relinquish petitioners from custody"). Respondents have thus conceded that no hearing is necessary and Petitioner can be released. Thus, this Court need only provide Petitioner with an Order setting forth his release. Such an order, not a stay, is the appropriate action to take in this situation. By staying the case, the Court would merely allow Petitioner to languish at Guantanamo for several more months (or even years) and also allow Petitioner's habeas case to languish on the Court's docket. By ordering his release, however, the Court would achieve two objectives: the release of an individual wrongfully detained by the U.S. Government in excess of seven years and the promotion of "judicial economy and the appropriate use of the court's and parties' resources" (Resp'ts' Mot. at 3.) by crossing one more case off the Court's docket.

The power of the Court to force Respondents to diligently seek third-party countries willing to resettle former detainees was recently highlighted by the decision of Judge Leon in the case of five Algerians in *Boumediene v. Bush*, Civ. A. No. 04cv1166 (RJL) (D.D.C.). Less than a month after Judge Leon ordered Respondents "to take all necessary and appropriate diplomatic steps to facilitate the release" (Docket No. 277) of the five petitioners deemed not to be enemy combatants, the U.S. Government was able to transfer three of the individuals to their adopted homeland of Bosnia and Herzegovina (*see* Peter Finn, "Under Court Order, Administration

6

US2000 11180640.2

Prepares Detainee Transfers: Three Men held as Enemy Combatants to Return to Bosnia," Washington Post.com, December 15, 2008). Without Judge Leon's ruling, these five detainees would remain imprisoned at Guantanamo, waiting while the Government sought to make "appropriate diplomatic arrangements" at its own pace. A similar ruling is respectfully sought from the Court in Petitioner's case.

## CONCLUSION

Respondents admit that they no longer wish to litigate Petitioner's case. They also concede that they no longer wish to detain Petitioner. Yet, instead of providing Petitioner with the means to effectuate his release, they seek to stay his case *ad infinitum*. This is non-sensical and contrary to the Supreme Court's admonition that Petitioner is "entitled to a prompt habeas corpus hearing." *Boumediene*, 128 S. Ct. at 2275. Accordingly, Respondent's Motion to Stay should be denied in its entirety.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2009, I caused the foregoing "PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO STAY ALL PROCEEDINGS FOR PETITIONERS APPROVED FOR TRANSFER OR RELEASE" to be filed and served electronically to the counsel of record in the above-captioned matter via the CM/ECF system.

    /s/ Daniel G. Schulof
DANIEL G. SCHULOF
KILPATRICK STOCKTON LLP
1100 Peachtree St. NE
Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404)815-6500
Facsimile: (404) 815-6555

*Counsel for Petitioner*

US2000 11180640.2