IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |
| SHARAF AL SANANI,<br><br>    Petitioner,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>    Respondents. | Civil Action No. 05-2386 (RBW) |

**PETITIONER SHARAF AL SANANI'S RESPONSE TO COURT ORDERS TO
<u>PROVIDE EVIDENCE OF AUTHORIZATION</u>**

Petitioner Sharaf al Sanani (a/k/a Sharaf Ahmad Muhammad Masud) (ISN 170) ("Petitioner") originally filed his *habeas corpus* petition on December 21, 2005, with the assistance of his next friend petitioner, Sami Muhyideen (a/k/a Sami Muhyedin al Hajj). *See* Ex. A (Declaration of Sami Muhyedin al Hajj). On July 29, 2008, this Court issued an Order (Dkt. 210) requiring:

> [I]n all cases filed before May 19, 2008, in which the detainee is represented in the petition by a next friend, counsel shall file a signed authorization from the petitioner to pursue the action or a declaration by counsel that states that the petitioner directly authorized counsel to pursue the action and explains why counsel was unable to secure a signed authorization.

On September 29, 2008, Petitioner filed a Motion for Extension of Time to Provide Evidence of Authorization, asking that the Court extend its deadline by ninety (90) days (Dkt. 582). Respondents never opposed Petitioner's motion. On December 29, 2008, the Court issued a

Minute Order, granting Petitioner's Motion and directing that by January 5, 2009, counsel for Petitioner "shall file a signed authorization from Petitioner to pursue this action or a declaration by counsel that states Petitioner directly authorized counsel to pursue this action and explains why counsel was unable to secure a signed authorization." In response to the Court's July 29, 2008, Order and December 29, 2008, Minute Order, undersigned counsel for Petitioner states as follows:

## FACTUAL BACKGROUND

Although they have never directly communicated with Petitioner, counsel have been acting on Petitioner's behalf since 2005. In 2005, Clive A. Stafford Smith, from the London-based human rights organization Reprieve, visited Guantanamo and obtained written authorization to file a *habeas corpus* petition on Petitioner's behalf. *See* Ex. B (Declaration of Clive A. Stafford Smith). This written authorization was provided by Sami Muhyideen, another detainee who had become close to Petitioner during his incarceration at Guantanamo. *See* Exs. A and B. Based on his relationship with Petitioner, Mr. Muhyideen determined that Petitioner desired legal representation but was unfit to obtain such representation on his own. *See* Ex. B at ¶¶ 14-15. Mr. Muhyideen provided Mr. Smith written authorization to represent Petitioner, but only after Mr. Smith confirmed that individuals such as Mr. Muhyideen understood the concept of "next friend" authorization. *See* Ex. A (wherein Mr. Muhyideen states that he "understand[s] the meaning of 'next friend' and I know that the following people want legal assistance from Clive Stafford Smith" and lists "Sharaf Al Sanani"); Ex. B at ¶ 14 ("In each instance when I secured from my clients a Next Friend authorization or a Notification of another prisoner's desire for counsel, I discussed with them the meaning and nature of a 'Next Friend.' They understood that this meant that they were acting on behalf of each of the prisoners to help challenge the

2

legality of their detention."). Thereafter, representatives from the Center for Constitutional Rights approached the law firm of Kilpatrick Stockton LLP and asked the firm to assume Petitioner's representation on a *pro bono* basis. *See* Ex. C (Declaration of James F. Bogan III). The firm agreed. *Id.* Since that time, attorneys from Kilpatrick Stockton have represented Petitioner in the litigation of his *habeas corpus* and Detainee Treatment Act cases.

Through their interaction with Petitioner's brother, Hassan Masood, counsel have confirmed that they are properly authorized to represent Petitioner. On July 19, 2006, Petitioner's brother provided representatives from Reprieve with written "next friend" authorization to seek "whatever redress they believe to be in [Petitioner's] best interests." Ex. D (Hassan Masood Reprieve Authorization). Shortly thereafter, on September 28, 2006, Petitioner's brother also provided Kilpatrick Stockton with direct written authorization to represent him. *See* Ex. E (Hassan Masood Kilpatrick Stockton Authorization).

