IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>GUANTÁNAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-442 (TFH)<br><br>Civil Action Nos.<br><br>02-CV-0828, 04-CV-1164, 04-CV-1194,<br>04-CV-1254, 04-CV-2022, 04-CV-2046,<br>05-CV-0023, 05-CV-0247, 05-CV-0270,<br>05-CV-0280, 05-CV-0329, 05-CV-0359,<br>05-CV-0392, 05-CV-0492, 05-CV-0520,<br>05-CV-0526, 05-CV-0634, 05-CV-0748,<br>05-CV-0764, 05-CV-0877, 05-CV-0883,<br>05-CV-0889, 05-CV-0892, 05-CV-0993,<br>05-CV-0998, 05-CV-1124, 05-CV-1189,<br>05-CV-1220, 05-CV-1347, 05-CV-1353,<br>05-CV-1429, 05-CV-1457, 05-CV-1487,<br>05-CV-1490, 05-CV-1497, 05-CV-1504,<br>05-CV-1506, 05-CV-1555, 05-CV-1592,<br>05-CV-1601, 05-CV-1607, 05-CV-1623,<br>05-CV-1638, 05-CV-1645, 05-CV-1646,<br>05-CV-1678, 05-CV-1971, 05-CV-1983,<br>05-CV-2104, 05-CV-2185, 05-CV-2186,<br>05-CV-2199, 05-CV-2249, 05-CV-2367,<br>05-CV-2379, 05-CV-2380, 05-CV-2384,<br>05-CV-2385, 05-CV-2386, 05-CV-2387,<br>05-CV-2479, 06-CV-1668, 06-CV-1684,<br>06-CV-1690, 06-CV-1758, 06-CV-1761,<br>06-CV-1767, 07-CV-1710, 07-CV-2338,<br>08-CV-0987, 08-CV-1101, 08-CV-1104,<br>08-CV-1153, 08-CV-1221, 08-CV-1224,<br>08-CV-1228, 08-CV-1232, 08-CV-1233,<br>08-CV-1235, 08-CV-1236, 08-CV-1238,<br>08-CV-1360, 08-CV-1440, 08-CV-1789,<br>08-CV-1805, 08-CV-1828, 08-CV-1923,<br>08-CV-2019 |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO CONFIRM
<u>DESIGNATION OF UNCLASSIFIED FACTUAL RETURNS AS "PROTECTED"</u>**

Petitioners respectfully oppose the government's blanket motion to confirm its purported designation of the *entire content* of all unclassified factual returns as "protected" pursuant to paragraph 34 of the protective order entered in most of these actions. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1416) ("Gvt. Br.").[1] The government's motion should be denied as overly broad and legally unjustified. To the extent specific information in the returns may be appropriate for such designation, the government should be required to meet and confer with petitioners' counsel in a good faith attempt to reach agreement, and, failing agreement, to file motions with the Merits Judges supported by a particularized showing as to the need for protection of the specifically identified information.[2]

## ARGUMENT

Adopting once again a "one-size-fits-all" approach to the Guantánamo detainee cases, the government asks the Court to seal unclassified judicial records from public view, in their entirety, in nearly 100 detainee cases, for an indefinite period of time. The government's motion applies not only to cases in which returns have already been filed, but also to cases in which returns have not yet been filed. It also applies to cases in which the protective order – pursuant to which the government purportedly seeks relief – has not yet been entered.[3] The government

---

[1] The government styles its motion as one to "confirm" its prior designation of information as "protected." As shown below, the government has no power unilaterally to designate information as "protected." The government's motion should be treated as one seeking a court order for such a designation.

[2] All petitioners in these cases object to the Court's December 30, 2008 Minute Order limiting them to a single consolidated response to the government's motion. As discussed below, these cases are no longer subject to coordination and management, and instead should proceed before the Merits Judges.

