# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

---------------------------------------------------------------- :

MUSTAFA BIN-AHMAD AL-HAWSAWI,     :

     Petitioner,     :

     :   **MOTION FOR MISCELLANEOUS**

     v.     :   **RELIEF**

     :

ROBERT M. GATES, *et. al.*     :   Civil Docket Number 08-cv-1645 (RJL)

     :

     Respondents.     :

     :

---------------------------------------------------------------- :

---------------------------------------------------------------- :

AMMAR AL-BALUCHI,     :

     Petitioner,     :

     :   **MOTION FOR MISCELLANEOUS**

     v.     :   **RELIEF**

     :

ROBERT M. GATES, et. al.     :   Civil Docket Number 08-cv-2083 (PLF)

     :   Misc. No. 0442-08

     Respondents.     :

---------------------------------------------------------------- :

## PRELIMINARY STATEMENT

SCOTT L. FENSTERMAKER, ESQ. (hereinafter, "Movant") respectfully submits this motion for an Order of this Court (1) enjoining Respondents and their subordinates from proceeding in the military commissions' matter involving Petitioners Mustafa Bin-Ahmad al-Hawsawi and Ammar al-Baluchi (collectively "Petitioners") until such time as Respondents honor Petitioners' choice of counsel; (2) directing that Movant be permitted to utilize the so-called "legal" mail system in place at Guantánamo Bay to communicate with Petitioners; and (3) granting a writ of *mandamus* directing Respondents and their subordinates in the Office of Military Commissions to either (a) accept Movant's notices of appearance in Petitioners' military

1

Dockets.Justia.com

commissions' matter, or (b) reject Movant's notices of appearance in Petitioners' military commissions' matter on the official and public military commissions' record and in Petitioners' presence.

## BACKGROUND

In August 2005, Movant brought suit in the United States District Court for the Southern District of New York (the "SDNY") individually and as "next friend" to eight unnamed detainees at Guantánamo Bay, who President Bush stated were facing imminent war crimes charges before the military commissions.[1] *See* January 13, 2009 Declaration of Scott L. Fenstermaker, Esq. (the "Fenstermaker Declaration"), ¶ 2. In September of 2006, shortly after President Bush announced that he had ordered Petitioners and 12 other detainees transferred from CIA-run prisons to the custody of Respondents at Guantánamo Bay to face trial by military commissions, Movant amended the SDNY petition to include similar causes of action on behalf of Petitioners and those 12 other former CIA prisoners. *See id.* Among the causes of action brought on behalf of the eight unnamed and 14 named detainees were that they were being denied their right to counsel, and that, as a result of their isolation, Petitioners and the other detainees were unable to secure attorneys who were members of the Pool of Qualified Civilian Defense Counsel (the "Pool") to represent their interests as the government continued to build its war crimes cases against them.[2] *See id.* The litigation also asserted speedy trial claims on the detainees' behalf.

---

[1] Despite repeated requests, Respondents in the SDNY litigation refused to provide the names of the eight unnamed petitioners in that action. These eight individuals had been the subject of a Department of Defense press release.

[2] In order to represent a detainee before the military commissions, a civilian attorney must be a member of the Pool. The government has refused to disclose the names of the attorneys who are members of the Pool, or even to disclose the number of attorneys in the Pool.

In June of 2007, the SDNY matter was dismissed by the District Court. *See id*, ¶ 3. The litigation is currently pending in the United States Court of Appeals for the Second Circuit, where appellants' motion to supplement the record is pending. *See id*. Shortly after the suit's dismissal, Movant wrote to Petitioners, Ahmad Khalfan Ghailani, Rahim al-Nashiri, Abu Faraj al-Libi and 7 of the other named detained petitioners.[3] *See id*, ¶ 4. Of the 12 named detained petitioners to whom Movant wrote, eight responded in writing. *See id*. Petitioners and Messrs. Ghailani, and al-Libi were among these eight. *See id*, ¶¶ 4, 5, and 6.

## STATEMENT OF MATERIAL FACTS

### Petitioners Ammar al-Baluchi and Mustafa Bin-Ahmad Al-Hawsawi

Petitioner al-Baluchi retained Movant to act as his attorney and legal advisor by letters dated September 19, 2007 and February 2, February 11, May 26, July 7, and July 14, 2008.[4] *See* Fenstermaker Declaration, ¶ 5. Petitioner al-Hawsawi retained Movant to act as his attorney by letters dated August 22, 2007 and May 2, 2008.[5] *See* Fenstermaker Declaration, ¶ 6.

