IN RE: GUANTANAMO BAY DETAINEE LITIGATION------------------------: Doc. 1507

| | |
|---|---|
| MUSTAFA BIN-AHMAD AL-HAWSAWI, | : |
| Petitioner, | : DECLARATION OF SCOTT L. |
| | : FENSTERMAKER, ESQ. |
| v. | : PURSUANT TO 28 U.S.C. §1746 |
| | : |
| ROBERT M. GATES, | : Civil Docket Number 08-cv-1645 (RJL) |
| | : |
| Respondents. | : |

---

| | |
|---|---|
| AMMAR AL-BALUCHI, | : |
| Petitioner, | : DECLARATION OF SCOTT L. |
| | : FENSTERMAKER, ESQ. |
| v. | : PURSUANT TO 28 U.S.C. §1746 |
| | : |
| ROBERT M. GATES, et. al. | : Civil Docket Number 08-cv-2083 (PLF) |
| | : Misc. No. 0442-08 |
| Respondents. | : |

SCOTT L. FENSTERMAKER, ESQ. (hereinafter, the "Declarant"), an attorney practicing before the bar of this Court pursuant to Local Rule 83.2(g), hereby declares, under the penalties of perjury, pursuant to 28 U.S.C. §1746, the following:

1) Declarant is an attorney at law, practicing before this Court pursuant to Local Rule 83.2(g). Declarant is admitted in the courts of New York State, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Second and District of Columbia Circuits, and the United States Supreme Court.

2) On or about August 24, 2005, Declarant filed a petition (the "Petition") for a writ of mandamus and related relief in the United States District Court for the Southern District of

1

Dockets.Justia.com

New York ("SDNY"). The Petition was filed individually, and on behalf of Declarant and eight unnamed detainees held at Guantánamo Bay, Cuba, as their "next friend."[1] *See Fenstermaker, et. al. v. Bush, et. al.*, 05 CV 7468 (RMB) (SDNY). Shortly after President Bush's September 6, 2006 announcement that he had ordered 14 prisoners held in the covert off-shore Central Intelligence Agency ("CIA") prisons transferred to the custody of the Department of Defense at Guantánamo Bay to face war crimes charges before the military commissions, the Petition was amended on or about September 26, 2006 to include causes of action on behalf of those 14 detainees, including Petitioners herein and Ahmed Khalfan Ghailani (the "Amended Petition"). The Amended Petition's causes of action included right to counsel and speedy trial claims on behalf of the detainees.

3) On or about June 12, 2007, the Honorable Richard M. Berman, USDJ, issued a Decision and Order dismissing the Amended Petition. An appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit"), under docket number 07-2980-cv, was noticed shortly thereafter. The Second Circuit appeal is pending, with the parties actively engaged in motion practice to supplement the record on appeal to include evidence of the government's actions subsequent to the dismissal of the Amended Petition.

4) In a letter dated June 25, 2007, Declarant notified Petitioners, Mr. Ghailani and nine other Guantánamo Bay detainees of his efforts as their "next friend," of the dismissal of the Amended Petition, and the matter's status on appeal.[2] A copy of Declarant's June 25, 2007 letter is available for the Court's *in camera* review. In response to Declarant's June 25, 2007 letter,

---

[1] Respondents in the matter in the SDNY repeatedly refused to divulge the names of the eight unnamed detainees, who had previously been the subject of a Department of Defense press release.

[2] Declarant learned that two of the 14 named detained petitioners in the Amended Petition had counsel. Hence, Declarant wrote only 12 of the 14 named detained petitioners.

eight of the letter's 12 recipients responded in writing to Declarant, including Petitioners herein and Mr. Ghailani.

5) Declarant has received six (6) letters or postcards from Ammar al-Baluchi ("Petitioner al-Baluchi"). These letters or postcards were dated September 19, 2007, February 2, 2008, February 11, 2008, May 26, 2008, July 7, 2008, and July 14, 2008. Copies of these letters or postcards are available for the Court's *in camera* and *ex parte* review. In addition, Petitioner al-Baluchi has apparently also sent Declarant two additional letters or postcards dated December 17, 2007 and December 26, 2007.[3] Declarant has not received Petitioner al-Baluchi's December 17, 2007 and December 26, 2007 letters or postcards. Petitioner al-Baluchi directly authorized the undersigned to file an action pursuant to the Detainee Treatment Act of 2005 to challenge the legality of the government's detention of him. By letter dated December 18, 2008, Declarant wrote Petitioner al-Baluchi asking for clarification regarding his desire to file a petition for a writ of *habeas corpus*. As described below, Respondents are currently rejecting all of Declarant's mail sent to clients at Guantánamo Bay. Hence, it is highly unlikely that Petitioner al-Baluchi will receive Declarant's December 18, 2008 letter seeking clarification.

