# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TARIQ ALSAWAM, ) ) ) ) Petitioner, ) ) v. ) ) GEORGE W. BUSH, ) President of the United States, *et al.,* ) ) Respondents. ) ) | Misc. No. 08-442 (TFH) Civil Action No. 05-1244 (CKK) |

### RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR AUTHORIZATION TO REVIEW PETITIONER'S STATEMENTS WITH PETITIONER AND REQUEST FOR EXPEDITED CONSIDERATION

Counsel for Petitioner Tariq Mahmoud Alswam (ISN 535) has moved for authorization to review Petitioner's classified statements relied upon in the Respondents' factual return with the Petitioner. For this and other reasons described herein, the Court should deny Petitioner's motion.

## BACKGROUND

On September 11, 2008, this Court entered the Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, in place of the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004), as supplemented by the Order Addressing Designation Procedures for Protected Information, first issued on November 10, 2004, and the Order Supplementing and Amending Filing Procedures Contained in

the November 8, 2004, Amended Protective Order, first issued on December 13, 2004. Protective Order, In re: Guantanamo Bay Litigation, No. 08-mc-00442 (Dkt #409) (Hogan, J.) ("Protective Order").

In its Protective Order, this Court established specific procedures designed to prevent the inappropriate disclosure of classified material and to protect the national security of the United States. This matter involves classified documents and information, which require special security precautions and access to which requires a security clearance and a "need to know." *Id.* By its motion, Petitioner's counsel seeks the Court's permission to engage in precisely what the Protective Order is intended to protect against – the unauthorized disclosure of information currently deemed classified by the Executive Branch.

As the Protective Order makes clear, information contained in classified documents is classified and should be treated as such until it is *declassified* by the appropriate Executive Branch agency that is the original classification authority of the documents or information contained therein. *See* Protective Order ¶ 9 (emphasis added). The plain language of the Court's Protective Order requires that before Petitioner's counsel may disclose classified information to the Petitioner, counsel must seek a release (via the Privilege Review Team) from the appropriate government agency authorized to declassify that information. Protective Order ¶ 29. Thus, counsel may not disclose statements made by Petitioner (or otherwise) contained in classified government documents to the Petitioner until those statements are reviewed and declassified by the appropriate national security agencies.

2

In this case, the appropriate national security agencies have not yet declassified the classified information counsel seeks to share with the Petitioner. Petitioner now asks the Court to authorize the disclosure of classified information to a petitioner-detainee over the objection of the Executive Branch.

On October 20, 2008, Respondents filed a classified factual return for Petitioner. The classified factual return contains a significant volume of classified information—including documents containing Petitioner's own statements intermingled with other information—and therefore, under the governing Protective Order, Petitioner cannot see the classified factual return. After Respondents moved for clarification and reconsideration of Judge Hogan's November 6, 2008 Case Management Order ("preliminary CMO"), Judge Hogan stayed certain aspects of the parties' obligations on November 21, 2008. On December 12, 2008, Respondents filed an unclassified factual return for Petitioner. On December 16, 2008, Judge Hogan lifted the stay entered by the Court's November 21, 2008 order. On January 6, 2009, Petitioner's counsel filed the present motion seeking authorization from the Court to review Petitioner's currently classified statements from classified documents with the Petitioner.

## ARGUMENT

**I.  Because the Government Is Currently Working to Produce Declassified Versions of Petitioner's Statements, Petitioner's Motion Is Unnecessary.**

Respondents are currently preparing declassified versions of the Petitioner's statements for Petitioner. Under the declassification review process, the government is working to declassify information that is determined by authorized declassification officials to no longer require security classification. Although the declassified documents

3

will contain redactions of some information, the vast majority of Petitioner's own statements will remain unredacted, and Petitioner's counsel will be able to share those statements with Petitioner.

Counsel for Respondents has, on multiple occasions, offered to prioritize the declassification of a number of Petitioner's statements for counsel's scheduled visit to Guantanamo Bay. In an effort to resolve this issue without the need for judicial intervention, Respondents' counsel has asked Petitioner's counsel to identify a list of documents so that those particular documents could be identified as priorities for the national security agencies completing the declassification process. Those documents, if declassified, could then be reviewed with Petitioner during counsel's visit to Guantanamo. Petitioner's counsel has thus far declined this offer, and notwithstanding this fact, filed the present motion.

Because the vast majority—if not all—of the information Petitioner's counsel seeks will become available to Petitioner through the production of the declassified documents, Petitioner's counsel has filed this motion prematurely. Indeed, there is no appropriate basis for judicial intervention at this time. The declassification of Petitioner's statements relied upon in the factual return is well underway, and Respondents are working diligently to complete that process. At a minimum, this process should be permitted to run its course before any motion would be ripe because the production of the declassified versions of the statements is likely to eliminate or narrow the disputes at issue in Petitioner's motion.

