IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br>GUANTANAMO BAY<br>DETAINEE LITIGATION | )<br>)<br>)  Misc. No. 08-442 (TFH)<br>)<br>) |
| AHMAD MOHAMMAD AL DARBI,<br><br>Petitioner,<br><br>v.<br><br>GEORGE W. BUSH,<br>President of the United States, *et al.*,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-2371 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONDENTS' MOTION TO DISMISS HABEAS PETITION WITHOUT PREJUDICE
OR, ALTERNATIVELY, TO HOLD PETITION IN ABEYANCE PENDING
COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

On December 20, 2007, Petitioner Ahmad Mohammad Al Darbi (a/k/a Ahmed

Mohammed Ahmed Haza Al Darbi) (ISN 768) was formally charged with having violated the

laws of war under the Military Commissions Act of 2006, 10 U.S.C. §§948a-950w (the MCA).

On February 29, 2008, Petitioner Al Darbi's charges were referred to a military commission.

Petitioner Al Dabri now faces trial by a military commission; a trial convened pursuant to an Act

of Congress in which petitioner will be guaranteed an impartial judge and jury, 10 U.S.C. § 949f,

the presumption of innocence until proven guilty beyond a reasonable doubt, 10 U.S.C. § 949*l*,

the assistance of defense counsel, 10 U.S.C. § 949c, the right to be present, 10 U.S.C. 949d(b),

the right to discovery (including the right to exculpatory evidence), 10 U.S.C. § 949j, the right to

take depositions, id., the right to call witnesses, id., and a full panoply of other substantive and

procedural rights that are carefully described in the MCA.  Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, see 10 U.S.C. § 948a(1), a determination made in the context of the commission's robust, adversarial proceedings.  If petitioner is ultimately convicted, he may seek review in the Court of Appeals for the District of Columbia Circuit, as a matter of right, of the legal and factual bases for the initial unlawful enemy combatancy determination, and for the conviction itself.  See Khadr v. United States, 529 F.3d 1112, 1118  (D. C. Cir. 2008).  Because petitioner has been charged and is facing the prospect of trial before a military commission, the Court should dismiss his habeas petition without prejudice or hold the petition in abeyance pending the completion of military commission proceedings.  To do so would prevent interference with the autonomous military commission system created by Congress, and would promote the appropriate and efficient use of judicial and party resources at a time when hundreds of Guantanamo habeas petitions must be adjudicated as promptly and efficiently as possible.

Given that petitioner has been criminally charged, there is nothing unusual about requiring him to first exhaust his criminal proceedings before seeking habeas relief.  That is the norm in American jurisprudence.  See 28 U.S.C. § 2254; Younger v. Harris, 401 U.S. 37 (1971); Schlesinger v. Councilman, 420 U.S. 738 (1975).  Moreover, there is some overlap between the issues presented in petitioner's habeas petition and his military commission case – issues that will be fully vetted in  criminal proceedings in the military commission system and, upon any conviction, on appeal as of right to the United States Court of Appeals for the District of Columbia Circuit.  As such, just as a habeas court may not properly interfere with ongoing military commission proceedings, see Hamdan v. Gates, 565 F. Supp. 2d 130 (D.D.C. 2008), the

Court should also properly abstain from consideration of petitioner's habeas case pending resolution of his criminal charges before the military commission. Indeed, given the volume of Guantanamo habeas cases pending in the District Court, judicial and party resources would be far better spent addressing the cases of petitioners who have not been criminally charged, and whose cases will not be heard in the adversarial system of trials and judicial review specifically authorized by Congress in the Military Commissions Act. Respondents, therefore, respectfully request that petitioner's habeas case be dismissed without prejudice or held in abeyance pending resolution of the military commission proceedings.[1]

## BACKGROUND

On September 11, 2001, Usama Bin Laden and his terrorist network, al Qaeda, operating out of Taliban-controlled Afghanistan, attacked the United States. Nearly three thousand Americans were killed in what was the worst attack on American soil by a foreign aggressor in our nation's history. On September 18, 2001, Congress adopted the Authorization for the Use of Military Force (the AUMF), which authorized the President to use "all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001" and those who harbored the attackers. Authorized for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). Within weeks, American forces were deployed in Afghanistan.

