```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
        -------------------------X
 3      IN RE:                    Docket No. MC 08-442
                                            CA 02-828
 4      GUANTANAMO BAY
        DETAINEE LITIGATION        Washington, D.C.
 5                                 August 26, 2008
                                   11:10 p.m.
 6
        -------------------------X
 7                         ORAL ARGUMENTS
                 BEFORE THE HONORABLE THOMAS F. HOGAN
 8                 UNITED STATES DISTRICT JUDGE
        APPEARANCES:
 9      For the Petitioners:  Pillsbury Winthrop Shaw Pittman, L.L.P.
                              By:  Mr. David J. Cynamon
10                            2300 N Street, N.W.
                              Washington, DC  20037
11                            202.6636.8000
                              david.cynamon@pillsburylaw.com
12
        For the Respondents:  United States Department of Justice
13                            Civil Division, Federal Programs Branch
                              By:  Mr. Alexander K. Haas
14                            20 Massachusetts Avenue, N.W.
                              Washington, D.C.  20530
15                            202.305.9334
                              alexander.haas@usdoj.gov
16
        Court Reporter:       Catalina Kerr, RPR
17                            U.S. District Courthouse
                              Room 6716
18                            Washington, D.C.  20001
                              202.354.3258
19                            catykerr@msn.com

20


21      Proceedings recorded by mechanical stenography, transcript

22      produced by computer.

23


24


25
```

1          P-R-O-C-E-E-D-I-N-G-S

2          (11:10 A.M.; OPEN COURT.)

3          THE COURT:  Good morning, Counsel.

4          THE DEPUTY CLERK:  Your Honor, this morning, this is

5     in In Re: Guantanamo Bay Detainee Litigation, Miscellaneous

6     No. 08-442; also Civil Action No. 02-828.

7          I'd ask the parties to step forward and identify

8     yourselves for the record, please.

9          MR. CYNAMON:  Good morning, Your Honor.  David

10    Cynamon appearing for the petitioners.

11         THE COURT:  All right.  Thank you, Mr. Cynamon.

12         MR. HAAS:  Good morning, Your Honor.  Alexander Haas

13    for Respondents.

14         THE COURT:  All right.  Mr. Haas, thank you.

15         All right.  Before the Court today is Petitioner's

16    motion for injunctive relief; originally filed an emergency

17    injunction about six weeks ago and it's now ready for a

18    hearing.  Petitioners Fayiz Mohammed Ahmed Al Kandari and

19    Fouad Mahmoud Al Rabiah's motions involving the Office of the

20    Chief Prosecutor of Military Commissions and its Investigative

21    Task Force Unit, anyone at their request or the direction,

22    from communicating with Petitioner without Petitioner's

23    counsel, consent.

24         And so I've had a chance to review the petition and

25    the opposition and reply and looked at the law a little bit on

1    it, so I'll hear from counsel.  Petitioners first and then

2    I'll hear from the Government after that and give you a chance

3    at a brief reply.

4            All right.  Thank you.  Mr. Cynamon.

5            MR. CYNAMON:  May it please the Court, the relief

6    that Petitioners seek in this motion is straightforward, but

7    it is of fundamental importance to protecting the integrity of

8    these habeas proceedings.  What we are asking the Court to do

9    is to prohibit Government counsel from communicating with our

10   clients, either directly or through their agents, without our

11   knowledge or permission about the very allegations in this

12   habeas case, and thereby in violation of the ethical rules of

13   conduct to which Government counsel are unquestionably bound.

14           If the Government counsel are allowed to do this, as

15   they have already done, it will undermine our attorney/client

16   relationship with our detainee clients and thereby prejudice

17   our clients' ability to pursue the core habeas rights to which

18   the Supreme Court has held they are entitled.

19           THE COURT:  You don't see the distinction with the

20   Military Commissions people and other counsel for the

21   Government who may be involved in a habeas case interviewing

22   your client?

23           MR. CYNAMON:  None whatsoever, Your Honor, because

24   the touchstone is not which Government counsel happened to be

25   talking to our clients.  It's what they are talking to our

1    clients about.  Rule 4.2, which appears pretty much in

2    identical guise in all the ethical codes that might be

3    applicable here, and the one we point to in our brief, Your

4    Honor, is Rule 4.2 of the Army Code of Professional Ethics to

5    which the Chief Military Prosecutor is unquestionably bound,

6    and what that prohibits, as all rule -- all the no-contact

7    rules prohibit, is that an attorney cannot talk about the

8    subject of the representation with the party that the lawyer

9    knows to be represented by another lawyer in the matter.

10            THE COURT:  In the same matter.

11            MR. CYNAMON:  Yes.  Now, the matter here, Your

12   Honor, are these habeas cases, and what the Government

13   lawyer -- lawyers are communicating with our clients about are

14   the allegations in these habeas cases, and I say that both for

15   two reasons.  We know that because as my client, Mr. Al

16   Kandari, reported to me, the representative of the Criminal

17   Investigation Task Force spoke with him about an incident that

18   occurred in Kuwait after he was already in Guantanamo and that

19   incident is one of the specific grounds that are listed in his

20   CSRT proceeding and in the factual return the Government filed

21   in this case as a basis for his detention.

