IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL HAMANDY, ) <br> ) <br>       Petitioner, ) <br> ) <br> v. ) <br> ) <br> BARACK H. OBAMA, *et al.*, ) <br> ) <br>       Respondents. ) | Civil Action No. 05-CV-2385 (RMU) |
| HAMOUD ABDULLAH HAMOUD ) <br> HASSAN AL WADY, ) <br> ) <br>       Petitioner, ) <br> ) <br> v. ) <br> ) <br> BARACK H. OBAMA, *et al.*, ) <br> ) <br>       Respondents. ) | Civil Action No. 08-CV-1237 (RMC) |

**DECLARATION RE: AUTHORIZATION OF REPRESENTATION**

Counsel for petitioner, Hamoud Abdullah Hamoud Hassan Al Wady, hereby submit the

///

///

///

///

///

///

///

attached declaration regarding authority for counsel to proceed on petitioner's behalf in this matter.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: February _1_, 2009          By _/s/ Carlton F. Gunn_
                                   CARLTON F. GUNN (CA Bar No. 112344)
                                   CRAIG HARBAUGH (D.C. Bar No. 974117)
                                   FEDERAL PUBLIC DEFENDER
                                   321 East 2nd Street
                                   Los Angeles, CA 90012-4202
                                   (213) 894-1700; Facsimile: (213) 894-0081
                                   Attorneys for Petitioner

# DECLARATION OF COUNSEL

I, Carlton F. Gunn, hereby declare and state:

1. I am a Deputy Federal Public Defender in the Central District of California. Our office was appointed to represent Hamoud Abdullah Hamoud Hassan Al Wady in this matter on August 8, 2008. I and Deputy Federal Public Defender Craig Harbaugh have been assigned to the case.

2. Mr. Harbaugh and I have traveled to Guantánamo Bay on two occasions for the purpose of meeting with Mr. Al Wady and other clients. Our first trip was during the first week in December. We asked the authorities at the detention facility to schedule our meeting with Mr. Al Wady on December 3. When we arrived at the camp to meet with Mr. Al Wady that day, we were informed that Mr. Al Wady had declined to meet with us. We were not informed of his reasons; indeed, we have no reason to think that the guards knew what his reasons were.

3. Our second trip to meet with Mr. Al Wady – as well as two other clients – took place during the week of January 19, 2009. We scheduled our meeting with Mr. Al Wady on January 21. When we arrived on that day, we were again informed that Mr. Al Wady had declined to meet with us. Again, we were not informed of his reasons, and, again, we have no reason to think that the guards knew what his reasons were.

4.	Under the standard procedures at Guantánamo Bay, we are not allowed to go back and speak with the client directly to find out why he does not wish to meet with us. All we are allowed to do is prepare a note to send back to the client. In accord with that procedure on January 21, we prepared the note which is attached to this declaration as Exhibit A. As can be seen, that note indicates that we intend to fight Mr. Al Wady's case as best we can without him unless he meets with us and affirmatively tells us he does not want us to do that. The note further indicates that we are assuming that he would like whatever help is available to go home.

5.	Mr. Al Wady responded to this note by checking the "No" box at the lower right-hand portion of the note, indicating that he still did not wish to meet with us. He did not indicate in any way that he did not want us to fight the case for him. This is despite the fact that our note indicated that we were going to fight his case as best we could if he did not meet with us and affirmatively tell us he did not want us to fight the case.

6.	Based on this, we believe it is appropriate to proceed with our representation of Mr. Al Wady. We do not believe that Mr. Al Wady's decision not to meet with us on January 21 can or should be construed as a decision that he does not want representation in habeas proceedings. This is because there are a number of other possible reasons why he declined to meet with us. Those include the following:

    a.	One possible reason is that this is part of a more generalized "strike" by Guantánamo Bay detainees. A number of detainees, including in particular a number of Yemeni detainees like Mr. Al Wady, are protesting

by engaging in hunger strikes and other protests of their lengthy detention under poor conditions at Guantánamo Bay. Our conversations with other attorneys confirm that the number of detainees refusing to meet with counsel, especially detainees from Yemen, has increased significantly, even in the case of detainees who have previously met with counsel. It is possible that Mr. Al Wady chose not to meet with us only as part of this "strike," rather than out of some desire to not be represented or not have us seek his release.

b. Another possible reason Mr. Al Wady did not meet with us lies in the processing a detainee must go through when he leaves his cell for a meeting with counsel. One of the things a detainee is required to do is to go through a scanner which reveals his body, including his genitals, underneath his clothes. This is very embarrassing for someone of the Muslim faith, and we have been told by other habeas attorneys that clients have told them that this is sometimes a reason clients do not want to come out for visits with their attorneys. While we were allowed to meet with Mr. Al Wady in the camp where he is in custody, it is not clear to us that this means he would not have had to go through the scanner.

c. A third possible reason for Mr. Al Wady's decision not to meet with us is that rather than not wanting help in getting out, he has simply lost hope, is feeling defeated, and sees no potential benefit in meeting with us. He has been in custody for over six years, without having any court hearing and

without even having the opportunity to meet with an attorney until last December. This, combined with pressures to join in the "strike" activity described in subparagraph a above and/or a desire not to go through the scanner procedure described in subparagraph b, could be the reason he chose not to meet with us.

d. Another possible reason Mr. Al Wady could have chosen not to meet with us is that he thinks representation is no longer necessary because he has heard about our new President's executive order to close Guantánamo Bay and review all detainee cases. It is possible that Mr. Al Wady does not understand that this order will not necessarily assure his release, that he does not understand that the process could take a very long time, and/or that he has some other misunderstanding about it.

e. Finally, we must have some concern about Mr. Al Wady's competency, given his lengthy confinement without representation, in a foreign country, and without any significant contact with family or friends. All that we have here is a decision not to come out to meet with counsel. We do not have some sort of intelligent and voluntary waiver such as is taken when a defendant enters a guilty plea or waives counsel in a criminal case.

In sum, we believe there are a number of possible reasons why Mr. Al Wady chose not to meet with us other than a desire not to be represented and not seek habeas relief. We believe that inferring that his decision to meet with us means he does not desire to be represented or seek habeas relief would be speculation at best.

7.      Another reason for our belief that Mr. Al Wady's decision not to meet with us does not reflect a lack of desire for habeas relief and release is that it is inconsistent with his past behavior in connection with the Combatant Status Review Tribunal and Administrative Review Board proceedings. The publicly available summaries of those proceedings reveal that Mr. Al Wady chose to participate in both the Combatant Status Review Tribunal and Administrative Review Board proceedings. *See* Exhibit B (Wikipedia materials). This raises grave doubt in our minds about whether Mr. Al Wady's decision not to meet with us is a product of a lack of desire for habeas relief if it is available, as opposed to reflective of simply giving up hope, based on a mistaken judgment that there is no need for habeas relief now that the new President has issued his executive order, or a product of one of the other possible reasons suggested above.

8.      The likelihood that Mr. Al Wady's decision not to meet with us is not related to the absence of a desire not to seek release is enhanced by what we wrote in the note attached as Exhibit A. That note tells him that we are going to fight his case as best we can unless he meets with us and affirmatively tells us he does not want us to. It follows from this that if he truly did not want us to fight his case, he would have met with us and told us so. It is certainly possible –

///

///

///

///

///

///

and even probable – that he relied on the fact that we would fight his case even if he did not meet with us.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 9, 2009

CARLTON F. GUNN
Deputy Federal Public Defender

P:\Gunn\GUANTANAMO Al Wady\PLD AuthorizationDec.wpd

-8-