IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAWKI AWAD BALZUHAIR ) <br> ) <br> Petitioners/Plaintiffs, ) <br> v. ) <br> ) <br> BARACK H. OBAMA al., ) <br> ) <br> Respondents/Defendants. ) <br> ) <br> ) | **Civil Action No. CV 08-1238 (RWR)** |

**DECLARATION RE: AUTHORIZATION OF REPRESENTATION**

Counsel for petitioner, Shawki Awad Balzuhair, hereby submit the attached declaration regarding authority for counsel to proceed on petitioner's behalf in this matter.

Dated: February 9, 2009         Respectfully submitted,

                         _____
                         CARLTON F. GUNN (CA Bar No. 112344)
                         CRAIG HARBAUGH (D.C. Bar No. 974117)
                         Deputy Federal Public Defenders
                         Office of the Federal Public Defender
                         321 East 2nd Street
                         Los Angeles, CA 90012
                         (213) 894-1700; Facsimile: (213) 894-0081
                         Attorneys for Petitioner

# DECLARATION OF COUNSEL

I, Carlton F. Gunn, hereby declare and state:

1.     I am a Deputy Federal Public Defender in the Central District of California. Our office was appointed to represent Shawki Awad Balzuhair in this matter on August 8, 2008. I and Deputy Federal Public Defender Craig Harbaugh have been assigned to the case.

2.     Mr. Harbaugh and I have traveled to Guantánamo Bay on two occasions to meet with Mr. Balzuhair and other clients. Our first trip was during the first week in December. During that trip, on December 4, 2008, we met with Mr. Balzuhair for approximately two hours. The meeting was devoted primarily to explaining the habeas corpus process to him and answering questions he had about it. We did not ask him to sign a written authorization at that time, because it was our first meeting and we wanted to devote it primarily to developing a relationship with Mr. Balzuhair and gaining his trust. We believed this was important because Mr. Balzuhair had been in custody for over six years without even meeting an attorney, and we expected he would feel great frustration and be left with some lack of faith in our legal system.

3.     Our second trip to meet with Mr. Balzuhair– as well as two other clients – took place during the week of January 19, 2009. We scheduled our meeting with Mr. Balzuhair on January 20. When we arrived, we were informed that Mr. Balzuhair had declined to meet with us. We were not informed of his reasons; indeed, we have no reason to think that the guards knew what his reasons were.

4.     Under the standard procedures at Guantánamo Bay, we are not allowed to go back and speak with the client directly to find out why he does not wish to meet with us. All we are allowed to do is prepare a note to send back to the client. In accord with that procedure, we

2

prepared the note which is attached to this declaration as Exhibit A. As can be seen, that note indicates that we had drafted a motion seeking Mr. Balzuhair's release and that we were going to file that motion unless Mr. Balzuhair met with us and told us that he did not want us to file it.

5. Mr. Balzuhair responded to this note by checking the "No" box at the lower right-hand portion of the note, indicating that he still did not wish to meet with us. He did not indicate in any way that he did not want us to file the motion that we had drafted. This is despite the fact that our note indicated that we were going to file the motion if he did not meet with us and affirmatively tell us he did not want us to file the motion.

6. Based on this, we believe it is appropriate to proceed with our representation of Mr. Balzuhair. Consistent with that view, we proceeded to finalize our motion and file it, with the caption of "Motion for Judgment Based on Return," on January 26. We believe the motion has merit and raises important questions about the validity of Mr. Balzuhair's detention. We believe that failing to hear the motion could mean that Mr. Balzuhair is detained unlawfully for an indefinite period of time.

7. For a number of reasons, we do not believe that Mr. Balzuhair's decision not to meet with us on January 20 can or should be construed as a decision that he does not want representation in habeas proceedings. This is because there are a number of other possible reasons why he declined to meet with us. Those include the following:

    a. One possible reason is that this is part of a more generalized "strike" by Guantánamo Bay detainees. A number of detainees, including in particular a number of Yemeni detainees like Mr. Balzuhair, are protesting by engaging in hunger strikes and other protests of their lengthy detention under poor conditions at Guantánamo Bay. Our conversations with other

3

attorneys confirm that the number of detainees refusing to meet with counsel, especially detainees from Yemen, has increased significantly, even in the case of detainees who have previously met with counsel. It is possible that Mr. Balzuhair chose not to meet with us only as part of this "strike," rather then out of some desire to not be represented or not have us seek his release.

b. Another possible reason Mr. Balzuhair did not meet with us lies in the processing a detainee must go through when he leaves his cell for a meeting with counsel. One of the things a detainee is required to do is to go through a scanner which reveals his body, including his genitals, underneath his clothes. This is very embarrassing for someone of the Muslim faith, and we have been told by other habeas attorneys that clients have told them that this is sometimes a reason clients do not want to come out for visits with their attorneys.

c. A third possible reason for Mr. Balzuhair's decision not to meet with us is that rather than not wanting help in getting out, he has simply lost hope, is feeling defeated, and sees no potential benefit in meeting with us. As noted above, he has been in custody for over six years, without having any court hearing and without even seeing an attorney until last December. This, combined with pressures to join in the "strike" activity described in subparagraph a above and a desire not to go through the scanner procedure described in subparagraph b, could be the reason he chose not to meet with us.

d. Another possible reason Mr. Balzuhair could have chosen not to meet with us -- especially given the process he must go through if he does come out -- is that he thinks representation is no longer necessary because he has heard

4

about our new president's executive order to close Guantánamo Bay and review all detainee cases. It is possible that Mr. Balzuhair does not understand that this order will not necessarily assure his release, that he does not understand that the process could take a very long time, and/or that he has some other misunderstanding about it.

e. Another concern is that there could have been some confusion on Mr. Balzuhair's part about who was there to see him. When we came to see him in December, he initially declined to meet with us because he was given the impression that the meeting was with an interrogator, not with attorneys. While the note we sent back would hopefully have cleared up any such confusion on this occasion, it is certainly possible that there is some other miscommunication or confusion that led to Mr. Balzuhair not meeting with us. Further, the note told him that we would file a motion if he did not meet with us, and so he might have concluded that he did not need to meet with us unless he wanted us *not* to file our motion.

f. Finally, we must have some concern about Mr. Balzuhair's competency, given his lengthy confinement without representation, in a foreign country, and without any significant contact with family or friends. All that we have here is a decision not to come out to meet with counsel. We do not have some sort of intelligent and voluntary waiver such as is taken when a defendant enters a guilty plea or waives counsel in a criminal case.

In sum, we believe there are a number of possible reasons why Mr. Balzuhair chose not to meet with us other than a desire not to be represented and not seek habeas relief. We believe that inferring that his decision to meet with us means he does not desire to be represented or seek habeas relief would be speculation at best.

8.	The likelihood that Mr. Balzuhair's decision not to meet with us is not related to the absence of a desire not to seek release is enhanced by what we wrote in the note attached as Exhibit A. That note tells him that we are going to file a motion unless he meets with us and tells us he does not want to. It follows from this that if he truly did not want us to file a motion, he would have met with us and told us so. It is certainly possible – and even probable – that he relied on the fact that we would file the motion even if he did not meet with us.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 7, 2009

CARLTON F. GUNN
Deputy Federal Public Defender