UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AMMAR AL-BALUCHI,

　　　　Petitioner,

v.

ROBERT M. GATES, et. al.

　　　　Respondents.

Civil Dkt. No. 08-cv-2083 (PLF)
Misc. No. 0442-08

### PETITIONER'S REPLY TO RESPONDENTS' FEBRUARY 9, 2009 RESPONSE TO PETITIONER'S MOTION FOR RECONSIDERATION

On or about January 13, 2009, Petitioner Ammar al-Baluchi ("Petitioner"), through the undersigned (hereinafter "Movant"), filed a motion for miscellaneous relief. By that motion, Petitioner requested that this Court issue an Order (1) enjoining Respondents and their subordinates from proceeding with the military commissions' matter involving Petitioner until such time as Respondents honor Petitioner's choice of counsel; (2) directing that Movant be permitted to utilize the so-called "legal" mail system in place at Guantánamo Bay to communicate with Petitioner; and (3) granting a writ of *mandamus* directing Respondents and their subordinates in the Office of Military Commissions to either (a) accept Movant's notices of appearance in Petitioner's military commissions' matter, or (b) reject Movant's notices of appearance in Petitioners' military commissions' matter on the official and public military commissions' record and in Petitioners' presence. On January 22, 2009, the Honorable Paul L. Friedman of this Court issued a *sua sponte* order denying Petitioner's motion in its entirety without prejudice. The Court apparently relied on President Obama's recent decision to seek a 120-day stay of the military commissions' proceedings, including Petitioner's, holding that this

1

stay rendered Petitioner's application, including Movant's request for access to the legal mail system, moot.

By motion dated January 25th, Petitioner moved this Court for reconsideration of that portion of the Court's January 22nd *sua sponte* decision and order denying Petitioner's January 13, 2009 motion for access to the legal mail system at Guantánamo Bay. By memorandum dated February 9, 2009, Respondents opposed. Petitioner replies herein.

## ARGUMENT

Respondents oppose Petitioner's motion for reconsideration on the ground that the underlying *habeas* action is unauthorized. In support of that argument, Respondents claim the *habeas* action must be dismissed, should Movant fail to provide signed authorization from Petitioner himself by February 16, 2009, as ordered by this Court in its December 15, 2008 and December 16, 2008 orders. Respondents' response at 1. In so arguing, Respondents avoid discussing the merits of the motion for reconsideration, that is, the relevance, or lack thereof, of President Obama's request for a stay of the military commissions' proceedings, as that request relates to Movant's request for access to the legal mail system. Respondents therefore concede the motion for reconsideration, but instead attack Movant's authority. In any event, their arguments support Movant's contention that his request for access to the legal mail system should proceed, as that request is directly implicated by Respondents' request that the *habeas* action be dismissed.

To the extent that Respondents' response includes a request that this Court dismiss the underlying *habeas* action if Movant fails to meet the Court's February 16, 2009 deadline, such request is highly inappropriate, for three reasons. First, Movant has written authorization from Petitioner to act as his attorney in the filing of a federal action challenging the legality of

2

his detention. Similarly, Petitioner has apparently written the DC Circuit providing written evidence of such authorization. Second, Respondents' obstructive behavior is the cause of Movant's inability to contact Petitioner to secure that authorization. Respondents improperly seek to benefit from their own obstructive behavior in preventing contact between Petitioner and his chosen counsel, Movant. Respondents claim that Movant lacks authorization to proceed while, at the same time, refusing to permit him access to Petitioner to secure such authorization.[1] For Respondents, who since July 1, 2008, have shut down all avenues of communication between Petitioner and Movant to, in turn, claim that dismissal is appropriate because of Movant's failure to produce a more explicit statement from Petitioner is nothing short of astounding and appalling. Respondents' behavior smacks of bad faith and should not be tolerated by this Court. Third, Movant's inability to secure explicit authorization regarding Petitioner's *habeas* action, beyond his May 26, 2008 letter, does not reflect Petitioner's refusal to proceed with such action or his desire that such action be dismissed, but rather reflects his pre-*Boumediene v. Bush*, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008) and pre-*Bismullah v. Gates*, 551 F.3d 1068 (D.C. Cir. January 2, 2009) (post-*Boumediene*, the DC Circuit has no jurisdiction to hear DTA petitions) understanding of his available legal options. It is, after all, inconceivable that Petitioner would direct Movant to file a DTA petition on his behalf to challenge his detention without also granting him implicit authority to file the underlying *habeas* action on his behalf, once the post-*Boumediene* landscape permitted such action. The DC Circuit's decision in *Bismullah* only served to highlight the absurdity of any conclusion to the contrary, as that Court

