```
------------------------------------------------------:
AMMAR AL-BALUCHI,                         : Civil Docket Number 08-cv-2083 (PLF)
                                          : Misc. No. 0442-08
            Petitioner,                   :
                                          : MEMORANDUM IN SUPPORT OF
      v.                                  : AUTHORIZATION TO FILE THE
                                          : INSTANT ACTION AND MOTION TO
ROBERT M. GATES, et. al.                  : FILE A DOCUMENT UNDER SEAL
                                          :
            Respondents.                  :
                                          :
------------------------------------------------------:
```

## PRELIMINARY STATEMENT

SCOTT L. FENSTERMAKER, ESQ. (hereinafter, "Movant") respectfully submits this memorandum in response to the Court's December 15, 2008, December 26, 2008, and December 29, 2008 orders for additional documentation that Petitioner personally authorized the filing of the instant action. Specifically, Movant argues herein that Petitioner Ammar al-Baluchi directly authorized this action by directing Movant to file an action pursuant to the Detainee Treatment Act of 2005 (the "DTA") in the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit") and that Respondents' wrongful conduct precluded Movant from securing additional direct authorization for the filing of a *habeas* petition by eliminating Movant's ability to communicate with Petitioner. Similarly, Movant seeks an Order of this Court permitting him to file a May 26, 2008 letter from Petitioner to Movant under seal for this Court's *ex parte* and *in camera* review. Petitioner's May 26th letter directly authorizes Movant to file an action in federal court on Petitioner's behalf challenging the legality of his detention by the only means available at that time and also informs Movant that Petitioner directly wrote to

1

the Court authorizing such action.[1] Hence, Petitioner's May 26th letter, which contains substance subject to the attorney-client privilege, is material to this Court's determination of its December 15, 2008, December 26, 2008, and December 29, 2008 orders.

## BACKGROUND

Movant was retained by Petitioner to, among other things, serve as his attorney in filing a DTA action in the DC Circuit. *See* February 15, 2009 Declaration of Scott L. Fenstermaker, Esq. (the "Fenstermaker Declaration"), ¶ 3, footnote 2. Petitioner's retention letter was dated May 26, 2008.[2] *See id.* On or about July 1, 2008, after Petitioner sent his May 26th retention letter, but several months before Movant's September-2008 receipt thereof, Respondents, through their attorney Andrew I. Warden, Esq., announced that Movant was no longer permitted to send written communications to detainees held at Guantánamo Bay.[3] Since, July 1, 2008, Movant has had 48 pieces of mail sent to Guantánamo Bay-based clients, including Petitioner herein, returned from Guantánamo Bay. On or about December 18, 2008, in an attempt to satisfy the Court's December 15, 2008 order, Movant sent a letter to Petitioner, asking him to sign a statement directly stating that, in addition to authorizing Movant to file a DTA

---

[1] Petitioner's May 26th letter does not specify to which court he wrote, but it was almost certainly the DC Circuit, as that Court was vested with sole jurisdiction over DTA cases by section 7 of the Military Commissions Act of 2006 and the Detainee Treatment Act of 2005.

[2] Petitioner has also sent Movant letters dated September 19, 2007, February 2, 2008, February 11, 2008, July 7, 2008, and July 14, 2008. *See id.* ¶ 3. These letters are available for this Court's *ex parte* and *in camera* review.

[3] Respondents have repeatedly claimed, in unrelated litigation, that Movant is not prohibited from sending non-privileged mail to Guantánamo Bay. This is incorrect. Respondents have returned non-privileged mail sent by Movant to a Guantánamo Bay detainee, unopened, to Movant. *See* Fenstermaker Declaration, ¶ 13.

