UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Misc. No. 08-442 (TFH) |
| GUANTÁNAMO BAY DETAINEE LITIGATION | |
| AL HALMANDY, *et al*., | |
| Petitioners, | |
| v. | No. 05-cv-2385 (RMU) |
| BARACK H. OBAMA, *et al*., | **[Oral argument requested]** |
| Respondents. | |

**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS THE HABEAS PETITION OF MOHAMMED JAWAD WITHOUT PREJUDICE OR, ALTERNATIVELY, TO HOLD THE PETITION IN ABEYANCE PENDING COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

<u>**INTRODUCTION**</u>

Mohammed Jawad, an Afghan national captured as a teenager and now held at Guantánamo, has been in U.S. custody for over six years. The government's own documents show he has been subjected to torture and cruelty throughout his captivity. As a result of his detention and treatment, on December 25, 2003, when he was about 17 years old, Mr. Jawad tried to commit suicide. The government continued to detain him, subjected him to further abuse, and, almost five years later, brought charges against him in a military commission system that does not comply with fundamental due process and fair trial standards. So deeply flawed is the military commission system, and so flimsy is the legal and factual basis for the government's detention and prosecution of Mr. Jawad, that the principal evidence against him was thrown out

by the military judge and his military prosecutor resigned in protest rather than continue on the case. Completely disregarding the history of its own treatment and failed prosecution of Mr. Jawad, the government now seeks to foreclose or delay the only means he has of challenging his detention: habeas review by this Court.

According to the government's motion to dismiss or hold in abeyance (the "Motion"), this Court may not hear Mr. Jawad's habeas case because the principle of comity requires the Court to abstain from habeas review while the military commission case against him proceeds. But almost the first act of the new President, four days after the Motion was filed, was to instruct the Secretary of Defense to seek a stay to all military commission proceedings. Two days later, the President issued an Executive Order further formalizing his previous instruction to the Secretary of Defense and instructing him to seek a halt to commission proceedings. Top administration officials, including the Attorney General, have made clear that the military commissions, as constituted under the Military Commissions Act of 2006 ("MCA"), will not continue, and that they violate due process. Thus, the factual and legal predicate for the Motion no longer exists—there are no ongoing military commission proceedings to which this Court owes deference, and it is entirely uncertain what, if any, process will replace the commissions, and when, and, even if so, whether Mr. Jawad would even be subjected to any such new system.

Proceedings in Mr. Jawad's military commission case to date have made clear that the government does not have credible evidence or a legal basis to detain, let alone to prosecute, him. To permit dismissal or even a stay of Mr. Jawad's habeas case in these circumstances— more than three years after his habeas petition was first filed and after more than six years of executive detention without due process—would compound the injustice Mr. Jawad has suffered already and deny him his constitutional right to swift judicial review of the government's basis

for detention. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008) (requiring "prompt" adjudication of Guantánamo detainees' habeas cases).

The principle of comity also does not apply in Mr. Jawad's case because the military commission appeals court has itself explicitly invited this Court to adjudicate Mr. Jawad's habeas case, providing this Court with an independent basis to deny the government's Motion. When the Court of Military Commission Review granted the government's request for a stay in Mr. Jawad's case, the court made clear that it *expected* Mr. Jawad's habeas case to proceed in federal court. According to the military appeals court, it decided to grant the stay in part because the prejudice to Mr. Jawad of excessive delay is mitigated by the fact that he can challenge his detention *now* before *this* Court. Thus, the military commission system itself recognized that there is no basis to delay further Mr. Jawad's ability to challenge his detention through habeas corpus. That fact, coupled with the President's reaffirmation in his Executive Order that all Guantánamo detainees have a constitutional right to habeas review, makes clear that the government's Motion is effectively moot.

This Court need not reach the constitutional issues raised by the government's response to Mr. Jawad's petition (in which he challenges the constitutionality of the commission system as constituted under the MCA, and the jurisdiction of the commission over him specifically) if it denies the Motion on the grounds that the factual and legal predicates for the Motion no longer exist. Given that the executive branch has itself halted, and retreated from, the military commission system, and that even if the commissions start again, it will not be in their current form as constituted under the MCA, it seems unlikely that the current Justice Department would continue to defend the merits of the system. However, out of an abundance of caution and to show the extent to which the government has presented a one-sided picture, Mr. Jawad briefly

addresses the government's abstention argument by showing that the commission system is not "a court of record [that] provides defendants with a fair, adversary proceeding," *Boumediene*, 128 S. Ct. at 2268, and this Court need not show deference to it.

Mr. Jawad has no forum other than this Court in which to challenge his ongoing and illegal detention, and the delay the government seeks would result in irreparable damage to him. Just last month, an independent psychologist retained by Mr. Jawad's military defense team found that he is severely traumatized and vulnerable to suicidal feelings if his situation does not improve. Any further delay would cause Mr. Jawad's already fragile psychological and emotional health to deteriorate further, with possibly grave consequences. Both law and equity demand that "the costs of delay can no longer be borne by those who are held in custody," *Boumediene*, 128 S. Ct. at 2275, and this Court should deny the government's Motion.

## FACTS AND PROCEDURAL BACKGROUND

Mr. Jawad's detention is not based on any allegation that he is a member of al-Qaeda, the Taliban, or any armed force or militia. The government has not alleged that he engaged in any terrorism-related crime. He is being held in connection with an alleged grenade attack in Kabul, Afghanistan, on December 17, 2002, that resulted in injury to two U.S. service members and their Afghan interpreter. Motion at 5; Amended Petition for Writ of Habeas Corpus, Dkt. No. 154, (Jan. 12, 2009) ("Am. Pet'n") ¶ 19. For the reasons described in greater detail in Mr. Jawad's Amended Petition, and in the words of Mr. Jawad's former military commission prosecutor, who investigated his case for over a year, "there is no credible evidence or legal basis to justify Mr. Jawad's detention in U.S. custody." Am. Pet'n Ex. B, Declaration of Lt. Col. Darrel Vandeveld, dated January 12, 2009 ("Vandeveld Decl.") ¶ 2.

