UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>GUANTANAMO BAY<br>DETAINEE LITIGATION | Misc. No. 08-442 (TFH) |
| AL HALMANDY, *et al.*,<br><br>    Petitioners,<br><br>     v.<br><br>OBAMA, *et al.*,<br><br>    Respondents. | No. 05-cv-2385 (RMU) |

**PETITIONER KAMEEN'S OPPOSITION TO RESPONDENTS MOTION TO DISMISS HABEAS PETITION WITHOUT PREJUDICE OR, ALTERNATIVELY, HOLD PETITION IN ABEYANCE PENDING COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

**Introduction**

   Petitioner Mohammed Kameen (ISN 1045)("Petitioner"), by and through his undersigned counsel, respectfully submits this opposition to the government's motion to dismiss or, alternately, hold in abeyance his habeas claims. *See* Respondents' Motion to Dismiss Habeas Petitions without Prejudice or, Alternatively, to Hold Petitions in Abeyance pending Completion of Military Commission Proceedings, Dkt. 160 (Jan. 16, 2009) ("Motion"). The government filed its Motion on January 16, the last business day of the former administration, arguing that the pendency of military commission proceedings against Petitioner dictated that this Court abstain from hearing his habeas claims. Shortly afterwards, President Obama was inaugurated and issued

Dockets.Justia.com

an Executive Order instructing the Secretary of Defense to seek an immediate halt to all military commission proceedings.[1] The prosecutors sought an 120 day continuance and the military judge has now suspended proceedings in Petitioner's military commission.

Respondents' motion should be denied. The caselaw disfavors abstention where the parallel process in favor of which a federal court is asked to abstain is fraught with delay, or where delays have beset the plaintiff's claims in the federal forum. Here, both factors are present: Petitioner's military commission has ceased to operate, and his habeas petition has been awaiting a factual return for several years. Moreover, Petitioner's primary claim—that he is entitled to his release—is not clearly available in the military commission process. (Secondary claims, such as challenges to his conditions of confinement under the Geneva Conventions, are foreclosed in that forum as well.) *Councilman* abstention is clearly inappropriate under these circumstances. Respondents' fallback argument—that any progress of the habeas proceeding carries the potential for interference with discovery in any subsequent trial for Petitioner—is implausible on the facts and unsupported by the caselaw. In any event, neither argument is sufficient to excuse Respondents from producing Petitioner's factual return, which is currently due on February 27 and should not be delayed by this Court.

## I.    The Government Has Not Demonstrated That Producing a Factual Return Presents an Undue Burden, and This Is the Wrong Forum in Which to Do So

The government's Motion is in the first instance a motion for reconsideration of Judge Hogan's order that Respondents produce factual returns in every habeas case brought by a military commission defendant by February 27, *see* Minute Order (Jan. 2, 2009), with the distinction that the motion to reconsider has been made before the Merits Judge instead of Judge

---

[1]    See Section 7, *Review and Disposition of Individuals Detained At the Guantanamo Bay Naval Base and Closure of Detention Facilities*, 74 Fed. Reg. 4897, 4899 (Jan. 22, 2009).

Hogan. February 27 has already been deemed the "final" due date for other cases where the government has long sought repeated delays of its deadline for filing factual returns.[2] In support of its request to delay indefinitely the production of a return, the government makes repeated reference to the burden on its resources the production of returns in this handful of cases would pose. *See, e.g.*, Motion at 3 ("given the volume of Guantanamo habeas cases pending in the District Court, judicial and party resources would be far better spent addressing the cases of petitioners who have not been criminally charged"); *id.* at 19 ("Court should focus its resources, and enable the parties to focus theirs, on the other habeas cases"). Resource burdens are issues relevant not to abstention or outright dismissal of this action but to the timing of the factual returns in these cases. Issues concerning the timing of factual returns in all cases subject to the coordination order[3] have since the *Boumediene* decision been decided exclusively by the coordinating Judge for the Guantanamo cases, Judge Hogan, who is the Judge in the best position to evaluate the overall burden posed by these cases on the government, and who has already decided that further extensions beyond February 27 are unwarranted in a number of cases, including the cases of former CIA detainees[4] and the cases of individuals transferred to Guantanamo in 2007.[5]

---

[2]     *See, e.g.*, Minute Order, *Khan v. Obama*, Civil Action No. 06-1690 (Feb. 11, 2009) ("Respondents are granted a final extension, until February 27, 2009, to file a factual return for Petitioner," a former CIA detainee)).

