## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ) ) ) GUANTANAMO BAY ) DETAINEE LITIGATION ) ) ) | Misc. No. 08-0442 (TFH) |
| ) AL DARBI, ) ) Petitioner, ) v. ) ) OBAMA, *et al.*, ) ) Respondents. ) ) | Civil Action No. 05-2371 (RCL) |

### PETITIONER AL DARBI'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS HABEAS PETITION WITHOUT PREJUDICE OR, ALTERNATIVELY, TO HOLD PETITION IN ABEYANCE PENDING COMPLETION OF <u>MILITARY COMMISSION PROCEEDINGS</u>

Petitioner Ahmad Mohammad Al Darbi (ISN 768) ("Petitioner"), by and through his undersigned counsel, respectfully submits this opposition to Respondents' Motion to Dismiss, or Alternatively, to Hold Petition in Abeyance Pending Completion of Military Commission Proceedings, dkt. no. 108 (the "Motion").

### <u>PRELIMINARY STATEMENT</u>

The Government filed the Motion on the last business day of the Administration of President Bush, January 16, 2009. In the Motion, the Government argues that this Court may not hear Mr. Al Darbi's habeas case because doing so will "potentially interfere with the military commission process and encroach upon the scarce resources of the parties and the courts." Motion at 6. In the four weeks since the Government filed the Motion, however, the

circumstances surrounding the military commission system have changed dramatically, fundamentally undercutting the factual and legal bases for the Motion. On January 20, 2009, President Obama assumed office and within hours instructed the Secretary of Defense to seek a suspension of all military commission proceedings. Two days later, on January 22, 2009, President Obama issued an Executive Order that reaffirmed Mr. Al Darbi's constitutional right to seek habeas review in this Court, and instructed the Secretary of Defense to take immediate steps to halt all military commission proceedings pending a review of the military commission system. The following day, the Government moved for a 120-day continuance of Mr. Al Darbi's military commission case. Just last week, on February 13, 2009, the military judge granted the Government's request and suspended Mr. Al Darbi's military commission case until May 20, 2009.

The Government has not yet made clear how it plans to proceed with Mr. Al Darbi's military commission case when that case resumes, if indeed it intends to proceed with the case at all. In fact, the Government has conceded that the Administration's review of the military commission system might result in a decision to discontinue the commissions altogether, and the Executive Order and recent statements by top officials make clear that, at minimum, the new Administration will not pursue prosecutions under the military commission system established by the Military Commissions Act of 2006, 10 U.S.C. §§ 948a-950w ("MCA").[1] In light of the uncertainty surrounding the military commission system, the Government's arguments for this

---

[1] Given that the Executive Branch has halted and retreated from the military commissions system constituted under the MCA, the Court does not need to consider the merits of that system at this time. Mr. Al Darbi respectfully reserves the right to brief in detail the adequacy and constitutionality of the military commission system if this system continues in any fashion.

Court's abstention no longer apply. There are no ongoing military commission proceedings to which this Court owes deference.

Moreover, a dismissal or even a stay of Mr. Al Darbi's habeas case at this stage would deny him his constitutional right to prompt judicial review of the Government's basis for his detention. *See Boumediene v. Bush*, 128 S. Ct. 2229, 2275 (2008). Mr. Al Darbi was arrested as a civilian in an airport, more than a thousand miles away from any "battlefield," and was unlawfully rendered to United States custody. He has been imprisoned for more than six years, during which time he has been the victim of documented acts of torture and mistreatment. His habeas case, which has been pending in this Court for more than three years, presents a serious legal and factual challenge to the Government's determination that he is an "enemy combatant" subject to indefinite executive detention. No Court has ever considered this challenge, however, because the Government has persistently obstructed each of Mr. Al Darbi's endeavors to receive the review guaranteed by *Boumediene*. Against this backdrop, the Government's latest attempt to bar Mr. Al Darbi from this Court, particularly at this juncture, is inappropriate. Granting the Motion will result in "additional months, if not years, of delay" while the Government develops a new and indeterminate process—a result that the Supreme Court has clearly rejected. *See Boumediene*, 128 S. Ct. at 2275 ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody. The detainees in these cases are entitled to a prompt habeas corpus hearing."). The Government cannot be allowed to continue placing upon Mr. Al Darbi the burden of its own delay. The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Al Darbi is a citizen of the Kingdom of Saudi Arabia. On information and belief, he was arrested as a civilian in June 2002, by local civilian authorities at the airport in Baku, Azerbaijan. Following his arrest, Mr. Al Darbi was unlawfully rendered to the custody of the United States and held at Bagram Airbase, Afghanistan ("Bagram") and the United States Naval Base at Guantánamo Bay, Cuba ("Guantánamo").

