# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
IN RE:                              )         Misc. No. 08-442 (TFH)
                                    )
**GUANTANAMO BAY**                  )
**DETAINEE LITIGATION**             )
                                    )
BINYAM MOHAMED AL HABASHI,          )
                                    )
         Petitioner,                )
                                    )
         v.                         )         Civil Action No. 05-0765 (EGS)[1]
                                    )
BARACK H. OBAMA,                    )
President of the United States, *et al.*, )
                                    )
         Respondents.               )
_____)

### PRIVILEGE TEAM'S OPPOSITION TO
### INTERIM RESPONSE TO ORDER TO SHOW CAUSE

By Order issued March 18, 2009, the Court, *sua sponte*, directed that petitioner's

counsel, Ahmed Ghappour, Esquire, and Clive A. Stafford Smith, Esquire, appear for a

---

[1] The Privilege Team's Report to the Court in this civil action was initially filed in *Ahmed Ben Bacha v. Obama*, Civil Action No. 05-2349 (RMC), due to confusion about the petitioner's name. When the Report was initially filed, the only name undersigned counsel had to connect the petitioner to a pending case was "Binyam Mohamed," and an exact match for that name appeared in the Court's electronic civil docket only under Civil Action No. 05-2349 (RMC), as a next friend. Undersigned counsel subsequently learned that "Binyam Mohamed" is identified in Civil Action No. 05-765 (EGS) as "Benjamin Mohammed Al Habashi," and that the Report should have been filed in that civil action. Consequently, the Report was refiled in Civil Action 05-765 (EGS). *See Notice of Filing of Privilege Team's Report to the Court*, Doc. 137 filed March 5, 2009, in Civil Action No. 05-765 (EGS).

hearing on May 11, 2009, "for the purpose of showing cause why this Court should not hold them in contempt for violating the Protective Order" previously entered in this and other habeas cases. On April 8, 2009, petitioner's counsel, through their attorneys, filed a paper titled *Interim Response to Order to Show Cause*, which is in effect a motion by which petitioner's counsel request "that the Court direct the Privilege Team to clarify its Report to the Court (Dkt 137, No. 05-cv-0765) by identifying the specific provision(s) of the Court's Protective Order that the Privilege Team contends Petitioner's counsel violated." This motion is misguided and should be denied as moot because the Privilege Team did not and does not contend that petitioner's counsel "violated" any provision of the Protective Order in connection with the incident that is the subject of the Privilege Team's February 26, 2009 Report to the Court.

The Privilege Team submitted its Report to advise the Court of conduct by petitioner's counsel "that was unprofessional and that made inappropriate use of the Privilege Team for purposes not authorized by the protective order entered in the above-captioned case."[2] In petitioner's Reply to the Privilege Team's Report, filed under seal on

---

[2] On September 11, 2008, Judge Hogan entered a protective order for use in the coordinated Guantanamo Bay habeas cases included in Miscellaneous Case No. 09-442 (TFH). On September 19, 2008, respondents filed a consent motion (Doc. 85) to enter the September 11, 2008 protective order in Civil Action No. 05-0765 (EGS), but Judge Sullivan has apparently not acted on that motion. Thus, the operative protective order in Civil Action No. 05-0765 (EGS) appears to be the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, as amended by the Order Addressing Designation Procedures for Protected Information, first issued on November

March 5, 2009, petitioner's counsel essentially admit that the Privilege Team's central concern about counsel's conduct -- which was the impetus for the Privilege Team's Report -- is true. In particular, petitioner's counsel acknowledge that the Privilege Team does not process material that is destined for a third party. Despite this knowledge, petitioner's counsel has falsely claimed that they are unable to present information to President Obama -- indisputably a third-party communication -- because of the Privilege Team's "censorship" of that information.[3] Furthermore, petitioner's counsel manipulated the process created by the Protective Order for Privilege Team review of privileged attorney-client communications in furtherance of counsel's false claim about the Privilege Team's alleged censorship. Such conduct is nowhere authorized in the Protective Order, is not an appropriate use of the Privilege Team, and, if done knowingly, is unprofessional. *See* ABA Model Rule of Professional Conduct 4.1 (Truthfulness in Statements to Others) (2009).

---

10, 2004, and by the Order Supplementing and Amending Filing Procedures Contained in the November 8, 2004 Amended Protective Order, first issued on December 13, 2004. *See* Order, Doc. 56 in Civil Action No. 05-0765 (EGS) (July 31, 2008). The provisions of September 11, 2008 protective order and the November 8, 2004 protective order, however, are substantively identical insofar as they pertain to the incident that is the subject of the Privilege Team's Report to the Court. Consequently, the Privilege Team's Report involves a matter of general concern under either version of the Court's protective order.

[3] Mr. Stafford Smith recently repeated this claim during an interview on Salon Radio on April 7, 2009. *See* Exhibit A, attached hereto.

Petitioner's counsel profess to have "never understood" why the Privilege Team does not process third-party communications such as counsel's putative memorandum to President Obama. If true, this assertion would bespeak an extraordinary level of confusion and lack of knowledge about the limitations of the Privilege Team's authority, the provisions of the Protective Order, and the role of the Court Security Officer with respect to the use of classified information by habeas counsel.

