**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ) | |
| ) | |
| IN RE: ) | Misc. No. 08-442 (TFH) |
| ) | |
| GUANTANAMO BAY ) | |
| DETAINEE LITIGATION ) | |
| ) | |
| ) | |

**MOTION BY PRESS INTERVENORS FOR AN ORDER TO SHOW CAUSE**
**WHY THE GOVERNMENT SHOULD NOT BE HELD IN CONTEMPT**

The Associated Press, The New York Times Company, and USA Today (collectively,

"Press Intervenors") respectfully move for an order requiring the United States government (the

"Government") to show cause why it should not be held in contempt for willfully failing to

comply with this Court's June 1, 2009 Order (the "June 1 Order").  That Order enforced the

public's right of access to judicial records and rejected the Government's request unilaterally to

withhold from the public *unclassified* information contained in its Factual Returns.  It

specifically directed the Government by July 29, 2009 to either (i) publicly file a factual return in

each of the above captioned cases from which only classified information was redacted, or (ii)

file under seal an unclassified factual return highlighting any non-classified information the

Government seeks to retain under seal.  The Government did not appeal any aspect of this Order,

but has refused to obey it.

The Government publicly filed redacted Factual Returns by the Court's deadline and, on

information and belief, did not in any case highlight non-classified information that it sought to

retain under seal.  Nonetheless, on September 24, 2009, Judge John D. Bates entered an Order in

one of the habeas proceedings, revealing that the Government had in that case withheld

*un*classified information from the factual return without notice or explanation, in direct

contravention of the June 1 Order.  Judge Bates rejected the Government's excuses for

disobeying the Order, and required the Government in the case before him to comply with the

June 1 Order by no later than October 16, 2009.

Since learning of Judge Bates' Order, Press Intervenors have been advised by

Government attorneys that *unclassified* information was similarly redacted and withheld from

the public files in *all* of these habeas proceedings, and this was done without advising the Court

or seeking permission to delete any unclassified information from the Court's files.

The Government's actions directly contravene the Court's June 1 Order.  Press

Intervenors thus move for an order to show cause why the Government should not be held in

contempt and requiring the Government to: (a) bring itself into full and complete compliance

with the June 1 Order within 10 days; (b) affirm that whenever documents have been filed from

which *un*classified information is withheld, the Government has filed a motion for permission to

seal, as required by Paragraphs 34-35 of the Protective Order governing these cases; and (c) pay

Press Intervenors their reasonable costs and attorneys' fees of this motion.

## MEMORANDUM OF LAW

## BACKGROUND

Petitioners in these habeas proceedings challenge the legality of their indefinite detention

at the U.S. Naval Base at Guantanamo Bay, Cuba as enemy combatants.  At the core of the

present dispute are the Factual Returns containing the basis upon which the Government is

detaining each of the petitioners.  As this Court recognized in its Memorandum Opinion that

accompanied the June 1 Order, the Factual Returns "are fundamental to these proceedings. . . .

[They] detail what the detainees are accused of doing and who they are accused of being.  They

are the basis on which the government justifies each petitioners' detention," and "[t]he public's

2

understanding of the proceedings . . . is incomplete without [them]."  June 1, 2009 Mem. Op.

("June 1 Mem. Op.") (Schulz Decl. Ex. B) at 15.

A.      **Government's Motion to Seal the Factual Returns**

        In November 2008, the Government was specifically ordered to file an unclassified

version of each factual return appropriate for public disclosure.  *See* November 6, 2008 Order

(Dkt. No. 940) at 2.  But when the Government began to file its unclassified returns the next

month, it simultaneously designated them "protected," in their entirety, under paragraph 34 of

the September 11, 2008 Protective Order.  *See* September 11, 2008 Protective Order (Schulz

Decl. Ex. E).[1]  Information so designated as "protected" is maintained under seal by the Court,

and is not disclosed or distributed to anyone other than petitioners' counsel.  Protective Order

¶ 35.  Through its actions, the Government thus withheld its Factual Returns from the public *in

toto*.

