**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| IN RE: ) | |
|   GUANTANAMO BAY ) | Misc. No. 08-442 (TFH) |
|   DETAINEE LITIGATION ) | |
| ) | |
| ) | |
| _____ ) | |

**RESPONDENTS' OPPOSITION TO THE PRESS INTERVENORS'**
**MOTION FOR AN ORDER TO SHOW CAUSE WHY THE**
**GOVERNMENT SHOULD NOT BE HELD IN CONTEMPT**

**INTRODUCTION**

Respondents hereby respond to the motion by the Associated Press, The New York Times Company, and USA Today (the "press intervenors" or "intervenors") for an order requiring the Government "to show cause why it should not be held in contempt for willfully failing to comply with this Court's June 1, 2009 Order" (Dkt. No. 1781) (the "June 1 Order") pertaining to the filing of publicly releasable factual returns for *habeas corpus* petitioners detained at Guantanamo Bay. Intervenors' Mot. at 1. No grounds lie here for a finding of contempt, and the specific relief requested by the press intervenors should be denied.

The extraordinary sanction of contempt is not warranted because the Government has already expended tremendous resources – totaling more than 35,000 hours' time – in processing and publicly filing more than 150 classified factual returns, all in full compliance with the Court's Order. The intervenors' contrary interpretation ignores the Order's plain text and the context in which it issued. But even if the Court disagreed with the Government's interpretation of the Order, the efforts made by Respondents to

comply with the Order as they understand it demonstrates that this is not a case where resort to the contempt power is necessary to ensure compliance with the Court's wishes.

Indeed, the Government has no interest in unnecessarily withholding information from the public.  As a result of a months-long review, the Department of Defense recently revised and standardized its procedures for the classification and withholding of sensitive but unclassified information.  The new procedures will likely result in the public release in these cases of more formerly classified information, and fewer withholdings of sensitive but formally unclassified material.   Consequently, the Government intends, irrespective of the press intervenors' motion, to re-process the factual returns for public release according to the new, less restrictive procedures.

The Court should not require, however, that the Government additionally prepare highlighted versions of these re-processed returns, and then submit them to individual Merits Judges for line-by-line adjudication of the grounds for withholding highly sensitive but unclassified information from each publicly filed return.  As discussed herein, the June 1 Order does not impose such an onerous requirement on the Government.  In addition, for purposes of this response the Government has processed a sample of five returns under the new Defense Department procedures, which demonstrates, as set forth more fully below, and in the classified supplement filed under seal herewith, that following the course proposed by the intervenors in more than 150 cases would compound the burdens of re-processing the returns, place greater demands on the time and resources of both the affected agencies and individual Merits Judges, and correspondingly inhibit the progress of the pending *habeas* cases.  The sample set of returns has also revealed that, under the new Defense Department procedures, the great

majority of the sensitive but unclassified information that the Government would seek to exclude from the public record is likely to fall into a number of discrete categories, discussed in the classified supplement, that implicate law enforcement, national security, or other significant governmental interests.

Accordingly, even if the Court concluded that the Government has misconstrued the June 1 Order, in lieu of particularized litigation over each piece of unclassified information in a return that the Government might designate for redaction, the Court instead should approve as a general matter the redaction of information falling into the recurrent categories identified in the sample.  Litigation before individual Merits Judges should be reserved for cases in which the Government seeks to withhold information that falls outside these specific categories.  This categorical approach would strike a workable balance among the public's right of access to information about these cases, the Government's interest in protecting sensitive law enforcement and national security information, and the interests of the petitioners, the Court, and the Government alike in a prompt resolution of the pending *habeas* cases.

For these reasons, discussed more fully below, the press intervenors' motion should be denied.

## BACKGROUND

After the Supreme Court recognized for the first time a constitutional right for military detainees held during a time of armed conflict to challenge their detention in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), this Court as the coordinating Judge established a schedule for the Government to file factual returns for detainees held at Guantanamo Bay.  Filing the factual returns served, in essence, as the first step in

litigating a detainee's habeas petition.  These detainees were captured in the course of ongoing military or intelligence operations, and as a result the individual pieces of information collected into a factual return consisted largely of material that was classified; the overall assemblage was thus deemed classified in its entirety.[1]

Throughout the summer and fall of 2008, and continuing even to the present, the Government filed factual returns justifying the detention of more than 190 military detainees according to the Court's schedule.  The returns, being classified, were provided to the Court and the detainees' counsel but not filed on the public docket.  This Court's original Case Management Order of November 6, 2008 (Dkt. No. 940), required the Government to file unclassified versions of the factual returns.  In the course of preparing the unclassified returns, the Government discovered that, as a result of processing so many returns in the short time prescribed, errors had been made such that classified information contained in the returns had not been redacted.  These errors, together with the massive release of formerly classified information, created a substantial risk that harm to the national security would result from filing the unclassified returns on the public docket.

