## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) ) ) ) ) ) | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY DETAINEE LITIGATION | | |

### PRESS INTERVENORS' REPLY MEMORANDUM IN
### SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

The Government's Opposition to the pending motion for an order to show cause lacks both coherence and credibility, and only reinforces the conclusion that the Court's June 1 Order was knowingly evaded. The Government argues about the "literal meaning" of the Order while carefully avoiding its actual language; ignores that its reading of the Order is directly inconsistent with the defined terms of the Protective Order that was being enforced; and recasts the earlier dispute as relating solely to the "timing" of the release of the Factual Returns and having nothing to do with their content. Its strained argument is plainly wrong at every step.

The June 1 Order enforced the terms of the existing Protective Order by *rejecting* the Government's request for blanket sealing of the Factual Returns. It instead directed the Government to publicly file a "declassified" or "unclassified" Return in each habeas case, *or* to seek judicial permission to withhold unclassified material—enforcing the same obligation for judicial review of unclassified information as imposed by the Protective Order itself. The terms "declassified" and "unclassified" are defined in both the Protective Order and the June 1 decision, leaving no doubt that such Returns should have only "classified" information deleted from them. The Government even repeated the definitions in its own motion papers, belying its present claim to have misunderstood what the "literal language" of the Order required.

Nor did the prior dispute relate solely to the "timing" of publicly-accessible Returns without regard to their content, as the Government now portrays. The Protective Order requires *court* approval whenever unclassified material is withheld from the public, and Press Intervenors objected specifically to the Government's request to seal *unclassified* information without any court review. This Court enforced the Protective Order, and held that the Government *must* seek judicial approval if anything more than classified information is to be withheld.

The suggestion, in this context, that the Court was somehow unclear in directing that the redaction of unclassified information "require[s] judicial pre-approval," Gov't Opp. (Dkt. No. 1878) at 21, can only fairly be described as contemptuous. Both this Court's Protective Order and its June 1 decision enforcing that order make clear that court approval is necessary to withhold "sensitive" but unclassified information from judicial records filed in these habeas cases. The June 1 Memorandum Opinion is unambiguous, stressing that "the ultimate decision to deem information protected is left to the Court." June 1 Mem. Op. at 2. The Court of Appeals has *twice* told the Government the very same thing in other cases involving information about Guantanamo detainees: "'It is the court, not the Government, that has discretion to seal a judicial record.'"[1] The Government refuses to accept this holding. Its patently incorrect arguments about supposed compliance only confirm that the June 1 Order has been disobeyed, as two other judges have already concluded.[2]

---

[1] *Parhat v. Gates*, 532 F.3d 834, 836 (D.C. Cir. 2008) (quoting *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007), *see also* June 1 Mem. Op. at 5 (quoting *Bismullah*).

[2] *See Al-Ghizzawi v. Obama*, No. 05-2378 (Dkt. No. 266) (D.D.C. Sept. 24, 2009) (Bates, J.) ("*Al-Ghizzawi* Order"); *Ali v. Obama*, No. 09-0745 (Dkt. No. 1335) (D.D.C. Nov. 9, 2009) (Lamberth, C.J.) ("*Ali* Opinion").

## DISCUSSION

## I.

## THE OPPOSITION CONFIRMS THE GOVERNMENT'S REFUSAL TO ABIDE THE JUNE 1 ORDER

In defense of its actions, the Government offers a far-fetched and completely insupportable interpretation of the June 1 Order. Its position is directly contrary to the plain language of the Order and the context in which it was issued.

**A.   The Government Disregards the Plain Language of the June 1 Order**

The Opposition claims that the "plain text" of the Order permits the Government either to (i) "prepare and file a factual return suitable for release to the public" or (ii) "file a highlighted version of the existing unclassified return with the Merits Judge, detailing the information that cannot be revealed on the public record and why." *See, e.g.*, Gov't Opp. (Dkt. No. 1878) at 10-11. Remarkably, it makes this plain language argument without quoting the actual language of the Order itself. The Order, to the contrary, requires the Government either to "publicly file a *declassified or unclassified* factual return" or seek court permission to withhold other material "the Government seeks to be deemed protected." June 1 Order at 1-2 (emphasis added); *see also id.* at 2 ("If the government does not file an unprotected or highlighted factual return for a petitioner by July 29, 2009, that petitioner's unclassified factual return will be treated as unprotected, unless the appropriate Merits Judge rules to the contrary.") The actual language of the June 1 Order leaves no doubt that only classified information could be withheld from the public under option (i).