As explained below, these "next friend" authorizations form a sufficient basis for counsel to continue representing Petitioner. Even if they were not, additional reasons justify counsel's continued representation of Petitioner. As more fully explained in the notes of a meeting held between Petitioner's family and a delegation of attorneys representing Guantanamo detainees, *see* Exhibit F (May 23, 2007 Meeting Notes) (personal identifiers redacted), Petitioner has a long-standing mental condition that may inhibit his ability to correctly analyze who is truly acting in his best interest. Second, although the Government claims that Petitioner is unwilling to meet with his attorneys, guard personnel have consistently refused to allow counsel to hear this directly from Petitioner. Counsel is thereby prevented from attempting to clarify their role to Petitioner and to convince him that providing direct authorization is clearly in his best interest. The appropriateness of these counsel-access procedures has recently been the subject of

proceedings before the Court. *See Kuman v. Bush*, 08-1235 (D.D.C. Dec. 22, 2008) (Mot. for Direct Contact with Client); *Othman v. Bush*, 05-2088 (D.D.C. Dec. 1, 2008) (Mot. to Stay). Therefore, in light of Petitioner's mental state and the procedural restrictions imposed by the Government upon the detainees and their visiting counsel, it is unlikely that Petitioner will provide counsel with direct authorization in the immediate future.

The circumstances surrounding Petitioner's detention, however, are fully consistent with the recognition of the right to bring his petition through a "next friend." As the Court is fully aware, Petitioner has been held in virtual isolation for nearly seven years while detained at Guantanamo. Like many of the other foreign nationals held at Guantanamo, his only form of human contact during his imprisonment has been rare and brief encounters with other detainees, interrogators, and prison guards. Due to this sustained isolation, individuals such as Petitioner frequently suffer from depression, despair, distrust, and even more extreme forms of psychological trauma. These afflictions are only worsened by the unfamiliarity of the detainees' surroundings, their lack of access to even basic amenities, the failure of their captors to confront them with the justifications for their detention, and the aggressive attitudes exhibited by guards and interrogators.

Moreover, due to a pre-existing mental infirmity, Petitioner is particularly susceptible to the psychological trauma commonly experienced by Guantanamo detainees. Undersigned counsel became aware of Petitioner's pre-existing condition after a May 23, 2007, meeting between a delegation of attorneys representing Guantanamo detainees and Petitioner's nephew and two of his sisters (*see* Ex. F, May 23, 2007 Meeting Notes) and after subsequent conversations between Petitioner's counsel and his family. *See also* Ex. C. During these conversations, Petitioner's family revealed that Petitioner has been suffering from a form of

dementia since he was approximately eight (8) years old. *See* Ex. F. His dementia was made more acute during his teenage years after he failed to gain entry into a university program. *Id.* This failure served as a triggering event, causing Petitioner to fall into a deep depression and to eventually leave home on the religious pilgrimage that would ultimately lead to his capture by Pakistani armed forces, his transfer to U.S. custody, and his rendition to Guantanamo. *Id.*

As a result of his pre-existing mental instability and the inhumane conditions to which he has been exposed at Guantanamo, Petitioner has developed a justifiable distrust of Westerners, which has hindered counsel's ability to secure his direct authorization. Accordingly, although Petitioner has been represented by counsel since 2005 through appropriate "next friend" procedures, he has yet to meet with his visiting attorneys and has not chosen to respond to letters. *See* Ex. C. However, as set forth above and more fully explained below, individuals with significant relationships to Petitioner have provided counsel with valid, written "next friend" authorization. Accordingly, Petitioner's *habeas corpus* case should be permitted to proceed, notwithstanding counsel's inability to secure Petitioner's direct authorization.

## ARGUMENT AND CITATION OF LEGAL AUTHORITIES

I.  **Petitioner's "Next Friends," Sami Muhyedin al Hajj and Hassan Masood, Have Directly Authorized Counsel to Pursue This Action on Petitioner's Behalf**

It has now been established that the detainees at Guantanamo have a right to seek *habeas corpus* relief in federal court. *See generally Boumediene v. Bush*, 128 S. Ct. 2229 (2008). With the right to seek *habeas* relief comes the doctrine of "next friend" authorization. *See generally King v. McLean Asylum of the Mass. General Hosp.*, 64 F. 325, 328 (1st Cir. 1894) ("the aid of a prochein ami . . . is necessary for the protection of those who, on account of the rigorous nature of their detention, or of their mental inability, are incapable of acting for themselves"). As the Supreme Court has held, "'next friends' [may] appear in court on behalf of detained prisoners

who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990).

A "next friend" has standing to pursue a habeas action on behalf of a detained person if (1) "the detainee on whose behalf he wishes to file a Petition for Writ of Habeas Corpus cannot challenge the legality of his detention himself" and (2) "he has a significant relationship with the detainee evidencing that he is truly dedicated to the detainee's best interest." *Razak v. Bush*, No. 05-1601, at 1 (D.D.C. Dec. 1, 2006) (Mem. Order denying Resp.'s Mot. to Show Cause) (citing *Whitmore*, 495 U.S. at 163-164). Petitioner meets both of these elements.