[3] The Court still has not entered a protective order in the cases of certain former CIA prisoners, including Majid Khan, ISN 10020, who has not been charged by military commission and likely will not be charged, and whose habeas case has been pending for more than two years without *any* judicial relief. *See Khan v. Bush*, No. 06-cv-1690 (RBW) (D.D.C.) (filed Sept. 29, 2006).

fails to cite a single judicial decision or other legal authority supporting such sweeping and unprecedented relief. The government instead contends that such a blanket designation is appropriate because the government may have inadvertently included in the unclassified factual returns information that it later regrets having released. *See* Gvt. Br. at 2, 3, 6, 8. The government makes this argument despite having repeatedly told petitioners' counsel and the Court that its delay in producing unclassified returns was necessitated by the careful, multi-agency review process that proper classification review entails.

Indeed, much of the information contained in the factual returns has already been heavily redacted. And much of the information that appears in the unclassified returns is already in the public domain, often (though not solely) as a result of the government's prior and unrestricted release of unclassified documents from the Combatant Status Review Tribunal and Administrative Review Board proceedings.

If granted, the government's motion would frustrate the court orders requiring production of unclassified returns, contravene the strong public interest in making litigation as transparent as possible, and continue to complicate and delay the litigation of these cases. The motion should be denied for several reasons.

**I.     The Government's Motion Is Squarely Foreclosed by the D.C. Circuit's Decisions in *Bismullah* and *Parhat* Rejecting Blanket Designations of Information as "Protected"**

The government moves to seal each and every word in the unclassified factual returns that have been filed, or will be filed, in these cases. But the D.C. Circuit has already twice rejected similar blanket requests by the government to seal unclassified information as "protected," including more limited categories of "Law Enforcement Sensitive" information.

In *Bismullah v. Gates*, the government "propose[d] unilaterally to determine whether [unclassified] information is 'protected,' meaning that petitioners' counsel must keep it

confidential and file under seal any document containing such information." 501 F.3d 178, 188 (D.C. Cir. 2007). "For example, the Government would designate as 'protected' information 'reasonably expected to increase the threat of injury or harm to any person' and information already designated by the Government to be 'For Official Use Only' or 'Law Enforcement Sensitive.'" *Id.* Rejecting this proposal, the D.C. Circuit held that "[i]t is the court, not the Government, that has discretion to seal a judicial record, which the public ordinarily has the right to inspect and copy. Therefore, insofar as a party seeks to file with the court nonclassified information the Government believes should be 'protected,' the Government must give the court a basis for withholding it from public view." *Id.* (citations omitted).

Similarly, in *Parhat v. Gates*, the government moved to protect from public disclosure in more than one hundred detainee cases "all nonclassified record information that it has labeled 'law enforcement sensitive,' as well as the names and 'identifying information' of all U.S. government personnel mentioned in the record." 532 F.3d 834, 836 (D.C. Cir. 2008). Acknowledging there could be information in those categories that might warrant protection, the D.C. Circuit again rejected the government's proposal for a blanket designation. *See id.* In a comment equally pertinent to the instant cases, the court concluded:

> [T]he motion relies solely on spare, generic assertions of the need to protect information in the two categories it identifies. The government does not "give the court a basis for withholding" that is specific to the information that it has designated in this case. Nor does it offer any basis on which [the court] may determine whether the information it has designated properly falls within the categories it has described.

*Id.* at 852-53 (quoting *Bismullah*, 501 F.3d at 188).

The court also noted, *a fortiori*, that the government had not provided a sufficient basis for blanket protection in cases where the government had not yet produced factual returns. *Id.* at 852. "Granting the motion under those circumstances, without knowing which material the

3

government would ultimately designate, would be indistinguishable from permitting the government 'unilaterally to determine whether information is 'protected.' *Bismullah* plainly bars that result." *Id.* (quoting *Bismullah*, 501 F.3d at 188).

The court further concluded:

> By resting its motion on generic claims applicable to all of the more than one hundred other detainee cases in which the motion was filed, the government has effectively duplicated its request "unilaterally to determine whether information is 'protected.'" *Bismullah*, 501 F.3d at 188. Without an explanation tailored to the specific information at issue, [the court is] left with no way to determine whether it warrants protection – other than to accept the government's own designation. This we cannot do because, as we held in *Bismullah*, "[i]t is the court, not the Government, that has discretion to seal a judicial record, which the public ordinarily has the right to inspect and copy."