On June 5, 2008, Petitioner al-Baluchi, who is facing military commissions' charges for his alleged involvement in the September 11, 2001 terrorist attacks, informed the military commissions' judge during his arraignment that he had been writing Movant in an apparent attempt to secure Movant's legal assistance and that the government had been interfering with

---

[3] Of the suit's 14 named detained petitioners, two had counsel as of the date of the District Court's dismissal order. Movant did not write to the two represented named detained petitioners.

[4] Copies of all correspondence Movant has received from Petitioner al-Baluchi are available for the Court's *in camera* and *ex parte* review. Each letter from Petitioner al-Baluchi to Movant was received by Movant months after it was written.

[5] Copies of both letters Movant has received from Petitioner al-Hawsawi are available for the Court's *in camera* and *ex parte* review. Both letters from Petitioner al-Hawsawi to Movant were received by Movant months after they were written.

his letters to Movant.[6] *See id*, ¶¶ 7, 12 and 29, Exhibit A. Petitioner al-Baluchi repeated his request on July 9, 2008 before the military judge to no avail.[7] *See* Fenstermaker Declaration, ¶ 13. In response to these events and Petitioner al-Baluchi's letters, Movant filed a notice of appearance on Petitioner al-Baluchi's behalf with the Office of the Trial Judiciary and with the military judge by e-mail and letter dated October 9, 2008. *See* Fenstermaker Declaration, ¶ 25, Exhibits G and H. Movant similarly filed a notice of appearance with the Office of the Trial Judiciary on Petitioner al-Hawsawi's behalf on September 20, 2008. *See* Fenstermaker Declaration, ¶ 24, Exhibits E and F. Although these notices were timely and properly filed, the Office of the Trial Judiciary has not acted upon or acknowledged receipt of them. Nor has it made these notices a part of the commissions' record or notified Petitioners of Movant's appearance on their behalf. *See id.*, ¶¶ 24 and 25.

The Petitioners' military commissions' matter has proceeded without Movant's involvement. Based upon news reports, Petitioners, by letter dated November 4, 2008 addressed to the military judge presiding over their military commissions' matter, attempted to enter a written plea of guilty. It is unclear whether Petitioners, who are both facing the possibility of the death penalty if convicted, have asked for, or received, any sentencing consideration as a result of their offers to plead guilty. At this stage, it is unclear whether the military judge presiding over either Petitioner's military commissions' matter has accepted their plea of guilty.

---

[6] As of June 5, 2008, Movant had received three of the five letters Petitioner al-Baluchi had sent to Movant. Movant has never received the two additional letters.

[7] Movant has requested copies of the transcripts of Petitioner al-Baluchi's June 5, 2008 and July 9, 2008 military commissions' appearances and Petitioner al-Hawsawi's September 2008 appearance. *See* Fenstermaker Declaration, ¶¶ 29 through 31, Exhibits K, L, M, N, and O. The Deputy Clerk of Court for the Office of the Trial Judiciary refused to provide a copy of the June and September transcripts and has yet to respond to Movant's request for the transcript of the July 9th proceeding. *See id.* Movant was apparently mentioned by name during the June and July proceedings and believes he may have been mentioned by name in the September proceeding, as he had recently filed a notice of appearance on Petitioner al-Hawsawi's behalf.

**Ahmed Khalfan Ghailani's Matter**

Through five letters dated October 20, 2007 and April 10, April 16, May 12, and May 26, 2008, Ahmed Khalfan Ghailani named Movant as his designated attorney. Despite Mr. Ghailani's authorization to Movant, the government has never permitted Movant to visit with Mr. Ghailani at Guantánamo Bay. In addition, since announcing its July 1, 2008 policy of rejecting all of Movant's mail sent to Guantánamo Bay, the government has rejected 38 pieces of mail from Movant to Mr. Ghailani.

Movant notified military commissions' officials of his attorney-client relationship with Mr. Ghailani by letters dated December 14, 2007 and March 31, 2008. Shortly thereafter, and without consulting Movant, the Chief Defense Counsel for the Office of Military Commissions (the "CDC"), Colonel Steve David, appointed a military attorney, Lt. Col. Michael Acuff, to represent Mr. Ghailani. A description of the troubled relationship between Lt. Col. Acuff and Movant can be found in Document 10 of *Ghailani v. Gates*, 08-1190 (RJL). This troubled history led Colonel David and Lt. Col. Acuff to retain David H. Remes, Esq., a civilian attorney, to secure Movant's removal from Mr. Ghailani's *habeas* matter.