6) Declarant has received two letters from Petitioner Mustafa Bin-Ahmad Al-Hawsawi. These letters are dated August 22, 2007 and May 2, 2008 and are available for the Court's *in camera* and *ex parte* review. In his May 2, 2008 letter, Petitioner Al-Hawsawi directly authorizes Declarant to act as his attorney.

7) By charging instrument dated May 9, 2008, Petitioners al-Hawsawi and al-Baluchi were charged with conspiracy, attacking civilians, attacking civilian objects, intentionally causing serious bodily injury, murder in violation of the law of war, destruction of

---

[3] The basis for Declarant's knowledge of Petitioner al-Baluchi's December 17, 2007 and December 26, 2007 letters is privileged communications from Mr al-Baluchi.

property in violation of the law of war, hijacking or hazarding a vessel or aircraft, terrorism, and providing material support for terrorism before a military commission. A copy of this charging instrument is attached hereto as Exhibit A.

8) On July 1, 2008, Declarant received an e-mail from Andrew I. Warden, an attorney with the Department of Justice. Mr. Warden's July 1st e-mail is attached as Exhibit B. In Mr. Warden's e-mail, he explained that "[b]ecause you are not authorized to send or receive mail pursuant to any appropriately entered protective orders, the mail you recently sent to [Ahmed Khalfan Ghailani and Rahim al-Nashiri] would ordinarily be processed in accordance with the procedures established for non-privileged mail unless you request that the mail be returned to you. Because that mail is marked privileged, it has not been reviewed or otherwise processed at this point." Mr. Warden never mentioned any prohibition against Declarant sending non-privileged mail to detainees at Guantánamo Bay.

9) The mail to which Mr. Warden referred was sent to an address provided to Declarant by an Assistant United States Attorney with the Office of the United States Attorney during the course of the SDNY litigation. This address was provided to Declarant and the District Court Judge in the SDNY to further the government's effort to assure the SDNY that Declarant had the ability to write detainees at Guantánamo Bay in his capacity as an attorney and to provide legal information and advice to them.

10) Prior to receiving Mr. Warden's July 1st e-mail, Declarant had been using the address to which the above mail was sent for over 12 months in communicating with Guantánamo Bay detainees, including Mr. Ghailani and Petitioners al-Hawsawi and al-Baluchi herein. During this 12-plus-month period, Declarant had written numerous letters addressed to many detainees using this address. Each of these letters was marked privileged. Declarant also

received numerous letters and postcards from many detainees in response to these letters. Mr. Warden's July 1st e-mail was the first indication that Declarant's correspondence was not being treated as privileged (other than the fact that some of the letters and postcards Declarant received from detainees contained redactions, which Declarant understands is permissible even with legal mail sent pursuant to applicable protective orders, including the *Khan* protective order, through the so-called legal mail system in place at Guantánamo Bay).

11) After receiving Mr. Warden's July 1, 2008 e-mail, Declarant responded by sending the e-mail attached hereto as Exhibit C. In that e-mail, Declarant stated, among other things, "[y]ou are free to process my mail to my clients in whatever fashion you like, *so long as they get it.* I will reserve my arguments regarding the privileged nature of the correspondence for the appropriate forum." (Emphasis added). Mr. Warden never responded to this communication.

12) Upon information and belief, the source of which is two electronic mails received from news reporters at Guantánamo Bay and dated June 5, 2008, as well as internet news reports subsequently filed, on June 5, 2008 Petitioner al-Baluchi informed the military judge presiding over Petitioner al-Baluchi's military commissions' matter that he had been trying to contact Declarant in an attempt to secure his services as his attorney before the military commissions (for which Petitioner al-Baluchi faces the death penalty). Apparently, no action was taken by the military judge in response to Petitioner al-Baluchi's complaints.

13) Upon information and belief, the source of which is privileged, on July 9, 2008 Mr. al-Baluchi informed the military commissions' judge presiding over the September 11th matter that he wanted Declarant to serve as a member of his legal advisory staff. Mr. al-Baluchi informed the judge that he was still proceeding *pro se*, but that he wanted to consult with

Declarant to assist in his defense pursuant to Rule 506(d) of the Regulations for Trial by Military Commission.[4] The military judge and the military commissions' staff apparently took no steps to satisfy Mr. al-Baluchi's request.