The Government has already undertaken significant efforts to provide Petitioner with the relief sought in this motion. Particularly in light of the sensitivities involved

with reviewing classified national security information, the Government's process should be permitted to run its course. The declassification process will provide information that is largely equivalent to the relief sought in Petitioner's motion, and it is likely much of the basis for the motion will be moot. For this reason alone, the Court should deny Petitioner's motion.

## II. Petitioner Misconstrues the Governing Language of the Protective Order, Which Forbids Disclosure of Classified Information to Detainees.

As explained above, the common-sense solution for Petitioner is to permit production of Petitioner's statements following declassification. However, even if the Court were to find Petitioner's motion ripe at this time, the motion misconstrues the governing language of the Protective Order, the only asserted legal basis for relief.

Petitioner's counsel seeks authorization to disclose information contained in classified government documents to the Petitioner before that information has been declassified by the national security agencies. Paragraph 9 of the Protective Order states that:

> All classified documents, *and information contained therein*, shall remain classified until the documents bear a clear indication that they were declassified by the agency or department that is the original classification authority of the document or the information contained therein [].

Protective Order ¶ 9 (emphasis added). The information Petitioner's counsel seeks to share with Petitioner is contained in classified documents, and has not been declassified by the agencies that are the original classification authorities of that information. The fact that Petitioner's counsel has extracted that information

and reproduced it in another document[1] does not make the content of the document less classified. Thus, the information falls within Paragraph 9 of the Protective Order and remains classified until it is declassified by the relevant national security agencies. As noted above, that declassification process is already well underway in Petitioner's case.

Petitioner's counsel misconstrues Paragraph 29 of the Protective Order as a means to avoid the required declassification process. Paragraph 29 of the Protective Order states that:

> Petitioners' counsel shall not disclose to a petitioner-detainee classified information *not provided by that petitioner-detainee*. Should a petitioner's counsel desire to disclose classified information not provided by a petitioner-detainee to that petitioner-detainee, that petitioner's counsel will provide in writing to the privilege review team, *see infra* Section II.G, a request for release clearly stating the classified information they seek to release. The privilege review team will forward a petitioner's counsel's release request to the appropriate government agency authorized to declassify the classified information for a determination. The privilege review team will inform petitioner's counsel of the determination once it is made.

Protective Order ¶ 29 (emphasis added). The plain meaning of this provision of the Protective Order is that while counsel may discuss with a petitioner-detainee information provided by that petitioner-detainee in communications with counsel, counsel may not disclose classified information that originated in classified Government documents to the petitioner-detainee, even if those classified documents contain petitioner-detainee's own statements. In other words, information that Petitioner's counsel learns from a classified national security

---

[1] Counsel for Respondents has not seen the precise documents Petitioner's counsel seeks to share with Petitioner. *See* Petitioner's Motion at 3.

6

document is information that is provided to counsel by the Government, not the petitioner-detainee. If, however, counsel learns information from a petitioner-detainee during the course of an exchange of legal mail or during an in-person visit, such information is considered to be provided by the detainee and, therefore, could be shared between detainee and counsel during future communications.

In this case, the information Petitioner's counsel seeks to disclose was provided to counsel by the Government in classified documents. The latter portion of Paragraph 29 establishes a declassification mechanism by which Petitioner's counsel can seek authorization from the Government "to disclose classified information not provided by a petitioner-detainee to that petitioner-detainee." Under Paragraph 29, Petitioner's counsel must provide a request for a release of that information to the Privilege Review Team, and then the request is forwarded to the government agency with authority to declassify that information. In the present case, the Government is undertaking a similar but separate process, on its own initiative, pursuing declassification of documents in the factual return. Until, however, the appropriate government agencies have declassified the information Petitioner's counsel seeks to review with Petitioner, under the plain language of the Protective Order counsel may not disclose the classified information to the Petitioner.

Petitioner mistakenly construes the Protective Order to mean that a petitioner-detainee's statements within classified intelligence reports are fair game for discussion even absent declassification or authorization from the Government. Not only is the reading contrary to the plain meaning of the text, but it would

7

render much of Paragraph 29 a nullity.  Moreover, Petitioner's interpretation of the Protective Order would lead to the absurd and potentially dangerous result of widespread dissemination of classified national security information to enemy combatants without the consent of the Executive Branch agencies responsible for the protection of that classified information.  Government documents containing petitioner-detainee's statements that are marked "SECRET" by necessity provide more than simply the text of the petitioner-detainee's statements.  These documents may contain information about the context of the statements, information related to the statements, the identity of interviewers or other sensitive government personnel, sensitive location or routing information, and internal filing or document numbers.  Petitioner's construction of the Protective Order would seem either to give petitioner-detainees' counsel authorization to share all of this additional information with petitioner-detainees nothwithstanding its classification, or as in this case, counsel could propose to excise this additional material, which would apparently give hundreds of habeas attorneys de facto (de)classification authority.  Such a regime runs counter to the express language of the Protective Order.  The declassification review process established by Respondents in the Protective Order and otherwise will avoid the problems that will accompany any process in which attorneys make guesses as to what information is classified.