In 2006, Congress enacted the MCA, establishing a detailed regime governing the establishment and conduct of military commissions. See 10 U.S.C. §§ 948a-950p. The MCA

---

[1]Respondents conferred with petitioner's counsel on January 15, 2009, pursuant to Local Rule 7(m). Petitioner's counsel opposes the motion.

provides for the trial by military commission of "unlawful enemy combatants," 10 U.S.C. § 948c, defined in part as any person who "has engaged in hostilities or who has purposefully and materially supported hostilities against the United States . . . who is not a lawful enemy combatant." 10 U.S.C. § 948(1). A military commission is made up of at least five members who are military officers, 10 U.S.C. §§ 948i, 948m, and is presided over by a military judge, 10 U.S.C. § 948j, the same judges who preside over courts-martial.

As a defendant under the MCA, petitioner is guaranteed a full panoply of substantive and procedural due process rights, including the right to have military defense counsel appointed, 10 U.S.C. § 948k, the right to retain private civilian counsel, 10 U.S.C. § 949c, the right to an impartial jury, 10 U.S.C. § 949f, the presumption of innocence until proven guilty beyond reasonable doubt, 10 U.S.C. § 949*l*, the right to be present, 10 U.S.C. § 949d(b), the right to discovery (including a right to exculpatory evidence), 10 U.S.C. § 949j, the right to take depositions, id., and the right to call witnesses, id. Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, see 10 U.S.C. § 948d, a determination made in the context of the commission's robust, adversarial proceedings.

If convicted, petitioner may invoke a four-step appellate review process. First, any adverse judgment will be reviewed automatically by the military commission's convening authority, who may lower but not increase the judgment or sentence. 10 U.S.C. § 950b. Then, appeal may be taken as of right to the Court of Military Commission Review, a panel of three military judges. 10 U.S.C. § 950f. Following that, petitioner may again appeal as of right to the United States Court of Appeals for the District of Columbia Circuit. 10 U.S.C. § 950g(a)-(c).

4

Lastly, petitioner may seek discretionary review by the United States Supreme Court via a petition for a writ of certiorari. 10 U.S.C. § 950g(d). Notably, appeal to the Court of Appeals for the District of Columbia includes review of the legal sufficiency of the evidence supporting the conviction and "whether the final decision was consistent with the standards and procedures specified in this chapter" and with "the Constitution and the laws of the United States." 10 U.S.C. § 950g(a)-(c).

Charges were sworn against Petitioner Al Darbi on December 20, 2007 and were referred to a military commission by the Convening Authority[2] on February 29, 2008.[3] Petitioner Al Darbi is charged with conspiracy in violation of 10 U.S.C. § 950v(b)(28) and providing material support for terrorism in violation of 10 U.S.C. § 950v(b)(25). See Ex. A. 1, 6. In particular, petitioner is charged with conspiring with Usama bin Laden and others to knowingly commit at least one of the following overt acts and to provide material support for terrorism: traveling to Jalalabad, Afghanistan to meet with Usama Bin Laden, training at al Queda's Jihad Wahl Training Camp, working at al Queda's al Farooq training camp first as a weapons instructor and then as a supplier of goods purchased at local markets, traveling to Pakistan, Qatar, and UAE to purchase global positioning system equipment and a boat and related equipment for the purpose

---

[2] The Convening Authority is the entity that determines whether to refer criminal charges to a military commission for trial. Under the MCA and the Manual for Military Commission, criminal charges are initiated by the swearing of charges against the defendant. See Manual for Military Commissions Rule 307. The charges are then preferred to the Convening Authority for disposition. Military Commissions Rule 401. The Convening Authority may dispose of the charges by dismissing any or all of them or referring some or all of the charges to a military commission for trial. Id. "The jurisdiction of a military commission over an individual[,]" however, "attaches upon the swearing of charges." Id. Rule 202(c).

[3] A copy of Petitioner Al Darbi's Charge Sheet is attached as Exhibit A.

of lowering other, smaller boats, loaded with explosives into the water to attack a vessel in the Strait of Hormuz or off the coast of Yemen, hiring a crew to operate the boat and requesting visas for the four Yemeni crew members, and depositing money from al Qaeda into banks located in the UAE for expenses related to the plot to attack a vessel in the Strait of Hormuz or off the coast of Yemen. Id. at 3-6.