22            I also say it because it necessarily is the case

23   that any Military Commission charge will inevitably involve

24   the allegations of these --

25            THE COURT:  I understand that.  They can't be found

```
 1    as unlawful enemy combatants, I mean, unless they have

 2    evidence to show that.  That evidence should be theoretically

 3    some of the same evidence they'd use in the Military

 4    Commission charges.

 5              MR. CYNAMON:  Exactly.

 6              THE COURT:  How -- what is your representational

 7    status in the Military Commission area?

 8              MR. CYNAMON:  Well, of course, there is no Military

 9    Commission hearing yet involving --

10              THE COURT:  An investigation ongoing, I'll just say

11    that.

12              MR. CYNAMON:  -- investigation.  We -- we are

13    counsel for the Petitioners for all purposes, including the

14    Military Commission proceeding, and I say that because our

15    clients have authorized us to represent them for all purposes.

16              The rules clearly provide that the scope of an

17    attorney's representation of his client is determined by the

18    attorney and the client, not by some third party.  The

19    Government doesn't get to decide to what extent we get to

20    represent our Petitioners, and --

21              THE COURT:  The Petitioners have a right to civilian

22    counsel once they are charged by the Military Commission?

23              MR. CYNAMON:  Yes, the Petitioners have the right to

24    civilian counsel at no cost to the Government, and we are that

25    counsel.  Indeed, we --
```

1    THE COURT: But don't they have to be charged before

2  that attaches? Say "accused," in that interpretation, that

3  means charged?

4    MR. CYNAMON: Well, I'm not sure. I suppose as a

5  technical matter we can't very well enter our appearance on

6  their behalf until there's a matter for us to appear in, but I

7  don't see that there's any reason why, if our clients choose,

8  you know, having been told that they are under investigation

9  for Military Commission proceedings, why they can't retain us

10  in advance of that, and I don't see on what basis the

11  Government can say, "Well, we refuse to recognize that

12  engagement."

13    Again, the rule is that an engagement by a client is

14  determined by the client and the attorney. And again, I do

15  want to emphasize, I think that the distinction that the

16  Government is attempting to make here between representation

17  for habeas purposes and Military Commission purposes is

18  entirely artificial, because otherwise, it just destroys

19  entirely the no-contact rule as it applies to habeas

20  proceedings, because, of course, any discussion about

21  potential Military Commission charges will involve these

22  cases.

23    THE COURT: How do we jump over the elephant in the

24  room we haven't talked about, and that is, the jurisdictional

25  issue under the MCA or the Section 3 and the second part of

1    Section 7?

2          MR. CYNAMON:  Well, Your Honor, I really think that

3    that elephant is not in this room.  That elephant is in an

4    entirely different room and actually hasn't even reared its

5    trunk.  There are no Military Commission proceedings, and we

6    are not asking Your Honor to issue a ruling with respect to

7    any Military Commission proceeding whatsoever.

8          We are not asking the Court to rule on what the

9    Government may investigate, what they may be charged with or

10   anything else.  What we are asking for is the Court to rule

11   that no Government counsel, whether that counsel happens to be

12   counsel sitting at the table here today or whether it's the

13   Chief Military Prosecutor or one of his staff, that none of

14   them can communicate with our clients without our knowledge

15   and permission about the allegations in this habeas case.

16   That's all we're asking about.

17         So I think the Government's lengthy discourse about

18   the jurisdictional issues involving Military Commission is

19   something that this court really doesn't have to even reach or

20   consider.  We're not asking the Court to take any steps there.

21         If I might point out, Your Honor, if the

22   Government's argument were followed to its logical conclusion,

23   then this court would have no jurisdiction to hear these

24   habeas cases because, of course, as Your Honor has already

25   recognized, these habeas cases are a necessary predicate to

1    any Military Commission charges.

2        If we are successful in the habeas cases on behalf

3    of our Petitioners, a fortiori, there will be no Military

4    Commission charges because they will not have been found to be

5    enemy combatants.

6        THE COURT:  What exactly, besides this ethical rule

7    that you're saying the Government violated, would give me a

8    basis for issuing a preliminary injunction?  I mean, where is

9    the harm that can't be cured later?  It seems to me this is

10   very analogous to a *Kastigar* situation.  That is, it's

11   analogous -- *Kastigar* is a case I will give to you.

12       That's where the -- your client is subpoenaed and

13   given immunity in a congressional hearing, and there is a co-

14   -- at that time, ongoing criminal investigation.  It's what

15   happened in the Iran Contra, and the client then is compelled

16   to testify in Congress.  Then the independent prosecutor in

17   that case, or the prosecutors, bring charges.  They have to

18   show none of their evidence is related to the evidence that

19   was compelled to be given.  And if they can't do that, the

20   charges are dismissed, and *Kastigar* is an example of that.

21       But if you can't show that your evidence is totally

22   separate and apart, has nothing to do with what the individual

23   is compelled to testify to previously, you can't bring the

24   case.  And in Colonel North's case, that's what happened, and

25   that's why -- they couldn't show, they didn't learn anything

1   from the testimony in Congress.

2           Isn't that the result here, could be that instead of

3   saying there is irreparable injury because it interferes with

4   lawyer/client privilege relationship, that if the Government

5   comes here and attempts to use certain evidence to show why,

6   if that's their burden, or to respond to whatever you produce,

7   that they should be -- that this man should be held as an

8   enemy combatant, you could say they can't use it unless they

9   got it improperly, they violated the attorney/client privilege

10  by getting it?  Isn't that how you solve that problem rather

11  than enjoin the Government from investigating?

12          It does affect the Military Commission.  You say it

13  only affects the habeas, but it does affect their rights to

14  proceed with the Military Commission.

15          MR. CYNAMON:  Your Honor, let me address that and

16  make several points.  First of all, this is not -- although we

17  are asking for injunctive relief in the sense that we're

18  asking the Court to prohibit the Government's attorneys for

19  doing something, this is not a preliminary injunction motion

20  in the sense that we are seeking to preserve the status quo

21  pending a final determination on the merits.

22          This is really collateral to the merits and seeks to

23  preserve the integrity of the very adversary proceeding that

24  will determine those merits.  So I think that in that regard,

25  what this really is, is a motion under which this court's

1 authority exists under both the All Writs Act and the Court's

2 inherent authority, which the Government has conceded, the

3 inherent authority to control the proceedings before it and

4 the conduct of counsel for the parties before it.

5 So, I think that there's really no doubt and the

6 Government doesn't dispute that this court does have that

7 authority to control the conduct of counsel.

8 As to why it would not be equally effective to wait

9 until there were some attempt by the Government to use

10 information that it would glean by -- through violations of

11 the ethics code, I think there are two problems with that.