---

[1] Were Movant granted access to Petitioner and Petitioner were to refuse authorization to Movant to proceed, dismissal would certainly be warranted. Such is, however, not the case, as Respondents repeatedly refuse Movant the means to contact Petitioner.

3

no longer has jurisdiction to hear DTA petitions, absent direction to the contrary by the Supreme Court.

By his January 25, 2009 motion to reconsider, Petitioner sought reconsideration of this Court's January 22, 2009 *sua sponte* denial of Petitioner's motion seeking to permit written communication access between Petitioner and Movant on two grounds. First, so that Movant can clarify his authorization to represent Petitioner in the instant matter. Here, Petitioner directly authorized Movant, by letter dated May 26, 2008, to file a DTA petition on his behalf. Petitioner apparently simultaneously mailed a notification to "the court" (presumably the DC circuit) authorizing Movant to act as his attorney.[2] Some 17 days after Petitioner authorized Movant's filing of a DTA petition, the Supreme Court, in *Boumediene*, ruled, among other things, that DTA petitions were not an adequate substitute for the right to petition for a writ of *habeas corpus*. The DC Circuit has since ruled that it no longer has jurisdiction to hear DTA petitions, thereby making the DTA petition brought by the Federal Defender, and cited by Respondents in their February 9th memorandum, without legal effect. *See Bismullah v. Gates, supra*. On July 1, 2008, five weeks after Petitioner wrote his letter authorizing Movant to file a DTA petition on his behalf, Respondents, by their attorney Andrew I. Warden, announced their change of course of rejecting all of Movant's privileged mail sent to Guantánamo Bay.[3]

---

[2] If Petitioner did, in fact, mail an authorization to the DC Circuit acknowledging Movant as his attorney in his DTA matter, it is unclear why the DC Circuit permitted the Federal Defender for the District of Utah to file a DTA petition on his behalf, as the Federal Defender's action was likely unauthorized. Respondents provide no evidence that Petitioner directly authorized the Federal Defender's DTA action, all the while challenging Movant's lack of such evidence herein. This double-standard should not escape the Court's notice.

[3] Since Respondents' July 1, 2008 announcement, they have rejected 48 pieces of mail sent by Movant to Guantánamo Bay, including one envelope containing solely non-privileged mail (which was not opened) and three pieces of mail to Petitioner. By letter dated December 18, 2008, Movant sought clarification from Petitioner regarding Movant's authority to file the instant matter. Movant has not received an answer from Petitioner as of February 11, 2009.

As the Court and Respondents are well aware, Movant has written authorization from Petitioner to act as his attorney and to file an action in federal court challenging his detention. Petitioner sent a letter, dated May 26, 2008 in which Petitioner directly and definitively granted Movant authorization to act as his attorney and to file a DTA action on his behalf in the DC Circuit. At the time Petitioner's May 26, 2008 letter was written, then existing law apparently deprived detainees of the right to file any *habeas* action challenging their detention. *See* Detainee Treatment Act of 2005 and Military Commissions Act of 2006. With the Supreme Court's June 12, 2008 ruling in *Boumediene* permitting detainees to file habeas actions and the DC Circuit's January 2, 2009 decision in *Bismullah* declaring that Court's lack of jurisdiction to entertain DTA petitions, a *habeas* petition became the only means by which Petitioner could pursue a challenge to his detention in federal court. In response to *Boumediene* and in accordance with the authority granted him to act as his attorney and challenge his detention in federal court, Movant filed the underlying *habeas* action.