2

action, Petitioner also authorized Movant to file a *habeas* petition. Movant has not yet received a response from Petitioner to Movant's December 18, 2008 letter.[4]

## STATEMENT OF MATERIAL FACTS

Petitioner, in his May 26th letter, informed Movant that "on May 19th I've sent to the Court via the SJA[5] a legal representation request in order to allow [Movant] to file a 'DTA' Petition on my behalf, I was told that [Movant would] get a copy of it or get notified, and I hope [Movant would have] already been notified if not [Movant] can simply show this letter to the Court."[6] *See* Fenstermaker Declaration, ¶ 3, footnote 2. By the time Movant received Petitioner's May 26, 2008 letter, other attorneys had filed a DTA petition on Petitioner's behalf. It is unclear whether these other attorneys were authorized by Petitioner to file their DTA action or whether Petitioner is even aware that such a petition has even been filed.

On or about December 2, 2008, Movant filed a petition for a writ of *habeas corpus* in this Court. This Court then issued its December 15th, December 26th, and December 29th orders directing that Movant provide substantiation of his authorization to file this petition. By letter dated December 18, 2008, Movant wrote to Petitioner in an attempt to satisfy the Court's December 15th order. *See* Fenstermaker Declaration, ¶ 3.

Since their July 1, 2008 announcement of a shift in their policy of permitting Movant to send mail to Guantánamo Bay, Respondents have rejected 48 pieces of mail sent by Movant to his Guantánamo Bay-based clients. *See* Fenstermaker Declaration, ¶¶ 4 through 17. At least one

---

[4] Letters sent through the communication channel Movant is forced to use take months to arrive at their intended destination. Petitioner may not have received Movant's December 18th letter as of the February 16, 2009 deadline prescribed in the Court's December 15, 2008, December 26, 2008 and December 29, 2008 orders.

[5] Staff Judge Advocate.

[6] In this same letter, Petitioner explained that "Mr. Fenstermaker, unfortunately there is no legal representation or legal assistance for brothers detained here."

3

of these rejected pieces of mail was not marked with a "privileged" designation. *See* Fenstermaker Declaration, ¶ 13. Five of these pieces of mail were sent to Petitioner. *See* Fenstermaker Declaration, ¶¶ 15 through 17. Respondents, without support other than unilateral proclamation and fiat, assert that privileged mail may not be sent through what they call the "non-legal" mail system in place at Guantánamo Bay.[7] At the same time, Respondents have repeatedly failed to identify the governmental interest furthered by refusing to deliver privileged mail through the "non-legal" mail system at Guantánamo Bay, if, indeed, one exists.[8]

Respondents permitted Movant to send mail marked "privileged and confidential/attorney-client privilege" through the "non-legal" mail system for over a year prior to their July 1, 2008 proclamation. *See* Fenstermaker Declaration, ¶ 6. No apparent harm arose to the government as a result of this privileged correspondence. Only after a number of detainees, including Petitioner herein, Ahmed Khalfan Ghailani, Rahim al-Nashiri, Mustafa Bin-Ahmad al-Hawsawi, and Abu Faraj al-Libi expressed interest in retaining Movant, did Respondents promulgate their July 1, 2008 proclamation that Movant would, thereafter, be barred from sending "privileged" mail to Guantánamo Bay. Respondents made no mention of a prohibition against Movant's sending non-privileged mail. *See* Fenstermaker Declaration, ¶ 4.

Petitioner's May 26, 2008 letter contains additional material to that quoted above. The additional material constitutes communications from a client to an attorney for the purpose

---

[7] Access to the so-called "legal" mail system at Guantánamo Bay is reserved for attorneys selected and approved by Respondents and their subordinates.

[8] In seeking to secure the dismissal of a related action, *Fenstermaker, et. al. v. Bush, et. al.*, 05 CV 7468 (SDNY) (RMB), the government made claims to the court and to Movant that Movant, in his capacity as an attorney, could send mail to detainees held at Guantánamo Bay. In making this claim, the government never mentioned that privileged mail was not permitted through the channels they proposed to the court in the Southern District of New York. The government made these claims in the Southern District of New York to convince the court that Movant had the capability to contact detainees in his capacity as an attorney.

4

of securing legal advice and assistance. This additional material was clearly written in confidence and with the expectation that it would be treated as such by Movant. It discusses, and discloses, defense strategy, Petitioner's goals, and his communications with other attorneys, among other things.