Mr. Jawad has been in U.S. custody since December 17, 2002, and has been held at Guantánamo since February 3, 2003. Am. Pet'n ¶¶ 19, 40. After the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), the government brought Mr. Jawad before a Combatant Status Review Tribunal ("CSRT"), which found him to be an "enemy combatant" for purposes of detention on November 4, 2004. That decision was reaffirmed in two annual Administrative Review Boards ("ARB") held on December 8, 2005, and November 8, 2006, respectively. Am. Pet'n ¶¶ 55-57.

Since the CSRT and ARBs in Mr. Jawad's case were held, the evidence on which they relied—and therefore the basis for Mr. Jawad's detention—has been conclusively undermined and disavowed by the government, largely because it is based on torture, including death threats by Afghan authorities against Mr. Jawad and his family. Am. Pet'n ¶¶ 59-66. In addition, neither the CSRT nor the ARBs considered Mr. Jawad's age—about 16—at the time of the events of which he is accused and at the time the torture-derived and false confessions were obtained.

Mr. Jawad has never been able to present this new information in the administrative review process because the government brought charges against him under the MCA on October 9, 2007. Under Department of Defense regulations, the annual administrative review process is suspended once military commission charges are brought. Am. Pet'n ¶ 65.

The military commission charges against Mr. Jawad were referred for trial on January 30, 2008, and were based on the same flawed evidence upon which the CSRT and ARBs erroneously relied. Am. Pet'n ¶ 66. Mr. Jawad was charged with attempted murder and intentionally causing

serious bodily injury;[1] there is no allegation that he engaged in any kind of terrorism or had any affiliation with any terrorist group.

In September 2008, the military commission prosecutor responsible for Mr. Jawad's case resigned because he did not believe he could ethically prosecute Mr. Jawad, and because the military commission system was so flawed and chaotic that "it was incapable of delivering justice." Vandeveld Decl. ¶¶ 2, 32; Am. Pet'n ¶¶ 72-82. Before he left the commission system, Lt. Col. Vandeveld had tried to persuade his superiors to let him negotiate a plea agreement that would lead to Mr. Jawad's release. Vandeveld Decl. ¶ 27. His superiors refused. *Id.*

On October 28 and November 19, 2008, the military commission judge in Mr. Jawad's case issued orders suppressing Mr. Jawad's alleged confessions to Afghan and U.S. authorities— the evidence upon which the government conceded its case relied—because they were the product of torture. Am. Pet'n ¶ 62. Lacking sufficient non-torture derived evidence to support its case, the government appealed to the Court of Military Commission Review (an appellate body established under the MCA) the military judge's decision suppressing torture-derived confessions allegedly made to U.S. personnel. Proceedings in Mr. Jawad's commission case were stayed pending the outcome of the appeal. Am. Pet'n ¶ 81.

A petition for habeas corpus had been filed on behalf of Mr Jawad on December 13, 2005, Dkt. No. 1, nearly two years before military commission charges were first sworn against him on October 9, 2007, and more than two years before those charges were referred for trial,

---

[1] The government describes the initial charges against Mr. Jawad, Motion at 5, but fails to inform the Court that the military commission judge dismissed the second of the two charges. Excerpt from Military Commission Transcript of Pre-Trial Proceedings, dated June 19, 2008 (military judge dismissing second charge), attached here to as Exhibit A to the Declaration of David J.R. Frakt, dated February 18, 2009, submitted in support of Mr. Jawad's opposition to the government's Motion ("Frakt Declaration"). The copy of the charge sheet attached to the government's Motion as Exhibit A is obsolete, therefore, because it does not show that the second charge was dropped.

thus formally starting the commission proceedings, on January 30, 2008.  For years, Mr. Jawad's

petition languished while the government contested the right of Guantánamo detainees to habeas

review.  By the time the Supreme Court rejected the government's arguments in *Boumediene* in

June 2008, the commission proceeding against him had begun.  Judge Hogan, as the coordinating

judge for all the Guantánamo cases, stayed the government's obligation to respond to Mr.

Jawad's petition until the government had provided factual returns in the cases of detainees who

were not charged before the commissions.  Scheduling Order, Dkt. No. 40 at 4 n.1 (July 11,

2008).

On January 2, 2009 (aware that charges against Mr. Jawad were pending before a military

commission), Judge Hogan ordered the government to file a factual return in Mr. Jawad's case

by February 27, 2009, setting forth the government's asserted basis for detaining him.  Minute

Order (Jan. 2, 2009).

On January 12, 2009, new counsel for Mr. Jawad filed the Amended Petition, detailing

the developments in his case since his original petition was filed in 2005.  That Amended

Petition was served electronically on counsel for the government on January 14, 2009.

On January 16, 2009, the government filed its Motion to dismiss or hold in abeyance, on

the ground that active military commission proceedings were ongoing against Mr. Jawad.

On January 20, 2009, President Barack Obama took office and directed Secretary of

Defense Robert Gates to take steps to stay all military commission proceedings.  That day,

Secretary Gates issued an order directing the military commissions Chief Prosecutor to "petition

the Court of Military Commission Review to hold in abeyance any pending appeals for 120

days."  Memorandum from Secretary of Defense Gates to the Convening Authority for Military

Commissions and the Chief Prosecutor, Office of Military Commissions, dated January 20, 2009,

and attached as Exhibit B to the Frakt Declaration.  The only appeal pending before the Court of

Military Commission Review ("CMCR") was the government's appeal of the military judge's

decision in Mr. Jawad's case to suppress torture-derived confessions allegedly made to U.S.

personnel.