[3]     *See* Resolution of the Executive Session, United States District Court for the District of Columbia (Jul. 1, 2008).

[4]     *See supra* note 2.

[5]     *See, e.g.*, Minute Order, *Mohamed v. Gates*, *Abdulmalik v. Bush*, Civil Actions No. 08-1440 and 08-1789 (Feb 4, 2009) ("Respondents are granted a final extension of time, until February 27, 2009, to file factual returns for both Petitioners," who are among the very last detainees to have been brought to Guantanamo).

Petitioner Kameen presents none of the complexities the government claims are presented by other cases where factual returns have been extensively delayed. The government presumably has already had time to prepare extensive factual materials in relation to its decision to charge Kameen. There is no justification for further delay based on the burden production of a return would pose for the government.

## II.    Petitioner Lacks an Active Alternative Forum for Relief

Since the filing of the government's Motion, the prosecution in Petitioner Kameen's military commission case has moved to continue further proceedings before the commission until May 20, 2009, and the military commission judge has granted that request as to Petitioner's pending proceeding. *See* Commission Ruling on Government Motion for 120 Day Continuance (Feb. 9, 2009) ("the interests of justice [in the stay] outweigh the interests of the public and the accused in a prompt trial.") (hereinafter "Commission Order," attached as Exhibit A). Meanwhile, the President has repeatedly indicated his intention to permanently shut down the system of military commissions established by the MCA (and in fact did so on the day Respondents filed their Motion).[6] This suspension of military proceedings is fatal to Respondents' arguments for *Councilman* abstention.

---

[6]    *Pragmatist-in-Chief*, Wash. Post., Jan. 16, 2009, at A18 (interview with *Washington Post* editorial board) ("I am confident that we can set up a structure [to try terrorism suspects.] I haven't prejudged whether it's through a traditional federal court system, is it through military courts-martial, is it through some variant."); Statement of Senator Obama (Feb. 11, 2008) ("These trials will need to be above reproach… These trials are too important to be held in a flawed military commission system…."); *Remarks of Senator Barack Obama: The War We Need to Win*, Aug. 1, 2007, *available at* http://www.barackobama.com/2007/08/01/ the_war_we_need_to_win.php ("As President, I will close Guantanamo, reject the Military Commissions Act, and adhere to the Geneva Conventions. Our Constitution and our Uniform Code of Military Justice provide a framework for dealing with the terrorists.").

The cases standing for the general principle of abstention in the face of active military proceedings all turn on comity, not exhaustion; they are, in other words, prudential and not jurisdictional. As the Supreme Court stated in *Parisi v. Davidson*, "[u]nder accepted principles of comity, [a federal] court should stay its hand only if the relief the petitioner seeks… would also be available to him *with reasonable promptness and certainty* through the machinery of the military judicial system." 405 U.S. 34, 41-42 (1972) (emphasis added). The notion that federal courts should not abstain from hearing claims of a plaintiff who faces delays in a potential alternative forum runs throughout the *Younger* abstention caselaw as well. In those cases, where federal courts are asked to abstain from hearing claims that may be litigated in state criminal courts, the Supreme Court has repeatedly cautioned that federal abstention would not be required "where the litigation had already been long delayed." *See Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975) (quoting *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 329 (1964)).