According to written records and corroborated testimony obtained by Mr. Al Darbi's military defense counsel, Mr. Al Darbi has been a victim of torture and coercion during his more than six years in United States custody. Mr. Al Darbi has been beaten, suspended by his arms and placed in other excruciating positions for extended periods of time, sexually assaulted, threatened with further sexual assault and rape, sexually humiliated, forced to perform hard labor, exposed to loud music and bright lights, kept in isolation for extended periods of time, and deprived of sleep for extended periods of time. To this day, Mr. Al Darbi continues to suffer mental and physical harm as a result of his torture, reporting headaches, mood swings, recurring nightmares involving his interrogators, night terrors, incontinence and, until recently, back pain. *See* Def. Resp. to Mot. for Appropriate Relief (120-Day Continuance) at 3, *U.S. v. Al Darbi* (Jan. 30, 2009) ("Continuance Opp'n"), *available at* http://www.defenselink.mil/news/ d20090213al%20Darbi.pdf.

Following the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), the Government brought Mr. Al Darbi before a Combatant Status Review Tribunal ("CSRT"). On November 24, 2004, the CSRT determined that Mr. Al Darbi was "properly designated as an enemy combatant" and thus subject to executive detention. *See* Combatant Status Review Tribunal Decision Report Cover Sheet (attached hereto as Ex. A).

Undersigned counsel filed Mr. Al Darbi's original habeas petition on December 12, 2005 and subsequently filed an amended habeas petition (naming Mr. Al Darbi's brother as his legal next friend) on June 20, 2006. *See* Pet., dkt. no. 1 (Dec. 12, 2005); Am. Pet., dkt. no. 8 (June 20, 2006). At the time both the original and amended habeas petitions were filed, there were no military commission charges pending against Mr. Al Darbi. Mr. Al Darbi's habeas case languished for more than two years because the Government repeatedly contested the right of all detainees at Guantánamo to seek habeas review. On August 28, 2007, this Court conditionally denied Mr. Al Darbi's motion for an order requiring the Government to submit a factual return, citing the uncertainty surrounding Mr. Al Darbi's right to habeas relief. *See* Order, dkt. no. 49 (Aug. 8, 2007). To this day, the Government has not produced a single document in this case to support Mr. Al Darbi's ongoing detention.

On October 11, 2007, undersigned counsel filed a petition pursuant to Section 1005(e)(2) of the Detainee Treatment Act, Pub. L. No. 109-148, 119 Sta. 2680 (2005) ("DTA") seeking review of the CSRT's determination that Mr. Al Darbi is an enemy combatant subject to executive detention. *See* Pet. for Review, *Al Darbi v. Gates,* No. 07-1413 (D.C. Cir. Oct. 11, 2007). As of this writing, Mr. Al Darbi's DTA petition remains pending before the Court for Appeals for the District of Columbia Circuit.

On December 20, 2007, Mr. Al Darbi was formally charged under the MCA, 10 U.S.C. §§ 948a-950w. Specifically, Mr. Al Darbi was charged with conspiracy in violation of 10 U.S.C. § 950v(b)(25), and providing material support for terrorism in violation of 10 U.S.C. § 950v(b)(25). On February 29, 2008, the charges against Mr. Al Darbi were referred for trial by a military commission. Mr. Al Darbi's military commission case was subsequently assigned to a military judge, Army Col. James L. Pohl, and trial was scheduled to begin in March 2009. On

information and belief, the Government's military commission case against Mr. Al Darbi rests entirely on 119 statements Mr. Al Darbi allegedly gave while detained at Bagram and Guantánamo. All of these statements—to the extent that Mr. Al Darbi actually made them—are the direct result of torture and coercion. *See* Continuance Opp'n at 4.

On June 12, 2008, the Supreme Court held in *Boumediene v. Bush* that non-citizen detainees at Guantánamo have a constitutional right to seek habeas review. *See* 128 S. Ct. at 2246-51. Eleven days later, on June 23, 2008, the Government responded to the *Boumediene* decision by moving to hold in abeyance or dismiss Mr. Al Darbi's DTA case pending the conclusion of litigation relating to his habeas case. *See* Gov't Mot. to Hold in Abeyance or in the Alternative Dismiss Without Prejudice, *Al Darbi v. Gates*, No. 07-1413 (D.C. Cir. June 23, 2008). The Court of Appeals never ruled on this motion.