The Privilege Team has no independent authority to do anything; its powers are entirely derivative. Consequently, the Privilege Team is empowered to perform only those specific, narrowly-defined functions that have been expressly delegated to it by the respondents and the Court. Under the terms of the Protective Order, the Privilege Team is authorized to review certain privileged attorney-client communications between the individuals detained at Guantanamo Bay and their counsel. By contrast, the Privilege Team has no authority, either under the Protective Order or otherwise, to review any other kinds of communications. Thus, the Privilege Team could not "censor" a memorandum from petitioner's counsel to President Obama because the Privilege Team lacks the authority to review a document of that sort. Moreover, because the Privilege Team is not an original classification authority, even if the Privilege Team were given authority to review such third-party communications, the Privilege Team could not declassify any classified information contained therein, which seems to be the ultimate result that petitioner's counsel seek.

Under the terms of the Protective Order,[4] the use of classified information by petitioner's counsel is to be coordinated with the Court Security Officer, not with the Privilege Team.[5]  Specifically, Paragraph 16 [¶ I.C.15] of the Protective Order states that "Petitioners' counsel shall seek guidance from the Court Security Officer with regard to appropriate storage, handling, transmittal, and use of classified documents or information."  Paragraph 23 [¶ I.D.22] of the Protective Order provides that "No documents containing classified information may be removed from the secure area unless authorized by the Court Security Officer or Court Security Officer designee supervising the area."  Paragraph 25 [¶ I.D.24] states that "Petitioners' counsel shall not copy or reproduce any classified information in any form, except with the approval of the Court Security Officer or in accordance with the procedures established by the Court Security Officer for the operation of the secure area."  And, most pertinent here, Paragraph 26 [¶ I.D.25] of the Protective Order requires that "All documents prepared by . . . petitioners' counsel that do or may contain classified information . . . shall be maintained in the secure

---

[4] Citations to the "Protective Order" herein refer to the November 8, 2004 protective order, as amended.  Citations to the corresponding provisions of the September 11, 2008 protective order are shown thereafter in brackets, *i.e.*, "[¶ __]."

[5] The Court Security Officer and the Privilege Team, of course, are entirely separate entities.  The Court Security Officer and Alternative Court Security Officer are designated by the Court pursuant to Paragraph 16 [¶ I.C.15] of the Protective Order.  By contrast, the Privilege Team is designated by respondents and consists of "one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee."  *See* Protective Order, Exhibit A, § II.D [¶ II.B.6].

area unless and until the Court Security Officer advises that those documents . . . are unclassified in their entirety."

Paragraphs 26 [¶ I.D.25] and 28 [¶ I.D.27] of the Protective Order prohibit the Court Security Officer from disclosing documents prepared by petitioners' counsel to respondents, and insure that the Court Security Officer's knowledge of those documents does not waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections "unless authorized by the Court, by petitioners' counsel, or as otherwise provided in this Protective Order." Petitioner's counsel, however, plainly cannot claim any privilege or protection with respect to material that they desire to send to President Obama because the President is one of the named defendants in this action. Sending material to President Obama, therefore, would be tantamount to serving it on an opposing party, which would of course waive any privilege or protection that might otherwise apply. Accordingly, if petitioner's counsel want to submit a memorandum containing classified information to the President, they should discuss the proposed submission with the Court Security Officer and, if necessary, authorize the Court Security Officer to request guidance from the appropriate government authorities about how the information in question should be handled, similar to the procedures set forth in Paragraph 46 [¶ I.F.47] of the Protective Order with respect to court filings by petitioners that do or may contain classified information.

In short, petitioner's counsel's purported inability to send a memorandum containing classified information to the President is not attributable to "censorship" by the Privilege Team, but rather to counsel's failure to present the issue to the appropriate entity in accordance with the procedures specified by the Protective Order. Thus, the "problem" about which petitioner's counsel have complained so loudly to the media has nothing to do with the Privilege Team and is entirely of counsel's own making.

Although petitioner's counsel improperly involved the Privilege Team in connection with their putative memorandum to President Obama, and then made false claims of censorship after being told that the Privilege Team lacks the authority to process such a memorandum, the Privilege Team did not seek any sanction against petitioner's counsel on account of that conduct. If this incident was in fact the product of an honest misunderstanding about the Privilege Team's proper role under the Protective Order, the Privilege Team assumes that Mr. Stafford Smith -- who has gallantly accepted full responsibility for the conduct in question -- will promptly and publicly admit his error, retract his false claims, and commit that he and his colleagues will undertake to resolve any future third-party communications issues through the proper channels. An honourable gentleman would certainly do no less, and such action would fully address the concerns that impelled the Privilege Team to submit its Report to the Court.

                                                        Respectfully submitted,

                                                        JEFFREY A. TAYLOR, D.C. Bar No. 498610
                                                        United States Attorney

/s/
DANIEL F. VAN HORN, D.C. Bar No. 924092
Assistant United States Attorney
555 4th St., NW - - Room E4816
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL

JANE M. LYONS
Assistant United States Attorney