        The Protective Order, however, requires the Court to determine whether information

deemed "protected" by the Government may properly be withheld from the public.  *See id*. ¶¶ 10,

34.  The Government therefore filed a motion last December seeking to confirm the "protected"

status of the unclassified Factual Returns, so that they could remain entirely under seal.  *See*

Resp't's Mot. to Confirm Designation of Unclassified Factual Returns as "Protected" (the

"Government's Sealing Motion") (Dkt. No. 1416).  In its motion, the Government claimed that

sealing the unclassified returns was necessary because its own review of the returns produced to

petitioners "revealed that properly classified material ha[d] not been fully redacted," and the

"collection and analysis" of this classified material "could yield usable intelligence harmful to

---

[1] The September 11, 2008 Protective Order has been amended twice.  Because these amendments are unrelated to the matters in issue here, Press Intervenors reference the September 11 Protective Order and attach it for the Court's convenience as Exhibit E to the Schulz Declaration.

the interests of the United States."  Govt's Sealing Mot. at 3-4.  The Government stated that

"[c]lassification review of all factual returns by Respondents is continuing to the end that

declassified returns suitable for public disclosure will be prepared and served," *id*. at 4, but gave

no date by which it would complete this review.  The Government asked for an order keeping the

returns under seal indefinitely.

The detainees filed a consolidated opposition to the Government's Sealing Motion,

arguing in part that there was no justification for the "blanket" request to seal unclassified

information.  *See* Pet'rs' Opp'n to Resp't's Mot. to Confirm Designation of Unclassified Factual

Returns As "Protected" (Dkt. No. 1480).  The Press Intervenors also sought to be heard in

opposition to the request to seal *un*classified material, and the Court permitted intervention for

the limited purpose of opposing the Government's motion. June 1 Mem. Op. at 1.

The Press Intervenors asserted both a First Amendment and common law right to inspect

the Factual Returns, and urged that the request for wholesale sealing fell far short of meeting the

Government's burden (a) to establish a compelling need to withhold specific information from

the public, and (b) to demonstrate that the sealing requested was both narrowly tailored and

effective.  *See* Press Intervenors Mem. in Opp'n to Gov't Mot. to Confirm Designation of

Unclassified Factual Returns as "Protected" ("Press App. Opp'n") (Dkt. No. 1526-2) at 2.  The

Press Intervenors did not challenge the redaction of classified information from the returns, but

the entire point of their motion was that unclassified information could not unilaterally be

withheld.

The Court entertained argument on the Government's Sealing Motion on March 26,

2009.  *See generally* Transcript of March 26, 2009 hearing before Judge Thomas F. Hogan

("Hearing Tr.") (Schulz Decl. Ex. C).  As the Court articulated it, the Government's motion

sought "to designate every unclassified return as protected because they may inadvertently disclose classified information . . . or as a group may cause national security injury . . . ." *Id*. at 26 (Hogan, J.).  The Government asserted that it had made a sufficient showing for such relief because "[w]e have identified with specificity the concerns that we have, the national security implications of proceeding to file these on the public record . . . ." *Id*. at 34.

Although the Court appreciated the significant burden required for the Government to make a specific showing in each case, it also recognized that, in the absence of such a showing, the Government was asking the Court "to bless the Government's *unilaterally determining whether this information is protected . . . .*" *Id*. at 40 (emphasis added).  Responding to the Government's request that it be permitted to litigate these cases and file publicly releasable records only at a later date, the Court stated:

> The problem with that [is that] . . . you're asking then to continue
> to litigate these basically in secrecy when there is certainly a right
> of the public to know what's going on.  *Without clearly defining
> what you want to withhold from the public* as matters of national
> security or not until some later time that's undefined.

*Id*. at 56-7 (emphasis added).