To rectify this situation, the Government moved the Court to designate the unclassified returns in their entirety as "protected" under the Protective Order governing these cases, and maintain them under seal.[2]  Among other things, the Government argued

---

[1]   This was a necessary determination because, for example, information that might be unclassified standing alone could, when placed in context or with other information in the return, reveal classified information.

[2]   The unclassified returns, of course, were provided to petitioners' counsel, and the Government specifically authorized them to be shown to the detainees.  The

(continued...)

that the ongoing litigation of more than 150 habeas cases, involving the clearance of

documents needed for the filing of new factual returns, clearance of documents for

production in discovery, and the declassification of documents for detainee use, should

take priority over reviewing the unclassified returns for redaction errors.  The

Government asked that the filing of publicly releasable returns be delayed until the

litigation was sufficiently advanced that resources could be devoted to the effort.  *See*

*generally* Respondents' Motion To Confirm Designation of Unclassified Factual Returns

as "Protected" (Dkt. No. 1416).

The petitioners opposed this motion, and several media organizations moved to

intervene and likewise oppose the Government's request.  This Court understood from

the briefing and oral argument that the essence of the parties' dispute concerned the

timely release of returns to the public.  *See, e.g.,* Transcript of Hearing, Intervenors'

Mot., Exh. C-2 ("Hearing Tr.") at 26, 35-37; Press Applicants' Mot. To Intervene (Dkt.

No. 1526) at 1-2; Press Applicants' Mem. (Dkt. No. 1526-2) at 5, 17.  The Court

understood as well that the resolution of this issue, whether through the preparation and

filing of a new set of returns suitable for public release, or litigating the designation of

each existing, unclassified return as protected, would require the affected agencies to

make substantial commitments of personnel time and resources in order to comply.  *See*

-------

[2]  (...continued)
Government subsequently developed a process by which information in the returns
could be declassified in a manner that, while not suitable for release to the general public,
provided various participants in the litigation the most information possible.  For
example, documents have been declassified with the understanding that they will only
be seen by the detainee-petitioner in a particular case.  They thus may contain
information that otherwise could not be disclosed to other detainees or to the public.

Memorandum Opinion (Dkt. No. 1780) at 8.  So understanding, when the Court rejected

the Government's motion to confirm the protected status of all the unclassified factual

returns, it did so without prejudice, and offered Respondents a choice, by July 29, 2009,

either to

> (i) publicly file a declassified or unclassified factual return or (ii) file under seal
> with the petitioner's counsel and the appropriate Merits Judge an unclassified
> factual return highlighting with colored marker the exact words or lines the
> government seeks to be deemed protected . . . .

June 1 Order at 1-2.

In an effort to resolve rather than to prolong the dispute over public access to the

returns, the Government decided not to litigate over the protected designation of

individual factual returns, and instead chose to prepare declassified returns suitable for

immediate public release, in accordance with option (i).  The Government chose

option (i), notwithstanding that it presented the more burdensome and difficult course for

the agencies involved, and committed extraordinary resources to producing publicly

releasable versions of over 150 returns for public filing.  *See* Declaration of Terry M.

Henry, dated November 17, 2009 ("Henry Decl.") (filed herewith), ¶¶ 8-10.  Those

returns redacted classified information as well as formally unclassified information that

nevertheless implicated significant law enforcement, national security, or other interests,

and therefore was not suitable for public release.  The Government also undertook the

task of declassifying information in the returns where possible, to enhance the amount of

information available for the petitioners' own use.  *Id.*, ¶ 10.  All told, the preparation of

the returns consumed more than 35,000 hours' time of well over one hundred

classification specialists, law enforcement agents, intelligence analysts, and counsel

employed at multiple government agencies.  *See* Declaration of Amanda Clark, dated

November 18, 2009 ("Clark Decl.") (filed under seal), ¶ 11; Henry Decl., ¶ 11;

Declaration of Brenda L. Heck, dated November 18, 2009 ("Heck Decl.") (filed under

seal), ¶ 10.  Through this massive interagency effort, Respondents succeeded in filing

publicly releasable versions of the factual returns in more than 150 cases before the

July 29 deadline expired.