Each of the key terms specifying what must be done under option (i), "declassified" and "unclassified," have specific meanings that are well known to the Government. As the Government itself defined those terms, neither includes "formally unclassified information that

3

nevertheless . . . is not suitable for public release." *Compare* Gov't Opp. (Dkt. No. 1878) at 6 *with* Gov't Sealing Mot. (Dkt. No. 1416) at 4 n.8 (defining "'unclassified' return" as "one in which all classified information has been redacted" and "'declassified' return" as "one in which formerly classified information has been determined . . . to no longer require security classification"). Avoiding any ambiguity, the June 1 Opinion itself incorporates the Government's own definitions of the terms "declassified" and "unclassified."[3] These terms render precise and certain what the Court required—if the Government removed only classified information from a publicly-filed Return, no court review was required; if the Government wanted to remove any other sensitive but unclassified material, court approval was required. *See* June 1 Mem. Op. at 8 ("[T]he Court exercises its discretion to provide the government with sufficient time to review the returns *to prevent the dissemination of classified information*.") (emphasis added). The literal language of the June 1 Order cannot reasonably be read to say anything else.

The very focus of the Court's concern, as the Opinion makes clear, was to prevent the Government from unilaterally withholding information it considered somehow "unsuitable" for public consumption without judicial review and oversight: "The Protective Order instructs that *the ultimate decision to deem information protected is left to the Court*." June 1 Mem. Op. at 2 (emphasis added). The Court held the Government's blanket request to withhold unclassified material insufficient because "requests to designate information as protected require specificity." *Id*. at 7. In fashioning its Order, the Court relied expressly on the D.C. Circuit's approach in *Parhat* (*id*. at 9), noting that, there, the D.C. Circuit: (1) rejected the Government's generic

---

[3] June 1 Mem. Op. at 10 n.11. Likewise, the meaning of the term "protected" is spelled out in the Protective Order. Paragraph 10 of the Protective Order defines "protected" information as that which "*the Court deems* … not suitable for public filing." September 11, 2008 Protective Order (Dkt. No. 409) ¶ 10.

assertions of the need to protect information; (2) "denied the motion without prejudice, allowing the Government *another opportunity to seal the information*" (*id*. at 7) (emphasis added); and (3) directed the Government to file a renewed motion accompanied by a marked copy of the detainee record identifying the information for which the Government sought protected status. *Id*. This Court adopted precisely the same approach in its June 1 Order.

The Government's professed interpretation of the Order directly contradicts what was plainly required, and it makes no sense. If the Government were able unilaterally to determine what "sensitive" but unclassified information to withhold from the public, there would never be a need to file a highlighted version of an unclassified return for judicial review, making option (ii) of the Order superfluous. *See Al-Ghizzawi* Order at 3 (Bates, J.) (observing, "[i]f option (i) governed the filing of public factual returns that redacted protected information, option (ii) would be unnecessary"); *Ali* Opinion at 3 (Lamberth, C.J.) (agreeing with Judge Bates). Such a bizarre reading that would render one half of the Order redundant is contrary to the "cardinal rule" of interpretation. *Cf. Kungys v. United States*, 485 U.S. 759, 778 (1988) ("cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant").[4]

**B.   The Government Ignores the
       Context of the June 1 Order**

The Government's position also studiously avoids the context in which the Court issued its June 1 Order. That Order was issued in response to a Government request under the existing Protective Order to seal its factual returns in their entirety. Under the Protective Order, no