### A. Petitioner is Unable to Challenge the Legality of his Detention Himself

In *Razak*, District Judge Gladys Kessler determined that "there can be little doubt" that the conditions to which foreign nationals such as Petitioner have been subjected to while detained at Guantanamo – foreign national residency, near total isolation, unfamiliarity with the U.S. legal system and the charges (or lack thereof) against them, lack of access to legal materials, a justifiable lack of trust for their captors, and "no expectation of release, ever" – have rendered them unable to challenge the legality of their detention. *Id.* at 2. These conditions have been deliberately manufactured to foreclose any hope that the detainees may have of ever being freed. Furthermore, they deliberately discourage detainees from trusting all Westerners, including their legal representatives.

Thus, Petitioner's heretofore refusal to meet with his attorneys or communicate via letter should not be viewed as a waiver of his rights to seek *habeas* relief. *See Johnson v. Zerbst*, 304 U.S. 458, 467-68 (1938) (holding that any decision to waive constitutionally guaranteed rights requires that the court be convinced that the waiver decision has been made intelligently and intentionally). This is because "'[c]ourts indulge every reasonable presumption against waiver,'

6

of fundamental constitutional rights and [courts] 'do not presume acquiescence in the loss of fundamental rights." *Id.* at 464 (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 307 (1937)). Rather, these actions are indicative of an individual that, but for the conditions of confinement and interrogation to which he has been subjected to, would vigorously contest the lawfulness of his detention. *See, e.g., Groseclose ex rel. Harries v. Dutton*, 594 F. Supp. 949, 961-62 (M.D. Tenn. 1984) (holding that next friend adequately demonstrated standing on grounds that any waiver of *habeas* relief was involuntary "due to adverse conditions of confinement." The conditions at Guantanamo provide the quintessential scenario for a proper "next friend" authorization.

Petitioner therefore satisfies the first prong of the *Whitmore* test. Moreover, as discussed more fully in Section II, given Petitioner's pre-existing mental stability, and the conditions to which he has been subjected at Guantanamo, any remaining doubt as to whether he is capable of challenging his detention through a "next friend" must be erased.

### B. Sami Muhyedin al Hajj and Hassan Masood Understand the Concept of "Next Friend" and Petitioner has a Significant Relationship with his "Next Friends"

Petitioner originally brought his *habeas* case through Sami Muhyedin al Hajj, a fellow detainee, as his "next friend." *See Mohammon v. Bush*, 1:05cv2386 (RBW) (D.D.C. Dec. 21, 2005) at ¶ 110. As Petitioner's "next friend," Mr. Muhyedin authorized Mr. Smith of Reprieve to provide Petitioner legal assistance. *See* Ex. A. Mr. Muhyedin has explicitly stated that he "under[stood] the meaning of 'next friend.'" *Id.* Moreover, before securing "next friend" authorization from an individual such as Mr. Muhyedin, Mr. Smith "discussed with them the meaning and nature of a 'Next Friend.'" Ex. B. at ¶ 14.

Subsequently, Mr. Smith, Reprieve, the Center for Constitutional Rights, and Kilpatrick Stockton LLP were given authorization by Petitioner's brother, Hassan Masood, to act on

7

Petitioner's behalf. *See* Exs. D and E. As his brother, Hassan Masood, is clearly qualified to act as Mr. Al Sanani's "next friend" and knows what that term encompasses. The Supreme Court has stated that "a 'next friend' must have some significant relationship with the real party in interest." *Whitmore*, 495 U.S. at 164 (citing with approval *Davis v. Austin*, 492 F. Supp. 273 (N.D. Ga. 1980)). As his brother, Mr. Masood satisfies this "significant relationship" hurdle. *See Davis*, 492 F. Supp. at 275 (suggesting that "close relatives, such as a parent, spouse, *or sibling*, who maintain a close personal relationship with the aggrieved, *would be appropriate persons to maintain a 'next friend' action*") (emphasis added).

Moreover, in authorizing Repreive "and any other person or organization assigned by these lawyers" to represent Petitioner, Mr. Masood clearly stated that "I know that my brother, Sharaf Ahmed Mohammed Masood, would want me to act on his behalf to secure him legal representation." *See* Ex. D. Furthering this previous direct authorization in a subsequent e-mail, Mr. Masood directed that he "give the right to [various attorneys for Kilpatrick Stockton LLP and the Center for Constitutional Rights] represent my brother Sharaf Ahmed Mohammed Masood." *See* Ex. E.