*Id.* The court therefore denied the government's motion "[b]ecause we are unable to determine, on the pleadings before us, whether the information that the government has designated should be deemed 'protected.'" *Id.*

Here, as in *Bismullah* and *Parhat*, the government has failed to identify any specific unclassified information that should be designated as "protected." In fact, the relief sought by the government is far broader than the relief sought in *Parhat*, where the request for protection was confined to two specific, limited categories of information.[4] By contrast, the government now seeks to have *all* unclassified information protected, including, as previously noted, information that was readily available in the public domain long before the unclassified returns were filed. Moreover, the government has rejected all offers by petitioners' counsel to meet and confer about the designation of specific information.

---

[4] In *Parhat*, the government sought protection for two categories of unclassified evidence – the names and other identifying information pertaining to U.S. government personnel, and so-called "Law Enforcement Sensitive" information. 532 F.3d at 836. In these cases, the government has attempted to finesse those particular issues by withholding much of the information in those two categories as purportedly classified.

4

As it did in *Bismullah* and *Parhat*, the government here offers only generalized allegations of harm that might or might not result from public disclosure of some unspecified information in some indeterminate number of detainee cases, if any. It is difficult to see how the disclosure of general information, including, for example, the name, age and citizenship of a detainee, or the location of his capture, could pose any threat to national security, especially when most, if not all, such information can be found in unclassified documents posted by the government on the Internet. *See*, *e.g.*, Detainee Related Documents, Department of Defense, Freedom of Information Act Reading Room, *available at* http://www.dod.mil/pubs/foi/detainees/. And given that the government has consented to disclosure of the information to the detainees themselves and other witnesses who may include certain members of the general public, it is even more difficult to comprehend its concern.

In sum, the purported harm cited by the government is entirely speculative, particularly as to those cases where no unclassified returns have been filed, and the relief sought is grossly overbroad. Moreover, because the government has not, as required by *Bismullah* and *Parhat*, provided an adequate basis for withholding *all* unclassified information in nearly 100 factual returns from the general public, its motion should denied.

## II. A Blanket Designation of All Unclassified Information as "Protected" Is Inconsistent with the Protective Order Entered in Most of These Cases

The government's failure to identify the precise words or information in each factual return that it seeks to have designated as "protected" is also inconsistent with the protective order originally drafted and applied by Judge Green,[5] whose procedures for designating information as

---

[5] *See* Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (Nov. 8, 2004); Order Addressing Designation Procedures for "Protected Information" (Nov. 10, 2004); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order (Dec. 13, 2004).

5

"protected" are substantively identical to the procedures in the revised protective order entered by this Court on September 11, 2008. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 409).

More than four years ago, on November 8, 2004, the government moved to designate unclassified information in approximately 60 factual returns as "protected" until such time as the government determined the information may be disclosed publicly. The petitioners responded that they were unable to take a position on the government's motion until they could identify and review the specific information the government sought to designate. On November 22, 2004, the government replied that the information it sought to designate could be identified by comparing versions of the factual returns filed on the public record with different versions of the same returns submitted under seal through the Court Security Office; and the government refused to provide any further detail on the ground it would be "burdensome and unnecessary." *See generally* Order for Specific Disclosures Relating to Respondents' Motion to Designate as "Protected Information" Unclassified Information and Petitioners' Motion for Access to Unredacted Factual Returns, *In re Guantánamo Detainee Cases*, No. 02-cv-299 (CKK) (D.D.C. Dec. 8, 2004) (dkt. no. 128).

Judge Green summarily rejected the government's request for a blanket designation of information in the returns as "protected." In a December 8, 2004 order, she ruled:

> As provided in the Court's Amended Protective Order of November 8, 2004, it is for the Court to determine what unclassified information should be deemed "protected" and treated by all counsel with the same safeguards they would employ with respect to classified information. *It is the moving party's obligation, however, to show with exact detail the specific information the party seeks to have designated as "protected."* The respondents have fallen far short of the precision necessary to inform the Court and opposing counsel of the exact information they seek to be deemed "protected."

*Id.* at 2 (emphasis added). Accordingly, Judge Green directed the government to highlight "with a colored marker the *exact words or information in each factual return* the respondents seek to be deemed 'protected.'" *Id.* (emphasis added).