On July 25, 2008, Mr. Remes, who had never met or communicated with Mr. Ghailani, and acting solely under the authorization of Lt. Col. Acuff, filed a motion to remove Movant as Mr. Ghailani's attorney in his *habeas* matter. The motion was based solely upon an uncorroborated e-mail notification and two affidavits of military counsel, all of which claimed that Mr. Ghailani had rejected Movant. This Court summarily denied Movant's request for a hearing at which Mr. Ghailani could testify and granted Mr. Remes' motion striking Movant's notice of appearance and barred him from further involvement. (*See* 08-1190, document 14).

A short time after this Court granted Mr. Remes' motion striking Movant's notice of appearance, those attorneys who participated in eliminating Movant as Mr. Ghailani's attorney were removed. Colonel David was relieved of his command as the Chief Defense Counsel and has been replaced. Mr. Ghailani dismissed Lt. Col. Acuff and revoked any authorization Lt. Col. Acuff may have provided to Mr. Remes to act on his behalf.[8] The Office of the CDC subsequently assigned Lt. Col. Jeffrey Colwell as Mr. Ghailani's new military defense counsel. According to Lt. Col. Colwell, in October 2008, at his arraignment before the military commissions, Mr. Ghailani openly demanded that he be represented before the military commissions by Movant.

As for Mr. Ghailani's *habeas* case, he is currently unrepresented. As a result of this Court's August 19, 2008 order, Movant continues to be precluded from representing Mr. Ghailani in that matter and notifying the Court of this turn of events. (08-1190, document 14).

### Respondents' Rejection of Movant's Mail to Guantánamo Bay

Since July 1, 2008, when Respondents announced a shift in their policy of permitting Movant to send mail to Guantánamo Bay via the "non-legal" mail channel, Respondents have rejected 48 pieces of mail sent by Movant to his Guantánamo Bay-based clients, including at least one piece lacking "privileged" status. *See* Fenstermaker Declaration, ¶¶ 8 through 11, 14 through 23, Exhibits B and C. Respondents, without support other than unilateral proclamation and fiat, assert that privileged mail may not be sent through what they call the "non-legal" mail

---

[8] This Court's August 19, 2008 order directed that "within 60 days of the date of this Order, Mr. Remes will file a signed authorization from petitioner to pursue this action, or a declaration by Mr. Remes that states that petitioner directly authorized counsel to pursue the action and explains why counsel was unable to secure a signed authorization." Mr. Remes has filed neither and has failed to notify the Court that Mr. Ghailani has terminated whatever authority he may have had. In essence, Mr. Remes' actions have left Mr. Ghailani without counsel in his *habeas* matter.

system in place at Guantánamo Bay.[9] Respondents have repeatedly failed to identify the governmental interest furthered by refusing to deliver privileged mail through the so called "non-legal" mail system at Guantánamo Bay, if, indeed, one exists.[10]

Respondents permitted Movant to send mail designated "privileged" through the so-called "non-legal" mail system for over a year prior to their July 1, 2008 proclamation. *See* Fenstermaker Declaration, ¶ 10. No apparent harm arose as a result of this privileged correspondence. Only after a number of detainees, including Petitioners herein and Mr. Ghailani, Rahim al-Nashiri, and Abu Faraj al-Libi expressed interest in Movant's services, did Respondents announce their proclamation.[11] Respondents made no mention of a prohibition against Movant's sending non-privileged mail. *See* Fenstermaker Declaration, ¶ 8.

### Movant's Suspension from the Pool of Qualified Civilian Defense Counsel

On or about August 29, 2008, without according Movant an opportunity to be heard, Colonel David, the CDC, notified Movant that he had suspended Movant from the Pool. *See* Fenstermaker Declaration, ¶ 27, Exhibit J. In so doing, Colonel David precluded Movant from

---

[9] Access to the so-called "legal" mail system at Guantánamo Bay is reserved for attorneys selected and approved by Respondents and their subordinates.

[10] In seeking to secure the dismissal of the SDNY amended petition, the government made claims to the court and to Movant that Movant, in his capacity as an attorney, could send mail to detainees held at Guantánamo Bay. In so claiming, the government never mentioned that privileged mail was not permitted through the channels it proposed. The government made these claims in the Southern District of New York to convince the court that Movant had the capability to contact detainees in his capacity as an attorney in furtherance of its dismissal motion.

[11] This Court, by minute order dated December 15, 2008, as amended on December 26, 2008 and December 29, 2008 in matter 08-cv-2083 (PLF), directed Movant to provide a signed authorization from Petitioner al-Baluchi directly authorizing the *habeas* petition underlying 08-cv-2083 (PLF). Movant sent Petitioner al-Baluchi a letter dated December 18, 2008 seeking clarification of Petitioner al-Baluchi's direction that Movant file a Detainee Treatment Act petition on his behalf. It is unclear whether Petitioner al-Baluchi will ever receive this request for information as Respondents are currently rejecting all of Movant's mail to Mr. al-Baluchi, without exception.

ever representing any detainee before the military commissions, including his then-existing clients Petitioners, Mr. Ghailani, and Mr. al-Nashiri.