14) On July 31, 2008, Declarant received a package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included 16 envelopes and a memorandum from Major Greg Musselman, JAGC, USA. A copy of Major Musselman's memorandum is attached as Exhibit D. In his memorandum, Major Musselman explained that the Office of the General Counsel of the Department of Defense advised the Office of the Staff Judge Advocate at Guantánamo Bay to return the 16 envelopes to Declarant without delivery to their intended recipients.

15) The envelopes in question constitute essential attorney-client correspondence to Rahim al-Nashiri and Ahmed Khalfan Ghailani, two of the five Guantánamo Bay detainees who have asked Declarant to serve as their counsel. This correspondence was addressed and postmarked as follows:

    a. Ahmed Khalfan Ghailani, June 24, 2008

    b. Ahmed Khalfan Ghailani, June 24, 2008

    c. Ahmed Khalfan Ghailani, June 28, 2008

    d. Ahmed Khalfan Ghailani, June 28, 2008

    e. Ahmed Khalfan Ghailani, June 30, 2008

    f. Ahmed Khalfan Ghailani, June 30, 2008

    g. Ahmed Khalfan Ghailani, July 7, 2008

---

[4] Rule 506(d) states that "[s]ubject to the discretion of the military judge, 10 U.S.C. §949d(f), and such regulations as the Secretary of Defense may prescribe, the accused may have present and seated at the counsel table for purpose of consultation persons not qualified to serve as counsel under [Rules for Trial by Military Commissions Rule] 502."

h.  Ahmed Khalfan Ghailani, June 28, 2008

i.  Ahmed Khalfan Ghailani, June 24, 2008

j.  Rahim al-Nashiri, June 17, 2008

k.  Ahmed Khalfan Ghailani, June 21, 2008

l.  Ahmed Khalfan Ghailani, June 21, 2008

m.  Ahmed Khalfan Ghailani, June 21, 2008

n.  Ahmed Khalfan Ghailani, May 28, 2008

o.  Rahim al-Nashiri, June 17, 2008

p.  Rahim al-Nashiri, June 17, 2008[5]

16) On August 26, 2008, Declarant received another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included seven envelopes containing correspondence addressed to Mr. Ghailani which were undelivered to Mr. Ghailani. The envelopes in question constituted essential attorney-client correspondence to Mr. Ghailani. This correspondence was postmarked as follows:

a.  August 6, 2008

b.  August 6, 2008

c.  July 25, 2008

d.  June 30, 2008

e.  August 2, 2008

f.  July 7, 2008

g.  July 7, 2008

---

[5] Multiple copies of the letters were sent to the detainees the same day because Declarant sent copies of the letters to three separate addresses for the detainees.

17) On August 26, 2008, Declarant received yet another package from the Office of the Staff Judge Advocate at Guantánamo Bay. That package included seven envelopes containing correspondence addressed to Messrs. al-Nashiri and Ghailani. These envelopes were undelivered to their intended recipients. The envelopes in question constituted essential attorney-client correspondence to Messrs. al-Nashiri and Ghailani. This correspondence was addressed and postmarked as follows:

   a.  Mr. Ghailani, July 22, 2008

   b.  Mr. Ghailani, July 22, 2008

   c.  Mr. al-Nashiri, July 22, 2008

   d.  Mr. al-Nashiri, July 22, 2008

   e.  Mr. Ghailani, July 25, 2008

   f.  Mr. Ghailani, July 25, 2008

   g.  Mr. Ghailani, August 2, 2008

18) On September 11, 2008, Declarant received two packages from the Office of the Staff Judge Advocate at Guantánamo Bay, both containing undelivered mail. These packages contained a total of five envelopes containing correspondence addressed to Mr. Ghailani. With one exception, the envelopes in question constituted essential attorney-client correspondence to Mr. Ghailani and included copies of publicly filed court documents. This correspondence was addressed and postmarked as follows:

   a.  August 6, 2008

   b.  August 2, 2008

   c.  August 6, 2008

   d.  August 6, 2008

e. August 18, 2008

19) Of significance, one of the five envelopes returned in these two packages contained solely non-privileged material. According to the July 1, 2008 e-mail of Andrew I. Warden (*see* Exhibit B), only Declarant's privileged mail was to be returned. No explanation was provided as to why Declarant's non-privileged mail to Mr. Ghailani was returned or why documents publicly filed in Mr. Ghailani's *habeas* matter (08-1190 (RJL)) were returned.