       The Procedures for Counsel Access, which are incorporated into the Protective Order, are clear and unambiguous that counsel's reading of Paragraph 29 of the Protective Order is incorrect.  Paragraph 31 of the Procedures states:

> Counsel may not divulge classified information not *learned from the detainee* to the detainee.

Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba ¶ 31 (Sept. 11, 2008) (Hogan, J.) (emphasis added) ("Counsel Access Procedures"). Put simply, this provision makes clear that if detainee counsel does not learn of such classified information—i.e. Petitioner's statements contained within classified intelligence reports—*from the detainee himself*, detainee counsel would be barred from divulging such information to the detainee. When read as a whole, the Counsel Access Procedures provide context for the meaning of the phrase "learned from the detainee." It is clear that information *learned from a detainee* refers to oral and written communications between a detainee and his counsel. *See, e.g.,* Counsel Access Procedures ¶ 12(f) (refers to information "learned from a detainee" in the context of establishing procedures for mail correspondence between counsel and detainee) and ¶ 19 (refers to "information learned from a detainee" in the context of establishing the procedure by which counsel seek classification determinations of communications from a detainee). Paragraph 31 falls under Section I of the Counsel Access Procedures, entitled "Counsel's Handling and Dissemination of Information From Detainees." It is clear that the paragraphs in Section I, including Paragraph 31, address communications *between a detainee and his counsel*, and that the Counsel Access Procedures use the terms "communications" and "information learned from a detainee" interchangeably. *See* ¶ 28 ("[C]ounsel may disseminate the unclassified contents of a *detainee's communications* for purposes reasonably

9

related to their representation[.]"); ¶ 29 ("Counsel shall treat all *information learned from a detainee, including any oral or written communications with a detainee*, as classified information . . ."); ¶ 30 (Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any *information learned from a detainee* involving future events that threaten the national security . . ."); ¶ 31 (Counsel may not divulge classified information not *learned from the detainee* to the detainee.") (emphasis added). In this case, Petitioner's counsel learned of the classified information sought to be divulged to the detainee *from government documents*, not in a communication from the detainee.

Respondents' construction of Paragraph 29 is also consistent with this Court's opinion establishing the framework for the Guantanamo Bay Protective Order. In 2004, when this Court was determining issues of attorney access to detainees, it stated that counsel "would be prohibited from sharing with the detainee any classified material learned *from other sources*." *Al Odah v. United States*, 346 F.Supp.2d 1, 14 (D.D.C. 2004) (Kollar-Kotelly, J.) (emphasis added). Again, Petitioner's counsel here would be learning of such classified material from another source—classified intelligence reports—rather than from the detainee himself. Consequently, counsel would be prohibited from sharing such information. Thus, under the terms of the Protective Order, the Counsel Access Procedures, and the Court's past opinion, counsel for Petitioner are barred from sharing with Petitioner his classified statements contained within intelligence reports.

### III. Petitioner's Interpretation of the Protective Order Raises Separation of Powers Concerns

Because Petitioner's interpretation of the Protective Order is at odds with that of the Executive Branch, Petitioner's motion also raises certain separation of powers concerns. As Commander in Chief, the President holds the authority to classify and control access to national security information. U.S. Const., Art. II, § 2; *Department of Navy v. Egan*, 484 U.S. 518, 527 (1988). The responsibility for assessing potential harm to national security and the need for protecting such information rests upon the Executive. *See Center for National Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003) (Executive's judgment in the area of national security information should be accorded deference). In light of the common-sense solution of awaiting production of Petitioner's statements contained in classified reports following declassification—a process already well under way and that will not impede counsel's upcoming visit to Guantanamo—the Court can easily avoid such a constitutional question by denying Petitioner's motion and requiring Petitioner to await those productions.

Petitioner's motion is unnecessary because Respondents are still in the process of declassifying Petitioner's statements relied upon in the factual return. Contrary to Petitioner's reading of the Protective Order and the Counsel Access Procedures, the plain language of the Protective Order and the Counsel Access Procedures makes clear that disclosure to detainees of classified information, including detainee statements contained within intelligence reports, is prohibited.

## CONCLUSION

For these reasons, Petitioner's motion should be denied.

                Counsel for Respondents:

                GREGORY G. KATSAS
                Assistant Attorney General

                JOHN C. O'QUINN
                Deputy Assistant Attorney General

                */s/ Emily B. Smith*
                JOSEPH H. HUNT (D.C. Bar No. 431134)
                VINCENT M. GARVEY (D.C. Bar No.127191)
                TERRY M. HENRY
                ANDREW I. WARDEN
                PAUL E. AHERN
                TIMOTHY B. WALTHALL
                EMILY B. SMITH
                Attorneys
                United States Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Avenue N.W.
                Washington, DC  20530
                Tel:  (202) 305-3284
                Fax:  (202) 305-2685
                Emily.Smith2@usdoj.gov