Pursuant to Judge Hogan's July 11, 2008 Scheduling Order, dkt. no. 53 in 08-mc-442 at 4 n. 1, respondents have not filed factual returns for the detainees charged for adversarial trial before a military commission; instead, respondents have focused their efforts on the scores of habeas cases involving detainees who are *not* charged by the military with violations of the laws of war under the MCA. On January 2, 2009, Judge Hogan entered a Minute Order requiring respondents to file factual returns by the end of February 2009 for those petitioners charged with violations of the laws of war under the MCA. See Minute Order in 08-mc-442 (Jan. 2, 2009).

Because habeas proceedings would be, at least in part, duplicative with proceedings before the military commission, preparation of a factual return for petitioner and further conduct in these cases, as with other petitioners awaiting trial in the military commission system, would potentially interfere with the military commission process and encroach upon the scarce resources of the parties and the courts. Accordingly, and for the other reasons stated below, respondents move the Court to dismiss petitioner's habeas petition without prejudice, or, alternatively, to hold his petition in abeyance pending completion of military commission proceedings.[4]

---

[4]Respondents have also filed similar motions in response to the January 2, 2009 Minute Order in other cases which charges against petitioners for violations of the laws of war have been referred by the Convening Authority for trial by military commission, including Civil Action No.

## ARGUMENT

I.   **Because Criminal Charges Are Pending In The Military Commission Context, The Court Should Abstain From Consideration Of Petitioners' Habeas Cases At This Time.**

Habeas "is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). Thus, the Supreme Court has "recognized that 'prudential concerns,' such as comity and the orderly administration of criminal justice, may 'require a federal court to forgo the exercise of its habeas corpus power.'" Munaf v. Geren, 128 S. Ct. 2207, 2220 (2008) (citations omitted). Indeed, the "orderly administration of criminal justice" usually requires federal courts to decline to consider a habeas petition prior to criminal trial, and instead require a petitioner to exhaust his remedies in the criminal process before seeking habeas relief.  The same result is proper in this context, where petitioner has been criminally charged and is awaiting trial before a military commission.

There is, of course, nothing unusual or anomalous about exhaustion requirements in the context of habeas review. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) (the "exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)"); see also Gusik v. Schilder, 340 U.S. 128, 131-32 (1950) ("The policy underlying that rule [that a habeas court will not interfere when a state court provides a remedy] is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts."). Boumediene itself confirmed the well-established requirement that "defendants in courts-martial [must] exhaust their military appeals before proceeding with a federal habeas corpus action."

---

04-cv-1937 (ISN 54), Civil Action No. 05-cv-2385 (ISN 900 and ISN 1045), and Civil Action No. 08-cv-1207 (ISN 10015).

128 S. Ct. 2229, 2274 (2008).  Here, because petitioner is awaiting criminal trial before a military commission, it is entirely appropriate for the Court to require exhaustion of remedies in that criminal setting, which includes a right to appeal to the Court of Appeals for the District of Columbia Circuit, before entertaining their respective habeas petitions.  See Boumediene, 128 S. Ct. at 2268 (noting the requirement that state prisoners "exhaust adequate alternative remedies before filing for the writ in federal court" because defendants were provided "with a fair, adversary proceeding").

In Ex parte Royall, for example, the Supreme Court established – through the exercise of its own equitable discretion – the principle that federal habeas courts should generally require exhaustion of the criminal process.  117 U.S. 241, 250-51 (1886).  There, the prisoner, who was awaiting trial on charges that he had violated a Virginia statute, alleged that the statute was unconstitutional; however, the Supreme Court held that, based on principles of comity, dismissal was appropriate.  Id. at 252 (recognizing "the forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of the other, is a principle of comity, with perhaps no higher sanction that the utility which comes from concord").  Since its holding in Ex parte Royall, the Supreme Court's jurisprudence has mandated deference to criminal tribunals, pursuant to the doctrine of comity, where as here, petitioner has an adequate remedy at law and will not suffer irreparable harm from having to proceed with the criminal trial.  Younger, 401 U.S. at 43-45 (recognizing the "longstanding public policy against federal court interference with state court proceedings" in part because "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law

8

and will not suffer irreparable injury if denied equitable relief"); see also Councilman, 420 U.S. at 756-58 (holding that "federal courts will normally not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted" given the deference owed to congressional judgment and the "practical considerations common to all exhaustion requirements").