12 One is, of course, it's somewhat difficult to trace

13 the fruits of the poisonous tree. If there's an improper

14 ethical conduct, then certain statements are obtained and then

15 further leads are taken from that. It may be difficult to

16 follow, but I think there's a more fundamental point.

17 As the ABA's formal opinion that we cited in our

18 brief points out, one of the principal purposes of the

19 no-conduct -- no-contact rule is to protect the

20 attorney/client relationship from being undermined by an

21 adversary, and that's a particularly acute concern in this

22 case, given the very difficult situation we have in being able

23 to communicate with and represent our clients.

24 And the problem with just focusing on what evidence

25 or information the Government might glean by unethical conduct

doesn't address the problem of the damage it does to the

relationship we have with our clients.  If we have to wait

until our clients actually fire us or start being more

reticent about talking with us because they know that the

Government lawyers and the staff can come in and talk to them

whenever they want, if we have to wait till that point, the

damage will already be irrevocable and I don't believe that

the ethical rules -- I'm not aware of a case that says that

the Court cannot enforce the ethical rules in attorneys in

cases before it until the victim shows some tangible damage.

If I can use an analogy, an ethical rule that more

commonly comes up in litigation is the violation of the no

conflict rules, and there, if an attorney represents -- is

adverse to a former client and it's shown that the attorney is

adverse to the former client on a substantially related

matter, there is then an irrebuttable presumption that the

attorney has gained confidential information from that former

client.

The former client is not obligated to come in and

show that in fact there was.  And I would submit that

similarly here, there's no basis for saying that the

Government counsel gets to undermine the relationship we have

with our client, which is tenuous as it is.  I will tell you

that they do not have much faith in our legal process, and

from their perspective --

1          THE COURT:  You have an affidavit from prior

2     counsel.

3          MR. CYNAMON:  What's that?

4          THE COURT:  You have an affidavit from prior counsel

5     that was concerning about allegations of statements made to

6     the detainee and by prior counsel.

7          MR. CYNAMON:  Correct.  And, Your Honor, I'm not

8     suggesting for a moment that the Government cannot continue to

9     investigate and prepare whatever charges it believes it may

10     have here.  I mean, the Government can do that through proper

11     methods.

12          It can investigate through other information it has.

13     Why would it need -- I mean, I suppose in any criminal case it

14     would be nice if the prosecutors could waltz in and talk to

15     the defendant or prospective defendant without regard to the

16     fact that the defendant might be represented by counsel.  But

17     one of the, you know, essential elements of our adversary

18     system is that when parties are represented by counsel, they

19     have a right to full and effective representation, and I think

20     Judge Kollar-Kotelly wrote very eloquently on that very point

21     in this very case.  I think we quoted from it.

22          In these cases, in particular, these Petitioners

23     will have no meaningful habeas rights if they do not have

24     meaningful representation by counsel.  And I submit to Your

25     Honor that allowing the Government to undermine that core

1    relationship by violating one of the basic rules of the code
2    of ethics, the no-contact rule, would do a great deal of
3    damage.

4          So, that's why I think it would be, if you will, too
5    little and too late to limit us to seeking to exclude
6    information that is improperly obtained.

7          You know, Your Honor, I think those are the
8    principal points I make.  Obviously, to the extent the Court
9    has further questions, I'd be happy to address any other
10   concerns you may have.

11         THE COURT:  All right.  Have you had any opportunity
12   to discuss this with the Government to try to resolve this
13   situation about what could be done or not done?

14         MR. CYNAMON:  Well, our opportunity to discuss
15   things with the Government usually -- usually result in, "I'm
16   sorry.  We're not really authorized to talk to you about any
17   of this."  I think you've seen the communications that --
18   we've attached them, the e-mail communications between my
19   colleague, Mr. MacLean and Colonel Morris, and he was pretty
20   blunt.  He says, you know, "I'm going ahead and doing it."

21         And so there has been no indication of any -- you
22   know, any view by Government counsel that they will change
23   their view in that.

24         I would also point out, encourage Your Honor to take
25   a look at a case that the Government cites actually.  They

cited a recent decision from the District of Oregon, the Al-Haramain case. It was just decided in June of this year, and they cite it for the proposition that the Court can't grant a preliminary injunction on a matter not outlined in the complaint.

As I have explained, this is not really a preliminary injunction, but the part of the case that they ignore that I think significant is where the Court addresses the concern expressed by the Plaintiffs that not only is the Government in that case allegedly intercepting privileged communications, but the Government counsel are looking at privileged communications and making use of that. And in that respect, the Court, in the slip opinion, specifically agrees that he has authority to control the process of the litigation, has authority to control the Government counsel but points out that in that case the plaintiffs provided no evidence that Government attorneys were in fact doing anything unethical. And indeed, he points out, the Government counsel have assured Plaintiffs and me that they understand and take seriously their ethical obligations.

In this case, we have precisely the opposite. We have a flat statement by Government counsel, the Chief Military Prosecutor that he has no obligation whatsoever to adhere to Rule 4.2 and we have undisputed evidence that such a communication has occurred. So, I think that the Al-Haramain

case actually further supports the conclusion that this court

has the authority and should exercise the authority to enforce

the ethical rules.

THE COURT: Obviously, we have an overlap with the

habeas issues and the Government Military Commission. The

Military Commission issues in part and you have a statute

depriving us of jurisdiction, and that concerns me.

What type of order were you envisioning for the

Court? Because one of the problems I had, and I read through

it, is the breadth of your order as submitted would be

basically, I think, barring the Government from investigating

very much at all about the charges they wish to bring against

the Petitioner.