By orders dated December 15, 2008 and December 26, 2008, the Court ordered Movant to provide further evidence beyond Petitioner's May 26, 2008 retention letter and required Movant to secure specific authorization from Petitioner regarding the filing of the instant *habeas* action. In order to comply with that order, Movant must have access to Petitioner in order to communicate with Petitioner to secure that authorization, particularly in light of *Boumediene* and *Bismullah*, two cases decided after Petitioner wrote his May 26, 2008 letter and at a time when Respondents were refusing Movant the ability to communicate with Petitioner. Here, however, access to Petitioner is entirely (and solely) within Respondent's control.[4] As detailed in Petitioner's January 13, 2009 motion, Respondents have refused Movant all access to

---

[4] Indeed, it is well established that not even the courts have access to the detainees without Respondents' cooperation.

5

Petitioner, unilaterally and totally obstructing all ability by Movant to comply with this Court's orders in any fashion.

Here, Movant is caught in an untenable Catch-22 solely of Respondents' making for the apparent purpose of denying Petitioner (and numerous other detainees) access to his chosen counsel. Respondents, approximately five weeks after Petitioner wrote Movant asking that Movant file a (now-ineffective)[5] DTA petition, announced that Movant could no longer send privileged mail to Guantánamo Bay. Respondent's July 1st announcement occurred months before Movant received Petitioner's May 26th DTA-authorization letter, which Movant received in September of 2008. Hence, upon receipt of Petitioner's request that he file a DTA petition, which occurred after the Supreme Court's decision in *Boumediene*, Movant no longer had the ability to secure Petitioner's specific authorization as to his *habeas* action as requested by the Court and proceeded with that petition, as authorized in *Boumediene*.[6] The current mail-access procedures, as interpreted by Respondents, make it impossible for Movant to seek the additional authorization from Petitioner necessary to adequately respond to the Court's December 15th and December 26th orders.[7] Hence, granting Movant's motion to reconsider this Court's decision regarding Movant's motion for access to the legal mail system in place at Guantánamo Bay for

---

[5] *See Bismullah, supra.*

[6] Respondents' claim that Movant has the ability to send non-privileged mail to Petitioner is a red-herring and raises ethical concerns. Movant simply cannot send non-privileged mail to Petitioner to seek his direction regarding this, and other, representation. *See* New York Disciplinary Rule 4-101 ("a lawyer shall not knowingly reveal a confidence or secret of a client").

[7] In light of the DC Circuit's recent decision in *Bismullah*, any decision by this Court to dismiss Petitioner's *habeas* petition herein should be carefully considered, as a dismissal will effectively end Petitioner's ability to challenge the legality of his detention. Such a decision would be troubling where it is brought about, in part, by Respondents' aggressive efforts to limit Petitioner's ability to communicate with his attorney of choice, Movant. This is particularly problematic where this petition challenges Respondents' detention of Petitioner and it is Respondents' questionable policy of rejecting all of Movant's mail to Petitioner that has caused Movant to have difficulty obtaining the necessary clarification from Petitioner.

6

the purpose of securing clarification of his May 26, 2008 letter authorizing a DTA petition is imperative to protect Petitioner's access to the writ and the Article III court system. Any other decision will negate Petitioner's ability to secure representation from his chosen counsel for the purpose of challenging his detention at the hands of Respondents. Should Petitioner reject Movant's efforts after communication is reestablished then, and only then, should the Court dismiss this petition.

## CONCLUSION

This Court should reconsider its *sua sponte* denial of Petitioner's request that Movant be permitted to utilize the legal mail system to communicate with Petitioner for the purpose of seeking clarification of Petitioner's May 26, 2008 letter.

Dated: New York, New York
February 12, 2009

**The Law Offices of Scott L. Fenstermaker, P.C.**
300 Park Avenue, 17th Floor
New York, New York 10022
(212) 302-0201 (o)
(917) 817-9001 (c)
(212) 302-0327 (f)

By: _____
Scott L. Fenstermaker, Esq.