## ARGUMENT

### Petitioner Directly Authorized Movant to Challenge His Detention in Federal Court

On May 26, 2008, the day Petitioner wrote his letter directly authorizing Movant to file a federal court action challenging the legality of his detention, the only means available for him to do so was by way of a DTA petition. Not until June 12, 2008, approximately two and one-half weeks after Petitioner's letter was dated, when the United States Supreme Court issued its decision in *Boumediene v. Bush*, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), that held, among other things, that DTA petitions were an inadequate substitute for the right to file a petition for a writ of *habeas corpus*, did the *habeas* petition become a viable weapon in Petitioner's legal arsenal. Subsequently, on January 2, 2009, the DC Circuit handed down its decision in *Bismullah v. Gates*, 551 F.3d 1068 (D.C. Cir. January 2, 2009) (post-*Boumediene*, the DC Circuit has no jurisdiction to hear DTA petitions). As a result, a *habeas* action has become the only means by which a Guantánamo Bay detainee can challenge the legality of his detention. The effect of the DC Circuit's decision in *Bismullah* to Petitioner's direction to Movant is that Petitioner's May 26th direction that Movant file a DTA petition is rendered ineffective in implementing Petitioner's stated desire to challenge the legality of his detention by having Movant file an action to that effect in federal court.

Subsequent to these events, Movant, as Petitioner's attorney, must effect Petitioner's goal, as stated in his May 26, 2008 instructions. What Petitioner has made clear in his May 26,

5

2008 direction to Movant to file a DTA Petition in federal court is his desire to challenge the legality of his detention by all means available. Petitioner's granting to Movant the authorization to do so could not have been made his objective clearer. Thus, where it is abundantly clear that, by his May 26, 2008 letter, he personally authorized the filing of a DTA petition to challenge his detention, the same can be said with regard to the *habeas* petition herein. While there is no specific mention of the filing of a *habeas* action in Petitioner's May 26th letter, there can be no doubt as to his intent to challenge his detention in federal court. The omission of any mention of a *habeas* action was merely a reflection of Petitioner's understanding of the proper (and exclusive) procedural vehicle available at that time. Given that his objective was clearly to challenge his detention in federal court, had a *habeas* petition been an available procedural mechanism at that time, Petitioner would have specifically mentioned that as well, and included a specific direction for Movant to initiate that action. Because the filing of the *habeas* action is in complete accord with Petitioner's stated objective and has become the only means by which to challenge Petitioner's detention, his May 26, 2008 letter constitutes sufficient personal authorization for the filing of the instant action. Dismissal of the petition for lack of *further* evidence of authorization is unwarranted.

Dismissal is inappropriate for another reason. Given the DC Circuit's decision in *Bismullah*, a dismissal of the instant action would leave Petitioner completely without any challenge in any federal court. That certainly was not Petitioner's intent. That Petitioner instructed Movant to provide the Court with a copy of his May 26, 2008 letter indicates that he intends for his letter to serve as his personal authorization for such challenges and reveals his understanding of the difficulties presented by his restrictive confinement and the Court's need to obtain personal authorization in a timely fashion. For the Court to dismiss the instant petition

because Movant could not secure a second letter of personal authorization would defeat Petitioner's purpose for instructing Movant to provide the letter to the Court. More importantly, for the Court to dismiss this petition because Movant is unable to provide another statement of personal authorization is wholly, and blatantly, unfair where the implementation of Respondents' July 1, 2008 policy change and Respondents' refusal to allow *any* contact or communication between Movant and Petitioner since then has prevented Movant from even notifying Petitioner of the Court's request. Petitioner's inability to send a second statement of personal authorization therefore constitutes *not* his intent that the *habeas* action be discontinued, but merely his lack of awareness that the Court has required a second statement. Neither Petitioner nor Movant should be faulted for his inability to supply a second statement under circumstances such as these, which are of the Respondents' own making.