On January 22, 2009, President Obama signed an Executive Order directing the Review

and Disposition of Individuals Detained at the Guantánamo Bay Naval Base and Closure of

Detention Facilities, 74 Fed. Reg. 4897, 4899 (Jan. 22, 2009) (the "Executive Order").  Section

2(c) of the Executive Order recognized that the "individuals currently detained at Guantánamo

have the constitutional privilege of the writ of habeas corpus.  Most of those individuals have

filed petitions for a writ of habeas corpus in Federal court challenging the lawfulness of their

detention."  *Id*.  Section 7 of the Executive Order directed that the

> Secretary of Defense shall immediately take steps sufficient to
> ensure that during the pendency of the Review . . . , all proceedings
> of such military commissions to which charges have been referred
> but in which no judgment has been rendered, and all proceedings
> pending in the United States Court of Military Commission
> Review, are halted.

*Id.*  But the Executive Order contained no instruction to the Attorney General to seek a stay of

habeas proceedings.

On January 23, 2009, the government sought a stay of the CMCR's decision until May

20, 2009.

On January 26, 2009, Mr. Jawad, through his counsel, asked the government to consider

withdrawing the Motion in light of the Executive Order.  On January 27, 2009, counsel for the

government indicated that it was considering how to proceed and that it was not in a position to

withdraw the Motion, but the government offered a two-week continuance of Mr. Jawad's time

to oppose the Motion, while it assessed its position.  Counsel for Mr. Jawad sought the two-week

continuance from the Court, which the Court granted on February 2, 2009.  Minute Order (Feb. 2, 2009).

On February 4, 2009, the CMCR granted the government's motion for a stay of the pending military commission appeal until May 20, 2009, and specifically found that any prejudice to Mr. Jawad from the stay was mitigated by the fact that he could challenge his detention through his habeas petition in this Court.  U.S. Court of Military Commission Review, Order Granting Appellant's Request for Delay, dated Feb. 4, 2009 ("CMCR Order") at 3, attached as Exhibit C to the Frakt Declaration.  The CMCR specifically noted that the government was required to submit a factual return in Mr. Jawad's case by February 27, 2009. *Id.*

In light of the CMCR Order, in which that court made clear that it expects federal habeas proceedings in Mr. Jawad's case to continue, counsel for Mr. Jawad again asked the government to withdraw its Motion.  *See* email exchange between Counsel for Petitioner and Respondents, dated February 9 and 10, 2009 ("Email Exchange"), attached as Exhibit D to the Frakt Declaration.  The government declined.  *Id.*

## ARGUMENT

### I.     STANDARD OF REVIEW.

When addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in Mr. Jawad's Amended Petition, including mixed questions of law and fact, as true, and draw all reasonable inferences in his favor.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969 n.8 (2007); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C.Cir. 2008); *Macharia v. U.S.*, 334 F.3d 61, 64, 67 (D.C.Cir. 2003).

**II. THIS COURT SHOULD ADJUDICATE MR. JAWAD'S HABEAS CASE WITHOUT DELAY BECAUSE THERE IS NO FACTUAL OR LEGAL BASIS TO DISMISS OR STAY PENDING THE OUTCOME OF MILITARY COMMISSION PROCEEDINGS.**

There is no question—and the government does not contest—that this Court has jurisdiction to hear Mr. Jawad's habeas claim, and that Mr. Jawad has a right to have his habeas case adjudicated expeditiously. *See Boumediene*, 128 S. Ct. at 2262, 2275 (holding that Suspension Clause "has full effect at Guantánamo Bay" and that Guantánamo detainees "are entitled to a prompt habeas corpus hearing"). Instead, the government argues that Mr. Jawad's habeas case should be dismissed or stayed pending his trial before a military commission, based entirely on the prudential doctrine of comity. The government's argument fails for three reasons.

First, the entire military commission system has been halted by order of the President and its future is uncertain, at best. There is no military commission proceeding at this time, and this Court owes no deference to a system that has ceased to operate, based on the hypothetical possibility that it may some day resume in some new form. Second, other than habeas review by this Court, Mr. Jawad has no means to challenge his detention. Permitting the delay the government now seeks, after six years of detention and three years after his habeas petition was first filed, would violate Mr. Jawad's habeas rights and exacerbate the serious psychological harm he has already suffered. Third, the doctrine of comity has no force in Mr. Jawad's case because the military commission appeals court itself expects this Court to proceed with habeas review, as does the President in the Executive Order, which explicitly affirms the rights of detainees to pursue habeas relief. Given that both the Court of Military Commission Review and the President's Executive Order contemplate that habeas review will continue, the government's Motion is effectively moot. Dismissal or delay, in these circumstances, would eviscerate the Suspension Clause.

Because the Motion should be denied for the foregoing reasons, this Court need not address the other constitutional issues raised in this case at this time. However, this opposition will briefly address the government's defense of the military commission system in order to show just how misleading the government's portrayal of that system is.

### A. The Principle of Comity Does Not Apply When There Is No System To Which This Court Owes Deference And Mr. Jawad Has No Other Remedy At Law.

### 1. The Military Commissions System Has Been Halted.

The Supreme Court warned in *Boumediene* that courts "may not impose a *de facto* suspension [of habeas] by abstaining" from adjudicating the legality of detentions at Guantánamo, 128 S. Ct. at 2262, but that is exactly what the government would have this Court do, based on the *hypothetical* possibility that commission proceedings may, at some point, be continued in some other form.

The factual predicate for the government's Motion, that proceedings under the military commission system are ongoing against Mr. Jawad, no longer exists. While it may be true in a technical sense that the commission proceedings are "stayed," Attorney General Holder has said that the commissions lack due process protections and will not continue in their present form. During his confirmation hearing on January 15, 2009, Attorney General Holder stated, in a colloquy with Senator Diane Feinstein:

> **I don't think that the military commissions that we now have in place have all of the due process requirements that I would like to see contained in them** . . . In trying to deal with those detainees who we will try, I think we have to examine what tools will be available to us . . . the possibilities exists, I suppose, that we could use military commissions. **But they would have to be, I think, substantially revamped to provide the due process rights that I think are consistent with who we are as Americans**.