The same basic equitable principle makes abstention inappropriate here.[7] Petitioner has been detained for nearly six years and his challenge to his detention in habeas has been pending for over three years. He now faces another lengthy delay in his military commission, in circumstances which make it quite likely that his commission will never go forward. Under similar circumstances, federal courts have declined to abstain from resolving issues that are also pending in delayed state proceedings. *See Hostetter, supra*; *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 490-91 (6th Cir. 2001) (*Pullman* abstention improper where "case [had]

---

[7]     *See Trainor v. Hernandez*, 431 U.S. 434, 470 (1977) (Stevens, J., dissenting) ("There should be no abstention unless the state procedure affords a plain, speedy, and efficient remedy for the federal wrong; indeed, the opinion in *Younger* in basing its decision on basic equity principles acknowledges this as the fundamental requirement in application of the abstention doctrine.")

remained under advisement in the state court for ... three and a half years"); *Medical Malpractice Joint Underwriting Assoc. v. Pfeiffer*, 832 F.2d 240, 243 n.4 (1st Cir. 1987) (abstention improperly applied by district court where it had "le[ft] the parties where they started nine months previously").[8] That is consistent with the Supreme Court's conclusion in *Boumediene* that, because these cases "do not involve detainees who have been held for a short period of time while awaiting their CSRT determinations," petitioners would not be required, after years in detention, to exhaust the available appeal process under the DTA, but instead were entitled to a "rigorous adversarial process to test the legality of [their] detention" in the form of "a prompt habeas corpus hearing." 128 S. Ct. at 2275, 2260, 2275.[9]

The motion filed by the government on January 16th was predicated on the existence of an *active* military commission process in which petitioner would have the opportunity to seek meaningful relief. Indeed, the government recites a long panoply of procedural protections in support of its motion, all but one of which are now unavailable to Petitioner before his commission:

> Both petitioners [Kameen and Jawad] now face trial by a military commission; a trial convened pursuant to an Act of Congress in which petitioners will be guaranteed an impartial judge and jury, 10 U.S.C. § 949f, the presumption of innocence until proven guilty beyond a reasonable doubt, 10 U.S.C. § 949l, the assistance of defense counsel, 10 U.S.C. § 949c, the right to be present, 10 U.S.C. 949d(b), the right to discovery (including the right to exculpatory evidence), 10

---

[8]    *See also ABC v. Blackwell*, 479 F. Supp. 2d 719, 732 (S.D. Ohio 2006) (plaintiffs are entitled to a final decision in light of equities implicated by two year delay); *Corporacion Insular de Seguros v. Garcia*, 680 F. Supp. 476, 479 (D.P.R. 1988) ("Abstention, in any event, should not be required where a case has already been long delayed."); *Buxton v. Lovell*, 559 F. Supp. 979, 986 (S.D. Ind. 1983) ("arguments for abstention are not strong, especially since the litigation has already been long delayed." (citing *Hostetter*)).

[9]    Notably the opinion did leave room for abstention in the limited circumstance where the executive had not "had a chance to review [a detainee's] status"—but qualified even that permission with an exception along the lines outlined above: "[e]xcept in cases of undue delay." *Boumediene*, 128 S. Ct. at 2276.

U.S.C. § 949j, the right to take depositions, *id*., the right to call witnesses, *id*., and a full panoply of other substantive and procedural rights that are carefully described in the MCA. Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, *see* 10 U.S.C. § 948a(1), a determination made in the context of the commission's robust, adversarial proceedings. If petitioners are ultimately convicted, they may seek review in the Court of Appeals for the District of Columbia Circuit, as a matter of right, of the legal and factual bases for the initial unlawful enemy combatancy determination, and for the conviction itself.

Motion at 1-2. All of this leads the government to the conclusion that the Court "should dismiss [Petitioners'] respective habeas petitions without prejudice or hold them in abeyance *pending the completion* of military commission proceedings," in order to "prevent interference with the autonomous military commission" and economize on the resources of the Court and parties. *Id*. (emphasis added). Even if such protections were adequate (which they are not), and even if they allowed for the release of detainees who are acquitted or who serve their sentences (which the government claims they do not), they are no longer currently available to Petitioner Kameen. Other than discovery, which the Commission Order (¶4) keeps open during the pendency of the continuance, there is no reliable prospect of further proceedings which this Court should await the "completion" of, and no proceedings to be "interfered with."[10]

---

[10]     Given that the Executive has ordered a halt to the commissions process, the Court need not consider whether that system meets constitutional muster at this time. Petitioner reserves the right to brief in detail the adequacy and constitutionality of the military commission system should those issues become relevant. *Cf. Hamdan v. Gates*, 565 F. Supp. 2d 130, 132, 136 (D.D.C. 2008) (noting system's "curtailment of confrontation rights," "startling" departure from norms of established courts in allowing admission of evidence derived from coercion, and barring consideration of newly discovered evidence of innocence on appeal).