Following the *Boumediene* decision, on July 3, 2008, Mr. Al Darbi's habeas case was transferred for management and coordination purposes to Senior Judge Thomas F. Hogan. *See* Order, dkt. no. 57 (July 3, 2008). On July 11, 2008, Judge Hogan issued a Scheduling Order in the consolidated Guantánamo detainee cases, which established deadlines for the Government to file factual returns to the detainees' habeas petitions. In a footnote, however, Judge Hogan suspended indefinitely the Government's obligation to respond to petitions filed by detainees facing charges by a military commission, including Mr. Al Darbi. *See* Scheduling Order, dkt. no. 61, at 4 n.1 (July 11, 2008). This exception remained the status quo until last month: on January 2, 2009, Judge Hogan issued a Minute Order requiring the Government to submit factual returns by February 27, 2009 for military commission defendants. *See* Minute Order (Jan. 2, 2009).

On January 9, 2009, the Court of Appeals found that it lacked jurisdiction to consider petitions for review brought under Section 1005(e)(2) of the DTA. *See Bismullah v. Gates,* 551 F.3d 1068, 1075 (D.C. Cir. 2009). Just three days later, on January 12, 2009, the Government moved to dismiss with prejudice all pending DTA petitions, including Mr. Al Darbi's. *See* Gov't Mot. to Dismiss for Lack of Jurisdiction, *Al Darbi v. Gates,* No. 07-1413 (D.C. Cir. Jan. 12, 2009). Undersigned counsel filed an opposition to the motion on January 25, 2009. *See* Pet'r's Opp'n to Mot. to Dismiss, *Al Darbi v. Gates,* No. 07-1413 (D.C. Cir. Jan. 25, 2009). As of this writing, that motion remains pending.

On January 16, 2009, four days after moving to dismiss Mr. Al Darbi's DTA petition, the Government filed the instant Motion to dismiss or hold in abeyance Mr. Al Darbi's habeas case on the ground that active military proceedings were ongoing against Mr. Al Darbi. Accordingly, within a single week, the Government sought to foreclose both of Mr. Al Darbi's avenues for judicial review in federal court. The Government also filed virtually identical motions in the cases of other petitioners facing charges by a military commission. *See* Civ. No. 08-442, dkt. nos. 1527 (Civ. No. 08-1207 (RWR), petitioner Abd al-Rahim Al-Nashiri), 1529 (Civ. No. 04-1937 (PKL), petitioner Ibrahim Ahmed Mahmoud al Qosi), 1530 (Civ. No. 05-2385 (RMU), petitioners Mohammed Jawad and Mohammed Kameen).

On January 20, 2009, President Obama assumed office and within hours directed Secretary of Defense Robert Gates to take steps to "halt" the military commissions. *See* Peter Finn, *Obama Seeks to Halt Legal Proceedings at Guantanamo*, Wash. Post, Jan. 21, 2009, at A02. On January 22, 2009, President Obama issued an Executive Order calling for the Review and Disposition of Individuals Detained at the Guantánamo Bay Naval Base and Closure of Detention Facilities. *See* Exec. Order No. 13,492, 74 Fed. Reg. 4897 (2009) (the "Executive

Order"). Section 2(c) of the Executive Order reaffirmed that the "individuals currently detained at Guantánamo have the constitutional privilege of the writ of habeas corpus," and acknowledged that "[m]ost of those individuals have filed petitions for a writ of habeas corpus in Federal court challenging the lawfulness of their detention." *Id.* at § 2(c). Section 7 of the Executive Order then directed that the

> Secretary of Defense shall immediately take steps sufficient to ensure that during the pendency of the Review described in section 4 of this order, no charges are sworn, or referred to a military commission under the Military Commissions Act of 2006 and the Rules for Military Commissions, and that all of the proceedings of such military commissions to which charges have been referred but in which no judgment has been rendered, and all proceedings pending in the United States Court of Military Commission Review, are halted.

*Id.* at § 7. Significantly, the Executive Order contained no instruction to halt the pending habeas cases.