## B.    The Court's June 1 Memorandum Opinion and Order

On June 1, 2009, the Court *denied* the Government's Sealing Motion without prejudice. Relying on two previous decisions of the Court of Appeals rejecting the Government's identical claim of unilateral authority to seal unclassified information in its court filings, *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008), and *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007), this Court found that the Government once again "failed to provide a court with a sufficient 'basis for withholding' the unclassified information in these cases."  June 1 Mem. Op. at 7 (quoting *Parhat*, 532 F.3d at 852-53).  Mindful of its obligation to "accommodate the government's 'legitimate interest in protecting sources and methods of intelligence gathering,'" the Court gave

the Government an additional sixty days to correct the situation.  In each case, the Government

was given until July 29, 2009 to either file publicly an unclassified version of the factual return,

as the Government originally had been directed to do in the November 6, 2008 Order, or to file

under seal an unclassified factual return identifying the exact unclassified language it seeks to

withhold and its justification for the requested secrecy.  *Id*. at 8-10.  Specifically, the Court

instructed:

> On or before July 29, 2009, for each petitioner in the above-
> captioned cases, the government is directed to either (i) publicly
> file a declassified or unclassified factual return or (ii) file under
> seal with the petitioner's counsel and the appropriate Merits Judge
> an unclassified factual return highlighting with a colored marker
> the exact words or lines the government seeks to be deemed
> protected, as well as a memorandum explaining why each word or
> line should be protected.

*Id*.  The Order further provided that the Government was required to file a motion with the

appropriate merits judge seeking to designate the highlighted portions of the return as protected

information, unless an agreement could be negotiated with the detainee's lawyer.[2]

Leaving no ambiguity about what was required, the Opinion concludes by reiterating

these instructions:  "For each petitioner, the government must either publicly file a factual return

or file under seal a marked copy of the unclassified factual return highlighting the specific

information for which it seeks protected status."  *Id*. at 19.

---

[2] The Court also agreed with Press Intervenors that both the First Amendment and the common law afford
the public a qualified right of access to the unclassified factual returns, June 1 Mem. Op.  at 17, 19, and
determined that "[p]rohibiting public access to every document in every factual return" was neither
essential to achieve the Government's interest in protecting national security nor narrowly tailored to
achieve that interest, *id*. at 17.  Accordingly, the Court ordered that in any case in which (1) the
Government does not file a declassified or unclassified factual return by July 29, 2009 and (2) the
detainee does not thereafter seek an unclassified factual return, the Press Intervenors are permitted to file
on or after September 29, 2009 a motion with the appropriate Merits Judge requesting an unprotected
factual return.

**C.**     **The Government's Failure to Comply With the June 1 Order**

It appeared from a review of the dockets in early August that the Government had

publicly filed unclassified or declassified Factual Returns in compliance with the Court's June 1

Order.  On September 24, however, counsel for Press Intervenors learned that Judge Bates had

issued an order to show cause against the Government for violating the June 1 Order in one of

the habeas cases.  *See* September 24, 2009 Order in *Al-Ghizzawi v. Obama*, Civ. A. No. 05-2378

(Bates, J.) (Schulz Decl. Ex. D) at 3.  As described by Judge Bates, the Government admitted in

sealed motion papers filed in *Al-Ghizzawi* that the publicly filed factual return withheld more

than just classified information.  The Government had also withheld from the public additional

information "'which while not classified, implicates significant security or other interests.'"  *Id.*

at 2 (quoting Resp't's Opp'n to Pet'rs' Mot. for Rule to Show Cause at 4).  In short, the

Government admitted that it had withheld *un*classified information without seeking court

review—taking precisely the course that was *prohibited* by this Court's June 1 Order.