The press intervenors now move this Court to hold the Government in contempt

for allegedly violating the June 1 Order, and to compel the Government to re-process the

returns according to option (ii) of the Order as they construe it.[3]  For purposes of its

opposition to the press intervenors' motion, the Government has processed a sample of

five factual returns in the manner that the press intervenors propose.  The five returns

were prepared under a new set of procedures, adopted recently by the Department of

Defense, for the continuing classification or declassification of detainee-related

information used in connection with these *habeas* proceedings.  Clark Decl., ¶ 6.  The

new procedures have the potential to reduce to a significant degree the amount of

information that must be withheld from the publicly releasable returns.  *See id.*  On the

basis of this sample set of re-processed returns, and subject to the resource constraints of

---

[3]   The press intervenors' motion is largely based upon the decision in *Al-Ghizzawi v. Obama*, No. 05-2378 (Dkt. 266) (Bates, J.), which in essence required the Government to submit a highlighted return for that case in accordance with the interpretation of option (ii) advocated by the intervenors here.  The Court reached a similar result in *Ali v. Obama*, No. 09-0745 (Dkt. 1335) (Lamberth, C.J.).  The Government respectfully disagrees with the decisions in  *Al-Ghizzawi* and *Ali* for the reasons described in part I of the argument herein.  In light of the instant motion, however, the Government complied with the Court's order in *Al-Ghizzawi,* and intends to do so in *Ali,* without further litigating the issue in those cases.

other agencies involved in the process, the Defense Department estimates that it would take approximately three months to re-process all 150 returns under the new procedures. *See id.*, ¶ 14.  That estimate rises to at least four months, however, if in addition the Government must justify (with legal memoranda supported by agency declarations) the withholding of each piece of sensitive but unclassified information contained in the returns.  *Id.*  The sample also reveals that the vast majority of the sensitive but unclassified information that the Government would seek to redact from publicly filed versions of the returns would fall recurrently into specific categories implicating significant law enforcement and national security interests, among others.

## ARGUMENT

**I.   CONTEMPT DOES NOT LIE IN THIS CASE BECAUSE THE GOVERNMENT COMPLIED WITH THE COURT'S ORDER, AND EVEN  ON THE CONTRARY VIEW HELD BY THE INTERVENORS, CONTEMPT WOULD BE UNNECESSARY TO ACHIEVE COMPLIANCE WITH THE COURT'S INSTRUCTIONS.**

Civil contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct." *California Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885).  "In light of the remedy's extraordinary nature, courts rightly impose it with caution." *Joshi v. Professional Health Services, Inc.*, 817 F.2d 877, 879 n.2 (D.C. Cir. 1987).  As the Supreme Court has held, "the very amplitude of the power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451 (1911).  Indeed, in order to prevent abuses of the contempt power and to protect those on whom this potent authority may be visited, Congress has long regulated the exercise of the contempt power by statute.  *See* 18 U.S.C. § 401 (providing that a

court of the United States shall have the power to punish only certain acts as contempt, including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"); *In re McConnell*, 370 U.S. 230, 233-34 (1962); *Nye v. United States*, 313 U.S. 33, 44-48 (1941); *In re Brown*, 454 F.2d 999, 1002 (D.C. Cir. 1971).

Accordingly, civil "contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous . . . and the violation [is proven] by 'clear and convincing' evidence." *Armstrong v. EOP*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citations omitted); *United States v. Shelton*, 539 F. Supp. 2d 259, 262-63 (D.D.C. 2008). Moreover, inasmuch as civil contempt is a remedial device used to achieve compliance with an order of the court that has been violated, *see SEC v. Showalter*, 227 F. Supp. 2d 110, 120-21 (D.D.C. 2002), contempt sanctions can be avoided by prompt compliance with the order, *Petties v. District of Columbia*, 888 F. Supp. 165, 169 (D.D.C. 1995).

Under these standards, a finding of contempt is unwarranted here.  The press intervenors' motion relies on the premise that the Court's June 1 Order, rather than giving Respondents a clear choice between options (i) and (ii), required the Government to follow option (ii), as they construe it.  That contention is without merit.  As discussed below, the intervenors' interpretation of the Order ignores both its text and the context in which it issued.  Respondents fully complied with the letter and intent of the Order by choosing option (i) and filing on the docket factual returns suitable for public release.

In doing so, the Government expended tremendous resources across more than four national security agencies to create publicly releasable returns addressing the crux of the parties' dispute regarding public access to the returns.  Indeed, the time and resources expended to prepare declassified returns for public filing far exceeded what would have

been necessary had the Government simply chosen option (ii), reviewed the existing

unclassified returns for redaction errors, and submitted highlighted returns for

adjudication by the Merits Judges of the Government's request to maintain the returns

under seal.  Thus, even if the Court disagreed with the Government's interpretation of the

June 1 Order, the extraordinary, 35,000-hour effort the Government made to comply with

the Order as Respondents understood it (and continue to understand it) demonstrates that

this is not a case where resort to the contempt power is necessary to ensure compliance

by a recalcitrant party.  For this reason as well, the Court should decline the intervenors'

invitation to exercise that power in this instance.