---

[4] The Government argues that Press Intervenors are now seeking "to compel the Government to re-process the returns according to option (ii)." *See, e.g.*, Gov't Opp. (Dkt. No. 1878) at 7. They are not. Press Intervenors seek only "to obtain compliance with a court order." *United States v. Shelton*, 539 F. Supp. 2d 259, 262 (D.D.C. 2008); *see also Petties v. District of Columbia*, 888 F. Supp. 165, 167-68, 174 (D.D.C. 1995) (ordering defendants to provide written assurance that court ordered payments would be made).

judicial permission at all was needed for the Government to file Returns with classified material redacted—that could be done as a matter of right. Under paragraph 34 of the Protective Order, however, judicial permission is required to withhold unclassified material that the Government wishes to deem "protected." *See* September 11, 2008 Protective Order (Dkt. No. 409) ¶ 34. The Government thus was required to obtain permission to withhold *unclassified* information, and the June 1 Order denied its request. The Order carried forward the same mechanisms as the Protective Order itself, authorizing the Government to withhold classified material unilaterally, but mandating judicial review of any request to withhold unclassified material. In this context, the Government's "interpretation" of the June 1 Order can only be seen as a willful avoidance of its mandate.[5]

Nor is the Government correct in recasting the issue resolved by the June 1 Order as simply one of "timing". Gov't Opp. (Dkt. No. 1878) at 5, 12. It was not. While Press Intervenors did object to the open-ended time period for the sealing that was being requested as overly broad, their primary concern was that the sealing motion sought to withhold unclassified material from the public without any judicial review. *See* Press App. Opp'n (Dkt. No. 1526-1) at 2-3, 11-13. The need for judicial review of the redaction of unclassified information was at the very heart of the dispute. As the Court summed it up, the government's motion "attempt[ed] to usurp *the Court's* discretion to seal judicial records." June 1 Mem. Op. at 19 (emphasis added).

The June 1 Opinion instructed in no uncertain terms that "[i]t is the court, not the Government, that has discretion to seal a judicial record." *Id*. at 5. This follows the holdings of the Court of Appeal in *Parhat v. Gates*, 532 F.3d 834, 852-53 (D.C. Cir. 2008) (instructing the

---

[5] A party in any event may not avoid a finding of contempt simply by asserting that it misunderstood the order in issue or made a good faith effort to comply with it. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,* 103 F.3d 1007, 1016 (D.C. Cir. 1997).

6

Government that it must provide the court with a specific "basis for withholding" information from court records) and *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007) (same). Given these repeated directives, it is incomprehensible that the Government continues to argue that this Court did not instruct that "redactions of unclassified information from the publicly filed returns require judicial approval . . . ." Gov't Opp. (Dkt. No. 1878) at 21.

## II.
## THE GOVERNMENT'S VIOLATION OF THE ORDER JUSTIFIES A FINDING OF CONTEMPT

This Court has a duty to take "affirmative action when [its] lawful commands . . . are defied." *In re Fletcher*, 216 F.2d 915, 917 (4th Cir. 1954). "A party is in contempt of court when it 'violates a definite and specific court order requiring [it] to perform or refrain from performing a particular act or acts with knowledge of that order.'" *Petties*, 888 F. Supp. at 168 (citation omitted). Thus, while civil contempt is a "severe remedy," Gov't Opp. (Dkt. No. 1878) at 8, it is appropriate where, as here, there is "clear and convincing evidence" that the putative contemnor "'has violated an order that is clear and unambiguous.'" *Armstrong v. Executive Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citation omitted); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 16-18 (D.D.C. 1999). In this case, both elements of the test have been met, and a finding of contempt is warranted to achieve the Government's compliance with the Order.[6]

---

[6] The cases cited by the Government in which a finding of contempt was deemed unwarranted are inapposite, as they involve circumstances where the order at issue was not clear and unambiguous, *see, e.g.*, *Joshi v. Prof'l Health Servs., Inc.*, 817 F.2d 877, 879 (D.C. Cir. 1987) ("order neither specified a date by which the contract was to be executed nor required that it be executed promptly"); *Armstrong*, 1 F.3d at 1289 ("order did not expressly direct the appellants to promulgate new regulations"), or cases in which the government was able to show a good faith effort *and* substantial compliance, *e.g.*, *Shelton*, 539 F. Supp. 2d at 263-64.