These unrebutted statements are more than sufficient to qualify Mr. Muhyedin and Petitioner's brother, Mr. Masood, as Petitioner's "next friend."

### C. Respondents Have Offered No Evidence to Contradict the Foregoing Points

In *Razak*, one of the factors that led District Judge Kessler to determine that the detainee-petitioner had properly provided "next friend" authorization was the fact that the Government produced no evidence "to contradict [the "next friend" petitioner's] statements that he understands the meaning of the term "next friend," and that he knows that [the "real party in interest" petitioner] wants a lawyer to assert his legal rights." *Razak*, No. 05-1601, at 3.

In the present case, the Government has similarly failed to offer any evidence supporting the notion that either Sami Muhyedin al Hajj or Hassan Masood do not understand the meaning of the term "next friend" or that they are not proper parties to bring Petitioner's case. Rather, both Mr. Muhyedin and Mr. Masood have either explicitly stated that they understand the meaning of the "next friend" concept or are a relative of Petitioner. Moreover, Respondents have seemingly conceded that they have no interest in challenging the propriety of counsel's representation of Petitioner. The Government produced Petitioner's classified factual return on December 30, 2008, and in preparing to do so, repeatedly referred to the undersigned as Petitioner's Counsel. *See* Ex. G (e-mail string between Terry M. Henry and John R. Gibson).

Accordingly, because the Government has never raised any objection to Petitioner's "next friend" authorization and has impliedly conceded that Petitioner is properly represented by the undersigned counsel, Petitioner has adequately demonstrated that he is properly represented by a "next friend."

## II. The Current Counsel Access Procedures Prevent Counsel from Obtaining Petitioner's Direct Authorization

Along with the right of Guantanamo Bay detainees to seek *habeas corpus* relief necessarily comes the right to be represented by counsel. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) ("[Petitioner] unquestionably has the right to access to counsel in connection with the proceedings on remand."); *cf. Boumediene*, 128 S. Ct. at 2260 (noting lack of counsel as one of the deficiencies in the CSRT process). It follows from this right to representation by counsel that counsel must be able to meet with and consult with their detainee-clients. This has been implicitly recognized by the Government, through its concession that counsel must be allowed to travel to Guantanamo and meet with the clients they represent. However, counsel cannot

effectively meet and consult with their clients if their availability and usefulness is not properly communicated to them. Such is the problem currently faced by Petitioner's counsel.

The current procedures do not adequately permit counsel to communicate with a detainee who initially refuses a meeting. For example, if a detainee refuses to meet with a visiting attorney, the attorney is only allowed to draft a single-page note to the detainee explaining why a meeting is in the detainee's best interest. This note is then delivered by the guards to the detainee, at which point the detainee can once again accept or reject the attorney's visit. It is undeniable that disinterested guards will never be as proactive in attempting to convince the detainee that it is in his interest to visit with counsel.

Although these general procedures are ineffective in the abstract, they become even more so when analyzed through the particular facts and circumstances of Petitioner's case. Before being detained at Guantanamo, Petitioner was growing despondent and distrustful. *See* Ex. B. His nearly seven years have surely done nothing to improve these pre-existing conditions. Thus, any attempted contact by his counsel has to advance three roadblocks: one, the procedurally ineffective process set up at the base; two, Petitioner's engrained distrust of Westerners and Americans in particular; and three, Petitioner's pre-existing mental infirmities. To date, counsel's concerted efforts have proven ineffective in overcoming all three.

# CONCLUSION

On December 30, 2008, the Government filed Petitioner's classified factual return, after nearly seven years of imprisoning Petitioner without stated justification (aside from the all-encompassing "enemy combatant" designation). Pursuant to Judge Walton's revised Case Management Order, Petitioner's *habeas* case is finally – after numerous delays at the hands of the Government – beginning to advance. Because Petitioner is appropriately represented by a "next friend," his case should proceed forthwith.

Respectfully submitted this 5th day of January, 2009

/s/ James F. Bogan III
JAMES F. BOGAN III
A. STEPHENS CLAY, IV
C. ALLEN GARRETT, JR.
JOHN R. GIBSON
DANIEL G. SCHULOF
KILPATRICK STOCKTON LLP
1100 Peachtree St., Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404)815-6500
Facsimile: (404) 815-6555

*Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2009, I filed and served the foregoing Petitioner Sharaf Al Sanani's Response to Court Orders to Provide Evidence of Authorization via CM/ECF, which will automatically send e-mail notification of such filing to counsel of record in the above-captioned case.

                                                /s/ James F. Bogan III
                                                James F. Bogan III
                                                Counsel for Petitioner