As reflected in her subsequent order of January 31, 2005, Judge Green's requirement that the government identify with precision the information it sought to have designated as "protected" enabled both the court and petitioners' counsel to review, and the parties ultimately to reach agreement, as to the proposed designations. Indeed, petitioners' counsel did not object to the specific designations identified by the government, and Judge Green therefore ordered that the designated information be treated as "protected." *See generally* Order Granting November 8, 2004 Motion to Designate "Protected Information" and Granting November 18, 2004 Motion for Access to Unredacted Factual Returns, *re Guantánamo Detainee Cases*, No. 02-cv-299 (CKK) (D.D.C. Jan. 31, 2005) (dkt. no. 155).

The parties in the instant cases would likely be able to reach similar agreement if the Court were to order the government to meet and confer in a meaningful fashion with respect to particular proposed designations. By contrast, the government's attempts to evade its responsibility to meet and confer with opposing counsel and to apply a blanket designation are improper and should be rejected just as Judge Green rejected a similar approach more than four years ago.[6]

---

[6] The government's bald suggestion that it cannot meet and confer in a meaningful fashion as to these matters because it would be unduly burdensome, *see* Gvt. Br. at 7, is simply not credible. The government now has dozens of attorneys assigned to these cases, and counsel for the petitioners stand ready to work with them on this and similar issues. As in the original cases before Judge Green, the parties in *Parhat* ultimately were able to reach agreement quickly and efficiently concerning the designation of specific information as "protected" once that information was properly identified. *See* Per Curiam Order, *Parhat v. Gates*, No. 06-1397 (D.C. Cir. Sept. 2, 2008).

### III. A Blanket Designation Would Impair the Detainees' Ability to Seek Meaningful Habeas Review

In *Boumediene v. Bush*, the Supreme Court held it "uncontroversial" that, at a minimum, Guantánamo detainees must have a meaningful opportunity to demonstrate they are being held "pursuant to the erroneous application or interpretation of relevant law." 128 S. Ct. 2229, 2267-68 (2008). The Court also held "the costs of delay can no longer be borne by those who are held in custody [and] [t]he detainees in these cases are entitled to a prompt habeas corpus hearing." *Id.* at 2275. The government's proposal to designate the unclassified factual returns as "protected" contravenes *Boumediene* in two respects.

1. If accepted, the government's proposal would limit the detainees' ability to use unclassified information to challenge the legality of their detention. Meaningful habeas review includes the power to challenge the sufficiency of the government's evidence, and present relevant exculpatory evidence. *See id.* at 2270. It will also include in many cases the power to obtain discovery. Already severely restricted in their ability to review and respond to classified evidence, the detainees must be able to use unclassified information in their returns to the greatest extent possible to develop their own evidence and prepare their cases for merits hearings. Yet by proposing to limit the disclosure of unclassified information in the factual returns to detainees themselves and other witnesses who agree to comply with the protective order, the government would effectively impede the detainees' ability to challenge their detention.

For instance, while the government states that it does not object to "disclosure" or "sharing" of unclassified information designated as "protected" with the detainees to whom the returns pertain, *see* Gvt. Br. at 2 & n.3, the manner and extent to which the government will authorize the detainees to have access to the information is far from clear. In at least one case,

8

*Ameziane v. Bush*, No. 05-cv-392 (ESH) (D.D.C.), the government recently refused to allow the Privilege Review Team to process legal mail consisting of an unclassified document from Mr. Ameziane's factual return on the ground that the government had unilaterally designated the information in the document as "protected." While the government had previously authorized Mr. Ameziane's counsel in writing to "share" the document with him, the government later clarified that while the document could be "shared" with Mr. Ameziane it could not actually be provided to him except – and only – during counsel meetings with him at Guantánamo. He could not receive the document via legal mail or keep it with him in his cell for the purpose of preparing counter-evidence. While that dispute has since been resolved by agreement of the parties, at least as to the particular document at issue in Mr. Ameziane's case,[7] it illustrates the inadequacy of the government's representations about allowing the detainees themselves access to information it seeks to designate as "protected."