On Friday, November 21, 2008, Colonel Thomas J. Krzyminski, a staff officer in the Office of the CDC notified Movant, by electronic mail, that his office was reviewing the decision to suspend Movant. *See* Fenstermaker Declaration, ¶ 28. Colonel Krzyminski demanded that Movant reapply to the Pool and offered him the opportunity to comment on Colonel David's unilateral suspension order. Colonel Krzyminski's notice came less than 24 hours after Movant first notified this Court of his suspension in a status report in Petitioner al-Hawsawi's *habeas* matter. *See Al-Hawsawi v. Gates*, 08-1645 (RJL). Movant was not informed of the nature of this "review" or when the "review" would be resolved.[12]

## ARGUMENT

The military commissions' case against Petitioners is proceeding in violation of their Fifth and Sixth Amendment rights to due process of law and counsel of their choice. The government has effected that violation by (1) interfering with Petitioners' attorney-client relationship with Movant, their chosen counsel; (2) refusing to allow Petitioners to meet with or otherwise communicate with Movant; (3) suspending Movant from the Pool; and (4) refusing to act upon or acknowledge Movant's Notices of Appearance on Petitioners' behalf.

### Interference with Petitioners' Attorney-Client Relationship with Movant

Respondents have repeatedly and aggressively interfered with Petitioners' attorney-client relationship with Movant through asserting control over the detainees' attorney selection process. By controlling attorneys' access to, and communication with, the detainees facing trial by military commission and membership in the Pool, the government in effect selects which

---

[12] As long as the Department of Defense's "review" is underway, it is not clear that Movant has the right to lodge a judicial challenge to the legality of Colonel David's suspension decision.

attorney represents each detainee, repeatedly overriding the detainees' choice of attorneys. Numerous detainees, including Petitioners, Mr. Ghailani and others, have written Movant in an attempt to secure counsel free of government affiliation.[13] In each case, with the exception of one, the government, through its surrogate, the Office of the Chief Defense Counsel, has, upon learning of Movant's retention, appointed military attorneys for these detainees.[14] The appointed military attorneys have, in turn, secured civilian attorneys to assist them in their efforts to interfere with Movant's relationship with his clients.

Respondents and their subordinates have been successful in having Movant removed as counsel of record in Mr. Ghailani's *habeas* matter by isolating him from Movant and securing a civilian attorney to file an application to have Movant removed. As described above, Mr. Ghailani is currently without counsel in his *habeas* matter and without counsel of his choice in his military commissions' matter because, upon learning of the military attorneys' unauthorized and ethically-suspect behavior, he terminated the authority of all attorneys involved in securing Movant's removal from his *habeas* petition.[15] Mr. Ghailani's military commissions' matter is proceeding in the absence of his chosen counsel. Reports from Guantánamo Bay indicate that Mr. Ghailani was arraigned during the third full week of October 2008. During his arraignment, Mr. Ghailani reportedly requested that he be represented by Movant. The Office of the Trial Judiciary has taken no action to secure Movant's attendance at Mr. Ghailani's subsequent military commissions' proceedings. This remarkable chain of events is the direct result of this Court's wrongful and unsupportable decision in Mr. Ghailani's *habeas* matter to remove Movant

---

[13] Respondents' and their subordinates' decisions to reject all of Movant's mail to Guantánamo Bay and to suspend Movant from the Pool were made shortly after these five detainees wrote Movant in an attempt to secure his services.

[14] Movant declined Mr. al-Libi's request for representation on conflict-of-interest grounds.

[15] *See* footnote 8 above.

as his attorney, while simultaneously precluding Movant from filing further papers on Mr. Ghailani's behalf in this Court.