20) On September 29, 2008, Declarant received four packages from the Office of the Staff Judge Advocate at Guantánamo Bay. These packages contained a total of six pieces of returned mail. Among the papers returned in these envelopes are court filings in Messrs. al-Nashiri's and Ghailani's court actions, including a decision of Judge Richard J. Leon of this Court in Mr. Ghailani's *habeas* matter. The government has never explained why the written decision of a United States District Judge in the addressee's *habeas* action merited rejection and return. This correspondence was addressed and postmarked as follows:

a. Ahmed Khalfan Ghailani, August 22, 2008

b. Ahmed Khalfan Ghailani, September 8, 2008

c. Rahim al-Nashiri, July 22, 2008

d. Ahmed Khalfan Ghailani, August 22, 2008

e. Ahmed Khalfan Ghailani, August 17, 2008

f. Ahmed Khalfan Ghailani, August 17, 2008

21) On November 10, 2008, Declarant received a package from the Office of the Staff Judge Advocate at Guantánamo Bay, Cuba. In that package were four envelopes containing correspondence from Declarant to Petitioner al-Baluchi and Ahmed Khalfan Ghailani, two of

Declarant's Guantánamo Bay-based clients. These envelopes were all undelivered to their intended recipients. These letters were dated and addressed as follows:

    a. Petitioner al-Baluchi, June 28, 2008

    b. Petitioner al-Baluchi, June 28, 2008

    c. Ahmed Khalfan Ghailani, July 22, 2008

    d. Ahmed Khalfan Ghailani, April 5, 2008[6]

22) On November 14, 2008, Declarant received a package from the Office of the Staff Judge Advocate at Guantánamo Bay, Cuba. In that package was one envelope containing correspondence from Declarant to Petitioner al-Baluchi. The envelope addressed to Petitioner al-Baluchi contained a letter from Declarant to Petitioner al-Baluchi dated October 9, 2008. Also included in this package was a note from Captain Hanna Yang, a staff attorney with the Office of the Staff Judge Advocate at Guantánamo Bay. That note claimed that the envelope had been delivered to Petitioner al-Baluchi and that Petitioner al-Baluchi had refused it. Captain Yang provided no evidence from Petitioner al-Baluchi substantiating her claim that he refused receipt of Declarant's letter.

23) On or about December 12, 2008, Declarant received a package from the Office of the Staff Judge Advocate at Guantánamo Bay, Cuba. In that package were two envelopes containing correspondence from Declarant to Petitioner al-Baluchi. These envelopes were both undelivered to their intended recipient. The letters contained in these envelopes were both dated October 9, 2008 and contained the exact same substance as the letter which the Office of the Staff Judge Advocate at Guantánamo Bay claimed Petitioner al-Baluchi had previously refused. The package contained no explanation why these two letters were not delivered to Petitioner al-

---

[6] The letter to Mr. Ghailani dated April 5, 2008 contained a client copy of a letter to various government officials on Mr. Ghailani's behalf dated March 31, 2008.

Baluchi when the letter discussed in Paragraph 22 above was allegedly delivered to the detainee, but supposedly refused.

24) On September 20, 2008, Declarant filed a notice of appearance as provided for in the Rules for Trial by Military Commissions with the Office of the Trial Judiciary of the Office of Military Commissions announcing his representation of Petitioner al-Hawsawi. A copy of the notice of appearance and the electronic mail by which it was filed are attached as Exhibit E. That same day, the undersigned sent a copy of the notice of appearance in Petitioner al-Hawsawi's military commissions' matter to Colonel Ralph Kohlmann, the military judge presiding over Mr. al-Hawsawi's military commissions' matter. A copy of the letter transmitting the notice of appearance is attached as Exhibit F. Neither Respondents nor their subordinates have responded to, or acknowledged receipt of, Declarant's September 20, 2008 notice of appearance on Petitioner al-Hawsawi's behalf. Neither Respondents nor their subordinates have made any provision of any nature for Declarant to appear on Petitioner al-Hawsawi's behalf before the military commission hearing Petitioner al-Hawsawi's military commissions' matter. Neither Colonel Kohlmann nor his staff have responded to, or otherwise acknowledged receipt of, Declarant's September 20, 2008 letter.

25) On October 9, 2008, Declarant filed a notice of appearance as provided for in the Rules for Trial by Military Commissions with the Office of the Trial Judiciary of the Office of Military Commissions announcing his representation of Petitioner al-Baluchi. A copy of the notice of appearance and the electronic mail by which it was filed are attached as Exhibit G. That same day, Declarant sent a copy of the notice of appearance and a cover letter to Colonel Kohlmann. A copy of the letter transmitting the notice of appearance is attached as Exhibit H. Neither Respondents nor their subordinates have responded to, or acknowledged receipt of,

Declarant's October 9, 2008 notice of appearance on Petitioner al-Baluchi's behalf. Neither Respondents nor their subordinates have made any provision of any nature for Declarant to appear on Petitioner al-Baluchi's behalf before the military commission hearing Petitioner al-Baluchi's military commissions' matter.