These same principles of comity extend to the military commission proceedings involving petitioner. Particularly given that the military commissions are duly authorized by Congress and that Congress has specifically prohibited collateral challenges to the miliary commission process, see 10 U.S.C. §§ 950g, 950j, these same considerations of comity apply with even greater force, and require dismissal without prejudice, or holding petitioner's case in abeyance until the completion of military commission proceedings. See Councilman, 420 U.S. at 738; New v. Cohen, 129 F.3d 639, 643 (D.C. Cir. 1997) (federal court must give "due respect to the autonomous military judicial system created by Congress"); Hamdan, 565 F. Supp. 2d at 137 ("Where both Congress and the President have expressly decided when Article III review is to occur, the courts should be wary of disturbing the judgment."); Al Odah, et. al. v. Bush, et. al., 2009 WL 22275 *4 (D.D.C. Jan. 6, 2009) (J. Kollar-Kotelly) ("Abstention reflects the appropriate level of deference for a system enacted by Congress, signed into law by the President and designed in accordance with the Supreme Court's precedents.");[5] Khadr, et. al. v. Bush, et.

---

[5] While Judge Kollar-Kotelly declined to abstain in Al Odah, that determination was based on her view that the mere swearing of charges against a detainee, prior to referral of those charges to a military commission by the Convening Authority, did not warrant abstention. See Al Odah, 2009 WL 22275 at *7. In this case, of course, charges against petitioner have been referred by the Convening Authority for trial by military commission, and abstention, even under Judge Kollar-Kotelly's view, is appropriate. See id. ("although the Court shall enter a stay of petitioner's habeas cases, the stay shall *not* commence unless and until the Convening Authority

al., 2008 WL 4966523 at *4 (D.D.C. Nov. 24, 2008) (Bates, J.) (Guantanamo military commission system due comity "because it provides that petitioner 'is to face a military commission . . . designed . . . by a Congress that . . . acted according to guidelines laid down by the Supreme Court.'") (quoting Hamdan, 565 F. Supp. 2d at 136).

It is well-established that the "trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'" Hamdi v. Rumsfeld, 542 U.S. 507, 518 (2004) (plurality). The Supreme Court has long recognized not only the authority to hold combatants for the duration of ongoing hostilities, but the established "practice of trying, before military tribunals without a jury, offenses committed by enemy belligerents against the law of war." Ex Parte Quirin, 317 U.S. 1, 41 (1942). An "important incident to the conduct of war is the adoption of measures by the military command not only to repel and defeat the enemy, but to seize and subject to disciplinary measures those enemies who in their attempt to thwart or impede our military effort have violated the law of war." Id. at 28-29. As the Supreme Court explained, "[u]nlawful combatants are . . . subject to capture and detention, but in addition they are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful." Id. at 31. See also id. at 29 (asking whether it is "within the constitutional power of the national government to place petitioners upon trial before a military commission" and concluding that it is).

Through the MCA, Congress has invoked this well-settled power to try detainees accused of violating the laws of war before military commissions. In doing so, Congress has provided the accused detainees, such as petitioner, with substantial due process rights, including the right

---

refers the charges sworn against Petitioners to military commissions.").

to be represented by counsel, to cross-examine witnesses, and to call witnesses to testify on their behalf. Additionally, Congress has also prescribed a thorough, four-step appellate review process for any final judgment adverse to an accused detainee, a process that includes appeal as of right to an Article III court, the Court of Appeals for the District of Columbia Circuit, 10 U.S.C. § 950g(a)-(c), and discretionary review by the United States Supreme Court via a petition for a writ of certiorari, id. § 950g(d). Comity, therefore, requires that this Court defer to the scheme Congress has chosen, which affords petitioner substantial due process and appeal rights, prior to entertaining a collateral attack such as a petition for a writ of habeas corpus. See Khadr, 2008 WL 4966523 at *4 n. 6 (comity based considerations under Councilman "equally, if not more relevant, when Congress designs a military justice system to try alien unlawful enemy combatants.").