MR. CYNAMON: Well, Your Honor, I mean, I didn't --

I didn't perceive that the relief we're requesting here is any

broader than what the ethical rule requires, which is that the

Government counsel or agents acting on behalf of Government

counsel cannot communicate directly with our clients without

our knowledge and permission. It doesn't -- as I say, it

doesn't --

THE COURT: The order submitted originally, the one

that Judge Kotelly that was just now before me, filed

July 2nd, alleges that -- states that neither the Military

Commission's Chief Prosecutor nor anyone else on their behalf

shall have any communications with the Petitioners without

consent of Petitioners' counsel relating to matters alleged to be grounds for their confinement, including any matters for which Military Commission charges may be brought.

So, I mean, you want to have no communications at all with the detainee, basically, without your permission or your being present, basically, because condition of confinement cover everything, the way I read that.

MR. CYNAMON: Yes. Well, it's not conditions of confinement. It's grounds for their confinement; in other words, the basis for why they're there, which is are they or are they not enemy combatants, and that's -- that's really it.

I would point out, Your Honor, that this order would not prohibit communications by the Government with our clients that are not by or at the behest of Government counsel for use in this case.

For example, nothing in what we're requesting here would require -- would prohibit legitimate intelligence gathering efforts by Government attorneys -- not Government attorneys -- by Government interrogators at the Department of Defense engaged in legitimate intelligence gathering.

Now, it's kind of a moot point in our case. My clients have not been interrogated for quite a long time, because presumably, since they've been in Guantanamo for almost seven years, they have nothing of value to provide, but we're not suggesting that the Government, as a whole, is

precluded from engaging in proper intelligence gathering or whatever. What we are saying is that Government lawyers who are involved in these cases and under the ethical rules cannot violate those ethical rules by talking to our clients.

I do not think that that is an overly broad order. I do not think it in way affects the ability of the Government to investigate, prepare, prosecute whatever cases, other than to the extent, as I said before, that any limitation on the Government, be it in these cases, be it in criminal cases, that prevents them from talking with defendants without the consent of their counsel is a limitation, but I submit that that's a necessary concomitant of our adversary system and the ethical rules that were built up to protect that adversary system.

THE COURT: All right. Thank you very much, Mr. Cynamon.

MR. CYNAMON: Thank you, Your Honor.

THE COURT: All right. On the Government's behalf, Mr. Haas.

MR. HAAS: May it please the Court. By seeking to enjoin the office or communications by Office of Military Commission attorneys that by Petitioners' own allegations relate directly to the bringing of Military Commission charges, Petitioners ask this court for remarkable injunctive relief that goes to the very heart of the Military Commission

progress.

Congress has expressly withdrawn jurisdiction to consider such claims, such as the Petitioners here, that concern either the Military Commission process on the one hand, or on the other, to the extent that these claims truly do relate to the habeas case, they seek relief as to ancillary issues distinct from challenges to the legality of the detention, or as my opposing counsel just stated, ones that were, quote, collateral to the merits.

Now, whatever the appropriate form may be to evaluate ethical charges by OMC personnel in these OMC communications with Petitioners, surely this court is not it. At bottom, Petitioners' motion has been brought in the wrong form and at the wrong time.

THE COURT: Didn't they try to bring it before the Commission and were told they couldn't?

MR. HAAS: They did. They did try to bring it. It was dismissed without prejudice for lack of jurisdiction, but I don't think that they argue and we certainly don't argue that they couldn't bring it when charges were actually brought.

THE COURT: How do you address the overlap where the charges would necessarily relate to the reasons why they are being declared enemy combatants and held and have to justify that eventually here in our court in the habeas matters? I

don't understand the difference.  How do you distinguish

between the two?

      MR. HAAS:  Well, I think in even the ordinary case,

Your Honor, the Petitioner -- the relief that's sought would

be remarkable.  And taken to its logical ends, they

essentially ask this court to conclude that representation in

a civil matter, such as this habeas case, is an absolute

shield to investigative inquiry of criminal charges by

separate attorneys.  I'm aware of no set of cases where that's

the norm.

      In fact, as I understand it, the opposite is true,

and that in cases where you have both civil and criminal

potential liability, for example, in False Claims Act or

CERCLA or securities actions cases, it is permissible at the

pre-indictment stage to have interviews.

      Now, in fact --

      THE COURT:  Are they represented by counsel, without

counsel's knowledge, in a civil case, you could go and

interview the --

      MR. HAAS:  Well, again, it goes to what the matter

is, of course, Your Honor, and we haven't addressed the merits

of 4.2, but I point out, consistent with the Court's questions

about the representational status that the statute is quite

clear in defining the legal relationship, the attorney/client

relationship here.

1    10 USC 948k(a)(3) states specifically that the

2   provision of detailed defense counsel occurs only after the

3   swearing of charges in the Military Commission case.  And with

4   respect to the -- whatever subjective feeling that Petitioners

5   and their counsel may have about the scope of their

6   representation, I think that the law is clear.

7    THE COURT:  I'm still concerned that -- on your

8   first point here.  If there's counsel representing an

9   individual, I don't care if it's civil or criminal, let's just

10  say in a civil case because that's what you're saying, these

11  are civil proceedings, and the Government wished to

12  investigate that person for other reasons, criminal matters,

13  that necessarily include the civil case basis, they are free

14  to go and talk to this individual without their individual's

15  counsel's permission or knowledge.

16    MR. HAAS:  Well, again, Your Honor, I think that the

17  easiest answer here is to focus on the comments to Rule 4.2

18  itself.  Comment 2 states that communications authorized by

19  law include constitutionally permissible investigative

20  activities representing governmental entities, directly or

21  indirectly, prior to the commencement of civil or criminal

22  proceedings, and they're separate proceedings.

23    The same is true here.  The OMC and Military

24  Commission proceedings are separate, and frankly, that's why

25  Congress wanted to funnel specific claims through that

1  process, and that's why, through the review channeling

2  provision that we cited in Section 3 of the MCA, Congress

3  withdrew jurisdiction over claims just -- just as these.

4  THE COURT:  Well, Congress obviously had a overall

5  picture where they had included habeas, as well, being outside

6  our ambit, and when that's been tossed by the Supreme Court, I

7  think it changes the field somewhat that we're playing on.