Respondents, in related litigation in this matter, have cited to a DTA petition filed by the Federal Defender for the District of Utah on Petitioner's behalf, seemingly implying either that the Federal Defender is Petitioner's authorized representative or that Petitioner's May 26, 2008 direction has been superseded. This argument is specious. First, the Federal Defender has provided no support for his claim to be Petitioner's authorized representative or that Petitioner authorized the Federal Defender to file the DTA petition. Similarly, the Federal Defender has not filed a *habeas* petition or otherwise claimed to have authorization to do so. Nor has he sought to intervene herein in an attempt to claim that the instant petition was filed without authorization. Any such claims by Respondents here would simply be the product of a desperate attempt to take advantage of the lack of communication between Movant and Petitioner in order to end Petitioner's challenge to his detention.

7

If this Court rules that Petitioner's May 26, 2008 direction is insufficient because it does not mention the filing of a *habeas* action with sufficient specificity, it is merely enabling Respondents to manipulate Petitioner's ability to file a *habeas* petition and to profit from their success at having thwarted all contact between Petitioner and Movant.[9] After all, Movant cannot comply with the Court's order and Petitioner cannot provide the requested information unless Petitioner is at least aware of the Court's request. Here, Respondents have refused all ability by Movant to even inform Petitioner of the Court's request. It cannot therefore be said that Movant's inability to produce one is because Petitioner will not grant it. A dismissal of the instant *habeas* action under these circumstances would be cruel irony indeed and would arguably be an abrogation of this Court's separation-of-powers responsibility. This Court should not permit such misuse of the Executive's sole access to Petitioner. If tolerated by this Court, such action could easily be used to circumvent any detainee's access to Article III courts for the purpose of challenging their detention through the filing of a petition for a writ of *habeas corpus*. Such action should not be tolerated.

In short, Petitioner's May 26, 2008 letter constitutes his statement of personal authorization to any challenge brought in federal court by Movant on his behalf, including the *habeas* petition herein. His direction to Movant to provide the Court with a copy of his May 26, 2008 letter to serve as a statement of personal authorization constitutes sufficient evidence against the dismissal of the instant petition.

---

[9] In an effort to eliminate Respondents' ability to manipulate Petitioner's ability to file a *habeas* petition, Movant filed a Motion for Miscellaneous Relief on January 13, 2009. *See* document number 13 herein. This motion was denied without prejudice by order dated January 22, 2009. Petitioner moved for reconsideration of this Court's January 22, 2009 order by motion dated January 25, 2009. Petitioner's motion for reconsideration is pending before this Court.

## Petitioner's May 26, 2008 Letter Should be Filed under Seal

Petitioner moves this Court for an Order permitting him to file his May 26, 2008 letter under seal for this court's *in camera* and *ex parte* review. Petitioner's May 26, 2008 letter contains privileged material. It was written by Petitioner in an attempt to secure legal advice and representation from Movant. It was clearly intended to be confidential, as it discusses defense strategy, communication with other lawyers, and personal matters related to Petitioner's confinement. As such, it is subject to the attorney-client privilege.

## Conclusion

Petitioner has duly authorized Movant's filing of the instant petition. This Court should permit Petitioner's May 26, 2008 letter to be filed under seal for this Court's *in camera* and *ex parte* consideration.

Dated: New York, New York
February 15, 2009

**The Law Offices of Scott L. Fenstermaker, P.C.**
300 Park Avenue, 17th Floor
New York, New York 10022
(212) 302-0201 (o)
(917) 817-9001 (c)
(212) 302-0327 (f)

By: *[signature]*
Scott L. Fenstermaker, Esq.

# APPENDIX A

Pursuant to Local Rule 7(m), Scott L. Fenstermaker, Esq. contacted counsel for Respondents to meet and confer regarding potential opposition to the instant request for an order directing the filing of Petitioner's May 26, 2008 letter to Movant under seal for this Court's *ex parte* and *in camera* review. The responses received by Sunday, February 15, 2009 as of 9:00 p.m. EST are as follows:

Respondents oppose Petitioner's requested relief to the extent that it would permit what Respondents believe to be material not subject to the attorney-client privilege to be filed under seal for the Court's *in camera* and *ex parte* review.