*Senate Confirmation Hearing of Eric Holder, Nominee for U.S. Attorney General* (Jan. 15, 2009), *available at* http://www.nytimes.com/2009/01/16/us/politics/16text-holder.html (emphasis added).

Additionally, the Executive Order's halt of the commission system is consistent with President Obama's promise during his campaign that, "As President, I will close Guantánamo, reject the Military Commissions Act, and adhere to the Geneva Conventions." Senator Barack Obama, The War We Need to Win, Remarks at the Woodrow Wilson International Center (August 1, 2007) (*available at* http://www.barackobama.com/2007/08/01/the_war_we_need_to_win.php.)[2] The Executive Order contemplates only three options for Guantánamo detainees: (i) release or transfer; (ii) prosecution in an Article III court; or (iii) unspecified "other disposition." Executive Order, 74 Fed. Reg. 4898-99.[3] Although the actions the government may take in the future with respect to Guantánamo detentions and prosecutions may not be entirely clear at this time, continued prosecution of detainees under the MCA and its current implementing rules does not even appear to be under consideration. Even if the government decides to continue with the commissions in some "revamped" form, it will undoubtedly take a significant period of time to rewrite both the MCA and the commission rules issued pursuant to the MCA, to address the concerns of the new

---

[2] President Obama also voted against the MCA as a Senator and gave a floor speech objecting to its passage. 152 Cong. Rec. S10354-02 (daily ed. Sept. 28, 2006) (Statement of Sen. Obama).

[3] The proceedings in Mr. Jawad's military commission case to date make it clear that release or transfer is the just and correct option here. Mr. Jawad is not a candidate for prosecution in an Article III court because the government has no "credible evidence or legal basis" to justify his detention or prosecution, even under the far more lax jurisdictional, procedural and evidentiary standards of the military commission system. Vandeveld Decl. ¶¶ 2, 32; Am. Pet'n ¶¶ 70(a)-(p), 72-82. For the same reasons, and because Mr. Jawad is not accused of any terrorism-related crime, he is not a candidate for "other disposition," including "revamped" commissions or any kind of system that would permit detention without criminal trial.

administration and to comply with the Constitution and binding international law. If this Court were to grant the government's Motion, Mr. Jawad would be left in indefinite detention without any means of seeking legal review of the basis for that detention.

Thus, the abstention concerns the government raises in its Motion, and the cases to which it cites in support, are no longer applicable because the predicate for abstention—the existence of another adjudicatory system to which federal courts owe deference under the principle of comity—no longer exists. *See* Motion at 2, 8-9, *citing Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) (federal court should abstain when parallel proceeding is held in military court that "is adequate to and responsibly will perform its assigned task"); *Younger v. Harris*, 401 U.S. 37 (1971) (federal court should abstain when parallel proceedings are held in state courts, which are courts of record); *Ex parte Royall*, 117 U.S. 241, 250-51 (1886) (same); *Boumediene*, 128 S. Ct. at 2274 (denying government's request for pre-habeas exhaustion requirement because "[m]ost of these cases [cited by the government] were brought by prisoners in state custody, *e.g., Ex parte Royall*, 117 U.S. 241…, and thus involved federalism concerns that are not relevant here."); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (state court, court of record, had remedies that fully addressed petitioner's claims).[4]

Similarly, the government's citation to the three most recent cases to address the issue of abstention in the context of habeas and the military commission system does not help it because each of those courts predicated its decision on the ongoing existence and presumptive

---

[4] For the same reason, the government's citation to 28 U.S.C. § 2254(b)(1)(A) for the proposition that Mr. Jawad must "exhaust" his remedies in the military commissions process before seeking habeas review, Motion at 8, no longer makes sense. 28 U.S.C. § 2254(b)(1)(A) applies only to exhaustion of state court remedies—remedies available before a court of record with presumptively adequate substantive and procedural due process, unlike the military commissions at issue here, which are not only constitutionally inadequate, but which have been suspended and will not continue in their currently constituted form.

constitutionality of the military commission system. For example, in *Hamdan v. Gates*, the court

refused to engage in the "complexity of the question" of whether the commission system violated

the Suspension Clause, despite noting (i) the system's "curtailment of confrontation rights"; (ii)

its "startling" departure from the standards of civilian courts and courts martial in permitting

evidence obtained through coercion; and, (iii) the fact that the MCA's restriction on the scope of

appellate review by the D.C. Circuit would bar the court "from considering a claim of innocence

based on previously unavailable evidence." 565 F. Supp. 2d 130, 132, 136 (D.D.C. 2008);[5] *see*

*also Khadr v. Bush*, 587 F. Supp. 2d 225, 230 (D.D.C. 2008) (following *Hamdan*, 565 F. Supp.

2d 130, and failing to address *any* flaw in the commission system; holding in abeyance only

those claims that would be raised in imminent commission proceedings); *Al Odah v. Bush*, 2009

WL 22275 (D.D.C 2009) (also following *Hamdan*).

Judge Kollar-Kotelly's decision in *Al Odah* is particularly instructive here. Although

Judge Kollar-Kotelly found that the abstention doctrine applied to stay petitioners' habeas case

while commissions were ongoing, she refused to enter that stay while there was uncertainty

about when and if commission trials would proceed. *Id.* Because charges had not been formally

referred for trial, "[t]he Court finds that it cannot interfere with the findings or rulings of a

military commission that does not, and may never, exist. The Court also finds that it owes no

deference to a system that may never be implicated by the charges against Petitioners." 2009

WL 22275 at *7. Judge Kollar-Kotelly's reasoning is consistent with the Supreme Court's

warning that "[u]nder accepted principles of comity, the court should stay its hand only if the

relief the petitioner seeks . . . would also be available to him with reasonable promptness and

certainty through the machinery of the military judicial system." *Parisi v. Davidson*, 405 U.S.