    At this point it is sufficient to note that Petitioner's military commission had not even made the initial determination that Petitioner was an "alien unlawful enemy combatant" subject to the jurisdiction of a military commission under the MCA. *See* MCA § 948c (limiting jurisdiction to "alien unlawful enemy combatant"). As a result there is uncertainty as to whether Petitioner is legitimately subject to trial by military commission, and, as the Supreme Court has recently stated, "we do not apply *Councilman* abstention when there is a substantial question whether a military tribunal has personal jurisdiction over the defendant." *Hamdan v. Rumsfeld*, 548 U.S. 557, 586 (2006).

## III. The Parallel Process on Which Abstention Is Predicated Does Not Offer the Possibility of Release

The government's list of procedural protections available in the commissions process neglects to mention the most vital substantive protection missing from that system—the power to order release. The core remedy sought in habeas—release—is not available in the MC process. The government has consistently asserted that it has the right to continue to detain any Guantanamo detainee regardless of the outcome of a military commission proceeding against that detainee. *See, e.g., Hamdan v. Rumsfeld*, 548 U.S. 557, 787 (2006) (Kennedy, J., concurring) ("[R]egardless of the outcome of the criminal proceedings at issue, the government claims authority to continue to detain [the petitioner] based on his status as an enemy combatant"); *cf.* Josh White, *Detainee May Not Go Free after Sentence: U.S. Might Still Hold Hamdan as Combatant*, Wash. Post, Aug. 10, 2008.

The vast majority of the abstention cases cited by the government in its Motion involve challenges to criminal proceedings in which the defendant had a right to due process through a speedy and public trial, in which an acquittal would result in the defendant's release. That is to say, the petitioners were confined *because* they were charged or convicted of crimes, and the criminal or appellate courts offered prompt and effective remedies for the petitioners to raise their claims and gain their freedom. There was therefore no need in those cases for pre-exhaustion habeas corpus, because the petitioners had another avenue through which they could argue for a result which would require them to be released. The military commissions do not offer such an avenue, and therefore need not be "exhausted" before a person held as an alleged enemy combatant can pursue habeas relief. *See Parisi v. Davidson*, 405 U.S. 34 (1972) (overturning stay of civil case that sought discharge from military on basis of newly-asserted

conscientious objector status, on ground that asserting conscientious objector claim as a defense in pending court martial for refusal to report to Vietnam could only result in acquittal, not discharge from military); *Apple v. Greer*, 554 F.2d 105, 109 (3d Cir. 1977) ("The dispositive element in *Parisi*, as the Supreme Court viewed it, was the fact that Parisi could not obtain the relief he sought—discharge from the Army—within the military justice system.").

A habeas petitioner has no obligation to exhaust a remedy that is not adequate to vindicate the asserted right. *See, e.g., Wilwording v. Swenson*, 404 U.S. 249, 250 (1971). There is no obligation for Petitioners to exhaust their supposed remedies before a military commission when those remedies will not enable them to challenge their detentions. Indeed, the Supreme Court in *Boumediene* has already excused Petitioners from exhausting alternative remedies before pursuing their habeas petitions. *See Boumediene*, 128 S. Ct. at 2275 ("To require these detainees to complete DTA review before proceeding with their habeas corpus actions would be to require additional months, if not years, of delay. … While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody"); *Reed v. Middendorf*, 383 F. Supp. 488, 490 (C.D. Cal. 1974) (deciding merits in habeas because "the futility exception should be applied here, and military remedies need not be exhausted"). Nor does any consideration of comity require abstention where the ultimate relief sought in the federal court proceeding is unavailable. *See Parisi*, 405 U.S. at 41-42 ("the court should stay its hand only if the relief the petitioner seeks—discharge as a conscientious objector—would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system in its processing of the court-martial charge…. we are not persuaded that such relief would be even potentially available, much less that it would be either prompt or certain."); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S.