On January 23, 2009, the Government moved for a 120-day continuance of Mr. Al Darbi's military commission proceeding, "[i]n order to provide the President and his Administration time to review the military commissions process generally, and the cases pending before military commissions specifically." *See* Gov't Mot. for Appropriate Relief, *U.S. v. Al Darbi* at 1 (Jan. 23, 2009) ("Continuance Mot."), *available at* http://www.defenselink.mil/news/ d20090213al%20Darbi.pdf. The Government also moved for similar continuances in military commission proceedings pending against several other Guantánamo detainees. *See* Peter Finn, *Guantanamo Judge Denies Obama's Request for Delay*, Wash. Post, Jan. 30, 2009, at A14. Mr. Al Darbi's defense counsel opposed the motion, asking the military judge instead to dismiss the charges against Mr. Al Darbi. *See* Continuance Opp'n at 4-6.

On January 26, 2009, undersigned counsel asked counsel for the Government to consider withdrawing the Motion in light of the Executive Order. On January 27, 2009, counsel for the

Government informed undersigned counsel that: "The Government is currently assessing how it should proceed in these cases.  Time is needed to make this assessment and determination.  Accordingly, . . . we are not in a position to withdraw the [Motion] at this time."  *See* Email from K. Wolfe to H. Shamsi, et al., Jan. 27, 2009 (attached hereto as Ex. B).  Counsel for the Government instead offered a two-week continuance of Mr. Al Darbi's time to oppose the Motion, which the Court granted *nunc pro tunc* on February 13, 2009.  *See* Order, dkt. no. 119 (Feb. 13, 2009).

On February 4, 2009, the United States Court of Military Commission Review ("CMCR")—the  appellate court for the military commissions constituted under the MCA— granted the Government's motion for a continuance of the military commission proceedings against detainee Mohammed Jawad.  In so ruling, the CMCR specifically found that any prejudice to Mr. Jawad that might result from the continuance was mitigated by the fact that Mr. Jawad had a pending habeas petition in federal court, through which he could challenge his detention.  The CMCR also noted Judge Hogan's January 2, 2009 order requiring the Government to submit a factual return Mr. Jawad's case, as well as the cases of all other detainees facing trial by a military commission, by February 27, 2009.  As such, the CMCR made clear that it expects the federal habeas cases to continue notwithstanding the pendency of any military commission proceedings.  *See* Order on Appellant's Req. for Delay, *U.S. v. Jawad*, CMCR Case No. 08-004 (Feb. 4, 2009) ("CMCR Order") (attached hereto as Ex. C).

On February 13, 2009, Col. Pohl granted the Government's motion for a continuance of Mr. Al Darbi's military commission proceedings until May 20, 2009.  *See* Ruling on Gov't Mot. for a Continuance, *U.S. v. Al Darbi* (Feb. 13, 2009), *available at* http://www.defenselink.mil/news/d20090213al%20Darbi.pdf.

<u>**ARGUMENT**</u>

## I.     STANDARD OF REVIEW

When addressing a Rule 12(b)(6) motion to dismiss for failure to dismiss a claim, the

Court must accept Mr. Al Darbi's allegations, including mixed questions of law and fact, as true,

and draw all reasonable inferences in his favor.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.

Ct. 1955, 1969 n.8 (2007); *Aktieselskabet AF 21.Nov.2001 v. Fame Jeans, Inc.*, 525 F.3d 8 (D.C.

Cir. 2008).

## II.    THE GOVERNMENT'S ARGUMENTS FOR ABSTENTION NO LONGER APPLY

### A.     Due To The Suspension Of Mr. Al Darbi's Military Commission Proceeding, There Is No System To Which This Court Owes Deference

During the month since the Motion was filed, the President has ordered the Secretary of

Defense to undertake a review of the entire military commissions system, and the Government

has sought and obtained a continuance of Mr. Al Darbi's military commission proceeding until

May 20, 2009.  It may be true in a technical sense that the military judge has ordered only a

"delay" of Mr. Al Darbi's commission proceedings, but statements by top Administration

officials indicate that the Administration's review of the military commission system will likely

result in a decision not to continue the commissions in their present form.  For example, Attorney

General Holder suggested during his confirmation hearing that the Administration will either

abandon the military commissions altogether, or will use of the commissions only if they are

"substantially revamped":

> I don't think that the military commissions that we now have in
> place have all of the due process requirements that I would like to
> see contained in them . . . In trying to deal with those detainees
> who we will try, I think we have to examine what tools will be
> available to us . . . the possibilities exist, I suppose, that we could
> use military commissions. *But they would have to be, I think,*

*substantially revamped* to provide the due process rights that I
think are consistent with who we are as Americans.