Judge Bates rejected the Government's assertion that unilaterally withholding

unclassified information somehow complied with the June 1 Order:

> Respondents admit they filed public factual returns that redacted
> not only classified information, but also information designated as
> protected.  But the only procedure for redacting protected
> information in a public factual return was pursuant to option (ii) of
> the Court's June 1, 2009 Order.  Yet respondents did not avail
> themselves of this procedure: they neither "highlight[ed] . . . the
> exact words or lines" deemed protected, nor filed a "memorandum
> explaining why each word or line should be protected."

September 24 Order at 2 (internal citations omitted) (quoting June 1 Order at 1-2).  Judge Bates

ordered the Government to file a factual return in *Al-Ghizzawi* that complies with the June 1

Order by October 16.  *Id.*

Having learned of the Government admission in *Al-Ghizzawi*, counsel for Press Intervenors immediately contacted the Department of Justice to determine if the Government had complied with the June 1 Order in the other habeas cases.  Schulz Decl. ¶ 11.  DOJ attorney Julia Berman advised that unclassified information was redacted from the Factual Returns in *all* of the habeas cases, and was done without any notice to the court, the parties or the public.  The Government did not highlight for the Court the unclassified words or phrases being withheld, did not provide any explanation of its reasons for keeping the information secret, and did not seek permission for the redactions.  *Id.*

Counsel for Press Intervenors asked the Government what steps it intended to take in light of Judge Bates' finding that its withholding of unclassified information violated the June 1 Order.  Ms. Berman acknowledged the "global ramifications" of Judge Bates' Order for all of the habeas cases, but was unable to state what the Government would do in response.  *Id.* ¶ 12.

## ARGUMENT

## I.

## THE GOVERNMENT'S ACTIONS PLAINLY VIOLATE THE JUNE 1 ORDER

The Government's continued, unilateral withholding of unclassified information from the public files of these judicial proceedings—with no judicial notice or approval—is an act of contempt, in direct violation of this Court's June 1 Order.

The Government's actions cannot be squared with its own motion for permission to seal or the Court's resolution of that motion.  The Government claimed a need to designate the Factual Returns as "protected" because inadvertent errors in their production had caused classified information to be disclosed, and sought permission to maintain the Factual Returns under seal until it could produce versions with all classified information removed.  *See* Gov't Sealing Mot. (Dkt. No. 1416) at 7-8.  The Press Intervenors did not challenge the Government's

request to redact classified information, but specifically opposed its proposal to keep *un*classified

information under seal indefinitely.  The specific issue litigated and argued was the need for

judicial review and supervision of any effort to withhold unclassified material.  *See* Press App.

Opp'n (attached as Exhibit A to Press App. Mot. to Intervene) (Dkt. No. 1526-2) at 2-3, 11-13.

The Court decided this issue and held the Government's request to withhold unclassified

material insufficient because "*requests to designate information as protected require specificity*."

June 1 Mem. Op. at 7 (emphasis added).  It ordered the Government to either disclose the

unclassified information or provide the necessary specificity.

      In the face of this direct order, the Government simply disobeyed.  It did not appeal and it

did not provide a more specific request to maintain unclassified information under seal.  It just

withheld unclassified information from the Factual Returns, arrogating to itself the decision

whether information is protected even though "[t]he Protective Order instructs that the ultimate

decision to deem information protected is left to the Court."  *Id*. at 2.

      A federal court is empowered to punish "such contempt of its authority . . . as

[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."  18

U.S.C. § 401(3); *see also Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) ("'The

power to punish for contempts is inherent in all courts; its existence is essential to the

enforcement of the judgments, orders, and writs of the courts, and consequently to the due

administration of justice.'") (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1874)); *accord*

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Webb v. District of Columbia*, 146 F.3d 964,

971 (D.C. Cir. 1998).  Indeed, the Court has a duty to take "affirmative action when [its] lawful

commands . . . are defied."  *In re Fletcher*, 216 F.2d 915, 917 (4th Cir. 1954).