> **A.** **The Government Complied with the Court's Order by Choosing the First Option and Filing Public Versions of the Factual Returns.**

In essence, the intervenors interpret the Court's Order as requiring the

Government to comply with option (ii) alone, as they choose to construe it, in any case

where a factual return contains sensitive but unclassified information that must be

excluded from the public record.  That interpretation is not borne out by the text of the

Court's Order or the context in which it originated.

> **1.** **The plain text of the Order provides the Government with a choice to prepare and file returns suitable for public release, or to justify the continued maintenance of the existing unclassified returns under seal.**

The text of the June 1 Order and the choice it presents to the Government are

clear:  by July 29, 2009, the Court required the Government in each case *either* to prepare

and file a factual return suitable for release to the public *or* to file a highlighted version of

the existing unclassified return with the Merits Judge, detailing the information that

10

cannot be revealed on the public record and why.  Order at 1-2.  Thus, the Order clearly extended to the Government a *choice,* stated in the disjunctive every time it is referenced in the Order and the Court's Memorandum Opinion, either to file a publicly releasable return under option (i), or to submit a highlighted return for adjudication under option (ii).  The intervenors assert that the Government may only file under option (i) "a factual return with only classified material removed."  Intervenors' Mot. at 11.  But their argument imports and focuses on a qualifier not contained in the text of the Order.  The terms of option (i) make no distinction between returns from which unclassified information must be excluded, and those that contain none.

Indeed, in summarizing its Order, the Court explained the ruling and its requirements in unambiguous terms:  "For each petitioner, the Government must *either* publicly file a factual return *or* file under seal a marked copy of the unclassified factual return highlighting the specific information for which it seeks protected status."  Memorandum Opinion at 19 (emphasis added).  The plain reading of the Order and Opinion therefore establishes a choice between creating factual returns suitable for public release or identifying information in each unclassified return that ought to have been redacted, and justifying the basis of that information the continued retention of the return under seal.  Indeed, the Court emphasized that the procedures of option (ii) were to be followed only "[i]f the government *chooses to file* a highlighted return."  Order at 2 (emphasis added).  The Court's description of the Government's "choice" would have been wholly counter-factual if, as the press intervenors imply, the Court actually intended to compel the Government to comply with option (ii).

It is undisputed that the Government has filed a factual return on the public docket in the case of each petitioner that sought one.  Having chosen to re-process the factual returns and file versions suitable for public release, the Government has fulfilled its responsibilities under the Order.

2.      **The context in which the Order issued makes clear the Government's choices.**

Even if the text of the Court's Order was not plain (and it is), the intervenors' reading of the June 1 Order is also belied by the context in which the June 1 Order issued.  The gravamen of the dispute over the Government's motion to maintain the unclassified returns under seal concerned whether and when the factual returns should be publicly released.  How that was to be accomplished – whether through a robust declassification process or case-by-case litigation over the grounds for sealing individual returns – was a question of means, not ends.  Appreciating the demands that either course would place on the Government's litigation resources, and that the Government was in the best position to evaluate the relative burdens of each option, the Court left the choice in each case to the Respondents.

The dispute leading to the Court's Order was a narrow one:  in its motion to confirm the protected designation of the unclassified returns, the Government sought only to protect the information in the unclassified returns until it could create publicly releasable versions; the intervenors objected to such a delay.  For this reason, the Government argued not for the sealing of information in perpetuity.  Rather, it simply requested that the Court prioritize litigation of the merits of petitioners' claims before requiring the fulsome review of the returns that would allow for their public release.  *See,*

*e.g.*, Hearing Tr. at 37 ("Our end state, Your Honor, is to file the fully declassified publicly releasable versions of the returns on the public record."); *see also id.* at 26, 35. The Court likewise recognized that declassified returns, suitable for release to the public, was the ultimate end state.  *See* Hearing Tr. at 26 ("[O]nce [the returns] are declassified, presumably . . . they will not be protected and remain under seal."); *see also id.* at 36-37.

The intervenors' opposition to the Government's motion to confirm was similarly premised on the limited argument that the *unclassified* returns should be released to the public immediately because they already had been reviewed for classified information. *See, e.g.,* Press Applicants' Mot. To Intervene (Dkt. 1526 at 1-2) (seeking permission to intervene "for the limited purposes of . . . opposing the [Government's] motion . . . to withhold from the public" the unclassified factual returns "that already have been reviewed to remove classified information"); *see also id.* at 4; Press Applicants' Mem. (Dkt. 1526-2) at 5, 17 (urging deadline for public filing of redacted returns).  Thus, as the parties and the Court recognized, the crux of the dispute concerned the *public release* of factual returns.