First, in resolving whether an order is sufficiently clear and specific to justify a finding of contempt, the D.C. Circuit applies "an objective standard that takes into account both the language of the order and the objective circumstances surrounding [its] issuance." *United States v. Young*, 107 F.3d 903, 907-08 (D.C. Cir. 1997). For the reasons discussed above, and in the Press Intervenors' initial moving memorandum, the June 1 Order is clear and unambiguous. It explicitly laid out the Government's two options, using terms that were precisely defined. The Order carried forward the same mechanism for judicial review previously established in the Protective Order, and reiterated the same obligation for judicial review previously imposed upon the Government by the Court of Appeals under similar circumstances. *See supra* at 3-7. There can be no reasonable doubt that the unilateral withholding of unclassified information was expressly prohibited, as two other judges have already recognized. *See Al-Ghizzawi* Order at 3 (Bates, J.); *Ali* Opinion at 3 (Lamberth, C.J.).

Second, the Government's Opposition itself provides clear and convincing evidence of noncompliance. It confirms that more than classified information was routinely withheld from *all* the 150 or so Returns that have been publicly filed. Gov't Opp. (Dkt. No. 1878 at 6 ("over 150 returns" have been publicly filed "redact[ing] classified information as well as formally unclassified information . . . not suitable for public release").

Implicitly acknowledging the problem with its position, the Government essentially seeks leave to reargue, asserting that it should be permitted to redact unclassified information by broad, ill-defined categories. *Id.* at 21, 24-25. Ironically, the Government makes its request on the basis of a record it has unilaterally submitted under seal, without prior permission.[7] Its actions are procedurally incorrect and, to the extent unclassified information has been submitted under

---

[7] The Government's actions make it impossible for Press Intervenors to respond to the unknown information submitted in support of the Government's argument.

8

seal, may itself violate the public's right of access to judicial records. *See* June 1 Mem. Op. at 16 (public has a First Amendment right of access to judicial records filed in habeas proceedings, which can only be sealed on judicial findings of fact).

In any event, the Government's new suggestion for categorical redactions is nothing more than a repurposing of arguments that already have been rejected by this Court and the Court of Appeals. As the June 1 Opinion makes plain, the Government cannot "'rel[y] solely on spare, generic assertions of the need to protect information in the two categories it identifies,'" but rather must "'give the court a basis for withholding that is *specific to the information it has designated in this case*.'" *Id*. at 6 (quoting *Parhat*, 532 F.3d at 852-53) (emphasis added). The generic approach now advocated by the Government would contravene the constitutional requirement that any sealing must be narrow, specific and supported by factual findings. As this Court previously recognized, "*requests to designate information as protected require specificity*." *Id*. at 7 (emphasis added).

Finally, the Government's contentions about the burden imposed by the June 1 Order are irrelevant. While the Court has long been aware of the Government's concerns about the time and resources involved in preparing public Factual Returns,[8] the present issue is whether the Government *complied* with the June 1 Order, not how onerous compliance might be. The recognized defenses to civil contempt are substantial compliance and an inability to comply, *Food Lion, Inc.*, 103 F.3d at 1020, and the latter may "be invoked only when a party demonstrates that it is 'powerless' to comply with a court's order." *United States v. Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 11 (D.D.C. 2003). The Government makes no such showing.

---

[8] *See, e.g.*, Transcript of July 8, 2008 Hearing at 89 (filed July 29, 2008, Dkt. No. 208).

**CONCLUSION**

For each and all the foregoing reasons, the order to show cause requested by the Press Intervenors should be entered.

Dated: November 30, 2009

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By:  /s/ Jeanette M. Bead
David A. Schulz, DC Bar No. 459197
Jeanette M. Bead, DC Bar No. 480539
1050 Seventeenth Street, NW, Suite 800
Washington, DC 20036-5514
Phone (202) 508-1100
Fax (202) 861-9888

*Counsel for Press Intervenors*

*Of Counsel*:
David H. Tomlin
Associated Press
450 West 33rd Street
New York, NY 10001

David E. McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018

Barbara W. Wall
Gannett Co., Inc.
7950 Jones Branch Drive
McLean, Virginia 22101