The government's consent to counsel sharing information with other witnesses is similarly hollow. While the government would permit the sharing of unclassified information designated as "protected" with "individuals, such as witnesses, necessary to the preparation of an individual case," Gvt. Br. at 2, it insists that such individuals must agree to abide by the applicable protective order. *See id.* at 2 n.4. Apart from the fact that the protective order has not yet been entered in some cases, the requirement that a prospective witness agree to comply with the protective order – which requires signing an acknowledgement that the individual is exposing

---

[7] The parties have not reached agreement as to whether the information in the document is properly designated as "protected," but the government has authorized Mr. Ameziane's counsel to send him a copy of the document via legal mail. The government also continues to refuse to allow Mr. Ameziane's counsel to send him copies of two other unclassified documents from his factual return on the ground that the government has unilaterally designated the content as "protected." That issue has not been resolved.

9

himself or herself to the threat of contempt or criminal liability for unauthorized disclosure of information – is likely to be an insurmountable barrier for counsel attempting to communicate with prospective witnesses in remote regions of the globe, some of whom may lack access to email or reliable mail service, or are illiterate, or otherwise may be reluctant to sign any agreement subjecting themselves to the authority of the United States.  Finally, as a general matter, the government should not have the sole say-so as to how, when, or to whom the detainees may disclose unclassified information in order to develop challenges to their detention. *See Greene v. McElroy*, 360 U.S. 474, 496 (1959) (noting as fundamental principle in our jurisprudence the right of individuals seriously injured by government action to review evidence against them so that they may show it is untrue).

In addition, the government's proposal to designate all unclassified information in the factual returns as "protected" is wildly overbroad, and necessarily encompasses information that is already available on the Internet or in the public domain, often (though not solely) as a result of the government's prior and unrestricted release of unclassified documents from the Combatant Status Review Tribunal and Administrative Review Board proceedings.  *See*, *e.g.*, Detainee Related Documents, Department of Defense, Freedom of Information Act Reading Room, *available at* http://www.dod.mil/pubs/foi/detainees/.  The government's proposal also necessarily encompasses information that petitioners' counsel has already submitted to the Privilege Review Team for classification review – including information from counsels' privileged meeting notes – and been determined to be unclassified and appropriate for public dissemination.

It also bears emphasis that the unclassified factual returns produced by the government to petitioners' counsel are already heavily redacted.  In many instances, the government has

redacted, as allegedly classified, information that has long been available in the public domain. In other words, the government has already erred grossly on the side of protecting information that is not properly protectable. The government appears to admit as much in its current motion. *See* Gvt. Br. at 5, 9 n.13.

In sum, the government's proposal for a blanket designation is unreasonable, unnecessary, and would significantly impair the detainees' ability to prepare their cases and exercise their habeas rights.

2. The government's motion also flies in the face of the Supreme Court's directive in *Boumediene* that these habeas cases must proceed expeditiously. Restricting the use by detainees and their counsel of unclassified information for an indefinite period of time while the government conducts further classification review would necessarily delay the development and preparation of these cases for merits hearings. Indeed, simply by asserting the power to designate the entirety of the unclassified returns as "protected" from the time they were originally produced to petitioners' counsel – a power repeatedly rejected by the courts – and then by waiting several months to file a motion to confirm that blanket designation, the government has already succeeded in impeding the detainees' use of the information for a considerable period of time. In many respects, the government's manifest efforts to frustrate and delay these cases have already been successful. Yet such obfuscation and intransigence should not be tolerated further.

If there is a genuine need to designate certain limited information as "protected," the government should identify the specific information, meet and confer with opposing counsel about that information, and, only if necessary, file a motion before the Merits Judge that is limited to the specific information at issue.

11

## IV. The Government's Motion Ignores the Case Management Orders in These Cases

By filing a single motion for a blanket designation of all unclassified information in nearly 100 cases as "protected," the government has ignored the case management orders entered in these cases. These cases are no longer subject to coordination and management, and should proceed before the Merits Judges. Indeed, what, if any, specific information in a particular unclassified factual return should be designated as "protected" is an issue ill-suited to common resolution among nearly 100 habeas cases that involve different facts and evidence.