The government's active interference with Petitioners' relationship with their chosen counsel violates Petitioners' Fifth and Sixth Amendment rights to due process of law and counsel of their choice. Specifically, by refusing to advance Movant's application for the necessary security clearance and by refusing to permit delivery of Movant's privileged mail to Petitioners, the government has isolated Petitioners from their chosen attorney and has deprived Movant of his ability to communicate with his clients. *See People v. Moore*, 57 Cal. App. 3d 437, 442 (Cal. App. 4th Dist. 1976) (prosecution's interference with an attorney-client relationship); *see also Commonwealth v. Manning*, 373 Mass. 438, 443 (1977) (government agents' disparagement of the relationship between defendant and his counsel"); *United States v. Irwin,* 612 F.2d 1182 (9th Cir. 1980), citing *Moore* and *Manning*; *see also United States v. Amlani*, 111 F.3d 705, 711 (9th Cir. 1997) (prosecutor's repeated disparagement of defense counsel so egregious as to constitute grounds for a vacatur of conviction); *see also Cinelli v. Cutillo*, 896 F.2d 650, 655 (1st Cir. 1990) (defense counsel termination as result of denigration by the police); *United States v. Morrison*, 449 U.S. 361, 364, *r'hrg. denied* 450 U.S. 960 (1981) (DEA agents' disparagement of counsel). As a result of the government's July 1, 2008 decision to return all of Movant's mail to Petitioners, Petitioners have not received any communication from Movant since May of 2008. Petitioners have therefore been held *incommunicado* from their chosen counsel. As a result of this policy change, Movant is left with no means to maintain his relationship with Petitioners and Petitioners are deprived of the effective representation of their chosen counsel.[16] Having

---

[16] In addition, this policy, as stated in the Justice Department's July 1, 2008 notification, eliminates Movant's ability to secure Petitioners' assistance in challenging Respondents' illegal conduct. In so doing, the Justice Department has deprived this Court of vital information

received no communication from Movant since May of 2008, Petitioners could reasonably, although incorrectly, conclude from Movant's seeming neglect that Movant had abandoned his efforts on Petitioners' behalf. Under this circumstance, Petitioners are forced into the position of either selecting as their attorneys those who the government forces upon them, or choose to proceed *pro se*, as Petitioners have done in their death penalty matter.[17]

### Messrs al-Hawsawi's and al-Baluchi's Military Commissions Matter must be Enjoined to Preclude Further Damage to Their Cause

Federal courts have broad discretionary power to issue equitable relief. *See Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973), *citing Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 27 n. 10 (1971). An injunction is appropriate if necessary to ensure that Petitioners' constitutional rights are protected. *See Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 233-34 (1964) (equal protection rights violated by school segregation policies); *see also Gilmore v. City of Montgomery*, 417 U.S. 556, 571 (1974) (same); *see also Allee v. Medrano*, 416 U.S. 802, 815 (1974) *superseded on other grounds* (rights to

---

necessary for the just and fair determination of this matter and the ability to protect Petitioners' exercise of their right to counsel of their choice.

[17] Many of the civilian attorneys retained by the government to represent the detainees are paid by a third-party known as the "John Adams Project" (the "Project"). The Project is jointly funded by the American Civil Liberties Union ("ACLU") and the National Association of Criminal Defense Lawyers ("NACDL") to pay fees to attorneys for the ostensible purpose of providing legal counsel to detainees who would not otherwise have access to counsel. Project attorneys are actively involved in working to supplant Movant as attorney for Petitioners and others to, in part, secure their personal financial interests in representing these detainees. NACDL attorneys have acknowledged that Project attorneys have a conflict of interest with Movant and, as a result, have refused to assist Movant in his challenge to his suspension from the Pool. The Project attorneys involved in these matters are Nancy Hollander (Rahim al-Nashiri), Nina Ginsberg (Petitioner al-Hawsawi), Jeffrey Robinson (Petitioner al-Baluchi), and Amanda Lee (Petitioner al-Baluchi), among others. Some of the fees paid to these attorneys have been paid directly for work they have accomplished opposing Movant's involvement in Messrs. al-Nashiri's, al-Hawsawi's and al-Baluchi's matters. It is difficult to believe that the detainees are aware of this conflict of interest between their government-selected attorneys and their chosen counsel, Movant, or that a third party is paying legal fees to secure ends in direct conflict with the detainees' right to counsel of their choice. *See United States v. Gonzalez-Lopez, infra.*

freedom of speech, assembly and due process of law); *see also Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (First Amendment rights).

To prevail, Petitioners must demonstrate irreparable injury and the inadequacy of legal remedies. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (irreparable injuries); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (irreparable injuries and inadequacy of legal remedies); *see also Elrod v. Burns, supra.*; *see also Allee v. Medrano*, 416 U.S. at 814-15, *supra* (irreparable injury and inadequate remedy at law).

> Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a 'nice adjustment and reconciliation' between the competing claims, *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). In such cases, the court 'balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction.' *Yakus v. United States*, 321 U.S. 414, 440 (1944). 'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.' *Weinberger, supra.*, citing *Hecht Co. v. Bowles, supra.*

In crafting a remedy, the Court should "eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that those interests have constitutional roots." *Lemon v. Kurtzman*, 411 U.S. at 201, *supra.* After all, "'[t]raditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.'" *Id.*, 411 U.S. at 200, *quoting Brown v. Board of Education*, 349 U.S. 294, 300 (1955). Should the Court deem Petitioners' motion an application for a preliminary injunction, the only other requirement Petitioners would face would be to demonstrate a substantial likelihood of success. *See A Quaker Action Group v. Walter J. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969). Each of these requirements is satisfied by the facts presented herein.