26) On October 27, 2008, Declarant sent a motion seeking to have Petitioner al-Hawsawi's military commissions' matter held in abeyance to the Clerk of the Court for the Office of the Military Commissions and to Colonel Kohlmann. A copy of Declarant's motion to hold Petitioner al-Hawsawi's military commissions' matter held in abeyance and the supporting declaration are attached hereto as Exhibit I. Neither Respondents nor their subordinates have responded to, or acknowledged receipt of, Declarant's motion to hold Petitioner al-Hawsawi's military commissions' matter in abeyance.

27) By letter dated August 29, 2008, Colonel Steven David, then the Chief Defense Counsel for the Office of Military Commissions, notified Declarant that Colonel David had suspended Declarant from the Pool of Qualified Civilian Defense Counsel (the "Pool"). A copy of Colonel David's August 29, 2008 suspension letter is attached as Exhibit J. Any civilian attorney wishing to represent detainees before the military commissions must be a member of the Pool to do so. Colonel David's act of suspending Declarant from the Pool was undertaken without notice and without an opportunity to be heard.

28) By letter dated November 21, 2008, Colonel Thomas Krzyminski, a staff officer with the Office of the Chief Defense Counsel, notified Declarant that his suspension was under review by the Office of the Chief Defense Counsel. Colonel Krzyminski's letter was dated less than 24 hours after Declarant first notified this Court of his suspension from the Pool in a

November 20, 2008 status report in Petitioner al-Hawsawi's matter. *See* 08-cv-1645 (RJL). Colonel Krzyminski provided no timetable for the completion of his review.

29) On June 5, 2008, Petitioner al-Baluchi notified the judge in his military commissions' matter that he had been attempting to contact Declarant in order to secure Declarant's services as his attorney before the military commissions (for which he faces the possibility of being sentenced to death). On July 5, 2008, Declarant wrote to the Office of Military Commissions attempting to secure a copy of the transcript of Petitioner al-Baluchi's June 5, 2008 military commissions' appearance. *See* Exhibit K. By letter dated July 14, 2008, L. M. Apostol, the Deputy Clerk of Court for the Office of Military Commissions, notified Declarant that he could not be provided with a transcript of Petitioner al-Baluchi's June 5, 2008 military commissions' appearance because "[a]t this point the transcript [of the June 5, 2008 appearance] has not been authenticated and this office is not permitted to release the transcript." *See* Exhibit L. The Deputy Clerk of Court claimed that "only the Military Judge presiding over the commission may authorize the release of the unauthenticated transcript or any portion thereof." She also claimed that "[w]e are therefore unable to comply with your request absent permission from the Military Judge."

30) By letter dated September 30, 2008, Declarant wrote to the Deputy Clerk of Court for the Office of Military Commissions in follow-up to his July 5, 2008 letter and to request a copy of the transcript to Petitioner al-Hawsawi's September 2008 appearance before the military commissions. *See* Exhibit M. By letter dated October 9, 2008, the Deputy Clerk of Court responded to Declarant's September 30, 2008 letter. *See* Exhibit N. In the October 9, 2008 letter, the Deputy Clerk of Court stated that Declarant is not Petitioner's al-Hawsawi's attorney and that Declarant is not a member of the Pool. Relying on these claims, the Deputy Clerk of

Court stated that "[t]herefore, I am unable to comply with your request until the record of trial is authenticated and released to the public."

31) By letter dated December 27, 2008, Declarant wrote to the Deputy Clerk of Court requesting information in follow-up to his receipt of the Deputy Clerk of Court's July 14, 2008 and October 9, 2008 letters and to ask for the transcript of Petitioner al-Baluchi's July 9, 2008 military commissions' appearance. *See* Exhibit O. Declarant has not received an answer to his December 27, 2008 letter.

32) Declarant has never been permitted to travel to Guantánamo Bay to visit Petitioners al-Hawsawi or al-Baluchi and has not been permitted to visit with the other detainees who have requested his assistance, including Messrs. Ghailani and al-Nashiri. The Department of Defense has not acted on Declarant's March 2008 application for the security clearance necessary to visit his clients at Guantánamo Bay.

33) Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
January 13, 2009

By: _____
Scott L. Fenstermaker, Esq.