Deference to Congress's scheme, pursuant to the principle of comity, provides petitioner with an adequate remedy at law and will not impose irreparable harm. In particular, the military commission process is an adequate remedy at law for three independent reasons. The first is the panoply of due process protections that have already been enumerated. See supra pp. 4-5; 9. Second, the level of appellate review is even more independent than that provided to the citizen-soldier defendant in Councilman. Whereas appellate review of courts-martial typically ends with the independent civilian Article I judges of the Court of Appeals for the Armed Forces; here, by contrast, petitioner will be entitled to review by a panel of Article III judges, the most "independent review" forum possible. Hamdan v. Rumsfeld, 126 S. Ct. 2749, 2271 (2004). See also Boumediene, 128 S. Ct. at 2268 (noting that it is appropriate to require a federal prisoner to exhaust before filing for the writ because the prisoner's conviction will already have been

11

reviewed in a federal forum on direct appeal); Khadr, 2008 WL 4966523 at *4 (abstention required where "congressionally-authorized military court system that includes independent review by civilian judges [] is present"). And third, this Court may not presume that another government tribunal will not fully apply "the fundamental law of the land." Ex parte Royall, 117 U.S. at 252; see also Lawrence v. McCarthy, 344 F.3d 467, 473 (5th Cir. 2003) (abstention appropriate to permit military tribunal to determine its jurisdiction because "[w]e trust that the military courts are . . . up to the task" and "an individual's status is a question of fact which the military courts are more intimately familiar than the civil courts"). As Judge Robertson stated in Hamdan v. Gates:

> The eyes of the world are on Guantanamo Bay. Justice must be done there, and must be seen to be done there, fairly and impartially. But Article III judges do not have a monopoly on justice, or on constitutional learning. A real judge is presiding over the pretrial proceedings in Hamdan's case and will preside over the trial. . . . If the Military Commission judge gets it wrong, his error may be corrected by the [Court of Military Commission Review]. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets in wrong, the Supreme Court may grant a writ of certiorari.

565 F. Supp. 2d at 137. Thus, this Court, in deciding whether to abstain, must presume that the judges of the military commissions, and the judges on the subsequent military and Article III appellate panels, will adhere to their duty and fully apply the Constitution and federal laws to the matters before them. Accordingly, abstention is warranted here not only because of the comity due to Congress's decision to create the military commissions, but also because petitioner now possesses an adequate remedy at law that makes resort to the equitable remedy of habeas corpus unnecessary.

Nor will abstention result in any irreparable harm to petitioner. Before a court may refuse to abstain, the Supreme Court has instructed that any harm from abstention must be not

just irreparable, but also both "great and immediate." Fenner v. Boykin, 271 U.S. 240, 243 (1926). The Supreme Court has repeatedly made clear that the mere fact that a defendant has to face a criminal trial is insufficient to establish irreparable harm in the "special legal sense of that term," even while acknowledging the inevitable challenges incident to any criminal prosecution, such as cost, anxiety, and inconvenience. Younger, 401 U.S. at 46. Accordingly, petitioner's objection to his detention provides no basis for this Court to proceed with his habeas case. Any "harm" arising from having to litigate those issues initially in front of the military commission are essentially the same as those the Supreme Court considered and rejected in Younger. See United States v. Hollywood Motor Car. Co., 458 U.S. 263, 268 n.2 (1982) ("[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship") (quoting Cobbledick v. United States, 309 U.S. 323, 325 (1940)); Al Odah, 2009 WL 22275 *4 ("The inconvenience of any criminal prosecution, including those associated with the military commissions, is insufficient, standing alone, to warrant federal court intervention."). As the Court of Appeals for the District of Columbia Circuit explained with respect to a challenge to the commission's jurisdiction by another Guantanamo detainee, "[t]here is no substantial public interest at stake in this case that distinguishes it from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective." Khadr, 529 F.3d at 1118.

Accordingly, at least as a matter of comity, petitioner must exhaust his criminal process before the military commission and may take an appeal to the United States Court of Appeals for the District of Columbia Circuit upon any conviction to raise claims relating to the commission

proceedings. In the meantime, the Court should properly abstain from reviewing petitioner's habeas challenge pending resolution of the military commission proceedings.