8  MR. HAAS:  Well, I don't think --

9  THE COURT:  I'm concerned because it seems to me --

10  I don't know how you distinguish between the grounds for

11  habeas and interviewing the detainee, be that whatever they

12  want to interview them about, about the nature of charges that

13  could be brought against them in the Military Commission.

14  Won't they necessarily overlap in that what they learn in

15  their interviews in the criminal investigation could be used

16  against a detainee in the civil case here?

17  MR. HAAS:  Well, again, there's no evidence that

18  that has actually occurred, Your Honor.

19  THE COURT:  Well, I'm not saying -- it's

20  speculation, I understand that, but I mean, isn't that true,

21  that that could happen?

22  MR. HAAS:  Well, could it happen?  I suppose

23  that's --

24  THE COURT:  If he's charged with committing a war

25  crime, whatever it may be, wouldn't that necessarily be the

1    grounds of why they're trying to hold them as an enemy

2    combatant?

3         MR. HAAS: Well, not necessarily, no. I think that

4    there are -- there could be independent bases for a Military

5    Commission charge and for holding somebody in a habeas case.

6    I think it would depend on the facts of the particular case,

7    but again, that's not a question I think we can talk about in

8    the abstract. It's one that can addressed by the Court at a

9    later stage.

10        I guess I would also point out, though, that even to

11   the extent that this claim relates to the habeas litigation,

12   and I am somewhat dubious about that, because I think it is

13   inextricably intertwined with the Military Commission process,

14   and then, therefore, subject to Section 3 of the MCA, we

15   believe and I think Judge Urbina recently agreed in the Vighur

16   cases that part of Section 7 applies.

17        I guess, before I get too ahead of myself, I would

18   point out also that the Petitioners have really only pointed

19   to the lack of formal charges as the reason why Section 3

20   doesn't apply. I find that entirely unconvincing,

21   particularly in light of the argument or the precedent in this

22   circuit concerning exclusive review forwarded to the -- or

23   entrusted into the courts of appeals. *Telecommunication*

24   *research and action committee v. FCC* and the companion case

25   that comes right after it are prime examples that show that

1  the mere fact that some agency action has not yet occurred is

2  not a basis to allow a district court to oust the jurisdiction

3  of the court of appeals.

4        The interesting thing, Your Honor, about that case

5  is that it was the D.C. Circuit that relied on the All Writs

6  Act to ensure that it had exclusive jurisdiction over its --

7  over any future case.  I think that would squarely apply here.

8        THE COURT:  What about the practice of -- since this

9  is a civil matter, you're saying, the habeas and the Military

10  Commission criminal matter, of the Government attorney, relays

11  a discussion with habeas Petitioners, setting aside the

12  Military Commission, are those not charged or contemplated to

13  be charged for a Military Commission, is it the Government's

14  position that Government attorneys are there represented in

15  the interview of the detainees about matters that will be

16  coming before the Court as to their status as enemy combatants

17  representing detainees?

18        MR. HAAS:  Your Honor, the OMC personnel do not

19  represent the Government in habeas cases, period.  We don't --

20  and Government counsel in the habeas cases don't control them

21  and their actions.

22        THE COURT:  You used the word "inextricably

23  intertwined."  I think that's right, and it does concern me

24  because obviously there are ethical rules binding all

25  attorneys that we all agree to that it seems to me would

1  normally not be having our representatives ourselves

2  interviewing the other's client without counsel's knowledge.

3          MR. HAAS:  And I'd point out, there's no allegation

4  that Government habeas counsel are engaged in these contacts.

5          THE COURT:  I understand that.  But there's no

6  question that the Military Commission people have begun their

7  investigation or continued with it by interviewing the

8  detainee.  From the e-mails from the Colonel, it's obvious

9  they feel they have the right to do that, regardless if

10 they're represented, and regardless if they also represent the

11 military matter because they said they are not yet charged so

12 they don't have the right to representation.

13         MR. HAAS:  But again, there is an avenue open to

14 petitioners to challenge these very things.  As soon as they

15 are charged, they can preserve these arguments, they can have

16 an Article III court look at them, and if the Court upholds it

17 at -- by necessity, makes it okay to use it here.

18         THE COURT:  Would not the Government have some

19 concerns that if this military proceeds this way in these

20 cases, that we will end up with hearings here in court as to

21 the legitimacy of the evidence attempting to be used against

22 the detainees to hold them as enemy combatants before us if

23 they -- some of that evidence may have come or be tainted by

24 the criminal investigation that was done without a lawyer

25 present?

1    MR. HAAS:  Well, again, that would present, I think,

2  a more concrete factual situation that would allow us to, I

3  think, make a determination, and in fact, formally brief

4  whether or not we felt that there was a 4.2 violation that had

5  occurred.  But I think, as the Court recognized, there are

6  also other remedial aspects that the Court could employ should

7  that situation arise.

8    THE COURT:  I mean, I would think it would be a

9  concern, because, as I said, it's a little analogous to

10  *Kastigar,* but the Court could then limit the evidence that

11  could be used before this court that was gathered by the

12  Military Commission people and attempted to be used here,

13  particularly where there's the same basic charges in each

14  case.  I mean, that's my concern.  The Government may end up

15  unwittingly, not because they wished that it happened that

16  way, but where they could have problems here with the validity

17  of the evidence that was gathered by the Criminal

18  Investigation Task Force or the Military Commissions people.

19  That's a concern for the Court.

20    How do we answer the allegation that the -- this

21  process would undermine the attorney/client relationship with

22  the detainee and their counsel where the Military Commission

23  or their task force are allowed to interview the individual

24  without the counsel's consent or presence, how do we respond

25  to that?  What -- doesn't that necessarily interfere with the

1    attorney/client relationship?