---

[5] For a brief discussion of the ways in which the military commission system violates
constitutional requirements, *see infra*, Section II.C.

14

34, 41 (1972); *see also Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975).

Similarly, in Mr. Jawad's case, there is no basis for the government's contention, Motion at 17-

19, that habeas proceedings will duplicate, conflict with, or otherwise interfere with commission

proceedings because there are currently no military proceeding to which this Court must defer

and only a hypothetical possibility that there will be any such proceedings at some point.

### 2. Mr. Jawad Has No Other Remedy At Law.

Mr. Jawad has no substitute for habeas corpus, because the government's own actions

have cut off the two other possible avenues for review of his detention on the timely basis that

*Boumediene* requires—the ARB review of the government's CSRT determination, and military

commissions themselves.[6]  The government determined, through a CSRT in November 2004,

that it may detain Mr. Jawad as an "enemy combatant." Am. Pet'n ¶ 57.[7]  The Supreme Court's

concern that there is "considerable risk of error" in the CSRTs' findings of fact, *Boumediene*,

128 S. Ct. at 2270, was borne out by the proceedings in Mr. Jawad's case.  As described in

greater detail in the Amended Petition, the CSRT determination, and subsequent ARB

proceedings affirming the CSRT determination, relied on documents and Mr. Jawad's alleged

confessions (under torture) that have now been proven to be false and that Mr. Jawad was unable

to contest before the CSRT or the ARB. Am. Pet'n ¶¶ 59-66.  Mr. Jawad cannot now present

new, exculpatory information to an ARB because the Pentagon's procedures suspend the ARB

process when a detainee is charged in the military commission system.  Am. Pet'n ¶ 65 (Mr.

Jawad was denied his 2007 and 2008 ARBs).  And, of course, Mr. Jawad cannot challenge his

---

[6] Mr. Jawad does not concede that the ARB or the military commission would be adequate substitutes for habeas, but whether they would or would not be, they are not presently available to him.

[7] Notably, Mr. Jawad has never been determined to be an "*unlawful* enemy combatant," as required for prosecution in the military commission system.  10 U.S.C. § 948d(a).

detention through even the deeply-flawed military commission, because that has been halted at the government's request.  Habeas review in this Court is Mr. Jawad's only remaining option to challenge his detention.

Even if the commissions are "revamped," it is entirely unclear when that process will take place, whether the revamped system will be constitutionally adequate, and whether any such revamped procedure will in fact be used to prosecute Mr. Jawad.  To require Mr. Jawad to wait for an indeterminate process that has not yet been established "would be to require additional months, if not years, of delay," *Boumediene*, 128 S. Ct. at 2275, which the Supreme Court has rejected.[8]

The writ of habeas corpus is "a right of first importance," *Boumediene*, 128 S. Ct. at 2277, and this Court should not permit it to be undermined.  Given that Mr. Jawad was wrongly subjected, Vandeveld Decl. ¶ 2, to a military commission system that has now been suspended, it would be perverse and unjust to further penalize him by additional delay in review of his habeas

---

[8] Mr. Jawad's counsel have twice asked the government to withdraw the Motion.  The government's lawyers have refused.  As the basis for their refusal, counsel for the government cite "the process of assessing how it should proceed in these cases."  Email Exchange, Frakt Decl. Ex. D.  But that is not the basis for the government's Motion before this Court, and the government has not moved to modify the Motion.  The Court should not entertain this post-hoc justification if it is raised by the government.  *Cf. Goldring v. District of Columbia*, 416 F.3d 70, 77 n.4 (D.C.Cir. 2005) (argument raised for first time in reply brief is untimely (citation omitted)); *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (same).  In any event, there is no justification for additional delay.  While the new administration may have the best intentions in reviewing Guantanamo detentions and seeking to avoid the many and grievous mistakes of its predecessor, the law applicable to the government's alleged basis for Mr. Jawad's detention has not changed, nor have the facts in his case.  There is no other historical context of which counsel are aware in which the executive branch took upon itself—and asked the judiciary to approve—the authority to declare a constitutional "time out" to decide how the executive wished to proceed, whether with a civilian criminal trial, a military trial or some unspecified third option, while it continued to detain prisoners.  To permit this kind of delay would, effectively, permit the government to detain by fiat, not by law, and thus evade the Suspension Clause.

case.  The cases of other detainees are moving forward and the judges hearing those cases are refusing to grant the government's requests for delay.[9]  This Court should do the same.

**B.      The Principle of Comity Does Not Apply When The Military Commission Appeals Court Itself Expects This Court to Hear Mr. Jawad's Habeas Case And The President's Order Contemplates That Habeas Cases Will Proceed.**

Any doubt that this Court should deny the government's Motion is laid to rest by the military commission system's own appellate court, the CMCR, which has *invited* this Court to hear Mr. Jawad's habeas petition.  The prudential and comity-based grounds for the government's Motion cannot apply when the system to which the government argues this Court owes deference itself expects the Court to proceed with habeas review.