423, 431-32 (1982) ("'[The] ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise'" the claims on which *Younger* abstention is sought (quoting *Moore v. Sims*, 420 U.S. 415, 430 (1979))).

## IV.     The Military Commission Will Not Be Available to Hear All Relevant Conditions of Confinement Claims

In addition to not affording a forum in which to argue for release, the military commission process is an inadequate forum for the litigation of basic conditions-of-confinement claims that implicate Petitioner's ability to litigate his habeas case. That would be so even if the military commission proceeding were not currently stayed. The MCA purports to bar defendants from invoking rights based on the Geneva Conventions. *See* 10 U.S.C. § 948b(g) (''GENEVA CONVENTIONS NOT ESTABLISHING SOURCE OF RIGHTS.—No alien unlawful enemy combatant subject to trial by military commission under this chapter may invoke the Geneva Conventions as a source of rights.''). Thus the commission cannot enforce such rights, even though Section 6 of the President's Executive Order of January 22, 2009, *Review and Disposition of Individuals Detained At the Guantanamo Bay Naval Base and Closure of Detention Facilities*, 74 Fed. Reg. 4897, expressly contemplates the application of the Geneva Conventions, naming Common Article 3 as among the "applicable laws governing the conditions of … confinement" at Guantanamo, *id*. at 4899. Habeas may thus be Petitioner's only vehicle for certain challenges to his conditions of confinement.[11]

---

[11]     Respondents have recognized that there are claims that may be litigated in habeas that stand outside the universe of claims litigable before the military commission. *See* Motion at 7 ("habeas proceedings would be, *at least in part*, duplicative with proceedings before the military commission") (emphasis added); id. at 2 ("there is *some* overlap between the issues presented in petitioners' habeas petitions and their military commission case [sic]") (emphasis added).

*Councilman* stated that a "harm sought to be averted [that] is 'both great and immediate'" and "cannot be eliminated by ... defense against a single criminal prosecution" could be a basis for equitable intervention by a federal court, even where a coordinate judicial system was capable of ultimately hearing such claims on their merits. 420 U.S. at 756. Moreover, the comity concern underlying *Councilman*—the desire to avoid "needless friction between the federal civilian and military judicial systems"—is not present where claims are not cognizable through the military system. *See New v. Cohen*, 129 F.3d 639, 643 (D.C. Cir. 1997); *see also id.* at 642 ("Although this rule [of *Councilman* abstention] often 'is framed in terms of 'exhaustion,' it may more accurately be understood as based upon the appropriate demands of comity between two separate judicial systems.'" (quoting *Parisi v. Davidson*, 405 U.S. 34, 40 (1972))). Claims under the Geneva Conventions, the applicable provisions of their Additional Protocols, and military regulations may all fall within this category. *See id.* at 644 (recognizing exemption from abstention rule where petitioner "asserts a legal right against the military that has been clearly established by statute, regulation, or other applicable law").

At least to the extent Petitioner's conditions of confinement implicate his ability to litigate his claims in this forum,[12] resolution of those claims would be in aid of this Court's fundamental habeas jurisdiction,[13] and thus habeas challenges to those conditions must remain

---

[12]    Several motions regarding the mental health of Petitioner have already been made before the military commission by Petitioner's military defense counsel, but had not been resolved by the date of the continuance.

[13]    *See, e.g.*, *Khadr v. Bush*, 587 F. Supp. 2d 225, 2008 U.S. Dist. LEXIS 95473 at *30 (D.D.C. Nov. 24, 2008) (distinguishing conditions claims that "implicate[] the core of the writ" from those that do not, including claims rejected by Your Honor in *In re Guantanamo Bay Detainee Litigation*, 570 F. Supp. 2d 13, 15-16 (D.D.C. 2008) (rejecting request for transfer within Guantanamo for Uighur petitioners), and by Judge Hogan *In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d 312, 314 (D.D.C. 2008) (rejecting petitioner's request for blanket and mattress as outside of relief necessary to "ensure ... his access to the Court")); *see*

available if the military commission process can not afford him the necessary relief. *See Ohio Civ. Rts. Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 (1986) (conditioning application of *Younger* abstention to administrative proceedings on a "full and fair opportunity to litigate" claims in alternate forum). This is especially imperative given how long Petitioner has waited for relief and how long he may wait for further action in his habeas case, even without a stay.