*The Nomination of Eric Holder to Be Attorney General in the Obama Administration Before the*

*S. Judiciary Comm.*, 111th Cong. Fed. News Serv. (Jan. 15, 2009) (emphasis added).[2]  Similarly,

the Government cautiously conceded in its motion for a continuance of these proceedings that

the Administration's review of the military commission system "might" result in fundamental

changes:

> Granting a continuance of the proceedings is in the interests of the
> accused and the public, as the Administration's review of the
> commissions process and its pending cases might result in changes
> that would (1) render moot any proceedings conducted during the
> review; (2) necessitate re-litigation of issues; or (3) produce legal
> consequences affecting the options available to the Administration
> following its review.  Further, changes in the military commissions
> procedures that could result from a review of the commissions
> process might inure to the benefit of the accused.

*See* Continuance Mot. at 1.  Based on such statements, while it is still too early to predict the

specific actions that the Government will take upon completion of its review, it seems clear that

the military commissions as they currently exist—as constituted under the MCA—will not

continue.

Surprisingly, however, counsel for the Government has refused to withdraw the Motion,

allegedly on the grounds that it is "currently in the process of assessing how it should proceed"

in this case.  *See* Ex. B (Email from K. Wolfe to H. Shamsi).[3]  Nor has the Government sought

---

[2]     The Executive Order is also consistent with President Obama's promise during his
       campaign: "As President, I will close Guantánamo, reject the Military Commissions Act,
       and adhere to the Geneva Conventions."  Remarks of Senator Barack Obama: The War
       We Need to Win, Aug. 1, 2007, *available at* http://www.barackobama.com/2007/08/01/
       the_war_we_need_to_win.php.

[3]     Counsel's reference to an ongoing "assessment" suggests that the Government may seek
       to rely on a new basis for seeking dismissal or a stay of Mr. Al Darbi's habeas case, but
       the Government has not sought to modify the basis for the Motion before this Court.  The

to modify the Motion or any of its arguments. Instead, the Motion is still predicated on the

Government's argument that the Court should abstain from hearing Mr. Al Darbi's habeas case

because he is a defendant in an active military commission proceeding under the MCA. *See*,

*e.g.,* Motion at 3-5 (describing procedures and protections for a trial convened pursuant to the

MCA) and 4 (referring to Mr. Al Darbi as "a defendant under the MCA").

Given the uncertainty surrounding the military commission system constituted under the

MCA, the Government's decision to persist with this argument is illogical and inconsistent with

the Executive Order. The abstention concerns that the Government raises in its Motion, and the

cases cited in support of these arguments, are no longer applicable because the predicate for

abstention—the existence of active proceedings in another justice system, to which federal courts

owe deference under the principle of comity—no longer exists. *See* Motion at 2, 8-9 (citing

*Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) (federal court should abstain when parallel

proceeding is held in military court that "is adequate to and responsibly will perform its assigned

task")[4]; *Younger v. Harris*, 401 U.S. 37, 41 (1971) (federal court should abstain when parallel

---

Court should not entertain this post-hoc justification for the Motion if the Government raises it in the reply brief. *See Goldring v. District of Columbia*, 416 F.3d 70, 77 n. 4 (D.C. Cir. 2005) (argument raised for first time in reply brief is untimely); *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (same).

[4]  Mr. Al Darbi has respectfully reserved the right to brief in detail the adequacy and constitutionality of the military commission system if this system continues in any fashion. *See infra* note 1. Mr. Al Darbi notes for the Court, however, that *Councilman*, the primary case on which the government relies in the Motion, actually supports his position. As the Supreme Court stated almost three years ago, "we do not apply *Councilman* abstention when there is a substantial question whether a military tribunal has personal jurisdiction over the defendant." *Hamdan v. Rumsfeld*, 548 U.S. at 586; *see also id*. at 589 ("Hamdan and the Government both have a compelling interest in knowing in advance whether Hamdan may be tried by a military commission that arguably is without any basis in law. . . ."); *Ex parte Quirin*, 317 U.S. 1 (1942), (there is "compelling historical precedent for the power of civilian courts to entertain challenges that seek to interrupt the processes of military commissions."); *In re Yamashita*, 327 U.S. 1, 8 (1946) (recognizing that pre-trial habeas is available to test "the lawful power of the

proceedings are held in state courts, which are courts of record); *Ex parte Royall*, 117 U.S. 241,

250-51 (1886) (same); *Boumediene*, 128 S. Ct. at 2274 (denying Government's request for pre-

habeas exhaustion requirement because "[m]ost of these cases [cited by the Government] were

brought by petitioners in state custody, *e.g., Ex parte Royall*, 117 U.S. 241, and thus involved

federalism concerns that are not relevant here."); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)