Here, the Government is subject to contempt sanctions just as any other party to litigation or officer of the court. *Nelson v. Steiner*, 279 F.2d 944, 948 (7th Cir. 1960) ("executive branch of government has no right to treat with impunity the valid orders of the judicial branch"); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 14 (D.D.C. 1999) ("courts have a duty to hold government officials responsible for their conduct"); *In re Sylvester*, 41 F.2d 231, 236 (S.D.N.Y. 1930) ("United States attorney and his aides are not privileged characters, but are subject to precisely the same rules and penalties . . as other members of the bar of this court.").

A finding of civil contempt involves two elements.  First, the court must have "entered an order that is clear and reasonably specific." *Cobell*, 37 F. Supp. 2d at 16.[3]  Second, the party or its attorneys must have violated that order.  *Id*. at 18.  "Generally, to properly hold a party or its attorneys in civil contempt, the court must find facts meeting these two elements by clear and convincing evidence."  *Id.* at 9.

In the D.C. Circuit, the "intent of the recalcitrant party is irrelevant" in a civil contempt proceeding.  *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir.1981); *see also Food Lion, Inc. v. United Food and Commercial Workers Intern. Union,* 103 F.3d 1007, 1016 (D.C. Cir. 1997) (noting absence of requirement that the alleged contemnor's conduct have been intentional or taken in bad faith).  Nor may a party avoid a finding of contempt simply by asserting that it misunderstood the order in issue or made a good faith effort to comply with it. *Food Lion*, 103 F.3d at 1016.  Rather, "a party must demonstrate that it 'took all reasonable steps within [its] power to comply with the court's order.'"  *Id*. (citation omitted, alteration in

---

[3] In resolving whether an order is sufficiently clear and specific to justify a finding of contempt, the D.C. Circuit applies "an objective standard that takes into account both the language of the order and the objective circumstances surrounding [its] issuance."  *United States v. Young*, 107 F.3d 903, 907-08 (D.C. Cir. 1997) (noting that "[w]hether an order is clear enough depends on the context in which it is issued and the audience to which it is addressed").

original).  Here, the Government has not taken "all reasonable steps" to comply; it has simply

chosen to disregard the Order.

The June 1 Order is clear and reasonably specific.  It gave the Government just two

choices: For each petitioner, the government was required *either* to publicly file a factual return

with only classified material removed, *or* file under seal a marked copy of the unclassified

factual return highlighting the specific additional unclassified information it seeks to seal.

Instead, the Government filed factual returns that redacted *both* classified information and

unclassified information, and did so without following the *only* procedure authorized for

redacting unclassified information, set forth in option (ii) of the June 1 Order.

Nor may the Government credibly assert that it misunderstood the terms of the Order.

Under option (i), the Government was required to "publicly file a declassified or unclassified

factual return."  June 1 Order at 1-2.  In its Sealing Motion, the Government explained these

terms in its own words:

> An "unclassified" return is one in which all classified information
> has been redacted.  These have been prepared as a preliminary
> measure to provide information to the detainees as quickly as
> possible.  A "declassified" return is one in which formerly
> classified information has been determined by authorized
> declassification officials to no longer require security
> classification.

Gov't Sealing Mot. (Dkt. No. 1416) at 4 n.8.  Neither of these terms, as the Government defined

them, include unclassified information that the Government otherwise considers sensitive and in

need of protection.  By proceeding under option (i) the Government was representing that no

unclassified material was removed from the unclassified or declassified returns it was filing.

This was perfectly clear from the Order itself.  As Judge Bates observed, "[i]f option (i)

governed the filing of public factual returns that redacted protected information, option (ii) would be unnecessary." September 24 Order at 3.