It was against this backdrop that the Court considered whether to confirm the Government's designation of the unclassified returns as protected, or to require further justification for withholding them from the public until the Government could create publicly releasable versions.  Indeed, at oral argument the Court "accept[ed] [the intervenors'] premise that the Government has specifically in each factual return [to] set forth the rationale as to why it should not be made public *until such time as they do a declassified return*."  Hearing Tr. at 53 (emphasis added).   When the plain terms of the Order are viewed, as they must be, with an eye toward the focal point of the parties'

dispute, it becomes even clearer that the Court offered the Government a choice in each case either to reach the desired end state and create factual returns suitable for public release within a limited period of time (as the intervenors urged), or to litigate the issue of maintaining the unclassified returns under seal before individual Merits Judges.

This is all the more so considering the Court's appreciation of the significant resources required either to litigate the protected designation of individual returns, or to create declassified returns for public release. *See* Memorandum Opinion at 8.  The Court was well aware that Government had processed unclassified returns and found errors, but had not yet expended the extensive resources required to correct those errors and prepare returns suitable for disclosure on the public record, as the Government repeatedly described. *See, e.g.*, Hearing Tr. at 36-38.  The Court accepted the Government's representation that either option, preparing declassified returns for filing on the public record, or litigating one-by-one the designation of the unclassified returns as protected, would involve the expenditure of significant resources, and would necessarily divert personnel from other important tasks in this litigation. *See* Memorandum Opinion at 8.

Under these circumstances, it made eminent sense for the Court to offer Respondents a choice, based on the Government's assessment of the relative burdens involved and its own resource constraints, either to start over, and prepare returns suitable for public release (that is, option (i)), or to review the previously created returns, identify the information contained therein that should have been redacted, and on that basis justify their continued maintenance under seal (option (ii)).  Indeed, at the hearing on the Government's motion, the Court acknowledged the practical difficulty of deciding between these two courses, and took "under advisement . . . . whether the Government is

14

going to have to litigate each individual return," commenting that whether the Government would have to "show specifically why *this unclassified return* cannot be made public, *or . . .* provide a *declassified return* in a reasonable period of time remains to be seen." Hearing Tr. at 61 (emphasis added). The Court sensibly resolved this conundrum by declining to dictate one course of action over another, and instead gave the Government the choice to file a publicly releasable return under option (i) or else to seek the continued designation of individual returns as protected under option (ii).[4]

The intervenors' reading of the June 1 Order is also implausible given this Court's understanding of the task facing the Merits Judges, who must oversee active litigation in scores of *habeas* cases while also managing their individual dockets of other pending civil as well as criminal cases. If, as the intervenors maintain, Respondents should have filed all of the returns with individual Merits Judges to decide whether they can be withheld from the public record, the practical result would have been to place an extraordinary burden on the Members of this Court to adjudicate, on a line-by-line basis, the proposed redactions in more than 150 returns, with the likely result of still further delays in resolving these cases on their merits. It is unlikely that the Court intended that result when in ruling on the Government's motion it remarked that "public access to the

---

[4]   The Court was additionally aware that publicly releasable declassified factual returns would withhold some information that, though formally unclassified, was particularly sensitive. This was made explicit at oral argument on the Government's motion. *See, e.g.*, Hearing Tr. at 32-33 ("The nature of this information, though, is such that it is intertwined with—not just classified and unclassified material, but also unclassified and sensitive material."); *see also id.* at 28-29 (noting that the returns included sensitive but unclassified information being made available to the petitioners for us in the litigation but not suitable for public release).

returns would negatively impact these proceedings if providing the public with access consumes substantial Court resources." Memorandum Opinion at 16.

Finally, it is worth noting the inherent irony of the press intervenors' position. Had the Government operated under the intervenors' construction of the Order, their desire for immediate public release of the returns would have been entirely frustrated. If the Government (like the intervenors) had concluded that the presence of sensitive but unclassified information in a return required the Government to follow option (ii), then in lieu of filing returns on the public record Respondents would have filed the existing unclassified returns under seal. In each individual case Respondents would have litigated the question whether the returns should remain under seal, with all the delays that would have entailed. The stated goal of the press intervenors was to require the immediate filing of factual returns in public, *not* the filing of separate returns under seal pending further litigation and evaluation by the Merits Judges.

Thus, both the plain language of the June 1 Order and the context in which it issued make clear that the Government's obligation in each case was by July 29, 2009, to prepare and file a return suitable for filing on the public record, or, in lieu thereof, to justify to the Merits Judge the continued maintenance of the existing unclassified return under seal until, at a later stage in the litigation, the resources could be brought to bear to prepare a return for public release. Having in each case chosen, after great effort, to file publicly accessible returns, the Government met its obligation. That being the case, the intervenors have presented no grounds on which to hold Respondents in contempt.