These cases were transferred to this Court for coordination and management more than six months ago "so that [they] can be addressed as expeditiously as possible as required by [*Boumediene*]." Resolution of the Executive Session (D.D.C. July 1, 2008). They were not transferred for any other purpose; indeed, the transfer resolution specified that each "transferring Judge will retain the case for all other purposes." *Id.*

On November 6, 2008, after months of briefing on various issues concerning the proper framework for these cases, the Court entered a case management order to govern these cases. The order required the government to produce "unclassified factual returns" (not some other "preliminary measure," Gvt. Br. at 4 n.8). The order further specified that the Merits Judges "may alter the framework based on the particular facts and circumstances of their individual cases" and "the Merits Judges will address procedural and substantive issues not covered in this Order." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 940, at 2 & n.1). On November 18, 2008, the government nonetheless sought belated reconsideration and clarification of that order by this Court, not before the Merits Judges. *See In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1004). The filing of that motion had both the purpose and effect of stalling proceedings before the latter.

On December 16, 2008, the Court granted reconsideration in part. Accepting at least in part the government's asserted need for more time to conduct the careful, multi-layered classification review necessary to ensure that no sensitive information was inadvertently or improperly disclosed, this Court extended the deadlines for the government to file unclassified returns. But the reconsideration order also instructed that "any future motions to amend the Case Management Order be directed to the Merits Judges." *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C.) (misc. dkt. no. 1315, at 4). The Court further lifted the temporary stay of these cases that had been imposed pending reconsideration. *See id.*

In the meantime, several of the Merits Judges have issued their own orders to govern these cases. Those orders include in some cases orders requiring the parties to meet and confer regarding the designation of specific information in the unclassified returns that should be declassified. *See*, *e.g.*, Case Management Order, *Al-Ghizzawi v. Bush*, No. 05-cv-2378 (JDB) (D.D.C. Dec. 22, 2008) (dkt. no. 155) (requiring government to file declassified return by January 14, 2009).[8] This Court also recently denied the government's motions to delay their obligation to produce exculpatory evidence and other discovery on the ground that such motions should be directed to the Merits Judges. *See* Minute Order, *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C. Dec. 31, 2008). This Court further denied the government's blanket motion to stay all cases filed by detainees who have been approved for transfer or release from Guantánamo Bay. *See* Minute Order, *In re Guantánamo Bay Detainee Litig.*, Misc. No. 08-442 (TFH) (D.D.C. Jan. 2, 2009).

---

[8] The government states it is "working toward preparation" of declassified factual returns. Gvt. Br. at 4 n.8. That assurance is illusory given the length of time it has already taken the government to produce unclassified returns. Indeed, the government offers no timeframe for production of either unclassified returns that are not "protected" or declassified returns.

Yet the government's instant motion ignores each of these developments signaling the end of the coordination and management phase of the Guantánamo litigation. As indicated above, the government continues trying to litigate these cases on a class-wide basis and achieve further delay of its obligation to produce factual returns that are, in fact, unclassified. But the time for coordination and management has plainly ended, and these cases are now properly before the Merits Judges. Again, if the government has a genuine need to designate certain information as "protected," it should identify the specific information, articulate its reasons, meet and confer with opposing counsel, and, only if necessary, file a motion before the Merits Judge limited to the specific information at issue in that case. This Court should not allow or encourage the government to continue to flout the requirement that these cases be addressed to the Merits Judges.

## **Conclusion**

For all of these reasons, the government's motion should be denied. To the extent specific information in the returns may be appropriate for such designation, the government should be required to meet and confer with petitioners' counsel in a good faith attempt to reach agreement, and, failing agreement, to file motions with the Merits Judges supported by a particularized showing as to the need for protection of the specifically identified information.

Date: New York, New York
      January 7, 2009

Respectfully submitted,

/s/ J. Wells Dixon
Shayana D. Kadidal
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499
shanek@ccrjustice.org
wdixon@ccrjustice.org

- and -

Peter B. Ellis
Andrew Loewenstein
Usha-Kiran Ghia
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000

*On Behalf of Petitioners*[*]

---

[*] With permission of counsel for petitioners in the above-captioned cases, reserving their objections to a single consolidated opposition brief.