Two weeks after learning of Movant's suspension from the Pool, Petitioners rejected their assigned military counsel and those military counsels' hand-picked civilian attorney assistants and elected to proceed *pro se* in their capital case.[18] According to recent news reports, both also made an attempt to enter a written plea of guilty without securing or attempting to secure sentencing consideration in their death penalty case. These events are the direct result of the government's interference in the attorney-client relationship between Movant and Petitioners. The government's refusal to permit both privileged and non-privileged communication between Movant and the detainees, its refusal to advance Movant's application for a Top Secret security clearance,[19] and the government's suspension of Movant as a member of the Pool, directly violate Petitioners' constitutional rights to choose an attorney free of government influence.

The effect of continuing Petitioners' military commissions' matter without the participation of their chosen counsel is to deprive them of their rights to due process of law and to counsel of their choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (holding that a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles the

---

[18] Petitioner al-Baluchi likely learned of Movant's suspension from the Pool from Mr. Ghailani. Mr. Ghailani and Petitioner al-Baluchi are apparently good friends and frequent conversation partners. The source of information confirming this claim is privileged. Movant will gladly make this information available for this Court's *in camera* and *ex parte* review. Petitioner al-Baluchi almost certainly learned of Movant's suspension from the Pool after Mr. Ghailani's October 2008 arraignment and before Petitioners and their three codefendants drafted their November 4, 2008 written plea of guilty. Similarly, Petitioners are likely aware that Respondents are blocking all of Movant's mail (including non-privileged letters) sent to them. Under the circumstances, it is not surprising that Petitioners recognize the sham and fraudulent nature of the military commissions and have, as a result, rejected their appointed military counsel and the civilian attorneys they hand-picked, effectively electing to commit judicially-sanctioned suicide by pleading guilty to capital charges without apparent sentencing consideration.

[19] Movant applied for a Top Secret security clearance in March 2008. The government has refused to advance that application. Respondents have expeditiously approved the security clearance applications of other attorneys even though the attorneys apparently have no prior military experience, no prior security clearance status, and had never communicated with the detainees.

defendant to a reversal of his conviction, irrespective of prejudice or lack thereof). Petitioner al-Baluchi has repeatedly brought his desire for Movant's assistance to the attention of the military judge presiding over his military commissions' matter. *See* Fenstermaker Declaration, ¶¶ 12, 18, and 29. Similarly, Petitioner al-Hawsawi's military attorney, Major Jon Jackson, who is well-aware of Petitioner al-Hawsawi's preference for Movant as his counsel of choice, has repeatedly exerted pressure on both Petitioner al-Hawsawi and Movant to terminate their relationship.

Respondents' shockingly illegal and ethically-unsound behavior is not lost on the detainees. *See* May 2, 2008 letter from Petitioner al-Hawsawi to Movant; *see also* all of Petitioner al-Baluchi's letters to Movant, particularly his May 26, July 7, and July 14, 2008 letters. While the military commissions are the subject of understandable international condemnation, no aspect of the commissions better illustrates their sham and bogus nature than Respondents' complete disregard and contempt for the detainees' fundamental right to select their own attorney. The detainees' action in collectively seeking to enter a guilty plea in a manner designed to ensure their execution without trial highlights their understanding and acknowledgement of the hopeless nature of their predicament in facing these sham proceedings.

Allowing Petitioners' military commissions' matters to proceed without their chosen counsel presents the probability that their cause will be irreparably harmed, as it is clear that neither Petitioner trusts his appointed military lawyers or the civilian attorneys who serve at the military lawyers' behest.

### An Order Should Issue Directing that Movant Be Afforded Access to the So-Called "Legal" Mail System at Guantánamo Bay

Here, Respondents have repeatedly claimed that Movant should be precluded from access to the so-called "legal" mail system in place at Guantánamo Bay. *See* 08-1190 (RJL) and 08-1085 (PLF). There seems to be no legitimate government interest advanced by this position,

14

other than to limit the availability of counsel chosen by the detainees, an activity in which Respondents and their subordinates have been involved for some time.

Initially, the government's two-track mail system, the "legal" mail channel and the "non-legal" mail channel, seems designed to further security issues, not privilege issues. At the present time, mail sent via the legal mail system is permitted only pursuant to a court-authorized protective order. The protective orders for detainees in Petitioners' circumstances require that attorneys sending legal mail over the legal mail channel secure a Top Secret security clearance. On the other hand, no such requirement exists for mail sent over the non-legal channels. However, the realities of these two systems illustrates that this requirement is a pretext.