II.     **The Military Commission Proceedings, With Appeal As Of Right To The United States Court of Appeals for the District of Columbia Circuit, Provide An Adequate Alternative Forum For Review Of Many Of The Issues Presented By Petitioner.**

Some of the issues petitioner will ultimately seek to have this Court address in the habeas context may also be litigated in the military commission context. Rather than have two proceedings running in parallel, Councilman and the cases discussed supra teach that the habeas court should exercise its discretion to allow the criminal proceedings to run their course first. 420 U.S. 738. Indeed, the same principle applies with respect to collateral challenges to state court proceedings – even when those challenges would not necessarily interfere with the criminal trial itself. See Younger, 401 U.S. at 43-44. Accordingly, in order to give "due respect to the autonomous military judicial system created by Congress," this Court should not impinge on the military commission process by addressing the legality of preventative detention. New, 129 F.3d at 643. Dismissal without prejudice is, therefore, appropriate. Lawrence, 344 F.3d at 474 ("dismiss[ing] without prejudice" to "allow [] military [proceedings], both judicial and administrative, to run their course"). In the alternative, this Court should hold petitioner's habeas case in abeyance until military commission proceedings have concluded.

One of the primary reason courts "abstain [] from exercising equitable jurisdiction" is to "avoid[] duplicative proceedings." Lawrence, 344 F.3d at 474. See also Steffel v. Thompson, 415 U.S. 452, 462 (1974) (in Younger abstention case, acknowledging strong interest in avoiding "duplicative legal proceedings or disruption of the state criminal justice system"). Just last year, the Supreme Court noted that "[i]f a plaintiff files a . . . claim related to rulings that

will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Wallace v. Kato, 549 U.S. 384, 127 S. Ct. 1091, 1098 (2007). As noted above, an accused is entitled to have the commission make its own, independent determinations of whether a charged defendant is an "unlawful enemy combatant," before trial may proceed. See Al Odah, 2009 WL 22275 *2; 10 U.S.C. §§ 948a(1)(1)(A)(i); 948d(a). Thus, one of the central issues before the military commission will be whether petitioner is an unlawful enemy combatant. See, e.g., Hamdan, 565 F. Supp. 2d at 136-37; Al Odah, 2009 WL 22275 *5 ("the essential inquiry in Petitioners' habeas cases – whether they are properly characterized as unlawful enemy combatants – is the same inquiry that the commissions may independently determine as part of their jurisdictional inquiry.").

In Hamdan, Judge Robertson explained that military commissions provide an adversarial process in which petitioners would be able to "call and cross-examine witnesses, to challenge the use of hearsay, and to introduce [their] own exculpatory evidence." Hamdan, 565 F. Supp. 2d at 135. With respect to the determination of unlawful enemy combatancy, the court noted that the petitioner had had a "jurisdictional hearing before the Commission" and also would have "a fully adversarial trial that will provide a further test of the premise of his detention. Id. The court ultimately observed that a "real judge is presiding over the pretrial proceedings," in the military commission cases and that "[i]f the Military Commission judge gets it wrong, his error may be corrected by the CMCR. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of certiorari." Id. Further, the United States Court of Appeals for the District of Columbia Circuit itself has made

clear that a military commission's determination of a petitioner's status as an enemy combatant is reviewable at the culmination of the criminal proceedings, upon conviction. Khadr, 529 F.3d at 1117 (military commission's assertion of personal jurisdiction over a defendant "is reviewable on appeal from final judgment"). Accordingly, the military commission process provides a fully-adequate means for petitioner to challenge his status as an unlawful enemy combatant. See id.; see also Lawrence, 344 F.3d at 473 (abstention appropriate in case where military tribunal must "make an initial [factual] determination regarding the scope of their jurisdiction" because "[w]e trust that the military courts * * * up to the task" and "an individual's status is a question of fact which the military courts are more intimately familiar with than the civil courts").

Given this process, and the issues that would be vetted in the military commission proceedings that overlap with the core issue in this case, it is appropriate for this Court to abstain pending resolution in that adequate, independent forum. In adopting the MCA, Congress created an autonomous military judicial system to try unlawful enemy combatants, with a right of appeal to an Article III court, review that is even more "removed from all military influence or persuasion" than was the case in Councilman. 420 U.S. at 738. If anything, Congress's decision to channel review to a *superior* federal court should militate even more strongly in favor of abstention. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 75 (D.C. Cir. 1984) ("where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals").