2            MR. HAAS:  Well, I don't think that it's been

3    established in this case, that's for certain.  I think it was,

4    again, Petitioner's counsel who said that it was Al Kandari

5    himself who reported to him that these contacts had occurred.

6    We haven't, in fact, inquired as to whether or not Mr. Cynamon

7    then advised him not to say anything further to these

8    investigators.

9            There certainly are less invasive remedies than

10   ordering an injunction that I think, as the Court rightfully

11   recognizes, is quite broad in holding all communications

12   between the OMC and Petitioners concerning the possibility of

13   Military Commission charges.

14           THE COURT:  Has there been any attempt to informally

15   resolve this matter?

16           MR. HAAS:  If there has, I'm not aware of it.  I do

17   know that early on in this litigation, or I'm aware at least

18   that early on in this litigation, that the Department of

19   Justice advised Petitioners' counsel that we don't control the

20   OMC, that they are independent.  So, I mean, I guess I would

21   leave it at that.

22           THE COURT:  That's interesting.  Okay.

23           MR. HAAS:  I guess I would point out also, Your

24   Honor, the breadth of the proposed injunctive order struck me

25   as well, and I think I would point out, focusing again on the

habeas case, that there really is no logical stopping point.

Petitioner's argument would bar any and all contacts with the

detainees represented by habeas counsel, even those solely for

intelligence purposes, if it could be shown that an attorney

touched it at all.

That's a truly remarkable conclusion, in my opinion,

and simply cannot be the reach of the ethical rule,

particularly given the commentary that I provided to the Court

to the rule itself.  And I would suggest that to the extent

that Petitioners disagree and say that these contacts are

different, well, they are different.  The difference is that

the purpose is to bring charges against them where they have

an avenue to bring these claims, and we think it's quite

clear, for the reasons that we set forth and the reasons that

Judge Urbina has recognized with regard to Section 7 of the

MCA, there is simply no jurisdiction over this matter at this

time.

THE COURT:  All right.  Thank you, Mr. Haas.  I

appreciate it.

MR. HAAS:  Thank you.

THE COURT:  Mr. Cynamon, do you want to respond to

this briefly?

MR. CYNAMON:  Yes.  Thank you, Your Honor.

Your Honor, I'm surprised that counsel for the

Government takes the position that a prosecutor can violate or

disregard Rule 4.2 in a criminal case even when the Defendant
is represented in a simultaneous civil case by counsel, and
the prosecutor knows that, and I would point to *United States*
*versus Bowman,* which we cited at page 10 of our opening brief
in which the Court made exactly that point, that it's not
only -- not only had the Government prosecutors made an
unauthorized contact there, but the Court pointed out it
was -- it was particularly inappropriate since the Government
knew that the defendants were represented by counsel in an
adversary judicial proceeding at the time of their
conversations and that adversary proceeding was a civil
forfeiture proceeding arising out of the same facts.  It's
very analogous here.

You have a civil -- a civil case in which the
defendants are represented by counsel and then a -- an
investigation into a potential criminal case in which the
prosecutors, knowing that the defendants or the potential
defendants are represented by counsel, disregard Rule 4.2, and
I think that *Bowman* clearly rejects the position that
Government counsel has taken here.

Second, I think it's entirely artificial to say
that, Well, gee, we hear -- we, the Government lawyers in the
habeas cases, say, you know, we're -- we're not going to
violate the ethical rules, but we can't do anything about the
office of military counsel, neither can this court.

1        Again, this court has and the Government conceded it

2   has, inherent authority to exercise control and enforce the

3   disciplinary rules over counsel for the parties that appear

4   before it.  And to say that counsel at this table can't do it

5   but some other Government lawyers can would be like me going

6   back to my law firm and saying, "Hey, one of my partners, I

7   can't talk to my adversary in this case but you're not in the

8   case, you go talk to them."

9        Again, Rule 4.2 doesn't focus on who's in the case

10  and who's not.  It's in representing a client, and absolutely

11  the Office of Chief Military Counsel is representing the

12  Government.  A lawyer, like the Chief Military Counsel, shall

13  not communicate about the subject of the representation that

14  the party the lawyer knows to be represented by another lawyer

15  in the matter.  And again, contrary to what Government counsel

16  said, it is undisputed that there has been a communication by

17  a staff member for the Office of Chief Military Prosecutor

18  about one of the very allegations that is the basis for

19  detaining my client that will be in issue in this habeas case.

20       And finally, again, I do not believe that our order

21  requests -- certainly we did not intend it to request that

22  there can be no communication by Government agents with our

23  clients.  What there cannot be are communications in violation

24  of the ethical rules by Government counsel or people acting as

25  their alter-egos, and there's a lot of law on that, so there

1    isn't a lot of confusion about what that would be, and that's

2    what's going on and that's what we're trying to stop, and that

3    is not an overly broad request, Your Honor.

4            THE COURT:  How do I issue this injunction without

5    violating the military -- the law in Section 7 of the MCA,

6    Military Commissions Act, where it says no court or judge or

7    jurisdiction to consider -- I've already heard the hearing --

8    it says to hear or consider, any other action against the

9    United States or its agents relating to any aspect of the

10   detention, transfer, treatment or conditions of confinement of

11   an alien who is detained by the United States as an enemy

12   combatant, and an aspect of their detention would be who can

13   communicate with them?

14           MR. CYNAMON:  Your Honor, I respectfully disagree.

15   First of all, Section 7 has been held unconstitutional by the

16   Supreme Court, and I know the Government -- the Government has

17   a lot of arguments about why the Supreme Court really didn't

18   hold it all unconstitutional, but the language of the Supreme

19   Court is that Section 7 is unconstitutional.

20           But putting that aside, Your Honor, this is not -- I

21   emphatically state this is not a request to this court to

22   present a claim relating to conditions of confinement.  This

23   is -- this motion would be identical, even if our clients were

24   not in confinement.  What we are asking the Court to do is

25   exercise its jurisdiction in this case, which it

unquestionably has. The Supreme Court has said this court has
jurisdiction to hear core habeas cases, and what we're saying
is that the ability to prosecute that core habeas case is
undermined if Government counsel, whether the counsel at this
table or otherwise, are allowed to undermine our
attorney/client relationship. So it has nothing to do with
the conditions of confinement. It has to do in which the
manner in which this adversary proceeding is proceeding.