In response to the government's request for a stay in Mr. Jawad's military commission proceeding, the CMCR expressed concern about the prejudice to Mr. Jawad of extending the already "excessive period" of his six-year-long detention.  CMCR Order, Frakt Decl. Ex. C at 3. It specifically found that this prejudice was mitigated by the fact that Mr. Jawad "has the right to petition for a writ of habeas corpus [and] his status and the conditions of his confinement are subject to challenge in the federal district courts quite apart from whether this Court issues, or stays, its decision in the pending interlocutory appeal."  *Id*.  Significantly, the CMCR found that Mr. Jawad's detention was related not just to the charges brought against him in the military commission system, but "rather, it is the result of his classification as an enemy combatant, and the administrative determination that his continued detention is in the interest of national

---

[9] *See, e.g.*, *Khan v. Obama*, Civil Action No. 06-1690 (D.D.C. Feb 11, 2009) (Minute Order) ("Respondents are granted a final extension, until February 27, 2009, to file a factual return for Petitioner."); *Mohamed v. Gates*, Civil Action No. 08-1789 (D.D.C. Feb. 4, 2009) (Minute Order); *Abdulmalik v. Bush*, Civil Action No. 08-1440 (D.D.C. Feb. 4, 2009) (Minute Order) and 08-1789 (Feb 4, 2009) ("Respondents are granted a final extension of time, until February 27, 2009, to file factual returns for both Petitioners," who are among the very last detainees to have been brought to Guantanamo).

security." *Id.*[10]   The CMCR thus recognized the right of Mr. Jawad to challenge the basis for his

ongoing detention through habeas corpus even if military commission proceedings (in whatever

form) might be contemplated at some point in the future.[11]   That same recognition of the right to

habeas is reflected in the President's Executive Order, which recognized that detainees at

Guantánamo have "the constitutional privilege" of habeas and that most Guantánamo detainees

have filed habeas petitions challenging detention).  Executive Order, 74 Fed. Reg. 4897.

Notably, while the Executive Order explicitly orders the Secretary of Defense to seek a halt to

commission proceedings, it says nothing about any stay of, or other delay in, habeas proceedings.

*Id.*

In its decision, the CMCR also cited to Judge Hogan's Order requiring the government to

submit a factual return in Mr. Jawad's case by February 27, 2009, as a basis for its holding that a

military commission stay would not prejudice Mr. Jawad.  CMCR Order, Frakt Decl. Ex. C at 3

n.2.  The government claims repeatedly, but without any explanation, Motion at 3 and 19, that its

obligation to provide a factual return by February 27 presents a burden.  There is no basis for

such a claim in this case.  The records of the CSRT and ARBs that are the basis for Mr. Jawad's

ongoing detention show that the government is relying on the same evidence and facts to justify

detention as it used to support the military commission charges, Am. Pet'n ¶¶ 57-62; those facts

must, therefore, be gathered by now.  The government has also been preparing Mr. Jawad's case

---

[10] Of course, as discussed above, *infra* at 2, the government has itself foreclosed Mr. Jawad's
ability to challenge the CSRT and ARB determinations to which the CMCR refers, and the only
means for him now to challenge those determinations is through habeas review by this Court.

[11] Military defense counsel for Mr. Jawad informed the CMCR that the government had filed the
Motion to dismiss or hold Mr. Jawad's habeas case in abeyance.  Frakt Decl. ¶ 3.  Thus, in
stating that Mr. Jawad's status was "subject to challenge in the federal district courts," CMCR
Order, Frakt Decl. Ex. C at 3, the CMCR must have assumed that this Court would deny the
government's Motion.

for trial for nearly two years.  Vandeveld Decl. ¶ 3.  In the context of the military commission case, the government has provided defense counsel with over 9,000 pages of documents; it claims that it has met all its discovery obligations and that there are no more records it is required to produce.  Frakt Decl. ¶ 2.  If the government has a justification for its ongoing detention of Mr. Jawad, all the materials it would need to gather and produce in support of such a justification must have been assembled by now.  The government does not have an onerous burden and, in any case, the issue of burden goes only to the timing of the government's obligation to provide a return and does not constitute a basis for dismissal or stay of Mr. Jawad's entire habeas case.

Given that (i) the CMCR itself expects this Court to hear Mr. Jawad's habeas challenge; (ii) the CMCR also expects the government to comply with the deadline for the production of a factual return in this case; and (iii) the President's Executive Order contemplates habeas proceedings will continue, the principle of comity provides no support for any further delay in this proceeding and the government's Motion is effectively moot.

### C.    The Court Need Not Consider the Merits of the Military Commission System At This Time And, In Any Event, The Government's Defense Of The System Is Flawed.

For the reasons set forth in his Amended Petition, Mr. Jawad's case is no ordinary one, and this Court cannot assume that the military commissions are fair and constitutional.  The government does not respond to the Amended Petition's specific allegations and has instead reproduced in its Motion boilerplate assertions about the fairness of the MCA.  Motion at 4-5.  Because the government has not responded to the specifics of the Amended Petition and, more importantly, because the commission system has been halted and there is no reasonable prospect that it will resume in its current form as constituted under the MCA, if at all,[12] the Court need

---

[12] *See supra* Section II.A.

not at this time consider the constitutional merits of that system and likely will never need to do so. This Court should not adjudicate constitutional claims that may never arise, *Hamdan*, 565 F.Supp.2d at 136. Both the President's instruction to halt the commission system and Attorney General Holder's statement that the commissions do not provide sufficient due process show that the current administration recognizes the many failures of the system. While counsel for Mr. Jawad do not expect the current Department of Justice to continue to defend a system the President has halted, out of an abundance of caution we address briefly some of the government's arguments in favor of the commissions. Should the commissions be reinstated in another form and should Mr. Jawad then be subjected to their jurisdiction, we respectfully reserve the right to address the constitutionality of the commission system in detail.

The government cites to *Boumediene* in support of its argument for abstention, stating that exhaustion of alternative remedies is required if defendants are afforded "a fair, adversary proceeding," Motion at 8, but this citation is misleading because the government omits the Supreme Court's critical caveat that exhaustion is only justified when "*it can be assumed that, in the usual course*, a court of record provides defendants with a fair, adversary prodeecing" 128 S. Ct. at 2268 (emphasis added). No such assumption is valid here.