## V. Generic Assertions of the Potential for Interference with Any Future Trial Process Do Not Suffice to Justify a Stay

Respondent's Motion, filed before the change in administration, primarily relies on the pendency of active military commission proceedings, and on the incremental burden presented by litigating the few cases of military commission defendants with pending habeas petitions. However, Respondents also argue that the "preparation of a factual return for Petitioners Bacha and Kameen and further conduct in proceeding with their respective cases, as with the other petitioners awaiting trial in the military commission system, would potentially interfere with the military commission process." Motion at 7. The government does not elaborate on how this may be the case with respect to the specific burden presented by *preparation of factual returns*, or why preparing a return presents any incremental burden over and above the effort already invested in bringing the military commission case to its current stage.[14]

---

*also* Order, Dkt. 85, *Bin al Shibh v. Bush*, 06-cv-1725 (EGS) (Jan. 16, 2009) (permitting medical examination of petitioner, a military commission defendant and former CIA detainee).

[14] Respondents quote *Steffel v. Thompson*, 415 U.S. 452, 462 (1974), for the proposition that, in a *Younger* abstention context, the Supreme Court has "acknowledge[ed] a strong interest in avoiding 'duplicative legal proceedings or disruption of the state criminal justice system.'" Motion at 15 (quoting *Steffel*). The full quotation from *Steffel* is instructive, given that the military commission proceeding against Petitioner has been suspended: "[Our precedents have] recogni[zed] that the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.' … When no state criminal proceeding is pending at the

Very near the end of their brief, almost as an afterthought, Respondents argue that "[p]arallel litigation of discovery issues in both tribunals [commission and habeas] could potentially result in inconsistent rulings on disclosure of classified information and would also potentially allow circumvention of the discovery limitations inherent in military commission proceedings." Motion at 18. On a purely factual basis, that is a curious assertion, as over 1800 documents have been produced in discovery to defense counsel in Petitioner Kameen's military commission, and the Amended Case Management Order in his habeas case provides for "limited," "narrowly tailored" discovery only "for good cause" as shown in a "written motion" which "explain[s] why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government." *See* Amended Case Management Order § 1.E.2 (Nov. 6, 2008, as amended Dec. 16, 2008). Even so, putting those facts to one side, the caselaw does not support the government's claim that this habeas proceeding should be stayed or dismissed in a blanket fashion as a result of concerns relating to discovery.

The majority of the precedents in the caselaw seemingly sharing Respondent's concern for inconsistent discovery obligations[15] involve stays *specifically required by statute* in certain

---

time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system." 415 U.S. at 462.

[15]    The one case cited by Respondents in their opening brief, *United States v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency*, 461 U.S. 555 (1983) (cited in Motion at 18), did not involve any question of abstention or the propriety of a stay at all; instead, the issue was whether the government's delay in bringing a civil forfeiture action 18 months after filing related criminal charges against the defendants somehow violated due process. However, the Motion does cite *Al Odah v. Bush*, Civil Action No. 02-828 (CKK), 2009 U.S. Dist. LEXIS 248, 2009 WL 22275 (D.D.C. Jan. 6, 2009), and the Respondents' Reply Brief in that case cited two cases, one of which was based on civil forfeiture statutes, *see* Reply Br. (Dkt. 422) at 10 (citing *United States v. All Funds on Deposit*, 456 F. Supp. 2d 64 (D.D.C. 2006) (section 981(g)(1) forfeiture case)). The other case cited, *Capital Engineering & Mfg. Co. v. Weinberger*, 695 F. Supp. 36, 42 (D.D.C. 1988), involved a stay of discovery in a case where the