(state court, court of record, had remedies that fully addressed petitioner's claims)).[5]

### B. The Military Commission Appellate Court Has Stated That It Fully Expects This Court To Hear Mr. Al Darbi's Habeas Petition

Additionally, there is no basis for the Government's contention that Mr. Al Darbi's

habeas proceeding will duplicate, conflict with, or otherwise interfere with his military

commission proceeding.  *See* Motion at 17-19.  Any doubt about this issue is resolved by the

CMCR Order, which makes clear that the military commission appellate court fully expects this

Court to proceed with habeas review in the cases of military commission defendants, including

Mr. Al Darbi.  Significantly, the CMCR found that Mr. Jawad's "detention status is not entirely

---

commission to try the petitioner for the offense charged."); *see also, e.g.*, *Reid v. Covert*, 354 U.S. 1 (1957) (reviewing grant of habeas to civilian petitioner challenging jurisdiction of military court); *Toth v. Quarles*, 350 U.S. 11 (1955) (same, with respect to former service member).  The Supreme Court in *Councilman* specifically referred to *Quirin*, *Reid*, and *Toth* as raising claims that are directly analogous to the claims Mr. Al Darbi raises regarding his status as a civilian unlawfully captured, far from any "battlefield":  "the disruption caused to petitioners' civilian lives and the accompanying deprivation of liberty made it especially unfair to require exhaustion when the complainants raised substantial arguments denying the right of the military to try them at all."  420 U.S. at 759 (internal quotations and alteration omitted)).  Accordingly, *Councilman* itself permits the challenges Mr. Al Darbi would raise were the commissions to proceed in a form similar to that which currently exists.

[5] For the same reason, the Government's citation to 28 U.S.C. § 2254(b)(1)(A) for the proposition that Mr. Al Darbi must "exhaust" his remedies in the military commissions system before seeking habeas review, Motion at 7-9, is inappropriate.  This statutory provision applies only to exhaustion of state court remedies—in other words, remedies available before a court of record with presumptively adequate substantive and procedural due process guarantees, unlike the military commissions at issue here.

related to the charges now pending against him; rather, it is the result of his classification as an

enemy combatant, and the administrative determination that his continued detention is in the

interest of national security." Ex. C (CMCR Order) at 3. As such, the CMCR found that a stay

of the military commission proceedings would not prejudice Mr. Jawad, because he "has the

right to petition for a writ of habeas corpus," and "his status and the conditions of his

confinement are subject to challenge in the federal district courts . . . ." *Id.* In fact, in support of

this finding, the CMCR specifically referred to Judge Hogan's January 2, 2009 Minute Order

requiring the Government to submit a factual return in the cases of military commission

defendants by February 27, 2009. *Id.* at 2 n.2.

> **C.      Abstention Would Be Inappropriate Because The Military Commission
> Proceeding Cannot Offer Mr. Al Darbi A Prompt Remedy**

The Government's argument also fails because the Supreme Court directly addressed the

kind of prudential delay the Government seeks here, and denied it. *See Boumediene*, 128 S. Ct.

at 2274. In *Boumediene*, the Government similarly argued that the Court should refrain from

hearing the petitioners' habeas challenges on equitable grounds, and that petitioners were

required to "exhaust" all statutory review procedures before asserting their habeas claims. The

Court rejected the Government's argument and determined that the case for "temporary

abstention or exhaustion of alternative remedies" does not apply when, as here, "six years have

elapsed without the judicial oversight that habeas corpus or an adequate substitute demands." *Id.*

at 2275 (holding that petitioners were not required to exhaust review procedures under the DTA

before proceeding with their habeas petitions); *see also Anderson v. Charter Twp. of Ypsilanti*,

266 F.3d 487, 490-91 (6th Cir. 2001) (abstention improper where "case [had] remained under

advisement in the state court for . . . three and a half years); *Med. Malpractice Joint

Underwriting Ass'n. v. Pfeiffer*, 832 F.2d 240, 242 n.4 (1st Cir. 1987) (abstention improperly

applied by district court where it had "le[ft] the parties where they started nine months previously"). The Government's suspension of the military commission proceedings as constituted under the MCA makes clear the Government's determination that the commissions are not an adequate substitute for habeas review. There should be no more delay in Mr. Al Darbi's habeas case.