The Government's apparent suggestion to Judge Bates that this Court would never have intended "highlighted" returns to be filed in all of the habeas cases, *see id.*, is, in a word, disingenuous. As Judge Bates noted, the cumbersome procedures detailed in option (ii) would only be necessary where the Government failed to file an unclassified or declassified factual return. The Court *denied* the Government's motion to seal unclassified material but delayed the filing of the factual returns to permit the Government the opportunity to ensure that no classified information would thereby be disclosed. Again, the Court's June 1 Memorandum Opinion is clear:

> Although unpersuaded by the government's request, the Court is also not convinced that the government's failure to plead with specificity mandates that it *immediately identify specific information to protect or release the unclassified returns*, as petitioners demand. Petitioners do not contest that the unclassified returns may contain classified information. . . . [T]he Court exercises its discretion *to provide the government with sufficient time to review the returns to prevent the dissemination of classified information*.

June 1 Mem. Op. at 8 (emphasis added).

As Judge Bates concluded in *Al-Ghizzawi*, the Government's actions are a direct violation of the Court's June 1 Order, for which no credible excuse or justification exists.

## II.
## APPROPRIATE SANCTIONS SHOULD BE IMPOSED

A civil contempt action is the appropriate proceeding to "to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *Food Lion*, 103 F.3d at 1016. The primary purpose of civil contempt is to vindicate a court's authority. *Blevins Popcorn, Co.*, 659 F.2d at 1185 n.73. Upon a finding of civil contempt, the court may

impose several remedies to meet the dual purposes of compliance and compensation, including "contempt citations, fines, awards of attorneys fees, and such other orders and sanctions as [it] finds necessary." *Cobell*, 37 F. Supp. 2d at 10.

As discussed above, the Government's violation of the June 1 Order cannot be construed as anything other than willful.  The Government's actions once again have undermined the procedures imposed by the courts to protect the public's right to know what transpires in the judicial proceedings involving the Guantanamo detainees.  The Government was previously told of its obligations in *Bismullah* and in *Parhat*, and these same obligations were restated in the June 1 Order in this case.  Yet, the Government consistently has chosen to disregard its obligations as a litigant.

In light of the Government's willful failure to comply with the Order, the Court at this time should require the Government to:  (1) comply with the disclosure obligations imposed by the November 2008 Order and the June 1 Order by no later than 10 days following a resolution of this motion; (2) require the Government affirmatively to represent that it is not similarly withholding unclassified information from its other court filings in these cases without affirmatively filing a motion to seal, as required by the existing Protective Order, and (3) pay Press Intervenors' reasonable attorneys' fees and costs in bringing this motion.

## CONCLUSION

For each and all the foregoing reasons, the Court should issue an Order to show cause why the Government should not be held in contempt for violating the Court's June 1 Order and direct the Government to:

(1)     comply with the June 1 Order within ten days;

(2)     affirm that, in any instance where documents have been filed from which

*un*classified information is withheld, a motion for permission to seal has been

filed, as required by Paragraphs 34-35 of the Protective Order governing these

cases, and

(3)     pay Press Intervenors' reasonable costs and attorneys' fees on this motion;

and enter such other and further relief as the Court deems just and necessary.

## STATEMENT OF COMPLIANCE WITH LOCAL RULE 7(m)

Press Intervenors have conferred with the Government in a good faith effort to resolve

the issues raised by their motion.  The Government does not consent to the motion and has stated

that it will oppose the motion.

Dated: October 6, 2009                     Respectfully submitted,

                                           LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                                           By:    /s/ Jeanette M. Bead
                                                  David A. Schulz, DC Bar No. 459197
                                                  Jeanette M. Bead, DC Bar No. 480539
                                           1050 Seventeenth Street, NW, Suite 800
                                           Washington, DC 20036-5514
                                           Phone (202) 508-1100
                                           Fax (202) 861-9888

                                           *Counsel for Press Intervenors*

*Of Counsel*:
David H. Tomlin
Associated Press
450 West 33rd Street
New York, NY 10001

David E. McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018

Barbara L. Wall
Gannett Co., Inc.
7950 Jones Branch Drive
McLean, Virginia 22101