**B.      Even if the Government Has Misinterpreted the Court's Order,
a Contempt Citation Is Unnecessary To Ensure Compliance With
the Court's Wishes, and Is Therefore Unjustified.**

Even if Respondents have misconstrued the intent of the June 1 Order, contempt

would not lie here because the record of the Government's actions makes clear that the

extraordinary remedy of contempt is entirely unnecessary to ensure compliance with the

Court's intentions, and would therefore be inappropriate.  *Gompers,* 221 U.S. at 451.

A party may not be held in civil contempt merely for "[its] past failure to comply

with an order." *Cobell v. Norton,* 334 F.3d 1128, 1146-47 (D.C. Cir. 2003).  "Civil

contempt sanctions are employed only to *coerce compliance* with the court's order," *In re*

*Magwood*, 785 F.2d 1077, 1081 (D.C. Cir. 1986); *see also Cobell,* 334 F.3d at 1145, for

which reason an alleged contemnor "must be given the opportunity to bring himself into

compliance before the sanctions are imposed."  *Id.* at 1082 (internal quotation marks and

citations omitted).  *See also Petties*, 888 F. Supp. at 169 (civil contempt sanctions may be

avoided "by promptly complying with the court's order") (citation omitted).  As the

record makes clear, even if Respondents' understanding of the June 1 Order were not the

correct one, "a contempt order [would be] unnecessary to ensure compliance" with the

Order, meaning the rationale for civil contempt is not present here.  *See Benavides v.*

*Bureau of Prisons*, 993 F.2d 257, 260 (D.C. Cir. 1993).

When the Court issued its June 1 Order, Respondents' counsel conferred

immediately with the agencies whose documents and information were implicated, to

decide which of the two options to follow.  Henry Decl., ¶ 8.  To put an end to rather than

prolong the dispute over public release of the returns, Respondents decided to follow

option (i) – to re-process each of more than 150 returns to ensure their suitability for

public filing – even though this course of action required a far more involved process and greater expenditure of Government resources than would have been necessary to simply review the unclassified returns for mistakenly unredacted information and justify maintenance of the returns under seal, as option (ii) contemplated. *Id.,* ¶¶ 8-10. Following that decision Respondents undertook a tremendous interagency effort to successfully prepare and file publicly releasable versions of more than 150 factual returns by the July 29 deadline. *Id.*, ¶ 10. At the Department of Defense alone, 92 analysts expended a total of more than 33,000 hours reviewing individual documents in the returns for classified and other sensitive but unclassified information, applying appropriate redactions, and thereafter conducting a variety of reviews and revisions (as needed) for purposes of quality control. Clark Decl., ¶ 11; *see id*., ¶ 12. The other agencies involved, including the Justice Department's *habeas* litigation team, invested additional thousands of hours. *See, e.g.,* Henry Decl., ¶ 11. All told, then, the Government invested more than 35,000 hours of effort to prepare the returns filed on the Court's public docket on July 29.

Thus, the unsubstantiated claims by the intervenors that Respondents have "refused to obey" the June 1 Order, Intervenors' Mot. at 1, stand wholly refuted by the facts. Respondents did not undertake the daunting task of preparing and filing more than 150 declassified, publicly releasable returns to flout the Court's Order, but to comply with the Court's instructions as Respondents understood them. Henry Decl., ¶ 11; *see id.,* ¶ 7. Indeed, the Government chose to comply with the more burdensome option allowed under the Court's Order, in an effort to resolve the gravamen of the entire dispute. *Id.,* ¶ 9. And if advised by the Court that it must now prepare and file returns in

a manner that differs from the approach the Government took last summer, then the Government would again take all necessary and appropriate steps to comport with its obligations under the Court's decision (or seek appropriate alternative relief).   *See id.,* ¶ 12.  The record of the Government's actions and intentions in this matter demonstrates that the imposition of contempt sanctions is unnecessary to compel compliance with whatever instructions the Court might issue to Respondents in resolution of the instant motion.[5]   The contempt power is unbidden under circumstances such as these.

\* \* \*

In sum, the text and context of the Order demonstrates that the intervenors' interpretation is unsupported.  The Court's Order offered the Government the choice of creating fully publicly releasable factual returns, or justifying the designation of the unclassified returns as protected on the basis of demonstrated redaction errors, and the Government complied with the first of the two options.  Even if the Government did not correctly grasp the intended meaning of the Order, it chose the more resource-intensive option of complying with the Order as Respondents understood it, to meet the Court's concern about the public release of information related to these proceedings.  On either view of the matter, the Government should not now be subject to the extraordinary remedy of contempt sanctions.