Regardless of which system is used, all mail sent to and from the detainees is subject to review and redaction by the government. Hence, any Top Secret information contained in an outgoing letter from a detainee to counsel can be, and routinely has been, redacted by government censors. On the other hand, as Movant does not have a Top Secret security clearance, he is not privy to Top Secret material. Hence, he is unable to transmit such information to Petitioner. Under the circumstances, it is difficult to reconcile the government's effort to eliminate the sending of privileged mail over the non-legal mail system or to exclude Movant from access to the legal mail system.

Movant can only conclude that Respondents' sudden decision on July 1, 2008 to refuse delivery of all of his mail to his clients stemmed from events that occurred at about that time. In June of 2008, Movant's relationship with the Office of the CDC deteriorated as a result of Mr. Ghailani's matter. It was only after this relationship soured over Movant's ethical concerns regarding Mr. Ghailani's military attorney's simultaneous conflicted representation of another detainee that Movant suddenly found his mail to all his clients, including Mr. Ghailani,

the detainee-client who was at the center of the conflict, rejected. Shortly thereafter, the Office of the CDC notified the government that it was no longer recognizing Movant as Mr. Ghailani's representative. The government has similarly refused to recognize Movant as Petitioners' attorney.

By its actions, the government has precluded all access by Movant to the detainees via both systems of communication. Indeed, Respondents have never denied that this policy shift is designed to frustrate Movant's ability to communicate with or visit Petitioners. The totality of these circumstances render the government's July 1, 2008 notice entirely suspect while lending credence to Movant's current claim of the government's deliberate interference with his relationship with the detainees, including Petitioners herein.

Here, where documents sent by Movant, such as publicly filed court documents, decisions issued by this Court in Mr. Ghailani's *habeas* matter, and letters seeking input from the detainees on their court cases have all been rejected for delivery and returned since June 2008,[20] Respondents are hard pressed to present a legally-supportable basis for their actions. Indeed, the government has never offered any explanation for its sudden reversal of treatment of Movant's mail. The rejection of these materials leads Movant to conclude that the government no longer approves of the detainees' interest in Movant as their representative and has therefore decided to unilaterally sever that relationship.

Finally, depriving an attorney of access to both mail systems unconstitutionally burdens the detainees' Sixth Amendment right to counsel of their choice, particularly here where there is ample evidence that Petitioners desire Movant's involvement in their matters. In these

---

[20] While Respondents have refused to deliver Movant's mail to the detainees, they have permitted the delivery of detainee letters to Movant, leading the detainees to view Movant's apparent lack of response as abandonment of their cause.

cases where the detainees are former CIA prisoners and who are already facing or are expected to face war crimes charges before the military commissions, the government's failure to make the legal mail system available is constitutionally problematic. Petitioners and other former CIA prisoners like them who face charges before the military commissions have registered their interest in finding independent civilian counsel to represent them before the military commissions. Permitting the government to cut off Petitioners' ability to communicate with any attorney over the non-legal and legal mail systems essentially eviscerates a detainees' ability to secure counsel of his choice.[21] Under these circumstances, there is no legitimate justification for denying Movant access to the legal mail system.

With multiple former CIA prisoners seeking Movant's services, and the government apparently reluctant to face Movant as an adversary, the government eliminated his ability to communicate with not only Petitioners, but also the other detainees who have retained him by manipulating protective orders in effect in unrelated matters to isolate Movant from Petitioners. *See People v. Moore*, 57 Cal. App.3d 437, 442 (Cal. App. 4th Dist. 1976); *Commonwealth v. Manning*, 373 Mass. 438, 443 (1977); *United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980); citing to *Moore* and *Manning*; *see also United States v. Amlani*, 111 F.3d 705, 711 (9th Cir. 1997); *Cinelli v. Cutillo*, 896 F.2d 650, 655 (1st Cir. 1990); *United States v. Morrison*, 449 U.S. 361, 367 (1981). The government's actions have the effect of eviscerating the detainees' rights to due process of law and counsel of their choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). By so interfering with the attorney-client relationship between Movant and Petitioners, the government has improperly injected itself into the attorney-selection process.

---

[21] While the government permits a detainee to write to an attorney, it must permit the delivery of that attorney's response to the detainee in order to avoid the violation of the detainee's Sixth Amendment right. After all, the act of permitting a detainee to write to an attorney is insufficient to effect that right if the detainee is not permitted to receive that attorney's response.