Because habeas proceedings would potentially duplicate military proceedings, they would impinge on the system Congress created for adjudicating the guilt of criminal suspects

16

and would waste the scarce resources of the parties and the Court. As the court in <u>Hamdan</u> concluded, a "full-scale habeas hearing as to Hamdan's classification" is not appropriate given the availability of the military process that Congress set out. <u>Hamdan</u>, 565 F. Supp. 2d at 137. In such circumstances, "the courts should be wary of disturbing the[] judgment [of Congress and the President]" <u>id</u>., because "the military justice system must remain free from undue interference." <u>New</u>, 129 F.3d at 643. Judge Bates recently reiterated this conclusion, ruling that abstention is "appropriate with respect to claims" that "have been, will be or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process" because "any rulings by th[e] Court on those claims would necessarily affect, and possibly interfere with, the military commission proceeding". <u>Khadr</u>, 2008 WL 4966523 at *4.

Judge Kollar-Kotelly recently echoed Judge Bates' conclusion, holding that "abstention of Petitioners' habeas cases during the pendency of their military commission proceedings is warranted" because it "eliminates the potential for conflicting findings or rulings that would arise if the Petitioners' habeas cases and military commissions proceedings proceed simultaneously." <u>Al Odah</u>, 2009 WL 22275 at *4. In so doing, Judge Kollar-Kotelly acknowledged that the habeas court's "proceedings may [] produce rulings on the production of discovery and/or exculpatory information that diverge from those of the military commissions." <u>Id</u>. If this habeas action were to continue, respondents would be subject to the discovery afforded all petitioners by the Amended Case Management Order (the "CMO"), dkt. no. 1315 in 08-mc-442, as well as the discovery requirements of military commission proceedings. Parallel litigation of discovery issues in both tribunals could potentially result in inconsistent rulings on disclosure of classified information and would also potentially allow circumvention of the

discovery limitations inherent in military commission proceedings. Indeed, the Supreme Court has recognized that "[a] prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the [civil plaintiff] to discover the details of a contemplated or pending criminal prosecution." United States v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency, 462 U.S. 555, 567 (1983). "The decision in Councilman sought to avoid th[ese] type[s] of interferences by requiring defendants to exhaust their criminal (or military) proceedings prior to seeking equitable relief[.]" Al Odah, 2009 WL 22275 at *5.

To the extent the habeas petition raises issues that are not also before the military commission, there is no reason for the Court to address them at this time. Because proceedings would be, at least in part, duplicative, habeas review during the pendency of criminal charges would also encroach upon the scarce resources of the courts and the parties at a time when resources should be focused on the roughly 200 cases involving detainees who are *not* charged for adversarial trial before a military commission. Respondents, counsel for the detainees, and the judges of this Court have all undertaken significant efforts to facilitate expedited review of hundreds of pending Guantanamo habeas cases, consistent with the Supreme Court's direction that "[t]he detainees in these cases are entitled to prompt habeas corpus hearing." Boumediene, 128 S. Ct. at 2275. Because the military commission process provides for robust adversarial proceedings to address criminal charges brought under the MCA (with review, if the defendant is convicted, by the United States Court of Appeals for the District of Columbia Circuit), the Court should focus its resources, and enable the parties to focus theirs, on the other habeas cases.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Petitioner Al Darbi's habeas petition without prejudice or, alternatively hold his petition in abeyance until completion of the military commission proceedings and any appellate review thereof.

Date: January 16, 2009

                                          Respectively submitted,

                                          GREGORY KATSAS
                                          Assistant Attorney General

                                          JOHN C. O'QUINN
                                          Deputy Assistant Attorney General

                                            /s/ Kristina A. Wolfe
                                          JOSEPH H. HUNT (D. C. Bar No. 431134)
                                          VINCENT M. GARVEY (D.C. Bar No. 127191)
                                          TERRY M. HENRY
                                          KRISTINA A. WOLFE

                                          Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, N.W.
                                          Washington, D.C. 20530
                                          Tel: (202) 353-4519
                                          Fax: (202) 616-8202

                                          Attorneys for Respondents