THE COURT: You agree, as counsel said, inextricably
intertwined with the Military Commissions proceeding, the
investigation and the habeas?

MR. CYNAMON: Yes, I do. And as I said before --

THE COURT: And then what Section 3 of the MCA, if
you don't like Section 7, get around Section 3 for me, clearly
says no court, again, even to hear or consider any claim
related to the prosecution under the Military Commission,
including challenge of lawfulness of the proceedings. How do
we get over that?

MR. CYNAMON: Your Honor, we get over that, as I
said before, because the fact that they're inextricably
intertwined means that there are going to be some
circumstances where this court's unquestionable jurisdiction
over the habeas cases are inevitably going to have some effect
on the Military Commission. That does not mean -- it
certainly cannot mean what the Government has argued.

1    As I said before, the logic of the Government's

2  argument in Section 3 is we might as well stop these cases

3  right now because anything we do to try to establish that the

4  Government has no basis for holding our clients as enemy

5  combatants will unequivocally affect the Military Commissions,

6  and therefore, what I am saying is that the fact that this

7  court is exercising its inherent authority to control the

8  ethical conduct of the counsel appearing before it, in no way

9  trespasses on the limitations of Section 3 of the Military

10  Commissions Act.

11    It's a necessary corollary to being able to

12  effectively prosecute these habeas cases which this court

13  unquestionably has jurisdiction to do.

14    THE COURT:  All right.  Thank you very much,

15  Mr. Cynamon.

16    MR. CYNAMON:  Thank you, Your Honor.

17    THE COURT:  All right.  The Court has before it the

18  emergency motion for the injunction to prohibit the Office of

19  the Chief Prosecutor, the Military Commissions or its

20  alter-ego alleged -- I'm reading from the brief of the

21  Plaintiff -- the commission, the Criminal Investigation Task

22  Force or anyone else acting on behalf or at the direction of

23  the Office of the Chief Prosecutor of Military Commissions

24  from having any communications with Petitioners without the

25  consent of Petitioners' counsel relating to matters alleged to

1  be grounds for the confinement, including any matters in which

2  the Military Commission charges may be brought.

3        They obviously have expressed their concerns about

4  the situation of their client being interviewed by

5  representatives of the Government in the Military Commissions

6  proceedings when they represent them in the habeas proceedings

7  before us, which is a civil action number or civil case.

8        The Court is obviously concerned any time there is

9  ethical issues brought before it, as I'm sure Government

10  counsel are as well, and it concerns the Court and it's

11  certainly, in the normal case -- that counsel would be having

12  their staff, or people involved with them, in any fashion,

13  communicating with the litigant on the other side without the

14  other side's litigant counsel being present or with their

15  consent, that is something that's simply not done and the

16  Court would take immediate remedial action if it was brought

17  to its attention that was happening.

18        The situation here is a little different than that,

19  unfortunately.  I think, because of the way that the Supreme

20  Court has decided *Boumediene* and has upset the congressional

21  crafted relief that was provided for the Guantanamo detainees,

22  it has tossed, colloquially, I guess, a monkey wrench into how

23  these proceedings are normally going to go forward, and we are

24  faced now with the aftermath in this court after the decision

25  of the Supreme Court.

1    I am troubled by the challenge that has been brought

2 in the sense that the Government represents that its habeas

3 lawyers have nothing to do with the criminal proceedings and

4 that they have no way of controlling them, in essence, and

5 that the military prosecutors can act as they wish.

6    I think that that ultimately could represent a

7 situation where there would be problems when they get to the

8 merits of the habeas cases where the Court, because of

9 potentially tainted evidence problems, analogous to *Kastigar*

10 and other cases, if that is the decision to go forward that

11 way and have representatives from the military people be

12 allowed to interview the detainees that are represented in the

13 habeas cases where the grounds for the military prosecution

14 and the detainees' grounds for being held as an enemy

15 combatant are the same or overlap closely, at the same time,

16 granting a preliminary injunction, which would directly affect

17 the Military Commissions' proceedings, although couched in

18 terms of its -- only relates to the habeas, the effect would

19 be to interfere with the Military Commissions' proceedings

20 where they would not be allowed to interview the detainee in

21 preparation of the charges and obtain information prior to the

22 time that he has a right to counsel, flies directly in the

23 Military Commissions Act, statute under Article -- Section 3

24 that I referred to, and I think still the remaining viability

25 of what remains in Section 7.  (e)(1) was specifically held

unconstitutional in the Supreme Court.  (e)(2) maybe not

specifically.  It wasn't specifically, but may be

inferentially, and has, I think, still some life to it.

It does concern the Court.  I think it concerned

Judge Kotelly, and it's unfortunate it has come to this extent

when we could not have had some communications to attempt to

resolve this without trying to put the Court in the middle of

the -- what is a very muddled situation in these cases.

What the Court's going to do is as follows, with

that preamble, and this will be the ruling of the Court in its

findings under the rule.  I'm going to deny the motion for

preliminary injunction.  When you consider a motion for

preliminary injunction, you obviously consider the four

factors set forth in multiple cases under the statute in our

circuit, the excess -- substantial likelihood of success on

the merits is the first and most important one, combined with

suffer irreparable injury if the injunction is not granted.

The injunction would not substantially injure other persons

and the public interest would be furthered by the injunction.