The government urges this Court to accept that the commission process is an adequate remedy at law for three reasons, each of which fails. First, the government recites a stock list of purported procedural protections, Motion at 12-13, but utterly fails to acknowledge the multiple flaws laid out in the Amended Petition and the ways in which the so-called protections deviate from constitutional requirements. Am. Pet'n ¶ 70 (a)-(p) (listing jurisdictional, procedural and evidentiary defects in the MCA that violate, *inter alia*, the Due Process, Confrontation and *Ex Post Facto* Clauses, and the Geneva Conventions); *see also* David J.R. Frakt, *An Indelicate*

*Imbalance: A Critical Comparison of the Rules and Procedures for Military Commissions and Courts-Martial,* 34 Am. J. Crim L. 315 (2008), attached as Exhibit F to the Frakt Declaration. For example, the MCA permits prosecution for offenses that were created after the time they were allegedly committed, in violation of the *Ex Post Facto* Clause of the Constitution. Thus, Mr. Jawad is being prosecuted for "attempted murder in violation of the laws of war" which is not, in fact, a crime under the law of war, and never existed before the passage of the MCA in 2006, well after Mr. Jawad's alleged offenses took place.

Second, the government touts the MCA for providing post-conviction review by the D.C. Circuit, Motion at 8 and 12, but fails to acknowledge that the MCA specifically restricts the scope of the Circuit Court's appellate review to issues of law and to whether the final decision accords with the provisions of the MCA. 10 U.S.C. § 950g(b)-(c). Civilian appellate review of issues of fact is prohibited, as is review of collateral trial orders not included in the "final decision" by the military commission. 10 U.S.C. § 950g(c). Such a limited scope of appellate review, available only after conviction, is no substitute for habeas review. *Boumediene*, 128 S. Ct. at 2266 (habeas review gives a petitioner the "meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law.") (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)).

Third, the government argues that this Court may not presume that another government tribunal will not apply the law, Motion at 12-13, but fails to acknowledge that military commission judges are bound by the MCA to apply statutory provisions that violate the Constitution and treaties of the United States. *See, e.g.*, 10 U.S.C. § 948r(c)-(d) (provision specifically allows commissions to rely on evidence produced through cruel, inhuman and

degrading treatment, and permits evidence derived from statements obtained through torture, in

violation of the Fifth Amendment).[13]

Nowhere in its Motion does the government address any of the flaws identified by Lt.

Col. Vandeveld, who worked within the military commission system for a year, preparing the

government's case against Mr. Jawad. The government has no answer to Lt. Col. Vandeveld's

painstaking description of his discovery that the government's evidence against Mohammed was

obtained through torture or coercion, Vandeveld Decl. ¶¶ 2, 18, 23, 24, 25, or otherwise not

credible. *Id.* ¶ 21. Nor does the government respond to Lt. Col. Vandeveld's devastating

criticism that that the commissions' entire system for gathering, maintaining and producing

evidence was in such chaos that physical evidence disappeared, *id.* ¶¶ 8, 20, and even

exculpatory evidence was only located by "sheer happenstance." *Id.* ¶ 25. And the government

has no answer to Lt. Col. Vandeveld's conclusion that the system's chaos "make[s] it impossible

for anyone involved (the prosecutors) or caught up (the detainees) in the Commissions to harbor

even the remotest hope that justice is an achievable goal." *Id.* ¶ 29.

The Supreme Court has directly addressed the kind of prudential delay the government

seeks here, and denied it. *See Boumediene*, 128 S. Ct. at 2274. In *Boumediene*, the government

similarly argued that the Court should refrain from hearing the petitioners' challenges to their

detention on equitable grounds, and that petitioners were required to "exhaust" all statutory

---

[13] The previous administration also asserted the right to continue to detain any Guantanamo
detainee regardless of the outcome of a military commission trial. Am. Pet'n. ¶ 71; *see also
Hamdan v. Rumsfeld*, 548 U.S. 557, 646 (Kennedy, J., concurring) ("[R]egardless of the outcome
of the criminal proceedings at issue, the government claims authority to continue to detain
[petitioner] based on his status as an enemy combatant"). It is unclear whether this
administration will take the same position with respect to military commissions or any other trial
system, but if it does, that position would be an independent equitable basis for a determination
that the commissions are an inadequate substitute for federal *habeas* review. *Wilwording v.
Swenson*, 404 U.S. 249, 250 (1971) (petitioner not required to exhaust a remedy that does not
vindicate the asserted right).

review procedures before asserting their habeas claims. The Court rejected the government's argument and determined that the case for "temporary abstention or exhaustion of alternative remedies" does not apply when (as here), "six years have elapsed without the judicial oversight that habeas corpus or an adequate substitute demands." 128 S. Ct. at 2275 (holding that petitioners were not required to exhaust the review procedures under the Detainee Treatment Act before proceeding with their habeas actions). The government's halt of the commissions as constituted under the MCA makes clear that the commissions are not an adequate substitute for habeas and so there should be no more delay in Mr. Jawad's habeas proceeding, just as there was no justification for further delay in the *Boumediene* habeas proceedings.

Finally, the government's abstention argument does not apply because Mr. Jawad has challenged the jurisdiction of the commission to try him at all. Mr. Jawad has raised detailed and "substantial arguments," *Hamdan*, 548 U.S. 557, that there is no evidence to detain or prosecute him *whatsoever*, that he is a civilian and was a juvenile who should not be subjected to military tribunals, and that the military commission system is so deeply flawed that it is incapable of delivering justice. *See generally* Vandeveld Decl. As the Supreme Court stated almost three years ago, "we do not apply *Councilman* abstention when there is a substantial question whether a military tribunal has personal jurisdiction over the defendant. *Hamdan*, 548 U.S. at 586; *see also id*. at 589 ("Hamdan and the Government both have a compelling interest in knowing in advance whether Hamdan may be tried by a military commission that arguably is without any basis in law. . . ."); *In re Yamashita*, 327 U.S. 1, 8 (1946) (recognizing that pre-trial habeas is available to test "the lawful power of the commission to try the petitioner for the offense charged."); *See also, e.g.*, *Reid v. Covert*, 354 U.S. 1 (1957) (reviewing grant of habeas to civilian petitioner challenging jurisdiction of military court); *U.S. ex rel. Toth v. Quarles*, 350

U.S. 11 (1955) (same, with respect to former service member); *Ex parte Quirin*, 317 U.S. 1 (1942) (reviewing habeas petitions challenging trial by military commission).