civil forfeiture actions pending resolution of closely-related criminal matters. *See, e.g.*, 18 U.S.C. § 981(g)(1) ("court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case"). Even under provisions specifically provided by Congress to allow for such stays, the government has generally been forced to make a showing that there exists a substantial, *specific* risk of prejudice to the integrity of the criminal case. *See United States v. Leasehold Interests in 118 Ave. D,* 754 F. Supp. 282, 287 (E.D.N.Y. 1990) ("Mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery ... will not avail on a motion for a stay."); *see also In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990) ("good cause requires more than the mere possibility of prejudice"); *United States v. Thirteen Machine Guns and One Silencer,* 689 F.2d 861, 864 (9th Cir. 1982) (government's "conclusory allegations that a forfeiture action would have jeopardized its criminal prosecution are clearly not sufficient to justify depriving [the claimant] of his property for 21 months without a hearing."); *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973) (movant for a protective order postponing civil discovery has the burden to come forward with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."); *cf.* Motion at 18 ("Parallel litigation of discovery issues in both tribunals *could potentially* result in inconsistent rulings on disclosure of classified information and would also *potentially* allow circumvention of the discovery limitations inherent in military commission proceedings.") (emphasis added). Moreover, in light of the due process interest in deprivation of property,

---

"chronology of the filing of this action" lead the court to suspect it had been filed as a means of gaining discovery relevant to an imminent criminal indictment and found that there was "no principled way of narrowing the range of discovery so as not to compromise the criminal proceedings."

courts have applied a rigorous standard in evaluating the need for a stay in light of the possible injury to the affected party and the alternatives available:

> Because determination of "good cause" and a grant of a stay of proceedings can deprive claimants of their property without opportunity for a hearing for a long period of time, whether "good cause" for a stay exists properly is viewed as a "mixed question of law and equity, requiring consideration of any mitigating circumstances that affect the appropriateness of a stay." [*In re Ramu*, 903 F.2d at 320 (citing *United States v. One Parcel of Real Estate at 1303 Whitehead St.*, 729 F. Supp. 98, 100 (S.D. Fla. 1990)).] *See also U.S. v. All Right, Title & Interest in the Real Property and Buildings Known as 228 Blair Ave., Bronx, N.Y.*, 821 F. Supp. 893, 896 (S.D.N.Y. 1993). The Court adopts this approach, which involves a standard similar to that required for the issuance of a preliminary injunction.
>
> Under such a standard, the Government must establish: (1) a substantial likelihood that it will prevail on the merits, (2) the substantial threat that it will suffer irreparable injury, (3) that the threatened injury to the Government outweighs the threatened injury to the claimant, and (4) that granting the stay will not disserve the public interest. *See Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974), reaffirmed by *Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018 (11th Cir. 1989). *See also In re Ramu*, 907 F.2d at 320. "Such a showing will avoid the hazards of indefinite delay, ensure that claimants receive due process of law, and generally assure the Court of the propriety of a stay." *U.S. v. Real Est. at 1303 Whitehead St., Key West*, 729 F. Supp. 98, 100 (S.D. Fla. 1990).

*United States v. Four (4) Contiguous Parcels of Real Property*, 864 F. Supp. 652, 654-55 (W.D. Ky. 1994). Obviously, the "hazards of indefinite delay" are far greater here, where it is the constitutionally-protected *liberty* interest of Petitioner which is at issue, and the likelihood of the military commission process recommencing is, on all available evidence, highly remote.[16]

Even in cases where the private interest at stake is a mere financial one, the Court must consider alternatives to a blanket stay of the entire civil action. *See In re Ramu*, 903 F.2d at 320 ("The district court is not limited to a simple choice of either granting an all-inclusive stay or

---

[16]     *Cf. United States v. All Monies*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985) ("Moreover, the scope and duration of the requested stay is too indefinite. The Government's criminal investigation … has been ongoing for more than 20 months, and no information is given as to its present status or how long it may take to be resolved. … This is true especially in light of the [affected party's] interest in having a prompt hearing.")