Moreover, now that Mr. Al Darbi's military commission proceeding has been suspended, the Motion has become a request for a dismissal or stay of Mr. Al Darbi's habeas case based on the hypothetical (and unrealistic) possibility that the military commission proceedings will someday continue, and in an unchanged form. In this Court, Judge Colleen Kollar-Kotelly recently held that uncertainty about whether a military commission proceeding will ever take place supports the denial of a motion to dismiss asserted on grounds of abstention, because the Court "cannot interfere with the findings or rulings of a military commission that does not, and may never, exist. The Court . . . owes no deference to a system that may never be implicated by the charges against Petitioners." *Al Odah v. Bush*, Civ. No. 02-828 (CKK), 2009 WL 22275, at *7 (D.D.C. Jan. 6, 2009); *see also Parisi v. Davidson*, 405 U.S. 34, 41 (1972) ("Under accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks . . . would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system."). In Mr. Al Darbi's case, there is no reliable prospect of further proceedings which this Court should await the "completion" of, and no ongoing proceeding to which this Court must defer. There is thus no reason for the Court to delay adjudication of Mr. Al Darbi's habeas case.

**III. GRANTING THE MOTION WOULD DENY MR. AL DARBI HIS CONSTITUTIONAL RIGHT TO PROMPT JUDICIAL REVIEW OF THE GOVERNMENT'S BASIS FOR HIS DETENTION**

If the Motion is granted, Mr. Al Darbi may be left without any other remedy at law. Mr. Al Darbi's habeas petition is his only remaining option to challenge his detention because the Government's own actions have foreclosed all other avenues for timely review. First, Mr. Al Darbi's detention is no longer subject to an annual review pursuant to the Administrative Review Procedures established by the Department of Defense, because the Government has filed charges against him in the military commission system. *See, e.g.,* Memorandum from Department of Defense, Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba, at 2 (Sept. 14, 2004), *available at* http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf (describing procedures for "annual reviews of all DoD detainees in the Global War on Terrorism as U.S. Naval Base Guantanamo Bay, Cuba, except those whom the President has determined to be subject to a Military Commission"). Accordingly, on information and belief, the last administrative review of Mr. Al Darbi's detention occurred in early 2007.

Second, Mr. Al Darbi can no longer challenge his detention through his military commission proceeding, because that proceeding has been suspended at the Government's request.[6] Moreover, the CMCR's February 4, 2009 decision suggests that even if the military commission proceeding moves forward, it may provide no opportunity for Mr. Al Darbi to challenge his detention as the result of his classification as an "enemy combatant" and the

---

[6] Mr. Al Darbi does not concede that the Government's Administrative Review Procedures or his military commission proceeding under the MCA are adequate substitutes for habeas review, but only notes that neither process is presently available to him.

conditions of his confinement.[7]  *See* Ex. C (CMCR Order) at 3 (noting that the detention of a

military commission defendant "is not entirely related to the charges now pending against him").

Third, the Government has sought to close off Mr. Al Darbi's access to review of his

detention by the federal courts.  In October 2007, undersigned counsel filed Mr. Al Darbi's DTA

petition in the Court of Appeals.  The Government has twice asked the Court of Appeals to

dismiss that petition, largely on the grounds that the relief sought under the DTA is "duplicative"

of the relief Mr. Al Darbi seeks through habeas review.  The Government filed its latest motion

to dismiss only a few days before the instant Motion.

As a result of the Government's actions, Mr. Al Darbi has yet to receive the full review

guaranteed by *Boumediene*.  And now, by the instant Motion, the Government seeks to deny Mr.

Al Darbi his last means of prompt legal redress, forcing him to remain in detention while waiting

for an indeterminate process that has not yet been established.  The Supreme Court has expressly

rejected this result.  *See Boumediene,* 128 S. Ct. at 2275 ("While some delay in fashioning new

procedures is unavoidable, the costs of delay can no longer be borne by those who are held in

custody.").  The writ of habeas corpus is "a right of first importance," and this Court should not

permit it to be undermined.  *See id*. at 2277.

## IV.     THE MOTION IMPROPERLY SEEKS RELIEF FROM THE COURT'S ORDER REQUIRING THE PRODUCTION OF FACTUAL RETURNS

Though styled as a motion to dismiss, the Motion is effectively either a motion for

reconsideration of, or a request for an extension of time in response to, Judge Hogan's January 2,

2009 Minute Order requiring the production of factual returns by February 27, 2009.  Instead of

seeking relief from Judge Hogan, however, the Government has filed individual but virtually

---

[7]      To be prosecuted under the MCA, Mr. Al Darbi must be found to be an "alien unlawful enemy combatant."  *See* 10 U.S.C. § 948b.  The military commission has never made this determination, nor has it even considered this issue.