---

[5]   Notably, in *Al-Ghizzawi* and *Ali, supra* n. 3, Judges Bates and Lamberth ordered the Government to comply with option (ii) of the June 1 Order in the manner advocated here by the intervenors, but they did not impose contempt sanctions, as the petitioners in those cases (represented by the same counsel) had requested.

II.   **THE RELIEF SOUGHT BY THE INTERVENORS WOULD ENTAIL SUBSTANTIAL EXPENDITURES OF GOVERNMENTAL AND JUDICIAL RESOURCES, DELAY THE RESOLUTION OF THE PENDING *HABEAS* CASES, AND IS UNNECESSARY TO ENSURE PUBLIC ACCESS TO INFORMATION ABOUT THESE CASES.**

In addition to the fact that no occasion is presented here for contempt, the specific relief sought by the press intervenors is neither necessary nor appropriate to vindicate the public's interest in access to information about these cases.  The Department of Defense has recently developed a less restrictive set of procedures regarding the classification and declassification of information made available for use in these proceedings, and intends, irrespective of the outcome of this motion, to re-process the previously filed returns under the new procedures, with the likely result that substantially greater disclosures of information will be made on the public record.  As set forth in the agency declarations filed under seal herewith,[6] a sample of five returns re-processed under the new procedures indicates that if Respondents were additionally required to follow the procedures that the intervenors maintain are required under option (ii), the time and investment of agency resources needed to complete the returns would substantially increase, as would the demands placed on the time and energies of the Merits Judges, and the delays in the adjudication of these cases on their merits.

The sample set also reveals that the majority of the unclassified information likely to be withheld under the new DoD procedure falls into several discrete categories that are

---

[6]   Because of the nature of the information in the various agency declarations, they are either classified or are themselves unsuitable for public release because, for example, their discussion of the type of material withheld from public release contains sensitive but unclassified information.  As a result, the declarations, exhibits and a supplement to this Response describing them have been filed under seal solely for the Court's *ex parte* review.

entirely appropriate and necessary to protect law enforcement, national security, or other significant governmental interests.  Hence, even if the Court concluded in principle that redactions of unclassified information from the publicly filed returns require judicial pre-approval, the Court should avoid wasteful and time-consuming litigation before the Merits Judges over redactions falling into these specific categories by generally authorizing the redaction of such information from the returns.  For these reasons as well, the relief sought by the press intervenors should be denied.

> **A.** **Case-by-Case Litigation Over the Returns as Envisioned by the Press Intervenors Would Unduly Inhibit the Progress of the Litigation.**

The Government has no interest in gratuitously withholding information pertaining to these proceedings from the public.  Indeed, the Government is committed to releasing the most information that can be disseminated to the public consistent with national security, to include protecting law enforcement and operational intelligence interests.  *Cf.* President's Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 26, 2009) ("[a]ll agencies should adopt a presumption in favor of disclosure . . .").

As described in the materials submitted for the Court's *ex parte* review, the Department of Defense has recently completed a revision of its classification and other procedures restricting the release of information.  The revised procedures substantially reduce the amount of Defense Department information that must be redacted from the publicly releasable returns, and the Government has decided, quite apart from the outcome of the instant motion, to re-process the Defense Department documents and information included in the returns according to the new procedures.  Clark Decl.,

¶¶ 6, 14.  As applied to the sample factual returns re-processed for purposes of this response, the new procedures allowed for public release of additional, formerly classified information, and required fewer withholdings of formally unclassified information as too sensitive for public dissemination.[7]  Although the returns filed last summer released all of the information that could be disseminated to the public at that time, the Government intends to revise the previously filed declassified factual returns according to these new procedures.  For reasons described in the materials submitted under seal, the Defense Department anticipates that it will attempt to complete this review on a rolling basis and – subject to competing priorities that may arise and the resource constraints of other agencies whose participation is necessary to re-process the returns – file revised factual returns in the coordinated habeas cases in approximately three months.  *Id.*, ¶ 14.

While the revision of the factual returns according to these new procedures will result in the release of additional information to the public, some formally unclassified information will remain too sensitive for public release.  For reasons described above, the June 1 Order would authorize the public filing of these returns pursuant to option (i), with the sensitive but unclassified information they contain redacted.  In the view of the press intervenors, however, option (ii) would require the Government to highlight the sensitive but unclassified information contained in each return, and submit each one to the Merits Judge for the purpose of line-by-line litigation over each individual redaction.