As Petitioners' only means of communication with Movant is through letter-writing sent over the non-legal channel which takes months, their ability to effectively communicate with their chosen counsel is ineffective. Petitioner al-Hawsawi's ability to communicate is also limited by his lack of command of the English language and by his apparent lack of sophistication with our legal system. Hence, attempting to secure an attorney independent of government selection is an arduous task that takes months. With the government's policy change of refusing to permit privileged mail across the non-legal mail channel, it would appear that any effort by the detainee to secure an attorney by this method to be entirely futile because no attorney would be able to respond to the detainees' requests for assistance without breaching his or her confidentiality obligation. Under these circumstances, Petitioners and similarly situated detainees must essentially wait for a military attorney to be assigned and then must rely upon that military attorney to secure a Pool attorney for him from that military attorney's approved list of Pool attorneys. This is simply unacceptable in a situation such as this, where the underlying litigations challenge the legality of the military's detention of Petitioners.

Any assertion by the government that Movant lacks the necessary security clearance is similarly unavailing. While Petitioners may be in possession of information the government seeks to view as classified, there is no evidence that Movant is a security risk, other than the fact that Movant, who was not only a prosecutor and a graduate of the Air Force Academy and its prisoner of war training, has also been an outspoken opponent of the government's treatment of Petitioners and their fellow detainees and has actively opposed this mistreatment for years. In short, Respondents' arguments are designed to avoid having to litigate against Movant, not to protect the government's security concerns. Movant's access to the legal mail system is therefore entirely appropriate.

18

**The Court Should Issue a Writ of *Mandamus* Directing the Military
Judge Presiding Over Petitioners' Military Commissions' Matter to
Proceed with Movant's Notices of Appearance in Accordance with Law**

Here, Movant has twice filed notices of appearance on behalf of detainees facing trial

by military commissions. One notice was filed on behalf of Petitioner al-Hawsawi and one was

filed on behalf of Petitioner al-Baluchi. On both occasions, the Office of the Trial Judiciary has

failed to take action on these notices, failed to acknowledge receipt thereof, and has apparently

failed to make mention of them on the record in Petitioners' military commissions' matters or to

otherwise notify them of their filing, notwithstanding both Petitioners' explicit requests for

Movant's legal assistance and personal involvement. As a result of these unusual and arguably

unprecedented failures, not only has the military judge failed to make a record necessary for

appellate review in accordance with law, but Petitioners likely remain unaware of Movant's

efforts to appear on their behalf.[22]

While the military judge may have limited discretion to refuse Movant's notices of

appearance, he certainly has none permitting him to completely ignore the notices, fail to make

them a matter of the military commissions' record, or to notify the detainees of their filing. This

behavior, transparently engaged in to preclude meaningful appellate review and to hide the truth

from Petitioners, should not be tolerated. When coupled with the Office of the Trial Judiciary's

repeated refusal to provide transcripts of the military commissions' public proceedings (*see*

footnote 7, *supra.*), the military judge's refusal calls into question the integrity of the military

commissions' process.

---

[22] At this stage, the only means of communicating with Petitioners is through their appointed
military attorneys and through the Project attorneys hand-picked by the military attorneys, all of
whom are working to supplant Movant as Petitioners' attorneys.

This Court should immediately issue a writ of *mandamus* directing the military judge presiding over Petitioners' military commissions' matter to either accept Movant's notices of appearance or place on the record, in the presence of Petitioners, his reason(s) for rejecting these notices. Failure to grant this relief would violate Petitioners' Fifth and Sixth Amendment rights to due process of law and to counsel of their choice and continue to embolden Respondents' and their subordinates' illegal efforts to isolate Petitioners from their chosen counsel.

## Conclusion

This Court should grant the aforementioned relief. Failure to grant this relief would violate Petitioners' Fifth and Sixth Amendment rights to due process of law and to counsel of their choice and further embolden Respondents' and their subordinates' illegal efforts to isolate Petitioners from their chosen counsel.

Dated: New York, New York
    January 13, 2009

**The Law Offices of Scott L. Fenstermaker, P.C.**
300 Park Avenue, 17th Floor
New York, New York 10022
(212) 302-0201 (o)
(917) 817-9001 (c)
(212) 302-0327 (f)


By: _____
    Scott L. Fenstermaker, Esq.

## APPENDIX A

Pursuant to Local Rule 7(m), Scott L. Fenstermaker, Esq. contacted counsel for Respondents to meet and confer regarding potential opposition to the instant request for miscellaneous relief. The responses received by Monday, January 13, 2009 as of 12:35 a.m. EST are as follows:

Respondents oppose Petitioners' requested relief.