Looking at those factors, the first one, likely

success of the merits, the Supreme Court just held in a --

recently about where you're faced with a difficult question as

to jurisdiction that makes the success of the merits more

unlikely due to the potential impediments to reaching the

merits, that it should not then grant a summary -- a

preliminary injunction as requested.  That's *Munaf,* M-u-n-a-f,

at 128 Supreme Court 2219.  So Section 3, it seems to me,

provides a substantial impediment to granting a preliminary

injunction.  It indicates that I have no authority even to

hear -- and Government counsel could have said there shouldn't

have been a hearing in this case, I think -- even to hear or

consider any claim related to the prosecution of a Military

Commission, and that's what we're talking about, including

challenges to the lawfulness of the procedures.  Well, now,

this is a procedure that they're alleging is inappropriate or

unlawful because it violates ethical rules.

I think that potential impediment is a -- weighs

heavily against granting a injunctive relief, even if there

is -- the Court has expressed its concerns about the

Government proceeding with what may be found eventually to be

unethical activities in their investigation in the criminal

commission charges where we have the habeas cases pending over

the same issues.

But further than that, even if I assume I had

jurisdiction to hear this, because it's strictly a habeas

matter, the Supreme Court has given us authority to hear now.

I have some questions on the substantial likely success on the

merits and irreparable injury.  For these reasons, you could

argue that the Section 3 of the Act is not applicable, I

guess, because those charges have not yet been brought, but

the rule that the Petitioners arguing apply, the ethical rule

is Rule 4.2 of the Army Rules of Professional Responsibility

of the lawyers.  That's the, quote, no-contact rule.  It reads

as follows:  In representing a client, a lawyer shall not

communicate about the subject of the representation with a

party the lawyer knows to be represented by another lawyer in

the same manner -- matter, unless the lawyer has the consent

of the other lawyer or is authorized by law to do so.

Now, it seems to me then that the Government would

only be prohibited from communicating with Petitioners about

the basis for their designation as a unlawful enemy

combatants, which is a jurisdiction prerequisite of the

Military Commission charge.  So, they could argue that it's --

that the Petitioners' counsel don't represent him yet in that

because he's not been charged, so it wouldn't apply because of

the subject of the representation in the same matter; although

both sides recognize these are intertwined matters.

The -- additionally, the Government has argued

before the Military Commissions that he's not entitled to

counsel yet because he's not been formally charged so that

they are not interfering with any relationship.  The concern

the Government has to face, obviously, is what the Court is --

and Petitioner's counsel argued somewhat, is that -- and the

Court has expressed interest in is that since they're

basically the same subject matter, it's very difficult to

distinguish then the materials that -- information gained from
the Military Commissions interview and proceedings when they
come here to justify that they should be detained as enemy
combatants and it may result in evidentiary hearings as to
what evidence can be used and what has been tainted if it's
determined there was a violation of the ethical rules.

The other issue is irreparable injury, and counsel
argued that damage, which is very difficult, attorney/client
relationships in these individuals who understandably, very
leery of American lawyers representing them in the context of
their being detained for up to seven years without any
proceeding in court. The -- and they have affidavits attached
as to that harm that could be done or harm that had been done
in the past with references to the counsel's representations
by investigators talking to these individuals.

Petitioner didn't address whether or not he's now
informed his client not to talk to anyone and he's not to
cooperate and what damage could result in the future, if any,
and has not shown that there could be any harm in the future
if he so advised his client not to talk to individuals from
the Government.

The -- really, no specific showing before me at this
time, but speculative showing, it may interfere with the
attorney/client relationship. The problem with counsel as to
Petitioners is, it's really not a preliminary injunction case.

It's really, he's attempting to get an order for the Court to order the Government to behave in accordance to with what he believes is the proper ethical obligations of the Government under this military code of justice and our general rules of ethical conduct as lawyers.

Obviously, I do have inherent authority to order corrective actions to be taken, if necessary, but obviously, there is issues that have not been resolved over the jurisdiction of the Court for interfering with the Military Commission process. It's very clear I do not have that authority, unless it's determined to be unconstitutional, that section of the statute.

But certainly as to irreparable injury at this time, it seems to me it's speculative and that there is an avenue, eventually, to repair any harm, so it's not irreparable, to suppression of any evidence that's improperly gathered that would be coming into the habeas hearing if that is ultimately determined.

And finally, and for the Military Commission, Petitioner would have a right to raise this issue again as to allegations of harm incurred by the interviews of the petitioner without counsel present when Petitioner asserts he represents the individual in the military charge as well, and that would be up to the Military Commission and the Court of Military Commission Review and finally the D.C. Circuit, if

1   that stay is in issue, so there is ultimately ways to repair

2   what is alleged to be irreparable injury.

3            So, the substantial harm to other persons and the

4   public interest, I think, are just equally weighed, and either

5   side, that is, objection of this does not harm other

6   interested parties at this time in this case and in the end

7   that the public interest is necessarily forwarded by --

8   furthered by the injunction or not, but the overall balance,

9   it seems to the Court, is that because of the jurisdictional

10  issue, which is overriding, regardless of the -- categorizing

11  this as a case affecting only the habeas, it necessarily

12  affects the Criminal Commission's proceedings, and that the

13  statute bars the Court from taking any action in those regards

14  at this time, I'm going to deny the motion for preliminary

15  injunction for those reasons, but the Government has, I think,

16  been clearly put on notice as to consequences that could occur

17  in these proceedings if it's determined the military

18  individuals, who, the Government asserts are acting outside

19  the Justice Department on their own, decide to go forward in

20  these types of interviews and impact the habeas proceedings.

21           All right.  Thank you for coming in.  I'll issue an

22  order to the effect of my bench ruling.  All right.

23           THE DEPUTY CLERK:  All rise.

24           (PROCEEDINGS END AT 12:00 P.M.)

25                          *-*-*-*

1

2

3

4

5

6                    **CERTIFICATE OF REPORTER**

7          I, Catalina Kerr, certify that the foregoing is a

8     correct transcript from the record of proceedings in the

9     above-entitled matter.

10

11

12

13

14     _____    _____

       Catalina Kerr                       Date
15

16

17

18

19

20

21

22

23

24

25