The primary case on which the government relies, *Councilman*, in fact supports Mr. Jawad's position. The Supreme Court in *Councilman* specifically referred to *Quirin*, *Reid*, and *Toth* as raising claims that are directly analogous to the claims Mr. Jawad raises: "the disruption caused to petitioners' civilian lives and the accompanying deprivation of liberty made it especially unfair to require exhaustion when the complainants raised substantial arguments denying the right of the military to try them at all." 420 U.S. at 759 (internal quotations and alteration omitted)). *Councilman* itself permits the challenges Mr. Jawad would raise were the commissions to proceed in a form similar to the one that currently exists.

## III.   MR JAWAD WILL SUFFER IRREPARABLE INJURY IF THIS COURT STAYS HIS HABEAS PETITION.

The government's argument that Mr. Jawad will not face irreparable harm if his right to habeas review is delayed ignores the consequences of the government's own conduct. It is the government that has subjected Mr. Jawad to prolonged detention and repeated acts of cruelty and abuse. It is the government that first subjected Mr. Jawad to trial and now seeks to hold him, for a potentially indefinite period, while it decides whether to set him free, whether to prosecute him under some other system, or whether to pursue some third, unspecified option. And it is the government in whose custody Mr. Jawad has suffered and continues to suffer severe psychological harm. Any further delay in this habeas case will cause grave, irreparable injury to Mr. Jawad.

At the request of Mr. Jawad's military defense counsel, Dr. Katherine Porterfield, the Senior Psychologist at the Bellevue/NYU Program for Survivors of Torture, recently evaluated Mr. Jawad. In a declaration filed last month in Mr. Jawad's military commission proceedings

(before those proceedings were stayed at the government's request), Dr. Porterfield diagnosed Mr. Jawad with Posttraumatic Stress Disorder ("PTSD") and Major Depression. Declaration of Dr. Katherine Porterfield, dated January 26, 2009 ("Porterfield Decl."), attached as Exhibit E to the Frakt Declaration at 2. She found that Mr. Jawad is a young man "in severe psychological and emotional distress" who has "feelings of fearfulness and insecurity, as well as . . . depression and loneliness." *Id*. at 5-6. It is her opinion that Mr. Jawad's PTSD is due to "the torture, cruelty and abuse" he has suffered in detention. *Id*. at 4. She describes recent meetings with Mr. Jawad in which he "would hold his head and rock when describing events in his past." *Id*. Mr. Jawad's symptoms have been exacerbated by the conditions in which he is held. Although he was a teenager when he was captured by U.S. personnel, Mr. Jawad has always been housed in adult facilities, where he has been subjected to extreme isolation, extremes of temperature and noise, unhygienic conditions and the deep uncertainty that comes with the lack of clarity about rules and expectations. *Id*. at 2-4. These conditions have exacerbated the fragility of his psychological and emotional state.

Mr. Jawad has already attempted suicide once. According to Dr. Porterfield, he is still "emotionally vulnerable to feelings of suicidality if his situation does not improve in some way." Porterfield Decl., Frakt Decl. Ex. E at 6. It is only through this Court that Mr. Jawad has any possibility of independent judicial review of the basis for his detention. Should that review be delayed as the government requests, the consequences for Mr. Jawad's psychological and emotional health could be grave.

Last summer, the Supreme Court issued an order in no uncertain terms: detainees at Guantánamo are entitled to prompt review of the basis for their detention. *Boumediene*, 128 S. Ct. at 1275. Mr. Jawad's habeas case should be no different and it is one in which issuance of

the Writ is required.  He is a young man, captured as a child, who was tortured and abused by adults, both Afghan and U.S. government agents, who should have been responsible for his welfare.  He was then subjected to trial in a commission system so unfair that his prosecutor left in disgust, knowing that Mr. Jawad shouldn't be detained or tried, but unable to secure his release.  Now that system has been halted indefinitely while the government attempts to determine how to proceed.  In the meantime, Mr. Jawad's habeas petition has been pending since December 13, 2005, and the government has sought since then, at all turns, to deny him the relief to which he is entitled, or even to provide a factual explanation for his detention.  Any further delay will only exacerbate the deep damage that Mr. Jawad has already suffered.  He has spent a third of his life at Guantánamo and his only hope for a prompt and fair process to secure his release now lies with this Court.

## CONCLUSION

For the foregoing reasons, Mr. Jawad respectfully urges this Court to deny the government's Motion to dismiss his petition or hold it in abeyance.


Dated:  February 18, 2009

Respectfully submitted,

 _/s/ Hina Shamsi_____

Hina Shamsi (admitted *pro hac vice*)
Jonathan L. Hafetz (admitted *pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone:  (212) 519-7886
Fax:  (212) 549-2583
hshamsi@aclu.org

Major David J.R. Frakt (admitted *pro hac vice*)
Office of Military Commissions
Office of the Chief Defense Counsel
Franklin Court Building, Suite 2000D
1099 14th Street, N.W., Suite 119
Washington, D.C. 20005
Phone: (202) 761-0133, ext. 106
Fax: (202) 761-0510
fraktd@dodgc.osd.mil


 _/s/ Arthur B. Spitzer_____


Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
Phone: (202) 457-0800
Fax: (202) 452-1868
artspitzer@aol.com

*Counsel for Petitioner Mohammed Jawad*