denying the government all relief. As in the grant of a preliminary injunction, there must be … some consideration of alternative means besides seizure, such as bonds or a lis pendens, of protecting the government's interests." (citing *United States v. One Parcel of Real Estate Located at 12525 Palm Road*, 731 F. Supp. 1057, 1060 (S.D. Fla. 1990) (ordering in camera inspection of materials sought in discovery).)); *see also Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (stating, in case involving civil challenge to warrantless surveillance discovered during trial on criminal proceedings, "[w]here related civil and criminal litigations are pending at the same time, sound discretion of the court may require that the civil action not be blocked entirely but be subject to some limitation, including, e.g., protective orders pertinent to discovery, to avoid essential unfairness or other interference with the public interest." (citing *United States v. Kordel*, 397 U.S. 1 (1970); *Gordon v. Federal Deposit Insurance Corp.*, 427 F.2d 578 (D.C. Cir. 1970))). Petitioner's habeas case is already subject to a highly-restrictive Protective Order and a for-cause discovery scheme, pursuant to the Amended Case Management Order, both of which offer the possibility of judicially-crafted protective measures to serve whatever legitimate interest the government can specify with particularity in this case going forward. It is highly unlikely, therefore, that the government will be able to make the required showing of need and lack of available alternatives. In any event, it has not done so here.

**Conclusion**

For the reasons stated above, this Court should deny Respondents motion to hold this case in abeyance, and, a fortiori, their motion to dismiss. This Court should also expeditiously make clear that Respondents remain obligated to produce Petitioner's factual return, which is currently due on February 27, and may not engage in self-help by delaying the production of the return during the pendency of this Motion.

Dated:  February 18, 2009

Respectfully submitted,

_____/s/_____
Shayana Kadidal (D.C. Bar No. 454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012-2317
Phone: (212) 614-6438
Fax: (212) 614-6499
kadidal@ccrjustice.org

*Counsel for Petitioner Mohammed Kameen*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

IN RE:

GUANTÁNAMO BAY
DETAINEE LITIGATION

Misc. No. 08-442 (TFH)

_____

AL HALMANDY, *et al.*,

                Petitioners,

                v.

OBAMA, *et al.*,

                Respondents.

No. 05-cv-2385 (RMU)

_____

## [PROPOSED] ORDER

Having considered the submissions of the parties in the above-captioned matter,
Respondents' Motion to Dismiss Habeas Petitions without Prejudice or, Alternatively, to Hold
Petitions in Abeyance pending Completion of Military Commission Proceedings, Dkt. 160 (Jan.
16, 2009), is DENIED.

SO ORDERED, this ___ day of _____ 2009, at Washington, D.C.

_____
Hon. Ricardo M. Urbina
United States District Judge

**EXHIBIT A**

Commission Ruling on Government Motion for 120 Day Continuance, *United States v. Kamin* (Feb. 9, 2009)

# MILITARY COMMISSIONS TRIAL JUDICIARY
## GUANTANAMO BAY, CUBA

| | |
|---|---|
| UNITED STATES OF AMERICA | Commission Ruling on Government Motion For 120-Day Continuance |
| v. | 9 February 2009 |
| MOHAMMED KAMIN | |

1. On 23 January 2009, the Government moved for a continuance until 20 May 2009 of further proceedings in this military commission.

2. On 30 January 2009, the Defense responded to the Government's motion, opposing the request for continuance and requesting dismissal of the charges.

3. After reviewing the briefs of the parties, the Commission finds:

    a. Following his inauguration, President Obama immediately ordered a comprehensive inter-agency review of all individuals detained at Guantanamo Bay to determine whether any will be held for trial by military commission or other process, and whether there should be changes to the military commissions process.

    b. Upon the President's order, the Secretary of Defense directed the Chief Prosecutor of the Office of Military Commissions to seek a 120-day continuance in all cases, including US v Kamin, that had been referred to military commissions, in order to provide the administration sufficient time to conduct a review of all detainees currently held at Guantanamo Bay, and to determine the proper forum for future prosecution of any detainees.

    c. For good cause shown, the Commission finds that the interests of justice are served by continuing the proceedings until 20 May 2009, and that the interests of justice outweigh the interests of the public and the accused in a prompt trial.

4. The government's motion to continue the military commission sessions to 20 May 2009 is therefore GRANTED. During the pendency of this continuance, discovery may continue.

So ordered on this 9th day of February 2009.

W.  THOMAS CUMBIE, Colonel, USAF
Military Judge