identical substantive motions before the Merits Judges in the cases of petitioners with pending

military commission proceedings.[8]  Notably, this is the first time that the Government has

requested that the Government abstain from considering Mr. Al Darbi's habeas case pending the

"completion" of his military commission proceeding.  The Government did not seek this relief

when charges were referred to the military commission in February 2008.  Nor did the

Government seek this relief when the Supreme Court's decision in *Boumediene* required the

Court to conduct "a prompt habeas corpus hearing," *see* 128 S. Ct. at 2275.  Nor did the

Government seek this when this Court granted the Government's similar requests to stay of the

habeas cases of other detainees facing charges by military commission.  *See, e.g., Hamdan v.*

*Gates*, 565 F. Supp. 2d 130, 136-37 (D.D.C. 2008); *Khadr v. Bush*, 587 F. Supp. 2d 225, 230-34

(D.D.C. 2008) (following *Hamdan*); *Al Odah*, 2009 WL 22275 (same).  Instead, the Government

has only filed the Motion as a means of avoiding its obligation to submit Mr. Al Darbi's factual

return.

        Contrary to the Government's assertions, the obligation to submit a factual return in Mr.

Al Darbi's case is not onerous.  The Government has been preparing Mr. Al Darbi's military

commission case for trial for over a year now, and has produced thousands of pages of

documents to the Defense in the course of discovery.  As such, the facts on which the

Government relies to justify Mr. Al Darbi's detention have surely been assembled.  Yet, in

---

[8]     The Government did, however, file a motion for reconsideration before Judge Hogan
        regarding filing of a factual return for Omar Khadr.  *See* Civ. No. 04-1136 (JDB) dkt. no.
        254 (Jan. 16, 2009).  Khadr's habeas petition was stayed by Judge John D. Bates on
        November 24, 2008, pending the outcome of his pending military commission.  *See*
        *Khadr v. Bush*, 587 F. Supp. 2d 225, 230-34 (D.D.C. 2008).  Following the issuance of
        the Executive Order, Khadr's military commission proceeding was continued for 120
        days.  *See* Order on Gov't Request for a Continuance, *U.S. v. Khadr* (Jan. 21, 2009),
        *available at* http://www.defenselink.mil/news/P%20011.pdf.  The Government's motion
        for reconsideration was granted on January 22, 2009.  *See* Minute Order, Case No. 08-
        442 (Jan. 22, 2009).

protesting its obligation under Judge Hogan's order, *see* Motion at 3 and 18, the Government

resorts to the same complaints about alleged resource constraints that Judge Hogan has already

rejected. *See, e.g.,* July 8, 2008 Tr., No. 08-442 (Hogan, J.) at 90:4-7 ("[W]e can't abide by

hearing [ ] we don't have enough resources. . . . I think the government has to understand,

they're going to set aside every other case that's pending before them in their division, and

address these cases first.").

      Moreover, these alleged issues relate to the timing of the Government's production,

which are common to all of the consolidated cases, and not to the substantive merits of dismissal

or a stay of this particular habeas case. Pursuant to Judge Hogan's July 2, 2008 Order,

procedural and scheduling issues that are common to all or some of the coordinated cases are to

be decided exclusively by Judge Hogan, who is in the best position to evaluate the overall burden

imposed by these cases on the Government.[9] *See* Order, dkt. no. 56 (July 2, 2008); *see also*

Order, dkt. no. 57 (July 3, 2008) (transferring this case to Judge Hogan for purposes of

coordination and management). This Court should not tolerate the Government's improper

attempt to bypass Judge Hogan by improperly raising these common scheduling issues in a

substantive motion, and should not entertain any requests for delay of the Government's

obligation to submit Mr. Al Darbi's factual return.

## CONCLUSION

      For the reasons stated above, the Motion should be denied. This Court should also deny

any further requests for an extension of the February 27, 2009 deadline for the submission of Mr.

Al Darbi's factual return, and make clear that the Government may not engage in self-help by

delaying the submission of the return while the Motion remains pending.

---

[9]     *See* Resolution of the Executive Session, United States District Court for the District of Columbia (July 1, 2008).

Dated:  February 18, 2009

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

/s/ Paul C. Curnin
Paul C. Curnin
Karen E. Abravanel
Ellen L. Frye
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
Email: pcurnin@stblaw.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that I today caused a true and accurate copy of the foregoing to be served electronically via the Court's Electronic Case Filing system.

Dated:  February 18, 2009

/s/ Paul C. Curnin
Paul C. Curnin