---

[7]  In some instances, these procedures affect documents originated by non-Department of Defense agencies because the "owner" of the information determines its classification.  To the extent another agency relies on Department of Defense-derived information, a decision that such information is no longer considered classified by the Department of Defense would generally result in its release in the public version of the other agency's document.

Proceeding in this fashion would enlarge the time require to re-process the returns to at least four months, *see* Clark Decl., ¶ 14, and in doing so disserve the interests of the Government, the petitioners, and the Court alike.

As described in the materials filed under seal, significant government resources will be required in any event to re-process the factual returns under the new Defense Department procedures.  But the diversion of agency time and litigation resources necessary to justify the redaction of each item of formally unclassified information that cannot be released to the public would necessarily impact the Government's ability to accomplish other tasks important to the progress of this litigation – including the clearance of documents for inclusion in new factual returns, clearing documents for release in discovery, and declassifying documents for use by petitioners in litigating their cases.  Thus, adopting the press intervenors' approach would have a detrimental impact on petitioners' interest in the prompt determination of their *habeas* claims to which the Supreme Court has held they are entitled.  And, as is apparent from the materials submitted under seal, the press intervenors' proposal would also place significant demands on the time and resources of the individual Merits Judges who would have to review and approve, one by one, withholdings of sensitive but formally unclassified information.  This additional burden on the Merits Judges likewise promises to inhibit progress toward the litigation of these cases on the merits.

**B.**    **Even if the Government Has Misconstrued the June 1 Order
and Must Justify the Withholding of Formally Unclassified
Information from the Publicly Filed Returns, the Court Should
Approve the Redaction of Recurrent Categories of Information
Implicating Significant Government Interests.**

Above and beyond the burdens and delays involved, it is also clear from the

materials submitted under seal that line-by-line litigation over the redaction of

unclassified information is unnecessary to strike the proper balance among the public's

right of access to information contained in the returns, the Government's interest in

avoiding harmful disclosures of sensitive law enforcement and national security

information, and the petitioners' interest in expeditious hearings on their claims.

Based on the sample factual returns processed under the new Defense Department

procedures for purposes of this response, the Government has identified certain recurrent

categories of information contained in the returns that is formally unclassified but that the

agencies involved consider too sensitive for public release.  The sample indicates that,

under the new procedures, a large majority of the unclassified information that the

Government will seek to redact from the publicly filed returns can be expected to fall into

these categories.  Contrary to the concerns expressed by the press intervenors that

Respondents seek to conceal information of an embarrassing nature, *see* Press

Applicants' Mem. (Dkt. No. 1526-2) at 15-16, these specific categories of information

are legitimately withheld, as discussed in the supplemental filing, to avoid compromising

law enforcement investigations and intelligence operations, to protect sensitive sources

and methods of intelligence-gathering, and to ensure the personal safety of U.S.

government personnel, their families, and others.  For example, the categories in question

include names and other information identifying such individuals as law enforcement

agents, interrogators, certain intelligence sources, or persons of investigative interest; the

names of military or intelligence operations, guesthouses, or other locations that

implicate military or intelligence operational concerns; administrative data such as code

words and file numbers from which intelligence collection priorities or the allocation of

intelligence assets could be gleaned; and information about interrogation or investigative

techniques and their effectiveness.

As contemplated by *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008), the

Government has submitted under seal a supplemental memorandum and supporting

declarations setting forth grounds for withholding this material tailored to each particular

category of information designated as too sensitive for public release, *id.* at 852-53.

These submissions demonstrate that the withholding of information falling into these

categories is entirely appropriate, even if the Court were to adopt the press intervenors'

reading of the June 1 Order in general, and option (ii) in particular.  Hence, even if the

Court concluded that the Government has misunderstood its obligations under the June 1

Order, it should approve as a general matter the redaction of sensitive but unclassified

information falling into the specific categories identified in the supplemental filing, in

lieu of requiring individualized adjudication by the Merits Judges of perhaps thousands

of redactions across all 150 returns.  Any obligation to highlight information that the

Government seeks to redact from individual returns, and to litigate the exclusion of that

information from the public record before individual Merits Judges, should be limited to

sensitive but unclassified information contained in the returns, if any, that falls outside

the categories that Respondents have identified.

## **CONCLUSION**

For the reasons stated above and in Respondents' supplemental filing, submitted under seal, the press intervenors' motion for an order to show cause, and the specific relief requested therein, should be denied.

Dated:   November 18, 2009

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOSEPH H. HUNT
Branch Director

TERRY M. HENRY
Assistant Branch Director

*/s/ James J. Gilligan*
JAMES J. GILLIGAN
Assistant Branch Director

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel: (202) 514-3358
Fax: (202) 616-8470
Email:  **James.Gilligan@usdoj.gov**

*Attorneys for Respondents*